# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | ) | **CASE NO. 03-93031-mhm** |
| | ) | |
| **GROUP MANAGEMENT CORP.,** | ) | **Chapter 11** |
| **a/k/a IVG CORP.,** | ) | |
| | ) | **JUDGE MARGARET H. MURPHY** |
| **Debtor.** | ) | |
| | ) | |
| ------------------------------------------------------) | | |

## BRIEF IN SUPPORT OF EMERGENCY MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY, AND REQUEST FOR EMERGENCY HEARING

Alpha Capital Aktiengesellschaft ("Alpha"), Amro International, S.A. ("Amro"),

Markham Holdings, Ltd. ("Markham"), and Stonestreet Limited Partnership ("Stonestreet")

(hereinafter collectively referred to as the "Movants") hereby submit their Brief in Support of

Emergency Motion to Dismiss, or in the Alternative, for Relief from the Automatic Stay, and

Request for Emergency Hearing (the "Motion"):

## I.

## INTRODUCTION

The Movants have moved for an Order of this Court dismissing this Chapter 11 case

on the grounds that, among other things, the case has been commenced in bad faith by the

Debtor, Group Management Corp., a/k/a IVG Corp. (the "Debtor" or Group Management"),

in an obvious effort to evade compliance with an Order and Judgment and Contempt Order

of the United States District Court for the Southern District of New York. Group

Management's bad faith is demonstrated by, among other things: (1) the filing of this case

only five (5) days following the District Court's issuance of the Contempt Order; (2) the

filing of this case by Thomas Ware, an attorney who, until at least the day prior to the filing

of the Chapter 11 petition, was a director and Chief Executive Officer of Group

Management, who is expressly identified in and personally subject to the Contempt Order

and who has also been sanctioned and barred from practicing before this Court since at least

August of 1999; (3) the Debtor's failure to file Schedules of Assets and Liabilities and its

Statement of Financial Affairs as required by Rule 1007 of the Federal Rules of Bankruptcy

Procedure; (4) the Debtor's moving on an emergency basis, when no emergency has been

cited or exists, to reject contracts which are the subject of the Order and Judgment of the

District Court, where the Debtor's obligations under those contracts have been fully litigated

and the Debtor's compliance mandated by a final order and judgment of that Court; (5)

Group Management has, at most, two creditors other than the Movants; and (6) Group

Management apparently has few, if any, assets and no ongoing business operations.  These

indicia of bad faith are more than sufficient grounds for this Court to dismiss this Chapter 11

case pursuant to 11 U.S.C. § 1112(b), or to abstain from hearing the case pursuant to 11

U.S.C. § 305(a).

 In the alternative, should this Court determine not to dismiss the Debtor's Chapter 11

case, the Movants request, pursuant to 11 U.S.C. § 362(d), relief from the automatic stay of

11 U.S.C. § 362(a) to enforce the Orders of the United States District Court for the Southern

District of New York entered in an action fully litigated before that Court.

## II.

## **STATEMENT OF FACTS**

 Movants are holders of Convertible Notes issued by Group Management on or about

February 2, 2001, which, pursuant to Subscription Agreements, are convertible to the

common stock of Group Management. Group Management defaulted on its obligations

under the Convertible Notes and failed to honor requests by the Movants to convert the notes

to the common stock of Group Management. Thereafter, an action was commenced by the

Movants against Group Management and its directors (Thomas Ware, Len Churn and Barry

Corker) in the United States District Court for the Southern District of New York entitled

Alpha Capital Aktiengesellschaft, et al. v. Group Management Corp., et al., Case No. 02 Civ.

2219 (LBS). That action has been fully litigated and orders and a judgment entered by that

Court against the Debtor and its officers and directors.

On November 25, 2002, an Order and Judgment was entered by the District Court in

favor of the Movants and against Group Management and its officers and directors. A copy

of the Order and Judgment is attached hereto as Exhibit A. The Order and Judgment requires

Group Management to, among other things, honor all conversion requests of the Movants.

