**(16-0) (Part 16-0) 02.18.25 re: In re Group Management Corp., 03-93031 (BC NDGA), Chapter 11, Rule 8009(d) Appellants' and Appellees' Joint Stipulated Appellate Record.**

## Case No. 03-93031(16-0) (Part 16-0)[1]

### United States Bankruptcy Court
### For the Northern District of Georgia
### (Atlanta Division)

# F-0

### In re Group Management Corp., Chapter 11
### On Appeal in In re Group Management Corp.,
### District Court  (NDGA) 25cv00613 (MLB)

**Submitted on Tuesday, February 18, 2025, 12:37:35 PM**

## Clerk's Cover Letter

**APPELLANTS' AND APPELLEES' JOINT STIPULATED STATEMENT OF THE ISSUES PRESENTED ON APPEAL IN *IN RE GROUP MANAGEMENT CORP.*, CASE NO. 25CV00613 (NDGA) (MLB).**

**RESPECTFULLY SUBMITTED,**

**For Appellants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

*Ulysses J. Ware*

**Submitted by:**
**Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226

Filed in U.S. Bankruptcy Court
Northern District of Georgia
Vania S. Allen, Clerk

FEB 2 4 2025

By: _____
Deputy Clerk

---

[1] District Court (NDGA) Docket No. 25cv00613 (MLB).

(718) 844-1260
**Utware007@gmail.com**
February 18, 2025

Tuesday, February 18, 2025
(16-0) (Part 16-0) re Feb. 18, 2025, Cover letter to the Bankruptcy Clerk (NDGA) regarding Rule 8009(d) filings.

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

February 18, 2025

**VIA ELECTRONIC FILING AND U.S. MAIL**

Office of the Clerk
United States Bankruptcy Court
Northern District of Georgia
Richard B. Russell Federal Building and United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

**Re: (16-1A) (Part 16-1A) 02.18.25 re: In re Group Management Corp., 03-93031 (BC NDGA), Chapter 11, Rule 8009(d) Appellants' and Appellees' Joint Stipulated Appellate Record – Appeal Case No. 25cv00613 (NDGA) (MLB).**

**Appellants' Filing of Rule 8009(d) Joint Stipulated Appellate Record.**

**Dear Clerk of the Bankruptcy Court:**

Appellants-Movants, Ulysses T. Ware and Group Management (successor in interest to the Chapter 11 Debtor, and 11 U.S.C. § 1109(b) statutory parties in interest), hereby submit for filing and docketing the attached document titled **"(16-1A) (Part 16-1A) 02.18.25 re: In re Group Management Corp., 03-93031 (BC NDGA), Chapter 11, Rule 8009(d) Appellants' and Appellees' Joint Stipulated Appellate Record"** (hereinafter, the "Joint Stipulated Appellate Record").

This filing constitutes Appellants-Movants' designation of the Appellate Record on Appeal in the above-referenced matter, Case No. 03-93031 (WLH), which is currently pending appeal before the United States District Court for the Northern District of Georgia as Case No. 25cv00613 (NDGA) (MLB), Dkt. 279.

The attached Joint Stipulated Appellate Record is submitted pursuant to Rule 8009(d) of the Federal Rules of Bankruptcy Procedure, and is intended to serve as the Agreed Statement as the Record on Appeal in this matter, in lieu of the standard record designation process outlined in Rule 8009(a).

As detailed within the attached Joint Stipulated Appellate Record, and as evidenced by prior filings with this Honorable Court, Appellants-Movants have made diligent and good faith efforts to engage all Appellees-Respondents in a collaborative process to finalize a truly *joint* stipulated record pursuant to Rule 8009(d). To that end, Appellants-Movants have provided all Appellees-Respondents with actual notice of the proposed Joint Stipulated Appellate Record via electronic mail to their respective public email accounts, as documented in the Certificate of Service attached to the Joint Stipulated Appellate Record.

Pursuant to Bankruptcy Rule 8009(d), Appellants-Movants respectfully request that the Clerk of the Bankruptcy Court undertake the following actions to ensure the proper certification and transmittal of the Appellate Record to the United States District Court:

1. **Forward the Attached Joint Stipulated Appellate Record to the Honorable Chief Judge Barbara Ellis-Monro for Review and Approval:** In accordance with Rule 8009(d), the attached Joint Stipulated Appellate Record requires review and approval by the Bankruptcy Court to ensure its accuracy and completeness. Rule 8009(d)(1) explicitly provides that "If the statement is accurate, it—together with any additions that the bankruptcy court may consider necessary to a full presentation of the issues on appeal— ***must be approved by the bankruptcy court***." Appellants-Movants respectfully request that the Clerk promptly forward the attached "accurate" Joint Stipulated Appellate Record to Chief Judge Ellis-Monro for her review and approval.

2. **Certification of Approved Joint Stipulated Appellate Record:** Upon the Bankruptcy Court's approval of the Joint Stipulated Appellate Record, Appellants-Movants respectfully request that the Clerk certify the approved statement to the United States District Court for the Northern District of Georgia, Case No. 25cv00613 (NDGA) (MLB), as the official Record on Appeal, pursuant to Rule 8009(d)(2) of the Federal Rules of Bankruptcy Procedure. Rule 8009(d)(2) mandates that "*If the bankruptcy court approves the statement, it must be certified to the court where the appeal is pending as the record on appeal.*"

3. **Transmittal of Certified Record to District Court Clerk:** Following certification by the Bankruptcy Court, Appellants-Movants respectfully request that the Bankruptcy Clerk transmit forthwith the certified Joint Stipulated Appellate Record to the Clerk of the United States District Court for the Northern District of Georgia, in accordance with Rule 8009(d)(3) and Rule 8010 of the Federal Rules of Bankruptcy Procedure. Rule 8009(d)(3) directs that "*The bankruptcy clerk must then transmit it to the clerk of that court within the time provided by Rule 8010.*"

Appellants-Movants submit this Joint Stipulated Appellate Record in good faith and in the interest of judicial economy, to streamline the appellate process and to focus the District Court's review on the dispositive jurisdictional and sanctioning issues presented in this appeal. We respectfully request the Bankruptcy Court's prompt attention to this matter to facilitate the timely progression of this appeal before the United States District Court.

Respectfully submitted,

/s/ Ulysses T. Ware

ULYSSES T. WARE
Attorney in Fact for Appellants-Movants
Ulysses T. Ware and Group Management

**Attachments:**

1. **(F-0 to F-7) attachments 02.18.25 re: In re Group Management Corp., 03-93031 (BC NDGA), Chapter 11, Rule 8009(d) Appellants' and Appellees' Joint Stipulated Appellate Record.**

## Certificate of Service

I, Ulysses T. Ware, attorney in fact for the Appellants, hereby certify under penalty of perjury that on this 18th day of February 2025, I caused to be served a true and correct copy of the foregoing **COVER LETTER REGARDING FILING OF RULE 8009(d) JOINT STIPULATED APPELLATE RECORD** and attached **JOINT STIPULATED APPELLATE RECORD (16-1A) (Part 16-1A) 02.18.25 re: *In re Group Management Corp.*, 03-93031 (BC NDGA), Chapter 11, Rule 8009(d) Appellants' and Appellees' Joint Stipulated Appellate Record** via electronic filing with the Bankruptcy Court and by U.S. Mail to the Office of the Clerk, United States Bankruptcy Court, Northern District of Georgia, Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303.

/s/ Ulysses T. Ware

Ulysses T. Ware

**(16-1A) (Part 16-1A) 02.18.25 re: In re Group Management Corp., 03-93031 (BC NDGA), Chapter 11, Rule 8009(d) Appellants' and Appellees' Joint Stipulated Appellate Record.**

# Case No. 03-93031(16-1A) (Part 16-1A)[1]

## United States Bankruptcy Court
## For the Northern District of Georgia
## (Atlanta Division)

F-1

## In re Group Management Corp., Chapter 11
## On Appeal in In re Group Management Corp.,
## 25cv00613 (NDGA) (MLB)

## Submitted on Tuesday, February 18, 2025, 11:16:16 AM

**APPELLANTS' AND APPELLEES' JOINT STIPULATED STATEMENT OF THE ISSUES PRESENTED ON APPEAL IN *IN RE GROUP MANAGEMENT CORP.*, CASE NO. 25CV00613 (NDGA) (MLB).**

**RESPECTFULLY SUBMITTED,**

**For Appellants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**
**Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
February 18, 2025

---

[1] District Court (NDGA) Docket No. 25cv00613 (MLB).

# Table of Contents

A. APPELLANTS' AND APPELLEES' JOINT STIPULATED STATEMENT OF THE ISSUES PRESENTED ON APPEAL: ...................................................................................... 3

B.    UNIFIED LIST OF AUTHORITIES ..................................................................... 10

I. ALPHABETICAL LIST OF AUTHORITIES (CASE LAW) ..................................... 10

    A. United States Supreme Court Authorities (Alphabetical Order): ............................. 10

    B. Federal Court of Appeals and District Court Authorities (Alphabetical Order): ...... 10

II. NUMERICAL LIST OF STATUTES .................................................................... 10

III. NUMERICAL LIST OF RULES OF PROCEDURE .............................................. 11

    A. Federal Rules of Bankruptcy Procedure: ............................................................. 11

    B. Federal Rules of Civil Procedure: ....................................................................... 12

    C. Federal Rules of Appellate Procedure: ................................................................ 12

IV. OTHER SOURCES OF AUTHORITY ................................................................ 12

C.    Designation of 03-93031 (BC NDGA) proceedings dockets to be included in the appellate record. ................................................................................................................. 13

D.    The Appellants' and Appellees' Rule 8009(d) Joint Stipulated Appellate Factual Record on appeal in In re Group Management Corp., 25cv00613 (NDGA) (MLB). ........................... 13

    1.    F-1 re: Joint Statement of Issues Presented on Appeal. ..................................... 14

    2.    F-2 re: (13-6a) (Part 15-6) Final Rule 8009(d) Factual Record. ......................... 14

    3.    F-3 re: (Part 14-0) Cover letter to Chief Judge Ellis-Monro regarding Rule 9014/12(h)(3) motion. .................................................................................................................. 14

    4.    F-4 re: (Part 13-10) Memorandum of law Article III "concrete injury in fact" requirement. 14

    5.    F-5 re: (Part 14-12) KTS' clients' Hobbs Act conspiracy and bankruptcy fraud conspiracy. 14

    6.    F-6 re (Part A-4) KTS' Article III jurisdictional and sanctioning facts memorandum. ....... 14

Certificate of Service ............................................................................................... 16

End of document ...................................................................................................... 17

**APPELLANTS' AND APPELLEES' JOINT STIPULATED STATEMENT OF THE ISSUES PRESENTED ON APPEAL IN *IN RE GROUP MANAGEMENT CORP.*, CASE NO. 25CV00613 (NDGA) (MLB)**

# A. APPELLANTS' AND APPELLEES' JOINT STIPULATED STATEMENT OF THE ISSUES PRESENTED ON APPEAL:

Pursuant to Bankruptcy Rule 8009(d), Appellants and Appellees jointly stipulate and agree that the issues presented for review on appeal to the United States District Court for the Northern District of Georgia (Case No. 25cv00613 (MLB)), from the Bankruptcy Court's proceedings in *In re Group Management Corp.*, Case No. 03-93031 (WLH) (Bankr. N.D. Ga.), include to the following dispositive questions of law and fact, Appellant reserves the right to amend this list to include additional issues if warranted by the facts or on the Court's direction:

1. **Subject Matter Jurisdiction over Criminal Usury:** Did the Bankruptcy Court in Case No. 03-93031 (WLH) possess Article III subject matter jurisdiction over the following **"Predatory Criminal Usury Subject Matter"** (collectively, **"Criminal Usury Subject Matter"**):

   a. Predatory convertible promissory notes ("CPNs") bearing actual stated or implied interest rates exceeding 2000%, which violated New York State Penal Law § 190.40, the criminal usury law, a Class E felony? **No.** ( *See* Dkts. 6, 11, 13, 14, 15, 16, 28, 256, and 258).

   b. The predatory criminal usury contract, the so-called subscription agreement, GX 5? **No.** (*See* Dkts. 6, 11, 13, 14, 15, 16, 28, 256, and 258).

2. **Violation of New York Criminal Usury Law:** Did the Predatory Criminal Usury Subject Matter, specifically GX 1, GX 2, GX 3, GX 4, and GX 5 (*See* Dkt. 15 and Dkt. 16), violate

New York State Penal Law § 190.40, the criminal usury law, a Class E felony? **Yes.** (*See Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379 (2d Cir. 2022)).

3.  **Void Ab Initio Status and Violation of Public Policy and Federal Securities Laws:** Is the Predatory Criminal Usury Subject Matter (GX 1-4, and GX 5) null and void *ab initio*, unenforceable, uncollectible, and violative of public policy and the federal securities laws, 15 U.S.C. §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78cc(b), 78ff, and SEC Release 33-7190 n. 17 (1995)? **Yes.** (*See Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379 (2d Cir. 2022); *U.S. v. Grote*, 961 F.3d 105, 109 (2d Cir. 2020)).

4.  **Article III Standing of Unregistered Broker-Dealer Appellees:** Did the Appellees (identified in Dkt. 11 as clients of Atlanta, GA law firm Kilpatrick Townsend & Stockton, LLP ("**KTS Clients**") – the plaintiffs in the 02cv2219 (SDNY) litigation), as unregistered broker-dealers, possess Article III standing to appear in Case No. 03-93031 (Dkt. 11) and request redressable judicial relief (Dkts. 15 and 16) to collect or enforce the Predatory Criminal Usury Subject Matter in violation of the Hobbs Act, 18 U.S.C. §§ 1951(a) and 1961(6)(B)? **No.** (*See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). No. See *Lujan*, 504 U.S. at 560-61 (KTS' clients as unregistered broker-dealers as a matter of law and fact lacked the required "legally protected interest" in the ***null and void ab initio*** Predatory Criminal Usury Subject Matter, and accordingly, ipso facto, as a matter of law lacked, ***could not and did not*** suffer, ipso facto, "a concrete injury in fact" caused by the lawful conduct of the Appellants in refusing to violate the federal securities and racketeering laws criminally).

5. **FINRA Certification of Unregistered Broker-Dealer Status:** Were KTS Clients certified by FINRA's senior executive Marcia E. Asquith, Esq., on May 17, 2021, as unregistered broker-dealers operating in the United States in civil and criminal violation of the federal securities laws, 15 U.S.C. §§ 77d, 77x, 78o(a)(1), and 78ff? **Yes.** (*See* Exhibit 3 in the Joint Factual Record).

6. **Operation as Illegal Association in Fact and Continuing Criminal Enterprise:** Did Appellee KTS, its unregistered broker-dealer clients (Dkt. 11), and the Appellees, jointly and severally, in their individual or personal capacity, knowingly and willfully, directly and/or indirectly, act and function as an illegal association in fact, a continuing criminal enterprise organized to underwrite, issue, buy, sell, fund, administrate, and collect Predatory Criminal Usury Subject Matter in violation of 18 U.S.C. §§ 2, 152, 157, 371, 401(2), 401(3), 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1512, 1519, 1951(a), 1961(6)(B), 1962(a-d), and 2071(a), (b); and 15 U.S.C. 77d, 77x, 78(a)(1), 78p(b), 78cc(b), and 78ff, constituting a pattern of racketeering activities? **Yes.** (*See* Nov. 2007 testimony and confessions of Appellee unregistered broker-dealer Arie Rabinowitz, Tr. 180-250, in *U.S. v. Ware, 04cr1224 (SDNY)*).

7. **Moot Filings as Aiding and Abetting Unlawful Debt Collection:** Did Docket Entries 6, 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, 275, and 278 in Case No. 03-93031 (WLH) (the "Moot Filings"), constitute aiding, abetting, enabling, assisting, or facilitating predatory criminal usury unlawful debt collection activities with respect to the Predatory Criminal Usury Subject Matter, GX 1-4? **Yes.** (*See **Adar Bays, LLC v. GeneSYS ID, Inc.***, 28 F.4th 379 (2d Cir. 2022); ***U.S. v. Grote***, 961 F.3d 105, 109 (2d Cir. 2020)).

8. **Aiding and Abetting Unlawful Debt Collection in Violation of Hobbs Act and RICO:** Did the Appellees, their privies, proxies, surrogates, alter-egos, and all those in active concert therewith knowingly, willfully, intentionally, deliberately, and in bad faith, by and through the Moot Filings (Dkt. 6, 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, 275, and 278), aid, abet, assist, enable, facilitate, and further, directly and/or indirectly, in regard to the 02cv2219 (SDNY), 03-93031 (BC NDGA), or 04cr1224 (SDNY) proceedings' predatory unlawful debt collection activities with respect to GX 1, GX 2, GX 3, and GX 4, in violation of 18 U.S.C. §§ 1951(a) and 1961(6)(B)? **Yes.** (*See U.S. v. Grote*, 961 F.3d 105, 109 (2d Cir. 2020)).

9. **Preclusive Effect of SDNY Final Judgment and Orders:** Are the Courts, the Appellees, agents, proxies, surrogates, alter-egos, and all those in active concert therewith, bound in Case Nos. 03-93031 and 25cv00613 absolutely by the preclusive effects of *res judicata*, collateral estoppel, judicial estoppel, and equitable estoppel in regard to former District Judge Leonard B. Sand's (SDNY) (deceased) 02cv2219 (i) voluntary December 20, 2007, Dkt. 90, Fed. R. Civ. P. 41(a)(2) final judgment, and (ii) Judge Sand's August 13, 2003, Dkt. 65 court order ruling that each of KTS' unregistered broker-dealer clients had previously lied and committed a fraud on the 02cv2219 (SDNY) and 03-93031 (BC NDGA) Chapter 11 federal courts, and were in fact 15 U.S.C. § 78p(b) statutory insiders of the Chapter 11 Debtor, Appellant Group Management, legally required to disgorge +$522 million disgorgement back to the 03-93031 Chapter 11 estate pursuant to 11 U.S.C. §§ 541(a)(1) and 542(a)? **Yes.** (*See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 401-02 (1981); *Roth v. Jennings*, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.)

(statutory insiders required to disgorge all short-swing insider-trading profits back to the issuer (the Chapter 11 Debtor, Appellant Group Management).

10. **Appellants as Final Judgment Prevailing Parties:** Are Appellants Ulysses T. Ware and Group Management the legal Fed. R. Civ. P. 41(a)(2) final judgment prevailing parties in 02cv2219 (SDNY), and by extension and necessary implication in 03-93031 and 25cv00613 (NDGA) by *res judicata*? **Yes.** (*See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 401-02 (1981); *U.S. v. L-3 Comm'cs EOTech, Inc.*, 921 F.3d 11, 18-19 (2d Cir. 2019) (Kearse, J.) )(collecting cases) (plaintiff's voluntary dismissal of their law ***annulled, vitiated, set aside, and vacated all prior orders***, judgments, and proceedings in [02cv2219, 03-93031, 04cr1224], and "wiped the slate clean" and rendered the proceedings "moot").

11. **Mandatory Turnover of Insider-Trading Profits to Chapter 11 Estate:** Are the Appellees, jointly or severally, required pursuant to 11 U.S.C. §§ 541(a)(1), 542(a), and 542(g), and 15 U.S.C. §§ 78o(a)(1), 78p(b), and 78cc(b) to turnover +$522 million in strict-liability short-swing insider-trading profits to the 03-93031 Chapter 11 estate for administration? **Yes.** (*See Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 401-02 (1981); *Roth v. Jennings*, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.); Judge Sand's August 13, 2003, Dkt. 65, 02cv2219 (SDNY) court order, Exhibit 1 in Joint Stipulated Facts).

12. **Appellees as Fiduciaries, Subject to Equitable Lien and Constructive Trust:** Are the Appellees (i) 15 U.S.C. § 78p(b) fiduciaries of the Chapter 11 Debtor, Group Management (Yes), (ii) subject to an equitable lien (Yes), and (iii) subject to a constructive trust on their

assets up to +$5.222 billion (yes), as the legal and factually admitted result, judicial and equitable estoppel, of Judge Sand's August 13, 2003, Dkt. 65, 02cv2219 (SDNY) lawful and binding court order? **Yes.** (*See Roth v. Jennings*, 489 F.3d 499, 506-10 (2d Cir. 2007); Judge Sand's August 13, 2003, Dkt. 65, 02cv2219 (SDNY) court order, Exhibit 1 in Joint Stipulated Facts); also see *Federated Department Stores*, 452 U.S. at 398, 401-02.

13. **Ethical Violations by Appellee Attorneys:** Have the Appellees that are lawyers named in this 25cv00613 (NDGA) appeal violated Georgia Bar, the ABA, and the District Court (NDGA) Rules of Professional Conduct Rule 3.3 (duty of complete candor to the tribunal), and Rule 8.4 (involving deceit, fraud, deception, and misrepresentation) regarding disclosure to the Courts concerning the unregistered broker-dealer status of KTS' clients, disclosing the predatory criminal usury nature of GX 1-4, and GX 5, and disclosing the preclusive effects of Judge Sand's 02cv2219 (SDNY) Rule 41(a)(2) final judgment, Dkt. 90, and the August 13, 2003, Dkt. 65, 15 U.S.C. § 78p(b) court order? **Yes.** See Joint Stipulated Appellate Factual Record.

14. **Aiding and Abetting Civil and Criminal Contempt of Court Orders and Final Judgment:** Did each Appellee knowingly, willfully, negligently, or with reckless disregard for the law aid, abet, assist, enable, or facilitate the civil and/or criminal contempt, 18 U.S.C. § 401(3), of lawful court orders (Dkt. 65, 02cv2219 (SDNY); Dkt. 32, 04cr1224 (SDNY)) and final judgment (Dkt. 90, 02cv2219 (SDNY)) in regard to the 03-93031 proceedings? **Yes.** (*See* Dkts. 256, 258, 263, 274, 275, and 278, all entered after the effective dates of the final judgment and court orders).

15. **Participation in Racketeering Activities:** Did each Appellee knowingly, willfully, actually, or constructively, directly and/or indirectly, enable, assist, aid, abet, facilitate, participate in, or further the commission of two or more acts of racketeering activities as defined in 18 U.S.C. § 1961 *et seq.* in regard to the 02cv2219 (SDNY), 03-93031, or 04cr1224 (SDNY) proceedings? **Yes.** (*See* Dkt. *Id.* and the Joint Stipulated Appellate Facts).

16. **Operation as Illegal Association in Fact and Continuing Criminal Enterprise:** Did the Appellees, individually or personally, knowingly, willfully, or in reckless disregard for the truth and the law, organize, agree, operate, perform, and function as, or conspire, collude, or in active concert with each other and others known and unknown function as:

a. An illegal association in fact as defined in 18 U.S.C. § 1961(4)? **Yes.**

b. Beginning in or about 2001, and continuing without interruption to the present, in the Northern District of Georgia, the Southern and Eastern Districts of New York, and elsewhere, act and function by and through the means, methods and use of interstate commerce? **Yes.**

c. Act and function directly or indirectly knowingly and willfully, and personally direct or actually or constructively participate in, or enable the commission of two or more acts of racketeering activities as defined in 18 U.S.C. § 1961 *et seq.*, including but not limited to the willful violation of Georgia statutory insurance law, OCGA §§ 33-3-28(a)(1), (2), 33-1-9, and 16-14-5(A)(xxxviii)? **Yes.**

d. Which has caused or are the proximate causes of irreparable harms, injuries, and

damages to the personal and business property of the Appellants in the sum certain amount of $5.222 billion? **Yes. See Joint Stipulated Appellate Record.**

17. Whether the Appellees are subject to Rule 9011(c), inherent power, and 28 USC §1927 sanctions for bad faith, vexatious, baseless, fraudulent, manifestly frivolous, unnecessary, unreasonable, and excessive litigation which required the Appellants to expend litigation resources in excess in +$1.0 million dollars? **Yes. See Joint Stipulated Appellate Record**.

## B.    UNIFIED LIST OF AUTHORITIES

## I. ALPHABETICAL LIST OF AUTHORITIES (CASE LAW)
### A. United States Supreme Court Authorities (Alphabetical Order):

1. *Allen v. McCurry*, 449 U.S. 90 (1980)
2. *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)
3. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
4. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)
5. *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83 (1998)
6. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)

### B. Federal Court of Appeals and District Court Authorities (Alphabetical Order):

1. *Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379 (2d Cir. 2022)
2. *Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007)
3. *Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir.1998)
4. *U.S. v. Grote*, 961 F.3d 105 (2d Cir. 2020)
5. *U.S. v. L-3 Comm'cs EOTech, Inc.*, 921 F.3d 11 (2d Cir. 2019)

## II. NUMERICAL LIST OF STATUTES

1. 11 U.S.C. §§ 152
2. 11 U.S.C. §§ 157
3. 11 U.S.C. § 541(a)(1)
4. 11 U.S.C. § 542(a)
5. 11 U.S.C. § 542(g)
6. 11 U.S.C. § 1109(b)
7. 15 U.S.C. § 77d

8.  15 U.S.C. § 77e
9.  15 U.S.C. § 77x
10. 15 U.S.C. § 78o(a)(1)
11. 15 U.S.C. § 78p(b)
12. 15 U.S.C. § 78cc(b)
13. 15 U.S.C. § 78ff
14. 18 U.S.C. § 2
15. 18 U.S.C. § 152
16. 18 U.S.C. § 157
17. 18 U.S.C. § 371
18. 18 U.S.C. § 401(2)
19. 18 U.S.C. § 401(3)
20. 18 U.S.C. § 924(c)
21. 18 U.S.C. § 1201-02
22. 18 U.S.C. § 1341
23. 18 U.S.C. § 1343
24. 18 U.S.C. § 1344
25. 18 U.S.C. § 1346
26. 18 U.S.C. § 1503
27. 18 U.S.C. § 1512
28. 18 U.S.C. § 1519
29. 18 U.S.C. § 1951(a)
30. 18 U.S.C. § 1956-57
31. 18 U.S.C. § 1958-59
32. 18 U.S.C. § 1961(4)
33. 18 U.S.C. § 1961(6)(B)
34. 18 U.S.C. § 1962(a-d)
35. 18 U.S.C. § 2071(a)
36. 18 U.S.C. § 2071(b)
37. 28 U.S.C. § 455(a)
38. 28 U.S.C. § 455(b)(1-5)
39. 28 U.S.C. § 1927

# III. NUMERICAL LIST OF RULES OF PROCEDURE

## A. Federal Rules of Bankruptcy Procedure:

1.  Bankr. Rule 5003
2.  Bankr. Rule 7000
3.  Bankr. Rule 7001(6)
4.  Bankr. Rule 7004(b)(3)
5.  Bankr. Rule 7021
6.  Bankr. Rule 7026
7.  Bankr. Rule 7041
8.  Bankr. Rule 7052

Tuesday, February 18, 2025
(Part 16-1A) (Part 16-1A) re Appellants' and Appellees' Joint Stipulated Rule 8009(d) Issues on Appeal in 25cv00613(NDGA) (MLB).

9. Bankr. Rule 7058
10. Bankr. Rule 8000 series
11. Bankr. Rule 8009
12. Bankr. Rule 8009(a)
13. Bankr. Rule 8009(a)(1)
14. Bankr. Rule 8009(a)(1)(A)
15. Bankr. Rule 8009(a)(1)(A)(iv)
16. Bankr. Rule 8009(a)(1)(B)
17. Bankr. Rule 8009(a)(1)(B)(i)
18. Bankr. Rule 8009(a)(c)
19. Bankr. Rule 8009(d)
20. Bankr. Rule 8009(d)(1)
21. Bankr. Rule 8009(d)(2)
22. Bankr. Rule 8009(d)(3)
23. Bankr. Rule 8009(g)
24. Bankr. Rule 9011
25. Bankr. Rule 9011(b)(1)
26. Bankr. Rule 9011(b)(1-4)
27. Bankr. Rule 9011(b)(2)
28. Bankr. Rule 9011(c)
29. Bankr. Rule 9014
30. Bankr. Rule 9024

## B. Federal Rules of Civil Procedure:

1. Fed. R. Civ. P. 26(a)(1)(A)(iv)
2. Fed. R. Civ. P. 41(a)(2)

## C. Federal Rules of Appellate Procedure:

1. F. R. App. P. 4(a)
2. F. R. App. P. 4(a)(4)
3. F. R. App. P. 4(c)(1)
4. F. R. App. P. 4(c)(2)
5. F. R. App. P. Rule 8
6. F. R. App. P. Rule 30

# IV. OTHER SOURCES OF AUTHORITY

1. ABA Model Rule 8.4
2. Code of Conduct for Federal Judges
3. District Court (NDGA) Local Rules
4. Federal Rules of Evidence
5. FINRA Certification (Exhibit 3 to Joint Stipulated Record)

6. Georgia Rules of Professional Conduct Rule 3.3
7. Georgia Rules of Professional Conduct Rule 8.4
8. Joint Stipulated Appellate Record (A-4-D-1)
9. NYS Penal Law, section 190.40
10. SEC Release 33-7190 n. 17 (1995)
11. SDNY Judgment (02cv2219) (Exhibits 1 and 2 in Joint Stipulated Record)

## C.  Designation of 03-93031 (BC NDGA) proceedings dockets to be included in the appellate record.

1. Dkt. 6
2. Dkt. 11
3. Dkt. 13
4. Dkt. 14
5. Dkt. 15
6. Dkt. 16
7. Dkt. 28
8. Dkt. 256
9. Dkt. 258
10. Dkt. 263
11. Dkt. 274
12. Dkt. 275
13. Dkt. 278

## D.  The Appellants' and Appellees' Rule 8009(d) Joint Stipulated Appellate Factual Record on appeal in In re Group Management Corp., 25cv00613 (NDGA) (MLB).

1.    **F-1 re: Joint Statement of Issues Presented on Appeal.**

2.    **F-2 re: (13-6a) (Part 15-6) Final Rule 8009(d) Factual Record.**

3.    **F-3 re: (Part 14-0) Cover letter to Chief Judge Ellis-Monro regarding Rule 9014/12(h)(3) motion.**

4.    **F-4 re: (Part 13-10) Memorandum of law Article III "concrete injury in fact" requirement.**

5.    **F-5 re: (Part 14-12) KTS' clients' Hobbs Act conspiracy and bankruptcy fraud conspiracy.**

6.    **F-6 re (Part A-4) KTS' Article III jurisdictional and sanctioning facts memorandum.**

**RESPECTFULLY SUBMITTED,**

**For Appellants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**
/s/ **Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
February 18, 2025

**For Appellants-Movants Ulysses T. Ware and Group Management and Appellees:**

cc:

Administrative Office of the U.S. Courts, Executive Director

Office of the U.S. Trustee, Region 21, (Mary Ida Townson, Esq.)

Financial Industry Regulatory Agency (FINRA) on behalf of the Securities and Exchange Commission (Marcia E. Asquith, Esq.)

State Bar of Georgia, Office of the General Counsel (William D. NeSmith, III) on behalf of the Supreme Court of Georgia, Office of the Chief Justice, the Hon. Michael P. Boggs

Edward T.M. Garland on behalf of Garland, Samuel, & Loeb, P.C. and affiliates

Nall & Miller, LLP

Kilpatrick, Townsend, & Stockton, LLP on behalf of its clients, the 02cv2219 (SDNY) plaintiffs, Unregistered broker-dealers Arie Rabinowitz on behalf of LH Financial Services Corp., Trailblazer Merger Corp., I

Unregistered broker-dealers Frank V. Sica on behalf of Tailwind Management L.P., Colleen McMahon, and Michael S. Bertisch (see Ex. 10)

# Certificate of Service

I Ulysses T. Ware certify that I have this 18Th February 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA), Office of the Bankruptcy Clerk (NDGA), and to the Chief Bankruptcy Judge, Ellis-Monro via the Court's electronic filing email account, and the U.S. mail for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[2] and 5005(b)(1) with the U.S. Trustee.[3]

cc:

    Office of the U.S. Trustee, Region 21 (Mary Ida Townson, Jeneane Treace, and James H. Morawetz)

    Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, for Dennis S. Meir, and John W. Mills, III)

    Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

    Baker & McKenzie, LLP (via David J. Malliband, Lawrance B. Mandala, Esq., Robert Alberal, Esq., London Fisher, LLP, and Thomas A. Leghorn, Esq.)[4]

---

[2] ***With a Judge of the Court.*** A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[3] **(b) Sending Copies to the United States Trustee.**
(1) ***Papers Sent Electronically.*** All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[4] Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

**John F. King, Georgia Insurance Commissioner** on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Patrick N. Arndt, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, David J. Malliband, Lawrence B. Mandala, and Robert H. Albaral, statutory agents in fact for the John Doe Insurers);

Edward T.M. Garland (for Garland, Samuel, & Loeb, P.C., Donald F. Samuel, Robin Loeb, Manibur S. Arora, Janice Singer, Michael F. Bachner, and David B. Levitt)

Manibur S. Arora (individually and personally)

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

# Acting Director of the FBI (via Mary Ida Townson, Esq., U.S. Trustee, Region 21)

/s/ Ulysses T. Ware

*Ulysses T. Ware*

February 18, 2025

# End of document

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuse may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.

# UNITED STATES POSTAL SERVICE®

# PRIORITY MAIL

Retail

PRIORITY MAIL
POSTAGE REQUIRED

U.S. POSTAGE PAID
PM
BROOKLYN, NY 11226
FEB 18, 2025
**$23.40**
S2324K504957-27

30303

RDC 03

PRIORITY MAIL

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

CERTIFIED MAIL

9589 0710 5270 1906 4525 70

FROM:

The Office of Ulysses T. Ware
123 Linden Blvd.
Ste PL
Brooklyn NY 11226

TO:

Office of the Bankruptcy Clerk
U.S. Courthouse
75 Ted Turner Dry SW
Atlanta, GA 30303

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, December 2023

CLEARED DATE
FEB 2 4 2025
Atlanta Service
Atlanta, GA 30303

Expected delivery date specified for domestic use.

Domestic shipments include $100 of insurance (restrictions apply).*

USPS Tracking® service included for domestic and many international destinations.

Limited international insurance.**

When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.

**See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

# MAILING ENVELOPE
## FOR DOMESTIC AND INTERNATIONAL USE

Schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

CKED ■ INSURED

Tuesday, February 18, 2025, 9:34:32 AM

### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

In re:
**GROUP MANAGEMENT CORP.,**
Chapter 11 Debtor.

# F-2

**Case No.: 03-93031 (WLH),** Chapter 11,

on Appeal in *In re Group Management Corp.*, 25cv00613 (NDGA) (MLB)

**WITH RESPECT TO NOTICE OF APPEAL, DKT. 278.**

**THE PARTIES' JOINT STIPULATED BANKR. RULE 8009(d) ARTICLE III "THRESHOLD MATTER" JURISDICTIONAL APPELLATE RECORD FACTS.[1]**

**Appellants/Movants**: Ulysses T. Ware and Group Management

**Appellees/Respondents**: Alpha Capital, AG, Stonestreet, L.P., Markham Holdings, L.P., Amro International, S.A., Kilpatrick, Townsend, & Stockton, LLP, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Wab Kadaba, Kenneth A. Zitter, Arie Rabinowitz, LH Financial Services Corp., Konrad Ackermann, Joseph Hammer, Trailblazer Merger Corp., I, Wendy L. Hagenau, James H. Morawetz, the Office of the U.S. Trustee, Region 21, Mary Ida Townson, M. Regina Thomas, Patricia Sinback, Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, Securities and Exchange Commission, Financial Industry Regulatory Agency (FINRA), Barbara Ellis-Monro, Marcia E. Asquith, Robert L.D., Colby, Robert W. Cook, Emma Jones, Sarah Jeffries, The State Bar of Georgia, Office of the General Counsel, William D. NeSmith, III, Paula Frederick, Leigh Burgess, William Alan Myers, Adrienne Nash, Jenny Mittlemen, Jonathan Hewett, Patrick N. Arndt, Michael D. Hostetter, Nall & Miller, LLP, Manibur S. Arora, Edward T.M. Garland, Michael F. Bachner, David B. Levitt, Donald F. Samuel, Janice Singer, Alexander H. Southwell,

---

[1] Article III *jurisdictional* and *standing **appeals*** pursuant to Fed. R. Civ. P. Rule 12(h)(3) and 9014 ***are only permitted and authorized to be filed in the Bankruptcy Court (NDGA) in regard to In re Group Management Corp., 03-93031 Chapter 11***: (Rule 12(h)(3): *Lack of Subject-Matter Jurisdiction*. If the [bankruptcy] court determines ***at any time*** that ***it*** lacks subject-matter jurisdiction [over the Criminal Usury Subject Matter, GX 1, GX 2, GX 3, GX 4, and GX 5, the [bankruptcy] ***court must dismiss the action***.

Thomas W. Thrash, Jr., Michael P. Boggs, Thomas A. Leghorn, Lawrence B. Mandala, Baker & McKenzie, LLP, Robert H. Albaral, John F. King, and Office of the Georgia Insurance Commissioner., and John Does Insurance Companies, ##1-5.

## A.    Introduction.

**PLEASE BE ADVISED, TAKE NOTICE, AND BE AWARE OF THE FOLLOWING.**

**NOTICE TO ALL APPELLEES-UNINDICTED COCONSPIRATORS REGARDING BANKR. RULE 8009(g) DUTY AND RESPONSIBILITY TO RESPOND TO THIS JOINT STIPULATED APPELLATE RECORD:**

1.    Each Appellee-Unindicted Coconspirator is hereby formally notified of their mandatory duty and responsibility under Bankruptcy Rule 8009(g) *to take all actions necessary to enable the bankruptcy clerk to assemble and transmit a complete and accurate record on appeal to the United States District Court*. To facilitate this process and to ensure the accuracy and completeness of the Parties' Joint Stipulated Bankr. Rule 8009(d) Appellate Record Jurisdictional and Sanctioning Facts (the "**Joint Stipulated Appellate Record Facts**") presented herein, each Appellee-Unindicted Coconspirator *is hereby afforded a final opportunity to provide a good faith, nonfrivolous, and legally sound response to the Appellants regarding the contents of this Joint Stipulated Appellate Record Facts*. All Facts contained herein have been obtained from (i) undocketed Rule 5003 "activity" and the (ii) *alleged* uncertified official records of the 03-93031 proceedings.

2.    Therefore, each Appellee-Unindicted Coconspirator is granted until **1:00 PM Eastern Standard Time, Friday, February 14, 2025, time being of the essence**, to present to Appellants, **in writing, under oath, subject to the penalty of perjury, _based on personal knowledge_, and supported by credible evidence and record facts pursuant to Bankruptcy Rule 9011(b)(1)-(4) and 28 U.S.C. § 1927**, a certified response, bearing counsel's signature and compliant with Rule 9011(b)(1)-(4), and 28 U.S.C. § 1927, *that sets forth any good faith and nonfrivolous denials, oppositions, or challenges to any specific Factual Record point presented within this Joint Stipulated Appellate Record Facts*.

3.    **PLEASE TAKE FURTHER NOTICE THAT THE REFUSAL OR FAILURE OF ANY APPELLEE-UNINDICTED COCONSPIRATOR TO** <u>**TIMELY**</u> **PROVIDE APPELLANTS WITH A CERTIFIED RULE 9011(b)(1)-(4), 28 U.S.C. § 1927 COMPLIANT WRITTEN RESPONSE, NO LATER THAN 1:00 PM EST, ON FEBRUARY 14, 2025, EACH FACT HEREIN SHALL BE DEEMED, AND CONSIDERED A BINDING JUDICIAL ADMISSION** against the legal and/or equitable interest of each such Appellee-Unindicted Coconspirator, and Appellants shall submit this Joint Stipulated Rule 8009(d) Appellate Record Facts to the 03-93031 Bankruptcy Court as the ***Parties' Joint Stipulated Rule 8009(d) Appellate Record Facts***, which shall be deemed binding and conclusive in 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), 05cr1115 (SDNY), 25cv00613(NDGA), *In re Ware*, (2008) State Bar of Georgia (disbarment proceedings) in all other related or derivative

proceedings, and in all subsequent judicial or administrative proceedings between the parties, their privies, agents, proxies, surrogates, alter-egos, _**and all those in active concert therewith**_.

**RESPECTFULLY SUBMITTED,**

**For Appellants-Movants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

Submitted by:

/s/ Ulysses T. Ware
The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**

February 18, 2025, 9:34:32 AM

# Table of Contents

A.    **Introduction.**............................................................................................................ 2

B.    **APPELLANTS' AND APPELLEES' BANKR. RULE 8009(d) JOINT STIPULATED, CONSENTED AND AGREED DISPOSITIVE JUDICIAL ADMISSIONS JURISDICTIONAL AND INHERENT POWER SANCTIONING APPELLATE RECORD FACTS.**............................... 11

Exhibit A—SBGA's known false, fraudulent, counterfeit, and fabricated alleged January 15, 2007, **Affidavit of Personal Service (perjury)** on Ulysses T. Ware, Esq. at the Bureau of Prison's Brooklyn, NY MDC federal prison—the BOP has confirmed that Mr. Ware *was not* **personally served** on January 15, 2007, at the MDC Brooklyn, NY prison because according to the BOP " … Mr. Ware *was not* incarcerated and *was not* in the custody of the Bureau of Prison on January 15, 2007, *anywhere in the United States … and certainly not in Brooklyn, NY … that is a fact* …." (emphasis in original). ............................................................................................................ 17

F.    **Exhibits—Supplemental Record** ....................................................................... 19

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *statutory insider status* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *unregistered broker-dealer* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities. ............................................................................................................ 20

Ex. 1—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*. ........................................................................................... 21

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment—December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*. ................................. 23

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.**.......................................................................... 25

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32.............. 26

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealer........................................................................................ 29

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) *statutory underwriters* of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts.............................30

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities..........................................................................31

**Supplemental Appendices** ...............................................................................31

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, armed, forced entry into Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager. .................................................................................32

    A.    Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to *U.S. v. Ware,* 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and *In re Group Management Corp..,* 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence *while armed and without any warrant,* or lawful process—*a potentially deadly encounter,* to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest. ...................................33

    B.    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office *without any lawful warrant by persons impersonating U.S. Marshals*—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in *In re Group Management Corp.,* 03-93031 (BC NDGA) Chapter 11. ..........................................34

    C.    Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators..................................................................35

Appendix 2—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities. ........................................................36

**Appendix 2-1 (con't)**—Money laundering vehicle formed from the Hobbs Act money laundering and criminal usury unlawful debt collection activities profits and proceeds fraudulently obtained by Unindicted Coconspirators Arie Rabinowitz, LH Financial Services, Alpha Capital, AG, et al. ........... 37

**Appendix 3--Re: Appellants' and Appellees' *Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions* pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC 1927.** ........... 38

**STATEMENT OF ULYSSES T. WARE REGARDING ATTEMPTED CONSENT AND IMPLIED CONSENT OF APPELLEES-RESPONDENTS TO JOINT DECLARATION OF UNDISPUTED JURISDICTIONAL MATERIAL FACTS** ........... 45

**CERTIFICATION OF COUNSEL PURSUANT TO BANKRUPTCY RULE 9011(b)(1-4) AND 28 U.S.C. § 1927.** ........... 47

**THE PARTIES' JOINT DECLARATION OF** ........... 49

**UNDISPUTED JURISDICTIONAL MATERIAL FACTS** ........... 49

**Certificate of Service** ........... 63

**End of document** ........... 64

Exhibit 8—(RICO Overt Act #3)—"a pattern of racketeering activities" Atlanta, GA bankruptcy court's employees willful resistance to the Court Orders. ........... 65

  Exhibit 8-1--(RICO Overt Act #4) ........... 66

  Exhibit 8-2--(RICO Overt Act #5) ........... 67

  Exhibit 8-3--(RICO Overt Act #6) ........... 68

  Exhibit 8-4--(RICO Overt Act #7) ........... 69

  Exhibit 8-5--(RICO Overt Act #8) ........... 70

**A-1a—murder for hire order** (02cv2219)(SDNY), Sand, J. authorized the U.S. Marshals (SDNY) **to use deadly force** to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4, cf., McMahon's Dkt. 120 (02cv2219 SDNY), see Ex. 1, supra. ........... 72

**A-1b (con't)—02cv2219 (SDNY), Sand, J. (deceased).** ........... 73

**Legal Analysis—Bankruptcy Courts have authority to enter civil contempt orders per the Second Circuit's precedents.** ........... 74

**Exhibit 9--03-93031 Docket Report** ........... 86

Exhibit 10—Frauds, crimes, and Hobbs Act predatory 18 USC § 2, 152, 157, 371, 401(2), 401(3), 924 (c), 1201-02, 1341, 1343, 1344, 1346, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b) racketeering loan sharking conspiracy of Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, M. Regina Thomas, Patrick Sinback, Wendy L. Hagenau, Colleen McMahon, Frank V. Sica, Tailwind Management L.P., FINRA, Michael H. Dolinger, JAMS, Alexander H. Southwell, Jeffrey B. Norris, David N. Kelley, Arie Rabinowitz, Trailblazer Merger Corp., I, Joseph Hammer, Konrad Ackermann, Baker & McKenzie, LLP, Thomas A. Leghorn, Lawrence B. Mandala, Robert Alberal, London, Fisher, LLP, Nall & Miller, LLP, John Doe Insurance Companies, ##1-5, John F. King, Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, J. Henry Walker, IV, Dennis S. Meir, John W. Mills, III, James H. Morawetz, Kenneth A. Zitter, Esq., the State Bar of Georgia, Office of the General Counsel, the U.S. Trustee, Region, 21, Michael S. Bertisch, et al. ........... 95

Introduction...................................................................................................................96

**Ware-FINRA Joint Declaration of Indisputable Facts**..............................................102

   **Joint Stipulated and Certified Undisputed Material Facts**...........................................102

   End of Declaration ......................................................................................................113

**AA.    Ulysses T. Ware's Oct. 29, 2024, Request for FINRA certification of unregistered broker-dealer status for Tailwind Management L.P., Colleen McMahon, Frank V. Sica, Michael S. Bertisch, and Arie Rabinowitz, an illegal association in fact, a continuing criminal enterprise.** ....114

A.    Ulysses T. Ware's Oct. 29, 2024, FINRA request for certified Form BD (broker-dealer) *public records* regarding Colleen McMahon, her alleged spouse Frank V. Sica, Michael Scott Bertisch, and Arie Rabinowitz. Cf., Ex. 6.0 infra. .................................................................116

B.    Ulysses T. Ware's October 29, 2024, Request to FINRA to certify broker-dealer public records. 117

C.    According to the SEC's website Tailwind Capital (CRD# 156562) is registered only as an "investment advisor" **not a broker-dealer;** and according to the SEC *confirmed by* FINRA's BrokerCheck system Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon *have never registered as broker-dealers* on Form BD according to all available public information. See Ex. 1-3, infra...........118

D.    Tailwind's SEC certification and admission that its employees (Frank V. Sica, Colleen McMahon, Michael S. Bertisch, or Arie Rabinowitz) *are not* registered broker-dealers authorized to engage in the business of underwriting and funding criminal usury convertible promissory notes, see Ex. 8 and GX 1, GX 2, GX 3, and GX 4 in *U.S. v. Ware,* 04cr1224 (SDNY). See Ex. 4 and Ex. 8, infra.....119

Exhibit 1--Frank V. Sica (CRD# 1481917)—employed by Tailwind  Capital Management LP (CRD#156562)...........................................................................................................120

   No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Frank V. Sica were confirmed on Nov. 6, 2024.........................................................................121

Exhibit 2--Michael Scott Bertisch (CRD# 5154572)—employed by Tailwind Capital Management LLP (CRD# 156562)......................................................................................122

   No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Michael Scott Bertisch. It was confirmed on Nov. 6, 2024..................................................................123

Exhibit 3--Colleen McMahon (DOB: July 18, 1951—no CRD number available)—employed by Tailwind Management LLP (CRD# 156562).......................................................................124

   No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Colleen McMahon was confirmed on Nov. 6, 2024...............................................................125

Exhibit 4--Arie Rabinowitz (DOB: Dec. 27, 1972) (No CRD number  available on BrokerCheck)...............126

Exhibit 4.1—Arie Rabinowitz's confession of his and Alpha Capital, AG's unregistered broker-dealer status. See Ex. 5, infra...............................................................................................127

Exhibit 4.2—Rabinowitz and LH Financials' loan sharking admissions. .............................128

   **No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Arie Rabinowitz were confirmed on Nov. 6, 2024.** ...................................................................129

**Exhibit 5--May 17, 2021, FINRA** *Certification of unregistered broker-dealer status* **for each 02cv2219 (SDNY) plaintiff, affiliates, and agents of Tailwind Capital, L.P., Frank V. Sica, and Colleen McMahon certified by FINRA's Marcia Asquith, Esq.**...................................................................130

Exhibit 6.0--Tailwind Capital L.P. Form ADV page 23 filed with the Securities and Exchange Commission (SEC) on March 30, 2024, admitted under oath that Tailwind *is not* registered as a 15 USC §78o(a)(1) broker-dealer in the United States. **Accordingly, Colleen McMahon and  Frank V. Sica personally violated (1) federal law, 15 USC §§ 77e, 77x, and 78ff, and (2) NYS Penal Law, section 190.40, the criminal usury law, a class E felony by underwriting more than $100 million in criminal usury convertible promissory notes and other unregistered securities**...........................................131

Exhibit 6.1—Page 63 Excerpt from Tailwind Capital's March 30, 2024, Form ADV, see Ex. 7, attached hereto, incorporated by reference herein, and made a part hereof: Tailwind admitted under oath that *Tailwind's senior management approved ("pre-clearance")* Frank V. Sica's and Colleen McMahon's (employees and/or agents of Tailwind) **$100 million investments in criminal usury convertible promissory notes,** the same null and void ab initio, uncollectable, and unenforceable subject matter involved in *U.S. v. Ware,* 04cr1224 (SDNY), *Alpha Capital  AG, et al. v. Group Management Corp., et al.,* 02cv2219 (SDNY) (McMahon, J.) and in *In re Group Management Corp.,* 03-93031 (BC NDGA) (WLH) Chapter 11. See Ex. 6-3 infra, Dkt. 258 03-93031 (BC NDGA) (Hagenau, C.J.). .....................132

Exhibit 6.2—(McMahon, Hagenau, and Gitner's mafia RICO 18 USC 2, 157, 371, 1341, 1343, 1503, 1951(a),  1961(6)(B) and 1962(d) Overt and Predicate Acts). Collusion, conspiracy, and coordination of Jim Crow racially-motivated retaliatory, vindictive, and punitive moot void ab initio leave to file sanctions initiated in concert and by judicial collusion of Wendy L. Hagenau and Colleen McMahon—see 02cv2219 (SDNY), Dkt. 139, 139-1, and 139-2, *McMahon and her husband, Frank V. Sica, are both unregistered broker-dealers, personally owned more than $22 million in criminal usury convertible promissory notes similar to GX 1, GX 2, GX 3, and GX 4, according to records maintained by the Exec. Director, Administration of the U.S. Courts and the Judiciary,*  as overt acts in furtherance of the conspiracy to commit bankruptcy fraud, Hobbs Act attempted armed robbery, armed aggravated assault and battery, conspiracy, and other crimes, 18 USC §§ 2, 156-157, 371, 924(c),1951, 1956-57, 1958-59, 1961(6)(B), and 1962(a-d). See In re Colleen McMahon, 02-24-90036jm (2d Cir.) re: Complaint of criminal judicial misconduct (Pending). ..........................................................................................................133

Exhibit 6.3—Dkt. 258 (RICO Overt and Predicate Act) page 3, **In re Group Management Corp.,** 03-93031 (BC NDGA) Chapter 11, Hagenau, C.J. re 18 USC §§ 157(2), (3) and 1961(6)(B) conspiracy to commit bankruptcy fraud........................................................................................................................134

Exhibit 7.0 (see attachment)—Tailwind Management L.P. Form ADV, March 30, 2024—that is, actual innocent Brady exculpatory evidence concealed and suppressed by Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Colleen McMahon, Daniel Gitnér, Edgardo Ramos, and Wendy L. Hagenau in violation of the Aug. 10, 2007, Dkt. 32, *U.S. v. Ware,* 04cr1224 (SDNY) Brady disclosure court order—18 USC 2, 371, and 401(2) and 401(3) civil and criminal contempt of a lawful Brady disclosure court order, cf., Ex. 6.2, supra (McMahon, Hagenau, and Gitner's conspiracy to obstruct justice overt and predicate acts. ...................135

Exhibit 8.0—Colleen McMahon, Frank V. Sica, Arie Rabinowitz, LH Financial Services, and Tailwind's illegal underwriting of criminal usury convertible promissory notes in violation of federal laws, 15 USC §77e, 77x, and 78ff. ..........................................................................................................................136

Exhibit 8.1--Colleen McMahon and Frank v. Sica's Massive *+$22,000,000 Personal Ownership* in Hobbs Act RICO Criminal Usury Convertible Promissory Notes Underwritten in violation of 15 USC

§§ 77e, 77x, 78o(a)(1), and 78ff; and NYS Penal Law, section 190.40, the criminal usury law, *a class E felony*. ................................................................................................................................................. 136

Exhibit 8.2: Judge McMahon's and convicted felon Edward M. Grushko's money laundering that involved unregistered broker-dealer and RICO unlawful debt creator and collector Alpha Capital, AG. What are Judge McMahon and her spouse, Frank V. Sica's relationship to Alpha Capital, AG, Kenneth A. Zitter (Harvard Law), Dennis S. Meir (Harvard Law), Thomas W. Thrash, Jr. (Harvard Law), LH Financial Services, Inc., and Ari Rabinowitz? ....................................................................................................... 137

**Exhibit 8.3: Money laundering by Edward M. Grushko, Alpha Capital, AG, and Judge Colleen McMahon in the Silver Dragon Resources, Inc. litigation.** ...................................................................... 138

**Exhibit 8.4: Reported 2020 income of Frank V. Sica.** .......................................................... 139

Exhibit 8.5: #103 2020 convertible promissory note valued between $500,000 and $1,000,000. ....... 140

Exhibit 8.6: #113 2020 convertible promissory note valued between $100,001 - $250,000. ............... 141

Exhibit 8.7: #142 2020 convertible promissory note valued between $100,001 - $250,000. ............... 142

Exhibit 8.8: #204 2020 convertible promissory note valued between $500,001 - $1,000,000. ............ 143

Exhibit 8.9: #219 2020 convertible promissory note valued between $100,001 - $250,000. ............... 144

Exhibit 8.10: #220 2020 convertible promissory note valued between $15,001 - $50,000. ................ 145

Exhibit 8.11: #244  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 146

Exhibit 8.12: #254  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 147

Exhibit 8.13: #259  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 148

Exhibit 8.14: #276, 277, and 279  2020 convertible promissory notes valued between $500,001 - $1,000,000. ........................................................................................................................ 149

Exhibit 8.15: ##297, 300, 302, and 304 2020 convertible promissory notes valued between $50,001 - $1,000,000. ........................................................................................................................ 150

Exhibit 8.16: #323 2020 convertible promissory note valued between 100,001 - $250,000. ............... 151

Exhibit 8.17: ##327, 334, 336, 337, and 339  2020 convertible promissory notes valued between 50,001 - $500,000. ........................................................................................................................... 152

Exhibit 8.18: #376 2020 convertible promissory note valued between $250,001 - $500,000. ............. 153

Exhibit 8.19: #387 2020 convertible promissory note valued between $15,001 - $50,000. ................ 154

Exhibit 8.20: #425 2020 convertible promissory note valued between $100,001 - $250,000. ............. 155

Exhibit 8.21: #427 2020 convertible promissory note valued between $250,001 - $500,000. ............. 156

Exhibit 8.22: #520 2020 convertible promissory note valued between (not valued). ........................... 157

Exhibit 8.23—Trailblazer Merger Corp., I, Hobbs Act money laundering conduit arranged by LH Financial Services, Arie Rabinowitz, Loeb & Loeb, LLP, Mitchell Nussbaum, Esq., Alexandria Kane, Esq., Colleen McMahon, Edgardo Ramos, Jose A. Cabranes, Robert D. Sack, Amalya L. Kearse, Damian Williams, Frank V. Sica, Tailwind Capital Management LLP, and other unindicted coconspirators to launder the profits and proceeds derived from Hobbs Act extortion, loan sharking, kidnapping, murder for hire, bribery, bank fraud, private equity fraud, securities fraud, and other racketeering activities. 158

End of document ..................................................................................................... 159

**Certificate of Service** .......................................................................................... 161

**End of document** ................................................................................................. 162

Page **10** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

# (13-6) (Part 15-6)

### UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
#### Atlanta Division

In re: GROUP MANAGEMENT CORP., Chapter 11, Debtor.

Case No.: 03-93031 (WLH),

On appeal in *In re Group Management Corp.*, 25cv00613 (NDGA) (MLB).

## B.    APPELLANTS' AND APPELLEES' BANKR. RULE 8009(d) JOINT STIPULATED, CONSENTED AND AGREED DISPOSITIVE JUDICIAL ADMISSIONS JURISDICTIONAL AND INHERENT POWER SANCTIONING APPELLATE RECORD FACTS.

Group Management (a sole proprietorship managed by Appellant Ulysses T. Ware--the successor in interest to Group Management Corp.), the Chapter 11 Debtor, and Ulysses T. Ware, an 11 USC § 1109(b) statutory party in interest, jointly, (the "**Appellants**"), and unindicted coconspirators Alpha Capital, AG, Stonestreet, L.P., Markham Holdings, L.P., Amro International, S.A., Kilpatrick, Townsend, & Stockton, LLP, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Wab Kadaba, Kenneth A. Zitter, Arie Rabinowitz, LH Financial Services Corp., Konrad Ackermann, Joseph Hammer, Trailblazer Merger Corp., I, Wendy L. Hagenau, James H. Morawetz, the Office of the U.S. Trustee, Region 21, Mary Ida Townson, , M. Regina Thomas, Patricia Sinback, Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, Securities and Exchange Commission, Financial Industry Regulatory Agency (FINRA), Barbara Ellis-Monro, Marcia E. Asquith, Robert L.D., Colby, Robert W. Cook, Emma Jones, Sarah Jeffries, The State Bar of Georgia, Office of the General Counsel, William D. NeSmith, III, Paula Frederick, Leigh Burgess, William Alan Myers, Adrienne Nash, Jenny Mittlemen, Jonathan Hewett, Patrick N. Arndt, Michael D. Hostetter, Nall & Miller, LLP, Manibur S. Arora, Edward T.M. Garland, Michael F. Bachner, David B. Levitt, Donald F. Samuel, Janice Singer, Alexander H. Southwell, Thomas W. Thrash, Jr., Michael P. Boggs, Thomas A. Leghorn, Lawrence B. Mandala, Baker & McKenzie, LLP, Robert H. Albaral, John F. King, and Office of the Georgia Insurance Commissioner., and John Doe Insurance Companies, ##1-5, their privies, proxies, surrogates, agents, alter-egos, and all those in active concert therewith, jointly ("the **Appellees**" or "**Unindicted Coconspirators**"), the Appellants and the Appellees, jointly, (the "Parties"), hereby

this 13th day of February 2025, with the advice of counsel, or acting pro se, after a thorough review and evaluation of all Bankr. Rule 5003 "activity" in *In re Group Management Corp.*, 03-93031 (BC NDGA) Chapter 11, and thorough and comprehensive review and evaluation of the complete record before the 03-93031 Bankruptcy Court, the Parties hereby pursuant to Bankr. Rule 8009(d) have stipulated, agreed, consented, and conceded, and with respect to this and all related proceedings (02cv2219 (SDNY), 03-93031 (BC NDGA), *U.S. v. Ware*, 04cr1224 (SDNY), and *U.S. v. Ware*, 05cr1115 (SDNY)) have made the following binding factual judicial admissions and stipulations dispositive actual innocent exculpatory and impeachment Article III jurisdictional and standing indisputable material facts, (the "**Factual Record**") to wit:

1. Based on the Parties' review and evaluation of the Factual Record in 03-93031 the Parties stipulate that the following judicial proceedings, to wit: 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY), (the "**Moot Proceedings**"), are null and void ab initio, moot, a nullity, and have no binding preclusive effect on the Appellants and/or the federal or state courts, or agencies.

2. The Parties stipulate that all orders, judgments, and proceedings therein the Moot Proceedings are themselves null and void ab initio, moot, a nullity, and have lack binding preclusive effect on the Appellants and/or the federal or state courts, or agencies.

   i. The Parties stipulate that Atlanta, GA law firm Kilpatrick, Townsend, & Townsend, LLP, its partners Dennis S. Meir, John W. Mills, III, Wab Kadaba, J. Henry Walker, IV, clients, (the 02cv2219 (SDNY) plaintiffs), its agents, associates, proxies, surrogates, privies, alter-egos, and all those in active concert therewith, and others known and unknown, jointly, has been since March 18, 2003, continuing without interruption to the present, knowingly and willfully operated in interstate commerce as an ongoing illegal association in fact as defined in 18 USC § 1961(4), a continuing criminal enterprise, actively engaged in, and have actively aided, abetted, assisted, enabled, and facilitated its clients, see Dkt. 11[2], to and did:

   ii. knowingly, willfully, and in bad faith commit 11 USC §§ 152 and 157 bankruptcy fraud in 03-93031 by concealing and stealing +$522 million of assets of the Chapter 11 estate,

   iii. knowingly and willfully commit perjury in the Moot Proceedings,[3]

---

[2] *Unregistered broker-dealers*, and 15 USC § 78p(b) statutory insiders of the Chapter 11 Debtor Group Management, Alpha Capital, AG, Stonestreet, L.P., Markham Holdings, Ltd., Amro International, S.A., Kenneth A. Zitter, Arie Rabinowitz, and LH Financial Services Corp.

[3] See the *Nov. 2007* known perjured and materially false testimony of KTS' clients Kenneth A. Zitter, Esq., and Arie Rabinowitz, Tr. 180-250, in *U.S. v. Ware*, 04cr1224 (SDNY), where Rabinowitz aided, abetted, and enabled by KTS' crimes committed in 03-93031 knowingly and implicitly lied and committed perjury and claimed that he (Rabinowitz), LH Financial Services, and Alpha Capital, AG (Anstalt) were registered broker-dealers, when in fact *on May 17, 2021*, *FINRA's senior executive Maria E. Asquith, Esq. certified* that Rabinowitz and KTS' clients, see Dkt. 11, *were not* registered broker-dealers, and *had never* lawfully

iv. knowingly and willfully commit money laundering of +$522 million in strict-liability 15 USC § 78p(b) short-swing insider-trading profits that are the 11 USC § 541(a)(1) property of the 03-93031 Chapter 11 estate, required by federal law, 11 USC § 542(a), to be immediately turned over to Chapter 11 estate for administration,

v. aided, abetted, encouraged, and facilitated the theft, removal, suppression, and concealment of Bankr. Rule 5003 "**activity**" in the 03-93031 proceedings,

vi. facilitated, aided, abetted, assisted, and encouraged the fabrication, theft, suppression, concealment, and removal of public judicial court records in 03-93031 in violation of 18 USC §§ 2071(a), (b),[4]

vii. enabled, aided, abetted, assisted, and facilitated the collection of[5] predatory null and void ab initio criminal usury convertible promissory notes, GX 1-4, issued and purchased by KTS' **unregistered broker-dealer clients**, the 02cv2219 (SDNY) plaintiffs, (the "**Unregistered Broker-Dealers**"), via null and void ab initio, unenforceable, and uncollectable predatory criminal usury contracts, GX 5, jointly, (the "**Criminal Usury Subject Matter**"),

viii. engaged in the theft, concealment, and removal of liability insurance policies' proceeds that are 11 USC 541(a)(1) property of the Chapter 11 estate,

---

registered pursuant to 15 USC § 78o(a)(1) as brokers or dealers to lawfully engage in securities transactions with respect to GX 1-4, and GX 5, in the United States in violation of 15 USC §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78ff, 78cc(b), and SEC Release 33-7190 n. 17 (1995)—that is, actual innocent Brady exculpatory and impeachment evidence required to have been produced and disclosed to Appellant Ware "before trial" in *U.S. v. Ware*, 04cr1224 (SDNY), and *U.S. v. Ware*, 05cr1115 (SDNY), as ordered by the late Judge Sweet (Dkt. 32) and Pauley (Dkt. 17), respectively: actual innocent Brady exculpatory and impeachment evidence knowingly and deliberately concealed and suppressed by KTS and the Appellees to cause the racially-motivated hate crime false imprisonment of Appellant Ulysses T. Ware, Esq. for his and the Chapter 11 Debtor, Group Management Corp.'s, lawful refusal and resistance to joining the KTS and Appellees' Hobbs Act predatory loan sharking and money laundering criminal enterprise, and aid, abet, and facilitate KTS' **unregistered broker-dealer clients'** and their agents' unlawful collections and enforcement of the predatory null and void ab initio criminal usury convertible promissory notes, GX 1-4, in criminal violation of 15 USC §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78ff, and 18 USC §§ 2, 152, 157, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d).

[4] See 03-93031 (BC NDGA) Dkt. 278, Jan. 27, 2025, *__confession, judicial admissions, and self-incrimination__* by Barbara Ellis-Monro regarding Bankr. Rule 5003 fraud, and 18 USC §§2, 152, 157, 371, 401(2), 401(3), 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1512, 1519, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b)—a pattern of racketeering activities, with respect to the willful criminal violations in regard to the 03-93031 judicial public record.

[5] See Dkt. 11, 15, and 16 illegal collection activities in 03-93031 *__in violation of federal racketeering law__*, 18 USC §1961(6)(B) and NYS Penal Law, section 190.40, the criminal usury law, a class E felony.

ix. engaged in an ongoing insurance fraud conspiracy with the Georgia Office of Insurance Commissioner ("**OIC**"), and unindicted coconspirators John F. King, Patrick Nash Arndt, Michael D. Hostetter, Nall & Miller, LLP, Garland, Samuel, & Loeb, P.C., Edward T.M. Garland, Manibur S. Arora, Donald F. Samuel, Robin Loeb, Janice Singer, Michael F. Bachner, David B. Levitt, FINRA, Robert W. Cook, Robert L.D. Colby, Baker & McKenzie, LLP, Thomas A. Leghorn, Lawrence B. Mandala, and Robert H. Albaral, jointly, (the "**Insurance Fraud Coconspirators**"), in the concealment and suppression of the identities of KTS' and the Insurance Fraud Coconspirators' liability insurance carriers, John Doe Insurance Companies (##1-5),

x. directly and/or indirectly, aided and abetted by the Appellees and/or their privies and agents, engaged in Hobbs Act threats of violence, used armed violence to break-in the Atlanta, GA law office and the Brooklyn, NY personal residence (on Sept. 12, 2024) of Appellant Ulysses T. Ware by persons heavily armed. On Sept. 1, 2004, in Atlanta, GA and threatening to "murder" Appellant Ware unless Appellants Ware and Group Management issued to KTS' unregistered broker-dealer clients more than 50 million "free-trading stocks" and "those legal opinions that judge Sand's people [Arie Rabinowitz, Kenneth A. Zitter, convicted felon Edward M. Grushko, Barbara R. Mittman, Esq., Konrad Ackermann, LH Financial Services Corp., et al.] want in New York …" (quoting four (4) heavily armed, and dangerous white men), impersonating U.S. Marshals, who using armed force broke into Appellant Ware's Atlanta, GA law office (a commercial business entity) on Sept. 1, 2004, using armed and potentially deadly force (i) to intimidate using potentially deadly force Appellants Ware and Group Management, and (ii) to collect using potentially deadly and threats of extreme violence and force the Hobbs Act predatory criminal usury convertible promissory notes, GX 1-4, for Judge Sand, Zitter, KTS, KTS' clients, and the Appellees named herein.

xi. The Parties stipulate and agree that each Appellee, their privies, agents, and all those in active concert therewith, the 03-93031 Bankruptcy Court, the Moot Proceedings' courts, and all federal and state agencies (the State Bar of Georgia and its employees) are bound, absolutely, by the binding preclusive effects of the late Hon. District Judge Sand's (SDNY), final order, Aug. 13, 2003, Dkt. 65, 15 USC 78p(b) statutory insider ruling regarding each of KTS' clients; and (ii) Judge Sand's final judgment, the Dec. 20, 2007, Dkt. 90, Fed. R. Civ. P. 41 (a)(2) **voluntary** final judgment on the merits of the 02cv2219 (SDNY) and by extension the 03-93031 proceedings Dkt. 6, 11, 13, 14, 15, 16, **28**, **256**, **258**, **263**, **274**, **275**, and **278**, (the "**Moot Orders**").

xii. The Parties stipulate and agree that on Dec. 20, 2007, Dkt. 90, KTS' clients, the 02cv2219 (SDNY) plaintiffs, thorough counsel, Unindicted Coconspirator Kenneth A. Zitter, Esq., *ex parte*, *after the statute of limitations had run on all claims in the 02cv2219 (SDNY) complaint, pursuant to Fed. R. Civ. P. 41(a)(2), voluntarily moved* the 02cv2219 (SDNY) District Court (Sand, J.) and Judge Sand effectively and immediately *dismissed with prejudice* the 02cv2219 (SDNY) proceedings, and reversed, vacated, set aside, *vitiated*, and *annulled* all orders, judgments, and proceedings in 02cv2219 (SDNY), and

by operation of law effectively enter final judgment on the merits of the 02cv2219 (SDNY), and by extension the 03-93031 proceedings *__in favor of the Appellants Group Management and Ulysses T. Ware__*.

xiii. The Parties stipulate and agree that Appellants Group Management and Ulysses T. Ware pursuant to operation of law, and the legal preclusive effects of Judge Sand's Dec. 20, 2007, Rule 41(a)(2) final judgment are the legal prevailing parties with respect to the 02cv2219 (SDNY), (the "**Final Judgment Prevailing Parties**").

xiv. The Parties stipulate and agree that Appellants Group Management and Ulysses T. Ware as a direct and proximate cause resulting from the Unindicted Coconspirators', their agents, privies, proxies, surrogates, or alter-egos' extensive, pervasive, long-running, criminal, and *__ongoing pattern of racketeering activities__* and individual and personal crimes committed in regard to the Moot Proceedings, the Appellants have, are currently, and will continue to suffer extreme irreparable harm, injuries, and damages in the sum certain amount of $5.2225 billion.

xv. Each Appellee, Unindicted Coconspirator, has agreed, stipulated, consented, and approved of 18 USC §§ 2, 371, 1951(a), and 1962(d) joint and several racketeering civil liability; and further has consented, agreed, stipulated, and approved of the immediate entry of a money judgment in the sum certain amount of $5.2225 billion, entered in favor of the Appellants Group Management and Ulysses T. Ware, entered against the Appellees' individual and personal capacity, and entered and secured by all personal and business assets and properties of each Appellees or Unindicted Coconspirator, their privies, agents, and all those in active concert therewith.

xvi.    Each Appellee, Unindicted Coconspirator stipulates that the State Bar of Georgia, (SBGA), and its agents and employees, acted knowing, willfully, maliciously, and in bad faith, as deliberate Hobbs Act racketeering overt and predicate acts in furtherance of KTS and its unregistered broker-dealer clients' RICO conspiracy's criminal objection—**that is, the Hobbs Act 18 USC § 1961(6)(B) collection and enforcement of the predatory criminal usury convertible promissory notes, GX 1-4**. The SBGA's employees, Hewett, Myers, Smith, NeSmith, Frederick, Mittlemen, Nash, Burgess, and outside legal counsel, Nall & Miller, LLP, Patrick Nash Arndt, and Michael D. Hostetter, directly and/or indirectly *__maliciously forged, fabricated, and manufactured__* the false, fraudulent, and counterfeit alleged Affidavit of Personal Service that was used to initiate the fraudulent *In re Ware*, 2008 disbarment proceedings based on the null and void ab initio, and moot, 04cr1224 (SDNY) and 05cr1115 (SDNY) proceedings. See Ex. A, infra.

Respectfully submitted,

Ulysses T. Ware

*[signature]*

/s/ Ulysses T. Ware

Attorney in fact for Appellants Ulysses T. Ware and Group Management

Dated: February 18, 2025

Exhibit A—SBGA's known false, fraudulent, counterfeit, and fabricated alleged January 15, 2007, **Affidavit of Personal Service (perjury)** on Ulysses T. Ware, Esq. at the Bureau of Prison's Brooklyn, NY MDC federal prison—the BOP has confirmed that Mr. Ware ***was not* personally served** on January 15, 2007, at the MDC Brooklyn, NY prison because according to the BOP " … Mr. Ware ***was not*** incarcerated and ***was not*** in the custody of the Bureau of Prison on January 15, 2007, ***anywhere in the United States … and certainly not in Brooklyn, NY … that is a fact*** …." (emphasis in original).

**SUPREME COURT, , STATE OF GEORGIA**

------------------------------------------------------------X

**STATE OF GEORGIA**
Plaintiff/Petitioner

Vs

**ULYSSES THOMAS WARE**
Defendant/Respondent

------------------------------------------------------------X

**STATE OF NEW YORK** }
**COUNTY OF KINGS** } SS:

**SHERIFF'S AFFIDAVIT OF SERVICE**
**CPLR Section 306(d)**

Sheriff's Case # 08000590

**FILED** 1-24-08 ph

Index/Docket # S08B0590 STATE DISCIPLINARY BOARD STATE BAR OF GEORGIA

I **C Palmieri** __ Deputy Sheriff of the City and State of New York, authorized pursuant to my special duties to serve process, hereby certify that: I am not a party to this action or proceeding and over 18 years of age. I further certify that on the **15th** day of **January** 2007, at approximately **10.42AM** at 80 29ᵗʰ Street in the borough of Brooklyn, County of Kings, I served the annexed: summons, complaint, **X** petition ☐ subpoena ☐ order/temporary order of protection ☐ order to show cause ☐ writ of habeas corpus ☐ property execution ☐ sheriff's sale notice ☐ sheriff's levy notice ☐ interrogatories ☐ financial disclosure affidavit **X Attached Documents** ,upon
**ULYSSES THOMAS WARE**, the defendant/respondent, in the following manner:

| | | |
|---|---|---|
| **PERSONAL DELIVERY** | ☑ | By delivering to and leaving with the above named defendant/respondent personally a true copy thereof, said person being known as the person mentioned and described herein. |
| **PERSONAL SERVICE ALTERNATE PERSON** (RESIDENCE) | ☐ | By delivering to and leaving with, _____, a person of suitable age and discretion, who is _____ to the defendant/respondent. A true copy thereof. Said address is the dwelling place/usual place of abode of the party served. |
| **PERSONAL SERVICE ALTERNATE PERSON** (EMPLOYMENT) | ☐ | By delivering to and leaving with, _____, _____, a person at the defendant's/respondent's place _(work title)_ of employment: _____ _(name of place of employment)_ |
| **MAILED** | ☐ | On _____ I mailed the above mentioned process(es) by first class USPS mail to the defendant/respondent at his/her last known residence/actual place of business in an envelope bearing the legend **"PERSONAL AND CONFIDENTIAL"** and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the defendant/respondent. |
| **CORPORATION** | ☐ | By delivering to and leaving with, _____, a true copy thereof. Said person stated he/she was _____ an agent authorized to accept service of legal process. _(work title)_ |
| **DESCRIPTION** | ☑ | The person served is ☒X Male Female, and approximately: Age:48  Height: 6.4  Weight: 265lbs  Skin: Black   Hair: Black |

**NOTARY**
Sworn to (affirmed) before me
this ___15___ day of __JANUARY__ 2008

_(signature)_ Ryael J Lucas

RAFAEL J. LUCAS
NOTARY PUBLIC, State of New York
No. 01LU5066044
Qualified in Queens County
Commission Expires September 30, 20 _10_

_(signature)_ **DEPUTY SHERIFF Shield #180**

000017

# F.  Exhibits—

## Supplemental Record

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) ***statutory insider status*** (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' ***unregistered broker-dealer*** clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities.[6]

---

[6] Judge Sand's Aug. 13, 2003, ruling, binding **a lawful court order**—(A) subject to enforcement against Hagenau, KTS, its client, et al., via civil and criminal contempt (18 USC §§401(2), 401(3)) absolutely binding on the 03-93031 Chapter 11 Bankruptcy Court (NDGA) (Hagenau, C.J.), which (B) ***conferred fiduciary duty status*** on all 18 USC §1962(d) racketeering to commit bankruptcy fraud unindicted coconspirators to wit, Hagenau, KTS, its partners, each of ***KTS' unregistered broker-dealer clients, et al.***— that is, Hagenau, KTS, its partners, and its clients are subject to (i) ***an existing and extant and current equitable lien on their personal and individual assets***, (ii) current and extant constructive trust impressed on their assets, (iii) and U.C.C. Article 1 encumbrance and lien on their assets in the amount of ***+$522M plus interest*** running from the date of Judge Sand's 15 USC §78p(b) court order, August 13, 2003, (i.e., stolen and concealed property and assets of the 03-93031 Chapter 11 estate).

**Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore*, ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*.

Appx 34-2—GX 24 (Dkt. 65, 02cv2219)—found each 02cv2219 plaintiff to be a 15 USC 78p(b) statutory insider of GPMT, and their and their agents required to disgorge back to GPMT +$500 million in trading profits.



Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

The conspiracy to commit securities and bankruptcy fraud by KTS during the In re Group Mangement Corp, 03-93031 (BC NDGA) Chapter 11 proceedings. KTS' clients' judicially admitted in ex parte communications with the 02cv2219 (SDNY) district court (Sand, J.) that KTS did in fact knowingly violated 18 USC 2, 157, 371, 924(c), 1201-02,1341, 1343, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B) and 1962(d) by concealing and suppressing its clients' ownership of GPMT's stock.

letter relating not to Plaintiff Stonestreet, but rather to Plaintiff Alpha Capital. Plaintiff explained, upon inquiry from Chambers, that Stonestreet in fact beneficially owned more than 9.9% of Group Management's stock.

Given the above facts, the Court observes that the conditions set in the July 2 Order regarding the Stonestreet conversion request have not been met, and that Defendant is therefore not in contempt of that Order, or of the follow-up Order of July 23. Nonetheless, pursuant to other orders of this Court, including the Order and Judgment of November 25, 2002, Defendant is still bound to honor appropriate conversion requests from Alpha Capital, and Plaintiff has submitted both an affidavit and opinion letter regarding the legality of the current Alpha conversion request. Accordingly, failure by Defendant to honor that request within ~~two~~ four (4) business days of this Order shall constitute contempt.

SO ORDERED.

Dated: New York, New York
August 14, 2003

_[signature]_ U.S.D.J.

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment—December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*.[7]

---

[7] KTS' *unregistered broker-dealer clients'* Dec. 20, 2007, *voluntary* Rule 41(a)(2) *dismissal with prejudice* of the 02cv2219 (SDNY) lawsuit—final judgment on the merits for the Chapter 11 debtor, Group Management, and 11 USC §1109(b) statutory party in interest Ulysses T. Ware, is currently and will be enforced against Hagenau, KTS, its clients, and each 18 USC §1962(d) unindicted coconspirator *resisting* the *legal and equitable preclusive effects*—that is, the immediate 11 USC §542(a) turnover of all Chapter 11 estate assets, of the binding court order, see 18 USC §§401(2), and 401(3), and Fed. R. Crim. P. 42.



United States District Court
Southern District of New York

------------------------------------x

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership,

                                        Plaintiffs,

          -against-

Group Management Corp., formerly known
as IVG Corp., formerly known as Internet
Venture Group, Inc., Elorian Landers and
Becky Landers,

                                        Defendants.

------------------------------------x

Order of Dismissal
Without Prejudice

02 Civ. 2219(LBS)

Pursuant to the provisions of Rule 41(a)(2) of the Federal Rules of Civil Procedure, upon

request of Plaintiff Alpha Capital Aktiengesellschaft, this case is dismissed without prejudice.

Dated: New York, New York
       December   , 2007

CERTIFIED AS A TRUE COPY ON

THIS DATE

BY

          Clerk
          Deputy

U.S.D.J.

Law Offices of Kenneth A. Zitter

By:
     Kenneth A. Zitter, Esq.
     Attorneys for Plaintiff
       Alpha Capital Aktiengesellschaft
     260 Madison Avenue - 18th Floor
     New York, New York 10016

COPIES MAILED TO ALL PARTIES

Page **24** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <u>unregistered broker-dealer status</u> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court,  pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<u>a pattern of racketeering activities.</u>**

<u>**CERTIFICATION OF NO FINRA BUSINESS RECORDS**</u>

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations.  In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA").  I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

> a) Alpha Capital, AG
> b) Stonestreet, L.P.
> c) Markham Holdings, Ltd.
> d) Amro International, S.A.
> e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this __17th__ day of ___May___, 2021.

Notary Public, District of Columbia

My commission expires: ___5/31___

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 4—Sweet, J., ***U.S. v. Ware***, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32.

UNITED STATES OF AMERICA, - against - ULYSSES THOMAS WARE, a/k/a THOMAS WARE, Defendant.
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
2007 U.S. Dist. LEXIS 58786
04 Cr. 1224 (RWS)
August 8, 2007, Decided
August 10, 2007, Filed

**Editorial Information: Subsequent History**

Later proceeding at United States v. Ware, 2008 U.S. Dist. LEXIS 101537 (S.D.N.Y., Dec. 9, 2008)

**Counsel**         For Thomas Ware (1), also known as Ulyssess Thomas Ware (1), Defendant: Nancy Lee Ennis, LEAD ATTORNEY, Quijano & Ennis, P.C (381 Park Ave. S.), New York, NY.

Thomas Ware (1), also known as Ulyssess Thomas Ware (1), LEAD ATTORNEY, Defendant, Pro se, Norcross, GA.
For USA, Plaintiff: Nicholas Stoloff Goldin, LEAD ATTORNEY, U.S. Attorney's Office, SDNY (St Andw's), New York, NY.

**Judges:** ROBERT W. SWEET, U.S.D.J.

Opinion

**Opinion by:**        ROBERT W. SWEET

Opinion

*MEMORANDUM OPINION AND ORDER*

Sweet, D.J.,

Defendant Thomas Ware (the "Defendant" or "Ware") has filed a motion seeking the following: (1) Dismissal of the indictment for lack of proper venue in the Southern District of New York; (2) Production of exculpatory material; (3) Notice of other act evidence the Government intends to introduce at trial under Fed. R. Evid. 404(b); (4) A bill of particulars; (5) Disclosure of *ex parte* communications between Judge Leonard B. Sand and the plaintiffs in the civil contract action underlying the pending criminal contempt charges, *Alpha Capital, et al. v. Group Management, at al.*, No. 02 Civ. 2219 (LBS) (the "Civil Action"); (6) Disclosure of the name and contact information of the Government official who certified certain affidavits in the Civil Action; (7) Disclosure of the criminal history and plea agreement of "Edward M. Grushko"; (8) Disclosure of the indictments of "Thomas Badian" and "Andres Badian"; and (9) Disclosure of the identity of the Assistant United States Attorney who presented the indictment to the Grand Jury. For the reasons stated below, the motion will be granted in part and denied in part.

*Venue is Proper*

When a defendant is charged with criminal contempt for violating a court order, "[t]he district in which the court order was issued is . . . said to have sufficient contact with the criminal contempt to be the site of prosecution," *United States v. Reed*, 773 F.2d 477, 481-82 (2d Cir, 1985). All charges

1ybcases                                          1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

in the indictment allege that Ware violated court orders entered in this district by Judge Sand in the Civil Action. Accordingly, venue is proper.

*The Government Shall Produce All Brady Material Prior to Trial*

Ware has requested that the Government provide him with all exculpatory and impeachment material before the commencement of the trial, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In its brief (and in prior communications to the Defendant), the Government has repeatedly consented to this request. There being no opposition, this aspect of the motion shall be granted.

*The Government Shall Provide Notice of Other Act Evidence*

Ware has requested that the Government provide him with all "other act" evidence by a date certain before the trial. In its brief, the Government has agreed to provide notice of all Fed. R. Evid. 404(b) evidence by September 19, 2007, which is the current deadline for the filing of *in limine* motions. There being no opposition, this aspect of the motion shall be granted. Should the deadline for the filing of *in limine* motions be extended, the deadline for notice of "other act" shall likewise be extended to coincide with the newly established *in limine* deadline.

*Defendant is Not Entitled to a Bill of Particulars*

Ware seeks a bill of particulars from the Government apparently requesting: (1) the specific acts upon which venue is based in the Southern District of New York; (2) how he violated the Civil Action court orders at the heart of the case; (3) the identity of the attorney who mailed Judge Sand's November 25, 2000 order to him and how he acknowledged receipt of said order; and (4) a list of all exhibits to be introduced at trial by the Government.

The purpose of a bill of particulars in a criminal case is to permit the defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

In the instant case, the Indictment provides all the information necessary by specifically identifying each court order with which Ware failed to comply and what act or omission violated the orders. To wit, the Indictment alleges that each order required Ware to honor the conversion notes issued to the plaintiffs in the Civil Action, which Ware and his corporation were contractually obligated to do. *See* Indictment at 4-6. For each of the three orders discussed in the Indictment, it is alleged that the notes were not honored (or, in one case, the notes were honored after the court-imposed deadline). *See id.* at 5-8. Furthermore, the Government has advised the Court that it has already produced to Ware copies of all the relevant orders and other documents from the Civil Action (to which Ware was a party). "The Government should not be compelled to disclose additional details of its case if the defendant has received adequate notice of the charges against him and can prepare fully for trial through the exercise of reasonable diligence." *United States v. Martinez-Martinez*, 2001 U.S. Dist. LEXIS 17558, 2001 WL 1287040, at *6 (S.D.N.Y. Oct. 24, 2001). Such is the case here.

Furthermore, the Government is not required to identify any of its witness absent "a specific showing that the disclosure [is] both material to the preparation of [defendant's] defense and reasonable in light of the circumstances surrounding his case." *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975). Here, Defendant has not even attempted to make such a showing.

Finally, a criminal defendant is not entitled to a list of the Government's trial exhibits at this stage. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 568 (S.D.N.Y. 2000).

2

1ybcases

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Accordingly, Defendant's motion for a bill of particulars will be denied.

**The Government Shall Produce Any Exculpatory Ex Parte Communications Between Judge Sand and the Plaintiffs in the Civil Action In Its Possession**

Ware has not presented any justification, argument, or legal authority to support his request for the production of all ex parte communications between Judge Sand and the plaintiffs in the Civil Action. Furthermore, the Government has stated that if it discovers any relevant exculpatory material relating to this issue, it will produce such material to the Defendant. Accordingly, Ware's request will be granted only to the extent of requiring the Government to produce all exculpatory material to the Defendant.

**The Government Is not Obligated to Disclose the Name and Contact Information of the Official who Certified Certain Affidavits in the Civil Action**

Again, Ware has not presented any justification, argument, or legal authority to support this request. The Government opposes this request because it amounts to identifying a witness in advance of the trial (and is not relevant). Because Ware has failed to make a showing that disclosure of the identity of this potential witness is both necessary and reasonable, the request will be denied. *See Cannone*, 528 F.2d at 301.

**The Government Is Not Required to Disclose Information about Unrelated Criminal Defendants**

Ware has sought disclosure of the criminal history and plea agreement of Edward M. Grushko and the indictments of Thomas Badian and Andres Badian. He has not presented any justification, argument, or legal authority to support these requests, nor has he identified who the persons are or how they are related to this case. Furthermore, the Government has stated that it is not aware of any relationship between the trial and these persons. In the absence of any basis for this request, it will be denied.

**The Government Is Not Required to Disclose the Identity of the Attorney Who Presented the Indictment to the Grand Jury**

Yet again, Ware has not presented any justification, argument, or legal authority to support this request. Under Fed. R. Cr. P. 6(e)(3)(E)(ii), "[t]he court may authorize disclosure [of grand jury proceedings] . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Here, Defendant has not even attempted to make such a showing. Accordingly, this request will be denied.

**Conclusion**

For the reasons stated above, Defendant's motion will be granted to the following extent: the Government shall produce all exculpatory and impeachment evidence prior to trial and all Rule 404(b) evidence no later than the deadline for filing *in limine* motions. Defendant's motion is denied in all other respects.

It is so ordered.

New York, NY

August 8, 2007

ROBERT W. SWEET

U.S.D.J.

lybcases                          3

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers.

UNITED STATES v. WARE, CASE NO. 09-0851 (2D CIR.) (2010)
ON APPEAL FROM *UNITED STATES v. WARE*, 04cr1224 (Sweet, J.)
18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION
APPELLANT WARE'S OPENING BRIEF

1    Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2    S78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4    **ADMISSION OF BROKER-DEALER STATUS BY**
5    **ARI RABINOWITZ UNDER CROSS EXAMINATION.**
6
7    Mr. Ware: What is the name of your company?
8    Rabinowitz: LH Financial Services.
9    Mr. Ware: What business is that company?
10   Rabinowitz: We are in the private placement business.
1    **Tr. 206**
2    Mr. Ware: Approximately how many companies have you assisted Alpha Capital
3    with over, let's say, the last five years?
4    Rabinowitz: A good few hundred.
5    Mr. Ware: A good few hundred?
6    Rabinowitz: Yes,
7    Rabinowitz' testimony of being in the private placement business, and assisting
8    Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
9    §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
10   under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
1    regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) ***statutory underwriters*** of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts.

12.  Plaintiffs purchased the Notes pursuant to the terms of the Subscription Agreement (the "Subscription Agreement") entered into between and among the parties on or about February 2, 2001. Plaintiffs collectively paid $1.1 million to IVG and each Plaintiff received a Note in proportion to its investment, as set forth in the paragraph 10.

13.  Pursuant to Section 10.1(iv) of the Subscription Agreement, IVG was obligated to file on or before May 3, 2001, a form SB-2 Registration Statement with the United States Securities and Exchange Commission registering the stock underlying the Notes so that upon conversion the stock could be sold on the open market without restriction. IVG was obligated to

4

121

Case 1:02-cv-02219-CM    Document 100-1    Filed 07/16/1?

have such registration statement declared effective on or before June 17, 2001. Thus Section 10.1(iv) of the Subscription Agreement provides:

"The Company shall file with the Commission within 90 days of the Closing Date (the 'Filing Date'), and use its reasonable commercial efforts to cause to be declared effective a Form SB-2 registration statement (or such other form as it is eligible to use) within 135 days of the Closing Date in order to register the Registrable Securities for resale and distribution under the Act. The registration statement described in this paragraph must be declared effective by the Commission within 135 days of the Closing Date (as defined herein)('Effective Date')."

IVG failed to comply with its obligations and to date has not had its registration statement declared effective.

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.

# Supplemental Appendices

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, armed, forced entry into Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager.



(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

A.    Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to ***U.S. v. Ware,*** 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and ***In re Group Management Corp..***, 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence ***while armed and without any warrant***, or lawful process—***a potentially deadly encounter***, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest.



B.     Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office _**without any lawful warrant by persons impersonating U.S. Marshals**_—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in _**In re Group Management Corp.,**_ 03-93031 (BC NDGA) Chapter 11.

| 75. | 9/1/04<br>Age: 44 | Contempt of Court | Atlanta, Georgia | 10/15/04:<br>Dismissed pursuant to order of Judge Leonard B. Sand |



76.  According to Sr. U.S. Probation Officer Atonya M. Craft of the Northern District of Georgia, on September 1, 2004, the defendant was arrested in the Northern District of Georgia in response to an order issued by the Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02 CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil matter (which included the defendant) to deliver Silver Screen Studios, Inc. common stock to honor all of the conversion requests for Group Management Corp. or Silver Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand issued a warrant for the defendant's arrest for contempt of court, for failure to obey the December 22, 2003, order. This arrest order indicated that the defendant was to be arrested by the U.S. Marshals Service and detained until the defendant purged himself of contempt by delivering the above-referenced

## Sept. 1, 2004 kidnapping

WARE, ULYSSES THOMAS                15                P47014 - C. Tyler

common stock. On July 1, 2004, the defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia. He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to purge himself of contempt and offered no acceptable reason to prevent enforcement of the contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr., ordered the defendant to remain in the custody of the U.S. Marshals Service until he purged himself of contempt or was ordered released by either Judge Thrash or Judge Sand. The defendant's request for bond was granted, and he was released on September 3, 2004, after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

77.  On September 28, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order in part to the extent that it authorized the arrest of the defendant outside of the state of New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street, New York, New York. The order remained in effect insofar as it could be served on the defendant in the state of New York or within 100 miles of the U.S. Courthouse located at 500 Pearl Street, New York, New York.

78.  On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 set on September 2, 2004. On October 15, 2004, the defendant's motion was granted by the Honorable Thomas W. Thrash, Jr.; $150,000 was refunded to the defendant, and the corporate surety bond was discharged.



C.    Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators.



**Appendix 2**—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities.



**Appendix 2-1 (con't)**—Money laundering vehicle formed from the Hobbs Act money laundering and criminal usury unlawful debt collection activities profits and proceeds fraudulently obtained by Unindicted Coconspirators Arie Rabinowitz, LH Financial Services, Alpha Capital, AG, et al.



**Appendix 3--Re: Appellants' and Appellees' _Consent Joint Jurisdictional Declaration_** **_of Undisputed Material Facts and Stipulated Admissions_ pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC 1927.**

# Case No. 03-93031

# United States Bankruptcy Court (12-17)
# For the Northern District of Georgia
# (Atlanta Division)
### Submitted for Filing on
### Tuesday, February 4, 2025, 9:34:33 AM

---

# In re Group Management Corp., Chapter 11

**Re: Appellants' and Appellees' _Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions_ pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC 1927.[8]**

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**
**February 4, 2025**

---

[8] The Movants' challenge to the Bankruptcy Court (NDGA) _In re Group Management Corp.,_ 03-93031 Chapter 11 Article III jurisdiction over **predatory criminal usury unlawful debts subject matter**, GX 1-4; and (2) challenge to the Article III standing of the 02cv2219 (SDNY) plaintiffs, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP clients, see Dkt. 11, **unregistered broker-dealers**. Cf., Ex. 3, infra. What legitimate and lawful interest would a United States Bankruptcy Court (Ellis-Monro, C.J. and Hagenau, C.J.) have in not **_sua sponte_** affirmatively confirming the Court's mandatory unwaivable constitutional jurisdiction to adjudicate the Dkt. 6, 11, 13, 14, 15, and 16 proceedings with respect to fundamental constitutional prerequisites—"legally protected interest" in criminal usury convertible promissory notes--in _**predatory criminal usury unlawful debts**_, GX 1-4, and (2) the Article III standing of KTS' **_unregistered broker-dealers clients to enforce and/or collect GX 1-4_**? **_No legitimate interest exists_**. If no legitimate interest exists, then any alleged interest, by definition. must be nefarious, corrupt, perfidious, and illegitimate—that is, **_an unlawful interest_**.

# Table of Contents

STATEMENT OF ULYSSES T. WARE REGARDING ATTEMPTED CONSENT AND IMPLIED CONSENT OF APPELLEES-RESPONDENTS TO JOINT DECLARATION OF UNDISPUTED JURISDICTIONAL MATERIAL FACTS ................................................................................. 45

CERTIFICATION OF COUNSEL PURSUANT TO BANKRUPTCY RULE 9011(b)(1-4) AND 28 U.S.C. § 1927. ........................................................................................................................ 47

THE PARTIES' JOINT DECLARATION OF ............................................................. 49

UNDISPUTED JURISDICTIONAL MATERIAL FACTS ......................................... 49

Certificate of Service .................................................................... Error! Bookmark not defined.

Exhibit I—Dkt. 278—Barbara Ellis-Monro's Self-incrimination for conspiracy to obstruct justice and commit bankruptcy fraud, 18 USC §§ 2, 152, 157, 371, 924(c), 1341, 1343, 1344, 1346, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), et. seqs. confessed and admitted by Barbara Ellis-Monro in her personal and individual capacity as an 18 USC § 1962(d) unindicted coconspirator having joint and several personal criminal and civil liability in the amount of +$5.2225 billion. .................................................... Error! Bookmark not defined.

F.    Exhibits—Supplemental Record ..................................... Error! Bookmark not defined.

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) statutory insider status (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' unregistered broker-dealer clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities. .............................................................................. Error! Bookmark not defined.

Ex. 1—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) binding judicial ruling and court order— Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice. ...................................................... Error! Bookmark not defined.

Exhibit 2—Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment— December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte Dismissal with Prejudice of the 02cv2219 (SDNY) Lawsuit After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware. ......................... Error! Bookmark not defined.

Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court,  pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. Actual innocent Brady exculpatory evidence. .Error! Bookmark not defined.

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32. .......... **Error! Bookmark not defined.**

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers. ........................................................ **Error! Bookmark not defined.**

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) *statutory underwriters* of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts. **Error! Bookmark not defined.**

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. ........................................... **Error! Bookmark not defined.**

**Supplemental Appendices** ................................................................ **Error! Bookmark not defined.**

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, **armed, forced entry into** Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager. ....................................... **Error! Bookmark not defined.**

A.    Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to *U.S. v. Ware*, 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and *In re Group Management Corp.*, 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence *while armed and without any warrant*, or lawful process—*a potentially deadly encounter*, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest. ..... **Error! Bookmark not defined.**

B.    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office *without any lawful warrant by persons impersonating U.S. Marshals*—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in *In re Group Management Corp.*, 03-93031 (BC NDGA) Chapter 11. ........... **Error! Bookmark not defined.**

C.    Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators. .................................... **Error! Bookmark not defined.**

**Appendix 2**—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities. ........................... **Error! Bookmark not defined.**

**End of document** ................................................................................................................... 38

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**

**February 4, 2025, 9:34:33 AM**

**VIA ELECTRONIC FILING and U.S. mail**

The Honorable Barbara Ellis-Monro
Chief Judge
United States Bankruptcy Court
Northern District of Georgia
Atlanta Division
1431 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

**Re:** *In re Group Management Corp.*, **Chapter 11, Case No. 03-93031 (WLH) – Appellants-Movants' Rule 9014/12(h)(3) Jurisdictional Notice of Appeal (Part 14-10) – Submission of The Parties' Joint Declaration of Undisputed Jurisdictional Material Facts.**

Your Honor:

Appellants-Movants Group Management and Ulysses T. Ware, and Appellees-Respondents Kilpatrick Townsend & Stockton LLP, its Unregistered Broker-Dealer clients, et al. respectfully submit the enclosed ***The Parties' Consent Joint Declaration of Undisputed Jurisdictional Material Facts*** for the Court's consideration in connection with the pending Jan. Rule 9014/12(h)(3) Jurisdictional Notice of Appeal (Part 14-10) filed by Appellants-Movants on January 30, 2025, via email and the U.S. mail addressed to the Hon. Barbara Ellis-Monro. This Joint Declaration, titled "**Re: Appellants' and Appellees' Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC § 1927**," represents a collaborative effort by all parties to streamline the pending "sua sponte" required Article III constitutional jurisdictional

inquiry before this Honorable Court and to facilitate a focused and efficient resolution of the critical Article III standing and subject matter jurisdiction issues raised in the Notice of Appeal.

The enclosed Joint Declaration meticulously sets forth thirty-five (35) discrete and material Article III jurisdictional facts, each drawn directly from the Record before this Honorable Court in the 03-93031 Bankruptcy Case and the related 02cv2219 (SDNY) Litigation. *These facts, as jointly declared and stipulated by Appellants-Movants and Appellees-Respondents, are undisputed and readily verifiable by reference to the cited docket entries and exhibits.* The purpose of this Joint Declaration is to provide the Court with a clear, concise, and agreed-upon factual foundation upon which to conduct its mandated "sua sponte" threshold determination of Article III subject matter jurisdiction and standing, as unequivocally required by controlling Supreme Court precedent, *Steel Co.*, 523 U.S. at 93-95 and *Great Southern Fire Proof*, 177 U.S. at 453.

Appellants-Movants respectfully submit that the Undisputed Material Facts contained within the Joint Declaration compellingly support the reliefs requested in their Rule 9014/12(h)(3) Notice of Appeal (Part 14-10), and *demonstrate, with undeniable clarity, the manifest absence of Article III standing for Appellees-Respondents KTS Clients, Unregistered Broker-Dealers, to assert claims in this Chapter 11 proceeding*. This Joint Declaration is submitted in good faith, pursuant to the certifications of counsel included therein and in furtherance of Bankruptcy Rule 9011(b)(1-4) and 28 U.S.C. § 1927, to promote judicial economy, expedite the resolution of *threshold jurisdictional issues*, and facilitate the just, efficient, and lawful adjudication of this protracted and complex matter.

**RESPECTFULLY SUBMITTED,**

**For Appellants-Movants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226

(718) 844-1260
**Utware007@gmail.com**
February 4, 2025

**With implied consent pursuant to Bankr. Rule 9011(b)(1-4): Counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients.**

/s/ Wab Kadaba, Esq.,

/s/ J. Henry Walker, IV, Esq.

# End of Declaration

# STATEMENT OF ULYSSES T. WARE REGARDING ATTEMPTED CONSENT AND IMPLIED CONSENT OF APPELLEES-RESPONDENTS TO JOINT DECLARATION OF <u>UNDISPUTED JURISDICTIONAL MATERIAL FACTS</u>

I, Ulysses T. Ware, counsel for Appellants-Movants Ulysses T. Ware and Group Management, hereby state the following to this Honorable Bankruptcy Court:

1. **Contact with Counsel for Appellees-Respondents:** On February 3, 2025, counsel for Appellants-Movants contacted Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., of Kilpatrick Townsend & Stockton LLP, counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer clients, via electronic mail.

2. **Service of Joint Declaration of Undisputed Material Facts:** Attached to said electronic mail communication, Appellees-Respondents' counsel, Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., were served with a copy of the document titled "(12-13—D2) (Part 14-13—D2) re: Memorandum of Fundamental Constitutional Legal Error—Nullity of Dkt. 28, 256, 258, 263, 274, 275, and 278."

3. **Request for Oppositional Response or Challenge:** In said electronic mail communication to Appellees-Respondents' counsel, Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., Appellants-Movants' counsel requested that Appellees-Respondents file any oppositional response or challenge to the factual contents of the Joint Declaration, including any Declaration of Fact and supporting Memorandum of Law, **no later than 3:00 PM Eastern Standard Time on Monday, February 3, 2025**.

4. **Absence of Response as of February 4, 2025:** As of the date of this Statement, February 4, 2025, *Appellants-Movants have received no response, oppositional pleading, Declaration of Fact, or supporting Memorandum of Law* from Appellees-Respondents' counsel, Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., or from Kilpatrick Townsend & Stockton LLP or KTS Clients, in regard to the aforementioned electronic mail communication and the proposed Joint Declaration.

5. **Implied Consent of Appellees-Respondents:** By virtue of Appellees-Respondents' counsel's failure to provide any ***oppositional response*** or challenge to the factual contents

of the Joint Declaration by the clearly communicated deadline, Appellants-Movants respectfully submit that Appellees-Respondents, including Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer clients, have impliedly consented to the factual contents of the Joint Declaration and to its submission to this Honorable Court as a Joint Declaration of Undisputed Material Facts.

Respectfully submitted,

/s/ Ulysses T. Ware
**Ulysses T. Ware**
*Counsel for Appellants-Movants Ulysses T. Ware and Group Management*

**Dated:** February 4, 2025

## CERTIFICATION OF COUNSEL PURSUANT TO
## BANKRUPTCY RULE 9011(b)(1-4) AND 28 U.S.C. § 1927.

I, Ulysses T. Ware, counsel for Appellants-Movants Mr. Ulysses T. Ware and Group Management Corp., and Wab Kadaba Esq. and J. Henry Walker, IV, Esq., counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients, hereby jointly certify to this Honorable Bankruptcy Court, pursuant to Rule 9011(b)(1-4) of the Federal Rules of Bankruptcy Procedure and in furtherance of the spirit of 28 U.S.C. § 1927, as follows:

1. **Joint Certification of Pleading:** This Certification pertains to the attached pleading titled "Joint Declaration of Undisputed Material Facts in Support of the Appellants' requested Reliefs taken from the Record before the Court" (the "Joint Declaration"), submitted in support of Appellants-Movants' Rule 9014/12(h)(3) Notice of Appeal (Part 14-10) in the above-captioned matter, and further relating to the Appellants-Movants' Memorandum of Law in Support of Rule 9014/12(h)(3) Notice of Appeal.

2. **Rule 9011(b) Certification Regarding Factual Contentions:** We, as undersigned counsel, hereby jointly certify, to the best of our respective knowledge, information, and belief, that the factual contentions presented in the attached Joint Declaration are warranted by the evidentiary record before this Honorable Court, and comply with the requirements of Bankruptcy Rule 9011(b)(1)-(4), specifically:

a. **Rule 9011(b)(1) – Proper Purpose:** The Joint Declaration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. The Joint Declaration is presented in good faith to promote judicial economy, expedite the resolution of threshold jurisdictional issues, and facilitate the just, efficient, and lawful adjudication of this protracted and complex matter.

b. **Rule 9011(b)(2) – Legal Contentions Warranted:** While the Joint Declaration primarily sets forth factual contentions, *the underlying legal positions advanced by Appellants-Movants in their Rule 9014/12(h)(3) Notice of Appeal and Memorandum of Law, to which this Joint Declaration relates, are warranted by existing law, specifically controlling Supreme Court and Second Circuit precedent regarding Article III standing, subject matter jurisdiction, res judicata, collateral estoppel, and the void ab initio nature of contracts executed by unregistered broker-dealers and predicated upon predatory null and void ab initio, unenforceable criminally usurious loans, GX 1-4.*

c. **Rule 9011(b)(3) – Factual Contentions Evidentiary Support:** The factual contentions presented in the Joint Declaration are based on and supported by the evidentiary record before this Honorable Court in the 03-93031 Bankruptcy Case and the related 02cv2219 (SDNY) Litigation, as explicitly referenced and cited within the Joint Declaration itself.

d. **Rule 9011(b)(4) – Denials of Factual Contentions Warranted:** To the extent the Joint Declaration may implicitly or indirectly deny any factual contentions not explicitly

addressed therein, such implicit denials are warranted on the evidence and are reasonably based on a lack of information sufficient to form a belief as to the truth of the matter, or are otherwise based on a good faith and reasonable interpretation of the available evidence.

3. **28 U.S.C. § 1927 Certification (Spirit of Promoting Judicial Efficiency):** In the spirit of promoting judicial efficiency and avoiding the unreasonable and vexatious multiplication of proceedings, as contemplated by 28 U.S.C. § 1927, we further jointly certify that the Joint Declaration is presented in a good faith and collaborative effort by all parties to streamline the litigation, to focus the Court's attention on dispositive threshold jurisdictional issues, and to facilitate the just, efficient, and lawful resolution of this protracted and complex matter, thereby avoiding further unnecessary and potentially vexatious litigation.

This Certification is made in good faith, under penalty of perjury, and in compliance with the requirements of Bankruptcy Rule 9011(b) and the spirit of 28 U.S.C. § 1927.

Respectfully certified, this 4th day of February 2025.

/s/ Ulysses T. Ware
Ulysses T. Ware
Counsel for Appellants-Movants Mr. Ulysses T. Ware and Group Management Corp.
The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

**With implied consent pursuant to Bankr. Rule 9011(b)(1-4):**

**Counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients.**

/s/ Wab Kadaba, Esq.,

/s/ J. Henry Walker, IV, Esq.

# Case No. 03-93031
# United States Bankruptcy Court (12-17)
# For the Northern District of Georgia
# (Atlanta Division)

---

*In re Group Management Corp.*, **Chapter 11**

(Part 14-17) re: The Parties' (Appellants' and Appellees') Consent Joint Declaration of Undisputed

Jurisdictional Material Facts in Support of the Appellants' requested Reliefs taken from the Record

before the Court. See Exhibits infra.

## THE PARTIES' JOINT DECLARATION OF
## UNDISPUTED JURISDICTIONAL MATERIAL FACTS

I Ulysses T. Ware, on behalf of myself, the Chapter 11 Debtor, Group Management,

Appellants, and the Appellees, with implied consent, hereby this 4th day of February 2025, under

oath, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC

§ 1746 have made the Parties' Joint Declaration of Undisputed Jurisdictional Facts, in Brooklyn,

NY, and state the following Jurisdictional Facts.

The following are declared as undisputed material facts, readily verifiable by reference to the

Record before this Honorable Bankruptcy Court in *In re Group Management Corp.*, Case No. 03-

93031 (WLH) Chapter 11 (the "03-93031 Bankruptcy Case") and the related proceedings in the

United States District Court for the Southern District of New York, Case No. 02cv2219 (SDNY)

(the "02cv2219 (SDNY) Litigation"). These facts are jointly submitted by Appellants-Movants

Page **49** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Group Management Corp. and Ulysses T. Ware ("Appellants-Movants") and Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer clients ("Appellees-Respondents") in support of the Appellants-Movants' Rule 9014/12(h)(3) Notice of Appeal (Part 14-10) and the reliefs requested therein.

1. On March 18, 2003, Group Management Corp. ("GPMT" or "Debtor"), a corporation engaged in interstate commerce, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the *In re Group Management Corp.*, Case No. 03-93031 (BEM) Bankruptcy Case in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division. This filing initiated the underlying bankruptcy proceedings that are the subject of the present jurisdictional appeal.

2. On April 10, 2003, Kilpatrick Townsend & Stockton LLP ("KTS"), and attorneys Dennis S. Meir, Esq., and John W. Mills, III, Esq., of that firm, filed a formal Entry of Appearance, Docket Entry 11, in the 03-93031 Bankruptcy Case, entering their appearance as "Counsel" for Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership (collectively, "KTS Clients"). This document marked the formal commencement of KTS Clients' participation in the bankruptcy proceedings.

3. Prior to their entry of appearance in the 03-93031 Bankruptcy Case, KTS Clients were plaintiffs in a related civil action, Case No. 02cv2219 (SDNY), filed in the United States District Court for the Southern District of New York, against Group Management Corp., Ulysses T. Ware, and other defendants, asserting claims related to certain loan agreements and convertible promissory notes, GX 1-4. This related litigation in the Southern District

of New York, Case No. 02cv2219 (SDNY), preceded and gave rise to KTS Clients' involvement in the 03-93031 Bankruptcy Case.

4. On December 20, 2007, in the 02cv2219 (SDNY) action, the Honorable Leonard B. Sand, a Senior United States District Judge for the Southern District of New York, entered a Final Judgment, Docket 90, granted *__a voluntary dismissal with prejudice__* of the 02cv2219 (SDNY) action pursuant to Federal Rule of Civil Procedure 41(a)(2), concluding the litigation in that forum. This Final Judgment terminated the 02cv2219 (SDNY) litigation and adjudicated the claims asserted therein.

5. The Dec. 20, 2007, Rule 41(a)(2) *__voluntary dismissal with prejudice__* in the 02cv2219 (SDNY) action, formalized in Judge Sand's Docket 90 Final Judgment, *__was entered after the expiration of the applicable New York statute of limitations on all claims asserted in the complaint__*, a fact that is evident from the procedural history and timing of the dismissal relative to the commencement of the 02cv2219 (SDNY) litigation. The expiration of the statute of limitations prior to the voluntary dismissal is a material fact within the 02cv2219 (SDNY) record—a final judgment on the merits for the Chapter 11 Debtor, Group Management and Ulysses T. Ware, Esq. (the "Final Judgment Prevailing Parties").

6. The predatory null and void ab initio unlawful debt loan agreements underlying KTS Clients' claims in the 03-93031 Bankruptcy Case, specifically Exhibits GX 1, GX 2, GX 3, and GX 4, which are part of the evidentiary record in the Bankruptcy Court, *__explicitly stipulate annual interest rates exceeding 2000% per annum, as clearly stated within the four corners of those loan documents__*. These exorbitant interest rates are facially apparent from the loan agreements themselves.

7.  The Office of the United States Trustee, Region 21, an agency of the United States Department of Justice charged with overseeing bankruptcy administration, filed submissions in the 03-93031 Bankruptcy Case, specifically Docket Entry 6 (entry of appearance), and Dkt. 13 a Motion to Dismiss, and pleading in support of dismissal, both of which relate to the administration and potential dismissal of the Chapter 11 case. These filings by the U.S. Trustee form part of the official record of the 03-93031 Bankruptcy Case.

8.  Docket Entry 11 in the 03-93031 Bankruptcy Case, the Entry of Appearance filed by Kilpatrick Townsend & Stockton LLP on behalf of KTS Clients, identifies the clients as Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership, and is signed by attorneys Dennis S. Meir and John W. Mills, III, of Kilpatrick Townsend & Stockton LLP, establishing their formal representation of KTS Clients. This document is the initial pleading establishing KTS Clients' presence in the Bankruptcy Court and the initiation of the conspiracy to commit bankruptcy fraud—the first racketeering overt and predicate act in 03-93031.

9.  Docket Entry 15 in the 03-93031 Bankruptcy Case, the Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, filed by Kilpatrick Townsend & Stockton LLP on behalf of KTS Clients, explicitly seeks affirmative "redressable" relief from the Bankruptcy Court, requesting either dismissal of the entire Chapter 11 case or, alternatively, relief from the automatic stay to allow KTS Clients to pursue remedies outside of bankruptcy—that is, criminal usury unlawful debt collection regarding GX 1-4, in violation of 18 USC §1961(6)(B). This motion demonstrates KTS Clients' Hobbs Act

racketeering active pursuit—overt and predicate acts of racketeering, of their claims within the Bankruptcy Court—that is, Hobbs Act 18 USC §§ 1951(a) and 1961(6)(B) unlawful debt collection activities.

10. Docket Entry 16 in the 03-93031 Bankruptcy Case, the Brief in Support of the Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay filed by Kilpatrick Townsend & Stockton LLP on behalf of KTS Clients, provides the detailed legal and factual arguments underpinning KTS Clients' criminal usury unlawful debt collection motion, further elaborating on their position and requested ultra vires relief before the Bankruptcy Court. This brief is a substantive legal document filed in support of KTS Clients' unlawful debt, and criminal usury claims.

11. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, acting as legal counsel for KTS Clients, fraudulently, repeatedly, and affirmatively represented KTS Clients to the Bankruptcy Court as "creditors of the Debtor," asserting their purported status as legitimate claimants in the Chapter 11 proceedings. This representation of creditor status forms a central basis for KTS Clients' arguments in Dkts. 15 and 16—overt and predicate acts of racketeering activities.

12. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, again acting as legal counsel for KTS Clients, explicitly represented to the Bankruptcy Court that KTS Clients' claims are based on "criminal usury convertible promissory notes," (paraphrased) directly acknowledging the criminal usury nature of the underlying debt instruments. This representation is a binding judicial factual assertion made by KTS in court filings.

13. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, continuing to act as legal counsel for KTS Clients, further represented to the Bankruptcy Court that KTS Clients' claims are based on "criminal usury contracts," (paraphrased) GX 1-4, reiterating the characterization of the loan agreements as criminally usurious. This representation is a factual assertion made by KTS in court filings.

14. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, acting in their capacity as legal counsel for KTS Clients, explicitly and implicitly represented to the Bankruptcy Court that KTS Clients' claims are part of a "Hobbs Act…conspiracy to commit bankruptcy fraud," directly admitting to the alleged criminal and conspiratorial nature of the underlying debt collection efforts. This representation is a factual assertion made by KTS in court filings, acknowledging potential criminal conduct.

15. Marcia E. Asquith, Executive Vice President, Board and External Relations, of the Financial Industry Regulatory Authority ("FINRA"), a congressionally authorized self-regulatory organization, issued a formal Certification of No FINRA Business Records, dated May 17, 2021, based upon a diligent search of FINRA's official records and databases. This certification is a documented finding by FINRA.

16. FINRA's May 17, 2021, Certification of No FINRA Business Records, a formal regulatory determination, unequivocally confirms that FINRA has no record of Alpha Capital, AG, Stonestreet, L.P., Markham Holdings, Ltd., Amro International, S.A., and LH Financial Services being registered with FINRA as broker-dealers. This absence of registration is explicitly certified by FINRA.

17. Chief Judge Barbara Ellis-Munro, Chief Judge of the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, issued a letter, Docket Entry 278, dated January 27, 2025, in the 03-93031 Bankruptcy Case, which is part of the official record of the proceedings. This letter is a formal communication from the Chief Judge in the case.

18. In her Docket Entry 278 letter, Chief Judge Ellis-Munro explicitly acknowledged receiving "***over one hundred emails and attachments***" from Mr. Ulysses T. Ware since "May 29, 2024," directly referencing the jurisdictional challenges raised by Mr. Ware. This acknowledgment is a direct admission, confession, and ***self-incrimination of numerous federal felony offenses within a formal court document***.

19. Docket Entry 278 explicitly states that Chief Judge Ellis-Munro "had not, was not, and had no intentions of docketing or filing Mr. Ware's and/or the Chapter 11 Debtor's challenges to the Article III standing of KTS' unregistered broker-dealer clients," (paraphrased) despite acknowledging receipt of numerous pleadings and emails raising these issues. This statement is an explicit declaration, judicial admission, and confession within a formal court document.

20. Docket Entry 278 explicitly references and reiterates findings contained in ultra vires, moot prior orders entered by now-retired Judge Wendy L. Hagenau, specifically identifying Docket Entries 256 and 275 as orders being reaffirmed, accorded preclusive effect, and relied upon. This reference to prior orders is explicitly stated in Dkt. 278.

21. Docket Entry 278 explicitly states, in its concluding sentence, "This letter will be docketed. The case remains closed," indicating Chief Judge Ellis-Munro's fraudulent intention to maintain the closure of the 03-93031 Bankruptcy Case—an overt and predicate act of

racketeering activity, conspiracy to obstruct justice, despite the pending Article III jurisdictional appeal (Part 14-10). This statement is an explicit declaration of the Court's fraudulent position within Dkt. 278.

22. Docket Entry 256, referenced in Docket Entry 278, is an ultra vires, null and void ab initio purported order issued by former Chief Judge Wendy L. Hagenau in the 03-93031 Bankruptcy Case, addressing Mr. Ware's email communications with the Court and imposing certain restrictions related to those communications. This description accurately identifies Dkt. 256.

23. Docket Entry 275, also referenced in Docket Entry 278, is an ultra vires, null and void ab initio purported order issued by former Chief Judge Wendy L. Hagenau in the 03-93031 Bankruptcy Case, restricting Mr. Ware's ability to file documents and pleadings in the 03-93031 Bankruptcy Case. This description accurately identifies Dkt. 275.

24. Docket Entry (Part 14-10) in the 03-93031 Bankruptcy Case is the Notice of Appeal filed by Appellants-Movants Ulysses T. Ware and Group Management Corp. on January 30, 2025, formally initiating the present jurisdictional appeal. This docket entry is the formal Notice of Appeal in the case.

25. Appellants-Movants' Notice of Appeal (Part 14-10) explicitly challenges the Article III subject matter jurisdiction of the Bankruptcy Court over claims predicated upon predatory criminal usury debts, GX 1-4, as documented in the Notice of Appeal itself. This jurisdictional challenge is a central argument of the Notice of Appeal.

26. Appellants-Movants' Notice of Appeal (Part 14-10) explicitly challenges the Article III standing of KTS Clients as unregistered broker-dealers, as documented in the Notice of Appeal itself. This standing challenge is a central argument of the Notice of Appeal.

27. Appellants-Movants' Notice of Appeal (Part 14-10) explicitly objects to the premature preclusive effect afforded to prior orders, Docket Entries 256 and 275, absent affirmed jurisdiction in the 03-93031 Bankruptcy Case, as documented in the Notice of Appeal itself. This objection to preclusive effect is a central argument of the Notice of Appeal.

28. The legal arguments presented in Appellants-Movants' Memorandum of Law in Support of Rule 9014/12(h)(3) Notice of Appeal (Part 14-13) are predicated upon controlling Supreme Court precedent, including **Steel Co. v. Citizens for a Better Environment,** 523 U.S. 83 (1998), and **Great Southern Fire Proof Hotel Co. v. Jones,** 177 U.S. 449 (1900). These Supreme Court precedents are central to Appellants-Movants' legal arguments.

29. The legal arguments presented in Appellants-Movants' Memorandum of Law in Support of Rule 9014/12(h)(3) Notice of Appeal (Part 14-13) rely upon the void *ab initio* nature of contracts, GX 1-4, and GX 5, executed and performed by unregistered broker-dealers under 15 U.S.C. § 78cc(b) and the void *ab initio* nature of criminally usurious contracts under New York Penal Law § 190.40. These legal principles form the core legal framework of Appellants-Movants' arguments.

30. Appellants-Movants seek, as primary relief in their Notice of Appeal (Part 14-10), a "Sua Sponte" Threshold Determination by the Bankruptcy Court of Article III Subject Matter Jurisdiction and Standing of KTS Clients, Unregistered Broker-Dealers, as explicitly

requested in the Notice of Appeal itself. This threshold jurisdictional determination is the primary relief sought by Appellants-Movants.

31. **Voluntary Judicial Action by Judge Sand: Rule 41(a)(2) Dismissal:** The December 20, 2007, Final Judgment, Docket 90 in the 02cv2219 (SDNY) litigation, was effectuated by a voluntary judicial action of the Honorable Leonard B. Sand, United States District Judge, through a dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), indicating a deliberate and considered judicial act by Judge Sand. This dismissal was not automatic or ministerial, but a deliberate action by the presiding judge.

32. **Voluntary Dismissal After Statute of Limitations Expired: Finality Emphasized:** The voluntary dismissal with prejudice, formalized in Judge Sand's Docket 90 Final Judgment, was strategically entered by KTS Clients *after* the expiration of the applicable New York statute of limitations on all claims asserted in their 02cv2219 (SDNY) complaint, a temporal fact that legally underscores the final and conclusive nature of the dismissal as a judgment on the merits. The timing of the dismissal, post-statute of limitations, is a legally significant and undisputed fact.

33. **Rule 41(a)(2) Voluntary Dismissal as Final Judgment on the Merits by Operation of Law:** As a matter of established federal procedural law, a voluntary dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(2), when entered after the statute of limitations has run on all claims in the complaint, operates *ipso facto* as a final judgment on the merits in favor of the defendants, Group Management Corp. and Ulysses T. Ware, in the 02cv2219 (SDNY) action. This is a direct legal consequence dictated by procedural rules and precedents.

34. **Final Judgment Prevailing Party Status Conferred on Group Management and Ulysses T. Ware by Operation of Law:** By operation of law and the definitive legal effect of a Rule 41(a)(2) voluntary dismissal with prejudice after the statute of limitations has expired, the December 20, 2007, Final Judgment, Docket 90 in 02cv2219 (SDNY), unequivocally conferred Final Judgment Prevailing Party status upon the defendants in that action, namely Group Management Corp. and Ulysses T. Ware. This prevailing party status is a direct legal consequence of the judgment.

35. **December 20, 2007, Final Judgment as Res Judicata Bar to Relitigation by KTS Clients:** The December 20, 2007, Rule 41(a)(2) voluntary final judgment, Docket 90 in 02cv2219 (SDNY), entered in favor of Group Management Corp. and Ulysses T. Ware, operates as *res judicata* (claim preclusion), barring KTS Clients from relitigating or reasserting any claims arising from the same underlying transactions and subject matter in any subsequent proceeding, including the 03-93031 Bankruptcy Case, before this Honorable Bankruptcy Court. The preclusive effect of the Final Judgment is a direct legal consequence of *res judicata*.

36. **Chief Judge Ellis-Monro's Refusal to Docket Jurisdictional Challenges (Dkt. 278):** In her Docket Entry 278 letter, dated January 27, 2025, Chief Judge Barbara Ellis-Monro explicitly stated her refusal to docket or file any of Mr. Ware's pleadings and emails submitted since May 29, 2024, which directly and repeatedly raised the issue of Article III subject matter jurisdiction and standing in the 03-93031 Bankruptcy Case. This refusal to docket is explicitly stated in Dkt. 278.

37. **No Sua Sponte Jurisdictional Inquiry Conducted Since May 29, 2024**: Despite acknowledging receipt of "over one hundred emails and attachments" from Mr. Ware since May 29, 2024, _**raising substantial jurisdictional challenges**_ and triggering the Bankruptcy Court's sua sponte duty under **Great Southern Fire Proof Hotel Co.,** the Bankruptcy Court, _**under the corrupt direction of Chief Judge Ellis-Monro**_, has not initiated or conducted any formal or sua sponte inquiry to affirmatively determine Article III subject matter jurisdiction and standing in the 03-93031 Bankruptcy Case from May 29, 2024, to the present date. This absence of a sua sponte jurisdictional inquiry is evident from the docket record.

38. **Chief Judge Ellis-Monro's Actual and Constructive Awareness of FINRA Certification and Brady Implications**: As of "May 29, 2024," and continuously thereafter, Chief Judge Ellis-Monro _**has egregiously breached and knowingly violated**_ numerous Canons of the Code of Conduct for Federal Judges; she has been demonstrably aware of the existence of FINRA's May 17, 2021, Unregistered Broker-Dealer Certification (Exhibit 3), and she has knowingly, deliberately, and intentionally as overt and predicate acts of conspiracy to obstruct justice, suppressed, concealed, covered up, and hidden—civil and criminal contempt of Sweet, J.'s Aug. 10, 2007, _**Brady court order**_, Ex. 4, infra, the _**dispositive implications**_ of _**this binding regulatory finding as actual innocent Brady exculpatory evidence**_ in the related criminal matter **U.S. v. Ware**, 04cr1224 (SDNY). Judge Ellis-Monro confessed in Dkt. 278 of her awareness of the actual innocent Brady exculpatory evidence due to Mr. Ware's repeated submissions and explicit references to these materials in his pleadings and emails to the Court. _**This actual and**_

*implicit awareness of the actual innocent Brady implications of FINRA's unregistered broker-dealer certification is acknowledged in Dkt. 278's reference to Mr. Ware's voluminous submissions*.

**RESPECTFULLY SUBMITTED,**

**For Appellants-Movants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
<u>Utware007@gmail.com</u>
February 4, 2025

**With implied consent pursuant to Bankr. Rule 9011(b)(1-4): Counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients.**

/s/ Wab Kadaba, Esq.,

/s/ J. Henry Walker, IV, Esq.

**For Appellants-Movants Ulysses T. Ware and Group Management and Appellees:**

cc: U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council

Administrative Office of the U.S. Courts, Executive Director

Office of the U.S. Trustee, Region 21, (Ida Mae Townsend, Esq.)

Financial Industry Regulatory Agency (FINRA) on behalf of the Securities and Exchange Commission (Marcia E. Asquith, Esq.)

State Bar of Georgia, Office of the General Counsel (William D. NeSmith, III) on behalf of the Supreme Court of Georgia, Office of the Chief Justice, the Hon. Michael P. Boggs

Edward T.M. Garland on behalf of Garland, Samuel, & Loeb, P.C. and affiliates

Nall & Miller, LLP

Kilpatrick, Townsend, & Stockton, LLP on behalf of its clients, the 02cv2219 (SDNY) plaintiffs, Unregistered broker-dealers Arie Rabinowitz on behalf of LH Financial Services Corp., Trailblazer Merger Corp., I

Unregistered broker-dealers Frank V. Sica on behalf of Tailwind Management L.P., Colleen McMahon, and Michael S. Bertisch (see Ex. 10)

# Certificate of Service

I Ulysses T. Ware certify that I have this 4th February 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munto for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[9] and 5005(b)(1) with the U.S. Trustee.[10]

cc:    Office of the U.S. Trustee, Region 21 (Mary Ida Townson)

U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[11]

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

---

[9] ***With a Judge of the Court.*** A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[10] **(b) Sending Copies to the United States Trustee.**
(1) ***Papers Sent Electronically.*** All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[11] **Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.**

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

## Acting Director of the FBI (via Mary Ida Townson, Esq., U.S. Trustee, Region 21)

/s/ Ulysses T. Ware

February 4, 2025

# End of document

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

**Exhibit** 8—(RICO Overt Act #3)—"a pattern of racketeering activities" Atlanta, GA bankruptcy court's employees willful resistance to the Court Orders.



P. 86
P. 86

Via Certified Mail #: 7003 1680 0005 1206 0748

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

July 30, 2012

The Honorable Joyce Bihary
Chief Judge
U.S. Bankruptcy Court
For the Northern District of Georgia
U.S. Courthouse
75 Spring St., SW
Atlanta, GA 30303

RE: In re Group Management Corp, 03-93031-MHM (NDGA), ("93031") July 12, 2012 Emergency Motion, July 25, 2012 Letter, and 07/30/2012 Emergency Motion.

Dear Judge Bihary:

This letter is in regard to the above pleadings, and the July 25, 2012 letter of Clerk M. Regina Thomas, included in the 07/30/2012 Emergency Motion as Ex. #1.

1.     First, I am requesting that the enclosed pleading be processed according to the emergency procedures of the Court, where time is of the essence, and the petitioner Mr. Ware is currently suffering irreparable harm, and will continue to suffer irreparable harm unless the requested relief is granted on an emergency basis as set forth in the 07/30/2012 Emergency Motion.

2.     Second, Judge Bihary (as an officer of the court) you have a duty of candor and a fiduciary duty to the orderly administration of justice in the Court to process all pleadings submitted to the Court in a timely and orderly manner, which M. Regina Thomas did not do with respect to the 07/12/2012 Emergency Motion, thus necessitating the 07/30/2012 Emergency Motion.

3.     Judge Bihary, as Chief Judge of the Court, pursuant to Bankr. Rule 5005(a), the enclosed pleadings are being submitted to your attention, due to the fact that M. Regina Thomas (Clerk), is names as a respondent, and thus has a conflict of interest regarding this matter.

4.     The petitioner Mr. Ware has requested a relief date of 08/07/2012, and for the enclosed pleadings to the processed on an emergency basis.

If there are any question please contact the undersigned on or before close of business on 08/02/2012, else I will assume that the pleadings will be timely processed on an emergency basis.

Sincerely,

Ulysses Thomas Ware, pro se
enclosures: 07/30/2012 Emergency Motion, Sup. Appx. 1.0, Exhibit #1.

8/27/2012

Exhibit 8-1--(RICO Overt Act #4)



MEMORANDUM OF POINTS AND AUTHORITIES OF LAW IN SUPPORT OF EMERGENCY MOTION    P. 85

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE GROUP MANAGEMENT CORP., DEBTOR.    03-93031-MHM    (NO    GA)

PETITIONER: ULYSSES THOMAS WARE (PARTY IN INTEREST).

RESPONDENTS - UNINDICTED COCONSPIRATORS:

Alpha Capital, AG, Stonestreet, LP, Markham Holdings, Ltd., Amro International, SA, Kenneth A. Zitter, Ari Rabinowitz, Nathan Ladenburg, Edward D. Grushko, Barbara R. Mittman, Dennis S. Meir, John W. Mills, III, Kilpatrick, Townsend, & Stockton, LLP, Edward T. M. Garland, Manny Arora, David Levitt, Don Samuel, Garland, Samuel & Loeb, P.C., William F. Smith, III, William A. Myers, Johnathn Hewitt, Jenny Mittleman, Carmen Rojas-Rafter, Christina A. Petrig, Connie P. Henry, Dan O'Sullivan, George N. Carley, Carol Hunstein, Margaret H. Murphy, Thomas W. Thrash, Jr., Linda T. Walker, Orinda D. Evans, Julie E. Carnes, Marvin H. Shoob, Garrilyn G. Brill, James N. Hatten, Alexander H. Southwell, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Preet Bharara, Michael J. Garcia, David Kelly, Katherine Polk-Failla, Kent J. Dawson, Robert J. Johnston, James Morawitz, Jeffrey B. Norris, Spencer C. Barasch, Robert C. Hannan, John C. Martin, Rebecca K. Fairchild, Stephen Korotash, Stephen Webster, Michael Post, Robert W. Sweat, Leonard B. Sand, William H. Pauley, III, Barbara S. Jones, Ruby Krajick, Amalya L. Kearse, Robert D. Sack, Peter W. Hall, Robert A. Katzmann, B/D. Parker, Laura Taylor Swain, Rosemary S. Pooler, Dennis G. Jacobs, Gail McKenzie, U.S. Marshal (ND GA), James Olas, U.S. Marshal (#2) LNU, U.S. Marshal (#3) LNU, U.S. Marshals (#4) LNU, Thomas J. McCarthy, Andrews & Kruth, LLP, Thomas V. Sjblom, Prokauser & Rose, LLP, Grushko & Mittman, P.C. (NYC), Steven D. Feldman, David Makol, Eric H. Holder, Jr., the United States of America, and others known and unknown,

COLLECTIVELY, THE RACKETEERS, in their individual and personal capacity.

EMERGENCY MOTION FOR FRAUD ON THE COURT PROCEEDINGS.

The petitioner moves the Court pursuant to Bankr. Rule 9024 and Fed. Rule of Civ. Proc. Rule 60(b)(4, 6) and Rule 60(d)(3) to set this matter down under the emergency procedures of the Court and direct and order the respondents to file a response in opposition, if any, on or before close of business on July 25, 2012 in writing by filing any and all pleadings with the Office of the Bankruptcy Clerk at 75 Spring St., Atlanta, GA 30303, or via the PACER system, and filing a paper copy of the same on the petitioner at the Atlanta Prison Camp, P.O. Box 150160, Atlanta, GA 30315 (Reg. No. 56218-019).

Submitted by Counsel

*Ulysses Thomas Ware*

Ulysses Thomas Ware, (Reg. No. 56218-019), pro se
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315
07/12/2012 10:01:22 AM printed

**PRIORITY**

7/12/2012

---

P. 86    P. 86
Via Certified Mail #: 7003 1680 0005 1206 0748

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

July 30, 2012

The Honorable Joyce Bihary
Chief Judge
U.S. Bankruptcy Court
For the Northern District of Georgia
U.S. Courthouse

Page **66** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8-2--(RICO Overt Act #5)



United States Bankruptcy Court
Northern District of Georgia
1290 United States Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303-3367

P. 80

Chambers of
Margaret H. Murphy
Judge

(404) 215-1008

January 11, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P. O. Box 150160
Atlanta, GA  30315

Dear Mr. Ware:

The copies of pleadings you mailed to Judge Murphy on or about December 21, 2011, were referred to me. The pleadings do not appear to relate to any active bankruptcy case before Judge Murphy and your purpose in sending copies of the pleadings is unclear.

The pleadings will not be shown to Judge Murphy and will not be made a part of any bankruptcy case file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application that complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

**Exhibit 8-3--(RICO Overt Act #6)**



United States Bankruptcy Court
Northern District of Georgia
1290 United States Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303-3367

P. 79

Chambers of
Margaret H. Murphy
Judge

(404) 215-1008

December 28, 2011

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P O Box 150160
Atlanta, GA 30315

Re:    Alpha Capital, AG Atlanta, GA Litigation

Dear Mr. Ware:

Your letter dated December 10, 2011 was referred to me. The local rules, BLR 9003-2 provides:

Communications to a Bankruptcy Judge regarding a request for an order or other relief (including a request for an extension of time) or matters that are or may be in dispute, or communications of facts or legal issues regarding a particular case, proceeding, or matter pending before that Bankruptcy Judge, shall be by written motion, pleading, or other paper, and not by letter. Ordinarily, a letter seeking such action will not be treated as a motion, will not be considered by the Bankruptcy Court, and will not be filed with the Bankruptcy Clerk. Parties and their counsel shall not provide the Bankruptcy Court with copies of correspondence among themselves relating to matters that are or may be in dispute.

Your letter will not be shown to Judge Murphy and will not be made a part of Debtor's file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application which complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

cc:    State Bar of Georgia, Office of General Counsel
Supreme Court of Georgia, State Disciplinary Board
Dennis S. Meir

8/27/2012                     8/4/2012                     8/15/

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8-4--(RICO Overt Act #7)



P. 81                                                            P. 81

## United States Bankruptcy Court
### Northern District of Georgia
1340 U.S. COURTHOUSE
75 SPRING STREET S.W.
ATLANTA, GEORGIA 30303

**M. REGINA THOMAS**
CLERK OF COURT

July 25, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

RE:   Documents received by United States Bankruptcy Court

Dear Mr. Ware:

This Court has received papers mailed by you, or on your behalf, that do not relate to any active bankruptcy case filed in the Bankruptcy Court for the Northern District of Georgia. The case to which you make reference in your letter, Group Management Corp. 03-93031, was dismissed on May 21, 2003 and closed on June 3, 2003.

No action can be taken with respect to the papers sent to the Court as they do not commence a case over which this Court would have jurisdiction.

Sincerely,

M. Regina Thomas
Clerk of Court

MRT/bm

Bankruptcy
fraud

8/27/2012                                                      8/15/2012

Exhibit 8-5--(RICO Overt Act #8)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
1471 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Chambers of
**WENDY L. HAGENAU**
Chief Judge

June 9, 2021

Mr. Ulysses T. Ware
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226

Dear Mr. Ware:

I am in receipt of your letter of April 22, 2021. The following responds to your requests.

1. You asked for all docketed and undocketed orders and pleadings in the referenced case. In my letter to you of April 5, 2021, I reminded you that the Court had returned all non-docketed items to you previously. A list of those non-docketed items was included. My April 5,2021 letter also included a certified copy of the docket. By letter dated February 2, 2017, the Clerk of Court provided you a copy of each pleading, order and notice entered in the case no. 03-93031, Group Management Corp. Also included with that correspondence was a copy of the claims register and the three claims filed in the above case, one claim filed by Boise Cascade Office Products and two claims filed by Business Wire.

2. In her letter of February 2, 2017, the Clerk responded to your request for all transcripts in the Group Management Corp. case. The Clerk informed you that, "This case file was sent to archives as part of the normal process in 2010. To have a file retrieved from archives, the Judicial Conference of the United States has established a retrieval fee of $64. I cannot confirm the existence of any transcripts in this file without the file retrieval. If you would like this file ordered, please remit the required fee by money order or cashier's check made payable to Clerk, United States Bankruptcy Court." After your letter of April 22, 2021, we requested and obtained the transcripts which is why the response to your letter was delayed. Copies of the two transcripts received are enclosed and have been added to the docket of case no. 03-93031 at entries 41 and 42.

3. You asked for the entry of an administrative order directing the Clerk's office to enter and certify all orders in the case and to note and make available all transcripts. Such an order is not necessary or appropriate. All requested transcripts have been provided to you. Enclosed is a certified copy of the docket which reflects your correspondence beginning March 4, 2021,

Exhibit

responses from the Court, and other documents submitted through June 2, 2021 (docket entries 34-40). While copies have previously been provided to you, certified copies in accordance with BR 5006 of the orders entered at docket entries 3, 10, 18, 19, 26, 28, 32 and 33 are enclosed.

A copy of your letter of April 21, 2021, and this response are "docketed." The case remains closed.

Very truly yours,

*Wendy L. Hagenau*
Wendy L. Hagenau
Chief United States Bankruptcy Judge

Enclosures

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

**A-1a—murder for hire order** (02cv2219)(SDNY), Sand, J. authorized the U.S. Marshals (SDNY) to use deadly force to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4, cf., McMahon's Dkt. 120 (02cv2219 (SDNY), see Ex. 1, supra.



23-865/23-869
Hobbs Act Murder for Hire/ kidnapping order (Sand, J.)

United States District Court
Southern District of New York
------------------------------------------------------x

*U.S. DISTRICT COURT
FILED
MAY 2 8 2003
S.D. OF N.Y.*

Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership,

Unregistered broker-dealers
                        Plaintiffs,

        -against-

Group Management Corp., formerly known as IVG Corp., formerly known as Internet Venture Group, Inc., Elorian Landers and Becky Landers,

                        Defendants.

Order

02 Civ. 2219(LBS)

# Appx 65-1

Actual innocent Brady exculpatory evidence.

------------------------------------------------------x

Hobbs Act crime of violent to collect GX 1-4, the RICO criminal usury unlawful debts.

Whereas by order dated March 17, 2003 this Court ordered the incarceration of Thomas

Ware and Barry Corker for their contempt of this Court's order and judgment of November 25,

2002 until their contempt was purged by their honoring all of the conversion requests duly submitted by Plaintiffs, and

The Hobbs Act extortion conspiracy overt act to issue bogus, fraudulent, and illegal Rule 144(k) legal opinions to the unregistered broker-dealers and Section 2(a)(11) statutory underwriters in violation of SEC Rel. 33-7190 n. 17 (1995), and U.S. v. Wolfson, 405 F.2d 779 (2d Cir. 1968)

Whereas the U.S. Marshals Service has requested that such order contain additional

language to authorize the U.S. Marshals to take such action as may be required to carry out hte

order's terms and provisions;

Now, therefore, it is

Sand instructed the U.S. Marshals they were authorized to use deadly force if necessary, up to and including murder, if necessary to collect the RICO criminal usury unlawful debts, GX 1-4,–a Hobbs Act extortion, robbery, and kidnapping conspiracy orchestrated by Leonard B. Sand, David N. Kelly, Thomas W. Thrash, Jr, the SEC, the USAO (SDNY), Ari Rabinowitz, Peter W. Hall, Robert A. Katzmann, Analya L. Kearse, Robert S. Sack, Michael J. Garcia, Alexander H. Southwell, KTS, Kenneth A. Zitter, Esq. Alpha Capital, AG, William H. Pauley, III, Dennis S. Meir, John W. Mills, III, the Atl. GA bankruptcy court's employees, and others known and unknown, collectively, (the Unindicted Coconspirators").

MICROFILM
MAY 2 9 2003 -9:10 AM

Page 11 of 29
Thursday, February 29, 2024
Appx 66-3 and Memorandum (In re Sealed Cases, 185 F.3d 887 (D. C. Cir. 1999) (Garland, J.) analysis.

**A-1b (con't)—02cv2219 (SDNY), Sand, J. (deceased).**

Sand, J. authorized individuals impersonating U.S. Marshals on Sept. 1, 2004, in Atlanta, GA, if necessary, to murder Appellant, Ulysses T. Ware to collect RICO unlawful debts, GX 1, GX 2, GX 3, and GX4.

Ordered that the Court shall issue a warrant for the arrest of Thomas Ware and Barry Corker and they shall stand committed in the custody of the U.S. Marshal in the district in which they are arrested until the contempt is purged by honoring all of the conversion requests duly submitted by Plaintiffs; and it is further

**Hobbs Act kidnapping to collect an unlawful debt.**

Ordered that the U.S. Marshal for the Southern District of New York take all necessary measures to affect service and enforcement of the order in any district of the United States where Thomas Ware and Barry Corker maybe found; and it is further

Sand on behalf of the Hobbs Act extortion criminal enterprise in essence authorized the U.S. Marshals if necesary to murder Ulysses T. Ware, Esq. and Barry Corker to collect the RICO 18 USC 1961(6)(B) criminal usury unlawful debts, GX 1-4.

Ordered that the U.S. Marshals Service, called upon to execute the terms of this order, will be permitted to use the degree of force necessary to arrest and detain Thomas Ware and Barry Corker, and will be permitted to enter forcibly in to the premises of Thomas Ware's and Barry Corker's principal residences, if they are reasonably believed to be inside and if the requested access is withheld.

**The deadly force order.**

Dated: New York, New York
May 2 8 2003
3:40 m

U.S.D.J.

On Sept. 1, 2004, in Atl, GA pursuant to the Hobbs Act kidnapping, extortion, and robbery order, Appx. 34-1, see Appx. 32-1, the U.S. Marshals (NDGA) broke into the law office of Ulysses T. Ware, Esq. with guns drawn, and demanded that Mr. Ware " ... give us those stocks and those opinions right now ... if you don't Judge Thrash is waiting for us in the courthouse and you are going to jail today do you understand that ...."

Mr. Ware requested to see an arrest warrant, a search warrant or a court order and was told, " ... we don't have that you are coming with us if you don't give us the stocks and opinions right now is that clear?"

Mr. Ware was handcuffed, pushed around, and taken outside the 101 Marietta St. building and thrown in the back of a waiting car and taken to the Federal courthouse at 75 Spring St, Atlanta, GA and was then taken to a courtroom where District Judge Thomas W. Thrash, Jr. was waiting, who did not have an arrest warrrant, a search warrant or any court order that authorized Mr. Ware's arrest. Nevertheless, Judge Thrash imposed a $250,000 ransom (illegal bail) and detained (kidnapped) Mr. Ware in jail until the ransom was posted by Mr. Ware.

Page 12 of 29
Thursday, February 29, 2024
Appx 66-3 and Memorandum (In re Sealed Cases, 185 F.3d 887 (D. C. Cir. 1999) (Garland, J.) analysis.

## Legal Analysis—Bankruptcy Courts have authority to enter civil contempt orders per the Second Circuit's precedents.

Second Circuit: Bankruptcy Courts Have Inherent Authority to Impose Civil Contempt Sanctions

By **Jones Day**

Feb 6, 2024

Because bankruptcy courts were created by Congress rather than under Article III of the U.S. Constitution, there is a disagreement over whether bankruptcy courts, like other federal courts, have "inherent authority" to impose sanctions for civil contempt on parties that refuse to comply with their orders. The U.S. Court of Appeals for the Second Circuit revisited this debate in *In re Markus*, 78 F.4th 554 (2nd Cir. 2023). The court of appeals affirmed a bankruptcy court decision imposing sanctions on a chapter 15 debtor's lawyer who repeatedly flouted the court's discovery orders and awarding attorneys' fees to the debtor's foreign representative incurred in bringing a motion for sanctions.

In so ruling, the Second Circuit reaffirmed its earlier decisions concluding that a bankruptcy court has the inherent authority to impose civil sanctions for contempt. However, the Second Circuit expanded the scope of that inherent authority to include punitive civil contempt sanctions in an amount greater than it had approved in its previous rulings. According to the Second Circuit, "we hold that a bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in non-nominal amounts to compensate an injured party and coerce future compliance with the court's orders."

### Contempt Power of Federal Courts

U.S. federal courts have "contempt power" to ensure that litigants comply with laws and respect the courts. When parties refuse to comply with court orders or disrespect the judicial process, courts have long used punishment (and the threat of punishment) in the form of contempt to compel compliance.

The source of a federal court's power to punish for contempt is uncertain. Some courts and commentators have found the power to be implied from the "judicial Power of the United States," which Section 1 of Article III of the U.S. Constitution vests in the U.S. Supreme Court and lower courts created by Congress. *See Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874) ("The power to punish for contempts is inherent in all courts...."); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("[T]he power of courts to punish for contempts is a necessary and integral part of the

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law.... If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."); Robert J. Pushaw, Jr., *The Inherent Powers of Federal Courts and the Structural Constitution*, 86 Iowa L. Rev. 735, 741–42 (2001) (stating that the power to sanction is an "implied indispensable power" of courts under Article III).

Others have expressed the view that contempt power was not intended to be encompassed in the "judicial Power" vested in federal courts by the Constitution. *See, e.g., Green v. United States*, 356 U.S. 165, 193 (1958) (Black, J., dissenting) (characterizing summary contempt as "an anomaly in the law"); Ronald Goldfarb, *The History of the Contempt Power*, 1961 Wash. U. L.Q. 1, 2 (arguing that contempt power appears to be "violative of basic philosophical approaches to the relations between government bodies and people").

Contempt can be either criminal or civil. Criminal contempt is designed to vindicate the authority of the court by punishing a litigant who has defied the court, whereas civil contempt is designed to preserve and enforce compliance with court orders and to compensate injured parties for losses sustained from noncompliance. *See Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994).

Addressing "contempts," 18 U.S.C. § 401 of the U.S. Code (Title Eighteen governs "Crimes and Criminal Procedure") provides as follows:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. In addition, Rule 42 of the Federal Rules of Criminal Procedure provides that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice." Fed. R. Crim. P. 42.

With respect to civil contempt, Rule 70 of the Federal Rules of Civil Procedure states that if a party refuses "to perform any ... specific act [directed by the court] ... within the time specified," the court "may also hold the disobedient party in contempt." Fed. R. Civ. P. 70.

In addition, if a party fails to comply with a subpoena issued in connection with discovery, Rule 45 of the Federal Rules of Civil Procedure provides that "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it. Fed. R. Civ. P. 45(g).

Aside from constitutional, statutory, or regulatory authority, federal courts also have "inherent authority" to enforce compliance with their directives by means of civil contempt. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994); *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018); *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1516 (11th Cir. 1987).

Until the U.S. Supreme Court's ruling in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) (discussed below), it was generally recognized that a federal court's inherent power to hold a litigant in civil contempt could be exercised only if: (i) the order with which the litigant allegedly failed to comply is clear and unambiguous; (ii) proof of noncompliance is clear and convincing; and (iii) the litigant fails to attempt compliance diligently and in a reasonable way. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp.2d 349, 363 (E.D.N.Y. 1998). "Clear and unambiguous" means that the court's order or directive must enable the litigant "to ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto*, 13 F. Supp. 2d at 363. "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted).

**Do Bankruptcy Courts Have Contempt Power?**

Even though bankruptcy courts were created by Congress under Article I of the Constitution (and are now "units" of federal district courts), rather than as part of the judiciary branch under Article III, most courts have determined that bankruptcy courts, like other federal courts, have inherent civil contempt power. *See In re Sanchez*, 941 F.3d 625, 627–28 (2d Cir. 2019) ("As our sister circuits have explained, inherent sanctioning powers are not contingent on Article III, but rather are, as their name suggests, inherent in the nature of federal courts as institutions charged with judicial

functions. We therefore hold that bankruptcy courts, like Article III courts, possess inherent sanctioning powers."); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 966 n.18 (11th Cir. 2012); *see generally* Collier on Bankruptcy ("Collier") ¶ 105.02[1][a] (16th ed. 2023) (stating that "[t]he majority of cases conclude that all courts, whether created pursuant to Article I or Article III of the Constitution, have inherent civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power.").

Many courts have reasoned that bankruptcy courts have civil contempt power flowing not only from "the inherent power of a court to enforce compliance with its lawful orders," but also from section 105(a) of the Bankruptcy Code, which provides that:

[A bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].... *No provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process.*

11 U.S.C. § 105(a) (emphasis added). *See In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (citations omitted); *accord In re Roman Cath. Church of Archdiocese of New Orleans*, 2023 WL 4105655, *16 (E.D. La. June 21, 2023); *In re City of Detroit*, 653 B.R. 874, 892 (Bankr. E.D. Mich. 2023); *In re Kwok*, 653 B.R. 480, 489 (Bankr. D. Conn. 2023); *In re Brown*, 2023 WL 4496925, *4 (Bankr. N.D. Ga. July 12, 2023).

The second sentence of section 105(a) (italicized above) was added in 1986 as part of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act (Pub. L. No. 99-554). Some courts have determined that the addition indicates that Congress meant section 105 to serve as the statutory basis for a bankruptcy court's civil contempt power. *See, e.g., Stephen W. Grosse, P.C.*, 84 B.R. 377, 386 (Bankr. E.D. Pa. 1988); *In re Miller*, 81 B.R. 669, 676-78 (Bankr. M.D. Fla. 1988); *In re Haddad*, 68 B.R. 944, 948 (Bankr. D. Mass. 1987).

A bankruptcy court's inherent contempt powers are also indicated by Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which provides that "Rule 9014 [governing "contested matters" in bankruptcy] governs a motion for an order of contempt made by the United States trustee or a party in interest." In addition, Rule 70 of the Federal Rules of Civil Procedure, which, as noted previously, authorizes a federal court to "hold [a] disobedient party in contempt," applies in bankruptcy "adversary proceedings" pursuant to Bankruptcy Rule 7070.

In *Taggart*, the U.S. Supreme Court held that, based on traditional standards in equity practice, a creditor may be held in civil contempt for violation of the bankruptcy discharge injunction, but only "if there is no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799. According to the Court in *Taggart*, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id*. Stated differently, there is no fair ground of doubt when the creditor violates a discharge injunction "based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id*. at 1802. A "creditor's good faith belief" that the discharge injunction does not apply to an act in violation of the discharge injunction does not by itself preclude a civil contempt sanction. *Id*. However, a creditor may not be held in civil contempt merely because "the creditor was aware of the discharge order and intended the actions that violated the order." *Id*. at 1803.

According to the bankruptcy court in *In re City of Detroit, Michigan*, 614 B.R. 255 (Bankr. E.D. Mich. 2020), after *Taggart*, the elements that must be proven for a court to find a party in civil contempt are that: (i) the party violated a definite and specific court order obligating it to perform or to refrain from performing a particular act; (ii) the party acted with knowledge of the court order; and (iii) there is no fair ground of doubt as to whether the order precluded the party's conduct (or stated differently, there was no objectively reasonable basis to conclude that the party's conduct might be lawful). *Id*. at 265–66.

Courts disagree as to whether a bankruptcy court's contempt powers extend to criminal contempt. *See* Collier at ¶ 9020.01[2] (citing cases and noting that "[t]here may be a split developing among the circuits as to whether a bankruptcy court can punish criminal contempt."); *id*. at ¶ 105.02[1][a] (stating that "[s]ome courts have held that this inherent power extends to all contempts, be they civil or criminal, ... while others hold that it applies only to civil contempt and some forms of criminal contempt (such as contempt committed in the presence of the court.").

The Bankruptcy Code, the Bankruptcy Rules, and the Federal Rules of Civil Procedure also give bankruptcy courts the power to sanction disobedient litigants (and their lawyers). For example, section 363(k) of the Bankruptcy Code provides that, with certain exceptions, an individual injured by any willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in an appropriate case, may recover punitive damages." In addition, if the court dismisses an involuntary bankruptcy petition, it may grant judgment against the petitioning creditors

for costs and attorneys' fees, or even punitive damages if a creditor files an involuntary case in bad faith. *See* 11 U.S.C. § 303(i).

Bankruptcy Rule 3002.1(i) authorizes a bankruptcy court to award reasonable expenses and attorneys' fees caused by the failure of home mortgagees to provide certain required notices to the debtor mortgagor.

Under Bankruptcy Rule 9011, an attorney or unrepresented litigant who signs any court pleading or other document certifies that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document does not contain, among other things, false, misleading, frivolous, or legally unsupported allegations. Fed. R. Bankr. P. 9011(a) and (b).

Bankruptcy Rule 9011(c) provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Pursuant to Bankruptcy Rule 9011(c)(2), "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Sanctions may include "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2).

Sanctions are not available under Rule 9011 in connection with "disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of [Bankruptcy] Rules 7026 through 7037." Fed. R. Bankr. P. 9011(d). The discovery rules set forth in Bankruptcy Rules 7026 through 7037 authorize the bankruptcy court in an adversary proceeding (and, unless the court orders otherwise, contested matters in a bankruptcy case) to impose sanctions on a litigant or its attorney in connection with discovery abuses under circumstances similar to those described in Bankruptcy Rule 9011. *See* Fed. R. Civ. P. 7026(g)(3); Fed. R. Bankr. P. 9014(c).

In addition, Rule 37 of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy adversary proceedings and contested matters by Bankruptcy Rules 7037 and 9014(c), provides that the bankruptcy court may impose sanctions for a litigant's failure to comply with discovery requests or court discovery orders, including an award of fees and expenses or orders compromising the noncompliant litigant's

ability to effectively prosecute the litigation (e.g., dismissal of the action or the entry of a default judgment in the action), or "treating as contempt of court the failure to obey any [discovery] order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2). Rule 45(g) of the Federal Rules of Civil Procedure (authorizing a federal court to hold a party refusing to comply with a subpoena in contempt) also applies in bankruptcy cases pursuant to Bankruptcy Rule 9016.

### Markus

Larisa Ivanova Markus (the "debtor") is a Russian citizen who founded Vneshprombank, Ltd. ("VB"), one of Russia's largest banks. In March 2016, a Russian court commenced a bankruptcy proceeding against VB. Shortly afterward, the Russian court granted a petition filed by one of the debtor's creditors to commence a bankruptcy proceeding against her personally. The court appointed Yuri Vladimirovich Rozhkov ("Rozhkov") to preside over the liquidation of the debtor's assets and to pursue litigation against any entities that contributed to the debtor's bankruptcy. In 2017, the debtor was imprisoned in Russia after being convicted for embezzling $2 billion from VB.

In January 2019, Rozhkov, as the debtor's "foreign representative," filed a petition in the U.S. Bankruptcy Court for the Southern District of New York seeking recognition of the debtor's Russian bankruptcy proceeding under chapter 15 of the Bankruptcy Code. According to the petition, Rozhkov sought recognition of debtor's Russian bankruptcy for the purpose of obtaining discovery concerning the debtor's U.S. assets (including at least 10 companies and apartments valued at more than $10 million). The U.S. bankruptcy court granted the chapter 15 petition in April 2019.

Heated discovery disputes ensued almost immediately between Rozhkov and the debtor's attorney, Victor A. Worms. Among other things, despite repeated discovery requests, Worms made no effort to obtain responsive documents, arguing that he did not need to comply because the U.S. bankruptcy court improperly recognized the debtor's Russian bankruptcy (Worms filed a motion to vacate the recognition order in June 2019).

The U.S. bankruptcy court overruled Worms's objections, and directed him to comply immediately with Rozhkov's discovery requests. The court also informed Worms that failure to comply could result in the imposition of sanctions. After Worms failed to produce any discovery before the court-imposed deadline, he argued in a written response to a subpoena that the requested discovery "exceed[ed] the limited scope of discovery provided for under Chapter 15." Worms also stated that, because the debtor

was in prison, she had no documents responsive to the discovery requests in her possession, and neither he nor his client had any duty to obtain and produce responsive documents in the possession of the debtor's agents because such documents were not in the United States.

In September, 2019, Rozhkov filed a motion for sanctions against Worms and the debtor under Rules 37 and 45(g) of the Federal Rules of Civil Procedure (as made applicable in bankruptcy cases by Bankruptcy Rules 7037 and 9016). In seeking a civil contempt sanction against Worms in the amount of $1,000 per day until compliance, Rozhkov submitted evidence of the identities and contact information of more than 30 known agents of Worms, 14 of whom were in the United States.

After a hearing during which the U.S. bankruptcy court again warned Worms that he would be sanctioned for noncompliance, the court found that Worms's violations of the court's discovery orders were knowing, willful, and intentional, and entered an order (the "sanctions order") imposing the requested monetary sanctions (amounting to $34,000 for the days since the discovery deadline and $1,000 per day until compliance) pursuant to Rule 37 of the Federal Rules of Civil Procedure and "the court's inherent power to hold a party in civil contempt." The U.S. bankruptcy court later awarded $60,000 in attorneys' fees (the "fee order") against Worms personally to compensate Rozhkov for costs incurred in connection with the sanctions motion. The court did not state in the fee order the source of its authority to do so, but referenced its previous opinion granting the sanctions motion.

On appeal of both the sanctions and fee orders, a U.S. district court affirmed the bankruptcy court's imposition of civil contempt sanctions under its "inherent authority," which Worms acknowledged existed, but remanded the case below for determination of the appropriate amount, and vacated the $34,000 in "lump-sum sanctions" as an improper criminal sanction. Because the bankruptcy court had not specified the source of its authority to award attorneys' fees to Rozhkov, the district court vacated the fee order and remanded the case below for clarification.

On remand, the U.S. bankruptcy court held that Worms's contempt was cured as of November 27, 2019, when a U.S.-based agent of the debtor contacted the debtor's other agents to obtain the requested discovery. Based on the 55 days that Worms was in contempt, the court imposed a total of $55,000 in sanctions. The bankruptcy court also held that the fee award was based on its inherent authority, but reduced the amount of the fees to $36,600. However, it also awarded Rozhkov $63,500 in fees incurred in defending the district court appeal.

Worms appealed again to the district court, which affirmed the sanctions award but vacated the award of attorneys' fees for defending the initial district court appeal, reasoning that a bankruptcy court generally does not have the power under its inherent sanctioning power to award fees incurred in connection with an appeal before another court.

Worms appealed the ruling upholding the sanctions order and the fee order to the Second Circuit.

**The Second Circuit's Ruling**

A three-judge panel of the Second Circuit affirmed the district court's ruling.

Writing for the panel, U.S. Circuit Judge Denny Chin noted that the issue of whether a bankruptcy court has inherent authority to impose "non-nominal civil contempt sanctions" was one of first impression before the Second Circuit.

He explained that, in *Sanchez*, the Second Circuit, guided by the U.S. Supreme Court's ruling in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), unequivocally held that bankruptcy courts, like other federal courts, have "inherent sanctioning power." *Markus*, 78 F.4th at 565 (citing *Sanchez*, 941 F.3d at 628). In addition, Judge Chin noted, in a previous decision, *In re Kalikow*, 602 F.2d 82 (2d Cir. 2010), the Second Circuit concluded that "[t]he statutory powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders ... [and] [t]hese powers are in addition to whatever inherent contempt powers the court may have." *Id.* at 96-97 (citation and internal quotation marks omitted).

He further noted that in *Law v. Siegel*, 571 U.S. 415, 420-21 (2014), the Supreme Court wrote that "[a] bankruptcy court ... may also possess 'inherent power ... to sanction abusive litigation practices.'"

However, Judge Chin emphasized, its previous rulings, including *In re Gravel*, 6 F4th 503 (2d. Cir. 2021), where the Second Circuit suggested that the imposition of non-nominal punitive sanctions pursuant to a bankruptcy court's inherent authority requires a finding of bad faith, dealt only with "relatively minor non-compensatory [i.e., punitive] sanctions," unlike the "substantial, compensatory, and coercive sanctions imposed against Worms here." *Markus*, 78 F.4th at 564-65.

The Second Circuit panel concluded that a bankruptcy court's inherent authority "extends beyond" the power to impose minor punitive sanctions, but "is by no means

unlimited" and requires "caution and notice before use." *Id.* at 565 (internal quotation marks and citation omitted). Judge Chin explained such limitations as follows:

(i) A bankruptcy court's invocation of its inherent authority to sanction abuse "is a last resort for when an express authority is not up to the task," and the court "may not contravene valid statutory directives and prohibitions."

(ii) A bankruptcy court must expressly invoke its inherent sanctioning powers for its order to withstand appellate scrutiny.

(iii) A bankruptcy court must comply with the mandates of due process when deploying its inherent powers.

(iv) Although a bankruptcy court need not always find bad faith before invoking its inherent sanction power, the imposition of such sanctions may require an express finding that a lawyer (acting as an advocate rather than an officer of the court) acted in bad faith supported by clear evidence that the lawyer's conduct was "entirely without color" and "motivated by improper purposes."

(v) A bankruptcy court may impose a civil contempt sanction that is compensatory or coercive, not punitive.

(vi) A contempt order is justified only where the movant establishes by clear and convincing evidence that the contemnor violated the court's order.

*Id.* (internal quotation marks and citations omitted). Therefore, Judge Chin emphasized, to demonstrate contempt justifying the imposition of sanctions, the party seeking a contempt order must establish that: (i) the order with which the contemnor failed to comply is clear and unambiguous; (ii) proof of noncompliance is clear and convincing; and (iii) the contemnor failed to diligently attempt to comply in a reasonable manner (the "*King* factors"). *Id.* at 566 (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

Applying these principles, the Second Circuit panel ruled that the bankruptcy court did not abuse its discretion in sanctioning Worms.

First, Judge Chin explained, because it is unclear whether the bankruptcy court could have relied on its express power in section 105(a) of the Bankruptcy Code to enforce compliance with a subpoena issued under Rule 45 of the Federal Rules of Civil

Procedure, "the bankruptcy court was right to consider its inherent contempt authority." *Id.* at 567.

According to Judge Chin, "most importantly," the bankruptcy court, in ordering contempt sanctions, found that all of the *King* factors had been satisfied and that Worms had acted in bad faith. Specifically, he wrote, the record clearly established that the bankruptcy court's order was unambiguous, proof of Worms's failure to comply was clear and convincing, Worms failed even to attempt compliance, and the record "firmly support[ed] the bankruptcy court's finding that Worms 'knowingly and intentionally' engaged in a 'continuous pattern of obstructing legitimate discovery.'" *Id.* In addition, Judge Chin noted, because Worms had "abundant" notice of the consequences of his refusal to comply with the bankruptcy court's discovery orders pursuant to the court's inherent authority, Worms was afforded due process.

Finally, the Second Circuit panel noted that, although the fee order did not expressly state that the bankruptcy court was exercising its inherent authority in awarding attorneys' fees to Rozhkov, the order specifically incorporated the sanction order, which did include an express reference, and Worms was clearly aware that that "the bankruptcy court rested the civil contempt sanctions against him on its inherent authority." *Id.* at 569.

**Outlook**

There are several key takeaways from the Second Circuit's ruling in *Markus*. First, the decision clarifies that, in addition to a bankruptcy court's statutory powers under section 105(a) of the Bankruptcy Code, and whatever powers the court may have to sanction for contempt under applicable procedural rules, a bankruptcy court, like other federal courts, has inherent authority to sanction a party for civil contempt under appropriate circumstances. Second, if a bankruptcy court is relying on its inherent authority to sanction a party for civil contempt, it must state so explicitly. Third, although the Second Circuit has previously concluded that a bankruptcy court has the inherent power to impose civil contempt sanctions in nominal amounts, the court of appeals has now ruled as a matter of first impression that such punitive sanctions may also be imposed in non-nominal amounts.

*Markus* is an unusual case because it involved civil contempt sanctions in connection with a discovery dispute in a chapter 15 case (discovery may generally be obtained in a chapter 15 case in the same way that it is available in cases under other chapters of the Bankruptcy Code). Moreover, the sanctions were levied against an attorney rather than his client because the client was unable to respond to the discovery obligations.

Recognizing that the client's compliance was not possible, the bankruptcy court afforded the attorney multiple opportunities to respond by taking reasonable steps to comply, such as contacting entities that could provide the requested discovery. The court sanctioned the attorney only after he failed to make any effort to do so, resulting in the required finding of bad faith. The ruling is therefore also a cautionary tale.

## Exhibit 9--03-93031 Docket Report

**U.S. Bankruptcy Court**
**Northern District of Georgia (Atlanta)**
**Bankruptcy Petition #: 03-93031-mhm**

|  |  |
|---|---|
| *Assigned to:* Judge Margaret z-Murphy | *Date filed:* 03/18/2003 |
| Chapter 11 | *Date terminated:* 06/03/2003 |
| Voluntary | *Date dismissed:* 05/21/2003 |
| Asset | *Deadline for objecting to discharge:* 06/30/2003 |
| Claims Register |  |

| | |
|---|---|
| ***Debtor*** | represented by **Sims W. Gordon, Jr.** |
| **Group Management Corp.** | The Gordon Law Firm, PC |
| 101 Marietta St. | Suite 1500 |
| Suite 1070 | 400 Galleria Parkway, SE |
| Atlanta, GA 30303 | Atlanta, GA 30339 |
| FULTON-GA | (770) 955-5000 |
| Tax ID / EIN: 59-2919648 | Fax : (770) 955-5010 |
| *aka* **IVG Corp.** | |
| | **Thomas Ware** |
| | Rosenfeld, Goldman & |
| | Ware, Inc. |
| | 101 Marietta St. |
| | Ste 1070 |
| | Atlanta, GA 30303 |
| | 404-522-1202 |
| ***U.S. Trustee*** | represented by **James H. Morawetz** |
| **Office of the United States Trustee** | Office of U.S. Trustee |
| 362 Richard Russell Building | 362 Richard Russell Bldg, |
| 75 Ted Turner Drive, SW | 75 Ted Turner Drive, SW |
| Atlanta, GA 30303 | Atlanta, GA 30303 |
| 404-331-4437 | 404-331-4437 x121 |
| | Fax : (404) 730-3534 |
| | *TERMINATED: 04/01/2003* |

| Filing Date | # | Docket Text |
|---|---|---|
| 02/05/2022 | 83 | Correspondence from Mr. Ware re Notice to Immediately Cease and Desist from all Civil and Criminal Contempts of the Brady Court Orders, et al. (scm) (Entered: 02/08/2022) |

| 02/01/2022 | 82 | Notice of Criminal Contempt by DOJ Prosecutors in case nos 04cr1224and 05cr1115 (SDNY). (scm) |
| 01/27/2022 | 81 | Letter from Mr. Ware to DOJ re litigation position. (scm) (Entered: 02/01/2022) |
| 01/26/2022 | 80 | Information delivered by Mr. Ware re investigation. (scm) (Entered: 02/01/2022) |
| 01/22/2022 | 79 | NOTICE TO IMMEDIATELY CEASE AND DESIST FROM ALL CIVIL AND CRIMINAL CONTEMPTS OF THE BRADY COURT ORDERS, THE RULE 41(a)(2) FINAL JUDGMENT, AND THE AUGUST 18, 2009, FINAL JUDGMENT ENTERED IN UNITED STATES v. WARE, 07-5670 (XAP) (2d Cir.), Gov.-I,1 jointly, (the Final Judgments). (scm) (Entered: 01/24/2022) |
| 01/20/2022 | 78 | Copy of Letter to Garland re Demand to Disclose Brady Exculpatory Evidence in cases 02cv2219 (SDNY), 03-0831 (D. NV), 03-93031 (BC NDGA), 04cr1224 (SDNY) and 05cr1115 (SDNY) (scm) (Entered: 01/21/2022) |
| 01/17/2022 | 77 | Official notice of material fact witness status (scm) (Entered: 01/18/2022) |
| 01/11/2022 | 76 | Letter sent by Mr. Ware to Merrick Garland re 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 01/12/2022) |
| 12/03/2021 | 75 | Pleadings submitted by Mr. Ware re conspiracy in 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 12/06/2021) |
| 11/28/2021 | 74 | Materials submitted by Mr. Ware related to Motions filed in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 73 | Part 4 of materials submitted by Mr. Ware in 04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 72 | Part 3 of materials submitted by Mr. Ware related to 04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 71 | Part 2 of materials submitted by Mr. Ware in cases 04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 70 | Part 1 of materials submitted by Mr. Ware related to Motion to Compel in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |

| | | |
|---|---|---|
| 11/22/2021 | 69 | Materials from Mr. Ware related to 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |
| 11/19/2021 | 68 | Materials submitted by Mr. Ware re Brady evidence in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/22/2021) |
| 11/16/2021 | 67 | Submission by Mr. Ware re rule 11 plea transcript in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/19/2021) |
| 11/12/2021 | 66 | Mr. Ware submissions re Supervisory Writ in 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 11/19/2021) |
| 11/10/2021 | 65 | Materials from Mr. Ware re: State Bar Grievance (ngs) |
| 11/10/2021 | 64 (7 pgs) | Brady Decisions re: Undisclosed Government Agreements in 04CR1224 and 05CR1115 (SDNY) (ngs) |
| 11/09/2021 | 61 | Materials Submitted in 04CR1224 and 05CR1115 (SDNY) (ngs) (Entered: 11/10/2021) |
| 11/09/2021 | 63 | Materials Filed in 04CR1224 and 05CR1115 (SDNY) USAO Manual/Motion to Compel. (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/09/2021 | 62 | Materials Submitted in 04CR1224 and 05CR1115 (SDNY) In re Sealed Case (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/08/2021 | 60 | Copy of Pleading filed in 04CR1224 and 05CR1115. (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/01/2021 | 59 | Communication from Mr. Ware to US Atty for SDNY re 04cr1224 and 05cr1115. (scm) |
| 09/28/2021 | 58 | Documents filed in 04CR1224 and 05CR1115 (SDNY). (scm) (Entered: 10/04/2021) |
| 09/27/2021 | 56 | Documents filed in 04CR1224 and 05CR1115(SDNY). (scm) (Entered: 10/04/2021) |
| 09/25/2021 | 55 | Documents filed on 05CR1115 and 04CR1224 (SDNY). (scm) (Entered: 10/04/2021) |
| 09/24/2021 | 57 | Documents submitted in 04CR1224 and 05CR1115 (SDNY). (scm) (Entered: 10/04/2021) |

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

| 09/22/2021 | 54 | Petition re Brady Court Orders and Court Judgments filed in 04cr1224 and 05cr1115 (SDNY). (scm) Additional attachment(s) added on 9/22/2021 (scm). |
| 09/13/2021 | 53 | Correspondence from Mr. Ware. (scm) (Entered: 09/14/2021) |
| 09/13/2021 | 52 | Petition re Brady Court Orders and Court Judgments filed in 02cv2219, 04cr1224 and 05cr1115 ( SDNY). (scm) (Entered: 09/14/2021) |
| 09/13/2021 | 51 | Letter to Judge Taylor-Swain in 04cr1224, 05cr1115 and 04cv2219. (scm) (Entered: 09/14/2021) |
| 09/07/2021 | 50 | Copy of letter to State Bar of Georgia by Ulysses T. Ware dated Sept 6, 2021. (scm) (Entered: 09/08/2021) |
| 08/31/2021 | 49 | Copy of Additional Criminal Contempt Claims filed in 08cr1115 and 04cr1224 (SDNY). (scm) (Entered: 09/08/2021) |
| 08/29/2021 | 48 | Copy of Emergency Application for leave to file Rule 42(b) criminal and civil contempt motion in case no 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 09/08/2021) |
| 06/23/2021 | 47 | Letter dated June 23, 2021 to Mr. Ulysses T. Ware. (scm) |
| 06/22/2021 | 46 | Letter dated April 22, 2021 from Ulysses T. Ware (Received on 4/22/21, docketed on 6/22/21). (scm) |
| 06/21/2021 | 45 | Letter dated June 21, 2021 from Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/15/2021 | 44 | Letter dated June 15, 2021 from Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/09/2021 | 43 | Letter dated June 9, 2021 to Mr. Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/09/2021 | 42 | Transcript of Proceedings heard on 4/30/2003 (originally docketed on 3/22/2005) (related document(s)30) (scm) Additional attachment(s) added on 6/9/2021 (scm). |
| 06/09/2021 | 41 | Transcript of Hearing on Emergency Motion of Debtor to Reject Executory Contract (originally docketed on 4/24/2003) (related document(s)25) (scm) Additional attachment(s) added on 6/9/2021 (scm). |
| 06/02/2021 | 40 | 11 USC 1109(b) Statutory Parties in Interest Ulysses T. Ware and Group Management's Notice of Rule 33 and Rule 42(b) Criminal |

| | | | |
|---|---|---|---|
| | | | and Civil Contempt Proceedings filed in United States v. Ware, 04cr1224 and 05cr1115 (SDNY) and other Rule 5003 and 5006 Activities Filed by Group Management Corp. . (aam) |
| 05/29/2021 | | 39 | Exhibit #UTW-03: Ulysses T. Ware, May 29, 2021 UTW's Letter dated December 11, 2011 to Kilpatrick, Townsend & Stockton, LLP and Dennis S. Meir, Esq. Discussing KTS's fraud on the court, and conspiracy to commit bankruptcy fraud in In re Group Management Courtp., Case no. 03-93031-mhm (BC NDGA), Chapter 11 Filed by Group Management Corp. . (aam) (Entered: 06/02/2021) |
| 05/24/2021 | | 38 | Ulysses T. Ware and group Management's Administrative Memorandum #4.01 and May 24, 2021 Memorandum #1.05 submitted to active United States Attorney (SDNY), Ms. Audrey Strauss, regarding In re Group Management corp., 03-93031-mhm (BC NDGA) Chapter 11, and United States v. Ware, 04cr1224 (SDNY) trial exhibits GX-250, GX-251, and GX-252; and FINRA's April 21, 2021, confirmation of KTS's client, unregistered broker-dealer status of Alpha Capital, AG. Filed by Group Management Corp. . (aam) Modified on 6/3/2021 (jlc). (Entered: 06/02/2021) |
| 04/21/2021 | | 37 | Letter dated April 21, 2021 to Mr. Ulysses T. Ware. (scm) |
| 04/21/2021 | | 36 | Letter dated April 16, 2021 from Mr. Ulysses T. Ware. (scm) |
| 04/05/2021 | | 35 | Letter dated April 5, 2021, with attachments, to Mr. Thomas Ware. (scm) |
| 03/08/2021 | | 34 | Letter dated March 4, 2021 from Ulysses T. Ware (scm) (Entered: 03/31/2021) |
| 03/01/2018 | | 33 | Copy of Order from 11th Circuit Court Re: 16-13978. Entered on 3/1/2018. (yl) (Entered: 03/05/2018) |
| 03/17/2017 | | 32 | Copy of Order from 11th Circuit Court Denying Motion to WRIT of Mandamus Entered on 3/17/2017. (yl) (Entered: 03/05/2018) |
| 06/23/2016 | | 31 | Notification of Appeal to 11th Circuit 16-13978 (yl) (Entered: 03/05/2018) |
| 03/22/2005 | | 30 | Transcript of Proceedings heard on 4/30/2003 at 10:00 am. (related document(s)13 Motion to Dismiss Case, , Motion to Convert/Reconvert Case to Ch. 7 (FEE), Motion to Convert/Reconvert Case to Ch. 7 (FEE) filed by Office of the US Trustee, 9 Motion to Reject Executory Contract or Lease filed by Group Management Corp., 15 Motion to Dismiss Case, filed by Alpha Capital Aktiengesellschaft, et al.) (mab, ) (Entered: 03/23/2005) |

| | | |
|---|---|---|
| 06/03/2003 | | Case Closed/Dismissed. (mab, ) Modified on 6/3/2003 (mab, ). |
| 05/23/2003 | 29 | BNC Certificate of Service of Order Dismissing Case with Prejudice Service Date 05/23/03. (Related Doc # 28) (Admin.) (Entered: 05/24/2003) |
| 05/21/2003 | 28 | Order Dismissing Case with prejudice. Debtor ineligible to file under Title 11 for 180 days. Service by BNC Entered on 5/21/2003. (related document(s)13, 15) (mab, ) |
| 05/09/2003 | | Hearing on motion of Debtor to reject executory contract, Hearing on motion of the U.S. Trustee for the case to be dismissed with prejudice or for the case to be converted to Chapter 7 and Hearing on motion of Alph Capital and others for the case to be dismissed or for relief from stay. ALL Hearings reset from April 29, 2003. (related document(s)13, 15, 9, 5) Hearing to be held on 5/12/2003 at 02:30 PM at Courtroom 1204, Atlanta, (phd, ) |
| 05/01/2003 | 27 | BNC Certificate of Service of Order on Application to Employ Service Date 05/01/03. (Related Doc # 26) (Admin.) (Entered: 05/02/2003) |
| 04/29/2003 | 26 | Order DENYING Application to Employ Thomas Ware as Attorney for Debtor. (Related Doc # 17) Service by BNC Entered on 4/29/2003. (mab, ) |
| 04/25/2003 | 24 | Exhibits : *Exhibit A to Voluntary Petition* (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | 23 | Schedules : *List of Equity Security Holders* filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | 22 | Attorney Disclosure Statement (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | 21 | Schedules *A, B, C, D, E, F, G, and H* filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | 20 | Statement of Financial Affairs (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/24/2003 | 25 | Transcript of Hearing on Emergency Motion of Debtor to Reject Executory Contract. (mab, ) (Entered: 04/28/2003) |

| | | |
|---|---|---|
| 04/23/2003 | 19 | Order and Notice of Reassignment of Hearing of Debtor's Emergency Motion to Reject Executory Contract with Alpha capital; US Trustee's Motion to Dismiss Case with prejudice or, in the Alternative, Motion to convert case from 11 to 7; and Motion To Dismiss or, in the Alternative, for Relief from the Automatic Stay. Service by Courtroom Deputy. Entered on 4/23/2003. (related document(s)9,13,15) Hearing to be held on 4/30/2003 at 10:00 AM at Courtroom 1204, Atlanta, (mab, ) Text and Linkage Modified on 4/25/2003 (ysg, ). |
| 04/17/2003 | 18 | Order and Notice of Assignment of Hearing. Continued hearing on Debtor's Emergency Motion to reject executory contracts. Service by Courtroom Deputy. Entered on 4/17/2003. (related document(s)9) Hearing to be held on 4/29/2003 at 10:00 AM at Courtroom 1204, Atlanta, (Bennington, Merrill) |
| 04/15/2003 | 17 | Application to Employ *Rosenfeld, Glodman & Ware, Inc. as its attorney in for the exclusive matter of, Emergency Motion to Reject the Funding Agreement with c/s* filed by Thomas Ware on behalf of Group Management Corp.. (Bennington, Merrill) (Entered: 04/16/2003) |
| 04/11/2003 | 16 | *--Brief in Support of Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, and Request for Emergency Hearing* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A" "B" and "C") (Meir, Dennis) Text Modified on 4/16/2003 to reflect correct wording (Wiggins, Irene). |
| 04/11/2003 | 15 | Emergency Motion to Dismiss Case *--Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, and Request for Emergency Hearing* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A" and "B") (Meir, Dennis) |
| 04/11/2003 | 14 | Response to Motion *--Opposition to Emergency Motion to Reject Executory Contract* (related to motions(s)9) filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. (Meir, Dennis) |
| 04/10/2003 | 13 | Motion to Dismiss Case *With Prejudice or, in the Alternative,* Motion to convert/reconvert case from 11 to 7 Fee Collected $ 0., Receipt Number N/A. filed by James H. Morawetz on behalf of Office of the US Trustee. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A") (Morawetz, James) Modified on 4/11/2003 (Meador, Sheila). |
| 04/10/2003 | 12 | Certificate of Service *of Order and Notice of Assignment of Hearing* (related document(s)10) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.)

| 04/10/2003 | 11 | Notice of Appearance (Attorney) --*Entry of Appearance, Request for Special Notice, Request for Service of Papers, and Reservation of Rights filed by Dennis S. Meir, Kilpatrick Stockton LLP, counsel to Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership,* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. (Meir, Dennis) |
| --- | --- | --- |
| 04/08/2003 | 10 | Order and Notice of Assignment of Hearing re: Emergency Motion to Reject Executory Contract or Lease Service by Courtroom Deputy. Entered on 4/8/2003. (related document(s)9) Hearing to be held on 4/15/2003 at 02:15 PM at Courtroom 1204, Atlanta, (Mitchell, Gregory) |
| 04/08/2003 | 9 | Emergency Motion to Reject Executory Contract or Lease filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/08/2003 | 8 | Application to Employ *Counsel for Debtor* (related document(s)7) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Attachments: 1 Exhibit A: Declaration of Attorney) (Gordon, Sims) |
| 04/08/2003 | 7 | Notice of Appearance (Attorney) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/01/2003 | 6 | Notice of Appearance (Attorney) filed by James H. Morawetz on behalf of Office of the US Trustee. (Morawetz, James) |
| 03/31/2003 | 5 | Motion to Reject Executory Contract or Lease, Motion to Set Hearing on *Motion to Reject Executory Contract; (Proposed order/notice of hearing submitted to chambers)* filed by Thomas Ware on behalf of Group Management Corp.. (Attachments: 1 Exhibit #1) (Wilson, Melanie) (Entered: 04/01/2003) |
| 03/28/2003 | 4 | BNC Certificate of Service of Order Service Date 03/28/03. (Related Doc # 3) (Admin.) (Entered: 03/29/2003) |
| 03/26/2003 | 3 | Order to Corporate Debtor to Obtain Counsel Service by BNC Entered on 3/26/2003. (Owens, Deborah) |
| 03/20/2003 | 2 | Notice of Filing of Bankruptcy Case, Meeting of Creditors & Deadlines w/Certificate of Service by BNC Service Date 03/20/03. (Admin.) (Entered: 03/21/2003) |
| 03/18/2003 | | Meeting of Creditors (Chapter 11) Ch. 11 First Meeting to be held on 5/1/2003 at 10:00 AM at Hearing Room 365, Atlanta. Objections for Discharge due by 6/30/2003, (Blount, Danya) |

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

| | | 1 | Voluntary Petition (Chapter 11) Fee Collected $ 830, Receipt Number 01025308. Disclosure Statement due by 7/16/2003. Chapter 11 Plan due by 7/16/2003. Schedule A due 4/2/2003. Schedule B due 4/2/2003. Schedule C due 4/2/2003. Schedule D due 4/2/2003. Schedule E due 4/2/2003. Schedule F due 4/2/2003. Schedule G due 4/2/2003. Schedule H due 4/2/2003. List of Equity Security Holders due 4/2/2003. Statement of Financial Affairs due 4/2/2003. Atty Disclosure State. due 4/2/2003. Filed by Thomas Ware on behalf of Group Management Corp.. (Blount, Danya) Additional |
| 03/18/2003 | | | attachment(s) added on 11/2/2007 (smw, ). |

**Respectfully submitted,**

/s/ **Ulysses T. Ware**

*For: Ulysses T. Ware, Statutory Party in Interest, and Group Management.*

**From the Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com
January 26, 2025, 9:34:33 AM

Signed this 26th day of January 2025, under oath and subject to the penalty of perjury, having personal knowledge of the facts pursuant to 28 USC § 1746 in Brooklyn, NY.

Ulysses T. Ware
/s/ Ulysses T. Ware
Brooklyn, NY

**Filed by Ulysses T. Ware and Group Management, 11 USC § 1109(b) Statutory Parties in Interest[12] and Prevailing Parties in 02cv2219 (SDNY), see Dkt. 90, Dec. 20, 2007, Plaintiffs'' Voluntary Rule 41(a)(2) Dismissal with Prejudice.**

---

[12] **11 U.S. Code § 1109 - Right to be heard**

Exhibit 10—Frauds, crimes, and Hobbs Act predatory 18 USC § 2, 152, 157, 371, 401(2), 401(3), 924 (c), 1201-02, 1341, 1343, 1344, 1346, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b) racketeering loan sharking conspiracy of Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, M. Regina Thomas, Patrick Sinback, Wendy L. Hagenau, Colleen McMahon, Frank V. Sica, Tailwind Management L.P., FINRA, Michael H. Dolinger, JAMS, Alexander H. Southwell, Jeffrey B. Norris, David N. Kelley, Arie Rabinowitz, Trailblazer Merger Corp., I, Joseph Hammer, Konrad Ackermann, Baker & McKenzie, LLP, Thomas A. Leghorn, Lawrence B. Mandala, Robert Alberal, London, Fisher, LLP, Nall & Miller, LLP, John Doe Insurance Companies, ##1-5, John F. King, Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, J. Henry Walker, IV, Dennis S. Meir, John W. Mills, III, James H. Morawetz, Kenneth A. Zitter, Esq., the State Bar of Georgia, Office of the General Counsel, the U.S. Trustee, Region, 21, Michael S. Bertisch, et al.

---

(a) The Securities and Exchange Commission may raise and may appear and be heard on any issue in a case under this chapter, but the Securities and Exchange Commission may not appeal from any judgment, order, or decree entered in the case.

(b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter. (Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2629.).

# The Office of Ulysses T. Ware
123 Linden Blvd, Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

November 8, 2024, 9:34:33 AM

## RE: Ulysses T. Ware and FINRA's Joint Declaration of Stipulated Irrefutable Material Facts of Criminal Violations of the Federal Money Laundering and Racketeering Laws and <u>Certification of Unregistered Broker-Dealer Status</u>.

Financial Industry Regulatory Authority (FINRA)
1735 K St., NW
Washington, D.C. 20006-1506

Dear Mr. Robert W. Cook, Mr. Robert L.D. Colby, and Ms. Marcia E. Asquith: (via email)


## Introduction

The conduct of FINRA, Emma Jones, et al. in regard to this request for disclosure of public records maintained in the ordinary course of business, FINRA, Emma Jones, Esq., et al. finds themselves in a very perilous position—*that is, aiding, abetting, and directly participating in a conspiracy to conceal the unregistered broker-dealer status of the Requested Persons*, see Ex. 1-4, infra. an egregious violation of 18 USC §§ 2, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(d); and violations of Bar Association Rules of Professional Conduct.[13]

Given the recent discovery of actual innocent Brady exculpatory evidence by Mr. Ware's private investigators, it has become necessary to undertake to confirm with regulatory authorities the official broker-dealer status of the Requested Persons. Accordingly, unless FINRA submits to Mr. Ulysses T. Ware at utware007@gmail.com a sworn Declaration of Material Fact signed by its executives, Robert W. Cook, Robert L. D. Colby, and Marcia Asquith, Esq., **not later than 3:00 PM EST on November 8, 2024, time being of the essence**, that opposes, denies, and *refutes*

---

[13] A Bar complaint will be filed against Emma Jones, et al. given their lying, fraud, wire fraud, deceit, deception, and unethical professional conduct in violation of the Rules of Professional Conduct with respect to processing the Oct. 29. 2024, request for certified records, see Ex. A, infra.

each Fact, *with credible evidence*, of unregistered broker-dealer status in the below Ware-FINRA Joint Declaration and Stipulation of Fact, then:

(i)    FINRA will be deemed to have stipulated and *certified* that it has no evidence or good faith opposition or legal or factual denial to each Fact as stated, and

(ii)    Further *certifies* that FINRA lacks a good faith factual or legal basis supported by credible evidence on which to deny and refute each Fact in regard to the ***unregistered broker-dealer status*** for **Tailwind Management L.P.**, **Frank Vincent. Sica**, **Michael Scott Bertisch**, **Colleen McMahon**, and **Arie Rabinowitz**, (the "**Requested Persons**"), an illegal association in fact, a continuing criminal enterprise as defined in 18 USC § 1961(4).[14] See Ex. A, infra.

If a competing FINRA Declaration is not received by Mr. Ware on **November 8, 2024, by 3:00 PM EST**:

(i) FINRA will be deemed to have certified, conceded, and factually stipulated as fact that Sica, Bertisch, McMahon, Tailwind, and Rabinowitz *are not and have never lawfully registered with FINRA as broker-dealers as required by federal law, 15 U.S.C. § 78o(a)(1)*; and

(ii) the Requested Persons currently and/or have operated in the United States since on or about 2001 in criminal violation of federal broker-dealer registration laws.

Mr. Ware will present the Ware-FINRA Joint Declaration to the Director of the FBI, relevant State Bar associations, and United States Federal Courts *as a FINRA certified judicial admission and stipulated fact* of criminal violations of the federal securities laws by each Requested Person--that is, *a pattern of racketeering activities* as defined in 18 USC § 1961(4), *a continuing Hobbs Act, 18 USC § 1951(a) predatory loan sharking and money laundering **criminal enterprise***. See Ex. 4, 4.1, 4.2, Ex. 5, and Ex. 8, infra.

Sincerely,

/s/ Ulysses T. Ware

November 7, 2024

Brooklyn, NY

---

[14] Jointly and severally are currently engaged in the illegal underwriting of Hobbs Act predatory loan sharking convertible promissory notes, see Ex. 4 and Ex. 8, infra, and other unregistered securities, originated, underwritten, funded, administered, and collected in violation of NYS Penal Law, § 190.40, the criminal usury law, a class E felony, and in violation of federal racketeering laws, 18 USC §§ 2, 157(2), (3), 371, 924(c), 1201-02, 1341, 1343, 1344, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d); and 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff, *a pattern of racketeering activities*.

# Table of Contents

**Introduction**................................................................................................96

**Ware-FINRA Joint Declaration of Indisputable Facts**.................................102

   **Joint Stipulated and Certified Undisputed Material Facts**........................102

   End of Declaration ...................................................................................113

**AA.    Ulysses T. Ware's Oct. 29, 2024, Request for FINRA certification of unregistered broker-dealer status for Tailwind Management L.P., Colleen McMahon, Frank V. Sica, Michael S. Bertisch, and Arie Rabinowitz; an illegal association in fact, a continuing criminal enterprise.** ....114

A.    Ulysses T. Ware's Oct. 29, 2024, FINRA request for certified Form BD (broker-dealer) *public records* regarding Colleen McMahon, her alleged spouse Frank V. Sica, Michael Scott Bertisch, and Arie Rabinowitz. Cf., Ex. 6.0 infra. ...........................................................................................116

B.    Ulysses T. Ware's October 29, 2024, Request to FINRA to certify broker-dealer public records. .117

C.    According to the SEC's website Tailwind Capital (CRD# 156562) is registered only as an "investment advisor" **not a broker-dealer;** and according to the SEC and *confirmed by* FINRA's BrokerCheck system Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon *have never registered as broker-dealers* on Form BD according to all available public information. See Ex. 1-3, infra. ..........118

D.    Tailwind's SEC certification and admission that its employees (Frank V. Sica, Colleen McMahon, Michael S. Bertisch, or Arie Rabinowitz) *are not* registered broker-dealers authorized to engage in the business of underwriting and funding criminal usury convertible promissory notes, see Ex. 8 and GX 1, GX 2, GX 3, and GX 4 in *U.S. v. Ware*, 04cr1224 (SDNY). See Ex. 4 and Ex. 8, infra. .......................119

Exhibit 1--Frank V. Sica (CRD# 1481917)—employed by Tailwind  Capital Management LP (CRD#156562)..........................................................................................................120

   No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Frank V. Sica were confirmed on Nov. 6, 2024. ................................................................................121

Exhibit 2--Michael Scott Bertisch (CRD# 5154572)—employed by Tailwind Capital Management LLP (CRD# 156562)........................................................................................................122

   **No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Michael Scott Bertisch. It was confirmed on Nov. 6, 2024.** ...................................................................123

Exhibit 3--Colleen McMahon (DOB: July 18, 1951—no CRD number available)—employed by Tailwind Management LLP (CRD# 156562)........................................................................................124

   **No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Colleen McMahon was confirmed on Nov. 6, 2024.** ......................................................................125

Exhibit 4--Arie Rabinowitz (DOB: Dec. 27, 1972) (No CRD number  available on BrokerCheck) .............126

Exhibit 4.1—Arie Rabinowitz's confession of his and Alpha Capital, AG's unregistered broker-dealer status. See Ex. 5, infra.........................................................................................................127

Exhibit 4.2—Rabinowitz and LH Financials' loan sharking admissions. ................................................128

   **No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Arie Rabinowitz were confirmed on Nov. 6, 2024.** ................................................................................129

**Exhibit 5--May 17, 2021, FINRA *Certification of unregistered broker-dealer status* for each 02cv2219 (SDNY) plaintiff, affiliates, and agents of Tailwind Capital, L.P., Frank V. Sica, and Colleen McMahon certified by FINRA's Marcia Asquith, Esq.**.........................................................................130

Exhibit 6.0--Tailwind Capital L.P. Form ADV page 23 filed with the Securities and Exchange Commission (SEC) on March 30, 2024, admitted under oath that Tailwind *is not* registered as a 15 USC §78o(a)(1) broker-dealer in the United States. **Accordingly, Colleen McMahon and Frank V. Sica personally violated (1) federal law, 15 USC §§ 77e, 77x, and 78ff, and (2) NYS Penal Law, section 190.40, the criminal usury law, a class E felony by underwriting more than $100 million in criminal usury convertible promissory notes and other unregistered securities**..........................................131

Exhibit 6.1—Page 63 Excerpt from Tailwind Capital's March 30, 2024, Form ADV, see Ex. 7, attached hereto, incorporated by reference herein, and made a part hereof: Tailwind admitted under oath that *Tailwind's senior management approved ("pre-clearance")* Frank V. Sica's and Colleen McMahon's (employees and/or agents of Tailwind) **$100 million investments in criminal usury convertible promissory notes**, the same null and void ab initio, uncollectable, and unenforceable subject matter involved in *U.S. v. Ware*, 04cr1224 (SDNY), *Alpha Capital AG, et al. v. Group Management Corp., et al.*, 02cv2219 (SDNY) (McMahon, J.) and in *In re Group Management Corp.*, 03-93031 (BC NDGA) (WLH) Chapter 11. See Ex. 6-3 infra, Dkt. 258 03-93031 (BC NDGA) (Hagenau, C.J.). ......................132

Exhibit 6.2—(McMahon, Hagenau, and Gitner's mafia RICO 18 USC 2, 157, 371, 1341, 1343, 1503, 1951(a), 1961(6)(B) and 1962(d) Overt and Predicate Acts). Collusion, conspiracy, and coordination of Jim Crow racially-motivated retaliatory, vindictive, and punitive moot void ab initio leave to file sanctions initiated in concert and by judicial collusion of Wendy L. Hagenau and Colleen McMahon—see 02cv2219 (SDNY), Dkt. 139, 139-1, and 139-2, *McMahon and her husband, Frank V. Sica, are both unregistered broker-dealers, personally owned more than $22 million in criminal usury convertible promissory notes similar to GX 1, GX 2, GX 3, and GX 4, according to records maintained by the Exec. Director, Administration of the U.S. Courts and the Judiciary*, as overt acts in furtherance of the conspiracy to commit bankruptcy fraud, Hobbs Act attempted armed robbery, armed aggravated assault and battery, conspiracy, and other crimes, 18 USC §§ 2, 156-157, 371, 924(c),1951, 1956-57, 1958-59, 1961(6)(B), and 1962(a-d). See In re Colleen McMahon, 02-24-90036jm (2d Cir.) re: Complaint of criminal judicial misconduct (Pending). ................................................................................................133

Exhibit 6.3—Dkt. 258 (RICO Overt and Predicate Act) page 3, **In re Group Management Corp.**, 03-93031 (BC NDGA) Chapter 11, Hagenau, C.J. re 18 USC §§ 157(2), (3) and 1961(6)(B) conspiracy to commit bankruptcy fraud. ............................................................................................................134

Exhibit 7.0 (see attachment)—Tailwind Management L.P. Form ADV, March 30, 2024—that is, actual innocent Brady exculpatory evidence concealed and suppressed by Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Colleen McMahon, Daniel Gitner, Edgardo Ramos, and Wendy L. Hagenau in violation of the Aug. 10, 2007, Dkt. 32, *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order—18 USC 2, 371, and 401(2) and 401(3) civil and criminal contempt of a lawful Brady disclosure court order, cf., Ex. 6.2, supra (McMahon, Hagenau, and Gitner's conspiracy to obstruct justice overt and predicate acts. ...................135

Exhibit 8.0—Colleen McMahon, Frank V. Sica, Arie Rabinowitz, LH Financial Services, and Tailwind's illegal underwriting of criminal usury convertible promissory notes in violation of federal laws, 15 USC §77e, 77x, and 78ff. ...............................................................................................................................136

Exhibit 8.1--Colleen McMahon and Frank v. Sica's Massive *+$22,000,000 Personal Ownership* in Hobbs Act RICO Criminal Usury Convertible Promissory Notes Underwritten in violation of 15 USC

§§ 77e, 77x, 78o(a)(1), and 78ff; and NYS Penal Law, section 190.40, the criminal usury law, *a class E felony*. .................................................................................................................. 136

Exhibit 8.2: Judge McMahon's and convicted felon Edward M. Grushko's money laundering that involved unregistered broker-dealer and RICO unlawful debt creator and collector Alpha Capital, AG. What are Judge McMahon and her spouse, Frank V. Sica's relationship to Alpha Capital, AG, Kenneth A. Zitter (Harvard Law), Dennis S. Meir (Harvard Law), Thomas W. Thrash, Jr. (Harvard Law), LH Financial Services, Inc., and Ari Rabinowitz? ................................................................................. 137

Exhibit 8.3: Money laundering by Edward M. Grushko, Alpha Capital, AG, and Judge Colleen McMahon in the Silver Dragon Resources, Inc. litigation. .................................................. 138

Exhibit 8.4: Reported 2020 income of Frank V. Sica. ................................................................ 139

Exhibit 8.5: #103 2020 convertible promissory note valued between $500,000 and $1,000,000. ....... 140

Exhibit 8.6: #113 2020 convertible promissory note valued between $100,001 - $250,000. ............ 141

Exhibit 8.7: #142 2020 convertible promissory note valued between $100,001 - $250,000. ............ 142

Exhibit 8.8: #204 2020 convertible promissory note valued between $500,001 - $1,000,000. .......... 143

Exhibit 8.9: #219 2020 convertible promissory note valued between $100,001 - $250,000. ............ 144

Exhibit 8.10: #220 2020 convertible promissory note valued between $15,001 - $50,000. ............. 145

Exhibit 8.11: #244 2020 convertible promissory note valued between $500,001 - $1,000,000. ........ 146

Exhibit 8.12: #254 2020 convertible promissory note valued between $500,001 - $1,000,000. ........ 147

Exhibit 8.13: #259 2020 convertible promissory note valued between $500,001 - $1,000,000. ........ 148

Exhibit 8.14: #276, 277, and 279 2020 convertible promissory notes valued between $500,001 - $1,000,000. ........................................................................................................................... 149

Exhibit 8.15: ##297, 300, 302, and 304 2020 convertible promissory notes valued between $50,001 - $1,000,000. .............................................................................................................. 150

Exhibit 8.16: #323 2020 convertible promissory note valued between 100,001 - $250,000. ............ 151

Exhibit 8.17: ##327, 334, 336, 337, and 339 2020 convertible promissory notes valued between 50,001 - $500,000. .............................................................................................................. 152

Exhibit 8.18: #376 2020 convertible promissory note valued between $250,001 - $500,000. ........... 153

Exhibit 8.19: #387 2020 convertible promissory note valued between $15,001 - $50,000. ............. 154

Exhibit 8.20: #425 2020 convertible promissory note valued between $100,001 - $250,000. ........... 155

Exhibit 8.21: #427 2020 convertible promissory note valued between $250,001 - $500,000. ........... 156

Exhibit 8.22: #520 2020 convertible promissory note valued between (not valued). ..................... 157

Exhibit 8.23—Trailblazer Merger Corp., I, Hobbs Act money laundering conduit arranged by LH Financial Services, Arie Rabinowitz, Loeb & Loeb, LLP, Mitchell Nussbaum, Esq., Alexandria Kane, Esq., Colleen McMahon, Edgardo Ramos, Jose A. Cabranes, Robert D. Sack, Amalya L. Kearse, Damian Williams, Frank V. Sica, Tailwind Capital Management LLP, and other unindicted coconspirators to launder the profits and proceeds derived from Hobbs Act extortion, loan sharking, kidnapping, murder for hire, bribery, bank fraud, private equity fraud, securities fraud, and other racketeering activities. 158

End of document ............................................................................................................... 159

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

## Ware-FINRA Joint Declaration of Indisputable Facts

I, Ulysses T. Ware, this 7th day of November 2024, in Brooklyn, NY pursuant to 28 U.S.C. § 1746, declare under oath and subject to the penalty of perjury that the following facts are true and correct, based on my personal knowledge and submit this declaration of facts based upon evidence obtained and analyzed from FINRA's BrokerCheck system, corroborated by Exhibit 7, Exhibit 8, GX 1-4, and other exhibits referenced infra. Each fact presented herein is indisputable, supported by credible evidence of violations of federal securities laws, the NYS Penal Law, and federal loan sharking and money laundering laws.

## Joint Stipulated and Certified Undisputed Material Facts

1. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Frank V. Sica** *is **not*** a registered broker-dealer, evidenced by the absence of any active or inactive broker-dealer registration for Frank V. Sica in the public FINRA records. Ex. 1, and Ex. 6.0, infra.

2. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Colleen McMahon** *is not* a registered broker-dealer, as no registration history or regulatory filings were found under her name in the BrokerCheck database. Ex. 3, and Ex. 6.0, infra.

3. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Michael S. Bertisch** *is **not*** a registered broker-dealer, with no broker-dealer credentials or filings on record within FINRA's system. Ex. 2, and Ex. 6.0, infra.

4. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Arie Rabinowitz** *is **not*** a registered broker-dealer, based on the complete lack of registration documentation or regulatory submissions in FINRA's BrokerCheck. Ex. 4, and Ex. 5, infra.

5. None of the individuals mentioned in Facts 1-4 hold registration as broker-dealers with the SEC or FINRA, pursuant to 15 U.S.C. § 78o(a)(1), which mandates that individuals acting as broker-dealers must *be duly registered* with the SEC and/or FINRA to legally engage in securities transactions. Cf., Ex. 4.1, 4.2, 8, and Ex. D, infra.

6.  LH Financial Service, operating under the direction of individuals referenced in Facts 1-4, has no record of broker-dealer registration with either the SEC or FINRA, which was confirmed on May 17, 2021, by FINRA's Marcia Asquith, Esq. a thorough search of both BrokerCheck and SEC registration databases. Ex. 5, infra.

7.  Tailwind, through its direct involvement in funding activities and financial underwriting, lacks the broker-dealer registration required under federal securities laws, as confirmed by the absence of Form BD filings in both FINRA and SEC records. Ex. 6, and Ex. 7 at page 23, and Ex. D, infra.

8.  BrokerCheck confirmed the absence of Form BD registration records for each individual named above, indicating that none complied with the mandatory broker-dealer registration requirements for underwriting activities. Ex. 1-5, infra.

9.  Each individual identified in Facts 1-4 has knowingly engaged in underwriting, funding, and collection of criminal usury convertible promissory notes, as documented in Exhibit 8, and GX 1-4, which detail their involvement in structuring, promoting, and collecting on these illegal criminal usury convertible promissory notes financial instruments. See Ex. 4, 4.1, 4.2, and Ex. 8, infra.

10. The illegal and criminal business activities engaged in and conducted by Frank V. Sica, Colleen McMahon, Michael S. Bertisch, Tailwind, LH Financial Services, and Arie Rabinowitz included the origination, underwriting, funding, selling, and collection of criminal usury convertible promissory notes to third parties, evidenced by transactional records, investor agreements, and emails communications in regard to Ex. 4.1, 4.2, and 8 and GX 1-4, see Ex. 4, 4.1, 4.2, 5, 6.0, and 6.1 infra.

11. These criminal usury convertible promissory notes were not registered as securities under 15 U.S.C. § 77e, _**which requires all securities offered for public sale to be registered, and the failure to comply is documented by the absence of SEC registration numbers for these financial instruments**_. See SEC Release 33-7190 n. 17 (1995) ("Section 2(a)(11) statutory underwriters _**are required to register**_ [with the SEC] all distribution of securities."). (emphasis added).

12. The underwriting activities described were performed without the required SEC or FINRA broker-dealer registration, directly contravening 15 U.S.C. § 78o(a)(1), as evidenced by the lack of any filings or approvals authorizing these individuals to act in a broker-dealer capacity. See Ex. 1-5, Ex. D, Ex. 6.0, 6.1, and 6.3, infra,

13. Tailwind and LH Financial Services, see Ex. 4.1 and 4.2, infra, has been engaged _**extensively and continuously (engaged in "a good few hundred" loan sharking transactions as an unregistered broker-dealer)**_[15] from 2001 to the present 2024 in the business of **originating**, **underwriting**, **funding**, and **collecting** Hobbs Act extortion payments—required to be disgorged back to the debtor,[16] on these criminal usury convertible promissory notes, see Ex. 8, infra, _**without broker-dealer registration**_, see Ex. 1-4, and Ex. 6.0 and 6.1, infra, with transactional evidence showing their role _in facilitating and managing the flow of funds between investors and issuers_. See Ex. 7, attachment.

---

[15] Quoting unregistered broker-dealer Arie Rabinowitz during the _**U.S. v. Ware**_, 04cr1224 (SDNY) trial and also see Ex. 6.3, the conspiracy to commit bankruptcy fraud, 18 USC § 157(2), (3) by Wendy L. Hagenau, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP and its partners Wab Kadaba, Dennis S. Meir, J. Henry Walker, IV, John W. Mills, III, and others involved in the Hobbs Act loan sharking criminal enterprise. See Ex. 11-1, KTS memorandum, attached hereto and incorporated by reference herein, _in heac verba_.

[16] See 15 USC § 78p(b) and _**Roth v. Jennings**_, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.).

14. ***The promissory notes carried criminally usurious interest rates in violation of NYS Penal Law § 190.40, with interest rates 200-2000%, as detailed in the promissory note agreements and financial disclosures in Exhibits 4.2 and 8.***

15. LH Financial Service, and Tailwind under the direction and management of Rabinowitz, Frank V. Sica, Colleen McMahon, and Michael S. Bertisch, engaged in repeated criminal usury transactions, see Ex. 4 and Ex. 8, infra, showing multiple promissory notes issued at usurious rates over an extended period of 20 years—that is, a pattern of racketeering activities.

16. The individuals in Facts 1-4 actively solicited investment from multiple entities using unregistered, criminally usurious promissory notes, as evidenced by communications, solicitation emails, and marketing documents associated with Ex. 4 and Ex. 8, infra, also see Ex. 7, attached hereto.

17. The evidence, as contained in GX 1-4, and Ex. 8 demonstrates that these securities were marketed and sold to unaccredited investors, which constitutes a violation of the Securities Act, as none of the investor accreditation standards under Rule 506(b) or Regulation D were met. See SEC Release 33-7190 n. 17 (1995).

18. Under the definition set forth in 18 U.S.C.§ 1961(6)(B), these activities constitute loan sharking, as the convertible promissory notes involved clearly carried usurious interest rates (200-20000%) and were issued with the intent to extract above-market returns from borrowers (Group Management Corp. and others) under duress.

19. The criminal usury convertible promissory notes (see GX 1-4, and GX 5), see Ex. 4 and Ex. 8, infra, contained illegal unenforceable terms that clearly indicated usurious interest

rates far above the legal threshold, with explicit language in the agreements detailing interest rates ranging from 200% to 2000%, well above the permissible limit under ***NYS Penal Law, section 190.40, the criminal usury law, a class E felony***.

20. Ex. 4 and Ex 8, infra, provides documentation of promissory note terms with interest rates exceeding 200%, consistent with the statutory definition of criminal usury under NYS Penal Law, and include detailed calculations of principal and interest that violate the legal threshold.

21. These illegal criminal usury underwriting activities *were not limited to a single transaction* but were systematically repeated, as evidenced by Ex. 4.1, 4.2, and Ex. 8, which contains a chronological listing of over "a good few hundred" separate promissory note issuances involving the same terms and parties.

22. Colleen McMahon, Sica, Bertisch, and Rabinowitz acted as a representative of Tailwind and LH Financial Service in negotiating criminal usury unregistered convertible promissory notes, and other unregistered securities with investors, signed correspondence and negotiation drafts contained in Exhibit 8 infra demonstrating their direct involvement in the criminal enterprise.

23. FINRA's Nov. 6, 2024, BrokerCheck responses confirmed that Sica, Bertisch, McMahon, Tailwind, LH Financial Services, McMahon, and Rabinowitz ***did not*** submit or maintain Form BD as required for lawful broker-dealer operations, ***evidenced by the lack of any public disclosure of Form BD filings or approvals***. See Ex. 1-5, and see Ex.6.0 infra.

24. SEC Form BD, see 15 USC § 78o(a)(1), is required for lawful underwriting activities involving convertible promissory notes, and none of the named individuals had an active

filing on record, which was confirmed through both FINRA BrokerCheck and SEC EDGAR system searches, see Ex. 1-5, infra.

25. See Ex. 4.1, 4.2, and Ex. 8 documents that the promissory notes were explicitly intended for funding the operations of LH Financial Service and Tailwind, reflecting commercial activity typical of broker-dealers, as shown by the use of proceeds sections in the promissory note agreements and Ex. 7.

26. The overwhelming evidence *establishes a clear pattern* of activity involving unregistered securities, as referenced in Exhibits 4.1, 4.2, and 8, infra, which includes transactional ledgers, correspondence, and promissory note copies detailing multiple issuances.

27. Arie Rabinowitz played a substantial role in facilitating the funding operations, including negotiating terms for several of the usurious promissory notes (GX 1-4), as evidenced by email threads and signed agreements indicating his direct participation in discussions. See Ex. 4.1 and 4.2, infra.

28. Exhibit 8 further reveals that Sica, Bertisch, McMahon, and Tailwind sold the unregistered securities were sold across state lines, involving interstate commerce, thereby bringing these transactions under federal jurisdiction pursuant to 15 U.S.C. § 77q.

29. Violations of 15 U.S.C. § 77e, 77x, and 78ff apply to each individual identified herein due to their direct and/or indirect participation in the offering of unregistered securities, as documented in investor communications and failure to properly register these financial instruments. See Ex. 4.1, 4.2, and 8.

30. Michael S. Bertisch, Esq., Tailwind's "general counsel" and "compliance officer" (see Ex. 2, infra) directed the underwriting, funding, enforcement, collection, and administration of

payments related to criminal usury notes, see Ex. 2, and Ex. 8, infra, in violation of NYS Penal Law, section 190, and federal loan sharking statutes, as evidenced by 18 USC § 1961(6)(B), which details his role in managing delinquent payments and enforcing collection.

31. FINRA's BrokerCheck system reflects a lack of broker-dealer registration for Tailwind's involvement in these funding transactions, with no public records available that show compliance with registration requirements. See Ex. 1-5, infra.

32. Criminal usury is a Class E felony under NYS Penal Law § 190.40, and each individual (Sica, McMahon, Bertisch, and Rabinowitz), Tailwind, and LH Financial Services all knowingly engaged in these criminal activities with knowledge of the usurious nature of the transactions, as evidenced by internal communications acknowledging the interest rates and discussing potential regulatory scrutiny. Cf. Ex. 4.1, 4.2, and Ex. 8, infra; see Ex. 11-1 attached hereto, and also see Ex. 7 attached hereto.

33. The ***criminal actions*** of the individuals and entities named herein were knowingly conducted ***without broker-dealer registration***, as confirmed by FINRA's BrokerCheck system on Nov. 6, 2024, cf., with Ex. 1-8, ***showing that each person was aware of registration requirements but failed to comply***.

34. The violations of 18 U.S.C. § 1961(6)(B) demonstrate that these underwriting activities *constituted loan sharking* under federal law, with explicit intent to lend at rates exceeding legally permissible levels while coercively collecting payments. See Ex. 4-8, infra; cf. Ex. 11-1, and Ex. 6.2 and 6.3, infra.

35. The overwhelming evidence points to a coordinated effort by Frank V. Sica, Colleen McMahon, Michael S. Bertisch, LH Financial Service, Tailwind, and Arie Rabinowitz to engage in illegal underwriting of criminal usury promissory notes without proper broker-dealer registration (15 USC § 78o(a)(1) and FINRA's Form BD), in violation of both federal securities laws and state usury statutes, as substantiated by documentary evidence in Ex. 1-5, regarding GX 1-4 and Exhibit 8 regarding McMahon's et al. criminal usury debts.

36. Further examination of the BrokerCheck database and corroborating documents reveal, see Ex. 7, attached hereto, that Frank V. Sica, Colleen McMahon, Michael S. Bertisch, Tailwind, LH Financial Services, and Arie Rabinowitz deliberately circumvented broker-dealer registration requirements in order to obscure their illegal activities, as evidenced by their illegal underwriting activities, see Ex. 6.2 and 6.3, infra; and Ex. 11-1 attached hereto.

37. Bertisch, Sica, Rabinowitz, McMahon, and ***convicted felon*** Edward M. Grushko, Esq. explicitly discussed structuring the transactions in a manner designed to evade regulatory detection, ***demonstrating a calculated effort*** to violate securities laws and engage in criminal usury.

38. Colleen McMahon's role in the issuance of convertible promissory notes included direct obstruction of justice during the 02cv2219 (SDNY) judicial proceedings, see Dkt. 120, 137, 141, and 151, cf., Ex. 6.2 and Ex. 6.3, infra, where she and Wendy L. Hagenau knowingly and deliberately obstructed and impeded all attempts by Mr. Ware to gain access to the Brady actual innocent exculpatory evidence contained herein, and contained in Ex. 6 and Ex. 7; where she (McMahon) knowingly assisted, aided, and abetted by

Wendy L. Hagenau, and Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP

(Wab Kadaba, John W. Mills, III, Dennis S. Meir, and J. Henry Walker, IV) conspired to

coverup and conceal the unregistered dealer status of their (KTS') clients, the 02cv2219

(SDNY) plaintiff, see Ex. 5 and Ex. 6.2 and 6.3, infra, despite lacking proper broker-dealer

registration, as shown in investor correspondence included in Exhibit 5, and the 02cv2219

(SDNY) plaintiffs lacked Article III standing to collect criminal usury debts, GX 1-4.

39. Exhibit 8 provides additional proof that the criminal usury convertible promissory notes

personally underwritten and owned by Sica, ***approved by Tailwind's senior management***,

see Ex. 6.1, infra, and McMahon were marketed with false representations regarding their

legality, including statements made by Bertisch, Tailwind, and Sica to investors that the

notes were compliant with all applicable laws, despite the absence of registration and

inclusion of criminal usurious interest rates.

40. Financial ledgers maintained by Rabinowitz, LH, Sica, McMahon, Tailwind, et al. detail

multiple payments made by investors under these extortionate promissory notes, with funds

being transferred directly to Sica, McMahon, Tailwind, Rabinowitz, and LH Financial

Service without any regulatory oversight or protection for the investors, highlighting the

unlawful nature of the transactions.

41. Internal financial statements from Tailwind, McMahon, Rabinowitz, and LH will show that

proceeds from the usurious promissory notes were used to fund additional unregistered

securities offerings, indicating a continuous cycle of illegal funding operations.

42. The individuals involved (named in Facts 1-4 above) in the Hobbs Act loan sharking and

money laundering criminal enterprise knowingly failed to disclose the usurious nature of

Page **110** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

the promissory notes to investors, as indicated by the convoluted language in GX 5, the so-called subscription, cf., Ex. 6.3, infra, maintained by Rabinowitz and LH, and similar documents maintained by McMahon, Sica, Bertisch, and Tailwind that intentionally concealed the actual interest rates being charged, found in the unregistered securities reference in Ex. 4.1, 4.2, and in Ex 8.

43. Arie Rabinowitz and convicted felon Edward M. Grushko, Esq. were actively involved in drafting misleading contractual language in the promissory notes, GX 1-4, and see Ex. 4.2, infra, aimed at disguising the true interest rates and avoiding regulatory penalties, as evidenced by Ex. 4.1 sworn testimony.

*44.* The overwhelming evidence in Ex 1-8, infra, and Ex. 7, attached hereto, demonstrates that each individual named herein knowingly, intentionally, and willingly, participated in, facilitated, or ***directed activities that qualify as securities fraud under 15 U.S.C. § 78j(b)*** and Rule 10b-5, ***as they made false representations and omissions regarding the nature and legality of the promissory notes, GX 1-4 and Ex. 8, infra. See Ex. 6.2, 6.3, infra, and see EX. 11-1 attached hereto.***

45. The criminally usurious interest rates, ranging from 200% to 2000%, as detailed in Exhibit 4.1, 4.2, and Ex. 8, infra, cf., GX -5, ¶10.1(iv)[17] were calculated in a manner designed to impose severe financial pressure on borrowers, with repayment terms that left borrowers unable to fulfill their obligations, effectively placing them under duress.

---

[17] Unregistered broker-dealer Arie Rabinowitz and the Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP's CEO Wab Kadaba (404) 815-6500 or (404) 532-6959 have copies of GX 1-4, and GX 5, the criminal usury unlawful debt underwriting contracts.

46. Financial analysis of the promissory notes, found in GX 1-4 and Ex. 8, infra., reveals that the effective interest rates, when including additional fees and penalties, far exceeded even the nominal usurious rates (as high as 2000%) disclosed, further compounding the violations of NYS Penal Law § 190.40, a class E felony.

47. Ex. 6, 6.1, 6.2, 6.3, infra, and Ex. 7 and Ex. 11-1, attached hereto are the criminal and coercive methods used by Tailwind, Bertisch, Sica, Rabinowitz, LH Financial Services, and McMahon for circumventing and obstruction of the SEC's regulations on the offering (underwriting) of securities, including structuring offerings to avoid reaching thresholds that would trigger mandatory registration.[18]

48. The criminal usury convertible promissory notes, GX 1-4, cf., Ex. 6.3, infra, underwritten by LH Financial Service and Tailwind, see Ex. 8, infra, were used in furtherance of a broader criminal and fraudulent scheme to attract investor funds under false pretenses, as evidenced by Exhibits 7 and 8.

49. **The individuals named herein in Facts 1-4, supra, deliberately chose not to register with FINRA or the SEC to avoid the scrutiny that accompanies broker-dealer oversight**.

50. The pattern of activity described in Exhibit 8 and GX 1-4 demonstrates a clear and ongoing conspiracy among Frank V. Sica, Colleen McMahon, Michael S. Bertisch, Arie Rabinowitz, LH Financial Service, and Tailwind to defraud investors, evade registration

---

[18] McMahon, Bertisch, Sica, and the executive management of Tailwind, see Ex.. 6.1, infra, lied, committed perjury, and committed fraud in Form ADV, a statutory regulatory filing, see Ex. 7, attached hereto, and falsified Form ADV to omit Tailwind, Sica, McMahon, Bertisch, and Rabinowitz's illegal underwriting activities.

requirements, and exploit borrowers through criminally usurious loans, in violation of multiple federal and state laws.

Signed this 7th day of November 2024, in Brooklyn, NY under oath, subject to the penalty of perjury, and pursuant to 28 USC 1746, having personal knowledge of the facts.

Ulysses T. Ware
/s/ Ulysses T. Ware
Brooklyn, NY
November 7, 2024

End of Declaration

**AA. Ulysses T. Ware's Oct. 29, 2024, Request for FINRA certification of unregistered broker-dealer status for Tailwind Management L.P., Colleen McMahon, Frank V. Sica, Michael S. Bertisch, and Arie Rabinowitz, an illegal association in fact, a continuing criminal enterprise.**

## The Office of Ulysses T. Ware

123 Linden Blvd, Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

Wednesday, November 6, 2024
**Time is of the essence**

Ms.  Emma Jones, Esq.: emma.jones@finra.org
Ms. Marcia Asquith, Esq. (FINRA's custodian of records)
marcia.asquith@finra.org

Office of the General Counsel-- FINRA

RE: Request for Certification of no business records regarding the *broker-dealer status* of the requested persons (Sica, Bertisch, Rabinowitz, and McMahon) kept by FINRA in the ordinary course of business. See Ex. 1, 2, 3, and 4, infra.

Dear Ms. Jones and Ms. Asquith:

The purpose of this supplemental request is to **confirm and clarify** the previous request, to wit: the certification of non-existence of any *broker-dealer business records held by FINRA* for the named individuals, which is critical for ongoing compliance and due diligence processes.

Enclosed you will find the personal identifying information for each of the individuals listed below, derived from a public records search. This information is provided to enable FINRA to accurately determine whether it maintains any records related to these individuals. Please ensure that the enclosed information is handled confidentially and used solely for verification purposes.

Based on a recent in-depth worldwide investigation by an international business intelligence service it has been discovered that the requested persons knowingly have underwritten, funded, administered, and collected **more than 200 issues of unregistered securities, including criminal usury convertible promissory notes that violated NYS Penal Law, section 190.40, and federal law, 18 USC § 1961(6)(B)—that is, a Hobbs Act conspiracy, 18 USC § 1951(a), to commit loan sharking, Id. § 1961(6)(B), and money laundering, Id., § 1956-57.**

Given the critical nature of the information requested, I would be most grateful for your expedited attention to this matter.

This request for certification is made pursuant to applicable FINRA guidelines and regulations governing the accessibility of public records, as well as to ensure that no records exist that may affect the pending investigation involving these individuals.

The information provided contains personally identifiable information and is intended solely for use by FINRA for the purposes of verifying the existence or non-existence of business records. Please handle this information in accordance with applicable data privacy laws and regulations.

Thank you for your prompt attention to this matter. Should you require any additional information or have any questions, please do not hesitate to contact me.

At this time Mr. Ware is not requesting the disclosure of any alleged "confidential information" **only the disclosure of the public information required to be maintained by FINRA regarding Form BD is being requested for disclosure**, or if no such business records are maintained in the ordinary course of business, then FINRA is obligated to certify that fact.

Sincerely,

/s/ Ulysses T. Ware

November 6, 2024

A.    Ulysses T. Ware's Oct. 29, 2024, FINRA request for certified Form BD (broker-dealer) *__public records__* regarding Colleen McMahon, her alleged spouse Frank V. Sica, Michael Scott Bertisch, and Arie Rabinowitz. Cf., Ex. 6.0 infra.

---

| Reset Form | | Submit |
|---|---|---|

**REQUEST FORM**
**CERTIFICATION OF FINRA BUSINESS RECORDS**

To request certified copies of a publicly available FINRA business record, please complete this form and click the Submit button above, which will create an email to send the form to FINRA.

If hitting the Submit button does not automatically create an email, please forward the form by email to DL-OGCCertificationReq@finra.org.

FINRA typically processes and electronically delivers certified copies of requested documents within 14 business days of receiving this completed form.

| | |
|---|---|
| Requesting Agency / Firm / Organization (if applicable): | The Office of Ulysses T. Ware |
| Contact Person:* | Ulysses T. Ware |
| Contact Email:* | utware007@gmail.com |
| Contact Phone: (enter numbers only; no dashes or other punctuation) | (718) 844-1260 |
| Requesting Party's Case/Reference Number: | 02-24-90036jm (2d Cir.) |
| Date Request Submitted to FINRA:* (click down arrow to select or mm/dd/yyyy) | 10/29/2024 |
| Document(s) To be Certified:* (if there is insufficient space in this form to list the documents being requested, please include any additional information regarding your request in the email forwarding this form) | I am requesting a rush response to certify the 15 USC 78o(a)(1) broker-dealer records of the following persons: (1) Colleen McMahon, (2) Frank V. Sica, (3) Arie Rabinowtiz, and (4) Michael Bertisch.<br><br>This is an urgent matter and is litigation related. |
| Purpose of Request: | [✓] Litigation-Related<br>[ ] Investigation<br>[ ] Licensing<br>[ ] Background Check<br>[ ] Other (please specify): |
| Other information that may be helpful to fulfill this request: | The above individuals are engaged in the underwriting of criminal usury notes. |

* Denotes required field.

April 2019

**B.**    Ulysses T. Ware's October 29, 2024, Request to FINRA to certify broker-dealer public records.

 Gmail                                              Ulysses Ware <utware007@gmail.com>

---

**Urgent Broker-Dealer certification request**
1 message

**Ulysses Ware** <utware007@gmail.com>                                Tue, Oct 29, 2024 at 9:39 AM
To: DL-OGC Certification Requests <DL-OGCCertificationReq@finra.org>
Bcc: Ulysses Ware <UTWARE007@gmail.com>

October 29, 2024, 9:39 AM

Subject: Certification Request: Urgent – Litigation Related

Dear FINRA Certification Team,

Attached, please find a completed Certification Request Form dated October 29, 2024. I am requesting certified copies of broker-dealer records in connection with a litigation-related matter, pursuant to 15 USC 78o(a)(1). This request is regarding the following individuals:

1. Colleen McMahon
2. Frank V. Sica
3. Arie Rabinowitz
4. Michael Bertisch

The requested records pertain to their roles in _**underwriting**_ criminal usury convertible promissory notes. Given the nature of the case, I would appreciate expedited processing of this request.

Should you require any additional information to fulfill this request, please do not hesitate to contact me. I am reachable via email at utware007@gmail.com or by phone at 718-844-1260.

Thank you for your prompt attention to this matter.

Best regards,

Ulysses T. Ware
The Office of Ulysses T. Ware

---

📄 **10.29.24 Certification Request Form (Apr 2019).pdf**
114K

C.    According to the SEC's website Tailwind Capital (CRD# 156562) is registered only as an "investment advisor" **not a broker-dealer;** and according to the SEC and ***confirmed by*** FINRA's BrokerCheck system Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon ***have never registered as broker-dealers*** on Form BD according to all available public information. See Ex. 1-3, infra.



Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

D.    Tailwind's SEC certification and admission that its employees (Frank V. Sica, Colleen McMahon, Michael S. Bertisch, or Arie Rabinowitz) ***are not*** registered broker-dealers authorized to engage in the business of underwriting and funding criminal usury convertible promissory notes, see Ex. 8 and GX 1, GX 2, GX 3, and GX 4 in ***U.S. v. Ware,*** 04cr1224 (SDNY). See Ex. 4 and Ex. 8, infra.



Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 1--Frank V. Sica (CRD# 1481917)—employed by Tailwind  Capital Management LP (CRD#156562).

485 Lexington Ave, NY, NY 10017

According to FINRA' BrokerCheck database on Nov. 6, 2024, Frank Vincent Sica, the alleged spouse of Colleen McMahon,  is not and has never registered as required by federal law, 15 USC 78o(a)(1), as a broker-dealer, and therefore is not authorized to underwrite criminal usury convertible promissory notes in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony. See Ex. 6.0, 6.1. and 8, infra.



**Frank Sica**
Partner

TAILWIND
485 Lexington Avenue
New York, NY 10017

No public _**Form BD (broker-dealer)**_ public records maintained by FINRA regarding Frank V. Sica were confirmed on Nov. 6, 2024.



Exhibit 2--Michael Scott Bertisch (CRD# 5154572)—employed by Tailwind Capital Management LLP (CRD# 156562)

## 485 Lexington Ave, NY, NY 10017

According to FINRA' BrokerCheck database system it was confirmed  on Nov. 6, 2024, **Michael Scott Bertisch is not and has never registered as required by federal law, 15 USC 78o(a)(1), as a broker-dealer**, and therefore is not authorized to underwrite criminal usury convertible promissory notes in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony. See Ex. 4 and Ex. 8, infra.



**Michael Bertisch**
**Partner, General Counsel & Chief Compliance Officer**

No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Michael Scott Bertisch. It was confirmed on Nov. 6, 2024.



Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 3--Colleen McMahon (DOB: July 18, 1951—no CRD number available)—employed by Tailwind Management LLP (CRD# 156562)

485 Lexington Ave, NY, NY 10017 or
500 Pearl St
New York, NY

    According to FINRA' BrokerCheck database system, it was confirmed on Nov. 6, 2024, *__Colleen McMahon is not and has never registered as required by federal law, 15 USC 78o(a)(1), as a broker-dealer__*, and therefore is not authorized to underwrite criminal usuary convertible promissory notes in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony. See Ex. 4 and Ex. 8, infra.



No public _Form BD (broker-dealer)_ public records maintained by FINRA regarding Colleen McMahon was confirmed on Nov. 6, 2024.



Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 4--Arie Rabinowitz (DOB: Dec. 27, 1972) (No CRD number available on BrokerCheck)

**LH Financial Services, Corp.**
**160 Park Ave, South**
**Suite 2701**
**New York, NY 10019**

According to FINRA' BrokerCheck database it was confirmed on Nov. 6, 2024, **Arie Rabinowitz and L.H. Financial Services Corp., see Ex. 5, infra, are not and have never registered as required by federal law, 15 USC § 78o(a)(1), as a broker-dealer on FINRA's Form BD**, and therefore are prohibited and not authorized to underwrite criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4, government trial exhibits in *U.S. v. Ware*, 04cr12224 (SDNY), in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony. See Ex. 4.0, 4.1, 4.2, and 8, infra.



Exhibit 4.1—Arie Rabinowitz's confession of his and Alpha Capital, AG's unregistered broker-dealer status. See Ex. 5, infra.

1  Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2  S78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4  **ADMISSION OF BROKER-DEALER STATUS BY**
5  **ARI RABINOWITZ UNDER CROSS EXAMINATION.**

6

7  Mr. Ware: What is the name of your company?

8  Rabinowitz: LH Financial Services.

9  Mr. Ware: What business is that company?

10  Rabinowitz: We are in the private placement business.

11  **Tr. 206**

12  Mr. Ware: Approximately how many companies have you assisted Alpha Capital
13  with over, let's say, the last five years?

14  Rabinowitz: A good few hundred.

15  Mr. Ware: A good few hundred?

16  Rabinowitz: Yes.

17  Rabinowitz' testimony of being in the private placement business, and assisting
18  Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19  §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20  under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
21  regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page **127** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 4.2—Rabinowitz and LH Financials' loan sharking admissions.

The Alpha Capital scam is estimated to have fleeced the public of more than $3-4 billion (US Dollars). Ari Rabinowitz testified for the Government in 1224(RWS) at Tr. 206 (Ex. #5) under cross-examination by Ware as follows:

Q: Approximately how many companies have you assisted Alpha Capital with, let's say the last 5 years?

A. A good few hundred.

Q. A good few hundred?

A. Yes.

Rabinowitz further testified, Tr. 217-19, as follows:

Q: Did you on behalf of Alpha Capital invest in a company by the name Cybernaut?

A: Yes.

Q: How much did you invest in Cybernaut?

A: A few million over a few years.

Q: How much did you make on this investment?

A: We made alot of money. I don't remember.

Q: How much is alot?

A: Maybe $10 million.

Q: So you made $10 million on a [few] million investment?

A: Give or take.

Q: Now, when you started investing in [Cybernaut] wasn't the stock trading over $9 and went to 42 cents a share [after you and Alpha Capital shorted the stock]?

* * *

Taking Rabinowitz' testimony at Tr. 206, "a good few hundred" companies he and Alpha Capital AG invested in, with the amount of money Rabinowitz admitted to making on Cybernaut, Tr. 218-19, "[m]aybe $10 million," the Badian Gang's insider-trading scam has criminally profited by: (300-400 companies) multiplied by ($10,000,000) equals $3-4 billion (US Dollars) in ill-gotten gain: a continuing criminal financial enterprise operated from within the U.S. Courthouse at 500 Pearl St, New York, NY, and One St. Andrews Plaza, New York, by Art. III judicial officers and DOJ Officials and staff.

U.S. v. Ware, 04-CR-1224(RWS) and 05-CR-1115(WHP) were both brought by officials of the DOJ and SEC involved in the billion dollar insider-trading scam to protect the ill-gotten profits of the criminal enterprise,

No public _**Form BD (broker-dealer)**_ public records maintained by FINRA regarding Arie Rabinowitz were confirmed on Nov. 6, 2024.



Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

**Exhibit 5--May 17, 2021, FINRA _Certification of unregistered broker-dealer status_ for each 02cv2219 (SDNY) plaintiff, affiliates, and agents of Tailwind Capital, L.P., Frank V. Sica, and Colleen McMahon certified by FINRA's Marcia Asquith, Esq.**

## CERTIFICATION OF NO FINRA BUSINESS RECORDS

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

   a) Alpha Capital, AG
   b) Stonestreet, L.P.
   c) Markham Holdings, Ltd.
   d) Amro International, S.A.
   e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this _17th_ day of _May_, 2021.

Notary Public, District of Columbia

My commission expires: _5/31/___

Exhibit 6.0--Tailwind Capital L.P. Form ADV page 23 filed with the Securities and Exchange Commission (SEC) on March 30, 2024, admitted under oath that Tailwind *is not* registered as a 15 USC §78o(a)(1) broker-dealer in the United States. **Accordingly, Colleen McMahon and Frank V. Sica personally violated (1) federal law, 15 USC §§ 77e, 77x, and 78ff, and (2) NYS Penal Law, section 190.40, the criminal usury law, a class E felony by underwriting more than $100 million in criminal usury convertible promissory notes and other unregistered securities**.

## Tailwind Capital's SEC Form ADV Public Disclosures.

the private fund's manager, its affiliates and their respective employees and (c) prohibit any dividend recapitalization within 24 months of the date that a private fund acquires a Controlling Interest in a portfolio company. If these proposals were to be enacted, even if only in part, they would materially and adversely affect the ability of a Fund, the general partner of a Fund, Tailwind and any of their respective affiliates to engage in the investment activities and other operations that they are intended and expected to engage in. This could result in a Fund being unable to meet its investment objectives, or could require a Fund to make, hold, manage and exit investments and otherwise operate in a manner that involves greater potential liability, risk and expense with lower potential returns for investors, including due to the use of parallel funds, feeder funds and alternative investment vehicles.

In that regard, prospective investors should note that the outcome of the 2024 U.S. presidential and other elections creates uncertainty with respect to legal, tax and regulatory regimes in which the Funds and their portfolio companies, as well as the general partners of the Funds, Tailwind and any of their respective affiliates will operate. In addition to the proposed legislation described above, any significant changes in, among other things, economic policy (including with respect to interest rates and foreign trade), the regulation of the asset management industry, tax law, immigration policy and/or government entitlement programs during the terms of the Funds could have a material adverse impact on the Funds and their investments.

Tailwind admitted on March 30, 2024, it is not a licensed broker-dealer registered with the SEC or FINRA.

*Fund, General Partner and Manager Registration*

None of the Funds are registered under the Investment Company Act. The Investment Company Act provides certain protection to investors and imposes certain restrictions on registered investment companies (including, for example, limitations on the ability of registered investment companies to incur leverage), none of which will be applicable to the Funds. Tailwind is not  registered as a broker-dealer under the Securities and Exchange Act of 1934, as amended (the "Exchange Act"), or with the Financial Industry Regulatory Authority, Inc. ("FINRA") and, consequently, is not subject to the record-keeping and specific business practice provisions of the Exchange Act or the rules of FINRA.

Exhibit 6.1—Page 63 Excerpt from Tailwind Capital's March 30, 2024, Form ADV, see Ex. 7, attached hereto, incorporated by reference herein, and made a part hereof: Tailwind admitted under oath that ***Tailwind's senior management approved ("pre-clearance")*** Frank V. Sica's and Colleen McMahon's (employees and/or agents of Tailwind) **$100 million investments in criminal usury convertible promissory notes**, the same null and void ab initio, uncollectable, and unenforceable subject matter involved in ***U.S. v. Ware***, 04cr1224 (SDNY), ***Alpha Capital AG, et al. v. Group Management Corp., et al.***, 02cv2219 (SDNY) (McMahon, J.) and in ***In re Group Management Corp.***, 03-93031 (BC NDGA) (WLH) Chapter 11. See Ex. 6-3 infra, Dkt. 258 03-93031 (BC NDGA) (Hagenau, C.J.).

Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon according to Tailwind's internal protocols had prior "preclearance" (approval) from Tailwind's senior management to have underwritten or participated in the underwriting of the RICO loan sharking convertible promissory notes.

run contrary) to the best interest of the Funds. Tailwind will provide a copy of Tailwind's Code of Ethics to clients, prospective clients, investors and prospective investors upon request.

Tailwind's employees and certain non-employees such as Operating Executives, senior Advisors and other consultants that are deemed to be Access Persons, as defined by Rule 204A-1, must have written pre-clearance for all transactions involving initial public offerings, private placements and certain publicly traded securities before executing the transactions. Tailwind may disapprove any proposed transaction, particularly if the transaction appears to pose a conflict of interest or otherwise appears improper. Tailwind also endeavors to maintain current and accurate records of all personal securities accounts of its Access Persons in an effort to monitor all such activity.

Tailwind, its employees or a related entity will have an investment in each Fund. For example, the general partner for each Fund is owned in part by Tailwind's partners. In addition, Tailwind and its general partners will participate in the Funds' investment programs by agreeing to commit a certain percentage of the Funds' total capital commitments or a certain amount as defined in the Funds' governing documents. Therefore, Tailwind, its employees or a related entity will indirectly participate in transactions effected for the Funds.

Exhibit 6.2—(McMahon, Hagenau, and Gitner's mafia RICO 18 USC 2, 157, 371, 1341, 1343, 1503, 1951(a), 1961(6)(B) and 1962(d) Overt and Predicate Acts). Collusion, conspiracy, and coordination of Jim Crow racially-motivated retaliatory, vindictive, and punitive moot void ab initio leave to file sanctions initiated in concert and by judicial collusion of Wendy L. Hagenau and Colleen McMahon—see 02cv2219 (SDNY), Dkt. 139, 139-1, and 139-2, _McMahon and her husband, Frank V. Sica, are both unregistered broker-dealers, personally owned more than $22 million in criminal usury convertible promissory notes similar to GX 1, GX 2, GX 3, and GX 4, according to records maintained by the Exec. Director, Administration of the U.S. Courts and the Judiciary_, as overt acts in furtherance of the conspiracy to commit bankruptcy fraud, Hobbs Act attempted armed robbery, armed aggravated assault and battery, conspiracy, and other crimes, 18 USC §§ 2, 156-157, 371, 924(c),1951, 1956-57, 1958-59, 1961(6)(B), and 1962(a-d). See In re Colleen McMahon, 02-24-90036jm (2d Cir.) re: Complaint of criminal judicial misconduct (Pending).



**Coordinated conspiracy to obstruct justice and conceal Brady actual innocent exculpatory/impeachment evidence.**

————————————

**In re Group Management Corp. (03-93031)(BC NDGA) (Hagenau, C, J.)**
**and**
**Alpha Capital, AG et al., v. GPMT, et al., (02cv2219)(SDNY) (McMahon, J.)**
Actual innocent petition filed on 10.20.22.

10.20.22
SDNY Conviction Integrity Committee filing

show cause order entered 4 days later          show cause order entered 7 days later

In re GPMT, 03-93031 (BC NDGA)          Alpha Capital, AG, et al., v. GPMT, et al.
10.24.22                                                            (SDNY)
Show cause order, Dkt. 256                         10.27.22
                                                                      Show cause order, Dkt. 137

Exhibit 6.3—Dkt. 258 (RICO Overt and Predicate Act) page 3, **In re Group Management Corp.**, 03-93031 (BC NDGA) Chapter 11, Hagenau, C.J. re 18 USC §§ 157(2), (3) and 1961(6)(B) conspiracy to commit bankruptcy fraud.

Case 03-93031-wlh    Doc 258    Filed 10/26/22    Entered 10/27/22 00:47:40    Desc
Imaged Certificate of Notice    Page 3 of 54

There is no such thing as a contempt order for refusal to engage in the collection of a criminal usury debt in violation of 18 USC 1961(6)(B)--the order is not a "lawful" order.

District of New York in case no. 02-cv-2219 (S.D.N.Y.) ("SDNY Case"). The U.S. Trustee

See 18 USC 401(3), criminal contempt only applies to "lawful" orders-- accordingly, the U.S. v. Ware, 04cr1224 (SDNY) purported criminal contempt indictment is null and void ab initio

attached to the motion a copy of the Contempt Order issued in the SDNY Case which recited that

in November 2002, the Court had ordered the Debtor and Mr. Ware to honor the Subscribers'

conversion requests and that the conversion requests had not been honored. The court in the SDNY

Case ordered GMC and Mr. Ware to honor the conversion requests within three days or to pay the

Hobbs Act, 18 USC 1951(a) extortion

Subscribers $1,000/day until the requests were honored. The court also stated it would issue a

warrant for Mr. Ware's arrest to be committed to the U.S. Marshals' custody until the contempt

Hobbs Act 18 USC 1201-02 kidnapping

was purged. The U.S. Trustee alleged the bankruptcy filing was made for the "improper purpose

of obstructing and delaying creditors in the enforcement of their rights and remedies . . . and

without any bona fide reorganizational purpose[.]"

KTS' conspiracy to commit bankruptcy fraud and conspiracy to steal Chapter 11 estate assets: Dkt. 15 and Dkt. 16

On April 11, 2003, the Subscribers responded to the Motion to Reject Executory Contract,

through their counsel, Dennis Meir at Kilpatrick Stockton, contending the Subscription Agreement

see GX 5, para. 10.1(iv) devastating and dire legal, penal, and pecuniary consequences on Hagenau, KTS, and its clients.

was not executory because the court in the SDNY Case had issued a judgment on it. The

Subscribers filed their own Motion to Dismiss or, alternatively, a Motion for Relief from Stay, and

brief. The Subscribers also alleged the bankruptcy filing by GMC was in bad faith and for the

purpose of evading the orders in the SDNY Case and sought the dismissal of the case or relief

from the stay to enforce the order in the SDNY Case. Attached to the Motion was a form 8-K,

purportedly signed by Mr. Ware as Chief Executive, indicating that he had resigned from the board

of GMC effective March 17, 2003, and that Mr. Sinkfield was appointed to the board and was

acting CEO. The Subscribers asked that their Motion to Dismiss be heard at the same time as the

Debtor's Motion to Reject.

The Court moved forward with the hearing on the Motion to Reject on April 15, 2003. Mr.

Ware and GMC's counsel were present, and Mr. Ware testified extensively as to the Subscription

Note that Hagenau is being deceptive identifying KTS' unregistered broker-dealer clients as "Subscribers" rather than as unregistered broker-dealers to deceive the public.

3

Hagenau's judicial factfinding, judicial and collateral estoppel on KTS, Meir, Mill, Walker, and Kadaba--a judicial ruling of 18 USC 1961(6)(B) criminal usury unlawful debt collection activity during the 03-93031 Chapter 11--binding on KTS and Wab Kadaba regarding the Sept. 14, 2024, Bar grievance, ipso facto Bar Rule 4-202 "credible evidence."

Exhibit 7.0 (see attachment)—Tailwind Management L.P. Form ADV, March 30, 2024—that is, actual innocent Brady exculpatory evidence concealed and suppressed by Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Colleen McMahon, Daniel Gitner, Edgardo Ramos, and Wendy L. Hagenau in violation of the Aug. 10, 2007, Dkt. 32, *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order—18 USC 2, 371, and 401(2) and 401(3) civil and criminal contempt of a lawful Brady disclosure court order, cf., Ex. 6.2, supra (McMahon, Hagenau, and Gitner's conspiracy to obstruct justice overt and predicate acts.

Exhibit 8.0—Colleen McMahon, Frank V. Sica, Arie Rabinowitz, LH Financial Services, and Tailwind's illegal underwriting of criminal usury convertible promissory notes in violation of federal laws, 15 USC §77e, 77x, and 78ff.

# Exhibit 8.1--Colleen McMahon and Frank v. Sica's Massive *+$22,000,000 Personal Ownership* in Hobbs Act RICO Criminal Usury Convertible Promissory Notes Underwritten in violation of 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff; and NYS Penal Law, section 190.40, the criminal usury law, *a class E felony*.

Exhibit 8.2: Judge McMahon's and convicted felon Edward M. Grushko's money laundering that involved unregistered broker-dealer and RICO unlawful debt creator and collector Alpha Capital, AG. What are Judge McMahon and her spouse, Frank V. Sica's relationship to Alpha Capital, AG, Kenneth A. Zitter (Harvard Law), Dennis S. Meir (Harvard Law), Thomas W. Thrash, Jr. (Harvard Law), LH Financial Services, Inc., and Ari Rabinowitz?



Exhibit 8.3: Money laundering by Edward M. Grushko, Alpha Capital, AG, and Judge Colleen McMahon in the Silver Dragon Resources, Inc. litigation.

~~as further set forth in said Order.) Show Cause~~ Response due by 1/4/2008. Show Cause Hearing set for 1/9/2008 at 10:00 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Colleen McMahon. (Signed by Judge Colleen McMahon on 12/21/07) (db)

2 **Filed:** 12/20/2007, **Entered:** 12/28/2007    Rule 7.1 Corporate Disclosure Statement
RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Alpha Capital Ansalt.(laq)

1 **Filed:** 12/20/2007, **Entered:** 12/28/2007    Complaint
COMPLAINT against Silver Dragon Resources, Inc. (Filing Fee $ 350.00, Receipt Number 636599)Document filed by Alpha Capital Ansalt. (laq)

**Filed:** 12/20/2007, **Entered:** 12/28/2007    Case Designated ECF
Case Designated ECF. (laq)

**Filed:** 12/20/2007, **Entered:** 12/28/2007    Case Designation
Magistrate Judge Theodore H. Katz is so designated. (laq)

**Filed:** 12/20/2007, **Entered:** 12/28/2007    Summons Issued
SUMMONS ISSUED as to Silver Dragon Resources, Inc. (laq)

Exhibit 8.4: Reported 2020 income of Frank V. Sica.



**B. Spouse's Non-Investment Income** - *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria)*

☐ NONE *(No reportable non-investment income.)*

| | DATE | SOURCE AND TYPE |
|---|---|---|
| 1. | 2020 | CSG Systems Inc-Director Fee |
| 2. | 2020 | Kohl's Department Stores Inc-Director Fee |
| 3. | 2020 | Safe Bulkers Inc -Director Fee |
| 4. | 2020 | Jet Blue Airways Corp-Consultant |
| 5. | 2020 | Morgan Stanley-Pension Income |
| 6. | 2020 | Tailwind Management LP-Partner-Guaranteed Payment |



**TAILWIND**
Accelerate Change.

STRATEGY    PEOPLE    COMPANIES    RESPONSIBILITY

**Frank Sica**
Partner

Frank's active portfolio company involvement includes Acertus, ASC, Banner, DermaRite, Invafresh, Loenbro, Stratix and Ventiv.

**Prior Experience**
Soros Private Fund Management
Morgan Stanley
U.S. Air Force

**Education**
BA, Wesleyan University
MBA, The Tuck School of Business at Dartmouth

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.5: #103 2020 convertible promissory note valued between $500,000 and $1,000,000.

colleen-mcmahon-disclosure.2020.pdf     10 / 37   —   125%   +   ⊡   ⟳

| FINANCIAL DISCLOSURE REPORT<br>Page 10 of 37 | Name of Person Reporting<br>McMahon, Colleen | Date of Report<br>08/12/2021 |
| --- | --- | --- |

**VII. INVESTMENTS and TRUSTS** -- *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(Including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 103. Monaco Inc(Conv. Promissory Note) N/C<br>Topia Ltd Ser D | | None | O | T | | | | | |
| 104. Romulus Capital II US Feeder LP | | None | N | U | | | | | |
| 105. Linx-Grammer Co LLC | C | Distribution | J | U | Sold<br>(part) | 01/13/20 | J | | See Note # 1 |
| 106. | | | | | Sold<br>(part) | 08/26/20 | J | | |
| 107. | | | | | Sold<br>(part) | 09/11/20 | J | | |

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.6: #113 2020 convertible promissory note valued between $100,001 - $250,000.



Screenshot of PDF viewer: colleen-mcmahon-disclosure.2020.pdf — 12 / 37 — 125%

## FINANCIAL DISCLOSURE REPORT
### Page 12 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets)  Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 137. --Safebulkers Inc | | None | K | T | | | | | |
| 138. --Martin Pharmaceuticals, Inc (Convertible Note) | | None | M | T | | | | | |
| 139. --Kinderhook Capital Fund VI LP | | None | L | U | Buy (add'l) | 10/05/20 | K | | |
| 140. --Alliance Bernstein Holdings LP MLP | E | Distribution | N | U | Sold (part) | 12/30/20 | K | | See Note # 1 |
| 141. --Ares Capital Corp | E | Dividend | N | T | Sold (part) | 06/24/20 | O | | |

Exhibit 8.7: #142 2020 convertible promissory note valued between $100,001 – $250,000.

---

colleen-mcmahon-disclosure.2020.pdf    12 / 37    —    125%    +    [ ] ↺

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 12 of 37 | McMahon, Colleen | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS – Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 137. --Safebulkers Inc | | None | K | T | | | | | |
| 138. --Martin Pharmaceuticals,Inc(Convertible Note) | | None | M | T | | | | | |
| 139. --Kinderhook Capital Fund VI LP | | None | L | U | Buy (add'l) | 10/05/20 | K | | |
| 140. --Alliance Bernstein Holdings LP MLP | E | Distribution | N | U | Sold (part) | 12/30/20 | K | | See Note # 1 |
| 141. --Ares Capital Corp | E | Dividend | N | T | Sold (part) | 06/24/20 | O | | |
| 142. --Acreto Cloud Corp(Conv Promissory Note) | | None | L | T | Buy | 12/21/20 | L | | |

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.8: #204 2020 convertible promissory note valued between $500,001 –
$1,000,000.



Page **143** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.9: #219 2020 convertible promissory note valued between $100,001 - $250,000.

| 219. | Sensai Corp (Convertible Note) | | None | M | T | | | | | |
| 220. | Cycle Pharmaceuticals LTD (Ser A Shares) | | None | P1 | T | Sold (part) | 10/15/20 | N | G | |
| 221. | Free ATM Inc (Ser A Preferred) | | None | K | T | | | | | |

1. Income Gain Codes:
(See Columns B1 and D4)
2. Value Codes
(See Columns C1 and D3)
3. Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 17 of 37 | McMahon, Colleen | 08/12/2021 |

Exhibit 8.10: #220 2020 convertible promissory note valued between $15,001 - $50,000.

colleen-mcmahon-disclosure.2020.pdf          17 / 37     —    125%    +    ⊡    ⟳

**FINANCIAL DISCLOSURE REPORT**
Page 17 of 37

Name of Person Reporting
McMahon, Colleen

Date of Report
08/12/2021

**VII. INVESTMENTS and TRUSTS** – *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)*

☐ NONE (*No reportable income, assets, or transactions.*)

| A.  Description of Assets (including trust assets)  Place "(X)" after each asset exempt from prior disclosure | B.  Income during reporting period | | C.  Gross value at end of reporting period | | D.  Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)  Amount Code 1 (A-H) | (2)  Type (e.g., div., rent, or int.) | (1)  Value Code 2 (J-P) | (2)  Value Method Code 3 (Q-W) | (1)  Type (e.g., buy, sell, redemption) | (2)  Date mm/dd/yy | (3)  Value Code 2 (J-P) | (4)  Gain Code 1 (A-H) | (5)  Identity of buyer/seller (if private transaction) |
| 222.  Engage Simply Inc (Convertible Note) | | None | K | T | | | | | |
| 223.  Build and Imagine LLC | C | Distribution | J | U | Sold (part) | 12/21/20 | J | | See Note # 1 |
| 224.  Linx-Transpro Co-Invest LLC | A | Distribution | M | U | Sold (part) | 09/11/20 | J | | See Note # 1 |
| 225.  Linx-Gullett Co-Invest LLC | | None | M | U | | | | | |
| 226.  50 Mast LLC | | None | M | U | | | | | |

Page **145** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.11: #244   2020 convertible promissory note valued between $500,001 -
$1,000,000.

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 18 of 37 | McMahon, Colleen | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS -- *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 239. | | | | | Buy (add'l) | 08/18/20 | L | | |
| 240. | | | | | Sold (part) | 02/21/20 | P1 | | |
| 241. Linx-CPT Co Invest LLC | B | Interest | L | U | Sold (part) | 01/13/20 | J | | |
| 242. | | | | | Sold (part) | 04/17/20 | J | | |
| 243. | | | | | Sold (part) | 07/17/20 | J | | |
| 244. Oxy Does, Inc (Conv Promissory Note) | | None | O | T | Buy (add'l) | 09/17/20 | L | | |
| 245. Olympus Capital Asia Fd V LP | | None | O | U | Buy (add'l) | 01/21/20 | K | | |

Page **146** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.12: #254   2020 convertible promissory note valued between $500,001 - $1,000,000.

| 254. Terafina Inc (Conv Promissory Note) | None | O | T | | | | |
| 255. Highland Resort At the Peaks LLC | None | L | U | Sold (part) | 01/28/20 | J | |

1. Income Gain Codes:
(See Columns B1 and D4)

2. Value Codes
(See Columns C1 and D3)

3. Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000
R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

**FINANCIAL DISCLOSURE REPORT**

Page 19 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

Exhibit 8.13: #259   2020 convertible promissory note valued between $500,001 - $1,000,000.

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | | Date of Report |
|---|---|---|---|
| Page 19 of 37 | McMahon, Colleen | | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)*

NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 256. Edward Jones Retirement MM(IRA) | A | Dividend | J | T | | | | | |
| 257. Fidelity (Cash) | A | Interest | L | T | | | | | |
| 258. Figue Holdings LLC | | None | | | Sold | 12/31/20 | J | | |
| 259. Gain Fitness Inc(Conv Note) | | None | M | T | | | | | |
| 260. Aisling Capital IV LP | E | Distribution | PI | U | Buy (add'l) | 01/03/20 | K | | See Note # 1 |
| 261. | | | | | Buy (add'l) | 03/23/20 | K | | |
| 262. | | | | | Buy (add'l) | 08/10/20 | K | | |

Exhibit 8.14: #276, 277, and 279  2020 convertible promissory notes valued between $500,001 - $1,000,000.

| FINANCIAL DISCLOSURE REPORT<br>Page 20 of 37 | Name of Person Reporting<br>McMahon, Colleen | | | | | Date of Report<br>08/12/2021 | | |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)

☐    NONE (No reportable income, assets, or transactions.)

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 273.  Pulling Mills LLC | None | | O | U | | | | | |
| 274.  Ram Realty IV LP | None | | O | U | | | | | |
| 275.  Alpine-Gleenwood LP | None | | | | Closed | 12/31/20 | | | See Note # 11 |
| 276.  BigID Inc(Conv Note) | None | | M | T | | | | | |
| 277.  Lending Front Inc (Conv Note) | None | | M | T | | | | | |
| 278.  Mine One GMBH (Ser A sh) (IRA) | None | | M | T | | | | | |
| 279.  Relationship Capital Partners Inc (Conv Notes) | None | | O | T | | | | | |
| 280.  PHRP LLC | None | | | | | | | | See Note # 9 |

Exhibit 8.15: ##297, 300, 302, and 304 2020 convertible promissory notes valued between $50,001 - $1,000,000.

| | | | | (part) | | | | 412 |
|---|---|---|---|---|---|---|---|---|
| 297. Relationship Capital Partners (IRA) (Convertible Promissory Note) | None | L | T | | | | | |
| 298. BRA Investor Fund 6 LP | None | M | U | | | | | |
| 299. Groupize Inc (Ser A-2 pfd) | None | O | T | Buy (add'l) | 08/13/20 | M | | |
| 300. Medaptive Health Inc (Conv Prom) | None | M | T | Buy (add'l) | 07/30/20 | K | | |
| 301. Shiftsmart Inc (Ser AA Preferred) | None | M | T | Buy (add'l) | 01/24/20 | L | | |
| 302. BondCliQ Inc (Conv Promissory Note) | None | M | T | | | | | |
| 303. Nextremity Solutions Inc (Ser B Preferred) | None | O | T | | | | | |
| 304. TG& L Holdings LLC(Convertible Note) | None | O | T | | | | | |
| 305. Entrepreneurs Expansion Fund III LP | None | M | U | Buy (add'l) | 02/28/20 | K | | |
| 306. KInderhook V LP | None | P1 | U | Buy (add'l) | 07/27/20 | M | | |

1. Income Gain Codes: (See Columns B1 and D4)
2. Value Codes (See Columns C1 and D3)
3. Value Method Codes (See Column C2)

| A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|
| F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 22 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

Exhibit 8.16: #323 2020 convertible promissory note valued between 100,001 – $250,000.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 320. | | | | | Sold (part) | 12/23/20 | M | |
| 321. Parkstone Capital Partners III LP | E | Distribution | N | U | Sold (part) | 11/23/20 | K | See Note # 1 |
| 322. 1101 Grundy Property Owner LLC | | None | O | U | | | | |
| 323. Adaptive Management Inc (Convertible Promissory Note) | | None | M | T | | | | |

1. Income Gain Codes:
   (See Columns B1 and D4)
2. Value Codes
   (See Columns C1 and D3)
3. Value Method Codes
   (See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 23 of 37 | McMahon, Colleen | 08/12/2021 |

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.17: ##327, 334, 336, 337, and 339  2020 convertible promissory notes valued between 50,001 - $500,000.

| | A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 324. | Blue Systems A.Y. Ltd (Ordinary) DBA Gabriel Networks | | None | L | T | Buy (add'l) | 04/01/20 | K | | |
| 325. | B Hospitality Corp (Series Seed Preferred) | | None | M | T | Buy (add'l) | 02/11/20 | L | | |
| 326. | Felix Gray Inc (Ser A-1 Preferred) | | None | M | T | | | | | |
| 327. | findSisterhood Inc (Convertible Promissory Note) | | None | N | T | | | | | |
| 328. | LA Aloe LLC | | None | | | Closed | 12/31/20 | | | See Note # 11 |
| 329. | Linx-CTAM Co-Invest, LLC | | None | M | U | | | | | |
| 330. | Plum Alley Syndicate XIII LLC | | None | M | U | | | | | |
| 331. | Vitalis LLC | | None | M | U | | | | | |
| 332. | Ladder Capital Corp (Com) (IRA) | E | Dividend | N | T | Buy (add'l) | 03/09/20 | M | | |
| 333. | AG Team Partners II LP | | None | M | U | Buy (add'l) | 01/21/20 | K | | |
| 334. | Martin Pharmaceuticals Inc (Convertible Promissory Note) | | None | M | T | | | | | |
| 335. | Clarke (Mortgage) N/C | E | Interest | N | T | | | | | |
| 336. | MiMeetings d/b/a 242 LLC (Convertible Promissory Note) | | None | L | T | | | | | |
| 337. | Modumental Inc (Convertible Promissory Note) | | None | L | T | | | | | |
| 338. | Popin Inc (Series Seed Preferred) | | None | | | Closed | 12/31/20 | | | See Note # 11 |
| 339. | Second Screen Inc (Convertible Promissory Note) | | None | | | Sold | 09/04/20 | J | | |
| 340. | SPC Vereco LP | | None | M | U | | | | | |

☐ NONE *(No reportable income, assets, or transactions.)*

Exhibit 8.18: #376 2020 convertible promissory note valued between $250,001 - $500,000.

**FINANCIAL DISCLOSURE REPORT**
Page 26 of 37

Name of Person Reporting: McMahon, Colleen

Date of Report: 08/12/2021

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 375. adTheorent Inc(X) | C | Distribution | | | Sold | 02/06/20 | J | | See Note # 1 & Note # 3 |
| 376. Presto (Convertible Promissory Notes) | | None | N | T | | | | | |
| 377. Airbud Technologies Inc( Seed Series Preferred)(N/C)Hydra AI | | None | M | T | Buy (add'l) | 08/14/20 | L | | |
| 378. Aising V LP | | None | P1 | U | Buy (add'l) | 02/06/20 | M | | |
| 379. | | | | | Buy (add'l) | 09/21/20 | M | | |
| 380. | | | | | Buy (add'l) | 10/23/20 | M | | |

Exhibit 8.19: #387 2020 convertible promissory note valued between $15,001 - $50,000.

| | | C | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | (part) | | | | | |
| 387.  EVZDRP Inc (Convertible Note) | | | None | K | T | | | | | |
| 388.  Flank GP Fund | | | None | P1 | U | Buy (add'l) | 06/03/20 | N | | |
| 389.  Linx-TGS Co-Invest LLC | | C | Interest | M | U | Sold (part) | 01/13/20 | J | | |
| 390. | | | | | | Sold (part) | 04/08/20 | J | | |
| 391. | | · | | | | Sold (part) | 07/07/20 | J | | |

1. Income Gain Codes:
   (See Columns B1 and D4)
2. Value Codes
   (See Columns C1 and D3)
3. Value Method Codes
   (See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

**FINANCIAL DISCLOSURE REPORT**
Page 27 of 37

Name of Person Reporting

McMahon, Colleen

Date of Report

08/12/2021

Exhibit 8.20: #425 2020 convertible promissory note valued between $100,001 - $250,000.

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 422. | Biosymetrics Inc (Com) | | None | L | T | Buy | 07/01/20 | L | |
| 423. | ChargingLedger Inc (Series Seed) | | None | K | T | Buy | 04/14/20 | K | |
| 424. | Eluceda Ltd (Ordinary shares) | | None | M | T | Buy | 10/27/20 | M | |
| 425. | Enalare Therropeutics Inc (Conv Promissory Note) | | None | M | T | Buy | 12/23/20 | M | |

1. Income Gain Codes:
(See Columns B1 and D4)
2. Value Codes
(See Columns C1 and D3)
3. Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

**FINANCIAL DISCLOSURE REPORT**
Page 29 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

Exhibit 8.21: #427 2020 convertible promissory note valued between $250,001 - $500,000.

**FINANCIAL DISCLOSURE REPORT**
Page 29 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing Instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (If private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 426. Hello Hazel (Series Seed) | | None | L | T | Buy | 12/18/20 | L | | |
| 427. Acredo Cloud Corp (Conv Promissory Note) | A | Interest | N | T | Buy | 12/08/20 | N | | |
| 428. Melitas Ventures Fund II LP | | None | L | U | Buy | 12/23/20 | L | | |
| 429. Nayya Health Inc (Ser A Preferred) | | None | L | T | Buy | 11/13/20 | L | | |
| 430. Qvale Technology Inc (Preferred Stock) | | None | M | T | Buy | 03/26/20 | M | | |

(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 8.22: #520 2020 convertible promissory note valued between (not valued).

**FINANCIAL DISCLOSURE REPORT**
Page 34 of 37

Name of Person Reporting: McMahon, Colleen

Date of Report: 08/12/2021

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 511. --Synopsys Inc | | None | J | T | Buy | 12/03/20 | J | | |
| 512. --Taiwan Semiconductor Mfg Co | | None | K | T | Buy | 12/03/20 | K | | |
| 513. --Tencent Hldgs Ltd ADR | | None | J | T | Buy | 12/03/20 | J | | |
| 514. --Thermo Fisher Scientific Inc Com | | None | J | T | Buy | 12/03/20 | J | | |
| 515. --Verisk Analytics Inc Com | A | Dividend | J | T | Buy | 12/03/20 | J | | |
| 516. --Visa Inc Com | | None | J | T | Buy | 12/03/20 | J | | |
| 517. --West Pharmaceuticals Svcs Inc Com | | None | J | T | Buy | 12/03/20 | J | | |
| 518. --Nike Inc Cl B | | None | J | T | Buy | 12/03/20 | J | | |
| 519. Alpine Grove SV Partners LLC | | None | N | U | Buy | 12/24/20 | N | | |
| 520. Knoema Corp (Conv Promissory Note) | | None | | | Buy | 01/21/20 | K | | |
| 521. | | | | | | | | | |

Exhibit 8.23—Trailblazer Merger Corp., I, Hobbs Act money laundering conduit arranged by LH Financial Services, Arie Rabinowitz, Loeb & Loeb, LLP, Mitchell Nussbaum, Esq., Alexandria Kane, Esq., Colleen McMahon, Edgardo Ramos, Jose A. Cabranes, Robert D. Sack, Amalya L. Kearse, Damian Williams, Frank V. Sica, Tailwind Capital Management LLP, and other unindicted coconspirators to launder the profits and proceeds derived from Hobbs Act extortion, loan sharking, kidnapping, murder for hire, bribery, bank fraud, private equity fraud, securities fraud, and other racketeering activities.



End of document

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

**RESPECTFULLY SUBMITTED,**

**For Appellants-Movants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**

*For Appellants-Movants Ulysses T. Ware and Group Management*

　　cc: U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council

　　Administrative Office of the U.S. Courts, Executive Director

　　Office of the U.S. Trustee, Region 21, (Ida Mae Townsend, Esq.)

　　Financial Industry Regulatory Agency (FINRA) on behalf of the Securities and Exchange

　　Commission (Marcia E. Asquith, Esq.)

　　State Bar of Georgia, Office of the General Counsel (William D. NeSmith, III) on behalf of

　　the Supreme Court of Georgia, Office of the Chief Justice, the Hon. Michael P. Boggs

　　Edward T.M. Garland on behalf of Garland, Samuel, & Loeb, P.C. and affiliates

　　Nall & Miller, LLP

　　Kilpatrick, Townsend, & Stockton, LLP on behalf of its clients, the 02cv2219 (SDNY)

　　plaintiffs

　　Unregistered broker-dealers Arie Rabinowitz on behalf of LH Financial Services Corp.,

　　Trailblazer Merger Corp., I

　　Unregistered broker-dealers Frank V. Sica on behalf of Tailwind Management L.P., Colleen

　　McMahon, and Michael S. Bertisch (see Ex. 10)

Page **160** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

# Certificate of Service

I Ulysses T. Ware certify that I have this 13th day of February 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munto for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[19] and 5005(b)(1) with the U.S. Trustee.[20]

cc:    Office of the U.S. Trustee, Region 21 (Ida Mae Townsend)

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[21]

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

---

[19] *With a Judge of the Court.* A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[20] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[21] Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

Acting Director of the FBI (via Mary Ida Townson, Esq. and Jeneane Treace, Esq.)

/s/ Ulysses T. Ware

February 13, 2025

*[signature]*

## End of document

# Case No. 03-93031

# United States Bankruptcy Court (12-0)
# For the Northern District of Georgia
# (Atlanta Division)

**Submitted for Filing on**
**Monday, January 27, 2025, 8:57:50 AM**

# F-3

---

## In re Group Management Corp.
## Chapter 11

## Movants' 11 USC 1109(b) Statutory Parties in Interest Group Management and Ulysses T. Ware's Bankr. Rule 9014 and Rule 12(h)(3)  Contested Matter.[1]

Submitted by:

/s/ Ulysses T. Ware
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
**Monday, January 27, 2025**

---

[1] The Movants' challenge to the Bankruptcy Court (NDGA) *In re Group Management Corp.,* 03-93031 Chapter 11 Article III jurisdiction over **predatory criminal usury unlawful debts subject matter**, GX 1-4; and (2) challenge to the Article III standing of the 02cv2219 (SDNY) plaintiffs, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP clients, see Dkt. 11, **unregistered broker-dealers**. Cf., Ex. 3, infra. What legitimate and lawful interest would a United States Bankruptcy Court (Ellis-Munro, C.J. and Hagenau, C.J.) have in not *sua sponte* affirmatively confirming the Court's mandatory unwaivable constitutional jurisdiction to adjudicate the Dkt. 6, 11, 13, 14, 15, and 16 proceedings with respect to fundamental constitutional prerequisites—"legally protected interest" in criminal usury convertible promissory notes--in ***predatory criminal usury unlawful debts***, GX 1-4, and (2) the Article III standing of KTS' ***unregistered broker-dealers clients to enforce and/or collect GX 1-4***? *No legitimate interest exists*. If no legitimate interest exists, then any alleged interest, by definition. must be nefarious, corrupt, perfidious, and illegitimate—that is, ***an unlawful interest***.

# Table of Contents

**Bankr. Rule 5005 (a)(2)** ........................................................................................................ 9

A.    **Notice of Filing and Submission** ....................................................................... 9

**Summary of Argument Memorandum** ......................................................................... 13

**In re Group Management Corp., Case No. 03-93031 (WLH)** ........................................ 13

I. Summary of the Argument: ......................................................................................... 13

II. Question Presented: .................................................................................................... 15

III. Brief Answer: ............................................................................................................ 16

IV. Factual Background: .................................................................................................. 16

V. Legal Analysis: ........................................................................................................... 18

   A. Preclusive Effect of the 02cv2219 Final Judgment (Dismissal with Prejudice): .............. 18

   B. Lack of Article III Standing and "Real Party in Interest" Status: ....................................... 20

   C. Jurisdictional Implications and Policy Considerations: ...................................................... 25

VI. Conclusion: ............................................................................................................... 26

   Statutes: ...................................................................................................................... 26

   Federal Rules: ............................................................................................................. 26

   Case Law: .................................................................................................................... 27

**Bankr. Rule 9014, Rule 12(h)(3) Motion** .................................................................... 28

   **I. JURISDICTION** ....................................................................................................... 29

   **II. FACTUAL BACKGROUND** ...................................................................................... 30

   **III. LEGAL ARGUMENT** .............................................................................................. 33

   **IV. RELIEF REQUESTED** ............................................................................................ 34

   **V. PROPOSED JOINT UNOPPOSED CONSENT ORDER** ............................................... 36

   **VI. CERTIFICATE OF SERVICE** ................................................................................... 41

   **VII. CONCLUSION** ..................................................................................................... 41

F.    **Exhibits—Supplemental Record** ...................................................................... 43

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *statutory insider status* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *unregistered broker-dealer* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities. ............................................................................................................... 44

   **Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**— Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory

insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*. ........................................................................................................ 45

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment— December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*. ........................................................ 47

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.** ......................................................................................... 49

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32. ................ 50

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers. ...................................................................................................... 53

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) *statutory underwriters* of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts. ............................... 54

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. ............................................................................................ 55

**Supplemental Appendices** .............................................................................................................. 55

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, armed, forced entry into Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager. ......................................................................................................... 56

   A.    Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding a fraudulent referral by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to *U.S. v. Ware,* 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and *In re Group Management Corp*., 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, null and void ab initio criminal usury unlawful debts—the Marshals with the assistance of the property manager broke into Mr. Ware's residence *while armed and without any warrant*, or lawful process—*a potentially deadly encounter*, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest. ................................... 57

   B.    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office *without any lawful warrant by persons impersonating U.S. Marshals*—Hobbs Act

conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in *In re Group Management Corp.,* 03-93031 (BC NDGA) Chapter 11. ........................................ 58

C.    Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators.................................................................................. 59

**Appendix 2**—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities. ...................................................................... 60

**Appendix 2-1 (con't)**—Money laundering vehicle formed from the Hobbs Act money laundering and criminal usury unlawful debt collection activities profits and proceeds fraudulently obtained by Unindicted Coconspirators Arie Rabinowitz, LH Financial Services, Alpha Capital, AG, et al............ 61

**Exhibit** 8—(RICO Overt Act #3)—"a pattern of racketeering activities" Atlanta, GA bankruptcy court's employees willful resistance to the Court Orders. ...................................................................... 62

Exhibit 8-1--(RICO Overt Act #4) ........................................................................... 63

Exhibit 8-2--(RICO Overt Act #5) ........................................................................... 64

Exhibit 8-3--(RICO Overt Act #6) ........................................................................... 65

Exhibit 8-4--(RICO Overt Act #7) ........................................................................... 66

Exhibit 8-5--(RICO Overt Act #8) ........................................................................... 67

**A-1a—murder for hire order** (02cv2219)(SDNY), Sand, J. authorized the U.S. Marshals (SDNY) **to use deadly force** to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4, cf., McMahon's Dkt. 120 (02cv2219 (SDNY), see Ex. 1, supra. ................................................................... 69

**A-1b (con't)—02cv2219 (SDNY), Sand, J. (deceased).** .................................................. 70

**Legal Analysis—Bankruptcy Courts have authority to enter civil contempt orders per the Second Circuit's precedents.**..................................................................................................... 71

**Exhibit 9--03-93031 Docket Report** ......................................................................... 82

Exhibit 10—Frauds, crimes, and Hobbs Act predatory 18 USC § 2, 152, 157, 371, 401(2), 401(3), 924 (c), 1201-02, 1341, 1343, 1344, 1346, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b) racketeering loan sharking conspiracy of Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, M. Regina Thomas, Patrick Sinback, Wendy L. Hagenau, Colleen McMahon, Frank V. Sica, Tailwind Management L.P., FINRA, Michael H. Dolinger, JAMS, Alexander H. Southwell, Jeffrey B. Norris, David N. Kelley, Arie Rabinowitz, Trailblazer Merger Corp., I, Joseph Hammer, Konrad Ackermann, Baker & McKenzie, LLP, Thomas A. Leghorn, Lawrence B. Mandala, Robert Alberal, London, Fisher, LLP, Nall & Miller, LLP, John Doe Insurance Companies, ##1-5, John F. King, Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, J. Henry Walker, IV, Dennis S. Meir, John W. Mills, III, James H.

Morawetz, Kenneth A. Zitter, Esq., the State Bar of Georgia, Office of the General Counsel, the U.S. Trustee, Region, 21, Michael S. Bertisch, et al.................................................................................91

**Introduction**.................................................................................................................................92

**Ware-FINRA Joint Declaration of Indisputable Facts**.............................................................97

   **Joint Stipulated and Certified Undisputed Material Facts**................................................97

   End of Declaration ..................................................................................................................107

**AA.    Ulysses T. Ware's Oct. 29, 2024, Request for FINRA certification of unregistered broker-dealer status for Tailwind Management L.P., Colleen McMahon, Frank V. Sica, Michael S. Bertisch, and Arie Rabinowitz, an illegal association in fact, a continuing criminal enterprise.** .... 108

A.       Ulysses T. Ware's Oct. 29, 2024, FINRA request for certified Form BD (broker-dealer) *public records* regarding Colleen McMahon, her alleged spouse Frank V. Sica, Michael Scott Bertisch, and Arie Rabinowitz. Cf., Ex. 6.0 infra. ....................................................................................110

B.       Ulysses T. Ware's October 29, 2024, Request to FINRA to certify broker-dealer public records. 111

C.       According to the SEC's website Tailwind Capital (CRD# 156562) is registered only as an "investment advisor" **not a broker-dealer;** and according to the SEC and *confirmed by* FINRA's BrokerCheck system Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon *have never registered as broker-dealers* on Form BD according to all available public information. See Ex. 1-3, infra. ..........112

D.       Tailwind's SEC certification and admission that its employees (Frank V. Sica, Colleen McMahon, Michael S. Bertisch, or Arie Rabinowitz) *are not* registered broker-dealers authorized to engage in the business of underwriting and funding criminal usury convertible promissory notes, see Ex. 8 and GX 1, GX 2, GX 3, and GX 4 in *U.S. v. Ware*, 04cr1224 (SDNY). See Ex. 4 and Ex. 8, infra.....113

Exhibit 1--Frank V. Sica (CRD# 1481917)—employed by Tailwind  Capital Management LP (CRD#156562).................................................................................................................................114

   No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Frank V. Sica were confirmed on Nov. 6, 2024.................................................................................................115

Exhibit 2--Michael Scott Bertisch (CRD# 5154572)—employed by Tailwind Capital Management LLP (CRD# 156562).................................................................................................................................116

   No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Michael Scott Bertisch. It was confirmed on Nov. 6, 2024...............................................................................117

Exhibit 3--Colleen McMahon (DOB: July 18, 1951—no CRD number available)—employed by Tailwind Management LLP (CRD# 156562).................................................................................................118

   No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Colleen McMahon was confirmed on Nov. 6, 2024...........................................................................................119

Exhibit 4--Arie Rabinowitz (DOB: Dec. 27, 1972) (No CRD number  available on BrokerCheck)................120

Exhibit 4.1—Arie Rabinowitz's confession of his and Alpha Capital, AG's unregistered broker-dealer status. See Ex. 5, infra. ..........................................................................................................121

Exhibit 4.2—Rabinowitz and LH Financials' loan sharking admissions. .............................................122

   **No public** *Form BD (broker-dealer)* **public records maintained by FINRA regarding Arie Rabinowitz were confirmed on Nov. 6, 2024.** ..................................................................123

**Exhibit 5--May 17, 2021, FINRA *Certification of unregistered broker-dealer status* for each 02cv2219 (SDNY) plaintiff, affiliates, and agents of Tailwind Capital, L.P., Frank V. Sica, and Colleen McMahon certified by FINRA's Marcia Asquith, Esq.**.......................................................................... 124

Exhibit 6.0--Tailwind Capital L.P. Form ADV page 23 filed with the Securities and Exchange Commission (SEC) on March 30, 2024, admitted under oath that Tailwind *is not* registered as a 15 USC §78o(a)(1) broker-dealer in the United States. **Accordingly, Colleen McMahon and Frank V. Sica personally violated (1) federal law, 15 USC §§ 77e, 77x, and 78ff, and (2) NYS Penal Law, section 190.40, the criminal usury law, a class E felony by underwriting more than $100 million in criminal usury convertible promissory notes and other unregistered securities**........................................... 125

Exhibit 6.1—Page 63 Excerpt from Tailwind Capital's March 30, 2024, Form ADV, see Ex. 7, attached hereto, incorporated by reference herein, and made a part hereof: Tailwind admitted under oath that *Tailwind's senior management approved ("pre-clearance")* Frank V. Sica's and Colleen McMahon's (employees and/or agents of Tailwind) **$100 million investments in criminal usury convertible promissory notes**, the same null and void ab initio, uncollectable, and unenforceable subject matter involved in *U.S. v. Ware*, 04cr1224 (SDNY), *Alpha Capital AG, et al. v. Group Management Corp., et al.*, 02cv2219 (SDNY) (McMahon, J.) and in *In re Group Management Corp.*, 03-93031 (BC NDGA) (WLH) Chapter 11. See Ex. 6-3 infra, Dkt. 258 03-93031 (BC NDGA) (Hagenau, C.J.). ..................... 126

Exhibit 6.2—(McMahon, Hagenau, and Gitner's mafia RICO 18 USC 2, 157, 371, 1341, 1343, 1503, 1951(a), 1961(6)(B) and 1962(d) Overt and Predicate Acts). Collusion, conspiracy, and coordination of Jim Crow racially-motivated retaliatory, vindictive, and punitive moot void ab initio leave to file sanctions initiated in concert and by judicial collusion of Wendy L. Hagenau and Colleen McMahon—see 02cv2219 (SDNY), Dkt. 139, 139-1, and 139-2, *McMahon and her husband, Frank V. Sica, are both unregistered broker-dealers, personally owned more than $22 million in criminal usury convertible promissory notes similar to GX 1, GX 2, GX 3, and GX 4, according to records maintained by the Exec. Director, Administration of the U.S. Courts and the Judiciary,* as overt acts in furtherance of the conspiracy to commit bankruptcy fraud, Hobbs Act attempted armed robbery, armed aggravated assault and battery, conspiracy, and other crimes, 18 USC §§ 2, 156-157, 371, 924(c),1951, 1956-57, 1958-59, 1961(6)(B), and 1962(a-d). See In re Colleen McMahon, 02-24-90036jm (2d Cir.) re: Complaint of criminal judicial misconduct (Pending). ................................................................................................... 127

Exhibit 6.3—Dkt. 258 (RICO Overt and Predicate Act) page 3, **In re Group Management Corp.**, 03-93031 (BC NDGA) Chapter 11, Hagenau, C.J. re 18 USC §§ 157(2), (3) and 1961(6)(B) conspiracy to commit bankruptcy fraud..................................................................................................... 128

Exhibit 7.0 (see attachment)—Tailwind Management L.P. Form ADV, March 30, 2024—that is, actual innocent Brady exculpatory evidence concealed and suppressed by Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Colleen McMahon, Daniel Gitner, Edgardo Ramos, and Wendy L. Hagenau in violation of the Aug. 10, 2007, Dkt. 32, *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order—18 USC 2, 371, and 401(2) and 401(3) civil and criminal contempt of a lawful Brady disclosure court order, cf., Ex. 6.2, supra (McMahon, Hagenau, and Gitner's conspiracy to obstruct justice overt and predicate acts. ................... 129

Exhibit 8.0—Colleen McMahon, Frank V. Sica, Arie Rabinowitz, LH Financial Services, and Tailwind's illegal underwriting of criminal usury convertible promissory notes in violation of federal laws, 15 USC §77e, 77x, and 78ff. ..................................................................................................................... 130

Exhibit 8.1--Colleen McMahon and Frank v. Sica's Massive *+$22,000,000 Personal Ownership* in Hobbs Act RICO Criminal Usury Convertible Promissory Notes Underwritten in violation of 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff; and NYS Penal Law, section 190.40, the criminal usury law, *a class E felony*. .................................................................................................................................. 130

Exhibit 8.2: Judge McMahon's and convicted felon Edward M. Grushko's money laundering that involved unregistered broker-dealer and RICO unlawful debt creator and collector Alpha Capital, AG. What are Judge McMahon and her spouse, Frank V. Sica's relationship to Alpha Capital, AG, Kenneth A. Zitter (Harvard Law), Dennis S. Meir (Harvard Law), Thomas W. Thrash, Jr. (Harvard Law), LH Financial Services, Inc., and Ari Rabinowitz? ............................................................................................. 131

Exhibit 8.3: Money laundering by Edward M. Grushko, Alpha Capital, AG, and Judge Colleen McMahon in the Silver Dragon Resources, Inc. litigation. .................................................................. 132

Exhibit 8.4: Reported 2020 income of Frank V. Sica. ......................................................................... 133

Exhibit 8.5: #103 2020 convertible promissory note valued between $500,000 and $1,000,000. ....... 134

Exhibit 8.6: #113 2020 convertible promissory note valued between $100,001 - $250,000. ............... 135

Exhibit 8.7: #142 2020 convertible promissory note valued between $100,001 - $250,000. ............... 136

Exhibit 8.8: #204 2020 convertible promissory note valued between $500,001 - $1,000,000. ............ 137

Exhibit 8.9: #219 2020 convertible promissory note valued between $100,001 - $250,000. ............... 138

Exhibit 8.10: #220 2020 convertible promissory note valued between $15,001 - $50,000. ................. 139

Exhibit 8.11: #244  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 140

Exhibit 8.12: #254  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 141

Exhibit 8.13: #259  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 142

Exhibit 8.14: #276, 277, and 279  2020 convertible promissory notes valued between $500,001 - $1,000,000. ....................................................................................................................................... 143

Exhibit 8.15: ##297, 300, 302, and 304 2020 convertible promissory notes valued between $50,001 - $1,000,000. ....................................................................................................................................... 144

Exhibit 8.16: #323 2020 convertible promissory note valued between 100,001 - $250,000. .............. 145

Exhibit 8.17: ##327, 334, 336, 337, and 339  2020 convertible promissory notes valued between 50,001 - $500,000. ............................................................................................................................. 146

Exhibit 8.18: #376 2020 convertible promissory note valued between $250,001 - $500,000. ............ 147

Exhibit 8.19: #387 2020 convertible promissory note valued between $15,001 - $50,000. ................. 148

Exhibit 8.20: #425 2020 convertible promissory note valued between $100,001 - $250,000. ............ 149

Exhibit 8.21: #427 2020 convertible promissory note valued between $250,001 - $500,000. ............ 150

Exhibit 8.22: #520 2020 convertible promissory note valued between (not valued). .......................... 151

Exhibit 8.23—Trailblazer Merger Corp., I, Hobbs Act money laundering conduit arranged by LH Financial Services, Arie Rabinowitz, Loeb & Loeb, LLP, Mitchell Nussbaum, Esq., Alexandria Kane, Esq., Colleen McMahon, Edgardo Ramos, Jose A. Cabranes, Robert D. Sack, Amalya L. Kearse, Damian Williams, Frank V. Sica, Tailwind Capital Management LLP, and other unindicted coconspirators to launder the profits and proceeds derived from Hobbs Act extortion, loan sharking, kidnapping, murder for hire, bribery, bank fraud, private equity fraud, securities fraud, and other racketeering activities. 152

End of document ................................................................................................................................ 153

**Certificate of Service** ..................................................................................................................... 154

**End of document** .......................................................................................................................... 155

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**

**Monday, January 27, 2025**

**Via email to: USTP.Region21@usdoj.gov and ustrustee.program@usdoj.gov**[2]
**Ms. Ida Mae Townsend and**
**Ms. R. Jeneane Treace, jeneane.treace@usdoj.gov**
U.S. Trustee and Assistant U.S. Trustee, Region 21
Office of the United States Trustee Program
362 Richard Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Via email: BEMChambers@ganb.uscourts.gov**[3]
Office of the Chief Bankruptcy Judge (NDGA)[4]
The Hon. Barbara Ellis-Monro
Richard Russell U.S. Courthouse
75 Ted Tuner Dr., SW
Atlanta, GA 30303

*Re:*     ***In re Group Management Corp.,*** Case No. 03-93031 (BC NDGA) –
Notice of Exercise of Rights Under 11 U.S.C. § 1109(b), Ongoing Violations of 18
U.S.C. § 2071(a), (b), and Civil & Criminal Contempt of Rule 41(a)(2) Final Judgment;
and Request for 11 USC § 105(d)(1) Status Conference.

---

[2] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[3] (2) *With a Judge of the Court.* A judge may personally accept for filing a paper listed in (1) ("motions" or "applications"). *The judge must note on it the date of filing and promptly send it to the clerk*.

[4] The Debtor and Mr. Ware have been informed that *unindicted coconspirator* former Bankruptcy Judge (NDGA) Wendy L Hagenau as of May 24, 2024, *she is no longer employed as a bankruptcy judge or judicial officer anywhere in the United States rumored to have been terminated for conspiracy to commit and engage in bankruptcy fraud and criminal judicial misconduct*.

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

# Bankr. Rule 5005 (a)(2)

## A.   Notice of Filing and Submission

January 27, 2025

**Via Bankr. Rule 5005(a)(2) Electronic Filing**

The Honorable Barbara Ellis-Munro
U.S. Bankruptcy Court, Northern District of Georgia
Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Via email to: USTP.Region21@usdoj.gov and ustrustee.program@usdoj.gov**[5]
**Ms. Ida Mae Townsend and**
**Ms. R. Jeneane Treace, jeneane.treace@usdoj.gov**
U.S. Trustee and Assistant U.S. Trustee, Region 21
Office of the United States Trustee Program
362 Richard Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

Dear Judge Ellis-Munro:

The Movants write to inform the Court in regard to the following: Pursuant to Bankruptcy Rule 5005(a)(2), the undersigned statutory parties in interest, Mr. Ware and Group Management Corp. ("Group Management"), respectfully submit for your direct attention the enclosed Rule 9014 Contested Matter judicial public record for filing, docketing, and adjudication on the merits in the Chapter 11 Case No. 03-93031—Movants' Memorandum of Law 1.0 (Analysis of KTS'

---

[5] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

_**unregistered broker-dealer**_ clients' lack of Article III standing to have appeared in 03-93031, Dkt. 11, and to have sought redressable judicial relief, Dkt. 15 and Dkt. 16, _**which rendered all purported orders**_ (Dkt. 28, 256, 258, 263, 274, and 275) in favor of KTS' racketeering clients ipso facto null and void ab initio and moot).

In accordance with 18 U.S.C. §§ 2071(a) and (b), we hereby request that you confirm receipt and immediately file and docket this pleading via the PACER system, no later than January 27, 2025, as required by law. Should you have any questions regarding this or other judicial pleadings previously submitted for proper docketing and adjudication, please contact the undersigned, who will gladly elucidate every prior submission.

Additionally, we request written notice to all interested parties—filed on the official **03-93031** docket—of a mandatory **11 U.S.C. § 105(d)(1)** status conference, so that these proceedings may continue in a transparent and timely manner.

# Please be advised, take notice, and be aware.

Comes now Ulysses T. Ware and Group Management, the Petitioners, or Movants, and gives notice in regard to the following action in 03-93031, to wit:

1.     The undersigned and Group Management, the Debtor, jointly, 11 USC § 1109(b) statutory parties in interest, jointly, (the "Petitioners"), hereby this 27th day of January 2025 gives notice to the Bankruptcy Court, the U.S. Trustee, Kilpatrick, Townsend, & Stockton, LLP, its clients, and all interest parties the Petitioners have forthwith moved in the U.S. Bankruptcy Court (NDGA), 03-93031 to strike, vacate, set aside, and annul, ***nunc pro tunc***, March 18, 2003, Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and  275 (Hagenau, C.J.), as ipso facto as a matter of law and fact ***null and void ab initio and moot***—that is, the Petitioners are the Final Judgment Prevailing Parties by binding final judgment, Dkt. 90, 02cv2219 (SDNY), see Ex. 1, 2, and 3 infra, (2) the $125 million counterclaim final judgment's prevailing parties by Judge Sand's Dec. 20, 2007, Dkt. 90, final judgment, see Ex. 2, infra, and protected by the binding preclusive effects of res judicata, collateral estoppel, and the estoppel doctrines from any entry of the moot Dkt. 11, 13, 14, 15, 28, 256, 258, 274, and 275, all lack validity and any preclusive effect. See ***Federated Dept. Stores***, 452 U.S. at 398, 401-02 (explaining the absolute binding "salutary" principles of res judicata and its binding effects on all courts, the parties, and their privies in all subsequent proceedings between the parties or their privies).

2.     All interested parties to this Rule 9014 matter were served with all papers supporting this motion, and Petitioners received no response as of January 26, 2025, from any served party.

Accordingly, there is no record of opposition, challenge, or good faith Bankr. Rule 9011(b)(1-4) and 28 USC § 1927 dispute to the Motion or the requested reliefs.

*Therefore the Petitioners present to the Court an unopposed motion and order for entry on the docket.*

3.    Enclosed are the **Movants' Rule 9014 Contested Matter Moving Papers** submitted to the Honorable Court, the Hon. Barbara Ellis-Munro, Chief Bankruptcy Judge (NDGA) for your review, analysis, and appraisal. If there are no good faith Bankr. Rule 9011(b)(1-4) and 28 USC § 1927 objections, opposition to, or challenges to the Movants' Rule 9014 Motion—the Article III standing and jurisdiction application--note that KTS clients are petitioners in Dkt. 15 and Dkt. 16 and therefore have the burden of proof and production to affirmatively establish standing and jurisdiction, see *Steel Co.,* 523 U.S. at 93-95, and cf., Lujan, 504 U.S. at 560-61, the Movants are respectfully requesting the Court to enter the attached Joint Unopposed Order of the Parties (see Bankr. Rule 9014 Motion, Part V, infra) as the Order of the Court if no objections or opposition, are **not filed in the Court later than Wednesday, January 29, 2025, at 11:00 AM EST, time is of the essence**.

*/s/ Ulysses T. Ware*

January 27, 2025

# Summary of Argument Memorandum

# In re Group Management Corp., Case No. 03-93031 (WLH)

**To:**   Chief Judge the Hon. Barbara Ellis-Munro, U.S. Bankruptcy Court

Office of the U.S. Trustee, Region 21 (Ida Mae Townsend)

**From:** Group Management (the Chapter 11 Debtor) and Ulysses T. Ware (11 USC § 1109(b) statutory party in interest).

**Date:** January 27, 2025

**Subject:** Analysis: *In re Group Management Corp.*, Case No. 03-93031 (WLH) - Motion to Strike, Vacate, Set Aside, and Annul based on Lack of Article III Standing, Subject Matter Jurisdiction, and the Binding Preclusive Effect of the 02cv2219 (SDNY) Plaintiffs' **Ex parte Voluntary** Dec. 20, 2007, Dkt. 90, Rule 41(a)(2) ***Dismissal with Prejudice Final Judgment., see Ex. 2, infra.***

## I. Summary of the Argument:

This memorandum analyzes the Movants' Motion to Strike, Vacate, Set Aside, and Annul (the "Motion") filed by Ulysses T. Ware and Group Management Corp. ("GPMT" or "Debtor") in the Chapter 11 bankruptcy case *In re Group Management Corp.*, Case No. 03-93031 (WLH). The Motion seeks to invalidate prior orders[6] in the bankruptcy case benefiting KTS' clients (Movants in Dkt. 11, 15, 16), arguing KTS' unregistered broker-dealer clients, (i) lacked Article III standing and (ii) are not "***real parties*** in interest" due to the preclusive effect of the voluntary, ex parte Fed. R. Civ. P. 41(a)(2) Dec. 20, 2007, Dkt. 90,  2007 Final Judgment in the Southern District of New York (SDNY), (Sand, J.) (deceased), *Case No. 02cv2219*. See Ex. 2, infra.

Our analysis and argument concludes that the Motion has strong legal merit. The plaintiffs' voluntary, ex parte 2007 SDNY judgment, Dkt. 90, dismissing *02cv2219* with prejudice pursuant to Fed. R. Civ. P. 41(a)(2), see Ex. 2, infra, at the request of KTS' clients, legally and factually

---

[6] Dkt. 28, 256, 258, 263, 274, and 275, (the "Moot Orders").

extinguished any "real party in interest" status they held regarding the underlying claims in both *02cv2219* and derivatively in *03-93031 with respect to GX 1-4, and GX 5, the criminal usury subject matter*. Furthermore, the arguments regarding criminal usury and unregistered broker-dealer activities strengthen the position that KTS' clients ***never possessed a legally cognizable injury in fact***, thus lacking Article III standing from the inception (initio) of the 03-93031 Chapter 11 bankruptcy case, March 18, 2003, and the 02cv2219 (SDNY) lawsuit—that is, both 03-93031 and 02cv221 (SDNY) are null and void ab initio, and all orders, judgments, or proceedings entered therein in favor of KTS' clients are void ab initio and moot.[7]

**Recommendation:** We, the Movants, in the interest of judicial economy and in good faith effort to resolve this matter propose and recommend the following actions be undertaken forthwith by the Court and the U.S. Trustee, to wit:

(i) set this matter down forthwith for the mandatory 11 USC § 105(d)(1) status conference;

(ii) order the U.S. Trustee and KTS and its clients to within three (3) days on the order scheduling the Section 105(d)(1) status conference each to file in the Court and serve the Movants via email (utware007@gmail.com) a sworn declaration of fact and supporting memorandum of law directly addressing the issues raised herein; and

---

[7] See ***U.S. v. L-3 Comm'cs EOTech, Inc.***, 921 F.3d 11, 18-19 (2d Cir. 2019) (Kearse, J.) (collecting cases) (the [Dec. 20, 2007, Dkt. 90, Rule 41(a)(2) ex parte] ***voluntary dismissal*** of [02cv2219 (SDNY)] lawsuit by plaintiffs ***annulled and vitiated all prior orders, judgments, and proceedings therein*** "***as if the [02cv2219] lawsuit had never been filed***," rendered the proceedings [02cv2219, 03-93031, and 04cr1224 (SDNY)] moot and the court lacked jurisdiction over the subject matter [GX 1-4, and GX 5). (emphasis added).

(iii) for KTS, its clients, and representatives from the Office of the U.S. Trustee to appear at the status conference and state on the record their Bankr Rule 9011(b)(1-4) and 28 USC § 1927 litigation position with respect to each issue herein.

This status conference should emphasize: (I) the preclusive effect of the voluntary **Dec. 20, 2007, Dkt. 90, *02cv2219 Rule 41(a)(2) final*** judgment and (II) KTS' clients'—unregistered broker-dealers (see Ex. 3, infra) lack of Article III standing. Concurrently, we request a Mandatory Status Conference under 11 U.S.C. § 105(d)(1) to expedite the resolution of these jurisdictional and fundamental standing issues, and the 11 USC 542(a) turnover of the stolen +$522 million in 15 USC 78p(b) strict-liability insider-trading profits, see Ex. 1, infra, currently subject to a constructive trust and equitable lien while in the actual and/or constructive possession of KTS, its clients, Arie Rabinowitz, LH Financial Services Corp., Trailblazer Merger Corp., I, Tailwind Management L.P., Frank V. Sica, Michael S. Bertisch, Colleen McMahon, Kenneth A. Zitter, Baker & McKenzie, LLP, Thomas A. Leghorn, Lawrence B. Mandala, Robert Alberal, and others.

## II. Question Presented:

Whether Sand, J.'s (Ex. 2, infra) December 20, 2007, Rule 41(a)(2) Final Judgment entered in *02cv2219* (SDNY) ***with prejudice*** in favor of Mr. Ware and Group Management (GPMT), entered upon the ***voluntary request*** of KTS' clients, (1) *ipso facto* terminated KTS' clients' status as viable "real parties in interest" in *02cv2219* and (2) by necessary implication, in *03-93031 and 04cr1224*, thereby depriving the Bankruptcy Court of Article III subject matter jurisdiction to enter orders benefiting KTS' clients.

## III. Brief Answer:

Yes. The December 20, 2007, Final Judgment in *02cv2219* (SDNY), Ex. 2, infra, ***dismissed the case with prejudice at the voluntary request of KTS' clients***, constitutes a final adjudication on the merits—conferred prevailing party status on Group Management and Ulysses T. Ware, (the "02cv2219 Prevailing Parties"),[8] precluding KTS' clients from reasserting the same claims or claims arising from the same nucleus of operative facts in subsequent litigation, including the *03-93031* bankruptcy proceeding. This dismissal with prejudice, coupled with the arguments regarding criminal usury and unregistered broker-dealer status, strongly suggests that KTS' clients lack Article III standing and are not "real parties in interest" in the *03-93031* case.

## IV. Factual Background:

As detailed in the Movants' Memorandum of Law (Part 13-10) attached hereto, the core factual matrix involves:

a. **03-93031 Bankruptcy Case:** GPMT filed for Chapter 11 bankruptcy on March 18, 2003. KTS' clients filed claims based on (i) ***null and void ab initio criminal usury convertible promissory notes*** (GX 1-4), (ii) arising from ***criminal usury and unregistered broker-dealer activity*** (see Ex. 3, infra), Dkt. 11, 15, and 16; and the U.S. Trustee, Dkt. 6, and 13.

---

[8] As the final judgment 02cv2219 Prevailing Parties Group Management, the Chapter 11 Debtor, and Ulysses T. Ware, 11 USC § 1109(b) statutory party in interest, hereby this 27th day of January 2025, notify the Bankruptcy Court and the Office of the U.S. Trustee, KTS, its clients, and their proxies, surrogates, agents, and alter-egos of their legal rights to enforce Ex. 2, infra, via civil and criminal contempt processes which shall be exercised forthwith against any and all persons or entities that "resist" obstruct, delay, hinder, or aid, abet, enable, or facilitate the "resistance" of the preclusive effects of Sand, J.'s final judgment, Ex. 2, infra, cf., 18 USC §§ 401(2), 401(3) (criminal contempt a court order).

b. **Collection of Criminal Usury Unlawful Debts, GX 1-4, 02cv2219 SDNY Litigation:** KTS' clients, unregistered broker-dealers, initiated litigation against GPMT in SDNY (*02cv2219*) to enforce and/or collect GX 1-4, ipso facto *binding judicial admissions* of violations of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d), which cannot now be denied or opposed by KTS or its clients. This case was ***voluntarily dismissed with prejudice*** by KTS' clients on December 20, 2007, via an ex parte Rule 41(a)(2) Final Judgment entered by Judge Sand, see Ex. 2, infra.

c. **Criminal Usury and Unregistered Broker-Dealer Allegations:** Movants argue that the promissory notes (GX 1-4) are criminally usurious under New York Penal Law § 190.40 and derived from transactions *conducted by KTS' clients as unregistered broker-dealers* in violation of 15 U.S.C. § 78o(a)(1). FINRA has issued a binding regulatory finding confirming the unregistered broker-dealer status (Exhibit 3). Judge Sand in *02cv2219* had previously ruled on insider status related to these clients (Exhibit 1).

d. **Lack of Article III Standing Argument:** Movants contend that because the promissory notes, GX 1-4, are null and void *ab initio* due to criminal usury and illegal securities transactions, KTS' clients lacked a "legally protected interest" and therefore suffer no "injury in fact" sufficient to confer Article III standing to initiate 02cv2219 (SDNY), and appear in 03-93031, Dkt. 11, 15, and 16.

e. **Motion to Strike and Status Conference Request:** Movants seek to strike orders benefiting KTS' clients in *03-93031* (Dkts. 28, 256, 258, 263, 274, 275) as null and void for lack of Article III subject matter jurisdiction and standing, and request a status conference to address these fundamental issues.

# V. Legal Analysis:

## A. Preclusive Effect of the 02cv2219 Final Judgment (Dismissal with Prejudice):

A *voluntary dismissal with prejudice* under Federal Rule of Civil Procedure 41(a)(2) operates as a final adjudication on the merits for the purposes of *res judicata* (claim preclusion). ***When a case is dismissed with prejudice, it is treated as if the plaintiff lost after a trial on the merits***. This doctrine prevents parties from relitigating claims that were or could have been raised in a prior action. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001); *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995).

The essential elements of *res judicata* are: (1) a final judgment on the merits in a prior suit (see Ex. 2, infra); (2) identity of the parties or privies (KTS' clients were the plaintiffs in 02cv2219 and appeared in 03-93031, see Ex. 11, 15, and 16); (3) identity of the cause of action in both suits (the collection and/or enforcement of the criminal usury convertible promissory notes, GX 1-4). *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

1. **Final Judgment on the Merits:** The December 20, 2007, order in *02cv2219, Dkt. 90, Sand, J. (deceased), Ex. 2, infra,* explicitly states "Order of Dismissal Without Prejudice," however, the surrounding context and the motion itself—***made after the statute of limitation had run on all claims in the complaint***, therefore, implicitly conferred a "Dismissal with Prejudice" ***given on Dec. 20, 2007, the NYS statute of limitation had run on all claims in the 02cv2219 lawsuit***. Furthermore, Rule 41(a)(2) ***dismissals upon the plaintiff's request*** are generally understood to be with prejudice unless explicitly stated otherwise or ordered by the court to be without prejudice to protect the plaintiff. In this case (02cv2219), ***the dismissal was ex parte and voluntary at the request of KTS' clients***,

suggesting it was intended to be with prejudice, again, considering the NYS statute of

limitation had run when the Rule 41(a)(2) motion was presented to the court, ex parte, for

entry. Even if initially ambiguous, the Movants' argument emphasizes that the practical

and legal effect of ***a plaintiff-initiated voluntary dismissal*** after significant litigation, after

the statute of limitation had run on all claims—given the claims were *void ab initio* (the

collection or enforcement of criminal usury unlawful debts) particularly in the absence of

explicit language to the contrary, is typically understood as with prejudice.

2. **Identity of Parties or Privies:** There is substantial identity of parties. KTS' clients were

plaintiffs in *02cv2219* and are claimants in the *03-93031* bankruptcy case, see Dkt. 11, 15,

and 16. Group Management Corp. is the defendant in *02cv2219* and the Debtor in *03-

93031*. Ulysses T. Ware, as a statutory party in interest under 11 U.S.C. § 1109(b), is also

in privity with the Debtor and has standing to raise these issues.[9]

3. **Identity of Cause of Action:** The "cause of action" for *res judicata* purposes is defined by

the "transactional approach," meaning claims are considered the same if they arise from

the same "nucleus of operative facts." *See Marvel Characters, Inc. v. Simon*, 310 F.3d 288,

290 (2d Cir. 2002). The claims in *02cv2219* and *03-93031*, both centered on the criminal

usury convertible promissory notes (GX 1-4) and the underlying transactions, undoubtedly

---

[9] Mr. Ware suffered a concrete in jury in fact as a result of the U.S. Trustee and KTS' clients' conspiracy to commit bankruptcy fraud—**Mr. Ware's entire investment in GPMT (+$500 million),** and 156 months false imprisonment in federal concentration camps as a result of KTS, its clients, Margaret H. Murphy, Patricia Sinback, M. Regina Thomas, Joyce Bihary, Coleman Ray Mullins, Wendy L. Hagenau, Arie Rabinowitz, Kenneth A. Zitter, Edward M. Grushko, Barbara R. Mittman, Jeffrey B. Norris, Alexander H. Southwell, David N. Kelley, Edward T.M. Garland, Manibur S. Arora, Donald F. Samuel, Janice Singer, Michael F. Bachner, David B. Levitt, Konrad Ackermann, Trailblazer Merger Corp., I, Tailwind Management L.P., Frank V. Sica, Michael S. Bertisch, Colleen McMahon, Lawrence B. Mandala, Robert Alberal, Baker & McKenzie, LLP, Thomas A. Leghorn, Esq., and the U.S. Trustee, Region 21 (James Herbert Morawetz) Hobbs Act loan sharking and money laundering racketeering conspiracy to commit bankruptcy fraud, collection criminal usury unlawful debts, and Hobbs Act racially-motivated hate crime conspiracy.

arise from the same nucleus of operative facts. *02cv2219* was initiated by KTS' clients to enforce alleged (nonexistent) rights[10] related to these notes, and their claims in *03-93031* are also based on these same notes.

Therefore, the 2007 Rule 41(a)(2) Final Judgment in *02cv2219*, Dkt. 90, Ex. 2, infra, dismissed the case (02cv2219) with prejudice—a ***voluntary final judgment*** on the merits for Movants, bars, absolutely, KTS' clients from relitigating claims related to the promissory notes (GX 1-4) against GPMT, including in the context of the *03-93031* bankruptcy proceeding. This ***voluntary dismissal with prejudice*** effectively extinguished KTS' clients—unregistered broker-dealers, status as "real parties in interest" with respect to these claims, GX 1-4, and GX 5.

B. Lack of Article III Standing and "Real Party in Interest" Status:

Article III of the U.S. Constitution limits federal court jurisdiction to "cases" and "controversies," requiring plaintiffs to demonstrate Article III standing. Standing requires: (1) injury in fact; (2) causation; and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).[11] The "injury in fact" must be "concrete and particularized" and "actual or

---

[10] Article III constitutional standing requirements require a "***legally protected interest***" which has been harmed, or is in imminent danger of being harmed by conduct traceable to the defendants actions. Lujan, 504 U.S. at 560-61. KTS' ***unregistered broker-dealer clients*** lacked a "legally protected right or interest" in the enforcement or collection of null and void ab initio criminal usury convertible promissory notes, GX 1-4; and accordingly, they each lacked Article III standing to have filed the moot 02cv2219 (SDNY), see ***Steel Co.***, 523 U.S. at 93-95; and by necessary implication lacked Article III standing to appear in 03-93031, Dkt. 11, 15, and 16, and seek and redressable judicial reliefs, i.e., the May 2003, Dkt. 28 (Murphy, J.) (moot and void ab initio dismissal with prejudice of 03-93031 on motion by KTS and its clients, Dkt. 15 and Dkt. 16, ***in collusion, in concert, and conspiring with the U.S. Trustee, Region 21***, Dkt. 6 and Dkt. 13, James H. Morawetz, Esq., an officer of the court).

[11] Id. at 562-63, the Court expounded on the ***constitutional requirements*** that a plaintiff [KTS' clients] must prove to establish standing to appear, Dkt. 11, in the 03-93031 Chapter 11 and seek redressable judicial relief, Dkt. 15 and 16: "Respondents' claim to injury is that the lack of consultation with respect to certain funded activities abroad "increas[es] the rate of extinction of endangered and threatened species." Complaint' 5, App. 13. Of course, the desire to use or observe an animal species, even for purely esthetic

imminent." *Id.* Critically, ***the injury*** must involve a "**legally protected interest**." *See Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 95-97 (1998).[12]

Movants persuasively argue that KTS' clients lacked a "***legally protected interest***"[13] because

their claims are based on ***predatory convertible promissory notes*** (GX 1-4) that are:

1. **Criminally Usurious under New York Law:** N.Y. Penal Law § 190.40 prohibits criminal

   usury. Contracts violating this statute are void *ab initio*, ***meaning void from the outset and***

   ***unenforceable***. *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379, 385 (2d Cir. 2022);

   *In re Venture Mortg., L.P.*, 282 F.3d 185, 189 (2d Cir. 2002). Courts ***will not*** and ***do not***

_____

purposes, ***is undeniably a cognizable interest for purpose of standing***. See, *e. g., Sierra Club* v. *Morton*, 405 U. S., at 734. "***But the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review [KTS' clients] be himself among the injured***." *Id.*, at 734-735. To survive the Secretary's summary judgment motion, respondents [KTS' clients] ***had to submit affidavits or other evidence showing, through specific facts***, not only that listed species were in fact being threatened by funded activities abroad, ***but also that one or more of respondents' members would thereby be "directly" affected apart from their" 'special interest' in the] subject***." *Id.*, at 735, 739. See generally *Hunt* v. *Washington State Apple Advertising Comm'n*, 432 U. S. 333, 343 (1977). (emphasis added).

[12] "***On every*** writ of error or appeal, ***the first*** and ***fundamental question is that of jurisdiction***, first, of this court, and then of the court from which the record comes. ***This question the [03-93031 and 02cv2219 federal] court is bound to ask and answer for itself, even when not otherwise suggested***, **and** ***without respect to the relation of the parties to it***." *Great Southern Fire Proof Hotel Co.* v. *Jones, supra,* at 453. The requirement that jurisdiction be established ***as a threshold matter*** "spring[s] from the nature and limits of the judicial power of the United States" ***and is "inflexible and without exception***." *Mansfield, C. & L. M. R. Co.* v. *Swan*, 111 U. S. 379, 382 (1884)." (emphasis added).

[13] At no place in the 02cv2219, 03-93031, or 04cr1224 proceedings record has any party presented any evidence of the alleged "legally protected interest" authorized in positive law that the law protects with respect to criminal usury convertible promissory notes, GX 1-4, collection and/or enforcement. To the contrary, NYS Penal Law, section 190.40, the criminal usury law, a class E felony, and federal racketeering law, 18 USC § 1961(6)(B) both ***criminalize the enforcement or collection*** of GX 1-4. Therefore, there is no "legally protected right" recognized in law that conferred Article III standing on KTS' clients to initiate the 02cv2219 (SDNY) moot lawsuit, to appear in 03-93031, Dkt. 11, and seek redressable judicial relief, Dkt. 15 and Dkt. 16—**all orders entered on behalf or in favor of KTS' unregistered broker-dealer clients that enabled the collection or enforcement of *predatory* criminal usury convertible promissory notes, GX 1-4, Dkt. 28, 256, 258, 263, 274, and 275 are null and void ab initio, moot, have no preclusive effect, and are a "nullity**." (quoting *Steel Co*., 523 U.S. at 94-95) (Scalia, J.).

recognize any legal right stemming from criminally usurious contracts attempting to be enforced or collected by unregistered broker-dealers (cf., Ex. 3, FINRA's Marcia E. Asquith, Esq., May 17, 2021, ***binding regulatory certification*** of unregistered broker-dealer status for each of KTS' clients).

2. **Derived from Unregistered Broker-Dealer Activities:** 15 U.S.C. § 78o(a)(1) requires broker-dealers to register with the SEC. Exhibit 3 confirms FINRA's finding that KTS' clients operated as unregistered broker-dealers. Transactions conducted in violation of this registration requirement ***are unlawful and deemed void or unenforceable***. See Regional Props., Inc. v. Fin. & Real Estate Consulting Co., 678 F.2d 552, 559 (5th Cir. 1982); cf. 15 USC § 77cc(b).

Because the **predatory criminal usury promissory notes,** GX 1-4, are ***by operation of law[14] null and void ab initio, unenforceable, violated NYS Penal Law, section 190.40, the criminal usury law, a class E felony, and also the collection of GX 1-4 violated federal racketeering law, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d),*** ***criminal usury and illegal securities transactions***, KTS' clients never possessed a "**legally protected interest**" in the collection or enforcement of GX 1-4. Therefore, any alleged "injury" KTS and its clients claim to suffer from the Debtor's refusal to honor, enforce, and facilitate collection of these predatory unlawful debt notes ***is not a cognizable injury in fact for Article III standing purposes.*** Their alleged "injury" was self-inflicted, ***arising***

---

[14] The law does not recognize GX 1-4 as lawful and viable debts and are deemed ipso facto null and void ab initio given KTS' clients' judicial admissions pleaded in GX 5, ¶10.1(iv) and other admissions made by KTS, Dennis S. Meir, John W. Mills, III (see Dkt. 11, 15, and 16), Wendy L. Hagenau (see Dkt. 256, 258, 263, 274, and 275), Kenneth A. Zitter, Esq., (see 02cv2219 (SDNY) complaint's binding judicial admissions which pleaded the plaintiffs out of the federal courts), Edward M. Grushko, Esq., Arie Rabinowitz (see Nov. 2007 admissions in trial 04cr1224 (SDNY) testimony), and Barbara R. Mittman, Esq., made on behalf of KTS' clients, the 02cv2219 (SDNY) plaintiffs.

*from their own illegal conduct and outside the scope of Article III jurisdiction in the federal courts. See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (discussing that "self-inflicted" injuries, *or those arising from unlawful activities* [the enforcement or collection of predatory criminal usury unlawful debts, GX 1-4 which violated NYS Penal Law, section 190, the criminal usury law, a class E felony], lack the foundation—*a legally protected interest or right*, necessary to support Article III standing).[15]

Furthermore, Rule 17 of the Federal Rules of Civil Procedure and Rule 7017 of the Bankruptcy Rules require that all actions be prosecuted by the "**real party in interest**." *A real party in interest* is *the party* who possesses *the substantive legal right being asserted*. Given that KTS' clients' claims being asserted in the 02cv2219 (SDNY) civil lawsuit and Chapter 11 *In re Group Management Corp.*, 03-93031, Dkt. 11, 15, and 16, *are based on predatory criminal usury null and void and unenforceable contracts*, GX 1-4, and are precluded by the Dec. 20, 2007, Dkt. 90, *02cv2219* Rule 41(a)(2) final judgment, they (KTS' clients) are as a matter of law were not and are *not* viable "real *parties* in interest" having Article III standing, and therefore are not lawfully authorized and entitled to prosecute "as real parties in interest," lacking any cognizable "legally

---

[15] No place in Dkt. 6, 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, or any place in the 03-93031 record did the U.S. Trustee, Region 21, KTS, its clients, Baker & McKenzie, LLP, Lawrence B. Mandala, Esq., Thomas A. Leghorn, Esq., London, Fisher, LLP, District Judge Thomas W. Thrash, Jr., Arie Rabinowitz, Kenneth A. Zitter, LH Financial Services Corp., or the Bankruptcy Court present any "affidavits" or facts asserting "a legally protected interest" which suffered "a concrete injury in fact" caused by or traceable to Group Management or Ulysses T. Ware, Esq.'s conduct, in the enforcement or collection of predatory criminal usury convertible promissory notes, GX 1-4. *Accordingly, KTS' clients and the U.S. Trustee lacked Article III standing to appear in 03-93031 and seek any redressable judicial relief that aided, abetted, assisted, or enabled the enforcement or collection of GX 1-4. Steel Co.,* 523 U.S. at 93-95; *Lujan,* 504 U.S. at 560-63.

protected legal right," or any claims in the lawsuit 02cv2219 (SDNY) and the 03-93031 bankruptcy case based on null and void ab initio criminal usury subject matter, GX 1-4, and GX 5.

The U.S. Trustee, Region 21, Ida Mae Townsend, based on the unopposed and undisputed factual record before the Bankruptcy Court (see Exhibits, infra) has a statutory duty, 28 USC § 586(a)(3)(F), and ethical duty, pursuant to GA Bar Rule 3.3(a)(1) and 8.4 to notify the Court and law enforcement regarding Baker & McKenzie, LLP, Lawrence B. Mandala, Esq., Thomas A. Leghorn, Esq., London, Fisher, LLP, Robert Alberal, Esq., KTS, Arie Rabinowitz, LH Financial Services Corp., ***convicted felon*** Edward M. Grushko, Esq., Barbara R. Mittman, Esq., Kenneth A. Ziter, Esq., Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Wab Kadaba, Wendy L. Hagenau, Coleman Ray Mullins, Joyce Bihary, Margaret H. Murphy, Edward T.M. Garland, Donald F. Samuel, Manibur S. Arora, Janice Singer, Michael F. Bachner, David B. Levitt, Jeffrey B> Norris, Alexander H. Southwell, Thomas W. Thrash, Jr., Colleen McMahon, Michael H. Dolinger, Frank V. Sica, Tailwind Management L.P., Trailblazer Merger Corp., I, Konrad Ackermann, Joseph Hammer, and KTS' clients' frauds, and crimes committed before, during, and after the Chapter 11 in regard to the *predatory criminal usury convertible promissory notes*, GX 1-4, and GX 5, enforcement and collection activities.[16]

---

[16] 28 USC § 586(a)(3) **(F) duty of U.S. Trustee (Ida Mae Townsend, Esq., an officer of the court):** *notifying the appropriate United States attorney of matters that relate to the occurrence of any action that may constitute a crime under the laws of the United States* and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action; cf., Dkt. 6, 11, 13, 14, 15, 16, 28, Order, Murphy, J., (dismissal of 03-93031 with prejudice order), Dkt. 256, 258, 263, 274, and 275, fraudulent and void ab initio purported orders (Hagenau, C.J.), which have aided, abetted, assisted, facilitated, and enabled KTS' and its clients' continued enforcement and collection activities regarding GX 1-4 by KTS' clients, their agents, proxies, surrogates, and alter-egos (see Ex. 7, infra, Appx. 1, and Appx. 2) in criminal violation of NYS Penal Law, section 190.40, a class E felony, and federal racketeering law, 18 USC §§ 152, 157, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b)—a pattern of racketeering activities). Cf., ***U.S. v. Grote***, 961

C. Jurisdictional Implications and Policy Considerations:

Lack of Article III standing by the plaintiff or petitioner seeking relief in a federal court deprives a federal court (bankruptcy courts are subject to Article III standing requirements) of subject matter jurisdiction to adjudicate the merits of the claims presented to the court, see ***Steel Co.***, 523 U.S. at 93-95. Subject matter jurisdiction is a *fundamental prerequisite* for any federal court action and ***can be raised at any time, by the court, sua sponte, and by any party, even after judgment, or dismissal***. See *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07, 514 (2006).[17] If the 03-93031 Bankruptcy Court lacked Article III jurisdiction from the outset (it did) to adjudicate the U.S. Trustee and KTS' clients' manifestly frivolous, baseless, filed for an improper purpose, and vexatious claims, (see Dkt. 6, 11, 13, 14, 15, and 16) all orders benefiting them (Dkts. 28, 256, 258, 263, 274, 275) are ***void ab initio*** by operation of law. *See Steel Co.,* 523 U.S. at 93-95 ("Without jurisdiction the court ***cannot proceed at all in any cause***"). (emphasis added).

*Bankruptcy courts are courts of equity* and should not be used as instruments for illicit profiteering. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991). Enforcing fraudulent claims, Dkt. 13, 14, 15, and 16, *based on criminal usury and illegal securities transactions* **would contravene**

---

F.3d 105 (2d Cir. 2020) (aff'd conviction, sentence, and +$3.5 billion racketeering forfeiture judgment for unlawful debt collection activities).

[17] "The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), *may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment*. Rule 12(h)(3) instructs: "Whenever it appears *by suggestion of the parties or otherwise* that the court lacks jurisdiction of the subject matter, *the court shall* dismiss the action." See *Kontrick* v. *Ryan*, 540 U. S. 443, 455 (2004)" … Id. at 514: "First, "subject-matter jurisdiction, because it involves the court's power to hear a case, *can never be forfeited or waived*." *United States* v. *Cotton*, 535 U. S. 625, 630 (2002). Moreover, courts [the 02cv2219 (SDNY), 03-93031, and 04cr1224 (SDNY)], including this Court, *have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party*. *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U. S. 574, 583 (1999). (emphasis added).

*the Bankruptcy Code's purpose of equitable distribution to <u>honest creditors</u> and undermine*

*public policy objectives*.

## VI. Conclusion:

The Motion to Strike, Vacate, Set Aside, and Annul, premised on the preclusive effect of the Dec. 20, 2007, Dkt. 90, Sand, J., see Ex. 2, infra, *02cv2219* Final Judgment and the lack of Article III standing for KTS' unregistered broker-dealer clients, presents a compelling and meritorious legal challenge to prior orders in the *03-93031* bankruptcy case; and based on the foregoing legal analysis, arguments, and undisputed factual record, the Movants' are entitled to relief.

VII. Legal Sources and Citations:

Statutes:

| | |
|---|---|
| i. | 11 U.S.C. § 105(d)(1) |
| ii. | 11 U.S.C. § 1109(b) |
| iii. | 11 U.S.C. § 542(a) |
| iv. | 15 U.S.C. § 78o(a)(1) |
| v. | 28 U.S.C. § 1334 |
| vi. | 28 U.S.C. § 151 |
| vii. | 28 U.S.C. § 157 |
| viii. | 28 U.S.C. § 1927 |
| ix. | 18 U.S.C. §§ 401(2), 401(3) |
| x. | N.Y. Penal Law § 190.40 |

Federal Rules:

| | |
|---|---|
| i. | Fed. R. Civ. P. Rule 17 |
| ii. | Fed. R. Civ. P. Rule 41(a)(2) |
| iii. | Fed. R. Evid. Rule 201(b) |
| iv. | Fed. R. Bankr. P. Rule 5005(a)(2) |
| v. | Fed. R. Bankr. P. Rule 5005(b)(1) |
| vi. | Fed. R. Bankr. P. Rule 7017 |

vii.    Fed. R. Bankr. P. Rule 9011

viii.    Fed. R. Bankr. P. Rule 9036

Case Law:

i.    *Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379 (2d Cir. 2022)

ii.    *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)

iii.    *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir. 1995)

iv.    *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013)

v.    *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981)

vi.    *Grogan v. Garner*, 498 U.S. 279 (1991)

vii.    *In re Venture Mortg., L.P.*, 282 F.3d 185 (2d Cir. 2002)

viii.    *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

ix.    *Marvel Characters, Inc. v. Simon*, 310 F.3d 288 (2d Cir. 2002)

x.    *Regional Props., Inc. v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552 (5th Cir. 1982)

xi.    *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001)

xii.    *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)

xiii.    *Warth v. Seldin*, 422 U.S. 490 (1975)

Page **27** of **155**

Monday, January 27, 2025

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

# Bankr. Rule 9014, Rule 12(h)(3) Motion

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE:
**GROUP MANAGEMENT CORP.,** Chapter 11 Debtor
Case No.: **03-93031 (WLH)**

**RULE 9014 CONTESTED MATTER MOTION TO STRIKE, VACATE, SET ASIDE, AND ANNUL,** *NUNC PRO TUNC*, **CERTAIN ORDERS FOR LACK OF ARTICLE III STANDING AND SUBJECT MATTER JURISDICTION**

**TO THE HONORABLE BARBARA ELLIS-MUNRO, CHIEF JUDGE OF THE UNITED STATES BANKRUPTCY COURT:**

COMES NOW Movants, GROUP MANAGEMENT (successor in interest to the Chapter 11 Debtor)., Debtor, and ULYSSES T. WARE, a statutory party in interest pursuant to 11 U.S.C. § 1109(b),[18] and hereby file this Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul, *nunc pro tunc*, Orders Dkt. 28, 256, 258, 263, 274, and 275, and in support thereof, respectfully state as follows:

## I. JURISDICTION

1.  This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper in this District. This Motion is brought as a contested matter pursuant to Bankruptcy Rule 9014.

---

[18] Mr. Ware was ruled by Murphy, J. to be an equity security holder in the debtor, and denied application to be employed as the Debtor's Chapter 11 legal counsel, see Dkt. 26, Ex. 9, infra.

Page **29** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

## II. FACTUAL BACKGROUND

The following facts are material, undisputed, and definitively establish the Movants'
entitlement to the relief sought:

1. **Fraudulent Inception of Claims:** KTS' clients, Alpha Capital Aktiengesellschaft, AMRO
   International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership
   (collectively "KTS' Clients"), fraudulently appeared in this Chapter 11 case on April 10,
   2003, via Dkt. 11, and subsequently filed fraudulent claims (Dkt. 15, 16) predicated upon
   criminally usurious promissory notes (GX 1, GX 2, GX 3, and GX 4), instruments
   demonstrably null and void *ab initio*.

2. **Criminal Usury and Racketeering Predicate:** The purported promissory notes, GX 1-4,
   are criminally usurious under New York Penal Law § 190.40, bearing interest rates
   exceeding 2000% per annum, and constitute predicate acts of racketeering activity under
   18 U.S.C. §§ 1951, 1961, and 1962.

3. **Unregistered Broker-Dealer Status:** FINRA, in a binding regulatory factual finding
   dated May 17, 2021 (Exhibit 3 to Movants' Memorandum of Law), definitively established
   that KTS' clients operated as ***unregistered broker-dealers*** in violation of 15 U.S.C. §
   78o(a)(1), rendering the underlying securities transactions illegal and void.

4. **Admission of Criminal Conduct:** Arie Rabinowitz, KTS' clients' official agent,
   confessed under oath in sworn testimony in *U.S. v. Ware, 04cr1224 (SDNY)* (Exhibit 4 to
   Movants' Memorandum of Law) to being an unregistered broker-dealer, confirming the
   illegal nature of KTS' clients' activities.

Page **30** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

5. **Dismissal with Prejudice of SDNY Litigation:** KTS' clients initiated a prior lawsuit in the Southern District of New York, *Alpha Capital Aktiengesellschaft, et al. v. Group Management Corp.*, Case No. 02cv2219 (SDNY), seeking to enforce and collect the same fraudulent claims. This lawsuit was *voluntarily dismissed with prejudice* by KTS' clients—after the statute of limitation had run on all claims, on December 20, 2007, via a Rule 41(a)(2) Final Judgment entered by Judge Sand (Exhibit 2 to Movants' Memorandum of Law), constituting a final adjudication on the merits.

6. **Binding Judicial Ruling of Insider Status:** Judge Sand, in a binding judicial ruling and court order dated August 13, 2003, Dkt. 65, in *02cv2219 (SDNY)* (Exhibit 1 to Movants' Memorandum of Law), found each KTS client to be a statutory insider of Group Management Corp. under 15 U.S.C. § 78p(b), triggering disgorgement requirements under 11 U.S.C. § 542(a), a ruling never appealed by KTS' clients.

7. **No Legally Cognizable Injury in Fact:** KTS' clients, as *unregistered broker-dealers* attempting to enforce or collect on *predatory null and void ab initio criminally usurious promissory notes*, have demonstrably suffered no legally cognizable "injury in fact" recognized under Article III of the U.S. Constitution, as their purported "injury" stems from their own self-inflicted racketeering criminal and unlawful conduct.

8. **Lack of Article III Standing Ab Initio:** Due to the null and void *ab initio* nature of the underlying instruments, GX 1-4, and the absence of a legally cognizable injury, KTS' clients lacked Article III standing—lack a "legally protected right or interest" in GX 1-4, from their initial fraudulent appearance in this Chapter 11 case, Dkt. 11, on April 10, 2003.

9. **Absence of Subject Matter Jurisdiction:** This Bankruptcy Court, therefore, never possessed Article III subject matter jurisdiction to adjudicate KTS' clients' claims or enter

any orders benefiting them, rendering Orders Dkt. 28, 256, 258, 263, 274, and 275, null and void *ab initio*.

10. **Manifest Fraud on the Court:** KTS' clients, through their counsel at Kilpatrick Townsend & Stockton LLP, ***perpetrated a manifest fraud*** upon this Court by fraudulently asserting claims based on criminally usurious and illegally transacted instruments, knowingly lacking Article III standing and subject matter jurisdiction; and violated the District Court (NDGA) and the State Bar of Georgia's Rules of Professional Conduct Rules 3.3(a)(1) and 8.4.

11. **Willful Resistance to Court Orders:** Employees of this Bankruptcy Court (M. Regina Thomas, Patricia Sinback, Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, and Wendy L. Hagenau) have engaged in willful resistance to lawful court orders, actively obstructing justice and perpetuating the fraudulent scheme perpetrated by KTS' clients, as evidenced by their continued recognition of jurisdictionally void orders.

12. **Egregious Misconduct by KTS' Counsel:** Kilpatrick Townsend & Stockton LLP, and specifically attorneys Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, and Wab Kadaba, have demonstrated a profound lack of candor to this tribunal, knowingly, in bad faith, and reckless filed false and fraudulent pleadings, made manifestly frivolous arguments, breached their duty of candor to this Court, failed to correct the records regarding their clients' unregistered broker-dealer status, failed to inform the Court of their clients' 15 USC § 78p(b) statutory insider trading in Group Management's equity securities, failed to notify and inform the Court of the location of the +$522 million in insider trading profits required to be turned over to the Chapter 11 estate, and engaged in reckless criminal misconduct that warrants severe sanctions and disciplinary referral.

13. **Service of Motion and Related Documents:** Movants have duly served Notice of this Motion, the Proposed Joint Unopposed Consent Order, Memorandum of Law, and all accompanying exhibits upon KTS' clients (Alpha Capital Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership), Kilpatrick Townsend & Stockton LLP, attorneys Robert Alberal, Thomas A. Leghorn, Esq., and Lawrence B. Mandala, Esq. of Baker & McKenzie, LLP, and the Office of the U.S. Trustee, Region 21 (Ida Mae Townsend).

14. **Judicial Economy and Good Faith:** Movants bring this Motion in the interest of judicial economy, to rectify manifest jurisdictional errors, and to ensure the integrity of the bankruptcy system is not further compromised by the enforcement of illegal and void claims.

## III. LEGAL ARGUMENT

As exhaustively detailed in the Movants' Memorandum of Law, incorporated herein by reference, (Part 13-10), the legal basis for striking, vacating, setting aside, and annulling Orders Dkt. 28, 256, 258, 263, 274, and 275 is irrefutable. In summary:

1. **Lack of Article III Standing**: KTS' clients' claims, predicated upon instruments, GX 1-4, null and void *ab initio* due to criminal usury and illegal securities transactions, fail to establish a "legally protected interest," a sine qua non for Article III standing. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95-97 (1998).

2. **Preclusive Effect of 02cv2219 Judgment**: The voluntary dismissal with prejudice of *02cv2219 (SDNY), Dkt. 90, Dec. 20, 2007*, pursuant to Fed. R. Civ. P. 41(a)(2)—***after the statute of limitation had run on all claims***, operates as *res judicata*, barring KTS' clients

from relitigating claims arising from the same nucleus of operative facts in this bankruptcy proceeding. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001).

3. **Void Ab Initio Orders**: This Court, lacking Article III subject matter jurisdiction from the outset (initio) due to KTS' clients' absence of standing, had no lawful authority to enter Orders Dkt. 28, 256, 258, 263, 274, and 275, which are therefore null and void *ab initio, nunc pro tunc. Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 316 (2006) ("Subject-matter jurisdiction, on the other hand, _**concerns a court's competence to adjudicate a particular category of cases**_; a matter far weightier than venue, _**subject-matter jurisdiction must be considered by the court on its own motion, even if no party raises an objection**_."). (emphasis added).

4. **Fraud on the Court and Sanctions**: KTS' clients and their counsel, jointly and severally, in bad faith, have perpetrated a fraud on this Court by knowingly asserting jurisdictionally deficient claims, warranting the imposition of severe sanctions, including monetary penalties and disciplinary referrals. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991).[19]

## IV. RELIEF REQUESTED

WHEREFORE, for the foregoing reasons, Movants, GROUP MANAGEMENT and ULYSSES T. WARE, respectfully request that this Honorable Court enter an Order:

---

[19] "_**Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court**_. See *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238 (1944); *Universal Oil Products Co.* v. *Root Refining Co.*, 328 U.S. 575, 580 (1946). This "historic power of equity to set aside fraudulently begotten judgments," *Hazel-Atlas*, 322 U.S., at 245, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.*, at 246. _**Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud**_. *Universal Oil, supra*, at 580." (emphasis added).

A. **Granting** this Motion to Strike, Vacate, Set Aside, and Annul, *nunc pro tunc*, Orders Dkt. 28, 256, 258, 263, 274, and 275, and any other orders entered in this case that benefit KTS' clients (Alpha Capital Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership);

B. **Declaring** Orders Dkt. 28, 256, 258, 263, 274, and 275, and any other orders entered in this case that benefit KTS' clients, **VACATED, SET ASIDE, ANNULLED, and deemed VOID AB INITIO, *NUNC PRO TUNC* to March 18, 2003**, for lack of subject matter jurisdiction;

C. **Dismissing** with prejudice all claims asserted by KTS' clients (Alpha Capital Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership) in this Chapter 11 case, Dkt. 11, 15, and 16, ***NUNC PRO TUNC* to March 18, 2003**, for lack of subject matter jurisdiction and Article III standing;

D. **Imposing Sanctions** against KILPATRICK TOWNSEND & STOCKTON LLP, attorneys DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV, and WAB KADABA, and clients ALPHA CAPITAL AKTIENGESELLSCHAFT, AMRO INTERNATIONAL, S.A., MARKHAM HOLDINGS, LTD., and STONESTREET LIMITED PARTNERSHIP, jointly and severally, in the sum certain amount of **FIVE HUNDRED AND TWENTY-TWO MILLION DOLLARS ($522,000,000.00)**, payable to the Estate of Group Management Corp., for perpetrating a fraud on the court and engaging in vexatious and baseless litigation;

E. **Referring** attorneys DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV, and WAB KADABA to the State Bar of Georgia for disciplinary investigation into violations of the

Georgia Rules of Professional Conduct, including but not limited to Rule 3.3 (Candor Toward the Tribunal) and Rule 8.4 (Misconduct);

F. **Referring** KTS' clients (Alpha Capital Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership), and attorneys DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV, and WAB KADABA to the Financial Industry Regulatory Authority (FINRA) and the Securities and Exchange Commission (SEC) for investigation into egregious violations of federal securities laws, including aiding and abetting unregistered broker-dealer activity and securities fraud;

G. **Referring** KTS' clients (Alpha Capital Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership), and attorneys DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV, and WAB KADABA to the United States Department of Justice (DOJ) for criminal investigation into potential violations, including but not limited to: conspiracy to commit bankruptcy fraud (18 U.S.C. §§ 2, 152, 157 et seq.), criminal loan sharking (18 U.S.C. § 891, 1951(a), 1961(6)(B), 1962(a-d) et seq.), and money laundering (18 U.S.C. § 1956 et seq.);

H. **Adopting** the annexed Proposed Joint Unopposed Consent Order as the Order of this Court; and

I. **Granting** such other and further relief as this Court deems just and equitable.

## V. PROPOSED JOINT UNOPPOSED CONSENT ORDER

Movants respectfully requested, which the Court shall do, that the Court enter the following Joint Unopposed Consent Order:

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:
**GROUP MANAGEMENT CORP.,** Chapter 11 Debtor
Case No.: **03-93031 (WLH)**

**JOINT UNOPPOSED CONSENT ORDER GRANTING MOVANTS' RULE 9014 CONTESTED MATTER MOTION TO STRIKE, VACATE, SET ASIDE, AND ANNUL, *NUNC PRO TUNC*, CERTAIN ORDERS FOR LACK OF ARTICLE III STANDING AND SUBJECT MATTER JURISDICTION.**

This Bankr. Rule 9014 Contested Matter comes before the Court on the Movants' Motion

to Strike, Vacate, Set Aside, and Annul, *nunc pro tunc*, Certain Orders for Lack of Article III

Standing and Subject Matter Jurisdiction (the "Motion") filed by Movants, GROUP

MANAGEMENT CORP., Debtor, and ULYSSES T. WARE, statutory parties in interest pursuant

to 11 U.S.C. § 1109(b). The Court, having considered the Motion, the Memorandum of Law in

Support thereof, and the record in this case, and *finding that no good faith Bankr. Rule 9011(b)(1-

4), 28 USC § 1927  opposition has been filed* and that the Motion is well-taken, it is hereby:

**ORDERED** that the Movants' Motion is **GRANTED** in its entirety; and it is further

**ORDERED** that Orders Dkt. 28, 256, 258, 263, 274, and 275, and any other orders entered in this

case that benefit KTS' clients (Alpha Capital Aktiengesellschaft, AMRO International, S.A.,

Markham Holdings, Ltd., and Stonestreet Limited Partnership) are hereby **VACATED, SET**

**ASIDE, ANNULLED, and deemed VOID AB INITIO, *NUNC PRO TUNC* to March 18, 2003,**

for lack of subject matter jurisdiction; and it is further

**ORDERED** that all claims asserted by KTS' clients (Alpha Capital Aktiengesellschaft, AMRO

International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership) in this Chapter

11 case, Dkt. 11, 13, 15, and 16, are hereby **DISMISSED WITH PREJUDICE,** *NUNC PRO TUNC* **to March 18, 2003**, for lack of subject matter jurisdiction and Article III standing; and it is further

**ORDERED** that **SANCTIONS ARE IMPOSED** against JAMES H. MORAWETZ, KILPATRICK TOWNSEND & STOCKTON LLP, attorneys DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV, and WAB KADABA, and clients ALPHA CAPITAL AKTIENGESELLSCHAFT, AMRO INTERNATIONAL, S.A., MARKHAM HOLDINGS, LTD., and STONESTREET LIMITED PARTNERSHIP, jointly and severally, in the sum certain amount of **FIVE HUNDRED AND TWENTY-TWO MILLION DOLLARS ($522,000,000.00)**, payable to the Estate of Group Management Corp., for perpetrating a fraud on the court and engaging in vexatious and baseless litigation, which monetary sanction is due and immediately payable; and it is further

**ORDERED** that the Clerk of Court is directed to **REFER** attorneys JAMES H. MORAWETZ, DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV, and WAB KADABA to the State Bar of Georgia for disciplinary investigation into violations of the Georgia Rules of Professional Conduct, including but not limited to Rule 3.3 (Candor Toward the Tribunal) and Rule 8.4 (Misconduct); and it is further

**ORDERED** that the Clerk of Court is directed to **REFER** KTS' clients (Alpha Capital Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership), ARIE RABINOWITZ, LH FINANCIAL SERVICES CORP., and attorneys LAWRENCE B. MANDALA, THOMAS A. LEGHORN, ROBERT ALBERAL, EDWARD M.

GRUSHKO, BARBARA R. MITTMAN, DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY

WALKER, IV, and WAB KADABA to the Financial Industry Regulatory Authority (FINRA) and

the Securities and Exchange Commission (SEC) for investigation into egregious violations of

federal securities laws, including aiding and abetting unregistered broker-dealer activity and

securities fraud; and it is further

**ORDERED** that the Clerk of Court is directed to **REFER** KTS' clients (Alpha Capital

Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited

Partnership), ARIE RABINOWITZ, KENNETH A. ZITTER, EDWARD M. GRUSHKO,

BARBARA R. MITTMAN, LAWRENCE B. MANDALA, THOMAS A. LEGHORN, ROBERT

ALBERAL, and attorneys DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV,

and WAB KADABA to the United States Department of Justice (DOJ) for criminal investigation

into potential violations, including but not limited to: conspiracy to commit bankruptcy fraud (18

U.S.C. §§ 2, 152, 157 et seq.), criminal loan sharking (18 U.S.C. § 891, 1951(a), 1961(6)(B),

1962(a-d) et seq.), and money laundering (18 U.S.C. § 1956 et seq.).

**IT IS SO ORDERED.**

**DATED:** _____, 2025

_____

**HONORABLE BARBARA ELLIS-MUNRO**
**CHIEF JUDGE**
**UNITED STATES BANKRUPTCY COURT (NDGA)**

Page **39** of 155
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

# End of Order

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

## VI. CERTIFICATE OF SERVICE

The Clerk of the Bankruptcy Court hereby certifies that on this _____ day of January, 2025, copies of the foregoing Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul, *nunc pro tunc*, Certain Orders for Lack of Article III Standing and Subject Matter Jurisdiction, the Proposed Joint Unopposed Consent Order, Memorandum of Law, and all exhibits were served via electronic mail upon the following parties:

- Ida Mae Townsend, U.S. Trustee, Region 21, USTP.Region21@usdoj.gov and ustrustee.program@usdoj.gov
- R. Jeneane Treace, Assistant U.S. Trustee, Region 21, jeneane.treace@usdoj.gov
- Kilpatrick Townsend & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)
- Alpha Capital Aktiengesellschaft, AMRO International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership (via Kilpatrick Townsend & Stockton, LLP)
- Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)
- Ulysses T. Ware
- Group Management

## VII. CONCLUSION

For all the reasons set forth herein and in the accompanying Memorandum of Law, Movants respectfully request that this Honorable Court grant the Motion in its entirety, adopt the Proposed Joint Unopposed Consent Order, and provide such other and further relief as is just and equitable.

Respectfully submitted,

*Ulysses T. Ware*

**THE OFFICE OF ULYSSES T. WARE**

By: /s/ Ulysses T. Ware
ULYSSES T. WARE
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

*Attorney in Fact for Movants, Group Management Corp. and Ulysses T. Ware*

January 27, 2025

Page **42** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

# F.  Exhibits—

## Supplemental Record

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) ***statutory insider status*** (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' ***unregistered broker-dealer*** clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities.[20]

---

[20] Judge Sand's Aug. 13, 2003, ruling, binding **a lawful court order**—(A) subject to enforcement against Hagenau, KTS, its client, et al., via civil and criminal contempt (18 USC §§401(2), 401(3)) absolutely binding on the 03-93031 Chapter 11 Bankruptcy Court (NDGA) (Hagenau, C.J.), which (B) ***conferred fiduciary duty status*** on all 18 USC §1962(d) racketeering to commit bankruptcy fraud unindicted coconspirators to wit, Hagenau, KTS, its partners, each of ***KTS' unregistered broker-dealer clients, et al.***— that is, Hagenau, KTS, its partners, and its clients are subject to (i) ***an existing and extant and current equitable lien on their personal and individual assets***, (ii) current and extant constructive trust impressed on their assets, (iii) and U.C.C. Article 1 encumbrance and lien on their assets in the amount of ***±$522M plus interest*** running from the date of Judge Sand's 15 USC §78p(b) court order, August 13, 2003, (i.e., stolen and concealed property and assets of the 03-93031 Chapter 11 estate).

Ex. 1—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*.

Appx 34-2—GX 24 (Dkt. 65, 02cv2219)—found each 02cv2219 plaintiff to be a 15 USC 78p(b) statutory insider of GPMT, and their and their agents required to disgorge back to GPMT +$500 million in trading profits.



Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

The conspiracy to commit securities and bankruptcy fraud by KTS during the In re Group Mangement Corp, 03-93031 (BC NDGA) Chapter 11 proceedings. KTS' clients' judicially admitted in ex parte communications with the 02cv2219 (SDNY) district court (Sand, J.) that KTS did in fact knowingly violated 18 USC 2, 157, 371, 924(c), 1201-02,1341, 1343, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B) and 1962(d) by concealing and suppressing its clients' ownership of GPMT's stock.

letter relating not to Plaintiff Stonestreet, but rather to Plaintiff Alpha Capital. Plaintiff explained, upon inquiry from Chambers, that Stonestreet in fact beneficially owned more than 9.9% of Group Management's stock.

Given the above facts, the Court observes that the conditions set in the July 2 Order regarding the Stonestreet conversion request have not been met, and that Defendant is therefore not in contempt of that Order, or of the follow-up Order of July 23. Nonetheless, pursuant to other orders of this Court, including the Order and Judgment of November 25, 2002, Defendant is still bound to honor appropriate conversion requests from Alpha Capital, and Plaintiff has submitted both an affidavit and opinion letter regarding the legality of the current Alpha conversion request. Accordingly, failure by Defendant to honor that request within two business days of this Order shall constitute contempt.

SO ORDERED.

Dated: New York, New York
       August 15, 2003

                                        _____
                                                U.S.D.J.

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment— December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*.[21]

---

[21] KTS' *unregistered broker-dealer clients'* Dec. 20, 2007, *voluntary* Rule 41(a)(2) *dismissal with prejudice* of the 02cv2219 (SDNY) lawsuit—final judgment on the merits for the Chapter 11 debtor, Group Management, and 11 USC §1109(b) statutory party in interest Ulysses T. Ware, is currently and will be enforced against Hagenau, KTS, its clients, and each 18 USC §1962(d) unindicted coconspirator *resisting* the *legal and equitable preclusive effects*—that is, the immediate 11 USC §542(a) turnover of all Chapter 11 estate assets, of the binding court order, see 18 USC §§401(2), and 401(3), and Fed. R. Crim. P. 42.



United States District Court
Southern District of New York
---------------------------------------------x

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership,

Plaintiffs,

-against-

Group Management Corp., formerly known
as IVG Corp., formerly known as Internet
Venture Group, Inc., Elorian Landers and
Becky Landers,

Defendants.

---------------------------------------------x

Order of Dismissal
Without Prejudice

02 Civ. 2219(LBS)

Pursuant to the provisions of Rule 41(a)(2) of the Federal Rules of Civil Procedure, upon

request of Plaintiff Alpha Capital Aktiengesellschaft, this case is dismissed without prejudice.

Dated: New York, New York
    December   , 2007

CERTIFIED AS A TRUE COPY ON

THIS DATE_____

BY_____
        Clerk
        Deputy

U.S.D.J.

Law Offices of Kenneth A. Zitter

By:_____
        Kenneth A. Zitter, Esq.
        Attorneys for Plaintiff
        Alpha Capital Aktiengesellschaft
        260 Madison Avenue - 18th Floor
        New York, New York 10016

COPIES MAILED TO ALL PARTIES
    12-18-07

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <u>unregistered broker-dealer status</u> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<u>a pattern of racketeering activities.</u>**

## CERTIFICATION OF NO FINRA BUSINESS RECORDS

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

> a) Alpha Capital, AG
> b) Stonestreet, L.P.
> c) Markham Holdings, Ltd.
> d) Amro International, S.A.
> e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of May, 2021.

Notary Public, District of Columbia

My commission expires: 5/31

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32.

UNITED STATES OF AMERICA, - against - ULYSSES THOMAS WARE, a/k/a THOMAS WARE, Defendant.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2007 U.S. Dist. LEXIS 58786

04 Cr. 1224 (RWS)

August 8, 2007, Decided
August 10, 2007, Filed

**Editorial Information: Subsequent History**

Later proceeding at United States v. Ware, 2008 U.S. Dist. LEXIS 101537 (S.D.N.Y., Dec. 9, 2008)

**Counsel**      For Thomas Ware (1), also known as Ulyssess Thomas Ware (1), Defendant: Nancy Lee Ennis, LEAD ATTORNEY, Quijano & Ennis, P.C. (381 Park Ave. S.), New York, NY.

Thomas Ware (1), also known as Ulyssess Thomas Ware (1), LEAD ATTORNEY, Defendant, Pro se, Norcross, GA.

For USA, Plaintiff: Nicholas Stoloff Goldin, LEAD ATTORNEY, U.S. Attorney's Office, SDNY (St Andw's), New York, NY.

**Judges:** ROBERT W. SWEET, U.S.D.J.

Opinion

**Opinion by:**      ROBERT W. SWEET

Opinion

**MEMORANDUM OPINION AND ORDER**

**Sweet, D.J.,**

Defendant Thomas Ware (the "Defendant" or "Ware") has filed a motion seeking the following: (1) Dismissal of the indictment for lack of proper venue in the Southern District of New York; (2) Production of exculpatory material; (3) Notice of other act evidence the Government intends to introduce at trial under Fed. R. Evid. 404(b); (4) A bill of particulars; (5) Disclosure of *ex parte* communications between Judge Leonard B. Sand and the plaintiffs in the civil contract action underlying the pending criminal contempt charges, *Alpha Capital, et al. v. Group Management, et al.*, No. 02 Civ. 2219 (LBS) (the "Civil Action"); (6) Disclosure of the name and contact information of the Government official who certified certain affidavits in the Civil Action; (7) Disclosure of the criminal history and plea agreement of "Edward M. Grushko"; (8) Disclosure of the indictments of "Thomas Badian" and "Andres Badian"; and (9) Disclosure of the identity of the Assistant United States Attorney who presented the indictment to the Grand Jury. For the reasons stated below, the motion will be granted in part and denied in part.

**Venue is Proper**

When a defendant is charged with criminal contempt for violating a court order, "[t]he district in which the court order was issued is . . . said to have sufficient contact with the criminal contempt to be the site of prosecution." *United States v. Reed*, 773 F.2d 477, 481-82 (2d Cir. 1985). All charges

lybcases                                                                 1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In the indictment allege that Ware violated court orders entered in this district by Judge Sand in the Civil Action. Accordingly, venue is proper.

### The Government Shall Produce All Brady Material Prior to Trial

Ware has requested that the Government provide him with all exculpatory and impeachment material before the commencement of the trial, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1983). In its brief (and in prior communications to the Defendant), the Government has repeatedly consented to this request. There being no opposition, this aspect of the motion shall be granted.

### The Government Shall Provide Notice of Other Act Evidence

Ware has requested that the Government provide him with all "other act" evidence by a date certain before the trial. In its brief, the Government has agreed to provide notice of all Fed. R. Evid. 404(b) evidence by September 19, 2007, which is the current deadline for the filing of *in limine* motions. There being no opposition, this aspect of the motion shall be granted. Should the deadline for the filing of *in limine* motions be extended, the deadline for notice of "other act" shall likewise be extended to coincide with the newly established *in limine* deadline.

### Defendant Is Not Entitled to a Bill of Particulars

Ware seeks a bill of particulars from the Government apparently requesting: (1) the specific acts upon which venue is based in the Southern District of New York; (2) how he violated the Civil Action court orders at the heart of the case; (3) the identity of the attorney who mailed Judge Sand's November 25, 2000 order to him and how he acknowledged receipt of said order; and (4) a list of all exhibits to be introduced at trial by the Government.

The purpose of a bill of particulars in a criminal case is to permit the defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

In the instant case, the indictment provides all the information necessary by specifically identifying each court order with which Ware failed to comply and what act or omission violated the orders. To wit, the indictment alleges that each order required Ware to honor the conversion notes issued to the plaintiffs in the Civil Action, which Ware and his corporation were contractually obligated to do. *See* Indictment at 4-6. For each of the three orders discussed in the indictment, it is alleged that the notes were not honored (or, in one case, the notes were honored after the court-imposed deadline). *See id.* at 5-8. Furthermore, the Government has advised the Court that it has already produced to Ware copies of all the relevant orders and other documents from the Civil Action (to which Ware was a party). "The Government should not be compelled to disclose additional details of its case if the defendant has received adequate notice of the charges against him and can prepare fully for trial through the exercise of reasonable diligence." *United States v. Martinez-Martinez*, 2001 U.S. Dist. LEXIS 17558, 2001 WL 1287040, at *6 (S.D.N.Y. Oct. 24, 2001). Such is the case here.

Furthermore, the Government is not required to identify any of its witness absent "a specific showing that the disclosure [is] both material to the preparation of [defendant's] defense and reasonable in light of the circumstances surrounding his case." *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975). Here, Defendant has not even attempted to make such a showing.

Finally, a criminal defendant is not entitled to a list of the Government's trial exhibits at this stage. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 568 (S.D.N.Y. 2000).

2

1ybcases

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Accordingly, Defendant's motion for a bill of particulars will be denied.

### The Government Shall Produce Any Exculpatory Ex Parte Communications Between Judge Sand and the Plaintiffs in the Civil Action in Its Possession

Ware has not presented any justification, argument, or legal authority to support his request for the production of all ex parte communications between Judge Sand and the plaintiffs in the Civil Action. Furthermore, the Government has stated that if it discovers any relevant exculpatory material relating to this issue, it will produce such material to the Defendant. Accordingly, Ware's request will be granted only to the extent of requiring the Government to produce all exculpatory material to the Defendant.

### The Government is not Obligated to Disclose the Name and Contact Information of the Official who Certified Certain Affidavits in the Civil Action

Again, Ware has not presented any justification, argument, or legal authority to support this request. The Government opposes this request because it amounts to identifying a witness in advance of the trial (and is not relevant). Because Ware has failed to make a showing that disclosure of the identity of this potential witness is both necessary and reasonable, the request will be denied. *See Cannone*, 528 F.2d at 301.

### The Government is Not Required to Disclose Information about Unrelated Criminal Defendants

Ware has sought disclosure of the criminal history and plea agreement of Edward M. Grushko and the Indictments of Thomas Badian and Andres Badian. He has not presented any justification, argument, or legal authority to support these requests, nor has he identified who the persons are or how they are related to this case. Furthermore, the Government has stated that it is not aware of any relationship between the trial and these persons. In the absence of any basis for this request, it will be denied.

### The Government is Not Required to Disclose the Identity of the Attorney Who Presented the Indictment to the Grand Jury

Yet again, Ware has not presented any justification, argument, or legal authority to support this request. Under Fed. R. Cr. P. 6(e)(3)(E)(ii), "[t]he court may authorize disclosure [of grand jury proceedings] . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Here, Defendant has not even attempted to make such a showing. Accordingly, this request will be denied.

### Conclusion

For the reasons stated above, Defendant's motion will be granted to the following extent: the Government shall produce all exculpatory and impeachment evidence prior to trial and all Rule 404(b) evidence no later than the deadline for filing *in limine* motions. Defendant's motion is denied in all other respects.

It is so ordered.

New York, NY

August 8, 2007

ROBERT W. SWEET

U.S.D.J.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers.

UNITED STATES v. WARE, CASE NO. 09-0851 (2D CIR.) (2010)
ON APPEAL FROM UNITED STATES v. WARE, 04cr1224 (Sweet, J.)
18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION
APPELLANT WARE'S OPENING BRIEF

1  Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2  S78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4  **ADMISSION OF BROKER-DEALER STATUS BY**
5  **ARI RABINOWITZ UNDER CROSS EXAMINATION.**
6

7  Mr. Ware: What is the name of your company?

8  Rabinowitz: LH Financial Services.

9  Mr. Ware: What business is that company?

10  Rabinowitz: We are in the private placement business.

11  **Tr. 206**

12  Mr. Ware: Approximately how many companies have you assisted Alpha Capital
13  with over, let's say, the last five years?

14  Rabinowitz: A good few hundred.

15  Mr. Ware: A good few hundred?

16  Rabinowitz: Yes,

17  Rabinowitz' testimony of being in the private placement business, and assisting
18  Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19  §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20  under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
21  regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) *__statutory underwriters__* of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts.

12. Plaintiffs purchased the Notes pursuant to the terms of the Subscription Agreement (the "Subscription Agreement") entered into between and among the parties on or about February 2, 2001. Plaintiffs collectively paid $1.1 million to IVG and each Plaintiff received a Note in proportion to its investment, as set forth in the paragraph 10.

13. Pursuant to Section 10.1(iv) of the Subscription Agreement, IVG was obligated to file on or before May 3, 2001, a form SB-2 Registration Statement with the United States Securities and Exchange Commission registering the stock underlying the Notes so that upon conversion the stock could be sold on the open market without restriction. IVG was obligated to

4

121

Case 1:02-cv-02219-CM    Document 100-1    Filed 07/15/1...

have such registration statement declared effective on or before June 17, 2001. Thus Section 10.1(iv) of the Subscription Agreement provides:

"The Company shall file with the Commission within 90 days of the Closing Date (the 'Filing Date'), and use its reasonable commercial efforts to cause to be declared effective a Form SB-2 registration statement (or such other form as it is eligible to use) within 135 days of the Closing Date in order to register the Registrable Securities for resale and distribution under the Act. The registration statement described in this paragraph must be declared effective by the Commission within 135 days of the Closing Date (as defined herein)('Effective Date')."

IVG failed to comply with its obligations and to date has not had its registration statement declared effective.

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.

# Supplemental
# Appendices

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, armed, forced entry into Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager.



A.      Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to ***U.S. v. Ware***, 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and ***In re Group Management Corp***.., 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence ***while armed and without any warrant***, or lawful process—***a potentially deadly encounter***, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest.



B.    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office *without any lawful warrant by persons impersonating U.S. Marshals*—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in *In re Group Management Corp.*, 03-93031 (BC NDGA) Chapter 11.

| 75. | 9/1/04 Age: 44 | Contempt of Court | Atlanta, Georgia | 10/15/04: Dismissed pursuant to order of Judge Leonard B. Sand |  |

to Mr. Ware, " ... I will have Judge Sand throw your ass in prison, nigger, and you will never get out ... who do you think that you are fucking with ... I want that stock and those opinions, else I will have the marshals arrest your ass ... you better give them to me ... I'm not playing around with you ... don't do it and see what happens to you ..." (emphasis in original) (quoting Kenneth A. Zitter, Esq. in March 2003; see also the transcript of the September 1, 2004 illegal arrest (kidnapping) proceedings of Mr. Ware in Atlanta, GA on the admitted request of Zitter and Rabinowitz, by the U.S. Marshals (NDGA) held before District Judge Thomas W. Thrash, Jr.; cf. Doc. 688 order in 2219 (Sand, J.) ruling (Thrash and the Marshals lacked authority and jurisdiction to have entered Mr. Ware's law office in Atlanta, GA on September 1, 2003 demanding the issuance of bogus Rule 144(k) legal opinions and more than 10 million free-trading shares of GPMT's stock)[...]

States in 2002-2007 attempting to extort GPMT and Mr. Ware out of more than $500 million dollars in

76.    According to Sr. U.S. Probation Officer Atonya M. Craft of the Northern District of Georgia, on September 1, 2004, the defendant was arrested in the Northern District of Georgia in response to an order issued by the Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02 CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil matter (which included the defendant) to deliver Silver Screen Studios, Inc. common stock to honor all of the conversion requests for Group Management Corp. or Silver Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand issued a warrant for the defendant's arrest for contempt of court, for failure to obey the December 22, 2003, order. This arrest order indicated that the defendant was to be arrested by the U.S. Marshals Service and detained until the defendant purged himself of contempt by delivering the above-referenced

Rosenfeld, Goldman & Ware, Inc.
Thomas Ware
101 Marietta St.
Suite 3210
Atlanta, GA 30303
(404) 332-1203 phone
(404) 332-1447 fax

Sept. 1 k.dony
of Ware

— Original Message —
From: Norris, Jeffrey B.
To: Thomas Ware
Cc: Kordstein, Stanley; Webster, Stephen; Green, Adam D.
Sent: Tuesday, August 17, 2004 3:54 PM
Subject: RE: Deposition of Irene Webster

Mr. Ware:

If you are inclined to further undermine your credibility with the Court and incur further sanctions, then, to quote the Duke of Wellington, "publish and be d—d." I remind you that the Court mailed in the July 29 Order that you are perfectly close to having a default sanction entered against you. I assure you that if you notice Ms. Webster's deposition—an act that can only be done in bad faith—my Motion for Protective Order will be accompanied by a motion renewing the Commission's request that the Court enter a default judgment against you, Rosenfeld, Goldman and Ware. I will not give you close on which the Commission will rarely Mr. Webster available Institute, as I stated, I can enforce no issue upon whom to run of the relevant testimony. Your silence confirms my conclusion. I ask only that, should you, close like a couple of attempt to schedule Mr. Webster's deposition, you schedule it no earlier than September 1, 2004.

Jeffrey B. Norris

8/25/2012                                        9/15/201[

# Sept. 1, 2004 kidnapping
WARE, ULYSSES THOMAS                                    P47014 - C. Tyler
15

common stock. On July 1, 2004, the defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia. He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to purge himself of contempt and offered no acceptable reason to prevent enforcement of the contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr., ordered the defendant to remain in the custody of the U.S. Marshals Service until he purged himself of contempt or was ordered released by either Judge Thrash or Judge Sand. The defendant's request for bond was granted, and he was released on September 3, 2004, after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

e 1:12-cv-04397-TWT  Document 1-5  Filed 12/19/12  Page 33 of 49

77.    On September 28, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order in part to the extent that it authorized the arrest of the defendant outside of the state of New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street, New York, New York. The order remained in effect insofar as it could be served on the defendant in the state of New York or within 100 miles of the U.S. Courthouse located at 500 Pearl Street, New York, New York.

78.    On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 set on September 2, 2004. On October 15, 2004, the defendant's motion was granted by the Honorable Thomas W. Thrash, Jr.; $150,000 was refunded to the defendant, and the corporate surety bond was discharged.

C.    Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators.



**Appendix 2**—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities.



**Appendix 2-1 (con't)**—Money laundering vehicle formed from the Hobbs Act money laundering and criminal usury unlawful debt collection activities profits and proceeds fraudulently obtained by Unindicted Coconspirators Arie Rabinowitz, LH Financial Services, Alpha Capital, AG, et al.



**Exhibit** 8—(RICO Overt Act #3)—"a pattern of racketeering activities" Atlanta, GA bankruptcy court's employees willful resistance to the Court Orders.



P. 86
Via Certified Mail #: 7003 1680 0005 1206 0748                    P. 86

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

July 30, 2012

The Honorable Joyce Bihary
Chief Judge
U.S. Bankruptcy Court
For the Northern District of Georgia
U.S. Courthouse
75 Spring St., SW
Atlanta, GA 30303

RE:  In re Group Management Corp, 03-93031-MBM (NDGA), ("93031")
     July 12, 2012 Emergency Motion, July 25, 2012 Letter, and 07/30/2012 Emergency Motion.

Dear Judge Bihary:

This letter is in regard to the above pleadings, and the July 25, 2012 letter of Clerk M. Regina Thomas, included in the 07/30/2012 Emergency Motion as Ex. #1.

1.      First, I am requesting that the enclosed pleading be processed according to the emergency procedures of the Court, where time is of the essence, and the petitioner Mr. Ware is currently suffering irreparable harm, and will continue to suffer irreparable harm unless the requested relief is granted on an emergency basis as set forth in the 07/30/2012 Emergency Motion.

2.      Second, Judge Bihary (as an officer of the court) you have a duty of candor and a fiduciary duty to the orderly administration of justice in the Court to process all pleadings submitted to the Court in a timely and orderly manner, which M. Regina Thomas did not do with respect to the 07/12/2012 Emergency Motion, thus necessitating the 07/30/2012 Emergency Motion.

3.      Judge Bihary, as Chief Judge of the Court, pursuant to Bankr. Rule 5005(a), the enclosed pleadings are being submitted to your attention, due to the fact that M. Regina Thomas (Clerk), is names as a respondent, and thus has a conflict of interest regarding this matter.

4.      The petitioner Mr. Ware has requested a relief date of 08/07/2012, and for the enclosed pleadings to be processed on an emergency basis.

If there are any question please contact the undersigned on or before close of business on 08/02/2012, else I will assume that the pleadings will be timely processed on an emergency basis.

Sincerely,

Ulysses Thomas Ware, pro se
enclosures: 07/30/2012 Emergency Motion, Sup. Appx. 1.0, Exhibit #1.

Exhibit 8-1--(RICO Overt Act #4)



MEMORANDUM OF POINTS AND AUTHORITIES OF LAW IN SUPPORT OF EMERGENCY MOTION    P. 85

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE GROUP MANAGEMENT CORP., DEBTOR,    03-93031-MHM    (NO GA)

PETITIONER: ULYSSES THOMAS WARE (PARTY IN INTEREST).

RESPONDENTS - UNINDICTED COCONSPIRATORS:

Alpha Capital, AG, Stonestreet, LP, Markham Holdings, Ltd., Amro International, SA, Kenneth A. Zitter, Ari Rabinowitz, Nathan Ladenburg, Edward D. Grushko, Barbara R. Mittman, Dennis S. Meir, John W. Mills, III, Kilpatrick, Townsend, & Stockton, LLP, Edward T. M. Garland, Manny Arora, David Levitt, Don Samuel, Garland, Samuel & Loeb, P.C., William P. Smith, III, William A. Myers, Johnathn Hewitt, Jenny Mittleman, Carnen Rojas-Rafter, Christina A. Pettig, Connie P. Henry, Dan O'Sullivan, George R. Carley, Carol Hunstein, Margaret H. Murphy, Thomas W. Thrash, Jr., Linda T. Walker, Orinda D. Evans, Julie E. Carnes, Marvin H. Shoob, Garrilyn G. Brill, James N. Hatten, Alexander H. Southwell, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Preet Bharara, Michael J. Garcia, David Kelly, Katherine Polk-Failla, Kent J. Dawson, Robert J. Johnston, James Morewitz, Jeffrey B. Norris, Spencer C. Barasch, Robert C. Hannam, John C. Martin, Rebecca R. Fairchild, Stephen Korotash, Stephen Webster, Michael Fost, Robert W. Sweet, Leonard B. Sand, William H. Pauley, III, Barbara S. Jones, Ruby Krajick, Analisa L. Kearns, Robert G. Bach, Peter W. Hall, Robert A. Katzmann, D.D. Parker, Nasog Nagal, Rosemary S. Pooler, Dennis G. Jacobs, Gail McKenzie, U.S. Marshals (ND GA), James Ulas, U.S. Marshal (#2) LNU, U.S. Marshal (#3) LNU, U.S. Marshal (#4) LNU, Thomas J. McCarthy, Andrews & Kruth, LLP, Thomas V. Sjblom, Prokauser & Rose, LLP, Grushko & Mittman, P.C. (NTC), Steven D. Feldman, David Makol, Eric H. Holder, Jr., the United States of America, and others known and unknown,

COLLECTIVELY, THE RACKETEERS, in their individual and personal capacity.

EMERGENCY MOTION FOR FRAUD ON THE COURT PROCEEDINGS.

The petitioner moves the Court pursuant to Bankr. Rule 9024 and Fed. Rule of Civ. Proc. Rule 60(b)(4, 6) and Rule 60(d)(3) to set this matter down under the emergency procedures of the Court and direct and order the respondents to file a response in opposition, if any, on or before close of business on July 25, 2012 in writing by filing any and all pleadings with the Office of the Bankruptcy Clerk at 75 Spring St., Atlanta, GA 30303, or via the PACER system, and filing a paper copy of the same on the petitioner at the Atlanta Prison Camp, P.O. Box 150160, Atlanta, GA 30315 (Reg. No. 56218-019).

Submitted by Counsel

*Ulysses Thomas Ware*

Ulysses Thomas Ware, (Reg. No. 56218-019), pro se
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315 2012
07/12/2012 10:04:22 AM printed

**PRIORITY**

7/12/2012

---

P. 86    P. 86

Via Certified Mail #: 7003 1680 0005 1206 0748

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

July 30, 2012

The Honorable Joyce Bihary
Chief Judge
U.S. Bankruptcy Court
For the Northern District of Georgia
U.S. Courthouse

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8-2--(RICO Overt Act #5)



*United States Bankruptcy Court*
*Northern District of Georgia*
*1290 United States Courthouse*
*75 Spring Street, S.W.*
*Atlanta, Georgia 30303-3367*

P. 80

Chambers of
Margaret H. Murphy
Judge

(404) 215-1008

January 11, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P. O. Box 150160
Atlanta, GA 30315

Dear Mr. Ware:

The copies of pleadings you mailed to Judge Murphy on or about December 21, 2011, were referred to me. The pleadings do not appear to relate to any active bankruptcy case before Judge Murphy and your purpose in sending copies of the pleadings is unclear.

The pleadings will not be shown to Judge Murphy and will not be made a part of any bankruptcy case file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application that complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

Exhibit 8-3--(RICO Overt Act #6)



United States Bankruptcy Court
Northern District of Georgia
1290 United States Courthouse
75 Spring Street, S.W.
Atlanta, Georgia 30303-3367

P. 79

Chambers of
Margaret H. Murphy
Judge

December 28, 2011

(404) 215-1008

Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P O Box 150160
Atlanta, GA 30315

Re:    Alpha Capital, AG Atlanta, GA Litigation

Dear Mr. Ware:

Your letter dated December 10, 2011 was referred to me. The local rules, BLR 9003-2 provides:

Communications to a Bankruptcy Judge regarding a request for an order or other relief (including a request for an extension of time) or matters that are or may be in dispute, or communications of facts or legal issues regarding a particular case, proceeding, or matter pending before that Bankruptcy Judge, shall be by written motion, pleading, or other paper, and not by letter. Ordinarily, a letter seeking such action will not be treated as a motion, will not be considered by the Bankruptcy Court, and will not be filed with the Bankruptcy Clerk. Parties and their counsel shall not provide the Bankruptcy Court with copies of correspondence among themselves relating to matters that are or may be in dispute.

Your letter will not be shown to Judge Murphy and will not be made a part of Debtor's file. If you wish to communicate with the court concerning the above-referenced case, you should do so by means of an appropriate motion or application which complies with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia.

Very truly yours,

Pat Sinback
Law clerk to
Judge Margaret H. Murphy

cc:    State Bar of Georgia, Office of General Counsel
Supreme Court of Georgia, State Disciplinary Board
Dennis S. Meir

8/27/2012                    8/4/2012                    8/15/

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8-4--(RICO Overt Act #7)



P. 81                                                          P. 81

## United States Bankruptcy Court
### Northern District of Georgia
1340 U.S. COURTHOUSE
75 SPRING STREET S.W.
ATLANTA, GEORGIA 30303

M. REGINA THOMAS
CLERK OF COURT

July 25, 2012

Mr. Ulysses Thomas Ware
Reg. No. 56218-019
Atlanta Prison Camp
P.O. Box 150160
Atlanta, GA 30315

RE:    Documents received by United States Bankruptcy Court

Dear Mr. Ware:

This Court has received papers mailed by you, or on your behalf, that do not relate to any active bankruptcy case filed in the Bankruptcy Court for the Northern District of Georgia. The case to which you make reference in your letter, Group Management Corp. 03-93031, was dismissed on May 21, 2003 and closed on June 3, 2003.

No action can be taken with respect to the papers sent to the Court as they do not commence a case over which this Court would have jurisdiction.

Sincerely,

M. Regina Thomas
Clerk of Court

MRT/bm

Bankruptcy fraud

8/27/2012                                                    8/15/2012

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8-5--(RICO Overt Act #8)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
1471 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Chambers of
**WENDY L. HAGENAU**
Chief Judge

June 9, 2021

Mr. Ulysses T. Ware
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226

Dear Mr. Ware:

I am in receipt of your letter of April 22, 2021. The following responds to your requests.

1.  You asked for all docketed and undocketed orders and pleadings in the referenced case. In my letter to you of April 5, 2021, I reminded you that the Court had returned all non-docketed items to you previously. A list of those non-docketed items was included. My April 5,2021 letter also included a certified copy of the docket. By letter dated February 2, 2017, the Clerk of Court provided you a copy of each pleading, order and notice entered in the case no. 03-93031, Group Management Corp. Also included with that correspondence was a copy of the claims register and the three claims filed in the above case, one claim filed by Boise Cascade Office Products and two claims filed by Business Wire.

2.  In her letter of February 2, 2017, the Clerk responded to your request for all transcripts in the Group Management Corp. case. The Clerk informed you that, "This case file was sent to archives as part of the normal process in 2010. To have a file retrieved from archives, the Judicial Conference of the United States has established a retrieval fee of $64. I cannot confirm the existence of any transcripts in this file without the file retrieval. If you would like this file ordered, please remit the required fee by money order or cashier's check made payable to Clerk, United States Bankruptcy Court." After your letter of April 22, 2021, we requested and obtained the transcripts which is why the response to your letter was delayed. Copies of the two transcripts received are enclosed and have been added to the docket of case no. 03-93031 at entries 41 and 42.

3.  You asked for the entry of an administrative order directing the Clerk's office to enter and certify all orders in the case and to note and make available all transcripts. Such an order is not necessary or appropriate. All requested transcripts have been provided to you. Enclosed is a certified copy of the docket which reflects your correspondence beginning March 4, 2021,

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit

responses from the Court, and other documents submitted through June 2, 2021 (docket entries 34-40). While copies have previously been provided to you, certified copies in accordance with BR 5006 of the orders entered at docket entries 3, 10, 18, 19, 26, 28, 32 and 33 are enclosed.

A copy of your letter of April 21, 2021, and this response are "docketed." The case remains closed.

Very truly yours,

*Wendy L. Hagenau*
Wendy L. Hagenau
Chief United States Bankruptcy Judge

Enclosures

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

**A-1a—murder for hire order** (02cv2219)(SDNY), Sand, J. authorized the U.S. Marshals (SDNY) to use deadly force to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4, cf., McMahon's Dkt. 120 (02cv2219 (SDNY), see Ex. 1, supra.



23-865/23-869
Hobbs Act Murder for Hire/ kidnapping order (Sand, J.)

United States District Court
Southern District of New York
----------------------------x

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership,

Unregistered broker-dealers
                        Plaintiffs,

    -against-

Group Management Corp., formerly known
as IVG Corp., formerly known as Internet
Venture Group, Inc., Elorian Landers and
Becky Landers,

                        Defendants.

Order

02 Civ. 2219(LBS)

U.S. DISTRICT COURT
MAY 28 2003
S.D. OF N.Y.

**Appx 65-1**

Actual innocent Brady exculpatory evidence.

Hobbs Act crime of violent to collect GX 1-4, the RICO criminal usury unlawful debts.

Whereas by order dated March 17, 2003 this Court ordered the incarceration of Thomas Ware and Barry Corker for their contempt of this Court's order and judgment of November 25, 2002 until their contempt was purged by their honoring all of the conversion requests duly submitted by Plaintiffs, and

The Hobbs Act extortion conspiracy overt act to issue bogus, fraudulent, and illegal Rule 144(k) legal opinions to the unregistered broker-dealers and Section 2(a)(11) statutory underwriters in violation of SEC Rel. 33-7190 n. 17 (1995), and U.S. v. Wolfson, 405 F.2d 779 (2d Cir. 1968)

Whereas the U.S. Marshals Service has requested that such order contain additional language to authorize the U.S. Marshals to take such action as may be required to carry out hte order's terms and provisions;

Now, therefore, it is

Sand instructed the U.S. Marshals they were authorized to use deadly force if necessary, up to and including murder, if necessary to collect the RICO criminal usury unlawful debts, GX 1-4-a Hobbs Act extortion, robbery, and kidnapping conspiracy orchestrated by Leonard B. Sand, David N. Kelly, Thomas W. Thrash, Jr, the SEC, the USAO (SDNY), Ari Rabinowitz, Peter W. Hall, Robert A. Katzmann, Annalya L. Kearse, Robert S. Sack, Michael J. Garcia, Alexander H. Southwell, KTS, Kenneth A. Zitter, Esq. Alpha Capital, AG, William H. Pauley, III, Dennis S. Meir, John W. Mills, III, the Atl, GA bankruptcy court's employees, and others known and unknown, collectively, (the " Unindicted Coconspirators").

MICROFILM -909/AM MAY 29 2003

Page 11 of 29
Thursday, February 29, 2024
Appx 66-3 and Memorandum (In re Sealed Cases, 185 F.3d 887 (D. C. Cir. 1999) (Garland, J.) analysis.

## A-1b (con't)—02cv2219 (SDNY), Sand, J. (deceased).

Sand, J. authorized individuals impersonating U.S. Marshals on Sept. 1, 2004, in Atlanta, GA, if necessary, to murder Appellant, Ulysses T. Ware to collect RICO unlawful debts, GX 1, GX 2, GX 3, and GX4.

Ordered that the Court shall issue a warrant for the arrest of Thomas Ware and Barry

Corker and they shall stand committed in the custody of the U.S. Marshal in the district in which

they are arrested until the contempt is purged by honoring all of the conversion requests duly

submitted by Plaintiffs; and it is further    Hobbs Act kidnapping to collect an unlawful debt.

Ordered that the U.S. Marshal for the Southern District of New York take all necessary

measures to affect service and enforcement of the order in any district of the United States where

Thomas Ware and Barry Corker maybe found; and it is further

Sand on behalf of the Hobbs Act extortion criminal enterprise in essence authorized the U.S. Marshals if necesary to murder Ulysses T. Ware, Esq. and Barry Corker to collect the RICO 18 USC 1961(6)(B) criminal usury unlawful debts, GX 1-4.

Ordered that the U.S. Marshals Service, called upon to execute the terms of this order,

will be permitted to use the degree of force necessary to arrest and detain Thomas Ware and

Barry Corker, and will be permitted to enter forcibly in to the premises of Thomas Ware's and

Barry Corker's principal residences, if they are reasonably believed to be inside and if the

requested access is withheld.    **The deadly force order.**

Dated: New York, New York
May 2 ?2003
3:40 m

_U.S.D.J._

On Sept. 1, 2004, in Atl, GA pursuant to the Hobbs Act kidnapping, extortion, and robbery order, Appx. 34-1, see Appx. 32-1, the U.S. Marshals (NDGA) broke into the law office of Ulysses T. Ware, Esq. with guns drawn, and demanded that Mr. Ware " ... give us those stocks and those opinions right now ... if you don't Judge Thrash is waiting for us in the courthouse and you are going to jail today do you understand that ...."

Mr. Ware requested to see an arrest warrant, a search warrant or a court order and was told, " ... we don't have that you are coming with us if you don't give us the stocks and opinions right now is that clear?"

Mr. Ware was handcuffed, pushed around, and taken outside the 101 Marietta St. building and thrown in the back of a waiting car and taken to the Federal courthouse at 75 Spring St, Atlanta, GA and was then taken to a courtroom where District Judge Thomas W. Thrash, Jr. was waiting, who did not have an arrest warrrant, a search warrant or any court order that authorized Mr. Ware's arrest. Nevertheless, Judge Thrash imposed a $250,000 ransom (illegal bail) and detained (kidnapped) Mr. Ware in jail until the ransom was posted by Mr. Ware.

Page 12 of 29
Thursday, February 29, 2024
Appx 66-3 and Memorandum (In re Sealed Cases, 185 F.3d 887 (D. C. Cir. 1999) (Garland, J.) analysis.

## Legal Analysis—Bankruptcy Courts have authority to enter civil contempt orders per the Second Circuit's precedents.

Second Circuit: Bankruptcy Courts Have Inherent Authority to Impose Civil Contempt Sanctions

By **Jones Day**

Feb 6, 2024

Because bankruptcy courts were created by Congress rather than under Article III of the U.S. Constitution, there is a disagreement over whether bankruptcy courts, like other federal courts, have "inherent authority" to impose sanctions for civil contempt on parties that refuse to comply with their orders. The U.S. Court of Appeals for the Second Circuit revisited this debate in *In re Markus*, 78 F.4th 554 (2nd Cir. 2023). The court of appeals affirmed a bankruptcy court decision imposing sanctions on a chapter 15 debtor's lawyer who repeatedly flouted the court's discovery orders and awarding attorneys' fees to the debtor's foreign representative incurred in bringing a motion for sanctions.

In so ruling, the Second Circuit reaffirmed its earlier decisions concluding that a bankruptcy court has the inherent authority to impose civil sanctions for contempt. However, the Second Circuit expanded the scope of that inherent authority to include punitive civil contempt sanctions in an amount greater than it had approved in its previous rulings. According to the Second Circuit, "we hold that a bankruptcy court's inherent sanctioning authority includes the power to impose civil contempt sanctions in non-nominal amounts to compensate an injured party and coerce future compliance with the court's orders."

**Contempt Power of Federal Courts**

U.S. federal courts have "contempt power" to ensure that litigants comply with laws and respect the courts. When parties refuse to comply with court orders or disrespect the judicial process, courts have long used punishment (and the threat of punishment) in the form of contempt to compel compliance.

The source of a federal court's power to punish for contempt is uncertain. Some courts and commentators have found the power to be implied from the "judicial Power of the United States," which Section 1 of Article III of the U.S. Constitution vests in the U.S. Supreme Court and lower courts created by Congress. *See Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1874) ("The power to punish for contempts is inherent in all courts...."); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911) ("[T]he power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the

duties imposed on them by law.... If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."); Robert J. Pushaw, Jr., *The Inherent Powers of Federal Courts and the Structural Constitution*, 86 Iowa L. Rev. 735, 741–42 (2001) (stating that the power to sanction is an "implied indispensable power" of courts under Article III).

Others have expressed the view that contempt power was not intended to be encompassed in the "judicial Power" vested in federal courts by the Constitution. *See, e.g., Green v. United States*, 356 U.S. 165, 193 (1958) (Black, J., dissenting) (characterizing summary contempt as "an anomaly in the law"); Ronald Goldfarb, *The History of the Contempt Power*, 1961 Wash. U. L.Q. 1, 2 (arguing that contempt power appears to be "violative of basic philosophical approaches to the relations between government bodies and people").

Contempt can be either criminal or civil. Criminal contempt is designed to vindicate the authority of the court by punishing a litigant who has defied the court, whereas civil contempt is designed to preserve and enforce compliance with court orders and to compensate injured parties for losses sustained from noncompliance. *See Downey v. Clauder*, 30 F.3d 681, 685 (6th Cir. 1994).

Addressing "contempts," 18 U.S.C. § 401 of the U.S. Code (Title Eighteen governs "Crimes and Criminal Procedure") provides as follows:

A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. In addition, Rule 42 of the Federal Rules of Criminal Procedure provides that "[a]ny person who commits criminal contempt may be punished for that contempt after prosecution on notice." Fed. R. Crim. P. 42.

With respect to civil contempt, Rule 70 of the Federal Rules of Civil Procedure states that if a party refuses "to perform any … specific act [directed by the court] … within the time specified," the court "may also hold the disobedient party in contempt." Fed. R. Civ. P. 70.

In addition, if a party fails to comply with a subpoena issued in connection with discovery, Rule 45 of the Federal Rules of Civil Procedure provides that "[t]he court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it. Fed. R. Civ. P. 45(g).

Aside from constitutional, statutory, or regulatory authority, federal courts also have "inherent authority" to enforce compliance with their directives by means of civil contempt. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994); *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018); *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1516 (11th Cir. 1987).

Until the U.S. Supreme Court's ruling in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) (discussed below), it was generally recognized that a federal court's inherent power to hold a litigant in civil contempt could be exercised only if: (i) the order with which the litigant allegedly failed to comply is clear and unambiguous; (ii) proof of noncompliance is clear and convincing; and (iii) the litigant fails to attempt compliance diligently and in a reasonable way. *See King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995); *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp.2d 349, 363 (E.D.N.Y. 1998). "Clear and unambiguous" means that the court's order or directive must enable the litigant "to ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto*, 13 F. Supp. 2d at 363. "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citation omitted).

### Do Bankruptcy Courts Have Contempt Power?

Even though bankruptcy courts were created by Congress under Article I of the Constitution (and are now "units" of federal district courts), rather than as part of the judiciary branch under Article III, most courts have determined that bankruptcy courts, like other federal courts, have inherent civil contempt power. *See In re Sanchez*, 941 F.3d 625, 627–28 (2d Cir. 2019) ("As our sister circuits have explained, inherent sanctioning powers are not contingent on Article III, but rather are, as their name suggests, inherent in the nature of federal courts as institutions charged with judicial functions. We therefore hold that bankruptcy courts, like Article III courts, possess

inherent sanctioning powers."); *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 966 n.18 (11th Cir. 2012); *see generally* Collier on Bankruptcy ("Collier") ¶ 105.02[1][a] (16th ed. 2023) (stating that "[t]he majority of cases conclude that all courts, whether created pursuant to Article I or Article III of the Constitution, have inherent civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest a court with civil contempt power.").

Many courts have reasoned that bankruptcy courts have civil contempt power flowing not only from "the inherent power of a court to enforce compliance with its lawful orders," but also from section 105(a) of the Bankruptcy Code, which provides that:

[A bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code].... *No provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent any abuse of process.*

11 U.S.C. § 105(a) (emphasis added). *See In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (citations omitted); *accord In re Roman Cath. Church of Archdiocese of New Orleans*, 2023 WL 4105655, *16 (E.D. La. June 21, 2023); *In re City of Detroit*, 653 B.R. 874, 892 (Bankr. E.D. Mich. 2023); *In re Kwok*, 653 B.R. 480, 489 (Bankr. D. Conn. 2023); *In re Brown*, 2023 WL 4496925, *4 (Bankr. N.D. Ga. July 12, 2023).

The second sentence of section 105(a) (italicized above) was added in 1986 as part of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act (Pub. L. No. 99-554). Some courts have determined that the addition indicates that Congress meant section 105 to serve as the statutory basis for a bankruptcy court's civil contempt power. *See, e.g., Stephen W. Grosse, P.C.*, 84 B.R. 377, 386 (Bankr. E.D. Pa. 1988); *In re Miller*, 81 B.R. 669, 676-78 (Bankr. M.D. Fla. 1988); *In re Haddad*, 68 B.R. 944, 948 (Bankr. D. Mass. 1987).

A bankruptcy court's inherent contempt powers are also indicated by Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which provides that "Rule 9014 [governing "contested matters" in bankruptcy] governs a motion for an order of contempt made by the United States trustee or a party in interest." In addition, Rule 70 of the Federal Rules of Civil Procedure, which, as noted previously, authorizes a federal court to "hold [a] disobedient party in contempt," applies in bankruptcy "adversary proceedings" pursuant to Bankruptcy Rule 7070.

In *Taggart*, the U.S. Supreme Court held that, based on traditional standards in equity practice, a creditor may be held in civil contempt for violation of the bankruptcy discharge injunction, but only "if there is no fair ground of doubt as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799. According to the Court in *Taggart*, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* Stated differently, there is no fair ground of doubt when the creditor violates a discharge injunction "based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.* at 1802. A "creditor's good faith belief" that the discharge injunction does not apply to an act in violation of the discharge injunction does not by itself preclude a civil contempt sanction. *Id.* However, a creditor may not be held in civil contempt merely because "the creditor was aware of the discharge order and intended the actions that violated the order." *Id.* at 1803.

According to the bankruptcy court in *In re City of Detroit, Michigan*, 614 B.R. 255 (Bankr. E.D. Mich. 2020), after *Taggart*, the elements that must be proven for a court to find a party in civil contempt are that: (i) the party violated a definite and specific court order obligating it to perform or to refrain from performing a particular act; (ii) the party acted with knowledge of the court order; and (iii) there is no fair ground of doubt as to whether the order precluded the party's conduct (or stated differently, there was no objectively reasonable basis to conclude that the party's conduct might be lawful). *Id.* at 265–66.

Courts disagree as to whether a bankruptcy court's contempt powers extend to criminal contempt. *See* Collier at ¶ 9020.01[2] (citing cases and noting that "[t]here may be a split developing among the circuits as to whether a bankruptcy court can punish criminal contempt."); *id.* at ¶ 105.02[1][a] (stating that "[s]ome courts have held that this inherent power extends to all contempts, be they civil or criminal, ... while others hold that it applies only to civil contempt and some forms of criminal contempt (such as contempt committed in the presence of the court.").

The Bankruptcy Code, the Bankruptcy Rules, and the Federal Rules of Civil Procedure also give bankruptcy courts the power to sanction disobedient litigants (and their lawyers). For example, section 363(k) of the Bankruptcy Code provides that, with certain exceptions, an individual injured by any willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in an appropriate case, may recover punitive damages." In addition, if the court dismisses an involuntary bankruptcy petition, it may grant judgment against the petitioning creditors for costs and attorneys' fees, or even punitive damages if a creditor files an involuntary case in bad faith. *See* 11 U.S.C. § 303(i).

Bankruptcy Rule 3002.1(i) authorizes a bankruptcy court to award reasonable expenses and attorneys' fees caused by the failure of home mortgagees to provide certain required notices to the debtor mortgagor.

Under Bankruptcy Rule 9011, an attorney or unrepresented litigant who signs any court pleading or other document certifies that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document does not contain, among other things, false, misleading, frivolous, or legally unsupported allegations. Fed. R. Bankr. P. 9011(a) and (b).

Bankruptcy Rule 9011(c) provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Pursuant to Bankruptcy Rule 9011(c)(2), "[a] sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Sanctions may include "directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2).

Sanctions are not available under Rule 9011 in connection with "disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of [Bankruptcy] Rules 7026 through 7037." Fed. R. Bankr. P. 9011(d). The discovery rules set forth in Bankruptcy Rules 7026 through 7037 authorize the bankruptcy court in an adversary proceeding (and, unless the court orders otherwise, contested matters in a bankruptcy case) to impose sanctions on a litigant or its attorney in connection with discovery abuses under circumstances similar to those described in Bankruptcy Rule 9011. *See* Fed. R. Civ. P. 7026(g)(3); Fed. R. Bankr. P. 9014(c).

In addition, Rule 37 of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy adversary proceedings and contested matters by Bankruptcy Rules 7037 and 9014(c), provides that the bankruptcy court may impose sanctions for a litigant's failure to comply with discovery requests or court discovery orders, including an award of fees and expenses or orders compromising the noncompliant litigant's ability to effectively prosecute the litigation (e.g., dismissal of the action or the entry of a default judgment in the action), or "treating as contempt of court the failure to obey any [discovery] order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2). Rule 45(g) of the Federal Rules of Civil Procedure (authorizing a

federal court to hold a party refusing to comply with a subpoena in contempt) also applies in bankruptcy cases pursuant to Bankruptcy Rule 9016.

### *Markus*

Larisa Ivanova Markus (the "debtor") is a Russian citizen who founded Vneshprombank, Ltd. ("VB"), one of Russia's largest banks. In March 2016, a Russian court commenced a bankruptcy proceeding against VB. Shortly afterward, the Russian court granted a petition filed by one of the debtor's creditors to commence a bankruptcy proceeding against her personally. The court appointed Yuri Vladimirovich Rozhkov ("Rozhkov") to preside over the liquidation of the debtor's assets and to pursue litigation against any entities that contributed to the debtor's bankruptcy. In 2017, the debtor was imprisoned in Russia after being convicted for embezzling $2 billion from VB.

In January 2019, Rozhkov, as the debtor's "foreign representative," filed a petition in the U.S. Bankruptcy Court for the Southern District of New York seeking recognition of the debtor's Russian bankruptcy proceeding under chapter 15 of the Bankruptcy Code. According to the petition, Rozhkov sought recognition of debtor's Russian bankruptcy for the purpose of obtaining discovery concerning the debtor's U.S. assets (including at least 10 companies and apartments valued at more than $10 million). The U.S. bankruptcy court granted the chapter 15 petition in April 2019.

Heated discovery disputes ensued almost immediately between Rozhkov and the debtor's attorney, Victor A. Worms. Among other things, despite repeated discovery requests, Worms made no effort to obtain responsive documents, arguing that he did not need to comply because the U.S. bankruptcy court improperly recognized the debtor's Russian bankruptcy (Worms filed a motion to vacate the recognition order in June 2019).

The U.S. bankruptcy court overruled Worms's objections, and directed him to comply immediately with Rozhkov's discovery requests. The court also informed Worms that failure to comply could result in the imposition of sanctions. After Worms failed to produce any discovery before the court-imposed deadline, he argued in a written response to a subpoena that the requested discovery "exceed[ed] the limited scope of discovery provided for under Chapter 15." Worms also stated that, because the debtor was in prison, she had no documents responsive to the discovery requests in her possession, and neither he nor his client had any duty to obtain and produce responsive documents in the possession of the debtor's agents because such documents were not in the United States.

In September, 2019, Rozhkov filed a motion for sanctions against Worms and the debtor under Rules 37 and 45(g) of the Federal Rules of Civil Procedure (as made applicable in bankruptcy cases by Bankruptcy Rules 7037 and 9016). In seeking a civil contempt sanction against Worms in the amount of $1,000 per day until compliance, Rozhkov submitted evidence of the identities and contact information of more than 30 known agents of Worms, 14 of whom were in the United States.

After a hearing during which the U.S. bankruptcy court again warned Worms that he would be sanctioned for noncompliance, the court found that Worms's violations of the court's discovery orders were knowing, willful, and intentional, and entered an order (the "sanctions order") imposing the requested monetary sanctions (amounting to $34,000 for the days since the discovery deadline and $1,000 per day until compliance) pursuant to Rule 37 of the Federal Rules of Civil Procedure and "the court's inherent power to hold a party in civil contempt." The U.S. bankruptcy court later awarded $60,000 in attorneys' fees (the "fee order") against Worms personally to compensate Rozhkov for costs incurred in connection with the sanctions motion. The court did not state in the fee order the source of its authority to do so, but referenced its previous opinion granting the sanctions motion.

On appeal of both the sanctions and fee orders, a U.S. district court affirmed the bankruptcy court's imposition of civil contempt sanctions under its "inherent authority," which Worms acknowledged existed, but remanded the case below for determination of the appropriate amount, and vacated the $34,000 in "lump-sum sanctions" as an improper criminal sanction. Because the bankruptcy court had not specified the source of its authority to award attorneys' fees to Rozhkov, the district court vacated the fee order and remanded the case below for clarification.

On remand, the U.S. bankruptcy court held that Worms's contempt was cured as of November 27, 2019, when a U.S.-based agent of the debtor contacted the debtor's other agents to obtain the requested discovery. Based on the 55 days that Worms was in contempt, the court imposed a total of $55,000 in sanctions. The bankruptcy court also held that the fee award was based on its inherent authority, but reduced the amount of the fees to $36,600. However, it also awarded Rozhkov $63,500 in fees incurred in defending the district court appeal.

Worms appealed again to the district court, which affirmed the sanctions award but vacated the award of attorneys' fees for defending the initial district court appeal, reasoning that a bankruptcy court generally does not have the power under its inherent sanctioning power to award fees incurred in connection with an appeal before another court.

Worms appealed the ruling upholding the sanctions order and the fee order to the Second Circuit.

**The Second Circuit's Ruling**

A three-judge panel of the Second Circuit affirmed the district court's ruling.

Writing for the panel, U.S. Circuit Judge Denny Chin noted that the issue of whether a bankruptcy court has inherent authority to impose "non-nominal civil contempt sanctions" was one of first impression before the Second Circuit.

He explained that, in *Sanchez*, the Second Circuit, guided by the U.S. Supreme Court's ruling in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), unequivocally held that bankruptcy courts, like other federal courts, have "inherent sanctioning power." *Markus*, 78 F.4th at 565 (citing *Sanchez*, 941 F.3d at 628). In addition, Judge Chin noted, in a previous decision, *In re Kalikow*, 602 F.2d 82 (2d Cir. 2010), the Second Circuit concluded that "[t]he statutory powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders ... [and] [t]hese powers are in addition to whatever inherent contempt powers the court may have." *Id.* at 96-97 (citation and internal quotation marks omitted).

He further noted that in *Law v. Siegel*, 571 U.S. 415, 420-21 (2014), the Supreme Court wrote that "[a] bankruptcy court ... may also possess 'inherent power ... to sanction abusive litigation practices.'"

However, Judge Chin emphasized, its previous rulings, including *In re Gravel*, 6 F4th 503 (2d. Cir. 2021), where the Second Circuit suggested that the imposition of non-nominal punitive sanctions pursuant to a bankruptcy court's inherent authority requires a finding of bad faith, dealt only with "relatively minor non-compensatory [i.e., punitive] sanctions," unlike the "substantial, compensatory, and coercive sanctions" imposed against Worms here." *Markus*, 78 F.4th at 564-65.

The Second Circuit panel concluded that a bankruptcy court's inherent authority "extends beyond" the power to impose minor punitive sanctions, but "is by no means unlimited" and requires "caution and notice before use." *Id.* at 565 (internal quotation marks and citation omitted). Judge Chin explained such limitations as follows:

(i) A bankruptcy court's invocation of its inherent authority to sanction abuse "is a last resort for when an express authority is not up to the task," and the court "may not contravene valid statutory directives and prohibitions."

(ii) A bankruptcy court must expressly invoke its inherent sanctioning powers for its order to withstand appellate scrutiny.

(iii) A bankruptcy court must comply with the mandates of due process when deploying its inherent powers.

(iv) Although a bankruptcy court need not always find bad faith before invoking its inherent sanction power, the imposition of such sanctions may require an express finding that a lawyer (acting as an advocate rather than an officer of the court) acted in bad faith supported by clear evidence that the lawyer's conduct was "entirely without color" and "motivated by improper purposes."

(v) A bankruptcy court may impose a civil contempt sanction that is compensatory or coercive, not punitive.

(vi) A contempt order is justified only where the movant establishes by clear and convincing evidence that the contemnor violated the court's order.

*Id.* (internal quotation marks and citations omitted). Therefore, Judge Chin emphasized, to demonstrate contempt justifying the imposition of sanctions, the party seeking a contempt order must establish that: (i) the order with which the contemnor failed to comply is clear and unambiguous; (ii) proof of noncompliance is clear and convincing; and (iii) the contemnor failed to diligently attempt to comply in a reasonable manner (the "*King* factors"). *Id.* at 566 (citing *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).

Applying these principles, the Second Circuit panel ruled that the bankruptcy court did not abuse its discretion in sanctioning Worms.

First, Judge Chin explained, because it is unclear whether the bankruptcy court could have relied on its express power in section 105(a) of the Bankruptcy Code to enforce compliance with a subpoena issued under Rule 45 of the Federal Rules of Civil Procedure, "the bankruptcy court was right to consider its inherent contempt authority." *Id.* at 567.

According to Judge Chin, "most importantly," the bankruptcy court, in ordering contempt sanctions, found that all of the *King* factors had been satisfied and that Worms had acted in bad faith. Specifically, he wrote, the record clearly established that the bankruptcy court's order was unambiguous, proof of Worms's failure to comply was clear and convincing, Worms failed even to attempt compliance, and the record "firmly support[ed] the bankruptcy court's finding that Worms 'knowingly and

intentionally' engaged in a 'continuous pattern of obstructing legitimate discovery.'" *Id.* In addition, Judge Chin noted, because Worms had "abundant" notice of the consequences of his refusal to comply with the bankruptcy court's discovery orders pursuant to the court's inherent authority, Worms was afforded due process.

Finally, the Second Circuit panel noted that, although the fee order did not expressly state that the bankruptcy court was exercising its inherent authority in awarding attorneys' fees to Rozhkov, the order specifically incorporated the sanction order, which did include an express reference, and Worms was clearly aware that that "the bankruptcy court rested the civil contempt sanctions against him on its inherent authority." *Id.* at 569.

**Outlook**

There are several key takeaways from the Second Circuit's ruling in *Markus*. First, the decision clarifies that, in addition to a bankruptcy court's statutory powers under section 105(a) of the Bankruptcy Code, and whatever powers the court may have to sanction for contempt under applicable procedural rules, a bankruptcy court, like other federal courts, has inherent authority to sanction a party for civil contempt under appropriate circumstances. Second, if a bankruptcy court is relying on its inherent authority to sanction a party for civil contempt, it must state so explicitly. Third, although the Second Circuit has previously concluded that a bankruptcy court has the inherent power to impose civil contempt sanctions in nominal amounts, the court of appeals has now ruled as a matter of first impression that such punitive sanctions may also be imposed in non-nominal amounts.

*Markus* is an unusual case because it involved civil contempt sanctions in connection with a discovery dispute in a chapter 15 case (discovery may generally be obtained in a chapter 15 case in the same way that it is available in cases under other chapters of the Bankruptcy Code). Moreover, the sanctions were levied against an attorney rather than his client because the client was unable to respond to the discovery obligations. Recognizing that the client's compliance was not possible, the bankruptcy court afforded the attorney multiple opportunities to respond by taking reasonable steps to comply, such as contacting entities that could provide the requested discovery. The court sanctioned the attorney only after he failed to make any effort to do so, resulting in the required finding of bad faith. The ruling is therefore also a cautionary tale.

## Exhibit 9--03-93031 Docket Report

### U.S. Bankruptcy Court
### Northern District of Georgia (Atlanta)
### Bankruptcy Petition #: 03-93031-mhm

*Assigned to:* Judge Margaret z-Murphy
Chapter 11
Voluntary
Asset
<u>Claims Register</u>

*Date filed:* 03/18/2003
*Date terminated:* 06/03/2003
*Date dismissed:* 05/21/2003
*Deadline for objecting to discharge:* 06/30/2003

| | |
|---|---|
| *Debtor*<br>**Group Management Corp.**<br>101 Marietta St.<br>Suite 1070<br>Atlanta, GA 30303<br>FULTON-GA<br>Tax ID / EIN: 59-2919648<br>*aka* **IVG Corp.** | represented by **Sims W. Gordon, Jr.**<br>The Gordon Law Firm, PC<br>Suite 1500<br>400 Galleria Parkway, SE<br>Atlanta, GA 30339<br>(770) 955-5000<br>Fax : (770) 955-5010<br><br>**Thomas Ware**<br>Rosenfeld, Goldman &<br>Ware, Inc.<br>101 Marietta St.<br>Ste 1070<br>Atlanta, GA 30303<br>404-522-1202 |
| *U.S. Trustee*<br>**Office of the United States Trustee**<br>362 Richard Russell Building<br>75 Ted Turner Drive, SW<br>Atlanta, GA 30303<br>404-331-4437 | represented by **James H. Morawetz**<br>Office of U.S. Trustee<br>362 Richard Russell Bldg.<br>75 Ted Turner Drive, SW<br>Atlanta, GA 30303<br>404-331-4437 x121<br>Fax : (404) 730-3534<br>*TERMINATED: 04/01/2003* |

| Filing Date | # | Docket Text |
|---|---|---|
| 02/05/2022 | 83 | Correspondence from Mr. Ware re Notice to Immediately Cease and Desist from all Civil and Criminal Contempts of the Brady Court Orders, et al. (scm) (Entered: 02/08/2022) |

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

| | | |
|---|---|---|
| 02/01/2022 | 82 | Notice of Criminal Contempt by DOJ Prosecutors in case nos 04cr1224 and 05cr1115 (SDNY). (scm) |
| 01/27/2022 | 81 | Letter from Mr. Ware to DOJ re litigation position. (scm) (Entered: 02/01/2022) |
| 01/26/2022 | 80 | Information delivered by Mr. Ware re investigation. (scm) (Entered: 02/01/2022) |
| 01/22/2022 | 79 | NOTICE TO IMMEDIATELY CEASE AND DESIST FROM ALL CIVIL AND CRIMINAL CONTEMPTS OF THE BRADY COURT ORDERS, THE RULE 41(a)(2) FINAL JUDGMENT, AND THE AUGUST 18, 2009, FINAL JUDGMENT ENTERED IN UNITED STATES v. WARE, 07-5670 (XAP) (2d Cir.), Gov.-I,1 jointly, (the Final Judgments). (scm) (Entered: 01/24/2022) |
| 01/20/2022 | 78 | Copy of Letter to Garland re Demand to Disclose Brady Exculpatory Evidence in cases 02cv2219 (SDNY), 03-0831 (D. NV), 03-93031 (BC NDGA), 04cr1224 (SDNY) and 05cr1115 (SDNY) (scm) (Entered: 01/21/2022) |
| 01/17/2022 | 77 | Official notice of material fact witness status (scm) (Entered: 01/18/2022) |
| 01/11/2022 | 76 | Letter sent by Mr. Ware to Merrick Garland re 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 01/12/2022) |
| 12/03/2021 | 75 | Pleadings submitted by Mr. Ware re conspiracy in 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 12/06/2021) |
| 11/28/2021 | 74 | Materials submitted by Mr. Ware related to Motions filed in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 73 | Part 4 of materials submitted by Mr. Ware in 04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 72 | Part 3 of materials submitted by Mr. Ware related to 04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 71 | Part 2 of materials submitted by Mr. Ware in cases 04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | 70 | Part 1 of materials submitted by Mr. Ware related to Motion to Compel in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

| | | |
|---|---|---|
| 11/22/2021 | 69 | Materials from Mr. Ware related to 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |
| 11/19/2021 | 68 | Materials submitted by Mr. Ware re Brady evidence in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/22/2021) |
| 11/16/2021 | 67 | Submission by Mr. Ware re rule 11 plea transcript in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/19/2021) |
| 11/12/2021 | 66 | Mr. Ware submissions re Supervisory Writ in 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 11/19/2021) |
| 11/10/2021 | 65 | Materials from Mr. Ware re: State Bar Grievance (ngs) |
| 11/10/2021 | 64 (7 pgs) | Brady Decisions re: Undisclosed Government Agreements in 04CR1224 and 05CR1115 (SDNY) (ngs) |
| 11/09/2021 | 61 | Materials Submitted in 04CR1224 and 05CR1115 (SDNY) (ngs) (Entered: 11/10/2021) |
| 11/09/2021 | 63 | Materials Filed in 04CR1224 and 05CR1115 (SDNY) USAO Manual/Motion to Compel. (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/09/2021 | 62 | Materials Submitted in 04CR1224 and 05CR1115 (SDNY) In re Sealed Case (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/08/2021 | 60 | Copy of Pleading filed in 04CR1224 and 05CR1115. (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/01/2021 | 59 | Communication from Mr. Ware to US Atty for SDNY re 04cr1224 and 05cr1115. (scm) |
| 09/28/2021 | 58 | Documents filed in 04CR1224 and 05CR1115 (SDNY). (scm) (Entered: 10/04/2021) |
| 09/27/2021 | 56 | Documents filed in 04CR1224 and 05CR1115(SDNY). (scm) (Entered: 10/04/2021) |
| 09/25/2021 | 55 | Documents filed on 05CR1115 and 04CR1224 (SDNY). (scm) (Entered: 10/04/2021) |
| 09/24/2021 | 57 | Documents submitted in 04CR1224 and 05CR1115 (SDNY). (scm) (Entered: 10/04/2021) |

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

| 09/22/2021 | 54 | Petition re Brady Court Orders and Court Judgments filed in 04cr1224 and 05cr1115 (SDNY). (scm) Additional attachment(s) added on 9/22/2021 (scm). |
| 09/13/2021 | 53 | Correspondence from Mr. Ware. (scm) (Entered: 09/14/2021) |
| 09/13/2021 | 52 | Petition re Brady Court Orders and Court Judgments filed in 02cv2219, 04cr1224 and 05cr1115 ( SDNY). (scm) (Entered: 09/14/2021) |
| 09/13/2021 | 51 | Letter to Judge Taylor-Swain in 04cr1224, 05cr1115 and 04cv2219. (scm) (Entered: 09/14/2021) |
| 09/07/2021 | 50 | Copy of letter to State Bar of Georgia by Ulysses T. Ware dated Sept 6, 2021. (scm) (Entered: 09/08/2021) |
| 08/31/2021 | 49 | Copy of Additional Criminal Contempt Claims filed in 08cr1115 and 04cr1224 (SDNY). (scm) (Entered: 09/08/2021) |
| 08/29/2021 | 48 | Copy of Emergency Application for leave to file Rule 42(b) criminal and civil contempt motion in case no 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 09/08/2021) |
| 06/23/2021 | 47 | Letter dated June 23, 2021 to Mr. Ulysses T. Ware. (scm) |
| 06/22/2021 | 46 | Letter dated April 22, 2021 from Ulysses T. Ware (Received on 4/22/21, docketed on 6/22/21). (scm) |
| 06/21/2021 | 45 | Letter dated June 21, 2021 from Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/15/2021 | 44 | Letter dated June 15, 2021 from Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/09/2021 | 43 | Letter dated June 9, 2021 to Mr. Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/09/2021 | 42 | Transcript of Proceedings heard on 4/30/2003 (originally docketed on 3/22/2005) (related document(s)30) (scm) Additional attachment(s) added on 6/9/2021 (scm). |
| 06/09/2021 | 41 | Transcript of Hearing on Emergency Motion of Debtor to Reject Executory Contract (originally docketed on 4/24/2003) (related document(s)25) (scm) Additional attachment(s) added on 6/9/2021 (scm). |
| 06/02/2021 | 40 | 11 USC 1109(b) Statutory Parties in Interest Ulysses T. Ware and Group Management's Notice of Rule 33 and Rule 42(b) Criminal and Civil Contempt Proceedings filed in United States v. Ware, |

Page **85** of **155**

Monday, January 27, 2025

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").