| | | |
|---|---|---|
| | · | 04cr1224 and 05cr1115 (SDNY) and other Rule 5003 and 5006 Activities Filed by Group Management Corp. . (aam) |
| 05/29/2021 | 39 | Exhibit #UTW-03: Ulysses T. Ware, May 29, 2021 UTW's Letter dated December 11, 2011 to Kilpatrick, Townsend & Stockton, LLP and Dennis S. Meir, Esq. Discussing KTS's fraud on the court, and conspiracy to commit bankruptcy fraud in In re Group Management Courtp., Case no. 03-93031-mhm (BC NDGA), Chapter 11 Filed by Group Management Corp. . (aam) (Entered: 06/02/2021) |
| 05/24/2021 | 38 | Ulysses T. Ware and group Management's Administrative Memorandum #4.01 and May 24, 2021 Memorandum #1.05 submitted to active United States Attorney (SDNY), Ms. Audrey Strauss, regarding In re Group Management corp., 03-93031-mhm (BC NDGA) Chapter 11, and United States v. Ware, 04cr1224 (SDNY) trial exhibits GX-250, GX-251, and GX-252; and FINRA's April 21, 2021, confirmation of KTS's client, unregistered broker-dealer status of Alpha Capital, AG. Filed by Group Management ·Corp. . (aam) Modified on 6/3/2021 (jlc). (Entered: 06/02/2021) |
| 04/21/2021 | 37 | Letter dated April 21, 2021 to Mr. Ulysses T. Ware. (scm) |
| 04/21/2021 | 36 | Letter dated April 16, 2021 from Mr. Ulysses T. Ware. (scm) |
| 04/05/2021 | 35 | Letter dated April 5, 2021, with attachments, to Mr. Thomas Ware. (scm) |
| 03/08/2021 | 34 | Letter dated March 4, 2021 from Ulysses T. Ware (scm) (Entered: 03/31/2021) |
| 03/01/2018 | 33 | Copy of Order from 11th Circuit Court Re: 16-13978. Entered on 3/1/2018. (yl) (Entered: 03/05/2018) |
| 03/17/2017 | 32 | Copy of Order from 11th Circuit Court Denying Motion to WRIT of Mandamus Entered on 3/17/2017. (yl) (Entered: 03/05/2018) |
| 06/23/2016 | 31 | Notification of Appeal to 11th Circuit 16-13978 (yl) (Entered: 03/05/2018) |
| 03/22/2005 | 30 | Transcript of Proceedings heard on 4/30/2003 at 10:00 am. (related document(s)13 Motion to Dismiss Case, , Motion to Convert/Reconvert Case to Ch. 7 (FEE), Motion to Convert/Reconvert Case to Ch. 7 (FEE) filed by Office of the US Trustee, 9 Motion to Reject Executory Contract or Lease filed by Group Management Corp., 15 Motion to Dismiss Case, filed by Alpha Capital Aktiengesellschaft, et al.) (mab, ) (Entered: 03/23/2005) |
| 06/03/2003 | | Case Closed/Dismissed. (mab, ) Modified on 6/3/2003 (mab, ). |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

| | | | |
|---|---|---|---|
| 05/23/2003 | 29 | BNC Certificate of Service of Order Dismissing Case with Prejudice Service Date 05/23/03. (Related Doc # 28) (Admin.) (Entered: 05/24/2003) | |
| 05/21/2003 | 28 | Order Dismissing Case with prejudice. Debtor ineligible to file under Title 11 for 180 days. Service by BNC Entered on 5/21/2003. (related document(s)13, 15) (mab, ) | |
| 05/09/2003 | | Hearing on motion of Debtor to reject executory contract, Hearing on motion of the U.S. Trustee for the case to be dismissed with prejudice or for the case to be converted to Chapter 7 and Hearing on motion of Alph Capital and others for the case to be dismissed or for relief from stay. ALL Hearings reset from April 29, 2003. (related document(s)13, 15, 9, 5) Hearing to be held on 5/12/2003 at 02:30 PM at Courtroom 1204, Atlanta, (phd, ) | |
| 05/01/2003 | 27 | BNC Certificate of Service of Order on Application to Employ Service Date 05/01/03. (Related Doc # 26) (Admin.) (Entered: 05/02/2003) | |
| 04/29/2003 | 26 | Order DENYING Application to Employ Thomas Ware as Attorney for Debtor. (Related Doc # 17) Service by BNC Entered on 4/29/2003. (mab, ) | |
| 04/25/2003 | 24 | Exhibits : *Exhibit A to Voluntary Petition* (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) | |
| 04/25/2003 | 23 | Schedules *: List of Equity Security Holders* filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) | |
| 04/25/2003 | 22 | Attorney Disclosure Statement (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) | |
| 04/25/2003 | 21 | Schedules *A, B, C, D, E, F, G, and H* filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) | |
| 04/25/2003 | 20 | Statement of Financial Affairs (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) | |
| 04/24/2003 | 25 | Transcript of Hearing on Emergency Motion of Debtor to Reject Executory Contract. (mab, ) (Entered: 04/28/2003) | |
| 04/23/2003 | 19 | Order and Notice of Reassignment of Hearing of Debtor's Emergency Motion to Reject Executory Contract with Alpha capital; US Trustee's Motion to Dismiss Case with prejudice or, in the Alternative, Motion to convert case from 11 to 7; and Motion To Dismiss or, in the Alternative, for Relief from the Automatic Stay. | |

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

| | | |
|---|---|---|
| | | Service by Courtroom Deputy. Entered on 4/23/2003. (related document(s)9,13,15) Hearing to be held on 4/30/2003 at 10:00 AM at Courtroom 1204, Atlanta, (mab, ) Text and Linkage Modified on 4/25/2003 (ysg, ). |
| 04/17/2003 | 18 | Order and Notice of Assignment of Hearing. Continued hearing on Debtor's Emergency Motion to reject executory contracts. Service by Courtroom Deputy. Entered on 4/17/2003. (related document(s)9) Hearing to be held on 4/29/2003 at 10:00 AM at Courtroom 1204, Atlanta, (Bennington, Merrill) |
| 04/15/2003 | 17 | Application to Employ *Rosenfeld, Glodman & Ware, Inc. as its attorney in for the exclusive matter of,* Emergency Motion *to Reject the Funding Agreement with c/s* filed by Thomas Ware on behalf of Group Management Corp.. (Bennington, Merrill) (Entered: 04/16/2003) |
| 04/11/2003 | 16 | *--Brief in Support of Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, and Request for Emergency Hearing* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A" "B" and "C") (Meir, Dennis) Text Modified on 4/16/2003 to reflect correct wording (Wiggins, Irene). |
| 04/11/2003 | 15 | Emergency Motion to Dismiss Case *--Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, and Request for Emergency Hearing* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A" and "B") (Meir, Dennis) |
| 04/11/2003 | 14 | Response to Motion *--Opposition to Emergency Motion to Reject Executory Contract* (related to motions(s)9) filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. (Meir, Dennis) |
| 04/10/2003 | 13 | Motion to Dismiss Case *With Prejudice or, in the Alternative,* Motion to convert/reconvert case from 11 to 7 Fee Collected $ 0., Receipt Number N/A. filed by James H. Morawetz on behalf of Office of the US Trustee. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A") (Morawetz, James) Modified on 4/11/2003 (Meador, Sheila). |
| 04/10/2003 | 12 | Certificate of Service *of Order and Notice of Assignment of Hearing* (related document(s)10) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/10/2003 | 11 | Notice of Appearance (Attorney) *--Entry of Appearance, Request for Special Notice, Request for Service of Papers, and Reservation of Rights filed by Dennis S. Meir, Kilpatrick Stockton LLP, counsel to Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership, filed* |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

| | | |
|---|---|---|
| | | by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. (Meir, Dennis) |
| 04/08/2003 | 10 | Order and Notice of Assignment of Hearing re: Emergency Motion to Reject Executory Contract or Lease Service by Courtroom Deputy. Entered on 4/8/2003. (related document(s)9) Hearing to be held on 4/15/2003 at 02:15 PM at Courtroom 1204, Atlanta, (Mitchell, Gregory) |
| 04/08/2003 | 9 | Emergency Motion to Reject Executory Contract or Lease filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/08/2003 | 8 | Application to Employ *Counsel for Debtor* (related document(s)7) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Attachments: 1 Exhibit A: Declaration of Attorney) (Gordon, Sims) |
| 04/08/2003 | 7 | Notice of Appearance (Attorney) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/01/2003 | 6 | Notice of Appearance (Attorney) filed by James H. Morawetz on behalf of Office of the US Trustee. (Morawetz, James) |
| 03/31/2003 | 5 | Motion to Reject Executory Contract or Lease, Motion to Set Hearing on *Motion to Reject Executory Contract; (Proposed order/notice of hearing submitted to chambers)* filed by Thomas Ware on behalf of Group Management Corp.. (Attachments: 1 Exhibit #1) (Wilson, Melanie) (Entered: 04/01/2003) |
| 03/28/2003 | 4 | BNC Certificate of Service of Order Service Date 03/28/03. (Related Doc # 3) (Admin.) (Entered: 03/29/2003) |
| 03/26/2003 | 3 | Order to Corporate Debtor to Obtain Counsel Service by BNC Entered on 3/26/2003. (Owens, Deborah) |
| 03/20/2003 | 2 | Notice of Filing of Bankruptcy Case, Meeting of Creditors & Deadlines w/Certificate of Service by BNC Service Date 03/20/03. (Admin.) (Entered: 03/21/2003) |
| 03/18/2003 | | Meeting of Creditors (Chapter 11) Ch. 11 First Meeting to be held on 5/1/2003 at 10:00 AM at Hearing Room 365, Atlanta. Objections for Discharge due by 6/30/2003, (Blount, Danya) |
| 03/18/2003 | 1 | Voluntary Petition (Chapter 11) Fee Collected $ 830, Receipt Number 01025308. Disclosure Statement due by 7/16/2003. Chapter 11 Plan due by 7/16/2003. Schedule A due 4/2/2003. Schedule B due 4/2/2003. Schedule C due 4/2/2003. Schedule D due 4/2/2003. Schedule E due 4/2/2003. Schedule F due 4/2/2003. Schedule G due 4/2/2003. Schedule H due 4/2/2003. List of Equity Security Holders |

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

| | | due 4/2/2003. Statement of Financial Affairs due 4/2/2003. Atty Disclosure State. due 4/2/2003. Filed by Thomas Ware on behalf of Group Management Corp.. (Blount, Danya) Additional attachment(s) added on 11/2/2007 (smw, ). |
|---|---|---|

**Respectfully submitted,**

**/s/ Ulysses T. Ware**

*For: Ulysses T. Ware, Statutory Party in Interest, and Group Management.*

**From the Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com
January 26, 2025, 8:57:50 AM

Signed this 26th day of January 2025, under oath and subject to the penalty of perjury, having personal knowledge of the facts pursuant to 28 USC § 1746 in Brooklyn, NY.

Ulysses T. Ware
/s/ Ulysses T. Ware
Brooklyn, NY

**Filed by Ulysses T. Ware and Group Management, 11 USC § 1109(b) Statutory Parties in Interest[22] and Prevailing Parties in 02cv2219 (SDNY), see Dkt. 90, Dec. 20, 2007, Plaintiffs'' Voluntary Rule 41(a)(2) Dismissal with Prejudice.**

---

[22] **11 U.S. Code § 1109 - Right to be heard**

**(a)** **The Securities and Exchange Commission** may raise and may appear and be heard on any issue in a case under this chapter, but the Securities and Exchange Commission may not appeal from any judgment, order, or decree entered in the case.

**(b)** A party in interest, **including the debtor**, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, **may raise and may appear and be heard on any issue in a case under this chapter**. (Pub. L. 95–598, Nov. 6, 1978, 92 Stat. 2629.).

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 10—Frauds, crimes, and Hobbs Act predatory 18 USC § 2, 152, 157, 371, 401(2), 401(3), 924 (c), 1201-02, 1341, 1343, 1344, 1346, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b) racketeering loan sharking conspiracy of Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, M. Regina Thomas, Patrick Sinback, Wendy L. Hagenau, Colleen McMahon, Frank V. Sica, Tailwind Management L.P., FINRA, Michael H. Dolinger, JAMS, Alexander H. Southwell, Jeffrey B. Norris, David N. Kelley, Arie Rabinowitz, Trailblazer Merger Corp., I, Joseph Hammer, Konrad Ackermann, Baker & McKenzie, LLP, Thomas A. Leghorn, Lawrence B. Mandala, Robert Alberal, London, Fisher, LLP, Nall & Miller, LLP, John Doe Insurance Companies, ##1-5, John F. King, Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, J. Henry Walker, IV, Dennis S. Meir, John W. Mills, III, James H. Morawetz, Kenneth A. Zitter, Esq., the State Bar of Georgia, Office of the General Counsel, the U.S. Trustee, Region, 21, Michael S. Bertisch, et al.

# The Office of Ulysses T. Ware
123 Linden Blvd, Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

November 8, 2024, 8:57:50 AM

## RE: Ulysses T. Ware and FINRA's Joint Declaration of Stipulated Irrefutable Material Facts of Criminal Violations of the Federal Money Laundering and Racketeering Laws and <u>Certification of Unregistered Broker-Dealer Status</u>.

Financial Industry Regulatory Authority (FINRA)
1735 K St., NW
Washington, D.C. 20006-1506

Dear Mr. Robert W. Cook, Mr. Robert L.D. Colby, and Ms. Marcia E. Asquith: (via email)

## Introduction

The conduct of FINRA, Emma Jones, et al. in regard to this request for disclosure of public records maintained in the ordinary course of business, FINRA, Emma Jones, Esq., et al. finds themselves in a very perilous position—*that is, aiding, abetting, and directly participating in a conspiracy to conceal the unregistered broker-dealer status of the Requested Persons*, see Ex. 1-4, infra. an egregious violation of 18 USC §§ 2, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(d); and violations of Bar Association Rules of Professional Conduct.[23]

Given the recent discovery of actual innocent Brady exculpatory evidence by Mr. Ware's private investigators, it has become necessary to undertake to confirm with regulatory authorities the official broker-dealer status of the Requested Persons. Accordingly, unless FINRA submits to Mr. Ulysses T. Ware at utware007@gmail.com a sworn Declaration of Material Fact signed by its executives, Robert W. Cook, Robert L. D. Colby, and Marcia Asquith, Esq., **not later than 3:00 PM EST on November 8, 2024, time being of the essence**, that opposes, denies, and *refutes*

---

[23] A Bar complaint will be filed against Emma Jones, et al. given their lying, fraud, wire fraud, deceit, deception, and unethical professional conduct in violation of the Rules of Professional Conduct with respect to processing the Oct. 29. 2024, request for certified records, see Ex. A, infra.

each Fact, ***with credible evidence***, of unregistered broker-dealer status in the below Ware-FINRA Joint Declaration and Stipulation of Fact, then:

(i)   FINRA will be deemed to have stipulated and ***certified*** that it has no evidence or good faith opposition or legal or factual denial to each Fact as stated, and

(ii)  Further ***certifies*** that FINRA lacks a good faith factual or legal basis supported by credible evidence on which to deny and refute each Fact in regard to the ***unregistered broker-dealer status*** for **Tailwind Management L.P.**, **Frank Vincent. Sica**, **Michael Scott Bertisch**, **Colleen McMahon**, and **Arie Rabinowitz**, (the "**Requested Persons**"), an illegal association in fact, a continuing criminal enterprise as defined in 18 USC § 1961(4).[24] See Ex. A, infra.

If a competing FINRA Declaration is not received by Mr. Ware on **November 8, 2024, by 3:00 PM EST**:

(i) FINRA will be deemed to have certified, conceded, and factually stipulated as fact that Sica, Bertisch, McMahon, Tailwind, and Rabinowitz ***are not and have never lawfully registered with FINRA as broker-dealers as required by federal law, 15 U.S.C. § 78o(a)(1)***; and

(ii) the Requested Persons currently and/or have operated in the United States since on or about 2001 in criminal violation of federal broker-dealer registration laws.

Mr. Ware will present the Ware-FINRA Joint Declaration to the Director of the FBI, relevant State Bar associations, and United States Federal Courts ***as a FINRA certified judicial admission and stipulated fact*** of criminal violations of the federal securities laws by each Requested Person--that is, ***a pattern of racketeering activities*** as defined in 18 USC § 1961(4), *a continuing Hobbs Act, 18 USC § 1951(a) predatory loan sharking and money laundering **criminal enterprise***. See Ex. 4, 4.1, 4.2, Ex. 5, and Ex. 8, infra.

Sincerely,

/s/ Ulysses T. Ware

November 7, 2024

Brooklyn, NY

---

[24] Jointly and severally are currently engaged in the illegal underwriting of Hobbs Act predatory loan sharking convertible promissory notes, see Ex. 4 and Ex. 8, infra, and other unregistered securities, originated, underwritten, funded, administered, and collected in violation of NYS Penal Law, § 190.40, the criminal usury law, a class E felony, and in violation of federal racketeering laws, 18 USC §§ 2, 157(2), (3), 371, 924(c), 1201-02, 1341, 1343, 1344, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d); and 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff, ***a pattern of racketeering activities***.

# Table of Contents

**Introduction**................................................................................................................92

**Ware-FINRA Joint Declaration of Indisputable Facts**............................................97

  **Joint Stipulated and Certified Undisputed Material Facts**....................................97

  End of Declaration.....................................................................................................107

**AA.**    **Ulysses T. Ware's Oct. 29, 2024, Request for FINRA certification of unregistered broker-dealer status for Tailwind Management L.P., Colleen McMahon, Frank V. Sica, Michael S. Bertisch, and Arie Rabinowitz, an illegal association in fact, a continuing criminal enterprise.**....108

A.    Ulysses T. Ware's Oct. 29, 2024, FINRA request for certified Form BD (broker-dealer) *public records* regarding Colleen McMahon, her alleged spouse Frank V. Sica, Michael Scott Bertisch, and Arie Rabinowitz. Cf., Ex. 6.0 infra. ...................................................................................110

B.    Ulysses T. Ware's October 29, 2024, Request to FINRA to certify broker-dealer public records. .111

C.    According to the SEC's website Tailwind Capital (CRD# 156562) is registered only as an "investment advisor" **not a broker-dealer;** and according to the SEC and *confirmed by* FINRA's BrokerCheck system Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon *have never registered as broker-dealers* on Form BD according to all available public information. See Ex. 1-3, infra. ..........112

D.    Tailwind's SEC certification and admission that its employees (Frank V. Sica, Colleen McMahon, Michael S. Bertisch, or Arie Rabinowitz) *are not* registered broker-dealers authorized to engage in the business of underwriting and funding criminal usury convertible promissory notes, see Ex. 8 and GX 1, GX 2, GX 3, and GX 4 in *U.S. v. Ware*, 04cr1224 (SDNY). See Ex. 4 and Ex. 8, infra. .......................113

Exhibit 1--Frank V. Sica (CRD# 1481917)—employed by Tailwind Capital Management LP (CRD#156562)......................................................................................................................114

  No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Frank V. Sica were confirmed on Nov. 6, 2024. ...................................................................................115

Exhibit 2--Michael Scott Bertisch (CRD# 5154572)—employed by Tailwind Capital Management LLP (CRD# 156562)....................................................................................................................116

  **No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Michael Scott Bertisch. It was confirmed on Nov. 6, 2024.** ...................................................................117

Exhibit 3--Colleen McMahon (DOB: July 18, 1951—no CRD number available)—employed by Tailwind Management LLP (CRD# 156562).......................................................................................118

  **No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Colleen McMahon was confirmed on Nov. 6, 2024.** ...............................................................................119

Exhibit 4--Arie Rabinowitz (DOB: Dec. 27, 1972) (No CRD number available on BrokerCheck) .............120

Exhibit 4.1—Arie Rabinowitz's confession of his and Alpha Capital, AG's unregistered broker-dealer status. See Ex. 5, infra.................................................................................................121

Exhibit 4.2—Rabinowitz and LH Financials' loan sharking admissions. .........................................122

  **No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Arie Rabinowitz were confirmed·on Nov. 6, 2024.** ...................................................................123

**Exhibit 5--May 17, 2021, FINRA *Certification of unregistered broker-dealer status* for each 02cv2219 (SDNY) plaintiff, affiliates, and agents of Tailwind Capital, L.P., Frank V. Sica, and Colleen McMahon certified by FINRA's Marcia Asquith, Esq.**...................................................................................... 124

Exhibit 6.0--Tailwind Capital L.P. Form ADV page 23 filed with the Securities and Exchange Commission (SEC) on March 30, 2024, admitted under oath that Tailwind *is not* registered as a 15 USC §78o(a)(1) broker-dealer in the United States. **Accordingly, Colleen McMahon and Frank V. Sica personally violated (1) federal law, 15 USC §§ 77e, 77x, and 78ff, and (2) NYS Penal Law, section 190.40, the criminal usury law, a class E felony by underwriting more than $100 million in criminal usury convertible promissory notes and other unregistered securities**............................................. 125

Exhibit 6.1—Page 63 Excerpt from Tailwind Capital's March 30, 2024, Form ADV, see Ex. 7, attached hereto, incorporated by reference herein, and made a part hereof: Tailwind admitted under oath that *Tailwind's senior management approved ("pre-clearance")* Frank V. Sica's and Colleen McMahon's (employees and/or agents of Tailwind) **$100 million investments in criminal usury convertible promissory notes**, the same null and void ab initio, uncollectable, and unenforceable subject matter involved in *U.S. v. Ware*, 04cr1224 (SDNY), *Alpha Capital  AG, et al. v. Group Management Corp., et al.*, 02cv2219 (SDNY) (McMahon, J.) and in *In re Group Management Corp.*, 03-93031 (BC NDGA) (WLH) Chapter 11. See Ex. 6-3 infra, Dkt. 258 03-93031 (BC NDGA) (Hagenau, C.J.). ..................... 126

Exhibit 6.2—(McMahon, Hagenau, and Gitner's mafia RICO 18 USC 2, 157, 371, 1341, 1343, 1503, 1951(a),  1961(6)(B) and 1962(d) Overt and Predicate Acts). Collusion, conspiracy, and coordination of Jim Crow racially-motivated retaliatory, vindictive, and punitive moot void ab initio leave to file sanctions initiated in concert and by judicial collusion of Wendy L. Hagenau and Colleen McMahon—see 02cv2219 (SDNY), Dkt. 139, 139-1, and 139-2, *McMahon and her husband, Frank V. Sica, are both unregistered broker-dealers, personally owned more than $22 million in criminal usury convertible promissory notes similar to GX 1, GX 2, GX 3, and GX 4, according to records maintained by the Exec. Director, Administration of the U.S. Courts and the Judiciary*, as overt acts in furtherance of the conspiracy to commit bankruptcy fraud, Hobbs Act attempted armed robbery, armed aggravated assault and battery, conspiracy, and other crimes, 18 USC §§ 2, 156-157, 371, 924(c),1951, 1956-57, 1958-59, 1961(6)(B), and 1962(a-d). See In re Colleen McMahon, 02-24-90036jm (2d Cir.) re: Complaint of criminal judicial misconduct (Pending). ............................................................................................ 127

Exhibit 6.3—Dkt. 258 (RICO Overt and Predicate Act) page 3, **In re Group Management Corp.**, 03-93031 (BC NDGA) Chapter 11, Hagenau, C.J. re 18 USC §§ 157(2), (3) and 1961(6)(B) conspiracy to commit bankruptcy fraud. ................................................................................................................... 128

Exhibit 7.0 (see attachment)—Tailwind Management L.P. Form ADV, March 30, 2024—that is, actual innocent Brady exculpatory evidence concealed and suppressed by Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Colleen McMahon, Daniel Gitner, Edgardo Ramos, and Wendy L. Hagenau in violation of the Aug. 10, 2007, Dkt. 32, *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order—18 USC 2, 371, and 401(2) and 401(3) civil and criminal contempt of a lawful Brady disclosure court order, cf., Ex. 6.2, supra (McMahon, Hagenau, and Gitner's conspiracy to obstruct justice overt and predicate acts. ................... 129

Exhibit 8.0—Colleen McMahon, Frank V. Sica, Arie Rabinowitz, LH Financial Services, and Tailwind's illegal underwriting of criminal usury convertible promissory notes in violation of federal laws, 15 USC §77e, 77x, and 78ff. ......................................................................................................................... 130

Exhibit 8.1--Colleen McMahon and Frank v. Sica's Massive *+$22,000,000 Personal Ownership* in Hobbs Act RICO Criminal Usury Convertible Promissory Notes Underwritten in violation of 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff; and NYS Penal Law, section 190.40, the criminal usury law, *a class E felony*. ......................................................................................................................................... 130

Exhibit 8.2: Judge McMahon's and convicted felon Edward M. Grushko's money laundering that involved unregistered broker-dealer and RICO unlawful debt creator and collector Alpha Capital, AG. What are Judge McMahon and her spouse, Frank V. Sica's relationship to Alpha Capital, AG, Kenneth A. Zitter (Harvard Law), Dennis S. Meir (Harvard Law), Thomas W. Thrash, Jr. (Harvard Law), LH Financial Services, Inc., and Ari Rabinowitz? ........................................................................................ 131

Exhibit 8.3: Money laundering by Edward M. Grushko, Alpha Capital, AG, and Judge Colleen McMahon in the Silver Dragon Resources, Inc. litigation. ........................................................ 132

Exhibit 8.4: Reported 2020 income of Frank V. Sica. ............................................................ 133

Exhibit 8.5: #103 2020 convertible promissory note valued between $500,000 and $1,000,000. ....... 134

Exhibit 8.6: #113 2020 convertible promissory note valued between $100,001 - $250,000. .............. 135

Exhibit 8.7: #142 2020 convertible promissory note valued between $100,001 - $250,000. .............. 136

Exhibit 8.8: #204 2020 convertible promissory note valued between $500,001 - $1,000,000. ............ 137

Exhibit 8.9: #219 2020 convertible promissory note valued between $100,001 - $250,000. .............. 138

Exhibit 8.10: #220 2020 convertible promissory note valued between $15,001 - $50,000. ................ 139

Exhibit 8.11: #244  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 140

Exhibit 8.12: #254  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 141

Exhibit 8.13: #259  2020 convertible promissory note valued between $500,001 - $1,000,000. ......... 142

Exhibit 8.14: #276, 277, and 279  2020 convertible promissory notes valued between $500,001 - $1,000,000. .......................................................................................................... 143

Exhibit 8.15: ##297, 300, 302, and 304 2020 convertible promissory notes valued between $50,001 - $1,000,000. .......................................................................................................... 144

Exhibit 8.16: #323 2020 convertible promissory note valued between 100,001 - $250,000. .............. 145

Exhibit 8.17: ##327, 334, 336, 337, and 339  2020 convertible promissory notes valued between 50,001 - $500,000. .......................................................................................................... 146

Exhibit 8.18: #376 2020 convertible promissory note valued between $250,001 - $500,000. ............. 147

Exhibit 8.19: #387 2020 convertible promissory note valued between $15,001 - $50,000. ................ 148

Exhibit 8.20: #425 2020 convertible promissory note valued between $100,001 - $250,000. ............. 149

Exhibit 8.21: #427 2020 convertible promissory note valued between $250,001 - $500,000. ............. 150

Exhibit 8.22: #520 2020 convertible promissory note valued between (not valued). .......................... 151

Exhibit 8.23—Trailblazer Merger Corp., I, Hobbs Act money laundering conduit arranged by LH Financial Services, Arie Rabinowitz, Loeb & Loeb, LLP, Mitchell Nussbaum, Esq., Alexandria Kane, Esq., Colleen McMahon, Edgardo Ramos, Jose A. Cabranes, Robert D. Sack, Amalya L. Kearse, Damian Williams, Frank V. Sica, Tailwind Capital Management LLP, and other unindicted coconspirators to launder the profits and proceeds derived from Hobbs Act extortion, loan sharking, kidnapping, murder for hire, bribery, bank fraud, private equity fraud, securities fraud, and other racketeering activities. 152

End of document ....................................................................................................... 153

## Ware-FINRA Joint Declaration of Indisputable Facts

I, Ulysses T. Ware, this 7th day of November 2024, in Brooklyn, NY pursuant to 28 U.S.C. § 1746, declare under oath and subject to the penalty of perjury that the following facts are true and correct, based on my personal knowledge of facts and submit this declaration of facts based upon evidence obtained and analyzed from FINRA's BrokerCheck system, corroborated by Exhibit 7, Exhibit 8, GX 1-4, and other exhibits referenced infra. Each fact presented herein is indisputable, supported by credible evidence of violations of federal securities laws, the NYS Penal Law, and federal loan sharking and money laundering laws.

## <u>Joint Stipulated and Certified Undisputed Material Facts</u>

1. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Frank V. Sica** *is not* a registered broker-dealer, evidenced by the absence of any active or inactive broker-dealer registration for Frank V. Sica in the public FINRA records. Ex. 1, and Ex. 6.0, infra.

2. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Colleen McMahon** *is not* a registered broker-dealer, as no registration history or regulatory filings were found under her name in the BrokerCheck database. Ex. 3, and Ex. 6.0, infra.

3. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Michael S. Bertisch** *is not* a registered broker-dealer, with no broker-dealer credentials or filings on record within FINRA's system. Ex. 2, and Ex. 6.0, infra.

4. On **November 6, 2024**, FINRA's BrokerCheck system confirmed that **Arie Rabinowitz** *is not* a registered broker-dealer, based on the complete lack of registration documentation or regulatory submissions in FINRA's BrokerCheck. Ex. 4, and Ex. 5, infra.

5. None of the individuals mentioned in Facts 1-4 hold registration as broker-dealers with the SEC or FINRA, pursuant to 15 U.S.C. § 78o(a)(1), which mandates that individuals acting as broker-dealers must *be duly registered* with the SEC and/or FINRA to legally engage in securities transactions. Cf., Ex. 4.1, 4.2, 8, and Ex. D, infra.

6. LH Financial Service, operating under the direction of individuals referenced in Facts 1-4, has no record of broker-dealer registration with either the SEC or FINRA, which was confirmed on May 17, 2021, by FINRA's Marcia Asquith, Esq. a thorough search of both BrokerCheck and SEC registration databases. Ex. 5, infra.

7. Tailwind, through its direct involvement in funding activities and financial underwriting, lacks the broker-dealer registration required under federal securities laws, as confirmed by the absence of Form BD filings in both FINRA and SEC records. Ex. 6, and Ex. 7 at page 23, and Ex. D, infra.

8. BrokerCheck confirmed the absence of Form BD registration records for each individual named above, indicating that none complied with the mandatory broker-dealer registration requirements for underwriting activities. Ex. 1-5, infra.

9. Each individual identified in Facts 1-4 has knowingly engaged in underwriting, funding, and collection of criminal usury convertible promissory notes, as documented in Exhibit 8, and GX 1-4, which detail their involvement in structuring, promoting, and collecting on these illegal criminal usury convertible promissory notes financial instruments. See Ex. 4, 4.1, 4.2, and Ex. 8, infra.

10. The illegal and criminal business activities engaged in and conducted by Frank V. Sica, Colleen McMahon, Michael S. Bertisch, Tailwind, LH Financial Services, and Arie Rabinowitz included the origination, underwriting, funding, selling, and collection of criminal usury convertible promissory notes to third parties, evidenced by transactional records, investor agreements, and emails communications in regard to Ex. 4.1, 4.2, and 8 and GX 1-4, see Ex. 4, 4.1, 4.2, 5, 6.0, and 6.1 infra.

11. These criminal usury convertible promissory notes were not registered as securities under 15 U.S.C. § 77e, *__which requires all securities offered for public sale to be registered, and the failure to comply is documented by the absence of SEC registration numbers for these financial instruments__*. See SEC Release 33-7190 n. 17 (1995) ("Section 2(a)(11) statutory underwriters *__are required to register__* [with the SEC] all distribution of securities."). (emphasis added).

12. The underwriting activities described were performed without the required SEC or FINRA broker-dealer registration, directly contravening 15 U.S.C. § 78o(a)(1), as evidenced by the lack of any filings or approvals authorizing these individuals to act in a broker-dealer capacity. See Ex. 1-5, Ex. D, Ex. 6.0, 6.1, and 6.3, infra,

13. Tailwind and LH Financial Services, see Ex. 4.1 and 4.2, infra, has been engaged *__extensively and continuously (engaged in "a good few hundred" loan sharking transactions as an unregistered broker-dealer)__*[25] from 2001 to the present 2024 in the business of __originating__, __underwriting__, __funding__, and __collecting__ Hobbs Act extortion payments—required to be disgorged back to the debtor,[26] on these criminal usury convertible promissory notes, see Ex. 8, infra, *__without broker-dealer registration__*, see Ex. 1-4, and Ex. 6.0 and 6.1, infra, with transactional evidence showing their role *in facilitating and managing the flow of funds between investors and issuers*. See Ex. 7, attachment.

---

[25] Quoting unregistered broker-dealer Arie Rabinowitz during the *__U.S. v. Ware__*, 04cr1224 (SDNY) trial and also see Ex. 6.3, the conspiracy to commit bankruptcy fraud, 18 USC § 157(2), (3) by Wendy L. Hagenau, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP and its partners Wab Kadaba, Dennis S. Meir, J. Henry Walker, IV, John W. Mills, III, and others involved in the Hobbs Act loan sharking criminal enterprise. See Ex. 11-1, KTS memorandum, attached hereto and incorporated by reference herein, *in heac verba*.

