RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 19 2025

KEVIN P. WEIMER, Clerk
By: *Matthew A*    Deputy Clerk

## (17-6) (Part 17-6) (03.17.25)
## Case No. 1:25-cv-00613-MLB

# The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Monday, March 17, 2025, 10:06:51 AM

## VIA U.S. MAIL AND E-MAIL TO CHAMBERS
The Honorable Michael L. Brown
United States District Judge
Northern District of Georgia
Richard B. Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303



**Re: Declaration of Filing** – Appellants' Supplemental Memorandum of Law (#3) (17-6) in Further Support of (17-1) March 10, 2025, Application for Article III Jurisdictional Show Cause Order and Related Reliefs.

Case No.: 1:25-cv-00613-MLB (N.D. Ga.)

Dear Judge Brown:

Pursuant to 28 U.S.C. § 1654, Appellants Group Management (a sole proprietorship) and Ulysses T. Ware, appearing pro se through the undersigned attorney in fact, hereby submit and file the attached **Supplemental Memorandum of Law (#3)**, designated as Dkt. 17-6, dated March 17, 2025, in further support of Appellants' March 10, 2025, **(17-1) Application for an Article III Jurisdictional Show Cause Order and Other Relief** (collectively, the "Application").

As of today, March 17, 2025, the March 10, 2025, 17-1 Application for the Show Cause Order does not appear on the Court's official docket. Appellants respectfully request that the District Court inquiry as to **the chain of custody, current location, and current status** of 17-1 and other recent submissions (17-2, 17-4, and 17-5) by Appellants all protected by 18 USC §§ 2071(a), (b) from suppression, concealment, and removal.[1]

---

[1] **(a) Whoever willfully and unlawfully conceals**, removes, mutilates, obliterates, or destroys, or attempts to do so, or, with intent to do so takes and carries away any record, proceeding, map, book, **paper, document, or other thing, filed or deposited with any clerk or officer of any court of the United States,**

This filing is made as a **Declaration of Filing** under 18 U.S.C. §§ 2071(a), (b). We respectfully request that the attached Supplemental Memorandum of Law (#3) be docketed in this Court's official record for Case No. 1:25-cv-00613-MLB. The attached memorandum provides additional legal arguments, factual support, and relevant authorities underscoring why an immediate show cause order is necessary to address the fundamental absence of Article III standing in the underlying bankruptcy proceeding and the instant appeal.

Appellants believe that prompt judicial review of the Application—along with entry of the requested show cause order—will preserve the integrity of these proceedings and ensure compliance with controlling constitutional, statutory, and common-law requirements.

Should there be any concerns regarding this filing or if the Court requires additional information, please advise.

Thank you for Your Honor's attention to this matter.

Respectfully submitted,

**Ulysses T. Ware**
28 U.S.C. § 1654 Attorney in Fact for
Appellants Group Management (a sole proprietorship) and
Ulysses T. Ware

Signed under oath subject to the penalty of perjury this 17th day of March 2025, in Brooklyn, NY.
/s/ Ulysses T. Ware

Enclosure: (17-6) Memorandum (#3), dated March 17, 2025

cc:

- Office of the Clerk, U.S. District Court (N.D. Ga.), via U.S. Mail
- Executive Director, Administrative Office of the U.S. Courts
- Office of the FBI Director
- All Appellees (via e-mail, where applicable)

---

or in any public office, or with any judicial or public officer of the United States, shall be fined under this title or imprisoned not more than three years, or both.

**(b)** Whoever, having the custody of any such record, proceeding, map, book, document, paper, or other thing, **willfully and unlawfully conceals,** removes, mutilates, obliterates, falsifies, or destroys the same, shall be fined under this title or imprisoned not more than three years, or both; and shall forfeit his office and be disqualified from holding any office under the United States. As used in this subsection, the term "office" does not include the office held by any person as a retired officer of the Armed Forces of the United States.

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 1 9 2025

KEVIN P WEIMER, Clerk
By _Matthew_ Deputy Clerk

# (17-6) (Part 17-6) (03.17.25)
# Case No. 1:25-cv-00613-MLB

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

---

In re:
**GROUP MANAGEMENT CORP. (Debtor),**

**03-93031 (BC NDGA), Chapter 11**

---

**On appeal in:**

**ULYSSES T. WARE and d/b/a GROUP MANAGEMENT, (a sole proprietorship),**

**Appellants,**

v.

**ALPHA CAPITAL, AG, et al., _Unregistered Broker-Dealers_,**

**Appellees.**

---

**[Docket Text] March 17, 2025, (17-6) (Part 17-6) APPELLANTS' 28 USC § 1654 SUPPLEMENTAL MEMORANDUM OF LAW (#3) IN SUPPORT OF (17-1) MARCH 10, 2025, APPLICATION FOR ARTICLE III "THRESHOLD" JURISDICTIONAL SHOW CAUSE ORDER AND OTHER RELIEFS.**

Respectfully submitted,

/s/ **Ulysses T. Ware**
Ulysses T. Ware
28 USC § 1654 Attorney-in-fact for Appellants, Group Management (a sole proprietorship) and Ulysses T. Ware

cc:
The Office of the District Clerk (NDGA).

Executive Director Administrative Office of the U.S. Courts,
Office of the FBI Director,
via U.S. mail.

# 18 USC §§ 2071(a), (b),  28 USC § 1654

## Pro Se Appellants' Declaration of Filing

I Ulysses T. Ware hereby this 17th day of March 2025, in Brooklyn, NY declare and certify under

oath that I filed on March 17, 2025, via U.S. mail and via email to the Chambers of the Hon.

District Judge Michael L. Brown pursuant to 18 USC §§ 2071(a), (b), this judicial public record,

a judicial pleading, for filing and docketing in 25cv00613 (NDGA), and by 28 USC § 1654 pro se

appellants.

Signed under oath subject to the penalty of perjury having personal knowledge of the facts,

pursuant to 28 USC § 1746 this 17th day of March 2025, in Brooklyn, NY.

/s/ Ulysses T. Ware

# For Ulysses T. Ware, a natural person, d/b/a Group Management, *a sole proprietorship*, pursuant to 28 USC § 1654.

Respectfully submitted,

/s/ **Ulysses T. Ware**
Ulysses T. Ware
28 USC § 1654 Attorney-in-fact for Appellants, Group Management (a sole proprietorship) and
Ulysses T. Ware

# Table of Contents

(17-6) (Part 17-6) (03.17.25) ........................................................................................................... 3

18 USC §§ 2071(a), (b),  28 USC § 1654 ....................................................................................... 4

Pro Se Appellants' Declaration of Filing ..................................................................................... 4

A.    Summary of the Article III "Threshold" Jurisdictional Argument with Respect to the
Predatory Criminal Usury Null and Void Ab Initio Subject Matter, GX 1-4, and GX 5 .................. 7

    SUMMARY OF THE ARGUMENT ......................................................................................... 7

A. .............................................................................................................................................. 9

(i).    IN FURTHER SUPPORT OF (17-1) APPELLANTS' MARCH 10, 2025, 28 USC § 1654
REQUEST FOR ARTICLE III "THRESHOLD" JURISDICTIONAL SHOW CAUSE ORDER
AND OTHER RELIEFS. ...................................................................................................................... 9

    I. INTRODUCTION ..................................................................................................................... 10

    II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY. ............................................ 12

        A. Predatory Criminal Usury Subject Matter: GX 1–4 and GX 5 ............................................ 12

        B. KTS's Unregistered Broker-Dealer Clients' Legal Disability (15 U.S.C. § 78o(a)(1)). ......... 13

        C. Appearances and Motions Filed in 03-93031 ..................................................................... 14

    III. LEGAL ANALYSIS .................................................................................................................. 15

        A. Article III Standing: Absence of a Concrete "Injury in Fact" ................................................ 15

        B. Violation of Bankruptcy Rule 9011(b) and 28 U.S.C. § 1927 ............................................... 16

        C. The United States Trustee's Statutory Oversight Duties .................................................... 17

        D. Necessity and Importance of Issuing a Show Cause Order ................................................. 18

    IV. ARGUMENT: WHY THIS COURT SHOULD ISSUE THE SHOW CAUSE ORDER
FORTHWITH. ...................................................................................................................................... 19

        A. The Record Explicitly Establishes the Illegality of GX 1–4 and GX 5. .................................. 19

        B. Unregistered Broker-Dealer Violations Are Lethal to Enforcement or Collection of GX 1–4.
................................................................................................................................................................ 19

        C. KTS and the UST's Pleadings Rested Entirely on an Invalid Basis. ..................................... 20

        D. Compelling Policy Grounds Favoring Immediate Show Cause. ........................................... 20

B. .............................................................................................................................................. 21

    I. INTRODUCTION ..................................................................................................................... 21

    II. THE CONCEPT OF A "LEGALLY PROTECTED INTEREST" UNDER ARTICLE III. ..... 23

    III. APPLYING THE STANDARD TO GX 1–4 AND GX 5 IN 25CV00613. ................................. 25

    IV. THE EFFECT OF VOIDNESS ON ARTICLE III STANDING. ............................................. 27

    V. SUMMARY .............................................................................................................................. 28

C...........................................................................................................................................................29

RE: APPLICATION OF U.S. v. GROTE, 961 F.3d 105, 109 (2d Cir. 2020), TO "UNLAWFUL DEBT COLLECTION ACTIVITIES" ENGAGED IN OR FACILITATED BY ZITTER, RABINOWITZ, GRUSHKO, MITTMAN, SOUTHWELL, KTS, ITS CLIENTS, AND THE UST DURING OR RELATED TO THE 03-93031 CHAPTER 11. ................................................................30

   I. INTRODUCTION ...................................................................................................................30

   II. THE GROTE DEFINITION OF "UNLAWFUL DEBT COLLECTION ACTIVITIES." ......31

   III. APPLYING *GROTE* TO THE UST'S AND KTS'S JUDICIALLY ADMITTED "UNLAWFUL DEBT COLLECTION ACTIVITIES."...............................................................33

   IV. SUMMARY ..........................................................................................................................35

D...........................................................................................................................................................36

   I.     INTRODUCTION.........................................................................................................36

   ARGUMENT: THE ABSENCE OF ARTICLE III SUBJECT MATTER JURISDICTION DUE TO LACK OF STANDING UNDER *CLAPPER v. AMNESTY INT'L USA*, 568 U.S. 398 (2013). 37

      A. Appellees' Claims Are Speculative and Self-Inflicted Under *Clapper v. Amnesty Int'l USA*.38

      B. Speculative or Hypothetical Harm Fails to Confer Standing...................................................40

      C. Requested Relief....................................................................................................................41

      SUMMARY ...............................................................................................................................42

   E. CONCLUSION........................................................................................................................42

   Appellants' Declaration and Certificate of Service..................................................................44

Exhibits—18 USC §§ 2071(a), (b) judicial court records (judicial pleadings) submitted by Appellants for filing and docketing in the District Court (NDGA), Case No. 25cv00613 (NDGA), Office of the District Clerk—Not appearing on the official docket sheet. ........................................................45

   Exhibit 1—March 10, 2025, 17-1 (Part 17-1) re Appellants' Application for Show Cause Order and other reliefs. Filed on March 10, 2025. .........................................................................46

   Exhibit 2—(17-4) (Part 17-4) re March 13, 2025, Supp. Memo. of Law (#2) in Support of Show Cause Order (17-1). ...............................................................................................................47

   Exhibit 3—(17-5) (Part 17-5) re March 14, 2025, re Appellants' Supp. Memo of Law (#2) in Support of (17-1) Show Cause Order and other reliefs. ..................................................................48

End of document ...........................................................................................................................49

## A. Summary of the Article III "Threshold" Jurisdictional Argument with Respect to the Predatory Criminal Usury Null and Void Ab Initio Subject Matter, GX 1-4, and GX 5.

