FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 25 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**(17-8) (Part 17-8)**

# APPELLANTS' MEMORANDUM LETTER BRIEF (#4)

## The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Tuesday, March 18, 2025, 9:52:17 AM

**VIA U.S. MAIL AND E-MAIL TO CHAMBERS**
The Honorable Michael L. Brown
United States District Judge
Northern District of Georgia
Richard B. Russell U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, GA 30303

**Re:** *Ulysses T. Ware and Group Management v. Alpha Capital, AG, et al.*, **Case No. 1:25-cv-00613-MLB** – Article III Threshold Jurisdictional Defects and Necessity for Appellate Status Conference, Show Cause Order, and Stay of Briefing Schedule.

**Dear Judge Brown:**

Appellants Ulysses T. Ware, a natural person, d/b/a as/and Group Management, a sole proprietorship, pursuant to 28 USC § 1654, by and through their attorney in fact, Ulysses T. Ware, respectfully submit this Memorandum Letter Brief (17-8) (Part 17-8) to address critical, "threshold" dispositive jurisdictional defects that preclude this Honorable Court from proceeding to the merits of the pending appeal, Case No. 25-cv-00613-MLB *Steel Co.*, 523 U.S. at 93-95. This memorandum also serves as <u>*a renewed request*</u> for an Appellate Status Conference, Show Cause Order, and a stay of the briefing schedule, as announced by the District Clerk on March 17, 2025 (Dkt. 10).

## I. THE PARAMOUNT NECESSITY TO IDENTIFY ALL ADVERSE REAL PARTIES IN INTEREST AND THEIR "PRIVIES."

To competently and timely prepare the Appellants' opening brief, due April 7, 2025, it is imperative that this Court and the Appellants know the exact legal identities of all adverse real

parties in interest Appellees who will be bound by any final judgment in this appeal. According to binding Supreme Court precedent, specifically *Federated Department Stores, Inc. v. Moite*, 452 U.S. 394, 398, 401-02 (1981), any final judgment entered in this 25cv00613 (NDGA) appeal will bind not only the named Appellees, but also their "privies," and all courts in all future litigation between the parties. This includes, but is not limited to, all proxies, surrogates, alter-egos, agents, and all those in active concert with the current lead Appellee, Alpha Capital, AG (Anstalt).

As *Federated Department Stores* definitively establishes, all "privies" of Alpha Capital, AG (Anstalt), Stonestreet L.P., Markham Holding, Ltd, and AMRO International, S.A. (the 02cv2219 (SDNY) plaintiffs):

(i) ***will be forever bound*** by a final judgment in this appeal, and

(ii) are currently and unequivocally bound by the ***voluntary*** Rule 41(a)(2) final judgment entered by former District Judge Leonard B. Sand (SDNY) on December 20, 2007, in Case No. 02cv2219 (SDNY), Dkt. 90. See 25cv00613 (NDGA) Dkt. 5-13 on pages 46-47.

This Rule 41(a)(2) final judgment, entered at the behest of Appellee Alpha Capital, AG (Anstalt), et al., and their successors in interest (see Dkt. 5-13 on pages 46-47), is absolutely binding on this Court and the Bankruptcy Court below. See *U.S. v. L-3 Comm'cs EOTech, Inc.*, 921 F.3d 11, 18-19 (2d Cir. 2019) (Kearse, J.) (collecting cases) (holding that a plaintiff's voluntary dismissal ***annulled and vitiated all prior proceedings, orders and judgments and is absolutely binding on federal and state courts in subsequent proceedings involving the same parties or their privies***), *Federated*, Id.

The Rule 41(a)(2) final judgment in 02cv2219 (SDNY) is not merely a procedural formality; it is a definitive voluntary judicial act initiated by Alpha Capital, AG (Anstalt) and the 02cv2219 (SDNY) plaintiffs, ***after the statute of limitation had run on all claims in the 02cv2219 complaint,*** which carries profound res judicata and collateral estoppel preclusive effects, rendering the present appeal jurisdictionally infirm absent clarification of the parties and their "privy" status.

