FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 25 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

# (17-9) (Part 17-9)

# Filed on March 19, 2025, 11:10:24 AM

## Case No. 25cv00613 (NDGA) (MLB)

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

---

**In re:**
**GROUP MANAGEMENT CORP. (Debtor),**

**03-93031 (BC NDGA), Chapter 11**

[handwritten note: 17-9  3/5]

---

**On appeal in:**

**ULYSSES T. WARE and d/b/a GROUP MANAGEMENT, (a sole proprietorship),**

**Appellants,**

v.

**ALPHA CAPITAL, AG, et al.,** *Unregistered Broker-Dealers*,

**Appellees.**

---

**[Docket Text] March 19, 2025, (17-9) (Part 17-9) APPELLANTS' 28 USC § 1654 SUPPLEMENTAL MEMORANDUM OF LAW (#5) IN SUPPORT OF (17-1) MARCH 10, 2025, APPLICATION FOR ARTICLE III "THRESHOLD" JURISDICTIONAL SHOW CAUSE ORDER AND OTHER RELIEFS.**

Respectfully submitted,
/s/ Ulysses T. Ware
Ulysses T. Ware

*[signature]*

Page **1** of **12**
Wednesday, March 19, 2025
(17-9) (Part 17-9) re: Appellants' Supplemental Memorandum (letter-brief) (#5) in Support of March 10, 2025, (17-1) Application for a Show Cause Order and Other Reliefs.

28 USC § 1654 Attorney-in-fact for Appellants, Group Management (a sole proprietorship) and Ulysses T. Ware

cc:
The Office of the District Clerk (NDGA).
Executive Director Administrative Office of the U.S. Courts,
Office of the FBI Director,
via U.S. mail.

### 28 USC § 1654 Pro Se Appellants' Certificate of Filing

I, Ulysses T. Ware, attorney in fact for the Appellants, hereby certify under penalty of perjury that on this 19th day of March 2025, I caused to be served a true and correct copy of the foregoing Appellants' Memorandum of Law (#5) in Support of Appellants' March 10, 2025, (17-1) (Part 17-1) Show Cause Order, Appellate Status Conference, Stay of Briefing Schedule (Dkt. 10), and Other Reliefs via U.S. mail and electronic mail to the Chambers of the Hon. District Judge Michael L. Brown and to the Office of the District Clerk (NDGA), Executive Director Administrative Office of the U.S. Courts, and Office of the FBI Director.

Signed under oath subject to the penalty of perjury having personal knowledge of the facts, pursuant to 28 USC § 1746 this 19th day of March 2025, in Brooklyn, NY.

/s/ Ulysses T. Ware
*Ulysses 2. Ware*
For Ulysses T. Ware, a natural person, d/b/a Group Management, a sole proprietorship, pursuant to 28 USC § 1654.

# The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Wednesday, March 19, 2025, 11:10:24 AM

**Re:** **APPELLANTS' SUPPLEMENTAL MEMORANDUM OF LAW (#5)**

**Case Name:** Ulysses T. Ware and Group Management v. Alpha Capital, AG, et al.
**Case No.:** 1:25-cv-00613-MLB (NDGA)
**Filing Date:** March 19, 2025

> **RE:** **(17-9) (Part 17-9) Re: Appellants' Memorandum of Law (#5) in Support of Appellants' March 10, 2025, (17-1) (Part 17-1) Show Cause Order, Appellate Status Conference, Stay of Briefing Schedule (Dkt. 10), and Other Reliefs.**

To: The Honorable Michael L. Brown, United States District Judge, Northern District of Georgia.

From: Appellants Ulysses T. Ware, a natural person, and d/b/a Group Management, a sole proprietorship submitted pursuant to 28 USC § 1654.

