FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 25 2025

KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**(17-10) (Part 17-10)**

# Filed on March 20, 2025, 11:06:51 AM

# Case No. 25cv00613 (NDGA) (MLB)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

---

In re:
**GROUP MANAGEMENT CORP. (Debtor),**

03-93031 (BC NDGA), Chapter 11

*17-10  4/5*

---

**On appeal in:**

**ULYSSES T. WARE and d/b/a GROUP MANAGEMENT, (a sole proprietorship),**

Appellants,

v.

**ALPHA CAPITAL, AG, et al., *Predatory Unregistered Broker-Dealers,***

Appellees.

---

**[Docket Text] March 20, 2025, (17-10) (Part 17-9) APPELLANTS' 28 USC § 1654 SUPPLEMENTAL MEMORANDUM OF LAW (#6) IN SUPPORT OF Dkt. 12, (17-1) MARCH 10, 2025, APPLICATION FOR ARTICLE III "THRESHOLD" JURISDICTIONAL SHOW CAUSE ORDER AND OTHER RELIEFS—THE HOBBS ACT CRIMINAL LIABILITY AND CULPABILITY OF KTS, ET AL.**

Respectfully submitted,
/s/ Ulysses T. Ware
Ulysses T. Ware

28 USC § 1654 Attorney-in-fact for Appellants, Group Management (a sole proprietorship) and Ulysses T. Ware

cc:
The Office of the District Clerk (NDGA).
Executive Director Administrative Office of the U.S. Courts,
Office of the FBI Director,
via U.S. mail.

### 28 USC § 1654 Pro Se Appellants' Certificate of Filing

I, Ulysses T. Ware, attorney in fact for the Appellants, hereby certify under penalty of perjury that on this 20th day of March 2025, I caused to be served a true and correct copy of the foregoing Appellants' Memorandum of Law (#6) in Support of Dkt. 12, Appellants' March 10, 2025, (17-1) (Part 17-1) Show Cause Order, Appellate Status Conference, Stay of Briefing Schedule (Dkt. 10), and Other Reliefs via U.S. mail and electronic mail to the Chambers of the Hon. District Judge Michael L. Brown and to the Office of the District Clerk (NDGA), Executive Director Administrative Office of the U.S. Courts, and Office of the FBI Director.

Signed under oath subject to the penalty of perjury having personal knowledge of the facts, pursuant to 28 USC § 1746 this 20th day of March 2025, in Brooklyn, NY.

/s/ Ulysses T. Ware
*Ulysses Q. Ware*
For Ulysses T. Ware, a natural person, d/b/a Group Management, a sole proprietorship, pursuant to 28 USC § 1654.

# Table of Contents

I. INTRODUCTION ........................................................................................................................ 4

II. DETAILED ANALYSIS OF PREDATORY CRIMINAL CULPABILITY AND LIABILITY OF KTS, ITS PRIVIES, AGENTS, PROXIES, SURROGATES, ALTER-EGOS, ALL THOSE IN ACTIVE CONCERT THEREWITH, AND ITS UNREGISTERED BROKER-DEALER CLIENTS. ........................................................................................................................................ 5

   A. Predatory Hobbs Act Extortion (18 U.S.C. § 1951(a)): Leveraging the Bankruptcy Court for Coercive Unlawful Debt Collection. ........................................................................................... 5

   B. Predatory Racketeering Bankruptcy Crimes (18 U.S.C. §§ 1961(6)(B) & 1962(a)-(d)): Operating a RICO Enterprise Engaged in Unlawful Debt Collection and Fraud. ...................... 9

   C. Predatory Bankruptcy Fraud (11 U.S.C. §§ 152 & 157): A Scheme to Defraud the Bankruptcy Court and Creditors, Dkt. 5-1 to 5-6. ................................................................... 11

   D. Short-Swing Insider Trading (15 U.S.C. § 78p(b)): Exploitation of Confidential Information for Illicit Profit. See Dkt. 5-13 on pages 43-45. ........................................................................ 13

   E. Predatory Egregious Ethical Violations (Georgia Rules of Professional Conduct 3.3 & 8.4): Profound Breach of Duty of Candor and Professional Responsibility ..................................... 13

   F. Predatory Unlawful Debt Collection, 18 USC 1961(6)(B), Short-Swing Insider Trading (15 U.S.C. § 78p(b)): Predatory Illicit Profits at the Expense of the Chapter 11 Estate. .............. 15

   G. Predatory Egregious Ethical Violations (Georgia Rules of Professional Conduct 3.3 & 8.4): Profound Breach of Duty of Candor and Professional Misconduct ........................................ 15

III. CONCLUSION ...................................................................................................................... 17

IV.    28 USC § 1654 Pro Se Appellants' Certificate of Service and Filing. ............................ 18

End of document ........................................................................................................................... 18

## APPELLANTS' SUPPLEMENTAL MEMORANDUM
## OF LAW LETTER-BRIEF (#6)

# I. INTRODUCTION

Appellants, Ulysses T. Ware and Group Management, by and through their attorney in fact, Ulysses T. Ware, respectfully submit this Memorandum of Law (#6) to provide a more exhaustive, detailed, and factually grounded analysis of the criminal culpability and liability of Appellee Kilpatrick Townsend & Stockton LLP ("KTS") and each of its unregistered broker-dealer clients. This expanded memorandum further underscores the profoundly egregious nature of the Appellees' documented misconduct and compellingly demonstrates the urgent necessity for this Honorable Court to issue the previously requested Dkt. 12, Application for a Show Cause Order (17-1), convene an Appellate Status Conference, and stay the briefing schedule (Dkt. 10).

Building upon the foundation laid in prior submissions, see Dkt. 12 (25cv00613 (NDGA)), this memorandum will present a meticulously detailed and fact-specific exposition of ***the extensive and ongoing criminal conduc***t engaged in by KTS, its unregistered broker-dealer clients, their agents, proxies, surrogates, alter-egos, and all those in active concert therewith, jointly, an illegal association in fact as defined in 18 USC § 1961(4), a continuing criminal enterprise, hereinafter, ("**KTS**").

