

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

APR 09 2025

KEVIN P WEIMER, Clerk
By Matthew ~~Mann~~ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

### Filed on Friday, April 4, 2024, 11:59:35 AM

---

ULYSSES T. WARE and d/b/a GROUP MANAGEMENT, (a sole proprietorship), (Debtor)
Appellants,

v.

ALPHA CAPITAL, AG, et al., *Predatory Unregistered Broker-Dealers*,
Appellees.

---

### On Appeal from the United States Bankruptcy Court
### for the Northern District of Georgia
### Case No. 03-93031-WLH

---

**[Docket Text] Re: (1) Appellants' Request for Judicial Notice, and Memorandum of Law Regarding Mandatory Judicial Notice Pursuant to Federal Rule of Evidence 201(c)(2) of Binding Dispositive Factual Admissions, Confessions, and Stipulations Adverse to Appellees Contained Herein, in the JSAR, and Within Dkt. 19-4 of the Joint Stipulated Appellate Record, Conclusively Resolving All Appellate Issues Identified in Dkt. 292. [JSAR Dkt. 5-13, at pp. 6–23]; and (2) Appellants' Mandatory *Rule 201(e) Entitlement to be Heard.*

The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Respectfully submitted this 4th day of April 2025 to the Chambers of the Hon. District Judge

Michael L. Brown and the Office of the District Clerk (NDGA) pursuant to 28 USC § 1654 and

18 USC §§ 2071 (a), (b).

By: /s/ Ulysses T. Ware
**Ulysses, Attorney in Fact for Appellants**
Group Management and Ulysses T. Ware

# Table of Contents

A.  INTRODUCTION ........................................................................................................... 4

Part 1. ............................................................................................................................... 5

I. PRELIMINARY STATEMENT ........................................................................................ 5

II. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE ...................................... 8

III. THE BINDING STIPULATIONS OF DKT. 19-4 ........................................................ 10

IV. RESOLUTION OF ALL APPELLATE ISSUES (DKT. 292) [JSAR Dkt. 5-13 on pages 6 to 23] BY JUDICIALLY NOTICED STIPULATIONS (DKT. 19-4). ........................... 12

Part 2. ............................................................................................................................. 16

I. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE .................................... 16

II. APPLICATION OF LEGAL STANDARD TO REQUESTED EXHIBITS. .................... 17

    A. Exhibit 1: State Bar of Georgia Official Record (JSAR Dkt. 5-13, pp. 40-41) ......... 18

    B. Exhibit 2: SEC EDGAR Governmental Website Public Filing (Form SB-2) ........... 19

    C. Exhibit 3: FINRA Regulatory Determination (JSAR Dkt. 5-13, p. 48) .................... 20

III. SUMMARY .............................................................................................................. 21

Part 3. ............................................................................................................................. 22

FRE 201(c)(2) Regulatory, Accurate, and Irrefutable Sources—Necessary Information to take judicial notice of Regulatory Facts. .................................................................................... 24

    1.    Exhibit 1 [JSAR Dkt. 5-13 pages 40-41] (stipulated) (Coordinated criminal usury unlawful debt collection activity)—State Bar of Georgia's (Regulatory) Fabricated and Counterfeit purported *Affidavit of Personal Service*—Hobbs Act overt and predicate acts, Jim Crow racially-motivated, retaliatory, malicious conspiracy to extort and steal the personal and business property of Appellant Ulysses T. Ware, his license to practice law. ................................. 25

    2.    Exhibit 2 (see Attachment) [SEC's Edgar Regulatory Public Records System] Appellant Baker & McKenzie, LLP, et al. accurate and reliable Hobbs Act Criminal Form SB-2 to extort Appellant Group Management out of +39 million (+$522 million) free-trading equity securities, to aid, abet, and facilitate the collection of GX 1-4, and GX 5, predatory criminal usury unlawful debts. ................................................................................................................................... 28

    3.    Exhibit 3 [JSAR Dkt. 5-13 on page 48] (stipulated) FINRA's May 17, 2021, accurate and reliable, irrefutable regulatory ruling of unregistered broker-dealer status for each of Appellee KTS' clients that appeared in 03-93031 Chapter 11, [JSAR Dkt. 5-2, April 10, 2003], which KTS knowingly in bad faith, and recklessly suppressed and concealed, without disclosing to the Court, the UST, the Debtor, and other creditors their clients' *unregistered broker-dealer status* in violation of the District Court (NDGA) Rules on Professional Conduct Rules 3.3 and 8.4. .......... 29

CERTIFICATE OF SERVICE ........................................................................................... 31

End of document .............................................................................................................. 31

## A. INTRODUCTION

Appellants Ulysses T. Ware and d/b/a Group Management (a sole proprietorship), ("Appellants"), through undersigned counsel, pursuant to 28 USC § 1654, respectfully submit this (A) FRE Rule 201(c)(2) Request to Take Judicial Notice of ***Appellees' Dispositive Stipulations*** that Resolved All Appellate Issues, (B) a Memorandum of Law to address Federal Rule of Evidence 201(c)(2), (e), which is hereby this 4th day of April 2025, triggered, (C) Appellants' Rule 201(e) Request to Be Heard, and (D) Appellants' request for entry of the following reliefs, to wit:

(i) that this Honorable Court immediately take FRE Rule 201(c)(2) ***mandatory judicial notice*** of Appellees' dispositive factual stipulations, judicial admissions, and confessions contained within the certified record on appeal [JSAR: specifically, Dkt. 19-4, and herein]; and

(ii) Appellants hereby notify the District Court that they are exercising their mandatory ***legal entitlement*** and right, and formally request to be heard as authorized by Rule 201(e).[1]

---

[1] **Rule 201(e)** is not permissive; it states that "[o]n timely request, ***a party is entitled to be heard*** ... ." The phrase "**is entitled**" denotes a **mandatory requirement**. In practice:

1. **No Discretion to Deny**: The District Court **cannot refuse** a timely request to be heard on the matter; it must afford the requesting party [Appellants herein] an opportunity to present arguments or evidence about the fact in question.

As set forth in Federal Rule of Evidence 201(e), "[o]n timely request, [[Appellants are] entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Appellants respectfully submit that this ***entitlement is not discretionary but mandatory,*** thus conferring an absolute substantive procedural safeguard designed to ensure fairness and accuracy in judicial proceedings. By invoking their right to be heard, Appellants have triggered a legal obligation for the Court to permit their input on both the propriety of judicial notice and the precise contours of the facts to be so recognized. In practical terms, this provision obligates the Court to grant Appellants an opportunity to demonstrate that the proposed facts are indeed not subject to reasonable dispute being stipulated to by the Appellees in the JSAR or other regulatory filings.

Appellees' voluntary judicial stipulations, admissions, and confessions are formally presented in the document docketed as **Dkt. 19-4** ("Joint Declaration and Stipulation," hereinafter "Dkt. 19-4"), and herein (Part 19-20B), which is incorporated within the Joint Stipulated Appellate Record ("JSAR"), *which constitutes accurate, dispositive adjudicative facts not subject to reasonable dispute*. Acknowledgment of these binding judicial stipulations, established through Appellees' documented failure to contest them as demanded therein, ***conclusively resolves, in favor of Appellants, all dispositive legal and factual issues presented for appellate review*** in **Dkt. 292** ("Statement of Issues," hereinafter "Dkt. 292") [JSAR Dkt. 5-13 on pages 6 to 23]. Requiring the District Court to enter final judgment on behalf of Appellants immediately.

