RECEIVED IN CHAMBERS
U.S.D.C. - Atlanta

APR 2 1 2025

KEVIN P. WEIMER, Clerk
By: J. Kelley Deputy Clerk

U.S. DISTRICT COURT
FILED
NOV 17 2004
S. D. OF N.Y.

JUDGE SWEET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

        -v.-

THOMAS WARE,
     a/k/a "Ulysses Thomas Ware,"

        Defendant.

- - - - - - - - - - - - - - - - -X

:    INDICTMENT

:    04 Cr.

**04CRIM. 1224**

No. 25cv00613

Appx C-2

COUNT ONE
(Criminal Contempt)

The Grand Jury charges:

RELEVANT PERSONS AND ENTITIES

1.    At all times relevant to this Indictment, Alpha Capital
Aktiengesellschaft was a corporation organized and existing under
the laws of Liechtenstein with its principal place of business in
Vaduz, Liechtenstein. Unregistered broker-dealer.

2.    At all times relevant to this Indictment, Amro
International was a corporation organized and exising under the
laws of Panama with its principal place of business in Zurich,
Switzerland. Unregistered broker-dealer.

3.    At all times relevant to this Indictment, Markham
Holdings, Ltd. was a corporation organized and existing under the
laws of Gibraltar with its principal place of business in
Gibraltar. Unregistered broker-dealer.

4.    At all times relevant to this Indictment, Stonestreet
Limited Partnership was a limited partership organized and

The 04cr1224 indictment is null and void ab initio for the reasons set forth in the comments to follow--on Nov. 17, 2004, David N. Kelley, the U.S. Attorney (SDNY) pursuant to Art. II pleaded the United States out of the federal court by pleading actual innocent, exculpatory affirmative defenses on the face of the indictment. The 02cv2219, 04cr1224, 09-0851 (2d Cir.); 22cv10566, and 23-865 proceedings are moot.

exising under the laws of Ontario with its principal place of business in Ontario, Canada. **Unregistered broker-dealer.**

5.   At all times relevant to this Indictment, Group Management Corporation, formerly known as IVG Corporation, formerly known as Internet Venture Group, Inc., was a Delaware corporation with its principal place of business in Atlanta, Georgia.

6.   From on or about August 25, 2004 to on or about the date of the filing of this Indictment, Silver Screen Studios, Inc. was a Georgia corporation and a successor to Group Management Corporation with its principal place of business in Atlanta, Georgia.

7.   At various times relevant to this Indictment, as set forth herein, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, served as the chief executive of and attorney for Group Management Corporation and was affiliated with Silver Screen Studios, Inc.

BACKGROUND

Civil Action

Unregistered broker-dealers lacked Article III standing to have filed the 02cv2219 18 USC 1961(6)(B) unlawful debt collection lawsuit which is null and void ab initio and moot.

8.   On or about March 20, 2002, Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership (collectively the

18 USC 1961(6)(B) unlawful debt collection activity moot lawsuit.

"Civil Plaintiffs") commenced a civil lawsuit against Group Management Corporation ("GMC") and certain of its shareholders at

Article II, actual innocent affirmative defense pleaded on the face of the indictment.

2

According to FINRA's May 17, 2021, certification all plaintiffs were unregistered broker-dealers operating in criminal violation of the federal and NYS securities laws.

*Kelley's judicial admission of RICO unlawful debt collection activity*

that time. ~~The title of the lawsuit~~ was <u>Alpha Capital</u>

<u>Aktiengesellschaft, Amro International, S.A., Markham Holdings,</u>

<u>Ltd., and Stonestreet Limited Partnership</u> v. <u>Group Management</u>

<u>Corp., Thomas Ware, Len Churn and Barry Corker,</u> 02 Civ. 2219

(LBS) (the "Civil Action"). The Civil Action was filed in the

*Article II, actual innocent affirmative defenses pleaded on the face of the indictment.*

United States District Court for the Southern District of New

*The "Civil Action" was an illegal RICO 18 USC 1961(6)(B) unlawful debt collection device designed to extort IVG and collect*

York and was assigned to United States District Judge Leonard B.

*RICO criminal usury unlawful debts, GX 1-4, which violated NYS Penal Law, section 190.40, and 18 USC 1961(6)(B).*

Sand (the "Court").

*The 02cv2219 (SDNY) "Civil Action" and its orders and judgments, GX 7, Gx 11, and GX 24 are null and void*

*ab initio.*     9.    The Civil Action involved loan agreements entered into

by each of the Civil Plaintiffs and Internet Venture Group, Inc.

*GX 1-4, and GX 5, the criminal usury subject matter.*

in or around February 2001 (the "Loan Agreements") under which

Internet Venture Group, Inc. borrowed a total of approximately

*NYS Penal Law, section 190.40 criminal usury proceeds.*

$1.1 million collectively from the Civil Plaintiffs.  These Loan

Agreements were essentially identical except for the amount of

loan principal.  They provided for the Civil Plaintiffs to

*NYS Penal Law, section 190.40 criminal usury convertible promissory notes.*

purchase <u>convertible notes</u> from Internet Venture Group, Inc.,

which were due on January 1, 2003, absent a default by Internet

Venture Group, Inc., in which case the maturity date of the notes

would be accelerated.  Each Loan Agreement consisted of a

*GX 1-4*          *GX 5, para. 10.1(iv)*

convertible note, a <u>subscription agreement,</u> and, beginning in or

around September 2001, a security agreement.

10.  Among other things, the Loan Agreements obligated

Internet Venture Group, Inc. to convert, upon the request of a

Civil Plaintiff, a certain portion of the loan principal or

3

interest into common stock of Internet Venture Group, Inc.

(hereinafter a "Conversion Request"). The number of shares that

Internet Venture Group, Inc. was obligated to convert upon a

Conversion Request would be determined in part by the stock's

prevailing market price. The Loan Agreements provided that

Internet Venture Group, Inc. could not refuse to honor Conversion

Requests without first obtaining an order from a court and

posting a bond for 130 percent of the loan amount.

Article II, actual innocent affirmative defense pleaded on the face of the indictment.

11. On or about August 17, 2001, Internet Venture Group,

Inc. changed its name to Group Management Corporation ("GMC").

