# Case No. 25-cv-00613-MLB



FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 2 3 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

---

**In re:**
**GROUP MANAGEMENT CORP.,**
a/k/a IVG Corp.,
Debtor.

---

### ULYSSES T. WARE, and
### GROUP MANAGEMENT,
**Appellants,**

v.

### ALPHA CAPITAL, AG,
### STONESTREET, L.P.,
### MARKHAM HOLDINGS, LTD.,
### AMRO INTERNATIONAL, S.A., QBE INSURANCE CORP, CRUM &
### FORSTER INSURANCE COMPANY,
**et al.,**
**Appellees.**

---

**On Appeal from the United States Bankruptcy Court**
**for the Northern District of Georgia (Atlanta Division),**
**Case No. 03-93031-BEM (Hon. Barbara Ellis-Monro)**

---

### (Title): APPELLANT'S OPENING APPELLATE BRIEF
· Filed on behalf of Appellants,
Ulysses T. Ware and Group Management

---

i

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief
Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

Dated: May 20, 2025, 7:50:29 AM
Brooklyn, New York

Respectfully submitted,

**/s/ Ulysses T. Ware**

Ulysses T. Ware
Attorney in Fact for Appellants
Ulysses T. Ware and Group Management, 11 USC 1109(b) statutory parties in
interest
The Office of Ulysses T. Ware
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

ii

## Appellants' Declaration of Duress, Objection, and Protest Filing and Rule 8015(a)(7)(B)(i), 8015(h) type-volume Compliance.

Appellants Ulysses T. Ware and Group Management, Chapter 11 Debtor (collectively, "Appellants"), and the ***prevailing parties*** in Judge Sand's 02cv2219 (SDNY) Dec. 20, 2007, Dkt. 90, voluntary, ***after the statute of limitation had run on all claims in 02cv2219*** Rule 41(a)(2) final judgment, (the "Final Judgment"), [JSAR Dkt 5-13 pp. 46-47], under oath subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC § 1746, on April 29, 2025, in Brooklyn, NY respectfully advise the Court that they submitted the accompanying *supplemental* Rule 8014(a) opening brief under threats of punitive sanctions, protest, objection, and duress **solely to comply with** the Court's manifestly ***ultra vires***, ***void ab initio***, ***unconstitutional***, and ***punitive*** April 28, 2025, Order (Dkt. 38) "25 pages" (10,833.33 words)[1] restrictive, punitive, arbitrary, capricious, and unconstitutional filing sanctions and restrictions.

---

[1] See Fed. R. Bankr P. 8015(a)(7)(B)(i) optional type-volume authorizations. Under the Fed. R. Bankr. P. 8015(a)(7)(B)(i) Appellants are lawfully authorized to opt-in to the Section B Type-Volume Limitation and submit an Opening Brief of no more than 13,000 words, see Dkt. 26, Rule 8015 (h)(1) certification of the April 10, 2025, Opening Brief that contained 9,068 words, well within the 13,000 word limitation. This unauthorized Rule 8014(a) Supplemental Opening Brief was prepared pursuant to Section B's Type-Volume word limitation: Per the Court's April 28, 2025, Order, Dkt. 38, "25 pages" was converted into the equivalent words (10,833.33) and this Supplemental Brief contains **9,459 words**, well within the Court's ***ultra vires*** ordered 10,833.33 words or **arbitrary and capricious** "25 pages" limitation equivalent—that is, a federal court *is not* lawfully authorized to reduce only increase the page or word limitation. See Appx E and Appx F.

Appellants hereby declare, on this 30th day of April 2025, in Brooklyn, NY, under oath, subject to the penalty of perjury, having personal knowledge of the facts, expressly state that:

1. **Reservation of Objections.** Appellants' fully compliant original opening brief, filed and docketed on April 10, 2025 (Dkt. 26), fully conformed to Fed. R. Bankr. P. 8015(a)(7)(B)(i) (9,068 words) ***was accepted, certified, and docketed by the District Clerk pursuant to Rule 8015(f)*** as the Appellants' Opening Brief.

2. Neither the District Clerk nor the District Judge has filed on the 25cv00613 docket any written notice of filing defects with respect to the April 10, 2025, Dkt. 26 Appellants' Opening Brief[2]; nor entered a written show cause Order in regard to the threatened punitive sanctions listed in Dkt. 38.

---

[2] Neither the District Clerk nor the District Court (Brown, J.) issued any written and docketed deficiency notice with respect to the April 10, 2025, Appellants' Opening Brief, Dkt. 26; under Fed. R. Bankr. P. 8015(f) a "**document [Dkt. 26] that complies with the form requirements ... *must be accepted*.**" By officially accepting and docketing the Appellants' Opening Brief on 10 April 2025—after the Clerk confirmed the § 8015(h)(1) certificate [see Dkt. 26, page 51: Rule 8014 X: Certificate of Compliance]—the District Court irrevocably acknowledged formal compliance with Rule 8014(a), thereby (i) waiving and forfeiting (judicial estoppel) any objection to length or formatting, (ii) foreclosing ultra vires *sua sponte* demands for an arbitrary and capricious "25 pages" supplemental brief, and (iii) precluding dismissal predicated on ***imagined defects***. See Fed. R. Civ. P. 83(b) (no sanction permitted or lawfully authorized absent ***prior actual notice*** of filing defects). Due process and the orderly administration of bankruptcy appeals compel adherence to that acceptance record and reinforces ***judicial estoppel*** against contrary positions later.

3. Appellants, therefore, object and protest to the *necessity and legality* of filing a second Rule 8014(a) "opening" brief where no written filing defects have been identified by the District Court, and they expressly preserve all appellate arguments previously asserted in Dkt. 26—including those set out in any Rule 59(e) motion for reconsideration or other relief (Rule 60(d)(3) fraud on the court)—regarding the ultra vires and void ab initio nature of Dkt. 38.

4. **Non-Waiver.** The filing of this *supplemental brief* is made **under protest, fear, *threats of punitive sanctions*, and duress**, *is not voluntary, and shall not be construed as a waiver of any substantive or procedural right, claim, or defense, nor as consent to the Court's radical and unprecedented "wholesale" (manifest) departure from the Federal Rules of Bankruptcy Procedure, Fed. R. Civ. P. 83(b), or the Due Process Clause*.[3]

---

[3] Appellants expressly invoke the common-law doctrine of duress and the contemporaneous-objection rule; any submission compelled by threat of punitive sanction preserves, rather than forfeits, all challenges to the Court's Article III constitutional subject matter jurisdiction and procedural regularity. See Fed. R. Civ. P. 83(b); Bankr. R. 8014, 8028. A *coerced filing* cannot be deemed consent, waiver, or acquiescence, cf. *Fuentes v. Shevin*, 407 U.S. 67, 95–96 (1972), nor does it moot appellate issues of structural error. The reservation clause safeguards the right to seek vacatur under Rule 60(b)(4) or Rule 60(d)(3), and to pursue mandamus prohibiting any sanction predicated upon the compelled brief or judgment, and preserves equitable or statutory remedial relief thereafter if necessary. See *Massachusetts Instit. of Tech. v. Abacus Software*, 462 F.3d 1344, 1358-59 (Fed. Cir. 2006), citing and quoting Fed. R. Civ. P. 83(b)("*No sanction or disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement*.") (emphasis added).

5. **Continued Challenge.** Appellants reserve the right to seek vacatur, mandamus, or any other appropriate relief from this or any higher court, ***including emergency mandamus relief***, with respect to Dkt. 38's threats of ultra vires punitive sanctions, and any adverse consequences stemming therefrom.

Respectfully resubmitted this 30th day of April 2025.

/s/ Ulysses T. Ware
Ulysses T. Ware, pro se and as attorney-in-fact for Group Management, Debtor

123 Linden Boulevard, Apt. 9-L
Brooklyn, NY 11226
(718) 844-1260 · UTWare007@gmail.com

vi

# Rule 8014 I:    CORPORATE DISCLOSURE STATEMENT

## I. Purpose

Pursuant to Federal Rule of Bankruptcy Procedure 8012, the purpose of this Corporate Disclosure Statement is to identify any parent corporation or any publicly held corporation that owns 10% or more of the equity interests in the Appellant.

## II. Disclosure

1. The Appellants are 11 USC §1109(b) statutory parties in interest, and the *final judgment prevailing parties* in the underlying 02cv2219 (SDNY) proceedings pursuant to the late District Judge (SDNY) Sand's Dec. 20, 2007, Dkt. 90, *voluntary* Fed. R. Civ. P. 41(a)(2) plaintiffs' (Appellees' herein) final judgment [JSAR Dkt. 5-13 at pp 46-47]:

- **Ulysses T. Ware,** an individual and natural person, doing business as Group Management, a sole proprietorship, formerly the Chapter 11 debtor in 03-93031 (BC NDGA).

- **Group Management**, operating as a sole proprietorship (d/b/a) of Mr. Ware.

2. Appellants are not a corporation, nor is there any publicly held corporation that owns 10% or more of the equity interests in Group Management. As a sole

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

proprietorship, Group Management has no parent corporation and no publicly traded ownership interests.

3. No corporate disclosure requirements apply beyond the foregoing statement.

Dated: April 29, 2025

Respectfully submitted,

*/s/ Ulysses T. Ware*

**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Attorney in fact for the Appellants, Ulysses T. Ware and Group Management.

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

# Rule 8014 II TABLE OF CONTENTS

Appellants' Declaration of Duress, Objection, and Protest Filing and Rule 8015(a)(7)(B)(i), 8015(h) type-volume Compliance. ........................................................................................................................ iii

**Rule 8014 I:        CORPORATE DISCLOSURE STATEMENT** ....................................................... vii

**Rule 8014 II TABLE OF CONTENTS** ................................................................................................ ix

**Rule 8014 III TABLE OF AUTHORITIES** ........................................................................................ xi

**Rule 8014 IV:        JURISDICTIONAL STATEMENT** ............................................................... 1

A. Basis for the Bankruptcy Court's Subject Matter Jurisdiction .................................................... 1

B. Basis for the District Court's Jurisdiction ................................................................................... 2

C. Filing Dates Demonstrating the Timeliness of the Appeal ........................................................... 3

D. Assertion That the Appeal Concerns Orders Final in Form but Void for Lack of Article III Jurisdiction ...................................................................................................................................... 4

**Rule 8014 V:        STATEMENT OF THE ISSUES PRESENTED ON APPEAL: REVERSIBLE ERRORS        6**

A. LIST OF APPELLATE ISSUES RAISED BY APPELLANTS. ................................................... 6

B. STANDARDS OF APPELLATE REVIEW ............................................................................... 11

**Rule 8014 VI:        STATEMENT OF THE CASE** ................................................................... 13

A. The Parties' Joint Stipulated Dispositive Relevant Facts to the Issues Submitted for Review. 13

I. PROCEDURAL POSTURE OF THE CASE ............................................................................... 14

A. Initiation of the Appeal ........................................................................................................... 14

B. Designation of Record and Transmittal .................................................................................. 15

C. Procedural Developments in the District Court ...................................................................... 16

D. Related Proceedings: 02cv2219 (SDNY) and 03-93031 (BC NDGA). ................................... 17

E. 25cv00613 (NDGA) Appeal Status as of May 20, 2025. .......................................................... 18

**Rule 8014 VII:        SUMMARY OF THE ARGUMENT** ......................................................... 19

**Rule 8014 VIII:        ARGUMENT** ........................................................................................... 23

