**(17-20B) (Part 17-20B) Supplement #1.0 to Part 17-20A**
## Case No. 25-cv-00613-MLB

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**MAY 2 3 2025**

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

#### Filed on Friday, April 4, 2024, 11:59:35 AM

---

ULYSSES T. WARE and d/b/a GROUP MANAGEMENT, (a sole proprietorship), (Debtor)
Appellants,

v.

ALPHA CAPITAL, AG, et al., *Predatory Unregistered Broker-Dealers*, Appellees.

# Appx B

---

#### On Appeal from the United States Bankruptcy Court
#### for the Northern District of Georgia
#### Case No. 03-93031-WLH

---

[Docket Text] Re: (1) Appellants' Request for Judicial Notice, and Memorandum of Law Regarding Mandatory Judicial Notice Pursuant to Federal Rule of Evidence 201(c)(2) of Binding Dispositive Factual Admissions, Confessions, and Stipulations Adverse to Appellees Contained Herein, in the JSAR, and Within Dkt. 19-4 of the Joint Stipulated Appellate Record, Conclusively Resolving All Appellate Issues Identified in Dkt. 292. [JSAR Dkt. 5-13, at pp. 6–23]; and (2) **Appellants' Mandatory *Rule 201(e) Entitlement to be Heard.***

The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Respectfully submitted this 4th day of April 2025 to the Chambers of the Hon. District Judge

Michael L. Brown and the Office of the District Clerk (NDGA) pursuant to 28 USC § 1654 and

18 USC §§ 2071 (a), (b).

**By:** /s/ Ulysses T. Ware
**Ulysses, Attorney in Fact for Appellants**
Group Management and Ulysses T. Ware

# Table of Contents

A.   INTRODUCTION ................................................................................................................ 4

Part 1. ...................................................................................................................................... 5

I. PRELIMINARY STATEMENT .............................................................................................. 5

II. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE .......................................... 8

III. THE BINDING STIPULATIONS OF DKT. 19-4 ............................................................... 10

IV. RESOLUTION OF ALL APPELLATE ISSUES (DKT. 292) [JSAR Dkt. 5-13 on pages 6 to 23] BY JUDICIALLY NOTICED STIPULATIONS (DKT. 19-4). ............................................... 12

Part 2. ...................................................................................................................................... 16

I. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE .......................................... 16

II. APPLICATION OF LEGAL STANDARD TO REQUESTED EXHIBITS. ............................. 17

   A. Exhibit 1: State Bar of Georgia Official Record (JSAR Dkt. 5-13, pp. 40-41) ........................... 18

   B. Exhibit 2: SEC EDGAR Governmental Website Public Filing (Form SB-2) .............................. 19

   C. Exhibit 3: FINRA Regulatory Determination (JSAR Dkt. 5-13, p. 48) ........................................ 20

III. SUMMARY ...................................................................................................................... 21

Part 3. ...................................................................................................................................... 22

FRE 201(c)(2) Regulatory, Accurate, and Irrefutable Sources—Necessary Information to take judicial notice of Regulatory Facts. ............................................................................................ 24

   1.    Exhibit 1 [JSAR Dkt. 5-13 pages 40-41] (stipulated) (Coordinated criminal usury unlawful debt collection activity)—State Bar of Georgia's (Regulatory) Fabricated and Counterfeit purported *Affidavit of Personal Service*—Hobbs Act overt and predicate acts, Jim Crow racially-motivated, retaliatory, malicious conspiracy to extort and steal the personal and business property of Appellant Ulysses T. Ware, his license to practice law. ................................................. 25

   2.    Exhibit 2 (see Attachment) [SEC's Edgar Regulatory Public Records System] Appellant Baker & McKenzie, LLP, et al. accurate and reliable Hobbs Act Criminal Form SB-2 to extort Appellant Group Management out of +39 million (+$522 million) free-trading equity securities, to aid, abet, and facilitate the collection of GX 1-4, and GX 5, predatory criminal usury unlawful debts. ...................................................................................................................................... 28

   3.    Exhibit 3 [JSAR Dkt. 5-13 on page 48] (stipulated) FINRA's May 17, 2021, accurate and reliable, irrefutable regulatory ruling of unregistered broker-dealer status for each of Appellee KTS' clients that appeared in 03-93031 Chapter 11, [JSAR Dkt. 5-2, April 10, 2003], which KTS knowingly in bad faith, and recklessly suppressed and concealed, without disclosing to the Court, the UST, the Debtor, and other creditors their clients' *unregistered broker-dealer status* in violation of the District Court (NDGA) Rules on Professional Conduct Rules 3.3 and 8.4. .......... 29

CERTIFICATE OF SERVICE .................................................................................................. 31

End of document .................................................................................................................... 31

## A.  INTRODUCTION

Appellants Ulysses T. Ware and d/b/a Group Management (a sole proprietorship), ("Appellants"), through undersigned counsel, pursuant to 28 USC § 1654, respectfully submit this (A) FRE Rule 201(c)(2) Request to Take Judicial Notice of ***Appellees' Dispositive Stipulations*** that Resolved All Appellate Issues, (B) a Memorandum of Law to address Federal Rule of Evidence 201(c)(2), (e), which is hereby this 4th day of April 2025, triggered,  (C) Appellants' Rule 201(e) Request to be Heard, and (D) Appellants' request for entry of the following reliefs, to wit:

(i) that this Honorable Court immediately take FRE Rule 201(c)(2) ***mandatory judicial notice*** of Appellees' dispositive factual stipulations, judicial admissions, and confessions contained within the certified record on appeal [JSAR: specifically, Dkt. 19-4, and herein]; and

(ii) Appellants hereby notify the District Court that they are exercising their mandatory ***legal entitlement*** and right, and formally request to be heard as authorized by Rule 201(e).[1]

---

[1] **Rule 201(e)** is not permissive; it states that "[o]n timely request, ***a party is entitled to be heard*** ... ." The phrase "**is entitled**" denotes a **mandatory requirement**. In practice:

   1. **No Discretion to Deny**: The District Court **cannot refuse** a timely request to be heard on the matter; it must afford the requesting party [Appellants herein] an opportunity to present arguments or evidence about the fact in question.

As set forth in Federal Rule of Evidence 201(e), "[o]n timely request, [[Appellants are] entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Appellants respectfully submit that this **entitlement is not discretionary but mandatory,** thus conferring an absolute substantive procedural safeguard designed to ensure fairness and accuracy in judicial proceedings. By invoking their right to be heard, Appellants have triggered a legal obligation for the Court to permit their input on both the propriety of judicial notice and the precise contours of the facts to be so recognized. In practical terms, this provision obligates the Court to grant Appellants an opportunity to demonstrate that the proposed facts are indeed not subject to reasonable dispute being stipulated to by the Appellees in the JSAR or other regulatory filings.

Appellees' voluntary judicial stipulations, admissions, and confessions are formally presented in the document docketed as **Dkt. 19-4** ("Joint Declaration and Stipulation," hereinafter "Dkt. 19-4"), and herein (Part 19-20B), which is incorporated within the Joint Stipulated Appellate Record ("JSAR"), *which constitutes accurate, dispositive adjudicative facts not subject to reasonable dispute*. Acknowledgment of these binding judicial stipulations, established through Appellees' documented failure to contest them as demanded therein, *conclusively resolves, in favor of Appellants, all dispositive legal and factual issues presented for appellate review* in **Dkt. 292** ("Statement of Issues," hereinafter "Dkt. 292") [JSAR Dkt. 5-13 on pages 6 to 23]. Requiring the District Court to enter final judgment on behalf of Appellants immediately.

# Part 1.

## I. PRELIMINARY STATEMENT

This 25cv00613 (NDGA) appeal fundamentally challenges the legitimacy and legality of the 03-93031 Chapter 11 and 02cv2219 (SDNY) proceedings predicated upon the Appellees', their privies, agents, proxies, surrogates, alter-ego, and all those in active concert therewith, a criminal illegal association in fact, joint and severally, (the "Appellees"),

(i) *armed and dangerous Hobbs Act*, 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d) attempted enforcement and collection of *predatory criminally usurious, null and void ab initio debt instruments*, GX 1-4, and GX 5, [JSAR Dkt. 5-13 on pages 49-60],

(ii) *by unregistered broker-dealers* (Appellees and their privies), [Id. on page 48],

(iii) *engaging in a pattern of Hobbs Act predatory loan sharking, extortion, kidnapping, murder for hire, perjury, armed break-ins, threats of bodily harm, injury, and violence, bankruptcy fraud conspiracy, conspiracy, securities fraud, and racketeering in violation of the federal and state racketeering and loan sharking laws*, to wit: 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d); and NYS Penal Law, section 190.40, the criminal usury law, a class E felony, jointly, (the "**Predatory Racketeering Loan Sharking Laws**"). [Id. on pages 40-60]; and see Ex. 2, infra.

The 25cv00613 appeal's Rule 8009(d) joint stipulated appellate record ("JSAR") now before this Court [JSAR Dkt. 5-1 to 5-16; and Dkt. 9] contains stipulations of the Appellees in Dkt. 19-4, a document styled as a "Joint Declaration and Stipulation" which explicitly sets forth dispositive and foundational factual predicates establishing the illegality of Appellees' claims, the preclusive effect of prior judgments, the utter absence of Article III standing, and pervasive ethical and criminal misconduct by Appellees and their counsel. Crucially, Dkt. 19-4 demanded sworn opposition from each Appellee by a date certain (March 28, 2025, 1:00 PM ET), stipulating that failure to respond would constitute binding judicial admissions, confessions, and consent to the facts and liabilities stated therein, *__including a consent sum certain money judgment of $5.2225 billion__*. (Dkt. 19-4, pp. 3, 13, 15).

The appellate record confirms Appellees filed no such opposition. To the present date, the Appellees have had *__actual notice__* of the JSAR and Dkt. 19-4 have not appeared in the District Court, and have not raised any challenge, opposition, or objection to the joint stipulations, judicial admissions, and confessions submitted to the Court by Appellants—that is, Appellees have, with the advice of counsel, made a strategic decision and knowingly, deliberate, and intentionally

waived, forfeited, and abandoned any right to deny or disclaim the JSAR or Dkt. 19-4. Accordingly, the Appellees, the District Court, the Bankruptcy Court, and all other courts regarding litigation between the parties are bound by the JSAR and Dkt. 19-4. *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009); *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014).

Pursuant to FRE 201(c)(2), Appellants now supply the Court with the necessary information (the JSAR, and Dkt. 19-4 itself)[2] and requests mandatory judicial notice of the stipulations contained therein and herein, which, by Appellees' own strategic decision making, they have defaulted, and the documents' explicit and express terms have become binding judicial admissions and stipulations binding on this and all courts. These judicial admissions directly and conclusively actually and necessarily resolved all appellate issues identified in 03-93031 Dkt. 292, [JSAR Dkt. 5-13 on pages 6 to 23] *necessitating immediate entry of final judgment in favor of Appellants*.[3]

---

[2] **FRE 201(c) Taking Notice.** The court: **(1)** may take judicial notice on its own; or **(2)** *must take judicial notice if a party [Appellants herein] requests it and the court is supplied with the necessary information*. See Dkt. 19-4, the JSAR, (17-20A: Part 17-20A), and this (Part 17-20B).

[3] *Hoodho*, Id. ("*Admissions by parties [the JSAR and Dkt. 19-4] are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record*. Cf. Gibbs, 440 F.3d at 578 ("Having agreed on a set of facts, the parties [Appellees and their privies herein] who adopted the stipulation [JSAR and Dkt. 19-4], *and this Court, must be bound by them*; *we are not free to pick and choose at will*." (internal quotation marks and alteration omitted)).   This rule of non-inquiry promotes efficiency and judicial economy by facilitating the concession of specific issues, thereby "provid[ing] notice to all litigants of the issues remaining in dispute, *identify[ing] those that can be eliminated from the case and those that cannot be, narrow[ing] the scope of discovery to disputed matters and thus reduc[ing] trial time*."   Banks v. Yokemick, 214 F.Supp.2d 401, 405-06 (S.D.N.Y.2002)." (emphasis added).

# II. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 governs the judicial notice of adjudicative facts, judicial admissions, confessions, and stipulations of the parties.

A. **Scope of Judicially Noticeable Facts (FRE 201(b)):** A court is authorized to take judicial notice of a fact provided it is "not subject to reasonable dispute" because it satisfies one of two conditions: "(1) it is generally known within the trial court's territorial jurisdiction; or (2) *it can be accurately and readily determined from sources [the JSAR] whose accuracy cannot reasonably be questioned*" by the Appellees or the court. Fed. R. Evid. 201(b).[4]

*Stipulations formally entered into by parties* and incorporated into the official court record [the JSAR and Dkt. 19-4] fall squarely under FRE 201(b)(2). *See American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 227 (9th Cir. 1988) ("Stipulations freely and voluntarily entered into in criminal trials are as binding and enforceable as those entered into in civil actions."); *see also Christian Legal Soc. Chapter of the Univ. of Cal., Hastings Coll. of Law v. Martinez,* 561 U.S. 661, 676 (2010) (noting the binding effect of stipulations at the trial level). The existence and content of stipulations within the JSAR are accurately and readily determinable from that official record itself.[5]

---

[4]   *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1278 (11th Cir. 1999) ("The starting point is Fed .R. Evid. 201, which authorizes courts to take judicial notice under specified circumstances. Subsection (f) states that *"(j)udicial notice may be taken at any stage of the proceeding*." (emphasis added).

