Case No. 25cv00613 (NDGA)

MLB

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

**ATLANTA DIVISION**

ULYSSES T. WARE and GROUP MANAGEMENT,

Appellants,

v.

ALPHA CAPITAL AG, QBE INSURANCE CORP, CRUM & FORSTER INSURANCE CORP, KILPATRICK, TOWNSEND, & STOCKTON, LLP, BAKER & MCKENZIE, LLP, THOMAS A. LEGHORN, LAWRENCE B. MANDALA, NALL & MILLER, LLP., PATRICK N. ARNDT, THE STATE BAR OF GEORGIA, OFFICE OF THE GENERAL COUNSEL, NELS S.D. PETERSON, ALEXANDER H. SOUTHWELL, MARLON G. KIRTON, STEVEN D. FELDMAN, MICHAEL H. DOLINGER, DAVID N. KELLEY, MICHAEL J. GARCIA, NICHOLAS S. GOLDIN, MARIA E. DOUVAS, JEFFREY B. NORRIS, EDWARD T.M. GARLAND, MANIBUR S. ARORA, DENNIS S. MEIR, JOHN W. MILLS, III, J. HENRY WALKER, IV, WAB KADABA, KENNETH A. ZITTER, MATTHEW F. BOYER, et al.,

Appellees.

---

**Appellants' Verified Motion for Rehearing and Reconsideration Pursuant to Bankruptcy Rule 8022, Seeking Vacatur of Dkt. 38, Dkts. 57, and 58 for Serious Disqualifying Mental Disabilities, Egregious Manifest Errors of Law and Fact, Risible, Incoherent, and Schizophrenic Legal Rulings, Denial of Due Process, and Improper Exercise of Appellate Authority by District Judge Michael L. Brown; Verified Demand for FRE 201(c)(2) Mandatory Judicial Notice and Demand for a FRE 201(e) Hearing.**

---

Respectfully submitted under oath, pursuant to the penalty of perjury, with personal knowledge of the facts, pursuant to 28 USC § 1746 in Brooklyn, NY on Feb. 1, 2026.

/s/ Ulysses T. Ware
**ULYSSES T. WARE**
Attorney in Fact for the Appellants
The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L, Brooklyn, NY 11226
Tel: (718) 844-1260
Email: utware007@gmail.com

Sunday, February 1, 2026,

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

FEB 05 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

Case No. 25cv00613 (NDGA)

# Table of Contents

A.    Emergency Special Extraordinary Administrative Relief............................................6

   1.    District Judge (NDGA) Michael Lawrence Brown's Immediate Referral to the Judicial Council of the Eleventh Circuit Pursuant to 28 U.S.C. § 351 *et seq.* for Inquiry and investigation into Judicial Fitness and ▮▮▮▮▮▮▮.............................................................6

     Relief Requested and Grounds: ....................................................................................6

   2. Immediate Referral of Appellee Supreme Court of Georgia Chief Justice Nels S.D. Peterson to the Georgia Judicial Qualification Commission on Charges of *Criminal Judicial Misconduct* and a Disqualifying Mental Disability. See Ex. 12, infra. ..............................10

     Relief Requested and Grounds: ..................................................................................10

B.    Requested Legal Reliefs...............................................................................................13

C.    Summary of the Argument ..........................................................................................17

I.    Opening Statement.........................................................................................................20

II.    Introduction...................................................................................................................22

III.    The Legal standard: Bankruptcy Rule 8022 ............................................................23

IV.    FRE 201(c)(2) demand to take mandatory judicial notice of the Adjudicative Facts presented in federal regulatory filings and federal court records; and Demand for the required Rule 201(e) hearing on mandatory judicial notice. ...............................................26

   Dispositive Adjudicative Fact #1—judicial and collateral estoppel. ............................26

   Dispositive Adjudicative Facts #2—Lack of Article III Subject Matter Jurisdiction. ..................28

V.    Manifest Judicial Errors of Law and Fact in the Court's Dkt. 57 (Order). ...........30

   I. ARGUMENT ..............................................................................................................30

     A. The January 27, 2025 Document (Dkt. 278), Ex. 8, infra, Functions as a Memorandum Opinion Denying Relief. ..........................................................................30

     B. The Document is a "Final Order" Appealable Under 28 U.S.C. § 158(a). ...............31

     C. The District Court Erred by Treating the "Letter" as Administrative Correspondence Rather than a Judicial Act. ...........................................................................32

     II. ARGUMENT—The Court exercised appellate jurisdiction over the 25cv00613 appeal beginning on March 10, 2025, Dkt. 6, and ended on Jan. 26, 2026, Dkt. 57. ...................33

     A. THE DISTRICT COURT EXERCISED APPELLATE JURISDICTION OVER CASE 25cv00613 (NDGA) ON AT LEAST SIX SEPARATE OCCASIONS. ........................33

     III. ARGUMENT –Analysis of Jurisdictional Exercise..................................................35

     A. First Exercise: Denial of Substantive Motions on the Merits....................................35

     B. Second Exercise: Establishment of Appellate Briefing Schedule...............................35

     C. Third Exercise: Invocation of Bankruptcy Rule 8014(a)..........................................36

     D. Fourth Exercise: Acknowledgment of Jurisdictional Arguments .............................36

     E. Fifth Exercise: Threat of Dismissal with Prejudice..................................................37

**IV. CRITICAL CONTRADICTIONS WITH JANUARY 26, 2026 ORDER** ................................. 37

**V. JUDICIAL ESTOPPEL IMPLICATIONS** ...................................................................... 38

    **a. CONCLUSION** ...................................................................................................... 38

**VI. Reversible Manifest Judicial Errors of Law and Fact in the Court's Dkt. 58 Final Judgment, Ex. 2, infra.** ...................................................................................................................... 39

    **1) A judgment cannot be both a merits "AFFIRMANCE" and a jurisdictional "DISMISSAL" of the same appeal—and Dkt. 58 purports to be both.** ........................................ 40

    **2) Dkt. 58 contains a material record-misdescription: it labels the appealed "bankruptcy order" as "entered 02/03/2025," a date that does not identify the bankruptcy court's order....** 41

    **3) The Judgment improperly insinuates merits adjudication ("consideration of the appeal" and "rendered its decision") while issuing a terminating disposition that avoids a coherent jurisdictional explanation.** ...................................................................................... 42

    **4) Dkt. 58 fails to identify *the specific order* being "affirmed" with the precision required for a valid appellate judgment—compounded by the erroneous "entered 02/03/2025" reference.....** 42

    **5) To the extent the Court's termination rests on mootness, Dkt. 58 employs the wrong remedial posture by "affirming" rather than confronting vacatur principles.** ........................... 43

    **Rule 8022 Relief Requested (as compelled by these manifest errors)** ........................... 44

**VII.    The Court committed reversible, manifest error of law by not "first" determining its, the 03-93031 Bankruptcy Court (NDGA), and the 02-cv-2219 (SDNY) federal courts' Article III subject matter jurisdiction over their respective proceedings—proceedings from which the record came to the 25cv00613 District Court. *Steel Co.*, 523 U.S. at 93–95.** ..................... 44

**A. The Constitutional Imperative of Jurisdictional Priority** ........................................... 44

**B. The Supreme Court's Categorical Rejection of Hypothetical Jurisdiction** ................................ 45

**C. This Court's Independent Obligation to Examine Jurisdiction Below** ........................ 46

**D. The District Court's Failure to Establish Jurisdiction as a Threshold Matter** .......................... 47

**E. The Consequence of Premature Merits Adjudication** ......................................... 48

**F. Relief Requested** ...................................................................................................... 49

**VIII.   Conclusions** ......................................................................................................... 49

**IX.    Certificate of Service** ....................................................................................... 53

**Exhibits** ........................................................................................................................... 54

    **Exhibit 1—Dkt. 57, Jan. 26, 2026, Incoherent and Inconsistent Moot Order (Sua sponte exercise of appellate jurisdiction)** ....................................................................................... 55

    **Exhibit 2—Dkt. 58, Jan. 27, 2026, Incoherent and Inconsistent Moot Judgment** ........................ 58

    **Exhibit 3—Dkt. 6, March 10, 2025, Order (Sua sponte Exercise of appellate jurisdiction—no mention of any issue of untimeliness)** .................................................................... 59

    **Exhibit 4—Dkt. 38, April 29, 2025, Order (Sua sponte exercise of appellate jurisdiction—no mention of any issue of untimeliness).** ................................................................... 61

    **Exhibit 5—Timely Notice of Appeal–Dkt. 279 and 282, Feb. 7, 2025, (B.C. NDGA)—Bankruptcy Clerk's Transmittal of Notice of Appeal to the District Court (NDGA).** ........................ 63

Case No. 25cv00613 (NDGA)

**Exhibit 6—Appellants' 01.27.25 Rule 12(h)(3)/9014 Art. III subject matter jurisdictional contested matter—JSAR (25cv00613) Dkt. 5-13 pp 186-270, and con't at Dkt. 5-14 pp 1-6), denied on 01.27.25 by the Bankr. Chief Judge (Ellis-Monro), Dkt. 278 (BC NDGA) *Memorandum Opinion/Order* (see 25cv00613 (NDGA) JSAR Dkt. 5-9) denying all relief and placement on the docket per Bankr. Rule 9021. (See Ex. 7, infra). .............................................................................. 65**

**Exhibit 7—Dkt. 5-9 Memorandum Opinion/Decision/Order (25cv00613 JSAR) re 03-93031 (BC NDGA) Memorandum Opinion/Order (Ellis-Monro, C.J.) denying all relief of Appellant's Rule 12(h)(3)/9014 contested matter Article III subject matter jurisdiction motion, see Ex. 6, supra. The Clerk's Judgment, Dkt. 58, (Ex. 2, supra) referenced as "the appeal of the bankruptcy order entered 2/3/2025 ... is affirmed" in the timely 02.03.25, Dkt. 279 (BC NDGA) Notice of Appeal. To "affirm" required 28 USC § 158(a) appellate jurisdiction and Article III subject matter jurisdiction as the Clerk noted. ..................................................................................... 66**

**Exhibit 8—Dkt. 5-10 Order (Ellis-Monro, C.J.) (JSAR) (02/18/25, Dkt. 286, 03-93031 BC NDGA). Timely appealed via the Second Amended Notice of Appeal filed on 02/26/25, Dkt. 293 (BC NDGA). See Ex. 9, infra. ....................................................................................... 67**

**Exhibit 9—5-15 Timely Second Amended Notice of Appeal—(JSAR)(Dkt. 293, 02.26.25 03-93031 (BC NDGA)) appeal of Order (02.28.25), Dkt. 286 (Ellis-Munro, C.J.) (see Ex. 8, supra). ............ 69**

**Exhibit 10—Dkt. 296 (03/07/25) JSAR certified as accurate and forwarded without objection, dispute, or challenge, by the Bankruptcy Court or any Appellee, to the District Court as ready for appeal by the Chief Judge (Ellis-Monro) pursuant to Bankr. Rule 8009(d)(2)(A), (B), and (d)(3). Had the Bankr. Court objected to or disputed that Dkt. 278 and Dkt. 286 were appealable Orders, the Bankr. Court was not authorized to have certified the same as appealable Orders pursuant to 28 USC 158(a) and the matter would have been resolved in the Bankruptcy Court, see Rule 8009(c)(3). Cf., 2014 Committee Notes on Rules, Subdivision (d): "Subdivision (d) adopts the practice of F.R.App.P. 10(d) of permitting the parties to agree on a statement of the case in place of the record on appeal. The statement must show how the issues on appeal arose and were decided in the bankruptcy court. It must be approved by the bankruptcy court in order to be certified as the record on appeal." Also see Subdivision (e): Subdivision (e), modeled on F.R.App.P. 10(e), provides a procedure for correcting the record on appeal if an item is *improperly designated*, omitted, or *misstated*. .................................................................................................................................... 70**

**Exhibit 11—FINRA's May 17, 2021, unregistered broker-dealer certification—fatal to Article III subject matter jurisdiction in the 02-cv-2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings. .................................................................................................................. 72**

**Exhibit 11-1—GX 24, Case No. 02-cv-2219 (SDNY) Aug. 13, 2003 Order (Sand, J.) (deceased) finding KTS and each of KTS' predatory, unregistered broker-dealer clients lied, committed perjury, and stole and concealed 03-93031 Chapter 11 estate assets (+$522 million) required to have been turned over and disgorged to the Chapter 11 trustee in possession for distribution to creditors pursuant to 11 USC §§ 541, 542; 15 USC § 78p(b); and 18 USC § 1961(6)(B). .............. 73**

**Exhibit 11-2—Dec. 20, 2007, Dkt. 90, Fed. R. Civ. P. 41(a)(2) voluntary dismissal with prejudice of the 02-cv-2219 (SDNY) lawsuit—conferred final judgment in favor of Group Management and Ulysses T. Ware, (the "Final Judgment Prevailing Parties"). ............................................................ 76**

**Exhibit 12—Jan. 15, 2007, counterfeit, fabricated, forgery judicial document created by the Supreme Court of Georgia to steal the personal and business property of Appellant Ware as an overt and predicate act in furtherance of the 03-93031 (BC NDGA) conspiracy to commit bankruptcy fraud by Atlanta, GA law firm Appellee KTS and its predatory, unregistered broker-dealer clients. ......................................................................................................................................... 78**

Case No. 25cv00613 (NDGA)

Exhibit 12-A—The 25cv00613 (NDGA) District Court (Brown, J.) in a coordinated fashion, colluded, and in conspiracy with Appellee Chief Justice Nels S.D. Peterson, and the Supreme Court of GA, jointly, in concert, and as an overt and predicate act to obstruct justice, launched an insidious criminal attack on the Appellants once Appellant Ware on Jan. 26, 2026, filed (02-K) via the Supreme Court's e-filing system (see Ex. 12-A-1, infra); Brown, J. then hurriedly filed his incoherent and delusional Dkt. 57, Order (see Ex. 12B, infra) also on Jan. 26, 2026, that deliberately denied Appellants access to the District Court regarding adjudication of the merits of their pending appeal. ................................................................................................................ 79

Exhibit 12-A-1—Supreme Court GA Jan. 26, 2026, filing receipt In re Ware, S08Y1685. ........... 80

Exhibit 12-B—Dkt. 57, 25cv00613 Order entered at 1:39 PM on Jan. 27, 2026, but filed on Jan. 26, 2026—on the exact same day Brown, J, dismissed the 25cv00613 appeal for fraudulent and legally impossible reasons, was the same day Appellant Ware filed his Motion to Vacate in the Supreme Court of GA, see Ex. 12-A, supra. A coordinated racketeering conspiracy to obstruct justice. ................................................................................................................................. 81

Exhibit 13—Hobbs Act threats of violence to collect predatory, criminal usury debts (GX 1-4) against Appellants Ware and Group Management by member and agents of the Hobbs Act criminal enterprise. ................................................................................................................... 90

[End of document] ....................................................................................................................... 99

Case No. 25cv00613 (NDGA)

## A.    Emergency Special Extraordinary Administrative Relief.

**1.    District Judge (NDGA) Michael Lawrence Brown's Immediate Referral to the Judicial Council of the Eleventh Circuit Pursuant to 28 U.S.C. § 351 *et seq.* for Inquiry and investigation into Judicial Fitness and Capacity.**

**Relief Requested and Grounds:**

Appellants respectfully request that this Court, the Office of the District Clerk,[1] or the Chief Judge of the Eleventh Circuit, the Hon. William H. Pryor, Jr., upon transmission of this Rule 8022 Motion to the Court for adjudication, immediately initiate proceedings under the Judicial Conduct and Disability Act, 28 U.S.C. § 351—**and initiate a criminal referral** of Appellees Matthew F. Boyer, QBE Insurance Corp, Crum & Forster Insurance Corp., KTS, et al., to determine whether the Hon. District Judge Michael Lawrence Brown is currently, or has suffered from ***a disqualifying mental disability that renders him unable or compromised to fully and honestly discharge the duties of his office as an Article III federal judge***. This extraordinary administrative relief is necessitated by the plain text and underlying incoherent and dysfunctional reasoning expressly and implicitly in the Dismissal Order (Dkt. 57), Ex. 1, infra, and Judgment (Dkt. 58), Ex. 2, infra, which—read ***in pari materia***, exhibit ***a profound, unprecedented, and dangerous cognitive disconnection*** from the objective Record and a disqualifying inability to process linear time or

---

[1] Appellants request that the Office of the District Clerk (NDGA), Mr. Kevin P. Weimer, certify and immediate transmit a certified copy of Appellants' Rule 8022 motion to the Office of the Judicial Council, U.S. Court of Appeals for the Eleventh Circuit, Attn. the Hon. William H. Pryor, Jr., Elbert P. Tuttle, U.S. Courthouse, 56 Forsyth St., Atlanta, GA 30303; and also transmit a certified copy to Georgia's Judicial Qualification Commission, 244 Washington, St., SW, Suite 440, Atlanta, GA 30334 (404) 558-6940 with respect to the crimes and frauds committed by Appellee Georgia Supreme Court's Chief Justice Nels S.D. Peterson, et al. (See Ex. 12, infra).

Case No. 25cv00613 (NDGA)

basic arithmetic to such an extent, the Judge Brown is mentally disqualified to function and sit as an Article III federal judicial officer.[2]

Specifically, the Court ruled—presuming the Court possessed competent Article III subject matter jurisdiction over ***the appeal's subject matter*** (the predatory, criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4), and predatory contract (GX 5), jointly, (the "**Predatory Subject Matter**"),[3] in Dkt. 57 that Appellants' Notice of Appeal filed on January 30, 2025 (Dkt. 279, Ex.

[2] See Ex. 12, infra: The same disqualifying, dangerous to the competent administration of justice, ***cognitive disability*** **currently suffered by the Chief Justice of the Supreme Court of Georgia, Appellee Nels S.D. Peterson, and the other Justice of that Court regarding** *In re Ware*, **S08Y1685 and S12O0472**—see Ex. Id, infra, the bogus, forgery, and counterfeit purported Affidavit of ***Personal Service*** used to steal Appellant Ware's personal property—his license to practice law using Hobbs Act extortion by Peterson, et al. in retaliation against Appellants regarding the 03-93031 (BC NDGA) Chapter 11 proceeding—where it was stated by Appellee Kenneth A. Zitter, Esq. directly to Appellant Ware: "***Nigger we are going to put your ass in prison and you will never get out ... who do you think you are fucking with ... you better give us that stock*** [+$500 million in free-trading shares in the Chapter 11 debtor, Appellant Group Management Corp., then a publicly-traded company to over a +$750 million naked short position opened by Zitter's clients, the plaintiffs in Case No. 02-cv-2219 (SDNY), predatory, unregistered broker-dealers Appellee Alpha Capital, AG, et al. ] ***or Judge Sand is going to send the Marshals to your office and you might not survive*** ...." (emphasis in original). Hobbs Act extortion threats of violence to collect predatory, criminal usury, unlawful debts in the violation of 18 USC 924(c), 1951(a), 1958, 1961(6)(B), 1962(a-d), and NYS Penal Law, section 190.40, the criminal usury law, a class E felony, (see Ex. 13—Sept. 1, 2004 and Sept. 12, 2024, unlawful, armed, forced, break-in of Appellant Ware's Atlanta, GA law office, and Brooklyn, NY residence ***by persons impersonating U.S. Marshals.***

[3] Ipso facto as a matter of law predatory, criminal usury subject matter (GX 1-4, and GX 5) is ***categorically (i) not a particularized, concrete injury to a protect legal interest in the predatory subject matter, and (ii) not redressable by a federal court***; and expressly violated NYS Penal Law, section 190.40, the criminal usury law, a class E felony; and also violated the federal loan sharking and racketeering law, 18 USC §§ 1961(6)(B), 2, 156-57, 241, 242, 371, 924(c), 1341, 1343, 1344, 1502, 1512, 1951(a), 1956-58, 1962(a-d), and 2071(a), (b), a pattern of racketeering activities. See *U.S. v. Grote*, 961 F.3d 105 (2d Cir. 2020) (affirmed conviction, sentence, and **+$4B racketeering criminal usury disgorgement**). Cf., 11 USC §§ 541, 542 turnover and 15 USC 78p(b) disgorgement of 03-93031 (BC NDGA) Chapter 11 stolen assets by Appellees KTS and its predatory, unregistered broker-dealer client (see Ex. 11, and Ex. 11-1, infra) (+$522 million plus interest from March 2003) authorized under the *Grote, Id.* holding.

Case No. 25cv00613 (NDGA)

5, infra)—challenging the Bankruptcy Court's Memorandum Decision/Order entered a mere *three days prior* on January 27, 2025 (Bankr. Dkt. 278)—was "untimely" under Fed. R. Bankr. P. 8002(a). This ruling is not merely a legal error subject to appellate correction; ***it is a manifestation of a pathological temporal disorientation where the presiding officer hallucinated a twenty-two-year delay in a proceeding where the docket irrefutably establishes a three-day interval***. A judicial officer who cannot comprehend that the integer 3 days is strictly less than the statutory limit of 14 days lacks the foundational cognitive faculty required to administer the Federal Rules of Procedure.

Furthermore, the Judgment (Dkt. 58), Ex. 2, infra, reveals a total, complete, and dangerous collapse of analytical and deductive legal reasoning and a departure from the most elementary principles of Article III jurisprudence. The Court engaged in the juridical impossibility of "affirming" the Bankruptcy Court's orders—which he on one hand characterized as a "letter" and "unremarkable document"--on the merits while simultaneously holding that it lacked 28 USC § 158(a) appellate jurisdiction to hear the merits of the appeal due to untimeliness.

It is an "inflexible" axiom of federal law, established in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), that a federal court without jurisdiction lacks the judicial authority and power to ***affirm, modify, or vacate the underlying merits***; ***it may only announce its lack of authority and dismiss***. Id. at 94-95. By purporting to exercise "hypothetical jurisdiction" to ***affirm*** void orders while declaring itself powerless to hear Appellants' appeal, Judge Brown has produced a judicial act that is ***internally incoherent*** and logically null. This inability to distinguish between the "threshold" determination of jurisdiction and the adjudication of the merits evidences a

Case No. 25cv00613 (NDGA)

deterioration of the analytical rigor necessary to preside over complex federal litigation involving RICO and bankruptcy fraud.