Thereafter, on February 20, 2003, the Movants filed a motion for contempt in the District

Court for, among other reasons, the failure of Group Management and its directors to comply

with the District Court's Order and Judgment of November 25, 2002. The Debtor still

having failed and refused to comply, on March 13, 2003, the District Court entered a

Contempt Order against Group Management and its directors, Thomas Ware and Barry

Corker, providing, among other things, that in the event of continued non-compliance "the

Court shall issue a warrant for the arrest of Thomas Ware and Barry Corker and they shall

stand committed in the custody of the U.S. Marshall in the district in which they are

arrested." A copy of the Contempt Order is attached hereto as Exhibit B.

On March 18, 2003, just five (5) days after the District Court entered the Contempt

Order, Group Management commenced this case. The attorney purporting to represent

Group Management and who signed the petition was Thomas Ware.  Subsequently, on March 26, 2003, this Court ordered Group Management to retain other counsel because Mr. Ware has been barred from practicing before this Court.

In a Form 8-K filed with the United States Securities and Exchange Commission on March 18, 2003, the same day the Chapter 11 petition was filed, Mr. Ware purported to resign as a director of the Debtor effective March 17, 2003.  Mr. Ware signed the Form 8-K as Chief Executive Officer.  A copy of the Form 8-K is attached hereto as Exhibit C.  Mr. Ware is the same individual personally held in contempt by the District Court and whose incarceration was provided for in the Contempt Order.

Group Management did not file Schedules of Assets and Liabilities and its Statement of Financial Affairs on the petition date (March 18, 2003) and, as of the date of the Motion and Brief, has not yet filed those documents as required by Rule 1007(c) of the Federal Rules of Bankruptcy Procedure.  No order extending the time set forth in Bankruptcy Rule 1007(c) has been sought or obtained.  Those few documents that have been filed demonstrate that Group Management has, at most, two creditors other than the Movants.  In addition, the petition discloses that Group Management has assets of only approximately $150,000.

Significantly, while disregarding its obligations under Bankruptcy Rule 1007(c), Group Management has moved on an emergency basis, without identifying any basis for emergency relief, to reject the contracts on which the Order and Judgment are based, even though the Movants' obligations under those contracts have been fully performed and Group Management's obligations thereunder are now fixed by and subject to the Orders of the District Court.  Plainly, this case was not commenced for the purpose of reorganization, but to evade compliance with the Order and Judgment and Contempt Order of the District Court.

# III.

# ARGUMENT

**A.    Dismissal Of This Case For "Cause" Is Appropriate.**

Group Management's Chapter 11 case should be dismissed for cause under section 1112(b) of the Code.  Section 1112(b) lists nine non-exclusive grounds for dismissal of a case.  That list is not exhaustive and courts have determined that a "lack of good faith" may also be cause for dismissal of a case under section 1112(b).  See, e.g., In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1988); In re Moog, 159 B.R. 357, 360 (Bankr. S.D. Fla. 1993).

There is no uniform test for determining bad faith.  However, courts have identified certain factors that show an "intent to abuse the judicial process and the purposes of the reorganization provisions."  Moog, 159 B.R. at 360 (quoting In re Natural Land Corp., 825 F.2d 296 (11th Cir. 1987)).  The factors generally considered by courts are:  (1) the timing of the petition; (2) whether the debtor is financially distressed; (3) whether the petition has been filed strictly to circumvent pending litigation; and (4) whether the petition has been filed to get out of a "bad deal."  Id.  See also In re Dixie Broadcasting, Inc., 871 F.2d 1023, 1027 (11th Cir. 1989), cert. denied, Dixie Broadcasting, Inc. v. Radio WBHP, Inc., 493 U.S. 853, 110 S.Ct. 154 (1989).  As discussed below, Group Management's Chapter 11 case plainly has been filed in bad faith.