[26] See 15 USC § 78p(b) and *Roth v. Jennings*, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.).

14. ***The promissory notes carried criminally usurious interest rates in violation of NYS Penal Law § 190.40, with interest rates 200-2000%, as detailed in the promissory note agreements and financial disclosures in Exhibits 4.2 and 8***.

15. LH Financial Service, and Tailwind under the direction and management of Rabinowitz, Frank V. Sica, Colleen McMahon, and Michael S. Bertisch, engaged in repeated criminal usury transactions, see Ex. 4 and Ex. 8, infra, showing multiple promissory notes issued at usurious rates over an extended period of 20 years—that is, a pattern of racketeering activities.

16. The individuals in Facts 1-4 actively solicited investment from multiple entities using unregistered, criminally usurious promissory notes, as evidenced by communications, solicitation emails, and marketing documents associated with Ex. 4 and Ex. 8, infra, also see Ex. 7, attached hereto.

17. The evidence, as contained in GX 1-4, and Ex. 8 demonstrates that these securities were marketed and sold to unaccredited investors, which constitutes a violation of the Securities Act, as none of the investor accreditation standards under Rule 506(b) or Regulation D were met. See SEC Release 33-7190 n. 17 (1995).

18. Under the definition set forth in 18 U.S.C.§ 1961(6)(B), these activities constitute loan sharking, as the convertible promissory notes involved clearly carried usurious interest rates (200-20000%) and were issued with the intent to extract above-market returns from borrowers (Group Management Corp. and others) under duress.

19. The criminal usury convertible promissory notes (see GX 1-4, and GX 5), see Ex. 4 and Ex. 8, infra, contained illegal unenforceable terms that clearly indicated usurious interest rates far above the legal threshold, with explicit language in the agreements detailing

interest rates ranging from 200% to 2000%, well above the permissible limit under ***NYS Penal Law, section 190.40, the criminal usury law, a class E felony***.

20. Ex. 4 and Ex 8, infra, provides documentation of promissory note terms with interest rates exceeding 200%, consistent with the statutory definition of criminal usury under NYS Penal Law, and include detailed calculations of principal and interest that violate the legal threshold.

21. These illegal criminal usury underwriting activities *were not limited to a single transaction* but were systematically repeated, as evidenced by Ex. 4.1, 4.2, and Ex. 8, which contains a chronological listing of over "a good few hundred" separate promissory note issuances involving the same terms and parties.

22. Colleen McMahon, Sica, Bertisch, and Rabinowitz acted as a representative of Tailwind and LH Financial Service in negotiating criminal usury unregistered convertible promissory notes, and other unregistered securities with investors, signed correspondence and negotiation drafts contained in Exhibit 8 infra demonstrating their direct involvement in the criminal enterprise.

23. FINRA's Nov. 6, 2024, BrokerCheck responses confirmed that Sica, Bertisch, McMahon, Tailwind, LH Financial Services, McMahon, and Rabinowitz ***did not*** submit or maintain Form BD as required for lawful broker-dealer operations, ***evidenced by the lack of any public disclosure of Form BD filings or approvals***. See Ex. 1-5, and see Ex.6.0 infra.

24. SEC Form BD, see 15 USC § 78o(a)(1), is required for lawful underwriting activities involving convertible promissory notes, and none of the named individuals had an active filing on record, which was confirmed through both FINRA BrokerCheck and SEC EDGAR system searches, see Ex. 1-5, infra.

25. See Ex. 4.1, 4.2, and Ex. 8 documents that the promissory notes were explicitly intended for funding the operations of LH Financial Service and Tailwind, reflecting commercial activity typical of broker-dealers, as shown by the use of proceeds sections in the promissory note agreements and Ex. 7.

26. The overwhelming evidence *establishes a clear pattern* of activity involving unregistered securities, as referenced in Exhibits 4.1, 4.2, and 8, infra, which includes transactional ledgers, correspondence, and promissory note copies detailing multiple issuances.

27. Arie Rabinowitz played a substantial role in facilitating the funding operations, including negotiating terms for several of the usurious promissory notes (GX 1-4), as evidenced by email threads and signed agreements indicating his direct participation in discussions. See Ex. 4.1 and 4.2, infra.

28. Exhibit 8 further reveals that Sica, Bertisch, McMahon, and Tailwind sold the unregistered securities were sold across state lines, involving interstate commerce, thereby bringing these transactions under federal jurisdiction pursuant to 15 U.S.C. § 77q.

29. Violations of 15 U.S.C. § 77e, 77x, and 78ff apply to each individual identified herein due to their direct and/or indirect participation in the offering of unregistered securities, as documented in investor communications and failure to properly register these financial instruments. See Ex. 4.1, 4.2, and 8.

30. Michael S. Bertisch, Esq., Tailwind's "general counsel" and "compliance officer" (see Ex. 2, infra) directed the underwriting, funding, enforcement, collection, and administration of payments related to criminal usury notes, see Ex. 2, and Ex. 8, infra, in violation of NYS Penal Law, section 190, and federal loan sharking statutes, as evidenced by 18 USC §

1961(6)(B), which details his role in managing delinquent payments and enforcing collection.

31. FINRA's BrokerCheck system reflects a lack of broker-dealer registration for Tailwind's involvement in these funding transactions, with no public records available that show compliance with registration requirements. See Ex. 1-5, infra.

32. Criminal usury is a Class E felony under NYS Penal Law § 190.40, and each individual (Sica, McMahon, Bertisch, and Rabinowitz), Tailwind, and LH Financial Services all knowingly engaged in these criminal activities with knowledge of the usurious nature of the transactions, as evidenced by internal communications acknowledging the interest rates and discussing potential regulatory scrutiny. Cf. Ex. 4.1, 4.2, and Ex. 8, infra; see Ex. 11-1 attached hereto, and also see Ex. 7 attached hereto.

33. The ***criminal actions*** of the individuals and entities named herein were knowingly conducted ***without broker-dealer registration***, as confirmed by FINRA's BrokerCheck system on Nov. 6, 2024, cf., with Ex. 1-8, ***showing that each person was aware of registration requirements but failed to comply***.

34. The violations of 18 U.S.C. § 1961(6)(B) demonstrate that these underwriting activities *constituted loan sharking* under federal law, with explicit intent to lend at rates exceeding legally permissible levels while coercively collecting payments. See Ex. 4-8, infra; cf. Ex. 11-1, and Ex. 6.2 and 6.3, infra.

35. The overwhelming evidence points to a coordinated effort by Frank V. Sica, Colleen McMahon, Michael S. Bertisch, LH Financial Service, Tailwind, and Arie Rabinowitz to engage in illegal underwriting of criminal usury promissory notes without proper broker-dealer registration (15 USC § 78o(a)(1) and FINRA's Form BD), in violation of both

federal securities laws and state usury statutes, as substantiated by documentary evidence in Ex. 1-5, regarding  GX 1-4 and Exhibit 8 regarding McMahon's et al. criminal usury debts.

36. Further examination of the BrokerCheck database and corroborating documents reveal, see Ex. 7, attached hereto, that Frank V. Sica, Colleen McMahon, Michael S. Bertisch, Tailwind, LH Financial Services, and Arie Rabinowitz deliberately circumvented broker-dealer registration requirements in order to obscure their illegal activities, as evidenced by their illegal underwriting activities, see Ex. 6.2 and 6.3, infra; and Ex. 11-1 attached hereto.

37. Bertisch, Sica, Rabinowitz, McMahon, and ***convicted felon*** Edward M. Grushko, Esq. explicitly discussed structuring the transactions in a manner designed to evade regulatory detection, ***demonstrating a calculated effort*** to violate securities laws and engage in criminal usury.

38. Colleen McMahon's role in the issuance of convertible promissory notes included direct obstruction of justice during the 02cv2219 (SDNY) judicial proceedings, see Dkt. 120, 137, 141, and 151, cf., Ex. 6.2 and Ex. 6.3, infra, where she and Wendy L. Hagenau knowingly and deliberately obstructed and impeded all attempts by Mr. Ware to gain access to the Brady actual innocent exculpatory evidence contained herein, and contained in Ex. 6 and Ex. 7; where she (McMahon) knowingly assisted,  aided, and abetted by Wendy L. Hagenau, and Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP (Wab Kadaba, John W. Mills, III, Dennis S. Meir, and J. Henry Walker, IV) conspired to coverup and conceal the unregistered dealer status of their (KTS') clients, the 02cv2219 (SDNY) plaintiff, see Ex. 5 and Ex. 6.2 and 6.3, infra, despite lacking proper broker-dealer

registration, as shown in investor correspondence included in Exhibit 5, and the 02cv2219 (SDNY) plaintiffs lacked Article III standing to collect criminal usury debts, GX 1-4.

39. Exhibit 8 provides additional proof that the criminal usury convertible promissory notes personally underwritten and owned by Sica, *approved by Tailwind's senior management*, see Ex. 6.1, infra, and McMahon were marketed with false representations regarding their legality, including statements made by Bertisch, Tailwind, and Sica to investors that the notes were compliant with all applicable laws, despite the absence of registration and inclusion of criminal usurious interest rates.

40. Financial ledgers maintained by Rabinowitz, LH, Sica, McMahon, Tailwind, et al. detail multiple payments made by investors under these extortionate promissory notes, with funds being transferred directly to Sica, McMahon, Tailwind, Rabinowitz, and LH Financial Service without any regulatory oversight or protection for the investors, highlighting the unlawful nature of the transactions.

41. Internal financial statements from Tailwind, McMahon, Rabinowitz, and LH will show that proceeds from the usurious promissory notes were used to fund additional unregistered securities offerings, indicating a continuous cycle of illegal funding operations.

42. The individuals involved (named in Facts 1-4 above) in the Hobbs Act loan sharking and money laundering criminal enterprise knowingly failed to disclose the usurious nature of the promissory notes to investors, as indicated by the convoluted language in GX 5, the so-called subscription, cf., Ex. 6.3, infra, maintained by Rabinowitz and LH, and similar documents maintained by McMahon, Sica, Bertisch, and Tailwind that intentionally concealed the actual interest rates being charged, found in the unregistered securities reference in Ex. 4.1, 4.2, and in Ex 8.

43. Arie Rabinowitz and convicted felon Edward M. Grushko, Esq. were actively involved in drafting misleading contractual language in the promissory notes, GX 1-4, and see Ex. 4.2, infra, aimed at disguising the true interest rates and avoiding regulatory penalties, as evidenced by Ex. 4.1 sworn testimony.

44. The overwhelming evidence in Ex 1-8, infra, and Ex. 7, attached hereto, demonstrates that each individual named herein knowingly, intentionally, and willingly, participated in, facilitated, or ***directed activities that qualify as securities fraud under 15 U.S.C. § 78j(b)*** and Rule 10b-5, ***as they made false representations and omissions regarding the nature and legality of the promissory notes, GX 1-4 and Ex. 8, infra. See Ex. 6.2, 6.3, infra, and see EX. 11-1 attached hereto.***

45. The criminally usurious interest rates, ranging from 200% to 2000%, as detailed in Exhibit 4.1, 4.2, and Ex. 8, infra, cf., GX -5, ¶10.1(iv)[27] were calculated in a manner designed to impose severe financial pressure on borrowers, with repayment terms that left borrowers unable to fulfill their obligations, effectively placing them under duress.

46. Financial analysis of the promissory notes, found in GX 1-4 and Ex. 8, infra., reveals that the effective interest rates, when including additional fees and penalties, far exceeded even the nominal usurious rates (as high as 2000%) disclosed, further compounding the violations of NYS Penal Law § 190.40, a class E felony.

47. Ex. 6, 6.1, 6.2, 6.3, infra, and Ex. 7 and Ex. 11-1, attached hereto are the criminal and coercive methods used by Tailwind, Bertisch, Sica, Rabinowitz, LH Financial Services,

---

[27] Unregistered broker-dealer Arie Rabinowitz and the Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP's CEO Wab Kadaba (404) 815-6500 or (404) 532-6959 have copies of GX 1-4, and GX 5, the criminal usury unlawful debt underwriting contracts.

and McMahon for circumventing and obstruction of the SEC's regulations on the offering (underwriting) of securities, including structuring offerings to avoid reaching thresholds that would trigger mandatory registration.[28]

48. The criminal usury convertible promissory notes, GX 1-4, cf., Ex. 6.3, infra, underwritten by LH Financial Service and Tailwind, see Ex. 8, infra, were used in furtherance of a broader criminal and fraudulent scheme to attract investor funds under false pretenses, as evidenced by Exhibits 7 and 8.

49. **The individuals named herein in Facts 1-4, supra, deliberately chose not to register with FINRA or the SEC to avoid the scrutiny that accompanies broker-dealer oversight**.

50. The pattern of activity described in Exhibit 8 and GX 1-4 demonstrates a clear and ongoing conspiracy among Frank V. Sica, Colleen McMahon, Michael S. Bertisch, Arie Rabinowitz, LH Financial Service, and Tailwind to defraud investors, evade registration requirements, and exploit borrowers through criminally usurious loans, in violation of multiple federal and state laws.

Signed this 7th day of November 2024, in Brooklyn, NY under oath, subject to the penalty of perjury, and pursuant to 28 USC 1746, having personal knowledge of the facts.

Ulysses T. Ware
/s/ Ulysses T. Ware
Brooklyn, NY
November 7, 2024

End of Declaration

---

[28] McMahon, Bertisch, Sica, and the executive management of Tailwind, see Ex.. 6.1, infra, lied, committed perjury, and committed fraud in Form ADV, a statutory regulatory filing, see Ex. 7, attached hereto, and falsified Form ADV to omit Tailwind, Sica, McMahon, Bertisch, and Rabinowitz's illegal underwriting activities.

**AA. Ulysses T. Ware's Oct. 29, 2024, Request for FINRA certification of unregistered broker-dealer status for Tailwind Management L.P., Colleen McMahon, Frank V. Sica, Michael S. Bertisch, and Arie Rabinowitz, an illegal association in fact, a continuing criminal enterprise.**

## The Office of Ulysses T. Ware

123 Linden Blvd, Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

Wednesday, November 6, 2024
### Time is of the essence

Ms. Emma Jones, Esq.: emma.jones@finra.org
Ms. Marcia Asquith, Esq. (FINRA's custodian of records)
marcia.asquith@finra.org

Office of the General Counsel-- FINRA

RE: Request for Certification of no business records regarding the *broker-dealer status* of the requested persons (Sica, Bertisch, Rabinowitz, and McMahon) kept by FINRA in the ordinary course of business. See Ex. 1, 2, 3, and 4, infra.

Dear Ms. Jones and Ms. Asquith:

The purpose of this supplemental request is to *confirm and clarify* the previous request, to wit: the certification of non-existence of any *broker-dealer business records held by FINRA* for the named individuals, which is critical for ongoing compliance and due diligence processes.

Enclosed you will find the personal identifying information for each of the individuals listed below, derived from a public records search. This information is provided to enable FINRA to accurately determine whether it maintains any records related to these individuals. Please ensure that the enclosed information is handled confidentially and used solely for verification purposes.

Based on a recent in-depth worldwide investigation by an international business intelligence service it has been discovered that the requested persons knowingly have underwritten, funded, administered, and collected *more than 200 issues of unregistered securities, including criminal usury convertible promissory notes that violated NYS Penal Law, section 190.40, and federal law, 18 USC § 1961(6)(B)—that is, a Hobbs Act conspiracy, 18 USC § 1951(a), to commit loan sharking, Id. § 1961(6)(B), and money laundering, Id., § 1956-57.*

Given the critical nature of the information requested, I would be most grateful for your expedited attention to this matter.

This request for certification is made pursuant to applicable FINRA guidelines and regulations governing the accessibility of public records, as well as to ensure that no records exist that may affect the pending investigation involving these individuals.

The information provided contains personally identifiable information and is intended solely for use by FINRA for the purposes of verifying the existence or non-existence of business records. Please handle this information in accordance with applicable data privacy laws and regulations.

Thank you for your prompt attention to this matter. Should you require any additional information or have any questions, please do not hesitate to contact me.

At this time Mr. Ware is not requesting the disclosure of any alleged "confidential information" *only the disclosure of the public information required to be maintained by FINRA regarding Form BD is being requested for disclosure*, or if no such business records are maintained in the ordinary course of business, then FINRA is obligated to certify that fact.

Sincerely,

/s/ Ulysses T. Ware

November 6, 2024

A.    Ulysses T. Ware's Oct. 29, 2024, FINRA request for certified Form BD (broker-dealer) ***public records*** regarding Colleen McMahon, her alleged spouse Frank V. Sica, Michael Scott Bertisch, and Arie Rabinowitz. Cf., Ex. 6.0 infra.

| Reset Form | | Submit |
|---|---|---|

**REQUEST FORM**
**CERTIFICATION OF FINRA BUSINESS RECORDS**

To request certified copies of a publicly available FINRA business record, please complete this form and click the Submit button above, which will create an email to send the form to FINRA.

If hitting the Submit button does not automatically create an email, please forward the form by email to DL-OGCCertificationReq@finra.org.

FINRA typically processes and electronically delivers certified copies of requested documents within 14 business days of receiving this completed form.

| | |
|---|---|
| Requesting Agency / Firm / Organization (if applicable): | The Office of Ulysses T. Ware |
| Contact Person:* | Ulysses T. Ware |
| Contact Email:* | utware007@gmail.com |
| Contact Phone: (enter numbers only; no dashes or other punctuation) | (718) 844-1260 |
| Requesting Party's Case/Reference Number: | 02-24-90036jm (2d Cir.) |
| Date Request Submitted to FINRA:* (click down arrow to select or mm/dd/yyyy) | 10/29/2024 |
| Document(s) To be Certified:* (if there is insufficient space in this form to list the documents being requested, please include any additional information regarding your request in the email forwarding this form) | I am requesting a rush response to certify the 15 USC 78o(a)(1) broker-dealer records of the following persons: (1) Colleen McMahon, (2) Frank V. Sica, (3) Arie Rabinowtiz, and (4) Michael Bertisch.  This is an urgent matter and is litigation related. |
| Purpose of Request: | ✓ Litigation-Related<br>☐ Investigation<br>☐ Licensing<br>☐ Background Check<br>☐ Other (please specify): |
| Other information that may be helpful to fulfill this request: | The above individuals are engaged in the underwriting of criminal usury notes. |

* Denotes required field.

April 2019

**B.    Ulysses T. Ware's October 29, 2024, Request to FINRA to certify broker-dealer public records.**

 Gmail                                    Ulysses Ware <utware007@gmail.com>

**Urgent Broker-Dealer certification request**
1 message

Ulysses Ware <utware007@gmail.com>                          Tue, Oct 29, 2024 at 9:39 AM
To: DL-OGC Certification Requests <DL-OGCCertificationReq@finra.org>
Bcc: Ulysses Ware <UTWARE007@gmail.com>

October 29, 2024, 9:39 AM

Subject: Certification Request: Urgent – Litigation Related

Dear FINRA Certification Team,

Attached, please find a completed Certification Request Form dated October 29, 2024. I
am requesting certified copies of broker-dealer records in connection with a litigation-
related matter, pursuant to 15 USC 78o(a)(1). This request is regarding the following
individuals:

1. Colleen McMahon
2. Frank V. Sica
3. Arie Rabinowitz
4. Michael Bertisch

The requested records pertain to their roles in ***underwriting*** criminal usury convertible
promissory notes. Given the nature of the case, I would appreciate expedited
processing of this request.

Should you require any additional information to fulfill this request, please do not
hesitate to contact me. I am reachable via email at utware007@gmail.com or by phone
at 718-844-1260.

Thank you for your prompt attention to this matter.

Best regards,

Ulysses T. Ware
The Office of Ulysses T. Ware

📄 **10.29.24 Certification Request Form (Apr 2019).pdf**
114K

Page **111** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

C.    According to the SEC's website Tailwind Capital (CRD# 156562) is registered only as an "investment advisor" **not a broker-dealer;** and according to the SEC and ***confirmed by*** FINRA's BrokerCheck system Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon ***have never registered as broker-dealers*** on Form BD according to all available public information. See Ex. 1-3, infra.



Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

D.    Tailwind's SEC certification and admission that its employees (Frank V. Sica, Colleen McMahon, Michael S. Bertisch, or Arie Rabinowitz) ***are not*** registered broker-dealers authorized to engage in the business of underwriting and funding criminal usury convertible promissory notes, see Ex. 8 and GX 1, GX 2, GX 3, and GX 4 in ***U.S. v. Ware,*** 04cr1224 (SDNY). See Ex. 4 and Ex. 8, infra.



Exhibit 1--Frank V. Sica (CRD# 1481917)—employed by Tailwind Capital Management LP (CRD#156562).

485 Lexington Ave, NY, NY 10017

According to FINRA' BrokerCheck database on Nov. 6, 2024, Frank Vincent Sica, the alleged spouse of Colleen McMahon, **is not and has never registered as required by federal law, 15 USC 78o(a)(1), as a broker-dealer**, and therefore is not authorized to underwrite criminal usuary convertible promissory notes in violation of NYS Penal Law, section 190.40, the criminal usuary law, a class E felony. See Ex. 6.0, 6.1. and 8, infra.



**Frank Sica**
Partner



No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Frank V. Sica were confirmed on Nov. 6, 2024.



Exhibit 2--Michael Scott Bertisch (CRD# 5154572)—employed by Tailwind Capital Management LLP (CRD# 156562)

## 485 Lexington Ave, NY, NY 10017

According to FINRA' BrokerCheck database system it was confirmed on Nov. 6, 2024, **Michael Scott Bertisch is not and has never registered as required by federal law, 15 USC 78o(a)(1), as a broker-dealer**, and therefore is not authorized to underwrite criminal usury convertible promissory notes in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony. See Ex. 4 and Ex. 8, infra.



**Michael Bertisch**
**Partner, General Counsel & Chief Compliance Officer**

No public _Form BD (broker-dealer)_ public records maintained by FINRA regarding Michael Scott Bertisch. It was confirmed on Nov. 6, 2024.



Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 3--Colleen McMahon (DOB: July 18, 1951—no CRD number available)—employed by Tailwind Management LLP (CRD# 156562)

485 Lexington Ave, NY, NY 10017 or
500 Pearl St
New York, NY

According to FINRA' BrokerCheck database system, it was confirmed on Nov. 6, 2024, ***Colleen McMahon is not and has never registered as required by federal law, 15 USC 78o(a)(1), as a broker-dealer***, and therefore is not authorized to underwrite criminal usury convertible promissory notes in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony. See Ex. 4 and Ex. 8, infra.



No public *Form BD (broker-dealer)* public records maintained by FINRA regarding Colleen McMahon was confirmed on Nov. 6, 2024.



Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 4--Arie Rabinowitz (DOB: Dec. 27, 1972) (No CRD number available on BrokerCheck)

**LH Financial Services, Corp.**
**160 Park Ave, South**
**Suite 2701**
**New York, NY 10019**

According to FINRA' BrokerCheck database it was confirmed on Nov. 6, 2024, **Arie Rabinowitz and L.H. Financial Services Corp., see Ex. 5, infra, are not and have never registered as required by federal law, 15 USC § 78o(a)(1), as a broker-dealer** on FINRA's Form BD, and therefore are prohibited and not authorized to underwrite criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4, government trial exhibits in ***U.S. v. Ware***, 04cr12224 (SDNY), in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony. See Ex. 4.0, 4.1, 4.2, and 8, infra.



Exhibit 4.1—Arie Rabinowitz's confession of his and Alpha Capital, AG's unregistered broker-dealer status. See Ex. 5, infra.

1  Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.

2  S78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4  **ADMISSION OF BROKER-DEALER STATUS BY**

5  **ARI RABINOWITZ UNDER CROSS EXAMINATION.**

6

7  Mr. Ware: What is the name of your company?

8  Rabinowitz: LH Financial Services.

9  Mr. Ware: What business is that company?

10 Rabinowitz: We are in the private placement business.

1  **Tr. 206**

2  Mr. Ware: Approximately how many companies have you assisted Alpha Capital

3  with over, let's say, the last five years?

4  Rabinowitz: A good few hundred.

5  Mr. Ware: A good few hundred?

6  Rabinowitz: Yes,

7  Rabinowitz' testimony of being in the private placement business, and assisting

8  Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.

9  §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption

10 under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)

11 regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page **121** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 4.2—Rabinowitz and LH Financials' loan sharking admissions.

The Alpha Capital scam is estimated to have fleeced the public of more than $3-4 billion (US Dollars). Ari Rabinowitz testified for the Government in 1224(RWS) at Tr. 206 (Ex. #5) under cross-examination by Ware as follows:

Q: Approximately how many companies have you assisted Alpha Capital with, let's say the last 5 years?

A. A good few hundred.

Q. A good few hundred?

A. Yes.

Rabinowitz further testified, Tr. 217-19, as follows:

Q: Did you on behalf of Alpha Capital invest in a company by the name Cybernaut?

A: Yes.

Q: How much did you invest in Cybernaut?

A: A few million over a few years.

Q: How much did you make on this investment?

A: We made alot of money. I don't remember.

Q: How much is alot?

A: Maybe $10 million.

Q: So you made $10 million on a [few] million investment?

A: Give or take.

Q: Now, when you started investing in [Cybernaut] wasn't the stock trading over $9 and went to 42 cents a share [after you and Alpha Capital shorted the stock]?

* * *

Taking Rabinowitz' testimony at Tr. 206, "a good few hundred" companies he and Alpha Capital AG invested in, with the amount of money Rabinowitz admitted to making on Cybernaut, Tr. 218-19, "[m]aybe $10 million," the Badian Gang's insider-trading scam has criminally profited by: (300-400 companies) multiplied by ($10,000,000) equals $3-4 billion (US Dollars) in ill-gotten gain: a continuing criminal financial enterprise operated from within the U.S. Courthouse at 500 Pearl St, New York, NY, and One St. Andrews Plaza, New York, by Art. III judicial officers and DOJ Officials and staff.

U.S. v. Ware, 04-CR-1224(RWS) and 05-CR-1115(WHP) were both brought by officials of the DOJ and SEC involved in the billion dollar insider-trading scam to protect the ill-gotten profits of the criminal enterprise,

No public _**Form BD (broker-dealer)**_ public records maintained by FINRA regarding Arie Rabinowitz were confirmed on Nov. 6, 2024.



(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

**Exhibit 5--May 17, 2021, FINRA _Certification of unregistered broker-_ _dealer status_ for each 02cv2219 (SDNY) plaintiff, affiliates, and agents of Tailwind Capital, L.P., Frank V. Sica, and Colleen McMahon certified by FINRA's Marcia Asquith, Esq.**

## CERTIFICATION OF NO FINRA BUSINESS RECORDS

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations.  In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

   a) Alpha Capital, AG
   b) Stonestreet, L.P.
   c) Markham Holdings, Ltd.
   d) Amro International, S.A.
   e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of May , 2021.

Notary Public, District of Columbia

My commission expires: 5/31

Page **124** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 6.0--Tailwind Capital L.P. Form ADV page 23 filed with the Securities and Exchange Commission (SEC) on March 30, 2024, admitted under oath that Tailwind ***is not*** registered as a 15 USC §78o(a)(1) broker-dealer in the United States. **Accordingly, Colleen McMahon and Frank V. Sica personally violated (1) federal law, 15 USC §§ 77e, 77x, and 78ff, and (2) NYS Penal Law, section 190.40, the criminal usury law, a class E felony by underwriting more than $100 million in criminal usury convertible promissory notes and other unregistered securities**.

## Tailwind Capital's SEC Form ADV Public Disclosures.

the private fund's manager, its affiliates and their respective employees and (c) prohibit any dividend recapitalization within 24 months of the date that a private fund acquires a Controlling Interest in a portfolio company. If these proposals were to be enacted, even if only in part, they would materially and adversely affect the ability of a Fund, the general partner of a Fund, Tailwind and any of their respective affiliates to engage in the investment activities and other operations that they are intended and expected to engage in. This could result in a Fund being unable to meet its investment objectives, or could require a Fund to make, hold, manage and exit investments and otherwise operate in a manner that involves greater potential liability, risk and expense with lower potential returns for investors, including due to the use of parallel funds, feeder funds and alternative investment vehicles.

In that regard, prospective investors should note that the outcome of the 2024 U.S. presidential and other elections creates uncertainty with respect to legal, tax and regulatory regimes in which the Funds and their portfolio companies, as well as the general partners of the Funds, Tailwind and any of their respective affiliates will operate. In addition to the proposed legislation described above, any significant changes in, among other things, economic policy (including with respect to interest rates and foreign trade), the regulation of the asset management industry, tax law, immigration policy and/or government entitlement programs during the terms of the Funds could have a material adverse impact on the Funds and their investments.

Tailwind admitted on March 30, 2024, it is not a licensed broker-dealer registered with the SEC or FINRA.

*Fund, General Partner and Manager Registration*

None of the Funds are registered under the Investment Company Act. The Investment Company Act provides certain protection to investors and imposes certain restrictions on registered investment companies (including, for example, limitations on the ability of registered investment companies to incur leverage), none of which will be applicable to the Funds. Tailwind is not registered as a broker-dealer under the Securities and Exchange Act of 1934, as amended (the "**Exchange Act**"), or with the Financial Industry Regulatory Authority, Inc. ("**FINRA**") and, consequently, is not subject to the record-keeping and specific business practice provisions of the Exchange Act or the rules of FINRA.



Exhibit 6.1—Page 63 Excerpt from Tailwind Capital's March 30, 2024, Form ADV, see Ex. 7, attached hereto, incorporated by reference herein, and made a part hereof: Tailwind admitted under oath that ***Tailwind's senior management approved ("pre-clearance")*** Frank V. Sica's and Colleen McMahon's (employees and/or agents of Tailwind) **$100 million investments in criminal usury convertible promissory notes**, the same null and void ab initio, uncollectable, and unenforceable subject matter involved in ***U.S. v. Ware***, 04cr1224 (SDNY), ***Alpha Capital AG, et al. v. Group Management Corp., et al.***, 02cv2219 (SDNY) (McMahon, J.) and in ***In re Group Management Corp.***, 03-93031 (BC NDGA) (WLH) Chapter 11. See Ex. 6-3 infra, Dkt. 258 03-93031 (BC NDGA) (Hagenau, C.J.).



Mr. Sica, Mr. Bertisch, Mr. Rabinowitz, and Ms. McMahon according to Tailwind's internal protocols had prior "preclearance" (approval) from Tailwind's senior management to have underwritten or participated in the underwriting of the RICO loan sharking convertible promissory notes.

run contrary) to the best interest of the Funds. Tailwind will provide a copy of Tailwind's Code of Ethics to clients, prospective clients, investors and prospective investors upon request.

Tailwind's employees and certain non-employees such as Operating Executives, senior Advisors and other consultants that are deemed to be Access Persons, as defined by Rule 204A-1, must have written pre-clearance for all transactions involving initial public offerings, private placements and certain publicly traded securities before executing the transactions. Tailwind may disapprove any proposed transaction, particularly if the transaction appears to pose a conflict of interest or otherwise appears improper. Tailwind also endeavors to maintain current and accurate records of all personal securities accounts of its Access Persons in an effort to monitor all such activity.

Tailwind, its employees or a related entity will have an investment in each Fund. For example, the general partner for each Fund is owned in part by Tailwind's partners. In addition, Tailwind and its general partners will participate in the Funds' investment programs by agreeing to commit a certain percentage of the Funds' total capital commitments or a certain amount as defined in the Funds' governing documents. Therefore, Tailwind, its employees or a related entity will indirectly participate in transactions effected for the Funds.

Exhibit 6.2—(McMahon, Hagenau, and Gitner's mafia RICO 18 USC 2, 157, 371, 1341, 1343, 1503, 1951(a), 1961(6)(B) and 1962(d) Overt and Predicate Acts). Collusion, conspiracy, and coordination of Jim Crow racially-motivated retaliatory, vindictive, and punitive moot void ab initio leave to file sanctions initiated in concert and by judicial collusion of Wendy L. Hagenau and Colleen McMahon—see 02cv2219 (SDNY), Dkt. 139, 139-1, and 139-2, *McMahon and her husband, Frank V. Sica, are both unregistered broker-dealers, personally owned more than $22 million in criminal usury convertible promissory notes similar to GX 1, GX 2, GX 3, and GX 4, according to records maintained by the Exec. Director, Administration of the U.S. Courts and the Judiciary*, as overt acts in furtherance of the conspiracy to commit bankruptcy fraud, Hobbs Act attempted armed robbery, armed aggravated assault and battery, conspiracy, and other crimes, 18 USC §§ 2, 156-157, 371, 924(c),1951, 1956-57, 1958-59, 1961(6)(B), and 1962(a-d). See In re Colleen McMahon, 02-24-90036jm (2d Cir.) re: Complaint of criminal judicial misconduct (Pending).



Exhibit 6.3—Dkt. 258 (RICO Overt and Predicate Act) page 3, **In re Group Management Corp.**, 03-93031 (BC NDGA) Chapter 11, Hagenau, C.J. re 18 USC §§ 157(2), (3) and 1961(6)(B) conspiracy to commit bankruptcy fraud.

Case 03-93031-wlh    Doc 258    Filed 10/26/22    Entered 10/27/22 00:47:40    Desc
Imaged Certificate of Notice    Page 3 of 54

There is no such thing as a contempt order for refusal to engage in the collection of a criminal usury debt in violation of 18 USC 1961(6)(B)--the order is not a "lawful" order.