### SUMMARY OF THE ARGUMENT

1. First, Appellants have established that the convertible promissory notes (GX 1–4) and the related subscription agreement (GX 5) ***constitute predatory criminal usury instruments*** under New York Penal Law § 190.40, carrying interest rates far above the 25% statutory cap. Because such loans are deemed void ab initio, there can be no "legally protected interest" arising from these debt instruments. This conclusion is bolstered by the fact that Kilpatrick Townsend & Stockton LLP ("KTS") and its clients are further tainted by unregistered broker-dealer violations under 15 U.S.C. § 78o(a)(1), which renders the notes unenforceable pursuant to 15 U.S.C. § 78cc(b). Consequently, no lawful "injury in fact" exists to support Article III standing, depriving the Bankruptcy Court—and this Court on appeal—of subject matter jurisdiction.

2. Second, KTS and the United States Trustee ("UST") made numerous appearances and filed motions (Dkt. 5-2, 5-3, 5-4, 5-5, 5-6) in 03-93031 seeking judicial relief predicated on these void, criminally usurious instruments. By doing so, they implicitly represented to the Bankruptcy Court, under Bankruptcy Rule 9011(b)(1)-(4) and 28 U.S.C. § 1927, that a valid, legally protected right existed. Yet, the uncontested record shows these notes cannot confer any legitimate entitlement—eviscerating any possible "injury" under controlling Supreme Court precedent (Lujan, Steel Co., and Spokeo).

3. Third, ***the UST—tasked by 28 U.S.C. § 586(a) with safeguarding the integrity of bankruptcy proceedings—endorsed or facilitated the enforcement of these null***

*__obligations when it filed and supported motions (Dkt. 5-3, etc.) dismissing or challenging__*

*__the Debtor's Chapter 11__*. Its failure to address the patently illegal nature of GX 1–4 and

GX 5 directly conflicts with its *__supervisory duties__* and allowed a fraudulent, unregistered

broker-dealer scheme to permeate the bankruptcy process. This scenario presents a grave

threat to both federal jurisdictional requirements and the broader policy interests protected

by the Bankruptcy Code.

4.  Finally, the Court must therefore issue a Show Cause Order forthwith, compelling the UST,

    KTS, and their unregistered broker-dealer clients to demonstrate how they believed these

    facially void predatory criminal usury debt instruments conferred an Article III "injury in

    fact" or "legally protected interest." Absent such a showing, a legal and factual

    impossibility, all orders and motions entered in 03-93031underpinned by these null and

    void ab initio predatory debts, GX 1-4, and GX 5, are required to be forthwith annulled,

    vacated, or dismissed with prejudice, nunc pro tunc March 18, 2003, and the appropriate

    monetary and disciplinary sanctions must be imposed to maintain the integrity of these

    proceedings, deter further abuse of federal judicial resources, and uphold established public

    policy against predatory criminal usury and illegal securities practices.

## A.

### (i).    IN FURTHER SUPPORT OF (17-1) APPELLANTS' MARCH 10, 2025, 28 USC § 1654 REQUEST FOR ARTICLE III "THRESHOLD" JURISDICTIONAL SHOW CAUSE ORDER AND OTHER RELIEFS.

Pursuant to 28 USC § 1654 Appellants Group Management (*a sole proprietorship*) and Ulysses T. Ware, a natural person, (collectively, "Appellants"), appearing pro se, by and through the undersigned attorney in fact, submit this Supplemental Memorandum of Law (#3) in further support of their (17-1) March 10, 2025, Request for Show Cause Order.[2] Appellants incorporate all prior pleadings and filings, including Memoranda (17-1), (17-2), (17-4), and (17-5). This Memorandum, in the light most favorable to Appellants, sets forth detailed legal and factual support underscoring why an immediate Show Cause Order is necessary to address serious dispositive questions of Article III standing, subject matter jurisdiction, and potential violations of Bankruptcy Rule 9011(b)(1)-(4) and 28 U.S.C. § 1927; and federal racketeering criminal laws, 18 USC 2, 152, 157, 371, 924(c), 1201-02, 1341, 1343, 1344, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities in furtherance of Appellees KTS, its partners, their clients, and their agents, proxies, surrogates, alter-egos, *and all those in active concert therewith*,[3] jointly and severally, an illegal association in fact as defined in

---

[2] Which has yet to be officially filed and docketed by the Office of the District Clerk (NDGA) for unexplained reasons ostensibly a violation of 18 USC §§ 2071(a), (b), a conspiracy to obstruct the due administration of justice.

[3] See Doc. 281 (03-93031) each named appellee has been, was, and is currently in active concert with the Predatory CCE until such time as each under oath, subject to the penalty of perjury, in writing notifies the District Court (NDGA), 25cv00613 (NDGA) (MLB) they have fully and completely withdrawn from all direct and/or indirect involvement, assistance, aiding, abetting, or enablement of the activities of the Predatory CCE.

18 USC 1961(4), a predatory loan sharking and money laundering Hobbs Act continuing criminal enterprise, (the "**Predatory CCE**").

# I. INTRODUCTION[4]

Throughout the 03-93031 Chapter 11 proceeding, Kilpatrick Townsend & Stockton LLP ("KTS") and its FINRA regulatory certified unregistered broker-dealer clients—certified on May 17, 2021, by FINRA's senior executive, Marcia E. Asquith, Esq., to be unregistered broker-dealers in contravention of 15 U.S.C. § 78o(a)(1)[5]—filed multiple pleadings seeking judicial relief. These pleadings included, among others:

i.   **Dkt. 5-2 (Doc 11)**: KTS's Entry of Appearance on behalf of purported creditors,

ii.  **Dkt. 5-3 (Doc 13)**: The U.S. Trustee's motion to dismiss with prejudice, referencing the same convertible notes (GX 1–4) and supporting KTS's bid for relief,

iii. **Dkt. 5-4 (Doc 14)**: KTS's opposition to the Debtor's motion to reject the very same predatory criminal usury convertible promissory notes (GX 1–4) and subscription agreement (GX 5),

---

[4] The 25cv00613 (NDGA) Joint Stipulated Appellate Record, Dkt. 5 and Dkt. 9, confirms that a live Article III case or controversy did not and as a matter of law cannot exist in the underlying proceedings: 02cv2219 (SDNY), 03-93031 (BC NDGA), *In re Ware*, (2008) (Supreme Court of Georgia (fraudulent and fabricated disbarment proceedings, cf., Dkt. 5-13 on pages 40-41 re: the SBGA's known false, fraudulent, and counterfeit bogus and forged alleged Affidavit of Personal Service on Appellant Ulysses T. Ware) with respect to GX 1-4 and GX 5—the Hobbs Act 18 USC § 1951(a) Predatory Criminal Usury Subject Matter, where FINRA certified each putative adverse Appellee plaintiff in 02cv2219 (SDNY) as an unregistered broker-dealer, cf., 15 USC § 78cc(b), rendered GX 1, GX 2, GX 3, GX 4, and GX 5 null and void ab initio to all rights of the Appellee KTS' clients, Dkt. 5-2 (KTS' entry of appearance in 03-93031 on behalf of the unregistered broker-dealers to obstruct and hinder Appellant Group Management's Chapter 11 reorganization proceeding to rid itself of the Predatory Criminal Usury Subject Matter).

[5] See 25cv00613 (NDGA) Dkt. 5-13 on page 48.

iv.    **Dkt. 5-5 (Doc 15) & Dkt. 5-6 (Doc 16)**: KTS's "Emergency Motion to Dismiss" and accompanying brief, both premised on the alleged enforceability of the disputed notes.

By submitting these manifestly frivolous, bad faith, vexatious, and baseless in law and fact purported motions, Dkt. 5-3, 5-5, and 5-6, KTS and the U.S. Trustee ("UST") necessarily certified as *officers of the court*, under Bankruptcy Rule 9011(b)(1)–(4) and 28 U.S.C. § 1927, that they had conducted a reasonable factual and legal investigation and that they had a proper, non-frivolous basis to appear before the Bankruptcy Court as *real parties in interest* with Article III standing to seek judicial relief in furtherance of a "legally protected right or interest" regarding the (i) enforcement and/or (ii) collection of the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5.

The fundamental Article III constitutional standing "threshold jurisdictional" question now before this Article III United States Federal Court, 25cv00613 (NDGA) (MLB), is whether, in light of the *uncontested* Joint Stipulated Appellate Record evidence, Dkt. 5 and Dkt. 9, and prevailing law, there was a, (i)  "**legally protected interest**" or (ii) "**particularized concrete injury in fact**" "fairly traceable to the [lawful] conduct of [Appellants, the Chapter 11 Debtor and its legal counsel Appellant Ulysses T. Ware in refusing to criminally violate the federal securities and ***criminal racketeering laws*** of the United States, and NYS Penal Law, section 190.40, the criminal usury law, *a class E felony*]" that supported the UST's (Morawetz, Townson, and Treace's) and KTS' lawyers (Meir, Mills, Walker, and Kadaba's) and clients' (Zitter, Southwell, Rabinowitz, Grushko, Mittman, et al.) implicit Rule 9011(b)(1-4) and 28 USC § 1927 ethical attestations and certifications? The answer is unequivocally no.