The failure to immediately resolve these fundamental and "core" dispositive Article III "threshold" jurisdictional issues leaves both the Court, the Appellants, and the putative Appellee—privies of the 02cv2219 (SDNY) plaintiffs, in a state of uncertainty, a state of confusion, ***akin to procedural anarchy***, and unable to definitively identify and formally ascertain who is properly before the Court, who needs to be brought before the Court, and who will be legally bound by its decisions. This avoidable ambiguity and inherent uncertainty undermines the integrity of the appellate process and necessitates immediate judicial intervention.[2]

---

[2] The Court's delay in addressing these dispositive, "threshold" fundamental Article III jurisdictional threshold issues, before proceeding to review or adjudicate the merits of the issues raised on appeal ***significantly prejudices Appellants and creates procedural ambiguity and chaos detrimental to all parties.*** The unresolved "threshold" dispositive jurisdictional defects render unclear the legal standing and interests of the putative Appellees, impair the Court's ability to ensure its jurisdictional authority, and

Page **4** of **11**

Tuesday, March 18, 2025

(17-8) (Part 17-8) re Appellants' renewed Application for an Article III Jurisdictional Appellate Status Conference and Other Reliefs.

## II. THE ABSENCE OF ARTICLE III SUBJECT MATTER JURISDICTION

Given the *dispositive* and currently unresolved issues surrounding party identities and "privy" status in the 25cv00613 appeal, this Honorable Court and the Appellants remain to this day uncertain as to the legal identities of the correct parties currently before the Court, and critically, ***who will be bound by a final judgment***. This uncertainty is compounded by the indisputable fact that Judge Sand's December 20, 2007, Rule 41(a)(2) final judgment in 02cv2219 (SDNY) *is absolutely binding* on each 02cv2219 (SDNY) plaintiff putative Appellee in 25cv00613 and their "privies," according to *Federated*, 452 U.S. at 398, 401-02.

Thus, it is of paramount importance to immediately identify each of the "privies" of the 02cv2219 (SDNY) Appellee-plaintiffs who are legally bound by the res judicata and collateral estoppel preclusive effects of Judge Sand's December 20, 2007, Rule 41(a)(2) final judgment in favor of Appellants Group Management and Ware (the "Rule 41(a)(2) Final Judgment Prevailing Parties"). The Rule 41(a)(2) Final Judgment Prevailing Parties—Appellants herein, *have consistently and will consistently continue to exercise and advance their legal rights to enforce this final judgment*, via the civil and criminal contempt processes if necessary, and apply the preclusive effects of res judicata and collateral estoppel to the 03-93031 and 25cv00613 proceedings. These binding preclusive effects "actually and necessarily" prohibited the 03-93031 bankruptcy court below, and currently ***actually, necessarily, and constructively*** prohibit this Article III United States federal court, from entertaining any argument, issue, fact, or claim advanced or presented by any "privy" of the 02cv2219 (SDNY) plaintiffs in the 25cv00613 appeal "actually or necessarily" decided by Judge Sand's Rule 41(a)(2) final judgment. See *Federated*, 452 U.S. at 401-02.

The Dec. 20, 2007, Dkt. 90, **voluntary**, ex parte Rule 41(a)(2) ***dismissal with prejudice*** of the 02cv2219 (SDNY) lawsuit by plaintiffs, Appellees Alpha Capital, AG (Anstalt), et al., constitutes a final judgment on the merits in favor of the Appellants herein. This judgment, ipso facto and by operation of law, ***actually and necessarily*** finally and irrevocably decided the Article III "core" standing issues of the lack of: (i) "a particularized, concrete injury in fact," (ii) "a legally protected interest" in the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5, and (iii) "unlawful conduct fairly traceable to the conduct of the Appellants herein" (paraphrased). See *Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560-61 (1998).

---

obscure who precisely will be bound by its determinations. This avoidable procedural uncertainty, absent prompt judicial resolution, inherently compromises the integrity, reliability, and fairness of these appellate proceedings. Immediate judicial intervention is therefore warranted, essential not only to restore procedural clarity but also to uphold the legitimacy of the Court's rulings and ensure all decisions made herein conclusively bind the proper parties, thereby safeguarding the fundamental interests of justice, and avoid a moot advisory opinion. ***Steel Co.***, 523 U.S. at 94-95.