**Date:** March 19, 2025

Respectfully submitted,

**The Office of Ulysses T. Ware**

By: /s/ Ulysses T. Ware
*Ulysses T. Ware*
Ulysses T. Ware
Attorney in Fact for Appellants Group Management (a sole proprietorship) and Ulysses T. Ware

# Appellants' Supplemental Memorandum of Law (#5)

## I. INTRODUCTION

Appellants, Ulysses T. Ware and Group Management, by and through their attorney in fact, Ulysses T. Ware, respectfully submits this Memorandum of Law (#5) in further support of their Application for a Show Cause Order (17-1), filed on March 10, 2025. This memorandum is additionally submitted in support of Appellants' request for an Appellate Status Conference, a Stay of the Briefing Schedule as previously established by the District Clerk (Dkt. 10), and other associated relief.

This memorandum will methodically address the critical deficiencies in Article III subject matter jurisdiction that fundamentally undermine the present appeal, 25cv00613 (NDGA). Specifically, we will elaborate upon the absence of Article III standing for the 02cv2219 (SDNY) plaintiffs in the present matter, 25cv00613 (NDGA), as well as in the antecedent proceedings, 02cv2219 (SDNY) and 03-93031 (BC NDGA), Chapter 11. Our analysis will rigorously examine the core components of Article III standing as defined by the Supreme Court, particularly in the context of the enforcement and/or collection[1] of the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5.

The factual and legal predicate for our position and argument in the 03-93031 bankruptcy court and on appeal in 25cv00613 is the irrefutable fact that the 02cv2219 (SDNY) plaintiffs, including Kilpatrick Townsend & Stockton LLP ("KTS") and their **unregistered broker-dealer clients**, lack the constitutionally mandated elements of Article III of the United States Constitution standing (lawful authority) to pursue claims—02cv2219 (SDNY) unlawful debt collection, and 03-93031 (BC NDGA), Dkt. 5-2, 5-4, 5-5, and 5-6, enforcement, related to the ***null and void ab initio Predatory Criminal Usury Subject Matter***, GX 1-4, and GX 5.

This ***fatal jurisdictional flaw and deficiency*** stem from the ***void ab initio*** nature of the underlying predatory criminal usury debt instruments (GX 1-4, and GX 5), (cf., NYS Penal Law, § 190.40, the criminal usury law, a class E felony), ***the self-inflicted nature*** of any alleged

---

[1] Cf., 18 USC §§ 1951(a), 1956-57, 1961(6)(B), and 1962(a-d), a pattern of racketeering activities committed by Appellees their agents (Appellees Grushko, Mittman, Rabinowitz, Morawetz, Baker & McKenzie, LLP, Mandala, Albaral, Malliband, Leghorn, KTS, its lawyers, Meir, Mills, Walker, and Kadaba; the Office of the U.S. Trustee, Region 21, and KTS' *unregistered broker-dealer clients*, see Dkt. 5-2, 5-13 on page 48, 5-16, and Dkt. 9 (25cv00613), before, during, and after the 03-93031 Chapter 11— that is, the ongoing and in current operation predatory Hobbs Act racketeering extortion and unlawful debt collection conspiracy, cf., *Grote,* 961 F.3d at 105, 109-119.

"particularize, concrete injury in fact," and the irrefutable complete absence of "a legally protected interest" in the Predatory Criminal Usury Debts, *Lujan*, 504 U.S. at 560-61, GX 1-4, and GX 5.[2]

## II. ARTICLE III STANDING DEFICIENCIES OF THE 02cv2219 (SDNY) PLAINTIFFS

The bedrock principle of Article III standing, as consistently articulated by the Supreme Court, requires that a litigant (Appellees) demonstrate an actual "live" (extant) case or controversy exists sufficient to invoke federal jurisdiction. This necessitates satisfying three core elements: (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the context of this appeal, the purported standing of the 02cv2219 (SDNY) plaintiffs, now Appellees, *crumbles like a house of cards under scrutiny when subjected to this established analytical framework*.