Specifically, we will delve into the factual and legal predicates for their, KTS', willful and knowing numerous violations of federal racketeering statutes, criminal usury laws, money laundering prohibitions, mail and wire fraud, extortion, Hobbs Act, conspiracy, bankruptcy fraud conspiracy, and obstruction of justice statutes. Our detailed and thorough analysis will draw extensively from the irrefutable evidentiary record before this Court, including the Joint Stipulated Appellate Record (Dkts. 5 and 9), the "Zitter Confessions" (Exhibit F-11), and the "smoking gun" KTS Memo (Exhibit F-10), all of which provide compelling and unequivocal proof of Appellees' racketeering criminal culpability and warrant immediate judicial intervention.[1]

---

[1] The detailed factual and legal exposition set forth herein builds upon prior submissions, including Appellants' original Application for a Show Cause Order (17-1), Dkt. 12, Supplemental Memoranda (17-4, 17-5, 17-6, 17-8, and 17-9), and related filings (17-2, 17-3, and 17-7). These filings collectively document a pervasive pattern of egregious misconduct by Appellee Kilpatrick Townsend & Stockton LLP ("KTS"), its certified unregistered broker-dealer clients, and other parties acting in concert, amounting to an illegal association-in-fact racketeering enterprise under 18 U.S.C. §1961(4). See specifically, Dkt. 9, "Zitter Confessions" (Exhibit F-11) and the "KTS Memo" (Exhibit F-10), unequivocally evidencing willful violations of federal racketeering statutes, criminal usury prohibitions (N.Y. Penal Law §190.40), and securities laws (15 U.S.C. §§78o(a)(1), 78cc(b)), which compel immediate judicial intervention to preserve the integrity of this Honorable Court and prevent ongoing irreparable harm.

## II. DETAILED ANALYSIS OF PREDATORY CRIMINAL CULPABILITY AND LIABILITY OF KTS, ITS PRIVIES, AGENTS, PROXIES, SURROGATES, ALTER-EGOS, ALL THOSE IN ACTIVE CONCERT THEREWITH, AND ITS UNREGISTERED BROKER-DEALER CLIENTS.

The pervasive criminal culpability and liability of KTS and its ***unregistered broker-dealer clients*** stem directly from their meticulously planned and relentlessly executed scheme to unlawfully enforce and collect on Predatory Criminal Usury Subject Matter debt instruments, GX 1-4 and GX 5 in violation of federal racketeering laws, 18 USC 1951(a), 1961(6)(B), and 1962(a-d).[2] This unlawful enterprise, characterized by brazen disregard for legal and ethical norms, constitutes a constellation of federal criminal violations, each of which will be analyzed in granular detail below.

### A. Predatory Hobbs Act Extortion (18 U.S.C. § 1951(a)): Leveraging the Bankruptcy Court for Coercive Unlawful Debt Collection.

Appellees, KTS, its agents, and its unregistered broker-dealer clients, jointly and severally, are subject to criminal culpability and liability for Hobbs Act extortion, a felony offense under 18 U.S.C. §§ 2, 152, 157, 371, 924(c), 1201-02, and 1951(a).[3] The Hobbs Act, rigorously interpreted and enforced by federal courts, proscribes extortion, defining it as "the obtaining of property [Appellant Group Management's free-trading equity securities] from another [Appellants Ulysses T. Ware and Group Management], with his consent, ***induced by wrongful use of actual or***

---

[2] See Dkt. 9 (F-10) and (F-11) for Appellee Kenneth A. Zitter, Esq.'s binding judicial admissions and confessions in open court while testifying for the government in *U.S. v. Ware*, 04cr1224 (SDNY)—that is, Zitter while under brutal cross-examination by Appellant Ware in tears and under emotional distress ***after being exposed for lying and committing perjury*** confessed and admitted that he "hired" KTS and Appellee Dennis S. Meir, Esq. to appear in, delay, hinder, and obstruct Appellant Group Management's 03-93031 Chapter 11 reorganization to rid itself of the predatory criminal usury debts, and to enable "my clients" (the 02cv2219 (SDNY) plaintiffs), cf., Dkt. 5-2 (KTS' fraudulent entry of appearance in 03-93031 Chapter 11 on behalf of Zitter's ***unregistered broker-dealer*** clients) to continue their dangerous Hobbs Act unlawful debt collection activities against Appellant concerning the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5, in violation of 18 USC §§ 2, 152, 157, 1341, 1343, 1344, 1503, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d), a pattern of racketeering unlawful debt collection activities. See *Grote*, 961 F.3d at 105, 109-119.

[3] See indisputable proof, clear and convincing evidence, 25cv00613 Dkt. 5-13 on pages 55-60 (armed, unlawful, forced break-in of Appellant Ware's personal residence in Brooklyn, NY, and law office in Atlanta, GA by U.S. Marshals or persons impersonating U.S. Marshals, under the command and ***control of the Appellees***, conducting armed and dangerous Hobbs Act unlawful debt racketeering loan sharking, money laundering, and unlawful debt collection activities regarding GX 1-4, and GX 5 on behalf of and as agents in fact for the Appellees and KTS).

Page **5** of **18**

Thursday, March 20, 2025

(17-10) (part 17-10) re: Appellants' Supplemental Memorandum of Law (#6) re: Criminal liability and culpability of KTS, its clients, and their privies.

***threatened force, violence, or fear, or under color of official right***." *Id.* In this matter, *Appellees' pervasive and current* ongoing criminal misconduct squarely falls within the ambit of Hobbs Act proscriptions.[4]

1. **The Criminal and Wrongful Exploitation of the 03-93031 Chapter 11 Bankruptcy Court "Under Color of Official Right" as an Instrument of Predatory Coercion:** Appellees, acting as officers of the court and wielding the perceived legitimacy and authority of the judicial process, strategically and wrongfully exploited the Bankruptcy Court as a coercive instrument to extract unlawful payments and compel stock relinquishment from Appellants.[5] This deliberate manipulation of the judicial system constitutes a blatant abuse of "color of official right," a key element of Hobbs Act extortion. See *Evans v. United States*, 504 U.S. 255, 268 (1992) (defining "color of official right" in the context of Hobbs Act extortion). The wrongful nature of this exploitation is underscored by the fact that Appellees'(officers of the court) actions were predicated upon predatory criminal usury debts, GX 1-4, undeniably null and void ab initio and criminally usurious. See NYS Penal Law, § 190.40, the criminal usury law, a class E felony:

    a) **Zitter's Explicit Judicial Admissions of Predatory "Unlawful Debt Collection Activity" within the 03-93031 Bankruptcy Court, Dkt. 5-1 to 5-6 (see Dkt. 9 (F-10 and F-11)):** The Nov. 2007 sworn testimony of Appellee Kenneth A. Zitter, Esq. in the moot and void ab initio *U.S. v. Ware*, 04cr1224 (SDNY) proceedings[6] provides direct and irrefutable evidence of this wrongful exploitation of the judicial process by officers of the court—that is, a fraud on the court. Zitter explicitly admitted under oath that Kilpatrick Townsend & Stockton LLP, and specifically Dennis S. Meir, Esq., were "hired" by Zitter and KTS clients to represent them in the 03-93031 Bankruptcy Case for the express purpose of pursuing Hobbs Act

---

[4] See 25cv00613 Dkt. 5-13 on pages 40-60; 88-96; and 125-185.