# Part 1.

## I. PRELIMINARY STATEMENT

This 25cv00613 (NDGA) appeal fundamentally challenges the legitimacy and legality of the 03-93031 Chapter 11 and 02cv2219 (SDNY) proceedings predicated upon the Appellees', their privies, agents, proxies, surrogates, alter-ego, and all those in active concert therewith, a criminal illegal association in fact, joint and severally, (the "Appellees"),

(i) ***armed and dangerous Hobbs Act***, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d) attempted enforcement and collection of ***predatory criminally usurious, null and void ab initio debt instruments***, GX 1-4, and GX 5, [JSAR Dkt. 5-13 on pages 49-60],

(ii) ***by unregistered broker-dealers*** (Appellees and their privies), [Id. on page 48],

(iii) *engaging in a pattern of Hobbs Act predatory loan sharking, extortion, kidnapping, murder for hire, perjury, armed break-ins, threats of bodily harm, injury, and violence, bankruptcy fraud conspiracy, conspiracy, securities fraud, and racketeering in violation of the federal and state racketeering and loan sharking laws,* to wit: 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d); and NYS Penal Law, section 190.40, the criminal usury law, a class E felony, jointly, (the **"Predatory Racketeering Loan Sharking Laws"**). [Id. on pages 40-60]; and see Ex. 2, infra.

The 25cv00613 appeal's Rule 8009(d) joint stipulated appellate record ("JSAR") now before this Court [JSAR Dkt. 5-1 to 5-16; and Dkt. 9] contains stipulations of the Appellees in Dkt. 19-4, a document styled as a "Joint Declaration and Stipulation" which explicitly sets forth dispositive and foundational factual predicates establishing the illegality of Appellees' claims, the preclusive effect of prior judgments, the utter absence of Article III standing, and pervasive ethical and criminal misconduct by Appellees and their counsel. Crucially, Dkt. 19-4 demanded sworn opposition from each Appellee by a date certain (March 28, 2025, 1:00 PM ET), stipulating that failure to respond would constitute binding judicial admissions, confessions, and consent to the facts and liabilities stated therein, ***including a consent sum certain money judgment of $5.2225 billion***. (Dkt. 19-4, pp. 3, 13, 15).

The appellate record confirms Appellees filed no such opposition. To the present date, the Appellees have had ***actual notice*** of the JSAR and Dkt. 19-4 have not appeared in the District Court, and have not raised any challenge, opposition, or objection to the joint stipulations, judicial admissions, and confessions submitted to the Court by Appellants—that is, Appellees have, with the advice of counsel, made a strategic decision and knowingly, deliberate, and intentionally

waived, forfeited, and abandoned any right to deny or disclaim the JSAR or Dkt. 19-4. Accordingly, the Appellees, the District Court, the Bankruptcy Court, and all other courts regarding litigation between the parties are bound by the JSAR and Dkt. 19-4. ***Hoodho v. Holder***, 558 F.3d 184, 191 (2d Cir. 2009); ***Adelphia Recovery Trust v. Goldman, Sachs & Co.***, 748 F.3d 110, 116 (2d Cir. 2014).

Pursuant to FRE 201(c)(2), Appellants now supply the Court with the necessary information (the JSAR, and Dkt. 19-4 itself)[2] and requests mandatory judicial notice of the stipulations contained therein and herein, which, by Appellees' own strategic decision making, they have defaulted, and the documents' explicit and express terms have become binding judicial admissions and stipulations binding on this and all courts. These judicial admissions directly and conclusively actually and necessarily resolved all appellate issues identified in 03-93031 Dkt. 292, [JSAR Dkt. 5-13 on pages 6 to 23] ***necessitating immediate entry of final judgment in favor of Appellants***.[3]

---

[2] **FRE 201(c) Taking Notice.** The court: **(1)** may take judicial notice on its own; or **(2)** ***must take judicial notice if a party [Appellants herein] requests it and the court is supplied with the necessary information***. See Dkt. 19-4, the JSAR, (17-20A: Part 17-20A), and this (Part 17-20B).

[3] *Hoodho*, Id. ("***Admissions by parties [the JSAR and Dkt. 19-4] are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record***. Cf. Gibbs, 440 F.3d at 578 ("Having agreed on a set of facts, the parties [Appellees and their privies herein] who adopted the stipulation [JSAR and Dkt. 19-4], ***and this Court, must be bound by them***; *we are not free to pick and choose at will*." (internal quotation marks and alteration omitted)). This rule of non-inquiry promotes efficiency and judicial economy by facilitating the concession of specific issues, thereby "provid[ing] notice to all litigants of the issues remaining in dispute, *identify[ing] those that can be eliminated from the case and those that cannot be, narrow[ing] the scope of discovery to disputed matters and thus reduc[ing] trial time*." Banks v. Yokemick, 214 F.Supp.2d 401, 405-06 (S.D.N.Y.2002)." (emphasis added).

# II. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 governs the judicial notice of adjudicative facts, judicial admissions, confessions, and stipulations of the parties.

A. **Scope of Judicially Noticeable Facts (FRE 201(b)):** A court is authorized to take judicial notice of a fact provided it is "not subject to reasonable dispute" because it satisfies one of two conditions: "(1) it is generally known within the trial court's territorial jurisdiction; or (2) *it can be accurately and readily determined from sources [the JSAR] whose accuracy cannot reasonably be questioned*" by the Appellees or the court. Fed. R. Evid. 201(b).[4]

*Stipulations formally entered into by parties and incorporated into the official court record [the JSAR and Dkt. 19-4] fall squarely under FRE 201(b)(2)*. *See American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 227 (9th Cir. 1988) ("Stipulations freely and voluntarily entered into in criminal trials are as binding and enforceable as those entered into in civil actions."); *see also Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez,* 561 U.S. 661, 676 (2010) (noting the binding effect of stipulations at the trial level). The existence and content of stipulations within the JSAR are accurately and readily determinable from that official record itself.[5]

---

[4]     *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999) ("The starting point is Fed .R. Evid. 201, which authorizes courts to take judicial notice under specified circumstances. Subsection (f) states that *"(j)udicial notice may be taken at any stage of the proceeding*." (emphasis added).

[5] The Appellants' and Appellees' voluntary and consensual Bankr. Rule 8009(d) joint dispositive factual stipulations incorporated into the Joint Stipulated Appellate Record ("JSAR") and specifically identified in Dkt. 19-4 constitutes binding factual judicial admissions and stipulations that meet the criteria for *mandatory judicial notice* under Fed. R. Evid. 201(b)(2). *These stipulations, voluntarily entered and jointly certified by the parties, are adjudicative facts "capable of accurate and ready determination by*

Friday, April 4, 2025
(17-20B) (Part 17-20B) re Supplement 1.0 to Part 17- 20A re FRE 201(c)(2) Judicial Notice of Appellees' Dispositive Stipulations.

B. **Mandatory Judicial Notice (FRE 201(c)(2)):** The Rule mandates judicial notice under specific circumstances: "The court *must* take judicial notice if a party [the 25cv00613 Appellants] requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added). Appellants hereby request such notice and supply the necessary information by referencing Dkt. 19-4 within the JSAR already before this Court.

C. **Timing and Conclusive Effect (FRE 201(d), (f)):** Judicial notice is permissible "at any stage of the proceeding," including appeal. Fed. R. Evid. 201(d). In civil cases, such as this appeal, facts judicially noticed are deemed conclusive. Fed. R. Evid. 201(f).

D. **The Court's Obligation: Mandatory Notice Upon Proper Request:** Pursuant to **Rule 201(c)(2), the court must** take judicial notice **if a party requests it and supplies the necessary information.** This is a critical distinction — *__judicial notice becomes obligatory__*, **not discretionary,** when the requesting party [Appellants herein] provides facts [Dkt. 19-4 and JSAR] meeting the criteria under subsection (b). *The court no longer retains discretion in such circumstances.* Rule 201(c)(2).[6]

---

*resort to sources whose accuracy cannot reasonably be questioned*." See *American Title Ins. Co.*, ld. at 227 ("Stipulations freely and voluntarily entered into [] are as binding and enforceable as those entered into in civil actions."). *__Once made part of the appellate record, such stipulations are conclusive, not subject to dispute, and estop the parties from asserting contrary positions__*. See also *Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 676 (2010). Under Rule 201(c)(2), the 25cv00613 District Court is required to judicially notice these stipulations upon request. *__Their legal effect is to remove the underlying factual issues from further litigation, rendering them conclusively resolved for purposes of the appeal__*. (emphasis added).