12. In or around February 2002, the Civil Plaintiffs

declared GMC in default of the Loan Agreements based on GMC's

15 USC 77b(a)(11) statutory underwriter actual innocent, affirmative defense

failure to fulfill certain of its obligations under the Loan     See GX 5, para.

pleaded the United States out of the federal courts on Nov. 17, 2004.     10.1(IV), actual
Agreements related to having the stock underlying the Loan     innocent
                                                                affirmative
Agreements registered with the United States Securities and     defense pleaded
                                                                on the face of the
Exchange Commission. In addition, in or around February 2002    indictment on Nov.
                                                                17, 2004,
Alpha Capital Aktiengesellschaft submitted a Conversion Request  acquitted Ulysses
                                                                T. Ware, Esq. of
to GMC which GMC failed to honor.                               all charges.

13. In or about March 2002, the Civil Plaintiffs filed the

Civil Action seeking, among other things, an injunction directing

GMC to honor all Conversion Requests. On or about April 29,

2002, the Court entered a written order directing GMC to honor

outstanding Conversion Requests.

18 USC 1961(6)(B) RICO unlawful debt collection activity filed in the SDNY federal court to collect a NYS
Penal Law, section 190.40, class E felony, unlawful criminal usury debt is null and void ab initio--criminal usury
cannot be waived as a matter of public policy and must be enforced in all cases.

14. On November 25, 2002, the Court granted summary judgment by default against GMC. Among other things, the Court observed GMC's "repeated and willful violations of the Court's order" of April 29, 2002 directing GMC to honor Conversion Requests. GX 7 is null and void ab initio--unlawful debt collection activity.

15. By written order dated November 25, 2002, the Court, among other things, directed GMC and "its officers, agents, servants, employees and attorneys and all those in active concert with them . . . [to] continue to honor all conversion requests in accordance with the terms and conditions of the agreements between the parties and deliver all opinions and other documents necessary for Plaintiffs to sell shares received upon conversion . . . ." The Court mailed a copy of its November 25, 2002 order and decision to GMC. Null and void ab initio--unlawful debt collection activity.

16. In or around January 2003, the Internet web site maintained by the U.S. Securities and Exchange Commission indicated that THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, was the acting chief executive of GMC. On or about January 23, 2003, after seeing this information, an attorney for the Civil Plaintiffs mailed a copy of the Court's November 25, 2002 order directly to WARE. WARE later acknowledged receipt of it to the attorney for the Civil Plaintiffs.

17. On or about January 24, 2003, the Civil Plaintiffs submitted Conversion Requests to GMC. THOMAS WARE, a/k/a RICO 18 USC 1961(6)(B) unlawful debt collection activity.

5

"Ulysses Thomas Ware," the defendant, responded on behalf of GMC

and declined to honor the Conversion Requests, taking positions

that had previously been rejected by the Court.

18.   On or about March 13, 2003, the Court entered a

written order holding GMC and THOMAS WARE, a/k/a "Ulysses Thomas

Ware," the defendant, in contempt of court for failing to comply

with the Court's November 25, 2002 order to honor Conversion

GX 11 is null and void ab initio as RICO unlawful debt collection activity.

Requests.   The Court further directed GMC and WARE to honor

Conversion Requests within three days of the mailing of the

Court's order.   On or about March 17, 2003 and March 28, 2003,

the Court ordered the arrest of WARE.

Hobbs Act, RICO extortion and unlawful debt collection activity

19.   In or around June 2003, GMC honored Conversion Requests

from January 2003.

20.   In or around June and July 2003, three of the Civil

Hobbs Act RICO unlawful debt collection activity.

Plaintiffs submitted additional Conversion Requests to GMC.   GMC

did not honor these Conversion Requests.

GX 24 null and void ab initio.

21.   On or about August 13, 2003, the Court entered a

written order directing GMC to honor outstanding Conversion

Requests from Alpha Capital Aktiengesellschaft.   On or about

August 23, 2003, the Court entered a written order holding GMC

and THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, in

Hobbs Act RICO extortion, robbery, and unlawful debt collection activity.

contempt of court for failing to honor certain Conversion

Requests and ordered the arrest of WARE.   In or around September

2003, WARE sent to the Court a document indicating that he was

6

appealing the Court's orders of August 13, 2003 and August 23, 2003.

22.   On or about August 25, 2003, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, advised the Court in writing that effective August 22, 2003, a company called Nubia2000.com, Inc. had acquired all of GMC's assets.   WARE further told the Court that Nubia2000.com, Inc. had filed a petition for liquidation in the United States Bankruptcy Court. WARE further told the Court that GMC had been dissolved and ceased to exist.   Attached to WARE's letter to the Court was a form filed with the United States Securities and Exchange Commission indicating that GMC had been succeeded as of August 22, 2003 by an entity named Silver Screen Studios, Inc.

23.   On or about December 4, 2003, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, advised the Court in writing that GMC and an entity named SSSG Acquisition Corp. had filed petitions for liquidation in the United States Bankruptcy Court.   The Bankruptcy Court (NDGA)

24.   On or about September 11, 2003, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, requested and received formal authorization from the Court to appear as counsel of record for GMC in the Civil Action.

25.   THOMAS WARE, a/k/a "Ulysses Thomas Ware," the

defendant, and GMC have continued to fail to honor Conversion

Requests that have been outstanding since at least August 2003.

### The Criminal Referral

The lawsuit being null and void ab initio lacked Art. III jurisdiction over the criminal usury notes

26.   On or about December 22, 2003, the Court issued a

to enter any criminal referral to collect the RICO unlawful debts, GX 1-4, the referral is void ab

initio     written order in the Civil Action that, among other things,

reconfirmed the Court's August 23, 2003 order to the extent of

holding GMC and THOMAS WARE, a/k/a "Ulysses Thomas Ware," the

defendant, in civil contempt of its November 25, 2002 order and

"based upon their willful and continuing disobedience of this

Court's orders," referred the matter to the United States

Attorney's Office for the Southern District of New York for

prosecution of criminal contempt against, among others, WARE.

Hobbs Act, RICO extortion, robbery, and unlawful debt collection activities affirmative defenses.