Part I: "THRESHOLD" ARTICLE III JURISDICTIONAL ISSUES. .......................................... 23

1.        APPELLEES LACK ARTICLE III STANDING TO PARTICIPATE IN THIS APPEAL, REQUIRING DISMISSAL OF THEIR PARTICIPATION AND REVERSAL OF ANY UNDERLYING ORDERS PREDICATED ON THEIR PURPORTED CLAIMS. ......................... 23

APPELLANTS' JURISDICTIONAL OPENING STATEMENT .................................................. 24

Introduction, Analysis, and Discussion: ..................................................................................... 26

A.    The Constitutional Imperative of Standing and Appellees' Abject and Total Failure to Meet This *Threshold* Requirement..........................................................................................26

B. Governing Law: The Rigorous Requirements of Article III Standing.......................................30

C. Appellees Categorically Fail to Establish Any Element of Article III Standing........................32

D. GX 1-4, and GX 5 are Null and Void Ab initio Predatory Criminal Usury Subject Matter Void Ab Initio Under New York Law:................................................................................................33

E. *Steel Co.* Mandates Dismissal for Lack of Threshold Jurisdiction. ...........................................38

F. Conclusion: Appellees Are Improper Parties Lacking Constitutional Standing........................38

Part II: MERIT ISSUES RAISED BY APPELLANTS. .......................................................................39

1.    APPELLEES' (PREDATORY UNREGISTERED BROKER-DEALERS) CONVERTIBLE PROMISSORY NOTES, GX 1-4, AND GX 5, ARE *NULL AND VOID AB INITIO*, UNENFORCEABLE, UNCOLLECTIBLE, PREDATORY CRIMINAL USURY UNLAWFUL DEBTS THAT VIOLATED NYS PENAL LAW, § 190.40, A CLASS E FELONY; AND VIOLATED THE FEDERAL RACKETEERING AND LOAN SHARKING CRIMINAL LAWS, 18 USC §§ 1951(a), 1961(6)(B), 1962(a-d), and 1964(c). ..................................................................39

Introduction, Analysis, and Discussion..................................................................................................40

OPENING STATEMENT....................................................................................................................40

Rule 8014 IX. Conclusion and Precise Relief Sought...........................................................................41

Rule 8014 X: Certificate of Compliance ...............................................................................................44

RULE 8014 XI: ADDITIONAL CONSIDERATIONS FOR THIS APPEAL.....................................44

A. Potential Protective or Injunctive Relief.....................................................................................45

B. References to Predatory Usury and Voided Debt Instruments.....................................................46

C. Res Judicata and Collateral Estoppel..........................................................................................47

D. Evidentiary or Procedural Defects ..............................................................................................49

CONCLUSION .................................................................................................................................50

Declaration of Filing and Service Pursuant to 18 U.S.C. § 2071(a), (b) ..............................................52

Compliance with Standing Order, ¶ (m), Dkt. 2. ..................................................................................52

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

# Rule 8014 III TABLE OF AUTHORITIES

**Cases** *(Alphabetically Arranged)*

1.  *A.B. Dick Co. v. Marr*, 197 F.2d 498 (2d Cir. 1952) ............................................................ 23

2.  *Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379 (2d Cir. 2022). .............................22, 30

3.  *Alpha Capital AG v. Group Management Corp.*, No. 02cv2219 (S.D.N.Y.) ............................................................................................................................. 26, 44

4.  *Anderson v. Bessemer City*, 470 U.S. 564 (1985) ............................................................. 11

5.  *Brady v. Maryland*, 373 U.S. 83 (1963) .......................................................................... 17

6.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ...................................... 26, 29, 32, 36

7.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) .......................................... 31

8.  *In re JLJ Inc.*, 988 F.2d 1112 (11th Cir. 1993) ................................................................ 10

9.  *In re Walker*, 515 F.3d 1204 (11th Cir. 2008) ................................................................. 11

10. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................... 25, 28, 29, 30, ...............................................................................................................33, 34, 36

11. *PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120 (2d Cir. 1984) ............................................................................................................................... 24

12. *Ritzen Grp. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020) ................................... 10, 11

13. *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ....................................... 29

14. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................................. 28

15. *Stanley Works v. FTC*, 469 F.2d 498 (2d Cir. 1972) ........................................................ 24

16. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ......................19, 21, .......................................................................................23, 24, 25, 30, 35, 36, 38

17. *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020) ....................................................... 24

18. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) .................................... 15

**Statutes**

1.  11 U.S.C. § 105(a) ......................................................................................................... 15
2.  11 U.S.C. § 541 .............................................................................................................. 14
3.  11 U.S.C. § 542 ......................................................................................................... 14, 17
4.  11 U.S.C. § 1109(b) ........................................................................................................ 14
5.  11 U.S.C. § 1112(b) ............................................................................................... 6, 15, 46

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief
Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

6. 15 U.S.C. § 77d .............................................................................................. 27
7. 15 U.S.C. § 77e .............................................................................................. 27
8. 15 U.S.C. § 77x .............................................................................................. 27
9. 15 U.S.C. § 78o(a)(1) .......................................................................... 22, 27, 31
10. 15 U.S.C. § 78p(b) ................................................................................... 17, 39
11. 15 U.S.C. § 78cc(b) ................................................................................. 22, 31
12. 18 U.S.C. § 152 .............................................................................................. 29
13. 18 U.S.C. § 157 .............................................................................................. 29
14. 18 U.S.C. § 1951(a) ..................................................... 1, 14, 19, 24, 25, 27, 29, 36
15. 18 U.S.C. § 1961(4) ...................................................................................... 27
16. 18 U.S.C. § 1961(6)(B) ...............................1, 14, 19, 22, 24, 25, 27, 29, 33, 36, 42
17. 18 U.S.C. §§ 1961–1964 ................................................................................ 16
18. 18 U.S.C. § 1962(a)–(d) ............................................... 1, 14, 19, 25, 27, 29, 36
19. 18 U.S.C. § 1964(c) .............................................................................. 25, 29, 36
20. 18 U.S.C. § 2071(a), (b) ................................................................................ 49
21. 28 U.S.C. § 157 ........................................................................................ 1, 29
22. 28 U.S.C. § 158(a) .......................................................................................... 2
23. 28 U.S.C. § 158(a)(1) ..................................................................................... 4
24. 28 U.S.C. § 1334 ............................................................................................. 1
25. 28 U.S.C. § 1654 ............................................................................................ 15
26. 28 U.S.C. § 1746 ............................................................................................ 49
27. 28 U.S.C. § 1927 ................................................................................. 23, 39, 40
28. N.Y. Penal Law § 190.40 ................................. 1, 14, 19, 24, 26, 29, 30, 33,36

## Rules

1. Fed. R. Bankr. P. 8001 et seq. ........................................................................ 14
2. Fed. R. Bankr. P. 8002 ................................................................................. 3, 4
3. Fed. R. Bankr. P. 8007 .................................................................................. 41
4. Fed. R. Bankr. P. 8009 .................................................................................. 46
5. Fed. R. Bankr. P. 8009(a) .............................................................................. 14
6. Fed. R. Bankr. P. 8009(d) ......................................................................... 14, 22
7. Fed. R. Bankr. P. 8013 .................................................................................. 11
8. Fed. R. Bankr. P. 8013(a)(1) ......................................................................... 18
9. Fed. R. Bankr. P. ................................................................................. *passim*
10. Fed. R. Bankr. P. 8015(a)(5) ......................................................................... 40
11. Fed. R. Bankr. P. 8015(a)(6) ......................................................................... 40
12. Fed. R. Bankr. P. 8015(a)(7)(B) .................................................................... 40
13. Fed. R. Bankr. P. 8015(g) ............................................................................. 40
14. Fed. R. Bankr. P. 8015(h) ............................................................................. 40
15. Fed. R. Bankr. P. 9011 .................................................................................. 39
16. Fed. R. Bankr. P. 9011(b)(1-4) ........................................................... 23, 39, 40
17. Fed. R. Bankr. P. 9014 .................................................................................. 15
18. Fed. R. Bankr. P. 9014/12(h)(3) .............................................................. 13, 15
19. Fed. R. Bankr. P. 9024 .................................................................................. 16

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

20. Fed. R. Civ. P. 41(a)(2) ................................................................. 8, 17, 23, 25, 26
21. Fed. R. Civ. P. 59(e) ............................................................................................ 15, 16
22. Fed. R. Civ. P. 60(b)(4) ............................................................................................. 16
23. Fed. R. Evid. 201(c)(2) .................................................................................. 13, 24, 37
24. Fed. R. Evid. 201(e) ......................................................................................................... 37
25. Model Rules of Prof'l Conduct R. 3.3 ................................................................. 16, 39, 43
26. Model Rules of Prof'l Conduct R. 8.4 ................................................................. 16, 39, 43

## Constitutional Provisions

1. U.S. Const. art. III .................................................................................................... *passim*

## Other Authorities

1. Appx A and Appx B (Appellees' Stipulated Facts, DC Dkt. 19-4) ............... 12, 13, 19, 37
2. FINRA Certification (JSAR Dkt. 5-13, p. 48) ..................................................... 22, 25, 31
3. JSAR (Joint Stipulated Appellate Record, Bankr. Rule 8009(d)) ........................... *passim*
4. SEC Release 33-7190 n. 17 (1995) ................................................................................ 27

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief
Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

## Rule 8014 IV:    JURISDICTIONAL STATEMENT

### A. Basis for the Bankruptcy Court's Subject Matter Jurisdiction

#### 1. Statutory Provisions Cited by the Bankruptcy Court

    a) *28 U.S.C. § 1334*: Commonly invoked by bankruptcy courts for "original" jurisdiction over core proceedings under Title 11.

    b) *28 U.S.C. § 157*: Purports to refer Title 11 matters to a non–Article III bankruptcy tribunal.

#### 2. Factual and Legal Grounds for Asserting the Bankruptcy Court's Lack of Article III Jurisdiction

    a) The Bankruptcy Court, in *In re Group Management Corp.*, No. 03-93031 (Bankr. N.D. Ga.), purported to adjudicate controversies arising from "predatory criminal usury" transactions (designated as GX 1–4 and GX 5).

    b) These so-called "convertible promissory notes," forming the heart of the purported claims by certain unregistered broker-dealers, were *null and void ab initio criminally usurious* under federal law (18 U.S.C. §§ 1951(a), 1961(6)(B), 1962(a)–(d)) and New York Penal Law § 190.40.

1

c) Appellants contend that such "predatory criminal usury" matters—by their criminal nature and constitutional import—fall outside the limited jurisdiction authorized for a non–Article III bankruptcy forum.

d) Consequently, the Bankruptcy Court's orders dismissing the Chapter 11 case (Dkt. 28) and entering subsequent rulings (including Dkt. 256, 262, 267, 274, 275, 278, and 286, as well as JSAR Dkts. 5-6, 5-7, 5-8, 5-9, and 5-10) were entered by an adjudicatory body lacking essential Article III subject matter jurisdiction (standing) and constitutional authority to determine or enforce the rights and liabilities founded upon such criminal usury allegations.

## B. Basis for the District Court's Jurisdiction

### 1. Statutory Provisions

a) *28 U.S.C. § 158(a)*: Generally confers on the District Court appellate jurisdiction over final orders, decrees, or rulings of the Bankruptcy Court.