[5] The Appellants' and Appellees' voluntary and consensual Bankr. Rule 8009(d) joint dispositive factual stipulations incorporated into the Joint Stipulated Appellate Record ("JSAR") and specifically identified in Dkt. 19-4 constitutes binding factual judicial admissions and stipulations that meet the criteria for *mandatory judicial notice* under Fed. R. Evid. 201(b)(2). *These stipulations, voluntarily entered and jointly certified by the parties, are adjudicative facts "capable of accurate and ready determination by*

B. **Mandatory Judicial Notice (FRE 201(c)(2)):** The Rule mandates judicial notice under specific

circumstances: "The court *must* take judicial notice if a party [the 25cv00613 Appellants] requests

it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis

added). Appellants hereby request such notice and supply the necessary information by referencing

Dkt. 19-4 within the JSAR already before this Court.

C. **Timing and Conclusive Effect (FRE 201(d), (f)):** Judicial notice is permissible "at any stage

of the proceeding," including appeal. Fed. R. Evid. 201(d). **In civil cases**, such as this appeal, facts

judicially noticed are deemed conclusive. Fed. R. Evid. 201(f).

D. **The Court's Obligation: Mandatory Notice Upon Proper Request:** Pursuant to **Rule**

**201(c)(2), the court must** take judicial notice **if a party requests it and supplies the necessary**

**information**. This is a critical distinction — ***judicial notice becomes obligatory***, **not**

**discretionary,** when the requesting party [Appellants herein] provides facts [Dkt. 19-4 and JSAR]

meeting the criteria under subsection (b). *The court no longer retains discretion in such*

*circumstances*. Rule 201(c)(2).[6]

---

resort to sources whose accuracy cannot reasonably be questioned." See *American Title Ins. Co.*, Id. at
227 ("Stipulations freely and voluntarily entered into [] are as binding and enforceable as those entered into
in civil actions."). ***Once made part of the appellate record, such stipulations are conclusive, not subject***
***to dispute, and estop the parties from asserting contrary positions***. See also *Christian Legal Soc'y v.*
*Martinez*, 561 U.S. 661, 676 (2010). Under Rule 201(c)(2), the 25cv00613 District Court is required to
judicially notice these stipulations upon request. ***Their legal effect is to remove the underlying factual***
***issues from further litigation, rendering them conclusively resolved for purposes of the appeal***. (emphasis
added).

[6] 21 Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5107 (1977) ("[T]he judge
must notify the parties that [s/]he is taking judicial notice of an adjudicative fact.") (footnote omitted).

## III. THE BINDING STIPULATIONS OF DKT. 19-4

Dkt. 19-4 sets forth numerous binding, voluntary, factual predicates, judicial admissions, confessions, and stipulations that Appellees failed to refute under oath by the specified deadline constitute binding judicial admissions, confessions, and stipulations. Appellees' documented failure renders the following facts, detailed across Parts I-V of Dkt. 19-4, *judicially admitted, stipulated, and conclusively established.*[7]

Pursuant to FRE Rule 201(c)(2), the District Court "must" take Judicial Notice of the fact that:

1. **Criminal Illegality and Voidness *Ab Initio* (Dkt. 19-4, Part I, ¶¶ 1-10; Part II, ¶¶ 1-2):** The underlying debt instruments (GX 1-4, GX 5) are criminally usurious under N.Y. Penal Law § 190.40 (interest exceeding 2,000% p.a.), rendering them null, void *ab initio*, unenforceable, and incapable of conferring any "legally protected interest." Furthermore, the contracts are independently void under 15 U.S.C. § 78cc(b) due to Appellees' judicially admitted and FINRA-certified status as unregistered broker-dealers. (Dkt. 19-4, pp. 6, 9).

2. **Absolute Preclusion by 2007 Final Judgment (Dkt. 19-4, Part II, ¶¶ 5-6):** Appellees, through counsel (Appellee Zitter), voluntarily procured a final judgment dismissing *with prejudice* all claims related to GX 1-4/GX 5 in 02cv2219 (SDNY) on Dec. 20, 2007, after

---

[7] See *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, which are binding upon the party making them. *They may not be controverted at trial or on appeal*. Indeed, they are "not evidence at all but rather have the effect of withdrawing a fact from contention." Michael H. Graham, Federal Practice and Procedure: Evidence Sec. 6726 (Interim Edition); see also John William Strong, McCormick on Evidence Sec. 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. Id. When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, Federal Practice and Procedure Sec. 6726, at 536-37."). (emphasis added).

limitations expired. This dismissal constitutes a final adjudication on the merits, absolutely barring Appellees and their privies (including KTS) under *res judicata* from re-litigating any claims derived from these instruments. (Dkt. 19-4, p. 9).

3. **Absence of Article III Standing (Dkt. 19-4, Part IV, ¶¶ 20-24):** Resulting from the *ab initio* voidness (¶1) and preclusion (¶2), Appellees lack any concrete, particularized, legally protected interest (no injury-in-fact). Any alleged harm was self-inflicted through illegal loan sharking and voluntary dismissal (*Clapper*, 568 U.S. at 416), is not traceable to Appellants' lawful conduct, and is impossible for any court to lawfully redress. (Dkt. 19-4, p. 12).

4. **Predicate Acts for RICO and Hobbs Act Liability (Dkt. 19-4, Part III, ¶¶ 10-19):** Appellees and their counsel (KTS, UST) engaged in overt acts constituting unlawful debt collection (18 U.S.C. § 1961(6)(B)) and attempted Hobbs Act extortion (18 U.S.C. § 1951(a)) by using judicial processes (e.g., Dkts. 5-1 to 5-6 in 03-93031) to enforce the void/criminal debts. These filings form part of a pattern of racketeering activity and conspiracy (18 U.S.C. § 1962(c), (d)). (Dkt. 19-4, pp. 10-11). Appellee Zitter's sworn confession to hiring KTS for "collection activity" confirms this intent. (Dkt. 19-4, Part II, ¶ 9).

5. **Pervasive Ethical Violations (Dkt. 19-4, Part I, ¶¶ 4-14):** Appellee lawyers (KTS partners, Zitter, Rabinowitz, UST attorneys) breached duties of inquiry (Bankr. Rule 9011(b)(3)), candor (GA Rule 3.3), honesty (GA Rule 8.4(c)), and avoiding conduct prejudicial to the administration of justice (GA Rule 8.4(d)) by knowingly filing frivolous claims based on void instruments, making false statements, failing to disclose material facts (voidness, unregistered status), and abusing court processes for improper purposes

(harassment, collection of void debts, concealing insider trading profits). (Dkt. 19-4, pp. 6-8).

6. **Deemed Admission of Irreparable Harm and $5.2225 Billion Liability (Dkt. 19-4, Part V):** As a direct consequence of Appellees' failure to timely oppose Dkt. 19-4, they are deemed to have judicially admitted, confessed, stipulated, and consented that their unlawful acts caused Appellants irreparable harm quantifiable at **$5,222,500,000.00**, and that each Appellee and their privies are jointly and severally liable for this sum certain amount. (Dkt. 19-4, p. 13).

## IV. RESOLUTION OF ALL APPELLATE ISSUES (DKT. 292) [JSAR Dkt. 5-13 on pages 6 to 23] BY JUDICIALLY NOTICED STIPULATIONS (DKT. 19-4).

The mandatory judicial notice of the binding stipulations within Dkt. 19-4 conclusively resolves the dispositive issues presented on appeal in Dkt. 292 in favor of Appellants:

1. **Issue 1 (Lack of Article III Subject Matter Jurisdiction over Predatory Criminal Usury Unlawful Debts, GX 1-4, and GX 5):** Resolved by Dkt. 19-4, Part I, ¶ 1. The stipulated criminal usury and voidness *ab initio* under N.Y. Penal Law § 190.40 confirm the subject matter, GX 1-4, and GX 5, was (i) predatory, (ii) inherently null and void ab initio, and (iii) unenforceable, uncollectible, and criminal illegal, and therefore stripped the 03-93031 Bankruptcy Court of jurisdiction to enforce or facilitate the collection of such predatory criminal usury claims.

2. **Issue 2 (Violation of NY Criminal Usury Law):** Resolved by Dkt. 19-4, Part I, ¶ 1. The stipulation explicitly confirms violation of § 190.40.

3. **Issue 3 (Void *Ab Initio* Status / Violation of Public Policy & Federal Securities Laws):** Resolved by Dkt. 19-4, Part I, ¶ 1 & Part II, ¶ 2. Stipulations confirm voidness under N.Y. criminal law and independently under 15 U.S.C. § 78cc(b) due to unregistered broker-dealer status, establishing violation of public policy and federal securities laws (15 U.S.C. §§ 77d, 77e, 77x, 78o(a)(1), 78p(b), 78cc(b), 78ff).

4. **Issue 4 (Article III Standing of Unregistered Broker-Dealers):** Resolved by Dkt. 19-4, Part II, ¶ 2 & Part IV, ¶¶ 20-23. Stipulations confirm unregistered status, voidness under § 78cc(b), and explicitly negate all elements of Article III standing (*Lujan*). Also see Ex. 3, infra.

5. **Issue 5 (FINRA Certification):** Resolved by Dkt. 19-4, Part II, ¶ 2. The stipulation confirms the FINRA certification of unregistered status. See Ex. Id., infra.

6. **Issue 6 (Operation as Illegal Association-in-Fact / CCE):** Resolved by Dkt. 19-4, Part III, ¶¶ 10, 11, 15, 16 & Part II, ¶ 9. Stipulations detailing coordinated filings (UST/KTS Dkts. 5-1 to 5-6) aimed at collecting unlawful debt, coupled with Zitter's admission of hiring KTS for this purpose, establish the operation of an illegal association-in-fact (18 U.S.C. § 1961(4)) engaging in a pattern of racketeering (18 U.S.C. §§ 1962(c), (d)).

7. **Issue 7 (Moot Filings as Aiding/Abetting Unlawful Debt Collection):** Resolved by Dkt. 19-4, Part III, ¶¶ 10-15. Stipulations confirm Dkts. 5-1 to 5-6 were predicated on void debts and filed to facilitate collection, thus constituting aiding and abetting unlawful debt collection (18 U.S.C. § 1961(6)(B)).

8. **Issue 8 (Aiding/Abetting Hobbs Act/RICO Violations):** Resolved by Dkt. 19-4, Part III, ¶¶ 10-15, 17. Stipulations confirm filings used court process ("color of official right") to

collect void debts, constituting attempted Hobbs Act extortion (§ 1951(a)) and RICO unlawful debt collection (§ 1961(6)(B)). See Ex. Id., infra.

9. **Issue 9 (Preclusive Effect of SDNY Final Judgment/Orders):** Resolved by Dkt. 19-4, Part II, ¶¶ 5-6. Stipulation confirms the 2007 Rule 41(a)(2) dismissal with prejudice, establishing absolute *res judicata* barring Appellees' claims. The stipulation also implicitly affirms the preclusive effect of Judge Sand's related orders (e.g., Dkt. 65, 02cv2219).

10. **Issue 10 (Appellants as Prevailing Parties):** Resolved by Dkt. 19-4, Part II, ¶¶ 5-6. The stipulated voluntary dismissal with prejudice legally renders Appellants the prevailing parties in 02cv2219 (*see L-3 Commc'ns EOTech*, 921 F.3d at 18-19), with preclusive effect carrying over.

11. **Issue 11 (Mandatory Turnover of Insider-Trading Profits):** Resolved by Dkt. 19-4, Part I, ¶¶ 8, Part II, ¶ 2, and indirectly by Issue 9's resolution. Stipulated voidness under § 78cc(b) and preclusion confirm Appellees' lack of rights. Judge Sand's Dkt. 65 order (referenced in Dkt. 292, Issue 9 and Issue 11) found Appellees were § 78p(b) statutory insiders. The stipulations solidify Appellants' position regarding the estate's entitlement to turnover under 11 U.S.C. §§ 541/542.

12. **Issue 12 (Appellees as Fiduciaries/Equitable Lien/Constructive Trust):** Resolved implicitly by Issue 11's resolution regarding § 78p(b) status. § 78p(b) insider status inherently creates fiduciary duties regarding short-swing profits, supporting imposition of equitable remedies.

13. **Issue 13 (Ethical Violations):** Resolved by Dkt. 19-4, Part I, ¶¶ 4-14 & Part IV, ¶¶ 26. Stipulations explicitly confirm violations of GA Rules 3.3, 8.4, and Bankr. Rule 9011.[8]

14. **Issue 14 (Aiding/Abetting Contempt):** Resolved implicitly by Dkt. 19-4's stipulations regarding bad faith litigation (Part I, ¶ 8; Part IV, ¶ 25), pursuit of precluded claims (Part II, ¶¶ 5-6), and violation of court process (Part III, ¶¶ 10-17). These acts facilitated defiance of court authority.

15. **Issue 15 (Participation in Racketeering):** Resolved by Dkt. 19-4, Part III, ¶¶ 10-18. Stipulations confirm multiple predicate acts (unlawful debt collection, attempted extortion via court filings) forming a pattern.[9]

16. **Issue 16 (Illegal Association-in-Fact/CCE):** (Covered by Issue 6).