The gravity of this cognitive failure is compounded by the Court's obliteration of the "at any time" standard mandated by Fed. R. Civ. P. 12(h)(3). By fundamentally mischaracterizing Appellants' Jan. 27, 2025, Rule 12(h)(3)/9014 contested matter Article III subject matter jurisdictional challenge[4] (see Ex. 6, infra) as a stale attack on 2003 orders, Judge Brown demonstrated an incapacity to grasp the *functional finality doctrine* or the concept that a denial of a *motion to vacate* is a fresh, appealable event. This failure effectively suspends the Supremacy Clause and the Due Process Clause within this District, **permitting the active enforcement of criminally usurious debts (violating N.Y. Penal Law § 190.40) and contracts with unregistered broker-dealers (violating 15 U.S.C. § 78o(a)(1)) to continue unchecked**. A judge who lacks the mental acuity to recognize that *a jurisdictional defect based on **felony conduct** cannot be waived or barred by the passage of time is actively, albeit perhaps unwittingly due to infirmity, ratifying ongoing Hobbs Act extortion and racketeering activities under the aegis of the federal bench.*

Consequently, the irrationality and nonsensical reasoning pervading Dkt. 57 and Dkt. 58 constitute *prima facie* evidence of a "mental disability" under 28 U.S.C. § 351(a) that is "prejudicial to the effective and expeditious administration of the business of the courts." The

---

[4] FINRA on May 21, 2021, (see Ex. 11, infra) **issued its regulatory determination that Appellee KTS' predatory clients were in fact unregistered broker-dealers that operated in the United States in violation of the federal securities laws registration requirements**, 15 USC §78o(a)(1)—a regulatory determination that annulled and vitiated the Article III standing of KTS' predatory clients to have appeared in the 03-93031 Chapter 11 case (see 25cv00613 (NDGA) JSAR Dkt. 5-2, 5-4, 5-5, and 5-6), sought (Dkt. 5-3 and Dkt. 5-5) and was granted judicial relief to enforce and collect on the predatory, criminal usury subject matter, GX 1-4.

public interest and the integrity of the Article III judiciary demand that *a judge who cannot accurately perceive the filing dates stamped on the face of his own docket*, and *who issues judgments that defy the laws of physics and logic*, be immediately investigated. The continued administration of this case by a jurist exhibiting such *manifest incapacity* presents an imminent danger to the public, the Appellants, and the rule of law, requiring immediate intervention by the Judicial Council to ensure that the judicial power of the United States is exercised by officers possessing the requisite mental competence.

Accordingly, Appellants seek a Special Emergency Administrative Order ("SEAO") certifying this matter to the Judicial Council of the Eleventh Circuit for a prompt investigation into Judge Brown's mental fitness, *his financial dealings*, and a stay of all proceedings in this Court pending the outcome of that statutory inquiry, to prevent further *irreparable harm* flowing from adjudications that are untethered from objective factual reality and legal reason.

## 2. Immediate Referral of Appellee Supreme Court of Georgia Chief Justice Nels S.D. Peterson[5] to the Georgia Judicial Qualification Commission on Charges of *Criminal Judicial Misconduct* and a Disqualifying Mental Disability. See Ex. 12, infra.

**Relief Requested and Grounds:**

Appellants respectfully request that this Court direct the Clerk of Court (N.D. Ga.), and/or for the Clerk of Court to independently immediately certify and transmit a copy of this Rule 8022 Motion, along with the evidentiary record attached hereto as Exhibits 1 through 13, infra, to the **Georgia Judicial Qualifications Commission (JQC) located at 244 Washington St., SW, Suite 440, Atlanta, GA 30334,** for the mandatory investigation of Appellee Supreme Court of

---

[5] The Chief Justice and the Supreme Court of Georgia are in *direct functional privity*, as principal, with the SBGA Appellees, his agents—they are legally, one and the same, named in the Clerk's notice, Dkt. 281 (02/07/25) 03-93031 (BC NDGA).

Case No. 25cv00613 (NDGA)

Georgia Chief Justice Nels S.D. Peterson. This referral is compelled by the Chief Justice's demonstrated cognitive inability to distinguish between authentic judicial process and patent forgeries, specifically regarding the "Jan. 15, 2007 Affidavit of Personal Service" (see Ex. 12, infra)—a demonstrable forgery, counterfeit, and fabrication utilized in *In re Ware*, S08Y1685 and S12O0472, *to unlawfully seize and steal Appellant Ware's license to practice law in racially-motivated Jim Crow retaliation (see Ex. 13, infra) for Appellants' refusal to be extorted out of +$522 million in free-trading stock and assets by Appellees KTS and its predatory, unregistered broker-dealer clients. (See 25cv00613 (NDGA) JSAR Dkt. 5-1 to Dkt. 5-11).*

A judicial officer who ratifies and enforces a disbarment predicated upon a document that is void *ab initio* (the counterfeit purported Jan. 15, 2007, Sheriff's Affidavit of Personal Service, Ex. 12, infra) and criminally forged lacks the requisite mental capacity to discharge the constitutional duties of his office. This cognitive dissonance is not merely a legal error but a pathological detachment from objective factual reality, mirroring the "temporal disorientation"— that is, a Jabberwocky reality, observed in this Court's own dismissal order (Dkt. 57 and Dkt. 58), and suggests a systemic failure of mental faculties within the appellate judiciary handling Appellant's matters.

Furthermore, the Chief Justice's criminal judicial misconducts aids and abets, enabled, assist, and facilitates a verified RICO and Hobbs Act extortion enterprise, detailed in Exhibit 13, involving the use of dangerous and violent terroristic threats and armed acts of extreme violence to collect criminally usurious debts (GX 1-4). The record establishes that Appellee Kenneth A. Zitter, Esq., acting as legal counsel and on behalf of unregistered broker-dealers Alpha Capital, AG, explicitly threatened Appellant Ware with life imprisonment and extrajudicial violence,

**Case No. 25cv00613 (NDGA)**

stating, *"Nigger we are going to put your ass in prison ... you better give us that stock ... or Judge Sand is going to send the Marshals to your office and you might not survive." (see Ex. 13, infra)*. These racially motivated threats of armed lethal force were actualized on September 1, 2004, in Atlanta, GA and again almost 20 years later on September 12, 2024, in Brooklyn, NY *__through armed home invasions by individuals impersonating U.S. Marshals__*. By maintaining the validity of judicial orders that were procured through this violent Hobbs Act racketeering extortion scheme, Chief Justice Peterson, the Supreme Court, and its agents, the SBGA Appellee, has effectively joined the racketeering conspiracy, using the imprimatur of the State Supreme Court to sanitize overt acts of bankruptcy fraud and attempted murder-for-hire.

The persistence of Chief Justice Peterson in upholding these void judgments, despite irrefutable evidence of the underlying criminal conspiracy (including the theft of +$500 million in Group Management Corp. equity), evidences a disqualifying mental infirmity that renders him a danger to the public. A Chief Justice who cannot—or will not—perceive that his court is being weaponized as a tool for collecting Class E felony criminal usury debts (N.Y. Penal Law § 190.40) has lost the moral and intellectual capacity to preside over the administration of justice. This incapacity is prejudicial to the administration of justice and violates the Appellants' Fourteenth Amendment rights to a competent tribunal. *__The continued exercise of judicial power by an officer who validates forgeries and protects extortionists constitutes an ongoing threat to the safety of the Appellants and the integrity of the Georgia legal system__*.

Accordingly, the Clerk is requested to transmit this referral to the JQC and the FBI immediately, with *__a request for the emergency administrative suspension of Chief Justice Peterson pending a full mental health evaluation and forensic examination__* of the fraudulent

"Affidavit of Personal Service." The public interest demands that the highest court in the State not

be led by a jurist whose cognitive impairments or complicity in corruption blind him to the

existence of a violent, racially motivated racketeering enterprise operating within the halls of

justice.

## B.    Requested Legal Reliefs

**WHEREFORE**, based upon the foregoing Memorandum of Law and the complete record before

this Court, Appellants Ulysses T. Ware and Group Management respectfully submit that justice

and the rule of law require this Court to grant the following relief:

### 1. GRANT Rehearing Pursuant to Fed. R. Bankr. P. 8022

This Court should grant rehearing to address a fundamental misapprehension regarding the

operative orders under review. The record demonstrates that this appeal challenges the Bankruptcy

Court's January 27, 2025, Memorandum Decision and Order (Bankr. Dkt. 278) (Ex. 7, infra)—a

fresh, independent jurisdictional determination—not the 2003 dismissal orders. The Notice of

Appeal filed on January 30, 2025 (Bankr. Dkt. 279), (Ex. 5, infra), merely three days after entry

of the challenged order, was strictly timely under Fed. R. Bankr. P. 8002(a). Additionally, the

Second Amended Notice of Appeal (Dkt. 293) (Ex. 9, infra) properly encompasses the February

18, 2025 Order (Dkt. 286), (Ex. 8, infra) further establishing appellate jurisdiction.

### 2. VACATE the Order of Dismissal (Dkt. 57)

Case No. 25cv00613 (NDGA)

The Court should vacate Dkt. 57, Ex. 1, infra as it rests upon a factual misunderstanding of the timeline and nature of the jurisdictional injury at issue. The Bankruptcy Court's Jan. 27, 2025 refusal to adjudicate Appellants' Rule 12(h)(3)/9014 contested matter motion challenging Article III subject matter jurisdiction over the predatory, Criminal Usury Subject Matter, constitutes an independent, final order creating a fresh basis for appellate review. This is not a belated challenge to decades-old orders, but rather a timely appeal from a current denial of Appellants' statutory right to have their jurisdictional challenge heard. Vacatur will restore Appellants' fundamental right to appellate review of this final order.

## 3. VACATE the Judgment (Dkt. 58)

The Court should vacate the Judgment (Dkt. 58), Ex. 2, infra, and explain any language purporting to "affirm" the Bankruptcy Court's orders.[6] As the Supreme Court held in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), a federal court that lacks jurisdiction is prohibited and cannot adjudicate the merits of a case. If this Court concluded it lacked jurisdiction due to untimeliness (a conclusion Appellants respectfully submit was erroneous), then it necessarily lacked authority to reach the merits or affirm the lower court's ruling. The current Judgment impermissibly exercises "hypothetical jurisdiction," which the Supreme Court has expressly rejected as producing "nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion." *Id.* at 101.

---

[6] Perhaps the Court will explain its reasoning in affirming a "**letter**"—only an 28 USC § 158(a) order, decree, decision, or judgment can be ***affirmed*** by an appellate court having appellate jurisdiction and Article III subject matter jurisdiction over the proceedings, (see *Steel Co.*, 523 U.S. at 93-95), while at the same time lacking appellate jurisdiction—mindboggling incoherence, contradictory, and recklessness.

Case No. 25cv00613 (NDGA)

**4. ENTER Threshold Findings of Appellate Jurisdiction Under 28 U.S.C. § 158(a)(1)**

The Court should issue findings expressly establishing that:

(a) The Bankruptcy Court's January 27, 2025, refusal in its Memorandum Decision/Order (see Ex. 7, infra)[7] to file or adjudicate Appellants' 01.27.25 Rule 12(h)(3)/9014 contested matter motion (see Ex. 6, infra) constitutes a "final order" under the functional finality doctrine articulated in *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020). Under *Ritzen*, bankruptcy court orders qualify as final and immediately appealable when they "definitively dispose of discrete disputes within the larger [bankruptcy] case." *Id.* at 586. The adjudication of Appellants' jurisdictional challenge motion forms precisely such a "discrete procedural unit," yielding a final order when the Bankruptcy Court dispositively denied relief. *Id.* at 591. Cf., Ex. 10, infra.

(b) This Court possesses mandatory appellate jurisdiction under 28 U.S.C. § 158(a)(1) because the February 3, 2025 Notice of Appeal (Dkt. 279), Ex. 5, infra, was timely filed within 14 days of the January 27, 2025 Memorandum Decision/Order (Dkt. 278), Ex. 7, infra, as the Court's own Judgment (Dkt. 58) acknowledges.

---

[7] Appellants on 01.27.25 submitted to the 03-93031 Bankruptcy Court their Rule 12(h)(3)/9014 contested matter challenge to the Bankruptcy Court's Article III subject matter jurisdiction (see Ex. 6, infra); on that same day, 01.27.25, the Bankr. Court (Ellis-Monro, C.J.) responded and viciously and defiantly denied Appellants all access to the court, refused to reopen the Chapter 11, she reaffirmed the court's ultra vires and moot prior orders denying access to the court; *she ruled and stated that the case would remain closed*, and directed the clerk to "docket" her ultra vires and moot decision, Dkt. 278 (see Ex. 7, infra). Thus, leading to Appellants' timely Feb. 3, 2025, notice of appeal (see Ex. 5, infra) appealing the moot and void ab initio 01.27.25 Memorandum Decision/Order, Ex. 7, infra. ·

Case No. 25cv00613 (NDGA)

## 5. ORDER an Appellee Response Pursuant to Fed. R. Bankr. P. 8022(a)(3)[8]

To ensure a complete adversarial record and to prevent further procedural irregularities, the Court should direct Appellees to file a response to this Motion for Rehearing addressing: (1) the timeliness of their appeal taken from the January 27, 2025 Memorandum Decision/Order (Dkt. 278); and (2) the appealability of the February 18, 2025 Order (Dkt. 286). While Rule 8022(a)(3) provides that ordinarily no response is permitted absent court request, the Court should exercise its discretion to request such a response given the significant jurisdictional questions presented.

## 6. TAKE JUDICIAL NOTICE of Undisputed Docket Facts Under Fed. R. Evid. 201

The Court should take mandatory judicial notice pursuant to Fed. R. Evid. 201(c)(2) and schedule the hearing required by FRE 201(e) of the filing dates and contents of Bankr. Dkt. 278 (entered January 27, 2025) and Bankr. Dkt. 279 (filed January 30, 2025). These adjudicative facts are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"—namely, the official bankruptcy court docket—and mathematically establish the timeliness of the appeal. Such facts are "not subject to reasonable dispute" and therefore must be judicially noticed when requested by a party and supplied with necessary information. Fed. R. Evid. 201(c)(2).

## 7. RESTORE the Appeal to the Active Docket and ORDER Supplemental Briefing

---

[8] All Appellees waived and forfeited their rights to challenge the characterization of any aspect of the JSAR authorized by Bankr. Rule 8009(e)(1), (2), by not filing and objection or challenge in the Bankruptcy Court regarding the appealability of Dkt. 278 and Dkt. 286.

Case No. 25cv00613 (NDGA)

Upon granting rehearing, the Court should reinstate Case No. 1:25-cv-613-MLB to the active docket and, pursuant to Fed. R. Bankr. P. 8014 and 8022(a)(5), establish a briefing schedule addressing the merits of the Bankruptcy Court's refusal to exercise Article III jurisdiction over Appellants' January 27, 2025 Rule 12(h)(3)/9014 contested matter regarding the predatory criminally usurious debts, GX 1-4, and contract, GX 5; over Appellee KTS' predatory, unregistered broker-dealer clients (see Ex. 11, infra); regarding the turnover and disgorgement of stolen and concealed assets of the Chapter 11 estate (+$522 million) (see Ex. 11-1, infra; the Dec. 20, 2007, Rule 41(a)(2) ***dismissal with prejudice*** of the underlying 02-cv-2219 (SDNY) lawsuit, (see Ex. 11-2, infra).

## 8. CORRECT the Appellate Record Pursuant to Fed. R. Bankr. P. 8009(e)

The Court should order supplementation of the Record on Appeal to unequivocally reflect that the orders appealed from are (i) the January 27, 2025, Memorandum Decision (Dkt. 278), and (ii) the Feb. 18, 2025, Dkt. 286 Order, thereby curing any docketing confusion.

## 10. GRANT Such Other and Further Relief as Justice Requires

The Court should grant such other and further relief as is just, equitable, and proper to prevent a miscarriage of justice and to ensure that Appellants receive the appellate review to which they are entitled under the Constitution and laws of the United States.

# C.    Summary of the Argument

This Rule 8022 Motion for Rehearing arises from the District Court's January 26, 2026 Order (Dkt. 57), Ex. 1, infra, and January 27, 2026 Judgment (Dkt. 58), Ex. 2, infra, which dismissed Appellants' bankruptcy appeal as untimely under Federal Rule of Bankruptcy Procedure

8002. The dismissal rests on multiple egregious, reversible, and irrational, manifest errors of law and fact, and a serious disqualifying mental disability that warrant immediate correction. Over a ten-month period from March 10, 2025, through January 26, 2026, the District Court repeatedly without reason or lawful authority exercised appellate jurisdiction under 28 U.S.C. § 158(a) by: (1) dismissing co-appellant Group Management for failure to retain counsel (Dkt. 6); (2) denying substantive motions on the merits (Dkt. 38); (3) establishing appellate briefing schedules invoking Federal Rule of Bankruptcy Procedure 8014(a); (4) threatening dismissal with prejudice for non-compliance; (5) denying a sanctions motion without prejudice (Dkt. 57); and (6) issuing a Judgment that explicitly "*affirmed*" "the bankruptcy court's order" while simultaneously claiming lack of jurisdiction (Dkt. 58). These actions are fundamentally incompatible with the Court's subsequent assertion that it lacked appellate jurisdiction ab initio.

The Court's dismissal order, Dkt. 57, contains three critical, legally schizophrenic, and irrational contradictions—clear prima facie evidence of a serious, disqualifying mental disability. *First*, it erroneously characterizes Chief Bankruptcy Judge Barbara Ellis-Monro's January 27, 2025 document (Bankr. Dkt. 278) as a mere "letter" rather than recognizing it as a Memorandum Opinion and Final Order denying Appellants' 01.27.25 Rule 12(h)(3)/9014 contested matter (see Ex. 6, and Ex. 10, infra)[9] challenging the bankruptcy court's Article III subject matter jurisdiction.

---

[9] See Ex. 10, infra: (1) On March 7, 2025, Dkt. 296, The Bankruptcy Court (NDGA) Chief Judge the Hon. Ellis-Monro pursuant to Bankr. Rule 8009(d)(2)(A), (B), and (d)(3) certified as "accurate" the contents of the parties' joint stipulated appellate record (JSAR) appealing her Jan. 17, 2005, Dkt. 278 Memorandum Decision/Order, and her Feb. 18, 2025, Dkt. 286 Order in the Appellants' timely notice of appeals, Dkt. 279 and Dkt. 293; and (2) the Chief Judge transmitted the JSAR to the District Court as the certified record on appeal of the Dkt. 278 and Dkt. 286 *Orders—if Dkt. 278 and Dkt. 286 were not appealable Orders the Chief Judge was required to have noted that defect and refused to certify the appellate record as "accurate" and resolved the matter in the Bankruptcy Court according to Bankr. Rule 8009(e)(1), (2); and included her objection in the record to the characterization of Dkt. 278 and Dkt. 286 as appealable Orders. The Chief Judge filed no such objection or challenge to the characterization of Dkt 278 and*

**Case No. 25cv00613 (NDGA)**

*Second*, the Court and Clerk's Judgment (Dkt. 58) entered the very next day, now pivoted explicitly

states that "***the order[s]*** [Dkt. 278 and Dkt. 286] of the bankruptcy court [are] ***affirmed***"—language

that necessarily presupposes both appellate jurisdiction under 28 U.S.C. § 158(a) and Article III

subject matter jurisdiction by the 25cv00613 District Court (NDGA), the 03-93031 (BC NDGA),

and the 02-cv-2219 (SDNY) District Court—courts from which the JSAR came to the 25cv00613

(NDGA) District Court sitting as an appellate in review of the 03-93031 bankruptcy matter.

A court without Article III subject matter jurisdiction possesses ***no lawful*[10]** authority to

"affirm" anything; it may only dismiss and announce the jurisdictional deficiency. *See Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). *Third*, the Court failed to perform the threshold

jurisdictional analysis mandated by *Steel Co.*, which requires federal courts to establish subject

matter jurisdiction "first" before proceeding to any merits determination.

Appellants expended substantial time and resources prosecuting this appeal in reliance on

the Court's repeated exercises of appellate jurisdiction. The Court ordered the filing of "a single,

consolidated opening appellate brief" complying with "Bankruptcy Rule 8014(a)" (Dkt. 38)—a

rule applicable *solely* to appellate briefs in bankruptcy appeals under 28 U.S.C. § 158(a). Two

---

Dkt. 286 as appealable Orders, and certified the contents of the record without objection or
dispute. See Dkt. 296, Ex. 10, infra. *The matter is judicial estoppel on the 25cv00613 District*
*Court (Brown, J.) and vitiated and abrogated Dkt. 57 and Dkt. 58.*

[10] Obviously, the illegal action taken by the District Court (Brown, J.) during this appeal were
taken in the "clear absence of all [subject matter] jurisdiction" were taken in his personal and
individual capacity as an active member of an illegal association-in-fact for the purpose of
conspiracy to commit insurance fraud with Atlanta, GA lawyer Matthew F. Boyer, Esq., QBE
Insurance Corp, and Crum & Forster Insurance Corp.; bankruptcy fraud; extortion; participation
in the theft of Chapter 11 estate assets (+$522 million), mail and wire fraud, conspiracy,
racketeering, criminal usury, unlawful debt collection activities, and other Hobbs Act racketeering
activities—***prima facie indisputable documentary JSAR evidence that supports Federal Tort***
***Claims for judicial misconduct and designation as a putative defendant in a RICO civil lawsuit***
***in his individual and persona capacity.***

appellate briefs (Dkts. 26, 41) were subsequently accepted for filing and docketing by the District

Clerk—an act that would be *ultra vires* if appellate jurisdiction were truly lacking. The Court's

eleventh-hour jurisdictional reversal, occurring only after ten months of substantive adjudication,

creates severe prejudice to Appellants and violates the principles of judicial estoppel articulated in

*New Hampshire v. Maine*, 532 U.S. 742 (2001).

For these reasons, and as more fully set forth below, Appellants respectfully submit that

the District Court manifestly erred as a matter of law and fact in claiming it lacked appellate

jurisdiction under 28 U.S.C. § 158(a). The Court exercised appellate jurisdiction on no fewer than

six separate occasions from March 2025 through January 2026. The January 27, 2025 bankruptcy

court document, Dkt. 278 (Memorandum Decision/Order) (see Ex. 7, infra) and Dkt. 286 Order

(see Ex. 8, infra) constitutes final, appealable orders under *Ritzen Group, Inc. v. Jackson Masonry,*

*LLC*, 140 S. Ct. 582 (2020), and the Clerk's Judgment contains internal contradictions

demonstrating that the Court both "affirmed" the bankruptcy court "order" while at the same time

disclaimed jurisdiction—positions that cannot logically coexist. Appellants respectfully request

that this Court grant rehearing, vacate the Order of Dismissal (Dkt. 57) and Clerk's Judgment (Dkt.

58), and restore this appeal to active status for adjudication on the merits.

# I.    Opening Statement

**MEMORANDUM OF LAW IN SUPPORT OF BANKRUPTCY RULE 8022 MOTION FOR REHEARING: CHARACTERIZATION OF THE JANUARY 27, 2025 RULING (DKT. 278) AS A FINAL APPEALABLE MEMORANDUM OPINION AND ORDER UNDER 28 U.S.C. § 158(a)**

**I. INTRODUCTION**

**Case No. 25cv00613 (NDGA)**

The District Court's dismissal of this appeal as "untimely" (Dkt. 57, Dkt. 58) rests on a fundamental and manifest errors of law and fact--mischaracterization of the judicial act (03-93031 (BC NDGA) Dkt. 278, Memorandum Opinion/Decision/Order (Ellis-Monro, C.J.), Ex. 7, infra, that triggered the 25cv00613 timely appeal. The judicial document entered by Chief Bankruptcy Judge Barbara Ellis-Monro on January 27, 2025 (Bankr. Dkt. 278), while colloquially styled as a "Letter," constitutes in force, effect, and substance a **Memorandum Opinion and Final Order** denying Appellants' Rule 12(h)(3) Motion to Dismiss for Lack of Subject Matter Jurisdiction.[11] See Ex. 6, infra.[12]

---

[11] Note that Chief Judge Ellis-Monro personally ***judicially certified*** the Joint Stipulated Appellate Record (JSAR) on 03/07/25, Dkt. 296 03-93031 (BC NDGA), which contained the notice of appeal, Dkt. 279, appealing her Memorandum Decision/Order (Dkt. 278)—*the Chief Judge of the U.S. Bankruptcy Court (NDGA), Ellis-Monro, C.J., judicially certified as accurate and approved the appeal of her Memorandum Decision/Order, Dkt. 278, and Dkt. 286 ("Order"), and further certified they were in fact appealable orders, decisions, decrees, or judgments pursuant to 28 USC 158(a); else she would not have judicially certified the JSAR and would have rejected the appeal of Dkt. 278 and Dkt. 286 as not appealable Orders.* The 25cv00613 District Court is bound by the Bankruptcy Court's judicial certification of the appellate record, and is estopped from recharacterizing Dkt. 278 as a "letter" when the Chief Judge of the Bankruptcy Court pursuant to Bankr. Rule 8009(d)(2)(A), (B) has already judicially certified Dkt. 278 and Dkt. 286 as within the scope of 28 USC 158(a) on March 7, 2025, Dkt. 296. Appellant request that the District Court set this matter down for an evidentiary hearing where Chief Judge Ellis-Monro and the Bankruptcy Clerk will be subpoenaed to appear, produce records, and give fact testimony on the issues.