Group Management has filed this case solely for the purpose of evading compliance with the Order and Judgment and Contempt Order of the District Court, the underlying issues of which have been litigated before the District Court at substantial time and cost.  This conclusion is supported by the fact that Group Management's case lacks any of the indicia of

a *bona fide* Chapter 11 case. Group Management apparently has only two creditors other than the Movants, has virtually no assets and has no ongoing business operations. In addition, Group Management's petition was filed by Thomas Ware, a lawyer with a personal interest in staying the District Court's Contempt Order since (as a director and Chief Executive Officer) he personally was held in contempt and subject to arrest and who filed Group Management's case even though he is barred from practicing before this Court. Further, Group Management has disregarded the provisions of Bankruptcy Rule 1007 by failing to file, among other things, its Schedules of Assets and Liabilities and Statement of Financial Affairs.

Group Management filed an "Emergency Motion to Reject Executory Contract," which reveals Group Management's obvious motivation in filing this Chapter 11 case. By that Motion, Group Management seeks, on an emergency basis, without identifying any basis for an emergency, to reject the contracts on which the Order and Judgment are based, even though the Movants' obligations under those contracts have been fully performed and Group Management's obligations, having been fully litigated, are now fixed by and subject to the Orders of the District Court. Group Management seeks to in effect have this Court vacate and re-litigate the Orders of the District Court. Clearly, this case was not commenced for the purpose of reorganization, or any other purpose consistent with the Bankruptcy Code, and should be dismissed for "cause" pursuant to 11 U.S.C. § 1112(b).

**B.     D**ismissal is Appropriate Under Section 305(a).

A court may also dismiss a case under section 305, the abstention section of the Bankruptcy Code. Specifically, section 305 of the Code provides, in pertinent part:

> (a)  The court, after notice and a hearing, may dismiss a case
> under this title, or may suspend all proceedings in a case under
> this title, at any time if –
>
> (1)  the interests of creditors and the debtor would be better served by
> such dismissal or suspension….

11 U.S.C. § 305(a).  Though no uniform test has been established to determine whether

dismissal is appropriate under section 305(a)(1), at three common themes emerge from the

section 305(a) cases.  See In re Axl Industries, Inc., 127 B.R. 482, 484 (S.D. Fla., 1991),

aff'd, 977 F.2d 598 (11th Cir. 1992); In re Safon Ochart, 74 B.R. 131 (Bankr. D.P.R. 1986);

In re Beacon Reef Limited Partnership, 43 B.R. 644, 646 (Bankr. S.D. Fla. 1984).

In the instant case, Group Management's motivation in filing its Chapter 11 case is

The first theme is the motivation of the party seeking bankruptcy.  For example, a

debtor that has litigated extensively in a non-bankruptcy forum and lost should not be

permitted to employ the bankruptcy process effectively to obtain relief it has been

unsuccessful in pursuing in another forum.  In re Safon Ochart, 74 B.R. at 134.  Second, the

cases consistently discuss the availability of another forum to protect the interest of the

parties.  For instance, where another better-qualified forum has or is in the process of

litigating the identical issues, abstention may be warranted.  Id.  Third, abstention is proper

when it promotes economy.  In the instant case, each of these considerations strongly

supports abstention by this Court under section 305(a).

In the instance case, Group Management's motivation in filing its Chapter 11 case is

obvious.  This case was not commenced for the purpose of reorganization, but to evade

compliance with the Order and Judgment and Contempt Order of the District Court, the

underlying issues of which have been fully litigated before the District Court at substantial

time and expense.  Indeed, Group Management's Emergency Motion is an obvious attempt

to have this Court in essence vacate and re-litigate the District Court's Orders.  That case is

still pending before the District Court and the District Court is, therefore, a forum available

to protect the interest of the parties.  This Court should abstain from hearing Group

Management's Chapter 11 case pursuant to 11 U.S.C. § 305(a).

**C.     Relief From the Automatic Stay Should be Granted.**

In the event that this Court determines not to dismiss this Chapter 11 case or abstain

from hearing it,  Section 362(d) of the Bankruptcy Code provides for the lifting of the

automatic stay for, among other reasons, "cause":

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as
> by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in
> property of such property of such party in interest….