District of New York in case no. 02-cv-2219 (S.D.N.Y.) ("SDNY Case"). The U.S. Trustee

See 18 USC 401(3), criminal contempt only applies to "lawful" orders-- accordingly, the U.S. v. Ware, 04cr1224 (SDNY) purported criminal contempt indictment is null and void ab initio

attached to the motion a copy of the Contempt Order issued in the SDNY Case which recited that

in November 2002, the Court had ordered the Debtor and Mr. Ware to honor the Subscribers'

conversion requests and that the conversion requests had not been honored. The court in the SDNY

Case ordered GMC and Mr. Ware to honor the conversion requests within three days or to pay the

Hobbs Act, 18 USC 1951(a) extortion

Subscribers $1,000/day until the requests were honored. The court also stated it would issue a

warrant for Mr. Ware's arrest to be committed to the U.S. Marshals' custody until the contempt

Hobbs Act 18 USC 1201-02 kidnapping

was purged. The U.S. Trustee alleged the bankruptcy filing was made for the "improper purpose

of obstructing and delaying creditors in the enforcement of their rights and remedies . . . and

without any bona fide reorganizational purpose[.]"

KTS' conspiracy to commit bankruptcy fraud and conspiracy to steal Chapter 11 estate assets: Dkt. 15 and Dkt. 16

On April 11, 2003, the Subscribers responded to the Motion to Reject Executory Contract,

see GX 5, para. 10.1(iv) devastating and dire legal, penal, and pecuniary consequences on Hagenau, KTS, and its clients.

through their counsel, Dennis Meir at Kilpatrick Stockton, contending the Subscription Agreement

was not executory because the court in the SDNY Case had issued a judgment on it. The

Subscribers filed their own Motion to Dismiss or, alternatively, a Motion for Relief from Stay, and

brief. The Subscribers also alleged the bankruptcy filing by GMC was in bad faith and for the

purpose of evading the orders in the SDNY Case and sought the dismissal of the case or relief

from the stay to enforce the order in the SDNY Case. Attached to the Motion was a form 8-K,

purportedly signed by Mr. Ware as Chief Executive, indicating that he had resigned from the board

of GMC effective March 17, 2003, and that Mr. Sinkfield was appointed to the board and was

acting CEO. The Subscribers asked that their Motion to Dismiss be heard at the same time as the

Debtor's Motion to Reject.

The Court moved forward with the hearing on the Motion to Reject on April 15, 2003. Mr.

Ware and GMC's counsel were present, and Mr. Ware testified extensively as to the Subscription

Note that Hagenau is being deceptive identifying KTS' unregistered broker-dealer clients as "Subscribers" rather than as unregistered broker-dealers to deceive the public.

Hagenau's judicial factfinding, judicial and collateral estoppel on KTS, Meir, Mill, Walker, and Kadaba--a judicial ruling of 18 USC 1961(6)(B) criminal usury unlawful debt collection activity during the 03-93031 Chapter 11--binding on KTS and Wab Kadaba regarding the Sept. 14, 2024, Bar grievance, ipso facto Bar Rule 4-202 "credible evidence."

Exhibit 7.0 (see attachment)—Tailwind Management L.P. Form ADV, March 30, 2024—that is, actual innocent Brady exculpatory evidence concealed and suppressed by Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP, Wab Kadaba, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Colleen McMahon, Daniel Gitner, Edgardo Ramos, and Wendy L. Hagenau in violation of the Aug. 10, 2007, Dkt. 32, *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order—18 USC 2, 371, and 401(2) and 401(3) civil and criminal contempt of a lawful Brady disclosure court order, cf., Ex. 6.2, supra (McMahon, Hagenau, and Gitner's conspiracy to obstruct justice overt and predicate acts.

Exhibit 8.0—Colleen McMahon, Frank V. Sica, Arie Rabinowitz, LH Financial Services, and Tailwind's illegal underwriting of criminal usury convertible promissory notes in violation of federal laws, 15 USC §77e, 77x, and 78ff.

Exhibit 8.1--Colleen McMahon and Frank v. Sica's Massive **_+$22,000,000 Personal Ownership_** in Hobbs Act RICO Criminal Usury Convertible Promissory Notes Underwritten in violation of 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff; and NYS Penal Law, section 190.40, the criminal usury law, **_a class E felony_**.

Exhibit 8.2: Judge McMahon's and convicted felon Edward M. Grushko's money laundering that involved unregistered broker-dealer and RICO unlawful debt creator and collector Alpha Capital, AG. What are Judge McMahon and her spouse, Frank V. Sica's relationship to Alpha Capital, AG, Kenneth A. Zitter (Harvard Law), Dennis S. Meir (Harvard Law), Thomas W. Thrash, Jr. (Harvard Law), LH Financial Services, Inc., and Ari Rabinowitz?



Exhibit 8.3: Money laundering by Edward M. Grushko, Alpha Capital, AG, and Judge Colleen McMahon in the Silver Dragon Resources, Inc. litigation.

as further set forth in said Order.) Show Cause Response due by 1/4/2008. Show Cause Hearing set for 1/9/2008 at 10:00 AM in Courtroom 21B, 500 Pearl Street, New York, NY 10007 before Judge Colleen McMahon. (Signed by Judge Colleen McMahon on 12/21/07) (db)

2 **Filed:** 12/20/2007, **Entered:** 12/28/2007    Rule 7.1 Corporate Disclosure Statement
RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Alpha Capital Ansalt.(laq)

1 **Filed:** 12/20/2007, **Entered:** 12/28/2007    Complaint
COMPLAINT against Silver Dragon Resources, Inc. (Filing Fee $ 350.00, Receipt Number 636599)Document filed by Alpha Capital Ansalt. (laq)

**Filed:** 12/20/2007, **Entered:** 12/28/2007    Case Designated ECF
Case Designated ECF. (laq)

**Filed:** 12/20/2007, **Entered:** 12/28/2007    Case Designation
Magistrate Judge Theodore H. Katz is so designated. (laq)

**Filed:** 12/20/2007, **Entered:** 12/28/2007    Summons Issued
SUMMONS ISSUED as to Silver Dragon Resources, Inc. (laq)

Exhibit 8.4: Reported 2020 income of Frank V. Sica.



(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.5: #103 2020 convertible promissory note valued between $500,000 and $1,000,000.

**FINANCIAL DISCLOSURE REPORT**
Page 10 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Place "(X)" after each asset exempt from prior disclosure | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 103. Monaco Inc(Conv. Promissory Note) N/C Topia Ltd Ser.D | | None | O | T | | | | | |
| 104. Romulus Capital II US Feeder LP | | None | N | U | | | | | |
| 105. Linx-Grammer Co LLC | C | Distribution | J | U | Sold (part) | 01/13/20 | J | | See Note # 1 |
| 106. | | | | | Sold (part) | 08/26/20 | J | | |
| 107. | | | | | Sold (part) | 09/11/20 | J | | |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.6: #113 2020 convertible promissory note valued between $100,001 – $250,000.

**FINANCIAL DISCLOSURE REPORT**
Page 12 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

**VII. INVESTMENTS and TRUSTS** -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 137. --Safebulkers Inc | | None | K | T | | | | | |
| 138. --Martin Pharmaceuticals, Inc (Convertible Note) | | None | M | T | | | | | |
| 139. --Kinderhook Capital Fund VI LP | | None | L | U | Buy (add'l) | 10/05/20 | K | | |
| 140. --Alliance Bernstein Holdings LP MLP | E | Distribution | N | U | Sold (part) | 12/30/20 | K | | See Note # 1 |
| 141. --Ares Capital Corp | E | Dividend | N | T | Sold (part) | 06/24/20 | O | | |

Exhibit 8.7: #142 2020 convertible promissory note valued between $100,001 – $250,000.

colleen-mcmahon-disclosure.2020.pdf                                12 / 37  —  125%  +

## FINANCIAL DISCLOSURE REPORT
Page 12 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

### VII. INVESTMENTS and TRUSTS -- Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 137. --Safebulkers Inc | | None | K | T | | | | | |
| 138. --Martin Pharmaceuticals,Inc(Convertible Note) | | None | M | T | | | | | |
| 139. --Kinderhook Capital Fund VI LP | | None | L | U | Buy (add'l) | 10/05/20 | K | | |
| 140. --Alliance Bernstein Holdings LP MLP | E | Distribution | N | U | Sold (part) | 12/30/20 | K | | See Note # 1 |
| 141. --Ares Capital Corp | E | Dividend | N | T | Sold (part) | 06/24/20 | O | | |
| 142. --Acreto Cloud Corp(Conv Promissory Note) | | None | L | T | Buy | 12/21/20 | L | | |

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.8: #204 2020 convertible promissory note valued between $500,001 – $1,000,000.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 202. Safebulkers Ser D 8 % Preferred | E | Dividend | M | T | | | |
| 203. ChartIQ LLC | | None | N | U | | | |
| 204. Transplant Genomics Inc (Convertible Note) | | None | | | Sold | 03/16/20 | O  G |

1. Income Gain Codes:   A =$1,000 or less   B =$1,001 - $2,500   C =$2,501 - $5,000   D =$5,001 - $15,000   E =$15,001 - $50,000
(See Columns B1 and D4)   F =$50,001 - $100,000   G =$100,001 - $1,000,000   H1 =$1,000,001 - $5,000,000   H2 =More than $5,000,000
2. Value Codes   J =$15,000 or less   K =$15,001 - $50,000   L =$50,001 - $100,000   M =$100,001 - $250,000
(See Columns C1 and D3)   N =$250,001 - $500,000   O =$500,001 - $1,000,000   P1 =$1,000,001 - $5,000,000   P2 =$5,000,001 - $25,000,000
P3 =$25,000,001 - $50,000,000   P4 =More than $50,000,000
3. Value Method Codes   Q =Appraisal   R =Cost (Real Estate Only)   S =Assessment   T =Cash Market
(See Column C2)   U =Book Value   V =Other   W =Estimated

**FINANCIAL DISCLOSURE REPORT**
Page 16 of 37

Name of Person Reporting: McMahon, Colleen

Date of Report: 08/12/2021

**VII. INVESTMENTS and TRUSTS** -- *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐   NONE *(No reportable income, assets, or transactions.)*

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.9: #219 2020 convertible promissory note valued between $100,001 – $250,000.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 219. Sensai Corp (Convertible Note) | . | None | M | T | | | | |
| 220. Cycle Pharmaceuticals LTD (Ser A Shares) | | None | P1 | T | Sold (part) | 10/15/20 | N | G |
| 221. Free ATM Inc (Ser A Preferred) | | None | K | T | | | | |

1. Income Gain Codes:
  (See Columns B1 and D4)
2. Value Codes
  (See Columns C1 and D3)

3. Value Method Codes
  (See Column C2)

| | | | |
|---|---|---|---|
| A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 |
| J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 |
| N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 |
| P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | |
| Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market |
| U =Book Value | V =Other | W =Estimated | |

**FINANCIAL DISCLOSURE REPORT**
Page 17 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.10: #220 2020 convertible promissory note valued between $15,001 - $50,000.

colleen-mcmahon-disclosure.2020.pdf    17 / 37    —    125%    +    ⊡    ⟳

## FINANCIAL DISCLOSURE REPORT
Page 17 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

### VII. INVESTMENTS and TRUSTS -- *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 222.  Engage Simply Inc (Convertible Note) | | None | K | T | | | | | |
| 223.  Build and Imagine LLC | C | Distribution | J | U | Sold (part) | 12/21/20 | J | | See Note # 1 |
| 224.  Linx-Transpro Co-Invest LLC | A | Distribution | M | U | Sold (part) | 09/11/20 | J | | See Note # 1 |
| 225.  Linx-Gullett Co-Invest LLC | | None | M | U | | | | | |
| 226.  50 Mast LLC | | None | M | U | | | | | |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.11: #244   2020 convertible promissory note valued between $500,001 - $1,000,000.

| FINANCIAL DISCLOSURE REPORT<br>Page 18 of 37 | Name of Person Reporting<br><br>McMahon, Colleen | | | Date of Report<br><br>08/12/2021 | | | |

## VII. INVESTMENTS and TRUSTS — *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A.<br>Description of Assets<br>(including trust assets)<br><br>Place "(X)" after each asset<br>exempt from prior disclosure | B.<br>Income during<br>reporting period | | C.<br>Gross value at end<br>of reporting period | | D.<br>Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1)<br>Amount<br>Code 1<br>(A-H) | (2)<br>Type (e.g.,<br>div., rent,<br>or int.) | (1)<br>Value<br>Code 2<br>(J-P) | (2)<br>Value<br>Method<br>Code 3<br>(Q-W) | (1)<br>Type (e.g.,<br>buy, sell,<br>redemption) | (2)<br>Date<br>mm/dd/yy | (3)<br>Value<br>Code 2<br>(J-P) | (4)<br>Gain<br>Code 1<br>(A-H) | (5)<br>Identity of<br>buyer/seller<br>(if private<br>transaction) |
| 239. | | | | | Buy<br>(add'l) | 08/18/20 | L | | |
| 240. | | | | | Sold<br>(part) | 02/21/20 | P1 | | |
| 241. Linx-CPT Co Invest LLC | B | Interest | L | U | Sold<br>(part) | 01/13/20 | J | | |
| 242. | | | | | Sold<br>(part) | 04/17/20 | J | | |
| 243. | | | | | Sold<br>(part) | 07/17/20 | J | | |
| 244. Oxy Docs, Inc (Conv Promissory Note) | | None | O | T | Buy<br>(add'l) | 09/17/20 | L | | |
| 245. Olympus Capital Asia Fd V LP | | None | O | U | Buy<br>(add'l) | 01/21/20 | K | | |

Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.12: #254   2020 convertible promissory note valued between $500,001 - $1,000,000.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 254.  Terafina Inc (Conv Promissory Note) | None | O | T | | | | |
| 255.  Highland Resort At the Peaks LLC | None | L | U | Sold (part) | 01/28/20 | J | |

| | | | | |
|---|---|---|---|---|
| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
| 2. Value Codes (See Columns C1 and D3) | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| FINANCIAL DISCLOSURE REPORT Page 19 of 37 | Name of Person Reporting McMahon, Colleen | Date of Report 08/12/2021 |
|---|---|---|

Page **141** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.13: #259   2020 convertible promissory note valued between $500,001 - $1,000,000.

**FINANCIAL DISCLOSURE REPORT**
Page 19 of 37

| Name of Person Reporting | | Date of Report |
| McMahon, Colleen | | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 256. Edward Jones Retirement MM(IRA) | A | Dividend | J | T | | | | | |
| 257. Fidelity (Cash) | A | Interest | L | T | | | | | |
| 258. Figue Holdings LLC | | None | | | Sold | 12/31/20 | J | | |
| 259. Gain Fitness Inc(Conv Note) | | None | M | T | | | | | |
| 260. Aisling Capital IV LP | E | Distribution | P1 | U | Buy (add'l) | 01/03/20 | K | | See Note # 1 |
| 261. | | | | | Buy (add'l) | 03/23/20 | K | | |
| 262. | | | | | Buy (add'l) | 08/10/20 | K | | |

Exhibit 8.14: #276, 277, and 279  2020 convertible promissory notes valued between $500,001 - $1,000,000.

| FINANCIAL DISCLOSURE REPORT Page 20 of 37 | Name of Person Reporting McMahon, Colleen | | | | | | | Date of Report 08/12/2021 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐  NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 273. Pulling Mills LLC | None | O | U | | | | | | |
| 274. Ram Realty IV LP | None | O | U | | | | | | |
| 275. Alpine-Gleenwood LP | None | | | | Closed | 12/31/20 | | | See Note # 11 |
| 276. BigID Inc (Conv Note) | None | M | T | | | | | | |
| 277. Lending Front Inc (Conv Note) | None | M | T | | | | | | |
| 278. Mine One GMBH (Ser A sh) (IRA) | None | M | T | | | | | | |
| 279. Relationship Capital Partners Inc (Conv Notes) | None | O | T | | | | | | |
| 280. PHRP LLC | | | | | | | | | See Note # 9 |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.15: ##297, 300, 302, and 304 2020 convertible promissory notes valued between $50,001 - $1,000,000.

| | | | | | | | | 412 |
|---|---|---|---|---|---|---|---|---|
| 297. | Relationship Capital Partners (IRA) (Convertible Promissory Note) | None | L | T | | | | |
| 298. | BRA Investor Fund 6 LP | None | M | U | | | | |
| 299. | Groupize Inc (Ser A-2 pfd) | None | O | T | Buy (add'l) | 08/13/20 | M | |
| 300. | Medaptive Health Inc (Conv Prom) | None | M | T | Buy (add'l) | 07/30/20 | K | |
| 301. | Shiftsmart Inc (Ser AA Preferred) | None | M | T | Buy (add'l) | 01/24/20 | L | |
| 302. | BondCliQ Inc (Conv Promissory Note) | None | M | T | | | | |
| 303. | Nextremity Solutions Inc (Ser B Preferred) | None | O | T | | | | |
| 304. | TG& L Holdings LLC(Convertible Note) | None | O | T | | | | |
| 305. | Entrepreneurs Expansion Fund III LP | None | M | U | Buy (add'l) | 02/28/20 | K | |
| 306. | Kinderhook V LP | None | P1 | U | Buy (add'l) | 07/27/20 | M | |

1. Income Gain Codes:
(See Columns H1 and D4)
2. Value Codes
(See Columns C1 and D3)
3. Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

| FINANCIAL DISCLOSURE REPORT Page 22 of 37 | Name of Person Reporting | Date of Report |
|---|---|---|
| | McMahon, Colleen | 08/12/2021 |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.16: #323 2020 convertible promissory note valued between 100,001 – $250,000.

| 320. | | | | | | Sold (part) | 12/23/20 | M | |
|---|---|---|---|---|---|---|---|---|---|
| 321. Parkstone Capital Partners III LP | | E | Distribution | N | U | Sold (part) | 11/23/20 | K | See Note # 1 |
| 322. 1101 Grundy Property Owner LLC | | | None | O | U | | | | |
| 323. Adaptive Management Inc (Convertible Promissory Note) | | | None | M | T | | | | |

1. Income Gain Codes:  A =$1,000 or less  B =$1,001 - $2,500  C =$2,501 - $5,000  D =$5,001 - $15,000  E =$15,001 - $50,000
   (See Columns B1 and D4)  F =$50,001 - $100,000  G =$100,001 - $1,000,000  H1 =$1,000,001 - $5,000,000  H2 =More than $5,000,000
2. Value Codes  J =$15,000 or less  K =$15,001 - $50,000  L =$50,001 - $100,000  M =$100,001 - $250,000
   (See Columns C1 and D3)  N =$250,001 - $500,000  O =$500,001 - $1,000,000  P1 =$1,000,001 - $5,000,000  P2 =$5,000,001 - $25,000,000
   P3 =$25,000,001 - $50,000,000
3. Value Method Codes  Q =Appraisal  R =Cost (Real Estate Only)  P4 =More than $50,000,000
   (See Column C2)  U =Book Value  V =Other  S =Assessment  T =Cash Market
   W =Estimated

| FINANCIAL DISCLOSURE REPORT | Name of Person Reporting | Date of Report |
|---|---|---|
| Page 23 of 37 | McMahon, Colleen | 08/12/2021 |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.17: ##327, 334, 336, 337, and 339  2020 convertible promissory notes valued between 50,001 - $500,000.

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 324. Blue Systems A.Y. Ltd (Ordinary) DBA Gabriel Networks | | None | L | T | Buy (add'l) | 04/01/20 | K | | |
| 325. B Hospitality Corp (Series Seed Preferred) | | None | M | T | Buy (add'l) | 02/11/20 | L | | |
| 326. Felix Gray Inc (Ser A-1 Preferred) | | None | M | T | | | | | |
| 327. findSisterhood Inc (Convertible Promissory Note) | | None | N | T | | | | | |
| 328. LA Aloe LLC | | None | | | Closed | 12/31/20 | | | See Note # 11 |
| 329. Linx-CTAM Co-Invest, LLC | | None | M | U | | | | | |
| 330. Plum Alley Syndicate XIII LLC | | None | M | U | | | | | |
| 331. Vitalis LLC | | None | M | U | | | | | |
| 332. Ladder Capital Corp (Com) (IRA) | E | Dividend | N | T | Buy (add'l) | 03/09/20 | M | | |
| 333. AG Team Partners II LP | | None | M | U | Buy (add'l) | 01/21/20 | K | | |
| 334. Martin Pharmaceuticals Inc (Convertible Promissory Note) | | None | M | T | | | | | |
| 335. Clarke (Mortgage) N/C | E | Interest | N | T | | | | | |
| 336. MiMeetings d/b/a 242 LLC (Convertible Promissory Note) | | None | L | T | | | | | |
| 337. Modumental Inc (Convertible Promissory Note) | | None | L | T | | | | | |
| 338. Popin Inc (Series Seed Preferred) | | None | | | Closed | 12/31/20 | | | See Note # 11 |
| 339. Second Screen Inc (Convertible Promissory Note) | | None | | | Sold | 09/04/20 | J | | |
| 340. SPC Vereco LP | | None | M | U | | | | | |

Exhibit 8.18: #376 2020 convertible promissory note valued between $250,001 – $500,000.

**FINANCIAL DISCLOSURE REPORT**
Page 26 of 37

Name of Person Reporting
McMahon, Colleen

Date of Report
08/12/2021

## VII. INVESTMENTS and TRUSTS -- *Income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 375. adTheorent Inc(X) | C | Distribution | | | Sold | 02/06/20 | J | | See Note # 1 & Note # 3 |
| 376. Presto (Convertible Promissory Notes) | | None | N | T | | | | | |
| 377. Airbud Technologies Inc( Seed Series Preferred)(N/C)Hydra AI | | None | M | T | Buy (add'l) | 08/14/20 | L | | |
| 378. Aising V LP | | None | P1 | U | Buy (add'l) | 02/06/20 | M | | |
| 379. | | | | | Buy (add'l) | 09/21/20 | M | | |
| 380. | | | | | Buy (add'l) | 10/23/20 | M | | |

Exhibit 8.19: #387 2020 convertible promissory note valued between $15,001 - $50,000.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | (part) | | |
| 387.  EVZDRP Inc (Convertible Note) | | None | K | T | | |
| 388.  Flank GP Fund | | None | P1 | U | Buy (add'l) | 06/03/20 | N |
| 389.  Linx-TGS Co-Invest LLC | C | Interest | M | U | Sold (part) | 01/13/20 | J |
| 390. | | | | | Sold (part) | 04/08/20 | J |
| 391. | | | | | Sold (part) | 07/07/20 | J |

1. Income Gain Codes:
(See Columns B1 and D4)

2. Value Codes
(See Columns C1 and D3)

3. Value Method Codes
(See Column C2)

A =$1,000 or less
F =$50,001 - $100,000
J =$15,000 or less
N =$250,001 - $500,000
P3 =$25,000,001 - $50,000,000
Q =Appraisal
U =Book Value

B =$1,001 - $2,500
G =$100,001 - $1,000,000
K =$15,001 - $50,000
O =$500,001 - $1,000,000

R =Cost (Real Estate Only)
V =Other

C =$2,501 - $5,000
H1 =$1,000,001 - $5,000,000
L =$50,001 - $100,000
P1 =$1,000,001 - $5,000,000
P4 =More than $50,000,000
S =Assessment
W =Estimated

D =$5,001 - $15,000
H2 =More than $5,000,000
M =$100,001 - $250,000
P2 =$5,000,001 - $25,000,000

T =Cash Market

E =$15,001 - $50,000

**FINANCIAL DISCLOSURE REPORT**
Page 27 of 37

Name of Person Reporting
McMahon, Colleen

Date of Report
08/12/2021

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.20: #425 2020 convertible promissory note valued between $100,001 - $250,000.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 422. | Biosymetrics Inc (Com) | None | L | T | Buy | 07/01/20 | L | |
| 423. | ChargingLedger Inc (Series Seed) | None | K | T | Buy | 04/14/20 | K | |
| 424. | Eluceda Ltd (Ordinary shares) | None | M | T | Buy | 10/27/20 | M | |
| 425. | Enalare Therropeutics Inc (Conv Promissory Note) | None | M | T | Buy | 12/23/20 | M | |

1. Income Gain Codes:
(See Columns B1 and D4)
2. Value Codes
(See Columns C1 and D3)

3. Value Method Codes
(See Column C2)

| A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|
| F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| U =Book Value | V =Other | W =Estimated | | |

**FINANCIAL DISCLOSURE REPORT**
Page 29 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.21: #427 2020 convertible promissory note valued between $250,001 - $500,000.

**FINANCIAL DISCLOSURE REPORT**
Page 29 of 37

| Name of Person Reporting | Date of Report |
|---|---|
| McMahon, Colleen | 08/12/2021 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 426. Hello Hazel (Series Seed) | | None | L | T | Buy | 12/18/20 | L | | |
| 427. Acredo Cloud Corp (Conv Promissory Note) | A | Interest | N | T | Buy | 12/08/20 | N | | |
| 428. Melitas Ventures Fund II LP | | None | L | U | Buy | 12/23/20 | L | | |
| 429. Nayya Health Inc (Ser A Preferred) | | None | L | T | Buy | 11/13/20 | L | | |
| 430. Qvale Technology Inc (Preferred Stock) | | None | M | T | Buy | 03/26/20 | M | | |

Exhibit 8.22: #520 2020 convertible promissory note valued between (not valued).

**FINANCIAL DISCLOSURE REPORT**
Page 34 of 37

Name of Person Reporting: McMahon, Colleen

Date of Report: 08/12/2021

## VII. INVESTMENTS and TRUSTS – *income, value, transactions (includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | C. Gross value at end of reporting period (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | D. Transactions during reporting period (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
|---|---|---|---|---|---|---|---|---|---|
| 511. --Synopsys Inc | | None | J | T | Buy | 12/03/20 | J | | |
| 512. --Taiwan Semiconductor Mfg Co | | None | K | T | Buy | 12/03/20 | K | | |
| 513. --Tencent Hldgs Ltd ADR | | None | J | T | Buy | 12/03/20 | J | | |
| 514. --Thermo Fisher Scientific Inc Com | | None | J | T | Buy | 12/03/20 | J | | |
| 515. --Verisk Analytics Inc Com | A | Dividend | J | T | Buy | 12/03/20 | J | | |
| 516. --Visa Inc Com | | None | J | T | Buy | 12/03/20 | J | | |
| 517. --West Pharmaceuticals Svcs Inc Com | | None | J | T | Buy | 12/03/20 | J | | |
| 518. --Nike Inc Cl B | | None | J | T | Buy | 12/03/20 | J | | |
| 519. Alpine Grove SV Partners LLC | | None | N | U | Buy | 12/24/20 | N | | |
| 520. Knoema Corp (Conv Promissory Note) | | None | | | Buy | 01/21/20 | K | | |
| 521. | | | | | | | | | |

Page **151** of **155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11,
13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

Exhibit 8.23—Trailblazer Merger Corp., I, Hobbs Act money laundering conduit arranged by LH Financial Services, Arie Rabinowitz, Loeb & Loeb, LLP, Mitchell Nussbaum, Esq., Alexandria Kane, Esq., Colleen McMahon, Edgardo Ramos, Jose A. Cabranes, Robert D. Sack, Amalya L. Kearse, Damian Williams, Frank V. Sica, Tailwind Capital Management LLP, and other unindicted coconspirators to launder the profits and proceeds derived from Hobbs Act extortion, loan sharking, kidnapping, murder for hire, bribery, bank fraud, private equity fraud, securities fraud, and other racketeering activities.



(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

End of document

(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

# Certificate of Service

I Ulysses T. Ware certify that I have this 27th day of January 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munto for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[29] and 5005(b)(1) with the U.S. Trustee.[30]

cc:    Office of the U.S. Trustee, Region 21 (Ida Mae Townsend)

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[31]

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III,

---

[29] *With a Judge of the Court.* A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[30] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[31] **Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.**

Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

Acting Director of the FBI (via Ida Mae Townsend, Esq.)

*/s/ Ulysses T. Ware*

**January 27, 2025**

# End of document

# Case No. 03-93031

# United States Bankruptcy Court (12-0)
# For the Northern District of Georgia
# (Atlanta Division)

**Submitted for Filing on**
**Monday, January 27, 2025, 9:06:11 AM**

F-3A

_____

## In re Group Management Corp.
## Chapter 11

## Cover letter: Movants' 11 USC 1109(b) Statutory Parties in Interest Group Management and Ulysses T. Ware's Bankr. Rule 9014 and Rule 12(h)(3)  Contested Matter.[1]

Submitted by:

/s/ Ulysses T. Ware
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
**Monday, January 27, 2025**

---

[1] The Movants' challenge to the Bankruptcy Court (NDGA) *In re Group Management Corp.,* 03-93031 Chapter 11 Article III jurisdiction over **predatory criminal usury unlawful debts subject matter**, GX 1-4; and (2) challenge to the Article III standing of the 02cv2219 (SDNY) plaintiffs, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP clients, see Dkt. 11, **unregistered broker-dealers**. Cf., Ex. 3, infra. What legitimate and lawful interest woula a United States Bankruptcy Court (Ellis-Munro, C.J. and Hagenau, C.J.) have in not *sua sponte* affirmatively confirming the Court's mandatory unwaivable constitutional jurisdiction to adjudicate the Dkt. 6, 11, 13, 14, 15, and 16 proceedings with respect to fundamental constitutional prerequisites—"legally protected interest" in criminal usury convertible promissory notes--in *predatory criminal usury unlawful debts*, GX 1-4, and (2) the Article III standing of KTS' *unregistered broker-dealers clients to enforce and/or collect GX 1-4*? *No legitimate interest exists*. If no legitimate interest exists, then any alleged interest, by definition. must be nefarious, corrupt, perfidious, and illegitimate—that is, *an unlawful interest*.

The Honorable Barbara Ellis-Munro, Chief Judge
United States Bankruptcy Court
Northern District of Georgia
Atlanta Division
Richard B. Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Re: *In re Group Management Corp.,* Chapter 11 Debtor, Case No. 03-93031 (WLH) – Movants' Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Certain Orders for Lack of Article III Standing and Subject Matter Jurisdiction**

**Dear Chief Judge Ellis-Munro:**

We are writing to you today on behalf of our clients, Movants Ulysses T. Ware and Group Management ("GPMT" or "Debtor"), to respectfully submit the attached Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Certain Orders (the "Motion"). This letter serves to provide the Court with a comprehensive overview of the critical Article III jurisdictional arguments presented within the Motion, arguments which we believe are dispositive and warrant immediate judicial attention, ***sua sponte***, as a threshold matter in this long-standing case.

As detailed in the accompanying Memorandum of Law, our Motion is fundamentally grounded in the irrefutable principle, established by the Supreme Court in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-95 (1998), and reiterated in subsequent landmark decisions such as *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07, 514 (2006), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), ***that Article III standing is an indispensable prerequisite for federal court jurisdiction***. Rule 12(h)(3) of the Federal Rules of Civil Procedure, directly applicable in bankruptcy proceedings, compels this Court to address and resolve any question of subject matter jurisdiction, ***even sua sponte, at any stage of the litigation***. We submit that KTS' clients (Kenneth A. Zitter, Dennis S. Meir, John W. Mills, III, Wab Kadaba, J. Henry Walker, IV, convicted felon Edward M. Grushko, Lawrence B. Mandala, Barbara R. Mittman, and Arie Rabinowitz), the purported claimants in this case stemming from Documents 11, 15, and 16, unequivocally lack Article III standing, ***thereby divesting this esteemed Court of subject matter jurisdiction over their claims from the inception of this Chapter 11 proceeding***.

The crux of our jurisdictional challenge lies in the demonstrably illegal and void *ab initio* nature of the ***predatory criminal usury convertible promissory notes***, GX 1, GX 2, GX 3, and GX 4, which form the sole basis for KTS' clients' purported creditor status. As meticulously detailed in the Motion and its exhibits, these notes represent criminally usurious debt instruments under New York Penal Law § 190.40, ***a class E felony***, bearing interest rates exceeding 2000% per annum. Such contracts, under established New York law and public policy, are not merely voidable, ***but legally nonexistent from their inception, conferring no "legally protected interest" upon their holders.***

Furthermore, the record establishes, through FINRA's binding regulatory finding (Exhibit 3 to the Motion), that KTS' clients operated as unregistered broker-dealers in violation of 15 U.S.C. § 78o(a)(1). Transactions arising from such illegal securities activities are likewise void and unenforceable under federal law, as elucidated in SEC Release 33-7190 n. 17 (1995). Notably, KTS' clients themselves, in their complaint in the related *02cv2219 (SDNY)* litigation (see Complaint paras. 12-13 and GX 5, para. 10.1(iv)), ***made binding judicial admissions that unequivocally identify them as "Section 2(a)(11) statutory underwriters" of the Debtor, Group Management's, securities***. These admissions, under established legal principles, effectively pleaded them out of federal court, further underscoring the absence of any legitimate legal basis for their claims.