Absent such **_constitutional required_** "legally protected interest," in the **_Predatory Criminal Usury Subject Matter_**, GX 1-4, and GX 5, (a legal and factual impossibility) the 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 25cv00613 (NDGA) **_United States Federal Courts_** *ipso facto* lacked **_Article III constitutional subject matter jurisdiction_** over the UST's and KTS' and its unregistered broker-dealer clients' purported motions; and, therefore as a matter of law KTS's and the UST's appearances and requests for judicial relief were made in egregious and criminal violation of mandatory legal and ethical obligations. The answer is no. These grave criminally unethical issues require the entry of a prompt Show Cause Order.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

### A. Predatory Criminal Usury Subject Matter: GX 1–4 and GX 5

1. **Nature of the Instruments**

    i.    The instruments at issue (GX 1, GX 2, GX 3, GX 4, and GX 5) are predatory criminal usury convertible promissory notes and a related subscription agreement, respectively. Each

    ii.

    iii.   note, on its face or in effect, carries an interest rate, fees, or conversion features exceeding 25% [(+2,000%)] per annum—dramatically surpassing New York's statutory threshold for criminal usury.[6]

---

[6] See Appellees Baker & McKenzie, LLP, Lawrence B. Mandala, Esq. Thomas A. Leghorn, Esq., David J. Malliband, Esq., and Robert H. Albaral's risible and fraudulent Form SB-2 filed with the SEC on behalf of the **_unregistered broker-dealers_** and 15 USC § 78p(b) statutory insiders (i.e., affiliates and fiduciaries) of the Chapter 11 Debtor seeking to register more than 39 million shares of Appellant Group Management's equity securities (valued at +$5.2225 billion in post-reorganization Chapter 11 publicly-traded market capitalization) to facilitate and enable the 18 USC §§ 1951(a), 1956-57, 1961(6)(B), and 1962(a-d) unlawful

.

iv.    Under New York Penal Law § 190.40, any loan with an effective rate over 25% per annum is a Class E felony and is deemed void ab initio. *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379, 383–84 (2d Cir. 2022) (recognizing that notes with predatory convertible provisions can be nullified as criminally usurious).

2.  **Inherent Illegality and RICO Implications**

i.    Because these instruments are "unlawful debts" under 18 U.S.C. § 1961(6)(B), any enforcement attempts or collection efforts in a U.S. court contravene federal racketeering laws. *See United States v. Grote*, 961 F.3d 105, 109 (2d Cir. 2020). The record indicates that KTS and its clients knowingly relied upon these void instruments (GX 1–4) to claim standing in the 03-93031 proceeding.

## B.  KTS's Unregistered Broker-Dealer Clients' Legal Disability (15 U.S.C. § 78o(a)(1)).

1.  **FINRA Certification**

i.    On or about May 17, 2021, FINRA senior executive Marcia E. Asquith, Esq., formally certified that KTS's 02cv2219 (SDNY) clients were, in fact, unregistered broker-dealers operating unlawfully under 15 U.S.C. § 78o(a)(1).

ii.   Federal securities law (15 U.S.C. § 78cc(b)) declares contracts made in violation of 15 U.S.C. § 78o(a)(1) void, thus leaving the ***certified by FINRA unregistered broker-dealers*** with no *colorable* legal or equitable interest to be enforced in any federal or state forum.

---

debt collection activity with respect to the Predatory Criminal Usury Subject Matter GX 1, GX 2, GX 3, and GX 4.

2. **Impact on Enforceability**

    i.    The combination of *criminal usury and unregistered broker-dealer status* fully undermined and vitiated any *purported* claim. Even if the interest rates were below the usury cap (which they exceed), the separate violation of 15 USC § 78o(a)(1) would render the notes void ab initio. See 15 USC § 78cc(b).

    ii.    Consequently, no party (putative Appellee) can legally within the scope of Article III "case or controversy" requirements suffer a "particularized [***self-inflicted***: violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony, and 18 USC §§ 1951(a), 1956-57, 1958-59, 1961(c)(B), and 1962(a-d)] ***concrete injury*** in fact" from non-payment of predatory, criminally usurious, illegal convertible promissory notes, GX 1, GX 2, GX 3, and GX 4. The indisputable Joint Stipulated Appellate Record facts negate all possibility of Article III standing, ***Steel Co. v. Citizens for a Better Env't***, 523 U.S. 83, 93–95 (1998), and the notion that these alleged fraudulent "creditors" had a legitimate basis to appear in the 03-93031 Chapter 11.

## C. Appearances and Motions Filed in 03-93031

    1.  **Dkt. 5-2 (Doc 11) – KTS's Entry of Appearance**

        i.    By entering an appearance as counsel for these alleged "creditors," KTS made an implicit representation that a legitimate, enforceable interest existed for its clients. This included a representation (Rule 9011(b)) that KTS had conducted a reasonable legal and factual inquiry.

    2.  **Dkt. 5-3 (Doc 13) – UST's Motion to Dismiss**

i.   The UST's filing took the position that the Debtor had no "good faith" basis for invoking Chapter 11, aligning itself with KTS in its efforts to dismiss the proceeding or otherwise facilitate enforcement of the same unlawful debts. Yet the UST never addressed the fundamental question of whether KTS's clients had any legitimate interest warranting relief. This omission significantly conflicts with the UST's statutory duty to ensure that "the integrity of the bankruptcy system is protected." 28 U.S.C. § 586(a).

3.   **Dkt. 5-4 (Doc 14), Dkt. 5-5 (Doc 15), and Dkt. 5-6 (Doc 16)**

i.   **Dkt. 5-4**: KTS's opposition to the Debtor's motion to reject the predatory convertible notes, thereby pressing the argument that these agreements were valid and enforceable.

ii.  **Dkt. 5-5 & 5-6**: KTS's "Emergency Motion to Dismiss" and supporting brief, emphasizing the same alleged obligations. All these filings confirm KTS's representation that the notes and subscription agreement conferred a legally protected interest, an assertion essential for any argument about "bad faith" or "improper" Chapter 11 filing by the Debtor.

Appellants maintain that all of these representations stand on the premise that a valid, enforceable claim existed—despite the notes' patent criminal usury rates, unregistered broker-dealer involvement, and their status under 15 U.S.C. § 78cc(b) as void ab initio.

# III. LEGAL ANALYSIS

## A. Article III Standing: Absence of a Concrete "Injury in Fact"

1. **Constitutional Requirements**

   i.    To establish Article III standing, a litigant must demonstrate (1) a concrete, particularized injury in fact to a "legally protected interest"; (2) causation—fairly traceable to the unlawful conduct of the defendants; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

   ii.   KTS's clients were required to show that their so-called "injury"—the Debtor's refusal to comply with allegedly criminally usurious notes—was a harm to a *legally protected interest. See **Spokeo, Inc. v. Robins**,* 578 U.S. 330, 339 (2016).

2. **No Injury Where Underlying Debt is Void**

   i.    New York Penal Law § 190.40 regards interest rates exceeding 25% as a class E felony, nullifying the underlying instrument from its inception. *See **Adar Bays**,* 28 F.4th at 383–84.

   ii.   Under federal securities law, 15 U.S.C. § 78o(a)(1) / 78cc(b), unregistered broker-dealers cannot enforce securities-based debt instruments. Because KTS's clients lacked valid registration, any "right" they claimed is rendered void. *Cf. **Berckeley Inv. Grp. Ltd. v. Colkitt**,* 455 F.3d 195, 220 (3d Cir. 2006) (noting strict liability for unregistered distributions citing SEC Release 33-7190 n. 17 (1995)).

   iii.  Consequently, KTS's clients cannot plausibly articulate an "injury" in the sense of foregone payment or compliance with an invalid, unlawful contract. Absent *injury in fact*, Article III does not confer standing, and the Bankruptcy Court was deprived of subject matter jurisdiction. *Steel Co.*, 523 U.S. at 94–95.

## B. Violation of Bankruptcy Rule 9011(b) and 28 U.S.C. § 1927

**Rule 9011(b)(1)–(4)** imposes on every attorney who presents a pleading or motion the duty to ensure:

1. The filing is not for an improper purpose;

2. Legal contentions are warranted by existing law or a non-frivolous argument for its extension;

3. Allegations have (or likely will have) evidentiary support;

4. Denials of factual contentions are warranted on the evidence.

**28 U.S.C. § 1927** additionally penalizes counsel who unreasonably and vexatiously multiply proceedings.

Appellants contend that the repeated efforts by KTS and the UST to enforce instruments that are *facially* criminally usurious and further invalid under federal securities law run afoul of these obligations. Each filing asserting these claims or attacking the Debtor's Chapter 11 was premised on an interest that, as a matter of law and public policy, cannot exist.

## C. The United States Trustee's Statutory Oversight Duties

The UST is statutorily entrusted to "supervise the administration of bankruptcy cases." 28 U.S.C. § 586(a). Although the UST is not a conventional creditor, once it joins or endorses a position supporting the validity of the same predatory, criminally usurious notes in question, it risks enabling a fraud upon the court. See *In re South Beach Sec., Inc.*, 606 F.3d 366, 371 (7th Cir. 2010) (UST's role includes preventing "abuse of the bankruptcy process"). Where the UST's participation furthers the enforcement of criminally usurious, unregistered broker-dealer obligations, there is a colorable argument that it has failed to discharge its supervisory responsibility consistently with 28 U.S.C. § 586(a).

## D. Necessity and Importance of Issuing a Show Cause Order

Given the uncontested proof that GX 1–4 (the convertible notes) and GX 5 (the related subscription agreement) are patently unlawful, there is an overwhelming likelihood that KTS's and the UST's appearances and motions in 03-93031 contravened Article III and the Bankruptcy Rules. A Show Cause Order is warranted so the Court may:

1. **Require Each Appellee to Demonstrate Standing**

    i.  The Court should compel each party claiming "a legally protected interest" in the enforcement and/or collection of these Predatory Criminal Usury notes, GX 1-4, and contract, GX 5, to provide a sworn declaration showing how a *legally protected interest* existed in a criminally usurious, void and void ab initio debt instrument. If none can be provided, the Court must address the resulting jurisdictional vacuum.