These "core" Article III standing requirements were decisively and finally decided in favor of the Appellants herein on December 20, 2007, Dkt. 90, 02cv2219 (SDNY), and the preclusive effects of these Article III "core" standing requirements are binding "absolutely" on the bankruptcy court in 03-93031 and this Article III United States federal court, 25cv00613. See *Federated*, 452 U.S. at 398. Applying the Court's reasoning and holding in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-95 (1998), to the "binding absolutely on all courts, the parties, and their privies" holding in *Federated*, the res judicata and collateral estoppel preclusive effects of the 02cv2219 (SDNY) December 20, 2007, Rule 41(a)(2) final judgment strictly prohibited the 03-93031 bankruptcy court, and prohibits this United States Article III District Court, 25cv00613 appeals court, *from **any review and/or adjudication of the merits** of the pending appeal*. *Steel Co.*, 523 U.S. at 93-95 (a federal court is not lawfully authorized to review the merits of an appeal until jurisdiction is "first" "affirmatively established").

Until such time as: (i) each putative Appellee named in 03-93031 Dkt. 281 and "privies" of the 02cv2219 (SDNY) plaintiffs appear in this 25cv00613 court, (ii) file a declaration under the penalty of perjury with respect to each element of Article III standing, and (iii) admit or disclaim adverse real party in interest (privy) status with respect to the 02cv2219 (SDNY) plaintiffs and their agents, proxies, surrogates, alter-egos, privies, and all those in active concert therewith, ***this matter is not ripe for appeal and the Court cannot lawfully proceed to the merits of any issues raised on appeal***, *Steel Co.*, Id. at 93-95.

# III. LACK OF CURRENT RIPENESS FOR APPEAL IN 25CV00613 DUE TO UNCERTAIN APPELLEE IDENTITIES AND STATUS.

This section addresses the critical Article III constitutional "threshold" issue of ripeness in the pending appeal, Case No. 25cv00613 (NDGA), arising from the present uncertainty surrounding the identities and legal status of the Appellees. The doctrine of ripeness, grounded in Article III of the U.S. Constitution, mandates that federal courts only adjudicate actual "Cases" or "Controversies," thus precluding premature or abstract disputes. ***The present appeal, in its current posture, fails to meet this fundamental ripeness requirement.***

### A. Ripeness Doctrine and Article III Jurisdiction

The ripeness doctrine, *a core component of justiciability, ensures that federal courts do not issue advisory opinions or become entangled in disputes that are not yet sufficiently defined or concrete.* A case is unripe when the issues are not clearly delineated, the factual record remains underdeveloped, or the harm alleged is merely speculative or contingent. ***National Park Hospitality Ass'n v. Department of Interior***, 538 U.S. 803, 807-08 (2003).[3] As the Supreme Court

---

[3] *National Park Hospitality* holds that courts must ensure a dispute is sufficiently mature before adjudicating it. In **25cv00613**, the alleged "privies" to the 02cv2219 (SDNY) plaintiffs remain unidentified, leaving the ***District Court uncertain whether actual adversity persists***. Determining which entities are bound by the prior final judgment entered in 02cv2219 (SDNY), Dkt. 90, Dec. 20, 2007, Sand, J. *is indispensable to establishing whether a concrete live Article III case or controversy is extant between Appellants and the*

has affirmed, ripeness is not merely a procedural technicality, *but a question of subject matter jurisdiction, directly implicating the constitutional limits of federal judicial power*. Id.

## B. Uncertainty Regarding Real Parties in Interest and Their Status[4]

In the context of this appeal, a fundamental lack of ripeness stems from the unresolved uncertainty surrounding the actual and factual identities and legal status of the Appellees apropos:

(i) the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5; and

(ii) their status as agents, proxies, surrogates, alter-egos, privies, or in active concert with the LH Financial Services, Arie Rabinowitz, Kenneth A. Zitter, Esq., KTS, and/or the 02cv2219 (SDNY) plaintiffs,

jointly an illegal association in fact as defined in 18 USC § 1961(4)—a predatory Hobbs Act continuing criminal enterprise. Cf., 25cv00613 Dkt. 5-13 on pages 43-45; 46-48; and 52-53.