### A. Absence of an Article III Particularized and Concrete Injury in Fact

To establish the constitutionally required "injury in fact," the Supreme Court mandates that the Appellees' alleged injury as pleaded in the 02cv2219 (SDNY) complaint and in the 03-93031 Chapter 11, Dkt. 5-2, 5-4, 5-5, and 5-6 (25cv-00613) must be both "particularized" and "concrete." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). A "concrete" injury is one that is "real, and not abstract," while a "particularized" injury is one that "affect[s] the plaintiff in a **personal and individual way.**" *Id.* The alleged injury of the Appellees, predicated on the Hobbs Act extortionate enforcement and/or collection of the null and void ab initio Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5, egregiously failed, and currently fails to meet this minimum constitutional threshold.

1. **No Lawful Right or Entitlement to Enforce Void Ab Initio Predatory Criminal Usury Debt Obligations:** The linchpin of Appellees' purported injury is their claimed inability to enforce or collect on the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5.[3]

---

[2] See KTS' binding judicial admissions and confessions pleaded in Dkt. 5-2, 5-4, 5-5, and 5-6 regarding GX 1-4, and GX 5, *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) (parties or their lawyers' judicial admissions are binding and cannot be altered or changed in litigation), and *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (discussing binding judicial admissions in the bankruptcy context).

[3] See the Appellees' 02cv2219 (SDNY) complaint's manifestly risible claims—binding judicial admissions and confessions drafted by Appellee Kenneth A. Zitter, Esq. admitting his clients' knowing violations of federal criminal law, the Hobbs Act, 18 USC § 1951(a), and federal racketeering and loan sharking law, 18 USC §§ 1961(6)(B) and 1962(a-d); also see KTS' equally risible and incompetent judicial admissions and confessions of primary violations of the Hobbs Act and federal bankruptcy conspiracy, loan sharking, money laundering, and racketeering laws judicially admitted in Dkt. 5-4, 5-4, and 5-6, cf., with Zitter's binding judicial admissions under oath, in open court in *U.S. v. Ware*, 04cr1224 (SDNY), Dkt. 9 (F-10 and F-11) (Zitter testified under oath that KTS and its lawyers were "hired" by him and the 02cv2219 (SDNY) plaintiffs and their agent, Arie Rabinowitz, to obstruct, delay, hinder, *and prevent Appellant Group Management's exercise of its legal right to reorganize and rid itself of the Predatory Criminal Usury Subject Matter*, and to also seek to enforce, and seek collection of the Predatory Criminal Usury Subject

However, as meticulously detailed in prior submissions, these debt instruments are void ab initio under New York Penal Law § 190.40, the criminal usury law, a class E felony. Loans exceeding 25% annual interest [GX 1-4's interest rates exceeded +2,000% annually] are ***deemed criminally usurious and are void from their inception***. *Adar Bays, LLC v. GeneSYS ID*, **Inc.,** 28 F.4th 379 (2d Cir. 2022). Given this legal nullity, Appellees cannot possess an Article III constitutional lawful claim, right, or entitlement to enforce and/or collect these predatory criminal usury unlawful debt obligations. 18 USC § 1961(6)(B).

2. **Grote Precedent:** The Second Circuit in *United States v. Grote*, 961 F.3d 105, 109-19 (2d Cir. 2020), **affirmed a criminal conviction** and a massive forfeiture judgment of $3.5 billion for unlawful debt collection activities related to criminally usurious debts. This precedent underscores that ***KTS and its unregistered broker-dealer clients, jointly,[4]*** criminal attempts, see 02cv2219 (SDNY) lawsuit, and 03-93031 Chapter 11 (i.e., Dkt. 5-2, 5-4, 5-5, and 5-6) to enforce or collect on criminally usurious debts ***constitute treble (3x) and punitive damages (+$5.2225 billion) racketeering unlawful debt collection activity,[5] not a legally protected right.[6]*** Thus, any alleged "injury" stemming from Appellees KTS and their unregistered broker-dealer clients' inability to enforce and/or collect (Dkt. 5-2. 5-

---

Matter, GX 1-4, and GX 5, using the 03-93031 bankruptcy proceedings as unlawful debt collection activities, cf., *Grote,* 961 F.3d at 105, 109-19.