[5] See Id. Dkt. 9 (F-10 and F-11) Zitter's Nov. 2007 judicial admissions and confessions regarding KTS in open court while testifying and knowingly committing perjury for the Government, Rabinowitz, LH Financial Services, and the unregistered broker-dealers in *U.S. v. Ware*, 04cr1224 (SDNY).

[6] Moot, null and void ab initio, and extra-judicial Jim Crow racially-motivated retaliatory predatory unlawful debt collection activities in violation of the Hobbs Act (18 USC § 1951(a)), and racketeering loan sharking federal laws, 18 USC §§ 2, 152, 157, 371, 924(c), 1201-02, 1503, 1956-57, 1961(6)(B) and 1962(a-d). See 25cv00613 (NDGA) Dkt. 5-13 on pages 40-60. Cf., Id. on page 58 (AUSA Alexander H. Southwell's admission and confession of the dangerous Hobbs Act Sept. 1, 2004, illegal arrest, search, seizure, assault, batter, attempted armed robbery, and harassment of Appellant Ware by four heavily armed persons hired to impersonate U.S. Marshals undertaking dangerous (armed) predatory unlawful debt collection activities in Atlanta, GA (see Id. on page 57) in furtherance of the Appellees' loan sharking racketeering criminal enterprise's unlawful activities—that is, a "single instance of unlawful debt collection activity" on Sept. 1, 2004, in Atlanta, GA, and again on Sept. 12, 2024, in Brooklyn, NY (see Id. on pages 54-56) renders all Appellees and their "privies" named in this appeal liable under 18 USC § 1962(d) for treble (3x) and punitive damages under 18 USC §1964(c), the sum certain amount of $5.2225 billion, jointly and severally, personally and individually. *Grote*, 961 F.3d at 119.

>>extortion and 18 U.S.C. §1961(6)(B) 'collection activity' against Group Management Corp. (Exhibit F-11, Docket 298, Page 7, ¶ 1). This judicial confession, extracted under rigorous cross-examination by Appellant Ware, constitutes a watershed evidentiary admission of Hobbs Act extortionate intent and purpose.

2. **Predatory Coercion and Unlawful Extraction Predicated Upon Criminally Usurious Debts (GX 1-4):** The foundation of Appellees' predatory and coercive criminal scheme rested upon the Predatory Criminal Usury Subject Matter debts, GX 1-4, which are undisputedly null and void ab initio, unenforceable, uncollectible, and criminally usurious under New York Penal Law § 190.40.[7] Utilizing the 03-93031 Bankruptcy Court to enforce and/or collect these legally null and void obligations constitutes a profoundly wrongful and predatory unlawful act, directly contravening established legal and ethical principles.

   a) **Predatory Criminally Usurious Nature of GX 1-4:** As meticulously detailed in prior memoranda, Dkt. 12 (17-1), GX 1-4 bear interest rates far exceeding the 25% statutory cap (+2,000%) under New York law, rendering them criminally usurious ***and void from their inception***, Feb. 2001.[8] This fundamental illegality vitiates any

---

[7] *Adar Bays, LLC v. GeneSYS ID, Inc.,* 28 F.4d 379 (2d Cir. 2022).

[8] See KTS' Hobbs Act unlawful debt collection activity, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d), in 03-93031, 18 USC §§ 152 and 157, conspiracy to commit bankruptcy fraud on the court, the Appellants, and other creditors, in violation of Bankr. Rule 9011(b)(1-4) and 28 USC § 1927 binding judicial admissions pleaded in Dkt. 5-5 on page 1, ¶ 2 ("Movants [KTS' unregistered broker-dealer client, who are also 15 USC § 78p(b) ***statutory insiders*** of the Debtors, (see Sand, J., Dkt. 5-13 on pages 43-47, Aug. 13, 2003, Dkt. 65, ***final order*** finding the KTS' clients (predators) to be the "***beneficial owners of more than 9.9% of GMC's stock***" which triggered disgorgement (11 USC § 542(a)) of +$522 million in strict-liability insider-trading profits back to the 03-93031 Chapter 11 estate, see *Roth v. Jennings*, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.), and therefore as a matter of law ***KTS' clients (predators) cannot be creditors***] are creditors of the Debtor. ***On or about February 2, 2001***, Movants [KTS' clients (predators), the unregistered broker-dealers] purchased notes [GX 1-4] from the Debtor [via GX 5] in an aggregate principal amount in excess of $1 million. ***The Debtor [Appellant Group Management] has failed to satisfy its obligations under the [predatory criminal usury, null and void ab initio] notes [GX 1-4] and related [null and void ab initio, see 15 USC § 78cc(b)] subscription agreements [GX 5]***. "); page 3, ¶5 ("Plainly, this case was not commenced for the purpose of reorganization [Appellants filed the Chapter 11 to rid Group Management of the predators and terminate their daily Hobbs Act threats of violence they stated that they would and were going to commit against Appellant Ware unless Appellant Ware agreed to criminally violate the federal securities and racketeering laws, and draft and issue bogus and fraudulent Rule 144(k) legal opinions to the predators to enable an illegal unregistered public offering of Group Management's equity securities to satisfy the predatory criminal usury null and void ab initio unlawful debt, GX 1-4], but to evade compliance with the [null and void ab initio, and moot] Order and Judgment and Contempt Order of the United States District Court for the Southern District of New York [02cv2219 (SDNY), Sand, J., deceased]. Consequently, pursuant to 11 U.S.C. § 1112(b) and 11 U.S.C. § 305(a), this Court should dismiss the Debtor's Chapter 11 case because it has been filed in bad faith.").