[6] 21 Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5107 (1977) ("[T]he judge must notify the parties that [s/]he is taking judicial notice of an adjudicative fact.") (footnote omitted).

## III. THE BINDING STIPULATIONS OF DKT. 19-4

Dkt. 19-4 sets forth numerous binding, voluntary, factual predicates, judicial admissions, confessions, and stipulations that Appellees failed to refute under oath by the specified deadline constitute binding judicial admissions, confessions, and stipulations. Appellees' documented failure renders the following facts, detailed across Parts I-V of Dkt. 19-4, *judicially admitted, stipulated, and conclusively established.*[7]

Pursuant to FRE Rule 201(c)(2), the District Court "must" take Judicial Notice of the fact that:

1. **Criminal Illegality and Voidness *Ab Initio* (Dkt. 19-4, Part I, ¶¶ 1-10; Part II, ¶¶ 1-2):** The underlying debt instruments (GX 1-4, GX 5) are criminally usurious under N.Y. Penal Law § 190.40 (interest exceeding 2,000% p.a.), rendering them null, void *ab initio*, unenforceable, and incapable of conferring any "legally protected interest." Furthermore, the contracts are independently void under 15 U.S.C. § 78cc(b) due to Appellees' judicially admitted and FINRA-certified status as unregistered broker-dealers. (Dkt. 19-4, pp. 6, 9).

2. **Absolute Preclusion by 2007 Final Judgment (Dkt. 19-4, Part II, ¶¶ 5-6):** Appellees, through counsel (Appellee Zitter), voluntarily procured a final judgment dismissing *with prejudice* all claims related to GX 1-4/GX 5 in 02cv2219 (SDNY) on Dec. 20, 2007, after

---

[7] See ***Keller v. United States***, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, which are binding upon the party making them. ***They may not be controverted at trial or on appeal***. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." Michael H. Graham, Federal Practice and Procedure: Evidence Sec. 6726 (Interim Edition); see also John William Strong, McCormick on Evidence Sec. 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. Id. When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, Federal Practice and Procedure Sec. 6726, at 536-37."). (emphasis added).

limitations expired. This dismissal constitutes a final adjudication on the merits, absolutely barring Appellees and their privies (including KTS) under *res judicata* from re-litigating any claims derived from these instruments. (Dkt. 19-4, p. 9).

3. **Absence of Article III Standing (Dkt. 19-4, Part IV, ¶¶ 20-24):** Resulting from the *ab initio* voidness (¶1) and preclusion (¶2), Appellees lack any concrete, particularized, legally protected interest (no injury-in-fact). Any alleged harm was self-inflicted through illegal loan sharking and voluntary dismissal (*Clapper*, 568 U.S. at 416), is not traceable to Appellants' lawful conduct, and is impossible for any court to lawfully redress. (Dkt. 19-4, p. 12).

4. **Predicate Acts for RICO and Hobbs Act Liability (Dkt. 19-4, Part III, ¶¶ 10-19):** Appellees and their counsel (KTS, UST) engaged in overt acts constituting unlawful debt collection (18 U.S.C. § 1961(6)(B)) and attempted Hobbs Act extortion (18 U.S.C. § 1951(a)) by using judicial processes (e.g., Dkts. 5-1 to 5-6 in 03-93031) to enforce the void/criminal debts. These filings form part of a pattern of racketeering activity and conspiracy (18 U.S.C. § 1962(c), (d)). (Dkt. 19-4, pp. 10-11). Appellee Zitter's sworn confession to hiring KTS for "collection activity" confirms this intent. (Dkt. 19-4, Part II, ¶ 9).

5. **Pervasive Ethical Violations (Dkt. 19-4, Part I, ¶¶ 4-14):** Appellee lawyers (KTS partners, Zitter, Rabinowitz, UST attorneys) breached duties of inquiry (Bankr. Rule 9011(b)(3)), candor (GA Rule 3.3), honesty (GA Rule 8.4(c)), and avoiding conduct prejudicial to the administration of justice (GA Rule 8.4(d)) by knowingly filing frivolous claims based on void instruments, making false statements, failing to disclose material facts (voidness, unregistered status), and abusing court processes for improper purposes

(harassment, collection of void debts, concealing insider trading profits). (Dkt. 19-4, pp. 6-8).

6. **Deemed Admission of Irreparable Harm and $5.2225 Billion Liability (Dkt. 19-4, Part V):** As a direct consequence of Appellees' failure to timely oppose Dkt. 19-4, they are deemed to have judicially admitted, confessed, stipulated, and consented that their unlawful acts caused Appellants irreparable harm quantifiable at **$5,222,500,000.00**, and that each Appellee and their privies are jointly and severally liable for this sum certain amount. (Dkt. 19-4, p. 13).

## IV. RESOLUTION OF ALL APPELLATE ISSUES (DKT. 292) [JSAR Dkt. 5-13 on pages 6 to 23] BY JUDICIALLY NOTICED STIPULATIONS (DKT. 19-4).

The mandatory judicial notice of the binding stipulations within Dkt. 19-4 conclusively resolves the dispositive issues presented on appeal in Dkt. 292 in favor of Appellants:

1. **Issue 1 (Lack of Article III Subject Matter Jurisdiction over Predatory Criminal Usury Unlawful Debts, GX 1-4, and GX 5):** Resolved by Dkt. 19-4, Part I, ¶ 1. The stipulated criminal usury and voidness *ab initio* under N.Y. Penal Law § 190.40 confirm the subject matter, GX 1-4, and GX 5, was (i) predatory, (ii) inherently null and void ab initio, and (iii) unenforceable, uncollectible, and criminal illegal, and therefore stripped the 03-93031 Bankruptcy Court of jurisdiction to enforce or facilitate the collection of such predatory criminal usury claims.

2. **Issue 2 (Violation of NY Criminal Usury Law):** Resolved by Dkt. 19-4, Part I, ¶ 1. The stipulation explicitly confirms violation of § 190.40.

3. **Issue 3 (Void *Ab Initio* Status / Violation of Public Policy & Federal Securities Laws):** Resolved by Dkt. 19-4, Part I, ¶ 1 & Part II, ¶ 2. Stipulations confirm voidness under N.Y. criminal law and independently under 15 U.S.C. § 78cc(b) due to unregistered broker-dealer status, establishing violation of public policy and federal securities laws (15 U.S.C. §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78cc(b), 78ff).

4. **Issue 4 (Article III Standing of Unregistered Broker-Dealers):** Resolved by Dkt. 19-4, Part II, ¶ 2 & Part IV, ¶¶ 20-23. Stipulations confirm unregistered status, voidness under § 78cc(b), and explicitly negate all elements of Article III standing (*Lujan*). Also see Ex. 3, infra.

5. **Issue 5 (FINRA Certification):** Resolved by Dkt. 19-4, Part II, ¶ 2. The stipulation confirms the FINRA certification of unregistered status. See Ex. Id., infra.

6. **Issue 6 (Operation as Illegal Association-in-Fact / CCE):** Resolved by Dkt. 19-4, Part III, ¶¶ 10, 11, 15, 16 & Part II, ¶ 9. Stipulations detailing coordinated filings (UST/KTS Dkts. 5-1 to 5-6) aimed at collecting unlawful debt, coupled with Zitter's admission of hiring KTS for this purpose, establish the operation of an illegal association-in-fact (18 U.S.C. § 1961(4)) engaging in a pattern of racketeering (18 U.S.C. §§ 1962(c), (d)).