### STATUTORY ALLEGATION

27.   From at least in or around January 2003 through and

including on or about the date of the filing of this Indictment,

in the Southern District of New York and elsewhere, THOMAS WARE,

a/k/a "Ulysses Thomas Ware," the defendant, together with others

known and unknown, unlawfully, willfully, and knowingly, did

disobey and resist (a lawful) writ, process, order, rule, decree,

and command by a court of the United States, to wit, WARE

disobeyed an order of the United States District Court for the

Southern District of New York that was entered on or about

November 25, 2002 in <u>Alpha Capital Aktiengesellschaft, Amro</u>

18 USC 401(3) does not apply to GX 7, GX 11, and GX 24, Hobbs Act extortion and 18 USC 1961
(6)(B) unlawful debt collection activity purported illegal and unlawful court orders.

International, S.A., Markham Holdings, Ltd., and Stonestreet

Limited Partnership v. Group Management Corp., Thomas Ware, Len

Churn and Barry Corker, 02 Civ. 2219 (LBS), ordering GMC and its

officers, agents, servants, employees, and attorneys and all

those in active concert with them to honor all Conversion

Requests submitted by the Civil Plaintiffs.

(Title 18, United States Code, Section 401(3).).

### COUNT TWO
(Criminal Contempt)

The Grand Jury further charges:

28.   The allegations set forth in paragraphs 1 through 26

are repeated, realleged, and incorporated as if set forth fully

herein.

29.   From in or around March 2003 to in or around June 2003,

in the Southern District of New York and elsewhere, THOMAS WARE,

a/k/a "Ulysses Thomas Ware," the defendant, together with others

known and unknown, unlawfully, willfully, and knowingly, did

disobey and resist a lawful writ, process, order, rule, decree,

and command by a court of the United States, to wit, WARE

GX 11 is null and void ab initio.
disobeyed an order of the United States District Court for the

Southern District of New York that was entered on or about March

13, 2003 in Alpha Capital Aktiengesellschaft, Amro International,

S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership

v. Group Management Corp., Thomas Ware, Len Churn and Barry

Corker, 02 Civ. 2219 (LBS), ordering GMC and THOMAS WARE, a/k/a

9

"Ulysses Thomas Ware," the defendant, to honor Conversion
Requests submitted by the Civil Plaintiffs.

(Title 18, United States Code, Section 401(3).).

## COUNT THREE
(Criminal Contempt)

The Grand Jury further charges:

30. The allegations set forth in paragraphs 1 through 29
are repeated, realleged, and incorporated as if set forth fully
herein.

31. From in or around August 2003, up to and including the
date of the filing of this Indictment, in the Southern District
of New York and elsewhere, THOMAS WARE, a/k/a "Ulysses Thomas
Ware," the defendant, together with others known and unknown,
unlawfully, willfully, and knowingly, did disobey and resist a
lawful writ, process, order, rule, decree, and command by a court
of the United States, to wit, WARE disobeyed an order of the
United States District Court for the Southern District of New
York that was entered on or about August 13, 2003 in Alpha

GX 24 is null and void ab initio.

Capital Aktiengesellschaft, Amro International, S.A., Markham
Holdings, Ltd., and Stonestreet Limited Partnership v. Group
Management Corp., Thomas Ware, Len Churn and Barry Corker, 02
Civ. 2219 (LBS), ordering GMC to honor Conversion Requests

10

submitted by the Civil Plaintiffs.

(Title 18, United States Code, Section 401(3).).

FOREPERSON

DAVID N. KELLEY
United States Attorney

1.    On Nov. 17, 2004, U.S. Attorney (SDNY) David N. Kelley pleaded the USA out of the federal courts by pleading the binding, Article II, actual innocent, affirmative defenses on the face of the indictment which confessed that each plaintiff was in fact a 15 USC 77b(a)(11) statutory underwriters of IVG Corp's NYS Penal Law, section 190.40 criminal usury convertible promissory notes, GX 1-4, issued and sold pursuant to GX 5, para. 10.1(iv).

2.    Kelley pleaded Art. II actual innocent affirmative defenses on the face of the indictment in paragraphs 1-13, supra, and judicially admitted to Hobbs Act, RICO extortion, robbery, and 18 USC 1961(6)(B) unlawful debt collection activities by the plaintiffs and the District Court (SDNY), Sand, J.'s illegal and criminal actions, and unlawful, void ab initio referral to the USAO on Dec. 22, 2003, to continue the RICO unlawful debt collection activities--Hobbs Act robbery, extortion, kidnapping, unlawful incarceration, theft of property, obstruction of justice, securities fraud, money laundering, perjury, bribery, and RICO 1962(a-d) criminal enterprise activities.

3.    The 04cr1224 indictment was null and void ab initio on Nov. 17, 2004--that is, as a matter of law and fact failed to charge an 18 USC 401(3) criminal contempt offense with respect to the RICO criminal usury unlawful debts, GX 1-4, which violated NYS Penal Law, section 190.40, a class E felony, and also violated 18 USC 1961(6)(B), the RICO collection of an unlawful debt, GX 1-4; and violated the Hobbs Act statute by the Sept. 1, 2004, Atlanta, GA robbery and forced break in of Ulysses T. Ware, Esq.'s law firm by Thomas W. Thrash, Jr., the U.S. Marshals (NDGA), Kenneth A. Zitter, Leonard B. Sand, the SEC, David N. Kelley, Alexander H. Southwell, and others known and unknown, an illegal association-in-fact as defined by 18 USC 1961(4).

11

Form No. USA-33s-274 (Ed. 9-25-58)

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**- v. -**

**THOMAS WARE,
a/k/a Ulysses Thomas Ware**

**Defendant.**

**INDICTMENT**

04 Cr.

(18 U.S.C. § 401(3).)

DAVID N. KELLEY
United States Attorney.

A TRUE BILL

Foreperson.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

         -v.-            :   INDICTMENT

THOMAS WARE,
       a/k/a "Ulysses Thomas Ware,"

           Defendant.

         :     04 Cr.

**04CRIM. 1224**

- - - - - - - - - - - - - - - - -x

JUDGE SWEET

*(stamp: U.S. DISTRICT COURT FILED NOV 17 2004 S.D. OF N.Y.)*

## COUNT ONE
### (Criminal Contempt)

The Grand Jury charges:

### RELEVANT PERSONS AND ENTITIES

     1.    At all times relevant to this Indictment, Alpha Capital Aktiengesellschaft was a corporation organized and existing under the laws of Liechtenstein with its principal place of business in Vaduz, Liechtenstein.