### 2. Present Jurisdictional Challenge

a) Although Appellants timely filed notices of appeal under 28 U.S.C. § 158(a), the District Court's appellate jurisdiction is

2

necessarily premised upon the Bankruptcy Court having had a confirmed basis in law for entering the orders in question.

b) Because the Bankruptcy Court lacked the requisite Article III constitutional authority, subject matter jurisdiction, to adjudicate claims grounded in predatory criminal usury (GX 1–4, GX 5), Appellants contend that the District Court likewise lacks Article III jurisdiction to reach or *determine the merits* of those same predatory criminal usury-based issues on appeal.

c) Put simply, no Article III jurisdiction can attach to these proceedings given that the underlying 03-93031 bankruptcy, or 02cv2219 (SDNY) tribunals were powerless *ab initio* to hear or decide these predatory criminal usury controversies.

## C. Filing Dates Demonstrating the Timeliness of the Appeal

### 1. Chronology of Key Events

a) On May 21, 2003, the Bankruptcy Court entered its Dismissal Order (Dkt. 28), which purportedly disposed of the Chapter 11 case with prejudice. Subsequent orders followed in October 2022 (Dkt. 256) and December 2022 (Dkt. 274, 275, 278, and on January 27, 2025, (Dkt. 286).

3

b) Appellants filed a Notice of Appeal (Dkt. 279) in the Bankruptcy Court on February 3, 2025, appealing Dkt. 278 (01/27/25), along with later amendments, Dkt. 289, and Dkt. 295, designating these final orders for appellate review.

## 2. Compliance with Fed. R. Bankr. P. 8002

a) The notices of appeal and amendments, Dkt. 289 (February 14, 2025), and Dkt. 293 (February 26, 2025), were filed and served within the deadlines authorized by Rule 8002, thus preserving the issues for appellate consideration.

b) Notwithstanding timeliness, Appellants steadfastly maintain that the District Court is constitutionally precluded from affirmatively exercising merits review over a proceeding that was constitutionally void at its inception.

## D. Assertion That the Appeal Concerns Orders Final in Form but Void for Lack of Article III Jurisdiction

## 1. Nature of Finality

a) The Bankruptcy Court's orders dismissing the Debtor's case, Dkt. 28, Dkt. 278 (01.27.25), and Dkt. 286 (02.18.25), issuing related rulings or

4

decrees on the supposed enforceability of the usurious notes (GX 1–4, GX 5) are, in conventional bankruptcy parlance, "final orders."

b) Accordingly, on their face, these orders are appealable under 28 U.S.C. § 158(a)(1).

## 2. **Effect of Lack of Article III Jurisdiction**

a) Appellants contend these orders or decrees entered by the Bankruptcy Court must.be declared null and void *ab initio*, because a non–Article III tribunal cannot lawfully and validly adjudicate, enforce, and/or facilitate enforcement and/or collection of predatory criminal usury claims in violation of the federal and state racketeering and loan sharking laws.

b) Consequently, the District Court, though nominally and normally vested with appellate oversight, accordingly, lacks Article III constitutional authority to *address any merits* arising from the Bankruptcy Court's unauthorized rulings.

c) Hence, in this appeal, Appellants ask the Court to recognize the absence of any valid Article III (standing) jurisdiction below 02cv2219 (SDNY) and 03-93031 (BC NDGA), and reverse or vacate all orders on that

5

threshold ground, without proceeding to a merits review of the underlying usury claims.

## Rule 8014 V:    STATEMENT OF THE ISSUES PRESENTED ON APPEAL: REVERSIBLE ERRORS

### A. LIST OF APPELLATE ISSUES RAISED BY APPELLANTS.

1. **Article III Jurisdiction.** Whether the Bankruptcy Court possessed requisite Article III subject-matter jurisdiction over claims and debts allegedly grounded in predatory and criminally usurious transactions, as presented in GX 1–4 and GX 5, and whether the Bankruptcy Court's adjudication of such disputes was constitutionally permissible. No.

2. **Recognition of Allegedly Usurious Claims.** Whether the Bankruptcy Court erred by permitting, recognizing, or enforcing Appellees' claims in the Chapter 11 case—claims alleged to arise from criminally usurious or otherwise void loan transactions—despite substantial evidence and legal precedents suggesting such debts cannot be enforced. Yes.

3. **Due Process and Evidentiary Hearing.** Whether the Bankruptcy Court deprived Appellants of due process by refusing to hold a dedicated evidentiary hearing or otherwise investigate detailed allegations of fraud on the court,

perjury, and misconduct advanced by Appellants regarding the alleged criminally usurious debts. Yes.

4. **Bad Faith Dismissal Under 11 U.S.C. § 1112(b).** Whether the Bankruptcy Court's determination that the Debtor's Chapter 11 filing was made in bad faith, justifying a dismissal with prejudice, complied with the procedural and substantive requirements of 11 U.S.C. § 1112(b), including whether the court's findings of fact or conclusions of law were insufficient or clearly erroneous. No.

5. **Bona Fide Dispute and Standing.** Whether the Bankruptcy Court erred in concluding there was no bona fide dispute over Appellees' standing to enforce the convertible notes or other debt instruments allegedly linked to criminal usury, and whether it failed to apply the proper legal standard in assessing good faith, enforceability, and standing. Yes.

6. **Refusal to Vacate or Reopen the Dismissed Case.** Whether the Bankruptcy Court abused its discretion by declining to vacate the dismissal or reopen the case in response to Appellants' proffered newly discovered evidence, alleged fraud on the court, or purported changes in controlling law that might have invalidated Appellees' usurious claims. Yes.

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief
Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

7. **Scope of Statutory Authority.** Whether the Bankruptcy Court exceeded its statutory authority by issuing final orders on matters that, according to Appellants, either fell under a prior federal judgment's preclusive effect or required specialized Article III adjudication due to the criminal nature of the challenged debt obligations. Yes.

8. **Denial of Meaningful Appellate Rights.** Whether the Bankruptcy Court deprived Appellants of a full and fair opportunity to assemble the record, pursue appellate remedies, or present all claims of wrongdoing when it allegedly denied or unduly restricted Appellants' attempts to supplement the record with further evidence of predatory criminal usury and fraud. Yes.

9. **Preclusive Effects of Prior Federal Judgments.** Whether the Bankruptcy Court erred in neglecting or refusing to evaluate the effect of prior orders or judgments—including a Rule 41(a)(2) final judgment in another federal proceeding—that may have already extinguished or barred the claims asserted by Appellees. Yes.

10. **Miscarriage of Justice from Unaddressed Illegalities.** Whether the Bankruptcy Court's rulings collectively produced a miscarriage of justice— particularly its failure to address the alleged lack of proper licensing, statutory authority, or legal basis for Appellees to enforce contracts tainted by criminal

8

usury—necessitating reversal or remand on equitable or constitutional grounds. Yes.

11. **Misapplication of Criminal Usury Statutes.** Whether the Bankruptcy Court failed to apply or misapplied relevant federal or state criminal usury statutes (including any RICO implications), thus overlooking core illegality that allegedly rendered the debts unenforceable or void ab initio. Yes.

12. **Validity of Debt Instruments and Licensure.** Whether the Bankruptcy Court erred by concluding that the convertible notes and related financing documents (GX 1–4, GX 5) were validly executed, perfected, and enforceable, even though Appellants maintained that none of the noteholders possessed the requisite broker-dealer licensure or other regulatory authority to extend credit. Yes.

13. **Failure to Sanction or Inquire into Perjury or Misrepresentation.** Whether the Bankruptcy Court erred in declining to impose sanctions or inquire into alleged perjury, false statements, or fraudulent representations by Appellees and their counsel regarding the nature or legitimacy of the debts at issue. Yes.

14. **Unclean Hands and Collusion.** Whether the Bankruptcy Court's refusal to examine alleged unclean hands or collusion among Appellees and third parties

9

prevented a full and fair adjudication of the Chapter 11 case, violating core equitable principles. Yes.

15. **Reliance on Erroneous Factual Findings.** Whether the Bankruptcy Court's rulings improperly relied on or adopted earlier erroneous factual findings—particularly with regard to the face amount, licensure status, or alleged criminal usury aspects of the debts—thereby prejudicing the outcome. Yes.

16. **Improper Extension or Recognition of Security Interests.** Whether the Bankruptcy Court's validation or recognition of any liens, security interests, or other claims secured by Appellees was authorized, given the alleged defects in the underlying transactions, the absence of proper documentation, and contravention of public policy against criminal usury. Yes.

17. **Consistency with SDNY Proceedings and Orders.** Whether the Bankruptcy Court properly considered or incorrectly disregarded relevant rulings or evidence from parallel or prior federal court actions (including those in the Southern District of New York), thereby undermining or contradicting final determinations already made in those proceedings and intensifying the jurisdictional and substantive errors alleged by Appellants. Yes.

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

**B. STANDARDS OF APPELLATE REVIEW**

When reviewing a Bankruptcy Court's rulings, the District Court employs three principal standards of review depending on the nature of the issue on appeal: (1) de novo review for conclusions of law and jurisdictional determinations; (2) clear-error review for factual findings; and (3) abuse-of-discretion review for certain discretionary or equitable decisions.

### 1. De Novo Review

Pure legal questions—such as whether the Bankruptcy Court possessed subject matter jurisdiction to hear alleged criminal usury or RICO violations—are reviewed de novo. *In re JLJ Inc.,* 988 F.2d 1112, 1116 (11th Cir. 1993). Under this standard, the reviewing court *affords no deference* to the Bankruptcy Court's legal conclusions. See also *Ritzen Grp. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 589 (2020) (reviewing certain finality determinations de novo). Thus, with respect to the purely legal challenges raised in the Joint Statement of Issues—such as subject matter jurisdiction, statutory interpretation, or finality questions under *Ritzen*—this Court will *independently* consider and decide those legal questions.

### 2. Clear-Error Review

11

Factual determinations made by the Bankruptcy Court are upheld unless they are "clearly erroneous." Fed. R. Bankr. P. 8013; *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985). A finding is clearly erroneous only when, after reviewing the entire record, "the court is left with the definite and firm conviction that a mistake has been committed." *Anderson,* 470 U.S. at 573–74. Factual disputes in the underlying bankruptcy—such as whether predatory, criminal usury promissory notes, GX 1-4, carried unlawful interest rates or whether specific parties participated in a continuing racketeering enterprise—are reviewed under this highly deferential standard. The reviewing court does not reweigh evidence; it instead asks whether the record fairly supports the factual determinations reached below.

### 3. Abuse-of-Discretion Review

Finally, if the Bankruptcy Court's order involved a discretionary or equitable decision—such as imposing or denying sanctions, approving a settlement, or managing the progress of the case—the District Court applies the abuse-of-discretion standard. *In re Walker*, 515 F.3d 1204, 1212 (11th Cir. 2008). Under that standard, the Bankruptcy Court's ruling will be affirmed unless it rests on a clear error of judgment or applies the wrong legal standard. *Walker* confirms this approach for areas in which the Bankruptcy Court necessarily exercises broad

12

equitable discretion, including decisions on sanctions, schedule management, or case oversight.

Under these controlling principles of appellate review, legal questions—such as jurisdiction or interpretations of statutory law—are examined afresh (de novo), thereby assuring that Appellants' positions receive ***thorough and independent*** consideration. Factual findings[4] will be overturned if the record reveals a clear and unmistakable error, safeguarding Appellants against any unfounded or inadequately supported determinations. Lastly, in assessing the Bankruptcy Court's discretionary decisions, the District Court will set them aside if they rest upon an erroneous legal standard or reflect an unreasonable application of the facts, preserving Appellants' rights from any improper exercise of judicial discretion.