17. **Issue 17 (Sanctions):** Resolved by Dkt. 19-4, Part IV, ¶ 26 & Part V. Stipulations confirm conduct violating Rule 9011(b)(1-4), and warranting sanctions under 28 U.S.C. § 1927 and inherent powers, and further established and stipulated, judicially admitted, and confessed to dangerous and violent Hobbs Act extortion, fraud, theft, negligence, intentional infliction of emotion distress, false arrest, armed aggravated assault and battery, armed unlawful entry and break-in, armed predatory unlawful debt collection activities, predatory money laundering and loan sharking 18 USC § 1964(c) admission, stipulation, agreement, consent, and confession to a consent and voluntary money judgment in the sum certain amount of $5.2225 billion joint and several, personal and individual liability.

---

[8] Also see Ex. 3, infra (FINRA's regulatory ruling).

[9] Also see Ex. 2, infra, Baker & McKenzie, et al. direct participation in the Hobbs Act predatory unlawful debt collection activities.

# Part 2.

## I. GOVERNING LEGAL STANDARD FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 provides the framework for judicial notice of adjudicative facts. A court is permitted under **FRE 201(b)(2)** to judicially notice a fact that is "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Critically, **FRE 201(c)(2)** imposes a mandatory duty upon the court: "The court *must* take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added).

It is axiomatic that official public records of governmental and quasi-governmental bodies, including administrative and regulatory agencies, are paradigm examples of sources whose accuracy, at least as to the existence and content of the records themselves, cannot reasonably be questioned. Federal courts, including the Eleventh Circuit, routinely take judicial notice of such materials. *See, e.g., **Bryant v. Avado Brands, Inc.**,* 187 F.3d 1271, 1278 (11th Cir. 1999) (recognizing propriety of noticing relevant public records); ***Universal Express, Inc. v. U.S. S.E.C.**,* 177 F. App'x 52, 53 (11th Cir. 2006) (confirming public records are subject to judicial notice).[10]

This principle explicitly extends to:

---

[10] "Public records are among the permissible facts that a district court may consider. See ***Stahl v. U.S. Dep't of Agric.**,* 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."); cf. ***Bryant**,* 187 F.3d at 1278 (11th Cir. 1999) (holding that "*a court, when considering a motion to dismiss in a securities fraud case, may take judicial notice . . . of relevant public documents required to be filed with the SEC*"). (emphasis added).

1. **SEC Filings:** Courts universally recognize the propriety of taking judicial notice of documents filed with the SEC and available on EDGAR.[11] ***Kramer v. Time Warner Inc.***, 937 F.2d 767, 774 (2d Cir. 1991) (documents filed with SEC are judicially noticeable); ***In re Morgan Stanley Info. Fund Sec. Litig.***, 592 F.3d 347, 355 n.5 (2d Cir. 2010); ***Makro Capital of Am., Inc. v. UBS AG***, 372 F. Supp. 2d 623, 627 (S.D. Fla. 2005).[12] **Administrative and SRO Records:** Official records and rulings from state administrative bodies (like a State Bar acting under judicial authority) and Self-Regulatory Organizations ("SROs") like FINRA are judicially noticeable. ***Gent v. CUNA Mut. Ins. Soc'y***, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (noticing public records including from administrative agencies); ***In re Colonial Ltd. P'ship Litig.***, 854 F. Supp. 64, 79 (D. Conn. 1994) (noticing SRO records); ***Gustavia Home, LLC v. Rice***, 724 F. App'x 87, 88 n.1 (2d Cir. 2018) (summary order) (noticing materials from regulatory body website).

Appellants, having identified the specific exhibits within the JSAR, hereby supply the "necessary information," compelling judicial notice under FRE 201(c)(2).

# II. APPLICATION OF LEGAL STANDARD TO REQUESTED EXHIBITS.

Pursuant to FRE 201(b)(2) and 201(c)(2), judicial notice is mandatory for the following:

---

[11] When the underlying facts come from ***an official government website*** [the SEC's EDGAR official website for public filings], courts have frequently found that such facts meet the "not subject to reasonable dispute" threshold. ***Denius v. Dunlap***, 330 F.3d 919, 926-27 (7th Cir. 2003) ("[W]e may take judicial notice of information provided on an official government website."). (emphasis added).

[12] Cf., Ex. 2, infra, (Baker &McKenzie, et al.'s Hobbs Act Form SB-2 filed with the SEC to enable the collection of the predatory criminal usury unlawful debts, GX 1-4: a binding judicial admission of violations of 18 USC § 1951(a), 1961(6)(B), 1962(a-d), and 1964(c)).

## A. Exhibit 1: State Bar of Georgia Official Record (JSAR Dkt. 5-13, pp. 40-41)

1. **Identification:** Exhibit 1 consists of documents Appellants identify as originating from the official records of the State Bar of Georgia, specifically pertaining to an affidavit concerning personal service in a related disciplinary proceeding involving Appellant Ware.

2. **Justification for Notice:** Official records maintained by a State Bar, acting as an arm of the state judiciary or pursuant to delegated governmental authority, constitute public or quasi-public records whose existence and textual content are accurately and readily determinable. *See **Rosales-Martinez v. Palmer**,* 753 F.3d 890, 894 (9th Cir. 2014) (permitting judicial notice of undisputed matters of public record, including administrative records). The fact *that* such a fake, fraudulent, and counterfeit purported ***affidavit*** exists within the Bar's and the Supreme Court of Georgia's official In re Ware (2008) (moot, void ab initio, fabricated, malicious, and retaliatory Hobbs Act unlawful debt collection related disbarment proceedings) records, and its precise wording, are not subject to reasonable dispute.

3. **Adjudicative Significance:** Appellants contend this document is demonstrative of improper criminal misconduct and overt and predicate acts (e.g., related to Hobbs Act violations or obstruction) by entities involved in broader loan sharking and unlawful debt collection activities disputes affecting Appellees. Judicial notice of the document's existence and content allows the Court to consider it as part of the factual matrix underlying Appellants' claims of systemic misconduct and bad faith relevant to the proceedings on appeal.

4. **Mandatory Notice:** As an official regulatory record whose existence and content are verifiable, and upon Appellants' request with reference to the JSAR, judicial notice is mandated by FRE 201(c)(2).

## B. Exhibit 2: SEC EDGAR Governmental Website Public Filing (Form SB-2)

1. **Identification:** Exhibit 2 is identified as a Hobbs Act predatory criminal usury unlawful debt collection device, the ***risible*** Form SB-2 registration statement, publicly filed and accessible via the SEC's public EDGAR system, an official governmental website, which Appellants associate with Appellees law firm Baker & McKenzie, LLP, Lawrence B. Mandala, (see JSAR Dkt. 5-16 on pages 41-49 (F-8)) (Declaration of Lawrence B. Mandala, Esq.)).

2. **Justification for Notice:** Documents filed with the SEC and publicly available on the EDGAR database are the quintessential example of records suitable for judicial notice under FRE 201(b)(2). Their status as official public filings is indisputable. *Kramer*, 937 F.2d at 774; ***Rothman v. Gregor***, 220 F.3d 81, 92 (2d Cir. 2000). The existence of the filing and its precise textual content are readily verifiable facts.

3. **Adjudicative Significance:** Appellants argue this filing is documentary evidence supporting allegations of Hobbs Act predatory loan sharking, unlawful debt collection, criminal misconduct (18 USC §§ 1951(a), 1961(6)(B), 1962(a-d), and 1964(c)) related to the enforcement or facilitation of the collection of predatory criminal usury claims based on the underlying predatory criminal usury null and void ab initio debt instruments (GX 1-4, GX 5).

4. **Mandatory Notice:** As a verifiable public SEC filing [Ex. 2, infra, Baker's risible Form SB-2] identified within the record, judicial notice is mandated by FRE 201(c)(2).

## C. Exhibit 3: FINRA Regulatory Determination (JSAR Dkt. 5-13, p. 48)

1. **Identification:** Exhibit 3 contains or references, according to Appellants' designation, a formal regulatory determination or certification issued by FINRA on May 17, 2021, establishing the status of certain Appellees (clients of KTS) as "unregistered broker-dealers."

2. **Justification for Notice:** FINRA, as an SEC-registered SRO, issues official rulings and maintains records pursuant to its regulatory mandate. Such formal determinations constitute ***administrative or regulatory findings*** whose existence and content, as official pronouncements of the regulatory body, are readily ascertainable and not subject to reasonable dispute. *See In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. at 79.

3. **Adjudicative Significance:** The regulatory status of these Appellees (Appellee KTS' clients, JSAR Dkt. 5-2) ***as unregistered broker-dealers*** is a fact of central, dispositive importance to this appeal. It directly triggers the voidness provisions of 15 U.S.C. § 78cc(b) with respect to the underlying predatory criminal usury unlawful debt instruments, (GX 1-4, GX 5), thereby eviscerating any potential "legally protected interest" required for Article III standing and ***rendering Appellees' claims unenforceable, uncollectible, and void ab initio as a matter of federal securities law. Judicial notice of FINRA's determination conclusively establishes this critical predicate fact***.

4. **Mandatory Notice:** As an official determination from a recognized SRO, whose existence and content are verifiable and identified within the JSAR, judicial notice is mandated by FRE 201(c)(2).

## III. SUMMARY

The documents designated as Exhibits 1, 2, and 3 comprise official records from the State Bar of Georgia, the SEC's EDGAR system, and FINRA, respectively. Each constitutes a source whose accuracy, regarding the existence and content of the record or determination itself, cannot reasonably be questioned. Appellants have requested judicial notice and supplied the necessary information by referencing these exhibits within the Joint Stipulated Appellate Record (Part 17-20B), herein. Pursuant to the unambiguous command of Federal Rule of Evidence 201(c)(2), this Court must take judicial notice of:

1. The existence and textual content of the State Bar of Georgia record identified as Exhibit 1 (JSAR Dkt. 5-13, pp. 40-41);

2. The existence and textual content of the SEC Form SB-2 filing identified as Exhibit 2, as publicly available on EDGAR; and

3. The existence and substance of the FINRA regulatory determination dated May 17, 2021, regarding the unregistered broker-dealer status of certain Appellees, identified as Exhibit 3 (JSAR Dkt. 5-13, p. 48).

Taking judicial notice of these adjudicative facts is essential for the Court's proper consideration of the dispositive issues of standing, voidness, enforceability, and related criminal and civil misconduct central to the resolution of this appeal, Case No. 25-cv-00613-MLB.

# Part 3.

The Joint Stipulated Appellate Record contains, at Dkt. 19-4, stipulations and deemed judicial admissions that are binding upon Appellees and conclusively resolve every dispositive issue presented for review in Dkt. 292 entirely in favor of Appellants. Appellees, having failed to contest the factual predicates set forth in Dkt. 19-4 as demanded therein, are judicially estopped and bound by their admissions establishing the underlying claims' criminal voidness, the preclusion of those claims, the complete absence of Article III standing, the commission of RICO and Hobbs Act violations, pervasive ethical misconduct, and joint and several liability for $5.2225 billion in damages.

**WHEREFORE**, Appellants respectfully request that this Court take mandatory judicial notice, pursuant to Federal Rule of Evidence 201(c)(2), of the enumerated factual stipulations and deemed judicial admissions contained within Docket Entry 19-4 of the Joint Stipulated Appellate Record, accept these facts as conclusive and dispositive to all issues presented in JSAR Dkt. 5-13 on pages 6 to 23, pursuant to FRE 201(f),  grant Appellants the relief sought in this appeal based upon the resolution of the issues presented in Dkt. 292 [JSAR, Id.], and set this matter down for the mandatory Rule 201(e) entitlement proceeding to permit Appellants to be heard on the judicially noted stipulations.

Respectfully submitted this 4th day of April 2025 to the Chambers of the Hon. District Judge Michael L. Brown and the Office of the District Clerk (NDGA) pursuant to 28 USC § 1654 and 18 USC §§ 2071 (a), (b).

The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226

(718) 844-1260
utware007@gmail.com

**By:** /s/ Ulysses T. Ware
**Ulysses, Attorney in Fact for Appellants**
Group Management and Ulysses T. Ware

**FRE 201(c)(2) Regulatory, Accurate, and Irrefutable Sources—Necessary Information to take judicial notice of Regulatory Facts.**

1.    **Exhibit 1 [JSAR Dkt. 5-13 pages 40-41] (stipulated) (Coordinated criminal usury unlawful debt collection activity)—State Bar of Georgia's (Regulatory) Fabricated and Counterfeit purported *Affidavit of Personal Service*—Hobbs Act overt and predicate acts, Jim Crow racially-motivated, retaliatory, malicious conspiracy to extort and steal the personal and business property of Appellant Ulysses T. Ware, his license to practice law.**

Exhibit A—SBGA's known false, fraudulent, counterfeit, and fabricated alleged January 15, 2007, **Affidavit of Personal Service (perjury)** on Ulysses T. Ware, Esq. at the Bureau of Prison's Brooklyn, NY MDC federal prison—the BOP has confirmed that Mr. Ware *was not* **personally served** on January 15, 2007, at the MDC Brooklyn, NY prison because according to the BOP " ... Mr. Ware *was not* incarcerated and *was not* in the custody of the Bureau of Prison on January 15, 2007, *anywhere in the United States ... and certainly not in Brooklyn, NY ... that is a fact* ...." (emphasis in original).