[12] On the one hand the District Court (Brown, J.) is irrevocably confused, disoriented, and dysfunctional contradicted himself—that is, (i) in the purported Order, Dkt. 57 n.1 Brown acting in his personal and individual capacity--as a member and active participant in the ongoing conspiracy to commit insurance fraud, extortion, Hobbs Act racketeering to collect and enforce criminal usury, unlawful debts in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony; and in violation of the federal loan sharking and racketeering laws, 18 USC 2, 156-57, 241, 242, 371, 924(c), 1341, 1343, 1344, 1503, 1512, 1951(a), 1956-58, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities—Brown on behalf of the criminal enterprise's participants (the Appellees, Nels S.D. Peterson, and Matthew F. Boyer, Esq.) **stated that Dkt. 278, Chief Judge Ellis-Monro's 01.27.25 Memorandum Decision/Order was in fact timely filed in the Feb. 3, 2025, notice of appeal, Dkt. 279**; it was "a letter" and it also was an "unremarkable document." Yet on the other hand, the very next day on Jan. 27, 2026, Dkt. 58, Judgment, Brown being totally confused, disoriented, and fearing exposure for his crimes and

Case No. 25cv00613 (NDGA)

Under the Supreme Court's functional approach to finality, this document qualifies as a "final judgment, order, or decree" under **28 U.S.C. § 158(a)(1)**. Because it conclusively resolved the discrete dispute regarding the Court's jurisdiction over the January 27, 2025 submissions—by refusing to file them and declaring the case closed—it triggered a new 14-day appeal period. The Notice of Appeal filed three days later was strictly timely.

## II.    Introduction

In this bankruptcy appeal pending in the United States District Court for the Northern District of Georgia, Case No. 1:25-cv-00613-MLB, Appellants' February 3, 2025 Notice of Appeal (Dkt. 279) expressly placed at issue, inter alia, the bankruptcy court's January 27, 2025 Memorandum Decision/Order (Dkt. 278) entered by Chief Judge Barbara Ellis-Monro. Consistent with that posture, the District Court's April 29, 2025 Order (Dkt. 38) did not treat the matter as a nullity or a non-appeal; it denied substantive motions "because Appellant has not shown the relief he seeks is warranted," imposed an appellate briefing directive, and required that the opening brief "contain everything required by Bankruptcy Rule 8014(a) in the proper format," while also inviting jurisdictional arguments to be presented "in [the] opening brief." (Dkt. 38 (entered April 29, 2025)).

Against that record, the Court's end-stage language becomes not merely inconsistent, but irreconcilably two-faced. On January 26, 2026, the Court entered its Order of Dismissal (Dkt. 57). In footnote 1, the Court simultaneously (a) conceded that Dkt. 278 was timely encompassed within

---

many frauds contradicted himself and this time identified Dkt. 278 as "that the ***order*** of the [03-93031] bankruptcy court" and further Brown exercised appellate and Article III subject matter jurisdiction and "***affirmed***" the "**order** of the bankruptcy court." (emphasis added). An Orwellian, Newspeak announcement.

the February 3, 2025 appeal (Dkt. 279), yet (b) rhetorically downgraded the very same bankruptcy ruling—branding it "a letter" and "an unremarkable document"—*as though semantic belittlement could erase its operative legal effect*. Then, the very next day, on January 27, 2026, the Court entered Judgment (Dkt. 58) and pivoted and reversed course: it re-labeled Dkt. 278 as "the ***order*** of the bankruptcy court" and proceeded to "***AFFIRM***" it. That is not a harmless choice of words. An "affirmance" is not compatible with a posture of non-jurisdictional abstention; it is the exercise of appellate power over a lower tribunal's ruling—full stop.

Appellants submit that this irrational duplicity and whiplash—"letter/unremarkable" (Dkt. 57 (entered January 26, 2026)) followed immediately by "order/affirmed" (Dkt. 58 (entered January 27, 2026))—is not mere imprecision. It is functional Orwellian double-speak: the Court attempted to minimize Dkt. 278 to rationalize dismissal, while simultaneously conferring upon that same instrument the dispositive consequence of an appellate affirmance. In Appellants' view, that internal contradiction and Orwellian Newspeak is the classic telltale mark of an outcome-driven narrative ("war is peace" "you were found guilty now we can have your trial") that cannot remain doctrinally coherent, and it materially supports Appellants' broader contention—asserted against Michael L. Brown and, as alleged participants aligned with Appellees, Nels S.D. Peterson and Matthew F. Boyer—that the Court's framing operates to shield an alleged unlawful enterprise centered on coercive debt enforcement and related extortionate pressure, rather than to adjudicate the appeal with the candor and consistency required of an Article III tribunal.

## III.   The Legal standard: Bankruptcy Rule 8022

### A. Federal Rule of Bankruptcy Procedure 8022

.    **Case No. 25cv00613 (NDGA)**

Federal Rule of Bankruptcy Procedure 8022 establishes the essential procedural safeguard by which district courts, sitting in their appellate capacity over bankruptcy matters, may correct ***fundamental errors*** before appellate rights expire. The Rule reflects a foundational principle of federal appellate jurisprudence: that judgments should rest upon an accurate understanding of the record and a correct application of governing law—not upon judicial oversight or misapprehension. Where the court has overlooked dispositive facts or misapprehended controlling legal principles, Rule 8022 provides the mechanism for immediate correction before the judgment acquires finality. See Ex. 10, infra.

### 1. Timing Requirements and Preservation of Appellate Rights

A motion for rehearing must be filed within fourteen (14) days after entry of the judgment on appeal, Dkt. 58 (Jan. 27, 2025) unless the time is shortened or extended by order or local rule. Fed. R. Bankr. P. 8022(a)(1). This deadline is designed to balance the interests of finality with the paramount interest in ensuring that appellate judgments are legally correct—a balance that favors the aggrieved party when the judgment contains manifest errors.

Critically, the timely filing of a Rule 8022 motion operates to preserve and extend all parties' appellate rights. Under Federal Rule of Appellate Procedure 6(b)(2)(A)(i), when a timely motion for rehearing under Bankruptcy Rule 8022 is filed, "**the time to appeal for all parties runs from the entry of the order disposing of the [8022] motion.**" Fed. R. App. P. 6(b)(2)(A)(i). Moreover, a notice of appeal filed after the district court enters judgment but before disposition of the rehearing motion "becomes effective when the order disposing of the motion for rehearing is entered." *Id.* This protective structure ensures that appellants are not required to choose between

seeking correction from the district court and preserving their rights to further appellate review—they may pursue both avenues simultaneously without penalty.

## 2. Particularity Requirement: A Vehicle for Focused Correction of Discrete Errors

Rule 8022(a)(2) requires that the motion "must state with particularity each point of law or fact that the movant believes the district court or BAP has overlooked or misapprehended and must argue in support of the motion." Fed. R. Bankr. P. 8022(a)(2).

This particularity requirement operates in favor of movants whose claims are based on identifiable, outcome-determinative manifest legal and factual errors rather than generalized dissatisfaction with the result. Where, as here, the alleged manifest errors of law and fact are specific and demonstrable—**such as the District Court's exercise of appellate jurisdiction through multiple substantive orders over a ten-month period followed by a belated claim that jurisdiction never existed**—the particularity requirement is readily satisfied. The Rule's structure invites focused correction of discrete legal and factual misapprehensions, precisely the circumstance presented when a court simultaneously "affirms" an order while claiming it lacks jurisdiction to adjudicate the appeal at all.

The standard for rehearing encompasses situations where: (1) *the court has overlooked controlling legal authority*; (2) *the court has misapprehended the procedural posture or factual record*; (3) *the court's ruling contains internal contradictions that cannot be logically reconciled*; or (4) *the court has failed to address threshold constitutional requirements*, such as the mandate *that subject-matter jurisdiction be established before any merits determination*. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). When the judgment itself, on

its face, Dkt. 58, Ex. 2, infra, reveals that the court erred as a matter of law and fact and both **exercised appellate and Article III subject matter jurisdiction** (by "affirming" "***the order*** [Dkt. 278 and Dkt. 286] of the bankruptcy court" below) and disclaimed appellate jurisdiction (by dismissing for untimeliness),[13] rehearing is not merely appropriate—it is essential and mandatory to correct a fundamental logical and legal impossibility—manifest, reversible errors of law, embedded in the judgment.

## IV.    FRE 201(c)(2) demand to take mandatory judicial notice of the Adjudicative Facts presented in federal regulatory filings and federal court records; and Demand for the required Rule 201(e) hearing on mandatory judicial notice.

### Dispositive Adjudicative Fact #1—judicial and collateral estoppel.

See Ex. 10, infra, Dkt. 296, March 7, 2025, Bankr. Rule 8009(d)(2)(A), (B) judicial certification of the JSAR without dispute or objection from the Chief Bankruptcy Judge, the Hon. Ellis-Monro regarding the appealability of her Orders, Dkt. 278 and Dkt. 286; (ii) without objection whether the Feb. 3, 2025, Dkt. 279, notice of appeal was timely filed by Appellants, or (iii) any other objection or dispute regarding the appellate record by any Appellee or the Bankruptcy Court.

**The matter is judicial estoppel and collateral estoppel in the 25cv00613 (NDGA) District Court, and on appeal, and in this Rule 8022 motion.**

Any and all objections or disputes have been judicially resolved by Chief Judge Ellis-Monro on March 7, 2025, Dkt. 296 (see Ex. 10, infra) regarding:

---

[13] The District Court in its Order, Dkt. 57, or Judgment, Dkt. 58, did not explain its reasoning or identify the legal standard used that authorized an Article III federal court to ***affirm*** "***the order*** of the bankruptcy court [Dkt. 278 and Dkt. 286]" and at the same time dismiss the same proceeding claiming lack of appellate jurisdiction.

Case No. 25cv00613 (NDGA)

(i) whether or not Dkt. 278 and Dkt. 286 were ***appealable orders*** pursuant to 28 USC §
158(a)? (Yes);

(ii) whether or not the Feb. 3, 2025, Dkt. 278, notice of appeal was timely filed? (Yes); and

(iii) any other issues or dispute were required to have been filed and resolved in the
Bankruptcy Court pursuant to Bankr. Rule 8009(e)(1), and (2)[14]—no record objections or disputes
were filed by the Bankruptcy Court, or any Appellee. Accordingly, Chief Judge Ellis-Monro
having no filed objections or disputes in the record on March 7, 2025, Dkt. 296, (see Ex. 10, infra)
***judicially approved and judicially certified*** the JSAR to the District Court as ready for appeal as
the Joint Stipulated Appellate Record of the parties (JSAR).

Ostensibly, had there been brought to the attention of the Appellant once the timely notice
of appeal, Dkt. 279, was filed on Feb. 3, 2025, regarding any dispute or issue regarding the
appealability of Dkt. 278 and Dkt. 286, and had that objection been raised by the Bankruptcy Court
or any record Appellee, the Appellants would have then opposed the objection with case law and
analysis and requested that the Bankruptcy Court settle the matter pursuant to Bankr. Rule
8009(e)(1), (2). Any ruling adverse to Appellants' interest would have been raised on appeal in

---

[14] **Rule 8009(e) Correcting or Modifying the Record.**
(1) *Differences About Accuracy; Improper Designations.* If ***any difference*** arises about whether
the record ***accurately discloses*** what occurred in the bankruptcy court, **the difference must be
submitted to and settled by the bankruptcy court and the record conformed accordingly**. If
an item has been improperly designated as part of the record on appeal, a party may move to strike
that item. [Continue]
(2) *Omissions and Misstatements.* If anything material to either party is omitted from or misstated
in the record by error or accident, the omission or misstatement may be corrected, and a
supplemental record may be certified and sent:
(A) on stipulation of the parties;
(B) by the bankruptcy court before or after the record has been sent; or
(C) by the court where the appeal is pending.

25cv00613 regarding the appealability of Dkt. 278 and Dkt. 286, and (ii) the timeliness of the Feb. 3, 2025, Dkt. 279, notice of appeal.

Accordingly, the appealability and timeliness issues are collateral and judicial estoppel, and are moot having already been resolved in favor of the Appellants by the Bankruptcy Court's Chief Judge, the Hon Ellis-Monro judicial approval and certification of the JSAR without objection or dispute on March 7, 2025, Dkt. 296, Ex. 10, infra—binding herein and on appeal to the Eleventh Circuit.

**Dispositive Adjudicative Facts #2—Lack of Article III Subject Matter Jurisdiction.**

**A.**    **See Ex. 11, infra:** FINRA's May 17, 2021, regulatory certification of 15 USC § 78o(a)(1) unregistered broker-dealer status[15] for Case No. 02cv-2219 (SDNY) plaintiffs, Appellees herein, and Appellee KTS' clients who, via KTS (see JSAR Dkt. 5-2, 5-4, 5-5, and 5-6) fraudulently appeared in the 03-93031 Bankruptcy Chapter 11; and via KTS' lawyers and partners covered up, suppressed, concealed, lied, committed perjury, fraud on the court, and:

1. attempted to use the 03-93031 Chapter 11 judicial proceedings to enforce and collect on predatory, ***null and void ab initio***, criminal usury, unlawful debts (GX 1, GX 2, GX 3, and GX 4), and predatory, criminal usury contract (GX 5), jointly, (the "**Criminal Usury Subject Matter**"),[16] in violation of NYS Penal Law, section 190.40, the criminal usury

---

[15] Unregistered broker-dealers ipso facto as a matter of law lack Article III standing to appear in a federal court and attempt to enforce or collect on moot null and void ab initio predatory Criminal Usury Subject Matter, see 15 USC § 78cc(b).

[16] Criminal Usury Subject matter does not and ipso facto cannot constitute a live Article III controversy in the 02-cv-2219 (SDNY), 03-93031 Chapter 11, or the 25cv00613 (NDGA) appeal because criminal usury subject matter ***is not redressable*** in a federal court, and thus, fails the Article III standing test, see *Lujan*, 504 U.S. at 561-62; and ipso facto cannot create "a

Case No. 25cv00613 (NDGA)

law, a class E felony; and in violation of the federal loan sharking and racketeering laws,

18 USC §§ 2, 156-57, 241, 242, 371, 924(c), 1341, 1343, 1344, 1503, 1512, 1951(a), 1956-

58, 1961(6)(B), 1962(a-d), and 2071(a), (b); including Georgia statutory conspiracy to

commit insurance fraud with **Atlanta, GA lawyer Matthew F. Boyer, Esq., Crum &**

**Forster Insurance Corp., and QBE Insurance Corp**.; and others known and unknown,

a Hobbs Act extortion illegal criminal association-in-fact.

**2. See Ex. 11-1, infra:** Appellees KTS and its Clients Lied and committed perjury—

conspiracy to commit bankruptcy fraud by the systematic theft and concealment, and

misappropriation of estate asset and properties (+$522 million in strict-liability insider-trading

and Hobbs Act extortion profits, proceeds, and revenues) required to have been turned over to

GPMT as the trustee in possession during the 03-93031 Chapter 11 for distribution to

**creditors, and to facilitate GPMT's reorganization. (See Ex. 11-1).[17]**

**3. See Ex. 11-2, infra:** Appellees KTS and its clients violated the District Court (NDGA

Professional Ethics Rules 3.3(a) and 8.4 by concealing and suppressing the indisputable fact

that KTS and its clients know that they on Dec. 20, 2007, Dkt. 90, 02-cv-2219 (SDNY) moved

the 02-cv-2219 (SDNY) District Court, after the statute of limitation had run on all claims in

the complaint, and ex parte demanded the District Court dismiss the lawsuit with prejudice

pursuant to Fed. R. Civ. P. 41(a)(2), which was GRANTED, see Ex. 11-2 infra, fatal to Article

III subject matter jurisdiction in 02-cv-2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613

(NDGA) proceedings.

---

particularized, concrete injury in fact to *a legally protected interest in the subject matter*"—null
and void Criminal Usury Subject Matter.

[17] See *Roth v. Jennings*, 489 F.3d 499, 506-10 (2d Cir. 2007) (Kearse, J.) (requiring strict-liability
disgorgement of all insider-trading profits by 15 USC §78p(b) statutory insiders).

Case No. 25cv00613 (NDGA)

# V.    Manifest Judicial Errors of Law and Fact in the Court's Dkt. 57 (Order).

**I. ARGUMENT**

**A. The January 27, 2025 Document (Dkt. 278), Ex. 8, infra, Functions as a Memorandum Opinion Denying Relief.**

Federal courts prioritize the substance of a judicial action over its form or label. *United States v. Indrelunas*, 411 U.S. 216, 221 (1973). A document functions as a judicial opinion and order if it (1) acknowledges a request for relief, (2) provides the court's reasoning for rejecting that relief, and (3) issues a directive executing that decision.

The January 27, 2025 document satisfies all three elements of a **Memorandum Opinion**:

1. **Statement of the Issue:** The Chief Judge expressly acknowledged receiving Appellants' submissions requesting: "(i) an evidentiary show cause hearing... (ii) reopening of the closed bankruptcy case... [and] (iii) vacating pleadings and orders" (Dkt. 278 at 1). This is a judicial recitation of the Rule 12(h)(3) motion's prayer for relief.

2. **Findings of Fact and Conclusions of Law:** The document articulates the legal reasoning for the denial: "I write to reiterate—***reaffirmed the prior orders***, the findings in the orders entered by now retired Judge Hagenau... The case remains closed." This constitutes a legal conclusion and reaffirmation, that the prior closure of the case bars the current Rule 12(h)(3) jurisdictional challenge.

3. **Dispositive Ruling:** The document concludes with a mandatory directive and conclusion of law: "Thus, none of the emails have been or will be docketed... This letter will be docketed."

Case No. 25cv00613 (NDGA)

By refusing to permit the filing of the Rule 12(h)(3) motion, the Chief Judge effectively and constructively **denied** the motion with prejudice. A refusal to file a motion is the functional equivalent of a denial of that motion. Therefore, Dkt. 278 is a **Memorandum Opinion** explaining why the Court would not exercise jurisdiction.

## B. The Document is a "Final Order" Appealable Under 28 U.S.C. § 158(a).

Jurisdiction for this appeal is founded upon **28 U.S.C. § 158(a)(1)**, which grants district courts jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy judges.

### 1. The Standard for Finality in Bankruptcy.

Bankruptcy finality is more flexible than in ordinary civil litigation. An order, decision, decree, or judgment is final in bankruptcy if it "finally disposes of discrete disputes within the larger case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020). The "discrete dispute" here was Appellants' January 27, 2025, Rule 12(h)(3)/9014, Ex. 6, infra, challenge to the 03-93031 Bankruptcy Court's Article III subject matter jurisdiction over criminally usurious debts (GX 1-4) and contracts (GX 5) and predatory, unregistered broker-dealers. See 25cv00613 JSAR Dkt. 5-13 pp. 48 (FINRA's May 17, 2021, certification of unregistered broker-dealer status for Appellee KTS' Hobbs Act racketeering (conspiracy to commit bankruptcy fraud) predatory clients).[18]

---

[18] **Appellants demand that the Court take mandatory FRE 201(c)(2) judicial notice of the dispositive adjudicative fact to the lack of Article III standing in 02-cv-2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA).**

. **Case No. 25cv00613 (NDGA)**

**2. Application to Dkt. 278.**

The January 27, 2025 Order (Dkt. 278) "finally disposed" of the Rule 12(h)(3) matter.

- **It ended the litigation on the issue:** By ruling that the submissions would not be docketed and the case would remain closed, the Court left "nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945).

- **It precluded further action:** The Order effectively enjoined Appellants from filing the jurisdictional challenge, thereby acting as a final determination that the Court would not hear the Article III argument.

Consequently, Dkt. 278 is a **final appealable order** under 28 U.S.C. § 158(a)(1). It is the judicial act of shutting the courthouse door to a constitutional challenge.

**C. The District Court Erred by Treating the "Letter" as Administrative Correspondence Rather than a Judicial Act.**

The District Court dismissed the appeal based on the manifestly erroneous premise that there was no new order to appeal. This ignores the fact that a **Rule 12(h)(3) motion can be raised "at any time."** *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

When Appellants raised the issue on January 27, 2025, via their Rule 12(h)(4)/9014 contested matter motion, the Bankruptcy Court was legally obligated to determine whether it had subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). The Court's response (Dkt. 278)—refusing to consider the motion because the case was "closed"—was a substantive **legal ruling** that the administrative status of a case supersedes Article III jurisdictional requirements.

Case No. 25cv00613 (NDGA)

This ruling is a **final decision** on a threshold Article III subject matter jurisdictional legal question. It is not merely administrative; it is an adjudication of Appellants' due process rights. As such, it is subject to immediate appellate review.

## III. CONCLUSION

The January 27, 2025 document (Dkt. 278) is a **Memorandum Opinion and Final Order** denying Appellants' Rule 12(h)(3) motion. It meets the criteria for finality under 28 U.S.C. § 158(a) because it conclusively resolved the request for relief by denying access to the docket.

Because the Notice of Appeal was filed on January 30, 2025—**three days** after the entry of this Final Order—the appeal is timely under Fed. R. Bankr. P. 8002(a). The District Court's dismissal for untimeliness was a manifest error of law and fact.

## II. ARGUMENT—The Court exercised appellate jurisdiction over the 25cv00613 appeal beginning on March 10, 2025, Dkt. 6, and ended on Jan. 26, 2026, Dkt. 57.

## A. THE DISTRICT COURT EXERCISED APPELLATE JURISDICTION OVER CASE 25cv00613 (NDGA) ON AT LEAST SIX SEPARATE OCCASIONS.

The District Court's assertion that it lacked appellate jurisdiction under 28 U.S.C. § 158(a) is fundamentally contradicted by its own record of repeated jurisdictional exercises throughout the ten-month pendency of this appeal. Beginning on March 10, 2025, and continuing through January 26, 2026, the District Court issued multiple substantive orders that necessarily presupposed the existence of appellate jurisdiction. A court without jurisdiction possesses no power to adjudicate— yet this Court adjudicated extensively.