11 U.S.C. § 362(d)(1).  The United States Court of Appeals for the Eleventh Circuit has

determined that sufficient "cause" exists to grant relief from the automatic stay pursuant to

11 U.S.C. § 362(d)(1) if a petition in bankruptcy is filed in bad faith.  See, e.g., Barclays-

American/Business Credit, Inc. v . Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.), 871

F.2d 1023, 1026-27 (11th Cir. 1989); Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Virginia, et

al. (In re Phoenix Piccadilly, Ltd), 849 F.2d 1393, 1394 (11th Cir. 1988); Natural Land Corp.

v. Baker Farms, Inc. (In re Natural Land Corp.), 825 F.2d 296 (11th Cir. 1987).

As set forth in detail above, Group Management's Chapter 11 case has been filed in

bad faith because it was not commenced for the purpose of reorganization, but to evade

compliance with the Order and Judgment and Contempt Order of the District Court and,

indeed, to attempt in essence to vacate and re-litigate those Orders through its "Emergency
Motion to Reject Executory Contract."

Further, the issues underlying this case have been fully litigated and should be
returned to the court most knowledgeable of the facts, circumstances and conduct of the
parties, particularly where, as here, the expertise of this Court is not required.  See HoltKamp
v. Littlefield, 669 F.2d 505, 508-09 (7th Cir. 1982); see also Baldino v. Wilson (In re
Wilson), 116 F.3d 87, 90-91 (3rd Cir. 1997) ("[I]t will often be more appropriate to permit
proceedings to continue in their place of origin, when no great prejudice to the bankruptcy
estate would result…").  Consequently, "cause" exists to grant relief from the automatic stay
of 11 U.S.C. § 362(a) so as to permit the Movants to return to the District Court and to
enforce the Orders of that Court.

///

///

///

///

///

///

///

///

///

**///**

**///**

**///**

## IV.

## CONCLUSION

For the forgoing reasons, the Movants respectfully request that this Court dismiss Group Management's Chapter 11 case pursuant to 11 U.S.C. § 1112(b), or to abstain from hearing the case pursuant to 11 U.S.C. § 305(a). In the alternative, the Movants request, pursuant to 11 U.S.C. § 362(d), that this Court grant them relief from the automatic stay of 11 U.S.C. § 362(a) to return to the District Court to enforce the Orders of that Court.

Dated: April 11, 2003                    Respectfully submitted,


_____/s/ Dennis S. Meir_____
Dennis S. Meir - Georgia Bar No. 501100
John W. Mills, III -California Bar No. 149861

KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

COUNSEL TO ALPHA CAPITAL
AKTIENGESELLSCHAFT, AMRO
INTERNATIONAL, S.A., MARKHAM
HOLDINGS, LTD., AND STONESTREET
LIMITED PARTNERSHIP

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of this Brief in Support of Emergency Motion To

Dismiss Or, In The Alternative, For Relief From The Automatic Stay, And Request For

Emergency Hearing was served by Facsimile on the parties below on April 11, 2003.

Sims W. Gordon, Jr.
Gordon & Boykin
2130 Kingston Court, SE, Suite B
Marietta, GA 30067
Fax:  (770) 612-2627

James H. Morawetz
Office of the United States Trustee
362 Richard Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303
Fax:  (404) 331-4464

Baker & McKenzie
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Fax:  (214) 978-3099

Boise Cascade Office Products
150 E. Pierce Road
Itasca, IL 60143
Fax:  1 (800) 572-6473

Dated:  April 11, 2003

Respectfully submitted,

_____/s/ Dennis S. Meir_____
Dennis S. Meir -Georgia Bar No. 501100

KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

COUNSEL TO ALPHA CAPITAL
AKTIENGESELLSCHAFT, AMRO
INTERNATIONAL, S.A., MARKHAM
HOLDINGS, LTD., AND STONESTREET
LIMITED PARTNERSHIP