We emphasize that the purported "injury" claimed by KTS' clients – the inability to enforce these illegal instruments – does not constitute a "legally protected interest" that incurred a "concrete injury in fact" traceable to any lawful conduct by Group Management or Mr. Ware. Instead, it is a direct consequence of their own illicit criminal actions in attempting to enforce criminally usurious and illegally transacted debts. ***Group Management and Mr. Ware acted lawfully and ethically in refusing to issue fraudulent and bogus Rule 144(k) legal opinions that would have facilitated a criminal unregistered public offering of GPMT's equity securities, thereby preventing a blatant violation of federal securities laws, including 15 U.S.C. §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78ff, and 78cc(b).***

Moreover, we respectfully remind the Court of Judge Sand's binding judicial ruling and court order of August 13, 2003 (Exhibit 1 to the Motion), ***which conferred statutory insider status*** under 15 U.S.C. § 78p(b) upon each of KTS' clients. This ruling triggered the mandatory disgorgement and turnover provisions of 15 U.S.C. § 78p(b) and 11 U.S.C. § 542(a), (e), ***requiring the turnover of over +$522 million in strict-liability insider-trading profits to the Chapter 11 estate***, as affirmed by the Second Circuit in *Roth v. Jennings*, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.). This prior unappealed ruling further demonstrates the fundamentally flawed and legally untenable nature of KTS' clients' claims in this proceeding.

We further bring to the Court's attention the statutory and ethical duties incumbent upon the U.S. Trustee, as codified in 28 U.S.C. § 586(a)(3)(F), and under the District Court (NDGA) and the State Bar of Georgia Rules of Professional Conduct, specifically Rule 3.3(a)(1) (duty of candor to the tribunal) and Rule 8.4 (regarding fraud, deceit, and misrepresentation). ***We believe the U.S. Trustee has a compelling obligation to thoroughly investigate and address the manifest bad faith, fraudulent nature, and vexatious character of the pleadings filed by KTS' clients (Documents 6, 11, 13, 14, 15, and 16), which constitute egregious violations of Bankruptcy Rule 9011(b)(1-4) and 28 U.S.C. § 1927.***

In light of the foregoing, we respectfully urge the Court to grant the Motion in its entirety and enter the Proposed Joint Unopposed Consent Order, attached as Exhibit V to the Motion. Promptly addressing and rectifying this fundamental jurisdictional defect is not only legally mandated but also essential to uphold the integrity of the bankruptcy system and prevent the Court from being utilized as a forum for the enforcement of illegal and void claims.

We thank the Court for its time and consideration of this critical matter and stand ready to assist the Court in any way necessary to facilitate its expeditious and just resolution.

Respectfully submitted,

/s/ Ulysses T. Ware

Ulysses T. Ware

*For Movants Ulysses T. Ware and Group Management Corp.*

**Enclosures:** Movants' Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Certain Orders

cc:     U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council
        Administrative Office of the U.S. Courts, Executive Director
        Office of the U.S. Trustee, Region 21, (Ida Mae Townsend, Esq.)
        Financial Industry Regulatory Agency (FINRA) on behalf of the Securities and Exchange Commission (Marcia E. Asquith, Esq.)
        State Bar of Georgia, Office of the General Counsel (William D. NeSmith, III) on behalf of the Supreme Court of Georgia, Office of the Chief Justice, the Hon. Michael P. Boggs
        Edward T.M. Garland on behalf of Garland, Samuel, & Loeb, P.C. and affiliates
        Nall & Miller, LLP
        Kilpatrick, Townsend, & Stockton, LLP on behalf of its clients, the 02cv2219 (SDNY) plaintiffs
        Unregistered broker-dealers Arie Rabinowitz on behalf of LH Financial Services Corp., Trailblazer Merger Corp., I
        Unregistered broker-dealers Frank V. Sica on behalf of Tailwind Management L.P., Colleen McMahon, and Michael S. Bertisch (see Ex. 10)

# Case Number: 03-93031 (WLH), Chapter 11 (11)
### Submitted for docketing on January 23, 2025, 2:36:45 PM

### United States Bankruptcy Court
### For the Northern District of Georgia
### Atlanta Division

# F-4

## *In re Group Management Corp.*, Chapter 11 Debtor

## Part 13-10—Interested Parties' Chapter 11 +$522 Million Estate Asset Recovery Plan[1]

**Movants' Memorandum of Law 1.0 in Support of: Notice of Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275 (Hagenau, C.J.) for: (1) Fraud on the Court, (2) Null and Void Ab initio, (3) Lack of Article III Standing and Subject Matter Jurisdiction over Criminal Usury Subject Matter; and (4) Ulysses T. Ware and Group Management's Notice of Exercise of 11 USC § 1109(b) Right to Appear, be Heard, and Raise any Issue in 03-93031; and (5) Request for a Mandatory 11 USC § 105(d)(1) Status Conference.[2]**

*Ulysses L. Ware* (signature)

[1] See 11 USC § 542(a): Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property [+$522 million in insider-trading profits] that the trustee may use, sell, or lease under <u>section 363 of this title</u>, or that the debtor may exempt under <u>section 522 of this title</u>, ***shall deliver to the trustee, and account for, such property or the value of such property [+$522 million], unless such property is of inconsequential value or benefit to the estate***.

11 USC § 542(e): Subject to any applicable privilege, after notice and a hearing, the court may order an attorney [KTS, Kenneth A. Zitter, Dennis S. Meir, John W. Mills, III, Wab Kadaba, and J. Henry Walker, IV, convicted felon Edward M. Grushko, Lawrence B. Mandala, and Barbara R. Mittman], accountant, or other person [Arie Rabinowitz] that holds recorded information, including books, documents, records, and papers, ***relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee*** [or debtor in possession]. See Section 3.2(5), infra.

[2] **(d).** The court, on its own motion or <u>**on the request of a party in interest**</u>—(1) ***shall hold*** such status conferences as are necessary to further the ***expeditious and economical*** resolution of the case.

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# Table of Contents

**Bankr. Rule 5005 (a)(2)** ...................................................................................................... 5

**A.    Notice of Filing and Submission** ............................................................................ 5

**Memorandum of Law 1.0** .................................................................................................. 9

   I. QUESTION PRESENTED .......................................................................................... 9

   II. BRIEF ANSWER ...................................................................................................... 9

   III. FACTUAL BACKGROUND ................................................................................... 10

   IV. LEGAL ANALYSIS ............................................................................................... 12

      A. Article III Standing: "Concrete *Injury* in Fact" as a Constitutional Prerequisite .......... 12

      B. Criminal Usury Debt Contracts that Are Void *Ab Initio* Confer No Legally Protected Interest ...... 14

      C.    KTS' Clients' Alleged "Injury" Is *Self-Inflicted* and Not Cognizable Under Article III as a Live Case or Controversy. .................................................................... 17

      D. Consequence: No Article III Subject Matter Jurisdiction in the 03-93031 Bankruptcy Court ........ 19

      E. Policy Considerations and the Purpose of the Bankruptcy Code ................................ 20

   V. CONCLUSION .......................................................................................................... 20

**F.    Exhibits—Supplemental Record** ........................................................................... 22

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *statutory insider status* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *unregistered broker-dealer* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities. ........................................................................................................ 23

   **Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**— Judge Sand in ex parte communications found each KTS client to be a 15 USC §78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore*, ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*. ........................................................................................ 24

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment— December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*. ................................................ 26

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court,  pursuant to**

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. ............................................................................................... 28

Exhibit 4--*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers. see Dkt. 11 (03-93031) (BC NDGA), KTS' entry of appearance... 29

**Certificate of Service**................................................................................................................ 30

**End of document** .................................................................................................................... 31

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

**Thursday, January 23, 2025**

**Via email to: USTP.Region21@usdoj.gov and ustrustee.program@usdoj.gov**[3]
**Ms. Ida Mae Townsend and**
**Ms. R. Jeneane Treace, jeneane.treace@usdoj.gov**
U.S. Trustee and Assistant U.S. Trustee, Region 21
Office of the United States Trustee Program
362 Richard Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Via email: BEMChambers@ganb.uscourts.gov**[4]
Office of the Chief Bankruptcy Judge (NDGA)[5]
The Hon. Barbara Ellis-Monro
Richard Russell U.S. Courthouse
75 Ted Tuner Dr., SW
Atlanta, GA 30303

*Re:*    *In re Group Management Corp.,* Case No. 03-93031 (BC NDGA) –
Notice of Exercise of Rights Under 11 U.S.C. § 1109(b), Ongoing Violations of 18
U.S.C. § 2071(a), (b), and Civil & Criminal Contempt of Rule 41(a)(2) Final Judgment;
and Request for 11 USC § 105(d)(1) Status Conference.

---

[3] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by
using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule
provides otherwise.

[4] (2) **With a Judge of the Court.** A judge may personally accept for filing a paper listed in (1) ("motions"
or "applications"). *The judge must note on it the date of filing and promptly send it to the clerk*.

[5] The Debtor and Mr. Ware have been informed that *unindicted coconspirator* former Bankruptcy Judge
(NDGA) Wendy L Hagenau as of May 24, 2024, *she is no longer employed as a bankruptcy judge or
judicial officer anywhere in the United States rumored to have been terminated for conspiracy to commit
and engage in bankruptcy fraud and criminal judicial misconduct*.

Page **4** of 31
Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered
broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or
enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# Bankr. Rule 5005 (a)(2)

# A.    Notice of Filing and Submission

January 23, 2025

**Via Bankr. Rule 5005(a)(2) Electronic Filing**

The Honorable Barbara Ellis-Munro
U.S. Bankruptcy Court, Northern District of Georgia
Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Via email to: USTP.Region21@usdoj.gov and ustrustee.program@usdoj.gov**[6]
**Ms. Ida Mae Townsend and**
**Ms. R. Jeneane Treace, jeneane.treace@usdoj.gov**
U.S. Trustee and Assistant U.S. Trustee, Region 21
Office of the United States Trustee Program
362 Richard Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

Dear Judge Ellis-Munro:

The Movants write to inform the Court in regard to the following: Pursuant to Bankruptcy

Rule 5005(a)(2), the undersigned statutory parties in interest, Mr. Ware and Group Management

Corp. ("Group Management"), respectfully submit for your direct attention the enclosed judicial

public record for filing, docketing, and adjudication on the merits in the Chapter 11 Case No. 03-

93031—Movants' Memorandum of Law 1.0 (Analysis of KTS' ***unregistered  broker-dealer***

---

[6] **(b) Sending Copies to the United States Trustee.**
(1) ***Papers Sent Electronically.*** All papers required to be sent to the United States trustee may be sent by
using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule
provides otherwise.

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered
broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or
enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

clients' lack of Article III standing to have appeared in 03-93031, Dkt. 11, and to have sought redressable judicial relief, Dkt. 15 and Dkt. 16, ***which rendered all purported orders*** (Dkt. 28, 256, 258, 263, 274, and 275) in favor of KTS' racketeering clients ipso facto null and void ab initio and moot).

In accordance with 18 U.S.C. §§ 2071(a) and (b), we hereby request that you confirm receipt and immediately file and docket this pleading via the PACER system, no later than today, January 23, 2025, as required by law. Should you have any questions regarding this or other judicial pleadings previously submitted for proper docketing and adjudication, please contact the undersigned, who will gladly elucidate every prior submission.

Additionally, we request written notice to all interested parties—filed on the official **03-93031** docket—of a mandatory **11 U.S.C. § 105(d)(1)** status conference, so that these proceedings may continue in a transparent and timely manner.



Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# Please be advised, take notice, and be aware.

Comes now Ulysses T. Ware and Group Management, the Petitioners, and gives notice in regard to the following action in 03-93031, to wit:

1.       The undersigned and Group Management, the Debtor, jointly, 11 USC § 1109(b) statutory parties in interest, jointly, (the "Petitioners"), hereby this 23rd day of January 2025 gives notice to the Bankruptcy Court, the U.S. Trustee, Kilpatrick, Townsend, & Stockton, LLP, its clients, and all interest parties the Petitioners will forthwith move in the U.S. Bankruptcy Court (NDGA), 03-93031 to strike, vacate, set aside, and annul, ***nunc pro tunc***, March 18, 2003, Dkt. 11, 13, 14, 15, 28, 256, 258, 263, 274, and 275 (Hagenau, C.J.), as ipso facto as a matter of law and fact ***null and void ab initio and moot***—that is, the Petitioners are the Final Judgment Prevailing Parties by binding final judgment, Dkt. 90, 02cv2219 (SDNY), see Ex. 1, 2, and 3 infra, (2) the $125 million counterclaim final judgment's prevailing parties by Judge Sand's Dec. 20, 2007, Dkt. 90, final judgment, see Ex. 2, infra, and protected by the binding preclusive effects of res judicata, collateral estoppel, and the estoppel doctrines from any entry of the moot Dkt. 11, 13, 14, 15, 28, 256, 258, 274, and 275, all lack validity and any preclusive effect. See ***Federated Dept. Stores***, 452 U.S. at 398, 401-02 (explaining the absolute binding "salutary" principles of res judicata and its binding effects on all courts, the parties, and their privies in all subsequent proceedings between the parties or their privies).

2.       Any party wishing to oppose, challenge, or object to the Motion to Vacate, Set Aside, and Annul must serve all good faith Bankr. Rule 9011(b)(1-4) and 28 USC §1927 objections on the

Page **7** of **31**
Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

Petitioners **not later than Friday, January 24, 2025, at 11:00 AM EST, time is of the essence**,

by email to utware07@gmail.com, else ***the Petitioners will present to the Court an unopposed***

***motion and order for entry on the docket.***

3.      Enclosed is the Movants' Memorandum of Law 1.0 for your review, analysis, and response

if any. If there are any good faith Bankr. Rule 9011(b)(1-4) and 28 USC § 1927 objections,

opposition to, or challenges to the Movants' Article III standing and jurisdiction application--note

that KTS clients are petitioners in Dkt. 15 and Dkt. 16 and therefore have the burden of proof and

production to affirmatively establish standing and jurisdiction, see ***Steel Co.,*** 523 U.S. at 93-95,

and cf., Lujan, 504 U.S. at 560-61,  your objections or opposition, if any, are due **not later than**

**Friday, January 24, 2025, at 11:00 AM EST, time is of the essence**.

*/s/ Ulysses T. Ware*

January 23, 2025

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# Memorandum of Law 1.0

**TO:** U.S. Bankruptcy Court (NDGA), *In re Group Management Corp.*, 03-93031, Chapter 11

**FROM:** Ulysses T. Ware and Group Management, (the "Movants").

**DATE:** January 23, 2025

**RE:** Article III Standing Analysis – *In re Group Management Corp.*, Case No. 03-93031 (WLH)

(Bankr. N.D. Ga.): Absence of a Cognizable "Injury in Fact" for KTS' Clients

---

## I. QUESTION PRESENTED

Whether KTS' clients, as purported holders of promissory notes proven to be criminally usurious under New York Penal Law, section 190.40, the criminal usury law, a class E felony, and transacted in violation of federal broker-dealer registration requirements, 15 USC § 78o(a)(1), can establish a legally cognizable "concrete ***injury*** in fact" under Article III of the U.S. Constitution— and thereby (1) confer Article III standing on KTS' clients; and (2) confer subject matter jurisdiction upon the Bankruptcy Court for the Northern District of Georgia in *In re Group Management Corp.*, Case No. 03-93031 (WLH) (Bankr. N.D. Ga.)?

---

## II. BRIEF ANSWER

No. Because the promissory notes at issue, GX 1-4, are (1) allegedly criminally usurious under New York Penal Law § 190.40, rendering them null and void ab initio and unenforceable, and (2) derived from unregistered securities transactions in contravention of federal law (15 U.S.C. § 78o(a)(1)), KTS' clients lack *a cognizable legal interest* in their, GX 1-4, collection or

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

enforcement. Article III's "injury in fact" requirement demands that the *asserted harm* implicate a "legally protected interest." Contracts that are void or illegal under state or federal law fail to create such a legally cognizable interest under Article III. Consequently, KTS' clients have no legitimate grounds upon which to claim ***an actionable injury*** in federal court, depriving the Bankruptcy Court of subject matter jurisdiction from the outset and rendering any orders in their favor null and void ab initio, without vitality, and moot. ***Steel Co.***, 523 U.S. at 93-95.[7]

---

## III. FACTUAL BACKGROUND

### 1. **Bankruptcy Proceedings**

On March 18, 2003, *Group Management Corp.* (the "Debtor") while on a daily basis being threatened with violence, bullied, and harassed by Kenneth A. Zitter, Arie Rabinowitz, Leonard B. Sand, Jeffrey B. Norris of the SEC, Alexander H. Southwell, and convicted felon Edward M. Grushko, Esq. Group Management Corp. was forced to and did file for bankruptcy protection under Chapter 11 in the Northern District of Georgia, Case No. 03-93031 (WLH) (Bankr. N.D. Ga.). The schedules, statements, and claims filed in this proceeding listed numerous promissory notes held by various creditors. KTS' clients—the 02cv2219 (SDNY) plaintiffs, appeared in 03-

---

[7] "Without jurisdiction, ***the [federal] court cannot proceed at all in any cause.*** Jurisdiction is power to declare the law, ***and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.***" (523 U.S. at 94, quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869))." Moreover the Court explained, Id., "**The Court held that for an injury to be redressable, there must be a likelihood that *the relief sought would rectify the alleged harm***". A judicial order to pay fines to the government does not satisfy the redressability prong for Article III standing when plaintiffs would receive no personal relief."). The lack of "harm" to KTS' clients therefore prohibited any "redressable reliefs" from being entered by the 02cv2219 (SDNY) district court (e.g., GX 11, GX 24, and GX 34) and the 03-93031 bankruptcy court (e.g., Dkt. 28, 256, 258, 263, 274, and 275), jointly the null and void ab initio and moot judgments and orders

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

93031, Dkt. 11, on April 10, 2003, and emerged as fraudulent and illegal claimants seeking to collect on certain criminal usury convertible notes (GX 1–4), in violation of 18 USC §§2, 152, 157, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1512, 1519, 1961(a), 1961(6)(B), 1956057, 1958-59, 1962(a-d), and 2071(a), (b), see Dkt. 15 and 16—a pattern of racketeering activities in furtherance of the ***Hobbs Act racketeering loan sharking and money laundering conspiracy run by KTS' clients***, see Ex. 3 and Ex. 4, infra,

### 2. Alleged Criminal Usury

In the course of a thorough Bankr Rule 9011(b)(1-4) and 28 USC § 1927 investigation regarding the legality and the validity of KTS' clients' suspect claims, the Debtor and other parties in interest have presented documentary evidence and legal analysis to the Court proving that the interest rates charged (2,000%) on the convertible promissory notes (GX 1-4) greatly exceeded the 25% per annum threshold set forth in New York Penal Law § 190.40. The Debtor further alleged that the effective annual rate of interest—often disguised through default provisions, penalty rates, or convertible pricing terms—rendered these notes not merely voidable but *void ab initio* as criminally usurious under New York Penal Law, section 190.40 and ***Adar Bays,*** Id. This was corroborated by a prior ruling from Judge Sand in the Southern District of New York, in which he referenced aspects of KTS' clients' lending practices that appeared usurious on their face—see Sand, J.'s 02cv2219 (SDNY) Nov. 2002 Memorandum Opinion analyzing GX 5's terms and conditions.

### 3. Unregistered Broker-Dealer Activities

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

Additionally, in May 2021, ***FINRA's custodian of record Maria E. Asquith, Esq. issued a binding regulatory finding*** (Ex. 3) that KTS' clients had operated as unregistered broker-dealers, conducting numerous securities transactions without proper licensure in violation of 15 U.S.C. § 78o(a)(1), see Ex. 4, infra, The convertible promissory notes (GX 1-4), which had been structured as criminal usury convertible instruments to acquire Debtor's stock (50,000,000 shares), were thus tainted by securities law infractions, 15 USC §§ 77d, 77e, 77b(a)(11), 78o(a)(1), and 78p(b). In the eyes of federal courts, profits or interests derived from such criminal usury transactions, see 18 USC § 1961(6)(B), are not legally cognizable property rights.

### 4. Motion to Annul, Vacate, and Set Aside

Following these developments, the Debtor and Mr. Ware, 11 USC 1109(b) statutory parties in interest, currently propose to file in 03-93031 a Motion to Annul, Vacate, and Set Aside certain orders and claims allowances premised on KTS' clients' null and void ab initio criminal usury notes (GX 1-4). The Debtor contends that KTS' clients, by relying on criminally usurious instruments (GX 1-4) and illegal securities transactions, lacked Article III standing ab initio, thereby depriving the Bankruptcy Court of constitutional and statutory jurisdiction to grant any relief, Dkt, 28, 256, 258, 263, 274, and 275 (the "Moot Orders").

---

## IV. LEGAL ANALYSIS

A. Article III Standing: "Concrete *Injury* in Fact" as a Constitutional Prerequisite

Article III of the United States Constitution restricts the lawful jurisdiction of federal courts— including bankruptcy courts, which are "units" of the district courts, see 28 U.S.C. § 151—to live

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

"cases" and "controversies." A central element of the "case or controversy" requirement is that a plaintiff (or petitioner—KTS'·clients, see Dkt. 11, 15, and 16) affirmatively "as a threshold matter" before the federal court is permitted to adjudicate the merits of the claims (i.e., see *Steel Co.,* 523 U.S. at 94-95) demonstrate standing. Under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992), a (plaintiff/petitioner) *__real party in interest__* must show:

1. **Injury in Fact** – a concrete, *__particularized__*, and actual or imminent *injury* to *__a legally protected interes__*t;[8]

2. **Causation** – a causal connection between the alleged *__injury__* and the defendant's conduct; and

3. **Redressability** – a likelihood that the requested judicial relief will remedy the alleged *__injury__*.

Federal courts *uniformly interpret* "**injury in fact**" to necessitate more than a speculative or hypothetical grievance; *the harm*[9] must be to *__an interest recognized by law__*. *Spokeo, Inc. v.*

---

[8] Ipso facto as a matter of law and fact prior to entering its appearance in 03-93031 KTS and the U.S. Trustee, James H. Morawetz, and the Bankruptcy Judge (Margaret H. Murphy) all knew or were recklessly willfully blind that KTS' clients who appeared in the 03-93031 Chapter 11, Dkt. 11, *__had no legally protected interest or legal rights in null and void ab initio criminal usury convertible promissory notes, GX 1-4, which the Bankruptcy Court was permitted to enforce or grant any relief to enforce GX 1-4 via redressable judicial relief.__*

[9] To date KTS nor its clients have ever in any pleading provided proof of any "harm" suffered by its clients, suffered by unregistered broker-dealers derived from attempted collection or enforcement—*__a right or interest recognized by law__*, in regard to null and void ab initio criminal usury convertible promissory notes, GX 1-4. Proof of "harm" to KTS' clients cannot and does not as a matter of law and fact exist—therefore, the 03-93031, 04cr1224 (SDNY), and 02cv2219 (SDNY) federal courts never possessed Article III jurisdiction over their proceedings which are ipso facto void ab initio and moot. *Steel Co.*, 523 U.S. at 93-95.

*Robins*, 578 U.S. 330, 339–40 (2016).[10] Where the alleged "injury" or "harm" stems from KTS'

clients' racketeering loan sharking and money laundering crimes and illegal conduct, or contracts

that are illegal or void (GX 1-4, and GX 5) ***such purported harm <u>is not</u> considered a "legally***

***protected interest" under either state or federal law***. *Steel Co. v. Citizens for a Better Env't*, 523

U.S. 83, 102–03 (1998) (emphasizing that standing requires ***<u>an injury</u>*** recognized at law).[11]

B. Criminal Usury Debt Contracts that Are Void *Ab Initio* Confer No Legally Protected Interest

    1.  **Criminal Usury Under New York Penal Law, section 190.40, a class E felony.**

Under New York Penal Law § 190.40, any note (GX 1-4) bearing an interest rate above 25%

per annum ***<u>is criminally usurious</u>***.[12] New York courts have long held that such agreements are not

merely voidable—***<u>they are void ab initio, meaning they are treated as if they never existed</u>***. *Adar*

*Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379 (2d Cir. 2022). ***<u>Because these contracts, GX 1-4,</u>***

***<u>and GX 5 are contrary to public policy, courts refuse to recognize any legal right stemming from</u>***

***<u>them</u>***. *See Seeman v. Philadelphia Warehouse Co.*, 274 U.S. 403, 408 (1927) (noting that usurious

contracts are disfavored as a matter of policy) ("As thus stated, the qualification, if taken too

literally, would destroy the rules themselves, ***for they obviously are to be invoked only to save the***

---

[10] The Supreme Court vacated. ***<u>A plaintiff</u>*** invoking federal jurisdiction bears the burden of establishing the "irreducible constitutional minimum" of standing ***<u>by demonstrating an injury in fact</u>***, fairly traceable to the defendant's challenged conduct, ***<u>likely to be redressed</u>*** by a favorable judicial decision. A plaintiff must show that he suffered "***<u>an invasion of a legally protected interest</u>***" that is "***<u>concrete and particularized</u>***" and "actual or imminent, not conjectural or hypothetical."

[11] In fact the law strictly prohibits KTS' client from any collection attempts, Dkt. 11, 15, and 16, with respect to predatory criminal usury unlawful debts, see NYS Penal Law, section 190.40, the criminal usury law, a class E felony; and see federal racketeering law, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d).

[12] See 18 USC § 1961(6)(B), the collection or attempted collection of GX 1, GX 2, GX 3, and GX 4 by KTS and its client via Dkt. 11, 15, and 16, and the U.S. Trustee via Dkt. 6, and 13 in 03-93031 constitutes overt and predicate acts of racketeering activities.

contract *from the operation of the usury laws* of the one jurisdiction or the other. *The effect of the qualification is merely to prevent the evasion or avoidance at will of the usury law* otherwise applicable by the parties' entering into the contract or stipulating for its performance at a place which has no normal relation to the transaction and to whose law they would not otherwise be subject.".[13] (emphasis added).

Thus, given that the record is undisputed and effectively stipulated by KTS' clients, that KTS' clients' convertible promissory notes (GX 1-4) did, in fact, exceed the 25% annual interest threshold—whether expressly or via disguised fees, penalties, or conversion formulas—*GX 1-4 are ipso facto criminally usurious under New York law, null and void ab initio, unenforceable, and are not required to be repaid*, *Adar Bays*, Id.

That *criminal usury classification* is fatal to Article III standing and subject matter jurisdiction in the federal or state courts, and accordingly, ipso facto, deprived KTS' clients of *a legally protected interest*—a lawful claim in the Chapter 11 estate or a lawful cause of action in the underlying 02cv2219 and 04cr1224 (SDNY) moot and void ab initio proceedings--that is, KTS and its clients are prohibited and cannot invoke the Article III power of federal courts *to enforce or assist in the collection of illicit criminal usury debt instruments*. The *ex turpi causa non oritur actio*[14] principle dictates that no cognizable cause of action arises from a base, illegal, or immoral

---

[13] Respondent brought suit in the District Court for Southern New York to recover for the conversion of a quantity of canned salmon pledged to it as security for a loan. The pledgor, who had fraudulently regained possession, sold the salmon to petitioners. *The defense set up was that the transaction between respondent and the pledgor was usurious, and therefore void under the law of New York*, where the pledgor conducted its business, and where petitioners contend the pledge agreement was made.

[14] The phrase "ex turpi causa non oritur actio" is a Latin legal maxim which means "from a dishonorable cause, a lawful action does not arise." This principle is used to prevent a plaintiff from pursuing a legal remedy if it arises in connection with their own illegal act.

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

cause, and criminal usury according to NYS public policy, see *In re Venture Mortgage, L.P.*, 282

F.3d 185 (2d Cir. 2002), falls squarely within that rule.[15]

### Unregistered Broker-Dealer Activity

The federal securities statutes similarly vitiate KTS' clients' claims. Under Section 15(a)(1) of

the Securities Exchange Act of 1934 (15 U.S.C. § 78o(a)(1)), any entity "engaged in the business

of effecting transactions in securities for the account of others"[16] must register with the Securities

and Exchange Commission.[17] ***Failure to do so renders the relevant transactions unlawful***. Courts

have declared all such securities transactions ***void or unenforceable.*** *See Regional Props., Inc. v.*

*Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982).[18]

Where a party's claim to monetary recovery depends on profits or conversion rights acquired

through an unregistered broker-dealer arrangement, that party holds no "legally protected interest"

---

[15] Cf., ***Hufnagel v. George***, 135 F. Supp. 2d 406-07 (SDNY 2001) (McMahon, J.) (same, criminal usury debts void for policy reasons).

[16] See Ex. 4, infra, Arie Rabinowitz's teary confessions under oath during the ***U.S. v. Ware***, 04cr1224 (SDNY) Nov. 2007 fraudulent criminal contempt trial to enforce and collect the null and void ab initio GX 1, GX 2, GX 3, and GX 4 criminal usury convertible promissory notes.

[17] See Ex. 4, infra, the Nov. 2007, ***U.S. v. Ware***, 04cr1224 (SDNY) trial testimony of government witness Arie Rabinowitz—in tears Rabinowitz capitulated, confessed, and admitted that he, LH Financial Services, Alpha Capital, AG, et al. were in fact 15 USC 78o(a)(1) unregistered broker-dealers.

[18] See Id. at 561: "Moreover, this interpretation is the one implicitly adopted by *Eastside Church*. There, we allowed a contract for the purchase of bonds, after it had already been performed, to be rescinded by the seller. There was nothing to suggest that the contract "by [its own] terms" violated the Act. ***We permitted it to be rescinded simply because the purchaser, in performing the contract, had in fact violated the Act by doing so without being registered as a broker-dealer***. *Cf. Mills, supra*, 396 U.S. at 388 n. 11, 90 S.Ct. at 623 n. 11, 24 L.Ed.2d at 604 n. 11 (dicta) (proxies submitted in favor of merger could be rescinded, even though terms of merger were not themselves unlawful, if proxies had been solicited in a manner violative of the Act)." (emphasis added).

that a federal court will honor. Hence, KTS' clients cannot invoke federal judicial power to safeguard gains derived from securities law violations; any alleged "injury" from their inability to collect on these illegal instruments is not the sort of harm for which Article III standing is recognized.

The Court of Appeals further explains in **_Regional_**, Id. at 561:

"Moreover, we think that application of the letter of the statute [15 USC § 78o(a)(1)] in this case does further the Act's purposes. In *Eastside Church, supra,* we emphasized that section 15(a)(1)'s registration requirement[:]

"**_is of the utmost importance_** in effecting the purposes of the Act. It is through the broker registration requirement *that some discipline may be exercised over those who may engage in the securities business* and by which necessary standards may be established with respect to training, experience, and records." (emphasis added)

C.    KTS' Clients' Alleged "Injury" Is **_Self-Inflicted_** and Not Cognizable Under Article III as a Live Case or Controversy.

Even if KTS' clients suffer a loss by virtue of being denied payment (they did not given the criminal usury debt **_is not_** required to be repaid), that "loss" is entirely self-imposed and self-inflicted. **_Parties who knowingly or recklessly enter into criminally usurious lending_** or violate securities laws, 15 USC §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), and 78ff, bear the risk that their instruments and resultant claims will be deemed void. Far from supporting standing, the self-inflicted nature of the alleged nonexistent "injury" undermines the argument that there is a cognizable harm to be redressed in a federal forum. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (discussing that "self-inflicted" injuries, **_or those arising from unlawful activities_**, lack the foundation necessary to support Article III standing; The plaintiffs contended that they had

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

taken costly precautions—such as avoiding electronic communications and traveling overseas—to prevent the risk of surveillance. The Court rejected this argument, holding that: A plaintiff **cannot manufacture standing** by voluntarily incurring costs in response to speculative fears of future government actions; ***and the alleged economic harm resulting from self-imposed security measures did not constitute an "injury in fact" under Article III***). (emphasis added).[19]

No place in the 03-93031 Chapter 11 record did nor has KTS and its unregistered broker-dealer clients presented any evidence or proof whatsoever which "affirmatively established" any "concrete injury in fact", much less a purported "concrete ***injury*** in fact" ***caused by*** Group Management and Mr. Ware's lawful and ethical actions and conduct. Mr. Ware's and Group Management's adamant and lawful refusal to criminally violate the federal securities laws and issue fraudulent and bogus Rule 144(k) legal opinions to KTS' clients to enable and facilitate the criminal violation of the federal securities laws, 15 USC §§ 77e, 77x, 78o(a)(1), 78p(b), and 78ff, and enable an illegal unregistered public offering of Group Management's equity securities—that is no injury to KTS' clients.

***The criminal provisions of the federal securities laws caused the alleged injury not Group Management or Mr. Ware, the Supreme Court has*** held such illusory alleged injury is not cognizable in the United States federal courts as a live Article III case or controversy—that is,

---

[19] In the context of *In re Group Management Corp.*, the principles from *Clapper* support the argument that KTS' clients lack Article III standing. ***Their inability to collect on or enforce criminally usurious and illegally transacted promissory notes, GX 1, GX 2, GX 3, and GX 4, does not constitute a concrete and particularized injury***. Instead, it reflects the natural consequence of their own illicit conduct, aligning with the notion that courts should not serve as forums for enforcing void or illegal contracts. *Clapper* reinforces the necessity for plaintiffs to demonstrate ***specific harms caused by defendants*** rather than abstract or generalized injuries, thereby undermining claims that rely on the inability to profit from unlawful activities.

KTS' and its clients' manifestly frivolous claims are null and void ab initio and ipso facto as a matter of law and fact moot, *Steel Co.*, 523 U.S. at 94-95, and violated Bankr Rules 9011(b)(1-4) and 28 USC § 1927.

D. Consequence: No Article III Subject Matter Jurisdiction in the 03-93031 Bankruptcy Court

Article III standing is "the ***threshold question*** in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (emphasis added). Because KTS' clients have failed at all time during the 03-93031 proceedings to establish ***an injury to a legally protected interest derived from collection or enforcement of criminal usury convertible promissory notes, GX 1-4***, they lacked Article III standing (initio) from the outset. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (standing is jurisdictional and ***can be raised at any stage*** of the [03-93031, 02cv2219 (SDNY), or 04cr1224 (SDNY) proceedings pursuant to 11 USC § 1109(b)] by the Court, sua sponte, or any party, even after judgment). (emphasis added).