2. **Examine Potential Sanctions**

    i.  If indeed these filings (Dkt. 5-1 to 5-6) were devoid of any factual or legal legitimacy, the Court is required to impose severe monetary and disciplinary sanctions to protect the integrity of judicial proceedings under Rule 9011(b), 28 U.S.C. § 1927, and the Court's inherent powers.

    ii. **Prevent Prejudice and Dismiss Improper Filings**

        a.  By holding a Show Cause hearing, the Court can preclude further prejudice to Appellants, whose Chapter 11 proceeding was effectively

hijacked by spurious claims, as well as maintain the integrity of the bankruptcy system.[7]

# IV. ARGUMENT: WHY THIS COURT SHOULD ISSUE THE SHOW CAUSE ORDER FORTHWITH.

## A. The Record Explicitly Establishes the Illegality of GX 1–4 and GX 5.

Appellants' detailed analysis of the interest rates, fees, and conversion provisions within the predatory criminal usury convertible promissory notes reveals that the actual or effective annual percentage rate far exceeds 25%. *See*, e.g., Baker & McKenzie, LLP's risible Form SB-2 (demonstrating interest calculations, default penalties, and other fees pushing the real rate above 2,000%). By operation of N.Y. Penal Law § 190.40, these predatory notes are conclusively void ab initio, extinguishing any "real party in interest" claim.

## B. Unregistered Broker-Dealer Violations Are Lethal to Enforcement or Collection of GX 1-4.

The May 17, 2021, FINRA certification of these parties (putative Appellees) as unregistered broker-dealers triggered 15 U.S.C. § 78cc(b), which voids ab initio any contract, GX 1-4, and GX 5, formed  or performed under such unlawful circumstances in violation of 15 USC § 78o(a)(1). *See Berckeley Inv. Grp.*, 455 F.3d at 220 citing SEC Release 33-7190 n. 17 (1995). No colorable lawful extant claim exists with respect to GX 1-4, and GX 5.

---

[7] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991).

**C. KTS and the UST's Pleadings Rested Entirely on an Invalid Basis.**

The entire premise of the relief sought in Dkt. 5-2, 5-3, 5-4, 5-5, 5-6 collapses when the underlying predatory criminal usury debt instruments, GX 1-4, are null and void ab initio. This contravenes Article III standing requirements, rendering the Bankruptcy Court's subject matter jurisdiction void from inception. ***Steel Co.***, 523 U.S. at 94–95.

**D. Compelling Policy Grounds Favoring Immediate Show Cause.**

In addition to the legal deficiencies, allowing predatory criminal usury claims and unregistered broker-dealers to operate freely in the United States District (02cv2219 (SDNY), 02cr1224 (SDNY), and 25cv00613 (NDGA)) and Bankruptcy Courts (03-93031 (BC NDGA)) undermines the public's trust and the fundamental purposes of federal bankruptcy law. Prompt inquiry by way of a Show Cause Order is indispensable to preserve both judicial economy and the rule of law.

Accordingly, this United States District Court, 25cv00613 (NDGA), ***is required by Article III of the Constitution of the United States and binding Supreme Court precedents*** to promptly issue a Show Cause Order (see 17-1) (March 10, 2025, application) to require lawyer or interested parties in the matter, ***convicted felon*** Grushko, Mittman, Southwell, Garland, Arora, Samuel, Singer, Bachner, Levitt, Myers, Hewett, Mittlemen, Frederick, NeSmith, Burgess, Nash, Arndt, Nall & Miller, LLP, Hostetter, Leghorn, Mandala, Malliband, Albaral, Baker & McKenzie, LLP, Rabinowitz, Zitter, Meir, Mills, Walker, Kadaba, KTS, its unregistered broker-dealer clients, and the UST and its lawyers (Morawetz, Townson, and Treace) to address under oath subject to the penalty of perjury, as officers of the court, or interested parties, (1) how they rationally, ***in good faith***, believed these ***Predatory Criminal Usury Convertible Promissory notes***, GX 1-4, were

*collectible or enforceable*, (2) what good faith, rational factual or legal basis substantiated the notion of a valid "legally protected right or interest" in GX 1-4, and GX 5; "a particularized concrete injury in fact," and (3) why they shall not be sanctioned or otherwise held accountable for pressing manifestly and patently frivolous, baseless in law and fact, vexatious, meritless, and fraudulent claims in violation of federal racketeering laws, Article III of the Constitution, Bankruptcy Rule 9011(b)(1-4), and 28 U.S.C. § 1927; and ABA, the District Court (NDGA), and the State Bar of Georgia's Rules of Professional Conduct Rules 3.3 and 8.4.

# B.

## I. INTRODUCTION

This portion of the Memorandum addresses the critical question of whether any alleged ***adverse*** opposing party (putative ***adverse*** Appellee) in **25cv00613** (**N.D. Ga.**) can claim a valid cognizable under Article III of the Constitution of the United States a "**legally protected right or interest**" recognized under law in the predatory criminal usury notes, identified as **GX 1–4**, as well as the associated so-called subscription agreement (**GX 5**), jointly, (the "**Predatory Criminal Usury Subject Matter**"). Under long-established Supreme Court precedent, ***Lujan***, Id. Article III federal courts require that any party [alleged adverse Appellee KTS' *certified unregistered broker-dealer clients*, see the 02cv2219 (SDNY) lawsuit, and Dkt. 5-2, 5-4, 5-5, and 5-6] invoking federal judicial power must "first" show a genuine, ***personal stake***—namely, a recognized legal right or entitlement ***concretely affected*** by another's [Appellants herein, Group Management and Ulysses T. Ware] *alleged unlawful conduct*.[8]

---

[8] Appellants assert that their mandatory and required compliance with the federal racketeering (18 USC §§ 1951(a), 1961(6)(B), 1962(a-d)), and securities laws, 15 USC §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78ff, and

Appellants here emphatically maintain that, given, (i) the predatory criminal usury nature of Appellee KTS' clients' (Dkt. 5-2) business model, (ii) the predatory criminal usury nature of GX 1–4, and (iii) the ***FINRA regulatory certified unregistered broker-dealer*** status ***stench and taint*** on GX 1-4 and GX 5, there is no valid or lawful "legally protected interest" which the law recognizes in these ***null and void ab initio*** predatory criminal usury debt instruments, GX 1-4, and GX 5.[9] NYS Penal Law, §190.40, the criminal usury law, a class E felony; ***Grote***, 961 F.3d at 109.

Accordingly, these disputed claims fail the "threshold" requirements of *injury in fact,* depriving this Court, ***and all prior federal courts*** (i.e., 02cv2219 (SDNY), 03-93031 (BC NDGA), ***U.S. v. Ware***, 04cr1224 (SDNY), and ***In re Ware*** (2008) (Supreme Court of Georgia) (fabricated and fraudulent disbarment proceedings based in whole and/or in part on GX 1-4 and GX 5) of

---

SEC Release 33-7190 n. 17 (1995), by ***their refusal to draft and issue fraudulent and bogus*** Rule 144(k) legal opinions to Appellee KTS' ***FINRA regulatory certified unregistered broker-dealer clients*** (see Dkt. 5-2, the 02cv2219 (SDNY) plaintiffs' criminal attempts to engage in criminal usury unlawful debt collection activities in violation of 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)) as a matter of law and fact, ipso facto, did not and cannot cause or create the Article III mandatory "**particularized, concrete injury in fact**" *Lujan*, 504 U.S. at 560-61, to "***a legally protected right or interest***" in the violation of the federal racketeering laws by the collection or enforcement of GX 1-4 and GX 5, the Predatory Criminal Usury Subject Matter. See NYS Penal Law, §190.40, the criminal usury law, a class E felony.

[9] However, assuming arguendo, even if a "legally protected interest" existed in the predatory criminal usury subject matter, GX 1-4, and GX 5, (it did not) federal racketeering law, 18 USC §§ 2, 152, 157, 924(c), 1201-02, 1341, 1343, 1344, 1503, 1951(a), 1961(6)(B), and 1962(a-d) criminalized the exercise of that alleged right--all "collection activities" (see the 02cv2219 (SDNY) lawsuit, 25cv00613 (NDGA) Dkt. 5-1 to 5-10) conducted by all Appellees, their agents, proxies, surrogates, alter-egos, ***and all those in active concert therewith***, with respect to GX 1-4, and GX 5, whether participation was directly or indirectly in the affairs and predatory racketeering business model of KTS, its clients, Baker & McKenzie, LLP, Nall & Miller, LLP, the State Bar of Georgia, the U.S. Marshals, Tailwind Management LLP, Trailblazer Merger Corp., I, Garland, Samuel, & Loeb, P.C., John Doe Insurance Companies ##1-5 and their insureds, and others both known and unknown constituted criminally sanctioned Hobbs Act racketeering unlawful debt collection activities, see *U.S. v. Grote*, 961 F.3d 105, 109 (2d Cir. 2020) (aff'd criminal conviction, criminal sentence, and RICO forfeiture judgment +$3.5 billion for unlawful debt collection activities).

subject matter jurisdiction and compelling the issuance of the requested Show Cause Order.[10] *Steel Co.*, 523 U.S. at 93-95.[11]

## II. THE CONCEPT OF A "LEGALLY PROTECTED INTEREST" UNDER ARTICLE III.

1. **Definition**

A "legally protected interest" **comprises a right or entitlement the law**—whether statutory, constitutional, or common law—deems enforceable[12] and for which a

---

[10] See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) ("[T]he *core component* of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."); *Allen v. Wright*, 468 U.S. 737, 752 (1984) (requiring a distinct and palpable injury for standing). (emphasis added).

[11] *Allen v. Wright*, 468 U.S. at 752: "Typically, however, the standing inquiry *requires careful judicial examination* of a complaint's [02cv2219 (SDNY), Dkt. 5-3, 5-4, 5-5, and 5-6] *allegations* to ascertain whether the particular plaintiff [KTS' certified unregistered broker-dealer clients and the UST] is entitled to an adjudication *of the particular claims asserted* [the enforcement and/or collection of the null and void ab initio Predatory Criminal Usury Subject Matter]. Is the injury too abstract, *or otherwise not appropriate [i.e., self-inflicted],* to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative? *These questions and any others relevant to the standing inquiry must be answered by reference to the Art. III notion that federal courts may exercise power only "in the last resort, and as a necessity,"* Chicago & Grand Trunk R. Co. v. Wellman, 143 U. S. 339, 143 U. S. 345 (1892), and only when adjudication is "consistent with a system of separated powers and the dispute is one traditionally thought to be capable of resolution through the judicial process[.]" (citation omitted) (emphasis added).