1. **Indefinite Appellee Identities**: As previously detailed, Appellants have demonstrated substantial doubt regarding the true identities of the Appellees. The District Clerk's notice

---

*Appellees*. In the absence of that clarity, this appellate matter is premature, as its factual predicates—namely, *the precise adverse, putative Appellee parties subject to any preclusive effect—remain undeveloped*. Proceeding without the proper identification and "privy" status of each Appellee could generate an advisory opinion, contrary to the Court's duty to adjudicate only ripe disputes. Consistent with *National Park Hospitality*, the District Court is required by Article III to forthwith conduct all proceedings necessary to determine that the alleged privies' legal and equitable positions with respect to the "core" Article III standing requirements have been fully crystallized. Absent a definitive showing that these unidentified parties possess cognizable "legally protected interests" in the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5, *creating actual genuine and concrete adversity*, the Court is required by *Steel Co.*, 523 U.S. at 93-95, that a stay is appropriate under the ripeness principles until each Appellee and their legal counsel immediately appears in the 25cv00613 (NDGA) District Court and declares under oath subject to the penalty of perjury (i) its legal or equitable status apropos the 02cv2219(SDNY) plaintiffs, (ii) its alleged "particularized, *concrete injury* in fact," (iii) to its alleged "**legally protected interest**" in the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5; and (iv) identify the alleged harm resulting from their failure to enforce and/or collect the Predatory Criminal Usury Debts *in violation of federal extortion, loan sharking, money laundering, and racketeering laws*, 18 USC §§ 1951(a), 1956-57, 1961(6)(B), and 1962(a-d), cf., *Grote*, 961 F.3d at 109-118, "fairly traceable to the [lawful] conduct of the Appellants herein." (paraphrased). *Lujan*, 504 U.S. at 560-61. Accordingly, pursuant to Article III constitutional requirements the District Court is required to immediately conduct the appellate status conference before being lawfully authorized to review or adjudicate the merits of the 25cv00613 (NDGA) appeal. *Steel Co.*, Id.

[4] "All this is to say that *further factual development* would "significantly advance our ability to deal with the legal issues presented" and would "aid us in their resolution." *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 82 (1978)." *Ohio Forestry Assn., Inc. v. Sierra Club*, 523 U.S. 726, 737 (1998).

(Dkt. 281 in 03-93031) lists a multitude of parties, including attorneys and entities whose precise legal relationship to the lead Appellee, Alpha Capital, AG, and to each other, remains undefined. Without clarity as to *who* the actual adverse parties are – those with a genuine stake in the outcome and who will be bound by a final judgment – the appellate process is fundamentally flawed at its inception. Meaningful briefing and adjudication are impossible when the very identities of the disputants remain ambiguous.

2. **Preclusive Effect of Rule 41(a)(2) Judgment**: The Dec. 20, 2007, Dkt. 90, Sand, J. dispositive Rule 41(a)(2) final judgment entered in 02cv2219 (SDNY) further compounds the ripeness deficiency. This final judgment, binding on the 02cv2219 plaintiffs and their privies under *Federated Department Stores, Inc. v. Moite*, 452 U.S. 394, 398, 401-02 (1981), legally preclude via res judicata and collateral estoppel the arguments, and claims of many, if not all, of the named Appellees in 25cv00613. Until the Court definitively identifies the "privies" of the 02cv2219 (SDNY) plaintiffs, and determines the scope of preclusion, it cannot ascertain whether the purported controversy before it is justiciable and ripe for appellate review. Proceeding with merits briefing before resolving this critical threshold issue risks ***a moot advisory opinion***, and the futile expenditure of judicial resources on a non-justiciable matter.