[4] Appellees KTS, Meir, Mills, Kadaba, Walker, Zitter, Rabinowitz, and their agents in fact, Appellees James H. Morawetz, Esq., Mary Ida Townson, Esq., R. Jeneane Treace, Esq., convicted felon Edward M. Grushko, Esq., Barbara R. Mittman, Esq., Lawrence B. Mandala, Esq., Robert H. Albaral, Esq., David J. Malliband, Esq., Thomas A. Leghorn, Esq., and Baker & McKenzie, LLP, all have joint and several racketeering, 18 USC § 1962(d), criminal exposure, culpability, and risk for their direct and/or indirect aiding, abetting, assisting, facilitating, and/or participation in the unregistered broker-dealers' commission of two or more acts of racketeering activities, or (ii) ***a single act of unlawful debt collection activity***, see Grote, Id. at 119.

[5] *U.S. v. Giovanelli*, 945 F.2d 479, 490 (2d Cir. 1991) ("Unlike a "pattern of racketeering activity" which requires proof of two or more predicate acts, **to satisfy RICO's "collection of unlawful debt" definition the government need only demonstrate a single collection**. *See United States v. Vastola,* 899 F.2d 211, 228 n. 21 (3d Cir.), *vacated and remanded on other grounds,* ___ U.S. ___, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990); *United States v. Pepe,* 747 F.2d 632, 645 (11th Cir. 1984). *Compare* 18 U.S.C. § 1961(5) *with* 18 U.S.C. § 1961(6). Here, the jury found that the defendant had engaged in the collection of unlawful debt from three individuals: John Marsala, Barbara Messina Kranz, and Larry Alfano."). (emphasis added). (emphasis added).

[6] KTS' primary liability insurance carrier(s) John Doe Insurance Companies (##1-5) are jointly and severally liable for bad faith refusal to comply with OCGA §§ 16-14-5(a)(xxxviii), 33-1-9, and 33-3-28(a)(1), (2), and disclosure to Appellants upon demand, all policy information—that is, conspiracy to commit insurance fraud in violation of the State Bar of GA's Rule 8.4 (fraud, deceit, misrepresentation, and deception), an asset of the Chapter 11 estate, 11 USC § 541(a)(2), required to be turned over immediately to Appellants and the District Court (NDGA) pursuant to 11 USC § 542(a), held in constructive trust held by fiduciaries of the Chapter 11 Debtor, see Sand, J., Aug. 13, 2003, Order (25cv00613 (NDGA) Dkt. 5-13 on pages 43-45), finding KTS' clients to be 15 USC 78p(b) statutory insiders of the Chapter 11 Debtor, Appellant Group Management, cf., *Roth*, 489 F.3d at 506-10 (all short-swing illegal insider-trading profits [+$522 million] must be disgorged back to the issuer (i.e., the Chapter 11 estate in 03-93031).

4, 5-5, and 5-6) void and criminally usurious debts, GX 1-4, legally is not, and ipso facto cannot be recognized as "a particularized, concrete injury in fact" for Article III constitutional standing purposes—that is, (A) the 02cv2219 (SDNY) lawsuit is null and void ab initio and moot, and (B) all aspects of Dkt. 5-1 to 5-10 entered in 03-93031 are null and void ab initio, moot, nullities, and ultra vires. See *Steel Co.,* 523 U.S. at 93-95.

3. **No Cognizable Harm Resulted from Appellants' Nonpayment of the Predatory Criminal Usury Subject Matter, GX 1-4:** The purported "injury" claimed by Appellees in the 02cv2219 (SDNY lawsuit, and in the Chapter 11, 03-93031, see Dkt. 5-1 to 5-10, is essentially the non-payment of predatory criminal usury unlawful debts, GX 1-4, that are legally unenforceable and criminally usurious. This legally cannot constitute a cognizable harm under Article III.[7] As the Supreme Court has articulated, a purely theoretical "interest" is insufficient to establish injury in fact. *Lujan*, 504 U.S. at 560. The Appellees' risible claim is, at best, a theoretical personal and petty grievance stemming from their inability to profit from their voluntary Hobbs Act predatory loan sharking, money laundering, and racketeering unlawful debt conspiracy criminal enterprise's unlawful scheme.