>   legitimate basis for Appellees to utilize the Bankruptcy Court for their enforcement
>   or collection.
>
> 3. **The Predators' Inducement of Fear and Threat of Economic Ruin to Coerce Unlawful Payments and Stock Relinquishment:** Appellees' calculated and relentless actions within the Bankruptcy Court created an environment of intense duress and fear of economic ruin for Appellants.[9] This coercive atmosphere was intentionally designed to induce Appellants to make unlawful payments and relinquish valuable stock to avert further judicial abuse and financial devastation. This constitutes the "fear" element requisite for Hobbs Act extortion. See *United States v. Capo*, 793 F.2d 1086, 1090 (9th Cir. 1986) (defining "fear" in the context of Hobbs Act extortion to include fear of economic loss). See Dkt. 5-16 on pages 50-63 (the Declaration of Group Management's former CEO Elorian Landers).[10]

---

[9] See Declaration of Elorian Landers, the former CEO of Group Management, Dkt. 5-16, (F-9) on page 56 (¶23); page 59 (¶¶34, 35, and 36); page 60 (¶38); page 61 (¶42); page 61 (¶43—unlawful debt collection activity by Ari Kluger on behalf of KTS' unregistered broker-dealer client, Alpha Capital, AG); page 61 Hobbs Act threats (¶¶45, 46, 47, and 48: numerous "instances to collect unlawful debts," GX 1-4, in violation of 18 USC 1951(a), 1961(6)(B), and 1962(a-d)).

[10] "The essence of extortion within the meaning of the Hobbs Act, as it pertains to the present case, ==is the extraction of property from another through the wrongful use of fear. The victim's fear need not be fear of bodily harm but may be fear of a loss that is purely economic==. *E.g., United States v. Margiotta*, 688 F.2d 108, 134 (2d Cir. 1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Brecht*, 540 F.2d 45, 51 (2d Cir. 1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977); *United States v. Hathaway*, 534 F.2d 386, 394 (1st Cir.), *cert. denied*, 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *United States v. Tropiano*, 418 F.2d 1069, 1083 (2d Cir. 1969), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1262, 25 L.Ed.2d 530 (1970). ==While commonly the economic loss feared by the victim is the loss of an existing asset== [Appellant Group Management's free-trading securities], *see, e.g., United States v. Lisinski*, 728 F.2d 887 (7th Cir.), *cert. denied*, ___ U.S. ___, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984) (fear of losing liquor license), the scope of the Act is not so limited. ==Thus, the Act has been held to reach conduct threatening the loss of a status [by Appellant Ware's theft of his license to practice law in Georgia] that would produce future assets==. *See, e.g., United States v. Daley*, 564 F.2d 645, 648 (2d Cir. 1977) (employees' fear of losing their jobs and contractors' fear of losing future job assignments), *cert. denied*, 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978); *United States v. Margiotta*, 688 F.2d at 133-35 (fear that municipal insurance business would be transferred to other agencies, thereby costing the victim future commissions). ==Nor is the concept of economic loss under the Act limited to the loss of existing relationships, for that concept has been held to encompass the loss of an opportunity to enter into a business relationship==. *See, e.g., United States v. Addonizio*, 451 F.2d 49, 73 (3d Cir. 1971) (victims' fear that they would not be awarded certain contacts), *cert. denied*, 405 U.S. 936, 92 S.Ct. 1309, 31 L.Ed.2d 591 (1972); *United States v. Brecht*, 540 F.2d at 52 (same); *United States v. Hathaway*, 534 F.2d at 395-96 (same). In *United States v. Tropiano*, we held that loss of the right to do business in an area or to bid for contracts would constitute the requisite economic loss:

> The concept of property under the Hobbs Act ... includes, in a broad sense, ==any valuable right considered as a source or element of wealth== .... ==The right to pursue a lawful business== [the right of Appellant Ware to practice law] including the solicitation of customers necessary to the conduct of such business has long been recognized as a property right within the protection of the Fifth and

Page **8** of **18**

Thursday, March 20, 2025

(17-10) (part 17-10) re: Appellants' Supplemental Memorandum of Law (#6) re: Criminal liability and culpability of KTS, its clients, and their privies.

    a) **"Smoking Gun" KTS Memo Evidencing Extortionate Intent:** The "smoking gun" KTS Memo (Dkt. 9, Exhibit F-10) provides further incontrovertible evidence of Appellees' extortionate intent and calculated strategy. The KTS Memo explicitly analyzes "The KTS § 78p(b) insider-trading memo" (Docket 298, Page 4) and reveals KTS's deep awareness, dating back to 2004, of their clients' potential $522 million disgorgement liability under 15 U.S.C. § 78p(b) (Docket 298, Page 4, ¶ 1). This memo demonstrates Appellees' early (2011) and comprehensive awareness of their predatory clients' substantial insider trading liability and their deliberate strategy to conceal this critical asset from the Bankruptcy Court (Docket 298, Page 5), thereby perpetrating a fraud upon the court and creditors and utilizing the court as a coercive instrument.

## B. Predatory Racketeering Bankruptcy Crimes (18 U.S.C. §§ 1961(6)(B) & 1962(a)-(d)): Operating a RICO Enterprise Engaged in Unlawful Debt Collection and Fraud.

Appellees, KTS and their predatory unregistered broker-dealer clients, are further subject to criminal culpability and liability for racketeering bankruptcy crimes under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961(6)(B) & 1962(a)-(d). RICO, a powerful federal statute designed to combat organized crime, prohibits engaging in a "pattern of racketeering activity," which explicitly includes "unlawful debt collection." 18 U.S.C. § 1961(6)(B). Appellees' conduct demonstrably constitutes a RICO violation.

1. **Operation of a Criminal RICO Enterprise: An Illegal Association in Fact, 18 USC 1961(4):** Appellees, acting in concert and with a common criminal purpose, operated as an illegal association in fact, a RICO enterprise, to perpetrate their unlawful extremely dangerous predatory extortion scheme. This criminal enterprise consists of KTS, its partners and associates, their unregistered broker-dealer clients, and other agents and proxies acting in furtherance of the illicit enterprise. See ***Boyle v. United States***, 556 U.S. 938, 944 (2009) (defining a RICO enterprise as "a group of persons associated together for a common purpose of engaging in a course of conduct").[11]

---

    Fourteenth Amendment of the Constitution. [The] right to solicit accounts ... constituted property within the Hobbs Act definition. <u>418 F.2d at 1075-76</u> (citations omitted). ***United States v. Capo***, 791 F.2d 1054, 1061-62 (2d Cir. 1986). (emphasis added).