7. **Issue 7 (Moot Filings as Aiding/Abetting Unlawful Debt Collection):** Resolved by Dkt. 19-4, Part III, ¶¶ 10-15. Stipulations confirm Dkts. 5-1 to 5-6 were predicated on void debts and filed to facilitate collection, thus constituting aiding and abetting unlawful debt collection (18 U.S.C. § 1961(6)(B)).

8. **Issue 8 (Aiding/Abetting Hobbs Act/RICO Violations):** Resolved by Dkt. 19-4, Part III, ¶¶ 10-15, 17. Stipulations confirm filings used court process ("color of official right") to

collect void debts, constituting attempted Hobbs Act extortion (§ 1951(a)) and RICO unlawful debt collection (§ 1961(6)(B)). See Ex. Id., infra.

9. **Issue 9 (Preclusive Effect of SDNY Final Judgment/Orders):** Resolved by Dkt. 19-4, Part II, ¶¶ 5-6. Stipulation confirms the 2007 Rule 41(a)(2) dismissal with prejudice, establishing absolute *res judicata* barring Appellees' claims. The stipulation also implicitly affirms the preclusive effect of Judge Sand's related orders (e.g., Dkt. 65, 02cv2219).

10. **Issue 10 (Appellants as Prevailing Parties):** Resolved by Dkt. 19-4, Part II, ¶¶ 5-6. The stipulated voluntary dismissal with prejudice legally renders Appellants the prevailing parties in 02cv2219 (*see L-3 Commc'ns EOTech*, 921 F.3d at 18-19), with preclusive effect carrying over.

11. **Issue 11 (Mandatory Turnover of Insider-Trading Profits):** Resolved by Dkt. 19-4, Part I, ¶¶ 8, Part II, ¶ 2, and indirectly by Issue 9's resolution. Stipulated voidness under § 78cc(b) and preclusion confirm Appellees' lack of rights. Judge Sand's Dkt. 65 order (referenced in Dkt. 292, Issue 9 and Issue 11) found Appellees were § 78p(b) statutory insiders. The stipulations solidify Appellants' position regarding the estate's entitlement to turnover under 11 U.S.C. §§ 541/542.

12. **Issue 12 (Appellees as Fiduciaries/Equitable Lien/Constructive Trust):** Resolved implicitly by Issue 11's resolution regarding § 78p(b) status. § 78p(b) insider status inherently creates fiduciary duties regarding short-swing profits, supporting imposition of equitable remedies.

13. **Issue 13 (Ethical Violations):** Resolved by Dkt. 19-4, Part I, ¶¶ 4-14 & Part IV, ¶¶ 26. Stipulations explicitly confirm violations of GA Rules 3.3, 8.4, and Bankr. Rule 9011.[8]

14. **Issue 14 (Aiding/Abetting Contempt):** Resolved implicitly by Dkt. 19-4's stipulations regarding bad faith litigation (Part I, ¶ 8; Part IV, ¶ 25), pursuit of precluded claims (Part II, ¶¶ 5-6), and violation of court process (Part III, ¶¶ 10-17). These acts facilitated defiance of court authority.

15. **Issue 15 (Participation in Racketeering):** Resolved by Dkt. 19-4, Part III, ¶¶ 10-18. Stipulations confirm multiple predicate acts (unlawful debt collection, attempted extortion via court filings) forming a pattern.[9]

16. **Issue 16 (Illegal Association-in-Fact/CCE):** (Covered by Issue 6).

17. **Issue 17 (Sanctions):** Resolved by Dkt. 19-4, Part IV, ¶ 26 & Part V. Stipulations confirm conduct violating Rule 9011(b)(1-4), and warranting sanctions under 28 U.S.C. § 1927 and inherent powers, and further established and stipulated, judicially admitted, and confessed to dangerous and violent Hobbs Act extortion, fraud, theft, negligence, intentional infliction of emotion distress, false arrest, armed aggravated assault and battery, armed unlawful entry and break-in, armed predatory unlawful debt collection activities, predatory money laundering and loan sharking 18 USC § 1964(c) admission, stipulation, agreement, consent, and confession to a consent and voluntary money judgment in the sum certain amount of $5.2225 billion joint and several, personal and individual liability.

---

[8] Also see Ex. 3, infra (FINRA's regulatory ruling).

[9] Also see Ex. 2, infra, Baker & McKenzie, et al. direct participation in the Hobbs Act predatory unlawful debt collection activities.

Friday, April 4, 2025
(17-20B) (Part 17-20B) re Supplement 1.0 to Part 17- 20A re FRE 201(c)(2) Judicial Notice of Appellees' Dispositive Stipulations.

# Part 2.

## I. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 provides the framework for judicial notice of adjudicative facts. A court is permitted under **FRE 201(b)(2)** to judicially notice a fact that is "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Critically, **FRE 201(c)(2)** imposes a mandatory duty upon the court: "The court *must* take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added).

It is axiomatic that official public records of governmental and quasi-governmental bodies, including administrative and regulatory agencies, are paradigm examples of sources whose accuracy, at least as to the existence and content of the records themselves, cannot reasonably be questioned. Federal courts, including the Eleventh Circuit, routinely take judicial notice of such materials. *See, e.g., **Bryant v. Avado Brands, Inc.**,* 187 F.3d 1271, 1278 (11th Cir. 1999) (recognizing propriety of noticing relevant public records); ***Universal Express, Inc. v. U.S. S.E.C.**,* 177 F. App'x 52, 53 (11th Cir. 2006) (confirming public records are subject to judicial notice).[10]

This principle explicitly extends to:

---

[10] "Public records are among the permissible facts that a district court may consider. See ***Stahl v. U.S. Dep't of Agric.**,* 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."); cf. ***Bryant**,* 187 F.3d at 1278 (11th Cir. 1999) (holding that "*a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice . . . of relevant public documents required to be filed with the SEC*"). (emphasis added).

1. **SEC Filings:** Courts universally recognize the propriety of taking judicial notice of documents filed with the SEC and available on EDGAR.[11] *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (documents filed with SEC are judicially noticeable); *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 355 n.5 (2d Cir. 2010); *Makro Capital of Am., Inc. v. UBS AG*, 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005).[12] **Administrative and SRO Records:** Official records and rulings from state administrative bodies (like a State Bar acting under judicial authority) and Self-Regulatory Organizations ("SROs") like FINRA are judicially noticeable. *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (noticing public records including from administrative agencies); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 79 (D. Conn. 1994) (noticing SRO records); *Gustavia Home, LLC v. Rice*, 724 F. App'x 87, 88 n.1 (2d Cir. 2018) (summary order) (noticing materials from regulatory body website).

Appellants, having identified the specific exhibits within the JSAR, hereby supply the "necessary information," compelling judicial notice under FRE 201(c)(2).

# II. APPLICATION OF LEGAL STANDARD TO REQUESTED EXHIBITS.

Pursuant to FRE 201(b)(2) and 201(c)(2), judicial notice is mandatory for the following:

---

[11] When the underlying facts come from *__an official government website__* [the SEC's EDGAR official website for public filings], courts have frequently found that such facts meet the "not subject to reasonable dispute" threshold. *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) ("[W]e may take judicial notice of information provided on an official government website."). (emphasis added).

[12] Cf., Ex. 2, infra, (Baker &McKenzie, et al.'s Hobbs Act Form SB-2 filed with the SEC to enable the collection of the predatory criminal usury unlawful debts, GX 1-4: a binding judicial admission of violations of 18 USC § 1951(a), 1961(6)(B), 1962(a-d), and 1964(c)).

## A. Exhibit 1: State Bar of Georgia Official Record (JSAR Dkt. 5-13, pp. 40-41)

1. **Identification:** Exhibit 1 consists of documents Appellants identify as originating from the official records of the State Bar of Georgia, specifically pertaining to an affidavit concerning personal service in a related disciplinary proceeding involving Appellant Ware.