     2.    At all times relevant to this Indictment, Amro International was a corporation organized and exising under the laws of Panama with its principal place of business in Zurich, Switzerland.

     3.    At all times relevant to this Indictment, Markham Holdings, Ltd. was a corporation organized and existing under the laws of Gibraltar with its principal place of business in Gibraltar.

     4.    At all times relevant to this Indictment, Stonestreet Limited Partnership was a limited partership organized and

exising under the laws of Ontario with its principal place of business in Ontario, Canada.

5.     At all times relevant to this Indictment, Group Management Corporation, formerly known as IVG Corporation, formerly known as Internet Venture Group, Inc., was a Delaware corporation with its principal place of business in Atlanta, Georgia.

6.     From on or about August 25, 2004 to on or about the date of the filing of this Indictment, Silver Screen Studios, Inc. was a Georgia corporation and a successor to Group Management Corporation with its principal place of business in Atlanta, Georgia.

7.     At various times relevant to this Indictment, as set forth herein, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, served as the chief executive of and attorney for Group Management Corporation and was affiliated with Silver Screen Studios, Inc.

BACKGROUND

Civil Action

8.     On or about March 20, 2002, Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership (collectively the "Civil Plaintiffs") commenced a civil lawsuit against Group Management Corporation ("GMC") and certain of its shareholders at

2

that time.   The title of the lawsuit was <u>Alpha Capital</u>
<u>Aktiengesellschaft, Amro International, S.A., Markham Holdings,</u>
<u>Ltd., and Stonestreet Limited Partnership</u> v. <u>Group Management</u>
<u>Corp., Thomas Ware, Len Churn and Barry Corker</u>, 02 Civ. 2219
(LBS) (the "Civil Action").   The Civil Action was filed in the
United States District Court for the Southern District of New
York and was assigned to United States District Judge Leonard B.
Sand (the "Court").

    9.    The Civil Action involved loan agreements entered into
by each of the Civil Plaintiffs and Internet Venture Group, Inc.
in or around February 2001 (the "Loan Agreements") under which
Internet Venture Group, Inc. borrowed a total of approximately
$1.1 million collectively from the Civil Plaintiffs.   These Loan
Agreements were essentially identical except for the amount of
loan principal.   They provided for the Civil Plaintiffs to
purchase convertible notes from Internet Venture Group, Inc.,
which were due on January 1, 2003, absent a default by Internet
Venture Group, Inc., in which case the maturity date of the notes
would be accelerated.   Each Loan Agreement consisted of a
convertible note, a subscription agreement, and, beginning in or
around September 2001, a security agreement.

    10.   Among other things, the Loan Agreements obligated
Internet Venture Group, Inc. to convert, upon the request of a
Civil Plaintiff, a certain portion of the loan principal or

3

interest into common stock of Internet Venture Group, Inc. (hereinafter a "Conversion Request"). The number of shares that Internet Venture Group, Inc. was obligated to convert upon a Conversion Request would be determined in part by the stock's prevailing market price. The Loan Agreements provided that Internet Venture Group, Inc. could not refuse to honor Conversion Requests without first obtaining an order from a court and posting a bond for 130 percent of the loan amount.

11.  On or about August 17, 2001, Internet Venture Group, Inc. changed its name to Group Management Corporation ("GMC").

12.  In or around February 2002, the Civil Plaintiffs declared GMC in default of the Loan Agreements based on GMC's failure to fulfill certain of its obligations under the Loan Agreements related to having the stock underlying the Loan Agreements registered with the United States Securities and Exchange Commission.  In addition, in or around February 2002, Alpha Capital Aktiengesellschaft submitted a Conversion Request to GMC which GMC failed to honor.

13.  In or about March 2002, the Civil Plaintiffs filed the Civil Action seeking, among other things, an injunction directing GMC to honor all Conversion Requests.  On or about April 29, 2002, the Court entered a written order directing GMC to honor outstanding Conversion Requests.

4

14.  On November 25, 2002, the Court granted summary
judgment by default against GMC.  Among other things, the Court
observed GMC's "repeated and willful violations of the Court's
order" of April 29, 2002 directing GMC to honor Conversion
Requests.

15.  By written order dated November 25, 2002, the Court,
among other things, directed GMC and "its officers, agents,
servants, employees and attorneys and all those in active concert
with them . . . [to] continue to honor all conversion requests in
accordance with the terms and conditions of the agreements
between the parties and deliver all opinions and other documents
necessary for Plaintiffs to sell shares received upon conversion
. . . ."  The Court mailed a copy of its November 25, 2002 order
and decision to GMC.

16.  In or around January 2003, the Internet web site
maintained by the U.S. Securities and Exchange Commission
indicated that THOMAS WARE, a/k/a "Ulysses Thomas Ware," the
defendant, was the acting chief executive of GMC.  On or about
January 23, 2003, after seeing this information, an attorney for
the Civil Plaintiffs mailed a copy of the Court's November 25,
2002 order directly to WARE.  WARE later acknowledged receipt of
it to the attorney for the Civil Plaintiffs.

17.  On or about January 24, 2003, the Civil Plaintiffs
submitted Conversion Requests to GMC.  THOMAS WARE, a/k/a

5

"Ulysses Thomas Ware," the defendant, responded on behalf of GMC and declined to honor the Conversion Requests, taking positions that had previously been rejected by the Court.

18.     On or about March 13, 2003, the Court entered a written order holding GMC and THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, in contempt of court for failing to comply with the Court's November 25, 2002 order to honor Conversion Requests.  The Court further directed GMC and WARE to honor Conversion Requests within three days of the mailing of the Court's order.  On or about March 17, 2003 and March 28, 2003, the Court ordered the arrest of WARE.

19.     In or around June 2003, GMC honored Conversion Requests from January 2003.

20.     In or around June and July 2003, three of the Civil Plaintiffs submitted additional Conversion Requests to GMC.  GMC did not honor these Conversion Requests.