## Rule 8014 VI:  STATEMENT OF THE CASE

**A. The Parties' Joint Stipulated Dispositive Relevant Facts to the Issues Submitted for Review.[5]**

---

[4] See Appx A and Appx B—Appellees on March 31, 2025, DC Dkt. 19-4 voluntarily and willfully agreed, consented, judicially admitted, and stipulated dispositive factual stipulations that resolved all issues on appeal in favor of Appellants.

[5] See JSAR Dkt. 5-13, 5-14, and 5-16 and Dkt. 9; Appx. A (The parties' FRE 201(c)(2) joint stipulated admissions, facts, and concessions); Appx B (same).

13

See Appx A and Appx B—Appellees on March 31, 2025, DC Dkt. 19-4 voluntarily and willfully agreed, consented, judicially admitted, and stipulated dispositive factual stipulations that resolved all issues on appeal in favor of Appellants.

# I. PROCEDURAL POSTURE OF THE CASE

## A. Initiation of the Appeal

On **February 3, 2025**, Appellants Ulysses T. Ware d/b/a and Group Management (a sole proprietorship) filed a **Notice of Appeal** (Dkt. 279, Bankruptcy Case No. 03-93031-BEM), appealing Dkt. 278 decree (01.27.25), which was docketed in the District Court on **February 7, 2025**, Dkt. 279, commencing Case No. **25cv00613** before the United States District Court for the Northern District of Georgia, Atlanta Division, the Hon. Michael L. Brown.

The appeal challenges multiple final orders or decrees entered in the 03-93031 Bankruptcy Court (NDGA), [BC Dkt. 28, 256,  263, 267, 274, 275, 278, and 286; JSAR Dkt. 5-6, 5-7, 5-8, 5-9, and 5-10]  pursuant to Bankr. Rule 9014/12(h)(3) for lack of Article III subject matter jurisdiction regarding Appellee Atlanta, GA law firm Kilpatrick, Townsend, Stockton, LLP's clients, predatory unregistered broker-dealers Hobbs Act interstate trafficking in predatory criminal usury unlawful debts,

14

GX 1-4, and GX 5, which are indisputable null and void ab initio pursuant to NYS Penal Law, section 190.40, the criminal usury law, a class E felony, and federal loan sharking and racketeering laws, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d) including but not limited to:

1) The **Order of Dismissal With Prejudice**, entered on **May 21, 2003**, by Judge Margaret H. Murphy (Dkt. 28 in Bankruptcy Case).

2) Subsequent orders or decrees entered on **October 24, 2022**, [BC Dkt. 256], and **December 12, 2022**, [BC Dkt. 274], **December 13, 2022** [BC Dkt. 275], and others, **January 27, 2025**, [BC Dkt. 278], affecting jurisdiction and substantive rights of the Appellants under Article III of the United States Constitution and statutory rights under 11 U.S.C. §§ 541, 542, and 1109(b), and Rule 8001 et seq.

## B. Designation of Record and Transmittal

Pursuant to **Rule 8009(a)** and (d), Appellants timely filed their **Designation of Record on Appeal** and **Statement of Issues**. Appellants transmitted an initial and amended Joint Stipulated Appellate Record (Dkt. 290–295) in compliance with Rule 8009(d). The record includes over 550 pages of underlying filings (see Dkt. 5-1 to 5-16, and Dkt. 9) and demonstrates substantial factual and procedural complexities,

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

including motions under 11 U.S.C. §§ 1112(b), 105(a), and Rule 9014/12(h)(3) for vacatur of void judgments.

## C. Procedural Developments in the District Court

Following the docketing of the appeal:

1. On **February 13, 2025**, the District Court (Brown, J.) issued an **Order (Dkt. 4)** advising that appellant Group Management, a sole proprietorship, see 28 USC § 1654, must appear through counsel. This was reiterated in a **March 10, 2025, Order (Dkt. 6),** which subsequently erroneously dismissed Group Management *without prejudice* for failure to obtain counsel.

2. Appellants contested this dismissal and filed a timely **Rule 59(e) Motion to Vacate** (Dkt. 14-1, 14-3) supported by detailed memoranda of law (Dkt. 14-4, 14-6) and declarations (Dkt. 14-7). The Rule 59(e) motion was denied on April 28, 2025, Dkt. 38, without any legal reasoning or analysis.

3. The District Clerk issued a **Bankruptcy Appeal Briefing Schedule** (Dkt. 10) on **March 17, 2025**, setting the Appellants' Brief due by **April 16, 2025**.

4. Appellants served formal **Notice of Adverse Consequences** to all Appellees (Dkt. 7, 7-1), citing binding federal judgments (e.g., *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010)) and asserting waiver of defenses due to non-response.

16

a. Appellants filed multiple supplemental filings between **March 18–26, 2025**, including:

b) **Request for Rule 3.3 and Rule 8.4 Show Cause Order** (Dkt. 12) (pending).

c) **Declaration of Undisputed Facts** (Dkt. 15)

d) **Supplemental Memoranda of Law on 18 U.S.C. §§ 1961–1964 RICO and § 2 Accessory Liability**, including factual exposition of judicial fraud, insider fiduciary status, and criminal usury loan schemes involving Appellees' alter egos (Dkt. 17-1 through 17-7)

e) On **March 26, 2025**, Appellants filed their **Supplemental Memorandum (Letter Brief) (Dkt. 18)** in further support of the March 10 application for a show cause order and appellate relief, incorporating specific Rule 59(e), Rule 60(b)(4), and Rule 9024 arguments. (pending).

**D. Related Proceedings: 02cv2219 (SDNY) and 03-93031 (BC NDGA).**

The bankruptcy docket (Case No. 03-93031) reflects a complex and highly contested history including:

1. **Dismissal of the 03-93031 Chapter 11 case with prejudice on May 21, 2003 (Dkt. 28)**, rendering the Debtor ineligible to refile under Title 11 for 180 days. (dismissed while the Bankruptcy Court lacked all Article III jurisdiction over

17

the predatory criminal usury subject matter, GX 1-4, and GX 5, referenced and relief on in the UST's (Dkt. 5-1, 5-3) and KTS' (Dkt. 5-2, 5-4, 5-5, and 5-6) judicial pleadings.

2. Multiple post-dismissal filings by Appellants asserting **fraud on the court**, prosecutorial misconduct, and suppression of evidence in violation of **Brady v. Maryland**, 373 U.S. 83 (1963) (see Dkt. 5-14 to 5-16) and other precedents were filed in the Chapter 11 case, yet the merits of the issues were never addressed by the Bankruptcy Court (Hagenau, C.J.).

3. Appellants have repeatedly invoked binding res judicata and claim preclusion based on Judge Sand's 02cv2219 (SDNY) voluntary **December 20, 2007, Final Judgment (Dkt. 90, 02cv2219 SDNY)** under **Fed. R. Civ. P. 41(a)(2),** and **Judge Sand's August 13, 2003, insider trading order (Dkt. 65)** establishing Appellees as fiduciary insiders subject to § 542 turnover obligations exceeding $522 million in 15 USC § 78p(b) strict-liability short-swing insider-trading profits. [JSAR Dkt. 5-13 pp 43-44; and 46-47, respectively].

## E. 25cv00613 (NDGA) Appeal Status as of May 20, 2025.

1. Appellants remain the only real parties in interest having standing actively prosecuting or appearing in the appeal. To date, no Appellee has entered an

18

appearance or responded to the appeal, despite actual service of all appellate filings and express advisories regarding the consequences of default. Dkt. 7

2. Appellants continue to seek a **status conference and hearing on pending jurisdictional and remedial motions**. Dkt. 12, Dkt. 14, and Parts 17-13 (Motion for restraining order and injunctive relief) (Pending). Denied on April 28, 2025, Dkt. 38.

3. The 25cv00613 (NDGA) appeal *is not fully briefable* as of today, May 20, 2025—that is, dispositive Article III standing and ripeness matters (see Dkt. 12, Dkt. 14), and Rule 8013(a)(1) motions (Parts 17-13, 17-16, 17-17, and 17-18) have yet to be officially docketed as of today, May 20, 2025, and accordingly the above pending dispositive jurisdictional issues have yet to be ruled on by the District Court (Brown, J.) as of this date; Appellants' supplemental principal brief is due **May 29, 2025**, per Dkt. 38.

## Rule 8014 VII: SUMMARY OF THE ARGUMENT

Appellants submit that the Bankruptcy Court's rulings suffer from two fundamental defects warranting reversal. First, the Bankruptcy Court lacked constitutional authority under Article III to adjudicate claims asserting alleged rights in "predatory criminal usury" debt instruments, GX 1-4, and GX 5. Appellees, who

(Part 18-OAAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

claim an interest in these disputed predatory criminal usury convertible promissory notes [JSAR Dkt. 5-2, 5-3, 5-4, 5-5, and 5-6; also see Dkt. 5-13, 5-14, 5-16, and Dkt. 9], never established the constitutional requisite "concrete injury in fact" to a "legally protected interest" required for Article III standing. In particular, they failed to show any factual basis to demonstrate that their purported claims—arising from facially null and void ab initio predatory criminal usury debts, legally unenforceable instruments—could invoke the Article III subject matter jurisdiction of the federal courts. Under *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), courts are obligated as a "threshold matter" to "first" confirm standing and ensure a valid case or controversy exist between the parties. Here, because Appellees' allegations rested solely on predatory, *null and void ab initio criminal usury unlawful convertible debts*, GX 1-4, no Article III standing existed. Id. at 94-95. Consequently, every order predicated on that purported standing is void and must be reversed. Id.

Second, even if jurisdiction had been established, it was not, has not, and is a legal and factual impossibility [See Appx. A and Appx. B] the underlying predatory criminal usury convertible promissory notes at issue, GX 1-4, were demonstrably criminally usurious—null and void ab initio, under New York Penal Law § 190.40, a class E felony, and federal racketeering laws, including 18 U.S.C. §§ 1951(a),

20

1961(6)(B), and 1962. These statutes prohibit "loan-sharking" transactions carrying illegally high interest rates and impose severe criminal penalties for any entity that attempts to enforce such debts. The predatory loan-sharking debts in question, which had the hallmarks of a predatory lending scheme—***charged interest rates in excess of 2,000%***, and were originated by **predatory unregistered broker-dealers** [JSAR Dkt. 5-13 on page 48], plainly fall within the ambit of these prohibitions. Because they, the predatory criminal usury debts, GX 1-4, *violated both state and federal criminal laws, they cannot serve as a basis for any legitimate claim in a bankruptcy proceeding*.