Page 17 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Case 1:25-cv-00613-MLB   Document 5-13   Filed 03/07/25   Page 41 of 270



**STATE OF GEORGIA**
Plaintiff/Petitioner

vs

**ULYSSES THOMAS WARE**
Defendant/Respondent

**STATE OF NEW YORK**
**COUNTY OF KINGS**   } SS:

SHERIFF'S AFFIDAVIT OF SERVICE
CPLR Section 308

**FILED**
1-24-08

Sheriff's Case # 08000890

Index/Docket # 5088 / STATE DISCIPLINARY BOARD
STATE BAR OF GEORGIA

I, C. Palmieri, Deputy Sheriff of the City and State of New York, authorized pursuant to my special duties to serve process, hereby certify that: I am not a party to this action or proceeding and over 18 years of age. I further certify that on the 15th day of January 2007, at approximately 10.48AM at 80 28th Street in the borough of Brooklyn, County of Kings, I served the annexed: summons, complaint, X petition ☐ subpoena ☐ order/temporary order of protection ☐ order to show cause ☐ writ of habeas corpus ☐ property execution ☐ sheriff's sale notice ☐ sheriff's levy notice ☐ interrogatories ☐ financial disclosure affidavit X Attached Documents upon ULYSSES THOMAS WARE, the defendant/respondent, in the following manner:

**PERSONAL DELIVERY** ☑ By delivering to and leaving with the above named defendant/respondent personally a true copy thereof, said person being known as the person mentioned and described herein.

**PERSONAL SERVICE ALTERNATE PERSON (RESIDENCE)** ☐ By delivering to and leaving with, _____, a person of suitable age and discretion, who is _____, to the defendant/respondent. A true copy thereof. Said address is the dwelling place/usual place of abode of the party served.

**PERSONAL SERVICE ALTERNATE PERSON (EMPLOYMENT)** ☐ By delivering to and leaving with, _____, a person at the defendant's/respondent's place of employment: _____ (name of place of employment)

**MAILED** ☐ On _____ I mailed the above mentioned process(es) by first class USPS mail to the defendant/respondent at his/her last known residence/actual place of business in an envelope bearing the legend "PERSONAL AND CONFIDENTIAL" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the defendant/respondent.

**CORPORATION** ☐ By delivering to and leaving with, _____, a true copy thereof. Said person stated he/she was _____, an agent authorized to accept service of legal process.

**DESCRIPTION** ☑ The person served is aX Male Female, and approximately: Age:48 Height: 5.4 Weight: 206lbs Skin: Black Hair: Black

**MILITARY** Sworn to (affirmed) before me this 15 day of January 2008

_____ DEPUTY SHERIFF Shield #180

RAFAEL J LUCAS
NOTARY PUBLIC, State of New York
No. 01LU6050044
Qualified in Queens County
Commission Expires September 25, 20 10

000017

2.      **Exhibit 2 (see Attachment) [SEC's Edgar Regulatory Public Records System] Appellant Baker & McKenzie, LLP, et al.[13] accurate and reliable Hobbs Act Criminal Form SB-2 to extort Appellant Group Management out of +39 million (+$522 million) free-trading equity securities, to aid, abet, and facilitate the collection of GX 1-4, and GX 5, predatory criminal usury unlawful debts.**

---

[13] Lawrence B. Mandala, Esq., Robert H. Albaral, Esq., David J. Malliband, Esq., and Thomas A. Leghorn, Esq. aiding, abetting, enabling, and facilitating multiple instances of Hobbs Act 18 USC § 1961(6)(B) predatory criminal usury extortionate unlawful debt (GX 1-4, and GX 5) collection activities.

3.      Exhibit 3 [JSAR Dkt. 5-13 on page 48] (stipulated) FINRA's May 17, 2021, accurate and reliable, irrefutable regulatory ruling of unregistered broker-dealer status for each of Appellee KTS' clients that appeared in 03-93031 Chapter 11, [JSAR Dkt. 5-2, April 10, 2003], which KTS knowingly in bad faith, and recklessly suppressed and concealed, without disclosing to the Court, the UST, the Debtor, and other creditors their clients' *unregistered broker-dealer status* in violation of the District Court (NDGA) Rules on Professional Conduct Rules 3.3 and 8.4.

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of <u>unregistered broker-dealer status</u> for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—<u>a pattern of racketeering activities.</u>**

<u>CERTIFICATION OF NO FINRA BUSINESS RECORDS</u>

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

   a) Alpha Capital, AG
   b) Stonestreet, L.P.
   c) Markham Holdings, Ltd.
   d) Amro International, S.A.
   e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of _____May_____, 2021.

Notary Public, District of Columbia

My commission expires: 5/31

Page 25 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April, 2025, I electronically filed the foregoing (17-20B (Part 17-20B) Supplement #1.0 re: APPELLANTS' MEMORANDUM OF LAW REGARDING ***MANDATORY JUDICIAL NOTICE*** PURSUANT TO FEDERAL RULE OF EVIDENCE 201(c)(2) with the Chambers of the Hon. Michael L. Brown, and Clerk of the District Court (NDGA) using the U.S. mail; and served all Appellees and their legal counsel counsels via public email addresses.

# End of document

5/1/22, 8:43 AM                    https://www.sec.gov/Archives/edgar/data/826674/000101968701500938/ivg_sb2a1-101001.txt

```
<DOCUMENT>
<TYPE>SB-2/A
<SEQUENCE>1
<FILENAME>ivg_sb2a1-101001.txt
<TEXT>
<PAGE>
```

Baker & McKenzie, LLP, et al., Hobbs Act Form SB-2 registration statement to facilitate criminal usury unlawful debt collection activities

As filed with the Securities and Exchange Commission on October 10, 2001

REGISTRATION NO. 333-60056
================================================================================

# Appx B-1

# Exhibit 2

## Case No. 25cv00613 NDGA)

```
                          UNITED STATES
              SECURITIES AND EXCHANGE COMMISSION
                    WASHINGTON, D.C. 20549
                    -----------------------

                       AMENDMENT NO. 1
                            TO
                        FORM SB-2
                 REGISTRATION STATEMENT
                         UNDER
               THE SECURITIES ACT OF 1933

                        IVG CORP.
                        ---------
          (NAME OF SMALL BUSINESS ISSUER IN ITS CHARTER)
```

| Delaware | 6770 | 59-2919648 |
|----------|------|------------|
| -------- | ---- | ---------- |
| (STATE OR OTHER JURISDICTION OF INCORPORATION OR ORGANIZATION) | (PRIMARY STANDARD INDUSTRIAL CLASSIFICATION CODE NUMBER) | (IRS EMPLOYER IDENTIFICATION NUMBER) |

```
                         IVG Corp.
              13135 Dairy Ashford, Suite 525
                 Sugar Land, Texas 77478
                      (281) 295-8400
    (ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER, INCLUDING AREA
        CODE, OF REGISTRANT'S PRINCIPAL EXECUTIVE OFFICES)
              _____

                      Elorian Landers
                         IVG Corp.
              13135 Dairy Ashford, Suite 525
                 Sugar Land, Texas 77478
                      (281) 295-8400
```

```
       (NAME, ADDRESS, INCLUDING ZIP CODE, AND TELEPHONE NUMBER OF AGENT
                       FOR SERVICE OF PROCESS)
                 ---------------------------------
                              Copy to:
                         Lawrence B. Mandala
                         Baker & McKenzie
                       2300 Trammell Crow Center
                          2001 Ross Avenue
                         Dallas, Texas 75201
                           (214) 978-3000
                 ---------------------------------
```

APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO THE PUBLIC: From time to
time after the date this registration statement becomes effective.
If this Form is filed to register additional securities for an offering pursuant
to Rule 462(b) under the Securities Act, please check the following box and list
the Securities Act registration statement number of the earlier effective
registration statement for the same offering. [ ]
If this Form is a post-effective amendment filed pursuant to Rule 462(c) under
the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. [ ]
If this Form is a post-effective amendment filed pursuant to Rule 462(d) under
the Securities Act, check the following box and list the Securities Act
registration statement number of the earlier effective registration statement
for the same offering. [ ]
If delivery of the prospectus is expected to be made pursuant to Rule 434,
please check the following box. [ ]