## Case No. 25cv00613 (NDGA)

**First Exercise (March 10, 2025):** The District Court issued its Order at Docket Entry 6 (Exhibit 3), dismissing Appellant Group Management without prejudice for failure to retain counsel pursuant to Local Rule 41.3(A)(2). This Order necessarily presumed appellate jurisdiction under 28 U.S.C. § 158(a), as the dismissal of a party from an appeal can only occur where the court possesses appellate authority over the underlying proceeding.

## Second Exercise (April 29, 2025) and Third Exercise (April 29, 2025):

Exhibit 4, the District Court's Order at Docket Entry 38, entered April 29, 2025, constitutes one of the most compelling demonstrations of the District Court's exercise of appellate jurisdiction under 28 U.S.C. § 158(a). This Order reflects *at least five distinct exercises of appellate authority*, each of which is fundamentally inconsistent with the Court's subsequent claim in its January 26, 2026 Order of Dismissal (Dkt. 57) that it lacked jurisdiction to hear the appeal. The Court cannot adjudicate substantive motions, establish appellate briefing schedules, invoke bankruptcy-specific procedural rules, threaten dismissal with prejudice, and rule on the merits of procedural requests— all while simultaneously maintaining it never possessed the jurisdictional authority to do so.

### i. DOCUMENT IDENTIFICATION

| | |
|---|---|
| Document: | Order (Dkt. 38) |
| Date Filed: | April 29, 2025 |
| Presiding Judge: | Hon. Michael L. Brown, United States District Judge |
| Jurisdictional Basis: | 28 U.S.C. § 158(a) (Appellate Jurisdiction over Bankruptcy Appeals) |
| Procedural Rule Invoked: | Federal Rule of Bankruptcy Procedure 8014(a) |

### ii. VERBATIM TEXT OF THE ORDER

The District Court's Order states, in its entirety:

*"The Court **DENIES** Appellant's motions (Dkts. 12; 14; 19; 22) because Appellant has not shown the relief he seeks is warranted. The Court **ORDERS** Appellant to file a single, consolidated opening appellate brief no later than May 29, 2025. Appellant's brief must be titled 'Appellant's Opening Appellate Brief,' be double-spaced, not exceed 25 pages, contain everything required by Bankruptcy Rule 8014(a) in the proper format, and otherwise comply with the rules governing opening briefs in a bankruptcy appeal. If*

Case No. 25cv00613 (NDGA)

*Appellant believes the Court lacks jurisdiction to consider his appeal—or that other jurisdictional problems exist—he may assert those arguments in his opening brief. The docket in this case is already clogged with rambling, incoherent, voluminous, and unnecessary filings."*

*"Going forward, the Court urges Appellant to be more judicious and restrained about what he chooses to file. If Appellant does not comply with any of the instructions contained in this Order, the Court will likely dismiss his appeal, **potentially with prejudice**."*

## III. ARGUMENT –Analysis of Jurisdictional Exercise

The April 29, 2025 Order reflects at least five distinct exercises of appellate jurisdiction, each of which independently demonstrates that the District Court was operating in its appellate capacity under 28 U.S.C. § 158(a).

### A. First Exercise: Denial of Substantive Motions on the Merits

The Court *"DENIES Appellant's motions (Dkts. 12; 14; 19; 22) because Appellant has not shown the relief he seeks is warranted."* This ruling represents a **substantive merits determination**—the Court evaluated the motions and concluded that Appellant failed to meet the applicable legal standard for the requested relief.

**Legal Significance:** A court without subject matter jurisdiction possesses no authority to adjudicate the merits of any motion. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). By ruling that Appellant "has not shown the relief he seeks is warranted," the Court necessarily exercised the adjudicatory power that only a court with jurisdiction may wield.

### B. Second Exercise: Establishment of Appellate Briefing Schedule.

The Court *"ORDERS Appellant to file a single, consolidated opening appellate brief no later than May 29, 2025."* The establishment of a briefing schedule is among the most quintessential exercises of appellate jurisdiction. **Only a court that possesses appellate jurisdiction can order the parties to brief an appeal.**

**Legal Significance:** Under Federal Rule of Bankruptcy Procedure 8018(a)(1), "[t]he appellant must serve and file a brief within 30 days after the docketing of notice that the record has been sent." The District Court's order modifying this schedule—by setting a specific deadline of May 29, 2025—represents an exercise of the supervisory authority that Rule 8018(a) grants to district courts sitting in their appellate capacity. A court without appellate jurisdiction has no authority to establish, modify, or enforce any briefing schedule.

### C. Third Exercise: Invocation of Bankruptcy Rule 8014(a)

The Court ordered that Appellant's brief must *"contain everything required by Bankruptcy Rule 8014(a) in the proper format, and otherwise comply with the rules governing opening briefs in a bankruptcy appeal."*

**Legal Significance:** Federal Rule of Bankruptcy Procedure 8014 governs the content and format of briefs in bankruptcy appeals to district courts under 28 U.S.C. § 158(a). This rule exists *solely within the appellate context*—it has no application to original proceedings. The Court's invocation of Rule 8014(a) constitutes an explicit acknowledgment that it was exercising appellate jurisdiction. Specifically, Rule 8014(a)(4) requires that the appellant's brief include:

(A) the basis for the bankruptcy court's subject-matter jurisdiction;

(B) the basis for the district court's or BAP's jurisdiction;

(C) the filing dates establishing the timeliness of the appeal.

By ordering compliance with Rule 8014(a), the District Court implicitly acknowledged that the appeal was properly before it and that the appellate framework of Part VIII of the Federal Rules of Bankruptcy Procedure was operative.

### D. Fourth Exercise: Acknowledgment of Jurisdictional Arguments

The Court stated: *"If Appellant believes the Court lacks jurisdiction to consider his appeal—or that other jurisdictional problems exist—he may assert those arguments in his opening brief."*

**Legal Significance:** This passage is extraordinarily significant. If the Court genuinely believed it lacked jurisdiction at this time, it was obligated to dismiss the appeal *sua sponte*. Federal courts

Case No. 25cv00613 (NDGA)

have an independent obligation to examine their own jurisdiction before proceeding to the merits. *See Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003) ("Federal courts always have an obligation to examine sua sponte their jurisdiction before reaching the merits of any claim.").

Instead of dismissing, the Court invited jurisdictional arguments to be raised in the appellant's brief—**an invitation that presupposes the existence of a valid appellate proceeding**. A court that lacks jurisdiction cannot "consider" an appeal at all, much less establish procedures for briefing jurisdictional questions within that appeal.

**E. Fifth Exercise: Threat of Dismissal with Prejudice**

The Court warned: *"If Appellant does not comply with any of the instructions contained in this Order, the Court will likely dismiss his appeal, potentially with prejudice."*

**Legal Significance:** The power to dismiss an appeal "with prejudice" is quintessentially jurisdictional. A dismissal with prejudice operates as an adjudication on the merits, barring future litigation of the same claims. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). A court without jurisdiction cannot dismiss with prejudice because it lacks the power to render any determination affecting the merits.

By threatening dismissal "with prejudice" for non-compliance, the District Court necessarily asserted that it possessed sufficient jurisdictional authority to render a final, preclusive determination. This assertion is fundamentally incompatible with the Court's later claim that it lacked appellate jurisdiction entirely.

## IV. CRITICAL CONTRADICTIONS WITH JANUARY 26, 2026 ORDER

The April 29, 2025 Order (Dkt. 38) stands in irreconcilable contradiction with the District Court's January 26, 2026, Order of Dismissal (Dkt. 57). The following table illustrates these contradictions:

| Dkt. 38 (April 29, 2025) | Dkt. 57 (January 26, 2026) |
| --- | --- |
| Denies motions on the merits ("Appellant has not shown the relief he seeks is warranted") | Claims Court lacked jurisdiction to hear the appeal |

Case No. 25cv00613 (NDGA)

| | |
|---|---|
| Orders appellant to file appellate brief by May 29, 2025 | Claims appeal was never properly before the Court |
| Requires compliance with Bankruptcy Rule 8014(a) | Claims Part VIII Rules inapplicable due to lack of jurisdiction |
| Invites jurisdictional arguments in appellant's brief | Claims jurisdictional defect was apparent from the outset |
| Threatens dismissal with prejudice for non-compliance | Claims Court never had power to adjudicate appeal |

## V. JUDICIAL ESTOPPEL IMPLICATIONS

The April 29, 2025, Order provides compelling evidence for the application of judicial estoppel principles. Under *New Hampshire v. Maine*, 532 U.S. 742 (2001), judicial estoppel applies when: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party succeeded in persuading a court to accept that earlier position; and (3) the party would derive an unfair advantage if not estopped.

Here, the District Court's April 29, 2025, Order reflects its **implicit but unmistakable determination** that it possessed appellate jurisdiction. The Court's subsequent assertion on January 26, 2026, Dkt. 57, that it lacked jurisdiction is "clearly inconsistent" with its earlier conduct.[19] The Court "succeeded" in having Appellant comply with the April 29 Order—Appellant filed his appellate brief by the May 29, 2025 deadline. Permitting the Court to now disclaim jurisdiction would impose severe unfair prejudice on Appellants, who expended substantial resources (+$1,250,000.00) complying with Court orders and preparing two (2) Appellate Opening Briefs over an eight-month period.

### a. CONCLUSION

Exhibit 4 (Dkt. 38) demonstrates beyond reasonable dispute that the District Court exercised appellate jurisdiction under 28 U.S.C. § 158(a) on April 29, 2025. The Court:

1. Denied substantive motions on the merits;

---

[19] See Ex. 1-5, *infra*, for numerous instances of the exercise of appellate jurisdiction during the 25cv00613 appeal.

Case No. 25cv00613 (NDGA)

2. Established an appellate briefing schedule;

3. Invoked Federal Rule of Bankruptcy Procedure 8014(a);

4. Invited jurisdictional arguments within the appellate proceeding; and

5. Threatened dismissal with prejudice for non-compliance.

Each of these actions presupposes—indeed, *requires*—the existence of appellate jurisdiction.[20] The District Court's subsequent claim that it lacked such jurisdiction is not merely inconsistent with its prior conduct; it is logically impossible to reconcile. A court cannot order parties to brief an appeal under bankruptcy appellate rules, threaten dismissal with prejudice for non-compliance, and then claim it never possessed the authority to adjudicate the appeal in the first instance.

For all the foregoing reasons, Exhibit 4 provides compelling evidence that the District Court's Order of Dismissal (Dkt. 57) constitutes manifest error.

# VI. Reversible Manifest Judicial Errors of Law and Fact in the Court's Dkt. 58 Final Judgment, Ex. 2, infra.

---

[20] Exhibit 4 (Dkt. 38) establishes beyond reasonable dispute that, on April 29, 2025, the District Court was acting pursuant to—and only could have been acting pursuant to—its appellate jurisdiction under 28 U.S.C. § 158(a). The Court did not merely manage its docket; it adjudicated the sufficiency of appellate relief by denying multiple substantive motions on the ground that Appellant had "not shown the relief he seeks is warranted," a determination that presupposes jurisdiction to review the appeal on its merits. The Court then imposed a consolidated opening *appellate* brief and set a firm briefing deadline, an act that has no legal meaning outside an operative appellate proceeding. The Court further invoked Federal Rule of Bankruptcy Procedure 8014(a), a rule applicable solely to appellate briefs in bankruptcy appeals, thereby expressly situating the case within the appellate framework. Critically, the Court invited jurisdictional arguments to be raised *within* the opening appellate brief, confirming that any jurisdictional inquiry was to occur in the course of an already-pending appeal, not as a threshold to deciding whether an appeal existed. Finally, the Court threatened dismissal of the appeal—potentially with prejudice—for noncompliance, an exercise of appellate, case-dispositive authority that cannot be exercised in the absence of jurisdiction. Taken together, these acts are intelligible only if appellate jurisdiction had attached and was being affirmatively exercised.

The Court's **Dkt. 58 Judgment** is not a neutral ministerial closing document. It is a facially inconsistent, record-misdescribing, legal abomination, "incoherent" instrument that—whether by carelessness or design, likely carelessness—which intentionally and fraudulently attempted to confer tactical advantage on the Appellees by obscuring what the Court actually did, what it purported to decide, and on what jurisdictional footing. In a bankruptcy appeal—where **appellate jurisdiction, finality, and timeliness** are the structural beams—*Dkt. 58 substitutes contradiction for clarity and misstatement for precision*. That is precisely the kind of "manifest" legal and factual error that warrants rehearing under **Federal Rule of Bankruptcy Procedure 8022**.

## 1) A judgment cannot be both a merits "AFFIRMANCE" and a jurisdictional "DISMISSAL" of the same appeal—and Dkt. 58 purports to be both.

**Textual defect.** Dkt. 58 states that the bankruptcy court's order is **"affirmed"** and the appeal is **"dismissed."**

**Why that is manifest legal error.** "Affirmed" is a merits disposition. It necessarily communicates that the Court possessed (and exercised) appellate authority to review the challenged order and uphold it. "Dismissed," by contrast—particularly in the jurisdictional posture reflected by this record—denotes termination without merits adjudication. Federal courts do not have the option to decide merits questions while simultaneously disclaiming the power to decide them. The Supreme Court has been unambiguous: "Without jurisdiction the court cannot proceed at all in any cause," and its only function is "announcing the fact and dismissing the cause."

**Why this prejudices Appellants and benefits Appellees.** This dual disposition is not a harmless drafting quirk. It functions as a litigation trap: the Appellees can invoke the "affirmed" language

to suggest a merits defeat (and argue downstream consequences), while the "dismissed" language simultaneously blocks meaningful review of the Court's jurisdictional missteps. Rule 8022 exists to correct judgments that are internally irreconcilable in ways that distort substantive rights.

## 2) Dkt. 58 contains a material record-misdescription: it labels the appealed "bankruptcy order" as "entered 02/03/2025," a date that does not identify the bankruptcy court's order.

**Textual defect.** Dkt. 58 recites that the matter came before the Court "for consideration of the appeal of the bankruptcy order entered **2/3/2025**."

**Why that is manifest factual error.** The "entered" date is not cosmetic; it is the identifier that anchors what is being reviewed and whether appellate review is timely and proper. A judgment that purports to affirm an order—but misstates the order's entry date—fails at the most basic level of record accuracy. In bankruptcy appeals, that kind of misidentification is outcome-relevant because it can warp the timeliness/finality analysis and blur the scope of what the Court purported to adjudicate.

**Why this prejudices Appellants and benefits Appellees.** The Appellees' jurisdictional narrative depends on pinning the appeal to a particular order and timeline. A judgment that cannot correctly identify the appealed "order" supplies the Appellees with ambiguity they did not earn—and forces Appellants to litigate what the judgment even purports to cover.

Case No. 25cv00613 (NDGA)

**3) The Judgment improperly insinuates merits adjudication ("consideration of the appeal" and "rendered its decision") while issuing a terminating disposition that avoids a coherent jurisdictional explanation.**

**Textual defect.** Dkt. 58 declares that the action came before the Court "for consideration of the appeal" and that the Court "rendered its decision."

**Why that is manifest legal error.** If the Court truly lacked appellate jurisdiction, then it had no lawful authority to "consider" and decide the appeal in the merits sense implied by the Judgment's recital. _**Conversely, if the Court did consider and decide the appeal**_, it cannot retreat into jurisdictional dismissal rhetoric to avoid the legal consequences of having exercised appellate power. The Supreme Court's jurisdiction-first rule forbids exactly this kind of merits-by-implication adjudication.

**Why this prejudices Appellants and benefits Appellees.** The Appellees benefit from a judgment that is drafted to be strategically ambidextrous: it hints at merits rejection when convenient, but preserves a dismissal label to shield the disposition from principled appellate scrutiny. That is not adjudication; it is outcome-management by ambiguity.

**4) Dkt. 58 fails to identify _the specific order_ being "affirmed" with the precision required for a valid appellate judgment—compounded by the erroneous "entered 02/03/2025" reference.**

**Textual defect.** The Judgment refers generically to "_**the order of the bankruptcy court**_," without a clear identifying docket reference and while using an erroneous "entered" date.

Case No. 25cv00613 (NDGA)

**Why that is manifest error.** A final appellate judgment must be intelligible on its face: it must identify what order is being reviewed and what disposition is being entered as to that order. In a bankruptcy case—where multiple discrete disputes can generate multiple appealable orders—generic phrasing is not "close enough." The Judgment's lack of precision, paired with the misdated "entered" reference, yields a disposition that is materially unclear as to its object.

**Why this prejudices Appellants and benefits Appellees.** The ambiguity invites opportunistic expansion by Appellees ("the judgment affirmed *the* bankruptcy order"—which one?) while constraining Appellants' ability to challenge the correctness and scope of the disposition. A judgment is supposed to close disputes, not spawn new ones.

## 5) To the extent the Court's termination rests on mootness, Dkt. 58 employs the wrong remedial posture by "affirming" rather than confronting vacatur principles.

**Textual defect.** Dkt. 58 uses merits language ("affirmed") while simultaneously dismissing—an especially acute error if the dismissal is grounded in mootness.

**Why that is manifest legal error.** Mootness removes the power to adjudicate merits. When a case becomes moot on appeal, the Supreme Court's doctrine addresses whether vacatur is appropriate to prevent an unreviewable judgment from producing legal consequences—rather than "affirming" a judgment that cannot be reviewed on the merits.

**Why this prejudices Appellants and benefits Appellees.** A merits "affirmance" in a moot posture is not benign. It risks entrenching the bankruptcy court's ruling with the rhetorical and practical force of appellate endorsement—without the procedural legitimacy of merits review.

That is a categorical distortion of the lawful effect of mootness and an unjustified windfall for Appellees.

### Rule 8022 Relief Requested (as compelled by these manifest errors)

Because Dkt. 58, the Judgment (Ex. 2, infra) is internally contradictory on an unprecedented level, nonsensical, materially inaccurate, and ***legally incoherent in the extreme*** in ways that would make the Jabberwocky[21] blush; and prejudice Appellants and improperly advantage Appellees, rehearing is required. The appropriate corrective action is straightforward:

1. **Grant rehearing** under Rule 8022; and

2. **Vacate Dkt. 58** as facially defective

### VII.  The Court committed reversible, manifest error of law  by not "first" determining its, the 03-93031 Bankruptcy Court (NDGA), and the 02-cv-2219 (SDNY) federal courts' Article III subject matter jurisdiction over their respective proceedings—proceedings from which the record came to the 25cv00613 District Court. *Steel Co.*, 523 U.S. at 93-95.

### A. The Constitutional Imperative of Jurisdictional Priority

The Constitution of the United States imposes an inflexible command upon every federal tribunal: subject-matter jurisdiction must be established *before* a court may lawfully adjudicate any aspect of a controversy. This requirement is not a matter of judicial convenience or procedural preference; it is a structural limitation embedded in Article III itself, serving as "an essential ingredient of separation and equilibration of powers." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

---

[21] **"Jabberwocky"** is a nonsense poem by **Lewis Carroll**, embedded in *Through the Looking-Glass*. It's famous not because it refuses meaning, but because it manufactures it out of thin air and dares you to keep up.

Case No. 25cv00613 (NDGA)

The Supreme Court has articulated this principle with unmistakable clarity: "On every writ of error or appeal, ***the first and fundamental question is that of jurisdiction***, first, of this court, and ***then of the court from which the record comes***." *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) (emphasis added). This "inflexible" rule dictates that "***the first duty*** [which the 25cv00613, 03-93031, and 02-cv2219 (SDNY) courts all betrayed this constitutional duty] of this court is, *sua sponte*, if not moved to it by either party, to examine" the jurisdictional foundation of any proceeding. *Id.*

The foundational rationale underlying this requirement was articulated by Chief Justice Chase in *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869): "Without jurisdiction the court ***cannot proceed at all in any cause***. Jurisdiction is power to declare the law, and when it ceases to exist, __the only function__ remaining to the court is that of announcing the fact and dismissing the cause." This principle admits of no exception. A court that lacks jurisdiction over a matter possesses precisely one lawful option: to acknowledge the jurisdictional deficiency and dismiss— not wait until the eleventh hour and the expenditure of +$1.25M in legal fees, and expenses by Appellants, and create a jurisdictional anomaly and claim appellate jurisdiction is lacking, after having exercised appellate jurisdiction on numerous when expedient to the racketeering and criminal interests of the predatory, Hobbs Act loan sharking and money laundering criminal enterprise run by Atlanta, GA law firm Appellee Kilpatrick, Townsend, & Stockton, LLP, et al. from the outset.

## B. The Supreme Court's Categorical Rejection of Hypothetical Jurisdiction

In *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), the Supreme Court definitively rejected the "doctrine of hypothetical jurisdiction"—the notion that a federal court may bypass jurisdictional analysis to reach the merits when doing so appears more convenient or

efficient. Justice Scalia, writing for the Court, explained that this approach "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id.* at 94.

The *Steel Co.* Court identified the constitutional infirmity inherent in hypothetical jurisdiction: "Hypothetical jurisdiction produces nothing more than a hypothetical judgment— which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Id.* at 101 (citing *Muskrat v. United States*, 219 U.S. 346, 362 (1911); *Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792)). The constitutional prohibition against advisory opinions—a doctrine contemporaneous with the Republic itself—*renders unlawful any judicial pronouncement issued in the absence of properly established jurisdiction*, i.e., Dkt. 6, Dkt. 38, Dkt. 57 and Dkt. 58.

The Court further emphasized that "[t]he statutory and (especially) constitutional elements of jurisdiction—the Article III standing of KTS' unregistered broker-dealer clients to have appeared in the 03-93031 bankruptcy case posing as creditors—a conspiracy to commit bankruptcy fraud, attempting to enforce and collect Hobbs Act predatory, criminal usury unlawful debts (GX 1-4), are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, *and even restraining them from acting permanently regarding certain subjects* [predatory, criminal usury subject matter is inherently nonjusticiable— that is, ipso facto as a matter of law does not and cannot constitute a live case of controversy, and lacks redressability in a federal court]." (emphasis added) *Id.* Jurisdictional constraints are not bureaucratic obstacles to be circumvented in the interest of judicial economy; they are constitutional bulwarks preserving the structural integrity of the federal government.

## C. This Court's Independent Obligation to Examine Jurisdiction Below

Case No. 25cv00613 (NDGA)

The Eleventh Circuit and the District Court sitting as an appellate court in 25cv00613 possesses not merely the authority but the constitutional duty to scrutinize the jurisdictional foundation of the proceedings below. As the Supreme Court has instructed, **"[e]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review**.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997). (emphasis added).

This "special obligation" requires the appellate tribunal to conduct *an independent inquiry* into whether the court[s] below [03-93031 (BC NDGA) and 02-cv-2219 (SDNY)] possessed subject-matter jurisdiction to enter the judgment under review, Dkt. 278, Memorandum Decision/Order, and Dkt. 286 Order. The obligation exists irrespective of whether the parties have raised the issue and irrespective of whether the lower court purported to address it. *An appellate court that fails to satisfy itself of the lower court's jurisdiction before reviewing the merits would itself transgress the constitutional boundaries of the judicial power.*

## D. The District Court's Failure to Establish Jurisdiction as a Threshold Matter

The 25cv00613 District Court's numerous exercise of appellate jurisdiction over Bankruptcy Case No. 03-93031 derived from 28 U.S.C. § 158(a), which grants district courts "jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." *See* 28 U.S.C. § 158(a)(1). *This statutory grant of appellate jurisdiction, however, cannot supersede or abrogate the anterior constitutional requirement that Article III subject-matter jurisdiction be established "first" as a threshold matter*. *Steel Co.,* 523 U.S. at 94-95.