# EXHIBIT "A"

*Return to Cashiers
inTEREST Bearing-acc.t.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

ALPHA CAPITAL AKTIENGESELLSCHAFT,      :
AMRO INTERNATIONAL, S.A.,              :
MARKHAM HOLDINGS, LTD., and            :
STONESTREET LIMITED PARTNERSHIP,       :
                                       :
                  Plaintiffs,          :          02 Civ. 2219 (LBS)
                                       :
            -against-                  :          **ORDER AND
                                       :          JUDGMENT**
GROUP MANAGEMENT CORP.,                :
formerly known as IVG CORP.,           :
formerly known as INTERNET             :
VENTURE CORP.,                         :
                                       :
                  Defendant.*          :

-----------------------------------------------------------------X

SAND, District Judge.

    For the reasons more fully expressed in a Memorandum filed on this day, it is hereby

    (1) ORDERED and adjudged that Plaintiff Alpha Capital Aktiengesellschaft, Pradafant 7,

9490 Furstentums, Vaduz, Liechtenstein ("Alpha"), is entitled to recover against Defendant

Group Management Corp., 13135 Dairy Ashford, Sugar Land, Texas 77478 ("Defendant") the

sum of $386,000.00 principal plus interest on the Notes, $17,745.00 principal plus interest on the

Promissory Notes, liquidated damages in the amount of $99,000.00, plus additional liquidated

damages in the amount of $6,700 for late delivery of shares pursuant to the February 21, 2002

conversion notice, for a total recovery on such items in the amount of $509,445.00; and it is

further

    (2) ORDERED and adjudged that Plaintiff Amro International, S.A., c/o Ultra Finanz,

---

* The action against Defendants Elorian Landers and Becky Landers having been stayed pursuant to bankruptcy filing, and the Court having severed them as Defendants in this case by Order of November 7, 2002, the Court hereby amends the caption of this case by deleting their names.

**COPIES MAILED TO ALL PARTIES**

Grossmuensterplatz 6, Zurich, Switzerland CH 8022 ("Amro"), is entitled to recover against

Defendant the sum of $321,667.00 principal plus interest on the Notes, $14,788.00 principal plus

interest on the Promissory Notes, liquidated damages in the amount of $82,500.00, less

$3,600.00 credit for the August 8, 2002 conversion, for a total recovery on such items in the

amount of $415,355.00; and it is further

(3) ORDERED and adjudged that Plaintiff Markham Holdings, Ltd., 50 Town Range,

P.O. Box 472, Gibraltar ("Markham"), is entitled to recover against Defendant the sum of

$450,333.00 principal plus interest on the Notes, $20,703.00 principal plus interest on the

Promissory Notes, and liquidated damages in the amount of $115,500.00, less $4,050.00 credit

for the August 9, 2002 conversion, for a total recovery on such items in the amount of

$582,486.00; and it is further

(4) ORDERED and adjudged that Plaintiff Stonestreet Limited Partnership, 260 Town

Centre Blvd., Suite 201, Markham, Ontario L3R 8H8 ("Stonestreet"), is entitled to recover

against Defendant the sum of $257,333.00 principal plus interest on the Notes, $11,830.00

principal plus interest on the Promissory Notes, and liquidated damages in the amount of

$66,000.00, for a total recovery on such items in the amount of $335,163.00; and it is further

(5) ORDERED and adjudged that Plaintiffs Alpha, Amro, Markham, and Stonestreet

shall recover against Defendant in an amount to be determined by the Court damages for the

delay in delivering all necessary opinions and other documents to Plaintiffs regarding the shares

released from escrow; and it is further

(6) ORDERED and adjudged that Defendant, its officers, agents, servants, employees and

2

attorneys and all those in active concert with them,[1] continue to honor all conversion requests in

accordance with the terms and conditions of the agreements between the parties and deliver all

opinions and other documents necessary for Plaintiffs to sell shares received upon conversion

pursuant to Rule 144 until all amounts due and owing to Plaintiffs are paid in full; and it is

further

(7) ORDERED and adjudged that Plaintiffs shall recover against Defendant reasonable

legal fees in an amount to be determined by the Court.