A bankruptcy court's jurisdiction ***is derivative*** of the district court's. 28 U.S.C. § 1334(a).[20] Accordingly, if KTS' clients never possessed Article III standing in the 02cv2219 (SDNY) lawsuit (they did not), see Ex. 2, infra, the 03-93031 Bankruptcy Court lacked the power and authority to adjudicate the merits of their fraudulent claims. *See Steel Co.*, 523 U.S. at 94 (jurisdiction must be established ***as a threshold matter***). Any orders entered by the 03-93031 bankruptcy court that benefitted  KTS' clients (Dkt. 28, 256, 258, 263, 274, and 275) in any way, whether by allowing

---

[20] Although district courts have original jurisdiction under § 1334(a), **28 U.S.C. § 157(a)** allows district courts ***to refer bankruptcy cases and related matters to bankruptcy judges, who function as "units" of the district court***. This delegation enables bankruptcy courts to administer proceedings efficiently while maintaining the district court's ultimate authority over core jurisdictional questions.

their claims, approving a settlement, dismissing the Chapter 11 case with prejudice (Dkt. 28), ***or***

***otherwise recognizing their criminal interests***—are necessarily null and void ab initio. ***Steel Co***.

Id at 94-95. (noting that orders issued without jurisdiction are a nullity). Cf., Hagenau, C.J., void

ab initio Dkt. 256, 258, 263, 274, and 275, fraudulently and baselessly entered to benefit KTS and

its clients from being forced into 11 USC § 303(a) involuntary Chapter 7 liquidation; and Murphy,

J., manifestly fraudulent Dkt. 28 (dismissal with prejudice of the Chapter 11 on joint motion by

the U.S. Trustee, Dkt. 13, and KTS and its clients, Dkt. 15 and Dkt. 16).


E. Policy Considerations and the Purpose of the Bankruptcy Code

Bankruptcy courts serve the important function of adjusting the rights and obligations of

debtors and *legitimate creditors*. *Grogan v. Garner*, 498 U.S. 279, 286 (1991).[21] The Bankruptcy

Code promotes equitable distributions to ***honest creditors*** but does not permit the enforcement of

void or illegal debts, GX 1-4. Recognizing a claim rooted in criminal usury or illegal securities

transactions would undermine both federal and state policy objectives to deter unlawful lending

and unregistered securities dealing. ***Thus, disallowing KTS' clients' criminal usury claims does***

***not frustrate the intent of the Bankruptcy Code; rather, it aligns with the overarching principle***

***that courts should not be conduits for illicit profiteering***.


V. CONCLUSION

KTS' clients lacked Article III standing because as a matter of law, *Adar Bays*, Id., they

cannot demonstrate a "concrete injury in fact" based on convertible promissory notes, GX 1-4, that

are criminally usurious under New York Penal Law § 190.40, a class E felony, and tainted by

---

[21] The Court held that **preponderance of the evidence**, rather than clear and convincing evidence, is the appropriate burden of proof in dischargeability proceedings under 11 U.S.C. § 523(a).

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

unregistered broker-dealer activity under 15 U.S.C. § 78o(a)(1), see Es. 3, infra. Contracts deemed void ab initio or grounded in illegal conduct ___do not confer a legally cognizable interest___ and therefore do not confer standing on KTS' clients in a United States federal court proceeding. Consequently, the 03-93031 Bankruptcy Court for the Northern District of Georgia was never vested with subject matter jurisdiction over these fraudulent and void ab initio claims. Any orders granting relief to KTS' clients (Dkt. 28, 256, 258, 263, 274, and 275) are thus jurisdictionally infirm, moot, and null and void ab initio, ***Steel Co.***, Id., and the forthcoming  Motion to Annul, Vacate, and Set Aside should be granted.

Accordingly, this Court should recognize that ***the fundamental defect***—KTS' clients' lack of Article III standing—is fatal, precluded, and prohibited any further adjudication of KTS' clients' alleged claims. Ensuring that federal courts do not become an instrument to enforce criminally usurious or illegal securities-based transactions is a core tenet of federal jurisprudence. For these reasons, the Court should grant the Motion to Annul, Vacate, and Set Aside, ___and take all necessary steps to expunge any relief previously accorded to KTS' clients (Dkt.28, 256, 258, 263, 274, and 275) based on such void and illegal instruments___ (GX 1-4).


Respectfully submitted by:

*/s/ Ulysses T. Ware*

For: 11 USC § 1109(b) statutory parties in interest Ulysses T. Ware and the Debtor Group Management (successor in interest to Group Management Corp.).

Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

Page **21** of **31**
Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# F.  Exhibits—

## Supplemental Record

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) ***statutory insider status*** (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' ***unregistered broker-dealer*** clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities.[22]

---

[22] Judge Sand's Aug. 13, 2003, ruling, binding **a lawful court order**—(A) subject to enforcement against Hagenau, KTS, its client, et al., via civil and criminal contempt (18 USC §§401(2), 401(3)) absolutely binding on the 03-93031 Chapter 11 Bankruptcy Court (NDGA) (Hagenau, C.J.), which (B) ***conferred fiduciary duty status*** on all 18 USC §1962(d) racketeering to commit bankruptcy fraud unindicted coconspirators to wit, Hagenau, KTS, its partners, each of ***KTS' unregistered broker-dealer clients, et al.***— that is, Hagenau, KTS, its partners, and its clients are subject to (i) ***an existing and extant and current equitable lien on their personal and individual assets***, (ii) current and extant constructive trust impressed on their assets, (iii) and U.C.C. Article 1 encumbrance and lien on their assets in the amount of ***+$522M plus interest*** running from the date of Judge Sand's 15 USC §78p(b) court order, August 13, 2003, (i.e., stolen and concealed property and assets of the 03-93031 Chapter 11 estate).

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

**Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*.

Appx 34-2—GX 24 (Dkt. 65, 02cv2219)—found each 02cv2219 plaintiff to be a 15 USC 78p(b) statutory insider of GPMT, and their and their agents required to disgorge back to GPMT +$500 million in trading profits.



Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

The conspiracy to commit securities and bankruptcy fraud by KTS during the In re Group Mangement Corp, 03-93031 (BC NDGA) Chapter 11 proceedings. KTS' clients' ju~~dicially~~ admitted in ex parte communications with the 02cv2219 (SDNY) district court (Sand, J.) that KTS did in fact knowingly violated 18 USC 2, 157, 371, 924(c), 1201-02,1341, 1343, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B) and 1962(d) by concealing and suppressing its clients' ownership of GPMT's stock.

letter relating not to Plaintiff Stonestreet, but rather to Plaintiff Alpha Capital. _Plaintiff explained, upon inquiry from Chambers, that Stonestreet in fact beneficially owned more than 9.9% of Group Management's stock._

Given the above facts, the Court observes that the conditions set in the July 2 Order regarding the Stonestreet conversion request have not been met, and that Defendant is therefore not in contempt of that Order, or of the follow-up Order of July 23.  Nonetheless, pursuant to other orders of this Court, including the Order and Judgment of November 25, 2002, Defendant is still bound to honor appropriate conversion requests from Alpha Capital, and Plaintiff has submitted both an affidavit and opinion letter regarding the legality of the current Alpha conversion request.  Accordingly, failure by Defendant to honor that request within ~~two~~ four(4) business days of this Order shall constitute contempt.

SO ORDERED.

Dated: New York, New York
         August ~~14,~~ 15, 2003

_[signature]_ U.S.D.J.

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment—December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*.[23]

---

[23] KTS' *unregistered broker-dealer clients'* Dec. 20, 2007, *voluntary* Rule 41(a)(2) *dismissal with prejudice* of the 02cv2219 (SDNY) lawsuit—final judgment on the merits for the Chapter 11 debtor, Group Management, and 11 USC §1109(b) statutory party in interest Ulysses T. Ware, is currently and will be enforced against Hagenau, KTS, its clients, and each 18 USC §1962(d) unindicted coconspirator *resisting* the *legal and equitable preclusive effects*—that is, the immediate 11 USC §542(a) turnover of all Chapter 11 estate assets, of the binding court order, see 18 USC §§401(2), and 401(3), and Fed. R. Crim. P. 42.

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.



United States District Court
Southern District of New York
------------------------------------------x

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership,

                    Plaintiffs,

     -against-

Group Management Corp., formerly known
as IVG Corp., formerly known as Internet
Venture Group, Inc., Elorian Landers and
Becky Landers,

                    Defendants.

------------------------------------------x

Order of Dismissal
Without Prejudice

02 Civ. 2219(LBS)

U.S. DISTRICT COURT
FILED
DEC 2 0 2007
S.D. OF N.Y.

90

Pursuant to the provisions of Rule 41(a)(2) of the Federal Rules of Civil Procedure, upon

request of Plaintiff Alpha Capital Aktiengesellschaft, this case is dismissed without prejudice.

Dated: New York, New York
          December  , 2007

CERTIFIED AS A TRUE COPY ON

THIS DATE  6/13/19

BY _____
          Clerk
          Deputy

_____
U.S.D.J.    12/18/07

Law Offices of Kenneth A. Zitter

By: _____
      Kenneth A. Zitter, Esq.
      Attorneys for Plaintiff
      Alpha Capital Aktiengesellschaft
      260 Madison Avenue - 18th Floor
      New York, New York 10016

COPIES MAILED TO ALL PARTIES
12-18-07

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <u>unregistered broker-dealer status</u> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<u>a pattern of racketeering activities.</u>**

<u>CERTIFICATION OF NO FINRA BUSINESS RECORDS</u>

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

> a) Alpha Capital, AG
> b) Stonestreet, L.P.
> c) Markham Holdings, Ltd.
> d) Amro International, S.A.
> e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of _May_, 2021.

Notary Public, District of Columbia

My commission expires: 5/31

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

Exhibit 4--*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers. see Dkt. 11 (03-93031) (BC NDGA), KTS' entry of appearance.

---

*UNITED STATES v. WARE*, CASE NO. 09-0851 (2D CIR.) (2010)
ON APPEAL FROM *UNITED STATES v. WARE*, 04cr1224 (Sweet, J.)
18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION
APPELLANT WARE'S OPENING BRIEF

1   Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2   §78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4   **ADMISSION OF BROKER-DEALER STATUS BY**
5   **ARI RABINOWITZ UNDER CROSS EXAMINATION.**
6

7   **Mr. Ware: What is the name of your company?**

8   **Rabinowitz: LH Financial Services.**

9   **Mr. Ware: What business is that company?**

10  **Rabinowitz: We are in the private placement business.**

11  **Tr. 206**

12  **Mr. Ware: Approximately how many companies have you assisted Alpha Capital**
13  **with over, let's say, the last five years?**

14  **Rabinowitz: A good few hundred.**

15  **Mr. Ware: A good few hundred?**

16  **Rabinowitz: Yes.**

17  Rabinowitz' testimony of being in the private placement business, and assisting
18  Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19  §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20  under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
21  regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# Certificate of Service

I Ulysses T. Ware certify that I have this 23rd day of January 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munto for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[24] and 5005(b)(1) with the U.S. Trustee.[25]

cc:    Office of the U.S. Trustee, Region 21 (Ida Mae Townsend)

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[26]

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

---

[24] *With a Judge of the Court.* A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[25] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[26] **Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.**

Thursday, January 23, 2025
(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

Acting Director of the FBI (via Ida Mae Townsend, Esq.)

/s/ Ulysses T. Ware

**January 23, 2025**

# End of document

(11) (Part 13-10) Re: Article III requisite "concrete injury in fact" analysis in regard to KTS' unregistered broker-dealer clients' fraudulent appearance in the 03-93031 Chapter 11, Dkt. 11, to collect and/or enforce criminal usury convertible promissory notes, GX 1, GX 2, GX 3, and GX 4 via Dkt. 15 and 16.

# Case No. 03-93031

# United States Bankruptcy Court (12-12)
# For the Northern District of Georgia
# (Atlanta Division)

### Submitted for Filing on
### Friday, January 31, 2025, 11:34:42 AM

# F-5

# In re Group Management Corp., Chapter 11

**Appellants'-Movants' Memorandum of KTS and its Clients' (unregistered broker-dealers—see Ex. 3, infra) Hobbs Act RICO Conspiracy to Commit Bankruptcy Fraud, 18 USC §§ 2, 152, 157, 371, 924(c), 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.**[1]

Submitted by:

/s/ Ulysses T. Ware
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
**Friday, January 31, 2025**

---

[1] The Movants' challenge to the Bankruptcy Court (NDGA) *In re Group Management Corp.,* 03-93031 Chapter 11 Article III jurisdiction over **predatory criminal usury unlawful debts subject matter**, GX 1-4; and (2) challenge to the Article III standing of the 02cv2219 (SDNY) plaintiffs, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP clients, see Dkt. 11, **unregistered broker-dealers**. Cf., Ex. 3, infra. What legitimate and lawful interest would a United States Bankruptcy Court (Ellis-Munro, C.J. and Hagenau, C.J.) have in not *sua sponte* affirmatively confirming the Court's mandatory unwaivable constitutional jurisdiction to adjudicate the Dkt. 6, 11, 13, 14, 15, and 16 proceedings with respect to fundamental constitutional prerequisites—"legally protected interest" in criminal usury convertible promissory notes--in *predatory criminal usury unlawful debts*, GX 1-4, and (2) the Article III standing of KTS' *unregistered broker-dealers clients to enforce and/or collect GX 1-4*? *No legitimate interest exists*. If no legitimate interest exists, then any alleged interest, by definition. must be nefarious, corrupt, perfidious, and illegitimate—that is, *an unlawful interest*.

# Table of Contents

**Bankr. Rule 5005 (a)(2)** ................................................................................................ 5

**Memorandum of Hobbs Act RICO Conspiracy to Commit Bankruptcy Fraud** ................................ 7

**I. A CALL FOR IMMEDIATE INTERVENTION: A SYSTEMIC BREACH OF TRUST AND A DEMAND FOR JUSTICE.** ............................................................................................... 7

**II. OVERWHELMING AND IRREFUTABLE EVIDENCE OF DELIBERATE AND BAD FAITH FRAUD.** ......................................................................................................................... 10

    A. FINRA's Definitive Regulatory Certification of Unregistered Broker-Dealer Status: Exposing the Illegal Foundation of KTS Clients' Claims. ....................................................................... 10

    B. Criminally Usurious Loan Contracts (GX 1-4): Illegal and Unenforceable Predicates for KTS Clients' Claims.................................................................................................................. 11

    C. Dkt. 11: KTS Clients' Fraudulent Entry of Appearance and Knowing Misrepresentation of "Creditor" Status. ............................................................................................................. 13

    D. Dkts. 15 & 16 (Exhibits 15A & 16A): KTS' Emergency Motion to Dismiss and Supporting Brief – Active Perpetration of Fraud and Judicial Admissions of Illegality ...................................... 14

    E. Concealment of +$522 Million in Insider-Trading Profits: The Corrupt Motive for the Fraudulent Scheme.............................................................................................................................. 15

    F. Ethical Dereliction by KTS Attorneys: Violation of GA Bar Rules 3.3(a) and 8.4 – A Stain on the Legal Profession. ............................................................................................................... 16

**III. PROFOUND HARM INFLICTED UPON THE BANKRUPTCY COURT, CREDITORS, ESTATE, AND ULYSSES T. WARE** .......................................................................................... 17

**IV. DEMAND FOR IMMEDIATE AND DECISIVE INVESTIGATION AND REMEDIAL ACTION BY THE U.S. TRUSTEE** ................................................................................... 19

**V. DEMAND FOR IMMEDIATE MEETING TO DISCUSS REMEDIAL ACTION** ...................... 21

**Enclosures:** ................................................................................................................ 22

**Certificate of Service**.................................................................................................. 23

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *statutory insider status* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *unregistered broker-dealer* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities. ......................................................................................................................... 25

    **Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**— Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*. ..........................................................................................26

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment—December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*. ................................................................. 28

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court,  pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.** ................................................................................................... 30

Exhibit 4--*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers. see Dkt. 11 (03-93031) (BC NDGA), KTS' entry of appearance. ... 31

**End of document** ................................................................................................................. 32

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

**Friday, January 31, 2025**

**Via email to: USTP.Region21@usdoj.gov and ustrustee.program@usdoj.gov[2]**
**Ms. Ida Mae Townsend and**
**Ms. R. Jeneane Treace,** jeneane.treace@usdoj.gov
U.S. Trustee and Assistant U.S. Trustee, Region 21
Office of the United States Trustee Program
362 Richard Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Via email: BEMChambers@ganb.uscourts.gov[3]**
Office of the Chief Bankruptcy Judge (NDGA)
The Hon. Barbara Ellis-Monro
Richard Russell U.S. Courthouse
75 Ted Tuner Dr., SW
Atlanta, GA 30303

*Re;*    ***In re Group Management Corp.,*** Case No. 03-93031 (BC NDGA) –
Notice of Exercise of Rights Under 11 U.S.C. § 1109(b), Ongoing Violations of 18
U.S.C. § 2071(a), (b), and Civil & Criminal Contempt of Rule 41(a)(2) Final Judgment;
and Request for 11 USC § 105(d)(1) Status Conference.

---

[2] **(b) Sending Copies to the United States Trustee.**
(1) ***Papers Sent Electronically.*** All papers required to be sent to the United States trustee may be sent by
using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule
provides otherwise.

[3] (2) **With a Judge of the Court.** A judge may personally accept for filing a paper listed in (1) ("motions"
or "applications"). ***The judge must note on it the date of filing and promptly send it to the clerk.***

Page **4** of **32**
Friday, January 31, 2025
(12-12) 01.31.25 (Part 14-12) re Memorandum of Request for Action by the Office of the U.S. Trustee,
Region 21, Ida Mae Townsend, Esq., an officer of the court with GA Bar Rule 3.3 duty of complete
candor to the 03-93031 tribunal.

# Bankr. Rule 5005 (a)(2)
## A.   Provisional Notice of Filing and Submission Pending Receipt by the Court via the U.S. Mail

January 31, 2025

**Via Bankr. Rule 5005(a)(2) Electronic Filing**

The Honorable Barbara Ellis-Munro
U.S. Bankruptcy Court, Northern District of Georgia
Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Via email to: USTP.Region21@usdoj.gov and ustrustee.program@usdoj.gov**[4]
**Ms. Ida Mae Townsend and**
**Ms. R. Jeneane Treace, jeneane.treace@usdoj.gov**
U.S. Trustee and Assistant U.S. Trustee, Region 21
Office of the United States Trustee Program
362 Richard Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

Dear Judge Ellis-Munro:

The Appellants-Movants write to inform the Court in regard to the following: Pursuant to

Bankruptcy Rule 5005(a)(2), the undersigned statutory parties in interest, Mr. Ware and Group

Management Corp. ("Group Management"), respectfully submit for your direct attention the

---

[4] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

enclosed Rule 9013(a)(1)/11 USC §105(d)(1) judicial public record for provisional filing, docketing, and entry in the Chapter 11 Case No. 03-93031.

In accordance with 18 U.S.C. §§ 2071(a) and (b), we hereby respectfully request that the Court confirm receipt and provisionally **(pending receipt of a U.S. mailed copy)** file and docket this Bankr. Rule 9013(a)(1) request for an 11 USC § 105(d)(1) status conference via the PACER system, no later than January 31, 2025, as required by law. Should you have any questions regarding this or other judicial pleadings previously submitted for proper docketing and adjudication, please contact the undersigned, who will gladly elucidate every prior submission.

Additionally, we request written notice to all interested parties—filed on the official **03-93031** docket—of the scheduling of the mandatory **11 U.S.C. § 105(d)(1)** status conference, so that these proceedings may continue in a transparent and timely manner.

**Submitted by:**

*/s/* **Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**
**Friday, January 31, 2025**

# Memorandum of Hobbs Act RICO Conspiracy to Commit Bankruptcy Fraud

**To:** Executive Office of the U.S. Trustee
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

U.S. Trustee, Region 21
Attn: Ida Mae Townsend, Esq.
Office of the U.S. Trustee, Region 21
362 Richard Russell Federal Building
75 Spring Street, SW
Atlanta, GA 30303

**Date:** January 31, 2025

**Re: Urgent Demand for Investigation and Remedial Action: Egregious and Deliberate Fraud Upon the United States Bankruptcy Court, Creditors, the Chapter 11 Estate, and Ulysses T. Ware in *In re Group Management Corp.*, Case No. 03-93031 (Bankr. N.D. Ga.) – A Scheme to Misappropriate $522 Million in Estate Assets Through Criminal Usury and Securities Fraud**

**Dear Ms. Townsend:**

## I. A CALL FOR IMMEDIATE INTERVENTION: A SYSTEMIC BREACH OF TRUST AND A DEMAND FOR JUSTICE.

This memorandum constitutes an urgent and formal demand for the immediate initiation of a comprehensive investigation and the implementation of decisive remedial action by the Executive Office of the U.S. Trustee and the U.S. Trustee for Region 21, Ida Mae Townsend, Esq. We write to expose a deeply troubling and meticulously orchestrated scheme of fraud, perpetrated by Kilpatrick Townsend & Stockton, LLP ("KTS"), *__its unregistered broker-dealer clients__* (Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet

Limited Partnership, collectively "KTS Clients"), and attorneys Dennis S. Meir, Esq., John W. Mills, III, Esq., J. Henry Walker, IV, Wab Kadaba, and potentially others at KTS, (the "Defendants"). This fraudulent enterprise, executed with malice and a brazen disregard for the rule of law, has inflicted profound damage upon the United States Bankruptcy Court for the Northern District of Georgia (the "Bankruptcy Court"), the legitimate creditors of the Chapter 11 estate of Group Management Corp. ("GPMT" or "the Debtor"), the Chapter 11 estate itself, and Mr. Ulysses T. Ware ("Mr. Ware").

The core objective of this meticulously planned and ruthlessly executed Hobbs Act RICO fraud was to:

1. **Plunder the Chapter 11 Estate of $522 Million in Illicit Insider-Trading Profits:** Defendants conspired to knowingly, intentionally, and in bad faith steal, conceal, and misappropriate in excess of $522 million in assets – representing illegal 15 USC § 78p(b), see Dkt. 65, 02cv2219 (SDNY) (Sand, J.), Aug. 13, 2003, order, short-swing insider-trading profits derived from criminal and illicit transactions in GPMT's equity securities by KTS Clients—(i) ***unregistered broker-dealers*** and (ii) ***fiduciaries*** of the Chapter 11 Debtor. These profits, by operation of federal securities law, 15 USC § 78p(b) and bankruptcy law, 11 USC §§ 541(a)(1), and 542(a), rightfully belong to the Debtor's Chapter 11 estate and are intended for distribution to legitimate creditors.

2. **Deceive and Manipulate the Bankruptcy Court to Procure a Fraudulent Dismissal:** Through a calculated campaign of deliberate, intentional, and bad faith material misrepresentations, omissions, and the knowing assertion of baseless claims, Defendants intentionally deceived and manipulated the Bankruptcy Court into issuing a Dismissal

Order (Dkt. 28 in Case No. 03-93031) in May 2003. This Dismissal Order was procured under the patently false pretense that the Debtor's estate was without assets and that the Chapter 11 case was filed in "bad faith," thereby terminating the bankruptcy proceedings and paving the way for Defendants to abscond with the $522 million in estate assets. See Dkt. 15 and Dkt. 16 for KTS' fraud on the court.

3. **Undermine the Integrity of the Federal Judiciary and the Bankruptcy System:** Defendants' actions represent a grave assault on the integrity of the federal judiciary and the bankruptcy system. They have exploited the Bankruptcy Court as a tool for their fraudulent scheme, undermining public trust in the impartiality and fairness of federal courts and jeopardizing the very foundations of the bankruptcy process designed to ensure equitable and orderly administration of distressed estates.

We submit to the Executive Office of the U.S. Trustee and to U.S. Trustee Townsend that the *irrefutable evidence* detailed herein *unequivocally demonstrates* a deliberate, intentional, and bad faith fraud perpetrated upon the Bankruptcy Court, creditors, the Chapter 11 estate, and Mr. Ware. This is not a case of mere negligence or inadvertence; ***this is a calculated and egregious criminal conspiracy—a Hobbs Act racketeering loan sharking and money laundering criminal enterprise and scheme to plunder a bankruptcy estate for personal and business gain, executed with the knowingly, deliberate, and active participation of a prominent international law firm, James H. Morawetz, Esq., and its clients***. We demand immediate and decisive action from the U.S. Trustee to investigate this matter fully, hold the perpetrators accountable, and rectify the profound injustice that has been inflicted.

## II. OVERWHELMING AND IRREFUTABLE EVIDENCE OF DELIBERATE AND BAD FAITH FRAUD.

The evidence supporting our demand for investigation and remedial action is not merely suggestive; it is overwhelming, irrefutable, and comprised of multiple independent lines of proof, including:

A. FINRA's Definitive Regulatory Certification of Unregistered Broker-Dealer Status: Exposing the Illegal Foundation of KTS Clients' Claims.

1. **Authoritative Regulatory Determination:** Attached hereto as **Exhibit 3** is the "CERTIFICATION OF NO FINRA BUSINESS RECORDS" issued by Marcia E. Asquith, Executive Vice President, Board and External Relations, of the Financial Industry Regulatory Authority ("FINRA"), dated May 17, 2021. Ms. Asquith, *a high-ranking FINRA official with custodial authority over FINRA's records*, unequivocally certifies that "No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business." The "firms listed below" explicitly include entities directly representing KTS Clients, such as "LH Financial Services."

2. **Binding Regulatory Finding of Unregistered Status:** This FINRA Certification is not a mere administrative statement; it is ***a definitive regulatory finding*** by the self-regulatory organization delegated oversight authority by the Securities and Exchange Commission ("SEC") over broker-dealers. ***It constitutes conclusive evidence*** that KTS Clients, at all relevant times, operated as **unregistered broker-dealers** in direct violation of 15 U.S.C. § 78o(a)(1).

3. **Void *Ab Initio* Contracts Under 15 U.S.C. § 78cc(b):** Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b), explicitly renders contracts, GX 1-4, and GX

5, made in or performed in violation of the Act, including the broker-dealer registration requirement of 15 U.S.C. § 78o(a)(1), ***void ab initio* as regards the rights of the violator (in this case, KTS *unregistered broker-dealer* Clients, see Ex. 3, infra).** This federal statutory provision and ***underpinning public policy*** eviscerates and vitiates any legal basis for KTS Clients' claims—Dkt. 11, 15, and 16, in the 03-93031 Bankruptcy Case. ***Their purported "creditor" status is a complete sham and a fraudulent legal fiction, built upon purported contracts, GX 1-4, and GX 5, that Congress has declared null and void initio and unenforceable from their inception.***

B. Criminally Usurious Loan Contracts (GX 1-4): Illegal and Unenforceable Predicates for KTS Clients' Claims.

1. **Predatory Interest Rates Exceeding 2000% Per Annum:** The loan contracts (designated as GX 1-4 in the 03-93031 Bankruptcy Case) upon which KTS Clients predicate their claims are not merely commercially unreasonable; they are ***criminally usurious*** under New York Penal Law § 190.40, the criminal usury law, a class E felony, bearing predatory interest rates **exceeding 2000% per annum**. Such exorbitant and unconscionable rates are not merely indicative of civil usury; they fall squarely within the ambit of criminal usury, ***a Class E felony*** under New York law.[5]

2. **Void *Ab Initio* Under New York Law and Federal RICO law:** Under New York Penal Law, criminally usurious contracts, GX 1-4, and GX 5, are ***null and void ab initio,***

---

[5] Cf., 28 USC 586(a)(3)(F) duty and obligation of Ida Mae Townsend, Esq. with respect to criminal activities committed by KTS, its lawyers, its clients, the Appellees, and others acting in concert therewith.

unenforceable, ***and uncollectible by KTS' clients***,[6] from their inception and conferring no

legally protected rights upon the lender. ***Adar Bays, LLC v. GeneSYS ID, Inc.***, 28 F.4th

379, 392 (2d Cir. 2022). Furthermore, these criminally usurious debts constitute "unlawful

debts" under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.

§ 1961(6)(B), further underscoring their illegality and unenforceability in federal court.

3. **Lack of Subject Matter Jurisdiction and Article III Standing:** Federal courts, including

bankruptcy courts, lack subject matter jurisdiction to enforce criminally usurious contracts,

***GX 1-4, and GX 5, which are deemed null and void ab initio, unenforceable, and***

***uncollectible as against public policy[7] and fall outside the scope of federal jurisdiction***.

***Steel Co. v. Citizens for a Better Env't***, *523 U.S. 83, 94-95 (1998)*. Furthermore, KTS

Clients, asserting claims based on these void and illegal contracts, lacked a "**legally**

**protected interest**" and have not and cannot (a legal and factual impossibility)

demonstrate a "**concrete injury in fact**," thus indisputably failing to meet the irreducible

constitutional minimum requirements for Article III standing. ***Lujan v. Defenders of***

***Wildlife***, *504 U.S. 555, 560-61 (1992)*.

---

[6] However, KTS' fraudulent appearance in 03-93031, Dkt. 11, and its racketeering criminal activities to collect or enforce GX 1-4, and GX 5, Dkt. 15 and Dkt. 16, ipso facto has dire and devastating penal and 11 USC § 303(a) ***involuntary Chapter 7 liquidation pecuniary consequences***—that is, ***their pleadings*** filed in 03-93031 **constitute binding judicial admissions**, factual stipulations, and confessions of KTS and its clients' criminal violations of federal law 18 USC §§ 1961(6)(B) (the collection of unlawful criminal usury debts, GX 1-4); cf., ***U.S. v. Grote***, 961 F.3d 105 (2d Cir. 2019) (aff'd criminal conviction, sentence, and +*$3.5 billion in forfeiture judgment for unlawful debt collection activities*). (emphasis added).

[7] See ***In re Venture Mortgage Fund, L.P.***, 282 F.3d 185 (2d Cir. 2002).

C. Dkt. 11: KTS Clients' Fraudulent Entry of Appearance and Knowing Misrepresentation of "Creditor" Status.

1. **Initial Act of Deception and Abuse of Process:** Attached hereto as **Exhibit 11A** is Document 11 from the 03-93031 Bankruptcy Case, "ENTRY OF APPEARANCE; REQUEST FOR SPECIAL NOTICE; REQUEST FOR SERVICE OF PAPERS; AND RESERVATION OF RIGHTS," filed by KTS on behalf of KTS Clients on April 10, 2003. This *__fraudulent pleading__* marks the inception of KTS Clients' fraudulent scheme within the 03-93031 Bankruptcy Court.

2. **False Representation of "Creditor" Status:** In Dkt. 11, KTS, acting with manifest bad faith and in violation of their ethical duties as officers of the court, GA Bar Rule 3.3 and 8.4, knowingly, in bad faith, and affirmatively—**committed perjury**, misrepresented KTS Clients as "**interested parties and creditors**." This deliberate misrepresentation—*__conspiracy to commit perjury on a federal court__*, was demonstrably false and misleading at the time it was made—and continues to be false which KTS' lawyers have never corrected the record, and KTS attorneys Dennis S. Meir and John W. Mills, III, knew or should have known it to be false had they conducted the required prefiling Bankr. Rule 9011(b)(1-4) and 28 USC § 1927 investigation.

3. **Knowing Lack of Article III Standing:** As sophisticated securities and bankruptcy law practitioners, KTS attorneys (Meir, Mills, Walker, and Kadaba) were intimately familiar with the requirements of Article III standing and the legal implications of 15 U.S.C. § 78o(a)(1) and 78cc(b). They knew or recklessly disregarded the fact that their *__unregistered broker-dealer clients__*, asserting claims based on null and void  initio and illegal contracts, GX 1-4, and GX 5, lacked the constitutionally required standing to invoke the jurisdiction

of the Bankruptcy Court with respect to Dkt. 15 and Dkt. 16. Their fraudulent entry of

appearance, Dkt. 11, therefore, ___*was a knowing, bad faith, reckless, irresponsible,*___

___*unethical, and deliberate attempt to fraudulently gain access to the Bankruptcy Court*___

___*and abuse its processes for their unregistered broker-dealer clients' unlawful objectives*___.

D. Dkts. 15 & 16 (Exhibits 15A & 16A): KTS' Emergency Motion to Dismiss and
Supporting Brief – Active Perpetration of Fraud and Judicial Admissions of Illegality

1. **Escalation of Fraudulent Conduct and Affirmative Misrepresentations:** Attached

    hereto as **Exhibit 15A** is Document 15, "EMERGENCY MOTION TO DISMISS OR, IN

    THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY," and as **Exhibit**

    **16A** is Document 16, its accompanying "BRIEF IN SUPPORT," both filed by KTS on

    behalf of KTS Clients. These filings represent a significant escalation of Defendants'

    fraudulent scheme and a deepening of their bad faith and fraudulent perjury and

    misrepresentations to the Bankruptcy Court.

2. **Persistent and Emphatic Misrepresentation of "Creditor" Status:** Throughout Dkts.

    15 and 16, KTS unregistered broker-dealer Clients, through KTS, persistently and

    emphatically reiterate their false claim of being legitimate "creditors." This

    misrepresentation and perjury is not a mere oversight; it is a calculated and deliberate tactic

    to deceive the Bankruptcy Court and to create a false predicate for their demands for

    dismissal or stay relief.