[12] There is no *statutory law, the Constitution*, or *common law* (see *Adar Bays v. GeneSYS ID, Inc.*, 28 F.4d 379 (2d Cir. 2020)) which deems it an "enforceable" legal right or interest, in a federal or state court, to enforce, conduct, or engage in *unlawful debt collection activities* with respect to the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5, see NYS Penal Law, § 190.40, the criminal usury law, a class E felony, and *federal criminal RICO loan sharking law,* 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d), which *criminalized* Zitter, Grushko, Mittman, LH Financial Services, Rabinowitz, Southwell, the U.S. Marshals, the State Bar of Georgia, JAMS, Dolinger, Garland, Arora, Samuel, Loeb, Bachner, Singer, Levitt, Baker & McKenzie, Mandala, Leghorn, Malliband, Albaral, John Doe Insurance Companies ##1-5 and their insureds, Nall & Miller, LLP, Hostetter, Arndt, KTS, and its FINRA regulatory certified unregistered broker-dealer clients' unlawful debt collection activities in the 03-93031 (NDGA) Bankruptcy Court—that is, 25cv00613 (NDGA) Dkt. 5-1, 5-2, 5-3, 5-4, 5-5, and 5-6; 02cv2219 (SDNY); 04cr1224 (SDNY); and other judicial proceedings (23-865 and 23-869 (2d Cir.)), Hobbs Act *dangerous and armed* e.g., see Sept. 12, 2024, Brooklyn, NY forced break-in of Appellant Ware's personal residence by *ARMED* U.S. Marshals, see 25cv00613 (NDGA) Dkt. 5-13 on pages 54-60, 118-270, Hobbs Act, 18 USC § 1951(a), *armed and dangerous predatory loan sharking unlawful debt collection activities*, see *Grote*, 961 F.3d at 109.

corresponding remedy is provided. For Article III standing, the injury must arise from the denial or violation of this recognized right or entitlement.[13]

### 2. **Concrete and Particularized Harm**

To invoke the Court's jurisdiction, any purported harm to such ***a right must be both concrete*** (real or certainly impending, not abstract or hypothetical) ***and particularized*** (affecting the claimant in a personal, individual way). A purely theoretical "interest" is insufficient.[14]

### 3. **Null or Illegal Instruments Confer No Article III Injury**

If the source of the supposed right or entitlement is a void or unlawful instrument—as Appellants argue regarding **GX 1–4** and **GX 5**—there is no legally enforceable right or entitlement at all, especially by regulatory certified unregistered broker-dealers, Appellee

---

[13] See ***Spokeo, Inc. v. Robins***, 578 U.S. 330, 340 (2016) ("Concrete" means "real, and not abstract," and "particularized" means "it must affect the plaintiff [KTS' clients and the UST] in a personal and individual way ..." ... "[w]e have made it clear time and time again that ***an injury in fact must be both concrete and particularized***. See, e.g., Susan B. Anthony List v. Driehaus, 573 U. S. ___, ___ (2014) (slip op., at 8); Summers, supra, at 493; Sprint Communications Co. v. APCC Services, Inc., 554 U. S. 269, 274 (2008); Massachusetts v. EPA, 549 U. S. 497, 517 (2007). ***A "concrete" injury must be "de facto"; that is, it must actually exist***. See Black's Law Dictionary 479 (9th ed. 2009). When we have used the adjective "concrete," we have meant to convey the usual meaning of the term— "real," and not "abstract." Webster's Third New International Dictionary 472 (1971); Random House Dictionary of the English Language 305 (1967). Concreteness, therefore, is quite different from particularization." (

[14] See ***Lujan***, 504 U.S. at 560 ("[T]he plaintiff ***must have suffered*** an 'injury in fact'—***an invasion of a legally protected interest*** which is (a) concrete and particularized."). (citations omitted) (emphasis added). Cf., ***Allen v. Wright***, 468 U.S. at 751 ("Standing doctrine embraces ... the requirement that a plaintiff's complaint [02cv2219 (SDNY), Dkt. 5-3, 5-4, 5-5, and 5-6] ***fall within the zone of interests protected by the law invoked***. The requirement of standing, however, ***has a core component*** derived ***directly from the Constitution***. A plaintiff must allege ***personal injury*** fairly traceable to the defendant's ***allegedly unlawful conduct*** and ***likely to be redressed*** by the requested relief.). (emphasis added).

KTS' clients.[15] By definition, a party (the putative Appellees) cannot possess a *legally protected interest* where the underlying Predatory Criminal Usury Unlawful Debt, GX 1–4, and GX 5, agreements are condemned by law.[16]

## III. APPLYING THE STANDARD TO GX 1–4 AND GX 5 IN 25CV00613.

1. **Criminally Usurious under New York State Law, § 190.40, the criminal usury law, a class E felony.**

    i.  Appellants have demonstrated that the interest rates or fees embedded in **GX 1–4** (+2,000%) far exceed New York's 25% statutory cap (*N.Y. Penal Law § 190.40*). Where an instrument is criminally usurious, it is deemed null and *void ab initio*. Under such circumstances, no legitimate right or claim to payment can ever attach

---

[15] This matter ends promptly given that the Joint Stipulated Appellate Record Facts, Dkt. 5 and Dkt. 9, lack any record evidence before the 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 25cv00613 District Court (NDGA) (e.g., (i) declarations from putative adverse Appellees Baker & McKenzie, LLP, Mandala, Albaral, Malliband, Leghorn, KTS, Zitter, Rabinowitz, Grushko, Mittman, Garland, Arora, Singer, Loeb, Singer, Bachner, Levitt, the SBGA, the U.S. Marshals, Southwell, et al., or (ii) SEC or FINRA 15 USC §78o(a)(1) broker-dealer registration documents) that assert and prove that Appellee KTS' clients were in fact properly and lawfully registered with the SEC and FINRA as lawful broker-dealers as required by 15 USC § 78o(a)(1) *before, during, and after* the 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 25cv00613 (NDGA) judicial proceedings. Absent the certified regulatory registration evidence in the Joint Stipulated Appellate Record, Dkt. 5 and Dkt. 9, the District Court (Brown, J.) *lacks a credible evidentiary record* to find as fact Appellee KTS' clients, (see Dkt. 5-2, 5-4, 5-5, and 5-6), were and are currently registered broker-dealers as required by federal law, Section 15(a)(1), which (i) triggered 15 USC §78cc(b), (ii) which ipso facto by operation of law rendered GX 1-4 and GX 5, null and void ab initio; and (iii) rendered Dkt. 1 to Dkt. 10, 25cv00613 null and void ab initio, moot, and nullities, see *Steel Co.,* 523 U.S. at 93-95, (A) lacking all preclusive effects, and (B) unenforceable to any alleged right of the *unregistered broker-dealers.*

[16] See *Allen,* 468 U.S. at 752–55 (requiring that the plaintiff's injury involve *a judicially cognizable interest* and refusing to accept abstract stigmatic harms). (emphasis added). NYS Penal Law, §190.40, the criminal usury law, a class E felony, and federal Hobbs Act racketeering loan sharking and money laundering laws "condemned" GX 1-4 and GX 5, and criminalized all "collection activities" engaged in directly and/or indirectly by any putative Appellee, their agents, proxies, surrogates, alter-ego, privies, *and/or all those in active concert therewith.*

to the holder—thus negating any possibility of a "legally protected interest."[17]

2. **Tainted by Unregistered Broker-Dealer Violations**

    i.    Additionally, Appellants have demonstrated by clear and convincing evidence in the Joint Stipulated Appellate Record, Dkt. 5 and Dkt. 9, that the putative Appellee parties (KTS and its clients, et al.) attempting to collect and enforce **GX 1–4** and **GX 5** acted as unregistered broker-dealers in violation of *15 U.S.C. § 78o(a)(1)*. Under *15 U.S.C. § 78cc(b)*, such an unlawful arrangement is categorically unenforceable. A legally void contract cannot grant any recognized entitlement that might suffice for Article III standing.[18]

3. **No Cognizable Injury from Nonpayment**

    i.    Under Article III, a party must show an actual or imminent injury to its valid, "legally protected interest." If an interest in **GX 1–4** or **GX 5** is null (due to criminal usury or other illegality), the law denies any legitimate basis to allege harm from nonpayment. No genuine "injury in fact" exists if the underlying claim is void.[19]

---

[17] Cf. ***Clapper v. Amnesty Int'l USA***, 568 U.S. 398, 409 (2013) ("Threatened injury must be certainly impending to constitute injury in fact."). A void note cannot confer a certain or legally protected entitlement.
[18] See ***Spokeo***, 578 U.S. at 341 ("Article III standing requires ***a concrete injury*** even in the context of a statutory violation."). Where a contract's illegality is manifest, no recognized right arises.

[19] See ***Lujan***, 504 U.S. at 564 ("[S]ome day intentions—without any description of concrete plans...—do not support a finding of the 'actual or imminent' injury that our cases require."). The "intent" to enforce a void note similarly fails.

## IV. THE EFFECT OF VOIDNESS ON ARTICLE III STANDING.

### 1. **Constitutional Implications**

An Article III federal court (02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 25cv00613 (NDGA)) must dismiss a "cause" or claim where the plaintiff's asserted "injury" is (i) ***self-inflicted***,[20] or (ii) ***is not legally cognizable***. Appellants maintain that, under federal and state racketeering, criminal usury laws, and federal securities statutes, **GX 1–4** and **GX 5,** are null and void ab initio, unenforceable, uncollectible, and cannot yield an actionable right or entitlement. Consequently, the assertion of standing predicated on these instruments is illusory and a legal and factual impossibility.[21]

### 2. **Practical Consequence**

In **25cv00613**, if an adverse party (putative Appellees) claims to have been "injured" when Appellants refused payment and challenged enforcement on the null and void ab initio Predatory Criminal Usury debts, GX 1-4, the 25cv00613 (NDGA) (MLB) District Court must "first" before proceedings to the merits of the pending appeal, ***Steel Co***., 523 U.S. at 93-95, "affirmatively determine" if that alleged injury is a "particularized, *concrete injury in fact*" grounded in a **legally protected** or recognized claim. A thoroughly null and void

---

[20] To the extent that KTS' regulatory certified unregistered broker-dealer suffered any alleged "injury in fact" to "a legally protected interest" in the Predatory Criminal Usury Subject Matter, any such alleged injury was self-inflicted and therefore not cognizable within the scope of Article III standing requirements—that is, any alleged injury was caused by the predatory unregistered broker-dealer's own egregious violation of NYS Penal Law, section 190.40, 18 USC §§ 1951(a), 1961(6)(B), 1962(a-d), and 15 USC § 78o(a)(1) *in pari materia* with Id. § 78cc(b).

[21] See ***Allen,*** 468 U.S. at 754 ("An asserted right to have the Government act in accordance with law is not sufficient ..."). Absent an ***enforceable right,*** the putative Appellees' fraudulent and reckless claims collapse under their own weight.