3. **Speculative and Abstract Controversy**: If, as Appellants contend, the Appellees' arguments and claims are indeed precluded by the Rule 41(a)(2) final judgment's res judicata preclusive effects, the current appeal transforms into a speculative and abstract exercise, devoid of a live Article III case or controversy with respect to the 02cv2219 (SDNY) plaintiffs and their "privies." Federated, 452 U.S. at 398, 401-02.[5] Federal courts are not empowered to issue advisory opinions on hypothetical legal questions, but are limited to resolving concrete disputes between adverse parties with a genuine stake in the outcome. To proceed in the absence of clearly defined parties and a concrete adverse controversy with respect to the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5 would be to invite such an advisory opinion, directly contravening the ripeness doctrine.

4. **Premature Adjudication and Judicial Inefficiency**: Adjudicating the merits of the appeal prior to resolving the fundamental questions of party identity and jurisdictional preclusion would be demonstrably premature and inefficient. *It would compel Appellants to brief issues against potentially undefined adversaries and require this Court to expend resources considering arguments without a clear understanding of the legal standing and preclusive status of the parties before it.* Such a course of action would not only be inefficient but also undermine the integrity and purpose of the appellate process.

5. **Lack of Defined "Legally Protected Interest"**: Ripeness is intrinsically linked to Article III standing, which necessitates a "**legally protected interest**" that has suffered a concrete injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 550, 560 (1992). Here, the Appellees' purported "legally protected interest" is purportedly founded upon the Predatory Criminal Usury Subject Matter (GX 1-4 and GX 5). However, Appellants have consistently argued that these predatory debt instruments are void ab initio due to criminal

---

[5] The lack of ***extant actual concrete adverseness*** between Appellants and Appellees regarding the Article III standing and jurisdictional issues actually and/or necessarily resolved, ***Federated***, Id., by the Dec. 20, 2007, Dkt. 90, Sand, J., 02cv2219 (SDNY) Rule 41(a)(2) voluntary final judgment, see 25cv00613 (NDGA) Dkt. 5-13 on pages 46-47.

usury, NYS Penal Law, § 190.40, the criminal usury law, a class E felony, federal securities violations, 15 USC §§ 77e, 77x, 78o(a)(1), and 78ff, and federal racketeering laws, 18 USC §§ 1951(a), 1956-57, 1961(6)(B), and 1962(a-d).
6. The Joint Stipulated Appellate Record, Dkt. 5 and Dkt. 9, establish this is indeed the case, no legally protected interest can arise from these predatory criminal usury unlawful debt instruments. Thus, until the Appellees' identities and their legal relationship to the dispositive Dec. 20, 2007, Dkt. 90, 02cv2219 (SDNY) Rule 41(a)(2) voluntary final judgment is clarified, this Court cannot definitively determine whether they possess a legally protected interest sufficient to render the appeal ripe for adjudication.

### C. Conclusion and Requested Relief

The current appeal, Case No. 25cv00613 (NDGA), is demonstrably unripe due to the unresolved uncertainties surrounding the actual legal identities and legal status of the Appellees, coupled with the preclusive effect of the prior 02cv2219 (SDNY) Rule 41(a)(2) final judgment. To rectify this fundamental jurisdictional defect and ensure the appeal is properly before this Court, Appellants respectfully request that this Honorable Court:

1. **Convene an Appellate Status Conference** forthwith to address the threshold Article III jurisdictional defects and clarify the identities of all real parties in interest Appellees and their privies.
2. **Issue a Show Cause Order** directing each Appellee to clarify their identity, legal status, and basis for asserting Article III standing, particularly in light of the Rule 41(a)(2) final judgment and the predatory nature of the underlying debt instruments.
3. **Stay the Briefing Schedule** announced by the District Clerk on March 17, 2025 (Dkt. 10), pending resolution of the jurisdictional issues and party clarification.

These *Article III "threshold" jurisdictional procedural measures* are essential to establish a proper jurisdictional basis for the appeal, conserve judicial resources, and uphold the constitutional limitations on federal court jurisdiction. Proceeding to merits briefing prior to resolving these fundamental ripeness concerns would be both legally unsound and a disservice to the principles of judicial economy and efficiency.