**B. Absence of the Constitutionally Required "Legally Protected Interest" in the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5.**

Article III standing requires an invasion of a "legally protected interest." *Lujan*, 504 U.S. at 560. Appellees' alleged "legally protected interest" is purportedly rooted in the Predatory Criminal Usury Subject Matter's unlawful debt enforcement and collection, see Dkt. 5-1 to 5-10 (25cv00613). However, this assertion is fundamentally flawed and fatal to Article III's constitutional standing requirement regarding the 02cv2219 (SDNY) lawsuit, and the Appellees' unlawful appearance in 03-93031, see Dkt. 5-2 on Apr. 10, 2003, by and through Appellees KTS, Meir, Mills, Walker, and Kadaba.

1. **GX 1-4 and GX 5's Unenforceability Under State and Federal Law:** The Appellees, *plaintiffs* in 02cv2219 (SDNY), and *petitioners* in 03-93031 (see Dkt. 5-2, 5-4, 5-5, and 5-6), see *Lujan*, 504 U.S. at 560-61 (the plaintiffs/petitioner's seeking judicial relief have the burden of proof and production to "affirmative establish standing) have not and cannot produce any statute, constitutional provision, or common law principle that recognizes a legally protected interest in enforcing or collecting criminally usurious contracts.[8]
2. To the contrary, ***both state and federal law actively prohibit and criminalize such activity***. New York Penal Law § 190.40, alongside federal racketeering statutes (18 U.S.C. §§

---

[7] See NYS Penal Law, § 190.40, the criminal usury law, a class E felony—GX 1-4 are null and **void ab initio**, **unenforceable**, and **uncollectible** in all federal and/or state courts, and lack preclusive effect, "a nullity." *Steel Co.,* Id.

[8] There is no proof in the Joint Stipulated Appellate Record, Dkt. 5, and Dkt. 9, provided by KTS or its unregistered broker-dealer clients, introduced in the 03-93031 bankruptcy court, and admitted into evidence that "affirmatively established" all elements of Article III constitutional standing apropos GX 1-4, and GX 5's enforcement or collection. *Lujan,* Id., *Steel Co.,* Id. at 93-95.

1951(a), 1961(6)(B), 1962(a-d)), explicitly criminally, and harshly condemn and penalize predatory lending and the collection of usurious debts.

3. **KTS' Clients' Unregistered Broker-Dealer Status:** Further compounding the absence of a legally protected interest is the regulatory certified indisputable fact that Appellee KTS' clients have been certified by FINRA on May 17, 2021 (see Dkt. 5-13 on page 48) as unregistered broker-dealers. This unregistered status renders any contracts formed or performed in violation of registration requirements void ab initio under 15 U.S.C. § 78cc(b). This *statutory invalidity* further eviscerates any claim to a legally protected interest in the Predatory Criminal Usury Subject Matter.

## C. Self-Inflicted Injury and Lack of Traceability

Even if, arguendo, Appellees could demonstrate a concrete injury, that injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." ***Simon v. Eastern Ky. Welfare Rights Org.***, 426 U.S. 26, 41-42 (1976). Here, any alleged injury is demonstrably self-inflicted by Appellees' own criminal misconduct, and not fairly traceable to any lawful conduct by the Appellants' refusal to *criminally violate* the federal securities and racketeering laws and issue bogus and fraudulent Rule 144(k) legal opinions of KTS' unregistered broker-dealer clients—15 USC 77b(a)(11) statutory underwriters, affiliates, fiduciaries, and 15 USC § 78p(b) *statutory insiders* of the Chapter 11 Debtor (e.g., see Sand, J. Aug. 13, 2003, court order, Dkt. 5-13 on pages 43-45, ruling that KTS' *unregistered broker-dealer clients* also had previously lied, committed perjury, and committed fraud on the 02cv2219 (SDNY) and 03-93031 (BC NDGA) Chapter 11 federal courts regarding their "beneficial ownership" in the Chapter 11 Debtor's equity securities)[9] to enable a criminal unregistered public offering of the Chapter 11 Debtor's unregistered securities in violation of 15 USC §§ 77e, 77x, 78o(a)(1), 78p(b), 78ff, and SEC Release 33-7190 n. 17 (1995), cf., ***Berckeley***, 455 F.3d at 220 (citing SEC Release 33-7190), and 18 USC §§ 2, 152, 157, 371, 924(a), 1341, 1343, 1344, 1503, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d).