[11] See Dkt. 5-13 on page 52 (the testimony and judicial admissions of Appellee Arie Rabinowitz, who is in privy with the predatory unregistered broker-dealers) and Dkt. 5-16 (F-8), pages 41-49, the Declaration of Baker & McKenzie, LLP and Lawrence B. Mandala, Esq., Group Management's purported securities counsel, in reality a covert agent in fact of and for the predatory Appellees' attempts to extort Group Management out of +39 million free trading shares via a bogus and fraudulent Form SB-2 null and void ab initio registration statement, valued at more than +$5.2225 billion in post Chapter 11 market capitalization. Mandala and Baker & McKenzie, LLP colluded, conspired, and racketeered with the predators, KTS's clients, to secretly and covertly extort Baker's client, Appellant Group Management of billions in market capitalization, reckless and negligent purported legal advice, received unjust enrichment from their breach of fiduciary duty to the Chapter 11 Debtor, Group Management, and knowingly and willfully violated NYS

2. **Pattern of Racketeering Activity: A Multifaceted Scheme of Unlawful Debt Collection and Fraudulent Conduct:** Appellees before, during, and after the Chapter 11 was fraudulently dismissed with prejudice in May 2003, Dkt. 28 (03-93031), have without interruption and continuously engaged in a pervasive and sustained pattern of racketeering activity, meticulously orchestrated to facilitate unlawful debt collection and defraud the Bankruptcy Court and creditors. This pattern of racketeering activity includes, but is not limited to, the following predicate acts:

   a) **Unlawful Debt Collection (18 U.S.C. § 1961(6)(B)):** Appellees' core racketeering activity centers on the unlawful collection of criminally usurious debts, GX 1-4, which, as previously established, are "unlawful debts" under RICO. Every attempt to enforce or collect on these void ab initio obligations constitutes a predicate racketeering act. See **United States v. Grote,** 961 F.3d 105, 119 (2d Cir. 2020) (holding that "RICO offenses may be predicated on a single instance of collection of unlawful debt").[12]

   b) **Bankruptcy Fraud (11 U.S.C. §§ 152 & 157):** Appellees and their privies have knowingly, willfully, and in bad faith perpetrated a systematic and multifaceted bankruptcy fraud scheme, encompassing:

      i. **Filing False and Fraudulent Claims (11 U.S.C. § 152(2) & (3)):** Appellees knowingly and fraudulently filed false claims (Dkt. 5-2, 5-3, 5-4, 5-5, 5-6) in the Bankruptcy Court based on the void and criminally usurious debts, GX 1-4, while concealing their illegality and lack of Article III standing.

      ii. **Concealment of Estate Assets (11 U.S.C. § 152(1)):** Appellees deliberately concealed the +$522 million insider trading disgorgement liability owed by KTS Clients to the Chapter 11 estate, a material asset that should have been disclosed to the Bankruptcy Court and creditors. Dkt. 5-13 on pages 43-48.

      iii. **False Oaths Under Penalty of Perjury (11 U.S.C. § 152(2)):** Appellees made numerous false oaths under penalty of perjury in their Bankruptcy Court filings, misrepresenting the validity of their claims and concealing their fraudulent scheme. Dkt. 5-2 (¶1—referring to the predators as "creditors"); Dkt. 5-3, page 3, ¶7, referring to the predator as "creditors", and lying in regard to the lawful purpose of reorganization to rid Group

---

Penal Law, § 190.40, the criminal usury law, a class E felony, violated federal racketeering law, 18 USC 1961(6)(B), by aiding and abetting the collection of the predatory criminal usury unlawful debts, GX 1-4; and knowingly violated the District Court (NDGA), the ABA's, and Texas Rules of Professional Conduct, Rules 3.3 and 8.4, by Mandala, Albaral, Malliband, and Leghorn's breach of complete duty of candor to the District Court regarding Baker's, Mandala, Leghorn, Albaral, and Malliband's roles in the fraud and conspiracy committed by KTS' predatory unregistered broker-dealer clients.

[12] See 25cv00613 (NDGA) Dkt. 5-15 on pages 41-63, the Declaration of Appellee Baker & McKenzie, LLP and Lawrence B. Mandala, Esq. (pages 41-49), and Elorian Landers (pages 50-63).

>   Management of the predators and daily Hobbs Act threats of violence); Dkt. 5-5 (¶2: referring to the predators as "creditors"; ¶3: lying and misrepresenting the lawful purpose of Group Management's reorganization to rid itself of the predators; ¶4; ¶5; ¶6)

3. **Mail and Wire Fraud (18 U.S.C. §§ 1341 & 1343):** Appellees utilized the U.S. mail and electronic communications (wires) in furtherance of their fraudulent scheme, including the filing of false claims, the concealment of estate assets, and the dissemination of misleading information to the Bankruptcy Court and creditors. These actions constitute mail and wire fraud, predicate acts under RICO. See ***Schmuck v. United States***, 489 U.S. 705, 715 (1989) (defining mail fraud and wire fraud as predicate acts under RICO).
4. **Obstruction of Justice (18 U.S.C. § 1503):** Appellees engaged in obstruction of justice by knowingly and intentionally impeding and obstructing the due administration of justice in the Bankruptcy Court. This obstruction included the filing of frivolous and bad faith motions, the concealment of material evidence, and the abuse of the judicial process to further their unlawful debt collection scheme.
5. **Hobbs Act Extortion (18 U.S.C. § 1951(a)):** As detailed in Section II. A, supra, Appellees knowingly and willfully engaged in Hobbs Act extortion by wrongfully exploiting the Bankruptcy Court to coerce unlawful payments and stock relinquishment from Appellants, a predicate act of racketeering under RICO. See Dkt. 5-1 to 5-6.
6. **Definitive Evidence of Racketeering Enterprise and Pattern: "Zitter Confessions" and KTS Memo:** The "Zitter Confessions" (Dkt. 9, Exhibit F-11) and the KTS Memo (Dkt. 9, Exhibit F-10) provide conclusive and irrefutable evidence of Appellees' RICO enterprise and pattern of racketeering activity. These documents, ***constituting binding judicial admissions and self-incriminating statements***, reveal a calculated and cynical scheme to exploit the Bankruptcy Court for unlawful gain and to perpetrate a fraud upon the court and creditors. The coordinated "strategies and pleadings" between Zitter (Appellees' 02cv2219 SDNY counsel) and Meir/KTS (Appellees' 03-93031 Bankruptcy Counsel), particularly when juxtaposed with the demonstrably fraudulent and baseless nature of KTS' filings (Dkt. 5-2, 5-4, 5-4, and 5-6), strongly suggest and exemplify a pre-planned, coordinated, and concerted RICO scheme to abuse the 03-93031 Bankruptcy Court and to perpetrate a fraud upon the Bankruptcy Court (Docket 298, Page 7, ¶ 4).