2. **Justification for Notice:** Official records maintained by a State Bar, acting as an arm of the state judiciary or pursuant to delegated governmental authority, constitute public or quasi-public records whose existence and textual content are accurately and readily determinable. *See **Rosales-Martinez v. Palmer***, 753 F.3d 890, 894 (9th Cir. 2014) (permitting judicial notice of undisputed matters of public record, including administrative records). The fact *that* such a fake, fraudulent, and counterfeit purported ***affidavit*** exists within the Bar's and the Supreme Court of Georgia's official In re Ware (2008) (moot, void ab initio, fabricated, malicious, and retaliatory Hobbs Act unlawful debt collection related disbarment proceedings) records, and its precise wording, are not subject to reasonable dispute.

3. **Adjudicative Significance:** Appellants contend this document is demonstrative of improper criminal misconduct and overt and predicate acts (e.g., related to Hobbs Act violations or obstruction) by entities involved in broader loan sharking and unlawful debt collection activities disputes affecting Appellees. Judicial notice of the document's existence and content allows the Court to consider it as part of the factual matrix underlying Appellants' claims of systemic misconduct and bad faith relevant to the proceedings on appeal.

4. **Mandatory Notice:** As an official regulatory record whose existence and content are verifiable, and upon Appellants' request with reference to the JSAR, judicial notice is mandated by FRE 201(c)(2).

## B. Exhibit 2: SEC EDGAR Governmental Website Public Filing (Form SB-2)

1. **Identification:** Exhibit 2 is identified as a Hobbs Act predatory criminal usury unlawful debt collection device, the ***risible*** Form SB-2 registration statement, publicly filed and accessible via the SEC's public EDGAR system, an official governmental website, which Appellants associate with Appellees law firm Baker & McKenzie, LLP, Lawrence B. Mandala, (see JSAR Dkt. 5-16 on pages 41-49 (F-8)) (Declaration of Lawrence B. Mandala, Esq.)).

2. **Justification for Notice:** Documents filed with the SEC and publicly available on the EDGAR database are the quintessential example of records suitable for judicial notice under FRE 201(b)(2). Their status as official public filings is indisputable. *Kramer*, 937 F.2d at 774; *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000). The existence of the filing and its precise textual content are readily verifiable facts.

3. **Adjudicative Significance:** Appellants argue this filing is documentary evidence supporting allegations of Hobbs Act predatory loan sharking, unlawful debt collection, criminal misconduct (18 USC §§ 1951(a), 1961(6)(B), 1962(a-d), and 1964(c)) related to the enforcement or facilitation of the collection of predatory criminal usury claims based on the underlying predatory criminal usury null and void ab initio debt instruments (GX 1-4, GX 5).

4. **Mandatory Notice:** As a verifiable public SEC filing [Ex. 2, infra, Baker's risible Form SB-2] identified within the record, judicial notice is mandated by FRE 201(c)(2).

## C. Exhibit 3: FINRA Regulatory Determination (JSAR Dkt. 5-13, p. 48)

1. **Identification:** Exhibit 3 contains or references, according to Appellants' designation, a formal regulatory determination or certification issued by FINRA on May 17, 2021, establishing the status of certain Appellees (clients of KTS) as "unregistered broker-dealers."

2. **Justification for Notice:** FINRA, as an SEC-registered SRO, issues official rulings and maintains records pursuant to its regulatory mandate. Such formal determinations constitute ***administrative or regulatory findings*** whose existence and content, as official pronouncements of the regulatory body, are readily ascertainable and not subject to reasonable dispute. *See In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. at 79.

3. **Adjudicative Significance:** The regulatory status of these Appellees (Appellee KTS' clients, JSAR Dkt. 5-2) ***as unregistered broker-dealers*** is a fact of central, dispositive importance to this appeal. It directly triggers the voidness provisions of 15 U.S.C. § 78cc(b) with respect to the underlying predatory criminal usury unlawful debt instruments, (GX 1-4, GX 5), thereby eviscerating any potential "legally protected interest" required for Article III standing and ***rendering Appellees' claims unenforceable, uncollectible, and void ab initio as a matter of federal securities law. Judicial notice of FINRA's determination conclusively establishes this critical predicate fact***.

4. **Mandatory Notice:** As an official determination from a recognized SRO, whose existence and content are verifiable and identified within the JSAR, judicial notice is mandated by FRE 201(c)(2).

## III. SUMMARY

The documents designated as Exhibits 1, 2, and 3 comprise official records from the State Bar of Georgia, the SEC's EDGAR system, and FINRA, respectively. Each constitutes a source whose accuracy, regarding the existence and content of the record or determination itself, cannot reasonably be questioned. Appellants have requested judicial notice and supplied the necessary information by referencing these exhibits within the Joint Stipulated Appellate Record (Part 17-20B), herein. Pursuant to the unambiguous command of Federal Rule of Evidence 201(c)(2), this Court must take judicial notice of:

1. The existence and textual content of the State Bar of Georgia record identified as Exhibit 1 (JSAR Dkt. 5-13, pp. 40-41);

2. The existence and textual content of the SEC Form SB-2 filing identified as Exhibit 2, as publicly available on EDGAR; and

3. The existence and substance of the FINRA regulatory determination dated May 17, 2021, regarding the unregistered broker-dealer status of certain Appellees, identified as Exhibit 3 (JSAR Dkt. 5-13, p. 48).

Taking judicial notice of these adjudicative facts is essential for the Court's proper consideration of the dispositive issues of standing, voidness, enforceability, and related criminal and civil misconduct central to the resolution of this appeal, Case No. 25-cv-00613-MLB.

# Part 3.

The Joint Stipulated Appellate Record contains, at Dkt. 19-4, stipulations and deemed judicial admissions that are binding upon Appellees and conclusively resolve every dispositive issue presented for review in Dkt. 292 entirely in favor of Appellants. Appellees, having failed to contest the factual predicates set forth in Dkt. 19-4 as demanded therein, are judicially estopped and bound by their admissions establishing the underlying claims' criminal voidness, the preclusion of those claims, the complete absence of Article III standing, the commission of RICO and Hobbs Act violations, pervasive ethical misconduct, and joint and several liability for $5.2225 billion in damages.

**WHEREFORE**, Appellants respectfully request that this Court take mandatory judicial notice, pursuant to Federal Rule of Evidence 201(c)(2), of the enumerated factual stipulations and deemed judicial admissions contained within Docket Entry 19-4 of the Joint Stipulated Appellate Record, accept these facts as conclusive and dispositive to all issues presented in JSAR Dkt. 5-13 on pages 6 to 23, pursuant to FRE 201(f),  grant Appellants the relief sought in this appeal based upon the resolution of the issues presented in Dkt. 292 [JSAR, Id.], and set this matter down for the mandatory Rule 201(e) entitlement proceeding to permit Appellants to be heard on the judicially noted stipulations.

Respectfully submitted this 4th day of April 2025 to the Chambers of the Hon. District Judge Michael L. Brown and the Office of the District Clerk (NDGA) pursuant to 28 USC § 1654 and 18 USC §§ 2071 (a), (b).

The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226

(718) 844-1260
utware007@gmail.com

**By:** /s/ Ulysses T. Ware
**Ulysses, Attorney in Fact for Appellants**
Group Management and Ulysses T. Ware

**FRE 201(c)(2) Regulatory, Accurate, and Irrefutable Sources—Necessary Information to take judicial notice of Regulatory Facts.**

1.  Exhibit 1 [JSAR Dkt. 5-13 pages 40-41] (stipulated) (Coordinated criminal usury unlawful debt collection activity)—State Bar of Georgia's (Regulatory) Fabricated and Counterfeit purported *Affidavit of Personal Service*—Hobbs Act overt and predicate acts, Jim Crow racially-motivated, retaliatory, malicious conspiracy to extort and steal the personal and business property of Appellant Ulysses T. Ware, his license to practice law.