21.     On or about August 13, 2003, the Court entered a written order directing GMC to honor outstanding Conversion Requests from Alpha Capital Aktiengesellschaft.  On or about August 23, 2003, the Court entered a written order holding GMC and THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, in contempt of court for failing to honor certain Conversion Requests and ordered the arrest of WARE.  In or around September 2003, WARE sent to the Court a document indicating that he was

6

appealing the Court's orders of August 13, 2003 and August 23, 2003.

22. On or about August 25, 2003, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, advised the Court in writing that effective August 22, 2003, a company called Nubia2000.com, Inc. had acquired all of GMC's assets. WARE further told the Court that Nubia2000.com, Inc. had filed a petition for liquidation in the United States Bankruptcy Court. WARE further told the Court that GMC had been dissolved and ceased to exist. Attached to WARE's letter to the Court was a form filed with the United States Securities and Exchange Commission indicating that GMC had been succeeded as of August 22, 2003 by an entity named Silver Screen Studios, Inc.

23. On or about December 4, 2003, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, advised the Court in writing that GMC and an entity named SSSG Acquisition Corp. had filed petitions for liquidation in the United States Bankruptcy Court.

24. On or about September 11, 2003, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, requested and received formal authorization from the Court to appear as counsel of record for GMC in the Civil Action.

25.   THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, and GMC have continued to fail to honor Conversion Requests that have been outstanding since at least August 2003.

### The Criminal Referral

26.   On or about December 22, 2003, the Court issued a written order in the Civil Action that, among other things, reconfirmed the Court's August 23, 2003 order to the extent of holding GMC and THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, in civil contempt of its November 25, 2002 order and "based upon their willful and continuing disobedience of this Court's orders," referred the matter to the United States Attorney's Office for the Southern District of New York for prosecution of criminal contempt against, among others, WARE.

### STATUTORY ALLEGATION

27.   From at least in or around January 2003 through and including on or about the date of the filing of this Indictment, in the Southern District of New York and elsewhere, THOMAS WARE, a/k/a "Ulysses Thomas Ware," the defendant, together with others known and unknown, unlawfully, willfully, and knowingly, did disobey and resist a lawful writ, process, order, rule, decree, and command by a court of the United States, to wit, WARE disobeyed an order of the United States District Court for the Southern District of New York that was entered on or about November 25, 2002 in Alpha Capital Aktiengesellschaft, Amro

8

International, S.A., Markham Holdings, Ltd., and Stonestreet

Limited Partnership v. Group Management Corp., Thomas Ware, Len

Churn and Barry Corker, 02 Civ. 2219 (LBS), ordering GMC and its

officers, agents, servants, employees, and attorneys and all

those in active concert with them to honor all Conversion

Requests submitted by the Civil Plaintiffs.

(Title 18, United States Code, Section 401(3).).

### COUNT TWO
(Criminal Contempt)

The Grand Jury further charges:

28.  The allegations set forth in paragraphs 1 through 26

are repeated, realleged, and incorporated as if set forth fully

herein.

29.  From in or around March 2003 to in or around June 2003,

in the Southern District of New York and elsewhere, THOMAS WARE,

a/k/a "Ulysses Thomas Ware," the defendant, together with others

known and unknown, unlawfully, willfully, and knowingly, did

disobey and resist a lawful writ, process, order, rule, decree,

and command by a court of the United States, to wit, WARE

disobeyed an order of the United States District Court for the

Southern District of New York that was entered on or about March

13, 2003 in Alpha Capital Aktiengesellschaft, Amro International,

S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership

v. Group Management Corp., Thomas Ware, Len Churn and Barry

Corker, 02 Civ. 2219 (LBS), ordering GMC and THOMAS WARE, a/k/a

9

"Ulysses Thomas Ware," the defendant, to honor Conversion
Requests submitted by the Civil Plaintiffs.

(Title 18, United States Code, Section 401(3).).

## COUNT THREE
(Criminal Contempt)

The Grand Jury further charges:

30.    The allegations set forth in paragraphs 1 through 29
are repeated, realleged, and incorporated as if set forth fully
herein.

31.    From in or around August 2003, up to and including the
date of the filing of this Indictment, in the Southern District
of New York and elsewhere, THOMAS WARE, a/k/a "Ulysses Thomas
Ware," the defendant, together with others known and unknown,
unlawfully, willfully, and knowingly, did disobey and resist a
lawful writ, process, order, rule, decree, and command by a court
of the United States, to wit, WARE disobeyed an order of the
United States District Court for the Southern District of New
York that was entered on or about August 13, 2003 in Alpha
Capital Aktiengesellschaft, Amro International, S.A., Markham
Holdings, Ltd., and Stonestreet Limited Partnership v. Group
Management Corp., Thomas Ware, Len Churn and Barry Corker, 02
Civ. 2219 (LBS), ordering GMC to honor Conversion Requests

10

submitted by the Civil Plaintiffs.

(Title 18, United States Code, Section 401(3).).

FOREPERSON

DAVID N. KELLEY
United States Attorney

11

Form No. USA-33s-274 (Ed. 9-25-58)

---

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

**- v. -**

**THOMAS WARE,**
**a/k/a Ulysses Thomas Ware**

**Defendant.**

---

### INDICTMENT

04 Cr.

(18 U.S.C. § 401(3).)

_____
DAVID N. KELLEY
United States Attorney.

A TRUE BILL

_____
Foreperson.

---

# JSAR Dkt. 5-13 pages 43-60

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *__statutory insider status__* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *__unregistered broker-dealer__* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities.[6]

RECEIVED IN CHAMBERS
U.S.D.C. - Atlanta

APR 2 1 2025

KEVIN P. WEIMER, Clerk
By: J. Kelley Deputy Clerk

---

[6] Judge Sand's Aug. 13, 2003, ruling, binding __a lawful court order__—(A) subject to enforcement against Hagenau, KTS, its client, et al., via civil and criminal contempt (18 USC §§401(2), 401(3)) absolutely binding on the 03-93031 Chapter 11 Bankruptcy Court (NDGA) (Hagenau, C.J.), which (B) *__conferred fiduciary duty status__* on all 18 USC §1962(d) racketeering to commit bankruptcy fraud unindicted coconspirators to wit, Hagenau, KTS, its partners, each of *__KTS' unregistered broker-dealer clients, et al.__*— that is, Hagenau, KTS, its partners, and its clients are subject to (i) *__an existing and extant and current equitable lien on their personal and individual assets__*, (ii) current and extant constructive trust impressed on their assets, (iii) and U.C.C. Article 1 encumbrance and lien on their assets in the amount of *__+$522M plus interest__* running from the date of Judge Sand's 15 USC §78p(b) court order, August 13, 2003, (i.e., stolen and concealed property and assets of the 03-93031 Chapter 11 estate).