Third, the record is clear that Appellees invoked these unlawful debt instruments as their sole basis to participate in Appellants' Chapter 11 case [JSAR Dkt. 5-2, 5-3, 5-4, 5-5, and 5-6]. Appellants repeatedly objected to Appellees' standing in the Bankruptcy Court, citing official certifications from regulatory agencies showing Appellees' broker-dealer status was never validly recognized and referencing the controlling statutory prohibitions. Appellants also raised contemporaneous objections that any orders enforcing criminally usurious agreements would contravene the mandatory prohibitions codified in Title 18 and New York's penal code. Despite these repeated jurisdictional and substantive challenges, the Bankruptcy Court proceeded to adjudicate Appellees' purported

21

rights and to dismiss Appellants' reorganization efforts. [JSAR Dkt. 5-6, 5-7, 5-8, 5-9, and 5-10]

Fourth, because standing is a "fundamental" constitutional prerequisite that must be satisfied ***before a court can move to the merits***, every order that relied on Appellees' claims is fatally infirm. The bankruptcy court did not "first" conduct the "affirmative establishment" of subject matter jurisdiction demanded by *Steel Co.* The absence of a thorough inquiry into whether Appellees possessed a concrete and particularized injury in fact—and whether their alleged debts were enforceable at all—meant that the Bankruptcy Court *erred as a matter of law*, and ruled beyond its constitutional and statutory limits. Furthermore, the Bankruptcy Court's failure to address the unmistakably criminal character, NYS Penal Law, section 190.40, a class E felony, of these predatory, criminal usury debt instruments, GX 1-4, contravened longstanding jurisprudence refusing to enforce obligations tainted by criminal usury and racketeering violations. [See JSAR Id.]. *Adar Bays*, 28 F.4d 379 (2d Cir. 2022).

Finally, in light of these fundamental constitutional defects, the rulings and decrees under appeal [Dkt. 28, 256, 274, 275, 278, 286; JSAR 5-7, 5-8, 5-9, and 5-10] must be reversed. This Court should hold, "first," that no Article III jurisdiction existed over Appellees' claims, rendering any bankruptcy orders in their favor void

22

ab initio. Alternatively, even if standing were presumed, the Bankruptcy Court erred by allowing enforcement and predatory unlawful debt collection activities [JSAR Dkt. 5-1 to 5-6] proceedings on predatory criminal usury debts, GX 1-4, and GX 5, that were criminally usurious under both federal and state law. Either way, reversal is compelled. Under well-settled precedent, courts may not grant relief to parties who fail to demonstrate standing or rely on criminally unenforceable debts. *Steel Co.*, Id. at 94-95.

Consequently, all orders or decrees (Dkt. 28, 256, 263, 278, 286, etc.) purporting to legitimize or enforce these criminal usury predatory unlawful debts in Appellants' Chapter 11 case must be reversed, vacated, set aside, and annulled, nunc pro tunc, March 18, 2003, and the matter remanded for further proceedings consistent with constitutional principles and the controlling federal and state law prohibitions on criminally usurious transactions.

## Rule 8014 VIII:     ARGUMENT

### Part I: "THRESHOLD" ARTICLE III JURISDICTIONAL ISSUES.

1. **APPELLEES LACK ARTICLE III STANDING TO PARTICIPATE IN THIS APPEAL, REQUIRING DISMISSAL OF THEIR PARTICIPATION AND REVERSAL OF ANY UNDERLYING ORDERS PREDICATED ON THEIR PURPORTED CLAIMS.**

23

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

**APPELLANTS' JURISDICTIONAL OPENING STATEMENT**

Appellants' Rule 8014 appeal brief first, fundamentally, challenges the 03-93031 Chapter 11 Bankruptcy Court's and the SDNY 02cv2219 lawsuit's District Court's Article III constitutional subject matter jurisdiction (the Article III standing of Appellees, May 17, 2021, FINRA certified ***unregistered broker-dealers[6]*** [see JSAR Dkt. 5-13 on page 48])[7] over the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5 [see JSAR Dkt. 5-3, 5-4, 5-5, 5-6, 5-7, 5-8, 5-9, and 5-10], and is therefore in compliance with *Steel Co.'s* directive bifurcated into two parts—(i) Part I, infra, an Article III "threshold" jurisdictional analysis and assessment, and (ii) Part II, infra, a merits issues assessment and analysis, as required by the Court's decision in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1981): (1) "first" as a "threshold" matter ***before proceedings to the merit issues raised on appeal*** (discussed in Part II, infra) the District Court is required and mandated by *Steel Co.,* Id. at 93-95, to "first" "affirmatively establish" (not presume) ***its*** Article III

---

[6] Federal securities law, 15 USC §§ 78o(a)(1) *in pari materia* with 78cc(b), rendered the ***Predatory Criminal Usury Debt Instruments***, GX 1-4, and GX 5, ***null and void ab initio*** to all rights of the ***predatory unregistered broker-dealers*** to enforce and/or attempt 18 USC § 1961(6)(B) criminal usury unlawful debt collection activities in regard to the 02cv2219 (SDNY) lawsuit, by fraudulently appearing in the 03-93031 Chapter 11 [JSAR Dkt. 5-1 to Dkt. 5-6], ***or by fraudulently attempting to appear in this 25cv00613 (NDGA) appeal.***

[7] "JSAR" is the Appellants' and the Appellees' Bankr. Rule 8009(d) ***Joint Stipulated Appellate Record*** before the District Court on this appeal.

24

constitutional jurisdiction over the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5 (No: a legal impossibility); (2) ***then before proceeding to the merits*** issues discussed in Part II, infra,, the District Court is required to ***affirmatively determine*** (not assume) ***whether the courts from which the record [JSAR] comes from***, 02cv2219 (SDNY) and 03-93031 BC NDGA), had lawful Article III jurisdiction over the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5. (No). Id.[8] Answered in the negative--they did not.

As a matter of law this ends the District Court's lawful authority over the appeal's merits issues raised in Part II, infra, for lack of Article III subject matter jurisdiction over the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5, ***Steel Co.***, Id. at 94-95; NYS Penal Law, § 190.40; 18 USC §§ 1951(a), 1961(6)(B), and 1961(a-d), cf., *United States v. Grote*, 961 F.3d 105, 109-119 (2d Cir. 2020)

---

[8] Ipso facto as a matter of law and fact, the Appellees and their privies pursuant to their Dec. 20, 2007, ***voluntary*** Fed. R. civ. P. 41(a)(2) ***dismissal with prejudice*** of the underlying 02cv2219 (SDNY) lawsuit, and the late District Judge Leonard B. Sand's entry of final judgment [JSAR Dkt. 5-13 on pages 46-47] in favor of Appellants Group Management and Ulysses T. Ware, the Appellees herein and their ***privies terminated their status as viable concrete, adverse Article III 'real parties in interest' with respect to all aspects of the 02cv2219 (SDNY) lawsuit, and by extension all aspects of the 03-93031 BC NDGA) Chapter 11*** risible, baseless, bad faith, vexatious, filed for an improper purpose, and fraudulent claims [see JSAR Dkt. 5-1 to 5-6], cf., Bankr. Rule 9011(b)(1-4), and 28 USC § 1927, which rendered 02cv2219 (SDNY) orders, judgments, and proceedings therein ***annulled and vitiated*** as of Dec. 20, 2007; and rendered 03-93031 moot and void ab initio, *A.B. Dick Co. v. Marr*, 197 F.2d 498, 501-02 (2d Cir. 1952).

25

(Aff'd criminal conviction, criminal sentence, and criminal +$3.5 billion RICO forfeiture judgment for unlawful debt collection activities).[9]

## Introduction, Analysis, and Discussion:

### A. The Constitutional Imperative of Standing and Appellees' Abject and Total Failure to Meet This *Threshold* Requirement.[10]

This appeal is *fundamentally and irreparably tainted and corrupted* by the unlawful, deceptive, vexatious, for an improper purpose, fraudulent, and deceitful participation of putative parties – Appellees herein, who (i) fraudulently appeared in the 03-93031 Chapter 11 [JSAR Dkt. 5-2], (ii) and/or are the original plaintiffs from the Dec. 20, 2007, [JSAR Dkt.. 5-13 on pages 46-47] Fed. R. Civ. P. 41(a)(2) final

---

[9] On March 31, 2025, JSAR DC Dkt. 19-4 (Appellees' Stipulated Jurisdictional Facts), Appellees and their privies voluntarily and deliberately made the strategic litigation decision and stipulated that they and their privies factually lacked Article III standing in the underlying 02cv2219 (SDNY) lawsuit, and Article III standing to have appeared and participated in the 03-93031 Chapter 11 [see JSAR Dkt. 5-1 to 5-6]. A voluntary and conclusive stipulation of the Appellees, which the District Court is required to take FRE 201(c)(2) judicial notice thereof, and accordingly required to enter final judgment against all Appellees, and their privies—that is, Appellees have factually and have judicially admitted, conceded, and stipulated to not being viable Article III concrete, adverse real parties in interest in this 25cv00613 (NDGA) appeal, in the 03-93031 Chapter 11, and in the SDNY 02cv2219 lawsuit. *See PPX Enterprises, Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984) quoting *Stanley Works, v. FTC*, 469 F.2d 198, 506 (2d Cir. 1972) ("Having agreed on a set of facts [see DC Dkt. 19-4, the Appellants' and Appellees' joint stipulations], the parties, and this [25cv00613] Court, *must be bound by them;* we are not free to pick and choose at will."). (emphasis added).

[10] See Id. n. 6, supra.

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

judgment *voluntarily dismissed with prejudice and annulled* 02cv2219 (S.D.N.Y.) litigation or (iii) stand in privity with them, who demonstrably lack the constitutional prerequisite of Article III standing.

The United States Constitution limits the subject matter jurisdiction of all federal courts to actual "Cases" and "Controversies." U.S. Const. art. III, § 2. An indispensable component of this limitation is the doctrine of standing, which ensures that federal courts adjudicate **real and live** *only concrete disputes (controversies)* brought by *__adverse, real parties in interest__*, legally viable Article III parties[11] who have suffered a cognizable, particularized injury in fact fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing is not a mere pleading requirement but an "irreducible constitutional minimum," *id.* at 560, and its absence, herein, deprives a federal court of subject matter jurisdiction over the merits of the claims, or the issues raised on appeal. *Steel Co. v. Citizens for a Better Env't*, 523

---

[11] Appellees and their privies as FINRA certified unregistered broker-dealers [JSAR Dkt. 5-13 on page 48] as a matter of law and fact *__are not viable, adverse, concrete Article III real parties in interest__* having Article III standing to enforce, and/or engage in predatory loan sharking and unlawful debt collection activities, 18 USC §§ 1951(a), 1961(6)(B), 1962(a-d), and 1964(c), in the United States federal [JSAR Dkt. 5-1 to 5-10, and Dkt. 9] or Georgia state courts [see JSAR Dkt. 5-13 on pages 40-41].

27

U.S. 83, 94-95 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.").

Appellees, attempting to resurrect *voluntarily dismissed with prejudice claims* [see JSAR Dkt. 5-13 pp 46-47] predicated on predatory, criminally usurious, and legally void ab initio debt instruments (GX 1-4, GX 5), NYS Penal Law, § 190.40, a class E felony, *which were voluntarily dismissed with prejudice* nearly two decades ago in *Alpha Capital AG v. Group Management Corp.*, No. 02cv2219 (S.D.N.Y.) (the "2007 Final Judgment": JSAR Id.]), ***utterly fail to satisfy any element of the Article III standing requirement***. Their purported injury stems not from any unlawful conduct by Appellants, ***but from the inherent illegality and legal nullity of their own predatory instruments, GX 1-4, and GX 5, and their strategic, voluntary Rule 41(a)(2) Dec. 20, 2007, abandonment of their risible claims [see JSAR Dkt. 5-13 on pages 46-47]—that is, a self-inflicted non-cognizable injury not in the scope of Article III standing,*** *Clapper v. Amnesty Int'l, USA,* 568 U.S. 398 (2013).