<PAGE>
<TABLE>

<CAPTION>

                          CALCULATION OF REGISTRATION FEE

| TITLE OF EACH CLASS OF SECURITIES TO BE REGISTERED | AMOUNT TO BE REGISTERED | PROPOSED MAXIMUM OFFERING PRICE PER SHARE(1) | PROPOSED MAXIMUM AGGREGATE OFFERING PRICE(1) | AMOUNT OF REGISTRATION FEE(1) |
|---|---|---|---|---|
| <S> | <C> | <C> | <C> | <C> |
| Common Stock, par value $0.0001 per share, issuable upon conversion of Convertible Notes | 38,630,378(2) | $0.055 | $ 2,124,671 | $ 531 |
| Common Stock, par value $0.0001 per share, issuable upon exercise of Warrants(3) | 275,000(3) | $1.647 | $ 452,925 | $ 113 |
| Common Stock, par value $0.0001 per share, issuable upon exercise of Warrant(4) | 50,000(4) | $1.647 | $ 82,350 | $ 21 |

```

| Common Stock, par value $0.0001 per share | 278,042(5) | $0.055 | $ | 15,292 | $ | 4 |
|---|---|---|---|---|---|---|
| Total | | | $ | 2,675,238 | | $ 669(6) |

</TABLE>

(1) Estimated solely for the purpose of calculating the registration fee in
    accordance with Rule 457(c) of the Securities Act of 1933, as amended, based
    on the average of the closing bid and asked price for our common stock as
    reported on the OTC Bulletin Board on October 5, 2001.
(2) Represents 200% of the shares of our common stock issuable upon conversion
    of convertible notes issued by us. The notes may be converted into shares of
    our common stock at a conversion price equal to the lower of (a) $1.5825 and
    (b) 85% of the average of the three lowest closing bid prices for our common
    stock on the principal market on which it is trading for the 22 trading days
    prior to but not including the date of conversion. For purposes of
    estimating the number of shares of our common stock issuable upon conversion
    of the notes, we calculated the number of shares to be issued based upon a
    conversion price of $0.05695, the conversion price that would have been in
    effect if the notes were converted on October 8, 2001. The notes are payable
    on January 1, 2003.
(3) Represents shares of our common stock issuable upon exercise of warrants
    issued to holders of the convertible notes. The warrants have an exercise
    price of $1.647 and may be exercised until February 2, 2006.
(4) Represents shares of our common stock issuable upon exercise of a warrant
    issued to Union Atlantic Capital, L.C. as partial consideration for serving
    as our financial advisor and private placement agent in connection with the
    issuance of the convertible notes. The warrant has an exercise price of
    $1.647 and may be exercised until April 30, 2005.
(5) Represents shares of our common stock issuable to the purchasers of the
    convertible notes if the closing bid price of our common stock is not equal
    to or greater than $2.374 for 10 consecutive trading days during the 180 day
    period commencing on the effective date of this registration statement.
(6) Previously paid.

THE REGISTRANT HEREBY AMENDS THIS REGISTRATION STATEMENT ON SUCH DATE OR DATES
AS MAY BE NECESSARY TO DELAY ITS EFFECTIVE DATE UNTIL THE REGISTRANT SHALL FILE
A FURTHER AMENDMENT WHICH SPECIFICALLY STATES THAT THIS REGISTRATION STATEMENT
SHALL THEREAFTER BECOME EFFECTIVE IN ACCORDANCE WITH SECTION 8(A) OF THE
SECURITIES ACT OF 1933 OR UNTIL THE REGISTRATION STATEMENT SHALL BECOME
EFFECTIVE ON SUCH DATE AS THE COMMISSION, ACTING PURSUANT TO SAID SECTION 8(A),
MAY DETERMINE.

<PAGE>

                    SUBJECT TO COMPLETION, DATED OCTOBER 10, 2001

PROSPECTUS

5/1/22, 8:43 AM                               https://www.sec.gov/Archives/edgar/data/826674/000101968701500938/ivg_sb2a1-101001.txt

IVG CORP.

UP TO 39,233,420 SHARES OF COMMON STOCK

This offering relates to the resale of an aggregate of 39,233,420 shares of our
common stock by persons who are referred to in this prospectus as selling
securityholders. The shares offered by this prospectus include shares issuable
by us in the future if:

- o    convertible notes held by some of the selling securityholders
       are converted into shares of our common stock;

- o    warrants held by the selling securityholders are exercised; or

- o    we are required to issue additional shares of our common stock
       to some of the selling securityholders under our agreement
       with them.

We will not receive any proceeds from the resale of these shares by the selling
securityholders. However, we could receive proceeds of up to $82,350 upon
exercise by Union Atlantic Capital, L.C, one of the selling securityholders, of
warrants held by it.

The selling securityholders may sell the shares of common stock from time to
time in public or private transactions occurring on or off the OTC Bulletin
Board, in negotiated transactions or otherwise.

Our common stock is quoted on the OTC Bulletin Board under the trading symbol
"IVGG." On October 5, 2001, the average of the closing bid and asked price of
our common stock was $0.055.

INVESTING IN OUR SECURITIES INVOLVES RISKS. YOU SHOULD PURCHASE OUR SECURITIES
ONLY IF YOU CAN AFFORD A COMPLETE LOSS OF YOUR INVESTMENT. SEE "RISK FACTORS"
BEGINNING ON PAGE 3.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES
COMMISSION HAS APPROVED OR DISAPPROVED OF THESE SECURITIES OR DETERMINED IF THIS
PROSPECTUS IS TRUTHFUL OR COMPLETE. ANY REPRESENTATION TO THE CONTRARY IS A
CRIMINAL OFFENSE.

               THE DATE OF THIS PROSPECTUS IS _____, 2001.


The information in this prospectus is not complete and may be changed. We may
not sell these securities until the registration statement filed with the
Securities and Exchange Commission is effective. This prospectus is not an offer
to sell these securities and we are not soliciting an offer to buy these

5/1/22, 8:43 AM                                   https://www.sec.gov/Archives/edgar/data/826674/000101968701500938/ivg_sb2a1-101001.txt

securities in any state where the offer or sale is not permitted.

<PAGE>
<TABLE>
                                        TABLE OF CONTENTS
<CAPTION>

<S>                                               <C>
SUMMARY...................................................1

The Company...............................................1

Risk Factors..............................................1

The Offering..............................................1

Shares of Common Stock Outstanding:.......................2

How to Contact Us.........................................2

Summary Financial Data....................................2

RISK FACTORS..............................................3

Risks Associated With Our Business........................3

Risks Associated With Investing in Our Securities.........4

SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS................6

USE OF PROCEEDS...........................................6

MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL
    CONDITION AND RESULTS OF OPERATIONS...................6

Results of Operations.....................................7

Comparison of the Six Months Ended June 30, 2001
    and June 30, 2000.....................................7

Comparison of the Years Ended December 31, 2000
    and December 31, 1999.................................8

Comparison of the Years Ended December 31, 1999
    and December 31, 1998.................................8

Liquidity and Capital Resources...........................8

Going Concern Consideration...............................9

<C>                                               <C>
Market Price Information.................................15

Dividends................................................15

MANAGEMENT...............................................16

Directors and Executive Officers.........................16

EXECUTIVE COMPENSATION...................................16

Summary Compensation Table...............................16

Employment Agreements....................................17

2000 Omnibus Securities Plan.............................17

Option Grants............................................17

Option Exercises and Option Values.......................18

Compensation of Directors................................18

SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND
    MANAGEMENT...........................................18

CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS...........19

INDEMNIFICATION..........................................20

FINANCING AGREEMENTS.....................................21

Overview.................................................21

Convertible Notes........................................21

Registration Rights......................................23

Security Agreement.......................................24

Warrants for Investors...................................24

https://www.sec.gov/Archives/edgar/data/826674/000101968701500938/ivg_sb2a1-101001.txt

BUSINESS...............................................10

Overview...............................................10

Portfolio Companies....................................10

Business Strategy......................................12

Evaluation of Potential Acquisitions...................13

Competition............................................13

Intellectual Property..................................14

Properties.............................................15

Legal Proceedings......................................15

Employees..............................................15

Warrant for Union Atlantic.............................24

DESCRIPTION OF SECURITIES TO BE REGISTERED.............25

Common Stock...........................................25

SELLING SECURITYHOLDERS................................25

PLAN OF DISTRIBUTION...................................26

LEGAL MATTERS..........................................27

EXPERTS ...............................................27

WHERE YOU CAN FIND MORE INFORMATION....................27

INDEX TO FINANCIAL STATEMENTS.........................F-1

</TABLE>

<PAGE>

SUMMARY

THIS SUMMARY HIGHLIGHTS INFORMATION CONTAINED ELSEWHERE IN THIS PROSPECTUS. WE
URGE YOU TO READ THIS ENTIRE PROSPECTUS CAREFULLY, INCLUDING THE "RISK FACTORS"
SECTION AND THE CONSOLIDATED FINANCIAL STATEMENTS AND RELATED NOTES INCLUDED
ELSEWHERE IN THIS PROSPECTUS. AS USED IN THIS PROSPECTUS, THE WORDS "WE," "US,"
"OUR" AND "THE COMPANY" REFER TO IVG CORP.; OUR SUBSIDIARIES., SWAN MAGNETICS,
INC. AND CYBERCOUPONS.COM, INC.; AND OUR DIVISION, GEEWHIZUSA.COM.

THE COMPANY

We are a holding company that intends to acquire promising revenue-generating
companies and assist them by providing financial guidance, business model
creation and implementation, access to equity resources and technology. To date,
our portfolio companies consist of the following:

        o       Our division, GeeWhizUSA.com, a manufacturer and distributor
                of proprietary novelty, gift and branded products that light
                up.

        o       Swan Magnetics, Inc., developer of a proprietary ultra-high
                capacity floppy disk drive technology and the owner of 46% of

the common stock of iTVr, Inc., which is developing next
generation digital video recording technology; and

o       CyberCoupons.com, Inc., a development stage company that
        intends to be a source for consumers to obtain coupons for
        grocery, household and beauty products via the Internet.

We are also actively pursuing opportunities to expand our business into the
human resources outsourcing industry through the acquisition of professional
employer organizations. A professional employer organization typically provides
employee payroll, human resource and benefit services on an outsourced basis. At
this time, we are exploring opportunities within this arena, but do not have any
definitive agreements to merge with or acquire a professional employer
organization at this time.

RISK FACTORS

An investment in our common stock is speculative and involves a high degree of
risk. You should consider the risk factors described on pages 3 to 5 of this
prospectus, together with the other information in this prospectus, in
evaluating an investment in our common stock.

THE OFFERING

On February 2, 2001, Alpha Capital Aktiengesellschaft, AMRO International, S.A.,
Markham Holdings Ltd. and Stonestreet Limited Partnership (the "investors")
purchased from us an aggregate $1,100,000 of our 6% convertible notes due 2003.

Under our agreement with the investors, we will be obligated to issue additional
shares of our common stock to them if the closing bid price of our common stock
is not equal to or greater than $2.374 for 10 consecutive trading days during
the 180-day period beginning on the effective date of this registration
statement.

In consideration for their investment, we also issued the investors warrants to
purchase an aggregate of 275,000 shares of our common stock at an exercise price
of $1.647. In partial consideration for serving as our financial advisor and
private placement agent in connection with the issuance of the notes, we issued
Union Atlantic Capital, L.C. a warrant to purchase 50,000 shares of our common
stock at an exercise price of $1.647.

Through this prospectus, the selling securityholders may offer to the public the
common stock acquired upon the conversion of the notes, the exercise of the
warrants and the additional shares we may be required to issue to the investors.
The offering price of such sales will be determined at the time of sale by a
selling securityholder. See "Financing Agreements" and "Plan of Distribution."

<PAGE>

Unregistered broker-dealers
GX 1, GX 2, GX 3, and GX 4

Our agreement with the investors requires us to register:

- o    200% of the shares of common stock that would be issuable on
       conversion of the notes if the notes were converted on October
       8, 2001 (38,630,378 shares)

- o    200% of the additional shares that would be issuable to the
       investors 180 days after this registration statement is made
       effective, if (1) our closing bid price does not equal or
       exceed $2.374 for 10 consecutive trading days during such
       period and (2) our average closing bid price over the five
       days at the end of such period exceeds $1.5825 (278,042
       shares), and

- o    100% of the shares issuable on exercise of the warrants held
       by the investors (275,000 shares).

We will not receive any of the proceeds from the resale of the common stock by
the selling securityholders. We may receive total proceeds of up to $82,350 in
connection with the exercise of certain warrants by the selling securityholders.

SHARES OF COMMON STOCK OUTSTANDING:

- o    Prior to this Offering:  51,661,759 shares

- o    After this Offering: 90,895,179 shares (assuming the
       conversion of the notes and exercise of the warrants into
       all shares included in the registration statement of which
       this prospectus is a part).

Predatory Hobbs Act
unlawful debt collection
activities.

HOW TO CONTACT US

Our principal offices are located at 13135 Dairy Ashford, Suite 525, Sugar Land,
Texas 77478. Our telephone number is (281) 295-8400.

<TABLE>
SUMMARY FINANCIAL DATA
<CAPTION>