Case No. 25cv00613 (NDGA)

The record demonstrates that the District Court upon numerous requests by the Appellants *__categorically and defiantly__* failed, completely, and refused all request to undertake the *__threshold__* jurisdictional analysis mandated by *Steel Co.* and its progeny. Instead, *__the District Court and the__* *__Bankruptcy Court both proceeded recklessly and irresponsibly__* to adjudicate motions on the merits, established briefing schedules pursuant to Federal Rule of Bankruptcy Procedure 8014(a), threatened dismissal with prejudice for non-compliance, and ruled on sanctions motions under Federal Rule of Bankruptcy Procedure 8020—all without first resolving the *__foundational question__* of whether Article III jurisdiction was properly established over the controversy before it.

On January 26, 2026, in its Order of Dismissal (Dkt. 57), the District Court **belatedly** invoked a jurisdictional deficiency—claiming on the flimsiest of basis untimeliness under Federal Rule of Bankruptcy Procedure 8002—as grounds for dismissal. Yet this jurisdictional ruling came *__after__* **ten months of substantive adjudication**. The Court's Judgment, Dkt. 58, simultaneously "affirmed"—which requires appellate and Article III subject matter jurisdiction, the bankruptcy court's order, Dkt. 278, (see Ex. 2, infra), while dismissing for lack of jurisdiction—*__a logical__* *__impossibility that reveals the Court's unprecedented and reckless failure to observe proper__* *__jurisdictional sequencing__*. A court without jurisdiction possesses no authority to "affirm" anything; it may only dismiss. *Steel Co.*, Id.

## E. The Consequence of Premature Merits Adjudication

Every ruling (Dkt. 6, Dkt. 38, Dkt. 57, and Dkt. 58) issued by the District Court prior to establishing jurisdiction—the Article III standing of Appellee KTS unregistered broker-dealer clients, the redressability of the predatory, criminal usury unlawful debts (GX 1-4) and contract (GX 5), carries the *__constitutional taint__* and stench of advisory opinion. As *Steel Co.* instructs, a merits determination rendered in the absence of established jurisdiction "*__produces nothing more__*

*than a hypothetical judgment—which comes to the same thing as an advisory opinion*." 523 U.S. at 101. (emphasis added). Accordingly, Dkt. 6, Dkt. 38, Dkt. 57 and Dkt. 58 are ipso facto null and void ab initio, moot, and advisory. The constitutional prohibition against advisory opinions—rooted in the "Cases" and "Controversies" requirement of Article III, § 2—deprives such rulings of legal effect.

*The District Court's procedural inversion*—adjudicating merits while leaving jurisdiction unresolved (cf., Dkt. 38)—contravenes the fundamental architecture of Article III. The Court's multiple exercises of what is definitive appellate authority over a ten-month period created *a procedural morass* in which Appellants expended substantial resources prosecuting an appeal that the Court ultimately declared jurisdictionally defective once the District Judge (Brown, J.) was named in *fraud on the court papers* submitted to the Supreme Court of Georgia regarding *In re Ware*, S08Y1685. This sequence of events exemplifies precisely the constitutional harm that *Steel Co.*'s threshold jurisdiction requirement is designed to prevent.

## F. Relief Requested

For the foregoing reasons, Appellants respectfully submit that the District Court's Order of Dismissal (Dkt. 57) and Clerk's Judgment (Dkt. 58) should be vacated. This Court should remand with instructions that the 03-93031 Bankruptcy Court and the 02-cv-2219 (SDNY) District Court undertake the threshold jurisdictional analysis required by Article III of the Constitution and the Supreme Court's decision in *Steel Co. before* proceeding to any determination touching upon the merits.

## VIII. Conclusions

Case No. 25cv00613 (NDGA)

The District Court's January 26, 2026, Order (Ex. 1) and January 27, 2026, Judgment (Ex. 2) rest on a disqualifying mental disability, and on manifest errors of law and fact that undermine the integrity of the appellate process and violate fundamental constitutional principles. The Court cannot exercise appellate jurisdiction for ten months—**denying motions, establishing briefing schedules, invoking bankruptcy appellate rules, threatening sanctions**, and **accepting appellate briefs**—only to claim at the eleventh hour, " … oops, hey I think I lack appellate jurisdiction, and subject matter jurisdiction never existed." (paraphrased). Such nonsensical and frivolous procedural inconsistency violates the doctrine of judicial estoppel, wastes judicial resources, and imposes severe prejudice on litigants who reasonably rely on the court's jurisdictional representations.

The mischaracterization of Chief Judge Ellis-Monro's January 27, 2025 ruling as a "letter" rather than a Memorandum Decision/Order, a final appealable order denying Appellants' Jan. 27, 2025, (see Ex. 6, infra), Rule 12(h)(3)/9014 subject matter challenge jurisdictional relief demonstrates a fundamental misapprehension of bankruptcy finality principles established in *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020). The Court's/Clerk's Judgment, Dkt. 58 (Ex. 2, infra) explicitly "affirms" the bankruptcy court's order—language that necessarily presupposes both appellate and Article III subject matter jurisdiction. A court without jurisdiction possesses no authority to affirm; it may only dismiss and announce that fact. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, <u>the only function remaining to the court is that of announcing the fact and dismissing the cause</u>."). (emphasis added).

Case No. 25cv00613 (NDGA)

Most critically, the Court violated *Steel Co.*'s inflexible mandate to establish subject matter jurisdiction "first" before proceeding to any merits determination. 523 U.S. at 94-95. Every federal court possesses ***an independent constitutional obligation*** to examine *sua sponte* whether Article III jurisdiction exists over the proceedings below. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). The Court's failure to conduct this *threshold* analysis before adjudicating motions, establishing briefing schedules, and threatening sanctions renders all such rulings void *ab initio* as advisory opinions issued without constitutional authority.

For these reasons, Appellants respectfully request that the Court grant this Motion for Rehearing, vacate its prior Order (Dkt. 57) and Judgment (Dkt. 58), conduct the threshold jurisdictional analysis mandated by *Lujan*, 504 U.S. at 561-62, Article III, and *Steel Co.*, and restore this appeal to active status for adjudication on the merits, if Article III subject matter jurisdiction is found to exist over the predatory, ***Criminal Usury Subject Matter***. In the alternative, Appellants demands that the Court grant the FRE 201(c)(2) mandatory judicial notice demanded under Federal Rule of Evidence 201(c)(2) and conduct the required Rule 201(e) hearing on the adjudicative facts establishing the absence of Article III jurisdiction in the proceedings below.

The integrity of the federal appellate system depends on courts adhering to jurisdictional requirements consistently rather than invoking or disclaiming jurisdiction based on litigation convenience. Appellants have suffered severe prejudice through reasonable reliance on this Court's repeated exercises of appellate jurisdiction. Fundamental fairness and constitutional fidelity require correction of these manifest errors.

**Case No. 25cv00613 (NDGA)**

Respectfully submitted and signed this 1st day of February 2026, under oath, subject to the penalty of perjury, having personal knowledge of the facts, pursuant to 28 USC  § 1746, in Brooklyn, NY.


/s/ Ulysses T. Ware

ULYSSES T. WARE
Attorney in Fact for the Appellants
The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
Tel: (718) 844-1260
Email: utware007@gmail.com

Dated: February 1, 2026
Brooklyn, New York

Case No. 25cv00613 (NDGA)

## IX.   Certificate of Service

I hereby certify that on Feb. 1, 2026, I caused to be served a true and correct copy of the following document:

**Appellants' Verified Motion for Rehearing and Reconsideration Pursuant to Bankruptcy Rule 8022, Seeking Vacatur of Dkt. 38, Dkts. 57, and 58 for Egregious Manifest Errors of Law and Fact, Risible Incoherent Legal Rulings, Denial of Due Process, and Improper Exercise of Appellate Authority by District Judge Michael L. Brown; Verified Demand for FRE 201(c)(2) Mandatory Judicial Notice and Demand for a FRE 201(e) Hearing.**

upon all Appellees and their respective legal counsel of record in this appeal by electronic mail, transmitted to each recipient's publicly listed and/or previously used email address of record, as reflected on the docket of this Court and in prior filings in this proceeding.

Service by electronic mail was effected pursuant to the Court's inherent authority, applicable federal rules, and the established course of conduct in this appeal, and constitutes effective service upon all parties entitled to notice.

I further certify that the foregoing service was completed in good faith and in a manner reasonably calculated to provide actual notice to all Appellees and their counsel of record.

New York, New York

Respectfully submitted,

/s/ **Ulysses T. Ware**

Ulysses T. Ware, Attorney in Fact for Appellants--Ulysses T. Ware and Group Management

The Office of Ulysses T. Ware
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Case No. 25cv00613 (NDGA)

# Exhibits

Case No. 25cv00613 (NDGA)

**Exhibit 1—Dkt. 57, Jan. 26, 2026, Incoherent and Inconsistent Moot Order (Sua sponte exercise of appellate jurisdiction)**

Case 1:25-cv-00613-MLB     Document 57     Filed 01/26/26     Page 1 of 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ulysses T. Ware and Group
Management,

                            Appellants,

                                   Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG et al.,

                            Appellees.

_____/

| The exercise of appellate jurisdiction #4 |

**ORDER**

The Court **VACATES** its prior Order (Dkt. 6) dismissing Appellant Group Management for failure to retain counsel. The Court does so because Appellant Ware now claims Group Management is a sole proprietorship and—assuming that is true, which the Court is willing to do given the pending dismissal of this case on other grounds—"[a] sole proprietorship may litigate pro se." *United States v. Natalie Jewelry*, 2015 WL 150841, at *5 (S.D. Fla. Jan. 13, 2015).

The Court **DISMISSES** this bankruptcy appeal as untimely because Federal Rule of Bankruptcy Procedure 8002 requires appellants

The Court sua sponte exercised appellate jurisdiction on **March 10, 2025**, (see Ex. 3, infra)-- the Court implicitly ruled that appellate jurisdiction irrevocably attached authorizing it to enter the Orders, Dkt. 6 (Ex. 3, infra), and Dkt. 38 (Ex. 4, infra)--the Court had and continued to exercise appellate jurisdiction over the 25cv00613 (NDGA) appeal until Jan. 26, 2026, Dkt. 57, see infra. Accordingly, the Court is judicially estopped from asserting in its ultra vires Jan. 26, 2026, Order, Dkt. 57, that it at the eleventh hour now lacks appellate jurisdiction.

**Case No. 25cv00613 (NDGA)**

to file a notice of appeal "within 14 days after the [challenged] judgment, order, or decree"; Appellants' notice of appeal challenges bankruptcy court orders entered in 2003 and 2022; and Appellants did not file their

> And entered on 01.27.25. Dkt. 278 (Memorandum Decision/Order)

notice of appeal until 2025, more than 14 days later. (Dkts. 1; 1-1 at 6–

> Feb, 3, 2025, Dkt. 279 (BC NDGA), appealing the "bankruptcy order" dated 01.27.25, Memorandum Decision/Order, (see Ex. 7, infra). Timely pursuant to Rule 8002.

7); *see In re Williams*, 216 F.3d 1295, 1298 (11th Cir. 2000) ("[T]he timely filing of a notice of appeal is mandatory and jurisdictional. If the notice is not timely filed, the appellate court is without jurisdiction to hear the appeal."). Appellants' filings are also meritless as other courts have repeatedly explained. (*See, e.g.*, Dkts. 1-5 at 6–16; 45 at 8–11 (discussing Appellant Ware's long history of frivolous filings in this bankruptcy case and related proceedings).)[1]

> The Court is palpably confused regarding 28 USC 158(a) and Rule 8002—it is the filing of the time notice of appeal of the bankruptcy court's orders, (Dkt. 278 and Dkt. 286), in 2025, JSAR, Dkt. 1 (02/07/25) that triggered the District Court appellate jurisdiction over 25cv00613 (NDGA), not the contents of the orders appealed from.

[1] Of the bankruptcy court orders challenged in Appellants' notice of appeal, the only one docketed within the 14-day appellate period is not really an order at all. It is a "letter" that simply notes the underlying bankruptcy case "has been closed since June 2003," Appellants sent the bankruptcy court more than 100 emails over an 8-month period in 2024–2025, "[e]mails do not constitute filing with the court," and thus "none of the emails have been or will be docketed." (Dkt. 5-9.) Nothing about this unremarkable document warrants any relief on appeal, much less the relief Appellants seek in their papers. The same goes for a February 2025 bankruptcy court order (Dkt. 5-10)—entered during the pendency of this appeal—that Appellants did not mention in their initial notice of appeal but which they have since attacked in other filings. (*See* Dkts. 5-15; 41 at 27). The February 2025 order, like the letter, discusses Appellants' 100+ emails, notes "letters are not proper pleadings," explains the bankruptcy

> The Court admitted and conceded C.J. Ellis-Monro's bankruptcy order, JSAR Dkt. 5-10, is an appealable order, and the notice of appeal was timely filed, (see Dkt. 5-15, 2d Amended Notice of Appeal dated 03/07/25).

2

> The Court is referring to the Bankr. Ct's 01.27.25, Dkt. 278, Memorandum Opinion (Ellis-Monro, C.J.) denying all relief on Mr. Ware' 01.27.25 (see Ex. 6, infra) Rule 12(h)(3)/9014 contested matter motion challenging the Article III subject matter jurisdiction of the 03-93031 (NDGA) Bankr. Court in regard to: (i) Art. III standing of Appellee KTS' predatory, unregistered broker-dealer clients to have appeared in the Chapter 11; and (ii) challenging the Bankr. Ct. Art. III subject matter jurisdiction over the null and void ab initio predatory, criminal usury unlawful debts (GX 1-4), and contract (GX 5), (see Ex. 6, infra

Case No. 25cv00613 (NDGA)

The exercise of appellate jurisdiction #5—adjudicateion of the merits of the frivolous motion.

The Court **DENIES WITHOUT PREJUDICE** Appellees' 6-page

motion for sanctions (Dkt. 46) as insufficiently developed. If Appellees

wish to renew their motion, they must (1) explain in more detail why

sanctions are warranted under Rule 8020; (2) address Appellants'

counterarguments; (3) identify the specific sanctions they seek; and

(4) describe each step required to process and effectuate their request

from beginning to end (including whether the Court must hold a hearing

and, if so, when and what should happen at the hearing). Appellees must

be thorough and cite supporting authority throughout their analysis.

#6      The Court **DENIES** Appellants' pending motions (Dkts. 42; 44; 49)

as moot or otherwise meritless. The Court **DIRECTS** the Clerk to close

this case.

**SO ORDERED** this 26th day of January, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

court cannot take "substantive action while the appeal is pending," and
says the court "will henceforth return any email received from
[Appellants] unopened." (Dkt. 5-10.)   Again, nothing about this
document—even assuming it were properly before the Court despite its
omission from Appellants' initial notice of appeal—entitles Appellants to
the relief they seek. That is so—and the Court's other conclusions in this
Order remain true—regardless of which of Appellants' two opening briefs
(Dkts. 26; 41) is deemed operative.

3

> The Court did not address why an
> appellate opening brief is "operative" if
> the Court in fact lacked 28 USC § 158(a)
> appellate jurisdiction over the
> bankruptcy court's orders.

Case No. 25cv00613 (NDGA)

## Exhibit 2—Dkt. 58, Jan. 27, 2026, Incoherent and Inconsistent Moot Judgment

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Dkt. 58

| | |
|---|---|
| GROUP MANAGEMENT CORP.,<br>Debtor, | BANKRUPTCY CASE NO.<br>03-93031-WLH |
| ULYSSES T. WARE et al,<br>Appellants, | CIVIL ACTION FILE NO.<br>1:25-cv-00613-MLB. |
| vs. | |
| ALPHA CAPITAL, AG et al,<br>Appellees. | |

### J U D G M E N T

This action having come before the court, Honorable Michael L. Brown, United

States District Judge, for consideration of the appeal of the bankruptcy order entered

See Ex. 7, infra

2/3/2025, and the court having rendered its decision, it is

Ordered and adjudged that the order of the bankruptcy court is affirmed and the

appeal is dismissed.

Dated at Atlanta, Georgia this 27th day of January, 2026.

"**Ordered**" and "**affirmed**" legally presupposes the Court possessed 28 USC § 158(a) appellate jurisdiction and exercised that appellate jurisdiction over the 25cv00613 appeal; "**adjudged**" implies the Court *reviewed the merits* of the 25cv00613 appeal, and "affirmed" the bankruptcy court's 01.27.25 Order, Dkt. 278, (see Ex. 7, infra), **which legally requires appellate and Article III subject matter jurisdiction over the proceedings by all courts (25cv00613, 03-93031, and 02-cv-2219 (SDNY)).**

KEVIN P. WEIMER
CLERK OF COURT

By: s/Parker Thompson
Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
January 27, 2026
Kevin P. Weimer
Clerk of Court

By: s/Parker Thompson
Deputy Clerk

Ellis-Monro, C.J., 01.27.25, Dkt. 278 (BC NDGA), Memorandum Decision/Opinion/Order was referenced by the District Clerk as the "**bankruptcy order**" under appeal in 25cv00613—which is in contradiction to, and is inconsistent with lack of 28 USC § 158(a) appellate jurisdiction, are the indisputable factual predicates against the Clerk and the District Judge (Brown, J.) for federal tort claims for judicial misconduct. **The Court's and the Clerk's judgment, Dkt. 58 "affirmed" the bankruptcy court's order, (Ex. 7, infra) which requires, ipso facto, appellate jurisdiction and Article III subject matter jurisdiction by all courts (25cv00613, 03-93031, and 02-cv-2219 (SDNY))**

Case No. 25cv00613 (NDGA)

## Exhibit 3—Dkt. 6, March 10, 2025, Order (Sua sponte Exercise of appellate jurisdiction—no mention of any issue of untimeliness)

Case 1:25-cv-00613-MLB    Document 6    Filed 03/10/25    Page 1 of 2

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Ulysses T. Ware and Group
Management,

                Appellants,

                                Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG, et al.,

                Appellees,

_____/

### ORDER

The Court ordered Appellant Group Management to have counsel

file a notice of appearance with the Clerk no later than March 6, 2025.

(Dkt. 4.) The Court warned Appellant that failure to comply may result

in sanctions, including dismissal. (*Id.*) Appellant has failed to comply

with the Court's order.

> The exercise of appellate jurisdiction #1.

Accordingly, the Court **DISMISSES** Appellant Group Management

without prejudice for failure to comply with a lawful order of the Court.

*See* LR 41.3(A)(2), NDGa.

> **Thus as of March 10, 2025**, the Court implicitly ruled—by dismissing
> Group Management, that appellate jurisdiction irrevocably attached to
> the 25cv00613 proceeding on Feb 7, 2025 (See Ex. 5, infra, Dkt. 282, B.C.
> NDGA)--the Court had and continued to exercise appellate jurisdiction
> over the 25cv00613 (NDGA) appeal until Jan. 26, 2026, Dkt. 57, see Ex.
> 1, supra.

Case No. 25cv00613 (NDGA)

Case 1:25-cv-00613-MLB    Document 6    Filed 03/10/25    Page 2 of 2

**SO ORDERED** this 10th day of March, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

2

Case No. 25cv00613 (NDGA)

**Exhibit 4—Dkt. 38, April 29, 2025, Order (Sua sponte exercise of appellate jurisdiction—no mention of any issue of untimeliness).**

Case 1:25-cv-00613-MLB   Document 38   Filed 04/29/25   Page 1 of 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Ulysses T. Ware,

        Appellant,

                Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG, et al.,

        Appellees.

_____/

| The exercise of appellate jurisdiction ##2 and 3. |

### ORDER

**#2**  The Court **DENIES** Appellant's motions (Dkts. 12; 14; 19; 22) because Appellant has not shown the relief he seeks is warranted. The

**#3**  Court **ORDERS** Appellant to file a single, consolidated opening appellate brief no later than May 29, 2025. Appellant's brief must be titled "Appellant's Opening Appellate Brief," be double-spaced, not exceed 25 pages, contain everything required by Bankruptcy Rule 8014(a) in the proper format, and otherwise comply with the rules governing opening briefs in a bankruptcy appeal. If Appellant believes the Court lacks jurisdiction to consider his appeal—or that other jurisdictional problems exist—he may assert those arguments in his opening brief. The docket

If the Court actually lacked 28 USC § 158(a) appellate jurisdiction over the 25cv00613 (NDGA) appeal then, ipso facto, as a matter of law, **an Appellant brief is unnecessary, ultra vires, and would not be accepted for filing by the Office of the District Clerk**—see Dkt. 26 and Dkt. 41; however, the District Clerk accepted both Appellant's Briefs for filing and docketing. If appellate jurisdiction was truly lacking, the Clerk was required to have declined filing and docketing of both briefs, and the Court would not have **ordered** an Appellant brief be filed. **The issue is subject to judicial estoppel.**

Case No. 25cv00613 (NDGA)

The Court acknowledged its appellate jurisdiction over the 25cv00613 proceedings.

in this case is already clogged with rambling, incoherent, voluminous, and unnecessary filings. Going forward, the Court urges Appellant to be more judicious and restrained about what he chooses to file. If Appellant does not comply with any of the instructions contained in this Order, the Court will likely dismiss his appeal, potentially with prejudice.

SO ORDERED this 29th day of April, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

2

Case No. 25cv00613 (NDGA)

**Exhibit 5—Timely Notice of Appeal--Dkt. 279 and 282, Feb. 7, 2025, (B.C. NDGA)—
Bankruptcy Clerk's Transmittal of Notice of Appeal to the District Court (NDGA).**


**M Gmail**                                    Ulysses Ware <utware007@gmail.com>

**03-93031-wlh Notice of Appeal (FEE)**
1 message

no-reply-notices@ganb.uscourts.gov <no-reply-notices@ganb.uscourts.gov>       Fri, Feb 7, 2025 at 9:53 AM
To: CourtMail@ganb.uscourts.gov

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of
record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed
electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To
avoid later charges, download a copy of each document during this first viewing. However, if the referenced
document is a transcript, the free copy and 30-page limit do not apply.