(8) The Court is aware that the parties may dispute the proper valuation of the shares

released from escrow in January 2002, the measure of damages relating to the delay in delivering

all necessary opinions and other documents regarding the shares released from escrow, as well as

the number and valuation of stock conversions executed (collectively, the "offsets") which

should be set off against the recovery to which Plaintiffs are otherwise entitled herein. The Court

is further aware that Defendant is in default of its obligations under the agreements between the

parties and of this Court's orders; that Defendant is in dire fiscal straits; and that Defendant has

failed, despite repeated requests by the Court, to provide specific alternative proposals or data

supporting its claims, or to provide Plaintiffs with any reasonable alternative to the security

provisions contained in the agreements between the parties. The Court therefore further directs:

(a) that notwithstanding any other provision herein except for subparagraphs (e) through

(g) below, Plaintiffs shall have the immediate recovery of and entry of judgment against

---

[1] Although Defendant Elorian Landers has been severed from this action by virtue of his bankruptcy filing, he
remains subject to this provision insofar as he remains an officer, agent, or employee of Defendant Group
Management.

3

Defendant in the amount of $1,000,000.00,[2] and that Plaintiffs shall have the immediate right to institute and maintain all proceedings to which a judgment creditor is entitled in order to execute upon and collect that amount; and

(b) that Plaintiffs shall have THIRTY ONE DAYS to submit a detailed claim, accompanied by affidavits, legal memoranda, and any other necessary supporting documents, for damages relating to the delay in delivering all necessary opinions and other documents regarding the shares released from escrow, taking full regard of the recent decision of the Second Circuit in Lucente v. IBM, 2002 U.S. App. LEXIS 23049 (2d Cir. Nov. 4, 2002), and for reasonable legal fees; and

(c) that Defendant shall have FIFTEEN DAYS thereafter to submit a similarly detailed and supported claim for offsets to the amounts set forth above, including credit for the shares released from escrow and any conversions not fully accounted for above; and

(d) that the Court shall hold an inquest on January 15, 2003, to determine what amount if any Plaintiffs shall recover against Defendant in excess of the $1,00,000.00 ordered and adjudged on this date, or if necessary what amount if any Defendant shall recover against Plaintiff in offset from any amounts already collected by that date; and

(e) that all sums recovered by Plaintiffs in execution of subparagraph (a) of this Order and Judgment be deposited with the Clerk of the Court until such time as the Court shall order such sums to be released; and

(f) that the Clerk of the Court, as soon as the business of his office allows, prepare the

---

[2] This sum represents the total set forth in paragraphs (1) through (7) above less the maximum feasible offset that might, upon inquest, be merited by Defendant.

4

necessary forms to effectuate the transfer of said funds from the Registry of the Court of the Southern District of New York, to the Registry of the Court of the Southern District of Texas, for the purpose of placing said funds in the Court Registry Investment System, Interest Bearing Account; and

(g) that the Clerk shall deduct from the income earned on the investment a fee not exceeding that authorized by the Judicial Conference of the United States and set by the Director of the Administrative Office whenever such income becomes available for deduction from the investment so held and without further order of this Court.

SO ORDERED.

Dated:    New York, New York
           November 25, 2002

U.S.D.J.

# EXHIBIT "B"

*SAN 5,*

United States District Court
Southern District of New York

------------------------------------------------------------X

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd., and
Stonestreet Limited Partnership,

                                        Plaintiffs,                          02 Civ. 2219 (LBS)

            -against-
                                                                            <u>Order</u>

Group Management Corp., formerly known as
IVG Corp., formerly known as Internet Venture
Group, Inc., Thomas Ware, Len Churn and Barry
Corker,

                                        Defendants.
------------------------------------------------------------X


        Whereas, th                                          Amro International, S.A.,

Markham Holdings                                            )llectively the "Plaintiffs"), have

moved this Court b                                          03, for an Order holding

defendants Group I                                         √are, Len Churn and Barry