3. **Exploitation of the Bankruptcy Court and Abuse of Process:** In Dkts. 15 and 16, KTS

    Clients actively seek affirmative relief from the Bankruptcy Court – dismissal of the

    Chapter 11 case or, alternatively, relief from the automatic stay – based on demonstrably

Page **14** of **32**
Friday, January 31, 2025
(12-12) 01.31.25 (Part 14-12) re Memorandum of Request for Action by the Office of the U.S. Trustee,
Region 21, Ida Mae Townsend, Esq., an officer of the court with GA Bar Rule 3.3 duty of complete
candor to the 03-93031 tribunal.

false, ***perjury***, and misleading representations. This constitutes a blatant exploitation of the Bankruptcy Court and a gross abuse of its processes for their own illicit ends.

4. **Binding Judicial Admissions of Criminal Usury and RICO Conspiracy:** Most damningly, in Dkts. 15 and 16, KTS' lawyers, acting as officers of the court and under penalty of Bankruptcy Rule 9011, ***made and pleaded in court filings implicit, explicit, and unequivocal judicial admissions*** that their clients' claims arise from "criminal usury unenforceable debts in violation of NYS Penal Law, sect. 190.40" (paraphrased) and are part of a "Hobbs Act, 18 USC 1951(a) conspiracy to collect and enforce criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4, via the conspiracy to commit bankruptcy fraud, 18 USC §§ 2, 157, 371, 1341, 1343, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)." (paraphrased). These sworn statements, made directly to the Bankruptcy Court, ***are irrefutable judicial admissions*** of the illegal and fraudulent nature of their own claims and conduct. They constitute a confession to the very RICO violations and criminal usury schemes that Appellants now allege.

E. Concealment of +$522 Million in Insider-Trading Profits: The Corrupt Motive for the Fraudulent Scheme.

1. **Deliberate Suppression of Material Estate Assets:** Defendants' fraudulent scheme was meticulously designed and executed to conceal from the Bankruptcy Court, the Chapter 11 estate, Mr. Ware, and creditors the existence of over $522 million in insider-trading profits, assets rightfully belonging to the Debtor's Chapter 11 estate under 15 U.S.C. § 541 and subject to mandatory disgorgement under 11 USC 542(a) and 15 U.S.C. § 78p(b).[8]

---

[8] See ***Roth v. Jennings***, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.); and 15 USC §§ 78p(b) and 78cc(b). See Ex. 1, infra, Sand, J., Aug. 13, 2003, Dkt. 65, 02cv2219 (SDNY) Order.

2. **Motive to Misappropriate Estate Assets and Unjustly Enrich Perpetrators:** The motive for this elaborate fraud is clear: to steal, conceal, and misappropriate these substantial estate assets *__for the benefit of KTS Clients and potentially KTS itself,__* unjustly enriching the perpetrators at the direct expense of legitimate creditors and the integrity of the bankruptcy system. The $522 million represents a massive windfall for Defendants, obtained through calculated deception and abuse of the federal courts.

3. **Fraudulent Dismissal Order, Dkt. 28 (Murphy, J.), as the Culmination of the Scheme:** The fraudulent Dismissal Order (Dkt. 28 in Case No. 03-93031), procured through Defendants' persistent misrepresentations and omissions, represents the culmination of their scheme. It served as the essential instrument to terminate the bankruptcy proceedings and to allow Defendants to escape accountability for their fraudulent conduct and to retain the ill-gotten gains of their scheme.

F. Ethical Dereliction by KTS Attorneys: Violation of GA Bar Rules 3.3(a) and 8.4 – A Stain on the Legal Profession

1. **Breach of Duty of Candor to the Tribunal (Rule 3.3(a)):** KTS attorneys Dennis S. Meir, John W. Mills, III, and others at KTS, as officers of the Bankruptcy Court, flagrantly violated Georgia Rule of Professional Conduct 3.3(a), "Candor Toward the Tribunal." They in Dkt. 11, 14, 15, and 16 knowingly committed perjury, and knowingly in bad faith made false statements of material fact and law to the Bankruptcy Court, *__offered evidence they knew to be false__*, (see exhibits attached to Dkt. 15 and 16), and failed to disclose material facts necessary to avoid assisting a criminal or fraudulent act by their clients, see Ex. 1 and Ex. 3, infra.

2. **Professional Misconduct Involving Fraud and Dishonesty (Rule 8.4):** Their conduct further constitutes "professional misconduct" under Georgia Rule of Professional Conduct 8.4, as it involved extreme and unprecedented criminal ***dishonesty, fraud, deceit, and misrepresentation***. Their orchestration of a racketeering bankruptcy fraud conspiracy scheme to deceive the Bankruptcy Court, conceal assets, and procure a dismissal for their clients' unlawful benefit is a profound breach of their ethical obligations and a stain on the legal profession.

3. **Abuse of the Privilege to Practice Law in Federal Court:** KTS attorneys have abused the privilege to practice law in federal court by weaponizing their legal expertise and the authority of their law firm to perpetrate a deliberate fraud upon the Bankruptcy Court. Their actions warrant not only disciplinary action by the Georgia Bar but also sanctions by the Bankruptcy Court itself, including disbarment from practice before the federal courts of the Northern District of Georgia, and criminal prosecution for their RICO crimes (18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d)) activities.

## III. PROFOUND HARM INFLICTED UPON THE BANKRUPTCY COURT, CREDITORS, ESTATE, AND ULYSSES T. WARE

Defendants' calculated and bad faith fraud has inflicted profound and irreparable harm upon multiple parties and upon the integrity of the bankruptcy system itself:

1. **United States Bankruptcy Court for the Northern District of Georgia: Defilement of the Judicial Process:** The Bankruptcy Court was directly and intentionally targeted and victimized by Defendants' Hobbs Act RICO loan sharking and money laundering fraudulent scheme. Its processes were abused, its integrity undermined, and its authority flouted. The fraudulent Dismissal Order (Dkt. 28)—and other equally fraudulent and

***manifestly frivolous ultra vires and moot orders***, Dkt. 256, 258, 263, 274, 275, and 278, all stands as a monument to this defilement of the judicial process and must be vacated to vindicate the Court's honor and restore public confidence in the impartiality and fairness of federal bankruptcy courts.

2. **Legitimate Creditors of the Chapter 11 Estate: Unjust Deprivation of Recoveries:** Innocent and legitimate creditors of the Debtor's Chapter 11 estate have been directly and unjustly harmed and defrauded by Defendants' Hobbs Act RICO criminal racketeering criminal enterprise's scheme. The fraudulent dismissal, Dkt. 28, and other fraudulent reliefs, Dkt. 256, 258, 263, 274, 275, and 278, have irrevocably deprived Group Management, Mr. Ware, and others of their rightful opportunity to recover their valid claims from the +$522 million in concealed insider-trading profits, assets specifically intended under bankruptcy law for distribution to creditors. Defendants' fraud has effectively stolen millions of dollars from the pockets of legitimate creditors to unjustly enrich themselves and their clients.

3. **Chapter 11 Estate of Group Management Corp.: Plundered and Depleted of Assets:** The Chapter 11 estate of Group Management Corp. has been systematically plundered and depleted of its most valuable assets – **the +$522 million in insider-trading profits** – through Defendants' racketeering fraudulent scheme. Assets intended to benefit creditors and facilitate an equitable reorganization have been stolen, concealed, diverted, and misappropriated through calculated deception and abuse of the legal system.

4. **Ulysses T. Ware and Group Management Corp.: Victims of Vexatious and Fraudulent Litigation:** Mr. Ware and Group Management Corp. have been subjected to years of vexatious, bad faith, and fraudulent litigation at the hands of Defendants—see Dkt.

28, 256, 258, 263, 274, 275, and 278. They have been forced to expend significant resources and endure protracted legal battles to defend against baseless and illegal claims, all while Defendants were actively perpetrating a fraud upon the court and concealing the true nature of their unlawful scheme.

## IV. DEMAND FOR IMMEDIATE AND DECISIVE INVESTIGATION AND REMEDIAL ACTION BY THE U.S. TRUSTEE

In light of the overwhelming and irrefutable evidence of deliberate and bad faith fraud detailed herein, on behalf of Group Management Corp. and Ulysses T. Ware, we formally demand that the Executive Office of the U.S. Trustee and the U.S. Trustee for Region 21, Ida Mae Townsend, Esq., immediately undertake the following critical actions:

1. **Initiate a Formal and Expedited Investigation:** Commence a formal and expedited investigation into the fraudulent conduct of Kilpatrick Townsend & Stockton, LLP, attorneys Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Wab Kadaba, et al., and KTS Clients (Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership) in connection with *In re Group Management Corp.*, Case No. 03-93031 (Bankr. N.D. Ga.). This investigation must include a comprehensive review of all relevant filings in the 03-93031 Bankruptcy Case, the attached FINRA Certification (**Exhibit 1**), Documents 11 (**Exhibit 11A**), 15 (**Exhibit 15A**), and 16 (**Exhibit 16A**), and any and all other evidence of fraud and unethical conduct.

2. **Refer KTS Attorneys for Disciplinary Investigation and Sanctions:** Immediately refer for interim suspension from all appearances and practice in the District Court (NDGA)

attorneys Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Wab Kadaba, and Kilpatrick Townsend & Stockton, LLP to the District Court (NDGA) Lawyer Disciplinary Committee, and Georgia Bar Association for a thorough disciplinary investigation based on their egregious violations of Georgia Rules of Professional Conduct 3.3(a) and 8.4. Further, request that the Bankruptcy Court itself impose sanctions upon KTS and its attorneys, including but not limited to substantial monetary sanctions, disgorgement of fees earned in connection with the fraudulent scheme, and disbarment from practice before the federal courts of the Northern District of Georgia.

3. **Demand Criminal Investigation and Prosecution by the U.S. Attorney:** Formally refer this matter to the United States Attorney for the Northern District of Georgia, the Federal Bureau of Investigation (FBI), FINRA, and the Securities and Exchange Commission (SEC) for a full and comprehensive criminal investigation and prosecution of Kilpatrick Townsend & Stockton, LLP, attorneys Dennis S. Meir, John W. Mills, III, et al., and KTS Clients (Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership) for potential violations of 18 U.S.C. §§ 152, 157, 371, *et seq.* (bankruptcy fraud, securities fraud, RICO violations, conspiracy, and related federal crimes). The scale and deliberateness of this fraud, involving the misappropriation of hundreds of millions of dollars and a calculated assault on the federal judicial system, demand a vigorous criminal response.

4. **Commit to Full Cooperation in Asset Recovery and Estate Administration:** Pledge the full cooperation and resources of the U.S. Trustee's office to assist GPMT and its counsel in all efforts to locate, trace, recover, and administer the +$522 million in concealed insider-trading profits and any other assets of the Debtor's estate. ***This cooperation should***

*include, but not be limited to, utilizing the U.S. Trustee's investigative powers and resources to identify and pursue all avenues of asset recovery and to ensure that these recovered assets are properly administered for the benefit of the defrauded creditors of the Chapter 11 estate.*

## V. DEMAND FOR IMMEDIATE MEETING TO DISCUSS REMEDIAL ACTION

We reiterate our demand for an ***immediate meeting*** with representatives of the Executive Office of the U.S. Trustee and U.S. Trustee, Region 21, Ida Mae Townsend, Esq., at your earliest possible convenience. We seek your ***unequivocal assurance*** that the U.S. Trustee's office will treat this matter with the urgency and seriousness it manifestly deserves and will commit to taking swift and decisive action to investigate and remedy this egregious fraud, hold the perpetrators accountable to the full extent of the law, and restore integrity to the bankruptcy system. The scale of this fraud and its corrosive effect on public trust demand nothing less than a swift, comprehensive, and forceful response from the U.S. Trustee.

**RESPECTFULLY SUBMITTED,**

Dated: January 31, 2025

**GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

*For Movants Ulysses T. Ware and Group Management*

cc: U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council

Administrative Office of the U.S. Courts, Executive Director

Office of the U.S. Trustee, Region 21, (Ida Mae Townsend, Esq.)

Financial Industry Regulatory Agency (FINRA) on behalf of the Securities and Exchange Commission (Marcia E. Asquith, Esq.)

State Bar of Georgia, Office of the General Counsel (William D. NeSmith, III) on behalf of the Supreme Court of Georgia, Office of the Chief Justice, the Hon. Michael P. Boggs

Edward T.M. Garland on behalf of Garland, Samuel, & Loeb, P.C., and affiliates

Nall & Miller, LLP

Kilpatrick, Townsend, & Stockton, LLP on behalf of its clients, the 02cv2219 (SDNY) plaintiffs

Unregistered broker-dealers Arie Rabinowitz on behalf of LH Financial Services Corp., Trailblazer Merger Corp., I

Unregistered broker-dealers Frank V. Sica on behalf of Tailwind Management L.P., Colleen McMahon, and Michael S. Bertisch (see Ex. 10)


## Enclosures:

**Exhibit 1:** CERTIFICATION OF NO FINRA BUSINESS RECORDS, dated May 17, 2021, by Marcia E. Asquith, Executive Vice President, FINRA

**Exhibit 11A:** Document 11, "ENTRY OF APPEARANCE; REQUEST FOR SPECIAL NOTICE; REQUEST FOR SERVICE OF PAPERS; AND RESERVATION OF RIGHTS," *In re Group Management Corp.*, Case No. 03-93031 (Bankr. N.D. Ga.).

**Exhibit 15A:** Document 15, "EMERGENCY MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY," *In re Group Management Corp.*, Case No. 03-93031 (Bankr. N.D. Ga.).

**Exhibit 16A:** Document 16, "BRIEF IN SUPPORT OF EMERGENCY MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY," *In re Group Management Corp.*, Case No. 03-93031 (Bankr. N.D. Ga.).

# Certificate of Service

I Ulysses T. Ware certify that I have this 31st day of January 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munto for immediate provisional filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[9] and 5005(b)(1) with the U.S. Trustee.[10]

cc:     Office of the U.S. Trustee, Region 21 (Ida Mae Townsend)

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[11]

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

---

[9] *With a Judge of the Court.* A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[10] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[11] **Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.**

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

Acting Director of the FBI (via Ida Mae Townsend, Esq.)

*Ulysses T. Ware*

/s/ Ulysses T. Ware

**January 31, 2025**

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) ***statutory insider status*** (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' ***unregistered broker-dealer*** clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities.[12]

---

[12] Judge Sand's Aug. 13, 2003, ruling, binding **a lawful court order**—(A) subject to enforcement against Hagenau, KTS, its client, et al., via civil and criminal contempt (18 USC §§401(2), 401(3)) absolutely binding on the 03-93031 Chapter 11 Bankruptcy Court (NDGA) (Hagenau, C.J.), which (B) ***conferred fiduciary duty status*** on all 18 USC §1962(d) racketeering to commit bankruptcy fraud unindicted coconspirators to wit, Hagenau, KTS, its partners, each of ***KTS' unregistered broker-dealer clients, et al.***— that is, Hagenau, KTS, its partners, and its clients are subject to (i) ***an existing and extant and current equitable lien on their personal and individual assets***, (ii) current and extant constructive trust impressed on their assets, (iii) and U.C.C. Article 1 encumbrance and lien on their assets in the amount of ***+$522M plus interest*** running from the date of Judge Sand's 15 USC §78p(b) court order, August 13, 2003, (i.e., stolen and concealed property and assets of the 03-93031 Chapter 11 estate).

**Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*.

Appx 34-2—GX 24 (Dkt. 65, 02cv2219)—found each 02cv2219 plaintiff to be a 15 USC 78p(b) statutory insider of GPMT, and their and their agents required to disgorge back to GPMT +$500 million in trading profits.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALPHA CAPITAL AKTIENGESELLSCHAFT,
AMRO INTERNATIONAL, S.A.,
MARKHAM HOLDINGS, LTD., and
STONESTREET LIMITED PARTNERSHIP,

              Plaintiffs,                     02 Civ. 2219 (LBS)

      -against-                               ORDER

GROUP MANAGEMENT CORP.,
formerly known as IVG CORP.,
formerly known as INTERNET
VENTURE CORP.,

              Defendant.

SAND, District Judge.

    In a telephonic conference on July 2, 2003, this Court ordered that Defendant Group Management comply with a conversion request by Plaintiff Stonestreet L.P., contingent on the provision by Plaintiff of an affidavit stating, inter alia, that Stonestreet beneficially owned less than 9.9% of Group Management's common stock, as well as an opinion letter stating that the conversion would therefore be in compliance with Rule 144(k). See Tr. July 2, 2003. Plaintiff subsequently provided an unsworn statement to the effect that Stonestreet's ownership was below the appropriate level; when Defendant still failed to honor the conversion request, the Court ordered on July 23 that i) Plaintiff provide a sworn affidavit, as required by July 2 Order; and ii) that Defendant honor the Stonestreet conversion request within two business days thereafter, on pain of contempt.

    On August 1, 2003, the Court received from Plaintiff copies of an affidavit and opinion

COPIES MAILED TO ALL PARTIES

(12-12) 01.31.25 (Part 14-12) re Memorandum of Request for Action by the Office of the U.S. Trustee, Region 21, Ida Mae Townsend, Esq., an officer of the court with GA Bar Rule 3.3 duty of complete candor to the 03-93031 tribunal.

The conspiracy to commit securities and bankruptcy fraud by KTS during the In re Group Mangement Corp, 03-93031 (BC NDGA) Chapter 11 proceedings. KTS' clients' judicially admitted in ex parte communications with the 02cv2219 (SDNY) district court (Sand, J.) that KTS did in fact knowingly violated 18 USC 2, 157, 371, 924(c), 1201-02, 1341, 1343, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B) and 1962(d) by concealing and suppressing its clients' ownership of GPMT's stock.

letter relating not to Plaintiff Stonestreet, but rather to Plaintiff Alpha Capital. Plaintiff explained, upon inquiry from Chambers, that Stonestreet in fact beneficially owned more than 9.9% of Group Management's stock.

Given the above facts, the Court observes that the conditions set in the July 2 Order regarding the Stonestreet conversion request have not been met, and that Defendant is therefore not in contempt of that Order, or of the follow-up Order of July 23. Nonetheless, pursuant to other orders of this Court, including the Order and Judgment of November 25, 2002, Defendant is still bound to honor appropriate conversion requests from Alpha Capital, and Plaintiff has submitted both an affidavit and opinion letter regarding the legality of the current Alpha conversion request. Accordingly, failure by Defendant to honor that request within two business days of this Order shall constitute contempt.

SO ORDERED.

Dated: New York, New York
       August 14, 2003

_____
                U.S.D.J.

Friday, January 31, 2025
(12-12) 01.31.25 (Part 14-12) re Memorandum of Request for Action by the Office of the U.S. Trustee, Region 21, Ida Mae Townsend, Esq., an officer of the court with GA Bar Rule 3.3 duty of complete candor to the 03-93031 tribunal.

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment— December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte ***Dismissal with Prejudice*** of the 02cv2219 (SDNY) Lawsuit ***After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware***.[13]

---

[13] KTS' ***unregistered broker-dealer clients'*** Dec. 20, 2007, ***voluntary*** Rule 41(a)(2) ***dismissal with prejudice*** of the 02cv2219 (SDNY) lawsuit—final judgment on the merits for the Chapter 11 debtor, Group Management, and 11 USC §1109(b) statutory party in interest Ulysses T. Ware, is currently and will be enforced against Hagenau, KTS, its clients, and each 18 USC §1962(d) unindicted coconspirator ***resisting*** the ***legal and equitable preclusive effects***—that is, the immediate 11 USC §542(a) turnover of all Chapter 11 estate assets, of the binding court order, see 18 USC §§401(2), and 401(3), and Fed. R. Crim. P. 42.



United States District Court
Southern District of New York
------------------------------------------------x

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership,

                    Plaintiffs,

        -against-

Group Management Corp., formerly known
as IVG Corp., formerly known as Internet
Venture Group, Inc., Elorian Landers and
Becky Landers,

                    Defendants.

------------------------------------------------x

Order of Dismissal
Without Prejudice

02 Civ. 2219(LBS)

Pursuant to the provisions of Rule 41(a)(2) of the Federal Rules of Civil Procedure, upon

request of Plaintiff Alpha Capital Aktiengesellschaft, this case is dismissed without prejudice.

Dated: New York, New York
       December   , 2007

CERTIFIED AS A TRUE COPY ON
THIS DATE   6/13/19
BY _____
            Clerk
            Deputy

Law Offices of Kenneth A. Zitter

By: _____
        Kenneth A. Zitter, Esq.
        Attorneys for Plaintiff
        Alpha Capital Aktiengesellschaft
        260 Madison Avenue - 18th Floor
        New York, New York 10016

_____
U.S.D.J.        12/18/07

COPIES MAILED TO ALL PARTIES
12-18-07

Page **29** of **32**
Friday, January 31, 2025
(12-12) 01.31.25 (Part 14-12) re Memorandum of Request for Action by the Office of the U.S. Trustee,
Region 21, Ida Mae Townsend, Esq., an officer of the court with GA Bar Rule 3.3 duty of complete
candor to the 03-93031 tribunal.

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <u>unregistered broker-dealer status</u> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<u>a pattern of racketeering activities.</u>**

## CERTIFICATION OF NO FINRA BUSINESS RECORDS

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

> a) Alpha Capital, AG
> b) Stonestreet, L.P.
> c) Markham Holdings, Ltd.
> d) Amro International, S.A.
> e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of ____May____, 2021.

Notary Public, District of Columbia

My commission expires: 5/31/___

Exhibit 4--*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers. see Dkt. 11 (03-93031) (BC NDGA), KTS' entry of appearance.

---

*UNITED STATES v. WARE*, CASE NO. 09-0851 (2D CIR.) (2010)
ON APPEAL FROM *UNITED STATES v. WARE*, 04cr1224 (Sweet, J.)
18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION
APPELLANT WARE'S OPENING BRIEF

1   Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2   S78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4   **ADMISSION OF BROKER-DEALER STATUS BY**
5   **ARI RABINOWITZ UNDER CROSS EXAMINATION.**
6
7   Mr. Ware: What is the name of your company?

8   Rabinowitz: LH Financial Services.

9   Mr. Ware: What business is that company?

10  Rabinowitz: We are in the private placement business.

11  **Tr. 206**

12  Mr. Ware: Approximately how many companies have you assisted Alpha Capital
13  with over, let's say, the last five years?

14  Rabinowitz: A good few hundred.

15  Mr. Ware: A good few hundred?

16  Rabinowitz: Yes,

17  Rabinowitz' testimony of being in the private placement business, and assisting
18  Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19  §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20  under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
21  regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief

Friday, January 31, 2025
(12-12) 01.31.25 (Part 14-12) re Memorandum of Request for Action by the Office of the U.S. Trustee, Region 21, Ida Mae Townsend, Esq., an officer of the court with GA Bar Rule 3.3 duty of complete candor to the 03-93031 tribunal.

**End of document**

(12-12) 01.31.25 (Part 14-12) re Memorandum of Request for Action by the Office of the U.S. Trustee, Region 21, Ida Mae Townsend, Esq., an officer of the court with GA Bar Rule 3.3 duty of complete candor to the 03-93031 tribunal.

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

# F-6

**Sunday, February 9, 2025, 10:22:21 AM**

<u>**VIA ELECTRONIC MAIL TO ALL APPELLEES OR THEIR AGENTS IN FACT.**</u>

Wab Kadaba, Esq.
J. Henry Walker, IV, Esq.
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309

**Re: *In re Group Management Corp.*, Case No. 03-93031 (WLH) (Bankr. N.D. Ga.) – Proposed Dispositive Joint, Agreed, and Stipulated Article III Standing, Subject Matter Jurisdiction, and Sanctioning Appellate Record under Bankruptcy Rule 8009(d), Dkt. 281, Feb. 7, 2025.**

Dear Appellees, Mr. Kadaba. and Mr. Walker:[1]

I Ulysses T. Ware, attorney in fact, represents Appellants Ulysses T. Ware and Group Management in the above-referenced appeal before the United States District Court for the Northern District of Georgia. We are writing to you, as purported legal counsel for Appellees Kilpatrick Townsend & Stockton LLP and its clients, see Dkt. 11, regarding the designation of the appellate record in this matter of significant jurisdictional import.

As previously communicated, and to ensure the most efficient and cost-effective appellate review, Appellants propose to finalize and submit a ***Joint Stipulated Appellate Record*** pursuant to Bankruptcy Rule 8009(d). To this end, we have prepared and previously shared Draft #1 of a Joint Stipulated Appellate Factual Record (12-17) (Part 12-17). We firmly believe this draft accurately and fairly delineates the undisputed facts essential to the resolution of the critical jurisdictional and Article III standing challenges raised in the Appellants' Notice of Appeal concerning your unregistered broker-dealer clients.

As you are aware, Bankruptcy Rule 8009(d) explicitly provides for an "Agreed Statement as the Record on Appeal." When accurate and duly approved by the Bankruptcy Court, such a stipulated record serves to streamline the appellate process, directing the reviewing court's attention to the ***core factual and legal issues,*** thereby conserving judicial resources and promoting clarity. We

---

[1] Bankr. Rule 8009 **(g) Other Necessary Actions**. <u>All parties to an appeal must take any other action necessary to enable the bankruptcy clerk to [timely] assemble and transmit the [03-93031 appellate] record</u>.

maintain that a stipulated record is particularly appropriate and advantageous in this appeal, which turns on ***fundamental questions*** of Article III jurisdiction and standing, issues demonstrably and unequivocally supported by undisputed facts already present within the existing record.

Draft #1 of the Joint Stipulated Appellate Factual Record is intended to be a product of collaborative effort, reflecting the "Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions" previously filed with the Bankruptcy Court. We remain confident that the factual assertions outlined in Draft #1 are readily verifiable by direct reference to the cited docket entries and exhibits, and provide a demonstrably clear and concise factual foundation fully suitable for the District Court's appellate review of these critical jurisdictional matters.

We therefore formally invite you to undertake a comprehensive review of Draft #1 and to ***engage in a collaborative and good-faith process*** to finalize the stipulated record. While Appellants remain open to reasonable and constructive refinements and additions that you may deem necessary, ***we must emphasize that any such proposals must fully preserve the accurate and comprehensive presentation of the core jurisdictional facts, which are non-negotiable***. Appellants firmly believe that a mutually agreed-upon stipulated record will significantly benefit all parties, as well as the District Court, by ensuring a focused, expeditious, and efficient appellate review process.[2]

To ensure the timely designation of the appellate record and to comply fully with the Bankruptcy Court's established deadline of February 18, 2025 (Dkt. 281), **we respectfully require your and your clients' Bankruptcy Rule 9011(b)(1-4) and 28 U.S.C. § 1927 compliant written response, including any proposed revisions to Draft #1, no later than Monday, February 10, 2025, at 11:00 AM Eastern Standard Time. Given the Court's imminent deadline, time is of the essence**.

**Please be further advised that Appellants will proceed without delay to submit A-4: Draft #1, along with any supplemental facts, and legal and equitable inferences firmly established by res judicata and collateral estoppel—particularly as they relate to Judge Sand's Final Order, Dkt. 65, dated August 13, 2003, in Case No. 02cv2219 (SDNY), and the voluntary Rule 41(a)(2) Final Judgment, Dkt. 90, dated December 20, 2007—to the Bankruptcy Court for its independent consideration and approval pursuant to Rule 8009(d) should we not receive your and your clients' definitive response, or achieve a mutually agreed-upon Rule 8009(d)**

---

[2] Please be advised, take notice, and be aware that any and all actual and/or constructive "resistance" by KTS, its lawyers, partners, associates, legal counsel, agents, proxies, surrogates, alter-egos, or most importantly, unindicted coconspirators', to Judge Sand's final judgment, Dkt. 90, preclusive effects, and orders, Dkt. 65, preclusive effects, described above, shall be met with immediate civil and 18 USC § 401(3) criminal contempt measures in the appropriate U.S. District Court. Accordingly, you are to temper and constrain any response or opposition to the Rule 8009(d) Joint Stipulated Appellate Record given the parameters of res judicata and the estoppel doctrines.

joint stipulated record, by Monday, February 10, 2025, at 11:00 AM Eastern Standard Time. This deadline is absolute.

We anticipate your prompt response and good faith cooperation in resolving this critical matter.

/s/ Ulysses T. Ware
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
**February 9, 2025, 10:22:21 AM**

(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d) Jurisdictional and Sanctioning Facts.

# Table of Contents

**A-4: Draft #1 (02.09.25)--10:53:32 AM** ..................................................................................... 7

**A.**    **Introduction.**.............................................................................................................. 10

**B.**    **Rule 8009(d) Dispositive Jurisdiction and Sanctioning Appellate Facts.**...................... 11

Sunday, February 9, 2025, 10:55:53 AM**Certificate of Service**.......................................... 15

**Exhibit I—Dkt. 278—Barbara Ellis-Monro's Self-incrimination for conspiracy to obstruct justice and commit bankruptcy fraud, 18 USC §§ 2, 152, 157, 371, 924(c), 1341, 1343, 1344, 1346, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), et. seqs. confessed and admitted by Barbara Ellis-Monro in her personal and individual capacity as an 18 USC § 1962(d) unindicted coconspirator having joint and several personal criminal and civil liability in the amount of +$5.2225 billion.** ............................................................................................................... 18

**F.**    **Exhibits—Supplemental Record** ................................................................................. 19

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *statutory insider status* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *unregistered broker-dealer* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities. ................................................................................................................... 20

**Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*. .................................................................................................. 21

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment—December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware.* ................................................................. 23

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding for unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court,  pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. Actual innocent Brady exculpatory evidence.**............................... 25

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32................ 26

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers.......................................................................................... 29

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) **statutory underwriters** of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts. .............................. 30

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. .................................................................. 31

**Supplemental Appendices** ............................................................................................. 31

**Appendix 1**—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, **armed, forced entry into** Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager. ................................................................. 32

    A.     Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to **U.S. v. Ware,** 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and **In re Group Management Corp..**, 03-93031 (BC NGDA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence **while armed and without any warrant**, or lawful process—**a potentially deadly encounter**, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest. .................................. 33

    B.     Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly—into Mr. Ware's law office **without any lawful warrant by persons impersonating U.S. Marshals**—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in **In re Group Management Corp.,** 03-93031 (BC NDGA) Chapter 11. ........................................ 34

    C.     Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators. ........................................................................... 35

**Appendix 2**—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities. ....................................................... 36

Appendix 3--Re: Appellants' and Appellees' *Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions* pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC 1927. ........................................................................................................................ 37

STATEMENT OF ULYSSES T. WARE REGARDING ATTEMPTED CONSENT AND IMPLIED CONSENT OF APPELLEES-RESPONDENTS TO JOINT DECLARATION OF UNDISPUTED JURISDICTIONAL MATERIAL FACTS ........................................................................................ 44

CERTIFICATION OF COUNSEL PURSUANT TO BANKRUPTCY RULE 9011(b)(1-4) AND 28 U.S.C. § 1927 ................................................................................................................................ 46

THE PARTIES' JOINT DECLARATION OF .................................................................................. 48

UNDISPUTED JURISDICTIONAL MATERIAL FACTS .............................................................. 48

Certificate of Service .......................................................................................................................... 62

End of document ................................................................................................................................. 63

## A-4: Draft #1 (02.09.25)--10:22:21 AM

## Case No. 03-93031

# United States Bankruptcy Court (A-4—Draft #1)
# For the Northern District of Georgia
# (Atlanta Division)
### Submitted for Filing on
### Sunday, February 9, 2025, 10:22:21 AM

_____

## In re Group Management Corp., Chapter 11

_____

**The Appellants' and Appellees' Joint Stipulated and Agreed Bankr. Rule 8009(d)[3] Appellate Factual Record.[4]**

**The Appellants hereby this 9th day of Feb. 2025 incorporate by reference, attach hereto, and make the same a part hereof, in heac verba (12-0) (Part 14-0), and all attachments to this email (A-1).**

_____

[3] (d) **Agreed Statement as the Record on Appeal**. Instead of the record on appeal as defined in subdivision (a), the parties may prepare, sign, and submit to the bankruptcy court a statement of the case showing how the issues presented by the appeal arose and were decided in the bankruptcy court. The statement must set forth only those facts alleged and proved or sought to be proved that are essential to the court's resolution of the issues. *If the statement is accurate, it—together with any additions that the bankruptcy court may consider necessary to a full presentation of the issues on appeal—must be approved by the bankruptcy court and must then be certified to the court where the appeal is pending as the record on appeal.* The bankruptcy clerk must then transmit it to the clerk of that court within the time provided by Rule 8010. A copy of the agreed statement may be filed in place of the appendix required by Rule 8018(b) or, in the case of a direct appeal to the court of appeals, by F. R. App. P. 30.

[4] The Rule 8009 (d) appellate factual record is governed by the equitable and legal preclusive effects of: (i) Ex. 1, Ex, 2, and Ex. 3, infra; and therefore res judicata and collateral estoppel governs the factual issues herein determined by binding final judgments, Ex. 2, final orders, Ex. 1, and binding regulatory findings, Ex. 3.