Page **27** of **49**

Monday, March 17, 2025

(17-6) (Part 17-6) re Appellants' Article III Jurisdictional Supp. Memorandum of Law (#3) in support of (17-1) March 10, 2025, Show Cause Order.

ab initio predatory criminal usury contractual interest is not protected, as the law refuses to enforce it. Thus, any alleged harm or injury is, in reality, legally nonexistent.[22] NYS Penal Law, § 190.40, the criminal usury law, a class E felony; *Grote*, 961 F.3d at 109.

### 3. **Burden on the Party Asserting Standing**

The burden of proof and production lies with the plaintiff or petitioner (putative Appellees) party to prove it holds an enforceable legal right or entitlement in the Predatory Criminal Usury Subject Matter, **GX 1–4** or **GX 5**. Given that the Predatory Criminal Usury Subject Matter is criminally usurious or facially unlawful, which they are, then no legitimate interest exists—and no redressable "injury in fact" can be shown.[23]

## V. SUMMARY[24]

A "legally protected interest," in the Article III sense, must be a valid, cognizable right that the law upholds and stands ready to remedy (redress). As applied to **25cv00613**, Appellants assert, on compelling grounds, that the Predatory Criminal Usury convertible promissory notes (**GX 1–4**) and related subscription agreement (**GX 5**) are ipso facto criminally usurious and void ab initio under New York law, and further invalid under federal securities statutes addressing unregistered

---

[22] See *Clapper*, 568 U.S. at 416 ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm."). Here, a claim to enforce a legally void note "manifests" no real harm.

[23] *Lujan*, 504 U.S. at 561 (the party [Zitter, Rabinowitz, KTS and its FINRA regulatory certified unregistered broker-dealers, and the UST] invoking federal jurisdiction "***bears the burden of proof***" to establish ***each element*** of standing).

[24] See *Allen*, 468 U.S. at 752–55; *Lujan*, 504 U.S. at 560–64; *Spokeo*, 578 U.S. at 339–42; *Clapper*, 568 U.S. at 409–16 (each illustrating that a genuine, cognizable stake is the sine qua non of Article III jurisdiction).

Page **28** of **49**

Monday, March 17, 2025

(17-6) (Part 17-6) re Appellants' Article III Jurisdictional Supp. Memorandum of Law (#3) in support of (17-1) March 10, 2025, Show Cause Order.

broker-dealers, 15 USC §§ 78o(a)(1), 78cc(b). No enforceable right or interest arises from an instrument that is legally void ab initio.

Accordingly, no bona fide or legally cognizable "***concrete*** injury in fact" can be alleged by the putative Appellees based on the Predatory Criminal Usury Subject Matter, **GX 1–4** or **GX 5**, and therefore, accordingly, ipso facto, ***Article III jurisdiction and standing are necessarily ever foreclosed***. Appellants are therefore as a matter of law entitled to a forthwith **Show Cause Order** obligating the adverse putative Appellee parties to under oath, subject to the penalty of perjury, as officers of the court where applicable, explain how they could possibly claim and allege a legitimate "legally protected interest" in a set of Hobbs Act predatory criminal usury, ***loan sharking null and void ab initio deb***t instruments, GX 1-4, and GX 5.

The law provides no basis for any claim absent a valid, recognized right. Under the Joint Stipulated Appellate Record Facts before the Court, Dkt. 5 and Dkt. 9, it is inescapable that the alleged "injuries" anchored in such predatory, criminal usury agreements do not and cannot satisfy the standing requirements of the federal judiciary.

For these reasons, and in the light most favorable to Appellants, the Rule 41(a)(2) Final Judgment Prevailing Parties in 02cv2219 (SDNY)[25] the issuance of the requested **Show Cause Order** is both proper and necessary to preserve the integrity of the judicial process and prevent any further attempt to validate or enforce plainly void obligations.

## C.

---

[25] See 25cv00613 (NDGA) Dkt. 5-13 on pages 46-48.

## RE: APPLICATION OF U.S. v. GROTE, 961 F.3d 105, 109 (2d Cir. 2020), TO "UNLAWFUL DEBT COLLECTION ACTIVITIES" ENGAGED IN OR FACILITATED BY ZITTER,[26] RABINOWITZ,[27] GRUSHKO, MITTMAN, SOUTHWELL,[28] KTS, ITS CLIENTS,[29] AND THE UST DURING OR RELATED TO THE 03-93031 CHAPTER 11.[30]

### I. INTRODUCTION

Appellants submit this portion of Memorandum (#3) to demonstrate how the unlawful debt collection activities of the United States Trustee ("UST") and Kilpatrick Townsend & Stockton LLP ("KTS"), along with KTS's unregistered broker-dealer clients, constitute "unlawful debt collection activities" as defined by and applied through the reasoning in *United States v. Grote,* 961 F.3d 105, 109 (2d Cir. 2020). Examination of the relevant 25cv00613 (NDGA) docket entries—specifically, **Dkt. 5-1, 5-2, 5-3, 5-4, 5-5, 5-6, 5-16, and Dkt. 9 (F-10 and F-11)**—reveal binding judicial admissions and confessions, *Hoodho*, 558 F.3d at 191, that squarely meet the legal criteria for unlawful debt collection attempts and efforts in connection with the Predatory Criminal Usury debts, **GX 1–4** and the accompanying so-called subscription agreement (**GX 5**).[31]

---

[26] See Id. Dkt. 9 (F-10 and F-11).

[27] See Id. Dkt. 5-13 on page 52.

[28] See Id. Dkt. 5-13 on page 58.

[29] See Id. on pages 54-57.

[30] "Additionally, **following the Defendants' convictions**, the court entered a preliminary forfeiture order against [defendant] Tucker, *including a money judgment in the amount of $3.5 billion and the forfeiture of certain specific property*." *United States v. Grote*, 961 F.3d 105, 113 (2d Cir. 2020).

[31] **United States v. Grote,** 961 F.3d 105, 119 (2d Cir. 2020) ("**RICO offenses may be predicated on a single instance of collection of unlawful debt [GX 1-4]**, as well as on a pattern of racketeering

## II. THE GROTE DEFINITION OF "UNLAWFUL DEBT COLLECTION ACTIVITIES."[32]

1. **Statutory Basis and Standard[33]**

In *Grote,* the Second Circuit addressed the scope of "unlawful debt collection activities" under federal loan sharking and racketeering law, **18 U.S.C. §§ 1961 et seq.** Specifically, the court noted that predatory criminal usury debts, GX 1-4, arising from criminally usurious transactions, or from instruments that violate certain penal statutes, constitute "unlawful debts" whose (i) enforcement or (ii) collection is prohibited.[34]

---

activity. *See* 18 U.S.C. § 1962 ; *United States v. Giovanelli*, 945 F.2d 479, 490 (2d Cir. 1991)."). (emphasis added).

[32] *U.S. v. Giovanelli*, 945 F.2d 479, 490 (2d Cir. 1991) ("Unlike a "pattern of racketeering activity" which requires proof of two or more predicate acts, **to satisfy RICO's "collection of unlawful debt" definition the government need only demonstrate a single collection**. *See United States v. Vastola*, 899 F.2d 211, 228 n. 21 (3d Cir.), *vacated and remanded on other grounds*, ___ U.S. ___, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990); *United States v. Pepe*, 747 F.2d 632, 645 (11th Cir. 1984). *Compare* 18 U.S.C. § 1961(5) *with* 18 U.S.C. § 1961(6). Here, the jury found that the defendant had engaged in the collection of unlawful debt from three individuals: John Marsala, Barbara Messina Kranz, and Larry Alfano."). (emphasis added).

[33] "RICO offenses **may be predicated on a single instance** of collection of unlawful debt [GX 1-4], as well as on a pattern of racketeering activity. *See* 18 U.S.C. § 1962 ; *United States v. Giovanelli* , 945 F.2d 479, 490 (2d Cir. 1991). While "racketeering activity" is generally understood to encompass only criminal offenses, *see Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank* , 755 F.2d 239, 247 (2d Cir. 1985), the RICO statute defines "unlawful debt" *to include any debt* "which is *unenforceable* under State or Federal law ... because of the laws relating to usury" and "which was incurred in connection with ... *the business of lending money* or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6) (emphasis added). *United States v. Grote*, 961 F.3d 105, 119 (2d Cir. 2020). (emphasis added).

[34] **See Grote,** 961 F.3d at 109-119 (recognizing that debts [GX 1-4] "incurred in connection with...the business of lending money at a usurious rate" [cf., Dkt. 5-13 on page 52] form the basis of racketeering liability when willfully collected). Accordingly, all activities associated with 02cv2219 (SDNY), 03-93031 (BC NDGA), 94cr1224 (SDNY), or 25cv00613 (NDGA); or *In re Ware* (2008) (Supreme Court of GA, fabricated disbarment proceedings) fall squarely within the scope of 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d), unlawful debt collection "activities."

2. **Essential Attributes of Unlawful Debt—GX 1-4.**

Pursuant to **18 U.S.C. § 1961(6)**, an "unlawful debt" is one that is (a) unenforceable under state (i) (see NYS Penal Law, § 190.40, the criminal usury law, a class E felony) or (ii) federal law, (18 USC § 1961 et. seqs.) in whole or in part ***as to principal or interest*** due to usury; and (b) incurred in connection with "the business of lending money[35]...at a rate usurious under state or federal law."[36]

Under ***Grote***, any deliberate action—**judicial, extrajudicial, or otherwise**—that *attempts to* collect or enforce such a debt, GX 1-4, with knowledge of the unlawful nature, qualifies as "unlawful debt collection activities." ***Grote***, 961 F.3d at 109.

3. **Criminal Usury and Federal Securities Violations**

Where GX 1-4; predatory criminal usury convertible promissory notes, (i) exceeded the statutory interest cap (+2,000%), or (ii) are tied to unregistered broker-dealer transactions in contravention of **15 U.S.C. § 78o(a)(1)**, there is no lawful foundation for collection, enforcement, or repayment. **See id.** (noting that ***mere attempts*** (cf., Dkt. 5-13

---

[35] See Dkt. 5-13 on page 52: Nov. 2007 sworn ***U.S. v. Ware***, 04cr1224 (SDNY) known perjury and lying trial testimony of Appellee Arie Rabinowitz, under oath, binding judicial admissions of 15 USC 78o(a)(1) unregistered broker-dealer status for he, LH Financial Services, Alpha Capital, AG, et al., being in the "private placement business" while not lawfully registered with NYS, the SEC, or FINRA as broker-dealers, confession of unlawful debt collection activities. CF., Id. on pages 149-153 regarding Rabinowitz, LH Fin. Services, and others' unlawful debt collection crimes while unregistered broker-dealers.