## III. REQUEST FOR APPELLATE STATUS CONFERENCE AND STAY OF BRIEFING SCHEDULE.

Appellants are respectfully, again (see their March 10, 2025, (17-1) Application for an Appellate Status Conference, attached hereto as Exhibit A), requesting that this Honorable District Court fulfill its procedural Article III constitutional duties and forthwith convene the requested appellate status conference to clarify the dispositive Article III standing and jurisdictional issues raised herein.

In light of the critical jurisdictional issues outlined above, the Appellants respectfully apply to the Court to stay the Briefing Schedule announced by the District Clerk in Dkt. 10, entered on the docket on March 17, 2025. This request is timely made and is not intended for delay, but rather to ensure that the Court and Appellants are fully informed as to the legal identities of the parties before the Court and the dispositive jurisdictional impediments to this appeal. Continuing with the briefing schedule prior to resolving these fundamental issues would be inefficient and potentially prejudicial to all parties.

Accordingly, Appellants respectfully request that the District Court hold in abeyance the briefing schedule established on March 17, 2025, as announced by the District Clerk in Dkt. 10, Exhibit B, attached hereto.

## IV. CONCLUSION

For the foregoing reasons, and in the interests of judicial economy and the sound administration of justice, Appellants Ulysses T. Ware and Group Management respectfully request that this Honorable Court:

1. **Convene an Appellate Status Conference** forthwith to address the threshold Article III jurisdictional defects and clarify the identities of all real parties in interest Appellees and their privies.
2. **Stay the Briefing Schedule** announced by the District Clerk on March 17, 2025 (Dkt. 10), pending resolution of the jurisdictional issues and party clarification.
3. **Direct each Appellee** to file a declaration under penalty of perjury, identifying: (i) the real party in interest they represent, (ii) their privy status, if any, to the 02cv2219 (SDNY) plaintiffs, and (iii) their basis for asserting Article III standing in this appeal, despite the preclusive effects of the Rule 41(a)(2) final judgment and the nature of the Predatory Criminal Usury Subject Matter.

Prompt action by this Court is essential to safeguard the integrity of these appellate proceedings and ensure that justice is administered effectively and in accordance with established constitutional and legal principles.

Respectfully submitted,

**The Office of Ulysses T. Ware**

/s/ Ulysses T. Ware
**Ulysses T. Ware**
Attorney in Fact for Appellants Group Management (a sole proprietorship) and Ulysses T. Ware

**Attachments (incorporated by reference as if attached hereto and made a part hereof, in heac verba):**

- **Exhibit A**—March 10, 2025, (17-1) Application for a Show Cause Article III Jurisdiction Order and Other Reliefs.
- **Exhibit B**—March 17, 2025, docketed Dkt. 10, 25cv00613 (NDGA) briefing schedule.

**Appellants' 28 USC § 1654 and 18 USC §§ 2071(a), (b) Declaration of filing and service**

# 18 USC §§ 2071(a), (b),  28 USC § 1654

# Pro Se Appellants' Declaration of Filing

I Ulysses T. Ware hereby this 18th day of March 2025, in Brooklyn, NY declare and certify under oath that I filed on March 18, 2025, via U.S. mail and via email to the Chambers of the Hon. District Judge Michael L. Brown pursuant to 18 USC §§ 2071(a), (b), this judicial public record, a judicial pleading, for filing and docketing in 25cv00613 (NDGA), and by 28 USC § 1654 pro se appellants.

Signed under oath subject to the penalty of perjury having personal knowledge of the facts, pursuant to 28 USC § 1746 this 18th day of March 2025, in Brooklyn, NY.

/s/ Ulysses T. Ware

**For Ulysses T. Ware, a natural person, d/b/a Group Management, *a sole proprietorship*, pursuant to 28 USC § 1654.**

Respectfully submitted,

**/s/ Ulysses T. Ware**
Ulysses T. Ware,
28 USC § 1654 Attorney-in-fact for Appellants, Group Management (a sole proprietorship) and Ulysses T. Ware

## End of document