1. **Appellees' Voluntary Participation in the Hobbs Act Loan Sharking, Money Laundering, and Unlawful Debt Collection Criminal Enterprise's Unlawful Scheme:** Appellees knowingly, willfully, and voluntarily since on or about 2001 continuing without interruption to the present (2025) have engaged in the predatory criminal usury scheme and the associated unlawful debt collection activities described herein with respect to "a good few hundred" predatory unlawful debt transactions according to the sworn in open court testimony of Appellee Arie Rabinowitz in Nov. 2007.[10]

---

[9] Pursuant to 11 USC §§ 541(a)(1), 542(a), and 15 USC § 78p(b), see ***Roth v. Jennings***, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.) each of judicially ruled by Judge Sand's final order, (25cv00613 Dkt. 5-13 on pages 43-45) KTS' statutory insider clients, see Dkt. 5-2, as a matter of law, *are required to right now during this appeal proceeding turnover +$522 million in illegal strict-liability short swing profits to the District Court (NDGA) for administration to the lawful creditors in 03-93031*.

[10] See 25cv00613 Dkt. 5-13 on page 52.

2. Their criminal culpability and predicament is a direct consequence of their own personal choices and actions, not of any unlawful conduct by Appellants. To the extent that Appellees have incurred litigation expenses or suffered any other form of harm, such harm is a direct result of their own voluntary participation in the activities of the Hobbs Act predatory loan sharking, money laundering, and unlawful debt collection criminal illegal enterprise's pattern of racketeering activities. See Id. Dkt. 5-13 on page 60.
3. **No Traceability to Lawful Conduct:** Appellants' actions, specifically their refusal to facilitate, assist, enable, and abet unlawful securities transactions and their challenge to the enforcement and collectability of void and criminally usurious debts,[11] constitute lawful conduct protected under federal and state law. Any "injury" Appellees claim is not fairly traceable to this lawful resistance but rather to the inherent risks and consequences of their own illegal scheme.

### D. Lack of Redressability

The final element of Article III standing requires that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. In this instance, the relief sought by Appellees—enforcement and collection of the Predatory Criminal Usury Subject Matter—is legally impermissible and constitutionally infirm.

1. **Federal Courts Cannot Validate Illegal Obligations:** A federal court cannot issue an order that would effectively validate and enforce criminally usurious and void ab initio debt instruments. To do so would be to contravene established public policy, state usury laws,[12] and federal racketeering statutes. Consequently, no favorable decision from this Court could redress Appellees' purported injury because the very "relief" they seek is unlawful.[13]

---

[11] See 03-93031 Dkt. 5, (25cv00613 Dkt. 5-17 on page 2) Appellants' motion to reject GX 1-4, and GX 5 as unlawful executory contracts pursuant to 11 USC § 365(a)(2). *In re Venture Mortgage Fund, L.P.*, 282 F.3d 185 (2d Cir. 2002) (Criminal usury debts [GX 1-4] are *void ab initio* and *not enforceable* in [the 03-93031 Chapter 11] bankruptcy). (emphasis added).

[12] "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55 (1979).