## C. Predatory Bankruptcy Fraud (11 U.S.C. §§ 152 & 157): A Scheme to Defraud the Bankruptcy Court and Creditors, Dkt. 5-1 to 5-6.

Appellees' criminal culpability extends to violations of federal bankruptcy fraud statutes, 11 U.S.C. §§ 152 & 157. These statutes criminalize devising or intending to devise "a scheme or artifice to defraud" in bankruptcy, encompassing a wide range of fraudulent conduct aimed at undermining the integrity of the bankruptcy system.

1. **Comprehensive Scheme to Defraud:** Appellees, through their coordinated actions evidenced throughout Docket 298 and, Dkt. 9, Exhibits F-10 and F-11, maliciously, willfully, and in bad faith recklessly devised and executed a comprehensive criminal

scheme to defraud the Bankruptcy Court and creditors. This scheme, perpetrated by Appellees KTS, Meir, Mill, Zitter, convicted felon Edward M. Grushko, Esq., Barbara R. Mittman, Esq., Alexander H. Southwell, Esq., the U.S. Marshals (SDNY and NDGA), et al., encompassed multiple fraudulent tactics:

   a) **Filing Fraudulent Claims Based on Predatory Null and Void Alleged Debts:** Appellees knowingly filed fraudulent claims and pleading, Dkt. 5-1 to 5-6, based on predatory void ab initio and criminally usurious debts (GX 1-4), misrepresenting these obligations as valid and enforceable to extract unlawful payments from the Chapter 11 estate. This constitutes a direct violation of 11 U.S.C. § 152(2) & (3).
   b) **Strategic Concealment of Jurisdictional Defects and Insider Trading Liabilities:** Appellees strategically concealed material jurisdictional defects, including their lack of Article III standing, and the +$522 million insider trading liability owed by KTS Clients to the Chapter 11 estate. This deliberate concealment was intended to prevent the Bankruptcy Court and creditors from discovering the fraudulent nature of their claims and the true financial condition of the estate. This constitutes a violation of 11 U.S.C. § 152(1).[13]
   c) **Abuse of the Bankruptcy Court for Unlawful Debt Collection and Extortion:** Appellees deliberately abused the Bankruptcy Court as an instrument for unlawful debt collection and extortion, utilizing the judicial process to coerce Appellants into making unlawful payments and relinquishing stock. This manipulation of the Bankruptcy Court for illicit purposes constitutes a core element of their bankruptcy fraud scheme. This conduct falls under the scheme to defraud provision of 11 U.S.C. § 157. Dkt. 5-1 to 5-10.
   d) **Willful Violation of the Automatic Stay:** Appellees willfully violated the automatic stay imposed by 11 U.S.C. § 362, continuing to pursue unlawful debt collection activities despite explicit knowledge of the stay and its prohibitions. This knowing and intentional circumvention of a court order constitutes a contemptuous and fraudulent act within the bankruptcy proceeding.

2. **Multifaceted Scheme Warranting Criminal Prosecution:** This multifaceted and meticulously executed scheme to defraud the Bankruptcy Court and creditors squarely falls within the ambit of 11 U.S.C. § 157, warranting thorough criminal investigation and prosecution of all culpable parties.

---

[13] See Dkt. 5-13 on pages 43-48—Sand, J. Aug. 13, 2003, Dkt. 65, final order finding the predators to be 15 USC § 78p(b) statutory insiders (fiduciaries) of the Chapter 11 Debtor, Group Management, which triggered 11 USC §§ 542(a) and 15 USC 78p(b) turnover/disgorgement of +$522 million strict-liability short-swing insider-trading profits to the 03-93031 Chapter 11 estate for administration to creditors, ***Roth***, 489 F.3d at 506-10.

### D. Short-Swing Insider Trading (15 U.S.C. § 78p(b)): Exploitation of Confidential Information for Illicit Profit. See Dkt. 5-13 on pages 43-45.

Appellees, specifically KTS Clients as §16 statutory insiders of Group Management Corp. (GPMT), are further criminally culpable for engaging in illegal short-swing insider trading in violation of 15 U.S.C. § 78p(b). This statute prohibits corporate insiders (fiduciaries), the predators, from profiting from the purchase and sale, or sale and purchase of the corporation's (then Group Management Corp.) securities within a six-month period, designed to prevent the unfair use of inside information. ***Roth***, 489 F.3d at 506-10.

1. **Predatory Illegal Insider Trading and Generation of Illicit Profits at the Expense of the Estate:** KTS Clients, by virtue of their status as statutory insiders (fiduciaries of the Chapter 11 Debtor) with access to confidential, non-public information about GPMT, engaged in illegal short-swing trading of GPMT securities, realizing illicit profits exceeding $522 million. These profits were generated at the direct expense of the Chapter 11 estate, unjustly enriching Appellees while diminishing the assets available to satisfy legitimate creditor claims. This constitutes a flagrant violation of 15 U.S.C. § 78p(b).

    a) **Judicial Admission of Insider Trading and Liability:** The KTS Memo (Dkt. 9, Exhibit F-10) itself explicitly analyzes ["The KTS § 78p(b) insider-trading memo" (Docket 298, Page 4)] and reveals KTS's deep awareness, dating back to 2003, of their clients' potential $522 million disgorgement liability under 11 USC § 542(a) and 15 U.S.C. § 78p(b) (Docket 298, Page 4, ¶ 1). This constitutes a self-incriminating judicial admission of insider trading and the magnitude of their illicit profits. Furthermore, the court order of Judge Sand (Dkt. 65, 02cv2219 (SDNY)), cited in Dkt. 5-13 at pages 43-45, judicially established KTS Clients' §16 statutory insider (fiduciary) status based on the judicial admissions of Appellees KTS and its client, Appellee Stonestreet, L.P.

2. **Strategic Concealment of Insider Trading Liability as a Key Element of the Fraudulent Scheme:** Appellees deliberately concealed this substantial insider trading liability (+$522 million) from the Bankruptcy Court and creditors as an integral part of their overarching scheme to defraud. This predatory racketeering concealment was intended to prevent the recovery of this critical estate asset and to further its illicit enrichment at the expense of legitimate stakeholders in the Chapter 11 proceeding.