Exhibit A—SBGA's known false, fraudulent, counterfeit, and fabricated alleged January 15, 2007, **Affidavit of Personal Service (perjury)** on Ulysses T. Ware, Esq. at the Bureau of Prison's Brooklyn, NY MDC federal prison—the BOP has confirmed that Mr. Ware *was not* **personally served** on January 15, 2007, at the MDC Brooklyn, NY prison because according to the BOP " ... Mr. Ware *was not* incarcerated and *was not* in the custody of the Bureau of Prison on January 15, 2007, *anywhere in the United States ... and certainly not in Brooklyn, NY ... that is a fact ....*" (emphasis in original).

**STATE OF GEORGIA**
Plaintiff/Petitioner

Vs

**ULYSSES THOMAS WARE**
Defendant/Respondent
───────────────────────────────x

**STATE OF NEW YORK** }
**COUNTY OF KINGS** } ss:

SHERIFF'S AFFIDAVIT OF
SERVICE
CPLR Section 308(4)

**FILED**
1-24-08 gph

Sheriff's Case # 08000590

Index/Docket # S088047 STATE DISCIPLINARY BOARD
STATE BAR OF GEORGIA

I G. Palmieri Deputy Sheriff of the City and State of New York, authorized pursuant to ny special duties to serve process, hereby certify that: I am not a party to this action or proceeding and over 18 years of age. I further certify that on the 15th day of January 2007, at approximately 10.42AM at 80 29th Street in the borough of Brooklyn, County of Kings, I served the annexed: summons, complaint, X petition ☐ subpoena ☐ order/temporary order of protection ☐ order to show cause ☐ writ of habeas corpus ☐ property execution ☐ sheriff's sale notice ☐ sheriff's levy notice ☐ interrogatories ☐ financial disclosure affidavit X Attached Documents upon
ULYSSES THOMAS WARE, the defendant/respondent, in the following manner:

| | |
|---|---|
| **PERSONAL DELIVERY** | ☑ By delivering to and leaving with the above named defendant/respondent personally a true copy thereof, said person being known as the person mentioned and described herein. |
| **PERSONAL SERVICE ALTERNATE PERSON (RESIDENCE)** | ☐ By delivering to and leaving with, _____ a person of suitable age and discretion, who is _____ to the defendant/respondent. A true copy thereof. Said address is the dwelling place/usual place of abode of the party served. |
| **PERSONAL SERVICE ALTERNATE PERSON (EMPLOYMENT)** | ☐ By delivering to and leaving with, _____, a person at the defendant's/respondent's place of employment: _____ (work title) _____ (name of place of employment) |
| **MAILED** | ☐ On _____ I mailed the above mentioned process(es) by first class USPS mail to the defendant/respondent at his/her last known residence/actual place of business in an envelope bearing the legend "PERSONAL AND CONFIDENTIAL" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the defendant/respondent. |
| **CORPORATION** | ☐ By delivering to and leaving with, _____ a true copy thereof. Said person stated he/she was _____ (work title) an agent authorized to accept service of legal process. |
| **DESCRIPTION** | ☑ The person served is aX Male Female, and approximately: Age:48 Height: 6.4 Weight: 265lbs    Skin: Black    Hair: Black |

**MONETARY**
Sworn to (affirmed) before me

this 15 day of January 2008

Ryael J. Lucas

DEPUTY SHERIFF Shield #180

RAFAEL J. LUCAS
NOTARY PUBLIC, State of New York
No. 01LU6000044
Qualified in Queens County
Commission Expires September 20, 20 10

000017

───────────────────────────────

Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Friday, April 4, 2025
(17-20B) (Part 17-20B) re Supplement 1.0 to Part 17- 20A re FRE 201(c)(2) Judicial Notice of Appellees' Dispositive Stipulations.

2. **Exhibit 2 (see Attachment) [SEC's Edgar Regulatory Public Records System] Appellant Baker & McKenzie, LLP, et al.[13] accurate and reliable Hobbs Act Criminal Form SB-2 to extort Appellant Group Management out of +39 million (+$522 million) free-trading equity securities, to aid, abet, and facilitate the collection of GX 1-4, and GX 5, predatory criminal usury unlawful debts.**

---

[13] Lawrence B. Mandala, Esq., Robert H. Albaral, Esq., David J. Malliband, Esq., and Thomas A. Leghorn, Esq. aiding, abetting, enabling, and facilitating multiple instances of Hobbs Act 18 USC § 1961(6)(B) predatory criminal usury extortionate unlawful debt (GX 1-4, and GX 5) collection activities.

3.      Exhibit 3 [JSAR Dkt. 5-13 on page 48] (stipulated) FINRA's May 17, 2021, accurate and reliable, irrefutable regulatory ruling of unregistered broker-dealer status for each of Appellee KTS' clients that appeared in 03-93031 Chapter 11, [JSAR Dkt. 5-2, April 10, 2003], which KTS knowingly in bad faith, and recklessly suppressed and concealed, without disclosing to the Court, the UST, the Debtor, and other creditors their clients' *unregistered broker-dealer status* in violation of the District Court (NDGA) Rules on Professional Conduct Rules 3.3 and 8.4.

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <u>unregistered broker-dealer status</u> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<u>a pattern of racketeering activities.</u>**

**CERTIFICATION OF NO FINRA BUSINESS RECORDS**

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

    a) Alpha Capital, AG
    b) Stonestreet, L.P.
    c) Markham Holdings, Ltd.
    d) Amro International, S.A.
    e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of _____May_____, 2021.

Notary Public, District of Columbia

My commission expires: 5/31

Page 25 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2025, I electronically filed the foregoing (17-20B
(Part 17-20B) Supplement #1.0 re: APPELLANTS' MEMORANDUM OF LAW REGARDING
*MANDATORY JUDICIAL NOTICE* PURSUANT TO FEDERAL RULE OF EVIDENCE
201(c)(2) with the Chambers of the Hon. Michael L. Brown, and Clerk of the District Court
(NDGA) using the U.S. mail; and served all Appellees and their legal counsel counsels via public
email addresses.

*Ulegan 2. War*

# End of document

```
<DOCUMENT>
<TYPE>SB-2/A
<SEQUENCE>1
<FILENAME>ivg_sb2a1-101001.txt
<TEXT>

<PAGE>
```

Baker & McKenzie, LLP, et al., Hobbs Act Form SB-2 registration statement to facilitate criminal usury unlawful debt collection activities

As filed with the Securities and Exchange Commission on October 10, 2001

REGISTRATION NO. 333-60056

================================================================================

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549
-----------------------

# Exhibit 2
## Case No. 25cv00613 NDGA)

AMENDMENT NO. 1
TO
FORM SB-2
REGISTRATION STATEMENT
UNDER
THE SECURITIES ACT OF 1933

IVG CORP.
---------
(NAME OF SMALL BUSINESS ISSUER IN ITS CHARTER)

| Delaware | 6770 | 59-2919648 |
|----------|------|------------|
| -------- | ---- | ---------- |
| (STATE OR OTHER JURISDICTION OF INCORPORATION OR ORGANIZATION) | (PRIMARY STANDARD INDUSTRIAL CLASSIFICATION CODE NUMBER) | (IRS EMPLOYER IDENTIFICATION NUMBER) |

IVG Corp.
13135 Dairy Ashford, Suite 525
Sugar Land, Texas 77478
(281) 295-8400
(ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER, INCLUDING AREA
CODE, OF REGISTRANT'S PRINCIPAL EXECUTIVE OFFICES)
-----------------------------

Elorian Landers
IVG Corp.
13135 Dairy Ashford, Suite 525
Sugar Land, Texas 77478
(281) 295-8400