Ex. 1—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act) Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick, Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice*.

Appx 34-2—GX 24 (Dkt. 65, 02cv2219)—found each 02cv2219 plaintiff to be a 15 USC 78p(b) statutory insider of GPMT, and their and their agents required to disgorge back to GPMT +$500 million in trading profits.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALPHA CAPITAL AKTIENGESELLSCHAFT,
AMRO INTERNATIONAL, S.A.,
MARKHAM HOLDINGS, LTD., and
STONESTREET LIMITED PARTNERSHIP,

                    Plaintiffs,

            -against-                                    02 Civ. 2219 (LBS)

GROUP MANAGEMENT CORP.,                                  ORDER
formerly known as IVO CORP.,
formerly known as INTERNET
VENTURE CORP.,

                    Defendant.

SAND, District Judge:

        In a telephonic conference on July 2, 2003, this Court ordered that Defendant Group Management comply with a conversion request by Plaintiff Stonestreet L.P., contingent on the provision by Plaintiff of an affidavit stating, *inter alia*, that Stonestreet beneficially owned less than 9.9% of Group Management's common stock, as well as an opinion letter stating that the conversion would therefore be in compliance with Rule 144(k). *See* Tr. July 2, 2003. Plaintiff subsequently provided an unsworn statement to the effect that Stonestreet's ownership was below the appropriate level; when Defendant still failed to honor the conversion request, the Court ordered on July 23 that i) Plaintiff provide a sworn affidavit, as required by July 2 Order; and ii) that Defendant honor the Stonestreet conversion request within two business days thereafter, on pain of contempt.

        On August 1, 2003, the Court received from Plaintiff copies of an affidavit and opinion

COPIES MAILED TO ALL PARTIES

The conspiracy to commit securities and bankruptcy fraud by KTS during the In re Group Mangement Corp, 03-93031 (BC NDGA) Chapter 11 proceedings. KTS' clients' judicially admitted in ex parte communications with the 02cv2219 (SDNY) district court (Sand, J.) that KTS did in fact knowingly violated 18 USC 2, 157, 371, 924(c), 1201-02,1341, 1343, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B) and 1962(d) by concealing and suppressing its clients' ownership of GPMT's stock.

letter relating not to Plaintiff Stonestreet, but rather to Plaintiff Alpha Capital. Plaintiff

stipulated, upon inquiry from Chambers, that Stonestreet in fact beneficially owned more than

9.9% of Group Management's stock.

Given the above facts, the Court observes that the conditions set in the July 2 Order

regarding the Stonestreet conversion request have not been met, and that Defendant is therefore

not in contempt of that Order, or of the follow-up Order of July 23. Nonetheless, pursuant to

other orders of this Court, including the Order and Judgment of November 25, 2002, Defendant

is still bound to honor appropriate conversion requests from Alpha Capital, and Plaintiff has

submitted both an affidavit and opinion letter regarding the legality of the current Alpha

conversion request. Accordingly, failure by Defendant to honor that request within five business

days of this Order shall constitute contempt.

SO ORDERED.

Dated: New York, New York
August 26, 2002

U.S.D.J.

Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment—December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte *Dismissal with Prejudice* of the 02cv2219 (SDNY) Lawsuit *After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware*.[7]

---

[7] KTS' *unregistered broker-dealer clients'* Dec. 20, 2007, *voluntary* Rule 41(a)(2) *dismissal with prejudice* of the 02cv2219 (SDNY) lawsuit—final judgment on the merits for the Chapter 11 debtor, Group Management, and 11 USC §1109(b) statutory party in interest Ulysses T. Ware, is currently and will be enforced against Hagenau, KTS, its clients, and each 18 USC §1962(d) unindicted coconspirator *resisting* the *legal and equitable preclusive effects*—that is, the immediate 11 USC §542(a) turnover of all Chapter 11 estate assets, of the binding court order, see 18 USC §§401(2), and 401(3), and Fed. R. Crim. P. 42.



United States District Court
Southern District of New York

Alpha Capital Aktiengesellschaft, Amro
International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership,

Plaintiffs,

-against-

Group Management Corp., formerly known
as ISG Corp., formerly known as Internet
Venture Group, Inc., Glorian Landers and
Becky Landers,

Defendants.

Order of Dismissal
Without Prejudice

03 Civ. 3219(LBS)

Pursuant to the provisions of Rule 41(a)(2) of the Federal Rules of Civil Procedure, upon
request of Plaintiff Alpha Capital Aktiengesellschaft, this case is dismissed without prejudice.

Dated: New York, New York
December , 2007

CERTIFIED AS A TRUE COPY ON
THIS DATE ___6/13/19___
BY _____
Clerk
Deputy

U.S.D.J.

12/18/07

Law Offices of Kenneth A. Zitter

By: _____
Kenneth A. Zitter, Esq.
Attorneys for Plaintiff
Alpha Capital Aktiengesellschaft
260 Madison Avenue - 18th Floor
New York, New York 10016

COPIES MAILED TO ALL PARTIES
12-18-07

Page 24 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <mark>unregistered broker-dealer status</mark> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<mark>a pattern of racketeering activities.</mark>**

### CERTIFICATION OF NO FINRA BUSINESS RECORDS

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

> a) Alpha Capital, AG
> b) Stonestreet, L.P.
> c) Markham Holdings, Ltd.
> d) Amro International, S.A.
> e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 12th day of _____May_____ 2021.

Notary Public, District of Columbia

My commission expires: 5/31

Exhibit 4—Sweet, J., *U.S. v. Ware*, 04cr1224 (SDNY) Brady disclosure court order, Dkt. 32.