As meticulously detailed below, Appellees have not in the SDNY 02cv2219 litigation, not in the Bankruptcy Court (03-93031), and have not and cannot in this appeal legally or factually demonstrate ***a particularized,*** *concrete injury in fact* to ***a***

28

***legally protected interest*** **in the predatory criminal usury null and void ab initio**

**subject matter, GX 1-4, and GX 5,** cannot establish causation traceable to any

*unlawful* conduct by Appellants, and cannot show that any conceivable judicial relief

could *lawfully redress—permit collection or enforcement of the predatory criminal*

*usury subject matter, GX 1-4, and GX 5, with respect to* their purported grievance.[12]

Consequently, their *unlawful and fraudulent participation* in this appeal,[13] in

the 03-93031 Chapter 11 Bankruptcy Court, and in the 02cv2219 (SDNY) civil

litigation is constitutionally impermissible and prohibited, and any orders, judgment,

or other rulings entered by the SDNY 02cv2219 district court (Sand, J.) (deceased),

---

[12] Appellees risibly and incredibly claimed in the SDNY 02cv2219 lawsuit [JSAR Dkt. 5-13 on pages 52 to 53] and also in the 03-93031 Chapter 11 [JSAR Dkt. 5-1 to 5-6] they were somehow aggrieved and suffered a particularized, concrete injury in fact, to a legally protected interest in the predatory Criminal Usury Unlawful Debts, GX 1-4, and GX 5— Id. Dkt. 5-5] that is, they claimed they were allegedly inured by ***Appellants' lawful conduct*** in refusing to aid, abet, enable, and/or facilitate their Hobbs Act predatory loan sharking criminal enterprise's dangerous and potentially deadly extortion attempts to extort Appellant Group Management and Ware out of +$522 million in free-trading securities and enable an illegal public offering to sell the unregistered securities in the public markets of the United States, by unregistered broker-dealer, to collect the predatory criminal usury unlawful debts, GX 1-4, in violation of the criminal federal loan sharking and racketeering laws, 18 USC 1951(a), 1961(6)(B), and 1962(a-d); and federal securities laws, 15 USC §§ 77d, 77e, 77x, 78o(a)(1), 78ff, and SEC Release 33-7190 n. 17 (1995). That is what the Appellees, their agents, privies, proxies, surrogates, alter-egos, and all those in active concert therewith, ***a predatory illegal association in fact*** as defined in 18 USC § 1961(4), a predatory continuing criminal enterprise, with a straight face have claimed in the underlying proceedings, and will claim in this appeal if permitted to participate.

[13] The Appellees and their privies all lack Article III standing in this proceeding—(i) are not concretely adverse, real parties in interest given their indisputable [see JSAR Dkt. 5-14 pp. 46-47] Dec. 20, 2007, Dkt. 90, 02cv2219 (SDNY) after the statute of limitation had run on all claims, Rule 41(a)(2) ***dismissal with prejudice*** of the 02cv2219 (SDNY) lawsuit—ipso facto, the Appellees as a matter of law cannot be adverse to the issues on appeal ***given their voluntary Rule 41(a)(2) dismissal with prejudice*** of 02cv2219 (SDNY).

the Atlanta 03-93031 Bankruptcy Court [BC Dkt. 28; and JSAR Dkt. 5-6, 5-7, 5-8,

5-9, and 5-10], or this Court (25cv00613), Dkt. 38, predicated upon Appellees' moot,

baseless, and criminal claims—Hobbs Act 18 USC §§ 1951(a), 1961(6)(B), and

1962(a-d) unlawful debt collection claims [see JSAR Dkt. 5-1 to 5-6] must be

reversed, vacated, set aside, and annulled nunc pro tunc March 18, 2003, for lack of

Article III constitutional subject matter jurisdiction over the Predatory Criminal

Usury Subject Matter, GX 1-4, and GX 5. *Steel Co.*, 523 U.S. at 93-95.

## B. Governing Law: The Rigorous Requirements of Article III Standing

The Supreme Court has consistently enforced the strictures of Article III

standing. To invoke federal jurisdiction, a plaintiff (or, in this appellate context, an

Appellee asserting a grievance) "must have (1) suffered an injury in fact, (2) that is

fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330,

338 (2016) (citing *Lujan*, 504 U.S. at 560-61). ***The party [Appellees herein]***

***invoking federal jurisdiction in the bankruptcy court [see JSAR Dkt. 5-1 to Dkt.***

***5-6 (Appellees as petitioners); see 02cv2219 (SDNY) lawsuit (Appellees as***

***plaintiffs)] bears the burden of establishing these elements***. *Lujan*, 504 U.S. at 561.

30

1. **Injury in Fact:** The Appellees' herein alleged injury must be "***an invasion of a legally protected interest*** which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Appellees' alleged "legally protected interest" *with respect to the specific Predatory Criminal Usury Unlawful Debt Subject Matter*, GX 1-4, and GX 5, requires ***a cognizable lawful right*** recognized under statutory, constitutional, or common law. *Id.* at 560-61.[14] Furthermore, *threatened injury* must be "certainly impending" to constitute injury in fact; mere "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis in original). Crucially, parties "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm." *Id.* at 416.

---

[14] It is axiomatic and beyond rational dispute that Appellees nor their privies, agents, proxies, surrogates, alter-egos, nor all those in active concert therewith, have not and as a matter of law and fact cannot (a legal and factual impossibility) establish any "legally protected right or interest" in the null and void ab initio predatory criminal usury subject matter, GX 1-4, and GX 5, cf., NYS Penal Law, § 190.40, the criminal usury law, a class E felony, within the scope of Article III standing to lawfully enforce and/or undertake collection activities [see JSAR Dkt. 5-1 to Dkt. 5-10, and Dkt. 9] in violation of the Hobbs Act, 18 USC §§ 1951(a), 18 USC 1961(6)(B), 1962(a-d), and 1964(c), the federal racketeering and loan sharking laws and Id. §§ 152 and 157, the federal bankruptcy laws.

2. **Causation:** The Appellees' alleged injury must be "fairly traceable" to the Appellants' challenged *unlawful* conduct, not the result of the independent action of the Appellees or a third party. *Lujan*, 504 U.S. at 560; *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976).

3. **Redressability:** The alleged injury must be "likely," as opposed to merely "speculative," that the alleged injury will be *lawfully redressed* by a favorable court decision. *Lujan*, 504 U.S. at 561. If the [Appellees'] requested relief [see JSAR Dkt. 5-1 to 5-6] cannot *lawfully* remedy the alleged harm, standing is absent.

**C. Appellees Categorically Fail to Establish Any Element of Article III Standing**

Applying these rigorous, *fundamental* constitutional jurisdictional standards, Appellees' attempt to assert standing in this appeal, in the 03-93031 bankruptcy court, and/or in the moot 02cv2219 (SDNY) lawsuit collapses entirely.

a) **Appellees Have Suffered No Cognizable "Injury in Fact" to a "Legally Protected Interest."**

i.    Appellees' core grievance – their inability to enforce or collect on the Predatory Criminal Usury Subject Matter Instruments (GX 1-4, GX 5) –

32

does not constitute an "injury" to "a *legally protected interest*" as required by *Lujan*.

ii.    **Absence of a "Legally Protected Interest" Due to Voidness Ab Initio:** The instruments themselves, GX 1-4, and GX 5, are nullities, predatory criminal usury debts as a matter of law incapable of conferring any "legally protected rights." 18 USC § 1961(6)(B), NYS Penal Law, section 190.40.

## D. GX 1-4, and GX 5 are Null and Void Ab initio Predatory Criminal Usury Subject Matter Void Ab Initio Under New York Law:

GX 1-4 are demonstrably *void ab initio* under New York Penal Law § 190.40, carrying interest rates vastly exceeding the criminal usury threshold (+2000%). Instruments void from inception cannot create a legally protected interest susceptible to injury. *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379, 383–84 (2d Cir. 2022) (recognizing that criminally usurious notes can be nullified). The inability to enforce an instrument that is legally void and criminally proscribed is not an invasion of a *legally protected* interest; consequently, there is no "concrete, particularized injury in fact." The Appellees' claims are crushed and collapse under their own weight.

**Federal Securities Law Violations (Unregistered Broker-Dealers):**

33

Appellees (the 02cv2219 Plaintiffs) acted as *unregistered broker-dealers* in connection with these (GX 1-4, and GX 5) predatory criminal usury instruments, a violation of 15 U.S.C. § 78o(a)(1). Pursuant to 15 U.S.C. § 78cc(b), contracts made in violation of this chapter are void as regards the rights of the violating party (the Appellees). This federal statutory voidness provides an independent basis for concluding Appellees possess no legally protected interest in GX 1-4 or GX 5. [See Joint Stipulated Appellate Record, Dkt. 5-13, p. 48 (FINRA certification)].

**Absence of a "Legally Protected Interest" Due to Res Judicata:**

The 02cv2219 (SDNY) 2007 Final Judgment, [JSAR Dkt. 5-13 pp. 46-47] *voluntarily* sought by Appellees and dismissing their claims *with prejudice*, extinguished any conceivable legal interest or claim they might have arguably possessed related to GX 1-4 and GX 5. ***Res judicata operates to eliminate the underlying cause of action entirely***. *Federated Dep't Stores*, 452 U.S. at 398. Appellees cannot suffer a cognizable injury regarding rights that were legally extinguished by a final judgment they themselves procured.

a) **Injury is Not Concrete, Actual, or Imminent, but Speculative and Self-Inflicted (*Clapper* Analysis):** Any alleged harm claimed by Appellees is not "concrete" or "actual." It rests on the speculative and legally impossible

34

contingency that a federal court would somehow validate and enforce void, criminally usurious, and previously dismissed claims. *Clapper* squarely rejects standing based on such attenuated possibilities. 568 U.S. at 409.

b) More fundamentally, any harm Appellees claim is **self-inflicted**. They suffer not from *Appellants' lawful conduct*, but from the direct consequences of: (1) their own decision to engage in predatory, criminally usurious lending; (2) their own failure to comply with federal broker-dealer registration requirements; and (3) their own strategic, voluntary decision to dismiss their 02cv2219 claims *with prejudice* after the limitations period expired. As *Clapper* commands, parties "cannot manufacture standing merely by inflicting harm on themselves." *Id.* at 416. Their current predicament is entirely of their own making, stemming from their unlawful actions and strategic litigation choices—**a self-inflicted wound**, not from any injury cognizable under Article III.

1. **Appellees Cannot Establish Causation Traceable to Appellants' Lawful Conduct.**

Even if a cognizable injury existed (which it does not), Appellees cannot satisfy the causation element. The injury must be "fairly traceable" to the *unlawful* conduct of the defendant. *Lujan*, 504 U.S. at 560.

35

a) **Appellants' Conduct Was Lawful:** Appellants' actions – refusing to make payments on void and criminally usurious debts, challenging their enforcement in court, refusing to facilitate further securities law violations by issuing bogus Rule 144(k) opinions, and asserting the defense of res judicata – are entirely lawful and, indeed, legally required. Compliance with state criminal usury laws, federal securities and racketeering laws, and the assertion of valid legal defenses like res judicata cannot constitute the "unlawful conduct" necessary for Article III causation.

b) **Injury Traceable Only to Appellees' Own Unlawful Actions and the Instruments' Illegality:** Any alleged harm is directly and solely traceable to Appellees' own unlawful conduct (predatory lending, unregistered broker-dealer activity) and the inherent legal defects (voidness ab initio, criminal usury, dismissal with prejudice) rendering the instruments unenforceable. The Appellee cannot show a causal link between Appellants' lawful resistance and any cognizable injury suffered by Appellees.