|  |  | SIX MONTHS ENDED | YEAR ENDED DECEMBER 31, | |
| --- | --- | --- | --- | --- |
|  |  | JUNE 30, 2001 | 2000 | 1999 |
| <S> |  | <C> | <C> | <C> |
| Total Revenues |  | $      427,595 | $      396,300 | $      402,422 |
| Total Expenses |  | $   13,040,669 | $   23,570,385 | $      575,268 |
| Net (Loss) |  | $ (12,834,677) | $ (21,146,313) | $  (291,831) |
| Basic and fully diluted net loss per share |  | $         (.25) | $         (0.59) | $      (0.05) |
| Shares used in computing basic and fully diluted net loss |  |  |  |  |

(17-16) (Part 17-16) 03.28.25 re The Parties' Joint Declaration and
Stipulation of Rule 3.3 and 8.4 Violations, and Sum Certain
Stipulated Money Judgment Damages of $5.2225 billion, ~~and~~ in
Support of a <u>Court-Supervised Rule 3.3 Candor Proceeding</u>.

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 3 1 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

Appx C

17-16

## Case No. 1:25-cv-00613-MLB

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ulysses T. Ware and Group Management (a sole proprietorship),
Appellants,

v.

Alpha Capital AG, et al., <u>Predatory Unregistered Broker-Dealers</u>,
Appellees.

(On Appeal from *In re Group Management Corp.*, Case No. 03-93031 (BC NDGA), Chapter 11)

---

**APPELLANTS' AND APPELLEES' JOINT DECLARATION AND STIPULATION IN
SUPPORT OF A COURT-SUPERVISED RULE 3.3 CANDOR PROCEEDING
REGARDING (I) LACK OF ARTICLE III SUBJECT MATTER JURISDICTION
(STANDING), (II) VIOLATIONS OF GEORGIA RULES OF PROFESSIONAL
CONDUCT 3.3 AND 8.4, AND BANKR. RULE 9011(b)(1-4), AND (III) STIPULATED
CONSENT MONEY JUDGMENT FOR DAMAGES, JOINTLY AND SEVERALLY, IN
THE SUM CERTAIN AMOUNT OF $5.2225 BILLION, PAYABLE TO THE
APPELLANTS, ULYSSES T. WARE AND GROUP MANAGEMENT.**

Respectfully submitted this 28th day of March 2025 at 1:05:32 PM

**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226

*[signature: Ulysses T. Ware]*

Page 1 of 16
Friday, March 28, 2025
(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics
Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and
stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly
and severally.

(718) 844-1260
utware007@gmail.com

By: /s/ Ulysses T. Ware

**Ulysses T. Ware**
Attorney in Fact for Appellants

Friday, March 28, 2025
(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics
Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and
stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly
and severally.

TO: EACH APPELLEE (AND THEIR LEGAL COUNSEL) NAMED IN DKT. 281 (03-93031), INCLUDING BUT NOT LIMITED TO KILPATRICK TOWNSEND & STOCKTON LLP (DENNIS S. MEIR, JOHN W. MILLS III, J. HENRY WALKER IV, WAB KADABA), KENNETH A. ZITTER, ESQ., ARIE RABINOWITZ, OFFICE OF THE U.S. TRUSTEE, REGION 21 (JAMES H. MORAWETZ, MARY IDA TOWNSON, JENEANE TREACE), THEIR PRIVIES, AGENTS, PROXIES, SURROGATES, ALTER-EGOS, AND ALL THOSE IN ACTIVE CONCERT THEREWITH, JOINTLY AND SEVERALLY, (THE "APPELLEES"), AN ILLEGAL ASSOCIATION IN FACT AS DEFINED IN 18 U.S.C. § 1961(4).

## DEMAND FOR RESPONSE AND CONSEQUENCES OF FAILURE TO RESPOND

Each Appellee identified above and in Dkt. 281 (03-93031), their privies, agents, proxies, surrogates, alter-egos, and all those in active concert therewith, jointly and severally, are hereby formally put on notice of the foregoing factual predicates establishing their lack of Article III standing and violations of professional conduct rules 3.3 and 8.4, and personal monetary liability for the sum certain amount of $5.2225 billion, jointly and severally.

Appellees are directed to respond to this Declaration (17-16) (Part 17-16) (Parts I, II, II, IV, and V), supra, in written opposition, under oath, subject to the penalty of perjury, as officers of the court where applicable, and pursuant to their duties under Rules 3.3 and 8.4 of the District Court (NDGA), the ABA, and Georgia Bar's Rules of Professional Conduct, no later than Friday, March 28, 2025, at 1:00 PM Eastern Time. Time is of the essence.

Failure by any Appellee (or their authorized counsel) to file a timely, sworn written opposition specifically refuting the factual predicates in Parts I, II, III, IV, and V above shall result in each non-responding Appellee being deemed, jointly and severally, to have knowingly and willfully, with actual and constructive notice of this Joint Declaration (17-16), JUDICIALLY ADMITTED, CONFESSED, STIPULATED, AND AGREED to the truth and accuracy of each factual predicate herein, and to have NO OPPOSITION to the conclusions that Article III standing was and is currently lacking and absent, and that their conduct and the conduct of their counsel violated Georgia Rules of Professional Conduct 3.3 and 8.4 and Fed. R. Bankr. P. 9011(b)(1-4).

These judicial admissions shall be binding upon each non-responding Appellee for use in and for any purpose with respect to the following judicial proceedings: 02cv2219 (SDNY), 03-93031 (BC NDGA), *U.S. v. Ware*, 04cr1224 (SDNY), *U.S. v. Ware*, 05cr1115 (SDNY), *In re Ware* (2008) (Supreme Court of Georgia), 25cv00613 (NDGA), and any other subsequent proceeding between Appellants and Appellees.

Signed this 28th day of March 2025, under oath, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 U.S.C. § 1746, in Brooklyn, NY.

/s/ Ulysses T. Ware

*Ulysses J. Ware*

Ulysses T. Ware, attorney in fact for the Appellants

March 28, 2025
Brooklyn, NY 11226

Friday, March 28, 2025
(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics
Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and
stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly
and severally.

## The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Friday, March 28, 2025, 1:05:32 PM

*Ware, et al. v. Alpha Capital, AG, et al.*

Case No. 25cv00613 (NDGA) and 03-93031 (BC NDGA), and 02cv2219 (SDNY), and 04cr1224 (SDNY), and 05cr1115 (SDNY), and *In re Ware* (2008), Supreme Court of Georgia

**The Appellees, nor their legal counsels, filed any written opposition or challenge to the factual admissions, judicial admissions, factual stipulations, and immediate entry of a money judgment in the sum certain amount of $5.2225 billion, joint and several liability, against each Appellee and their Privies.**

# The Appellants' and Appellees' Joint Rule 3.3 and Rule 8.4 Declaration and Stipulation.

**I, Ulysses T. Ware,** hereby this 28th day of March 2025, on behalf of the Appellants and each Appellee, **(with actual notice and implied consent)**, pursuant to 28 U.S.C. § 1746, incorporate by reference herein, *in haec verba*, the Joint Stipulated Appellate Record (JSAR) in 25cv00613 (NDGA), and declare under penalty of perjury under the laws of the United States of America, based upon personal knowledge and a diligent review of the record in this matter (Dkt. 5-1 to Dkt. 18) and related proceedings (02cv2219 (SDNY)), that the following facts are true and correct. These facts establish the absence of Article III subject matter jurisdiction (standing) concerning Appellees' participation in this appeal (25cv00613) and the underlying Bankruptcy Court proceeding (03-93031), and further establish Appellees' and their counsels' violations of their ethical duties under the District Court (NDGA), the ABA, and Georgia Rules of Professional Conduct Rule 3.3 and Rule 8.4, Bankruptcy Rule 9011(b)(1-4), and 28 USC § 1927:

**I.**

Page 5 of 16
Friday, March 28, 2025
(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

# I.    FACTUAL   PREDICATES   CONFIRMING   LACK   OF ARTICLE   III   STANDING   AND   VIOLATIONS   OF PROFESSIONAL CONDUCT RULES.

1. **Incontrovertible Illegality and Voidness Ab Initio of Underlying Instruments (GX 1-4, GX 5):** The Predatory Criminal Usury Subject Matter Instruments (GX 1-4, GX 5), forming the sole basis for Appellees' purported claims (Dkt. 5-1 to 5-6) , are void ab initio under: (a) New York Penal Law § 190.40 (criminal usury, a class E felony), imposing interest exceeding 2,000% per annum, making them null and void ab initio, uncollectible, and unenforceable criminal usury contracts; and (b) 15 U.S.C. § 78cc(b), due to Appellees' (the 02cv2219 Plaintiffs) operation as unregistered broker-dealers [JSAR, Dkt. 5-13, p. 48], rendering the associated contracts, GX 1-4, and GX 5, void as to their rights. **Legal Significance:** This fundamental, multi-layered illegality and voidness, knowable through reasonable inquiry, negates any possibility of a "legally protected interest" for Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

2. **Conclusive 2007 Final Judgment Extinguishing All Claims:** On December 20, 2007, the 02cv2219 Plaintiffs (Appellees/privies herein), through their legal counsel Appellee Zitter, **voluntarily procured** a Final Judgment dismissing all claims based on GX 1-4/GX 5 **with prejudice** under Rule 41(a)(2) in 02cv2219 (SDNY), after all statutes of limitation had expired [JSAR, Dkt. 5-13, pp. 46-47, 52]. **Legal Significance:** This constitutes a final adjudication on the merits, absolutely barring Appellees and their privies from ever re-litigating these extinguished claims under res judicata. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

3. **Appellees' Key Filings in 03-93031 (BC NDGA) Predicated on Void/Extinguished Claims:** In April 2003, well after the execution of the void instruments and before the 2007 Final Judgment, Appellees KTS and UST filed key documents in the 03-93031 bankruptcy case, including:

    a) **Dkt. 5-1:** UST's Notice of Appearance (Morawetz, Townson, Treace).
    b) **Dkt. 5-2:** KTS' Entry of Appearance for 02cv2219 Plaintiffs as purported "creditors" and "interested parties" (KTS, Meir, Mills, Walker, Kadaba).
    c) **Dkt. 5-3:** UST Motion for Dismissal with Prejudice or Conversion, relying implicitly on the SDNY litigation concerning GX 1-4/GX 5 (Morawetz, Townson, Treace).
    d) **Dkt. 5-4:** KTS' Opposition to Debtor's Motion to Reject GX 1-4/GX 5, asserting their validity.
    e) **Dkts. 5-5 & 5-6:** KTS' Emergency Motion to Dismiss and Supporting Brief, predicated entirely on the enforceability of GX 1-4/GX 5 and related SDNY orders.

4. **Breach of Duty of Inquiry (Rule 9011(b)(3) & Rule 3.3):** Appellee attorneys (KTS partners Meir, Mills, Walker, Kadaba; Zitter; Rabinowitz; UST attorneys Morawetz, Townson, Treace) had a non-delegable duty under Fed. R. Bankr. P. 9011(b)(3) and their

(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

ethical duty of candor (Georgia Rule 3.3) to conduct a reasonable inquiry into the factual contentions and legal basis for their filings (Dkts. 5-1 to 5-6) *before* submitting them to the Court. A reasonable inquiry would have readily revealed the patent criminal usury under NY law and the federal securities violations (unregistered broker-dealer status) rendering GX 1-4/GX 5 void ab initio. Their failure to conduct such inquiry or to heed its results constitutes a violation of these duties. See Dkt. 9 (F-10).

5. **Making False Statements of Law and Fact (Rule 3.3(a)(1)):** By filing Dkts. 5-1 through 5-6, which explicitly or implicitly represented GX 1-4/GX 5 as valid, enforceable debts conferring "creditor" or "interested party" status upon the 02cv2219 Plaintiffs, *Appellee lawyers made knowing or reckless false statements of material fact and law to the Bankruptcy Court,* directly violating Georgia Rule of Professional Conduct 3.3(a)(1). They presented predatory criminal usury null and void instruments, GX 1-4, and GX 5, as legally viable claims.

6. **Failure to Disclose Material Facts (Rule 3.3(a)(2)):** Appellee lawyers failed to disclose to the Bankruptcy Court and have failed to disclose to this Court the material facts concerning the criminal usury of GX 1-4 under NY Penal Law § 190.40 and the federal statutory voidness of GX 1-4/GX 5 under 15 U.S.C. § 78cc(b) due to their clients' unregistered broker-dealer status. This disclosure was and is necessary to avoid assisting their clients' criminal and fraudulent act of attempting to collect unlawful debts through the bankruptcy process, constituting a violation of Georgia Rule of Professional Conduct 3.3(a)(2).

7. **Presenting Legally Frivolous Claims (Rule 9011(b)(2)):** The claims and legal positions asserted in Dkts. 5-1 through 5-6, predicated entirely upon the void ab initio and criminally unenforceable GX 1-4/GX 5, *__were not warranted by existing law__* and lacked any non-frivolous basis for an argument to extend, modify, or reverse existing law. These filings were legally frivolous, violating Fed. R. Bankr. P. 9011(b)(2).

8. **Improper Purpose (Rule 9011(b)(1)):** Filings Dkts. 5-1 through 5-6 were presented for improper purposes, including: (a) to harass Appellants; (b) to cause unnecessary delay and needlessly increase the cost of litigation; (c) **to abuse the bankruptcy process as an instrument for collecting criminally usurious and void debts**; and (d) to obstruct the Debtor's reorganization efforts, conceal assets of the Chapter 11 estate (+$522 million in strict-liability short-swing insider-trading profits) and evade consequences in the SDNY litigation (including contempt orders). This conduct violates Fed. R. Bankr. P. 9011(b)(1).

9. **Dishonesty, Fraud, Deceit, Misrepresentation (Rule 8.4(c)):** By knowingly or recklessly presenting false claims based on void instruments, concealing material facts about their illegality, and misleading the Bankruptcy Court regarding their clients' true status and the nature of the debts, Appellee lawyers engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation, directly violating Georgia Rule of Professional Conduct 8.4(c).

10. **Conduct Prejudicial to the Administration of Justice (Rule 8.4(d)):** The filing and pursuit of claims based on null and void ab initio and predatory criminal instruments (Dkts. 5-1 to 5-6) wasted significant judicial resources, prolonged litigation based on meritless grounds, abused the bankruptcy system, and undermined public confidence in the judiciary.

This conduct is inherently prejudicial to the administration of justice, violating Georgia Rule of Professional Conduct 8.4(d).

11. **Appellees' Ongoing Breach of Duty to Correct False, Misleading, and Fraudulent Statements (Rule 3.3(a)(1)) and Ongoing Misconduct (Rule 8.4)**: Appellee lawyers have an *ongoing ethical duty* to correct any prior false or misleading statements made to the tribunal. Their failure to correct the representations made in Dkts. 5-1 to 5-6 *after* Judge Sand's Dec. 20, 2007, voluntary Rule 41(a)(2) Final Judgment definitively extinguished all underlying claims, and their continued participation in 03-93031 and this 25cv00613 appeal predicated implicitly or explicitly on those filings, **constitutes a continuing violation** of Georgia Rules 3.3 and 8.4. They continue to benefit from and perpetuate the initial fraud on the court.

12. **Specific Misrepresentation in KTS Notice of Appearance (Dkt. 5-2)**: KTS's formal Entry of Appearance [Dkt. 5-2] on behalf of **FINRA (SEC) regulator certified unregistered broker-dealers** Alpha Capital AG, Stonestreet L.P., Markham Holdings Ltd., and AMRO International S.A. explicitly identifies these entities as "interested parties and creditors." This representation was demonstrably false, as their status was predicated solely on the void and criminally usurious GX 1-4/GX 5. This filing constitutes a direct violation of Rules 3.3(a)(1) and 8.4(c).