**U.S. Bankruptcy Court**

**Northern District of Georgia**

Notice of Electronic Filing

The following transaction was received from klt, entered on 2/7/2025 at 9:53 AM EST and filed on 2/3/2025
**Case Name:**      Group Management Corp.
**Case Number:**    03-93031-wlh
**WARNING: CASE CLOSED on 08/03/2003**
**Document Number:** 279

**Docket Text:**
Notice of Appeal to District Court, Fee $ 298 Receipt Number: None, Amount Paid $ 0.00, filed by Ulysses T. Ware .
Appellant Designation due by 2/18/2025, submission by USBC to USDC due by 3/5/2025. (related document(s) [6], [11],
[13], [14], [15], [16], [28], [256], [258], [263], [274], [275], [276]) (klt)

The following document(s) are associated with this transaction:

| The 01.27.25, Dkt. 278, Memorandum Decision/Order was transmitted by the Bankruptcy Court to the District Court for appeal pursuant to 28 USC 158(a) as a timely notice of appeal. |
| --- |

**Document description:**Main Document
**Original filename:**0_097.pdf
**Electronic document Stamp:**
[STAMP GANBStamp_ID=875559824 [Date=2/7/2025] [FileNumber=88433998-0]
[83cb73e0beb2460e8931b1b7dbf0b111640a00fb9bd544039f13a95f638dbfcc9824a
d87992ed4e74f9907d978187fdad5b52501f7cc69f0d11d82441c00dc20]]

**03-93031-wlh Notice will be electronically mailed to:**

Office of the United States Trustee
ustpregion21.at.ecf@usdoj.gov

Thomas Ware on behalf of Debtor Group Management Corp.
utware007@gmail.com

**03-93031-wlh Notice will not be electronically mailed to:**

Sims W. Gordon, Jr. on behalf of Debtor Group Management Corp.
The Gordon Law Firm, PC
Suite 1500
400 Galleria Parkway, SE
Atlanta, GA 30339

Dennis S. Meir on behalf of Creditor Alpha Capital Aktiengesellschaft, et al.
KILPATRICK TOWNSEND & STOCKTON, LLP
1100 Peachtree Street
Suite 2800

Atlanta, GA 30309

**Ulysses T. Ware**
123 Linden Blvd, Suite 9-L
Brooklyn, NY 11226

Case No. 25cv00613 (NDGA)

 **Gmail**                                                    Ulysses Ware <utware007@gmail.com>

---

**03-93031-wlh Transmittal of Notice of Appeal** ◀️
1 message

---

no-reply-notices@ganb.uscourts.gov <no-reply-notices@ganb.uscourts.gov>          Fri, Feb 7, 2025 at 1:18 PM
To: CourtMail@ganb.uscourts.gov

---

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of
record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed
electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To
avoid later charges, download a copy of each document during this first viewing. However, if the referenced
document is a transcript, the free copy and 30-page limit do not apply.

**U.S. Bankruptcy Court**

**Northern District of Georgia**

Notice of Electronic Filing

The following transaction was received from yl entered on 2/7/2025 at 1:18 PM EST and filed on 2/7/2025
**Case Name:**        Group Management Corp.
**Case Number:**      03-93031-wlh
**WARNING: CASE CLOSED on 06/03/2003**
**Document Number:** 282

**Docket Text:**
Transmittal of Notice of Appeal to District Court (related document(s) [279]) (yl)    ◀️

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Submission sheet.pdf
**Electronic document Stamp:**
[STAMP GANBStamp_ID=875559624 [Date=2/7/2025] [FileNumber=88436266-0]
[c22a9509067b12c22f1e7f71f8c533be14cc779b1bd5c203c6bd77877c1dd89699eb2
4de4c5e1390bd697c16206e5f2fa3e69e39e7488f7b95052942dbb61bc1]]

**03-93031-wlh Notice will be electronically mailed to:**

Office of the United States Trustee
ustpregion21.at.ecf@usdoj.gov

Thomas Ware on behalf of Debtor Group Management Corp.
utware007@gmail.com

**03-93031-wlh Notice will not be electronically mailed to:**

Sims W. Gordon, Jr. on behalf of Debtor Group Management Corp.
The Gordon Law Firm, PC
Suite 1500
400 Galleria Parkway, SE
Atlanta, GA 30339

Dennis S. Meir on behalf of Creditor Alpha Capital Aktiengesellschaft, et al.
KILPATRICK TOWNSEND & STOCKTON, LLP
1100 Peachtree Street
Suite 2800
Atlanta, GA 30309

---

Ulysses T. Ware
123 Linden Blvd, Suite 9-L
Brooklyn, NY 11226

Case No. 25cv00613 (NDGA)

**Exhibit 6—Appellants' 01.27.25 Rule 12(h)(3)/9014 Art. III subject matter jurisdictional contested matter--JSAR (25cv00613) Dkt. 5-13 pp 186-270, and con't at Dkt. 5-14 pp 1-6), denied on 01.27.25 by the Bankr. Chief Judge (Ellis-Monro), Dkt. 278 (BC NDGA) *Memorandum Opinion/Order* (see 25cv00613 (NDGA) JSAR Dkt. 5-9) denying all relief and placement on the docket per Bankr. Rule 9021. (See Ex. 7, infra).**

## Case No. 03-93031

## United States Bankruptcy Court (12-0)
## For the Northern District of Georgia
## (Atlanta Division)

**Submitted for Filing on
Monday, January 27, 2025, 8:57:50 AM**

**F-3**

## In re Group Management Corp.
## Chapter 11

## Movants' 11 USC 1109(b) Statutory Parties in Interest Group Management and Ulysses T. Ware's Bankr. Rule 9014 and Rule 12(h)(3) Contested Matter.[1]

Submitted by:
/s/ Ulysses T. Ware
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com
**Monday, January 27, 2025**

---

[1] The Movants' challenge to the Bankruptcy Court (NDGA) *In re Group Management Corp.*, 03-93031 Chapter 11 Article III jurisdiction over *predatory criminal usury unlawful debts subject matter*, GX 1-4; and (2) challenge to the Article III standing of the 02cv2219 (SDNY) plaintiffs, Atlanta, GA law firm Kilpatrick, Townsend, & Stockton, LLP clients, see Dkt. 11, *unregistered broker-dealers*. Cf., Ex. 3, infra. What legitimate and lawful interest would a United States Bankruptcy Court (Ellis-Munro, C.J. and Hagenau, C.J.) have in not *sua sponte* affirmatively confirming the Court's mandatory unwaivable constitutional jurisdiction to adjudicate the Dkt. 6, 11, 13, 14, 15, and 16 proceedings with respect to fundamental constitutional prerequisites—"legally protected interest" in criminal usury convertible promissory notes—in *predatory criminal usury unlawful debts*, GX 1-4, and (2) the Article III standing of KTS' *unregistered broker-dealers clients to enforce and/or collect GX 1-4*? *No legitimate interest exists*. If no legitimate interest exists, then any alleged interest, by definition, must be nefarious, corrupt, perfidious, and illegitimate—that is, *an unlawful interest*.

**Page 1 of 155**
Monday, January 27, 2025
(12) (Part 14-0) re Rule 9014 Contested Matter Motion to Strike, Vacate, Set Aside, and Annul Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, and 275, (the "Void Ab initio Orders").

**Case No. 25cv00613 (NDGA)**

Exhibit 7—Dkt. 5-9 Memorandum Opinion/Decision/Order (25cv00613 JSAR) re 03-93031 (BC NDGA) Memorandum Opinion/Order (Ellis-Monro, C.J.) denying all relief of Appellant's Rule 12(h)(3)/9014 contested matter Article III subject matter jurisdiction motion, see Ex. 6, supra. The Clerk's Judgment, Dkt. 58, (Ex. 2, supra) referenced as "the appeal of the <mark>bankruptcy order</mark> entered 2/3/2025 … <mark>is affirmed</mark>" in the timely 02.03.25, Dkt. 279 (BC NDGA) Notice of Appeal. To "affirm" required <mark>28 USC § 158(a) appellate jurisdiction</mark> and Article III subject matter jurisdiction as the Clerk noted.



Memorandum Opinion/Decision/Order (Ellis-Monro, **C.J.**)

Case 1:25-cv-00613-MLB    Document 5-9    Filed 03/07/25    Page 1 of 1

Filed in U.S. Bankruptcy Court
Northern District of Georgia
Vania S. Allen, Clerk

JAN 2 7 2025

By: _____
Deputy Clerk

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
1431 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Chambers of
**BARBARA ELLIS-MONRO**
Chief Judge

Phone: 404-215-1030

January 27, 2025

Mr. Ulysses T. Ware
123 Linden Blvd., Suite 9-L
Brooklyn, NY 11226

> Denied the "requested" relief in the 01.27.25 Rule 12(h)(3)/9014 motion, See Ex. 6, supra

Dear Mr. Ware:

I am in receipt of over one hundred emails from you received since May 29, 2024. In these numerous emails and attachments, you have requested, (i) an evidentiary show cause hearing for various reasons; (ii) reopening of the closed bankruptcy case 03-93031; (iii) vacating pleadings and orders; (iv) transferring the closed case to the Southern District of New York; (v) my recusal or resignation; (vi) filing of an Asset Recovery Plan; and (vii) investigations, contempt, sanctions and other relief as to judges, attorneys, individuals and law firms all in a case that was dismissed by consent in May 2003. The case has been closed since June 2003.

**#1** I write to reiterate the findings in the orders entered by now retired Judge Hagenau. Emails do not constitute filing with the Court [Doc. 256, p. 53]. Thus, none of the emails have been or will be docketed. Further, the Court has prohibited you from filing, sending, or otherwise delivering documents for filing in this case, except for notices of appeal and papers filed in connection therewith. [Doc. 275, p. 15]. Any notice of appeal or related papers must be properly filed, not emailed, to be docketed. **#2, #3**

Each of the emails received to date has been and will be preserved.

This letter will be docketed. The case remains closed.    **#4**

Sincerely,

_____
Barbara Ellis-Monro
Chief United States Bankruptcy Judge

C: Clerk, USBC, NDGA

Chief Judge Ellis-Monro, first **reaffirmed the Orders (#1)** of the former Chief Judge Hagenau, then second (#2, #3), *she made finding of facts and conclusion of law*, thirdly, *she denied all relief on the discrete unit of adjudication presented to the court—refused to exercise jurisdiction*, and finally, *she Ordered the Clerk to docket the Memorandum Opinion pursuant to Bankr. Rule 9021*, (BC NDGA), Dkt. 278 (01.27.25), ipso facto a final, appealable memorandum decision/order on the merits denying all reliefs concerning the Appellants' undocketed Rule 12(h)(3)/9014 contested matter Art. III subject matter jurisdiction motion.

Case No. 25cv00613 (NDGA)

**Exhibit 8—Dkt. 5-10 Order (Ellis-Monro, C.J.) (JSAR) (02/18/25, Dkt. 286, 03-93031 BC NDGA). Timely appealed via the Second Amended Notice of Appeal filed on 02/26/25, Dkt. 293 (BC NDGA). See Ex. 9, infra.**

Case 1:25-cv-00613-MLB    Document 5-10    Filed 03/07/25    Page 1 of 5

**IT IS ORDERED as set forth below:**

**Date: February 18, 2025**

**Barbara Ellis-Monro**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

GROUP MANAGEMENT CORP.,

    Debtor.

CASE NO. 03-93031-BEM

CHAPTER 11



**O R D E R**

    An appeal has been filed in this case which was accompanied by a letter from Mr. Ulysses T. Ware in which Mr. Ware requests that this Court hold a status conference under 11 U.S.C. § 105(d) to establish a briefing schedule on the asserted jurisdictional issue. This Court addressed its jurisdiction, the standing of claimants who held or hold certain convertible promissory notes issued by Debtor, and Mr. Ware in an order entered October 22, 2024, (the "October Order"). Thus, to the extent Mr. Ware seeks relief from the Bankruptcy Court, there is no action this Court can take until the District Court rules on the appeal. *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1251 (11th Cir. 2020). Furthermore, letters are not proper pleadings. BLR 9003-2.

Case No. 25cv00613 (NDGA)

While the Court can take no substantive action while the appeal is pending in the District Court it can and will take action to control the purported filings sent by Mr. Ware via email. The constant emailing by Mr. Ware of voluminous, repetitive, abusive and frivolous documents wastes judicial resources and administrative time and must stop. Therefore, the Court will begin the return of all documents submitted through email and will henceforth return any email received from Mr. Ware unopened and it is now, hereby,

ORDERED that the Court will not review and will return all emails received from Mr. Ware.

**END OF ORDER**

4

Case No. 25cv00613 (NDGA)

**Exhibit 9—5-15 Timely Second Amended Notice of Appeal--(JSAR)(Dkt. 293, 02.26.25 03-93031 (BC NDGA)) appeal of Order (02.28.25), Dkt. 286 (Ellis-Munro, C.J.) (see Ex. 8, supra).**

Case 03-93031-bem    Doc 293    Filed 02/26/25    Entered 02/28/25 18:53:39    Desc Main
Document        Page 1 of 32

# 03-93031 Chapter 11
### Re: (12-10A2) (Part 14-10A2)

## A.  Appellants' Expressed Actual Notice of Adverse Effects and Consequences.

### The Office of Ulysses T. Ware

123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

February 19, 2025



Filed in U.S. Bankruptcy Court
Northern District of Georgia
Vania S. Allen, Clerk

FEB 2 6 2025

By_____
Deputy Clerk

**VIA ELECTRONIC FILING AND U.S. MAIL**

The Honorable Barbara Ellis-Monro
Chief Judge, United States Bankruptcy Court
Northern District of Georgia
Richard B. Russell Federal Building and United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

Vania S. Allen
Clerk of the Bankruptcy Court
United States Bankruptcy Court
Northern District of Georgia
Richard B. Russell Federal Building and United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

**B.    Re: IMMEDIATE ATTENTION REQUIRED: APPELLANTS' SUBMISSION FOR FILING AND DOCKETING OF AMENDMENT NO. 2 TO NOTICE OF APPEAL (DKT. 279) – APPEAL OF DKT. 286—THE CRIMINAL VIOLATIONS OF 18 U.S.C. § 2071(a), (b) ARISING FROM ATTEMPTED RETURN OF JUDICIAL PUBLIC RECORDS.**

Sincerely,

/s/ Ulysses T. Ware

*Ulysses T. Ware*

**Page 1 of 31**
Wednesday, February 19, 2025
(12-10A2) (Part 14-10A2)  re: Appellants' Feb. 19, 2025, Amendment No. 2 to Feb. 7, 2025, Dkt. 279,
Notice of Appeal appealing Dkt. 286, Feb. 18, 2025, moot and void ab initio purported Order-01.

Case 03-93031-bem    Doc 293    Filed 02/26/25    Entered 02/28/25 18:53:39    Desc Main
Document        Page 2 of 32

Ulysses T. Ware
Attorney in Fact for Appellants-Movants
Ulysses T. Ware and Group Management

Case No. 25cv00613 (NDGA)

**Exhibit 10—Dkt. 296 (03/07/25) JSAR certified as accurate and forwarded without objection, dispute, or challenge, by the Bankruptcy Court or any Appellee, to the District Court as ready for appeal by the Chief Judge (Ellis-Monro) pursuant to Bankr. Rule 8009(d)(2)(A), (B), and (d)(3). Had the Bankr. Court objected to or disputed that Dkt. 278 and Dkt. 286 were appealable Orders, the Bankr. Court was not authorized to have certified the same as appealable Orders pursuant to 28 USC 158(a) and the matter would have been resolved in the Bankruptcy Court, see Rule 8009(e)(3).** Cf., 2014 Committee Notes on Rules, Subdivision (d): "Subdivision (d) adopts the practice of F.R.App.P. 10(d) of permitting the parties to agree on a statement of the case in place of the record on appeal. **The statement must show how the issues on appeal arose and were decided in the bankruptcy court. It must be approved by the bankruptcy court in order to be certified as the record on appeal.**" Also see Subdivision (e): Subdivision (e), modeled on F.R.App.P. 10(e), provides a procedure for correcting the record on appeal if an item is *improperly designated*, omitted, or *misstated*.

Case 03-93031-bem    Doc 296    Filed 03/07/25    Entered 03/07/25 08:46:08    Desc Main
Document    Page 1 of 2

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA



TO:  Mr. Kevin P. Weimer, Clerk
United States District Court

DATE: March 7, 2025

RE:  03-93031-WLH
Bankruptcy Case No.

Group Management Corp.
Debtor(s)

Ulysses T. Ware and Group
Management
Appellant

vs

Alpha Capital, AG, Stonestreet, L.P., Markham Holdings, L.P., Amro International, S.A., Kilpatrick, Townsend, & Stockton, LLP, Dennis S. Meir, John W. Mills III, a J. Henry Walker, IV, Wab Kadaba, Kenneth A. Zitter, Arie Rabinowitz, LH Financial Services Corp., Konrad Ackermann, Joseph Hammer, Trailblazer Merger Corp., I, Wendy L. Hagenau, James H. Morawetz, the Office of the U.S. Trustee, Region 21, Mary Ida Townsend, M. Regina Thomas, Patricia Sinback, Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, Securities and Exchange Commission, Financial Industry Regulatory Agency(FINRA), Barbara Ellis-Monro, Marcia E. Asquith, RobertL.D., Colby, Robert W. Cook, Emma Jones, Sarah Jeffries, The State Bar of Georgia, Office of the General Counsel, William D. NeSmith, III, Paula Frederick, Leigh Burgess, William Alan Myers, Adrienne Nash, Jenny Mittlemen, Jonathan Hewett, Patrick N. Arndt, Michael D. Hostetter, Nall & Miller, LLP, Manibur S. Arora, Edward T.M.Garland, Michael F. Bachner, David B. Levitt, Donald F.Samuel, Janice Singer, Alexander H. Southwell, Thomas W.Thrash, Jr., Michael P. Boggs, Thomas A. Leghorn, Lawrence B. Mandala, Baker & McKenzie, LLP, Robert H.Albaral, John F. King, and Office of the Georgia Insurance Commissioner., John Does Insurance Companies, ##1-5, Jeneane Treace, Assistant U.S. Trustee, Region 21
Appellees

F08 (submusdc.roa) (Rev. 10-2009) – dfa07.29.21

## Case No. 25cv00613 (NDGA)

Case 03-93031-bem    Doc 296    Filed 03/07/25    Entered 03/07/25 08:46:08    Desc Main
Document    Page 2 of 2

### SUPPLEMENTAL SUBMISSION SHEET

**Submitted on:**

☒    Notice of Appeal filed 02/03/2025- Doc. No. 279
     File date of Order being appealed from 5/21/2003, 10/24/22, 12/13/22 - Doc. No. 28,256,274,275
☒ Supplemental Record to USDC Case No.  **25-cv-00613-MLB**
☐ Other: Click here to enter text.

**Contents of Record:**
☒ Documents: 6,11,13,14,15,16,258,263,278,286,288,289,292,293,294, docket sheet

☒ Designated items of    ☒ Appellant(s)    ☐ Appellee
    Filing Fee Paid - ☒ Yes   ☐ No

If previous and/or related appeal filed, list:

**22-cv-01531-LDH-LB (District of New York)**

FROM:   Vania S. Allen, Clerk of Court
        United States Bankruptcy Court

By: /s/_____
        Yahaira Lugo, Deputy Clerk

> On March 7, 2025, Dkt. 296, the Chief Judge of the U.S. Bankruptcy Court, the Hon. Ellis-Monro, pursuant to Bankr. Rule 8009(d)(2)(A), (B), and (d)(3) certified the "contents of the record" on appeal in 25cv00613 (NDGA) as accurate, complete, and without objection or dispute by any Appellee or the Bankruptcy Court disputing whether or not Dkt. 278 and Dkt 286 were appealable Orders—the matter is judicial estoppel on the 25cv00613 District Court (Brown, J.).
>
> All parties including the Bankruptcy Court's Chief Judge agreed that Dkt. 278 and Dkt. 286 were appealable Orders under 28 USC 158(a). The notice of appeals was timely filed as required by Rule 8002, and the record (JSAR) was certified to the District Court for adjudication as such.

F08 (submusdc.roa) (Rev. 10-2009) – dfa07.29.21

Case No. 25cv00613 (NDGA)

**Exhibit 11—FINRA's May 17, 2021, unregistered broker-dealer certification—fatal to Article III subject matter jurisdiction in the 02-cv-2219 (SDNY), 03-93031 (BC NDGA), and 25cv00613 (NDGA) proceedings.**

---

Case 1:25-cv-00613-MLB    Document 5-13    Filed 03/07/25    Page 48 of 270

**Exhibit 3—FINRA's May 17, 2021, binding regulatory factual finding of unregistered broker-dealer status for KTS' clients who fraudulently appeared in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16 via KTS' lawyers Dennis S. Meir and John W. Mills, officers of the court, pursuant to and in violation of 18 USC §§ 2, 152, 157, 371, 1951(a), 1956-57, 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.**

### CERTIFICATION OF NO FINRA BUSINESS RECORDS

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:



   a) Alpha Capital, AG
   b) Stonestreet, L.P.
   c) Markham Holdings, Ltd.
   d) Amro International, S.A.
   e) LH Financial Services

*Marcia E. Asquith*
Executive Vice President, Board and External
Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of ___May___, 2021.

Notary Public, District of Columbia
My commission expires: 8/31

Page 25 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

---

Case No. 25cv00613 (NDGA)

**Exhibit 11-1—GX 24, Case No. 02-cv-2219 (SDNY) Aug. 13, 2003 Order (Sand, J.) (deceased) finding KTS and each of KTS' predatory, unregistered broker-dealer clients lied, committed perjury, and stole and concealed 03-93031 Chapter 11 estate assets (+$522 million) required to have been turned over and disgorged to the Chapter 11 trustee in possession for distribution to creditors pursuant to 11 USC §§ 541, 542; 15 USC § 78p(b); and 18 USC § 1961(6)(B).**



Case 1:25-cv-00613-MLB    Document 5-13    Filed 03/07/25    Page 43 of 270

# JSAR Dkt. 5-13 pages 43-60

Exhibit 1—Dkt. 65, Aug. 13, 2003, Sand, J.) (deceased), 02cv2219 (SDNY): Unappealed Judicial ruling (collateral, equitable, and judicial estoppel) of 15 USC §78p(b) *statutory insider status* (disgorgement of all profits requirement to the Chapter 11 estate) for each of KTS' *unregistered broker-dealer* clients (see Ex. 3, infra) with respect to the Chapter 11 debtor's, Group Management Corp.'s, publicly-traded equity securities.[6]



[6] Judge Sand's Aug. 13, 2003, ruling, binding a lawful court order—(A) subject to enforcement against Hagenau, KTS, its client, et al., via civil and criminal contempt (18 USC §§401(2), 401(3)) absolutely binding on the 03-93031 Chapter 11 Bankruptcy Court (NDGA) (Hagenau, C.J.), which (B) *conferred fiduciary duty status* on all 18 USC §1962(d) racketeering to commit bankruptcy fraud unindicted coconspirators to wit, Hagenau, KTS, its partners, each of KTS' *unregistered broker-dealer clients, et al.*— that is, Hagenau, KTS, its partners, and its clients are subject to (i) *an existing and extant and current equitable lien on their personal and individual assets,* (ii) current and extant constructive trust impressed on their assets, (iii) and U.C.C. Article 1 encumbrance and lien on their assets in the amount of *+$522M plus interest* running from the date of Judge Sand's 15 USC §78p(b) court order, August 13, 2003, (i.e., stolen and concealed property and assets of the 03-93031 Chapter 11 estate).