Corker in contemp:                                        uly submitted by Plaintiffs, as

Group Managemer                                           were required to do pursuant to

this Court's Order


        Whereas, based upon the affidavits of service filed with the Court, it appears that Group

Management Corp., Thomas Ware and Barry Corker were duly served with said Order to Show

Cause; and

1

Whereas, Group Management Corp., Thomas Ware and Barry Corker failed to appear at the hearing on March 3, 2003 and oppose the within motion; and

Whereas, by Order dated January 15, 2003, the Court ordered Group Management Corp. to cause substitute counsel to appear on or before March 3, 2003, failing which the Court would award Plaintiffs' additional damages and attorneys' fees as therein set forth; and

Whereas, Group Management Corp. failed to file with the Clerk of this Court a notice of appearance by substitute counsel on or before March 3, 2003 as Ordered by this Court on January 15, 2003;

Now, therefore, it is

Ordered that defendants Group Management Corp. and its directors Thomas Ware and Barry Corker are hereby held in contempt for their disobedience of the Order and Judgment of this Court of November 25, 2002; and it is further

Ordered that in the event that Group Management Corp. and its directors Thomas Ware and Barry Corker do not honor Plaintiffs' pending conversion requests within three (3) days of the mailing of this Order via Certified Mail to the addresses at which they were served with the Order to Show Cause, then Group Management Corp. shall pay to Plaintiffs the sum of $1,000.00 per day until it complies with the Order and Judgment of November 25, 2002 and the

2

Court shall issue a warrant for the arrest of Thomas Ware and Barry Corker and they shall stand ~Ms
in the district in which they are arrested
committed in the custody of the U.S. Marshal until the contempt is purged by honoring all of the

conversion requests duly submitted by Plaintiffs; and it is further


Ordered that pursuant to the Order of this Court dated January 15, 2003, Plaintiffs are

awarded additional damages, based upon their application dated December 26, 2002, in the

amount of $119,700.00 plus interest from February 7, 2002 in the amount of $11,670.45 (through

March 7, 2003), attorney's fees in the amount of $119,812.50 and expenses in the amount of

$4,997.35; and it is further


Ordered that pursuant to the Order of this Court of January 15, 2003, the provisions of

paragraphs 8(e)-(f) of the Order and Judgment of November 25, 2002 which provided for an

escrow of funds recovered by Plaintiffs are stricken.

_____
U.S.D.J.

Dated: March / 2003

3

# EXHIBIT "C"

<TEXT>

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

FORM 8-K

CURRENT REPORT

Pursuant to Section 13 or 15(d) of the Securities Exchange
Act of 1934.

Date of Report: March 18, 2003

GROUP MANAGEMENT CORP.
(Exact name of registrant as specified in its Charter)

Delaware                    0-32635              59-2919648
(State of Incorporation)   (Commission file number)   (IRS
Employer ID #)

101 Marietta St., Suite 1070, Atlanta, GA   30303
(Address of principal executive office)     (Zip
Code)

Registrant's telephone number: (404) 522-1202

Item 5: Other Events and Regulation FD Disclosure

Registrant's telephone number: (404) 522-1202

Item 5: Other Events and Regulation FD Disclosure


Barry Corker and Len Churn have resigned from the board of
directors of Group Management Corp. effective March 12,
2003. Neither Mr. Corker nor Mr. Churn had any
disagreements with management prior to resignation.

Lamar Sinkfield was appointed to the board of directors and
will be the acting chief executive officer until a permanent
CEO is selected.

Thomas Ware resigned from the board of directors effective
March 17, 2003. Mr. Ware had no disagreements with the board
of directors prior to resignation.


SIGNATURE

Pursuant to the requirements of the Securities
Exchange Act of 1934, the registrant has caused this report
to be signed by the Chief Executive Officer.

Group Management Corp.

/s/ Thomas Ware
-----------------------------------

- -

Thomas Ware, Chief Executive
Officer