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**
**February 9, 2025**

Case No. 03-93031

# United States Bankruptcy Court (A-4-D1)
# For the Northern District of Georgia
# (Atlanta Division)
Submitted for Filing on
Saturday, February 8, 2025, 10:22:21 AM

## In re Group Management Corp., Chapter 11

Re: Appellants' and Appellees' *Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions* pursuant to Bankruptcy Rule 8009(d), 9011(b)(1-4) and 28 USC 1927.[5]

**Submitted by:**

/s/ Ulysses T. Ware
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
**February 9, 2025**

---

[5] The Movants' challenge to the Bankruptcy Court (NDGA) *In re Group Management Corp.,* 03-93031 Chapter 11 Article III jurisdiction over **predatory criminal usury unlawful debts subject matter**, GX 1-4; and (2) challenge to the Article III standing of the 02cv2219 (SDNY) plaintiffs, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP clients, see Dkt. 11, **unregistered broker-dealers**. Cf., Ex. 3, infra. What legitimate and lawful interest would a United States Bankruptcy Court (Ellis-Monro, C.J. and Hagenau, C.J.) have in not *sua sponte* affirmatively confirming the Court's mandatory unwaivable constitutional jurisdiction to adjudicate the Dkt. 6, 11, 13, 14, 15, and 16 proceedings with respect to fundamental constitutional prerequisites—"legally protected interest" in criminal usury convertible promissory notes--in *predatory criminal usury unlawful debts*, GX 1-4, and (2) the Article III standing of KTS' *unregistered broker-dealers clients to enforce and/or collect GX 1-4*? *No legitimate interest exists*. If no legitimate interest exists, then any alleged interest, by definition. must be nefarious, corrupt, perfidious, and illegitimate—that is, *an unlawful interest*.

# A.   Introduction.

Re: *In re Group Management Corp.*, **Case No. 03-93031 (WLH) (Bankr. N.D. Ga.) – The Appellants' and Appellees' Proposed Dispositive Joint, Agreed, and Stipulated Article III Standing, Subject Matter Jurisdiction, and Sanctioning Appellate Record under Bankruptcy Rule 8009(d), Dkt. 281, Feb. 7, 2025.**

Dear Appellees and Counsel:

This communication pertains to the above-referenced appeal, currently pending before the United States District Court for the Northern District of Georgia, and specifically addresses the designation of the appellate record as mandated by Dkt. 281, dated February 7, 2025.

Pursuant to Bankruptcy Rule 8009(d), and in the paramount interests of judicial economy and a focused appellate review, Appellants Ulysses T. Ware and Group Management are formally submitting the enclosed ***Proposed Dispositive Joint, Agreed, and Stipulated Article III Standing, Subject Matter Jurisdiction, and Sanctioning Appellate Record under Bankruptcy Rule 8009(d)*** for your comprehensive review and considered response.

This proposed stipulated record ***is intended to be dispositive*** of critical issues central to this appeal, namely, (i) Article III standing, (ii) subject matter jurisdiction, and (iii) the propriety of sanctions under Bankruptcy Rule 9011 and 28 U.S.C. § 1927, as well as the Bankruptcy Court's inherent sanctioning authority. Appellants firmly believe that the enclosed proposed irrefutable facts, derived directly from the record and controlling legal precedent, warrant your unqualified agreement and stipulation, thereby streamlining the appellate process and facilitating a swift and just resolution by the District Court.

As officers of the court and in accordance with the dictates of Bankruptcy Rule 9011(b)(1-4) and 28 U.S.C. § 1927, Appellants hereby submit the following Dispositive Jurisdiction and Sanctioning Appellate Facts for your meticulous review and substantive comment:

## B.    Rule 8009(d) Dispositive Jurisdiction and Sanctioning Appellate Facts.

The Appellants and each Appellees hereby this 9th day of February 2025, and after consultation with legal counsel, being fully aware and legally advised all ***independently and voluntarily*** have agreed, stipulated, and consented that:

(1) Each Appellee has knowingly and willfully engaged in bad faith and criminal misconduct—(A) conspiracy to commit bankruptcy fraud in 03-93031, 18 USC §§ 2, 152, 157, 371, and (B) conspiracy to enable the continued collection of ***null and void ab initio criminal usury unlawful debts***, GX 1-4, in violation of 18 U.S.C. §§ 2, 152, 157, 371, 401(2), 401(3), 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1512, 1519, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), in violation of Bankr. Rule 9011(b)(1-4), 28 U.S.C. § 1927, and during the 03-93031 proceedings;

(2) Each Appellee and/or their agents, proxies, surrogates, or alter-egos, directly and/or indirectly, have jointly and/or individually, knowingly, deliberately, intentionally, and in bad faith colluded, conspired, and racketeered as an illegal Hobbs Act predatory loan sharking, money laundering, and racketeering association in fact as defined in 18 U.S.C. § 1961(4), and each has knowingly and willfully in bad faith, with reckless disregard for the law and the facts, aided, abetted, assisted, enabled, and facilitated the "resistance", criminal contempt, 18 USC §§ 401(2), 401(3), **to lawful**

final orders, (A-1, Ex. 1, Dkt. 65, 02cv2219 (SDNY)), **final judgment** (A-1, Ex. 2, Dkt. 90, 02cv2219 (SDNY)), and **binding regulatory findings** (A-1, Ex. 3, FINRA's May 17, 2021, **regulatory finding of unregistered broker-dealer status for each of Appellee KTS' clients, cf., Dkt. 11**), which has irreparably injured, damaged, and harmed each Appellant in the sum certain amount of $5.2225 billion, jointly and severally.

(3) Each Appellee after careful consideration and on the advice of retained legal counsel, or acting *pro se* each hereby this 9th day of February 2025, (A) has agreed, stipulated, consented, and did not in the 03-93031 proceedings, and will not present any good faith appellate opposition to the following dispositive Article III jurisdictional facts as the Joint and Stipulated Bankr. Rule 8009(d) dispositive appellate record facts of the Parties; (B) it is agreed that at no time during the 03-93031 proceedings did I or legal counsel make any effort, and nor did I seek to intervene in the 03-93031 proceedings and protect any legal or equitable interest which I might have had; (C) I hereby agree, stipulated, and concede *__as a binding judicial admission__* that I have knowingly waived, forfeited, and abandoned any legal or equitable interest to appear in the 03-93031 Chapter 11, or appear in this Article III jurisdictional appeal; and (D) I further knowingly and willingly acknowledge, agree, stipulate, and concede that:

i.    KTS' clients, see Dkt. 11, *__are unregistered broker-dealers__*, see A-1, Ex. 3, irrefutably lacked a "legally protected interest" in GX 1-4, and GX 5, *__which are null and void ab initio, unenforceable, uncollectible, criminal usury convertible promissory notes, and contracts, respectively__*, created and distributed in violation of the federal securities law, 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff, by Appellees Arie Rabinowitz, LH Financial Service Corp., Kenneth A. Zitter,

Esq., ***convicted felon*** Edward M. Grushko, Esq., Barbara R. Mittman, Esq., Konrad Ackermann, KTS, and Appellee KTS' clients (see Dkt. 11), and other Appellees, known and unknown, ***a racketeering, predatory, loan sharking, and money laundering illegal association in fact***, operating in knowing and reckless violation of NYS Penal Law, section 190.40, the criminal usury law, ***a class E felony***, and in violation of 15 U.S.C. §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78ff, and SEC Release 33-7190 n. 17 (1995); and therefore, ipso facto, as a matter of fact Appellees, KTS, and KTS' clients (see Dkt. 11) **could not and did not** suffer the Article III required "**concrete injury in fact**" to a "**legally protected interest**" caused by Appellants' Ware and Group Management's ***lawful conduct*** in refusing to aid, abet, and assist Appellees and their agents to have recklessly and criminally violated the ***federal securities laws***, 15 USC §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78cc(b), 78ff, and SEC Release 33-7190 n. 17 (1995), and ***federal racketeering laws***, 18 U.S.C. §§ 1951(a), 1961(6)(B), and 1962(a-d), and enforce and collect the criminal usury convertible promissory notes, GX 1-4.

ii.      The United States Bankruptcy Court (NDGA) in regard to ***In re Group Management Corp.***, 03-93031, Chapter 11, ipso facto, lacked Article III subject matter jurisdiction from March 18, 2003, the filing of the Chapter 11 petition, Dkt. 1, ***over null and void ab initio, unenforceable, uncollectible convertible promissory notes (GX 1-4) having an implied interest rate in excess of +2000% annually***, **a criminal usury unlawful debt** created and distributed in violation of public policy, NYS Penal Law, section 190.40, the criminal usury law, a class E felony, (the "**Criminal Usury Subject Matter**");

iii.     The Criminal Usury Subject Matter, GX 1-4, sold and purchased by and through a criminal usury so-called subscription agreement, GX 5, in violation of 15 USC §§ 77d, 77e, 77x,

78o(a)(1), 78p(b), and 78ff, were purchased by Appellee KTS' clients, Dkt. 11, **certified unregistered broker-dealers**, (A-1, Ex. 3) ***in criminal violation*** of the federal securities laws, to wit: 15 U.S.C. §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78ff, and 78cc(b), and SEC Release 33-7190 n. 17 (1995); NYS Penal Law, section 190.40, the criminal usury law, a class E felony; in violation of federal racketeering laws, 18 U.S.C. §§ 1951(a), 1961(6)(B), and 1962(a-d), et. seqs. See ***Adar Bays, LLC v. GeneSYS ID, Inc***., 28 F.4d 379 (2d Cir. 2022); also see ***United States v. Grote***, 961 F.3d 105 (2d Cir. 2020) (aff'd conviction, sentence, and +$3.5 billion forfeiture judgment for unlawful debt [see GX 1-4] ***collection activities*** [see 03-93031, Dkt. 6, 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, 275, and 278; also see Sept. 1, 2004, kidnapping and attempted armed robbery of Appellants, A-1, Ex. 7, infra; and also see Sept. 12, 2024, break-in of Appellants' office and residence by agents of the Appellees to collect the criminal usury unlawful debts, GX 1-4, using force, threats, firearms, and intimidation, Id].

**As time is of the essence**, and to comply with the Court's February 18, 2025, deadline for designation of the appellate record, we must respectfully insist that any and all written oppositional challenges, disputes, or other opposition to the enclosed Article III jurisdictional and sanctioning facts must be received by Appellants, in writing via electronic mail to utware007@gmail.com, <u>no later than</u> **<u>Monday, February 10, 2025, by 11:00 AM Eastern Standard Time. This deadline is absolute and non-extendable.</u>**

Absent timely receipt of your written *ultra vires* objections, comments, or other denials, Appellants forthwith without any further notice or attempts to resolve this matter, will proceed to file this Proposed Dispositive Joint, Agreed, and Stipulated Article III Standing, Subject Matter

Jurisdiction, and Sanctioning Appellate Record with the Bankruptcy Court, seeking its prompt

approval pursuant to Rule 8009(d).

Respectfully submitted,

**The Office of Ulysses T. Ware**

/s/ Ulysses T. Ware

Ulysses T. Ware
Attorney for Appellants Ulysses T. Ware and Group Management

Tuesday, February 18, 2025, 10:22:21 AM

# Certificate of Service

I Ulysses T. Ware certify that I have this 9th February 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munro for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[6] and 5005(b)(1) with the U.S. Trustee.[7]

cc:    Office of the U.S. Trustee, Region 21 (Mary Ida Townson)

U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[8]

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

---

[6] *With a Judge of the Court.* A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[7] **(b) Sending Copies to the United States Trustee.**
(1) *Papers Sent Electronically.* All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[8] **Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.**

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

## Acting Director of the FBI (via Mary Ida Townson, Esq., U.S. Trustee, Region 21)

/s/ Ulysses T. Ware

February 9, 2025

**Exhibit I—Dkt. 278—Barbara Ellis-Monro's Self-incrimination for conspiracy to obstruct justice and commit bankruptcy fraud, 18 USC §§ 2, 152, 157, 371, 924(c), 1341, 1343, 1344, 1346, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), et. seqs. confessed and admitted by Barbara Ellis-Monro in her personal and individual capacity as an 18 USC § 1962(d) unindicted coconspirator having joint and several personal criminal and civil liability in the amount of +$5.2225 billion.**

Case 03-93031-wlh    Doc 278    Filed 01/27/25    Entered 01/27/25 17:14:42    Desc Main
Document    Page 1 of 1

Filed in U.S. Bankruptcy Court
Northern District of Georgia
Vania S. Allen, Clerk

JAN 2 7 2025

By: _____
Deputy Clerk

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
1431 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Chambers of
**BARBARA ELLIS-MONRO**
Chief Judge

Phone: 404-215-1030

January 27, 2025

Mr. Ulysses T. Ware
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226

Dear Mr. Ware:

    I am in receipt of over one hundred emails from you received since May 29, 2024. In these numerous emails and attachments, you have requested, (i) an evidentiary show cause hearing for various reasons; (ii) reopening of the closed bankruptcy case 03-93031; (iii) vacating pleadings and orders; (iv) transferring the closed case to the Southern District of New York; (v) my recusal or resignation; (vi) filing of an Asset Recovery Plan; and (vii) investigations, contempt, sanctions and other relief as to judges, attorneys, individuals and law firms all in a case that was dismissed by consent in May 2003. The case has been closed since June 2003.

    I write to reiterate the findings in the orders entered by now retired Judge Hagenau. Emails do not constitute filing with the Court [Doc. 256, p. 53]. Thus, none of the emails have been or will be docketed. Further, the Court has prohibited you from filing, sending, or otherwise delivering documents for filing in this case, except for notices of appeal and papers filed in connection therewith. [Doc. 275, p. 15]. Any notice of appeal or related papers must be properly filed, not emailed, to be docketed.

    Each of the emails received to date has been and will be preserved.

    This letter will be docketed. The case remains closed.

Sincerely,

Barbara Ellis-Monro
Chief United States Bankruptcy Judge

C: Clerk, USBC, NDGA

Page **18** of **63**
Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d)
Jurisdictional and Sanctioning Facts.

# F.  Exhibits—

## Supplemental Record

Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d)
Jurisdictional and Sanctioning Facts.

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) ***statutory insider status*** (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' ***unregistered broker-dealer*** clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities.[9]

***Actual innocent Bary exculpatory evidence*** concealed and suppressed by KTS and its unregistered broker-dealer clients in criminal and civil contempt of the Brady disclosure order, Sweet, J., Aug. 10, 2007, Dkt. 32, see Ex. 4, infra.

---

[9] Judge Sand's Aug. 13, 2003, ruling, binding **a lawful court order**—(A) subject to enforcement against Hagenau, KTS, its client, et al., via civil and criminal contempt (18 USC §§401(2), 401(3)) absolutely binding on the 03-93031 Chapter 11 Bankruptcy Court (NDGA) (Hagenau, C.J.), which (B) ***conferred fiduciary duty status*** on all 18 USC §1962(d) racketeering to commit bankruptcy fraud unindicted coconspirators to wit, Hagenau, KTS, its partners, each of ***KTS' unregistered broker-dealer clients, et al.***— that is, Hagenau, KTS, its partners, and its clients are subject to (i) ***an existing and extant and current equitable lien on their personal and individual assets,*** (ii) current and extant constructive trust impressed on their assets, (iii) and U.C.C. Article 1 encumbrance and lien on their assets in the amount of ***+$522M plus interest*** running from the date of Judge Sand's 15 USC §78p(b) court order, August 13, 2003, (i.e., stolen and concealed property and assets of the 03-93031 Chapter 11 estate).

**Ex. 1**—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*.



Appx 34-2—GX 24 (Dkt. 65, 02cv2219)—found each 02cv2219 plaintiff to be a 15 USC 78p(b) statutory insider of GPMT, and their and their agents required to disgorge back to GPMT +$500 million in trading profits.

The conspiracy to commit securities and bankruptcy fraud by KTS during the In re Group Mangement Corp, 03-93031 (BC NDGA) Chapter 11 proceedings. KTS' clients' judicially admitted in ex parte communications with the 02cv2219 (SDNY) district court (Sand, J.) that KTS did in fact knowingly violated 18 USC 2, 157, 371, 924(c), 1201-02, 1341, 1343, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B) and 1962(d) by concealing and suppressing its clients' ownership of GPMT's stock.

letter relating not to Plaintiff Stonestreet, but rather to Plaintiff Alpha Capital. Plaintiff explained, upon inquiry from Chambers, that Stonestreet in fact beneficially owned more than 9.9% of Group Management's stock.

Given the above facts, the Court observes that the conditions set in the July 2 Order regarding the Stonestreet conversion request have not been met, and that Defendant is therefore not in contempt of that Order, or of the follow-up Order of July 23. Nonetheless, pursuant to other orders of this Court, including the Order and Judgment of November 25, 2002, Defendant is still bound to honor appropriate conversion requests from Alpha Capital, and Plaintiff has submitted both an affidavit and opinion letter regarding the legality of the current Alpha conversion request. Accordingly, failure by Defendant to honor that request within two business days of this Order shall constitute contempt.

SO ORDERED.

Dated: New York, New York
August 14, 2003

_____
U.S.D.J.

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment— December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*.[10]

---

[10] KTS' *unregistered broker-dealer clients'* Dec. 20, 2007, *voluntary* Rule 41(a)(2) *dismissal with prejudice* of the 02cv2219 (SDNY) lawsuit—final judgment on the merits for the Chapter 11 debtor, Group Management, and 11 USC §1109(b) statutory party in interest Ulysses T. Ware, is currently and will be enforced against Hagenau, KTS, its clients, and each 18 USC §1962(d) unindicted coconspirator *resisting* the *legal and equitable preclusive effects*—that is, the immediate 11 USC §542(a) turnover of all Chapter 11 estate assets, of the binding court order, see 18 USC §§401(2), and 401(3), and Fed. R. Crim. P. 42.



United States District Court
Southern District of New York
-------------------------------------------------x

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership,

                              Plaintiffs,

        -against-

Group Management Corp., formerly known
as IVG Corp., formerly known as Internet
Venture Group, Inc., Elorian Landers and
Becky Landers,

                              Defendants.

-------------------------------------------------x

Order of Dismissal
Without Prejudice

02 Civ. 2219(LBS)

        Pursuant to the provisions of Rule 41(a)(2) of the Federal Rules of Civil Procedure, upon
request of Plaintiff Alpha Capital Aktiengesellschaft, this case is dismissed without prejudice.

Dated: New York, New York
       December   , 2007

CERTIFIED AS A TRUE COPY ON
THIS DATE  6/13/19
BY _____
        Clerk
        Deputy

U.S.D.J.  12/18/07

Law Offices of Kenneth A. Zitter

By: _____
    Kenneth A. Zitter, Esq.
    Attorneys for Plaintiff
      Alpha Capital Aktiengesellschaft
    260 Madison Avenue - 18th Floor
    New York, New York 10016

COPIES MAILED TO ALL PARTIES
    12-18-07

U.S. DISTRICT COURT
FILED
DEC 20 2007
S.D. OF N.Y.

Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d)
Jurisdictional and Sanctioning Facts.

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <u>unregistered broker-dealer status</u> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court,  pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<u>a pattern of racketeering activities.</u> Actual innocent Brady exculpatory evidence.[11]**

---

**CERTIFICATION OF NO FINRA BUSINESS RECORDS**

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations.  In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

> a) Alpha Capital, AG
> b) Stonestreet, L.P.
> c) Markham Holdings, Ltd.
> d) Amro International, S.A.
> e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of May, 2021.

Notary Public, District of Columbia

My commission expires: 5/31

---

[11] ***Deliberately suppressed and concealed*** by Barbara Ellis-Monro, Wendy L. Hagenau, KTS, its clients, the State Bar of GA, Michael P. Boggs, FINRA, et al. ***in criminal and civil contempt*** of Sweet, J.'s Brady disclosure ***court order***, Ex. 4, infra.

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32.

UNITED STATES OF AMERICA, - against - ULYSSES THOMAS WARE, a/k/a THOMAS WARE, Defendant.
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
2007 U.S. Dist. LEXIS 58786
04 Cr. 1224 (RWS)
August 8, 2007, Decided
August 10, 2007, Filed

**Editorial Information: Subsequent History**

Later proceeding at United States v. Ware, 2008 U.S. Dist. LEXIS 101537 (S.D.N.Y., Dec. 9, 2008)

**Counsel**       For Thomas Ware (1), also known as Ulysses Thomas Ware (1), Defendant: Nancy Lee Ennis, LEAD ATTORNEY, Quijano & Ennis, P.C. (381 Park Ave. S.), New York, NY.

Thomas Ware (1), also known as Ulysses Thomas Ware (1), LEAD ATTORNEY, Defendant, Pro se, Norcross, GA.

For USA, Plaintiff: Nicholas Stoloff Goldin, LEAD ATTORNEY, U.S. Attorney's Office, SDNY (St Andw's), New York, NY.

**Judges:** ROBERT W. SWEET, U.S.D.J.

Opinion

**Opinion by:**     ROBERT W. SWEET

Opinion

*MEMORANDUM OPINION AND ORDER*

Sweet, D.J.,

Defendant Thomas Ware (the "Defendant" or "Ware") has filed a motion seeking the following: (1) Dismissal of the indictment for lack of proper venue in the Southern District of New York; (2) Production of exculpatory material; (3) Notice of other act evidence the Government intends to introduce at trial under Fed. R. Evid. 404(b); (4) A bill of particulars; (5) Disclosure of *ex parte* communications between Judge Leonard B. Sand and the plaintiffs in the civil contract action underlying the pending criminal contempt charges, *Alpha Capital, et al. v. Group Management, et al.*, No. 02 Civ. 2219 (LBS) (the "Civil Action"); (6) Disclosure of the name and contact information of the Government official who certified certain affidavits in the Civil Action; (7) Disclosure of the criminal history and plea agreement of "Edward M. Grushko"; (8) Disclosure of the indictments of "Thomas Badian" and "Andrea Badian"; and (9) Disclosure of the identity of the Assistant United States Attorney who presented the Indictment to the Grand Jury. For the reasons stated below, the motion will be granted in part and denied in part.

*Venue is Proper*

When a defendant is charged with criminal contempt for violating a court order, "[t]he district in which the court order was issued is . . . said to have sufficient contact with the criminal contempt to be the site of prosecution." *United States v. Reed*, 773 F.2d 477, 481-82 (2d Cir. 1985). All charges

Lyboases                                        I

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d) Jurisdictional and Sanctioning Facts.

in the indictment allege that Ware violated court orders entered in this district by Judge Sand in the Civil Action. Accordingly, venue is proper.

### The Government Shall Produce All Brady Material Prior to Trial

Ware has requested that the Government provide him with all exculpatory and impeachment material before the commencement of the trial, pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In its brief (and in prior communications to the Defendant), the Government has repeatedly consented to this request. There being no opposition, this aspect of the motion shall be granted.

### The Government Shall Provide Notice of Other Act Evidence

Ware has requested that the Government provide him with all "other act" evidence by a date certain before the trial. In its brief, the Government has agreed to provide notice of all Fed. R. Evid. 404(b) evidence by September 19, 2007, which is the current deadline for the filing of *in limine* motions. There being no opposition, this aspect of the motion shall be granted. Should the deadline for the filing of *in limine* motions be extended, the deadline for notice of "other act" shall likewise be extended to coincide with the newly established *in limine* deadline.

### Defendant Is Not Entitled to a Bill of Particulars

Ware seeks a bill of particulars from the Government apparently requesting: (1) the specific acts upon which venue is based in the Southern District of New York; (2) how he violated the Civil Action court orders at the heart of the case; (3) the identity of the attorney who mailed Judge Sand's November 25, 2000 order to him and how he acknowledged receipt of said order; and (4) a list of all exhibits to be introduced at trial by the Government.

The purpose of a bill of particulars in a criminal case is to permit the defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

In the instant case, the Indictment provides all the information necessary by specifically identifying each court order with which Ware failed to comply and what act or omission violated the orders. To wit, the Indictment alleges that each order required Ware to honor the conversion notes issued to the plaintiffs in the Civil Action, which Ware and his corporation were contractually obligated to do. *See* Indictment at 4-6. For each of the three orders discussed in the Indictment, it is alleged that the notes were not honored (or, in one case, the notes were honored after the court-imposed deadline). *See id.* at 5-8. Furthermore, the Government has advised the Court that it has already produced to Ware copies of all the relevant orders and other documents from the Civil Action (to which Ware was a party). "The Government should not be compelled to disclose additional details of its case if the defendant has received adequate notice of the charges against him and can prepare fully for trial through the exercise of reasonable diligence." *United States v. Martinez-Martinez*, 2001 U.S. Dist. LEXIS 17558, 2001 WL 1287040, at *6 (S.D.N.Y. Oct. 24, 2001). Such is the case here.

Furthermore, the Government is not required to identify any of its witness absent "a specific showing that the disclosure [is] both material to the preparation of [defendant's] defense and reasonable in light of the circumstances surrounding his case." *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975). Here, Defendant has not even attempted to make such a showing.

Finally, a criminal defendant is not entitled to a list of the Government's trial exhibits at this stage. *See United States v. Nachamie*, 91 F. Supp. 2d 565, 568 (S.D.N.Y. 2000).

Tybcases

2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Accordingly, Defendant's motion for a bill of particulars will be denied.

**The Government Shall Produce Any Exculpatory Ex Parte Communications Between Judge Sand and the Plaintiffs in the Civil Action in its Possession**

Ware has not presented any justification, argument, or legal authority to support his request for the production of all ex parte communications between Judge Sand and the plaintiffs in the Civil Action. Furthermore, the Government has stated that if it discovers any relevant exculpatory material relating to this issue, it will produce such material to the Defendant. Accordingly, Ware's request will be granted only to the extent of requiring the Government to produce all exculpatory material to the Defendant.

**The Government is not Obligated to Disclose the Name and Contact Information of the Official who Certified Certain Affidavits in the Civil Action**

Again, Ware has not presented any justification, argument, or legal authority to support this request. The Government opposes this request because it amounts to identifying a witness in advance of the trial (and is not relevant). Because Ware has failed to make a showing that disclosure of the identity of this potential witness is both necessary and reasonable, the request will be denied. *See Cannone*, 528 F.2d at 301.

**The Government is Not Required to Disclose Information about Unrelated Criminal Defendants**

Ware has sought disclosure of the criminal history and plea agreement of Edward M. Grushko and the indictments of Thomas Badian and Andres Badian. He has not presented any justification, argument, or legal authority to support these requests, nor has he identified who the persons are or how they are related to this case. Furthermore, the Government has stated that it is not aware of any relationship between the trial and these persons. In the absence of any basis for this request, it will be denied.

**The Government is Not Required to Disclose the Identity of the Attorney Who Presented the Indictment to the Grand Jury**

Yet again, Ware has not presented any justification, argument, or legal authority to support this request. Under Fed. R. Cr. P. 6(e)(3)(E)(ii), "[t]he court may authorize disclosure [of grand jury proceedings] . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Here, Defendant has not even attempted to make such a showing. Accordingly, this request will be denied.

**Conclusion**

For the reasons stated above, Defendant's motion will be granted to the following extent: the Government shall produce all exculpatory and impeachment evidence prior to trial and all Rule 404(b) evidence no later than the deadline for filing *in limine* motions. Defendant's motion is denied in all other respects.

It is so ordered.

New York, NY

August 6, 2007

ROBERT W. SWEET

U.S.D.J.

lybcases                                                    3

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers.

*UNITED STATES v. WARE*, CASE NO. 09-0851 (2D CIR.) (2010)
ON APPEAL FROM *UNITED STATES v. WARE*, 04cr1224 (Sweet, J.)
18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION
APPELLANT WARE'S OPENING BRIEF

1    Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2    §78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3

4    **ADMISSION OF BROKER-DEALER STATUS BY**
5    **ARI RABINOWITZ UNDER CROSS EXAMINATION.**
6

7    **Mr. Ware: What is the name of your company?**

8    **Rabinowitz: LH Financial Services.**

9    **Mr. Ware: What business is that company?**

10   **Rabinowitz: We are in the private placement business.**

11   **Tr. 206**

12   **Mr. Ware: Approximately how many companies have you assisted Alpha Capital**
13   **with over, let's say, the last five years?**

14   **Rabinowitz: A good few hundred.**

15   **Mr. Ware: A good few hundred?**

16   **Rabinowitz: Yes.**

17   Rabinowitz' testimony of being in the private placement business, and assisting
18   Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19   §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20   under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
21   regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief

Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d)
Jurisdictional and Sanctioning Facts.

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) ***statutory underwriters*** of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts.

12.  Plaintiffs purchased the Notes pursuant to the terms of the Subscription Agreement (the "Subscription Agreement") entered into between and among the parties on or about February 2, 2001. Plaintiffs collectively paid $1.1 million to IVG and each Plaintiff received a Note in proportion to its investment, as set forth in the paragraph 10.

13.  Pursuant to Section 10.1(iv) of the Subscription Agreement, IVG was obligated to file on or before May 3, 2001, a form SB-2 Registration Statement with the United States Securities and Exchange Commission registering the stock underlying the Notes so that upon conversion the stock could be sold on the open market without restriction. IVG was obligated to

4

121

Case 1:02-cv-02219-CM   Document 100-1   Filed 03/05/11

have such registration statement declared effective on or before June 17, 2001. Thus Section 10.1(iv) of the Subscription Agreement provides:

"The Company shall file with the Commission within 90 days of the Closing Date (the 'Filing Date'), and use its reasonable commercial efforts to cause to be declared effective a Form SB-2 registration statement (or such other form as it is eligible to use) within 135 days of the Closing Date in order to register the Registrable Securities for resale and distribution under the Act. The registration statement described in this paragraph must be declared effective by the Commission within 135 days of the Closing Date (as defined herein)('Effective Date')."

IVG failed to comply with its obligations and to date has not had its registration statement declared effective.

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.

# Supplemental Appendices

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, **armed, forced entry into** Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager.



A.    Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to ***U.S. v. Ware,*** 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and ***In re Group Management Corp***.., 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence ***while armed and without any warrant***, or lawful process—***a potentially deadly encounter***, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest.



B.    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office ***without any lawful warrant by persons impersonating U.S. Marshals***—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in ***In re Group Management Corp.,*** 03-93031 (BC NDGA) Chapter 11.

| 75. | 9/1/04<br>Age: 44 | Contempt of Court | Atlanta, Georgia | 10/15/04:<br>Dismissed pursuant to order of Judge Leonard B. Sand |

76. According to Sr. U.S. Probation Officer Atonya M. Craft of the Northern District of Georgia, on September 1, 2004, the defendant was arrested in the Northern District of Georgia in response to an order issued by the Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02 CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil matter (which included the defendant) to deliver Silver Screen Studios, Inc. common stock to honor all of the conversion requests for Group Management Corp. or Silver Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand issued a warrant for the defendant's arrest for contempt of court, for failure to obey the December 22, 2003, order. This arrest order indicated that the defendant was to be arrested by the U.S. Marshals Service and detained until the defendant purged himself of contempt by delivering the above-referenced



# Sept. 1, 2004 kidnapping

**WARE, ULYSSES THOMAS**                                        P47014 - C. Tyler

15

common stock. On July 1, 2004, the defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia. He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to purge himself of contempt and offered no acceptable reason to prevent enforcement of the contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr., ordered the defendant to remain in the custody of the U.S. Marshals Service until he purged himself of contempt or was ordered released by either Judge Thrash or Judge Sand. The defendant's request for bond was granted, and he was released on September 3, 2004, after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

77. On September 28, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order in part to the extent that it authorized the arrest of the defendant outside of the state of New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street, New York, New York. The order remained in effect insofar as it could be served on the defendant in the state of New York or within 100 miles of the U.S. Courthouse located at 500 Pearl Street, New York, New York.

78. On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 set on September 2, 2004. On October 15, 2004, the defendant's motion was granted by the Honorable Thomas W. Thrash, Jr.; $150,000 was refunded to the defendant, and the corporate surety bond was discharged.

Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d) Jurisdictional and Sanctioning Facts.

C.     Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators.



**Appendix 2**—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities.



**Appendix 3--Re: Appellants' and Appellees' _Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions_ pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC 1927.**

# Case No. 03-93031

# United States Bankruptcy Court (12-17)
# For the Northern District of Georgia
# (Atlanta Division)
### Submitted for Filing on
### Tuesday, February 4, 2025, 10:22:21 AM

## In re Group Management Corp., Chapter 11

**Re: Appellants' and Appellees' _Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions_ pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC 1927.**[12]

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
**February 4, 2025**

---

[12] The Movants' challenge to the Bankruptcy Court (NDGA) _In re Group Management Corp.,_ 03-93031 Chapter 11 Article III jurisdiction over **predatory criminal usury unlawful debts subject matter**, GX 1-4; and (2) challenge to the Article III standing of the 02cv2219 (SDNY) plaintiffs, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP clients, see Dkt. 11, **unregistered broker-dealers**. Cf., Ex. 3, infra. What legitimate and lawful interest would a United States Bankruptcy Court (Ellis-Monro, C.J. and Hagenau, C.J.) have in not _**sua sponte**_ affirmatively confirming the Court's mandatory unwaivable constitutional jurisdiction to adjudicate the Dkt. 6, 11, 13, 14, 15, and 16 proceedings with respect to fundamental constitutional prerequisites—"legally protected interest" in criminal usury convertible promissory notes--in _**predatory criminal usury unlawful debts**_, GX 1-4, and (2) the Article III standing of KTS' _**unregistered broker-dealers clients to enforce and/or collect GX 1-4**_? _No legitimate interest exists_. If no legitimate interest exists, then any alleged interest, by definition. must be nefarious, corrupt, perfidious, and illegitimate—that is, _**an unlawful interest**_.

Page **37** of 63
Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d)
Jurisdictional and Sanctioning Facts.