[36] See Appellees Baker & McKenzie, LLP, Mandala, Albaral, Leghorn, and Malliband's bogus and risible Form SB-2 registration statement filed on behalf of the predatory unregistered broker-dealers to facilitate and enable the repayment of the predatory criminal usury debts, GX 1-4—that is, per se unlawful debt collection activities in violation of 18 USC §§ 2, 371, 1341, 1343, 1951(a), 1961(6)(B), and 1962(a-d), a pattern of racketeering activities in furtherance of Hobbs Act predatory loan sharking, money laundering, and extortion under threats of bodily harm, see Dkt. 5-16 (F-7, F-8, and F-9).

on pages 41-60) to enforce or collect from such instruments constitute racketeering overt and predicate acts).

### III. APPLYING *GROTE* TO THE UST'S AND KTS'S JUDICIALLY ADMITTED "UNLAWFUL DEBT COLLECTION ACTIVITIES."

Appellants specifically identify the following docket entries—**Dkt. 5-1, 5-2, 5-3, 5-4, 5-5, 5-6, 5-13, and 9**—as evidencing the UST's and KTS's confessions and admissions of ***their attempts*** to enforce and collect on the alleged criminally usurious debt instruments (**GX 1–4 and GX 5**). Under ***Grote***, such actions, once recognized as directed at "unlawful debts," trigger criminal racketeering liability under federal law.

1.  **Dkt. 5-1**

    i.  **UST's Entry of Appearance** acknowledging the existence of the predatory criminal usury convertible notes, GX 1-4. By entering an appearance to oversee or facilitate claims enforcement, the UST effectively joined in the push to collect on or dismiss any challenge by Appellants Ware and the Chapter 11 Debtor (03/31/2003 Doc. 5 (03-93031) ***motion to reject executory contracts***, GX 1-4 and GX 5) to the alleged predatory obligations, ignoring the predatory criminal usurious nature of GX 1-4.

2.  **Dkt. 5-2**

    i.  **KTS's Entry of Appearance** on behalf of unregistered broker-dealer clients, explicitly asserted a fraudulent and bogus right to enforce or collect on **GX 1–4, the predatory criminal usury debts—that is, per se, ipso facto, binding judicial admissions and confessions of unlawful debt collection activities**. Through these

deliberate, frivolous, vexatious, and bad faith misrepresentations, KTS conceded and judicially admitted,[37] that their clients ***were actively pursuing*** "collection" of the predatory criminal usury debts, GX 1-4—even though they were on their face criminally usurious under *N.Y. Penal Law § 190.40* and further void under *15 U.S.C. § 78cc(b) **due to unregistered broker-dealer violations***. Cf., Dkt. 9 (Zitter's cross-examination in 04cr1224 (SDNY)).

3. **Dkt. 5-3**[38]

    i.    **UST's Motion to Dismiss with Prejudice** referencing the enforcement and collection of GX 1-4. By seeking to dispose of the Debtor's Chapter 11 case (on the bogus, negligent, malicious, fraudulent, and reckless grounds) the UST in collusion with KTS and its clients was facilitating the unlawful debt collection process), the UST effectively advanced the cause of collecting an *unlawful debt*. *Grote* instructs that *active assistance* in collecting a debt known or believed to be tainted by criminal usury violates federal law.[39]

4. **Dkt. 5-4**

---

[37] See ***Hoodho v. Holder***, 558 F.3d 184, 191 (2d Cir. 2009) (judicial admissions made in a pleading by lawyers or clients are binding throughout the litigation and cannot be changed—are conclusive on factual matters).

[38] ***Grote***, 961 F.3d at 118 ("The prosecution was predicated on the defendants' violation of New York Penal Law § 190.40. That statute required proof that the defendant knowingly took or received interest at a rate exceeding 25% per annum [here GX 1-4 charged interest in excess of +2,000%]. It did not, however, require that the defendant know either the precise rate being charged, or that the rate was illegal.").

[39] See ***Grote***, 961 F.3d at 109, (Where a person willfully collects or attempts to collect a criminally usurious debt, ***that collection activity itself is [civilly and criminally] chargeable under racketeering law***.).

    i.    **KTS's Opposition to Debtor's Motion to Reject** the Predatory Convertible Notes. By opposing the Chapter 11 Debtor's rejection of GX 1-4, and GX 5, KTS and its clients explicitly demanded specific performance under **GX 1–4** and **GX 5**, thereby confessing they were continuing to *collect* or enforce these instruments. This is the essence of "unlawful debt collection activities" described in *Grote*.

5.  **Dkt. 5-5 and 5-6[40]**

    i.    **KTS's "Emergency Motion to Dismiss" and Supporting Brief**. Both frivolous and bad faith pleadings revolve around the improper purpose premise that the Debtor was wrongfully impeding the collection of the allegedly "unlawful debt" (i.e., the criminally usurious notes, GX 1-4). ***Grote confirms that the mere act of filing judicial papers to coerce or expedite payment on a criminally usurious instrument constitutes "collection activities*."**

## IV. SUMMARY

Under ***United States v. Grote***, 961 F.3d 105, 109 (2d Cir. 2020), "unlawful debt collection activities" ***encompass any concerted effort***—court-based or otherwise—to enforce or obtain

---

[40] *Grote*, 961 F.3d at 117, ("Uncontradicted evidence showed that the Defendants: (1) prohibited employees from revealing the business's Kansas location, and instructed them to falsely claim that they were located on tribal land; (2) caused mail related to the lending business to be sent to the Tribes and then forwarded unopened to the Kansas office, giving a false impression that lending activity occurred on tribal lands; (3) required tribal officials to perform fake loan approvals on designated iPads in order to give the appearance that they were involved in the loan approval process; (4**) set up a sham transaction in which AMG, a company controlled by Tucker, "purchased" CLK (using money controlled by Tucker) in order to give the appearance of tribal ownership**; and (5) **caused attorneys [cf., attorneys Meir, Mills, Walker, and Kadaba's false and fraudulent pleadings and arguments made in 03-93031] to submit affidavits in state court actions that contained inaccurate descriptions of a purported tribal role in administering the loans**."). (emphasis added).

payment on a debt that is criminally usurious or otherwise unlawful. Appellants have demonstrated that the **UST and KTS** (along with KTS's unregistered broker-dealer clients) have, by their own pleadings in **Dkt. 5-1, 5-2, 5-3, 5-4, 5-5, and 5-6**, judicially confessed and admitted to pursuing such collection activity in reference to **GX 1–4 and GX 5**, which are predatory, criminally usurious, and void.

Accordingly, these parties' (putative adverse Appellees) attempts to collect or enforce the instruments fall squarely within the definition of "unlawful debt collection activities." The record thus shows, Dkt. 5 and Dkt. 9, as Appellants contend, a direct violation of the principle articulated in *Grote*, and underscores the necessity of a Show Cause Order compelling each to explain or justify their enforcement posture relative to clearly void and criminally usurious debt instruments.

# D.

## I.    INTRODUCTION.

Any alleged injury claimed by Appellee KTS' clients, the May 17, 2021, FINRA regulatory *certified unregistered broker-dealers*, *was self-inflicted by their voluntary participation* in **predatory criminal usury debt collection activities in violation of federal racketeering law**, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d), and thus, under ***Clapper v. Amnesty Int'l USA***, 568 U.S. 398, 409–10 (2013) do not constitute "a particularized, concrete injury in fact" "fairly traceable to the [Appellants' lawful] conduct." ***Lujan***, 504 U.S. at 560-61.

**ARGUMENT: THE ABSENCE OF ARTICLE III SUBJECT MATTER JURISDICTION DUE TO LACK OF STANDING UNDER** *CLAPPER v. AMNESTY INT'L USA***, 568 U.S. 398 (2013).**

This Court lacks **Article III subject matter jurisdiction** over the instant appeal (Case No. 25-cv-00613-MLB (N.D. Ga.)), the underlying Bankruptcy Case No. 03-93031 (N.D. Ga.) claims filed by KTS and the UST, and the related civil action (Case No. 02-cv-2219 (S.D.N.Y.)), because the putative Appellees, including Kilpatrick Townsend & Stockton LLP ("KTS") and its FINRA regulatory-certified ***unregistered broker-dealer clients***, (see Dkt. 5-13 on page 48) lack Article III constitutional standing. An absence of Article III standing underlies each stage of these proceedings and requires immediate resolution before this Court may address any merits-based issues. ***Steel Co.,*** 523 U.S. at 93-95.

Article III of the United States Constitution confines federal jurisdiction to actual "Cases" and "Controversies." See ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560–61 (1992). This core foundational principle demands that every litigant (the alleged adverse Appellees herein) invoking the jurisdiction of a federal court must "first" ***at the pleading stage***, and ***throughout the course of the litigation*** "affirmatively demonstrate" (with evidence, facts, declarations, etc.) a "**concrete** and **particularized**" **injury**[41] in fact that is "actual or imminent, not conjectural or hypothetical." *Id.*

---

[41] The UST, KTS, its clients, or any Appellee has yet to appear in any form below in 02cv2219 (SDNY), 03-93031, 04cr1224 (SDNY) or in this 25cv00613 (NDGA) proceeding and establish exactly what the alleged "particularized, concrete injury in fact" that was suffered by the predatory unregistered broker-dealers attempting to enforce and/or collect the predatory criminal usury debts, GX 1-4. Appellants eagerly await the Appellees' appearance in this proceeding in the honorable District Court to explain their purported injury. Palpably, the law is without debate and well-established by the Supreme Court's binding precedents that without the requisite "particularized, concrete injury in fact" established by the Appellees in the Joint Stipulated Appellate Record, ipso facto, *the District Court is not lawfully authorized to proceed one step further and is not and cannot lawfully proceed to the merits of the pending appeal until the Appellees appear herein and present clear and convincing evidence of their alleged particularized, concrete injury in fact to their alleged "legally protected interest" in enforcement or collection of the predatory criminal*

**Speculative harms or injuries inflicted by a party's own unlawful conduct cannot establish Article III standing**. See ***Clapper v. Amnesty Int'l USA***, 568 U.S. 398, 409–10 (2013).

Here, the putative Appellees based their alleged claims below in 02cv2219, 03-93031, and 04cr1224 (SDNY) on the predatory criminally usurious convertible promissory notes (GX 1–4) and related agreements (GX 5). These predatory criminal usury unlawful debt instruments are void ab initio under New York Penal Law § 190.40 and federal racketeering loan sharking law 18 U.S.C. § 1961(6)(B). Because any alleged "injury" claimed by the unregistered broker-dealers ***stems from their voluntary participation in criminally usurious transactions***, the resulting harm, if any,[42] is legally insufficient under *Clapper*, thus depriving this Court of subject matter jurisdiction.