[13] The Second Circuit's decision in *In re Venture Mortgage Fund, L.P.,* 282 F.3d 185 (2d Cir. 2002) establishes a firm legal precedent regarding the unenforceability of criminally usurious debts in bankruptcy proceedings. Under New York Penal Law § 190.40, any loan, GX 1-4, carrying an interest rate exceeding 25% per annum (+2,000%) is classified as criminally usurious. **Such contracts, GX 1-4, are not only unenforceable but are also deemed void ab initio as a matter of public policy**. Because these debts are *unlawful from their inception, they cannot create a legally cognizable claim in any court, including a bankruptcy proceeding*. Recognizing the equitable nature of bankruptcy courts, the Second Circuit ruled that a bankruptcy court [03-93031 BC NDGA] cannot validate [Dkt. 28, 03-93031] or enforce claims [25cv00613 Dkt. 5-7, 5-8, 5-9, and 5-10] arising from illegal agreements. Since criminally usurious debts *are considered legally nonexistent*, creditors [Appellee KTS' unregistered broker-dealer clients] **attempting to collect** on such debts [Dkt. 5-1 to 5-6] lack standing to assert their claims. A void contract

2. **Voidness Precludes Redress:** The void ab initio nature of the Predatory Criminal Usury Subject Matter renders any attempt to redress Appellees' alleged injury legally futile. The Court cannot compel Appellants to honor obligations that are deemed nullities under the law.

### III. LACK OF RIPENESS OF THE 25cv00613 (NDGA) APPEAL

Beyond the fundamental deficiencies in Article III standing, the present 25cv00613 (NDGA) appeal also suffers from a critical lack of ripeness. Ripeness, as *a core component* of justiciability, Article III jurisdiction, ensures that federal courts do not issue advisory, ultra vires, and moot opinions or become entangled in disputes that are not yet sufficiently defined or concrete. *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003); cf. *Steel Co.*, 523 U.S. at 94-95 (regarding advisory opinions by federal courts).

### A. Uncertain Appellee Identities and Privy Status of all Appellees is a "Threshold" Jurisdiction Factual Matter that Must be Resolved by the District Court Forthwith "First" Before Proceeding to the Merits of the Appeal. Steel Co., Id.

A significant impediment to ripeness in this appeal is the unresolved uncertainty surrounding the exact identities and legal status of the Appellees. As detailed in Appellants' Memorandum Letter Brief (#4) (17-8), the District Clerk's notice (Dkt. 281 in 03-93031) lists a multitude of parties, including attorneys, insurance companies, and entities, having criminal liability and culpability for unlawful debt collection activities associated with GX 1-4 and GX 5, whose precise legal relationship to the lead Appellee, Alpha Capital, AG, and the 02cv2219 (SDNY) plaintiffs—who are subject to Judge Sand's Dec. 20, 2007, Dkt. 90, voluntary Rule 41(a)(2) final judgment's preclusive effects of res judicata and collateral estoppel, and in privy with and to each other, *remains unknown and undefined*.

1. **Need for Clarification of Real Parties in Interest Legal Identities and Legal Status Apropos Judge Sand's Rule 41(a)(2) Final Judgment:** To competently and timely prepare Appellants' opening brief, it is imperative that this Court and the Appellants know

---

confers no rights upon a creditor, and courts cannot be used as instruments to legitimize or enforce obligations that violate fundamental public policy. Furthermore, the ruling in *Venture Mortgage* reinforces the well-established doctrine that *federal courts must apply state usury laws when evaluating the validity of claims in bankruptcy* [03-93031]. This aligns with the Supreme Court's decision in *Butner v. United States*, 440 U.S. 48, 55 (1979), which holds that state law governs property rights in bankruptcy unless federal law dictates otherwise. Because New York Penal Law, § 190.40, the criminal usury law, a class E felony, explicitly declares criminally usurious debts void ab initio, federal courts [02cv2219 (SDNY), 04cr1224 (SDNY), and 25cv00613 (NDGA)]—including bankruptcy courts [03-93031]—must adhere to this principle and *deny recognition of such claims*. Thus, the Second Circuit's ruling in *Venture Mortgage* confirms that criminally usurious debts, GX 1-4, *hold no legal weight and cannot be enforced or recognized in any bankruptcy case*, reinforcing the overriding public policy interest in preventing illegal lending practices from being legitimized through judicial proceedings.