### E. Predatory Egregious Ethical Violations (Georgia Rules of Professional Conduct 3.3 & 8.4): Profound Breach of Duty of Candor and Professional Responsibility

Appellees, particularly KTS and its attorneys, as officers of the court subject to the District Court (NDGA) and the State Bar of Georgia's Rules of Professional Conduct, have egregiously violated their ethical obligations under Rules 3.3 and 8.4 of the Georgia Rules of Professional Conduct. These violations are not mere technical transgressions but represent a profound breach

of their duty of complete candor toward the tribunals (03-93031, and 25cv00613), and a pattern of egregious professional misconduct.

1. **Violation of Rule 3.3: Duty of Candor Toward the Tribunal:** Rule 3.3 of the Georgia Rules of Professional Conduct imposes a stringent duty of candor upon attorneys [Zitter, Southwell, NeSmith, Frederick, Burgess, Myers, Hewett, Mittlemen, Arndt, Hostetter, Meir, Mills, Morawetz, Townson, Treace, Walker, Kadaba, Mandala, Albaral, Leghorn, Malliband, Grushko, Mittman, et al. toward the tribunals, requiring them to be truthful in their representations to the court and to disclose material facts necessary to prevent fraud upon the 02cv00219 (SDNY), 03-93031 and 25cv00613 federal courts. Appellees have flagrantly violated this fundamental ethical duty through a pattern of deceitful and misleading conduct:

    a) **Demonstrably False and Misleading Representations:** Appellees made demonstrably false and misleading representations to the Bankruptcy Court in their pleadings, motions, and other filings. Dkt. 5-1 to 5-6. These bad faith, frivolous, baseless, and vexatious misrepresentations included assertions regarding the validity and enforceability of the Predatory Criminal Usury Subject Matter debts, GX 1-4, and the legitimacy of their claims, all of which were demonstrably false and baseless. See Docket 5-2, 5-3, 5-4, 5-5, and 5-6.
    b) **Strategic Concealment of Material Facts:** Appellees deliberately concealed material facts from the Bankruptcy Court, including the void ab initio and criminally usurious nature of GX 1-4, their lack of Article III standing, and the +$522 million insider trading liability of KTS Clients. This calculated concealment was intended to deceive the court and prevent it from rendering just and informed decisions.
    c) **Perpetration of a Fraud Upon the Court:** The totality of Appellees' conduct constitutes a deliberate and egregious fraud upon the Bankruptcy Court, undermining the integrity of the judicial process and eroding public confidence in the legal system. Their calculated manipulation of the court for illicit gain represents a profound betrayal of their ethical obligations as officers of the court.

2. **Violation of Rule 8.4: Misconduct:** Rule 8.4 of the Georgia Rules of Professional Conduct broadly proscribes professional misconduct, including conduct involving dishonesty, fraud, deceit, and misrepresentation. Appellees' actions in this matter fall squarely within the prohibitions of Rule 8.4, encompassing a wide range of unethical and unprofessional behavior:

    a) **Dishonesty, Fraud, Deceit, and Misrepresentation:** Appellees knowingly, willfully, and in bad faith have engaged in an ongoing and continuous pattern of dishonesty, fraud, deceit, and misrepresentation through their calculated scheme to abuse the judicial system for illicit enrichment. Their conduct was characterized by a pervasive lack of candor, a disregard for truthfulness, and a deliberate intent to deceive the Bankruptcy Court and creditors.

    *b)* **Criminal Conduct:** Appellees' actions, as detailed in Sections II., A-E, constitute violations of multiple federal criminal statutes, further underscoring the egregious nature of their professional misconduct. *Engaging in criminal conduct as officers of the court represents a profound breach of their ethical responsibilities and a grave disservice to the legal profession.*

    c) **Conduct Prejudicial to the Administration of Justice:** Appellees' calculated and sustained scheme to defraud the Bankruptcy Court and creditors, Dkt. 5-1 to 5-10, to obstruct justice, and to abuse the judicial process is inherently prejudicial to the administration of justice. Their actions undermine public confidence in the courts, erode the integrity of the legal profession, and necessitate immediate and decisive disciplinary action.

## F. Predatory Unlawful Debt Collection, 18 USC 1961(6)(B), Short-Swing Insider Trading (15 U.S.C. § 78p(b)): Predatory Illicit Profits at the Expense of the Chapter 11 Estate.

Appellees, specifically KTS Cand its clients, jointly and severally, as §16 statutory insiders (fiduciaries) of Group Management (GPMT), are ***criminally culpable*** for engaging in predatory, unlawful debt collection, 18 USC 1961(6)(B), illegal short-swing insider trading in violation of 15 U.S.C. § 78p(b).

1. **Illegal Insider Trading and Generation of Illicit Profits:** KTS Clients, by virtue of their insider status, engaged in short-swing trading of GPMT securities, generating illicit profits exceeding $522 million. These profits were realized at the direct expense of the Chapter 11 estate, diminishing the value available for legitimate creditors and stakeholders. This constitutes a direct violation of 15 U.S.C. § 78p(b).
2. **Strategic Concealment of Insider Trading Liability as Part of Fraudulent Scheme:** Appellees strategically concealed this massive insider trading liability, a core asset of the Chapter 11 estate under 11 U.S.C. § 541(a)(1), from the Bankruptcy Court and creditors. This deliberate concealment was a key component of their overarching scheme to defraud, intended to enrich themselves at the expense of the bankruptcy estate and its legitimate stakeholders. The KTS Memo itself analyzes and acknowledges this insider trading liability, further solidifying the evidentiary basis for this violation and Appellees' fraudulent intent.

## G. Predatory Egregious Ethical Violations (Georgia Rules of Professional Conduct 3.3 & 8.4): Profound Breach of Duty of Candor and Professional Misconduct

As officers of the court admitted to practice before the District Court (NDGA) and subject to the ethical strictures of the State Bar of Georgia's Rules of Professional Conduct, Appellees, particularly KTS and its attorneys, have engaged in egregious and undeniable violations of their professional ethical obligations. Their calculated and sustained scheme to defraud the Bankruptcy Court and creditors constitutes a profound breach of the duty of candor toward the tribunal (Rule 3.3) and constitutes conduct involving dishonesty, fraud, deceit, and misrepresentation (Rule 8.4).