17-20B
Exhibit # 2

```
          (NAME, ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER OF AGENT
                      FOR SERVICE OF PROCESS)
                  --------------------------------
                              Copy to:
                          Lawrence B. Mandala
                           Baker & McKenzie
                       2300 Trammell Crow Center
                           2001 Ross Avenue
                           Dallas, Texas 75201
                            (214) 978-3000
                  --------------------------------
```

APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO THE PUBLIC: From time to
time after the date this registration statement becomes effective.
If this Form is filed to register additional securities for an offering pursuant
to Rule 462(b) under the Securities Act, please check the following box and list
the Securities Act registration statement number of the earlier effective
registration statement for the same offering. [ ]
If this Form is a post-effective amendment filed pursuant to Rule 462(c) under
the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. [ ]
If this Form is a post-effective amendment filed pursuant to Rule 462(d) under
the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. [ ]
If delivery of the prospectus is expected to be made pursuant to Rule 434,
please check the following box. [ ]

<PAGE>
<TABLE>

                          CALCULATION OF REGISTRATION FEE

<CAPTION>

| TITLE OF EACH CLASS OF SECURITIES TO BE REGISTERED | AMOUNT TO BE REGISTERED | PROPOSED MAXIMUM OFFERING PRICE PER SHARE(1) | PROPOSED MAXIMUM AGGREGATE OFFERING PRICE(1) | AMOUNT OF REGISTRATION FEE(1) |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Common Stock, par value $0.0001 per share, issuable upon conversion of Convertible Notes | 38,630,378(2) | $0.055 | $ 2,124,671 | $ 531 |
| Common Stock, par value $0.0001 per share, issuable upon exercise of Warrants(3) | 275,000(3) | $1.647 | $ 452,925 | $ 113 |
| Common Stock, par value $0.0001 per share, issuable upon exercise of Warrant(4) | 50,000(4) | $1.647 | $ 82,350 | $ 21 |

| | | | | |
|---|---|---|---|---|
| Common Stock, par value $0.0001 per share | 278,042(5) | $0.055 | $ 15,292 | $ 4 |
| Total | | | $ 2,675,238 | $ 669(6) |

</TABLE>

(1) Estimated solely for the purpose of calculating the registration fee in accordance with Rule 457(c) of the Securities Act of 1933, as amended, based on the average of the closing bid and asked price for our common stock as reported on the OTC Bulletin Board on October 5, 2001.
(2) Represents 200% of the shares of our common stock issuable upon conversion of convertible notes issued by us. The notes may be converted into shares of our common stock at a conversion price equal to the lower of (a) $1.5825 and (b) 85% of the average of the three lowest closing bid prices for our common stock on the principal market on which it is trading for the 22 trading days prior to but not including the date of conversion. For purposes of estimating the number of shares of our common stock issuable upon conversion of the notes, we calculated the number of shares to be issued based upon a conversion price of $0.05695, the conversion price that would have been in effect if the notes were converted on October 8, 2001. The notes are payable on January 1, 2003.
(3) Represents shares of our common stock issuable upon exercise of warrants issued to holders of the convertible notes. The warrants have an exercise price of $1.647 and may be exercised until February 2, 2006.
(4) Represents shares of our common stock issuable upon exercise of a warrant issued to Union Atlantic Capital, L.C. as partial consideration for serving as our financial advisor and private placement agent in connection with the issuance of the convertible notes. The warrant has an exercise price of $1.647 and may be exercised until April 30, 2005.
(5) Represents shares of our common stock issuable to the purchasers of the convertible notes if the closing bid price of our common stock is not equal to or greater than $2.374 for 10 consecutive trading days during the 180 day period commencing on the effective date of this registration statement.
(6) Previously paid.

THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(A) OF THE SECURITIES ACT OF 1933 OR UNTIL THE REGISTRATION STATEMENT SHALL BECOME EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(A), MAY DETERMINE.

<PAGE>

SUBJECT TO COMPLETION, DATED OCTOBER 10, 2001

PROSPECTUS

IVG CORP.

## UP TO 39,233,420 SHARES OF COMMON STOCK

This offering relates to the resale of an aggregate of 39,233,420 shares of our
common stock by persons who are referred to in this prospectus as selling
securityholders. The shares offered by this prospectus include shares issuable
by us in the future if:



- o  convertible notes held by some of the selling securityholders
     are converted into shares of our common stock;

- o  warrants held by the selling securityholders are exercised; or

- o  we are required to issue additional shares of our common stock
     to some of the selling securityholders under our agreement
     with them.

We will not receive any proceeds from the resale of these shares by the selling
securityholders. However, we could receive proceeds of up to $82,350 upon
exercise by Union Atlantic Capital, L.C, one of the selling securityholders, of
warrants held by it.

The selling securityholders may sell the shares of common stock from time to
time in public or private transactions occurring on or off the OTC Bulletin
Board, in negotiated transactions or otherwise.

Our common stock is quoted on the OTC Bulletin Board under the trading symbol
"IVGG." On October 5, 2001, the average of the closing bid and asked price of
our common stock was $0.055.

INVESTING IN OUR SECURITIES INVOLVES RISKS. YOU SHOULD PURCHASE OUR SECURITIES
ONLY IF YOU CAN AFFORD A COMPLETE LOSS OF YOUR INVESTMENT. SEE "RISK FACTORS"
BEGINNING ON PAGE 3.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES
COMMISSION HAS APPROVED OR DISAPPROVED OF THESE SECURITIES OR DETERMINED IF THIS
PROSPECTUS IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A
CRIMINAL OFFENSE.

                    THE DATE OF THIS PROSPECTUS IS _____, 2001.

The information in this prospectus is not complete and may be changed. We may
not sell these securities until the registration statement filed with the
Securities and Exchange Commission is effective. This prospectus is not an offer
to sell these securities and we are not soliciting an offer to buy these

securities in any state where the offer or sale is not permitted.

<PAGE>
<TABLE>

## TABLE OF CONTENTS

<CAPTION>

| <S>                                                                 | <C> | <C>                                                         | <C> |
|---------------------------------------------------------------------|-----|-------------------------------------------------------------|-----|
| SUMMARY                                                             | 1   | Market Price Information                                    | 15  |
| The Company                                                         | 1   | Dividends                                                   | 15  |
| Risk Factors                                                        | 1   | MANAGEMENT                                                  | 16  |
| The Offering                                                        | 1   | Directors and Executive Officers                           | 16  |
| Shares of Common Stock Outstanding:                                 | 2   | EXECUTIVE COMPENSATION                                      | 16  |
| How to Contact Us                                                   | 2   | Summary Compensation Table                                 | 16  |
| Summary Financial Data                                             | 2   | Employment Agreements                                      | 17  |
| RISK FACTORS                                                        | 3   | 2000 Omnibus Securities Plan                              | 17  |
| Risks Associated With Our Business                                 | 3   | Option Grants                                              | 17  |
| Risks Associated With Investing in Our Securities                 | 4   | Option Exercises and Option Values                        | 18  |
| SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS                        | 6   | Compensation of Directors                                 | 18  |
| USE OF PROCEEDS                                                    | 6   | SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT | 18  |
| MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | 6 | CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS | 19  |
| Results of Operations                                             | 7   | INDEMNIFICATION                                            | 20  |
| Comparison of the Six Months Ended June 30, 2001 and June 30, 2000 | 7   | FINANCING AGREEMENTS                                       | 21  |
| Comparison of the Years Ended December 31, 2000 and December 31, 1999 | 8 | Overview                                                   | 21  |
|                                                                     |     | Convertible Notes                                          | 21  |
| Comparison of the Years Ended December 31, 1999 and December 31, 1998 | 8 | Registration Rights                                       | 23  |
|                                                                     |     | Security Agreement                                         | 24  |
| Liquidity and Capital Resources                                   | 8   | Warrants for Investors                                    | 24  |
| Going Concern Consideration                                       | 9   |                                                             |     |