UNITED STATES OF AMERICA, - against - ULYSSES THOMAS WARE, a/k/a THOMAS WARE,
Defendant.
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
2007 U.S. Dist. LEXIS 66786
04 Cr. 1224 (RWS)
August 9, 2007, Decided
August 10, 2007, Filed

Editorial Information: Subsequent History

Later proceeding at United States v. Ware, 2008 U.S. Dist. LEXIS 101837 (S.D.N.Y., Dec. 9, 2008)

Counsel                      For Thomas Ware (1), also known as Ulysses Thomas Ware (1),
         Defendant: Nancy Lee Ennis, LEAD ATTORNEY, Guljarie & Ennis, P.C. (351 Park Ave. S.),
         New York, NY.

                             Thomas Ware (1), also known as Ulysses Thomas Ware (1),
         LEAD ATTORNEY, Defendant, Pro se, Norcross, GA.
                             For USA, Plaintiff: Nicholas Stoloff Goldin, LEAD ATTORNEY,
         U.S. Attorney's Office, SDNY (St Andw's), New York, NY.
Judges: ROBERT W. SWEET, U.S.D.J.

                             Opinion

Opinion by          ROBERT W. SWEET

                             Opinion


MEMORANDUM OPINION AND ORDER

Sweet, D. J.,

Defendant Thomas Ware (the "Defendant" or "Ware") has filed a motion seeking the following: (1)
Dismissal of the indictment for lack of proper venue in the Southern District of New York; (2)
Production of exculpatory material; (3) Notice of other act evidence the Government intends to
introduce at trial under Fed. R. Evid. 404(b); (4) A bill of particulars; (5) Disclosure of ex parte
communications between Judge Leonard B. Sand and the plaintiffs in the civil contract action
underlying the pending criminal contempt charges, *Alpha Capital, et al. v. Group Management, et
al.*, No. 02 Civ. 2219 (LBS) (the "Civil Action"); (6) Disclosure of the name and contact information of
the Government official who certified certain affidavits in the Civil Action; (7) Disclosure of the
criminal history and plea agreement of "Edward M. Grushko"; (8) Disclosure of the indictments of
"Thomas Badian" and "Andrea Badian"; and (9) Disclosure of the identity of the Assistant United
States Attorney who presented the indictment to the Grand Jury. For the reasons stated below, this
motion will be granted in part and denied in part.

Venue is Proper

When a defendant is charged with criminal contempt for violating a court order, "[the district in
which the court order was issued is . . . said to have sufficient contact with the criminal contempt to
be the site of prosecution." *United States v. Reed*, 773 F.2d 477, 481-82 (2d Cir. 1985). All charges

LNDacus:

© 2010 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the
restrictions and terms and conditions of the Matthew Bender Master Agreement.

Page 26 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).



Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).



Accordingly, Defendant's motion for a bill of particulars will be denied.

**The Government Shall Produce Any Exculpatory Ex Parte Communications Between Judge Sand and the Plaintiffs in the Civil Action in its Possession**

Ware has not presented any justification, argument, or legal authority to support his request for the production of all ex parte communications between Judge Sand and the plaintiffs in the Civil Action. Furthermore, the Government has stated that if it discovers any relevant exculpatory material relating to this issue, it will produce such material to the Defendant. Accordingly, Ware's request will be granted only to the extent of requiring the Government to produce all exculpatory material to the Defendant.

**The Government is Not Obligated to Disclose the Name and Contact Information of the Official Who Certified Certain Affidavits in the Civil Action**

Again, Ware has not presented any justification, argument, or legal authority to support this request. The Government opposes this request because it amounts to identifying a witness in advance of the trial (and is not relevant). Because Ware has failed to make a showing that disclosure of the identity of this potential witness is both necessary and reasonable, the request will be denied. *See Cannone*, 528 F.2d at 301.

**The Government is Not Required to Disclose Information about Unrelated Criminal Defendants**

Ware has sought disclosure of the criminal history and plea agreement of Edward M. Grushko and the indictments of Thomas Badian and Andres Badian. He has not presented any justification, argument, or legal authority to support these requests, nor has he identified who the persons are or how they are related to this case. Furthermore, the Government has stated that it is not aware of any relationship between the trial and these persons. In the absence of any basis for this request, it will be denied.

**The Government is Not Required to Disclose the Identity of the Attorney Who Presented the Indictment to the Grand Jury**

Yet again, Ware has not presented any justification, argument, or legal authority to support this request. Under Fed. R. Cr. P. 6(e)(3)(E)(ii), "[t]he court may authorize disclosure for grand jury proceeding . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Here, Defendant has not even attempted to make such a showing. Accordingly, this request will be denied.

**Conclusion**

For the reasons stated above, Defendant's motion will be granted to the following extent: the Government shall produce all exculpatory and impeachment evidence prior to trial and all Rule 3500(b) evidence no later than the deadline for filing in limine motions. Defendant's motion is denied in all other respects.

It is so ordered.

New York, NY

August 3, 2007

ROBERT W. SWEET

U.S.D.J.

8

© 2015 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

**Page 28 of 162**
**Tuesday, February 18, 2025**
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers.

---

UNITED STATES v. WARE, CASE NO. 09-0851 (2D CIR.) (2010)
ON APPEAL FROM UNITED STATES v. WARE, 04cr1224 (Sweet, J.)
18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION
APPELLANT WARE'S OPENING BRIEF

1    Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2    S7Bo(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:

3.

4    **ADMISSION OF BROKER-DEALER STATUS BY**
5    **ARI RABINOWITZ UNDER CROSS EXAMINATION.**

6.

7    Mr. Ware: What is the name of your company?

8    Rabinowitz: LH Financial Services.

9    Mr. Ware: What business is that company?

10    Rabinowitz: We are in the private placement business.

11    Tr. 205

12    Mr. Ware: Approximately how many companies have you assisted Alpha Capital
13    with over, let's say, the last five years?

14    Rabinowitz: A good few hundred,

15    Mr. Ware: A good few hundred?

16    Rabinowitz: Yes,

17    Rabinowitz' testimony of being in the private placement business, and assisting
18    Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19    §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20    under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k)
21    regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief

Page 29 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Exhibit 6—02cv2219 (SDNY) plaintiffs' (KTS' clients') complaint's judicial admissions and confessions (res judicata and collateral estoppel) of 15 USC §77b(a)(11) *statutory underwriters* of Group Management's securities. Para. 12-13 pleaded KTS' clients out of the federal courts.