2. **Appellees' Purported Injury is Not Redressable by a Favorable Judicial Decision.**

36

Finally, Appellees fail the redressability prong. It must be "likely" that a favorable court decision will redress the alleged injury. *Lujan*, 504 U.S. at 561.

a) **Legal Impossibility of Relief:** No federal court possesses the authority to grant the relief Appellees implicitly seek – the enforcement or validation of claims predicated on the void, criminally usurious, and previously dismissed Predatory Criminal Usury Subject Matter Instruments.[15] Granting such relief would require this Court to disregard New York criminal law, federal securities and racketeering laws, and the binding effect of the Judge Sand's 02cv2219 (SDNY) 2007 Final Judgment under the doctrine of res judicata. Such an action is legally impossible and would constitute a violation of public policy and the rule of law.

b) **Voidness and Preclusion Render Relief Futile:** Because the underlying predatory, criminal usury debts, GX 1-4, and GX 5, are void ab initio and any claims related thereto are barred by res judicata, no

---

[15] See JSAR Dkt. 5-1 to 5-7 manifestly frivolous and bad faith filings in 03-93031 (BC NDGA).

judicial decree can lawfully "redress" the inability to collect on them.

The "injury" is inherently unredressable by lawful judicial means.

## E. *Steel Co.* Mandates Dismissal for Lack of Threshold Jurisdiction.

The Supreme Court's mandate in *Steel Co.* is unequivocal: federal courts must "first" establish jurisdiction, including standing, as a threshold matter *before* proceeding to the merits. 523 U.S. at 94 ("The requirement that jurisdiction be established as *a threshold matter...* is inflexible and without exception."). Appellees' manifest lack of Article III standing is not merely a defense on the merits; it is *a fundamental jurisdictional defect that divests this Court of the power to hear their arguments or grant them any relief in this appea*l. Hypothesizing jurisdiction to reach the merits is constitutionally forbidden. *Id.* at 94-95. This Court must, therefore, address Appellees' lack of standing "first" and dismiss their participation in this appeal accordingly.

## F. Conclusion: Appellees Are Improper Parties Lacking Constitutional Standing.

Appellees, as privies of the 02cv2219 plaintiffs, stand before this Court devoid of the irreducible constitutional minimum of Article III standing. They have suffered no concrete, particularized injury to a legally protected interest; any alleged harm is speculative, self-inflicted; and traceable only to their own unlawful conduct and the

38

inherent nullity of their claims; and their purported injury is utterly unredressable by any lawful judicial decree. Their continued participation in this appeal constitutes a vexatious collateral attack on Judge Sand's Dec. 20, 2007, 02cv2219 (SDNY) Rule 41(a)(2) 2007 Final Judgment and an impermissible burden on Appellants and this Court. Pursuant to *Lujan*, *Steel Co.*, and *Clapper*, this Court lacks subject matter jurisdiction over Appellees' purported claims and arguments, requiring the dismissal of their participation in this appeal and the vacatur of any underlying Bankruptcy Court orders predicated upon their constitutionally infirm presence.

## Part II: MERIT ISSUES RAISED BY APPELLANTS.[16]

1. **APPELLEES' (PREDATORY UNREGISTERED BROKER-DEALERS) CONVERTIBLE PROMISSORY NOTES, GX 1-4, AND GX 5, ARE *NULL AND VOID AB INITIO*, UNENFORCEABLE, UNCOLLECTIBLE, PREDATORY CRIMINAL USURY UNLAWFUL DEBTS THAT VIOLATED NYS PENAL LAW, § 190.40, A CLASS E FELONY; AND VIOLATED THE FEDERAL RACKETEERING AND LOAN SHARKING CRIMINAL LAWS, 18 USC §§ 1951(a), 1961(6)(B), 1962(a-d), and 1964(c).**

The Bankruptcy Court erred as a matter of law and fact in ruling [BC Dkt. 28; 274, 275; JSAR Dkt. 5-7, 5-8, 5-9, and 5-10] that the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5, are not null and void ab initio, uncollectible, unenforceable, and the Appellees' attempts to enforce, and/or facilitate the predatory

---

[16] See Appx. C—Dkt. 19-4, The Parties' Joint Stipulations resolved all appellate issues raised herein as a matter of law and fact in favor of the Appellants—that is, equitable and judicial estoppel.

unlawful debt )GX 1-4, and GX 5) collection thereof, [JSAR Dkt. 5-1 to 5-6] did not constitute racketeering loansharking, unlawful debt collection activities in criminal violation of the above federal and state statutes.

## Introduction, Analysis, and Discussion.

### OPENING STATEMENT

On March 31, 2025, [DC Dkt. 19-4; Appx A, and Appx. B], the Appellants and the Appellees *jointly stipulated, agreed, and approved binding, dispositive, and conclusive factual stipulations* that resolved all merit issues raised by Appellants in this 25cv00613 appeal [JSAR 5-13 on pages 6 to 23]. Accordingly, Appellants hereby request pursuant to FRE 201(c)(2) and provide the necessary information, [see Appx. A, and Appx B], (i) that the District Court take judicial notice of the dispositive factual stipulations of the Appellants and Appellees, which resolved all outstanding appellate Article III standing and merit issues in favor of the Appellants[17], and (ii) pursuant to FRE 201(e), Appellants respectfully request that the District Court schedule the mandatory hearing on Appellants' facts and stipulations.

---

[17] The Appellants expressly reserve and give notice of their right to amend, supplement, or modify their Rule 8014 25cv00613 appeal brief pending the District Court's required FRE 201(c)(2) taking judicial notice of the parties' factual stipulations, judicial admissions, and concessions.

The appellate record [DC Dkt. 19-4; see also Appx A, and Appx B attached hereto] shows that on March 31, 2025, the Appellants and Appellees *knowingly and willingly entered into binding, dispositive, and conclusive factual stipulations which resolved in favor of Appellants all issues raised in this appeal*, [JSAR Dkt. 5-13 on pages 6 to 23], which disposed of and irrevocably terminated any extant, live Article III concrete, adverse, factual controversy between the parties herein and their privies apropos Appellants' appeal issues. Thus, lacking viable, concrete, adverse Appellees in this cause, and lacking an extant Article III factual controversy between the Appellants and the Appellees herein apropos all issues to be raised on appeal, the District Court is without a live case or controversy to adjudicate—that is, by binding factual stipulations, judicial admissions, and concessions the Appellees and their privies conceded, and stipulated all previously disputed facts are to be resolved in favor of Appellants' legal positions and arguments. *Steel Co.*, Id. at 94-95.

## Rule 8014 IX. Conclusion and Precise Relief Sought

**1.** Accordingly, applying the holding in *Steel Co.*, 523 U.S. at 93-95, a live Article III controversy does not exist between the parties regarding all issues

41

raised on this appeal; requiring the District Court to undertake the following reliefs:

**A.** Notice the fact, dismiss the cause [the 25cv00613 appeal],

**B.** withdraw the 03-93031 reference to the Bankruptcy Court;

**C.** enter an order that reverses, vacates, sets aside, vitiates, and annuls, nun pro tunc, March 18, 2003, all orders, proceedings, and judgments entered in 03-93031;

**D.** reopen and reinstate 03-93031 Chapter 11;

**E.** enter an order directing the Appellees and their privies, agents, proxies, surrogates, alter-egos, and all those in active concert therewith, to turn over to the Clerk of the Bankruptcy Court, $522 million in 15 USC 78p(b) strict-liability short-swing profits for administration to the creditor,

**F.** enter a restraining order and injunction enjoying the Appellees, their privies, agents, proxies, surrogates, and alter-egos from appearing in the District Court in regard to the 03-93031 and derivative matter with respect to the Predatory Criminal Usury Subject Matter, GX 1-4, and GX 5,

42

**G.** set this matter down for a court-supervised Rule 3.3 and 8.4 duty of candor and professional responsibility sanctioning proceedings,

**H.** enter the Consent, Stipulated Final Money Judgment for Appellants in the sum certain amount of $5.2225 billion, against each Appellee, and their privies, jointly, severally, individually, and personally;

**I.** set the matter down for Rule 9011(b)(1-4), 28 USC 1927, and the Court's inherent power to conduct sanctioning proceedings,

**J.** entry of a show cause order, given DC Dkt. 19-4 stipulated facts, directed to all attorney-Appellees to show cause why each shall not be enjoined and restrained from appearing and practicing in the District Court (NDGA) or any other United States federal court for a period of five (5) years, and (ii) why each shall not be fined as a monetary sanction the sum certain amount of $125,000,000.00 jointly, severally, individually, and personally for violations of Rule 11(b)(1-4), 28 USC § 1927, and the court inherent powers,

**K.** order all Appellees to turn over to the Appellants all insurance information required by Rule 26(a)(1)(A)(iv)

43

## Rule 8014 X: Certificate of Compliance

Pursuant to Rule 8015(h) of the Federal Rules of Bankruptcy Procedure, the undersigned hereby certifies:

1. This brief complies with the type-volume limitation of Rule 8015(a)(7)(B)(i) because it contains **9, 459 words**, excluding the parts of the brief exempted by Rule 8015(g), as determined by the word count function of the word-processing software used to prepare this document.

2. This brief complies with the typeface requirements of Rule 8015(a)(5) and the type-style requirements of Rule 8015(a)(6) because it has been prepared using a proportionally spaced typeface in **Times New Roman, 14-point font**.

## RULE 8014 XI: ADDITIONAL CONSIDERATIONS FOR THIS APPEAL

Appellants, Ulysses T. Ware and Group Management (the "Debtor"), respectfully submit these supplementary points to amplify the issues on appeal and to confirm the scope of relief sought under Rule 8014 of the Federal Rules of Bankruptcy Procedure. This section is integral to explaining how factual realities and the controlling legal framework mandate reversal or, in the alternative, comprehensive remand of the Bankruptcy Court's rulings.

44

**A. Potential Protective or Injunctive Relief**

Appellants are entitled to seek protective measures or injunctive relief in the event that, without such intervention, the status quo would be irreversibly disturbed during the pendency of this appeal. Specifically:

1. **Stay of Enforcement Under Fed. R. Bankr. P. 8007:** Appellants may apply for a stay of enforcement of any orders below that adversely affect the Debtor's property, ongoing business interests, or ability to realize value for creditors. The Bankruptcy Court's contested rulings—if executed—have already irreparably hindered the Debtor's reorganization efforts or effectively nullify the relief Appellants seek on appeal.

2. **Likelihood of Success and Balance of Equities:** In this Circuit, courts weigh (a) the movant's likelihood of success on the merits; (b) the prospect of irreparable harm absent injunctive relief; (c) potential harm to other parties; and (d) the public interest. Here, Appellants have consistently demonstrated that the underlying predatory criminal usury debts, GX 1-4—which they assert are criminally usurious and unenforceable—posed a grave threat to the Debtor's estate, and that irreparable harm has already occurred if enforcement is not stayed.

45

3. **Preservation of Core Appellate Issues:** Because one of the chief questions on appeal involves whether the Bankruptcy Court erroneously sanctioned or validated predatory criminal usury unlawful debt obligations, allowing continued enforcement would subvert the appellate process. The preservation of any right to challenge the validity of these instruments remains paramount.