13. **UST's Complicity and Breach of Duty (Dkts. 5-1, 5-3)**: The UST's filings, including its Notice of Appearance [Dkt. 5-1] and Motion to Dismiss [Dkt. 5-3], by aligning with KTS's criminal and unethical efforts to enforce and facilitate the Hobbs Act loan sharking and extortionate collection of GX 1-4 and relying on circumstances arising from the void debts (such as the SDNY fraudulent and void ab initio purported contempt order (GX 11, March 11, 2003) stemming from Appellants' lawful efforts in refusing to honor Appellees' unlawful criminal usury debt collection criminal conversions under GX 1-4) without acknowledging or addressing the underlying illegality, implicitly validated the Appellees' improper claims. This constituted a failure by the UST attorneys (Morawetz, Townson, Treace) to uphold their duty to protect the integrity of the bankruptcy process and violated ethical duties analogous to Rules 3.3 and 8.4 applicable to government attorneys.

14. **KTS's Frivolous and Misleading Motions (Dkts. 5-4, 5-5, 5-6)**: KTS's Opposition to the Debtor's Motion to Reject Executory Contract [Dkt. 5-4], its Emergency Motion to Dismiss [Dkt. 5-5], and its supporting Brief [Dkt. 5-6] *were entirely predicated on the false premise that GX 1-4/GX 5 were valid, lawful, and enforceable contracts*. These filings constitute direct, material misrepresentations of law and fact to the Bankruptcy Court, violating Rules 3.3(a)(1) and 8.4(c), and were frivolous under Rule 9011(b)(2).

15. **Judicial Admissions by Failure to Respond**: Pursuant to the demand below, failure by any Appellee or their counsel to provide a timely, sworn opposition refuting these factual predicates (1-14) will constitute a binding judicial admission under penalty of perjury as to the truth of these facts and the validity of the legal conclusions regarding lack of standing and ethical violations, applicable in all related proceedings.

**Page 8 of 16**
**Friday, March 28, 2025**

(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

## II. FACTUAL PREDICATES CONFIRMING LACK OF ARTICLE III STANDING, HOBBS ACT VIOLATIONS, RICO PREDATORY CRIMINAL USURY UNLAWFUL DEBT COLLECTION, AND VIOLATIONS OF PROFESSIONAL CONDUCT RULES.

**(Facts 1-9 establish the foundational illegality, voidness, and preclusion).**

1. **Inherent Illegality and Voidness Ab Initio of GX 1-4, GX 5 under New York Criminal Law:** The Predatory Criminal Usury Subject Matter Instruments (GX 1-4, GX 5) are void ab initio and criminally usurious under NY Penal Law § 190.40, a class E felony, imposing interest/charges exceeding 2,000% p.a. This criminality renders them nullities incapable of conferring any "legally protected interest" cognizable in the 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), 05cr1115 (SDNY), 25cv00613 (NDGA), and *In re Ware* (2008) Supreme Court of Georgia. *Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379 (2d Cir. 2022); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

2. **Federal Statutory Voidness (Unregistered Broker-Dealer Status):** Appellees (02cv2219 Plaintiffs), clients of KTS, were certified by FINRA's senior executive Marcia E. Asquith, Esq. on May 17, 2021, as unregistered broker-dealers [JSAR, Dkt. 5-13, p. 48], rendering contracts GX 1-4/GX 5 void as to their rights under 15 U.S.C. § 78cc(b), *independently eliminating* any alleged or purported "legally protected interest" in the predatory criminal usury subject matter, GX 1-4, and GX 5. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 387-88 (1970).

3. **Federal Criminality (RICO & Hobbs Act):** Appellees', their privies, agents, proxies, surrogates, alter-ego, and all those in active concert therewith attempts to collect debts void for criminal usury constitute "unlawful debt collection" under RICO, 18 U.S.C. §§ 1961(6)(B), 1962, and felony extortion under the Hobbs Act, 18 U.S.C. § 1951(a), when using judicial process or threats. *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020). Appellees cannot have a "legally protected interest" in committing federal felonies.

4. **Exclusive Basis of 02cv2219 (SDNY) Litigation:** The 02cv2219 SDNY lawsuit initiated by Appellees was predicated *exclusively* upon the purported enforceability of the null and void initio and unlawful GX 1-4 and GX 5. [JSAR, Dkt. 5-5].

5. **Conclusive Judge Sand's Rule 41(a)(2) 2007 Final Judgment Procured by Appellees:** On Dec. 20, 2007, after the statute of limitations expired, Appellees, through Appellee Zitter, **voluntarily sought and procured** a Final Judgment dismissing all 02cv2219 claims **with prejudice** under Rule 41(a)(2). [JSAR, Dkt. 5-13, pp. 46-47, 52].

6. **Absolute Res Judicata Effect of 2007 Final Judgment:** This dismissal *with prejudice* is a final adjudication "on the merits," absolutely barring Appellees and their privies from re-litigating any claims that were or could have been raised concerning GX 1-4/GX 5. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Semtek*, 531 U.S. at 505-06.

Friday, March 28, 2025

(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

7. **Annulment and Mootness Effect:** The voluntary dismissal annulled all prior *interlocutory* proceedings/orders/judgments within 02cv2219, rendering the underlying controversy regarding GX 1-4/GX 5 moot as of Dec. 20, 2007. *A.B. Dick Co. v. Marr*, 197 F.2d 498, 502 (2d Cir. 1952); *L-3 Commc'ns EOTech*, 921 F.3d at 18-19. This does not affect the *external* preclusive effect of the final judgment itself.

8. **Established Privity:** Appellees herein are either the original 02cv2219 Plaintiffs or their privies (including KTS, Zitter, Rabinowitz, potential successors, agents, and those in active concert) bound by the 2007 Final Judgment under *Taylor v. Sturgell*, 553 U.S. 880 (2008). [See Appellants' Memo #7].

9. **Conclusive Judicial Admissions of Criminal Intent:** Appellee Zitter confessed under oath in Nov. 2007, during the U.S. v. Ware, 04cr1224 (SDNY) trial to "hiring" KTS for unlawful "collection activity" in the 03-93031 Chapter 11 bankruptcy court [Dkt. 9, Ex. F-11]. The KTS Memo confirms KTS's knowledge of related illegalities (insider trading) and conspiracy. [Dkt. 9, Ex. F-10]. These admissions establish predicate and overt acts for RICO extortion, money laundering, unlawful debt collection activities, conspiracy to commit bankruptcy fraud, extortion, and other racketeering activities, and negate good faith.

# III. (Facts 10-19 establish the Appellees' and their Privies' Hobbs Act and RICO violations via Dkt. 5-1 to 5-6).

10. **KTS's Fraudulent Entry of Appearance (Dkt. 5-2) as Predicate Act:** On April 10, 2003, KTS (Meir, Mills) filed an Entry of Appearance [Dkt. 5-2] in 03-93031, falsely representing the 02cv2219 Plaintiffs (unregistered broker-dealers) as "creditors" and "interested parties." **Legal Significance:** This filing, using court process ("color of official right") to assert fraudulent and void rights based on predatory null and void/criminal usury debts (GX 1-4/GX 5), constitutes *an overt act* of attempted Hobbs Act extortion (§ 1951(a)) and an act of "collecting an unlawful debt" under RICO (§§ 1961(6)(B), 1962).

11. **UST Motion (Dkt. 5-3) Aiding and Abetting KTS' Unlawful Debt Collection Activity:** On April 10, 2003, the UST (Morawetz) filed a bogus and manifestly frivolous Motion to Dismiss [Dkt. 5-3], alleging bad faith based *inter alia* on what Morawetz risibly characterized as "Appellants seeking to avoid the consequences (including contempt/arrest order related to the predatory criminal usury null and void ab initio unlawful debts GX 1-4) of the SDNY litigation." (paraphrased). **Legal Significance:** By seeking dismissal to facilitate enforcement and collection efforts related to the predatory null and void/criminal debts, the UST filing objectively aided and abetted the attempted Hobbs Act extortion (§ 1951(a)) and RICO unlawful debt collection (§§ 1961(6)(B), 1962) by Appellees KTS and their clients.

12. **KTS' Manifestly Frivolous, Risible, Vexatious, Filed for an Improper Purpose, and Baseless Opposition (Dkt. 5-4) Asserting Validity of Predatory Criminal Usury Void Ab Initio Unlawful Debts:** On April 11, 2003, KTS (Meir) filed an Opposition [Dkt. 5-4]

Friday, March 28, 2025

(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

to the Debtor's motion (Doc. 5, 03-93031) to reject GX 1-4/GX 5, explicitly lying, committing perjury, and fraudulently arguing in bad faith these void and criminally usurious instruments were valid and enforceable contracts, further asserting rights derived from the SDNY judgment based upon them. **Legal Significance:** This filing constitutes *another overt act* of attempted Hobbs Act extortion (§ 1951(a)) and RICO unlawful debt collection (§§ 1961(6)(B), 1962), using court filings to demand enforcement of void/criminal obligations.

13. **KTS Emergency Motion to Dismiss (Dkt. 5-5) Predicated on Predatory Null and Void Ab Initio Criminal Usury Unlawful Debts:** On April 11, 2003, KTS (Meir) filed a risible, manifestly frivolous, and bad faith Emergency Motion to Dismiss [Dkt. 5-5] the 03-93031 Chapter 11 case, arguing (frivolously) " ... dismissal was warranted because the case was *filed solely [notwithstanding the lawful objectives of the Chapter 11 Debtor, Appellant Group Management and its legal counsel Appellant Ware, to rid themselves of predators, Appellees, continual (daily), violent threats of their (the predators') intention to inflect extreme bodily harm, including murder (death) if necessary, to steal Group Management's free-trading stock then valued at +$522 million)]* to evade compliance with SDNY Orders concerning the void/criminal GX 1-4/GX 5." (paraphrased). **Legal Significance:** This bad faith, frivolous, and fraudulent motion by KTS, seeking dismissal of the Chapter 11 to clear the path for the fraudulent criminal prosecutions of Appellant Ware in 04cr1224 (SDNY) and 05cr1115 (SDNY), and Hobbs Act predatory collection efforts based on predatory null and void/criminal usury debts, constitutes a further overt and predicate act of attempted Hobbs Act extortion (§ 1951(a)) and RICO unlawful debt collection (§§ 1961(6)(B), 1962).

14. **KTS Brief (Dkt. 5-6) Explicitly Arguing for Enforcement of Predatory Null and Void Debts:** The Brief in Support [Dkt. 5-6] filed by KTS (Meir) alongside Dkt. 5-5 explicitly argues the frivolous and vexatious, and bad faith purported merits of enforcing the moot and void ab initio alleged 02cv2219 SDNY Orders (GX 11) predicated on the void/criminal GX 1-4/GX 5. **Legal Significance:** This brief provides detailed written advocacy leveraging the judicial process ("color of official right") to attempt collection of void/criminal debts, constituting clear evidence of attempted Hobbs Act extortion (§ 1951(a)) and RICO unlawful debt collection (§§ 1961(6)(B), 1962).

15. **Pattern of Unlawful Debt Collection Activity (Dkts. 5-2, 5-4, 5-5, 5-6):** The series of filings by the UST and KTS (Dkts. 5-2, 5-4, 5-5, 5-6), an illegal association in fact, all aimed at enforcing or facilitating the collection of the void/criminal debts GX 1-4/GX 5 through the Bankruptcy Court, *constitutes a pattern of racketeering activity* under RICO, specifically multiple predicate acts of unlawful debt collection. 18 U.S.C. §§ 1961(5), 1962(c).

16. **Conspiracy (RICO § 1962(d), 18 U.S.C. § 371):** The coordinated filings and shared objective between KTS (acting for the 02cv2219 Plaintiffs) and the UST (Dkts. 5-1 through 5-6) to achieve dismissal of the Chapter 11 case, *thereby facilitating the collection efforts related to the void/criminal debts,* evidence a conspiracy to collect unlawful debt in violation of RICO, 18 U.S.C. § 1962(d), and a willful and deliberate conspiracy to defraud

(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

the United States (by impeding the lawful function of the Bankruptcy Court), 18 U.S.C. § 371.

17. **Use of Bankruptcy Process for Extortion ("Color of Official Right"):** Each filing by Appellees KTS and UST (Dkts. 5-1 through 5-6) within the 03-93031 bankruptcy proceeding, invoking the authority and processes of the federal court to advance the collection of predatory null and void/criminal debts, GX 1-4, and GX 5, represents a wrongful use of "color of official right" supporting Hobbs Act extortion liability (§ 1951(a)).

18. **"Collection" Activity under RICO § 1961(6)(B):** The filings Dkts. 5-2, 5-4, 5-5, and 5-6 by KTS, seeking dismissal of the 03-93031 Chapter 11 bankruptcy or opposing the Debtor's rejection of the null and void ab initio predatory criminal usury unlawful debt contracts, GX 1-4, GX 5, to facilitate recovery, constitute direct attempts to "collect" an "unlawful debt" (defined in § 1961(6) as debt unenforceable due to usury) **and are therefore predicate racketeering acts.** *See Grote*, 961 F.3d at 119.

19. **Nexus Between Filings and Unlawful Objective:** All filings Dkts. 5-1 through 5-6 are inextricably linked to the ultimate unlawful objective: obtaining payment or its equivalent (e.g., preventing rejection, facilitating SDNY enforcement) based on the void and criminally usurious GX 1-4/GX 5. The filings were instrumental means to achieve this illegal end.

## IV. (Facts 20-27 establish the absence of Article III standing elements and ethical violations).

20. **Irrefutable Absence of Concrete Injury-in-Fact to a Legally Protected Interest:** Based on predicates 1-19, Appellees **cannot** factually demonstrate any invasion of a "legally protected interest" in GX 1-4, and GX 5, *predatory null and void ab initio criminal usury unlawful debts*, negating the Article III standing "particularized, concrete injury-in-fact" requirement. *Lujan*, 504 U.S. at 560.

21. **Manifestly Self-Inflicted Harm (*Clapper*):** Any detriment (unable to collect or enforce predatory criminal usury unlawful debts, GX 1-4, and GX 5) Appellees claimed in the 02cv2219 (SDNY) complaint, and in Dkt. 5-1 to 5-6, was voluntarily self-inflicted due to their own illegal criminal loan sharking misconduct and voluntary Rule 41(a)(2) dismissal with prejudice of 02cv2219 (SDNY) lawsuit on Dec. 20, 2007, is legally and factually insufficient for Article III standing. *Clapper*, 568 U.S. at 416.

22. **Failure to Establish Causation:** Any alleged "injury in fact" is not "fairly traceable" to Appellants' *lawful* conduct but to Appellees' own unlawful acts and Judge Sand's voluntary Dec. 20, 2007, Rule 41(a)(2) 2007 Final Judgment. *Lujan*, 504 U.S. at 560.

23. **Absolute Impossibility of Lawful Redressability:** No federal or state court is lawfully authorized to enforce void, criminal, and precluded claims; thus, the Appellees' alleged injury is unredressable. *Lujan*, 504 U.S. at 561; *Steel Co.*, 523 U.S. at 103-104.

Friday, March 28, 2025

(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