Page 20 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Case No. 25cv00613 (NDGA)



**Ex. 1—(Dkt. 65, 02cv2219)—(18 USC § 1961(1) Racketeering Overt and Predicate Act)** Aug. 13, 2003, Dkt. 65 02cv2219 (SDNY), Sand, J. (deceased) **binding judicial ruling and court order**—Judge Sand in ex parte communications found each KTS client to be a 15 USC § 78p(b) statutory insider of Group Management Corp, and therefore triggered the Section 16(b)/11 USC §542(a) disgorgement/turnover requirement, which was not appealed by KTS' clients, and is therefore, *ipso facto, as a matter of law and fact res judicata and collateral estoppel against KTS, Kadaba, the SBGA, NeSmith, Fredrick Hagenau, and the 03-93031 (BC NDGA) bankruptcy court pursuant to FRE 201(b) judicial notice.*

Appx 34-2—GM 24 (Dkt. 85, 02cv2219)—found each 02cv2219 plaintiff to be a 15 USC 78p(b) statutory insider of GPMT, and their and their agents required to disgorge back to GPMT +$550 million in trading profits.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALPHA CAPITAL AKTIENGESELLSCHAFT,
AMRO INTERNATIONAL, S.A.,
MARKHAM INTERNATIONAL, LTD., and
STONESTREET LIMITED PARTNERSHIP,

Plaintiff,

-against-

GROUP MANAGEMENT CORP.,
formerly known as IVG CORP.,
formerly known as INTERNET

#65

02 CIV. 2219 (LBS)

ORDER

SAND, District Judge.

In a telephone conference on July 2, 2003, this Court ordered that Defendant Group Management comply with a conversion request by Plaintiff Stonestreet L.P., contingent on the provision by Plaintiff of an affidavit stating, inter alia, that Stonestreet beneficially owned less than 9.9% of Group Management's common stock, as well as an opinion letter stating that the conversion would therefore be in compliance with Rule 144(k). See Tr. July 2, 2003. Plaintiff subsequently provided an unsworn statement to the effect that Stonestreet's ownership was below the appropriate levels; when Defendant still failed to honor the conversion request, the Court ordered on July 23 that i) Plaintiff provide a sworn affidavit, as required by July 2 Order; and ii) that Defendant honor the Stonestreet conversion request within two business days thereafter, on pain of contempt.

On August 5, 2003, the Court received from Plaintiff copies of an affidavit and opinion

COPIES MAILED TO ALL PARTIES...

Page 21 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

The conspiracy to commit securities and bankruptcy fraud by KTS during the In re Group Mangement Corp, 03-93031 (BC NDGA) Chapter 11 proceedings. KTS' clients' judicially admitted in ex parte communications with the 02cv2219 (SDNY) district court (Sand, J.) that KTS did in fact knowingly violated 18 USC 2, 157, 371, 924(c), 1201-02,1341, 1343, 1503, 1951(a), 1956-57, 1958-59, 1961(6)(B) and 1962(d) by concealing and suppressing its clients' ownership of GPMT's stock.

letter relating not to Plaintiff Stonestreet, but rather to Plaintiff Alpha Capital. Plaintiff explained, upon inquiry from Chambers, this Plexastreet in fact beneficially owned more than 9.9% of Group Management's stock.

Given the above facts, the Court observes that the conditions set in the July 2 Order regarding the Stonestreet conversion request have not been met, and that Defendant is therefore not in contempt of that Order, or of the follow-up Order of July 23. Nonetheless, pursuant to other orders of this Court, including the Order and Judgment of November 25, 2002, Defendant is still bound to honor appropriate conversion requests from Alpha Capital, and Plaintiff has submitted both an affidavit and opinion letter regarding the legality of its current Alpha conversion request. Accordingly, failure by Defendant to honor that request within five business days of this Order shall constitute contempt.

SO ORDERED.

Dated: New York, New York
August 26, 2003

U.S.D.J.

Case No. 25cv00613 (NDGA)

**Exhibit 11-2—Dec. 20, 2007, Dkt. 90, Fed. R. Civ. P. 41(a)(2) voluntary dismissal with prejudice of the 02-cv-2219 (SDNY) lawsuit—conferred final judgment in favor of Group Management and Ulysses T. Ware, (the "Final Judgment Prevailing Parties").**



Exhibit 2--Dkt. 90 (Binding Final Judgment)—02cv2219 (SDNY) Prevailing Parties Chapter 11 Debtor Group Management and 11 USC §1109(b) statutory party in interest Ulysses T. Ware's Final Judgment—December 20, 2007, Dkt. 90, Case No. 02cv2219 (SDNY), District Judge Leonard B. Sand, Fed. R. Civ. P. Rule 41(a)(2) voluntary, ex parte _Dismissal with Prejudice_ of the 02cv2219 (SDNY) Lawsuit _After the Statute of Limitation Had Run on All Claims Final Judgment conferred final judgment prevailing party status on Group Management and Ulysses T. Ware._[7]



[7] KTS' _unregistered broker-dealer clients'_ Dec. 20, 2007, _voluntary_ Rule 41(a)(2) ~~dismissal with prejudice~~ of the 02cv2219 (SDNY) lawsuit—final judgment on the merits for the Chapter 11 debtor, Group Management, and 11 USC §1109(b) statutory party in interest Ulysses T. Ware, is currently and will be enforced against Hagenau, KTS, its clients, and each 18 USC §1962(d) unindicted coconspirator _retaining_ the _legal and equitable preclusive effects_—that is, the immediate 11 USC §542(a) turnover of all Chapter 11 estate assets, of the binding court order, see 18 USC §§401(2), and 401(3), and Fed. R. Crim. P. 42.

**Page 23 of 162**
**Tuesday, February 18, 2025**
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).



Page 24 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual
Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Case No. 25cv00613 (NDGA)

**Exhibit 12—Jan. 15, 2007, counterfeit, fabricated, forgery judicial document created by the Supreme Court of Georgia to steal the personal and business property of Appellant Ware as an overt and predicate act in furtherance of the 03-93031 (BC NDGA) conspiracy to commit bankruptcy fraud by Atlanta, GA law firm Appellee KTS and its predatory, unregistered broker-dealer clients.**

Case No. 25cv00613 (NDGA)

**Exhibit 12-A--The 25cv00613 (NDGA) District Court (Brown, J.) in a coordinated fashion, colluded, and in conspiracy with Appellee Chief Justice Nels S.D. Peterson, and the Supreme Court of GA, jointly, in concert, as an overt and predicate act to obstruct justice, launched an insidious criminal attack on the Appellants once Appellant Ware on Jan. 26, 2026, filed (02-K) via the Supreme Court's e-filing system (see Ex. 12-A-1, infra); Brown, J. then hurriedly filed his incoherent and delusional Dkt. 57, Order (see Ex. 12B, infra) also on Jan. 26, 2026, that deliberately denied Appellants access to the District Court regarding adjudication of the merits of their pending appeal.**

*(02-K) 01.26.26 Ulysses T. Ware's SUPPLEMENTAL MEMORANDUM OF LAW #2.0*

## *IN THE SUPREME COURT OF GEORGIA*

### STATE DISCIPLINARY BOARD

### STATE BAR OF GEORGIA

In the Matter of:

**ULYSSES T. WARE,**

Petitioner

### Case No. S08Y1685

**[Title]: (02-K) Supplemental Memorandum of Law #2.0 In Support of re Petitioner Ulysses T. Ware's Verified Omnibus Petition to Vacate and Annul, Nunc Pro Tunc, the October 6, 2008, Order of Disbarment for Fraud on the Court, and Mootness; Comprehensive schedule of Twenty Five (25) Dispositive Adjudicative Facts for Mandatory Judicial Notice Pursuant to O.C.G.A. § 24-2-201(d); and § 24-2-201(e) Timely Demand for a Due Process Hearing, with Memorandum of Law.**

Respectfully verified and submitted this 26th day of January, 2026, under oath, subject to

the penalty of perjury, having personal knowledge of the facts, and pursuant to 28 USC § 1746.

/s/ Ulysses T. Ware
**Ulysses T. Ware, Petitioner**
The Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com

Filed on Monday, January 26, 2026, via Supreme Court E-Filing system.

(02-K) Supp. Memo of Law 2.0 Page 1 of 53

Case No. 25cv00613 (NDGA)

**Exhibit 12-A-1—Supreme Court GA Jan. 26, 2026, filing receipt In re Ware, S08Y1685.**



**noreply@gasupreme.us**
to ▾

  Mon, Jan 26, 7:09 PM (6 days ago)

This E-Mail is to confirm that your filing was successfully submitted. When your filing is processed by the Clerk's Office, you will be notified by e-mail. Your reference number for this submission is 147768.

Case Number: S08Y1685
Case Style: IN THE MATTER OF ULYSSES THOMAS WARE  

If you do not receive an email notification regarding this filing within one (1) business day, please contact the Clerk's Office at (404) 656-3470.

Case No. 25cv00613 (NDGA)

**Exhibit 12-B—Dkt. 57, 25cv00613 Order entered at 1:39 PM on Jan. 27, 2026, but filed on Jan. 26, 2026—on the exact same day Brown, J, dismissed the 25cv00613 appeal for fraudulent and legally impossible reasons, was the same day Appellant Ware filed his Motion to Vacate in the Supreme Court of GA, see Ex. 12-A, supra. A coordinated racketeering conspiracy to obstruct justice.**

CM/ECF-GA Northern District Court                    https://gand-ecf.sso.dcn/cgi-bin/Dispatch.pl?965745985738201

**Orders on Motions**
1:25-cv-00613-MLB Ware et al v.
Alpha Capital, AG et al

0months,MLBLC1,NeedJgm,SUBMDJ

> The Court's indisputable exercise of 28 USC 158(a) appellate and Art. III subject matter jurisdiction in the 25cv00613 (NDGA) proceeding—that is, "Orders on Motions," adjudication on the merits.

**U.S. District Court**

**Northern District of Georgia**

**Notice of Electronic Filing**

The following transaction was entered on 1/27/2026 at 1:39 PM EST and filed on 1/26/2026
Case Name:        Ware et al v. Alpha Capital, AG et al
Case Number:      1:25-cv-00613-MLB
Filer:
Document Number: 57

**Docket Text:**
ORDER. The Court VACATES its prior [6] Order dismissing Appellant Group Management for failure to retain counsel. The Court DISMISSES this bankruptcy appeal as untimely due to the Federal Rule of Bankruptcy Procedure 8002. The Court DENIES WITHOUT PREJUDICE Appellees' 6-page [46] motion for sanctions as insufficiently developed. The Court DENIES Appellants' pending [42], [44] and [49] motions as moot or otherwise meritless. The Court DIRECTS the Clerk to close this case. Signed by Judge Michael L. Brown on this 26th day of January, 2026. (pdt)

1:25-cv-00613-MLB Notice has been electronically mailed to:

Patrick Nish Arndt    parndt@nallmiller.com, clerk-runner@nallmiller.com,
moreillystradtman@nallmiller.com, sbuettner@nallmiller.com

1:25-cv-00613-MLB Notice has been delivered by other means to:

Group Management(Terminated)
123 Linden Blvd
Ste 9-L
Brooklyn, NY 11226

Ulysses T. Ware
123 Linden Blvd
Ste 9-L
Brooklyn, NY 11226

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:n/a
Electronic document Stamp:

1 of 2                                                                        1/27/2026, 2:13 PM

Case No. 25cv00613 (NDGA)

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*

**Exhibit C:    Counterfeit Purported Sheriff's Affidavit of Personal Service dated January 15, 2007 (CPLR Section 306(d)), Sheriff's Case # 08000590, not notarized until January 15, 2008.** [29]

---

Case 1:25-cv-00613-MLB    Document 5-12    Filed 03/07/25    Page 40 of 270

Exhibit A—SBGA's known false, fraudulent, counterfeit, and fabricated alleged January 15, 2007, **Affidavit of Personal Service (perjury)** on Ulysses T. Ware, Esq. at the Bureau of Prison's Brooklyn, NY MDC federal prison—the BOP has confirmed that Mr. Ware ***was not* personally served** on January 15, 2007, at the MDC Brooklyn, NY prison because according to the BOP " ... Mr. Ware ***was not*** incarcerated and ***was not*** in the custody of the Bureau of Prison on January 15, 2007, *anywhere in the United States ... and certainly not in Brooklyn, NY ... that is a fact* ... " (emphasis in original).

Page 37 of 102
Tuesday, February 28, 2025
(18-8) (Part 19-8) re: The Parties' Joint Stipulated Contr. Rule 8009(a)/8029(a)(i) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 23cv00813 (NDGA) (Brown, J.).

---

 [29] Why would C. Palmieri wait for exactly one (1) year, **January 15, 2008**, to **personally**, allegedly, appear before Raphael Lucas seeking to have the alleged Affidavit of Personal Service notarized that is dated **January 15, 2007**? Where was the Affidavit of Personal Service during this period? Who had possession of the document? Where is the ***verifiable certified chain of custody*** for the document--which has never been produced? Where is the proof that this document is the actual document signed by C. Palmieri? Where are the verifiable jail records confirming Palmieri actually appeared at the MDC on January 15, 2007?

(03) re Response to Clerk's Jan. 27, 2026, Letter Page 36 of 71

## Case No. 25cv00613 (NDGA)

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*



Case 1:25-cv-00613-MLB   Document 5-13   Filed 03/07/25   Page 41 of 270

Lucas obviously back-dated and falsified the notary affirmation—

Page 18 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(d)/8009(d) Appellate Factual Jurisdictional and Spoolions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

*(03) re Response to Clerk's Jan. 27, 2026, Letter Page 37 of 71*

Case No. 25cv00613 (NDGA)

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*

**Exhibit D:   Official United States Attorney (SDNY) confirming non-custody status on January 15, 2007: "Ware's first trial began on January 15, 2007." On Jan. 15, 2007, Mr. Ware was not convicted of any alleged offense—the date of his alleged "personal service" by the special master at the MDC in Brooklyn, NY. The special master lacked subject matter jurisdiction on Jan. 15, 2007, to initiate a disbarment proceeding, rendering the proceeding null and void ab initio and as a matter of GA statutory law, OCGA 9-12-60(f) void.**

*(04-Appx B) 12.28.2025—Supplemental Memorandum of Law (01)— In re: Ulysses Thomas Ware*

**Exhibit D-2—07-5222cr (2d Cir): the Government's judicial admissions made in its 07-5222cr (2d Cir.), Ware-I, brief, that (1) Jeremy Jones was in fact a covert cooperating/informant who testified in 05cr1115 pursuant to the USSG 5k1.1 willful perjury contracts; and (2) notified the Court of Appeals that it was dismissing the 07-5670cr (XAP), Gov.-I cross-appeal with prejudice—an Executive Branch Article II acquittal for insufficient evidence.**



**All Rule 11 plea contracts and USSG 5k1.1 cooperation agreements (contracts) for known perjured testimony were required to have been produced and disclosed by the Government's trial prosecutors, AUSA Southwell, Feldman, Goldin, Douvas, and Fish; and their supervisors (Kelley, Garcia, Williams, et al.); and the Judges (Pauley, Dollinger, Ramos, Kearse, Sack, Hall, Cabranes, Livingston, Lohier, et al.).**

Page 47 of 50
Sunday, December 28, 2025

(03) re Response to Clerk's Jan. 27, 2026, Letter Page 38 of 71

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*

**Exhibit E:    In re Ware, Oct. 6, 2008, S08Y1685 (S. Ct. GA) re Fraudulent and bogus, *null and void ab initio Order of Disbarment*.**

FINAL COPY

284 Ga. 444

S08Y1685.  IN THE MATTER OF ULYSSES THOMAS WARE.

**Per curiam.**

This matter is before the Court on the Report of the special master, William A. Myers, appointed pursuant to Bar Rule 4-106 of the Georgia Rules of Professional Conduct after Ware was convicted of two felonies in New York. Because Ware is incarcerated in New York, the special master granted leave for him to make a written submission concerning his case by filing it with the clerk of the State Disciplinary Board by April 28, 2008. Ware did not timely file a submission, although he mailed two letters dated April 20, 2008 and May 1, 2008, which were received by the Office of General Counsel on May 5, 2008. While the special master was not required to consider the letters because they were untimely, he nevertheless allowed them to be included in the record but found that they did not present any basis for withholding consideration of the matter or recommending discipline. Neither party has requested a Review Panel review and, accordingly, each is deemed to have waived any right to file exceptions with

(03) re Response to Clerk's Jan. 27, 2026, Letter Page 39 of 71

## Case No. 25cv00613 (NDGA)

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*

The special master's purported "certified copy of the judgment of conviction" (see Ex. F, infra) regarding the *U.S. v. Ware*, 05-cr-1115 (SDNY) proceedings is dated for Oct. 30, 2007. Therefore, it is physically and factually impossible for Mr. Ware to have been served at the MDC in Brooklyn, NY on "January 15, 2007, at 10:42 AM" with a copy of an alleged "judgment of conviction" dated ten (10) months later on Oct. 30, 2007? Mr. Ware's trial started on January 15, 2007, (see Ex. D, supra), therefore it is a legal and physical impossibility that Mr. Ware was convicted and "personally served" at the MDC on Jan. 15, 2007, the alleged date of personal service. The entire S08Y1685 disbarment proceeding, from beginning to end is a criminal fraud perpetrated by the SBGA, et al.

or make request for oral argument to this Court. Bar Rule 4-217 (c).

Ware was convicted in the United States District Court for the Southern District of New York of conspiracy to commit securities fraud and securities fraud, and was sentenced to 97 months in prison, fined $25,000 and forfeited $228,388 to the United States. The special master admitted the certified copy of the judgment of conviction, which is included in the record. Because Ware was convicted of two serious felonies and conviction of a felony is a disciplinary offense, see Bar Rule 8.4 (a) (2), the maximum punishment for which is disbarment, see Bar Rule 8.4 (c), we agree with the special master's recommendation of disbarment and hereby order that Ware be disbarred from the practice of law in the State of Georgia pursuant to Bar Rule 4-106 (f) (1), see In the Matter of Skandalakis, 279 Ga. 865 (621 SE2d 750) (2005). He is reminded of his duties under Bar Rule 4-219 (c).

Disbarred. All the Justices concur.

Decided October 6, 2008.

2

## Case No. 25cv00613 (NDGA)

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*

.

Disbarment.

William P. Smith III. General Counsel State Bar. Jonathan W. Hewett,

Assistant General Counsel State Bar. for State Bar of Georgia.

3

Case No. 25cv00613 (NDGA)

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*

**Exhibit F—(05-cr-1115) judgment: Special Master's (SBGA agent William Alan Myers, Esq., et al.) criminal fraud on the court—the copy submitted to the Supreme Court in *In re Ware*, S08Y1685 disbarment proceeding of an alleged "judgment of conviction" (the subject matter) in *U.S. v. Ware*, 05-cr-1115 (SDNY) is dated for** Oct. 30, 2007, ten (10) months after  **the special master allegedly—without providing any certified Bureau of Prison records confirming that Mr. Ware was in fact in custody at the MDC on** Jan. 15, 2007, **"personally served" Mr. Ware on** Jan. 15, 2007, **at the MDC in Brooklyn, NY, with a copy of the same fraudulent, bogus, counterfeit, and fabricated alleged judgment of conviction** dated ten month later for **"10/30/20007,"** while the SBGA Appellees in the Case No. 25cv00613 (NDGA) **have stipulated and judicially admitted that Mr. Ware** was not **in custody in the MDC on** Jan. 15, 2007 **(see Ex. D, supra).**

Moreover, according to the United States Attorney (SDNY), see Ex. D, supra, on "Jan. 15, 2007." Mr. Ware's first trial "*started*" and the second trial *started on* "April 15, 2007." Therefore, the special master' lying, intentional perjury, conspiracy to obstruct justice, fraud on the court, that he "personally served" Mr. Ware with a "certified copy" of the "judgment of conviction" entered in 05-cr-1115 (SDNY) on Jan. 15, 2007, at the MDC in Brooklyn, NY, when in fact on Jan. 15, 2007, (i) Mr. Ware *was not* in custody of the U.S. BOP in the MDC, nor (ii) had Mr. Ware on Jan. 15, 2007, been convicted of any charge in 05-cr-1115 (SDNY)—that is, the special master (William Alan Myers, Esq. and the SBGA Appellees named in Case No. 25cv00613 (NDGA)— *as illegal criminal association-in-fact*, all colluded, confederated, acted in concert, lied, committed perjury, conspired to obstruct justice, and willfully engaged and knowingly participated in numerous overt and predicates act of Hobbs Act racketeering extortion and predatory, criminal usury, unlawful debt collection activities in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony; and violated the federal racketeering and loan sharking laws, 18 USC §§ 2, 156-57, 241, 242, 371, 924(c), 1341, 1343, 1344, 1503, 1512, 1951(a), 1956-57, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities.[21]



---

[21] The Office of the Clerk, District Court (SDNY) has confirmed that Mr. Ware's trial "started' on January 15, 2007; and further confirmed that the District Court's Office did not provide the SBGA and its agent with a "certified copy" of the 05-cr-1115 (SDNY) judgment of conviction on or before Jan. 15, 2007—the document is counterfeit.

Case No. 25cv00613 (NDGA)

*(03-A) 01.28.26 In the Matter of Ulysses T. Ware re Response to Clerk's Letter*

Exhibit F—Fabricated and forged by the SBGA Appellees, William Alan Myers, Esq., Jonathan Hewett, et al. as an Hobbs Act overt and predicate act of racketeering extortion under color or official right.

## UNITED STATES DISTRICT COURT

**SOUTHERN** District of **NEW YORK**

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| V. | |
| ULYSSES THOMAS WARE a/k/a "Thomas Ware" | Case Number: **81 05 CR 1115 -01** |
| | USM Number: **56218-019** |
| | Ulysses Thomas Ware (pro se) |
| | Defendant's Attorney |

**THE DEFENDANT:**

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s) which was accepted by the court.

X was found guilty on count(s) **1 & 2** after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 371 | Conspiracy to Commit Securities Fraud and Wire Fraud | 2001 - 2002 | 1 |
| 15 USC 78j(b) | Securities Fraud | 2001 - 2002 | 2 |

The defendant is sentenced as provided in pages 2 through **5** of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

X Count(s) ~~underlying indictment/counts~~ ☐ is X are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

October 26, 2007

| USDC SDNY | |
|---|---|
| DOCUMENT | |
| ELECTRONICALLY FILED | |
| DOC #: | |
| DATE FILED: **10-30-07** | |

William H. Pauley III, United States District Judge

**10/30/07**

| | The SBGA's Bates number |
|---|---|
| By | **000004** |

In open court on Oct. 30, 2007, (see green arrow above) AUSA Steven D. Feldman, pursuant to Fed. R. Crim. P. 48, moved the District Court (Pauley, J.) to dismiss all charges in the 05-cr-1115 indictment, which the court GRANTED on Oct. 30, 2007, acquitting Mr. Ware of all charges, and triggered the absolute finality of the Double Jeopardy Clause. The SBGA forged and fabricated personal service of process and the subject matter to initiate a fake and fraudulent disbarment proceeding.

*(03) re Response to Clerk's Jan. 27, 2026, Letter Page 43 of 71*

Case No. 25cv00613 (NDGA)

**Exhibit 13—Hobbs Act threats of violence to collect predatory, criminal usury debts (GX 1-4) against Appellants Ware and Group Management by member and agents of the Hobbs Act criminal enterprise.**

Case No. 25cv00613 (NDGA)



Exhibit 7—extreme armed and potentially deadly violence perpetrated against the Debtor and its agent in fact Ulysses T. Ware in furtherance to their conspiracy to collect criminal usury debts (GX 1-4) in violation of NYS Penal Law, section 190.40 and federal RICO law 18 USC §§ 1951(a), 1961(6)(B), and 1962(a-d)—a pattern of racketeering activities.

# Supplemental Appendices

Page 31 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

(01) 01.31.25 Appellants' Combined Bankr. Rule 8022 Motion Page 91 of 99

## Case No. 25cv00613 (NDGA)



**Appendix 1**—U.S. Marshals note given to Ulysses T. Ware on Sept. 12, 2024, in Brooklyn, NY at 10:17 AM, during the unlawful, armed, forced entry into Mr. Ware's residence while the Marshals lacked a lawful search warrant, arrest warrant, or lawful legal process; aided, abetted, assisted, enabled, and facilitated by the property manager.



Page **32** of **162**
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

A.      Sept. 12, 2024, 10:17 AM, Brooklyn, NY alleged U.S. Marshals (SDNY) Plummer, Morton, and Belriz outside of Mr. Ware's residence regarding **a fraudulent referral** by former (SDNY) magistrate Judge Michel H. Dolinger and Colleen McMahon regarding a lawful Fed. R. Civ. P. Rule 11(b)(1-4) Prefiling Investigation concerning imminent RICO and 18 USC 1961(6)(B) unlawful, armed debt collection activities, related to *U.S. v. Ware*, 05cr1115 (SDNY),04cr1224, and 02cv2219 (SDNY); and *In re Group Management Corp..*, 03-93031 (BC NDGA), to wit: GX 1, GX 2, GX, 3, and GX 4—the NYS Penal Law, section 190.40, **null and void ab initio criminal usury unlawful debts**—the Marshals with the assistance of the property manager broke into Mr. Ware's residence *while armed and without any warrant*, or lawful process—*a potentially deadly encounter*, to intimidate, bully, threaten, and force Mr. Ware into giving up and abandoning his and Group Management's legal rights as 11 USC § 1109(b) statutory parties in interest.



Page 33 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

(01) 01.31.25 Appellants' Combined Bankr. Rule 8022 Motion Page 93 of 99

Case No. 25cv00613 (NDGA)

**B.**    Sept. 1, 2004, Atlanta, GA armed, forced, unlawful entry—potentially deadly, into Mr. Ware's law office ~~by persons impersonating U.S. Marshals~~—Hobbs Act conspiracy to collect the criminal usury unlawful debts, GX 1, GX 2, GX 3, and GX 4—government trial exhibits in U.S. v. Ware, 04cr1224 (SDNY), and plaintiffs' exhibits in 02cv2219 (SDNY), and in *In re Group Management Corp.,* 03-93031 (BC NDGA) Chapter 11.

| 75. | 9/1/04<br>Age: 44 | Contempt of Court | Atlanta, Georgia | 10/15/04:<br>Dismissed pursuant<br>to order of Judge<br>Leonard B. Sand |  |

76.    According to Sr. U.S. Probation Officer Asonya M. Craft of the Northern District of Georgia, on September 1, 2004, the defendant was arrested in the Northern District of Georgia in response to an order issued by the Honorable Leonard B. Sand, U.S. District Judge, Southern District of New York, in 02 CV 2219 (LBS). On December 22, 2003, Judge Sand ordered the defendants in this civil matter (which included the defendant) to deliver Silver Screen Studios, Inc. common stock to honor all of the conversion requests for Group Management Corp. or Silver Screen Studios, Inc. stock duly submitted by the plaintiffs. On June 21, 2004, Judge Sand issued a warrant for the defendant's arrest for contempt of court, for failure to obey the December 22, 2003, order. This arrest order indicated that the defendant was to be arrested by the U.S. Marshals Service and detained until the defendant purged himself of contempt by delivering the above-referenced



common stock. On July 1, 2004, the defendant was arrested by the U.S. Marshals Service in the Northern District of Georgia. He appeared before the Honorable Thomas W. Thrash, Jr., in that district, refused to purge himself of contempt and offered no acceptable reason to prevent enforcement of the contempt order. On September 2, 2004, the Honorable Thomas W. Thrash, Jr., ordered the defendant to remain in the custody of the U.S. Marshals Service until he purged himself of contempt or was ordered released by either Judge Thrash or Judge Sand. The defendant's request for bond was granted, and he was released on September 3, 2004, after posting $150,000 in cash and a $100,000 bond, cosigned by two other individuals.

77.    On September 29, 2004, the Honorable Leonard B. Sand vacated the June 21, 2004, order in part to the extent that it authorized the arrest of the defendant outside of the state of New York and more than 100 miles from the U.S. Courthouse located at 500 Pearl Street, New York, New York. The order remained in effect insofar as it could be served on the defendant in the state of New York or within 100 miles of the U.S. Courthouse located at 500 Pearl Street, New York, New York.

78.    On October 7, 2004, the defendant moved to vacate and release the bail of $250,000 and on September 3, 2004. On October 15, 2004, the defendant's motion was granted by the Honorable Thomas W. Thrash, Jr., $150,000 was refunded to the defendant, and the corporate surety bond was discharged.





**Page 34 of 162**
**Tuesday, February 18, 2025**
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

C.   Actual innocent dispositive Brady exculpatory and impeachment evidence deliberately, intentionally, and in bad faith suppressed and concealed by AUSA Alexander H. Southwell, Steven D. Feldman, Nicholas S. Goldin, Maria E. Douvas, Sarah E. Paul, Katherine Polk-Failla, David N. Kelley, Michael J. Garcia, Robert W. Sweet, (deceased), Colleen McMahon, Leonard B. Sand, (deceased), William H. Pauley, III (deceased), Robert A. Katzmann (deceased), Jose A. Cabranes, Edgardo Ramos, Laura Talor-Swain, Amalya L. Kearse, Robert D. Sack, Damian Williams, Daniel Gitner, Won Shin, Andrea Griswold, Danielle Sassoon, Hagan Scotten, Jun Xiang, Michael H. Dolinger, and other Unindicted Coconspirators.



3501 - 72

Page 35 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

(01) 01.31.25 Appellants' Combined Bankr. Rule 8022 Motion Page 95 of 99

Case No. 25cv00613 (NDGA)



**Appendix 2**—McMahon's, Sica's, Tailwind's, Ramos, Taylor-Swain, DeArcy-Hall, Livingston, Cabranes, Kearse, Sack's, Gitner's, and <u>Hagenau's coordinated conspiracy to commit bankruptcy fraud and obstruct justice regarding 02cv2219 (SDNY), 03-93031 (BC NDGA), 04cr1224 (SDNY), and 05cr1115 (SDNY)</u>—the Hobbs Act Unlawful Debt Collection Proceedings, to wit: 18 USC §§ 2, 156-57, 371, 924(c), 1201-02, 1341, 1343, 1344, 1346, 1503, 1951, 1956-57, 1958-59, 1961(6)(B), 1962(a-d), and 2071(a), (b), a pattern of racketeering activities.



**Coordinated conspiracy to obstruct justice and conceal Brady actual innocent exculpatory/impeachment evidence.**

———

**In re Group Management Corp. (03-93031)(BC NDGA) (Hagenau, C, J.)**

**and**

**Alpha Capital, AG et al., v. GPMT, et al., (02cv2219)(SDNY) (McMahon, J.)**

**Actual innocent petition filed on 10.20.22.**

10.20.22

SDNY Conviction Integrity Committee filing.

**show cause order entered 4 days later**          **show cause order entered 7 days later**

In re GPMT, 03-93031 (BC NDGA)          Alpha Capital, AG, et al., v. GPMT, et al (SDNY)

Show cause order, Dkt. 296          Show cause order, Dkt. 137

Page 36 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Case No. 25cv00613 (NDGA)

**Appendix 2-1 (con't)**—Money laundering vehicle formed from the Hobbs Act money laundering and criminal usury unlawful debt collection activities profits and proceeds fraudulently obtained by Unindicted Coconspirators Arie Rabinowitz, LH Financial Services, Alpha Capital, AG, et al.



Exhibit 5—*U.S. v. Ware*, 04cr1224 (SDNY), Nov. 2007, Tr. 204-06, sworn testimony of KTS' clients' official agent, unregistered investment advisor and unregistered broker-dealer Arie Rabinowitz confessing to being unregistered broker-dealers.



*UNITED STATES v. WARE, CASE NO. 09-0851 (2D CIR.) (2018)*
*ON APPEAL FROM UNITED STATES v. WARE, 04cr1224 (Sweet, J.)*
*18 USC 401(3) CRIMINAL CONTEMPT PROSECUTION*
*APPELLANT WARE'S OPENING BRIEF*

1.  Moreover, being unregistered brokers-dealers operating in violation of 15 U.S.C.
2.  S78o(a)(1), Tr. 204-05, Rabinowitz testified as follows at Tr. 204:
3.  
4.  **ADMISSION OF BROKER-DEALER STATUS BY**
5.  **ARI RABINOWITZ UNDER CROSS EXAMINATION.**
6.  
7.  **Mr. Ware:** What is the name of your company?
8.  **Rabinowitz:** LH Financial Services.
9.  **Mr. Ware:** What business is that company?
10. **Rabinowitz:** We are in the private placement business.
11. Tr. 205
12. **Mr. Ware:** Approximately how many companies have you assisted Alpha Capital
13. with over, let's say, the last five years?
14. **Rabinowitz:** A good few hundred.
15. **Mr. Ware:** A good few hundred?
16. **Rabinowitz:** Yes.
17. Rabinowitz' testimony of being in the private placement business, and assisting
18. Alpha Capital with "a good few hundred" transactions: pursuant to 15 U.S.C.
19. §77b(a)(12) Rabinowitz and Alpha were "dealers" not eligible for any exemption
20. under Title 15 Section 4, and thus not eligible for 17 C.F.R. §240.144(k)/(Rule 144(k))
21. regarding the purchase of the Notes of IVG/GPMT (GX 1-4).

Page 4 of 12
Appellant Ware's Statement of Facts
U.S. v. Ware, 09-0851cr (2d Cir.)
Opening Appeal Brief

Page 29 of 162
Tuesday, February 18, 2025
(13-6) (Part 15-6) re: The Parties' Joint Stipulated Bankr. Rule 8009(g)/8009(d) Appellate Factual Jurisdictional and Sanctions Record on Appeal, 25cv00613 (NDGA) (Brown, J.).

Case No. 25cv00613 (NDGA)

**[End of document]**

Civil Action File No.: 1:25-cv-00613-MLB

**FILING MEMORANDUM AND MANDATORY CERTIFICATION DIRECTIVE**

**FROM:** Ulysses T. Ware and Group Management (Appellants)

**DATE:** Sunday, February 1, 2026

# Exhibit A

**TO: <u>Via Priority U.S. mail on Feb. 2, 2025.</u>**

Office of the Clerk of Court
United States District Court for the Northern District of Georgia
**Attn: Mr. Kevin P. Weimer, Clerk of Court**
Richard B. Russell Federal Building and United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

**RE: IMMEDIATE FILING, DOCKETING, AND MANDATORY MINISTERIAL
CERTIFICATION AND TRANSMITTAL OF OBJECTIVE EVIDENTIARY RECORD
OF JUDICIAL INCAPACITY AND CRIMINAL MISCONDUCT TO OVERSIGHT
BODIES**

**Civil Action File No.:** 1:25-cv-00613-MLB
**Related Bankruptcy Case:** 03-93031 (NDGA)-MHM/WLH/BEM

---

**Dear Mr. Weimer:**

Pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy
Procedure (specifically Rule 8022), and your sworn duties as an officer of the court under 28
U.S.C. § 951[1], please find attached for **immediate filing and docketing** the following dispositive
pleading:

**Appellants' Verified Motion for Rehearing and Reconsideration Pursuant to Bankruptcy
Rule 8022, Seeking Vacatur of Dkt. 38, Dkts. 57, and 58 for Serious Disqualifying Mental
Disabilities, Egregious Manifest Errors of Law and Fact, Risible, Incoherent, and
Schizophrenic Legal Rulings, Denial of Due Process, and Improper Exercise of Appellate**

---

[1] "I, _____ , having been appointed on _____ , do solemnly swear (or affirm) that I will truly
and faithfully enter and record all orders, decrees, judgments and proceedings of such court, and
will faithfully and impartially discharge all other duties of my office according to the best of my
abilities and understanding. So help me God."

Civil Action File No.: 1:25-cv-00613-MLB

**Authority by District Judge Michael L. Brown; Verified Demand for FRE 201(c)(2) Mandatory Judicial Notice and Demand for a FRE 201(e) Hearing.**

This filing is not a routine procedural motion; it is that and more—specifically, it acts as a **_formal, verified complaint_** documenting a constitutional crisis within this District. It is supported by ninety-nine (99) pages of legal analysis and thirteen (13) evidentiary exhibits subject to FRE 201(c)(2) mandatory judicial notice, establishing a *prima facie* record of judicial incapacity, Hobbs Act racketeering, criminal judicial misconduct, conspiracy to commit insurance fraud, theft of 03-93031 (BC NDGA) Chapter 11 estate assets (+$522 million), and fraud on the court.

## I. DETAILED CONTENTS OF THE ATTACHED MOTION

You are hereby given **_actual notice_** of the specific nature of the documents you are receiving into the public record. The Rule 8022 Motion details objectively verifiable facts demonstrating that the Order of Dismissal (Dkt. 57) and Judgment (Dkt. 58) are products of a disqualifying mental infirmity, fraud on the court, and overt and predicate acts of racketeering activities to commit bankruptcy fraud conspiracy:

1. **Objective Evidence of Cognitive Disconnection:** The Motion exposes that Judge Brown ruled an appeal filed but docketed on **Feb. 3, 2025** (Dkt. 279) was "untimely" regarding an order entered **three days prior** on **January 27, 2025** (Bankr. Dkt. 278). The Judge's inability to distinguish between the *subject matter* of Appellants' Rule 12(h)(3)/9014 contested matter Article III subject matter jurisdictional challenge motion ( regarding 2003 and later orders of the bankruptcy court) and the *procedural trigger* for the appeal (the Jan. 27, 2025, denial, Dkt. 278) evidences a pathological temporal disorientation—a hallucination of a twenty-year delay where the docket proves a three-day interval.

2. **Objective Evidence of Incoherent "Schizophrenic" Rulings:** The Motion documents that Judge Brown simultaneously "affirmed" (see Dkt. 58) the Bankruptcy Court's **_orders—which he characterized as "a letter" and "unremarkable document"_** (a merits determination requiring appellate and Article III subject matter jurisdiction over the 25cv00613 (NDGA appeal) while "dismissing" the appeal for lack of jurisdiction (a determination precluding merits review). **_This internal contradiction and delusion renders the Judgment legally void and logically incoherent and legally impossible_**.

Civil Action File No.: 1:25-cv-00613-MLB

3. **Objective Evidence of Criminal Facilitation:** The Motion establishes that by refusing to address the threshold Article III jurisdictional defects in the 02-cv-2219 (SDNY), 03-93031 (BC NDGA), the 25cv00613 (NDGA) proceedings, the Court is actively facilitating and enabling the continued collection and the active enforcement of predatory, null and void ab initio **criminally usurious debts** (GX 1-4) charging 2000% interest (violating N.Y. Penal Law § 190.40) and contracts (GX 5) held by **unregistered broker-dealers** (violating 15 U.S.C. § 78o(a)(1)).

## II. MANDATORY MINISTERIAL DUTIES: CERTIFICATION AND TRANSMITTAL

As Clerk, you possess no discretion to adjudicate or suppress complaints regarding judicial fitness. Under the **Judicial Conduct and Disability Act**, 28 U.S.C. § 351 *et seq.*, and the inherent supervisory powers of the Circuit Council, you are obligated to ensure these materials reach the appropriate oversight bodies immediately.

**YOU ARE HEREBY REQUESTED TO PERFORM THE FOLLOWING MINISTERIAL ACTS PURSUANT TO 28 USC § 951:**

### 1. TRANSMISSION TO THE ELEVENTH CIRCUIT JUDICIAL COUNCIL

You must **CERTIFY** a full copy of the Rule 8022 Motion and all 13 Exhibits as a true copy from the Court's record and **TRANSMIT** it via priority delivery to:

**Office of the Judicial Council for the Eleventh Circuit Court of Appeals**
**Attn: The Honorable William H. Pryor, Jr., Chief Judge**
Elbert P. Tuttle U.S. Court of Appeals Building
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

*Reason for Transmittal:* This constitutes a formal complaint under 28 U.S.C. § 351 alleging that District Judge Michael L. Brown has engaged in conduct prejudicial to the effective administration of the business of the courts and is unable to discharge all the duties of office by reason of mental disability.

### 2. TRANSMISSION TO THE GEORGIA JUDICIAL QUALIFICATIONS COMMISSION

Civil Action File No.: 1:25-cv-00613-MLB

You must **CERTIFY** a second full copy of the Motion and Exhibits and **TRANSMIT** it via priority delivery to:

**Georgia Judicial Qualifications Commission (JQC)**
244 Washington St., SW, Suite 440
Atlanta, GA 30334

*Reason for Transmittal:* This constitutes a verified complaint regarding Appellee **Supreme Court of Georgia Chief Justice Nels S.D. Peterson**. The attached evidence (specifically Exhibit 12 and Exhibit 13) documents his ratification of a **forged January 15, 2007 "Affidavit of Personal Service"** to unlawfully seize Appellant Ware's law license, and his complicity in a Hobbs Act racketeering enterprise utilizing armed home invasions to collect criminal usury debts.

## III. YOUR DUTIES UNDER THE CODE OF CONDUCT FOR JUDICIAL EMPLOYEES

You are respectfully reminded that your office is not a shield for judicial misconduct. Adherence to the **Code of Conduct for Judicial Employees** is mandatory.

- **Canon 1 (Integrity and Independence):** "An independent and honorable judiciary is indispensable to justice in our society. A judicial employee should personally observe high standards of conduct so that the integrity and independence of the judiciary may be preserved."
  - *Application:* Suppressing evidence of a judge's mental disability or criminal complicity compromises the integrity of the judiciary.
- **Canon 3 (Performance of Duties Impartially and Diligently):** "A judicial employee should be patient, dignified, respectful, and courteous to all persons... and should not be swayed by partisan interests, public clamor, or fear of criticism."
  - *Application:* **You must process this filing diligently, regardless of the high status of the individuals (Judge Brown and Chief Justice Peterson) named as wrongdoers.**

Civil Action File No.: 1:25-cv-00613-MLB

- **Duty to Report Misconduct:** While the Code primarily governs employee conduct, federal law (18 U.S.C. § 4, Misprision of Felony) ***criminalizes the concealment of known felonies***. The attached Motion alleges Class E Felonies (Criminal Usury) and Federal RICO violations. Failure to transmit this OBJECTIVE evidence to the constitutional oversight bodies designated to receive it could be construed as an act of concealment.

## IV.    MANDATORY CERTIFICATION AND RECORD TRANSMITTAL

The Clerk of Court for the United States District Court for the Northern District of Georgia is hereby notified that the Appellants' **Verified Motion for Rehearing and Reconsideration pursuant to Federal Rule of Bankruptcy Procedure 8022**, and the accompanying docket entries and exhibits, constitute a **judicial record containing objective allegations of judicial misconduct and potential disability within the meaning of 28 U.S.C. §§ 351–364.**

Pursuant to 28 U.S.C. § 332(d)(1), 28 U.S.C. § 2071, the Rules for Judicial-Conduct and Judicial-Disability Proceedings, and Canons 1–3 of the Code of Conduct for Judicial Employees, the Clerk's obligations are **strictly ministerial and custodial**, not discretionary.

Accordingly, the Clerk **shall**:

1. **Certify** the Rule 8022 Motion and all referenced docket materials as true and correct copies of the official record;

2. **Transmit** the certified materials forthwith to the **Clerk of the United States Court of Appeals for the Eleventh Circuit, and the Georgia JQC**;

3. **Make a docket notation** reflecting the certification and transmittal;

4. **Refrain from evaluating, screening, delaying, or suppressing** the record based on the substance of the allegations or the identity of the judicial officer involved.

**Civil Action File No.: 1:25-cv-00613-MLB**

The Clerk is **not required and is not requested** to act as the complainant under 28 U.S.C. § 351(a) or the GA JQC. The Clerk's role is limited to **preservation, certification, and transmission of the judicial record**, so that the **Chief Judge of the Eleventh Circuit and the Judicial Council; and the Georgia JQC** may exercise their exclusive statutory authority to investigate the judicial misconduct allegations.

Any refusal, delay, or failure to certify and transmit the record after notice of its contents would exceed the Clerk's lawful authority and would be inconsistent with federal statute, binding judicial-conduct regulations, and the Code of Conduct for Judicial Employees.

**CONCLUSION**

The attached Rule 8022 Motion documents a breakdown of the rule of law within the Northern District of Georgia and the Supreme Court of Georgia. Appellants rely on the Office of the Clerk to fulfill its statutory and ethical function as the neutral guardian of the record. Please confirm receipt and provide tracking numbers for the certifications sent to the Eleventh Circuit and the JQC.

Respectfully submitted,

/s/ Ulysses T. Ware
**Ulysses T. Ware**
*Attorney in Fact for Appellants*
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
Utware007@gmail.com

**Enclosures:**

1. Appellants' Verified Rule 8022 Motion (99 Pages)
2. Exhibits 1–13 (Evidentiary Record of Misconduct and Incapacity)

Civil Action File No.: 1:25-cv-00613-MLB

# [End of document]




PRESS FIRMLY TO SEAL

FSC
MIX
FSC® C116818

how2recycle.info
PAPER
POUCH

PRESS FIRMLY TO SEAL

**CLEARED DATE**

FEB 05 2026

**PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED**

TRACKE

For Domes





# UNITED STAT
# POSTAL SERV

- **Expected delivery date specified fo**
- **Domestic shipments include $100 c**
- **USPS Tracking® service included fo**
- **Limited international insurance.\*\***
- **When used internationally, a custo**

\*Insurance does not cover certain items. For d
Domestic Mail Manual at *http://pe.usps.com.*
\*\* See International Mail Manual at *http://pe.u:*

# FLAT RATE ENVE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSUI



PS00001000014

---



**UNITED STATES
POSTAL SERVICE.**                    *Retail*

## P

**US POSTAGE PAID**

**$11.95**   Origin: 11226
02/02/26
3509710318-16

**PRIORITY MAIL®**

FEB 05 2026

1 Lb 2.10 Oz

**RDC 03**

**EXPECTED DELIVERY DAY:** 02/05/26

**C039**

SHIP
TO:

75 TED TURNER DR SW
ATLANTA GA 30303-3315

**USPS TRACKING® #**

9505 5141 9264 6033 1229 27

E
OD: 12 1/2 x 9 1/2

POUCH

---

U.S. Marshals Service
Atlanta, GA 30303



**UNITED STATES
POSTAL SERVICE.**  |  **PRIORITY®
MAIL**

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

Feb. 2, 2026 (Rule 8022 motion)

FROM:

The Office of Ulysses T. Ware
123 Linden Blvd, Ste 9-L
Brooklyn, NY 11226

**TO:**

Office of the District Clerk
U.S. Courthouse (NDGA)
75 Ted Turner Dr., SW
Atlanta, GA 30303



Label 228, December 2023     **FOR DOMESTIC AND INTERNATIONAL USE**