# Table of Contents

STATEMENT OF ULYSSES T. WARE REGARDING ATTEMPTED CONSENT AND IMPLIED CONSENT OF APPELLEES-RESPONDENTS TO JOINT DECLARATION OF UNDISPUTED JURISDICTIONAL MATERIAL FACTS ................................................................ 44

CERTIFICATION OF COUNSEL PURSUANT TO BANKRUPTCY RULE 9011(b)(1-4) AND 28 U.S.C. § 1927. ........................................................................................................ 46

THE PARTIES' JOINT DECLARATION OF ................................................................ 48

UNDISPUTED JURISDICTIONAL MATERIAL FACTS ............................................ 48

Certificate of Service ...................................................................................................... 16

Exhibit I—Dkt. 278—Barbara Ellis-Monro's Self-incrimination for conspiracy to obstruct justice and commit bankruptcy fraud, 18 USC §§ 2, 152, 157, 371, 924(c), 1341, 1343, 1344, 1346, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), et. seqs. confessed and admitted by Barbara Ellis-Monro in her personal and individual capacity as an 18 USC § 1962(d) unindicted coconspirator having joint and several personal criminal and civil liability in the amount of +$5.2225 billion. ...................................................................................................... 18

F.     Exhibits—Supplemental Record ........................................................................ 19

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *statutory insider status* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *unregistered broker-dealer* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities. ...................................................................................................... 20

Ex. 1—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) binding judicial ruling and court order— Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore*, ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice.* ...................................................................................................... 21

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment— December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware.* ...................................................................................................... 23

Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. Actual innocent Brady exculpatory evidence. ................................ 25

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32. ................ 26

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers. ................................................................................ 29

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) *statutory underwriters* of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts............................. 30

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities. ........................................................................... 31

**Supplemental Appendices** ........................................................................................................ 31

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the lawful, **armed, forced entry into** Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager. ........................................................................................... 32

    A.    Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to *U.S. v. Ware*, 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and *In re Group Management Corp*.., 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence *while armed and without any warrant*, or lawful process—*a potentially deadly encounter*, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest. ................................... 33

    B.    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office *without any lawful warrant by persons impersonating U.S. Marshals*—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in *In re Group Management Corp.,* 03-93031 (BC NDGA) Chapter 11. ........................................ 34

    C.    Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators.................................................................................. 35

Appendix 2—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-

57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities. ........................................................................ 36

**End of document** ........................................................................................................................ 37

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

**February 4, 2025, 10:22:21 AM**

**VIA ELECTRONIC FILING and U.S. mail**

The Honorable Barbara Ellis-Monro
Chief Judge
United States Bankruptcy Court
Northern District of Georgia
Atlanta Division
1431 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Re: *In re Group Management Corp.*, **Chapter 11, Case No. 03-93031 (WLH) – Appellants-Movants' Rule 9014/12(h)(3) Jurisdictional Notice of Appeal (Part 14-10) – Submission of The Parties' Joint Declaration of Undisputed Jurisdictional Material Facts.**

Your Honor:

Appellants-Movants Group Management and Ulysses T. Ware, and Appellees-Respondents Kilpatrick Townsend & Stockton LLP, its Unregistered Broker-Dealer clients, et al. respectfully submit the enclosed ***The Parties' Consent Joint Declaration of Undisputed Jurisdictional Material Facts*** for the Court's consideration in connection with the pending Jan. Rule 9014/12(h)(3) Jurisdictional Notice of Appeal (Part 14-10) filed by Appellants-Movants on January 30, 2025, via email and the U.S. mail addressed to the Hon. Barbara Ellis-Monro. This Joint Declaration, titled "**Re: Appellants' and Appellees' Consent Joint Jurisdictional Declaration of Undisputed Material Facts and Stipulated Admissions pursuant to Bankruptcy Rule 9011(b)(1-4) and 28 USC § 1927,**" represents a collaborative effort by all parties to streamline the pending "sua sponte" required Article III constitutional jurisdictional

inquiry before this Honorable Court and to facilitate a focused and efficient resolution of the critical Article III standing and subject matter jurisdiction issues raised in the Notice of Appeal.

The enclosed Joint Declaration meticulously sets forth thirty-five (35) discrete and material Article III jurisdictional facts, each drawn directly from the Record before this Honorable Court in the 03-93031 Bankruptcy Case and the related 02cv2219 (SDNY) Litigation. ***These facts, as jointly declared and stipulated by Appellants-Movants and Appellees-Respondents, are undisputed and readily verifiable by reference to the cited docket entries and exhibits.*** The purpose of this Joint Declaration is to provide the Court with a clear, concise, and agreed-upon factual foundation upon which to conduct its mandated "sua sponte" threshold determination of Article III subject matter jurisdiction and standing, as unequivocally required by controlling Supreme Court precedent, ***Steel Co.***, 523 U.S. at 93-95 and ***Great Southern Fire Proof***, 177 U.S. at 453.

Appellants-Movants respectfully submit that the Undisputed Material Facts contained within the Joint Declaration compellingly support the reliefs requested in their Rule 9014/12(h)(3) Notice of Appeal (Part 14-10), and ***demonstrate, with undeniable clarity, the manifest absence of Article III standing for Appellees-Respondents KTS Clients, Unregistered Broker-Dealers, to assert claims in this Chapter 11 proceeding***. This Joint Declaration is submitted in good faith, pursuant to the certifications of counsel included therein and in furtherance of Bankruptcy Rule 9011(b)(1-4) and 28 U.S.C. § 1927, to promote judicial economy, expedite the resolution of ***threshold jurisdictional issues***, and facilitate the just, efficient, and lawful adjudication of this protracted and complex matter.

**RESPECTFULLY SUBMITTED,**

**For Appellants-Movants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226

Page **42** of **63**
Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d)
Jurisdictional and Sanctioning Facts.

(718) 844-1260
**Utware007@gmail.com**
February 4, 2025

**With implied consent pursuant to Bankr. Rule 9011(b)(1-4): Counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients.**

/s/ Wab Kadaba, Esq.,

/s/ J. Henry Walker, IV, Esq.

# End of Declaration

## STATEMENT OF ULYSSES T. WARE REGARDING ATTEMPTED CONSENT AND IMPLIED CONSENT OF APPELLEES-RESPONDENTS TO JOINT DECLARATION OF <u>UNDISPUTED JURISDICTIONAL MATERIAL FACTS</u>

I, Ulysses T. Ware, counsel for Appellants-Movants Ulysses T. Ware and Group Management, hereby state the following to this Honorable Bankruptcy Court:

1. **Contact with Counsel for Appellees-Respondents:** On February 3, 2025, counsel for Appellants-Movants contacted Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., of Kilpatrick Townsend & Stockton LLP, counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer clients, via electronic mail.

2. **Service of Joint Declaration of Undisputed Material Facts:** Attached to said electronic mail communication, Appellees-Respondents' counsel, Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., were served with a copy of the document titled "(12-13—D2) (Part 14-13—D2) re: Memorandum of Fundamental Constitutional Legal Error—Nullity of Dkt. 28, 256, 258, 263, 274, 275, and 278."

3. **Request for Oppositional Response or Challenge:** In said electronic mail communication to Appellees-Respondents' counsel, Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., Appellants-Movants' counsel requested that Appellees-Respondents file any oppositional response or challenge to the factual contents of the Joint Declaration, including any Declaration of Fact and supporting Memorandum of Law, **no later than 3:00 PM Eastern Standard Time on Monday, February 3, 2025**.

4. **Absence of Response as of February 4, 2025:** As of the date of this Statement, February 4, 2025, *Appellants-Movants have received no response, oppositional pleading, Declaration of Fact, or supporting Memorandum of Law* from Appellees-Respondents' counsel, Wab Kadaba, Esq. and J. Henry Walker, IV, Esq., or from Kilpatrick Townsend & Stockton LLP or KTS Clients, in regard to the aforementioned electronic mail communication and the proposed Joint Declaration.

5. **Implied Consent of Appellees-Respondents:** By virtue of Appellees-Respondents' counsel's failure to provide any ***oppositional response*** or challenge to the factual contents

of the Joint Declaration by the clearly communicated deadline, Appellants-Movants respectfully submit that Appellees-Respondents, including Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer clients, have impliedly consented to the factual contents of the Joint Declaration and to its submission to this Honorable Court as a Joint Declaration of Undisputed Material Facts.

Respectfully submitted,

/s/ Ulysses T. Ware
**Ulysses T. Ware**
*Counsel for Appellants-Movants Ulysses T. Ware and Group Management*

**Dated:** February 4, 2025

# CERTIFICATION OF COUNSEL PURSUANT TO
# BANKRUPTCY RULE 9011(b)(1-4) AND 28 U.S.C. § 1927.

I, Ulysses T. Ware, counsel for Appellants-Movants Mr. Ulysses T. Ware and Group Management Corp., and Wab Kadaba Esq. and J. Henry Walker, IV, Esq., counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients, hereby jointly certify to this Honorable Bankruptcy Court, pursuant to Rule 9011(b)(1-4) of the Federal Rules of Bankruptcy Procedure and in furtherance of the spirit of 28 U.S.C. § 1927, as follows:

1. **Joint Certification of Pleading:** This Certification pertains to the attached pleading titled "Joint Declaration of Undisputed Material Facts in Support of the Appellants' requested Reliefs taken from the Record before the Court" (the "Joint Declaration"), submitted in support of Appellants-Movants' Rule 9014/12(h)(3) Notice of Appeal (Part 14-10) in the above-captioned matter, and further relating to the Appellants-Movants' Memorandum of Law in Support of Rule 9014/12(h)(3) Notice of Appeal.

2. **Rule 9011(b) Certification Regarding Factual Contentions:** We, as undersigned counsel, hereby jointly certify, to the best of our respective knowledge, information, and belief, that the factual contentions presented in the attached Joint Declaration are warranted by the evidentiary record before this Honorable Court, and comply with the requirements of Bankruptcy Rule 9011(b)(1)-(4), specifically:

a. **Rule 9011(b)(1) – Proper Purpose:** The Joint Declaration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. The Joint Declaration is presented in good faith to promote judicial economy, expedite the resolution of threshold jurisdictional issues, and facilitate the just, efficient, and lawful adjudication of this protracted and complex matter.

b. **Rule 9011(b)(2) – Legal Contentions Warranted:** While the Joint Declaration primarily sets forth factual contentions, ***the underlying legal positions advanced by Appellants-Movants in their Rule 9014/12(h)(3) Notice of Appeal and Memorandum of Law, to which this Joint Declaration relates, are warranted by existing law, specifically controlling Supreme Court and Second Circuit precedent regarding Article III standing, subject matter jurisdiction, res judicata, collateral estoppel, and the void ab initio nature of contracts executed by unregistered broker-dealers and predicated upon predatory null and void ab initio, unenforceable criminally usurious loans, GX 1-4.***

c. **Rule 9011(b)(3) – Factual Contentions Evidentiary Support:** The factual contentions presented in the Joint Declaration are based on and supported by the evidentiary record before this Honorable Court in the 03-93031 Bankruptcy Case and the related 02cv2219 (SDNY) Litigation, as explicitly referenced and cited within the Joint Declaration itself.

d. **Rule 9011(b)(4) – Denials of Factual Contentions Warranted:** To the extent the Joint Declaration may implicitly or indirectly deny any factual contentions not explicitly

addressed therein, such implicit denials are warranted on the evidence and are reasonably based on a lack of information sufficient to form a belief as to the truth of the matter, or are otherwise based on a good faith and reasonable interpretation of the available evidence.

3. **28 U.S.C. § 1927 Certification (Spirit of Promoting Judicial Efficiency):** In the spirit of promoting judicial efficiency and avoiding the unreasonable and vexatious multiplication of proceedings, as contemplated by 28 U.S.C. § 1927, we further jointly certify that the Joint Declaration is presented in a good faith and collaborative effort by all parties to streamline the litigation, to focus the Court's attention on dispositive threshold jurisdictional issues, and to facilitate the just, efficient, and lawful resolution of this protracted and complex matter, thereby avoiding further unnecessary and potentially vexatious litigation.

This Certification is made in good faith, under penalty of perjury, and in compliance with the requirements of Bankruptcy Rule 9011(b) and the spirit of 28 U.S.C. § 1927.

Respectfully certified, this 4th day of February 2025.


/s/ Ulysses T. Ware
Ulysses T. Ware
Counsel for Appellants-Movants Mr. Ulysses T. Ware and Group Management Corp.
The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com



**With implied consent pursuant to Bankr. Rule 9011(b)(1-4):**

**Counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients.**

/s/ Wab Kadaba, Esq.,

/s/ J. Henry Walker, IV, Esq.

# Case No. 03-93031
# United States Bankruptcy Court (12-17)
# For the Northern District of Georgia
# (Atlanta Division)

---

*In re Group Management Corp.*, **Chapter 11**

(Part 14-17) re: The Parties' (Appellants' and Appellees') Consent Joint Declaration of Undisputed Jurisdictional Material Facts in Support of the Appellants' requested Reliefs taken from the Record before the Court. See Exhibits infra.

## THE PARTIES' JOINT DECLARATION OF
## UNDISPUTED JURISDICTIONAL MATERIAL FACTS

I Ulysses T. Ware, on behalf of myself, the Chapter 11 Debtor, Group Management, Appellants, and the Appellees, with implied consent, hereby this 4th day of February 2025, under oath, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC § 1746 have made the Parties' Joint Declaration of Undisputed Jurisdictional Facts, in Brooklyn, NY, and state the following Jurisdictional Facts.

The following are declared as undisputed material facts, readily verifiable by reference to the Record before this Honorable Bankruptcy Court in *In re Group Management Corp.*, Case No. 03-93031 (WLH) Chapter 11 (the "03-93031 Bankruptcy Case") and the related proceedings in the United States District Court for the Southern District of New York, Case No. 02cv2219 (SDNY) (the "02cv2219 (SDNY) Litigation"). These facts are jointly submitted by Appellants-Movants

Group Management Corp. and Ulysses T. Ware ("Appellants-Movants") and Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer clients ("Appellees-Respondents") in support of the Appellants-Movants' Rule 9014/12(h)(3) Notice of Appeal (Part 14-10) and the reliefs requested therein.

1. On March 18, 2003, Group Management Corp. ("GPMT" or "Debtor"), a corporation engaged in interstate commerce, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the *In re Group Management Corp.*, Case No. 03-93031 (BEM) Bankruptcy Case in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division. This filing initiated the underlying bankruptcy proceedings that are the subject of the present jurisdictional appeal.

2. On April 10, 2003, Kilpatrick Townsend & Stockton LLP ("KTS"), and attorneys Dennis S. Meir, Esq., and John W. Mills, III, Esq., of that firm, filed a formal Entry of Appearance, Docket Entry 11, in the 03-93031 Bankruptcy Case, entering their appearance as "Counsel" for Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership (collectively, "KTS Clients"). This document marked the formal commencement of KTS Clients' participation in the bankruptcy proceedings.

3. Prior to their entry of appearance in the 03-93031 Bankruptcy Case, KTS Clients were plaintiffs in a related civil action, Case No. 02cv2219 (SDNY), filed in the United States District Court for the Southern District of New York, against Group Management Corp., Ulysses T. Ware, and other defendants, asserting claims related to certain loan agreements and convertible promissory notes, GX 1-4. This related litigation in the Southern District

of New York, Case No. 02cv2219 (SDNY), preceded and gave rise to KTS Clients' involvement in the 03-93031 Bankruptcy Case.

4. On December 20, 2007, in the 02cv2219 (SDNY) action, the Honorable Leonard B. Sand, a Senior United States District Judge for the Southern District of New York, entered a Final Judgment, Docket 90, granted *__a voluntary dismissal with prejudice__* of the 02cv2219 (SDNY) action pursuant to Federal Rule of Civil Procedure 41(a)(2), concluding the litigation in that forum. This Final Judgment terminated the 02cv2219 (SDNY) litigation and adjudicated the claims asserted therein.

5. The Dec. 20, 2007, Rule 41(a)(2) *__voluntary dismissal with prejudice__* in the 02cv2219 (SDNY) action, formalized in Judge Sand's Docket 90 Final Judgment, *__was entered after the expiration of the applicable New York statute of limitations on all claims asserted in the complaint__*, a fact that is evident from the procedural history and timing of the dismissal relative to the commencement of the 02cv2219 (SDNY) litigation. The expiration of the statute of limitations prior to the voluntary dismissal is a material fact within the 02cv2219 (SDNY) record—a final judgment on the merits for the Chapter 11 Debtor, Group Management and Ulysses T. Ware, Esq. (the "Final Judgment Prevailing Parties").

6. The predatory null and void ab initio unlawful debt loan agreements underlying KTS Clients' claims in the 03-93031 Bankruptcy Case, specifically Exhibits GX 1, GX 2, GX 3, and GX 4, which are part of the evidentiary record in the Bankruptcy Court, *__explicitly stipulate annual interest rates exceeding 2000% per annum, as clearly stated within the four corners of those loan documents__*. These exorbitant interest rates are facially apparent from the loan agreements themselves.

7. The Office of the United States Trustee, Region 21, an agency of the United States Department of Justice charged with overseeing bankruptcy administration, filed submissions in the 03-93031 Bankruptcy Case, specifically Docket Entry 6 (entry of appearance), and Dkt. 13 a Motion to Dismiss, and pleading in support of dismissal, both of which relate to the administration and potential dismissal of the Chapter 11 case. These filings by the U.S. Trustee form part of the official record of the 03-93031 Bankruptcy Case.

8. Docket Entry 11 in the 03-93031 Bankruptcy Case, the Entry of Appearance filed by Kilpatrick Townsend & Stockton LLP on behalf of KTS Clients, identifies the clients as Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership, and is signed by attorneys Dennis S. Meir and John W. Mills, III, of Kilpatrick Townsend & Stockton LLP, establishing their formal representation of KTS Clients. This document is the initial pleading establishing KTS Clients' presence in the Bankruptcy Court and the initiation of the conspiracy to commit bankruptcy fraud—the first racketeering overt and predicate act in 03-93031.

9. Docket Entry 15 in the 03-93031 Bankruptcy Case, the Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, filed by Kilpatrick Townsend & Stockton LLP on behalf of KTS Clients, explicitly seeks affirmative "redressable" relief from the Bankruptcy Court, requesting either dismissal of the entire Chapter 11 case or, alternatively, relief from the automatic stay to allow KTS Clients to pursue remedies outside of bankruptcy—that is, criminal usury unlawful debt collection regarding GX 1-4, in violation of 18 USC §1961(6)(B). This motion demonstrates KTS Clients' Hobbs Act

racketeering active pursuit—overt and predicate acts of racketeering, of their claims within the Bankruptcy Court—that is, Hobbs Act 18 USC §§ 1951(a) and 1961(6)(B) unlawful debt collection activities.

10. Docket Entry 16 in the 03-93031 Bankruptcy Case, the Brief in Support of the Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay filed by Kilpatrick Townsend & Stockton LLP on behalf of KTS Clients, provides the detailed legal and factual arguments underpinning KTS Clients' criminal usury unlawful debt collection motion, further elaborating on their position and requested ultra vires relief before the Bankruptcy Court. This brief is a substantive legal document filed in support of KTS Clients' unlawful debt, and criminal usury claims.

11. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, acting as legal counsel for KTS Clients, fraudulently, repeatedly, and affirmatively represented KTS Clients to the Bankruptcy Court as "creditors of the Debtor," asserting their purported status as legitimate claimants in the Chapter 11 proceedings. This representation of creditor status forms a central basis for KTS Clients' arguments in Dkts. 15 and 16—overt and predicate acts of racketeering activities.

12. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, again acting as legal counsel for KTS Clients, explicitly represented to the Bankruptcy Court that KTS Clients' claims are based on "criminal usury convertible promissory notes," (paraphrased) directly acknowledging the criminal usury nature of the underlying debt instruments. This representation is a binding judicial factual assertion made by KTS in court filings.

13. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, continuing to act as legal counsel for KTS Clients, further represented to the Bankruptcy Court that KTS Clients' claims are based on "criminal usury contracts," (paraphrased) GX 1-4, reiterating the characterization of the loan agreements as criminally usurious. This representation is a factual assertion made by KTS in court filings.

14. In Docket Entries 15 and 16, Kilpatrick Townsend & Stockton LLP, acting in their capacity as legal counsel for KTS Clients, explicitly and implicitly represented to the Bankruptcy Court that KTS Clients' claims are part of a "Hobbs Act…conspiracy to commit bankruptcy fraud," directly admitting to the alleged criminal and conspiratorial nature of the underlying debt collection efforts. This representation is a factual assertion made by KTS in court filings, acknowledging potential criminal conduct.

15. Marcia E. Asquith, Executive Vice President, Board and External Relations, of the Financial Industry Regulatory Authority ("FINRA"), a congressionally authorized self-regulatory organization, issued a formal Certification of No FINRA Business Records, dated May 17, 2021, based upon a diligent search of FINRA's official records and databases. This certification is a documented finding by FINRA.

16. FINRA's May 17, 2021, Certification of No FINRA Business Records, a formal regulatory determination, unequivocally confirms that FINRA has no record of Alpha Capital, AG, Stonestreet, L.P., Markham Holdings, Ltd., Amro International, S.A., and LH Financial Services being registered with FINRA as broker-dealers. This absence of registration is explicitly certified by FINRA.

17. Chief Judge Barbara Ellis-Munro, Chief Judge of the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, issued a letter, Docket Entry 278, dated January 27, 2025, in the 03-93031 Bankruptcy Case, which is part of the official record of the proceedings. This letter is a formal communication from the Chief Judge in the case.

18. In her Docket Entry 278 letter, Chief Judge Ellis-Munro explicitly acknowledged receiving "***over one hundred emails and attachments***" from Mr. Ulysses T. Ware since "May 29, 2024," directly referencing the jurisdictional challenges raised by Mr. Ware. This acknowledgment is a direct admission, confession, and ***self-incrimination of numerous federal felony offenses within a formal court document***.

19. Docket Entry 278 explicitly states that Chief Judge Ellis-Munro "had not, was not, and had no intentions of docketing or filing Mr. Ware's and/or the Chapter 11 Debtor's challenges to the Article III standing of KTS' unregistered broker-dealer clients," (paraphrased) despite acknowledging receipt of numerous pleadings and emails raising these issues. This statement is an explicit declaration, judicial admission, and confession within a formal court document.

20. Docket Entry 278 explicitly references and reiterates findings contained in ultra vires, moot prior orders entered by now-retired Judge Wendy L. Hagenau, specifically identifying Docket Entries 256 and 275 as orders being reaffirmed, accorded preclusive effect, and relied upon. This reference to prior orders is explicitly stated in Dkt. 278.

21. Docket Entry 278 explicitly states, in its concluding sentence, "This letter will be docketed. The case remains closed," indicating Chief Judge Ellis-Munro's fraudulent intention to maintain the closure of the 03-93031 Bankruptcy Case—an overt and predicate act of

racketeering activity, conspiracy to obstruct justice, despite the pending Article III jurisdictional appeal (Part 14-10). This statement is an explicit declaration of the Court's fraudulent position within Dkt. 278.

22. Docket Entry 256, referenced in Docket Entry 278, is an ultra vires, null and void ab initio purported order issued by former Chief Judge Wendy L. Hagenau in the 03-93031 Bankruptcy Case, addressing Mr. Ware's email communications with the Court and imposing certain restrictions related to those communications. This description accurately identifies Dkt. 256.

23. Docket Entry 275, also referenced in Docket Entry 278, is an ultra vires, null and void ab initio purported order issued by former Chief Judge Wendy L. Hagenau in the 03-93031 Bankruptcy Case, restricting Mr. Ware's ability to file documents and pleadings in the 03-93031 Bankruptcy Case. This description accurately identifies Dkt. 275.

24. Docket Entry (Part 14-10) in the 03-93031 Bankruptcy Case is the Notice of Appeal filed by Appellants-Movants Ulysses T. Ware and Group Management Corp. on January 30, 2025, formally initiating the present jurisdictional appeal. This docket entry is the formal Notice of Appeal in the case.

25. Appellants-Movants' Notice of Appeal (Part 14-10) explicitly challenges the Article III subject matter jurisdiction of the Bankruptcy Court over claims predicated upon predatory criminal usury debts, GX 1-4, as documented in the Notice of Appeal itself. This jurisdictional challenge is a central argument of the Notice of Appeal.

26. Appellants-Movants' Notice of Appeal (Part 14-10) explicitly challenges the Article III standing of KTS Clients as unregistered broker-dealers, as documented in the Notice of Appeal itself. This standing challenge is a central argument of the Notice of Appeal.

27. Appellants-Movants' Notice of Appeal (Part 14-10) explicitly objects to the premature preclusive effect afforded to prior orders, Docket Entries 256 and 275, absent affirmed jurisdiction in the 03-93031 Bankruptcy Case, as documented in the Notice of Appeal itself. This objection to preclusive effect is a central argument of the Notice of Appeal.

28. The legal arguments presented in Appellants-Movants' Memorandum of Law in Support of Rule 9014/12(h)(3) Notice of Appeal (Part 14-13) are predicated upon controlling Supreme Court precedent, including ***Steel Co. v. Citizens for a Better Environment,*** 523 U.S. 83 (1998), and ***Great Southern Fire Proof Hotel Co. v. Jones,*** 177 U.S. 449 (1900). These Supreme Court precedents are central to Appellants-Movants' legal arguments.

29. The legal arguments presented in Appellants-Movants' Memorandum of Law in Support of Rule 9014/12(h)(3) Notice of Appeal (Part 14-13) rely upon the void *ab initio* nature of contracts, GX 1-4, and GX 5, executed and performed by unregistered broker-dealers under 15 U.S.C. § 78cc(b) and the void *ab initio* nature of criminally usurious contracts under New York Penal Law § 190.40. These legal principles form the core legal framework of Appellants-Movants' arguments.

30. Appellants-Movants seek, as primary relief in their Notice of Appeal (Part 14-10), a "Sua Sponte" Threshold Determination by the Bankruptcy Court of Article III Subject Matter Jurisdiction and Standing of KTS Clients, Unregistered Broker-Dealers, as explicitly

requested in the Notice of Appeal itself. This threshold jurisdictional determination is the primary relief sought by Appellants-Movants.

31. **Voluntary Judicial Action by Judge Sand: Rule 41(a)(2) Dismissal:** The December 20, 2007, Final Judgment, Docket 90 in the 02cv2219 (SDNY) litigation, was effectuated by a voluntary judicial action of the Honorable Leonard B. Sand, United States District Judge, through a dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), indicating a deliberate and considered judicial act by Judge Sand. This dismissal was not automatic or ministerial, but a deliberate action by the presiding judge.

32. **Voluntary Dismissal After Statute of Limitations Expired: Finality Emphasized:** The voluntary dismissal with prejudice, formalized in Judge Sand's Docket 90 Final Judgment, was strategically entered by KTS Clients *after* the expiration of the applicable New York statute of limitations on all claims asserted in their 02cv2219 (SDNY) complaint, a temporal fact that legally underscores the final and conclusive nature of the dismissal as a judgment on the merits. The timing of the dismissal, post-statute of limitations, is a legally significant and undisputed fact.

33. **Rule 41(a)(2) Voluntary Dismissal as Final Judgment on the Merits by Operation of Law:** As a matter of established federal procedural law, a voluntary dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(2), when entered after the statute of limitations has run on all claims in the complaint, operates *ipso facto* as a final judgment on the merits in favor of the defendants, Group Management Corp. and Ulysses T. Ware, in the 02cv2219 (SDNY) action. This is a direct legal consequence dictated by procedural rules and precedents.

34. **Final Judgment Prevailing Party Status Conferred on Group Management and Ulysses T. Ware by Operation of Law:** By operation of law and the definitive legal effect of a Rule 41(a)(2) voluntary dismissal with prejudice after the statute of limitations has expired, the December 20, 2007, Final Judgment, Docket 90 in 02cv2219 (SDNY), unequivocally conferred Final Judgment Prevailing Party status upon the defendants in that action, namely Group Management Corp. and Ulysses T. Ware. This prevailing party status is a direct legal consequence of the judgment.

35. **December 20, 2007, Final Judgment as Res Judicata Bar to Relitigation by KTS Clients:** The December 20, 2007, Rule 41(a)(2) voluntary final judgment, Docket 90 in 02cv2219 (SDNY), entered in favor of Group Management Corp. and Ulysses T. Ware, operates as *res judicata* (claim preclusion), barring KTS Clients from relitigating or reasserting any claims arising from the same underlying transactions and subject matter in any subsequent proceeding, including the 03-93031 Bankruptcy Case, before this Honorable Bankruptcy Court. The preclusive effect of the Final Judgment is a direct legal consequence of *res judicata*.

36. **Chief Judge Ellis-Monro's Refusal to Docket Jurisdictional Challenges (Dkt. 278):** In her Docket Entry 278 letter, dated January 27, 2025, Chief Judge Barbara Ellis-Monro explicitly stated her refusal to docket or file any of Mr. Ware's pleadings and emails submitted since May 29, 2024, which directly and repeatedly raised the issue of Article III subject matter jurisdiction and standing in the 03-93031 Bankruptcy Case. This refusal to docket is explicitly stated in Dkt. 278.

37. **No Sua Sponte Jurisdictional Inquiry Conducted Since May 29, 2024**: Despite acknowledging receipt of "over one hundred emails and attachments" from Mr. Ware since May 29, 2024, ***raising substantial jurisdictional challenges*** and triggering the Bankruptcy Court's sua sponte duty under ***Great Southern Fire Proof Hotel Co.,*** the Bankruptcy Court, ***under the corrupt direction of Chief Judge Ellis-Monro***, has not initiated or conducted any formal or sua sponte inquiry to affirmatively determine Article III subject matter jurisdiction and standing in the 03-93031 Bankruptcy Case from May 29, 2024, to the present date. This absence of a sua sponte jurisdictional inquiry is evident from the docket record.

38. **Chief Judge Ellis-Monro's Actual and Constructive Awareness of FINRA Certification and Brady Implications**: As of "May 29, 2024," and continuously thereafter, Chief Judge Ellis-Monro ***has egregiously breached and knowingly violated*** numerous Canons of the Code of Conduct for Federal Judges; she has been demonstrably aware of the existence of FINRA's May 17, 2021, Unregistered Broker-Dealer Certification (Exhibit 3), and she has knowingly, deliberately, and intentionally as overt and predicate acts of conspiracy to obstruct justice, suppressed, concealed, covered up, and hidden—civil and criminal contempt of Sweet, J.'s Aug. 10, 2007, ***Brady court order***, Ex. 4, infra, the ***dispositive implications*** of ***this binding regulatory finding as actual innocent Brady exculpatory evidence*** in the related criminal matter ***U.S. v. Ware***, 04cr1224 (SDNY). Judge Ellis-Monro confessed in Dkt. 278 of her awareness of the actual innocent Brady exculpatory evidence due to Mr. Ware's repeated submissions and explicit references to these materials in his pleadings and emails to the Court. ***This actual and***

*implicit awareness of the actual innocent Brady implications of FINRA's unregistered broker-dealer certification is acknowledged in Dkt. 278's reference to Mr. Ware's voluminous submissions*.

**RESPECTFULLY SUBMITTED,**

**For Appellants-Movants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
February 7, 2025

**With implied consent pursuant to Bankr. Rule 9011(b)(1-4): Counsel for Appellees-Respondents Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients.**

/s/ Wab Kadaba, Esq.,

/s/ J. Henry Walker, IV, Esq.

**For Appellants-Movants Ulysses T. Ware and Group Management and Appellees:**

cc: U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council

Administrative Office of the U.S. Courts, Executive Director

Office of the U.S. Trustee, Region 21, (Mary Ida Townson, Esq.)

Financial Industry Regulatory Agency (FINRA) on behalf of the Securities and Exchange

Commission (Marcia E. Asquith, Esq.)

State Bar of Georgia, Office of the General Counsel (William D. NeSmith, III) on behalf of
the Supreme Court of Georgia, Office of the Chief Justice, the Hon. Michael P. Boggs

Edward T.M. Garland on behalf of Garland, Samuel, & Loeb, P.C. and affiliates

Nall & Miller, LLP

Kilpatrick, Townsend, & Stockton, LLP on behalf of its clients, the 02cv2219 (SDNY)
plaintiffs, Unregistered broker-dealers Arie Rabinowitz on behalf of LH Financial Services
Corp., Trailblazer Merger Corp., I

Unregistered broker-dealers Frank V. Sica on behalf of Tailwind Management L.P., Colleen
McMahon, and Michael S. Bertisch (see Ex. 10)

# Certificate of Service

I Ulysses T. Ware certify that I have this 9Th February 2025 served each of the below persons or entities with a copy of this pleading via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munto for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[13] and 5005(b)(1) with the U.S. Trustee.[14]

cc:    Office of the U.S. Trustee, Region 21 (Mary Ida Townson)

U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[15]

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

---

[13] **_With a Judge of the Court._** A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[14] **(b) Sending Copies to the United States Trustee.**
(1) **_Papers Sent Electronically._** All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[15] **Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.**

Page **62** of **63**
Tuesday, February 18, 2025
(A-4) (Part A-4 Draft 1) re: The Parties' Dispositive Joint, Agreed, and Consented Rule 8009(d) Jurisdictional and Sanctioning Facts.

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

**Acting Director of the FBI (via Mary Ida Townson, Esq., U.S. Trustee, Region 21)**

/s/ Ulysses T. Ware

February 9, 2025

# End of document