## A. Appellees' Claims Are Speculative and Self-Inflicted Under *Clapper v. Amnesty Int'l USA*

The Supreme Court's decision in ***Clapper*** emphatically requires that an alleged injury be "actual and imminent" and not voluntarily incurred in anticipation of uncertain future events. 568 U.S. at 409–10, 416. Injuries flowing from one's own unlawful activity cannot confer Article III standing. *Id.* at 416.

1. **Criminal Usury and Racketeering**

---

***usury debts***, GX 1-4, and contract, GX 5, in criminal violation of the federal loan sharking and racketeering laws, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d). ***Steel Co.,*** 523 U.S. at 94-95. We eagerly await.

[42] KTS and its clients, and the UST must be ordered to immediately come forth before the District Court as officers of the court and provide a District Court (NDGA) and the State Bar of Georgia's Professional Conduct Rules 3.3 and 8.4 frivolity and bad faith account of their litigation position consistent with Bankr. Rule 9011(b)(1-4) and 28 USC 1927 regarding their filings in the Chapter 11, Dkt. 5-1 to 5-6.

i. **New York Penal Law § 190.40** voids debt instruments charging interest rates above 25% per annum. See *Adar Bays LLC v. GeneSYS ID, Inc.*, 28 F.4th 379, 391 (2d Cir. 2022).

ii. Debts charging such unlawful interest also constitute "unlawful debt" under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961(6)(B).

iii. Appellees' purported harm—namely, the criminal inability to collect, 18 USC §§1951(a), 1961(6)(B), and 1962(a-d), and enforce (see Dkt. 9, the testimony of Appellee Kenneth A. Zitter, Esq., testified that he "hired" KTS to enforce and/or obstruct Group Management's 03-93031 Chapter 11 reorganization) predatory criminally usurious notes (see the 02cv2219 (SDNY) complaint's claims, and also see Dkt. 5-3, 5-4, 5-5, and 5-6) or any costs incurred attempting to enforce them— flows solely from their ***voluntary choice to engage in criminally illegal transactions***, rendering any alleged "injury" self-inflicted. ***Clapper***, 568 U.S. at 416.

2. **Violation of Federal Securities Laws—Unregistered Broker-Dealers**[43]

i. KTS's clients judicially admitted in open court, under oath, operated as unregistered broker-dealers in violation of 15 U.S.C. § 78o(a)(1). See Dkt. 5-13 on pages 52-53.

ii. Contracts, GX 1-4, and GX 5, formed or performed by unregistered broker-dealers are void by operation of 15 U.S.C. § 78cc(b).

---

[43] See Dkt. 5-13 on page 48.

    iii.    Lacking a valid legal interest in these void instruments, KTS's clients cannot claim any redressable "injury" from the lawful non-enforcement of criminally usurious debt. NYS Penal Law, § 190.40, the criminal usury law, a class E felony; ***Grote***, 961 F.3d at 109.

3. **Bankruptcy Fraud and Conspiracy**

    i.    By attempting to enforce these void ab initio predatory criminal usury convertible promissory notes in a Chapter 11 proceeding, (see Dkt. 5-1 to 5-6, and Dkt. 9) the ***UST, Zitter, Rabinowitz, KTS and its clients*** engaged in criminal conduct barred by 18 U.S.C. §§ 152 and 157.

    ii.    Under ***Clapper***, parties cannot manufacture standing by invoking injuries arising from their own wrongful acts. 568 U.S. at 416.

## B. Speculative or Hypothetical Harm Fails to Confer Standing

Appellees' alleged harms are neither "certainly impending" nor ***lawfully derived***. Enforcing GX 1–4 would necessarily require a federal court to validate criminally usurious notes, contradicting established public policy, ***Adar Bays***, Id. and statutory prohibitions, 15 USC §§ 78o(a)(1), 78cc(b), and 78ff; and 18 USC § 1961(6)(B). *Clapper* thus forecloses any manifestly frivolous and bad faith argument by Zitter, Rabinowitz, Morawetz, the UST, KTS, or its clients that self-imposed litigation expenses or hypothetical future enforcement of illegal debts suffice to satisfy Article III. 568 U.S. at 409–10, 416.

Because no realistic or good faith legal possibility exists that these predatory criminal usury null and void ab initio contracts, GX 1-4, and GX 5, can be legally enforced, there is no imminent

harm to support jurisdiction. Id. ***The Appellees' bogusly claimed injuries instead stem entirely from their voluntary expenditures in pursuing obligations barred by state and federal law***.

## C. Requested Relief

Given this fundamental jurisdictional defect, the following relief is compelled:

1. **Dismissal of Claims**

    i.   All claims asserted by KTS and its unregistered broker-dealer clients in the 03-93031 Chapter 11 are required be dismissed with prejudice for lack of standing, ***Steel Co.***, 523 U.S. at 93-95.

2. **Vacatur of Bankruptcy Court Orders**

    i.   All orders entered at KTS's behest in Bankruptcy Case No. 03-93031 (N.D. Ga.), including but not limited to Docket Nos. 28, 256, 258, 263, 274, 275, and 278, must be vacated and deemed void ab initio.

3. **Dismissal of the Bankruptcy Case**

    i.   The Bankruptcy Court proceeding with respect to the UST, KTS, and its clients (Case No. 03-93031 (N.D. Ga.)) should be dismissed for want of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(h)(3), made applicable by Fed. R. Bankr. P. 9014.

4. **Issuance of a Show Cause Order**

     i.     Consistent with Appellants' prior March 10, 2025, requests (Dkt. 17-1), this Court should direct KTS and its clients to demonstrate how they purport to have standing in light of ***Clapper*** and statutory prohibitions on criminal usury and securities fraud.

## SUMMARY

Because KTS and its unregistered broker-dealer clients fail to meet the minimum constitutional requirements for standing set forth in ***Clapper v. Amnesty Int'l USA*** and related precedents, this Court lacks jurisdiction to hear their claims. The only appropriate course is the dismissal of those claims, vacatur of all orders obtained thereby, and dismissal of the relevant underlying bankruptcy proceeding's "causes" (Dkt. 5-1 to 5-10) for lack of subject matter jurisdiction. Appellants respectfully request that this Court grant the relief outlined above and issue any further orders necessary to preserve the integrity of the judicial process.

# E. CONCLUSION

For the reasons set forth herein and in all prior submissions, (17-1), (17-3), (17-4), and 17-5) are incorporated by reference herein, ***in heac verba***, as if set forth and pleaded fully herein, Appellants respectfully urge this Court to:

1. **Issue a Show Cause Order** forthwith, compelling each relevant putative adverse Appellee to justify their factual and legal basis for asserting that predatory criminal usury, void ab initio convertible notes conferred a legitimate, enforceable "**<u>concrete</u>** injury in fact" which ***<u>is required to be identified by the adverse putative Appellees</u>***.

2. **Vacate or set aside any orders** in 03-93031 that relied upon, in whole and/or in part, or recognized the purported rights of KTS's unregistered broker-dealer clients or the UST's associated positions regarding these null and void obligations.

3. **Impose all necessary sanctions or disciplinary measures** as warranted under Bankruptcy Rule 9011(b)(1-4), 28 U.S.C. § 1927, and this Court's inherent authority, should the Court determine that these appearances and pleadings were lodged with no sound good faith basis in fact or law.

4. **Grant such other and further relief** as the Court deems just and proper in the circumstances.

Prompt action is critical to safeguard the integrity of these proceedings and restore confidence in the proper administration of justice under federal bankruptcy law.

**Respectfully submitted,**

Date: March 17, 2025

/s/ Ulysses T. Ware

The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

**Attorney in Fact for Appellants**
**Group Management (a sole proprietorship) and Ulysses T. Ware**

By: /s/ Ulysses T. Ware for the Appellants

Filed on March 17, 2025, via U.S. mail and via email to the Chambers of the Hon. District Judge

Michael L. Brown pursuant to 18 USC §§ 2071(a), (b), a judicial public record, and 28 USC §

1654 by pro se Appellants.

## Appellants' Declaration and Certificate of Service

I, Ulysses T. Ware, under oath and subject to the penalty of perjury, having personal knowledge

of the facts, pursuant to 28 USC § 1746, in Brooklyn, NY attorney in fact for the Appellants,

hereby certify under penalty of perjury that on this 17th day of March 2025, I caused to be served

a true and correct copy of the foregoing Appellants' Supplemental Article III Standing and Subject

Matter Jurisdiction Memorandum (#3) in Support of their Application for Rules 3.3 and 8.4 Show

Cause Order, a Brief Schedule, and Appellate Status Conference  via electronic mail to all

Appellees; and

The Office of the District Clerk (NDGA),

Executive Director Administrative Office of the U.S. Courts,

Office of the FBI Director,

 via U.S. mail.

/s/ Ulysses T. Ware

Ulysses T. Ware

**Exhibits--18 USC §§ 2071(a), (b) judicial court records (judicial pleadings) submitted by Appellants for filing and docketing in the District Court (NDGA), Case No. 25cv00613 (NDGA), Office of the District Clerk—Not appearing on the official docket sheet.**

.

**Exhibit 1—March 10, 2025, 17-1 (Part 17-1) re Appellants' Application for Show Cause Order and other reliefs. Filed on March 10, 2025.**



Monday, March 17, 2025
(17-6) (Part 17-6) re Appellants' Article III Jurisdictional Supp. Memorandum of Law (#3) in support of
(17-1) March 10, 2025, Show Cause Order.

**Exhibit 2—(17-4) (Part 17-4) re March 13, 2025, Supp. Memo. of Law (#2) in Support of Show Cause Order (17-1).**



Monday, March 17, 2025
(17-6) (Part 17-6) re Appellants' Article III Jurisdictional Supp. Memorandum of Law (#3) in support of (17-1) March 10, 2025, Show Cause Order.

**Exhibit 3—(17-5) (Part 17-5) re March 14, 2025, re Appellants' Supp. Memo of Law (#2) in Support of (17-1) Show Cause Order and other reliefs.**



Page **48** of **49**

Monday, March 17, 2025

(17-6) (Part 17-6) re Appellants' Article III Jurisdictional Supp. Memorandum of Law (#3) in support of (17-1) March 10, 2025, Show Cause Order.

# End of document

.

.

.

Monday, March 17, 2025
(17-6) (Part 17-6) re Appellants' Article III Jurisdictional Supp. Memorandum of Law (#3) in support of
(17-1) March 10, 2025, Show Cause Order.