Page **10** of **12**
Wednesday, March 19, 2025
(17-9) (Part 17-9) re: Appellants' Supplemental Memorandum (letter-brief) (#5) in Support of March 10, 2025, (17-1) Application for a Show Cause Order and Other Reliefs.

the exact legal identities of all adverse real parties in interest and their "privies." As ***Federated Dep't Stores, Inc. v. Moite***, 452 U.S. 394, 398, 401-02 (1981), definitively establishes, ***a final judgment in this 25cv00613 (NDGA) appeal will bind not only the named Appellees but also their "privies."*** Thus, the exact legal identities and status of all Appellees (including John Doe Insurance Companies ##1-5 and their insureds), and their "privies" must be completely and fully known by the Appellants and the District Court "first" before proceedings to the preparation and merits of the pending appeal. ***Steel Co.***, Id.

2. **Preclusive Effect of 02cv2219 (SDNY) Judgment:** The Dec. 20, 2007, Dkt. 90, voluntary Rule 41(a)(2) final judgment in 02cv2219 (SDNY), entered by Judge Sand, further complicates the matter. This judgment, binding on the 02cv2219 plaintiffs and their privies, carries profound res judicata and collateral estoppel preclusive effects. The present appeal is jurisdictionally infirm absent clarification of the parties and their "privy" status due to this preclusive effect.[14]
3. **Procedural Anarchy and Undermined Integrity:** The failure to immediately resolve these fundamental "threshold" jurisdictional issues leaves both the Court, the Appellants, and the putative Appellees in a state of uncertainty and confusion. This avoidable ambiguity undermines the integrity of the appellate process and necessitates immediate judicial intervention to identify all adverse real parties in interest and their "privies."

## IV. REQUEST FOR RELIEF

For the aforementioned reasons, and in the interest of judicial economy and the sound administration of justice, Appellants respectfully request that this Honorable Court forthwith grant the following relief:

1. **Convene an Appellate Status Conference:** Forthwith convene an Appellate Status Conference to address the threshold Article III jurisdictional defects and clarify the identities of all real parties in interest Appellees and their privies.
2. **Issue a Show Cause Order:** Issue a Show Cause Order directing each Appellee to clarify their identity, legal status, and basis for asserting Article III standing, particularly in light of the Rule 41(a)(2) final judgment and the predatory nature of the underlying debt instruments, and file under oath subject to the penalty of perjury a District Court (NDGA), ABA, and State Bar of Georgia, Rules 3.3 and 8.4 Declaration with respect to Dkt. 5-1 to 5-10, Dkt. 5-16, and Dkt. 9 (25cv00613) (NDGA).
3. **Stay the Briefing Schedule:** Stay the Briefing Schedule announced by the District Clerk on March 17, 2025 (Dkt. 10), pending resolution of the jurisdictional issues and party clarification.

## V. CONCLUSION

---

[14] See 25cv00613 (NDGA) Dkt. 5-13 on pages 46-48.

The absence of Article III standing and the lack of ripeness in the present appeal are not mere procedural technicalities but fundamental jurisdictional defects that preclude this Court from proceeding to the merits. The Appellees lack a concrete injury in fact, a legally protected interest, and redressability, all of which are constitutionally mandated for Article III standing. Furthermore, the uncertainty surrounding the identities of the real parties in interest and their privy status renders the appeal unripe for adjudication.

To safeguard the integrity of the judicial process and uphold the constitutional limitations on federal court jurisdiction, Appellants respectfully implore this Honorable Court to grant the requested relief and issue the Show Cause Order, convene an Appellate Status Conference, and stay the briefing schedule pending resolution of these critical jurisdictional issues.

Respectfully submitted,

**The Office of Ulysses T. Ware**

By: /s/ Ulysses T. Ware
*Ulysses J. Ware*
Ulysses T. Ware
Attorney in Fact for Appellants Group Management (a sole proprietorship) and Ulysses T. Ware

# End of document