1. **Violation of Rule 3.3: Lack of Candor Toward the Tribunal Through False Representations and Material Omissions:** Rule 3.3 of the Georgia Rules of Professional Conduct unequivocally mandates that "a lawyer shall not knowingly…make a false statement of fact or law to a tribunal" or "fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client." Appellees have flagrantly violated this fundamental ethical duty in numerous respects.

    a) **Demonstrably False and Misleading Representations Regarding Claim Validity:** KTS and its attorneys knowingly made demonstrably false and misleading representations to the Bankruptcy Court regarding the validity and enforceability of their claims based on the Predatory Criminal Usury Subject Matter, GX 1-4. These representations were made despite their manifest awareness of the criminally usurious and void ab initio nature of these debt instruments, as evidenced by the KTS Memo (Exhibit F-10) and Zitter Confessions (Exhibit F-11). These false representations were disseminated through pleadings, motions, and oral arguments before the Bankruptcy Court, directly misleading the court and undermining the integrity of the judicial process.
    b) **Strategic Concealment of Material Facts: Voidness of Debts and Lack of Standing:** Appellees strategically concealed material facts from the Bankruptcy Court that were essential to a just and informed adjudication of the matter. This concealment included:

        i. **The void ab initio nature of the Predatory Criminal Usury Subject Matter debts (GX 1-4):** Appellees knowingly failed to disclose that GX 1-4 were criminally usurious under New York Penal Law § 190.40 and therefore legally null and void from their inception. This omission was critical as it directly undermined the legal basis for their claims and their purported standing to appear before the Bankruptcy Court.
        ii. **Lack of Article III Standing:** Appellees knowingly failed to disclose their lack of Article III standing to pursue claims related to the Predatory Criminal Usury Subject Matter, a fundamental jurisdictional defect that deprived the Bankruptcy Court of lawful authority to adjudicate their claims.
        iii. **Perpetration of a Fraud Upon the Court:** Appellees' cumulative actions, characterized by false representations and strategic concealment of material facts, constitute a calculated and sustained fraud upon the Bankruptcy Court. This fraud was intended to deceive the court into validating and enforcing legally void predatory debt obligations, GX 1-4, and GX 5, and to unjustly enrich Appellees at the expense of the Chapter 11 estate and its legitimate stakeholders. Such conduct is a direct and egregious violation of Rule 3.3's duty of candor.

2. **Violation of Rule 8.4: Engaging in Dishonesty, Fraud, Deceit, and Misrepresentation:** Rule 8.4 of the Georgia Rules of Professional Conduct proscribes attorney misconduct,

specifically prohibiting lawyers from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." Appellees' actions in this matter demonstrably fall within this proscription.

- a) **Dishonest and Deceitful Scheme to Abuse the Judicial System:** Appellees' meticulously planned and have since 2001 relentlessly executed the predatory scam and scheme to abuse the Bankruptcy Court for unlawful debt collection activity, Dkt. 5-1 to 5-10, and extortion constitutes inherently dishonest and deceitful conduct. Their calculated manipulation of the judicial process for illicit personal gain is a profound betrayal of the ethical obligations of officers of the court.
- b) **Fraudulent Misrepresentations and Concealment:** Appellees' dissemination of false and misleading representations and their strategic concealment of material facts, as detailed in Section II.G.1, are, in and of themselves, acts of fraud, deceit, and misrepresentation in violation of Rule 8.4. These fraudulent actions were not isolated incidents but rather integral components of a larger scheme to defraud.
- c) **Racketeering Enterprise and Bankruptcy Fraud Scheme as Manifestations of Misconduct:** Appellees' participation in a RICO enterprise and their orchestration of a bankruptcy fraud scheme, as detailed in Sections II. B and II. C, are the ultimate manifestations of professional misconduct under Rule 8.4. These criminal enterprises, characterized by dishonesty, fraud, and deceit, represent the most egregious forms of ethical violations for officers of the court.

3. **Demand for Disciplinary Action and Sanctions:** The egregious ethical violations committed by Appellees, in conjunction with their criminal culpability and liability, demand immediate and decisive disciplinary action by this Honorable Court and the State Bar of Georgia. These violations, established by Appellees' own judicial admissions and irrefutable documentary evidence, underscore the urgent necessity for a Show Cause Order and the imposition of severe sanctions to uphold the integrity of the legal profession and the judicial process.

## III. CONCLUSION

The foregoing detailed and meticulous analysis, grounded in factual specificity, legal precedent, and Appellees' own binding judicial admissions, definitively establishes the extensive criminal culpability and liability of KTS, its agents, and its unregistered broker-dealer clients. Their actions, characterized by Hobbs Act extortion, racketeering bankruptcy crimes, bankruptcy fraud, short-swing insider trading, and egregious ethical violations, constitute a grave assault upon the integrity of the judicial system and demand immediate and decisive judicial intervention.

This Honorable Court, an Article III United States federal court, is ethically and legally compelled to issue the requested Show Cause Order, convene an Appellate Status Conference, and stay the briefing schedule pending a thorough investigation into Appellees' demonstrably criminal and unethical conduct. Only through such prompt and decisive action can this Court uphold its

constitutional mandate, safeguard the integrity of the judicial process, and deter future abuses of the legal system by unscrupulous actors.

Respectfully submitted,

**The Office of Ulysses T. Ware**

By: /s/ Ulysses T. Ware

*[signature: Ulysses Q. Ware]*

Ulysses T. Ware

Attorney in Fact for Appellants Group Management (a sole proprietorship) and Ulysses T. Ware

## IV. 28 USC § 1654 Pro Se Appellants' Certificate of Service and Filing.

I, Ulysses T. Ware, attorney in fact for the Appellants, hereby certify under penalty of perjury that on this 20th day of March 2025, I caused to be served a true and correct copy of the foregoing Appellants' Memorandum of Law (#6) Analyzing Criminal Culpability and Liability of Kilpatrick Townsend & Stockton LLP and its Unregistered Broker-Dealer Clients via U.S. mail and electronic mail to the Chambers of the Hon. District Judge Michael L. Brown and to the Office of the District Clerk (NDGA), Executive Director Administrative Office of the U.S. Courts, and Office of the FBI Director.

Signed under oath subject to the penalty of perjury having personal knowledge of the facts, pursuant to 28 USC § 1746 this 20th day of March 2025, in Brooklyn, NY.

/s/ Ulysses T. Ware

*[signature: Ulysses Q. Ware]*

For Ulysses T. Ware, a natural person, d/b/a Group Management, a sole proprietorship, pursuant to 28 USC § 1654.

**End of document**