BUSINESS..............................................10

Overview..............................................10

Portfolio Companies...................................10

Business Strategy.....................................12

Evaluation of Potential Acquisitions..................13

Competition...........................................13

Intellectual Property.................................14

Properties............................................15

Legal Proceedings.....................................15

Employees.............................................15

Warrant for Union Atlantic............................24

DESCRIPTION OF SECURITIES TO BE REGISTERED............25

Common Stock..........................................25

SELLING SECURITYHOLDERS...............................25

PLAN OF DISTRIBUTION..................................26

LEGAL MATTERS.........................................27

EXPERTS ..............................................27

WHERE YOU CAN FIND MORE INFORMATION...................27

INDEX TO FINANCIAL STATEMENTS........................F-1

</TABLE>

<PAGE>

## SUMMARY

THIS SUMMARY HIGHLIGHTS INFORMATION CONTAINED ELSEWHERE IN THIS PROSPECTUS. WE
URGE YOU TO READ THIS ENTIRE PROSPECTUS CAREFULLY, INCLUDING THE "RISK FACTORS"
SECTION AND THE CONSOLIDATED FINANCIAL STATEMENTS AND RELATED NOTES INCLUDED
ELSEWHERE IN THIS PROSPECTUS. AS USED IN THIS PROSPECTUS, THE WORDS "WE," "US,"
"OUR" AND "THE COMPANY" REFER TO IVG CORP.; OUR SUBSIDIARIES., SWAN MAGNETICS,
INC. AND CYBERCOUPONS.COM, INC.; AND OUR DIVISION, GEEWHIZUSA.COM.

THE COMPANY

We are a holding company that intends to acquire promising revenue-generating
companies and assist them by providing financial guidance, business model
creation and implementation, access to equity resources and technology. To date,
our portfolio companies consist of the following:

       o       Our division, GeeWhizUSA.com, a manufacturer and distributor
                        of proprietary novelty, gift and branded products that light
                        up.

       o       Swan Magnetics, Inc., developer of a proprietary ultra-high
                        capacity floppy disk drive technology and the owner of 46% of

the common stock of iTVr, Inc., which is developing next
generation digital video recording technology; and

o        CyberCoupons.com, Inc., a development stage company that
         intends to be a source for consumers to obtain coupons for
         grocery, household and beauty products via the Internet.

We are also actively pursuing opportunities to expand our business into the
human resources outsourcing industry through the acquisition of professional
employer organizations. A professional employer organization typically provides
employee payroll, human resource and benefit services on an outsourced basis. At
this time, we are exploring opportunities within this arena, but do not have any
definitive agreements to merge with or acquire a professional employer
organization at this time.

RISK FACTORS

An investment in our common stock is speculative and involves a high degree of
risk. You should consider the risk factors described on pages 3 to 5 of this
prospectus, together with the other information in this prospectus, in
evaluating an investment in our common stock.

THE OFFERING

On February 2, 2001, Alpha Capital Aktiengesellschaft, AMRO International, S.A.,
Markham Holdings Ltd. and Stonestreet Limited Partnership (the "investors")
purchased from us an aggregate $1,100,000 of our 6% convertible notes due 2003.

**Unregistered broker-dealers GX 1, GX 2, GX 3, and GX 4**

Under our agreement with the investors, we will be obligated to issue additional
shares of our common stock to them if the closing bid price of our common stock
is not equal to or greater than $2.374 for 10 consecutive trading days during
the 180-day period beginning on the effective date of this registration
statement.

In consideration for their investment, we also issued the investors warrants to
purchase an aggregate of 275,000 shares of our common stock at an exercise price
of $1.647. In partial consideration for serving as our financial advisor and
private placement agent in connection with the issuance of the notes, we issued
Union Atlantic Capital, L.C. a warrant to purchase 50,000 shares of our common
stock at an exercise price of $1.647.

Through this prospectus, the selling securityholders may offer to the public the
common stock acquired upon the conversion of the notes, the exercise of the
warrants and the additional shares we may be required to issue to the investors.
The offering price of such sales will be determined at the time of sale by a
selling securityholder. See "Financing Agreements" and "Plan of Distribution."

<PAGE>

**Our agreement with the investors requires us to register:**

- **200% of the shares of common stock that would be issuable on conversion of the notes if the notes were converted on October 8, 2001 (30,630,378 shares)**

- **200% of the additional shares that would be issuable to the investors 180 days after this registration statement is made effective, if (1) our closing bid price does not equal or exceed $2.374 for 10 consecutive trading days during such period and (2) our average closing bid price over the five days at the end of such period exceeds $1.5825 (278,042 shares), and**

- **100% of the shares issuable on exercise of the warrants held by the investors (275,000 shares).**

We will not receive any of the proceeds from the resale of the common stock by the selling securityholders. We may receive total proceeds of up to $82,350 in connection with the exercise of certain warrants by the selling securityholders.

SHARES OF COMMON STOCK OUTSTANDING:

- Prior to this Offering:  51,661,759 shares

- After this Offering: 90,895,179 shares (assuming the conversion of the notes and exercise of the warrants into all shares included in the registration statement of which this prospectus is a part).

Predatory Hobbs Act unlawful debt collection activities.

HOW TO CONTACT US

Our principal offices are located at 13135 Dairy Ashford, Suite 525, Sugar Land, Texas 77478. Our telephone number is (281) 295-8400.

```
<TABLE>
SUMMARY FINANCIAL DATA
<CAPTION>
```

| | SIX MONTHS ENDED | YEAR ENDED DECEMBER 31, | |
| --- | --- | --- | --- |
| | JUNE 30, 2001 | 2000 | 1999 |
| <S> | <C> | <C> | <C> |
| Total Revenues | $     427,595 | $     396,300 | $     402,422 |
| Total Expenses | $  13,040,669 | $  23,570,385 | $     575,268 |
| Net (Loss) | $ (12,834,677) | $ (21,146,313) | $   (291,831) |
| Basic and fully diluted net loss per share | $        (.25) | $       (0.59) | $      (0.05) |
| Shares used in computing basic and fully diluted net loss | | | |

Ware, etal. v. Alpha Capital, AG, etal

25 cv 00613 (NDGA)

Contents:

17-20 B

17-20 B-FL

17-20B - Exhibit #2

/s/ Waynes R. Ware
April 4, 2025    Filed.

This package is made from post-consumer waste. Please recycle · again.

Retail

U.S. P~~ ~~



APR 04, 2025

30303

**$10.10**

RDC 03   0 Lb 9.30 Oz   S2324K504996-06

**PRESS FIRMLY TO SEAL**



FSC

PAPER POUCH

**PRESS FIRMLY TO SEAL**

# UNITED STATES POSTAL SERVICE ® | PRIORITY® MAIL

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclus~~ ~~
Domestic Mail Manual at *http://pe.usps.com*.

** See International Mail Manual at *http://pe.usps.com* for availab~~ ~~ ~~ ~~rage.

**FLAT RATE ENV~~ ~~**
ONE RATE ■ ANY WEIG~~ ~~


EXPECTED DELIVERY DAY: 04/07/25
USPS TRACKING® #

9605 5141 9262 5094 2335 67

**TRACKED ■ I~~ ~~**

USPS.COM/PICKUP

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH
howyrecycle.info

**FROM:**



# UNITED STATES POSTAL SERVICE ® | PRIORITY® MAIL

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

04.04.25

FROM:
The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226

TO:
Office of the District Clerk
U.S. District Court (NDGA)
Richard B. Russell U.S. Courthouse
75 Ted Turner Dr., SW
Atlanta, GA 30303



Label 228, December 2023   FOR DOMESTIC AND INTERNATIONAL USE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuse may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.