12. Plaintiffs purchased the Notes pursuant to the terms of the Subscription Agreement (the "Subscription Agreement") entered into between and among the parties on or about February 2, 2001. Plaintiffs collectively paid $1.1 million to IVG and each Plaintiff received a Note in proportion to its investment, as set forth in the paragraph 10.

13. Pursuant to Section 10.1(iv) of the Subscription Agreement, IVG was obligated to file on or before May 3, 2001, a from SB-2 Registration Statement with the United States Securities and Exchange Commission registering the stock underlying the Notes so that upon conversion the stock could be sold on the open market without restriction. IVG was obligated to

4

121

Case 1:02-cv-02219-CM    Document 102-1    Filed 06/16/11

have such registration statement declared effective on or before June 17, 2001. Thus Section 10.1(iv) of the Subscription Agreement provides:

"The Company shall file with the Commission within 90 days of the Closing Date (the "Filing Date"), and use its reasonable commercial efforts to cause to be declared effective a Form SB-2 registration statement (or such other form as it is eligible to use) within 135 days of the Closing Date in order to register the Registrable Securities for resale and distribution under the Act. The registration statement described in this paragraph must be declared effective by the Commission within 135 days of the Closing Date (as defined herein)("Effective Date")."

IVG failed to comply with its obligations and to date has not had its registration statement declared effective.

Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.

# Supplemental
# Appendices

Page **31** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Appendix 1—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, armed, forced entry into Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager.



A.      Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to *U.S. v. Ware,* 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and *In re Group Management Corp..,* 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence *while armed and without any warrant,* or lawful process—*a potentially deadly encounter,* to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest.



B.    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office *without any lawful warrant by persons impersonating U.S. Marshals*—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4— government trial exhibits in U.S. v, Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in *In re Group Management Corp.,* 03-93031 (BC NDGA) Chapter 11.

| 75. | 9/1/04;<br>Age: 44 | Contempt of Court | Atlanta, Georgia | 10/15/04:<br>Dismissed pursuant to order of Judge Leonard B. Sand | |

76.    According to Sr. U.S. Probation Officer Atonya M. Craft of the Northern District of Georgia, on September 1, 2004, the defendant was arrested in the Northern District of Georgia in response to an order issued by the Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02 CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil matter (which included the defendant) to deliver Silver Screen Studios, Inc. common stock to honor all of the conversion requests for Group Management Corp. or Silver Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand issued a warrant for the defendant's arrest for contempt of court, for failure to obey the December 22, 2003, order. This arrest order indicated that the defendant was to be arrested by the U.S. Marshals Service and detained until the defendant purged himself of contempt by delivering the above-referenced



common stock. On July 1, 2004, the defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia. He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to purge himself of contempt and offered no acceptable reason to prevent enforcement of the contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr. ordered the defendant to remain in the custody of the U.S. Marshals Service until he purged himself of contempt by either Judge Thrash or Judge Sand. The defendant's request for bond was granted, and he was released on September 3, 2004, after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

77.    On September 22, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order in part to the extent that it authorized the arrest of the defendant outside of the state of New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street, New York, New York. The order remained in effect insofar as it could be served on the defendant in the state of New York or within 100 miles of the U.S. Courthouse located at 500 Pearl Street, New York, New York.

78.    On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 set on September 2, 2004. On October 15, 2004, the defendant's motion was granted by the Honorable Thomas W. Thrash, Jr.; $150,000 was refunded to the defendant, and the corporate surety bond was discharged.

C.   Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators.



Page 35 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Appendix 2—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities.



Coordinated conspiracy to obstruct justice and conceal Brady actual innocent exculpatory/impeachment evidence.

In re Group Management Corp. (03-93031)(BC NDGA) (Hagenau, C, J.)

and

Alpha Capital, AG et al., v. GPMT, et al., (02cv2219)(SDNY) (McMahon, J.)

Actual innocent petition filed on 10.20.22.

10.20.22

SDNY Conviction Integrity Committee filing

show cause order entered 4 days later          show cause order entered 7 days later

In re GPMT, 03 93031 (BC NDGA)          Alpha Capital, AG, et al., v GPMT, et al (SDNY)

Show cause order, Dkt. 256          Show cause order, Dkt. 137

**Appendix 2-1 (con't)**—Money laundering vehicle formed from the Hobbs Act money laundering and criminal usury unlawful debt collection activities profits and proceeds fraudulently obtained by Unindicted Coconspirators Arie Rabinowitz, LH Financial Services, Alpha Capital, AG, et al.



FIRMLY TO SEAL

I UNITED STATE
POSTAL SER

delivery date specified
shipments include $100
cking® service included
nternational insurance.**
d internationally, a cust
es not cover certain items. For
Manual at *http://pe.usps.com*
ional Mail Manual at *http://pe.*

RATE ENVI
■ ANY WEIGHT

KED ■ INSUR

Retail



**P**

## US POSTAGE PAID
### $10.10

Origin: 11226
04/17/25
3509710318-16

## PRIORITY MAIL®

1 Lb 1.50 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 04/21/25

C039

SHIP
TO:

75 TED TURNER DR SW
ATLANTA GA 30303-3315

### USPS TRACKING® #

9505 5141 9262 5107 2404 84

00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

how2recycle.info
PAPER
POUCH

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

**UNITED STATES POSTAL SERVICE**

**PRIORITY® MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

18-6.1 (Southwell's stipulation)
April 17, 2025 filed

FROM: CLEARED SECURITY
Office of Ulysses T. Ware
123 Linden Blvd, Ste 9-L
Brooklyn, NY 11226

U.S. MARSHALS SERVICE
Atlanta, Georgia

303 CLEARED SECURITY

APR 2 1 2025

TO:
U.S. MARSHALS SERVICE
The Honorable Michael L. Brown
Atlanta, Georgia
U.S. District Court (NDGA)
Richard B. Russell U.S. Courthouse
75 Ted Turner Dr., SW
Atlanta, GA 30303

Label 228, December 2023     FOR DOMESTIC AND INTERNATIONAL USE

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.
Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.







# UNITED STATES
# POSTAL SERVICE ®

# PRIORITY®
# MAIL

18-5
18-6

# FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# TRACKED ■ INSURED



PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

# VISIT US AT USPS.CO
ORDER FREE SUPPLIES ONLIN