## B. References to Predatory Usury and Voided Debt Instruments

Central to Appellants' position is the assertion that certain promissory notes and convertible debt instruments—purportedly held by parties such as Alpha Capital, AG, and its affiliated entities—are predatory, criminally usurious or otherwise illegal. The record is replete with evidence that:

1. **Exorbitant Interest Rates and Criminal Usury:** Multiple instruments, GX 1-4, carried interest rates far exceeding applicable statutory maximums (2,000%). Appellants have identified rates and terms that, on their face, contravene state and/or federal usury laws, implicating 18 U.S.C. § 1961(6)(B) regarding "unlawful debts." Evidence also indicates that Appellees have acted as ***unregistered broker-dealers***—heightening the impropriety of the underlying predatory debt transactions.

46

2. **Null and Void Ab Initio:** Appellants have expressly argued that any alleged obligations asserted by Appellees arising from such agreements must be deemed null and void from the outset under controlling authorities. *The Bankruptcy Court nevertheless erred and failed or refused to make a proper factual inquiry into these allegations or to hold a requisite evidentiary hearing, thereby allowing claims premised on facially unlawful obligations to encumber the estate.*

3. **Potential Breach of Professional Conduct Rules:** Appellants further aver that certain counsels, KTS lawyers, Meir, Mills, Kadaba, Walker, Zitter, Grushko, Baker & McKenzie, LLP, the State Bar of Georgia, in the proceedings, by continuing to advocate for or enforce these predatory debts, contravened basic ethical prohibitions, Rule 8.4, and duties of candor, Rule 3.3, to the tribunal. The Bankruptcy Court's glaring omission in addressing these serious concerns undermined the fairness of the process, a critical error requiring correction on appeal.

## C. Res Judicata and Collateral Estoppel

Appellants firmly maintain that specific claims now pressed by Appellees were conclusively extinguished by prior final judgments in other federal proceedings:

47

1. **Prior Final Judgment in District Court:** A binding Rule 41(a)(2) final judgment of the 02cv2219 United States District Court for the Southern District of New York expressly addressed the enforceability of the same or substantially similar debt instruments. That final judgment plainly superseded the claims that some creditors and their counsel later reasserted in the bankruptcy forum.

2. **Res Judicata (Claim Preclusion) Elements:** Under Eleventh Circuit law, res judicata applies where (i) the previous decision was rendered by a court of competent jurisdiction, (ii) the decision was final and on the merits, (iii) the parties (or their privies) are identical, and (iv) the same cause of action was involved in both suits. Here, each element is indisputably met, yet the Bankruptcy Court allowed those same claims, or derivative forms of them, to proceed.

3. **Collateral Estoppel (Issue Preclusion) Factors:** Even if the entire cause of action is not identical, issues "actually litigated and necessary to the outcome" of the prior proceeding cannot be revisited. Appellants have shown that the specific factual determinations—namely, that certain notes or liabilities were void due to usurious rates, GX 1-4—were fully stipulated, see DC Dkt. 19-4,

48

litigated and necessarily resolved. The Bankruptcy Court erred by permitting creditors to resurrect or "re-litigate" them.

4. **Impact of Judicial Estoppel and Finality:** The erroneous re-ligation in the Bankruptcy Court not only undermines the finality principle that fosters reliance on court judgments but also results in duplicative litigation that is contrary to fundamental notions of judicial economy. Appellants were prejudiced by being compelled to defend again against claims that had been conclusively resolved by Rule 41(a)(2) final judgment in their favor

## D. Evidentiary or Procedural Defects

Appellants emphasize that multiple procedural irregularities in the Bankruptcy Court irreparably prejudiced the fair adjudication of their claims and defenses:

1. **Denial of Due Process:** Appellants received inadequate notice and opportunity to present material evidence refuting the validity of the contested predatory debt obligations, GX 1-4. Critical documentary proofs and witness testimony—particularly regarding interest rate computations and the broker-dealer status of certain noteholders—were never considered or admitted due to improper procedural constraints.

49

2. **Incomplete or Erroneously Curtailed Record:** Despite timely objections, the Bankruptcy Court declined to incorporate or scrutinize certain key filings that demonstrate the impropriety of the alleged debts. This omission contravenes the requirement of a full and transparent record under Fed. R. Bankr. P. 8009, depriving Appellants of any meaningful chance to establish the facial illegality of the instruments.

3. **Misapplication of Bankruptcy Rules:** The Bankruptcy Court approved or validated claims even where the underlying obligations were contested as usurious. It further accelerated certain motions (e.g., a motion to reject executory contracts) without convening the thorough evidentiary hearing mandated by the Bankruptcy Code. This truncated process prevented Appellants from effectively raising defenses, including those rooted in state law prohibitions on interest rates exceeding statutory caps.

4. **Cumulative Effect of Procedural Errors:** *While any one error might warrant remand, the aggregate prejudice here is undeniable*. The Bankruptcy Court's refusal to examine evidence of usury, its misapplication of final-judgment preclusion standards, and its hasty disposition of critical motions collectively resulted in a ruling that is fatally flawed.

**CONCLUSION**

50

Appellants submit that these Additional Considerations—the need for injunctive relief, the thorough examination of criminally usurious or otherwise void debt instruments, the proper application of res judicata and collateral estoppel, and the imperative to rectify the substantial evidentiary and procedural shortcomings below—are decisive. Each point compels reversal of the Bankruptcy Court's rulings or, at minimum, a remand with clear instructions that no claim or interest arising from criminal usury or void transactions can be lawfully enforced against the Debtor's estate. Appellants stand prepared to demonstrate that, under the most exacting scrutiny, the lower court's orders cannot withstand de novo appellate review and that full relief for the Debtor's estate is not only justified but required by controlling federal law.

Dated: April 7, 2025, and May 20, 2025
Brooklyn, New York

Respectfully submitted,

*/s/* **Ulysses T. Ware**
Ulysses T. Ware
Attorney in Fact for Appellants
Ulysses T. Ware and Group Management
The Office of Ulysses T. Ware
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

51

I, Ulysses T. Ware, Appellant herein, certify under oath and subject to the penalty of perjury that I timely filed Appellants' Rule 8014 Appeal Brief in 25cv00613 (NDGA) on Monday, April 7, 2025, 7:50:30 AM and again on May 20, 2025, via email to the Chambers of the Hon. Michael L. Brown, U.S. District Judge (NDGA), and via U.S. mail.

*/s/ Ulysses T. Ware*

### Declaration of Filing and Service Pursuant to 18 U.S.C. § 2071(a), (b)

I, Ulysses T. Ware, attorney in fact for the Appellants, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the foregoing memorandum and the attached Appellants' Rule 8014 appeal brief (Part 18-0AAA-1) constitute a judicial pleading submitted to the Office of the District Clerk's possession for filing and docketing in Case No. 1:25-cv-00613-MLB, on this 20th day of May 2025; and all Appellees, and their legal counsels of record have been served on May 20, 2025, with a copy of the foregoing (18-0AAA-1) (Part 18-0AAA-1).

/s/ Ulysses T. Ware,
**Ulysses T. Ware, attorney in fact for the Appellants**

### Compliance with Standing Order, ¶ (m), Dkt. 2.

**April 4, 2025, "Meet and Confer" Efforts.**

On April 4, 2025, Appellant, through the undersigned attorney in fact, attempted in good faith to "meet and confer" with Kilpatrick, Townsend & Stockton LLP's attorneys, including Messrs. Walker, Kadaba, Meir, and Mill, regarding the substantive content of this Rule 8014 appeal brief (18-0A) and to solicit any objections they might have to the entry of a proposed Joint Consent Order granting the urgent relief requested herein. Despite providing notice and opportunity to respond, Appellant received no indication that any of those attorneys intended to appear in this appeal or to discuss potential consent terms for staying the Dkt. 10 briefing schedule, nor was any written objection tendered to Appellant in response to the proposed Joint Consent Order.

/s/ Ulysses T. Ware

Ulysses T. Ware

**End of Brief**

53

(Part 18-0AAA-1) re: Ware, et al. v. Alpha Capital, AG, et al., Appellant's Rule 8014 Opening Brief
Filed with District Judge Michael L. Brown on May 20, 2025, via email to Chambers and U.S. mail.

# The Office of Ulysses T. Ware

.    123 Linden Boulevard, Suite 9-L
Brooklyn, New York 11226
(718) 844-1260 · UTWare007@gmail.com

May 20, 2025, 9:34:43 AM

**VIA U.S. MAIL & E-FILING**

Office of the District Clerk
United States District Court (NDGA)
Richard B. Russell U.S. Courthouse
75 Ted Turner Drive, S.E.
Atlanta, Georgia 30303

Re: *Ware, et al. v. Alpha Capital, AG, et al.*, No. 1:25-cv-00613-MLB –
Submission of Appellants' Opening Appellate Brief Pursuant to the Court's April 29, 2025 Order
(Dkt. 38) and Fed. R. Bankr. P. 8015(a)(7)(B)(i)

Dear Clerk of Court:

Pursuant to the District Court's April 29, 2025, Order (Dkt. 38) and Federal Rule of
Bankruptcy Procedure 8015(a)(7)(B)(i), the Appellants hereby tender for filing the materials listed
below. Consistent with the Order's "25-page (10,833.33-word)" limitation and Rule 8015(h)(1),
the principal brief contains 9,459 words, as certified in the attached compliance statement. Each
document conforms to the form, length, and certificate requirements of Rule 8015(a)–(h).

## Enclosures

1. **Opening Appellate Brief** – 25 pages / 10,833.33 words (Rule 8015(a)(7)(B)(i)); Rule
   8015(h)(1) Certificate of Compliance included.
2. **Appellants' Declaration of Duress, Objection, and Protest** (executed under 28 U.S.C.
   § 1746).
3. **Appendix A** – Appellants' April 2, 2025 Rule 201(c)(2) Request for Judicial Notice.
4. **Appendix B** – April 4, 2025 Supplement #1.0 to Judicial-Notice Motion (Form SB-2
   materials, etc.).
5. **Appendix C** – Joint Stipulated Damages & Rules 3.3 / 8.4 Violations (Dkt. 19-4).
6. **Appendix D** – District Court Order, April 29, 2025 (Dkt. 38).
7. **Appendix E** – Advisory Committee Notes to Fed. R. App. P. 32.
8. **Appendix F** – Fed. R. Civ. P. 83 (Local-Rules) Text & Commentary.

## Mandatory docketing under Rule 8015(f)

Rule 8015(f) provides that *"[a] document that complies with the form requirements of this rule ... must be accepted for filing."* Each enclosed paper is in proper form; accordingly, Appellants respectfully request that the Clerk **immediately file and docket** the Opening Appellate Brief and accompanying materials in Case No. 1:25-cv-00613-MLB.

## Copies and service

One original copy of each document is enclosed for the Court. Electronic copies were simultaneously transmitted to chambers and all registered parties of record.

## Contact information

Should any questions arise concerning these filings, please contact the undersigned at the Brooklyn address or telephone number above.

Respectfully submitted,

/s/ Ulysses T. Ware
**Ulysses T. Ware**
Attorney-in-Fact for the Appellants
*Ulysses T. Ware and Group Management*

Enclosures (8)

# Declaration of Service

I, Ulysses T. Ware, on behalf of the Appellants, certify that I have this 20th day of May 2025, served each Appellee, or their representative, via their public email account with a copy of the Enclosures herein.

/s/ Ulysses T. Ware

1

Ware, et al. v. Alpha Capital, AG, et al.
25 cv 00613 (NDGA)

Re: Appellant's Opening Brief
per the Court's Apr. 29, 2025,
Order, DKt. 38.

Filed under protest, duress, and obedience

/s/ Ulysses J. Ware

May 20, 2025

1 of 2 (May 20, 2025 Filed)