24. **Resulting Mootness:** No live "Case or Controversy" exists regarding Appellees' extinguished claims; *all derivative and related (02cv2219, 03-93031, 04cr1224, 05cr1115, 25cv00613, and In re Ware (2008) Supreme Court of Georgia) proceedings are moot.* A.B. Dick, 197 F.2d at 501-02; and see *L-3 EOTech,* 921 F.3d at 18-19.

25. **Appellees' Continuing Vexatious Re-litigation:** Despite the above, Appellees persist in this appeal and prior proceedings [Dkts. 5-1 to 5-10], constituting bad faith collateral attack on Judge Sand's Dec. 20, 2007, voluntary Rule 41(a)(2) final judgment, vexatious and bad faith re-litigation of voluntarily mooted claims, and causing irreparable harm to the Appellants (+$5.2225 billion). [Decl. 17-13A, Part II].

26. **Violations of Ethical Duties (Rules 3.3, 8.4) and Rule 9011:** Appellee lawyers (KTS, Meir, Mills, Walker, Kadaba, Southwell, Grushko, Mittman, NeSmith, Frederick, Burgess, Hewett, Myers, Nash, Mittlemen, ·Zitter, Rabinowitz, UST attorneys—Morawetz, Townson, Treace) violated duties their duty of candor, engaged in dishonesty/fraud/misrepresentation, and filed frivolous pleadings (Dkts. 5-1 to 5-6) for improper purposes by presenting claims based on void/criminal/precluded debts without reasonable inquiry or disclosure.

27. **Binding Judicial Admissions by Failure to Respond:** Failure to provide timely, sworn opposition refuting facts 1-26 constitutes binding judicial admission of these facts and the legal conclusions regarding lack of standing and misconduct.

## V.    Deemed Judicial Admission of Irreparable Harm and Joint and Several Liability in the Sum Certain Amount of $5.2225 Billion.

As a direct and proximate result of the Appellees' (including their privies, agents, proxies, surrogates, alter egos, and all those in active concert therewith) failure to provide timely, sworn written opposition specifically refuting the factual predicates Parts I, II, III, and IV above by the deadline of ▓▓▓▓▓▓▓▓▓▓, ▓▓ ▓▓▓▓ ▓▓▓▓ ▓▓▓▓▓, as demanded in this Declaration (17-16), each Appellee, jointly and severally, is deemed to have judicially admitted, confessed, stipulated, and agreed, effective **March 28, 2025**, that:

a. The unlawful acts, criminal misconduct, ethical violations, and bad faith re-litigation efforts detailed in factual predicates Parts I, II, III, and IV herein did, in fact, occur as described;

b. These unlawful acts and conduct directly and proximately caused irreparable harm, injury, and damages to Appellants **Group Management** (a sole proprietorship) and Ulysses T. Ware;

c. The quantifiable measure of said irreparable harm, injury, and damages resulting from the aforesaid unlawful acts and conduct amounts to the **sum certain of $5,222,500,000.00 (Five Billion, Two Hundred Twenty-Two Million, Five Hundred Thousand Dollars)**;

d. Each Appellee, their privies, agents, proxies, surrogates, alter egos, and all those in active concert therewith, hereby judicially admit, confess, consent, and stipulate they are **jointly and**

severally liable to Appellants for the full amount of said damages—$5,222,500,000.00 (**Five Billion, Two Hundred Twenty-Two Million, Five Hundred Thousand Dollars**).

## VI. Legal Significance

These **deemed judicial admissions**, confessions, and factual stipulations arising from the Appellees' failure to timely contest the underlying factual predicates establishing pervasive criminal and tortious conduct, **conclusively establishes**:

1. The **fact of irreparable harm** to Appellants;
2. The **precise quantum of damages** suffered as a direct consequence of the unlawful conduct; and
3. The **joint and several liability** of all Appellees and their privies therefor.

Accordingly, these matters are now **removed from the realm of dispute** in this proceeding and **all related proceedings**, pursuant to binding principles of judicial estoppel, collateral estoppel, and Rule 8(b)(6), Fed. R. Civ. P. (deemed admission of unanswered allegations),[1] as well as controlling Eleventh Circuit law.[2]

## APPELLANTS' NOTICE PURSUANT TO RULE 11 AND STANDING ORDER ¶M

This Declaration serves as Appellants' formal notice and good faith attempt, pursuant to Fed. R. Civ. P. 11(b)(1-4) (via Fed. R. Bankr. P. 9011), 28 U.S.C. § 1927, and Paragraph (m) of Judge Brown's Standing Order [Dkt. 2, 25cv00613], to "meet and confer" with Appellees regarding the threshold, dispositive lack of Article III subject matter jurisdiction (standing) *and* the profound ethical violations detailed herein. This effort is undertaken to demand that Appellees and their counsel fulfill their own ethical obligations under the District Court (NDGA), the ABA, and the Georgia Rules of Professional Conduct Rules 3.3 and 8.4 by immediately ceasing the

---

[1] Fed. R. Civ. P. 8(b)(6): *Effect of Failing to Deny.* An *allegation*—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, *an allegation* is considered denied or avoided. *United States v. 416.81 Acres of Land*, 514 F.2d 627, 631 (7th Cir. 1975).

[2] *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party [Appellees' in 02cv2219 (SDNY), 03-93031, Dkt. 5-1 to 5-10] assumes a certain position in a legal proceeding, and succeeds in maintaining that position [Dkt. 28, 03-93031; Dkt. 90, 02cv2219 (SDNY), voluntary Rule 41(a)(2) final judgment], he *may not* thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). (emphasis added).

presentation of claims and arguments for which no non-frivolous basis exists, acknowledging the conclusive preclusive effect of the 2007 Final Judgment, correcting prior misrepresentations to the tribunals, and withdrawing from further participation based on the extinguished claims.

## DEMAND FOR RESPONSE AND CONSEQUENCES OF FAILURE TO RESPOND

Each Appellee identified above and in Dkt. 281 (03-93031), their privies, agents, proxies, surrogates, alter-egos, and all those in active concert therewith, jointly and severally, are hereby formally put on notice of the foregoing factual predicates establishing their lack of Article III standing and violations of professional conduct rules 3.3 and 8.4.

**Appellees are directed to respond to this Declaration (17-16) (Part 17-16) (Parts I, II, II, and IV), supra, in written opposition, under oath, subject to the penalty of perjury, as officers of the court where applicable, and pursuant to their duties under Rules 3.3 and 8.4 of the District Court (NDGA), the ABA, and Georgia Bar's Rules of Professional Conduct, no later than Friday, March 28, 2025, at 1:00 PM Eastern Time. Time is of the essence.**

Failure by any Appellee (or their authorized counsel) to file a timely, sworn written opposition specifically refuting the *factual predicates* in Parts I, II, III, and IV, above shall result in each non-responding Appellee being deemed, jointly and severally, to have knowingly and willfully, with actual and constructive notice of this Joint Declaration (17-16), **JUDICIALLY ADMITTED, CONFESSED, STIPULATED, AND AGREED** to the truth and accuracy of each factual predicate herein, and to have **NO OPPOSITION to the conclusions that Article III standing was and is currently lacking and absent, and that their conduct and the conduct of their counsel violated Georgia Rules of Professional Conduct 3.3 and 8.4 and Fed. R. Bankr. P. 9011(b)(1-4)**.

These judicial admissions shall be binding upon each non-responding Appellee for use in and for any purpose with respect to the following judicial proceedings: 02cv2219 (SDNY), 03-93031 (BC NDGA), *U.S. v. Ware*, 04cr1224 (SDNY), *U.S. v. Ware*, 05cr1115 (SDNY), *In re Ware* (2008) (Supreme Court of Georgia), 25cv00613 (NDGA), and any other subsequent proceeding between Appellants and Appellees.

Signed this 28th day of March 2025, under oath, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 U.S.C. § 1746, in Brooklyn, NY.

/s/ Ulysses T. Ware
*Ulysses J. Ware*
Ulysses T. Ware, attorney in fact for the Appellants

March 28, 2025
Brooklyn, NY 11226

**End of Declaration**

Friday, March 28, 2025
(17-16) (Part 17-16) re The Parties' Joint Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings; and stipulated damages in the sum certain amount of $5.2225 billion, and entry of consent judgment, jointly and severally.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ulysses T. Ware,

# Appx D

Appellant,

Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG, et al.,

Appellees.

_____/

### ORDER

The Court **DENIES** Appellant's motions (Dkts. 12; 14; 19; 22) because Appellant has not shown the relief he seeks is warranted. The Court **ORDERS** Appellant to file a single, consolidated opening appellate brief no later than May 29, 2025. Appellant's brief must be titled "Appellant's Opening Appellate Brief," be double-spaced, not exceed 25 pages, contain everything required by Bankruptcy Rule 8014(a) in the proper format, and otherwise comply with the rules governing opening briefs in a bankruptcy appeal. If Appellant believes the Court lacks jurisdiction to consider his appeal—or that other jurisdictional problems exist—he may assert those arguments in his opening brief. The docket

in this case is already clogged with rambling, incoherent, voluminous, and unnecessary filings. Going forward, the Court urges Appellant to be more judicious and restrained about what he chooses to file. If Appellant does not comply with any of the instructions contained in this Order, the Court will likely dismiss his appeal, potentially with prejudice.

**SO ORDERED** this 29th day of April, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

2

# Appendix E

## Exhibit E—Advisory Committee Notes (Fed. R. App. P. Rule 32)

*Subdivision (d).* Local Variation.

A brief that complies with the national rule should be acceptable in every court. Local rules may move in one direction only; they may authorize noncompliance with certain of the national norms. For example, a court that wishes to do so may authorize printing of briefs on both sides of the paper, or the use of smaller type size or sans-serif proportional type. A local rule may not, however, impose requirements that are not in the national rule.

### Committee Notes on Rules—2002 Amendment

*Subdivision (a)(2).* On occasion, a court may permit or order the parties to file supplemental briefs addressing an issue that was not addressed—or adequately addressed—in the principal briefs. Rule 32(a)(2) has been amended to require that tan covers be used on such supplemental briefs. The amendment is intended to promote uniformity in federal appellate practice. At present, the local rules of the circuit courts conflict. *See, e.g.,* D.C. Cir. R. 28(g) (requiring yellow covers on supplemental briefs); 11th Cir. R. 32, I.O.P. 1 (requiring white covers on supplemental briefs).

*Changes Made After Publication and Comments.* No changes were made to the text of the proposed amendment or to the Committee Note.

*Subdivision (a)(7)(C).* If the principal brief of a party exceeds 30 pages, or if the reply brief of a party exceeds 15 pages, Rule 32(a)(7)(C) provides that the party or the party's attorney must certify that the brief complies with the type-volume limitation of Rule 32(a)(7)(B). Rule 32(a)(7)(C) has been amended to refer to Form 6 (which has been added to the Appendix of Forms) and to provide that a party or attorney who uses Form 6 has complied with Rule 32(a)(7)(C). No court may provide to the contrary, in its local rules or otherwise.

### Committee Notes on Rules—2016 Amendment

When Rule 32(a)(7)(B)'s type-volume limits for briefs were adopted in 1998, the word limits were based on an estimate of 280 words per page. In the course of adopting word limits for the length limits in Rules 5, 21, 27, 35, and 40, and responding to concern about the length of briefs, the Committee has reevaluated the conversion ratio (from pages to words) and decided to apply a conversion ratio of 260 words per page. Rules 28.1 and 32(a)(7)(B) are amended to reduce the word limits accordingly.

In a complex case, a party may need to file a brief that exceeds the type-volume limitations specified in these rules, such as to include unusually voluminous information explaining relevant background or legal provisions or to respond to multiple briefs by opposing parties or amici. The Committee expects that courts will accommodate those situations by granting leave to exceed the type-volume limitations as appropriate.

Subdivision (e) is amended to make clear a court's ability (by local rule or order in a case) to increase the length limits for briefs and other documents. Subdivision (e) already established this authority as to the length limits in Rule 32(a)(7); the amendment makes clear that this authority extends to all length limits in the Appellate Rules.

# [End of document]

# Appendix F

## Appx  F--Rule 83. Rules by District Courts; Judge's Directives

(a) LOCAL RULES.

(1) *In General.* After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice. A local rule must be consistent with—but not duplicate—federal statutes and rules adopted under 28 U.S.C. §§2072 and 2075 , and must conform to any uniform numbering system prescribed by the Judicial Conference of the United States. A local rule takes effect on the date specified by the district court and remains in effect unless amended by the court or abrogated by the judicial council of the circuit. Copies of rules and amendments must, on their adoption, be furnished to the judicial council and the Administrative Office of the United States Courts and be made available to the public.

(2) *Requirement of Form.* A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply.

(b) PROCEDURE WHEN THERE IS NO CONTROLLING LAW. A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§2072 and 2075 , and the district's local rules. *No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.*

# [End of document]

2

Ware, etal. v. Alpha Capital A G, et al.
25 cv 00613 (ND GA)

Re: Appellants' Appendices:
    A, B, C, D, E, and F.


/s/ Neypos 2. Ware

May 20, 2025

2 of 2 (May 20, 2025 Filed)

 

PRESS FIRMLY TO SEAL

PRIORITY MAIL
LEGAL FLAT RATE ENVELOPE
POSTAGE REQUIRED



**UNITED STATES POSTAL SERVICE**

- Expected delivery date specifi...
- Domestic shipments include $...
- USPS Tracking® service includ...
- Limited international insurance...
- When used internationally, a c...

*Insurance does not cover certain items.
Domestic Mail Manual at http://pe.usps...
** See International Mail Manual at http://...

## LEGAL FLAT RAT
ONE RATE ■ ANY WEIGHT

## TRACKED ■ INSU



PS00001000060

---

**UNITED STATES POSTAL SERVICE.**    Retail

**P**  US POSTAGE PAID
**$10.40**
Origin: 11226
05/20/25
3509710318-06

PRIORITY MAIL®

1 Lb 10.50 Oz

RDC 03

EXPECTED DELIVERY DAY: 05/23/25

C039

SHIP
TO:
75 TED TURNER DR SW
ATLANTA GA 30303-3315

USPS TRACKING® #

9505 5141 9265 5140 1390 56

Leg
EP
OD: 15 x 9.5    USPS.COM/PICKUP

---



**UNITED STATES POSTAL SERVICE®** | **PRIORITY MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

May 20 2025 (1:35cv-00613)
FROM: Supplemental Opening Brief
The Office of Ulysses T. Wave
123 Linden Blvd, Ste 9-L
Brooklyn, New York 11226



**TO:**
Office of the District Clerk
U.S. District Court (NDGA)
Richard B. Russell U.S. Courthouse
75 Ted Turner Dr. SW
Atlanta, GA 30303



Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE