# U.S. District Court
# Northern District of Georgia (Atlanta)
# CIVIL DOCKET FOR CASE #: 1:25−cv−00613−MLB

Ware et al v. Alpha Capital, AG et al
Assigned to: Judge Michael L. Brown
Case in other court: USBC NDGA, 03−93031−WLH
Cause: 28:0158 Notice of Appeal re Bankruptcy Matter (BA

Date Filed: 02/07/2025
Date Terminated: 01/26/2026
Jury Demand: None
Nature of Suit: 422 Bankruptcy Appeal (801)
Jurisdiction: Federal Question

**Debtor**

**Group Management Corp.**

**Appellant**

**Ulysses T. Ware** represented by **Ulysses T. Ware**
123 Linden Blvd
Ste 9−L
Brooklyn, NY 11226
718−844−1260
PRO SE

**Appellant**

**Group Management** represented by **Group Management**
123 Linden Blvd
Ste 9−L
Brooklyn, NY 11226
718−844−1260
PRO SE

V.

**Appellee**

**Alpha Capital, AG**

**Appellee**

**Stonestreet, L.P.**

**Appellee**

**Markham Holdings, L.P.,**

**Appellee**

**Amro International, S.A.**

**Appellee**

**Kilpatrick, Townsend, & Stockton, LLP**

**Appellee**

**Dennis S. Meir**

**Appellee**

**John W. Mills, III**

**Appellee**

**J. Henry Walker, IV**

**Appellee**

**Wab Kadaba**

**Appellee**

**Kenneth A. Zitter**

**Appellee**

**Arie Rabinowitz**

**Appellee**

**LH Financial Services Corp.**

**Appellee**

**Konrad Ackermann**

**Appellee**

**Joseph Hammer**

**Appellee**

**Trailblazer Merger Corp., I**

**Appellee**

**Wendy L. Hagenau**

**Appellee**

**James H. Morawetz**

**Appellee**

**The Office of the U.S. Trustee, Region 21**

**Appellee**

**Ida Mae Townsend**

**Appellee**

**M. Regina Thomas**

**Appellee**

**Patricia Sinback**

**Appellee**

**Margaret H. Murphy**

**Appellee**

**Joyce Bihary**

**Appellee**

**Coleman Ray Mullins**

**Appellee**

**Securities and Exchange Commission**

**Appellee**

**Financial Industry Regulatory Agency (FINRA)**

**Appellee**

**Barbara Ellis−Munro**

**Appellee**

**Marcia E. Asquith**

**Appellee**

**Robert L. D.**

**Appellee**

**Colby**

**Appellee**

**Robert W. Cook**

**Appellee**

**Emma Jones**

**Appellee**

**Sarah Jeffries**

**Appellee**

**The State Bar of Georgia** represented by

**Patrick Nish Arndt**
Nall & Miller, LLP
235 Peachtree St, NE
North Tower, Suite 1500
Atlanta, GA 30303−1401
404−522−2200
Email: parndt@nallmiller.com
*ATTORNEY TO BE NOTICED*

**Appellee**

**Office of the General Counsel** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**William D. Nesmith, III** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Paula Fredrick** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Leigh Burgess** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**William Alan Myers** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Adrienne Nash** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Jenny Mittlemen** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Jonathan Hewett** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Patrick N. Arndt** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Michael D. Hostetter** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Nall & Miller, LLP** represented by **Patrick Nish Arndt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Appellee**

**Manibur S. Arora**

**Appellee**

**Edward T.M. Garland**

**Appellee**

**Michael F. Bachner**

**Appellee**

**David B. Levitt**

**Appellee**

**Donald F. Samuel**

**Appellee**

**Janice Singer**

**Appellee**

**Alexander H. Southwell**

**Appellee**

**Thomas W. Thrash, Jr.**

**Appellee**

**Michael P. Boggs**

**Appellee**

**Thomas A. Leghorn**

**Appellee**

**Lawrence B. Mandala**

**Appellee**

**Baker & McKenzie, LLP**

**Appellee**

**Robert H. Albaral**

**Appellee**

**John F. King**

**Appellee**

**Office of the Georgia Insurance Commissioner**

**Appellee**

**John Does Insurance Companies, ##1−5**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/07/2025 | 1 | Bankruptcy Notice of Appeal, USBC Case#: 03−93031−WLH. Notice of Appeal filed 2/3/2025 from Order entered 5/21/2003, 10/24/2022, 12/13/2022 by Appellant Ulyssses T. Ware and Group Management. Fee Paid: No. filed by Group Management, Ulysses T. Ware. (Attachments: # 1 NOA doc #279, # 2 Appealed Order Doc #28, # 3 Appealed order doc #256, # 4 Appealed order doc #274, # 5 Appealed order doc #275, # 6 Docket Sheet)(jbu) Please visit our website at http://www.gand.uscourts.gov/commonly−used−forms to obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 02/11/2025) |
| 02/11/2025 | | Submission of 1 Bankruptcy Notice of Appeal for fee determination to District Judge Michael L. Brown. (jbu) (Entered: 02/11/2025) |
| 02/11/2025 | 2 | STANDING ORDER REGARDING CIVIL LITIGATION. Signed by Judge Michael L. Brown on 8/26/2021. (tas) (Entered: 02/12/2025) |
| 02/12/2025 | 3 | ORDER DIRECTING the Appellant to pay the required appeal filing fee to the Bankruptcy Court or, alternatively, submit an application to appeal in forma pauperis, on or before 2/26/2025. The Court DIRECTS the Clerk to mail an in forma pauperis application to Appellant alongside a copy of this Order and to submit this matter to the undersigned after the expiration of the abovementioned deadline. Forms sent to party: Affidavit to Proceed IFP. Signed by Judge Michael L. Brown on 2/12/2025. (tas) (Entered: 02/12/2025) |
| 02/12/2025 | | Clerk's Certificate of Mailing as to Group Management, Ulysses T. Ware re 3 Order, 2 Order and IFP form. (tas) (Entered: 02/12/2025) |
| 02/12/2025 | | Filing Fee Paid: $ 298, receipt number 10006430 (aar) (Entered: 02/12/2025) |
| 02/13/2025 | 4 | |

| | | |
|---|---|---|
| | | ORDER. The Court NOTIFIES Appellant Group Management that a corporation cannot appear pro se and must be represented by counsel.The Court NOTIFIES Appellant Group Management that a corporation cannot appear pro se and must be represented by counsel. The Court ORDERS Appellant Group Management to have counsel file a notice of appearance with the Clerk no later than March 6, 2025. Failure to comply with this order may result in sanctions against Appellant Group Management, including dismissal. The Court DIRECTS the Clerk to submit this matter after March 6, 2025, if an attorney does not file a notice of appearance on behalf of Appellant Group Management. Signed by Judge Michael L. Brown on this 13th day of February, 2025. (pdt) (Entered: 02/14/2025) |
| 02/14/2025 | | Clerk's Certificate of Mailing as to Group Management and Ulysses T. Ware re 4 Order. (pdt) (Entered: 02/14/2025) |
| 03/07/2025 | 5 | BANKRUPTCY RECORD RECEIVED (Attachments: # 1 doc 6, # 2 doc 11, # 3 doc 13, # 4 doc 14, # 5 doc 15, # 6 doc 16, # 7 doc 258, # 8 doc 263, # 9 doc 278, # 10 doc 286, # 11 doc 288, # 12 doc 289, # 13 doc 292 (1−270), # 14 doc 292 (271−470), # 15 doc 293, # 16 doc 294, # 17 Docket sheet)(Lugo, Yahaira) (Entered: 03/07/2025) |
| 03/07/2025 | 7 | DECLARATION of Service of Actual Notice of Adverse Consequences filed by Group Management, Ulysses T. Ware. (Attachments: # 1 Cover Letter)(bgt) (Entered: 03/12/2025) |
| 03/10/2025 | 6 | (VACATED PER 57 ORDER)ORDER. The Court ordered Appellant Group Management to have counsel file a notice of appearance with the Clerk no later than March 6, 2025. The Court warned Appellant that failure to comply may result in sanctions, including dismissal. Appellant has failed to comply with the Court's order. Accordingly, the Court DISMISSES Appellant Group Management without prejudice for failure to comply with a lawful order of the Court. Signed by Judge Michael L. Brown on this 10th day of March, 2025. (pdt) Modified on 1/27/2026 to amend docket text (pdt). (Entered: 03/11/2025) |
| 03/10/2025 | 8 | DECLARATION of Service of Filing and Service of Response to 4 Order filed by Ulysses T. Ware (bgt) (Entered: 03/12/2025) |
| 03/11/2025 | | Clerk's Certificate of Mailing as to Ulysses T. Ware re 6 Order. (pdt) (Entered: 03/11/2025) |
| 03/12/2025 | 16 | Appellants' Response Brief in Support of Appellant Ware's Status as the Only Lawfully Authorized Real Party in Interest by Ulysses T. Ware. (Attachments: # 1 Notice of Appearance, # 2 Enclosures) (pdt) (Entered: 03/24/2025) |
| 03/13/2025 | 9 | BANKRUPTCY RECORD RECEIVED (Attachments: # 1 doc #298) (Lugo, Yahaira) (Entered: 03/13/2025) |
| 03/17/2025 | 10 | Notice of Bankruptcy Appeal Briefing Schedule to all parties. Appellants Brief due by 4/16/2025. (bgt) (Entered: 03/17/2025) |
| 03/17/2025 | | Clerk's Certificate of Mailing as to Ulysses T. Ware re 10 Bankruptcy Appeal Briefing Schedule. (bgt) (Entered: 03/17/2025) |
| 03/18/2025 | 11 | Mail Returned as Undeliverable ("Return to Sender. Unable to Forward.) Mail sent to Group Management re 4 Order. (pdt) (Entered: 03/18/2025) |
| 03/18/2025 | 12 | Appellants' Request for Rule 3.3 and Rule 8.4 Professional Responsibility and Duty of Candor Show Cause Order, Appellate Status Conference and Briefing Schedule by |

| | | |
|---|---|---|
| | | Ulysses T. Ware. (Attachments: # 1 Memorandum of Law, # 2 Cover Letter) (pdt) (Entered: 03/19/2025) |
| 03/19/2025 | 13 | NOTICE of Appearance by Ulysses T. Ware for Appellant Group Management. (pdt) (Entered: 03/20/2025) |
| 03/19/2025 | 14 | MOTION for Appellate Status Conference, Briefing Schedule, and Show Cause Order for Sanctions by Group Management and Ulysses T. Ware. (Attachments: # 1 Appellants' Rule 59(e) Motion to Vacate March 10, 2025 Order, # 2 Appellants' March 12, 2025 filing of the Rule 59(e), # 3 Appellants' Rule 59(e) Application to Vacate, # 4 Memorandum of Law, # 5 Pro Se Appellants' Certificate of Filing, # 6 Supplemental Memorandum in Support, # 7 Declaration of Filing, # 8 Filing Instructions for District Clerk (NDGA) Regarding Submission of Judicial Pleadings) (pdt) (Entered: 03/21/2025) |
| 03/19/2025 | 15 | Appellants' Declaration of Undisputed Facts and response to the Court's re 4 Order filed by Ulysses T. Ware. (Attachments: # 1 Clerk's Filing Letter, # 2 Appellant's Refiling) (pdt) (Entered: 03/21/2025) |
| 03/25/2025 | 17 | NOTICE of Filing Support of Appellants' March 10, 2025, pending Application for a Show Cause Order and Request for an Appellate Status Conference and related jurisdictional and remedial relief by Ulysses T. Ware. (Attachments: # 1 Appellants' renewed Application for an Article Ill Jurisdict ional Appellate Status Conference and Other Reliefs, # 2 Appellants' Memorandum Letter Brief, # 3 Appellants' 28 USC 1654 Supplemental Letter Brief, # 4 Appellants' 28 USC 1654 Supplemental Letter Brief, # 5 Appellants' Supplemental Memorandum (letter− brief) (#5) in Support of March 10, 2025, (17−1) Application for a Show Cause Order and Other Reliefs, # 6 Appellants' Supplemental Memorandum of Law (#6) re: Criminal liability and culpability of KTS, its clients, and their privies, # 7 Appellants' Supplemental Memorandum of law (letter− brief) (#7) in Support of Application for a Show Cause Order, Stay of Briefing Schedule, and Other Reliefs) (pdt) (Entered: 03/27/2025) |
| 03/26/2025 | 18 | Appellants' Supplemental Memorandum (letter−brief) (#5) i n Support of March 10,2025, (17−1) Application for a Show Cause Order and Other Reliefs by Ulysses T. Ware. (pdt) (Entered: 03/27/2025) |
| 03/31/2025 | 19 | MOTION for a Protective Order, Injunction, and Proposed Order by Ulysses T. Ware. (Attachments: # 1 The Parties' Joint Declaration of Lack of Article Ill Subject Matter Jurisdiction (Standing) of KTS' Predatory Loan Sharking Unregistered Broker−Dealer Clients, # 2 District Clerk's filing instructions, # 3 The Parties' Joint Declaration of Lack of Article Ill Subject Matter Jurisdiction (Standing) of KTS' Predatory Loan Sharking Unregistered Broker−Dealer Clients, # 4 The Parties' Jo i nt Rules 3.3 and Rule 8.4 Declaration and Stipulation of Ethics Violations during the 02cv2219 (SONY), 03 −93031 (BC NOGA), and 25cv00613 (NOGA) proceedings, # 5 Clerk's filing instructions, # 6 Memo of Law (#9) −−Rule 41(a)(2) Final Judgment's Annulment of all Aspects of 02cv2219 (SONY) Lawsuit) (pdt) (Entered: 04/02/2025) |
| 04/01/2025 | 20 | NOTICE of Filing Letter re: proper filing and docketing of Appellants' judicial pleadings by Ulysses T. Ware. (jpk) (Entered: 04/03/2025) |
| 04/07/2025 | | Submission of 12 MOTION for Rule 3.3 and Rule 8.4 Professional Responsibility and Duty of Candor Show Cause Order, Appellate Status Conference and Briefing Schedule; 14 MOTION for Appellate Status Conference, Briefing Schedule, and Show Cause Order for Sanctions; and 19 MOTION for a Protective Order, Injunction, and Proposed Order to District Judge Michael L. Brown. (jpk) (Entered: 04/07/2025) |

| | | |
|---|---|---|
| 04/07/2025 | 21 | MEMORANDUM in Support of 12 Appellants' Request for Rule 3.3 and Rule 8.4 Professional Responsibility and Duty of Candor Show Cause Order, Appellate Status Conference and Briefing Schedule and 14 MOTION for Appellate Status Conference, Briefing Schedule, and Show Cause Order filed by Ulysses T. Ware. (pdt) (Entered: 04/10/2025) |
| 04/08/2025 | 22 | Emergency MOTION to Stay Briefing Schedule for Good Cause Shown by Ulysses T. Ware. (pdt) (Entered: 04/10/2025) |
| 04/08/2025 | 23 | Appellants' Memorandum of Law in Support of Request for Judicial Notice and Right to be Heard regarding Admitted Federal Crimes Evidenced within the Joint Stipulated Appellate Record (JSAR) by Ulysses T. Ware. (pdt) (Entered: 04/10/2025) |
| 04/09/2025 | 24 | Appellants' FRE 201(c)(2)(e) Processing Request by Ulysses T. Ware. (pdt) (Entered: 04/11/2025) |
| 04/09/2025 | 25 | Supplement 1.0 to Part 17−20A by Ulysses T. Ware re 24 Appellants' FRE 201(c)(2)(e) Processing Request. (pdt) (Entered: 04/11/2025) |
| 04/10/2025 | 26 | Appellants' Rule 8014 Opening Brief by Ulysses T. Ware. (pdt) (Entered: 04/14/2025) |
| 04/10/2025 | 27 | The Parties' Joint Stipulated Final Money Judgment by Ulysses T. Ware. (pdt) (Entered: 04/14/2025) |
| 04/10/2025 | 28 | Memorandum of Law in Support of Request for Judicial Notice and Right to be Heard by Ulysses T. Ware. (Attachments: # 1 Supplement 1.0 to Part 17−20A) (pdt) (Entered: 04/15/2025) |
| 04/21/2025 | 29 | NOTICE of Filing Appellant's Declaration and Certificate of Delivery by Ulysses T. Ware (bgt) (Entered: 04/24/2025) |
| 04/21/2025 | 30 | NOTICE of Filing : (Part 18−5) (Part 18−5) re Appellants' Request for Sua Sponte Code of Conduct for Federal Judges' Actual Innocent Brady Evidence Judicial Notifications Requirements by Ulysses T. Ware. (bgt) Modified on 4/24/2025 (bgt). (Entered: 04/24/2025) |
| 04/21/2025 | 31 | NOTICE of Filing Appellants' Request for Mandatory FRE 201(c)(2) Judicial Notice by Ulysses T. Ware (bgt) (Entered: 04/24/2025) |
| 04/21/2025 | 32 | NOTICE of Filing Indictment from the Southern District of New York by Ulysses T. Ware (bgt) (Additional attachment(s) added on 4/30/2025: # 1 Rescanned document) (bgt). (Entered: 04/24/2025) |
| 04/21/2025 | 33 | NOTICE of Filing Submission of Document (18−5) (Part 18−5) Regarding Appellants' Request for Sua Sponte Action Under Code of Conduct for Federal Judges Concerning Actual Innocent Brady Evidence Notifications by Ulysses T. Ware (bgt) (Entered: 04/24/2025) |
| 04/21/2025 | 34 | NOTICE of Filing Documents by Ulysses T. Ware (bgt) (Entered: 04/24/2025) |
| 04/21/2025 | 35 | NOTICE of Filing (Part 18−5) (Part 18−5) re Appellants' Request for Sua Sponte Code of Conduct for Federal Judges' Actual Innocent Brady Evidence Judicial Notifications Requirements by Ulysses T. Ware (bgt) (Entered: 04/24/2025) |
| 04/21/2025 | 36 | NOTICE of Filing Submission of Appellants' Request for Mandatory Judicial Notice (FRE 201 (c)(2)) of Specific Adjudicative Facts Evidencing Former AUSA Alexander H. Southwell's Stipulated Predicate Hobbs Act Crimes and Related Filings (Designated |

| | | |
|---|---|---|
| | | 18−6.1 / Part 18− 6.1/17−20C; Appx C−1; Appx C−2) by Ulysses T. Ware (bgt) (Entered: 04/24/2025) |
| 04/21/2025 | 37 | NOTICE of Filing Appendix C−1 by Ulysses T. Ware (bgt) (Entered: 04/24/2025) |
| 04/22/2025 | | Submission of 10 Bankruptcy Appeal Briefing Schedule, 12 MOTION for Order MOTION for Hearing, 14 MOTION, 19 MOTION for Protective Order MOTION for Preliminary Injunction, 22 MOTION to Stay to District Judge Michael L. Brown. (jpk) (Entered: 04/22/2025) |
| 04/28/2025 | 39 | NOTICE of Filing (Part 18−6. 2−cl) by Ulysses T. Ware. (pdt) (Entered: 05/02/2025) |
| 04/28/2025 | 40 | NOTICE of Filing (Part 18−6.2) by Ulysses T. Ware. (pdt) (Entered: 05/02/2025) |
| 04/29/2025 | 38 | ORDER. The Court DENIES Appellant's 12 , 14 , 19 and 22 motions because Appellant has not shown the relief he seeks is warranted. The Court ORDERS Appellant to file a single, consolidated opening appellate brief no later than May 29, 2025. Signed by Judge Michael L. Brown on this 29th day of April, 2025. (pdt) (Entered: 04/29/2025) |
| 04/29/2025 | | Clerk's Certificate of Mailing as to Ulysses T. Ware re 38 Order. (pdt) (Entered: 04/29/2025) |
| 05/23/2025 | 41 | NOTICE of Filing Appellant's Opening Appellate Brief by Ulysses T. Ware. (Attachments: # 1 DISREGARD THIS ATTACHMENT Appellants' Declaration of Duress, Objection and Protest Filing, # 2 Appendix A, # 3 Appendix B) (pdt) Modified on 6/2/2025 (bgt). (Additional attachment(s) added on 6/2/2025: # 4 Rescanned Appellants' Declaration of Duress, Objection and Protest Filing) (bgt). (Entered: 05/29/2025) |
| 05/29/2025 | | Submission of 41 Notice of Filing Appellant's Opening Appellate Brief to District Judge Michael L. Brown. (jpk) (Entered: 05/29/2025) |
| 06/02/2025 | 42 | Appelants' MOTION for Mandatory Judicial Notice and Demand for Opportunity to be Heard by Ulysses T. Ware. (pdt) (Entered: 06/05/2025) |
| 06/02/2025 | 43 | NOTICE of Filing Declaration of Filing and Service by Ulysses T. Ware. (pdt) (Entered: 06/05/2025) |
| 06/02/2025 | 44 | MOTION for Reconsideration and to Vacate Ultra Vires, Void Ab Initio, and Moot 38 Order. by Ulysses T. Ware. (pdt) (Entered: 06/05/2025) |
| 06/13/2025 | 45 | Appellee's BRIEF by Patrick N. Arndt, Leigh Burgess, Paula Fredrick, Jonathan Hewett, Michael D. Hostetter, Jenny Mittlemen, William Alan Myers, Nall & Miller, LLP, Adrienne Nash, William D. Nesmith, III, Office of the General Counsel, The State Bar of Georgia. (Arndt, Patrick) (Entered: 06/13/2025) |
| 06/13/2025 | 46 | MOTION for Sanctions with Brief In Support by Patrick N. Arndt, Leigh Burgess, Paula Fredrick, Jonathan Hewett, Michael D. Hostetter, Jenny Mittlemen, William Alan Myers, Nall & Miller, LLP, Adrienne Nash, William D. Nesmith, III, Office of the General Counsel, The State Bar of Georgia. (Arndt, Patrick) (Entered: 06/13/2025) |
| 06/20/2025 | | Submission of 42 Motion for Mandatory Judicial Notice and Demand for Opportunity to be Heard and 44 Motion for Reconsideration and to Vacate to District Judge Michael L. Brown. (jpk) (Entered: 06/20/2025) |
| 06/30/2025 | 47 | |

| | | |
|---|---|---|
| | | NOTICE of Filing Notice of Intent to File Appellant's Reply Brief by Ulysses T. Ware (jpk) (Entered: 07/08/2025) |
| 06/30/2025 | 48 | NOTICE of Filing Appellant's Judicial Request #4.0 for Court Intervention to Resolve Threshold Issues of Personal Jurisdiction, Notice, and Counsel's Appearance Following Unsuccessful Meet−and−Confer Efforts by Ulysses T. Ware (jpk) (Entered: 07/08/2025) |
| 07/08/2025 | | Submission of 46 MOTION for Sanctions to District Judge Michael L. Brown. (jpk) (Entered: 07/08/2025) |
| 07/11/2025 | 49 | MOTION for Mandatory Judicial Notice and Rule 201(e) Demand to be Heard by Ulysses T. Ware. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3) (pdt) (Entered: 07/15/2025) |
| 07/15/2025 | 50 | RESPONSE in Opposition re 46 MOTION for Sanctions filed by Ulysses T. Ware. (Attachments: # 1 Exhibit #1) (pdt) (Entered: 07/17/2025) |
| 07/15/2025 | 51 | NOTICE of Filing Supplement by Ulysses T. Ware. (pdt) (Entered: 07/18/2025) |
| 07/21/2025 | 52 | Appellants' Supplemental memorandum of Law by Ulysses T. Ware. (Attachments: # 1 Exhibit 1) (pdt) (Entered: 07/22/2025) |
| 07/23/2025 | 53 | ORDER: The Court ORDERS Appellant to submit any documents he intends to file in his case to the Clerk's Office: 2211 United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303. The Court will not consider or file any further documents sent anywhere else, including the chambers of the undersigned. Signed by Judge Michael L. Brown on 7/23/2025. (tcc) (Entered: 07/23/2025) |
| 07/23/2025 | | Clerk's Certificate of Mailing as to Ulysses T. Ware re 53 Order. (tcc) (Entered: 07/23/2025) |
| 07/29/2025 | | Submission of 49 MOTION for Mandatory Judicial Notice and Rule 201(e) Demand to be Heard to District Judge Michael L. Brown. (jpk) (Entered: 07/29/2025) |
| 11/07/2025 | 54 | Clerk's Filing Memorandum by Ulysses T. Ware (Attachments: # 1 Letter)(adg) (Entered: 11/13/2025) |
| 11/10/2025 | 55 | Appellants' Memo of Appellate Judicial Notice by Ulysses T. Ware (Attachments: # 1 Letter)(adg) (Entered: 11/13/2025) |
| 01/09/2026 | 56 | Supplemental Brief in Support of Pending Motions for Mandatory Judicial Notice by Ulysses T. Ware. (pdt) (Entered: 01/12/2026) |
| 01/26/2026 | 57 | ORDER. The Court VACATES its prior 6 Order dismissing Appellant Group Management for failure to retain counsel. The Court DISMISSES this bankruptcy appeal as untimely due to the Federal Rule of Bankruptcy Procedure 8002. The Court DENIES WITHOUT PREJUDICE Appellees' 6−page 46 motion for sanctions as insufficiently developed. The Court DENIES Appellants' pending 42 , 44 and 49 motions as moot or otherwise meritless. The Court DIRECTS the Clerk to close this case. Signed by Judge Michael L. Brown on this 26th day of January, 2026. (pdt) (Entered: 01/27/2026) |
| 01/26/2026 | | Civil Case Terminated. (pdt) (Entered: 01/27/2026) |
| 01/27/2026 | 58 | CLERK'S JUDGMENT: It is Ordered and adjudged that the order of the bankruptcy court is affirmed and the appeal is dismissed. (pdt)−−Please refer to |

| | | |
|---|---|---|
| | | http://www.ca11.uscourts.gov to obtain an appeals jurisdiction checklist−− (Entered: 01/27/2026) |
| 01/27/2026 | | Clerk's Certificate of Mailing as to Ulysses T. Ware re 57 Order and 58 Clerk's Judgment. (pdt) (Entered: 01/27/2026) |
| 02/05/2026 | 59 | MOTION for Rehearing and Reconsideration by Ulysses T. Ware. (pdt) (Entered: 02/11/2026) |
| 02/17/2026 | 60 | Appellant's Certificate and Support in Memorandum of Law by Ulysses T. Ware (Attachments: # 1 Letter to the Court) (pdt) (Entered: 02/20/2026) |
| 02/23/2026 | | Submission of 59 MOTION for Rehearing and Reconsideration to District Judge Michael L. Brown. (jpk) (Entered: 02/23/2026) |
| 09/14/2026 | 61 | ORDER DENYING 59 MOTION for Rehearing and Reconsideration. Signed by Judge Michael L. Brown on this 14th day of September, 2026. (pdt) (Entered: 09/15/2026) |
| 09/15/2026 | | Clerk's Certificate of Mailing as to Group Management and Ulysses T. Ware re 61 Order on Motion for Reconsideration. (pdt) (Entered: 09/15/2026) |
| 09/29/2026 | 62 | NOTICE OF APPEAL as to 57 Order on Motion for Miscellaneous Relief, Order on Motion for Reconsideration, Order on Motion to Vacate, Order on Motion for Sanctions, 61 Order on Motion for Reconsideration, 38 Order on Motion for Order, Order on Motion for Hearing, Order on Motion for Miscellaneous Relief, Order on Motion for Protective Order, Order on Motion for Preliminary Injunction,, Order on Motion to Stay, 4 Order, Set Submission Deadline and 58 Clerk's Judgment by Ulysses T. Ware and Group Management. (Attachments: # 1 Cover Letter)(pjm) (Entered: 10/02/2026) |
| 10/02/2026 | 63 | Deficiency Letter issued to Appellant re: 62 Notice of Appeal, filed by Ulysses T. Ware and Group Management. Reasons for deficiency: Appeal fee not received. Application for IFP not received. (pjm) (Entered: 10/02/2026) |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

TO: Mr. Kevin P. Weimer, Clerk
United States District Court

DATE: February 7, 2025

RE: 03-93031-WLH
Bankruptcy Case No.

Group Management Corp.
Debtor(s)

Ulysses T. Ware and Group Management
Appellant

vs

Alpha Capital, AG, Stonestreet, L.P., Markham Holdings,L.P., Amro International, S.A., Kilpatrick, Townsend, &Stockton, LLP, Dennis S. Meir, John W. Mills III, a J. HenryWalker, IV, Wab Kadaba, Kenneth A. Zitter, ArieRabinowitz, LH Financial Services Corp., KonradAckermann, Joseph Hammer, Trailblazer Merger Corp., I,Wendy L. Hagenau, James H. Morawetz, the Office of theU.S. Trustee, Region 21, Ida Mae Townsend, M. ReginaThomas, Patricia Sinback, Margaret H. Murphy, JoyceBihary, Coleman Ray Mullins, Securities and ExchangeCommission, Financial Industry Regulatory Agency(FINRA), Barbara Ellis-Munro, Marcia E. Asquith, RobertL.D., Colby, Robert W. Cook, Emma Jones, Sarah Jeffries,The State Bar of Georgia, Office of the General Counsel,William D. NeSmith, III, Paula Fredrick, Leigh Burgess,William Alan Myers, Adrienne Nash, Jenny Mittlemen,Jonathan Hewett, Patrick N. Arndt, Michael D. Hostetter,Nall & Miller, LLP, Manibur S. Arora, Edward T.M.Garland, Michael F. Bachner, David B. Levitt, Donald F.Samuel, Janice Singer, Alexander H. Southwell, Thomas W.Thrash, Jr., Michael P. Boggs, Thomas A. Leghorn,Lawrence B. Mandala, Baker & McKenzie, LLP, Robert H.Albaral, John F. King, and Office of the Georgia InsuranceCommissioner., and John Does Insurance Companies, ##1-5.
Appellees

**SUBMISSION SHEET**

Submitted on:

☒ Notice of Appeal filed 02/03/2025- Doc. No. 279
File date of Order being appealed from 5/21/2003, 10/24/22, 12/13/22 - Doc. No. 28,256,274,275

☐ Supplemental Record to USDC Case No.

☐ Other: Click here to enter text.

**Contents of Record:**

☒ Documents: 28, 256, 274, 275, 279, docket sheet

☐ Designated items of ☐ Appellant(s) ☐ Appellee

Filing Fee Paid - ☐ Yes ☒ No

If previous and/or related appeal filed, list:

**22-cv-01531-LDH-LB (District of New York)**

FROM: Vania S. Allen, Clerk of Court
United States Bankruptcy Court

By: /s/_________________________________
Yahaira Lugo, Deputy Clerk

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Filed in U.S. Bankruptcy Court
Northern District of Georgia
Vania S. Allen, Clerk
FEB 0 3 2025
By: ____________
Deputy Clerk

In re:
**GROUP MANAGEMENT CORP.,**
Debtor.

**Case No.: 03-93031 (WLH)**
Chapter 11

Filed In the U.S. Bank. Court (NDGA) Case No. 03-93031 Chapter 11 via U.S. Mail on Jan. 30, 2025.

---

**NOTICE OF APPEAL[1]**

**BANKR. RULE 9014/12(h)(3) ARTICLE III "THRESHOLD MATTER" JURISDICTIONAL APPEAL[2]**

---

**Appellants/Movants**: **Ulysses T. Ware and Group Management**

**Appellees/Respondents**: Alpha Capital, AG, Stonestreet, L.P., Markham Holdings, L.P., Amro International, S.A., Kilpatrick, Townsend, & Stockton, LLP, Dennis S. Meir, John W. Mills, III, J. Henry Walker, IV, Wab Kadaba, Kenneth A. Zitter, Arie Rabinowitz, LH Financial Services Corp., Konrad Ackermann, Joseph Hammer, Trailblazer Merger Corp., I, Wendy L. Hagenau, James H. Morawetz, the Office of the U.S. Trustee, Region 21, Ida Mae Townsend, M. Regina Thomas, Patricia Sinback, Margaret H. Murphy, Joyce Bihary, Coleman Ray Mullins, Securities and Exchange Commission, Financial Industry Regulatory Agency (FINRA), Barbara Ellis-Munro, Marcia E. Asquith, Robert L.D., Colby, Robert W. Cook, Emma Jones, Sarah Jeffries, The State Bar of Georgia, Office of the General Counsel, William D. NeSmith, III, Paula Fredrick, Leigh Burgess, William Alan Myers, Adrienne Nash, Jenny Mittlemen, Jonathan Hewett, Patrick N. Arndt, Michael D. Hostetter, Nall & Miller, LLP, Manibur S. Arora, Edward T.M. Garland, Michael F. Bachner, David B. Levitt, Donald F. Samuel, Janice Singer, Alexander H. Southwell, Thomas W. Thrash, Jr., Michael P. Boggs, Thomas A. Leghorn, Lawrence B. Mandala, Baker & McKenzie, LLP, Robert H. Albaral, John F. King, and Office of the Georgia Insurance Commissioner., and John Does Insurance Companies, ##1-5.

---

[1] See Dkt. 278.

[2] Article III *jurisdictional* and *standing* ***appeals*** pursuant to Fed. R. Civ. P. Rule 12(h)(3) and 9014 ***are only permitted and authorized to be filed in the Bankruptcy Court (NDGA) in regard to In re Group Management Corp., 03-93031 Chapter 11***: (Rule 12(h)(3): *Lack of Subject-Matter Jurisdiction.* If the [bankruptcy] court determines ***at any time*** that **it** lacks subject-matter jurisdiction [over the Criminal Usury Subject Matter, GX 1, GX 2, GX 3, GX 4, and GX 5, the [bankruptcy] ***court must dismiss the action***.

# Table of Contents

**A. Filing Memorandum to Chief Judge Ellis-Munro** .......... 3

**B. Introduction.** .......... 5

**C. Opening statement** .......... 5

I. Orders and Pleadings Appealed As Null and Void Ab Initio—a Nullity. .......... 6

II. Legal Grounds for Appeal .......... 7

(A) Lack of Article III Subject Matter Jurisdiction Over Criminal Usury Debts, GX 1-4. .......... 7

(B) Lack of Article III Standing of KTS Clients—15 USC 78o(a)(1) Unregistered Broker-Dealers. .......... 8

(C) Preclusive Effect of the Final Judgments in 02cv2219 (SDNY) .......... 9

III. Relief Requested .......... 10

IV. Certification and Service .......... 11

**MEMORANDUM IN SUPPORT OF NOTICE OF APPEAL PURSUANT TO BANKRUPTCY RULE 9014 AND RULE 12(h)(3) REGARDING ARTICLE III SUBJECT MATTER JURISDICTION AND STANDING** .......... 13

I. INTRODUCTION .......... 13

II. BACKGROUND .......... 14

III. ARGUMENT .......... 15

A. The Bankruptcy Court Lacks Article III Subject Matter Jurisdiction Over Claims Based on Criminal Usury Debts. .......... 15

B. The Bankruptcy Court Erred in Recognizing Article III Standing for Clients of Kilpatrick Townsend & Stockton LLP (KTS). .......... 17

C. The Final Order (Dkt. 65) and Judgment (Dkt. 90) in 02cv2219 (SDNY) Precludes Relitigation of These Claims. .......... 19

IV. RELIEF REQUESTED .......... 20

V. CONCLUSION .......... 22

**Certificate of Service** .......... 24

**End of document** .......... 25

## A. Filing Memorandum to Chief Judge Ellis-Munro

**To:** The Honorable Barbara Ellis-Munro
Chief Judge
United States Bankruptcy Court
Northern District of Georgia, Atlanta Division
1431 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

**Date: January 30, 2025**

Re: ***In re Group Management Corp***., Case No.: 03-93031 (WLH) – Formal Filing of Notice of Appeal Pursuant to Bankruptcy Rule 9014 and Rule 12(h)(3) Regarding Article III Subject Matter Jurisdiction and Standing; Reference to Court's Order, Docket 278, Dated January 27, 2025.

Your Honor:

Ulysses T. Ware, 11 USC § 1109(b) statutory party in interest, and attorney in fact for Group Management (successor in interest to the Chapter 11 Debtor) represents Appellants-Movants, Group Management Corp. and Ulysses T. Ware, in the above-referenced Chapter 11 case. We are writing to the Court in direct response to the Court's letter dated January 27, 2025, Docket 278, addressed to Mr. Ulysses T. Ware, regarding the proper filing of documents in this matter. In accordance with the Court's directive in Docket 278, **we are now formally filing the enclosed Notice of Appeal** by official U.S. Mail with an email curtesy copy to the Court given the usual delays caused by the uncertainty of U.S. Mail actual delivery.

This ***Notice of Appeal*** is being filed to address *fundamental and dispositive issues* concerning this Court's Article III subject matter jurisdiction and the Article III standing of certain alleged claimants (KTS' clients, unregistered broker-dealers) in this Chapter 11 proceeding. As detailed in the accompanying Notice of Appeal and Memorandum of Law, Movants contend that the Bankruptcy Court has erroneously exercised jurisdiction over claims, Dkt. 11, 13, 14, 15, and 16, and issued null and void ab initio and ultra vires purported order, Dkt. 28, 256, 258, 263, 274, 275, and 278, predicated on **predatory criminal usury null and void ab initio purported debts,** GX 1-4, arising from criminally usurious loan transactions, specifically GX 1-4, **which carry interest rates exceeding 2000% per annum and are void *ab initio* under New York Penal Law § 190.40**, and federal RICO law, 18 USC § 1961(6)(B).

Furthermore, the Appeal raises serious concerns regarding the Article III standing of Kilpatrick Townsend & Stockton LLP ("KTS") clients, **certified by FINRA's Marcia E. Asquith, Esq. on May 17, 2021, as unregistered broker-dealers under 15 U.S.C. § 78o(a)(1)**, to assert claims in this bankruptcy. Appellants-Movants assert these entities lack "**a legally protected interest**" in GX 1-4, *the predatory criminal usury convertible promissory notes' enforcement or collection in violation of federal law, 18 USC § 1961(6)(B), et. seqs. due to their unregistered status and the void nature of their claims under 15 U.S.C. § 78cc(b).*

Finally, the Appeal highlights the preclusive effect of prior final orders, and judgment in the Southern District of New York, Case No. 02cv2219 (SDNY), Dkt 65 and Dkt. 90, respectively, (Sand, J) (deceased) which Movants argue bars the claims of KTS' clients under principles of *res judicata* and collateral estoppel.

Given the constitutional dimension of Article III jurisdiction and standing, as "threshold matters" ***Steel Co***., 523 U.S. at 93-95, must be "**affirmatively established**," not merely presumed Appellants-Movants respectfully submit this timely ***Notice of Appeal*** for the Court's immediate consideration. We have ensured that this filing is being made through proper channels, the U.S. mail, addressed to the Chief Judge's attention per 18 USC §§ 2071(a), (b) custody and safekeeping. and not officially via email, consistent with the Court's instructions in Docket 278.

Please find enclosed for formal filing with the Clerk of the Bankruptcy Court:

1. Notice of Appeal Pursuant to Bankruptcy Rule 9014 and Rule 12(h)(3) Regarding Article III Subject Matter Jurisdiction and Standing
2. Memorandum of Law in Support of Notice of Appeal Pursuant to Bankruptcy Rule 9014 and Rule 12(h)(3) Regarding Article III Subject Matter Jurisdiction and Standing
3. Certificate of service on all Appellees-Respondents.

If the Court would swiftly set the required 11 USC § 105(d)(1) status conference a briefing schedule can be discussed and agreed on.

Thank you for your attention to this critically important Article III "threshold" jurisdiction and standing constitutional matter.

Respectfully submitted,

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**

**PURSUANT TO BANKRUPTCY RULE 9014 AND FED. R. CIV. P. RULE 12(h)(3) REGARDING ARTICLE III SUBJECT MATTER JURISDICTION AND STANDING.**

## B. Introduction.

Appellants/Movants hereby this 30th day of January 2025, incorporate by reference, attach hereto all email submissions (see Dkt. 278) made in ***In re Group Management Corp***., 03-93031 to the U. S. Bankruptcy Court (NDGA) "since May 29, 2024," (see Dkt. Id.) to the present (January 30, 2025), and make the same a part hereof, ***in heac verba, all future email submissions made to the Court in regard to this matter.***[3] See 18 USC §§2071(a), (b)—acts of racketeering activities in furtherance of the ongoing conspiracy, 18 USC §§ 2, 152, 157, 371, 924(c), 1951(a), 1956-57, 1958-59, 1961(6)(B), 1962(d), and 2071(a), (b) racketeering conspiracy to steal, embezzle, unjust enrichment, and the perfidious ***theft of +$522 million in 15 USC § 78p(b) strict-liability insider-trading profits, property of the Chapter 11 estate, in the actual and/or constructive possession of the Appellees-Respondents***.

## C. Opening statement

Appellants, **Group Management** (successor in interest to Group Management Corp.), (the "Debtor") and **Ulysses T. Ware**, an equity security holder and **statutory party in interest** under **11 U.S.C. § 1109(b)**, hereby file this **Bankruptcy Rule 9014/12(h)(3) Notice of Appeal** (the "Appeal") challenging the **Article III subject matter jurisdiction** of the 03-93031 Bankruptcy Court and **Article III standing** of Kilpatrick, Townsend, & Stockton, LLP (KTS"), ***unregistered broker-dealer clients***—the 02cv2219 (SDNY) plaintiffs—

[3] The 03-93031 Bankruptcy Court is required to take FRE 201(b) judicial notice of Judge Sand's 02cv2219 (SDNY) final order, Dkt. 65, and final judgment, Dkt. 90; and FINRA's May 17, 2021, binding regulatory ruling of unregistered broker-dealer status for each of KTS' clients.

(1) respect to the Bankruptcy Court's issuing the following null and void ab initio and ultra vires purported orders, and

(2) accepting pleadings and granted ***null and void ab initio*** judicial reliefs from purported "real parties in interest" (KTS' unregistered broker-dealer clients) who legally and factually, ipso facto, lacked a "legally protected interest" ***in null and void ab initio criminal usury subject matter***, to wit: GX 1, GX 2, GX 3, GX 4, and GX 5, (the "***Criminal Usury Subject Matter***"), to which they as a matter of law and fact **did not** and ***cannot*** "suffer a concrete **injury** in fact" traceable to the lawful conduct of the Appellants by not being able to enforce or collect on the Criminal Usury Subject Matter in violation of NYS Penal Law, section 190.40, the criminal usury law, a class E felony, and federal racketeering law, 18 USC §§ 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d), ***a pattern of racketeering activities***.

## I. Orders and Pleadings Appealed As Null and Void Ab Initio—a Nullity.

1. **Dkt. 13** – U.S. Trustee, Region 21, James Herbert Morawetz, Esq., whose submissions failed to address dispositive jurisdictional deficiencies, and were filed to aid, abet, assist, enable, and facilitate the enforcement and/or collection of null and void ab initio criminal usury unlawful debts, GX 1-4, in violation of federal law, 18 USC §§ 2, 152, 157, 371, 924(c), 1201-02, 1341, 1343, 1344, 1502, 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d); and NYS Penal Law, section 190.40, the criminal usury law, ***a class E felony***.
2. **Dkt. 11, 14, 15, and 16** – Filings by unregistered broker-dealers, clients of Kilpatrick Townsend & Stockton LLP ("KTS") in **02cv2219 (SDNY)**, (see Dkt. 11) who lacked Article III standing to appear in 03-93031 due to (i) their unlawful status as unregistered broker-dealers (ii) attempting to enforce and collect NYS Penal Law, section 190.40 null and void ab initio criminal usury unlawful debts, GX 1-4, in violation of federal law, 18

USC §§ 2, 152, 157, 371, 924(c), 1201-02, 1341, 1343, 1344, 1502, 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d); and NYS Penal Law, section 190.40, the criminal usury law, ***a class E felony***.

3. **Dkt. 28, 256, 258, 263, 274, 275, and 278** – *Void Ab Initio* and *Ultra Vires* Purported Orders issued by the **Bankruptcy Court (NDGA)** that are **null and void ab initio** and ***ultra vires*** due to (i) lack of subject matter jurisdiction over the Criminal Usury Subject Matter, GX 1-4, and GX 5, (ii) for the lack of Article III standing of KTS' ***unregistered broker-dealer clients***, see Dkt. 11, the 02cv2219 (SDNY) plaintiff; and (iii) in violation of federal law, 18 USC §§ 2, 152, 157, 371, 924(c), 1201-02, 1341, 1343, 1344, 1502, 1951(a), 1956-57, 1958-59, 1961(6)(B), and 1962(a-d); and NYS Penal Law, section 190.40, the criminal usury law, ***a class E felony***.

## II. Legal Grounds for Appeal

### (A) Lack of Article III Subject Matter Jurisdiction Over Criminal Usury Debts, GX 1-4.

Appellants /Movants contend:

I. The Bankruptcy Court lacked **Article III subject matter jurisdiction** over claims, Dkt. 13, 14, 15, and 16 based on predatory criminal usury debts, GX 1-4, in violation of **New York Penal Law § 190.40**, a Class E felony. Federal courts have long held that subject matter jurisdiction is an immutable constitutional prerequisite "a threshold matter" ***that every federal court*** "sua sponte or if raised by a party ***must affirmatively establish***." ***Steel Co. v. Citizens for a Better Env't,*** 523 U.S. 83, 94-95 (1998), establishes ***that jurisdiction cannot be presumed or waived***, requiring dismissal at the outset if lacking. Article III jurisdiction over the predatory Criminal Usury Subject Matter was

lacking at the outset of the Chapter 11 on March 18, 2003—accordingly, the Bankruptcy Court lacked jurisdiction to have entertained Dkt. 13, 14, 15, and 16, or accepted any arguments from the U.S. Trustee, Region, Dkt. 6 and 13, or KTS' unregistered broker-dealer clients, Dkt. 11, 14, 15, and 16.

II. Under **18 U.S.C. § 1961(6)(B)**, debts, GX 1-4, that arise from illegal usurious lending constitute unlawful criminal usury debts under RICO, thereby precluding any ***federal jurisdiction***[4] over claims, Dkt. 13, 14, 15, and 16, attempting to enforce such null and void ab initio and moot obligations. The alleged debts at issue in 03-93031, **GX 1-4**, see Dkt. 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, 275, and 278, ***involved criminal usury predatory interest rates*** exceeding **2000% per annum**, making them ***per se void ab initio*** under New York Penal Law, section 190.40. Because ***void ab initio*** **contracts confer no "legally protected or enforceable rights,"** to the holders, KTS' unregistered broker-dealer client, their fraudulent claims, Dkt. 13, 14, 15, and 16 based on these ***fraudulent predatory criminal usury unlawful debt instruments lack any valid foundation for federal standing-- redressability or adjudication***. ***Lujan***, 504 U.S. at 560-62.

(B) Lack of Article III Standing of KTS Clients—15 USC 78o(a)(1) Unregistered Broker-Dealers.

The Movants assert that the unregistered broker-dealer clients of **Kilpatrick Townsend & Stockton LLP (KTS)**, who appeared in **Dkt. 11, 14, 15, and 16**, lack **Article III standing** under ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1992), which mandates (1) "***a legally***

[4] Ipso facto as a matter of law subject matter that violates federal law and public policy then cannot and do not provide the factual and/or legal basis for Article III subject matter jurisdiction or standing to seek redressable relief in a federal court. See ***In re Venture Mortgage Fund, L.P.***, 282 F.3d 185 (2d Cir. 2002) (criminal usury debts are null and void ab initio and do not form the basis for any claim or recovery in bankruptcy in violation of public policy).

***protected interest***" in the subject matter and claims, and (2) "a concrete ***injury*** in fact."[5] These entities were certified by **FINRA's Marcia E. Asquith, Esq. on May 17, 2021,** as **unregistered broker-dealers** under **15 U.S.C. § 78o(a)(1)**, rendering any claims they asserted, Dkt. 11, 15, and 16, ***null and void ab initio*** under **15 U.S.C. § 78cc(b) and public policy**.

Under ***Arbaugh v. Y & H Corp.***, 546 U.S. 500, 506-07, 514 (2006), ***standing must be established in the 03-93031 Bankruptcy Court*** "in the first instance" and cannot be presumed. Here, the absence of the constitutionally required "**legally protected interest"** in the predatory Hobbs Act Criminal Usury Subject Matter, GX 1-4, means KTS clients were precluded and strictly prohibited from appearing in 03-93031, Dkt. 11, and filing any claims, Dkt. 15 and Dkt. 16. or obtaining relief, Dkt. 28, 256, 258, 263, 274, 275, and 278, from the Bankruptcy Court. **Their continued participation represents a fundamental Article III violation.**

(C) Preclusive Effect of the Final Judgments in 02cv2219 (SDNY)

I. The **August 13, 2003, Dkt. 65,** ex parte final order in 02cv2219 (SDNY) (Sand, J.), entered pursuant to 15 USC § 78p(b) found as a matter of fact—***based on the binding judicial admissions made by KTS and its client in ex parte communication with Judge Sand***, that KTS' clients had before, during, and after the Chapter 11 case they had knowingly,

[5] To date KTS nor its unregistered broker-dealer clients have presented any affidavits, sworn declarations, or other credible evidence that proves any alleged "**injury in fact**" to any ***legally protected interest in predatory criminal usury convertible promissory notes***, GX 1-4, that charged +2000% predatory interest rates. The purpose of the Rule 9014/12(h)(3) Article III jurisdictional appeal will be to provide KTS, its clients, and their agents, proxies, surrogates, and alter-ego a due process forum to present their "credible evidence" of the constitutionally required "legally protected interest" to which they suffered "a concrete injury in fact." The Appellants eagerly await their appearance in the Bankruptcy Court where KTS and its clients, see ***Lujan***, Id., ***have both the burden of production and proof to "affirmatively establish standing***," ***a legal and factual impossibility*** **given (i) FINRA's May 17, 2021, unregistered broker-dealer regulatory certification, and (ii) Judge Sand's Dec. 20, 2007, Dkt. 90, 02cv2219 (SDNY), voluntary Rule 41(a)(2) final judgment entered in favor of Group Management and Ulysses T. Ware, Appellants herein**.

deliberately, and in bad faith hidden, covered up, suppressed, and concealed their "more than 9.9% beneficial ownership" (quoting Sand, J.) in the Chapter 11 Debtor's equity securities as the criminal means to steal 15 USC § 78p(b) **+$522 million in strict-liability insider-trading profits**, 11 USC § 541(a)(1) assets of the Chapter 11 estate, and assets required to be turned over to the Chapter 11 estate pursuant to 11 USC § 542(a);

II. The Dec. 20, 2007, Dkt. 90, 02cv2219 (SDNY) (Sand, J.) ex parte voluntary Fed. R. Civ. P. 41(a)(2) ***dismissal with prejudice*** of the 02cv2219 (SDNY) by the plaintiffs, KTS' clients in the 03-93031 Chapter 11, see Dkt. 11, 15, and 16, entered in favor of Group Management and Ulysses T. Ware, the Appellants herein, final judgment prevailing parties, (the "Final Judgment Prevailing Parties" or "Appellants"), under **Fed. R. Civ. P. 41(a)(2),** bars all prior and any subsequent claims by KTS' clients. **Res judicata and collateral estoppel** preclude the enforcement of criminally usurious debts and bar relitigation of these claims in the 03-93031 Chapter 11 bankruptcy.

## III. Relief Requested

1. **Immediate adjudication** by the Bankruptcy Court (NDGA) of the Article III jurisdictional challenge as a "threshold issue" per **Steel Co., 523 U.S. at 94-95**.
2. **Vacatur and annulment, nunc pro tunc,** of all orders (Dkt. 28, 256, 258, 263, 274, 275, and 278) as **null and void ab initio** for lack of jurisdiction.
3. **Dismissal with prejudice** of all claims asserted by KTS' clients for lack of Article III standing, Dkt. 11, 15, and 16, nunc pro tunc.
4. **Dismissal with prejudice of all claims, Dkt. 13, asserted by the Office of the U.S. Trustee, Region 21, nunc pro tunc, for lack of standing.**

5. **Mandatory status conference** under **11 U.S.C. § 105(d)(1)** to address jurisdictional deficiencies and to facilitate the lawful administration of the Debtor's estate.
6. **Sanctions under the Court's inherent power, 18 U.S.C. § 401(3) and 28 U.S.C. § 1927** against KTS, its clients, and all those that actually, directly, indirectly, or constructively aided, abetted, assisted, enabled, and/or facilitated the "resistance" and civil and criminal contempt of binding court orders and final judgment's preclusive effects, and for knowingly pursuing void claims and misrepresenting their legal standing; and for breaching and violation of lawyers' Professional Rules of Conduct Rule 3.3 and 8.4.

Failure to address these jurisdictional defects **constitutes a fundamental violation of due process and separation of powers**. The Supreme Court in ***Ruhrgas AG v. Marathon Oil Co.*, 526** U.S. 574, 583 (1999) ***has reaffirmed that federal courts have a duty to determine subject matter jurisdiction sua sponte at any stage of litigation***.

## IV. Certification and Service

This Notice of Appeal is timely filed pursuant to the Supreme Court binding precedent in ***Arbaugh*,** 546 U.S. at 506-07, 514 (an Article III Rule 9014/12(h)(3) jurisdictional/standing appeal to a bankruptcy court **"can be raised at any time … by any party … even after judgment ….")** and has been duly served upon all interested parties, including:

- **Office of the U.S. Trustee, Region 21 (Ida Mae Townsend, Esq.)**
- **Kilpatrick Townsend & Stockton LLP, counsel for unregistered broker-dealers**
- **The Clerk of the U.S. Bankruptcy Court (NDGA)**

Dated: January 30, 2025

Respectfully submitted,

**Submitted by:**

/s/ **Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**

# MEMORANDUM IN SUPPORT OF NOTICE OF APPEAL PURSUANT TO BANKRUPTCY RULE 9014 AND RULE 12(h)(3) REGARDING ARTICLE III SUBJECT MATTER JURISDICTION AND STANDING

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**In re:**
**GROUP MANAGEMENT CORP.,**
**Debtor.**

**Case No.: 03-93031 (WLH)**
**Chapter 11**

**MEMORANDUM OF LAW IN SUPPORT OF NOTICE OF APPEAL PURSUANT TO BANKRUPTCY RULE 9014 AND RULE 12(h)(3) REGARDING ARTICLE III SUBJECT MATTER JURISDICTION AND STANDING**

**TO THE HONORABLE JUDGES OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF GEORGIA:**

## I. INTRODUCTION

Movants, Group Management Corp. (the "Debtor") and Ulysses T. Ware, an equity security holder and statutory party in interest under 11 U.S.C. § 1109(b), submit this Memorandum of Law in support of their attached Notice of Appeal pursuant to Bankruptcy Rule 9014 and Rule 12(h)(3) (the "Appeal"). The Appeal challenges the fundamental lack of Article III subject matter jurisdiction and Article III standing of this Bankruptcy Court to issue certain orders and accept pleadings in this Chapter 11 case. Specifically, the Bankruptcy Court has erroneously exercised jurisdiction over claims arising from criminally usurious debts and has improperly allowed parties lacking Article III standing to participate in these proceedings. As detailed herein, the Bankruptcy Court's actions are not merely procedural errors, but constitute a profound violation of the Constitution and established Supreme Court precedent governing federal court jurisdiction.

Therefore, the Movants respectfully request that this Court immediately address the jurisdictional deficiencies raised in the Notice of Appeal and grant the relief requested therein.

## II. BACKGROUND

On January 30, 2025, Movants filed a Notice of Appeal challenging specific orders and pleadings entered in this Chapter 11 case. The core of the Appeal rests on the premise that the Bankruptcy Court has exceeded its constitutional authority by: (1) adjudicating matters related to debts arising from criminal usury, which fall outside the scope of federal subject matter jurisdiction; and (2) permitting participation by entities – clients of Kilpatrick Townsend & Stockton LLP ("KTS") – who demonstrably lack Article III standing to assert claims or seek relief in this Court.

The Notice of Appeal specifically identifies the following Orders and Pleadings as being improperly issued or accepted due to the aforementioned jurisdictional defects:

1. **Docket 13**: Submissions by the U.S. Trustee, Region 21, James H. Morawetz, Esq., which failed to address dispositive jurisdictional deficiencies.
2. **Dockets 11, 14, 15, and 16**: Filings by unregistered broker-dealers, clients of KTS (in related case 02cv2219 (SDNY)), who lack Article III standing.
3. **Dockets 28, 256, 258, 263, 274, 275, and 278**: Orders issued by the Bankruptcy Court (NDGA) that are null and void ab initio and ultra vires due to lack of subject matter jurisdiction.

The legal grounds for this Appeal are predicated on well-established principles of Article III of the United States Constitution, Supreme Court jurisprudence, and relevant statutory law, as fully explicated below.

# III. ARGUMENT

## A. The Bankruptcy Court Lacks Article III Subject Matter Jurisdiction Over Claims Based on Criminal Usury Debts.

It is axiomatic that federal courts, including bankruptcy courts, are courts of limited jurisdiction, deriving their power from Article III of the United States Constitution. Subject matter jurisdiction is not merely a procedural requirement, but a fundamental and non-waivable prerequisite for any federal court action. As the Supreme Court unequivocally stated in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), "subject-matter jurisdiction is an Article III requirement and '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Id.* at 94-95, citing *Ex parte McCardle*, 7 Wall. 506, 514 (1869). The Court in *Steel Co.* further held that jurisdiction "cannot be presumed or waived," **and must be established at the outset of litigation**. *Id.* at 94. This Court's continued exercise of jurisdiction over claims rooted in criminally usurious debts constitutes a clear violation of these foundational principles.

The claims at issue in this bankruptcy proceeding—Dkt. 11, 13, 14, 15, and 16, are demonstrably based on debts arising from predatory null and void ab initio criminal usury convertible promissory notes, GX 1-4, specifically violating New York Penal Law § 190.40. New York Penal Law § 190.40 defines Criminal Usury in the Second Degree as charging interest on a loan at a rate exceeding 25% per annum, and classifies it as a Class E felony. N.Y. Penal Law § 190.40 (Consol. 2024). The Notice of Appeal highlights that the criminal usury debts in question, identified as GX 1-4, involve interest rates exceeding **2000% per annum**. Such exorbitant rates are not merely indicative of civil usury, but fall squarely within the ambit of **criminal usury** under New York Penal Law, section 190.40, and federal RICO law, 18 USC 1961(6)(B), thereby rendering the underlying contracts, GX 1-4, and GX 5 null and void ab initio, and unenforceable from their inception. See ***Adar Bays, LLC v. GeneSYS ID, Inc.***, 28 F.4d 379 (2d Cir. 2022).

Furthermore, the intersection of criminal usury and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., further underscores the jurisdictional infirmity. Under 18 U.S.C. § 1961(6)(B), "unlawful debt" is defined, in relevant part, as a debt that is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and which was incurred in connection with ... **the business of lending** money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate. 18 U.S.C. § 1961(6)(B). Debts predicated on criminal usury, especially those exceeding 2000% interest per annum, undoubtedly constitute "unlawful debts" under RICO.

While RICO itself provides a federal cause of action, it does not automatically confer subject matter jurisdiction over the underlying **debts** in a bankruptcy context, especially when those debts are void *ab initio* under state law due to criminal usury. The Bankruptcy Court's jurisdiction is fundamentally rooted in 28 U.S.C. § 1334, which grants district courts (and by referral, bankruptcy courts) jurisdiction over cases "arising under title 11," "arising in a case under title 11," and "related to cases under title 11." 28 U.S.C. § 1334. However, this jurisdictional grant cannot and do not extend to matters where the underlying claims are based on contracts, GX 1-4, and GX 5, that are void *ab initio* due to illegality, such as criminal usury. Void contracts confer no enforceable rights—no "legally protected interest", and provide no valid basis for federal adjudication. As the Supreme Court noted in ***Kaiser Steel Corp. v. Mullins***, 455 U.S. 72, 83 (1982) (contracts that violate federal law are not enforceable), a federal court cannot lawfully enforce a contract provision that is illegal and violative of public policy. While ***Kaiser Steel*** dealt with labor law, the principle applies equally to contracts voided by criminal usury.

The Bankruptcy Court's assertion of jurisdiction over criminally usurious debts, GX 1-4, not only contravenes Article III but also undermines fundamental principles of comity and federalism by potentially enforcing contracts deemed criminal and void under state law. Therefore, the Bankruptcy Court lacked Article III subject matter jurisdiction to adjudicate claims predicated on these criminally usurious debts, and all orders issued in furtherance of such jurisdiction are null and void.

B. The Bankruptcy Court Erred in Recognizing Article III Standing for Clients of Kilpatrick Townsend & Stockton LLP (KTS).

In addition to lacking subject matter jurisdiction, the Bankruptcy Court has further erred by permitting ***unregistered broker-dealer*** clients of Kilpatrick Townsend & Stockton LLP ("KTS") to participate in this bankruptcy proceeding, despite their demonstrable lack of Article III standing. Standing is an essential and immutable component of Article III jurisdiction, requiring that a party invoking federal court jurisdiction demonstrate ***a concrete and particularized injury***, of "a legally protected right or interest" fairly traceable to the challenged conduct, and redressable by a favorable decision. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61 (1992). The Supreme Court has consistently emphasized that standing is not merely a procedural hurdle, but **an indispensable part of the case-or-controversy requirement of Article III**. *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (Article III standing doctrine requires a ***particularized and concrete injury***, not just *a personal grievance* against the Appellants, Group Management, and Mr. Ware).

The Appellants-Movants assert that the clients of KTS, certified by FINRA's Marcia E. Asquith, Esq. on May 17, 2021, ***as unregistered broker-dealers,*** patently fail to meet the *Lujan* standing requirements. These entities, as explicitly stated in the Notice of Appeal and verifiable through FINRA records, are certified as **unregistered broker-dealers** under 15 U.S.C. §

78o(a)(1). This status is not a mere technicality; it carries significant legal consequences under federal securities law fatal to Article III standing and subject matter jurisdiction.

Specifically, Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(b), explicitly renders contracts, GX 1-4, and GX 5, made in, or performed in violation of the Act, or any rule or regulation thereunder, **void ab initio** as regards the rights of the violator(s), KTS' clients, and knowing successors in interest. 15 U.S.C. § 78cc(b). The participation of unregistered broker-dealers in securities transactions is a direct violation of 15 U.S.C. § 78o(a)(1). Therefore, any claims asserted in the 03-93031 Chapter by these unregistered broker-dealers, arising from activities requiring registration, are void *ab initio* under Section 29(b).

Because KTS' clients' fraudulent claims, Dkt. 11, 14, 15, and 16, are ***void from inception*** under federal law, these KTS clients lacked any "legally protected interest" in the Debtor's bankruptcy estate. ***They cannot demonstrate a concrete and particularized injury recognized by law, nor can they establish that their purported injury is redressable through this Bankruptcy Court, as their claims are legally null and void***. As the Supreme Court held in ***Arbaugh v. Y & H Corp.***, 546 U.S. 500, 506-07 (2006), "standing ***must be established*** **'in the first instance' [in the 03-93031 Bankruptcy Court]** and cannot be presumed." (emphasis added). The Bankruptcy Court's failure to rigorously scrutinize the standing of KTS's clients, and its allowance of their continued participation, constitutes a fundamental Article III violation. Allowing parties with void claims to participate in a bankruptcy proceeding undermines the integrity of the judicial process and prejudices the legitimate interests of actual creditors and stakeholders.

C. The Final Order (Dkt. 65) and Judgment (Dkt. 90) in 02cv2219 (SDNY) Precludes Relitigation of These Claims.

Further compounding the jurisdictional and standing defects, the Appellants-Movants assert that the Bankruptcy Court has disregarded the preclusive effect of a final judgment entered in the United States District Court for the Southern District of New York (SDNY) in case number 02cv2219. As detailed in the Notice of Appeal, a final order was entered in 02cv2219 (SDNY) on August 13, 2003, Dkt. 65, by Judge Sand, in favor of Group Management and Ulysses T. Ware—finding that KTS' client were indeed 15 USC 78p(b) statutory insiders (fiduciaries) of the Chapter 11 Debtor, and thus, Judge Sand's ruling triggered the disgorgement provisions of Section 16(b).[6]

On Dec. 20, 2007, Dkt. 90, Judge Sand based on an implicit ex parte request by KTS and its clients, Judge Sand entered ***voluntary final judgment*** in 02cv2219 (SDNY)—***after the statute of limitation had run on all claims in the complaint***, pursuant to Federal Rule of Civil Procedure 41(a)(2)—that is, ipso facto by operation of law ***a final judgment on the merits for Group Management and Ulysses T. Ware***, jointly, (the "Final Judgment Prevailing Parties"). Fed. R. Civ. P. 41(a)(2) governs voluntary dismissals by court order, and a dismissal under this rule operates as an adjudication on the merits if the plaintiff has previously dismissed an action based on or including the same claim, or the statute of limitation had run when the dismissal order, Dkt. 90 in 02cv2219 (SDNY), was entered by Judge Sand on Dec. 20, 2007.

The doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) are well-established principles designed to promote judicial efficiency and finality by preventing

[6] Judge Sand's Aug. 13, 2003, Dkt. 65, order required KTS and its clients, fiduciaries of the Chapter 11 Debtor, Group Management, to immediately disgorge (11 USC 542(a)) turnover all strict-liability insider-trading profits (+$522 million) to the Chapter 11 estate, see ***Roth v. Jennings***, 489 F.3d 499, 506-10 (2d Cir. 2007)(Kearse, J.).

the relitigation of matters already decided by a court of competent jurisdiction. *See Montana v. United States*, 440 U.S. 147, 153-54 (1979). *Res judicata* bars the relitigation of claims that were or could have been raised in a prior action when there is: (1) a final judgment on the merits in a prior suit; (2) identity of the cause of action in both the prior and later suit; (3) identity of parties or privies in both suits; and (4) full and fair opportunity to litigate the claim in the prior suit. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Collateral estoppel, or issue preclusion, prevents relitigation of specific issues already decided in a prior case, even if the subsequent case involves different claims. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

The final judgment in 02cv2219 (SDNY), Dkt. 90, Dec. 20, 2007, entered in favor of Group Management and Ulysses T. Ware, Appellant-Movants herein *operates to bar any subsequent claims by KTS' clients arising from the same underlying transactions and debts, GX 1-4, that were at issue in the SDNY litigation*. ***The Bankruptcy Court's failure to recognize the preclusive effect of this prior judgment, and its allowance of KTS' clients to assert claims in this bankruptcy proceeding, is legally untenable***. The principles of *res judicata* and collateral estoppel mandate that the claims of KTS' clients be ***dismissed with prejudice***, as they represent an impermissible attempt to relitigate claims already adjudicated and resolved in a prior federal court action. ***Federated Dept. Stores***, 452 U.S. at 398, 401-02.

## IV. RELIEF REQUESTED

For the foregoing reasons, Appellants-Movants, Group Management Corp., and Ulysses T. Ware, respectfully request that this Honorable Bankruptcy Court grant the following relief:

1. **Immediate Adjudication of Jurisdictional Challenge**: That this Court immediately adjudicate the Article III jurisdictional challenges raised in the Notice of Appeal as a

threshold issue, as mandated by **Steel Co. v. Citizens for a Better Env't,** 523 U.S. at 94-95, and ***Ruhrgas AG v. Marathon Oil Co***., 526 U.S. 574, 583 (1999) which reaffirms the federal court's duty to determine subject matter jurisdiction ***sua sponte*** at any stage of litigation.

2. **Vacatur and Annulment of Orders**: That this Court vacate and annul *ab initio* all orders, nunc pro tunc, identified in the Notice of Appeal (Dkts. 28, 256, 258, 263, 274, 275, and 278) as null and void for lack of subject matter jurisdiction.
3. **Dismissal with Prejudice of Claims**: That this Court order the dismissal with prejudice, nunc pro tunc, of all claims asserted by clients of Kilpatrick Townsend & Stockton LLP (KTS) due to their lack of Article III standing and the preclusive effect of the final judgment in 02cv2219 (SDNY).
4. **Mandatory Status Conference**: That this Court schedule a mandatory status conference under 11 U.S.C. § 105(d)(1) to address the jurisdictional deficiencies identified herein and to facilitate the lawful and proper administration of the Debtor's estate, ensuring that proceedings are conducted within the bounds of Article III and established legal principles. 11 U.S.C. § 105(d)(1) empowers the court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.
5. **Sanctions**: That this Court impose sanctions under 18 U.S.C. § 401(3) and 28 U.S.C. § 1927 against Kilpatrick Townsend & Stockton LLP, its clients, and their agents for knowingly pursuing void claims, misrepresenting their legal standing, and engaging in conduct that has unreasonably and vexatiously multiplied the proceedings in this case. 18 U.S.C. § 401(3) allows a court to punish by fine or imprisonment, at its discretion, disobedience or resistance to its lawful writ, process, rule, decree, or command. 28 U.S.C. § 1927 provides that any attorney...who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

## V. CONCLUSION

The Bankruptcy Court's exercise of jurisdiction in 03-93031 over claims, Dkt. 11, 13, 14, 15, and 16, based on predatory null and void ab initio criminally usurious debts, GX 1-4, and its recognition of standing for parties ***lacking a legally protected interest***, constitute fundamental violations of Article III of the United States Constitution and established Supreme Court precedent. The preclusive effect of the final judgment in 02cv2219 (SDNY) (Dkt. 65 and Dkt. 90) further underscores the impropriety of allowing the claims of KTS' clients to proceed in this bankruptcy case. For these compelling reasons, Appellants-Movants respectfully request that this Court grant the relief requested in the **Notice of Appeal** and in this Memorandum of Law, thereby rectifying these critical jurisdictional and standing errors and ensuring the integrity and lawfulness of these bankruptcy proceedings.

**RESPECTFULLY SUBMITTED,**

**For Appellants-Movants: GROUP MANAGEMENT and Ulysses T. Ware**

/s/ Ulysses T. Ware

**Submitted by:**

**/s/ Ulysses T. Ware**
**The Office of Ulysses T. Ware**
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226
(718) 844-1260
**Utware007@gmail.com**

*For Appellants-Movants Ulysses T. Ware and Group Management*

cc: U.S. Court of Appeals for the Eleventh Circuit, Office of the Judicial Council
Administrative Office of the U.S. Courts, Executive Director
Office of the U.S. Trustee, Region 21, (Ida Mae Townsend, Esq.)
Financial Industry Regulatory Agency (FINRA) on behalf of the Securities and Exchange Commission (Marcia E. Asquith, Esq.)
State Bar of Georgia, Office of the General Counsel (William D. NeSmith, III) on behalf of the Supreme Court of Georgia, Office of the Chief Justice, the Hon. Michael P. Boggs
Edward T.M. Garland on behalf of Garland, Samuel, & Loeb, P.C. and affiliates
Nall & Miller, LLP
Kilpatrick, Townsend, & Stockton, LLP on behalf of its clients, the 02cv2219 (SDNY) plaintiffs
Unregistered broker-dealers Arie Rabinowitz on behalf of LH Financial Services Corp., Trailblazer Merger Corp., I
Unregistered broker-dealers Frank V. Sica on behalf of Tailwind Management L.P., Colleen McMahon, and Michael S. Bertisch (see Ex. 10)

# Certificate of Service

I Ulysses T. Ware and Group Management, Appellants/Movants certify that we have this 30th day of January 2025 served the U.S. Bankruptcy Court (NDGA) via email to the Hon. Barbara Ellis-Munro,[7] and served each of the below persons or entities with a copy of this pleading (**Appellants' Notice of Bankr. Rule 9014/12(h)(3) "Threshold Matter" Article III Jurisdictional Appeal**) via their public email accounts and submitted the same to the U.S. Bankruptcy Court (NDGA) to the Chief Bankruptcy Judge, Ellis-Munto for immediate filing and docketing pursuant to 18 USC §§ 2071(a), (b), Bankr. Rule 5005(a)(2)[8] and 5005(b)(1) with the U.S. Trustee.[9]

Office of the U.S. Trustee, Region 21 (Ida Mae Townsend)

Kilpatrick, Townsend, & Stockton, LLP (via CEO Wab Kadaba, Esq., J. Henry Walker, IV, Dennis S. Meir, and John W. Mills, III)

Arie Rabinowitz, Kenneth A. Zitter, Alpha Capital, AG, Stonestreet, L.P. Markham Holdings, Ltd., AMRO International, S.A., Trailblazer Merger Corp, I, LH Financial Services Corp., convicted felon Edward M. Grushko, Joseph Hammer, and Barbara R. Mittman via Kilpatrick, Townsend, Stockton, LLP (Wab Kadaba, Esq. and J. Henry Walker, IV).

Baker & McKenzie, LLP (via Lawrance B. Mandala, Esq., Robert Alberal, Esq. and Thomas A. Leghorn, Esq.)[10]

---

[7] An original version of this Bankr. Rule 9014/12(h)(3) Article III Jurisdictional and Standing ***Notice of Appeal*** was placed in the U.S. mail on Jan. 30, 2025, with correct first class postage prepaid addressed to Chief Judge Ellis-Munro for filing and docketing per her letter of Jan. 27, 2025, Dkt. 278, instructions.

[8] ***With a Judge of the Court.*** A judge may personally accept for filing a paper listed in (1). The judge must note on it the date of filing and promptly send it to the clerk.

[9] **(b) Sending Copies to the United States Trustee.**
(1) ***Papers Sent Electronically.*** All papers required to be sent to the United States trustee may be sent by using the court's electronic-filing system in accordance with Rule 9036, unless a court order or local rule provides otherwise.

[10] **Baker & McKenzie, LLP has primary liability in the sum certain amount of $2.225 billion.**

William D. NeSmith, III, State Bar of Georgia; Office of the Chief Justice, Supreme Court of Georgia, the Hon. Michael P. Boggs (via Paula Fredrick and William D. NeSmith, III--statutory agents in fact); and

John F. King, Georgia Insurance Commissioner on behalf of (undisclosed identities) John Doe Insurance Companies ##1-5 (via William D. NeSmith, III, Wab Kadaba, J. Henry Walker, III, Michael D. Hostetter, Edward T.M. Garland, the State Bar of Georgia, Office of the General Counsel, and Wendy L. Hagenau, statutory agents in fact);

FINRA (via Robert W. Cook, Robert L.D. Colby, Sarah Jeffries, and Marcia E. Asquith) on behalf of the Securities and Exchange Commission (11 USC 1109(a) statutory party in interest); and

Acting Director of the FBI (via Ida Mae Townsend, Esq.)

**/s/ Ulysses T. Ware**

**January 30, 2025**

I write to reiterate the findings in the orders entered by now retired Judge Hagenau. Emails do not constitute filing with the Court [Doc. 256, p. 53]. Thus, none of the emails have been or will be docketed. Further, the Court has prohibited you from filing, sending, or otherwise delivering documents for filing in this case, except for notices of appeal and papers filed in connection therewith. [Doc. 275, p. 15]. Any notice of appeal or related papers must be properly filed, not emailed, to be docketed.

Each of the emails received to date has been and will be preserved.

This letter will be docketed. The case remains closed.

Sincerely,

Barbara Ellis-Monro
Chief United States Bankruptcy Judge

C: Clerk, USBC, NDGA

# End of document

Office of Ulysses T. Ware
123 Linden Blvd., Ste 9-L
Brooklyn, NY 11226




**To:** The Honorable Barbara Ellis-Munro
Chief Judge, United States Bankruptcy Court
Northern District of Georgia, Atlanta Division
1431 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia 30303

CLEARED DA
FEB 0 3 2025
U.S. Marshals Service
Atlanta, GA 30303

Re: In re Group Management Corp.

Filed on Jan 30, 2025 (03-93031) Notice of Appeal

ENTERED ON
MAY 21 2003
DOCKET

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **CASE NO. 03-93031-mhm** |
| | ) | |
| **GROUP MANAGEMENT CORP.,** | ) | **Chapter 11** |
| **a/k/a IVG CORP.,** | ) | |
| | ) | **JUDGE MARGARET H. MURPHY** |
| **Debtor.** | ) | |
| ------------------------------------------ | ) | |

**ORDER OF DISMISSAL**

This matter came before the Court on April 30, 2003 and May 12, 2003 on the Emergency Motion to Dismiss or, in the Alternative, for Relief From the Automatic Stay, and Request for Emergency Hearing filed by Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership, as well as upon the United States Trustee's Motion for Dismissal with Prejudice or for Conversion to Chapter 7, proper notice having been served, and after consideration of testimony and the arguments of counsel, it is hereby ORDERED that the foregoing Motions are granted and this case is dismissed with prejudice. It is further ORDERED that the Debtor shall be ineligible to file another petition for relief under Title 11 of the United States Code for a

ATLLIB01 1523159.1

period of 180 days from the date of entry of this order. The Debtor is hereby directed to pay the quarterly fees to the United States Trustee as required by 28 U.S.C. § 1930.[1]

It is so ORDERED, this 20th day of May, 2003.

MARGARET H. MURPHY
UNITED STATES BANKRUPTCY JUDGE

This Order was prepared
and presented by:

Dennis S. Meir, by Michael D. Langford with express permission

Dennis S. Meir
Georgia State Bar No. 501100
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500

Counsel for Alpha Capital Aktiengesellschaft,
Amro International, S.A., Markham Holdings, Ltd.,
and Stonestreet Limited Partnership

Reviewed and Approved:

Sims W. Gordon, Jr., by Michael D. Langford with his express permission

Sims W. Gordon, Jr.
Georgia Bar No. 302483
GORDON & BOYKIN
Suite B
2130 Kingston Court, S.E.
Marietta, Georgia 30067

Counsel for the Debtor

James M. Morawetz, by Michael D. Langford with his express permission

James H. Morawetz
Senior Attorney
Georgia Bar No. 521900
Office of the U.S. Trustee
75 Spring Street, S.W.
Atlanta, Georgia 30303

On Behalf of the U.S. Trustee

[1] In view of the Court's ruling on the Motions to Dismiss, the Debtor's Emergency Motion to Reject Executory Contract is deemed moot.



ATLLIB01 1523159.1

**DISTRIBUTION LIST**

The Clerk of the Court is directed to serve a copy of this Order on the following parties:

Dennis S. Meir
Kilpatrick Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309

Sims W. Gordon, Jr.
Gordon & Boykin
Suite B
2130 Kingston Court, S.E.
Marietta, Georgia 30067

James H. Morawetz
Senior Attorney
Office of the U.S. Trustee
75 Spring Street, S.W.
Atlanta, Georgia 30303

**IT IS ORDERED as set forth below:**

**Date: October 24, 2022**

**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| GROUP MANAGEMENT CORP., | Case No. 03-93031-WLH |
| DEBTOR. | |

**ORDER**

This case was closed in May 2003, but Ulysses Thomas Ware aka Thomas Ware has sent numerous documents to the Court since then. Some documents are sent by Mr. Ware individually as a "party in interest" and some as "legal representative" of debtor Group Management Corp. The documents are not always clear as to the relief sought, but the Court will undertake to decipher them and provide a ruling on them.

**I. <u>Facts</u>**

Group Management Corp ("GMC" or "Debtor") filed a chapter 11 petition under the Bankruptcy Code on March 18, 2003. The petition was filed by "Thomas Ware" as attorney for GMC and signed by Lamar Sinkfield as CEO. The case was assigned to Judge Margaret Murphy. The petition reflected assets of $100,000, liabilities of $1.5 million, and outstanding common stock of 54,500,000 shares held by 720 persons. On March 26, 2003, the Court entered an order requiring GMC to obtain new counsel because Mr. Ware had been suspended from practicing in the Northern District of Georgia as of June 29, 1999, for failing to comply with sanctions orders entered in 1995 and 1996 by the Bankruptcy Court. GMC then retained Sims Gordon to represent it.

Prior to Mr. Gordon's representation, Mr. Ware filed a Motion to Reject Executory Contract seeking to reject a "Financing Transaction" allegedly entered into in February 2001 for $1.1 million with Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd and Stonestreet Limited Partnership (collectively "the Subscribers"). Attached to the Motion was a "Subscription Agreement" signed by the Subscribers, which appears to be the Financing Transaction GMC wished to reject. Under the Subscription Agreement, the Subscribers held convertible notes, which could be converted into shares of the Debtor upon certain conditions. Upon his retention, Mr. Gordon filed a similar motion to reject. A hearing on the motion was scheduled for April 15, 2003.

On April 10, 2003, the U.S. Trustee filed a Motion to Dismiss the bankruptcy case with prejudice or, alternatively, to convert the case to chapter 7. The U.S. Trustee alleged that GMC was not a Georgia corporation or authorized to transact business in Georgia, the schedules and statement of financial affairs had not been timely filed, and the case was filed in bad faith to avoid or forestall Mr. Ware's arrest under a Contempt Order issued by the District Court for the Southern

District of New York in case no. 02-cv-2219 (S.D.N.Y.) ("SDNY Case"). The U.S. Trustee attached to the motion a copy of the Contempt Order issued in the SDNY Case which recited that in November 2002, the Court had ordered the Debtor and Mr. Ware to honor the Subscribers' conversion requests and that the conversion requests had not been honored. The court in the SDNY Case ordered GMC and Mr. Ware to honor the conversion requests within three days or to pay the Subscribers $1,000/day until the requests were honored. The court also stated it would issue a warrant for Mr. Ware's arrest to be committed to the U.S. Marshals' custody until the contempt was purged. The U.S. Trustee alleged the bankruptcy filing was made for the "improper purpose of obstructing and delaying creditors in the enforcement of their rights and remedies . . . and without any bona fide reorganizational purpose[.]"

On April 11, 2003, the Subscribers responded to the Motion to Reject Executory Contract, through their counsel, Dennis Meir at Kilpatrick Stockton, contending the Subscription Agreement was not executory because the court in the SDNY Case had issued a judgment on it. The Subscribers filed their own Motion to Dismiss or, alternatively, a Motion for Relief from Stay, and brief. The Subscribers also alleged the bankruptcy filing by GMC was in bad faith and for the purpose of evading the orders in the SDNY Case and sought the dismissal of the case or relief from the stay to enforce the order in the SDNY Case. Attached to the Motion was a form 8-K, purportedly signed by Mr. Ware as Chief Executive, indicating that he had resigned from the board of GMC effective March 17, 2003, and that Mr. Sinkfield was appointed to the board and was acting CEO. The Subscribers asked that their Motion to Dismiss be heard at the same time as the Debtor's Motion to Reject.

The Court moved forward with the hearing on the Motion to Reject on April 15, 2003. Mr. Ware and GMC's counsel were present, and Mr. Ware testified extensively as to the Subscription

Agreement and the bases for its rejection. Counsel for the Subscribers and the U.S. Trustee also participated. After the conclusion of the direct examination of Mr. Ware, the Court continued the remainder of the hearing to April 30, 2003 and set the two Motions to Dismiss for the same time.

The GMC Schedules and Statement of Financial Affairs were filed on April 25, 2003. They showed that GMC owned stock in two other companies valued at over $1 million and other intangible assets of over $1 million. The scheduled unsecured creditors included the Subscribers and others totaling over $6 million. Schedule G listed the Subscription Agreement as an executory contract, and Schedule H listed only two holders of common stock (neither being Mr. Ware). Mr. Ware signed the Schedules as “In House counsel”.

The continued hearing on the Motion to Reject and the hearing on the Motions to Dismiss were held on April 30, 2003. When the matter was called, GMC’s atty, Mr. Gordon, announced a settlement with the Subscribers which would result in the dismissal of the case. The Court was told that negotiations occurred directly between GMC and the Subscribers (and not between the attorneys). The announced settlement required the Debtor to comply with the orders in the SDNY Case. The matter was reset to May 12, 2003, to give the parties an opportunity to document the settlement and dismiss the case. No further hearing was conducted. On May 20, 2003, the Court signed an order granting both the U.S. Trustee’s and the Subscribers’ Motions to Dismiss and dismissing the case, which was docketed on May 21, 2003. The Order was prepared by Mr. Meir, counsel to the Subscribers, but reviewed and approved by Mr. Gordon for GMC and Mr. Morawetz for the U.S. Trustee. The Order prohibited GMC from filing another bankruptcy petition for a period of 180 days. No one appealed or challenged the dismissal order. The case was closed on June 3, 2003.

GMC filed a second bankruptcy case in this district on December 3, 2003 (after the 180-day period expired), but this time under chapter 7 of the Bankruptcy Code (Case No. 03-83009). Mr. Ware was listed as counsel and Lamar Sinkfield signed again as CEO. GMC filed its Schedules and Statement of Financial Affairs identifying only a domain name as an asset, and identifying the Subscribers as the primary creditors. GMC attended its 341 meeting of creditors. GMC did not receive a discharge. (A corporate debtor is not entitled to a discharge under chapter 7. 11 U.S.C. § 727(a)(1); In re HRN Grp., LLC, 2019 WL 6045478, at *8 (Bankr. N.D. Ga. Nov. 13, 2019)). Mr. Ware, as counsel for GMC, filed a Motion for Sanctions against the Subscribers and Ari Rabinowitz, Michael Finkelstein, and Thomas Badien on September 13, 2004, alleging they violated the stay by continuing proceedings in the SDNY Case. The matter was not scheduled for hearing, and the Court entered an order on March 14, 2005 directing the Debtor to re-serve certain parties and file a certificate of service. No action was taken by the Debtor. In the meantime, the Chapter 7 trustee filed a notice of no distribution on October 12, 2004, and the case was closed on May 16, 2005.

Meanwhile, Mr. Ware's legal troubles continued. On May 28, 2003, and again on June 22, 2004, the court in the SDNY Case entered an order for Mr. Ware's arrest, and the court referred the matter to the U.S. Attorney for prosecution of criminal contempt. On November 17, 2004, Mr. Ware was indicted for criminal contempt and violating 18 U.S.C. § 401(3) in Case No. 04-cr-1224 (SDNY). After trial in November 2007, he was convicted of three counts of criminal contempt and violating 18 U.S.C. § 401(3) and sentenced to 97 months in prison on February 2, 2009. His appeals and numerous requests for reconsideration were unsuccessful. On September 20, 2005, the United States initiated a criminal complaint against Mr. Ware for, inter alia, conspiracy to defraud the United States and use of manipulative and deceptive devices in connection with the sale of

securities in violation of 18 U.S.C. §§ 2, 371 and 15 U.S.C. §77q(a) and 77x (Case No. 05-cr-1115 (SDNY)). He was arrested on September 26, 2005 and indicted on the charges. After a jury trial, he was convicted on two counts on April 30, 2007, and ultimately sentenced to 60 months in prison for Count 1 and 97 months in prison for Count 2. His appeals and numerous motions to set aside the conviction were all denied.

This Court next heard from Mr. Ware in late 2011 when he sent letters to Judge Murphy's chambers. Her chambers responded to Mr. Ware directing him to file appropriate pleadings with the Bankruptcy Clerk, rather than attempt to communicate directly with the judge. In July 2012, Mr. Ware submitted to the Bankruptcy Court an "Emergency Motion for Fraud on the Court Proceedings" ("2012 Motion to Reconsider") seeking relief from the 2003 dismissal, pursuant to Fed. R. Bankr. P. 9024, among numerous other requests. He did not seek to reopen the case. The Bankruptcy Court did not docket the motion, but the Bankruptcy Clerk sent a letter on July 25, 2012 to Mr. Ware informing him that the submission did not concern an active bankruptcy case.

Mr. Ware continued to send documents to the Bankruptcy Court, to Judge Murphy, and to other judges directly. He also asked the Bankruptcy Court for a certified copy of the docket in the GMC case and requested that the Bankruptcy Court return all unfiled papers. On October 5, 2012, the Bankruptcy Court sent Mr. Ware a second letter stating that the papers did not relate to an active bankruptcy case before the Bankruptcy Court for the Northern District of Georgia. The letter also indicated that, per Mr. Ware's request, the Bankruptcy Court was enclosing a certified copy of the docket in Case No. 03-93031 and returning all of the documents that Mr. Ware had sent to the Bankruptcy Court.

On June 10, 2015, the Eleventh Circuit docketed a petition for writ of mandamus filed by Mr. Ware, initiating Case No. 15-12568. Mr. Ware sought an order compelling the Bankruptcy

Court to docket and adjudicate his "Motion to Reconsider." On September 3, 2015, the Eleventh Circuit issued an order and directed the Bankruptcy Court for the Northern District of Georgia to respond to the petition for writ of mandamus, which the Bankruptcy Court did on December 1, 2015. Based on the information presented, the Eleventh Circuit found Mr. Ware had not shown he had standing as a non-party to challenge the 2003 bankruptcy dismissal from which he sought mandamus relief. The Eleventh Circuit also found no evidence Mr. Ware would obtain substantive relief based on his unsupported fraud-on-the-court allegations. Accordingly, the Eleventh Circuit denied his petition for writ of mandamus on March 30, 2016 and denied as frivolous his request to refer the Bankruptcy Court for a criminal investigation. Mr. Ware filed a motion for reconsideration, which the Eleventh Circuit denied on September 14, 2016. He filed a motion for en banc rehearing and relief, which was returned unfiled because the case was closed. Mr. Ware then filed a petition for writ of certiorari, which the Supreme Court denied.

Mr. Ware initiated another petition for writ of mandamus, which was docketed on April 11, 2016 as Case No. 16-11607 (Mr. Ware filed the petition while he was pursuing reconsideration and appeal of the denial of the first mandamus petition). Mr. Ware sought an order compelling the Bankruptcy Court to file, docket, and adjudicate his Rule 9024 motion; to serve him a copy of all transcripts in the bankruptcy case; and certify all pleadings and papers submitted in the bankruptcy case to the SEC and DOJ, requesting the SEC and Department of Justice enter an appearance in the [closed] bankruptcy case and requesting a special prosecutor be appointed to open a criminal investigation into judges and officials from the bankruptcy court and the federal government. The Eleventh Circuit denied his petition on September 23, 2016. The court found Mr. Ware failed to show the bankruptcy court had "a duty exacted by law" to docket his Rule 9024 motion that was not "to any degree debatable." The court found his bare allegations of fraud reflected in the Rule

9024 motion were almost certainly meritless and likely time barred. Further, the Court held Mr. Ware had not shown definitively he had standing as a non-party to challenge the 2003 bankruptcy dismissal from which he sought mandamus relief.

Mr. Ware then filed a third petition for writ of mandamus, which was docketed on June 23, 2016 as Case No. 16-13978. This third petition was filed while the first two petitions were still pending or subject to motions for reconsideration. The Eleventh Circuit Court of Appeals considered and denied his request on March 17, 2017. The Court noted Mr. Ware had not met his burden of showing the Bankruptcy Court had an undebatable duty to docket his Fed. R. Bankr. P. 9024 motion, that his Rule 9024 motion was likely meritless and time-barred, and that Mr. Ware had not shown he had standing to challenge the Bankruptcy Court's 2003 dismissal of the bankruptcy case.

Mr. Ware filed a motion to reconsider the denial of his third mandamus petition, which the Court of Appeals denied on June 16, 2017. Mr. Ware then moved for clarification of the order denying his motion for reconsideration, which the Court of Appeals considered. It entered an order on November 1, 2017 clarifying its ruling on timeliness, standing, and the merits of the Rule 9024 motion. Mr. Ware filed a second motion for clarification. On March 1, 2018, the Court of Appeals provided further clarification on the legal standard applied in determining Mr. Ware's allegations of fraud likely were frivolous and its reasoning in determining that Mr. Ware's standing arguments were improper in his reconsideration motion, and the Court of Appeals denied the second motion for clarification to the extent Mr. Ware sought clarification of matters beyond the scope of the Eleventh Circuit's prior orders. The docket indicates that when Mr. Ware filed yet another request for clarification with the Court of Appeals, it was returned on March 23, 2018 unfiled because a

party may not file a request for "reconsideration of a denied Application to file a Second or Successive Petition."

From 2012 on, Mr. Ware continued sending letters to Judge Murphy and other judges and to the Bankruptcy Clerk. Some were addressed to the Bankruptcy Court, others were copies of letters sent to other courts referring to other cases (the criminal cases and a new case filed on March 21, 2022 in the Eastern District of New York, which was then transferred to the Southern District of New York and given Case No. 22-cv-3409). Occasionally, these letters were returned to Mr. Ware and, at other times, the court responded to Mr. Ware's inquiries (for example: October 1, 2016; February 5, 2017; April 5, 2021; April 21, 2021; June 9, 2021; June 23, 2021; and August 18, 2022). Nevertheless, the letters continued and increased in frequency. Beginning in 2021, the Court endeavored to place these communications on the docket, even when they were not addressed to this Court and were not pleadings in this bankruptcy case. The letters ask a number of questions which, upon review, reflect a lack of understanding by Mr. Ware of the bankruptcy process, this bankruptcy case and its outcome, and the lack of any effect this bankruptcy case had on his legal issues. After much review, the Court distills Mr. Ware's concerns to the following:

a) Whether the Court has "Article III" jurisdiction of this case;

b) Whether the Court has accurately maintained the docket in this case;

c) What effect the dismissal of this bankruptcy case had on GMC or the Subscribers;

d) What effect subsequent litigation between Mr. Ware and the Subscribers and subsequent decisions by New York courts had on the bankruptcy case;

e) Whether the Court should reopen this case or otherwise vacate the dismissal order;

f) Whether the bankruptcy case should be transferred to the Southern District of New York;

g) Whether the bankruptcy case should be referred to the United States Attorney, Georgia Bar, SEC, or other investigatory body; and

h) Whether recusal is necessary.

(Doc. Nos. 84-91, 151-158, 165, 175-184, 187-188, 197-203, 239, 241).

The court will attempt to address Mr. Ware's concerns, but first must address Mr. Ware's standing to request relief, individually or on behalf of GMC.

## II. Legal Analysis

### a. Standing

As an initial matter, the Court must first determine whether Mr. Ware may properly prosecute the various requests for relief before the Court. He alleges he is a party in interest under 11 U.S.C. § 1109(b) and legal representative of the Debtor. The question of standing is a threshold issue. Chen v. Siemens Energy, Inc., 467 F. App'x 852, 853 (11th Cir. 2012) (standing "is a jurisdictional prerequisite to suit in federal court.") (quoting Alabama v. United States Env't. Prot. Agency, 871 F.2d 1548, 1554 (11th Cir. 1989). The burden of establishing standing is borne by the party seeking to be heard. Time Warner Cable, Inc. v. Hudson, 667 F.3d 630, 635 (5th Cir. 2012). "[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). Article III of the Constitution requires that a plaintiff demonstrate a "case or controversy." See Mass. v. E.P.A., 549 U.S. 497, 516 (2007). Courts have interpreted this to require: (1) the party asserting standing has suffered actual injury or been threatened with injury, (2) the injury is traceable to the objectionable conduct, and (3) the relief requested is likely to redress the injury. See E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990)). The first element of Article III standing requires "injury in fact," defined as "'an invasion of a legally protected interest' that is 'concrete

and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 330 (2016) (citation omitted).

This Article III standing requirement in federal court applies in bankruptcy court. Section 1109 of the Bankruptcy Code does not expand the concept of standing; rather Article III standing is an overlay to section 1109(b) that guides the courts in determining who is a party in interest in any given issue. In re Alpha Nat. Res. Inc., 544 B.R. 848, 854 (Bankr. E.D. Va. 2016). Section 1109(b) provides "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). The universe of entities that can be a "party-in-interest" is not restricted solely to the seven enumerated entities set forth in section 1109, In re Odin Demolition & Asset Recovery, LLC, 544 B.R. 615, 626 (Bankr. S.D. Tex. 2016), because the word "including" as used in the Bankruptcy Code is not limiting. 11 U.S.C. § 102(3). But "while the concept of 'party in interest' is elastic and not limited to the entities listed in [section] 1109(b), it typically refers to someone with a financial or legal stake in the outcome of the case." In re Pulp Finish 1 Co., 2014 WL 201482, at *5–6 (Bankr. S.D.N.Y. Jan. 16, 2014).

Section 1109(b) provides that any party in interest has the right to raise and to appear and be heard on "any issue in a case." Not every party in interest with a financial stake in the overall outcome of the case will necessarily hold a significant interest in, or be concerned with, a particular issue. 7 Collier on Bankruptcy ¶ 1109.04 (16th 2022). The right to appear in any particular proceeding depends entirely on the relationship between the issue in question and the particular circumstances surrounding the stakeholder's particular interest. Id. Thus, "a determination whether an entity qualifies as a party in interest should be made within the specific reorganization process

context for which the determination is sought." In re Am. Motor Club, Inc., 149 B.R. 317, 321 (Bankr. E.D.N.Y. 1993). Because one's interests depend on the nature of the issue, "a person may be a 'party in interest' for some purposes but not others." In re Pulp Finish 1 Co., 2014 WL 201482, at *5–6 (Bankr. S.D.N.Y. Jan. 16, 2014). For example, status as "party in interest" under section 1109(b) does not give standing to file a Rule 60(b) motion, In re El Paso Refinery, LP, 37 F.3d 230, 233 (5th Cir. 1994); In re Boyd, 618 B.R. 133, 159 (Bankr. D.S.C. 2020), or an appeal. Thakkar v. Good Gateway, LLC, 636 B.R. 917, 923 (N.D. Ga. 2022).

Mr. Ware alleges he has standing to request relief because he is a party in interest under section 1109. Mr. Ware is not identified as a creditor; he is not the Debtor or a trustee. He has been held personally liable, civilly and criminally, for his acts while representing the Debtor or serving as an officer or director of the Debtor. It seems his real goal is to "undo" his personal liability, but that desire does not give him "party in interest" standing in the corporation's case. He also alleges he is a "party in interest" because he is a shareholder. The evidence is conflicting on this point, but assuming without deciding that he was and is a shareholder, even this party in interest determination must be made by evaluating each issue involved and the effect of that issue on a shareholder. The Court will address Mr. Ware's individual standing below in the context of the relief requested.

Mr. Ware's documents also state he is requesting relief as "legal representative" of the Debtor, but Mr. Ware does not have authority to represent the Debtor and request relief for the Debtor. The Debtor in the underlying case is an artificial entity and must be represented by counsel. It is well established in the Eleventh Circuit that a corporation may not appear in federal court without an attorney. Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Dist. Co., 748 F.2d 602, 609 (11th Cir. 1984). While individual parties may plead and conduct their own cases personally

pursuant to 28 U.S.C. § 1654, a corporation and its sole shareholder are still "separate legal persons." In Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985), cert. denied, 474 U.S. 1058 (1986), the Eleventh Circuit confirmed that because a corporation is an artificial entity that can only act through agents, it cannot appear in court acting "pro se." This is true even when the person seeking to represent the corporation or limited liability corporation is its president or major shareholder. See Winzer v. EHCA Dunwoody, LLC, 277 Ga. App. 710, 713-14 (2006) (cites omitted). Mr. Ware now contends GMC is unincorporated. There is no evidence to support this contention but, even if GMC is an unincorporated business entity, Mr. Ware may not prosecute an action or file papers on its behalf. See In re Parrott Broad. Ltd. P'ship, 492 B.R. 35, 39 (Bankr. D. Idaho 2013) (explaining while individuals in bankruptcy or other court proceedings may represent themselves, the same prerogative is not afforded to corporations and other business entities); Licht v. Am. West Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994) ("Corporations and other unincorporated associations must appear in court through an attorney"). The rule that a layperson cannot appear in court in a representative capacity applies to all forms of business entities, In re 1103 Norwalk St., L.L.C., 2003 WL 23211564, at *1 (Bankr. M.D.N.C. Nov. 26, 2003), subsequently dismissed sub nom. In re 1103 Norwalk St., LLC, 174 F. App'x 787 (4th Cir. 2006), and cannot be circumvented by subterfuge. See e.g., Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 23 (2d Cir.1983). The bottom line is that a non-attorney litigant may not represent other litigants. Church of the New Testament v. United States, 783 F.2d 771, 774 (9th Cir. 1986).

Mr. Ware was not and is not the legal representative of the Debtor. Mr. Ware was not counsel of record for the Debtor, Mr. Gordon was. Mr. Ware is still not authorized to practice law in this district because he was disbarred from the practice of law in the State of Georgia on October

6, 2008. Mr. Ware cannot represent the Debtor as a non-attorney. Accordingly, he is not the legal representative of GMC.

**b. Whether the Court has "Article III" jurisdiction of this case**

In Docs. Nos. 151, 165, 175, 177, and 187, Mr. Ware asks the Court to verify its Article III jurisdiction. Mr. Ware apparently does not understand that a bankruptcy court is an Article I court, not an Article III court. Nevertheless, the bankruptcy court has jurisdiction over bankruptcy cases.

The analysis of the Court's jurisdiction begins with the statutory scheme because "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). The bankruptcy court has jurisdiction in the first instance to determine its own subject matter jurisdiction. In re Equip. Finders, Inc. of Tennessee, 473 B.R. 720, 727 (Bankr. M.D. Tenn. 2012) (citing Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 376–77 (1940)).

The authority to establish bankruptcy courts is found in Article I of the Constitution, which gives Congress the power "[t]o establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const art. 1 § 8. The Bankruptcy Code, found in title 11 of the United States Code, contains nearly all the applicable uniform federal bankruptcy law. District courts, not bankruptcy courts, have original but not exclusive jurisdiction over bankruptcy cases, 28 U.S.C. § 1334(a), and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157(a), however, a district court may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts of that district. The Northern District of Georgia has referred all proceedings within its bankruptcy jurisdiction to the bankruptcy judges.

LR 83.7, NDGa. As extensions of the district court, the Bankruptcy Court is thus authorized to hear all three categories of civil proceedings. In re Tyler, 493 B.R. 905, 911 (Bankr. N.D. Ga. 2013).

The first category of cases, "arising under" proceedings, "are matters invoking a substantive right created by the Bankruptcy Code." Id. at 1345. Such matters are considered core proceedings. Id. at 1348 (citing Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)).

The second category, "arising in a case under title 11," pertains to claims that are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." Grausz v Englander, 321 F 3d 467, 471 (4th Cir. 2002). Typically, the facts giving rise to a claim "arising in" a bankruptcy case occur during the course of the bankruptcy case. See Mercer v Allen, 2014 WL 185252 (M.D. Ga. Jan 15, 2014); In re Taylor, 2006 WL 6591616 (Bankr. N.D. Ga. May 4, 2006). These matters also constitute core proceedings. Wortley v. Bakst, 844 F.3d 1313, 1318 (11th Cir. 2017).

The third category of cases involves matters relating to a case under title 11. This group includes matters that "could have a material effect on the administration of the case or claims against the bankruptcy estate, but such a claim could exist outside of bankruptcy[.]" See Customized Distrib., LLC v. Coastal Bank & Tr. (In re Lee's Famous Recipes, Inc.), 2011 WL 7068916, at *1-2 (Bankr. N.D. Ga. Dec. 12, 2011) (citing Schroeder v. New Century Holdings, Inc. (In re New Century Holdings, Inc.), 387 B.R. 95, 104 (Bankr. D. Del. 2008)). In Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), the Third Circuit Court of Appeals explained that a civil proceeding is related to a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id. at 994. The Eleventh Circuit has adopted the Pacor test with little or no variation. Celotex, 514 U.S. at 308 n.6; see e.g., Miller

v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990). But "'[r]elated to' jurisdiction is not so broad as to encompass litigation of claims arising under state law or non-bankruptcy Federal law that will not have an effect on the bankruptcy estate, simply because one of the litigants filed a petition in bankruptcy." Harlan v. Rosenberg & Assocs., LLC (In re Harlan), 402 B.R. 703, 711 (Bankr. W.D. Va. 2009) (citations omitted). A non-bankruptcy case with common issues of fact with a bankruptcy case is not automatically "related to" the bankruptcy case for purposes of jurisdiction; the resolution must also affect the bankruptcy estate. See HOC, Inc. v. McAllister (In re McAllister), 216 B.R. 957, 966 (Bankr. N.D. Ala. 1998). Thus, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." Celotex, 514 U.S. at 308 n.6. Matters within the Court's "related to" jurisdiction are typically non-core.

Where a matter is "core" under 28 U.S.C. § 157, the Court is authorized to enter a final order. 28 U.S.C. § 157(c)(1); Exec. Benefits Ins. Agency v. Arkison, 573 U.S. 25, 34 (2014). Any objections to that order are appealed to the district court. Id. With respect to non-core matters within the Court's jurisdiction, the Court issues proposed findings of fact and conclusions of law to the district court. Id.

In the referenced documents (Docs. Nos. 151, 165, 175, 177, and 187), Mr. Ware asks the Court to confirm its Article III jurisdiction, particularly in light of the dismissal of Case No. 02-cv-2219 (SDNY). As explained, this Court has jurisdiction under Article I of the Constitution, which was invoked when the Debtor, GMC, voluntarily filed this bankruptcy case. Nothing that happens in another case in another jurisdiction can deprive the Court of its jurisdiction over the Debtor and property of the estate while a case is pending. The dismissal of Case No. 02-cv-2219 (which, contrary to Mr. Ware's statements, was without prejudice) had no effect on this Court's

jurisdiction of this case in 2003 when it entered the Dismissal Order. See In re Kassover, 2008 WL 4845757, at *2 (Bankr. S.D.N.Y. Oct. 30, 2008).

**c. Whether the Court has accurately maintained the docket in this case**

Mr. Ware complains the Court has not maintained an accurate docket. In particular, he contends the Bankruptcy Clerk should have entered on the docket every letter or document he sent to the Bankruptcy Clerk or a judge at any time, as well as his 2012 Motion to Reconsider and his proposed "Memorandum Decision and Final Order" in this case sent on July 31, 2022 via email to chambers.

Even as a "party in interest," Mr. Ware has not shown he has standing to challenge how the docket was maintained. He has failed to plead any concrete and particularized injury in fact from the way in which the docket has been maintained. Just because he may be dissatisfied with docket entries does not mean he has standing.

The Bankruptcy Clerk is the official custodian of the records and dockets of the bankruptcy court. 28 U.S.C.A. § 156(e). Pursuant to Bankruptcy Rule 5003(a), a clerk must maintain a docket and enter "each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the Courts." Fed. R. Bankr. P. 5003(a). "Judgment" means "any appealable order," Fed. R. Bankr. P. 9001(7), and each judgment must be set out in a separate document. Fed. R. Bankr. P. 7058; Reid v. White Motor, 886 F.2d 1462 (6th Cir. 1989) (citing In re Ozark Rest. Equip. Co., Inc., 761 F.2d 481(8th Cir. 1985)). An "order" is "direction of a court or judge made or entered in writing," *Order*, Black's Law Dictionary (11th ed. 2019), or "[a] decision issued by a court or authoritative body." *Order*, Wex Legal Dictionary, https://www.law.cornell.edu/wex/order (last visited Oct. 21, 2022). "Activity" is not defined in the rule, and the Administrative Office has no directives as to what constitutes an "activity". "Activity"

is defined in the dictionary as "something which a person . . . or group chooses to do," *Activity*, Oxford English Dictionary, https://www.oed.com/view/Entry/1958 (last visited Oct. 21, 2022), or "work performed to create a result." *Activity*, Dictionary.org, https://thelawdictionary.org/activity/ (last visited Oct. 21, 2022). Colliers states that activity includes "judgments, orders, and pleadings . . . and proceedings in a case." 9 Collier on Bankruptcy ¶ 5003.03. In each case, though, only orders, judgments and activities in that case are to be entered.

As a general rule, the clerk of a court has a duty to file documents and papers that are presented for the purpose of filing, but papers and documents not presented to the clerk are not filed. In re Mangum, 2006 WL 3626775, at *2 (N.D. Ill. Dec. 7, 2006); Fed. R. Civ. P. 5(e); Fed. R. Bankr. P. 5005(a)(1); 21 C.J.S. Courts § 340 (2006). Specifically, papers and documents delivered to chambers are not presented to the clerk for filing. BLR 9003-2. The general requirement of filing also does not apply when a statute or a court rule expressly authorizes the clerk to refuse to accept documents and papers for filing under specified circumstances. Wilson v. Robl, 2007 WL 2746665, at *4 (W.D. Ky. Sept. 19, 2007) (citing 21 C.J.S. Courts § 340 (2006)). Statutes or court rules may expressly authorize the clerk to refuse to accept papers for filing where a complaint is submitted by a person who has been found to be a "vexatious litigator." 21 C.J.S. Courts § 337 (citing State ex rel. Montgomery Cty. Pub. Def. v. Siroki, 108 Ohio St. 3d 334 (2006)); see also Martin-Trigona v. Shaw, 986 F.2d 1384 (11th Cir. 1993). In addition, the clerk may be directed by court rule not to accept a pleading which is not accompanied by specified documents. 21 C.J.S. Courts § 337.

Further, a court may refuse to docket items reflecting events taking place in other courts. In In re Malloy, 2022 WL 1488437, at *2 (E.D. Pa. May 11, 2022), the debtor argued the docket in the Bankruptcy Court ought to reflect the subsequent actions taken in the higher court, and not

just actions taken in the Bankruptcy Court. Id. On appeal, the District Court affirmed the Bankruptcy Court's decision to leave off these docket entries, holding "[r]equesting that the Bankruptcy court's docket reflect …events that took place elsewhere, were docketed in the courts in which they took place, are not part of the bankruptcy case, and are public record would make the docket entry violate Fed. R. Bankr. P. 5003." Id.

Finally, Courts have also held that after a case is closed, the clerk of the court is under no obligation or duty to file documents in that case, absent a motion to reopen the case by an appropriate party. Miller v. Johnson, 541 F.Supp. 1165, 1176 (D.D.C. 1982); see also Wilson, 2007 WL 2746665, at *4 (bankruptcy court clerk did not err in refusing to file a motion to reconsider in closed case). For example, in In re Stewart, 2020 WL 597843 (Bankr. D.D.C. Feb. 5, 2020), the debtor filed an amended list of creditors, which the clerk docketed. The court concluded that the case not having been reopened, the filing ought to be treated as ineffective. Id. at *2. Similarly, the Eleventh Circuit returned as "unfiled" certain of Mr. Ware's documents submitted in the mandamus action because the action was closed or finally decided. But, a clerk's failure to accept a filing is only a non-nefarious filing error similar to the procedural error encompassed in Rule 5005(c) and can be dealt with in that manner. In re Villegas, 2008 WL 4371668, at *3 (Bankr. S.D. Tex. Sept. 17, 2008).

In this case, Mr. Ware has bombarded this Court with documents. At least since 2021, Mr. Ware has emailed documents to this Judge's chambers' email and her courtroom deputy. The Court receives about one email per day, sometimes more, sometimes less. The Court has attempted to accommodate Mr. Ware by reviewing these emails and asking the clerk to place a description of them on the docket. Mr. Ware has a Pacer account and can therefore check the docket at will. More recently, the court has provided Mr. Ware with "Notice of Electronic Filing" so he receives

email confirmation of items reflected on the docket. But none of this satisfies Mr. Ware. Instead, he has many complaints.

First, Mr. Ware contends the Bankruptcy Clerk should have docketed numerous documents and papers delivered after the case was closed. As explained above, the Bankruptcy Clerk was not obligated to docket items after the case was closed, other than a motion to reopen. If that motion was granted, the Bankruptcy Clerk would then begin to docket items under Rule 5005. But, even if the Bankruptcy Clerk was obligated to file items in a closed case, the Court finds no error in the decisions made by the Bankruptcy Clerk.

Second, Mr. Ware argues the Court erred when it did not docket his 2012 Motion to Reconsider the 2003 dismissal of the case. This issue has already been litigated and the Eleventh Circuit rejected that argument when it considered and denied Mr. Ware's three requests for writ of mandamus. The Eleventh Circuit denied his first petition for writ of mandamus seeking an order compelling the Bankruptcy Court to file, docket, and adjudicate his Rule 9024 motion on March 30, 2016. Mr. Ware initiated a second petition for writ of mandamus, which was denied on September 23, 2016. Mr. Ware then filed a third petition for writ of mandamus, which the Eleventh Circuit Court of Appeals denied on March 17, 2017. In each instance, the Eleventh Circuit held Mr. Ware failed to show the bankruptcy court had "a duty exacted by law" to docket his Rule 9024 motion that was not "to any degree debatable." The court concluded Mr. Ware had not shown standing, timeliness of the motion, or the merits thereof. The Eleventh Circuit has addressed Mr. Ware's contention. This Court will not revisit the matter now.

Third, Mr. Ware contends the Court has not accurately maintained the docket in this case because it does not reflect proceedings that have taken place in other courts. Rule 5005 requires the Bankruptcy Clerk to keep a record of judgments, orders, and activities in the Bankruptcy Court;

it does not require the Bankruptcy Clerk to docket every filing or pending activity in other cases As the bankruptcy court observed in Malloy, 2022 WL 1488437, at *2, the docket is not required to reflect the subsequent actions taken in higher courts or other jurisdictions. Mr. Ware has not demonstrated the Court violated the Bankruptcy Rules.

Fourth, Mr. Ware complains about the letters he sent to chambers or the Bankruptcy Clerk not being on the docket. Communications to chambers are not filings with the Court, Rule 5005(a)(1), and need not be docketed. BLR 9003-2. Papers to be filed must be mailed to the Clerk or delivered in person to the Clerk. Under General Order 45-2021, only *pro se* debtors may file via electronic means. GMC is a corporation not eligible to file papers without an attorney and therefore does not qualify as a *pro se* debtor. Mr. Ware is not a debtor and therefore does not qualify as a *pro se* debtor. Additionally, Local Rule 9003-2 provides that any requests for relief "must be by written motion, pleading, or other paper, and not by letter or email. Unless the Bankruptcy Judge determines otherwise, a letter or email will not be treated as a motion, will not be considered by the bankruptcy court and will not be docketed in the case." Moreover, letters to the Bankruptcy Clerk are not orders, judgments, or activities in the case since they do not ask the Court (i.e., the Judge) to act. Accordingly, the Bankruptcy Clerk was not required to docket Mr. Ware's voluminous correspondence.

Finally, Mr. Ware complains that the Bankruptcy Clerk did not docket his proposed order sent to chambers via email on July 31, 2022. As the Court explained to Mr. Ware in its letter of August 3, 2022, proposed orders are not docketed unless and until entered by the Court. For attorneys authorized to use CM/ECF, proposed orders are uploaded to CM/ECF and held in suspense until the Court reviews and evaluates them. For proposed orders submitted by *pro se*

parties or others not authorized to use CM/ECF, the proposed order is held in Court chambers. See BLR 9013-2.

For these reasons, the Court concludes the Bankruptcy Clerk was not obligated to docket any items after the case was closed, including Mr. Ware's 2012 Motion to Reconsider, actions taken by higher courts or in other jurisdictions, letters sent to chambers and the Bankruptcy Clerk, or his proposed order. The Court concludes the Court has accurately maintained the docket in this case.

Mr. Ware has also requested multiple certified copies of the docket pursuant to Rule 5006 which obligates the clerk to "issue a certified copy of the record of any proceeding in a case under the Code or of any paper filed with the clerk on payment of any prescribed fee." Fed. R. Bankr. P. 5006. The Clerk has provided certified copies of the docket to Mr. Ware on several occasions (October 5, 2012; April 5, 2021; June 23, 2021; and August 17, 2022), all without payment, but Mr. Ware complains the certification is inaccurate because it does not include items not on the docket (as described above) and does not certify the authenticity of signatures. The Court finds the Clerk has more than met her duty under Rule 5006. The Clerk must only certify the docket—not the authenticity of what is submitted for filing—and items not placed on the docket are obviously not part of the docket to certify. See Fed. R. Bankr. P. 5006 Advisory Committee Notes; see also United States v. Doyle, 130 F.3d 523, 545 (2d Cir. 1997). Moreover, Mr. Ware's requests for certification are unnecessary and abusive. He has a Pacer account and can see what is on the docket. The Court has provided him with notices of electronic filing so that he receives an email when something is docketed. The certification process is meant to provide admissible evidence in another court, not to allow a litigant to harass the clerk's office. The Court will therefore limit Mr. Ware's future requests for a certified copy of the docket to once every 12 months, absent order of

the Court. The Clerk last certified the docket on August 17, 2022 so she will not be obligated to provide another certification until August 16, 2023. Additionally, the fees for certification and copies as set by the Judicial Conference must be paid before the Clerk is obligated to comply with such a request.

**d. Effect of dismissal of this bankruptcy case**

This case was dismissed on May 21, 2003 pursuant to an order (the "Dismissal Order") agreed to by Debtor's counsel. Now Mr. Ware wants the dismissal vacated, seeming to contend the dismissal had some effect on his other legal issues. The Dismissal Order made no determination of any claims or defenses of the Debtor, Mr. Ware, or the Subscribers. To understand the effect of dismissal, Mr. Ware must understand the nature of a bankruptcy case and how it differs from other civil litigation.[1]

A bankruptcy case begins with the filing of the petition and the estate is created by property of the debtor, all of which becomes property of the estate. An "automatic stay" goes into effect giving the debtor an opportunity to reorganize its business. Generally, the rights of debtors and creditors under non-bankruptcy law are fixed as of the petition date. Under Chapter 11, the debtor becomes the "debtor in possession." 11 U.S.C. § 1101. The purpose of a Chapter 11 case is business reorganization. In re Brannan, 40 B.R. 20, 25 (Bankr. N.D. Ga. 1984). To this end, the debtor submits a reorganization plan in order to rehabilitate and continue the operation of the business and all of the assets of the debtor are applied to the reorganization effort or the plan may propose a liquidation. Id. The confirmed plan creates new contractual rights, replacing or superseding pre-bankruptcy contracts.

[1] The Court suspects Mr. Ware does understand the uniqueness of bankruptcy cases since, as a lawyer, he filed multiple bankruptcy cases.

In a Chapter 11 case, the U.S. Trustee plays a role in monitoring the progress of the case and the debtor's operation of the business. The U.S. Trustee or a party in interest may file a motion to dismiss or convert a Chapter 11 case to a Chapter 7 case "for cause." Generally, if cause is established after notice and hearing, the court must convert or dismiss the case (whichever is in the best interests of creditors and the estate) unless it specifically finds that the requested conversion or dismissal is not in the best interest of creditors and the estate. 11 U.S.C. § 1112(b). Alternatively, the court may decide that appointment of a chapter 11 trustee or an examiner is in the best interests of creditors and the estate. 11 U.S.C. § 1104(a)(3).

If a case is dismissed, such dismissal generally ends the automatic stay and revests property of the estate in the entity in which such property was vested immediately before the commencement of the case. 11 U.S.C. §§ 349(b)(3) and 362(c)(1) and (2)(B). "The basic purpose of [Section 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." In re Aheong, 276 B.R. 233, 239 (B.A.P. 9th Cir. 2002) (citing legislative history).[2] "Unless the court . . . orders otherwise," dismissal under section 349(b) returns the Debtor to its pre-bankruptcy status and the estate ceases to exist. 11 U.S.C. § 349(b); In re Westgate Nursing Homes, Inc., 518 B.R. 250, 255

[2] The statutory effects of dismissal are provided for by section 349(b) of the Bankruptcy Code, which provides:

> (b) Unless the court, for cause, orders otherwise, the dismissal of a case other than under section 742 of this title—
> (1) reinstates—
> (A) any proceeding or custodianship superseded under section 543 of this title;
> (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2),
> (C) any lien avoided under section 506(d) of this title;
> (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b).

(Bankr. W.D.N.Y. 2014); see also In re Sweports, Ltd., 511 B.R. 522, 525 (Bankr. N.D. Ill. 2014) (noting the dismissal order terminates the estate); In re Garnett, 303 B.R. 274, 278 (E.D.N.Y.2003) ("[T]here simply is no bankruptcy estate after the dismissal has been entered."). With a dismissal there is no estate and, "[a]fter entry of an order of dismissal, the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts." In re Creamer, 596 B.R. 920, 921 (Bankr. N.D. Fla. 2018) (citation omitted).

Normally, dismissal of a bankruptcy petition has no long-term consequences for the debtor's ability to re-file. In re Hall, 304 F.3d 743, 746 (7th Cir. 2002). Grounds for dismissal "with prejudice," however, exist under 11 U.S.C. § 349(a) and § 105. Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

This section permits the Court "for cause" to dismiss a case with prejudice. "With prejudice" in this context means either barring the discharge of certain debts or limiting the debtor's authority to file a bankruptcy petition for a certain time period or both. In re Burroughs, 2014 WL 1689969, at *2 (Bankr. N.D. Ga. Apr. 29, 2014); see also Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 938 (4th Cir. 1997) (although the two sanctions differ in purpose and effect, courts often refer to both sanctions as dismissals "with prejudice"). Additionally, section 105(a) of the Bankruptcy Code provides, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). But, in any construction, the phrase "with prejudice" is limited to these two functions. "With prejudice" does not have the meaning assigned to it in Fed. R. Civ. P. 41.

Here, two motions to dismiss were filed in this case. The U.S. Trustee filed a motion to dismiss the bankruptcy case on several bases: that GMC was not a Georgia corporation or authorized to transact business in Georgia, the schedules and statement of financial affairs had not been timely filed, and the case was filed in bad faith to avoid or forestall Mr. Ware's arrest based on Mr. Ware's failure to honor the Subscribers' conversion requests. The U.S. Trustee sought dismissal of the case with the proviso that Debtor would be ineligible to seek further relief under chapter 11 of the Bankruptcy Code for a period of 180 days (Doc. No. 13). The Subscribers also sought dismissal of the case or, alternatively, for relief from the stay. Before the motions could be heard, though, counsel for the Debtor and for the Subscribers announced in open court that they reached a settlement resulting in the dismissal of the case. Debtor's counsel reviewed and approved the order of dismissal "with prejudice" submitted to the Court, which barred the Debtor from filing a bankruptcy petition under any chapter of the Bankruptcy Code for 180 days.

Upon the dismissal, to which Debtor's counsel consented, the property of the estate revested in the entity in which such property was vested immediately before the commencement of the case, most likely the Debtor. In other words, dismissal returned the parties to their "prepetition financial status quo." Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 454 (2017). Debtor's debts and property were thus subject to general non-bankruptcy laws, unaffected by the bankruptcy. The Court never decided the validity of the Subscribers' claims or the Debtor's defenses thereto. The order of dismissal did not alter the parties' rights, it merely returned them to their pre-bankruptcy status. Even though the case was dismissed "with prejudice," it was only as to a refiling by the Debtor for 180 days and not with prejudice to the Debtor's rights as to the Subscribers' claims. Nothing in this dismissed bankruptcy case had any effect on the Subscribers' claims or Mr. Ware's legal issues arising therefrom.

**e. Effect of subsequent litigation between Mr. Ware and the Subscribers and of subsequent decisions by New York courts on bankruptcy case**

Mr. Ware seems to believe that events occurring after the entry of the Dismissal Order affect it. He contends that because the SDNY Case was dismissed, the Subscribers do not have a claim and could not have had a claim in 2003. Similarly, Mr. Ware argues that decisions of the New York Court of Appeals and the Second Circuit on criminal usury invalidate the Subscribers' claims. In each instance, he argues the Subscribers' claims are somehow retroactively invalidated, such that the Subscribers had no right to "interfere" in the bankruptcy case. He contends the Dismissal Order is therefore moot. He is wrong.

Effectively, Mr. Ware argues that due to events occurring years after the bankruptcy case was dismissed, the Subscribers lost their "party in interest" right to file a motion to dismiss in 2003. But, standing to file a motion to dismiss is determined at the time the motion was filed. See In re Allison, 2006 WL 2620480, at *3 (Bankr. S.D. Tex. Sept. 12, 2006). In 2003, the Subscribers asserted they were creditors of the Debtor and, as such, were parties in interest. 11 U.S.C. § 1109(b). The Subscribers held convertible notes issued by the Debtor and an order in the SDNY Case for the recovery of money. The Debtor listed the Subscribers as creditors, although disputed. The Debtor filed a Motion to Reject the Subscription Agreement which, if granted, could also give rise to a claim. 11 U.S.C. §§ 365(g)(1) and 502(g). The fact GMC disputed the Subscribers' claim does not eliminate their standing to file a motion to dismiss, In re Abijoe Realty Corp., 943 F.2d 121, 125 (1st Cir. 1991), particularly where, as here, the purpose of the motion to dismiss was to continue the litigation in the SDNY Case where the rights of the parties were being determined. So the Subscribers had every right to file a motion to dismiss, and the Court had every right to grant that motion, particularly since the Debtor agreed to it.

Dismissal of the SDNY Case in 2007 has no bearing on whether dismissal of the bankruptcy case was warranted in 2003.[3] The SDNY Case was voluntarily dismissed by the Subscribers without prejudice in December 2007. This dismissal did not adjudicate the Subscribers' claims and does not mean the Subscribers' claims are or were invalid. Moreover, whether dismissal of the bankruptcy case was appropriate was determined based on the facts and circumstances as they existed at the time, and a subsequent dismissal of another case in another forum years after the dismissal of the bankruptcy case cannot change that outcome. For example, in In re Sneed, 2008 WL 1782375 (Bankr. E.D. Cal. Apr. 18, 2008), the trustee questioned the reasonableness of a sale transaction after it occurred based on subsequent developments. The court rejected his argument, explaining, "[i]t would be particularly unfair to consider, by hindsight, subsequent events, such as dismissal of the criminal charges . . ., unless those events were reasonably anticipated or known . . . at the time of the transaction." Id. at *7.

Next, Mr. Ware argues that the Subscribers' claims were invalid under a New York Court of Appeals decision and Second Circuit decision on conversion rights and criminal usury decided in 2021 and 2022. See Adar Bays, LLC v. GeneSYS ID, Inc., 28 F.4th 379, 380 (2d Cir. 2022); Adar Bays, LLC v. GeneSYS ID, Inc., 37 N.Y.3d 320 (2021). Subsequent developments in the law generally do not undo prior determinations, Portis v. United States, 33 F.4th 331, 335 (6th Cir. 2022), and a party may not challenge the legal conclusions on which a prior judgment or order rests. Horne v. Flores, 557 U.S. 433, 447 (2009); Capeletti Bros., Inc. v. Metropolitan Dade Cty., 735 F.Supp. 1040, 1042 (S.D. Fla. 1990); In re Damron, 598 B.R. 350, 354 (Bankr. S.D. Ga. 2019).

[3] While Mr. Ware contends the New York case was dismissed with prejudice, the record reflects otherwise. On December 20, 2007, the District Court for the Southern District of New York entered an Order of Dismissal Without Prejudice Pursuant to FRCP 41(a)(2) (Doc. No. 90), which clearly says "WITHOUT PREJUDICE." He seems to argue, though, that because the case was dismissed and the statute of limitations has run, the claims were effectively dismissed with prejudice.

Importantly, these cases did not involve Mr. Ware or the Subscribers' claims, so they do not directly affect the Subscribers' claims.

Moreover, the Court did not determine whether the Subscribers had a claim in the bankruptcy case. The Subscribers asserted a claim in the case and the Debtor recognized that assertion when it filed a Motion to Reject the Subscription Agreement as an executory contract. But, ultimately, no determination of the amount or validity of the Subscribers' claim was necessary to the Dismissal Order because the Debtor consented to dismissal.

Finally, dismissal of the case was not dependent on the Subscribers' participation in the case. The U.S. Trustee also filed a Motion to Dismiss raising several grounds for dismissal of the case and requesting the dismissal be with a bar to refiling. Ultimately, Debtor's counsel agreed to dismissal of the case. In other words, the case would have been dismissed on those bases and was not contingent on the Subscribers requesting dismissal. See In re Johnston, 149 B.R. 158 (B.A.P. 9th Cir. 1992) (even if other movants lacked standing as creditors to move to dismiss or convert Chapter 11 case, the U.S. Trustee, who joined in motion to dismiss or convert, was a party in interest with standing to request dismissal or conversion).

The dismissal of the SDNY Case and subsequent New York decisions regarding securities law have no bearing on the bankruptcy case.

**f. Whether the Court should reopen this case or otherwise vacate the dismissal**

The primary relief Mr. Ware seems to want from the Court is for the Court to vacate the Dismissal Order to which the Debtor's attorney agreed. As explained below, Mr. Ware is not entitled to this relief and vacating a 19-year-old dismissal of a bankruptcy case makes no sense. The Court will consider whether the case must be reopened before the request to vacate the

Dismissal Order can be considered, whether Mr. Ware has standing to request reopening, and whether reopening is proper.

i. Whether the case must be reopened

The case was closed on June 3, 2003, after its dismissal. The first question is whether the case needs to be reopened to consider the motion under Rule 60 to vacate the dismissal. Section 350 of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350(a). Section 350(b) in turn provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Section 350 contemplates that "reopening" is available for "fully administered" and closed cases. In re Bailey, 2009 WL 6498530, at *1 (Bankr. N.D. Ga. Sept. 3, 2009). Reopening a case usually occurs to "take care of some detail that was overlooked or left unfinished at the time the case was closed. It was not designed as an opportunity to create, and then enforce, rights that did not exist at the time the case was originally closed." Pingaro v. Ameriquest Mortg. Co. (In re Pingaro), 2008 WL 8664764 (B.A.P. 1st Cir. Aug. 14, 2008) (quoting In re Finch, 378 B.R. 241, 246 (B.A.P. 8th Cir. 2007). Bankruptcy Rule 5010 requires that a case be reopened upon the filing of a motion, and the moving party must pay a fee with the motion to reopen in the same amount as the fee for filing a case under the same chapter on the date of reopening.[4] Bankruptcy Court Miscellaneous Fee Schedule, Item 11. The current fee for filing a motion to reopen a Chapter 11 case is $1167. Id.

[4] There is no reopening fee:

- if the case is reopened to file an action related to the debtor's discharge, for instance, to file a complaint to obtain a determination of dischargeability of a debt other than under 11 U.S.C. 523(c);
- if the petition to reopen seeks to correct an administrative error;
- if the judge enters an order waiving the fee;
- if an order has previously been entered waiving the initial filing fee on a Chapter 7 case;
- if the Motion is filed by a US Government agency e.g., the U.S. Trustee.

"Generally, a closed case must be reopened before the bankruptcy court may entertain a substantive matter." Wilson, 2007 WL 2746665 (citing In re Leach, 194 B.R 812, 814-16 (E.D. Mich. 1996)); see also In re Woldeyohannes, 2022 WL 3135287, at *1 (Bankr. D. Conn. Aug. 3, 2022); In re Levy, 2018 WL 1579888, at *2 (Bankr. D. Conn. Mar. 29, 2018) (holding that the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of any requested order). In some instances, though, a bankruptcy case need not be reopened to seek certain relief including, for example, a claim for violation of the discharge injunction or a pre-discharge claim for a stay violation. See Johnson v. Smith, 575 F.3d 1079, 1084 (10th Cir. 2009) (finding no basis to require plaintiff "to move to reopen the Chapter 13 case to pursue [Section] 362(k)(1) adversary proceeding"); In re Stanwyck, 450 B.R. 181, 193 (Bankr. C.D. Cal. 2011) (rejecting "Defendants' assertion that [plaintiff] was required to reopen his prior bankruptcy cases to assert [Section] 362(k) claims"); In re Patterson, 297 B.R. 110, 115 (Bankr. E.D. Tenn. 2003) (finding it not necessary to reopen closed case to proceed with action relating to the discharge injunction).

This case was dismissed, though, before being closed. Closing and dismissing a bankruptcy case are two distinct events. Typically, dismissal does not coincide with termination of all proceedings. Dismissal allows creditors and debtors to get on with their non-bankruptcy business and resolve their disputes in appropriate forums.

Since there is a distinction between reopening a closed case and vacating an order dismissing a case, some courts have held that a dismissed case is not a closed case and cannot be reopened. See e.g., Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich), 229 B.R. 777, 781 (9th Cir. BAP 1999) ("Reopening a dismissed case is an oxymoron – since the consolidated cases were dismissed rather than closed, there are no closed cases to

reopen."). In Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.), 699 F.2d 963, 965 (9th Cir. 1983) (per curiam), the court concluded the word "reopened" used in section 350(b) "obviously relates to the word 'closed' used in the same section." Id. at 965. The court concluded a case cannot be reopened unless it has been closed, and "[a]n order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing." See also In re Peachtree Stratford, LP, 2005 WL 6486095, *1 (Bankr. N.D. Ga. Oct. 25, 2005) ("Court lacks the power under section 350 to reopen a dismissed case to take action in that case as if it had never been dismissed."); Goldenberg v. Deutsche Bank Nat'l Tr. Co. (In re Papazov), 2013 WL 2367802 (B.A.P. 9th Cir. May 30, 2013) (concluding because debtor could not 'reopen' a bankruptcy case that was not 'closed' for purposes of section 350(a), the bankruptcy court did not abuse its discretion when it denied her motion to reopen).

Other courts, however, have held a case that is dismissed and administratively closed may be reopened for limited purposes because dismissal and closing are separate acts. See In re Ross, 278 B.R. 269, 273 (Bankr. M.D. Ga. 2001) (holding that debtor could reopen case that was dismissed and subsequently closed without affecting the order of dismissal). For example, in Stewart, 2020 WL 597843, the court determined that a case that is dismissed and closed is still a closed case for which a motion to reopen may be filed for certain purposes, including to review the reasonableness of the fees of the debtor's counsel. The court was clear, however, that reopening such a case would not vacate or otherwise affect the dismissal. A case dismissal can be undone only through an appeal or a motion under Rules 9023 or 9024, In re Hashiman, 2020 WL 5914605, at *2 (B.A.P. 9th Cir. Oct. 5, 2020); see also In re Carver, 2021 WL 2932485, at *1 (Bankr. D. Idaho July 12, 2021), and the case must first be reopened. See e.g., Wilson, 2007 WL 2746665, at *5; In re Leach, 194 B.R. 812, 814-816 (E.D. Mich. 1996).

Still other courts will address a request for reconsideration of a dismissal order without first reopening the case or will treat a motion to reopen a dismissed case as a motion to vacate a judgment or order. See e.g., In re Martin, 2011 WL 4344441, at *2 (Bankr. W.D. Tex. Sept. 14, 2011); In re Lampman, 494 B.R. 218, 222 (Bankr. M.D. Pa. 2013) (construing motion to reinstate case as a motion to reconsider).

This Court agrees with those courts that have held a case dismissed and administratively closed may be reopened for limited purposes and that a case must be reopened before considering relief under Rule 60. The Court understands that closure and dismissal are different creatures, so even though the case is a dismissed case, it is also a closed case for which a motion to reopen may be filed. Here, the case was dismissed on May 21, 2003; it was subsequently closed on June 3, 2003. The Court concludes a motion to reopen can be filed in a case such as this one. The motion to reopen, however, will not affect the Dismissal Order, and the case must be successfully reopened before the Court can entertain a motion to reconsider under Rule 9024.

ii. Mr. Ware's standing

In considering a motion to reopen, the movant has the burden of establishing that the case should be reopened, In re Env't Wood Prod., Inc., 609 B.R. 901, 912 (Bankr. S.D. Ga. 2019), and that he has standing to seek the ultimate relief requested. Federal Rule of Bankruptcy Procedure 5010 permits a case to be reopened "on motion of the debtor *or other party in interest.*" Fed. R. Bankr. P. 5010 (emphasis added). Rule 5010 does not define party in interest; instead, courts look to section 1109(b), and they disagree as to whether all those indicated in section 1109(b) have standing to file a motion to reopen or whether only the debtor, trustee, and creditors have such standing. See In re Papazov, 610 F. App'x 700 (9th Cir. 2015); see also Goldenberg v. Deutsche Bank Nat'l Trust Co. (In re Papazov), 610 Fed.Appx. 700 (9th Cir. 2015) (holding that the

enumerated list of "parties in interest" in § 1109(b) may guide a court in determining the scope of potential movants under Rule 5010); see also In re Trigee Found., Inc., 2016 WL 3971734, at *2 (Bankr. D.D.C. July 19, 2016) (in considering whether to reopen a case that was closed, for court administration purposes, after the case was dismissed, "it makes sense that the defendants would have to be a party in interest in order to seek reopening.").

Some courts conclude that standing to seek reopening of a closed case is confined to those with a particular and/or direct stake in the reopened case, such as debtors, creditors, and trustees. In re Canal St. Ltd. P'ship, 269 B.R. 375, 379 (B.A.P. 8th Cir. 2001); Nintendo Co. v. Patten (In re Alpex Computer Corp.), 71 F.3d 353, 356 (10th Cir. 1995) ("This expansive view notwithstanding, when we peruse the case law on standing under these circumstances, we find that concept implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code."); Alexandria Surveys, LLC v. Alexandria Consulting Grp., LLC (In re Alexandria Surveys Int'l, LLC), 500 B.R. 817, 820 (E.D. Va. 2013), aff'd sub nom. Alexandria Consulting Grp., LLC v. Alexandria Surveys Int'l, LLC, 589 F. App'x 126 (4th Cir. 2014) (case law has read "party in interest" under Rule 5010 to be limited to the debtor itself, a trustee, or a creditor).

Other cases suggest, however, that "party in interest" should have the same broad meaning under Rule 5010 as it does under section 1109. In re Odin Demolition & Asset Recovery, LLC, 544 B.R. 615, 626 (Bankr. S.D. Tex. 2016); see also In re Krowel, 631 B.R. 277, 281 (B.A.P. 1st Cir. 2021); White v. Bos., 104 B.R. 951, 954 (S.D. Ind. 1989). Under this reasoning, a shareholder of the debtor would be a "party in interest" and thus a proper party to move to reopen a closed case. See In re Canoe Mfg. Co., Inc., 466 B.R. 251, 253 (Bankr. E.D. Pa. 2012). Nevertheless, the shareholder must have a direct stake in the particular reason for reopening. In Canoe Mfg. Co., for

example, the court recognized that a non-debtor may seek to reopen a closed case and that the movant, who claimed to be a shareholder of the debtor, would be a party in interest to the extent it was seeking relief in his shareholder capacity. Id. at 253. The court nevertheless found it would be an inappropriate exercise of discretion to reopen the case. Id.

The Court concludes, at least in the context of reopening a Chapter 11 case, the better approach is to evaluate the request by all potential "parties in interest" as defined by section 1109 by looking at the financial and legal stake of the movant seeking to reopen the case.

In this case, Mr. Ware is not seeking to reopen the case to accord relief to himself, since he is not the Debtor. Mr. Ware does not assert any stake in reopening the bankruptcy case premised on relief to which he could be entitled as a creditor, such as administration of newly discovered assets. He does not seek additional distributions on a claim. And even if he did, no assets exist to distribute. Mr. Ware is also not a trustee, and no trustee was appointed in the Chapter 11 bankruptcy case.

Instead, Mr. Ware seeks to reopen the case for the primary purpose of vacating the dismissal of this bankruptcy case in 2003 and taking other actions personally against the Subscribers. Mr. Ware contends he is a party in interest with standing to seek to reopen the case. At the hearing before the Court on April 15, 2003, Mr. Ware stated he owned 200,000-300,000 shares in the Debtor worth approximately $160,000. The Debtor's sworn Schedules do not disclose any such interest, so it is not clear whether Mr. Ware did, or does, in fact own an equity security interest in the Debtor (to the extent the Debtor exists and has shares—Mr. Ware contends GMC is an unincorporated business entity, so it is not clear that it has any shares to issue). To the extent Mr. Ware was, or still is, a shareholder of the Debtor and is seeking relief in his shareholder capacity, it seems he would fall within the parameters of a "party in interest." He must, however,

still demonstrate he has constitutional standing and establish grounds to reopen the case. Because his standing to reopen the case turns on the reasons for reopening and the relief requested, the Court will address his standing as it addresses the relief requested.

iii. Reopening is not proper

As an initial matter, Mr. Ware has not paid the required $1167 filing fee for a motion to reopen, so granting the motion is improper. Turning to the merits, Mr. Ware is seeking to reopen the case "for cause" to have the Dismissal Order vacated. "The Code does not define 'other cause,' and the decision to reopen is discretionary." Env't Wood Prod., 609 B.R. at 912; In re Judson, 586 B.R. 771, 772 (Bankr. C.D. Cal. 2018). A bankruptcy case should not be reopened where it would be a futile exercise or a waste of judicial resources. See Redmond v. Fifth Third Bank, 624 F.3d 793, 803 (7th Cir. 2010). If the moving party cannot obtain the substantive relief which it intends to seek, "then there is no reason to grant a motion to reopen." In re Frazer/Exton Dev., 503 B.R. 620, 635 (Bankr. E.D. Pa. 2013). "The question of whether to reopen 'depends upon the circumstances of the individual case.'" Env't Wood Prod., 609 B.R. at 912 (citations omitted). A bankruptcy judge may consider a number of nonexclusive factors in determining whether to reopen, including:

> (1) the length of time that the case was closed;
> (2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case;
> (3) whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum;
> (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;
> (5) the extent of the benefit to *any party* by reopening; and
> (6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

Env't Wood Prod., 609 B.R. at 912.

A number of these factors support denial of Mr. Ware's motion to reopen. First, this case was closed 19 years ago in 2003. "As the time between closing of the estate and its reopening increases, so must also the cause for reopening increase in weight." In re Geo Specialty Chem. Ltd., 577 B.R. 142, 179 (Bankr. D.N.J. 2017); In re Nylon Net Co., 225 B.R. 404, 405 (Bankr. W.D. Tenn. 1998) ("It is well settled that the greater the elapse of time between the closing of the bankruptcy case and the request to reopen, the more compelling the reason for reopening the case should be."). Reopening a case that was dismissed and closed 19 years ago would be extraordinary and, as discussed below, no compelling reason exists to reopen the case. The Debtor's estate terminated on the entry of the Dismissal Order and all of the estate property revested in the Debtor under section 349(b)(3). There is therefore no estate to be administered. Moreover, the lengthy delay is prejudicial to creditors who may not still be in existence, have purged files, or taken actions in reliance on the dismissal of the bankruptcy case.

Further, "[c]ourts routinely decline to exercise their discretion to reopen bankruptcy cases where the parties are seeking or could seek relief in a competent alternative forum." In re HBLS, L.P., 468 B.R. 634, 639 (Bankr. S.D.N.Y. 2012). This is especially true if the movant already sought and failed to obtain the same substantive relief in another forum, which may invoke preclusion doctrines. In re Neil's Mazel, Inc., 492 B.R. 620, 628 (Bankr. E.D.N.Y. 2013). Here, Mr. Ware's complaint seems to be that the Subscribers did not have a valid claim in the bankruptcy case and were not parties in interest authorized to seek relief in the case. Putting aside the fact the Debtor filed the case and the Debtor filed the motion to reject executory contract, the granting of which would create a claim, 11 U.S.C. 502(g)(1), Mr. Ware has contested the Subscribers' claims in multiple other forums. The litigation began in the SDNY Case, and then continued in the criminal action for contempt 04-cr-1224 (SDNY). Most recently, Mr. Ware has lodged complaints

about the Subscribers in 22-cv-3409 (SDNY). The validity of the Subscribers' claims need not be decided by the Bankruptcy Court and is not relevant to the disposition of the bankruptcy case.

Courts also decline to reopen cases where there is no merit to the ultimate relief being requested. See, e.g., Cohen v. CDR Creances S.A.S. (In re Euro–Am. Lodging Corp.), 549 Fed.Appx. 52, 54 (2d Cir. 2014). Where the ultimate relief being sought has no merit, reopening the case would be "meaningless." State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir. 1996); In re Atari, Inc., 2016 WL 1618346, at *11 (Bankr. S.D.N.Y. Apr. 20, 2016); In re Hashiman, 2020 WL 5914605 (B.A.P. 9th Cir. Oct. 5, 2020).

Here, the ultimate relief Mr. Ware seeks is for the Court to vacate the Dismissal Order under Fed. R. Bankr. P. 9024, which incorporates Fed. R. Civ. P. 60. The rule permits relief from a final judgment, order, or proceeding in certain circumstances. Fed. R. Civ. P. 60; Fed. R. Bankr. P. 9024. The decision to alter or amend a judgment is highly discretionary. Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1238-39 (11th Cir. 1985).

Mr. Ware alleges a fraud has been perpetrated on the Court by the Subscribers justifying relief under Rule 60(d)(3) and, further, that the Subscribers' claims are invalid as described above, which the Court construes as seeking relief under Rule 60(b). Mr. Ware does not have standing to pursue relief under Rule 60(b).

Rule 60(b) states a court may grant relief from judgment to "a party or its legal representative." In re Remington Park Owners Ass'n, 548 B.R. 108, 115 (Bankr. E.D. Va. 2016). The term "legal representative" means not only a duly appointed legal representative, but also individuals in a position tantamount to that of a party—i.e., nonparties whose interests are directly affected by the final judgment, that is, one who is in privity with a party. See id.; In re El Paso Refinery, LP, 37 F.3d 230, 234 (5th Cir. 1994). The term was intended to reach "only those

individuals who were in a position tantamount to that of a party or whose legal rights were otherwise so intimately bound up with the parties that their rights were directly affected by the final judgment." Kem Mfg. Corp. v. Wilder, 817 F.2d 1517 (11th Cir.1987).

Many courts have specifically held that an attorney does *not* qualify as a "legal representative" of a party for purposes of Rule 60(b) and, "[e]ven if the term 'legal representative' were construed to include a party's attorney-at-law, the term certainly should not extend to a party's *former* counsel." In re El Paso Refinery, LP, 37 F.3d 230, 234 (5th Cir. 1994). Mr. Ware is not the Debtor—GMC is a separate business entity. Mr. Ware also did not represent the Debtor, Mr. Gordon did and, even then, "legal representative" does not include a party's former counsel. Mr. Ware has not established he is in a position "tantamount" to that of the Debtor, or that his rights are so intimately bound up with the Debtor's that his rights were directly affected by the Dismissal Order. A remote pecuniary interest like that of a putative shareholder does not suffice. He does not have standing to pursue a Rule 60(b) motion.

On the other hand, Mr. Ware's standing to request relief under Rule 60(d)(3) is not limited to parties or their legal representative, but the moving entity must still have constitutional standing. See, e.g., In re Old ANR, LLC, 2019 WL 2179717, at *7 (Bankr. E.D. Va. May 17, 2019); Gache v. Hill Realty Assocs., LLC, 2014 WL 5048336, at *4-5 (S.D.N.Y. Sept. 22, 2014). Mr. Ware must show he has an injury in fact as a shareholder of GMC. The injury to his shareholder interest must be "actual or imminent," not "conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Here, Mr. Ware's alleged interest as a shareholder is only hypothetically at stake in this case. Mr. Ware contends that, if the case was reinstated, he would ultimately be entitled to funds. But the case was dismissed 19 years ago. No evidence has been presented or even alleged that the Debtor is still in business. The Court surmises the Debtor is not still in business

given Mr. Ware's convictions on securities fraud involving GMC. No evidence has been presented that assets still exist to be distributed to creditors, much less to shareholders. What Mr. Ware really wants, he is not entitled to: undoing his conviction and judgments against him. Since he has shown no particular injury in his capacity as shareholder, the Court concludes he does not have standing to pursue a Rule 60(d)(3) motion. But, if he did have standing, Mr. Ware would not be entitled to relief under Rule 60(d)(3).

Rule 60(d)(3) allows for relief from a final judgment if the movant can show "fraud on the court." Fed. R. Civ. P. 60(d)(3). "There is no statute of limitations for fraud on the court." In re Roussos, 541 B.R. 721, 729 (Bankr. C.D. Cal. 2015). Where relief from a judgment is sought due to fraud on the court, the fraud must be established by clear and convincing evidence. Booker v. Dugger, 825 F.2d 281, 283 (11th Cir. 1987). "[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978). Stated differently, the movant must show an "unconscionable plan or scheme" to improperly influence the court's decision. Id. Fraud between parties does not constitute fraud on the court, as it does not carry the same threat of public injury. S.E.C. v. ESM Group, Inc., 835 F.2d 270, 273 (11th Cir. 1988).

Mr. Ware has not plead any evidence that the Subscribers perpetuated a fraud on the Court or that the Court relied in any way on any misrepresentations of the Subscribers. As described above, even if the Subscribers had no claim in the bankruptcy case, the Court would not vacate the Dismissal Order. It was also entered in response to the U.S. Trustee's motion and the Debtor consented. Mr. Ware's conclusory averments are insufficient to sustain his evidentiary burden on the issue. Lustig v. Stone, 2019 WL 11660556, at *11 (S.D. Fla. Apr. 29, 2019), aff'd, 813 F.

App'x 461 (11th Cir. 2020) (conclusory statements of nefarious conduct are insufficient to establish fraud by clear and convincing evidence for purposes of Rule 60(d)(3)). Mr. Ware's allegations of "fraud" stem entirely from a purported scheme among the Subscribers and subsequent developments years later in the law on criminal usury and the litigation with the Subscribers. Mr. Ware offers only a rehash of previously rejected arguments. Furthermore, Mr. Ware fails to identify any improper misconduct designed to influence the decision of the Court, fabrication of evidence, or other such fraud on the court, as opposed to fraud between parties. Accordingly, Mr. Ware has not established a basis for relief under Rule 60(d)(3).

Mr. Ware does not cite to Rule 60(b) in his most recent motion to vacate (Doc. No. 84), but he did reference it in his 2012 Motion to Reconsider of which he complains. As discussed above, he does not have standing to bring such a motion, under the terms of Rule 60(b) or under Article III of the Constitution. But even if he did, he would not succeed in his request. As the Eleventh Circuit pointed out multiple times, motions under Rule 60(b)(1)-(b)(3) must be brought within one year. Fed. R. Civ. P. 60(c)(1). Even his 2012 Motion to Reconsider was filed way beyond that period. Motions under Rule 60(b)(4), (b)(5), and (b)(6) must be brought within a reasonable time, Fed. R. Civ. P. 60(c)(1), and even the 2012 Motion to Reconsider was brought nine years after the Dismissal Order was entered.

Mr. Ware has not established a basis for relief under Rule 60(b)(4) because the Dismissal Order is not void. The concept of a void judgment is narrowly construed. "A judgment is not void . . . simply because it is or may have been erroneous. . . . . Instead, Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." United

Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 270 (2010) (cites omitted). The Dismissal Order is not based on any jurisdictional error. Thus, the judgment is not void.

No basis exists for setting aside the Dismissal Order under Rule 60(b)(5). Rule 60(b)(5) applies only to those judgments with prospective application. In re Macklin, 2015 WL 1945160, at *24 (Bankr. E.D. Cal. Apr. 8, 2015), aff'd sub nom. Macklin v. Deutsche Bank Nat'l Tr. Co., 2015 WL 9274103 (E.D. Cal. Dec. 21, 2015). Most often, Rule 60(b)(5) arises in the context of "institutional reform litigation" or prospective injunctions where the prospective actions are "reviewed for inequitable application because of changed circumstances." Lee v. Marvel Enters., Inc., 765 F.Supp. 2d 440, 451 (S.D.N.Y. 2011). No basis exists for setting aside the Dismissal Order under Rule 60(b)(5). Mr. Ware's request for relief does not arise in the context of "institutional reform litigation" and does not involve a prospective injunction. Here, the Dismissal Order has not been satisfied, released or discharged. Consequently, even if there was a subsequent change in law after the bankruptcy case was dismissed, that does not provide a basis for relief here.

Mr. Ware has articulated no basis that justifies relief under Rule 60(b)(6) as to the Dismissal Order. This section affords the Court some discretion to address issues raised by the parties that necessitate the setting aside of a prior order or judgment. However, it is not meant to supersede the requirements of Rule 60(b)(1) through (5). In other words, a Rule 60(b)(6) motion must be based on some reason other than those stated in clauses (1)-(5). Solaroll Shade and Shutter Corp., Inc. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1133 (11th Cir. 1986); see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993). The relief available under Rule 60(b)(6) is limited and is meant "only for extraordinary circumstances." Toole v. Baxter Healthcare Corp., 235 F.3d 1307, 1316 (11th Cir. 2000) (quoting Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1288 (11th Cir. 2000)). To justify relief under Rule 60(b)(6), "a

party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." Pioneer, 507 U.S. at 393 (citing Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 863 (1988)). The circumstances are not extraordinary to warrant reconsideration of the Dismissal Order.

For all these reasons, the Court finds Mr. Ware offers no circumstances that would constitute grounds for vacating the dismissal order under Rule 9024. Accordingly, the Court finds no basis to reopen this case or otherwise vacate the dismissal.

**g. Whether the bankruptcy case should be transferred**

Mr. Ware contends the bankruptcy case should be transferred to the Southern District of New York.

Bankruptcy Rule 1014(a)(1) requires a timely motion of a party in interest to request transfer of a case. Fed. R. Bankr. P. 1014(a)(1); see also In re Peachtree Lane Assocs., Ltd., 188 B.R. 815, 832 (N.D. Ill. 1995) (considering whether a movant qualified as a "party in interest" under section 1109 for purposes of a motion to transfer venue). To the extent Mr. Ware is a shareholder of the debtor and is seeking relief in his shareholder capacity, he could be a "party in interest" (the Court notes, however, Mr. Ware has not established he is in fact a shareholder). But he must still demonstrate he has constitutional standing. See Peachtree, 188 B.R. at 828 (movant must demonstrate legally protectable interest in the venue). He has failed to do so. But even if he had standing, the court could not and would not transfer a closed case.

Bankruptcy Rule 1014(a)(1) authorizes a court to transfer a properly venued case (in accord with 28 U.S.C. § 1412). If the case is improperly venued, Bankruptcy Rule 1014(a)(2) states the case may be dismissed or transferred (in accord with 28 U.S.C. § 1406). In both instances, the court must determine "that the transfer is in the interest of justice or for the convenience of the

parties." Fed. R. Bankr. P. 1014(a) & (b). Bankruptcy Rule 1014 requires a timely motion and hearing with prior notice to the petitioners, the United States trustee, and other entities as directed by the court. Id. Transferring venue of a bankruptcy case is not to be taken lightly, In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002), and the party seeking a change of venue has the burden of proof, which must be carried by a preponderance of the evidence. In re Lehman Bros. Holdings Inc., 2013 WL 5908057, at *5 (Bankr. S.D.N.Y. Nov. 4, 2013).

Mr. Ware has not carried his burden as he has presented no evidence to support transferring the bankruptcy case. His request to transfer the case is far from timely, and the Court notes it was Mr. Ware who initially filed the bankruptcy petition in the Northern District of Georgia and presumably selected this venue for the bankruptcy case. In any event, there is no case for the Court to transfer—the case was dismissed 19 years ago. While a court "has the authority to transfer a case even where it lacks personal jurisdiction over it, once . . . dismissed . . ., the court cannot then transfer the case to another district." Mirman v. Feiner, 915 F. Supp. 2d 282, 284 (E.D.N.Y. 2013) (cites omitted); Marengo Films, Inc. v. Koch Int'l LLC, 2003 WL 21435728, at *5 (N.D. Tex. June 16, 2003) (since petition was already dismissed, it was not within the interest of justice to transfer the case). The Court therefore finds no basis to transfer the bankruptcy case.[5]

**h. Referral to the Department of Justice, State Bar, SEC, or other investigative bodies**

Mr. Ware asks the Court to refer this matter to the Department of Justice, to direct the SEC to begin an enforcement action against the Subscribers and others, and to ask the Georgia Bar to investigate the Subscribers' attorneys and others.

[5] Mr. Ware asks the Court to ask the AO to transfer the case to the Southern District of New York. The AO does not have authority to transfer cases. See Fed. R. Bankr. P. 1014(a) (providing "the court . . . may transfer the case" and "the court . . . may dismiss the case or transfer it") (emphasis added).

Pursuant to 18 U.S.C. § 3057, the Court, in limited circumstances, shall refer the question of whether a potential federal bankruptcy crime has been committed to the United States Attorney for investigation. That statute provides in relevant part:

> Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

18 U.S.C. § 3057(a). Pursuant to this provision, a judge may report certain conduct to the United States Attorney, but the Court has no authority to determine whether a prosecution should occur. In re Refrigeration Station, Inc., 1999 WL 33581627, *2 (Bankr. S.D. Ga. Dec. 15, 1999). A court is compelled to report facts whenever "reasonable grounds exist for a belief that a violation of the bankruptcy laws has occurred and that such violations have not been litigated before the bankruptcy and appellate courts." In re Narumanchi, 471 B.R. 35, 44 (D. Conn. 2012). The Court is not required to report all conduct since the section only covers laws relating to insolvent debtors, receiverships, or bankruptcy. Estes v. Ramirez, 2014 WL 11698007, *11 (S.D. Tex. June 13, 2014), amended in part, 2014 WL 11698095 (S.D. Tex. Aug. 7, 2014). Further, there must be some evidence for the court to form a reasonable belief a violation of bankruptcy laws has been committed. See In re Burt, 179 B.R. 297, 300 (Bankr. M.D. Fla. 1995); In re Walker, 2006 WL 3483480, *3 (Bankr. S.D. Fla. July 11, 2006). For example, a judge is not obligated to report all facts and circumstances underlying a stock transaction where there are no reasonable grounds for believing that any violations of the bankruptcy laws had been committed and where the same issue of fraud had been pleaded, argued and litigated before the bankruptcy, district, and appellate courts. In re Botany Indus., Inc., 463 F. Supp. 793, 799 (E.D. Pa. 1978), aff'd sub nom. Amalgamated Ins.

Fund of New York, Appeal of, 609 F.2d 500 (3d Cir. 1979), and aff'd sub nom. Botany Indus. Inc., in Matter of, 609 F.2d 500 (3d Cir. 1979).

Mr. Ware does not have standing to request the Court refer matters under 18 U.S.C. § 3057(a). A debtor (or its counsel or shareholder) cannot require a court to refer matters for criminal prosecution. Va. Hosp. Ctr. Arlington Health Sys. v. Akl (In re Akl), 2010 WL 1667294 (Bankr. D.D.C. Apr. 23, 2010); Mays v. Citibank, N.A., 2005 WL 6111610, *10 (S.D. Fla. Mar. 31, 2005), summarily aff'd, 180 Fed. Appx. 143 (11th Cir. 2006). This section does not directly or by implication establish any private right of action for a third party other than a federal judge, receiver, or trustee to request a report or referral to the United States Attorney. Id.

Mr. Ware asks the Court to refer this case to the Department of Justice for prosecution of violations of various laws, but such relief is not available for several reasons. First, Mr. Ware lacks standing to make such a request as there is no private right of action. Second, the Court can only refer alleged violations of bankruptcy laws. Third, the record is void of any evidence to form a reasonable belief that any violations of bankruptcy laws have been committed. Accordingly, there is no basis to refer this case to the United States Attorney for prosecution and the request is denied. The Eleventh Circuit determined a similar request in 2016 was frivolous.

Mr. Ware also requests the Court ask the Georgia Bar to investigate the Subscribers' attorneys and others. Pursuant to Bankruptcy Local Rule, attorney disciplinary matters are governed by Rules 83.1(C) and 83.1(F) of the Civil Local Rules for the District Court for the Northern District of Georgia. Local Rule 83.1(F)(3) provides, in relevant part, that "complaints alleging professional misconduct by an attorney admitted to practice in this Court . . . must be submitted . . . in writing and must state with particularity the basis for the allegations. Complaints of professional misconduct must be under oath." Upon receiving a complaint of professional

misconduct made under Local Rule 83.1(F)(3), the court must determine: "(i) whether the complaint should be terminated because the allegations are unjustified, frivolous, unsupported, or insubstantial; (ii) whether, for members of the State Bar of Georgia, the complaint should be referred to the State Disciplinary Board as a formal or informal complaint[.]" LR83.1(F)(4); see also Cohran v. State Bar of Georgia, 790 F. Supp. 1568, 1573 (N.D. Ga. 1992) (explaining the Office of the General Counsel of the State Bar of Georgia has the power to screen complaints against members of the bar and to "dismiss those complaints which are unjustified, frivolous, patently unfounded or which fail to state facts sufficient to invoke the disciplinary jurisdiction of the State Bar of Georgia.").

Mr. Ware has not set forth with particularity any allegations of professional misconduct. Instead, he has made a series of unsupported general allegations about the Subscribers' counsel. The Court notes, once again, that the bankruptcy case was pending 19 years ago; it is not clear that any of the counsel involved in the case are even still practicing law. Moreover, the issues alleged have been unsuccessfully litigated by Mr. Ware in other courts. The Court determines Mr. Ware has not set forth a basis for a referral to the State Disciplinary Board and, accordingly, declines to ask the State Bar to investigate attorney conduct.

Mr. Ware asks the Court to direct the SEC to begin an enforcement action against the Subscribers. The SEC is the agency required to enforce the securities laws, In re Hodge, 216 B.R. 932, 936 (Bankr. S.D. Ohio 1998), and the SEC retains the power to "make such investigations it deems necessary to determine whether any person has violated or is about to violate any [securities law.]" 15 U.S.C. § 78u(a)(1). All SEC investigations are conducted privately, and the Court cannot order the SEC to investigate. See *How Investigations Work*, U.S. Securities and Exchange Commission, https://www.sec.gov/enforce/how-investigations-work.html. Should the

enforcement division of the SEC find that an investigation is needed, it can make that determination. See In re Colin, Hochstin Co., 41 B.R. 322, 326 (Bankr. S.D.N.Y. 1984). The SEC has in fact already prosecuted Mr. Ware and obtained a criminal conviction against him, so it seems unlikely they will conduct an additional investigation. The securities issues alleged have been unsuccessfully litigated by Mr. Ware in other courts, and the Court determines Mr. Ware has not set forth a basis to direct the SEC to investigate.

**i. Recusal**

Mr. Ware asks that this judge "resign," which the Court interprets as a request for recusal. Recusal of this judge from hearing any further matter in this case is governed by 28 U.S.C. § 455(a), which provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The appropriate test under Eleventh Circuit law is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). The Court will "not consider the perceptions of idiosyncratic, hypersensitive, and cynical observers." Id. (cites omitted). And "the judge need not recuse himself based on the 'subjective view of a party' no matter how strongly that view is held." United States v. Sammons, 918 F.2d 592, 599 (6th Cir. 1990) (cites omitted). Further, a judge is not "'recusable for bias or prejudice [when] his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings.'" Tucker v. Mukamal, 2015 WL 5166276 at *2 (11th Cir. Sept. 4, 2015) (citing Liteky v. United States, 510 U.S. 540, 551 (1994)). A judge is not disqualified by a litigant's suit or threatened suit against him. United States v. Ford, 293 F. Supp. 3d 1138, 1140 (E.D. Cal. 2018).

Section 455 "does not invite recusal whenever it is requested by a party." Guthrie v. Wells Fargo Home Mortg., N.A., 2015 WL 1401660 at *3 (N.D. Ga. March 26, 2015). In fact, "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." Id. (cites omitted). "[C]ourts must exercise great care in considering motions for recusal so as to discourage their use for purposes of judge shopping or delay[.]" Barna v. Haas (In re Haas), 292 B.R. 167, 175 (Bankr. S.D. Ohio 2003).

Importantly, "it is the facts, not the movant's allegations, that control the propriety of recusal." Guthrie, 2015 WL 1401660 at *3. "Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.'" United States v. Cerceda, 188 F.3d 1291, 1293 (11th Cir. 1999) (cites omitted). Furthermore, allegations made under 28 U.S.C. § 455 need not be taken as true. Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1227 (10th Cir. 1987). Finally, motions to recuse under Section 455 "are typically decided by the presiding judge." Guthrie, 2015 WL 1401660 at *3.

Mr. Ware's allegations seem to be that this judge cannot render a fair judgment. This is not true. Moreover, the Supreme Court has recognized that recusal is not required even if the judge has formed a negative opinion of the party, except in rare circumstances. "The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced where properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. Liteky, 510 U.S. at 550-51. The Court has no knowledge of this case except through Mr. Ware's pleadings. Mr. Ware's allegations do not form a legal basis for recusal of the Judge.

**j. Limitation on Future Filings**

As described at the outset, Mr. Ware sends documents to chambers almost daily. Since March 2021, the docket reflects over 200 additional entries. This is simply absurd.

A litigant's right of access to the courts is neither absolute nor unconditional. In re Armstrong, 309 B.R. 799, 805 (B.A.P. 10th Cir. 2004). "Litigants who file frivolous, abusive papers 'interfere with the orderly administration of justice.'" In re Meltzer, 535 B.R. 803, 820 (Bankr. N.D. Ill. 2015). The Eleventh Circuit "repeatedly has held that federal courts have the power to manage their dockets and curb vexatious litigation." United States v. Maass, 2005 WL 2298296, at *3 (11th Cir. Sept. 22, 2005) (citing Martin-Trigona v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993); Copeland v. Green, 949 F.2d 390 (11th Cir. 1991)). Bankruptcy courts have inherent powers to control the course of litigation before them. Armstrong, 309 B.R. at 805. That power is supplemented by 28 U.S.C. § 1651(a) and 11 U.S.C. § 105(a). In re Agrawal, 2018 WL 4850376, at *1 (Bankr. W.D. Okla. Oct. 4, 2018). The "All Writs Act," 28 U.S.C. § 1651(a), authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." By its terms, the All Writs Act applies to bankruptcy courts to regulate the activities of abusive litigants. In re Melcher, 2014 WL 1410235, at *9 (B.A.P. 9th Cir. Apr. 11, 2014).

Dissatisfaction with the outcome of a bankruptcy case does not entitle a litigant to file frivolous documents after the case is over. In re Packer Ave. Assocs., 884 F.2d 745, 748 (3d Cir. 1989). An injunction limiting a litigant's filings is appropriate where necessary to prevent undue interference with the orderly administration of bankruptcy proceedings. In re Amir, 2013 WL 5302549, at *2-3 (Bankr. N.D. Ohio Sept. 18, 2013). For example, in Packer, the District Court enjoined the pro se debtor from filing any further documents relating to the case, finding that 27

frivolous filings were an "unwarranted expenditure of administrative and judicial time and resources." Packer, 884 F.2d at 748.

The Court finds the more than 200 submissions in less than two years in this case closed since 2003 is abusive and frivolous. Mr. Ware has continued filing papers requesting the same relief despite a denial of three requests for mandamus by the Eleventh Circuit. The papers are filed almost daily and vary with the court from which Mr. Ware requests relief. But these requests for relief are outdated and simply not available in this Court. For example, in addition to the requests for relief addressed in this Order, he has asked the Court to determine the Subscribers were unregistered broker-dealers; to require the Subscribers to show cause as to why they are not liable to Mr. Ware, GMC, and "others" for their criminal conduct; to notify the U.S. Attorney to vacate the New York criminal proceedings; to notify the SDNY courts that all SDNY proceedings have been vacated, abrogated, and annulled; to refer district court judges, judges and trustees of this Court, the U.S. Trustee, the Subscribers, their counsel, and his criminal attorneys to the Department of Justice. He has alleged that the Court and its employees have participated in collection of a RICO loan sharing debt and violated RICO and that they are in "contempt" of the order in the SDNY Case dismissing that case. These documents contain incendiary allegations against judges of every court who come in contact with this case without any basis and some derogatory and inappropriate language. They misstate what has happened in other courts. Mr. Ware is a disbarred attorney but, even so, he knows better.

As stated above, the Court will instruct the Clerk to cease filing documents that are emailed, or that are sent to chambers, or that are copies of pleadings in other cases, or correspondence to or from anyone. But the Court believes Mr. Ware should be barred from filing any more pleadings, documents or papers of any kind in this closed bankruptcy case. The case has been closed for 19

years and it is simply over. Because of the age of the closed case, there is no reason for this Court to permit filings upon review. This Order will provide Mr. Ware with 14 days to show cause why the court should not bar him from filing, sending, or otherwise delivering documents for filing in this case.

## III. CONCLUSION

As set out above, Mr. Ware is not entitled to any of the relief he seeks, either individually or on behalf of the Debtor. It is therefore

**ORDERED** that all relief requested by Mr. Ware, whether in his individual capacity or as "legal representative" of the Debtor, is **DENIED** including without limitation:

- his request to reopen this case;
- his request to vacate the dismissal in this case or deem it null and void;
- his request to reinstate the automatic stay in this case;
- his request to refer any person or entity to the Department of Justice, the Securities and Exchange Commission, the Georgia Bar or any other body for investigation;
- his request for a status conference;
- his request to transfer this bankruptcy case to the bankruptcy court in the Southern District of New York or ask the Administrative Office of the Courts to make such a transfer;
- his request for this Court to "validate its 'Article 3 jurisdiction'";
- his request for this Judge to resign or recuse herself;
- his request for the Court to issue show cause orders to the Subscribers, their counsel and others;
- his request for the Clerk to docket certain undocketed documents;

- his request to find the Clerk violated her duties and the rules regarding filing and docketing and certification of the docket.

It is **ORDERED FURTHER** that the Clerk must only place on the docket of the Group Management case papers properly filed with the Clerk (not emailed) and which are orders, judgments or activities reflecting requests for relief in this bankruptcy case. Any papers emailed to chambers and not delivered directly to the Clerk in accordance with Northern District Georgia Local Rules and General Orders are not filed and therefore need not be reflected on the docket.

**ORDERED FURTHER** that the Clerk need not file or docket papers delivered to the Clerk if they are copies of pleadings filed in cases other than the above-styled case, copies of correspondence sent to any person or entity, or correspondence to the Clerk.

**ORDERED FURTHER** that the clerk need not provide docket certification more than once in a 12-month period unless the Court orders otherwise.

**ORDERED FURTHER** that Mr. Ware is directed to show cause within fourteen (14) days of the date hereof as to why he should not be deemed a vexatious litigant and be prohibited from making any further filings in this closed bankruptcy case.

**END OF ORDER**

**Distribution List**

Ulysses T. Ware
The Office of Ulysses T. Ware
123 Linden Blvd.
Ste 9-L
Brooklyn, N 11226

**IT IS ORDERED as set forth below:**

**Date: December 13, 2022**

**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| GROUP MANAGEMENT CORP., | Case No. 03-93031-WLH |
| DEBTOR. | |

**ORDER DENYING REQUEST FOR CERTIFICATIONS AND CLARIFICATIONS OF THE COURT'S OCTOBER 24, 2022 ORDER AND OTHER REQUESTS FOR RELIEF**

**THIS MATTER** is before the Court on a number of pleadings filed in the name of Group Management and Ulysses T. Ware at Docs. Nos. 259, 260, 261, 264, 265, 269, 270, 271, and 273. Ulysses T. Ware ("Mr. Ware") has filed hundreds of documents in this dismissed and closed bankruptcy case seeking various forms of relief including requests to reopen this case; vacate the

dismissal in this case or deem it null and void; reinstate the automatic stay in this case; refer any person or entity to the Department of Justice, the Securities and Exchange Commission, the Georgia Bar or any other body for investigation; for a status conference; transfer this bankruptcy case to the bankruptcy court in the Southern District of New York or ask the Administrative Office of the Courts to make such a transfer; "validate its 'Article 3 jurisdiction'"; for this Judge to resign or recuse herself; issue show cause orders to the Subscribers, their counsel and others; for the Clerk to docket certain undocketed documents; and find the Clerk violated her duties and the rules regarding filing and docketing and certification of the docket. The Court addressed Mr. Ware's requests in an order dated October 24, 2022 (the "October Order").

Since the Court entered the October Order, Mr. Ware has filed multiple documents including a Request for Certifications and Clarifications of the Court's October 24, 2022 (Doc. No. 259), a Request for Immediate First Amendment Right of Access to Stolen Judicial Records (Doc. No. 260), Article III Jurisdictional Request (Doc. No. 261), a Verified Response in Opposition; Demand for Leave to Filing Injunction Hearing; and Request for other Reliefs [sic] (Doc. No. 264), a Supplemental Memorandum of Law and Appendix (Doc. No. 265), a Notice of the Prevailing Parties and Beneficiaries (Doc. No. 269), a Motion for Immediate First Amendment Access (Doc. No. 270), and a Notice of and Motion for Material Witness Order (Doc. No. 271) (collectively the "Motions").[1] The various motions largely repeat and rehash Mr. Ware's arguments, which the Court addressed in the October Order, and seek reconsideration of the denial of Mr. Ware's requests for relief.

[1] Mr. Ware also filed a Request for Stay (Doc. No. 266), which the Court addressed at Doc. No. 262.

Background

The facts are detailed in the October Order and incorporated herein. Group Management Corp ("GMC" or "Debtor") filed a Chapter 11 petition under the Bankruptcy Code on March 18, 2003. The petition, filed by "Thomas Ware" as attorney for GMC, indicated GMC was a corporation. On March 26, 2003, the Court entered an order requiring GMC to obtain new counsel because Mr. Ware had been suspended from practicing law. GMC retained Sims Gordon to represent it.

On April 10, 2003, the U.S. Trustee filed a Motion to Dismiss the bankruptcy case with prejudice or, alternatively, to convert the case to Chapter 7. The Subscribers (as defined in the October Order) filed their own Motion to Dismiss or, alternatively, a Motion for Relief from Stay, and brief. On May 20, 2003, the Court signed an order submitted and approved by the U.S. Trustee, the Subscribers, and the Debtor, and dismissed the case with a bar to refiling for 180 days. No one appealed or challenged the dismissal order. The case was closed on June 3, 2003.

This Court next heard from Mr. Ware in late 2011 when he sent letters to the chambers of Judge Murphy (the bankruptcy judge who handled the case in 2003). Mr. Ware submitted an "Emergency Motion for Fraud on the Court Proceedings" seeking relief from the 2003 dismissal, among numerous other requests. The Bankruptcy Court sent Mr. Ware a letter on July 25, 2012 informing him that the submission did not concern an active bankruptcy case. Mr. Ware continued to send documents to the Bankruptcy Court. On October 5, 2012, the Bankruptcy Court sent Mr. Ware a second letter stating that the papers did not relate to an active bankruptcy case before the Court.

From 2012 on, Mr. Ware continued to submit papers to the Court. The Court responded to Mr. Ware on October 1, 2016; February 5, 2017; April 5, 2021; April 21, 2021; June 9, 2021; June

23, 2021; and August 18, 2022. Nevertheless, the letters continued and increased in frequency. Beginning in 2021, the Court placed Mr. Ware's submissions on the docket. The Court reviewed the hundreds of submissions from Mr. Ware.

On October 24, 2022, the Court entered the October Order in which it attempted to address Mr. Ware's various concerns. The Court concluded, inter alia:

- A bankruptcy court is an Article I court, not an Article III court, but had and has jurisdiction of this case;
- The Court accurately maintained the docket in this case;
- Mr. Ware lacked constitutional standing to seek to reopen the case to vacate the dismissal;
- Reopening the case was not proper;
- The bankruptcy case should not be transferred to the Southern District of New York;
- The bankruptcy case should not be referred to the United States Attorney, Georgia Bar, SEC, or other investigatory body; and
- Recusal was not warranted.

Almost immediately, Mr. Ware started filing papers. The Motions request various relief including:

- A determination the Subscribers had no standing to seek dismissal or participate in the bankruptcy case;
- Recusal and disqualification of the judge;
- Reconsideration of the decision to not reopen or otherwise vacate dismissal of the bankruptcy case;
- A request for certification that the docket is complete;
- A criminal referral.

All of these requests have been made and considered previously. Mr. Ware also seeks additional relief including:

- A determination he has standing to seek relief because GMC is a sole proprietorship and he is its sole owner;
- Access to records relating to his mandamus petitions; and
- An opportunity for witness testimony.

For the most part, the Court construes these requests as a motion for reconsideration of the October Order. Having considered Mr. Ware's written submissions, and the entire record of this case, the Court determines reconsideration and the new relief requested is not warranted.

Reconsider Standard

Federal Rule of Civil Procedure 59, made applicable by Bankruptcy Rule 9023, permits bankruptcy courts to alter or amend an order or judgment. Fed. R. Civ. P. 59(e), Fed. R. Bankr. P. 9023. As explained by the Supreme Court, the rule provides courts with a corrective function and "may not be used to re-litigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 486, n.5 (2008) (citing 11 C. Wright & A. Miller, Fed. Prac. & Proc. § 2810.1, pp. 127-128 (2nd ed. 1995)); Banister v. Davis, 140 S. Ct. 1698, 1703 (2020). Accordingly, to prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish an error of law or fact. In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999). "[M]ere disagreement with the court's ruling is not a proper basis for seeking reconsideration under Civil Rule 59(e)." In re Bayati, 2015 WL 6470522 *5 (9th Cir. B.A.P. 2015).

Previously Considered Arguments

Mr. Ware seeks to rehash several previously rejected arguments. He argues the Court had no record on which to base the October Order, requests a determination the Subscribers had no standing, requests reinstatement of the bankruptcy case, requests recusal of the Judge, and requests a criminal referral. These are legal arguments that were previously raised and rejected, and they do not establish a basis for reconsideration.

**Record**

Mr. Ware first contends the Court had no record on which to base the October Order. That is not correct. Mr. Ware has sent the Court over 200 documents, including copies of documents he submitted to the courts (and received from the courts) in a number of cases in the Southern District of New York including 02-cv-2219, 04-cr-1224, 05-cr-1115, and 22-cv-3409. Those documents have been received and docketed in this matter. The Court considered all of those papers. The Court did not make factual determinations in the October Order. Instead, it made its legal conclusions assuming Mr. Ware's version of facts was correct. Based on that record, the Court issued the October Order. Mr. Ware has not established the Court erred in its review of the record.

**The Subscribers' Standing**

Mr. Ware contends the Subscribers and their counsel lacked Article III standing. Mr. Ware's complaint seems to be that the Subscribers did not have a valid claim in the bankruptcy case and were not parties in interest authorized to seek relief in the case and the Court erred by failing to credit his argument. Mr. Ware argues, as he has previously, that due to events occurring years after the bankruptcy case was dismissed, the Subscribers lost their "party in interest" right to file a motion to dismiss in 2003. But, standing to file a motion to dismiss is determined at the time the motion was filed. See In re Allison, 2006 WL 2620480, at *3 (Bankr. S.D. Tex. Sept. 12,

2006). In 2003, the Subscribers asserted they were creditors of the Debtor and, as such, were parties in interest. 11 U.S.C. § 1109(b). The Debtor listed the Subscribers as creditors, although disputed. The fact GMC disputed the Subscribers' claim does not eliminate their standing to file a motion to dismiss. In re Abijoe Realty Corp., 943 F.2d 121, 125 (1st Cir. 1991).

Dismissal of the SDNY Case No. 02-cv-2219 in 2007 also did not impact the Subscribers' standing to seek dismissal of the bankruptcy case in 2003. As the Court explained in the October Order, subsequent developments in the law have no bearing on whether the Subscribers could be considered "parties in interest" in 2003. That is because cases are decided in accordance with the law existing at the time of the decision. See Jones v. Preuit & Mauldin, 876 F.2d 1480, 1483 (11th Cir. 1989). Thus, developments in 2007 did not, and could not, affect the bankruptcy case proceedings in 2003.

Moreover, the Court did not determine whether the Subscribers had a claim in the bankruptcy case. The Subscribers asserted a claim in the case but, ultimately, no determination of the amount or validity of the Subscribers' claim occurred because the Debtor consented to dismissal. Dismissal of the case was also not dependent on the Subscribers' participation in the case because the U.S. Trustee had filed a Motion to Dismiss raising several grounds for dismissal. In other words, dismissal was not contingent on the Subscribers participating in the case or requesting dismissal. See In re Johnston, 149 B.R. 158 (B.A.P. 9th Cir. 1992). In any event, the Court never decided the validity of the Subscribers' claims, it merely dismissed the case, thereby returning the parties to their pre-bankruptcy status. Czyzewski v. Jevic Holding Corp., 580 U.S. 451, 454 (2017). The Court finds no basis to reconsider its determination that the Subscribers' standing to seek dismissal of the bankruptcy case in 2003 was not impacted by later litigation and subsequent developments in the law.

**Reopening or Otherwise Vacating Dismissal**

Mr. Ware has not established a basis for the Court to reconsider its determination that reopening or otherwise vacating the dismissal of the bankruptcy case is not warranted. This case was closed 19 years ago in 2003 after it was dismissed. Reopening a case that was dismissed and closed 19 years ago would be extraordinary, and Mr. Ware has presented no newly discovered evidence or a compelling reason to reopen the case. There is no estate to be administered. When a case is dismissed, the automatic stay ends and property revests in the entity in which such property was vested immediately before the commencement of the case. 11 U.S.C. §§ 349(b)(3) and 362(c)(1) and (2)(B). In other words, dismissal under section 349(b) returned the Debtor to its pre-bankruptcy status and the estate ceased to exist. 11 U.S.C. § 349(b); In re Westgate Nursing Homes, Inc., 518 B.R. 250, 255 (Bankr. W.D.N.Y. 2014); see also In re Sweports, Ltd., 511 B.R. 522, 525 (Bankr. N.D. Ill. 2014) (noting the dismissal order terminates the estate); In re Garnett, 303 B.R. 274, 278 (E.D.N.Y.2003) ("[T]here simply is no bankruptcy estate after the dismissal has been entered."). Where, as here, there is no estate to administer, reopening the case would be "meaningless." State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir. 1996); In re Atari, Inc., 2016 WL 1618346, at *11 (Bankr. S.D.N.Y. Apr. 20, 2016); In re Hashiman, 2020 WL 5914605 (B.A.P. 9th Cir. Oct. 5, 2020). Mr. Ware has not established the Court made an error of law or fact in determining the ultimate relief he seeks—reopening and reinstatement of the Chapter 11 bankruptcy case—has merit. Accordingly, there is no basis for reconsideration.

**Request for certification that the docket is complete**

Mr. Ware also asks for the Court to certify that the docket is complete. As explained in the October Order, the Bankruptcy Clerk is the official custodian of the records and dockets of the

bankruptcy court. 28 U.S.C.A. § 156(e). Pursuant to Bankruptcy Rule 5003(a), a clerk must maintain a docket and enter "each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the Courts." Fed. R. Bankr. P. 5003(a). The Bankruptcy Clerk, however, was not obligated to docket any items after the case was closed, Miller v. Johnson, 541 F.Supp. 1165, 1176 (D.D.C. 1982), actions taken by higher courts or in other jurisdictions, letters sent to chambers and the Bankruptcy Clerk, or any proposed orders. As the Court previously explained, Rule 5005 requires the Bankruptcy Clerk to keep a record of judgments, orders, and activities in the Bankruptcy Court; it does not require the Bankruptcy Clerk to docket every filing or pending activity in other cases or communications that are not filings. In re Malloy, 2022 WL 1488437, at *2 (E.D. Pa. May 11, 2022); BLR 9003-2. The Court concluded the Bankruptcy Clerk more than met her duty under Rule 5006 to accurately maintain the docket in this case. Mr. Ware has not presented anything new to suggest otherwise.

Further, the Bankruptcy Clerk has already provided certified copies of the docket to Mr. Ware on several occasions (October 5, 2012; April 5, 2021; June 23, 2021; and August 17, 2022). Mr. Ware's request for an additional certification is unnecessary and in direct contradiction to the October Order, which provided the Bankruptcy Clerk need not provide docket certification more than once in a 12-month period unless the Court orders otherwise. The Bankruptcy Clerk last certified the docket on August 17, 2022, and need not certify the docket again now.[2]

**Recusal**

Mr. Ware seeks recusal of this Judge. Recusal is governed by 28 U.S.C. § 455(a), which provides, "Any justice, judge, or magistrate judge of the United States shall disqualify himself in

[2] The Court also notes that Mr. Ware, like any member of the public, may view the docket access case information, including the docket sheet and the filed documents, at any time via the Internet through the Public Access to Court Electronic Records (PACER) system. United States Bankruptcy Court for the Northern District of Georgia, *CM/ECF Information*, https://www.ganb.uscourts.gov/cmecf-information (last accessed Dec. 8, 2022).

any proceeding in which his impartiality might reasonably be questioned." The appropriate test under Eleventh Circuit law is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988). "Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.'" United States v. Cerceda, 188 F.3d 1291, 1293 (11th Cir. 1999) (cites omitted). Section 455 "does not invite recusal whenever it is requested by a party", Guthrie v. Wells Fargo Home Mortg., N.A., 2015 WL 1401660 at *3 (N.D. Ga. March 26, 2015), and recusal is not required even if the judge has formed a negative opinion of the party. Liteky v. United States, 510 U.S. 540, 550-51 (1994).

Mr. Ware has not established grounds for disqualification. The Court has no knowledge of this case except through Mr. Ware's pleadings, and Mr. Ware has not established an error of law or fact to suggest otherwise. Accordingly, the Court finds no grounds for reconsideration of the October Order denying recusal.

**Criminal referral**

Mr. Ware asks the Court to refer this matter for criminal investigation. As previously explained, pursuant to 18 U.S.C. § 3057, the Court, in limited circumstances, may report certain conduct to the United States Attorney. In re Refrigeration Station, Inc., 1999 WL 33581627, *2 (Bankr. S.D. Ga. Dec. 15, 1999). There is no private right of action for a third party, other than a federal judge, receiver, or trustee, to request a report or referral to the United States Attorney. Va. Hosp. Ctr. Arlington Health Sys. v. Akl (In re Akl), 2010 WL 1667294 (Bankr. D.D.C. Apr. 23, 2010); Mays v. Citibank, N.A., 2005 WL 6111610, *10 (S.D. Fla. Mar. 31, 2005), summarily aff'd, 180 Fed. Appx. 143 (11th Cir. 2006). Moreover, the Court is not required to report all conduct since the section only covers laws relating to insolvent debtors, receiverships, or

bankruptcy. Estes v. Ramirez, 2014 WL 11698007, *11 (S.D. Tex. June 13, 2014), amended in part, 2014 WL 11698095 (S.D. Tex. Aug. 7, 2014). For example, a judge is not obligated to report all facts and circumstances underlying a stock transaction where there are no reasonable grounds for believing that any violations of the bankruptcy laws had been committed and where the same issues of fraud were previously litigated. See In re Botany Indus., Inc., 463 F. Supp. 793, 799 (E.D. Pa. 1978), aff'd sub nom. Amalgamated Ins. Fund of New York, Appeal of, 609 F.2d 500 (3d Cir. 1979), and aff'd sub nom. Botany Indus. Inc., in Matter of, 609 F.2d 500 (3d Cir. 1979).

Mr. Ware cannot request a referral on his own and, even if he could, he has not presented any evidence to form a reasonable belief that any violations of bankruptcy laws have been committed. Accordingly, the Court finds no basis to reconsider its prior order declining to refer this case for prosecution.

New Arguments

In his recent filings, Mr. Ware presents a series of new arguments. He contends he has standing to represent GMC because it is a sole proprietorship and he is its sole owner; requests access to all records relating to his requests for mandamus relief; and argues that testimony should be allowed. As a preliminary matter, to the extent these arguments were not previously raised, they are waived. See Banister, 140 S. Ct. at 1703 (2020); In re Thomas, 2020 WL 6939624, at *1 (Bankr. N.D. Ill. Nov. 10, 2020). But the arguments are all without merit.

**Mr. Ware's Standing**

Mr. Ware seeks reconsideration of the Court's conclusion that he does not have standing to seek various forms of relief. The October Order addressed his standing as a party in interest as an alleged shareholder and as a legal representative of the Debtor. Mr. Ware has not established any basis for the Court to reconsider its ruling that he lacks such standing. But Mr. Ware now

alleges that GMC is a sole proprietorship, he is GMC's sole owner, and he may represent GMC on his own.

A sole proprietorship "has no legal existence apart from its owner." Lattanzio v. COMPTA, 481 F.3d 137, 140 (2d Cir. 2007). Unlike corporations, sole proprietorships are not separate entities, and a sole proprietorship's income and expenses are those of its owner. In re APCO Merch. Servs., Inc., 585 B.R. 306, 318 (Bankr. E.D.N.Y. 2018); see also Sole Proprietorship Definition, Black's Law Dictionary (11th ed. 2019) ("A business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity.").

When GMC filed bankruptcy, it did so as a corporation. (Doc. No. 1 at 1). It is doubtful Mr. Ware became a sole proprietor of GMC because he was not the sole shareholder of the Debtor according to the sworn schedules filed by the Debtor in this case. (The petition states there were 720 shareholders, but Schedule H filed later listed only two shareholders, neither of whom was Mr. Ware.) He has provided no explanation of what happened to the other shareholders.

Mr. Ware has alleged GMC was dissolved, but that does not make him a sole proprietor of GMC. The dissolution of a corporation terminates the entity but, in virtually all jurisdictions, statutes provide for the continuation of its corporate existence to wind up and liquidate its business affairs. 72 A.L.R.4th 419; see also In re Bilbo, 2014 WL 689097, at *1 (Bankr. N.D. Ga. Feb. 5, 2014) (upon administrative dissolution, the corporation "continues its corporate existence," though it is restricted from carrying on any business, except that necessary for winding up its affairs and liquidating its business); Del. Code Ann. tit. 8, § 278; Fla. Stat. § 607.1405(1). If GMC was dissolved as Mr. Ware claims, it could not initiate any activity other winding up its affairs. See e.g., Gas Pump, Inc. v. Gen. Cinema Beverages of N. Fla., Inc., 263 Ga. 583, 584 (1993). If the individual shareholders and officers of a dissolved corporation continue to conduct a corporation's

business post-dissolution, and not for the purposes of winding up the former corporation's affairs, they may become personally liable for obligations incurred by the corporation during its pre-dissolution activities. In re Cedillo, 573 B.R. 405, 437 (Bankr. E.D.N.Y. 2017). If GMC were administratively dissolved, as Mr. Ware contends, the corporation did not automatically become a sole proprietorship. See Columbus Cheer Co. v. City of Columbus, 155 So. 3d 744, 746 (Miss. 2014) (finding argument that administratively dissolved corporation automatically transformed into a sole proprietorship unavailing). Furthermore, to the extent GMC exists as a sole proprietorship, it is a different entity from the corporation that filed bankruptcy and reinstating the corporate bankruptcy would not provide relief to the alleged sole proprietorship.

Further, to the extent GMC may exist as a sole proprietorship, it would not be eligible for bankruptcy relief. "A sole proprietorship is not a 'person' for purposes of the Bankruptcy Code because it is neither an individual, nor a partnership, nor a 'corporation.'" In re Know Thy Self, Inc., 2006 WL 6589908, at *3 (Bankr. N.D. Ga. Mar. 17, 2006) (citing In re Christenberry, 336 B.R. 353, 356 (Bankr.E.D.Tenn.2005); 11 U.S.C. § 101(41)). "Since it is not a 'person,' a sole proprietorship is ineligible to be a debtor in bankruptcy." Id. (citing 11 U.S.C. § 109(a)-(b)); see also In re T.W. Koeger Trucking Co., 105 B.R. 512, 515 (Bankr. E.D. Mo. 1989) (because a sole proprietor has no powers beyond that of an individual, it was ineligible to file solely as an "unincorporated company or association"). A sole proprietor, i.e., the person operating the proprietorship, can seek bankruptcy protection, but Mr. Ware is not a debtor personally, and he was not the Debtor in this case he seeks to reinstate. He has presented no basis for reconsideration of the Court's analysis of his standing.

**Request for access to judicial records**

Mr. Ware requests access to records related to his mandamus proceedings in the Eleventh Circuit Court of Appeals (Doc. No. 270). Such documents do not concern activity in this case and are not a part of the bankruptcy docket.

Pursuant to Bankruptcy Rule 5003(a), a clerk must maintain a docket and enter "each judgment, order, and activity in that case as prescribed by the Director of the Administrative Office of the Courts." Fed. R. Bankr. P. 5003(a). "Activity" generally means "something which a person . . . or group chooses to do," *Activity*, Oxford English Dictionary, https://www.oed.com/view/Entry/1958 (last visited Oct. 21, 2022), or "work performed to create a result." *Activity*, Dictionary.org, https://thelawdictionary.org/activity/ (last visited Oct. 21, 2022). Activity includes "judgments, orders, and pleadings . . . and proceedings in a case." 9 Collier on Bankruptcy ¶ 5003.03. Letters and communications to or from chambers are not filings with the Court, Rule 5005(a)(1), and need not be docketed. BLR 9003-2. Only orders, judgments and activities that concern a particular case, however, are to be entered on the docket for that case. Documents concerning events that take place elsewhere are docketed in the courts in which they take place and are not part of the bankruptcy case. In re Malloy, 2022 WL 1488437, at *2 (E.D. Pa. May 11, 2022). Accordingly, any documents relating to Mr. Ware's petitions for writ of mandamus before the Eleventh Circuit would be docketed there, not in this bankruptcy case. The relief requested in Doc. No. 270 is denied.

**Request for witness testimony**

Mr. Ware filed a Motion for Material Witness Order (Doc. No. 271) asking the Court to direct certain persons and entities to give "exculpatory and impeachment" testimony "to rebut and impeach the fraudulent claims and allegations in the Risible Show Cause Order [sic], Dkt. 256" at

the December 8 hearing. The motion also asks for access to records, as sought in Doc. No. 270, and for arrest warrants for a variety of judges and court personnel. Mr. Ware alleges the material witnesses have aided and abetted a RICO unlawful debt collection, have attempted to collect "criminal usury debt" and have violated the res judicata effect of a voluntary dismissal filed in 02-cv-2219 (SDNY). Mr. Ware contends that 29 individuals and entities, including this Judge, Judge Murphy (who handled the bankruptcy case in 2003 and has since retired), Judge Mullins (who responded to the Eleventh Circuit's request regarding Mr. Ware's mandamus relief and who has since retired), the Clerk of Court, the Office of the U.S. Attorney, the Subscribers and their attorneys, a SDNY magistrate judge, the SEC and others should be compelled to testify (Doc. No. 271). Mr. Ware alleges the individuals and entities would testify that the Subscribers have/had no claims, that they conspired with the United States Trustees' office, that the judges and court personnel conspired against him by dismissing this case and not granting his motion for reconsideration in 2012, that the bankruptcy court committed fraud in its response to Mr. Ware's request for mandamus filed in the Eleventh Circuit, and that the Court has obstructed justice by not granting the relief he seeks.

The witness testimony Mr. Ware seeks is irrelevant. The Court ruled in the October Order that, as a matter of law, Mr. Ware is not entitled to the relief he seeks, even under the facts he alleges. The Court did not attempt to resolve disputed issues of fact, but concluded their resolution was unnecessary to address the various motions. Further, this Court addressed Mr. Ware's argument that the case should be reopened, and the dismissal vacated. If he disagrees, an appeal is his appropriate remedy. Finally, Mr. Ware sought mandamus relief in 2015 in the Eleventh Circuit and any issues about that request should be addressed there. The Bankruptcy Court's response is filed there and testimony about that response has no bearing on the relief Mr. Ware ultimately

seeks here, reinstatement of the 2003 bankruptcy case. Accordingly, no basis exists to allow witnesses to testify in this case and the relief requested in the motion at Doc. No. 271 is denied.

Conclusion

For all these reasons set forth herein, the Court finds Mr. Ware offers no circumstances that would constitute grounds for reconsidering the October Order or granting the relief requested in Doc. Nos. 270 and 271. Mr. Ware attempts to relitigate issues already decided and rehashes the same arguments he has put forth in his hundreds of filings in this dismissed and closed case. He has not established an error of law or fact that would support reconsideration under Rule 9023. Accordingly,

**IT IS ORDERED** that Mr. Ware's requests for relief in Docs. Nos. 259, 260, 261, 264, 265, 269, 270, 271, and 273 are **DENIED**.

**END OF ORDER**

**Distribution List**

Ulysses T. Ware
The Office of Ulysses T. Ware
123 Linden Blvd.
Ste 9-L
Brooklyn, N 11226

**IT IS ORDERED as set forth below:**

**Date: December 13, 2022**

**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| GROUP MANAGEMENT CORP., | Case No. 03-93031-WLH |
| DEBTOR. | |

**<u>ORDER FINDING ULYSSES T. WARE IS A VEXATIOUS LITIGANT AND LIMITING HIS FUTURE FILING IN THIS CASE</u>**

On October 24, 2022, the Court entered an Order (Doc. No. 256) (the "Show Cause Order") directing Ulysses T. Ware ("Mr. Ware") to show cause within fourteen (14) days as to why he should not be deemed a vexatious litigant and be prohibited from filing, sending, or otherwise delivering documents for filing in this closed bankruptcy case. Mr. Ware responded to the Show Cause Order (Doc. No. 260) and requested the Court hold a hearing to allow him an opportunity

to respond. On November 9, 2022, the Court entered an Order and Notice of Hearing scheduling a hearing on December 8, 2022 on the portion of the Order directing Mr. Ware to show cause as to why he should not be deemed a vexatious litigant and be prohibited from filing, sending, or otherwise delivering documents for filing in this closed bankruptcy case (Doc. No. 262). Mr. Ware responded to the Show Cause Order on November 10, 2022 (Doc. No. 264). On December 8, 2022, the Court held a hearing. Mr. Ware appeared by video. Mr. Ware tendered Ex DX-1, which the Court admitted. He has also submitted pleadings since the hearing. (Doc. No. 272.) Having considered Mr. Ware's written and oral arguments and the entire record of this case, the Court now enters this order.

Applicable Law

A litigant's right of access to the courts is neither absolute nor unconditional. In re Armstrong, 309 B.R. 799, 805 (B.A.P. 10th Cir. 2004). "Litigants who file frivolous, abusive papers 'interfere with the orderly administration of justice.'" In re Meltzer, 535 B.R. 803, 820 (Bankr. N.D. Ill. 2015). The Eleventh Circuit "repeatedly has held that federal courts have the power to manage their dockets and curb vexatious litigation." U.S. v. Maass, 2005 WL 2298296, at *3 (11th Cir. Sept. 22, 2005) (citing Martin-Trigona v. Shaw, 986 F.2d 1384, 1387 (11th Cir. 1993); Copeland v. Green, 949 F.2d 390 (11th Cir. 1991)); see also In re Meltzer, 535 B.R. 803, 820–21 (Bankr. N.D. Ill. 2015) ("Federal courts have a responsibility to protect themselves from abuse, and they have 'ample authority' to do so by restricting the ability of abusive litigants to file.").

The bankruptcy court has authority to regulate vexatious litigation pursuant to section 105(a) of the Bankruptcy Code and the All Writs Act, 28 U.S.C. § 1651(a). In re Kristan, 395 B.R. 500, 511 (B.A.P. 1st Cir. 2008); In re Agrawal, 2018 WL 4850376, at *1 (Bankr. W.D. Okla. Oct.

4, 2018). Section 105 allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code." 11 U.S.C § 105; Law v. Siegel, 571 U.S. 415, 420-21 (2014). As other courts have noted, this section confers "broad powers . . . to prevent an abuse of the bankruptcy process," and grants authority to impose filing restrictions. Meltzer, 535 B.R. at 821 (citations omitted).

The "All Writs Act," 28 U.S.C. § 1651(a), authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." By its terms, the All Writs Act applies to bankruptcy courts to regulate the activities of abusive litigants. In re Melcher, 2014 WL 1410235, at *9 (B.A.P. 9th Cir. Apr. 11, 2014); see also In re Agrawal, 2018 WL 4850376, at *1 (Bankr. W.D. Okla. Oct. 4, 2018); Chandler v. O'Bryan, 445 F.2d 1045, 1056 (10th Cir. 1971) (federal court has power to enjoin harassing and vexatious litigation in appropriate circumstances), cert. denied, 405 U.S. 964 (1972).

Bankruptcy courts also have inherent power to control the course of litigation before them, which "stems from the very nature of courts and their need to be able to 'manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" U.S. v. Int'l Bd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991).

An injunction limiting a litigant's filings is appropriate where necessary to prevent undue interference with the orderly administration of bankruptcy proceedings, In re Amir, 2013 WL 5302549, at *2-3 (Bankr. N.D. Ohio Sept. 18, 2013), and the Eleventh Circuit has long recognized a court's ability to issue injunctions against abusive and vexatious litigants. In re U.S. Corp. Co., 2021 WL 1100078, at *4 (Bankr. N.D. Fla. Jan. 22, 2021). "Such injunctions may be appropriate to protect both the court and its staff, as well as the right of all litigants in the federal system." Id. (citing Procup v. Strickland, 792 F.2d 1069, 1071-74 (11th Cir. 1986) (en banc) (per curiam)). As

the Eleventh Circuit has explained, "[a] court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others, and a litigant can be severely restricted as to what he may file and how he must behave in his applications for judicial relief." Maid of the Mist Corp. v. Alcatraz Media, LLC, 388 F. App'x 940, 942 (11th Cir. 2010) (internal quotations and citations omitted). That a vexatious litigant is *pro se* offers "no impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Farguson v. MBank Houston, NA, 808 F.2d 358, 359 (5th Cir. 1986).

Courts have considerable discretion in fashioning the contours of restrictions in a particular case. See Procup, 792 F.2d at 1074; Cofield v. Alabama Pub. Serv. Comm'n, 936 F.2d 512, 518 (11th Cir. 1991); see also Baptiste v. Doe, 2020 WL 7235416, at *4 (S.D. Fla. Nov. 4, 2020), aff'd, 2021 WL 6112976 (11th Cir. Dec. 27, 2021) (restrictions imposed in particular case did not prevent plaintiff from filing whatever he wants in *other* cases). Accordingly, courts may take creative actions to discourage hyperactive litigators. Cofield, 936 F.2d at 518.

For example, in Daker v. Owens, 2022 WL 1819104 (S.D. Ga. May 27, 2022), the plaintiff filed 60 motions over the course of a year, many of which were motions to reconsider or objections to the court's prior orders. The court noted that the filings were often boilerplate, duplicative, and tangential to the merits of his claims and his litigation tactics "consumed inordinate Court resources." Id. at *1. The court, looking to take a creative step to combat the vexatious litigation, prohibited the plaintiff from filing various motions including any motion challenging the court's prior rulings in this case, such as motions for reconsideration or motions to vacate or set aside the prior orders. The court noted that the limitation did not hinder the plaintiff's ability to seek appellate review. See also Williams v. Allen, 2017 WL 1102597, at *3 (S.D. Ga. Mar. 22, 2017)

(ordering clerk shall not docket any further petitions, motions or papers in case except for a notice of appeal and directing any papers other than a notice of appeal to be returned to petitioner unfiled).

In De Long v. Hennessey, 912 F.2d 1144 (9th Cir. 1990), the Ninth Circuit Court of Appeals set out four factors for a court to consider before entering a filing restriction: 1) the litigant must be given notice and a chance to be heard before the order is entered; 2) the Court must compile an adequate record for review; 3) the court must make substantive findings about the frivolousness or harassing nature of the plaintiff's litigation; and 4) the vexatious litigant order must be narrowly tailored to closely fit the specific device encountered. Id. at 1147-48. The first two of these requirements are procedural considerations—the factors define "'[a] specific method or course of action' that district courts should use to assess whether to declare a party a vexatious litigant and enter a pre-filing order." Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057–58 (9th Cir. 2007) (citations omitted). The latter two factors are substantive considerations: "the factors help the district court define who is, in fact, a 'vexatious litigant' and construct a remedy that will stop the litigant's abusive behavior while not unduly infringing the litigant's right to access the courts." Id.

The Second Circuit Court of Appeals set forth its own set of five factors to consider in sanctioning vexatious litigants in Safir v. U.S. Lines, Inc., 792 F.2d 19, 24 (2d. Cir. 1986). The Safir factors are: 1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; 2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; 3) whether the litigant is represented by counsel; 4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and 5) whether other sanctions would be adequate to protect the courts and other parties." 792 F.2d at 24. As other courts have

noted, these factors provide a "helpful framework" for applying the substantive elements (factors three and four) of the De Long test. Molski, 500 F.3d at 1058. With this background, the Court will examine the facts of this case.

Factual Background

As detailed in the Court's Show Cause Order (Doc. No. 256), Mr. Ware has a history of vexatious litigation, in this Court and elsewhere. Group Management Corp ("GMC" or "Debtor") filed a chapter 11 petition under the Bankruptcy Code on March 18, 2003. The petition was filed by "Thomas Ware" as attorney for GMC. On March 26, 2003, the Court entered an order requiring GMC to obtain new counsel because Mr. Ware had been suspended from practicing in the Northern District of Georgia. GMC then retained Sims Gordon to represent it. On May 20, 2003, the Court dismissed the case with the Debtor's consent. No one appealed or challenged the dismissal order, and the bankruptcy case was closed on June 3, 2003.

Starting in late 2011, Mr. Ware sent letters about the dismissed and closed bankruptcy case to the chambers of Judge Murphy (the bankruptcy judge who handled the case in 2003). Her chambers responded to Mr. Ware directing him to file appropriate pleadings with the Bankruptcy Clerk. In July 2012, Mr. Ware submitted to the Bankruptcy Court an "Emergency Motion for Fraud on the Court Proceedings" seeking relief from the 2003 dismissal, among numerous other requests. The Bankruptcy Court did not docket the motion, but the Bankruptcy Clerk sent a letter on July 25, 2012, to Mr. Ware informing him that the submission did not concern an active bankruptcy case.

Mr. Ware continued to send documents to the Bankruptcy Court, to Judge Murphy, and to other judges directly. On October 5, 2012, the Bankruptcy Court sent Mr. Ware a second letter stating that the papers did not relate to an active bankruptcy case before the Bankruptcy Court for

the Northern District of Georgia. From 2012 on, Mr. Ware continued sending letters to bankruptcy judges and to the Bankruptcy Clerk. Some were addressed to the Bankruptcy Court, and others were copies of letters sent to other courts referring to other cases. The court responded to Mr. Ware's inquiries on October 1, 2016; February 5, 2017; April 5, 2021; April 21, 2021; June 9, 2021; June 23, 2021; and August 18, 2022. Nevertheless, Mr. Ware's letters continued and increased in frequency. Beginning in 2021, the Court endeavored to place these communications on the docket, even when they were not addressed to this Court and were not pleadings in this bankruptcy case.

In his submissions (see e.g., Docs. Nos. 84-91, 151-158, 165, 175-184, 187-188, 197-203, 239, 241), Mr. Ware asks a number of questions, most of which reflect a lack of understanding by Mr. Ware of the bankruptcy case. The requests for relief are also outdated and seek relief not available in this Court. For example, Mr. Ware has asked the Court to determine the Subscribers were unregistered broker-dealers; to require the Subscribers to show cause as to why they are not liable to Mr. Ware, GMC, and "others" for their criminal conduct; to notify the U.S. Attorney to vacate New York criminal proceedings against him; to notify the SDNY courts that all SDNY proceedings have been vacated, abrogated, and annulled; to refer district court judges, judges and trustees of this Court, the U.S. Trustee, the Subscribers, their counsel, and his criminal attorneys to the Department of Justice. He has alleged that the Court and its employees have participated in collection of a RICO loan sharking debt and violated RICO and that they are in "contempt" of the order in the SDNY Case dismissing that case. These documents contain incendiary allegations against judges of every court who come in contact with this case without any basis and some derogatory and inappropriate language, and they misstate what has happened in other courts. The Court ruled on all Mr. Ware's contentions on October 24, 2022. (Doc. No. 256). Since then, Mr.

Ware has submitted approximately ten additional "motions." Docs. Nos. 259-61, 264-66, 269-71, and 273. The Court ruled on these additional pleadings by order entered contemporaneously herewith.

Mr. Ware's conduct of filing paper after paper in this case is not unique. Rather, it is part of a larger pattern of frivolous, harassing, and vexatious filings. After this Court declined to docket his 2012 motion seeking reconsideration, Mr. Ware filed a petition for writ of mandamus in the Eleventh Circuit, initiating Case No. 15-12568, which the Eleventh Circuit denied. Mr. Ware then filed a motion for reconsideration, which the Eleventh Circuit denied on September 14, 2016. He filed a motion for en banc rehearing and relief, which was returned unfiled because the case was closed. The court provided, "No further relief is available from this Court." Mr. Ware then filed a petition for writ of certiorari, which the Supreme Court denied.

Mr. Ware filed a second unsuccessful petition for writ of mandamus followed by a third, which was docketed on June 23, 2016, as Case No. 16-13978. Mr. Ware filed a motion to reconsider the denial of his third mandamus petition, which the Court of Appeals denied on June 16, 2017. Mr. Ware then moved for clarification of the order denying his motion for reconsideration, which the Court of Appeals considered. It entered an order on November 1, 2017, clarifying its ruling on timeliness, standing, and the merits of the Rule 9024 motion. Mr. Ware filed a second motion for clarification. On March 1, 2018, the Court of Appeals provided further clarification on the applicable legal standards and denying the second motion for clarification to the extent Mr. Ware sought clarification of matters beyond the scope of the Eleventh Circuit's prior orders. The docket indicates that when Mr. Ware filed yet another request for clarification with the Court of Appeals, it was returned on March 23, 2018, unfiled because a party may not file a request for "reconsideration of a denied Application to file a Second or Successive Petition."

Mr. Ware has also filed extensive papers in other courts, including in Case No. 02-cv-2219 (SDNY). After that case was closed, Mr. Ware filed submissions that the Court construed as a motion for relief under Rule 60(b) of the Federal Rules of Civil Procedure. The court denied the request and directed the clerk to accept no further submissions from Mr. Ware in the case except for papers directed to the United States Court of Appeals for the Second Circuit. (Case No. 02-cv-2219 Doc. No. 102.) Mr. Ware appealed the denial of his motion, and the United States Court of Appeals for the Second Circuit denied his appeal on the ground that it was not a departure from his pattern of vexatious litigation. (Case No. 02-cv-2219 Doc. No. 106.)

Despite the admonishment to cease filing, Mr. Ware continued to file papers in Case No. 02-cv-2219. On May 17, 2019, the Court entered an order noting the case had then been closed for more than a decade. Nevertheless, Mr. Ware, a former attorney, flooded the Court with letters and filings despite admonitions to desist. The Court directed the Clerk of Court to terminate all pending motions, as the Court had previously directed the Clerk of Court not to accept further submissions from Mr. Ware in the case. The Court noted that its prior order (Case No. 02-cv-2219 Doc. No. 102) remained in effect.

Mr. Ware nonetheless continued to file papers in the closed case. On October 27, 2022, the Court clarified that the prior order limiting him from filing technically remained in effect and directing Mr. Ware to show cause as to why he should not be prohibited from filing any further papers without leave of court. (Case No. 02-cv-2219 Doc. No. 137.) Mr. Ware has since filed over a dozen letters, "motions," and other papers in response.

Mr. Ware's pattern of frivolous filing is also evident in his two criminal cases in New York. In 2004, he was indicted for criminal contempt and violating 18 U.S.C. § 401(3) in Case No. 04-cr-1224 (SDNY). He was convicted of three counts of criminal contempt and violating 18 U.S.C.

§ 401(3). The criminal case was marked closed on February 2, 2009, and the Second Circuit denied his appeal of his conviction on November 4, 2020. Mr. Ware continued, though, to "burden [the court] with a barrage of applications, requests, letters, and motions[,]" which the court reviewed and found to be "meritless and frivolous." (Case No. 04-cr-1224 Doc. No. 118.) Mr. Ware continued to submit papers, which the court docketed but stated no further action would be taken. The court cautioned Mr. Ware, "as a former attorney, to refrain from burdening [the court] with frivolous filings." (Case No. 04-cr-1224 Doc. No. 125.) Mr. Ware did not stop. He filed additional papers in the closed case seeking to dismiss the indictment. The court found, like his previous filings, the motion occurred "in the absence of any case or controversy" and was "frivolous and without merit." (Case No. 04-cr-1224 Doc. No. 130.) The court once again cautioned Mr. Ware "against filing further frivolous filings." Id. Mr. Ware continued his practice. In July 2017, the court noted that Mr. Ware had sent the court numerous letter motions over several months requesting that all previous judgments be vacated, and the indictment dismissed, among other relief. The court stated that, given Mr. Ware's litigious history, future motions would result in the imposition of filing restrictions. (Case No. 04-cr-1224 Doc. No. 152.) Despite the warnings, Mr. Ware kept at it, and, on September 11, 2017, the court directed the clerk to close all pending motions and not open any new motions absent court order. (Case No. 04-cr-1224 Doc. No. 160.) Over the next several years, Mr. Ware continued to inundate the court with filings. In an order dated July 28, 2021, the court noted that no leave was granted for Mr. Ware to make any motions or other submissions and the court would not consider any further relief sought by Mr. Ware. (Case No. 04-cr-1224 Doc. No. 222.) While all outstanding issues had been resolved, and the case had been closed for years, Mr. Ware continued to file "pleadings." On August 5, 2021, the court ordered that no further motions by Mr. Ware would be opened or docketed absent a court order

stating otherwise. (Case No. 04-cr-1224 Doc. No. 225.) Mr. Ware moved for reconsideration of that order, which the court denied. (Case No. 04-cr-1224 Doc. No. 227.)

Mr. Ware similarly proved to be a vexatious litigant in his second criminal case. The United States initiated a second criminal complaint against Mr. Ware for, inter alia, conspiracy to defraud the United States and use of manipulative and deceptive devices in connection with the sale of securities. (Case No. 05-cr-1115 (SDNY).) He was convicted on two counts. The Court of Appeals for the Second Circuit affirmed the conviction and remanded the case for sentencing. After the remand, Mr. Ware "launched a barrage of post-judgment applications and motions" which the court reviewed and found to be "uniformly and completely without merit." (Case No. 05-cr-1115 Doc. No. 149.) The court cautioned Mr. Ware to refrain "from burdening [the court] with incessant and patently frivolous applications" and directed the clerk to mark the case closed. Id. Mr. Ware submitted additional papers. The court noted that the action had been terminated and no further actions would be ordered. (Case No. 05-cr-1115 Docs. Nos. 178, 180-189.) Mr. Ware, however, continued to file letters and "pleadings." In an order dated November 26, 2013, the court noted that "since his conviction in this case, Mr. Ware has sent almost one hundred pro se letters and motions—all equally without merit." (Case No. 05-cr-1115 Doc. No. 222.) The court had directed Mr. Ware to "cease and desist his frivolous writing campaign" but he "has not heeded those orders." Id. Accordingly, the court directed the clerk to close all pending motions and not open any new ones absent court order. Id. The court further directed the clerk to return all future correspondence from Mr. Ware. Id. Mr. Ware continued his practice of filing papers, and, on July 28, 2021, the court ordered "[n]o further relief sought by [Mr.] Ware will be considered." (Case No. 05-cr-1115 Doc. No. 304.) Mr. Ware continued to file "pleadings," despite prior orders restricting him from doing so. On August 5, 2021, the court ordered that no further motions by Mr.

Ware would be opened or docketed absent a court order stating otherwise. (Case No. 05-cr-1115 Doc. No. 307.) Mr. Ware moved for reconsideration of that order, which the court denied. (Case No. 05-cr-1115 Doc. No. 309.)

When the New York courts stopped considering his requests regarding the criminal cases, Mr. Ware initiated additional litigation. In 2022, Mr. Ware filed a petition for writ of habeas corpus seeking a temporary restraining order and other injunctive relief preventing the enforcement of convictions rendered in the Southern District of New York, for his convictions and sentences to be set aside, and for him to receive new trials. In the eight months since he initiated the action, Mr. Ware has filed nearly 120 motions, letters, and other papers, which raise the same basic claims he attempts to raise in this case, although seeking a different remedy. (Case No. 22-cv-3409.)

As these cases demonstrate, Mr. Ware has a long history of submitting multiple filings in closed cases. His pattern of frivolous filings is well documented. He has been admonished time and time again to stop filing unmeritorious papers, but he has continued to barrage this Court and others with submission after submission.

Application

Upon review of Mr. Ware's history regarding this bankruptcy case, the Court finds Mr. Ware is an abusive filer and a filing restriction is warranted.

First, precedent governing the imposition of pre-filing injunctions on vexatious litigants states "[n]otice and a hearing are required if the district court sua sponte imposes a pre-filing injunction." Qureshi v. U.S., 600 F.3d 523, 526 (5th Cir. 2010). The Court provided Mr. Ware with a notice and an opportunity to contest the Court's rationale for imposing sanctions. (Doc. No. 262.) The Court held a hearing on December 8, 2022, at which Mr. Ware appeared by video. The

Court provided Mr. Ware an opportunity to respond to the Show Cause Order, which he did at Doc. No. 264. The Court also admitted into evidence DX-1 proffered by Mr. Ware (Doc. No. 272).

Mr. Ware argues filing restrictions are not appropriate because the Court has not previously entered orders warning him against frivolous filings. A warning is not required, Emrit v. Trump, 2019 WL 140107, at *3 (S.D. Ohio Jan. 9, 2019), but the Court did send Mr. Ware numerous letters (dated July 25, 2012; October 5, 2012; October 21, 2016; April 5, 2021; April 21, 2021; June 9, 2021; and June 23, 2021), returning pleadings, responding to numerous requests, informing him that his submissions did not concern an active bankruptcy case and reminding him that the case remained dismissed and closed. Further, Mr. Ware was explicitly warned, through the Show Cause Order, that filing restrictions were possible. See Rolle v. Litkovitz, 2021 WL 4169022, at *6 (S.D. Ohio Sept. 14, 2021), report and recommendation adopted, 2021 WL 4947125 (S.D. Ohio Oct. 25, 2021), aff'd, 2022 WL 16753133 (6th Cir. May 12, 2022) (show cause order provided warning). The Court also provided Mr. Ware with notice and a hearing. Mr. Ware has had ample notice that the Court was considering filing restrictions in this dismissed and closed bankruptcy case.

Second, the Court has compiled a record of Mr. Ware's multitude of filings in the Show Cause Order, which it incorporates herein. As described in the Show Cause Order, Mr. Ware is a prolific filer. Though the case has been dismissed and closed for 19 years, Mr. Ware has bombarded the Court with papers in recent years. In the last eighteen months, Mr. Ware has sent documents almost daily. Since March 2021, the docket reflects over 200 entries filed by Mr. Ware. Mr. Ware has continued filing papers requesting the same relief, despite a denial of three requests for mandamus by the Eleventh Circuit.

Third, Mr. Ware's filings are frivolous and harassing, based on both the number and content of the filings. Mr. Ware has filed 200 plus documents in this dismissed and closed bankruptcy case, most of which have been repetitive if not duplicative. This Court and the Eleventh Circuit have both repeatedly rejected Mr. Ware's claims regarding the dismissal of the bankruptcy case. He has filed similar claims in the various New York cases. His claims are without merit. Mr. Ware does not take "no" for an answer, though, and has multiplied the litigation by filing frivolous motions for reconsideration or "clarification" and posing an unnecessary burden on the Court and its personnel. Mr. Ware has also been warned by other courts to refrain from filing frivolous pleadings, and his conduct in this case is part of a larger pattern of frivolous filings, which has been documented extensively by other courts including the United States District Court for the Southern District of New York in case nos. 02-cv-2219, 04-cr-1224, and 05-cr-1115. Additionally, the content of Mr. Ware's papers is indicative of frivolousness as he often includes profane language, accuses judges and officials of crimes, and seeks remedies not available. All pleadings he has filed in all the cases have been denied or ignored, so he can have no good faith expectation of prevailing. Both the number and the content of Mr. Ware's pleadings are indicia of frivolousness.

Further, Mr. Ware is not represented by counsel, but he is a former attorney and should know better. Pro se status does not give a litigant "an unfettered license to wage an endless campaign of harassment . . . or abuse the judicial process.'" Meltzer, 534 B.R. at 771 (citations omitted). No leniency should be given to "frequent and experienced pro se litigants who have a reasonable degree of legal sophistication[.]" Id. Mr. Ware is an experienced litigant with a long history of filing frivolous papers, and his pro se status does not mitigate against filing restrictions.

Finally, the Court will narrowly tailor its limitations to closely fit the specifics of this matter: a bankruptcy case that was dismissed and closed 19 years ago. The Court will prohibit Mr. Ware from filing, sending, or otherwise delivering documents for filing in this case, except for notices of appeal and papers filed in connection therewith. The Court believes this is the appropriate sanction and that instituting a pre-filing review process of papers relating to this bankruptcy case will only further burden the Court. The Court has ruled on these issues, and, at some point, all litigation must come to an end. See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 154 (2009) ("it is just as important that there should a place to end as there should be a place to begin litigation.") (citation omitted). Mr. Ware is not completely foreclosed from accessing the Courts: if he seeks further review, he may appeal. Further, the Court's sanction only limits filing in this one case. The Court therefore concludes it is appropriate to exercise its authority under 11 U.S.C. § 105 and 28 U.S.C. § 1651(a) to enter the following injunction.

Accordingly,

**IT IS ORDERED** that Ulysses T. Ware is hereby deemed a vexatious litigant.

**IT IS FURTHER ORDERED** that Mr. Ware is hereby barred from filing any pleadings in this case except a notice of appeal to the United States District Court for the Northern District of Georgia or the Eleventh Circuit Court of Appeals and any documents necessary to prosecute the appeal, such as the designation of the record or requests for transcripts.

**IT IS FURTHER ORDERED** that the Clerk shall not file or docket any petitions, motions or papers filed by or on behalf of Mr. Ware in this case, except as provided herein. Any such prohibited papers shall be returned to Mr. Ware unfiled with a cover letter referencing this Order. If he files a notice of appeal, the Clerk shall forward a copy of this Order with the notice of appeal.

**IT IS FURTHER ORDERED** that all filing directions set out in the Show Cause Order continue to apply.

**END OF ORDER**

**Distribution List**

Ulysses T. Ware
The Office of Ulysses T. Ware
123 Linden Blvd.
Ste 9-L
Brooklyn, N 11226

**CLOSED, DISMISSED−WITH−PREJUDICE, APPEAL**

# U.S. Bankruptcy Court
# Northern District of Georgia (Atlanta)
# Bankruptcy Petition #: 03−93031−wlh

*Assigned to:* Judge Wendy L. Hagenau
Chapter 11
Voluntary
Asset

*Date filed:* 03/18/2003
*Date terminated:* 06/03/2003
*Date dismissed:* 05/21/2003
*Deadline for objecting to discharge:* 06/30/2003

***Debtor***
**Group Management Corp.**
c/o Ulysses T. Ware
The Office of Ulysses T. Ware
123 Linden Blvd, Ste 9−L
Brooklyn, NY 11226
FULTON−GA
Tax ID / EIN: 59−2919648
***aka* IVG Corp.**

represented by **Sims W. Gordon, Jr.**
The Gordon Law Firm, PC
Suite 1500
400 Galleria Parkway, SE
Atlanta, GA 30339
(770) 955−5000
Fax : (770) 955−5010

**Thomas Ware**
Rosenfeld, Goldman & Ware, Inc.
101 Marietta St.
Ste 1070
Atlanta, GA 30303
404−522−1202

***U.S. Trustee***
**Office of the United States Trustee**
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303
404−331−4437

represented by **James H. Morawetz**
Office of U.S. Trustee
362 Richard Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303
404−331−4437 x121
Fax : (404) 730−3534
*TERMINATED: 04/01/2003*

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 03/18/2003 | | 1 | Voluntary Petition (Chapter 11) Fee Collected &#036 830, Receipt Number 01025308. Disclosure Statement due by 7/16/2003. Chapter 11 Plan due by 7/16/2003. Schedule A due 4/2/2003. Schedule B due 4/2/2003. Schedule C due 4/2/2003. Schedule D due 4/2/2003. Schedule E due 4/2/2003. Schedule F due 4/2/2003. Schedule G due 4/2/2003. Schedule H due 4/2/2003. List of Equity Security Holders due 4/2/2003. Statement of Financial Affairs due 4/2/2003. Atty Disclosure State. due 4/2/2003. Filed by Thomas Ware on behalf of Group Management Corp.. (Blount, Danya) Additional attachment(s) added on 11/2/2007 (smw, ). |
| 03/18/2003 | | | Meeting of Creditors (Chapter 11) Ch. 11 First Meeting to be held on 5/1/2003 at 10:00 AM at Hearing Room 365, Atlanta. Objections for Discharge due by 6/30/2003, (Blount, Danya) |
| 03/20/2003 | | 2 | Notice of Filing of Bankruptcy Case, Meeting of Creditors & Deadlines w/Certificate of Service by BNC Service Date 03/20/03. (Admin.) (Entered: 03/21/2003) |

| | | | |
|---|---|---|---|
| 03/26/2003 | | 3 | Order to Corporate Debtor to Obtain Counsel Service by BNC Entered on 3/26/2003. (Owens, Deborah) |
| 03/28/2003 | | 4 | BNC Certificate of Service of Order Service Date 03/28/03. (Related Doc # 3) (Admin.) (Entered: 03/29/2003) |
| 03/31/2003 | | 5 | Motion to Reject Executory Contract or Lease, Motion to Set Hearing on *Motion to Reject Executory Contract; (Proposed order/notice of hearing submitted to chambers)* filed by Thomas Ware on behalf of Group Management Corp.. (Attachments: 1 Exhibit #1) (Wilson, Melanie) (Entered: 04/01/2003) |
| 04/01/2003 | | 6 | Notice of Appearance (Attorney) filed by James H. Morawetz on behalf of Office of the US Trustee. (Morawetz, James) |
| 04/08/2003 | | 7 | Notice of Appearance (Attorney) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/08/2003 | | 8 | Application to Employ *Counsel for Debtor* (related document(s)7) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Attachments: 1 Exhibit A: Declaration of Attorney) (Gordon, Sims) |
| 04/08/2003 | | 9 | Emergency Motion to Reject Executory Contract or Lease filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/08/2003 | | 10 | Order and Notice of Assignment of Hearing re: Emergency Motion to Reject Executory Contract or Lease Service by Courtroom Deputy. Entered on 4/8/2003. (related document(s)9) Hearing to be held on 4/15/2003 at 02:15 PM at Courtroom 1204, Atlanta, (Mitchell, Gregory) |
| 04/10/2003 | | 11 | Notice of Appearance (Attorney) −−*Entry of Appearance, Request for Special Notice, Request for Service of Papers, and Reservation of Rights filed by Dennis S. Meir, Kilpatrick Stockton LLP, counsel to Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership,* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. (Meir, Dennis) |
| 04/10/2003 | | 12 | Certificate of Service *of Order and Notice of Assignment of Hearing* (related document(s)10) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/10/2003 | | 13 | Motion to Dismiss Case *With Prejudice or, in the Alternative*, Motion to convert/reconvert case from 11 to 7 Fee Collected $ 0., Receipt Number N/A. filed by James H. Morawetz on behalf of Office of the US Trustee. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A") (Morawetz, James) Modified on 4/11/2003 (Meador, Sheila). |
| 04/11/2003 | | 14 | Response to Motion −−*Opposition to Emergency Motion to Reject Executory Contract* (related to motions(s)9) filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. (Meir, Dennis) |
| 04/11/2003 | | 15 | Emergency Motion to Dismiss Case −−*Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, and Request for Emergency Hearing* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A" and "B") (Meir, Dennis) |
| 04/11/2003 | | 16 | |

| | | | |
|---|---|---|---|
| | | | −−*Brief in Support of Emergency Motion to Dismiss or, in the Alternative, for Relief from the Automatic Stay, and Request for Emergency Hearing* filed by Dennis S. Meir on behalf of Alpha Capital Aktiengesellschaft, et al.. Responses due by 5/5/2003, (Attachments: 1 Exhibit "A" "B" and "C") (Meir, Dennis) Text Modified on 4/16/2003 to reflect correct wording (Wiggins, Irene). |
| 04/15/2003 | | 17 | Application to Employ *Rosenfeld, Glodman & Ware, Inc. as its attorney in for the exclusive matter of*, Emergency Motion *to Reject the Funding Agreement with c/s* filed by Thomas Ware on behalf of Group Management Corp.. (Bennington, Merrill) (Entered: 04/16/2003) |
| 04/17/2003 | | 18 | Order and Notice of Assignment of Hearing. Continued hearing on Debtor's Emergency Motion to reject executory contracts. Service by Courtroom Deputy. Entered on 4/17/2003. (related document(s)9) Hearing to be held on 4/29/2003 at 10:00 AM at Courtroom 1204, Atlanta, (Bennington, Merrill) |
| 04/23/2003 | | 19 | Order and Notice of Reassignment of Hearing of Debtor's Emergency Motion to Reject Executory Contract with Alpha capital; US Trustee's Motion to Dismiss Case with prejudice or, in the Alternative, Motion to convert case from 11 to 7; and Motion To Dismiss or, in the Alternative, for Relief from the Automatic Stay. Service by Courtroom Deputy. Entered on 4/23/2003. (related document(s)9,13,15) Hearing to be held on 4/30/2003 at 10:00 AM at Courtroom 1204, Atlanta, (mab, ) Text and Linkage Modified on 4/25/2003 (ysg, ). |
| 04/24/2003 | | 25 | Transcript of Hearing on Emergency Motion of Debtor to Reject Executory Contract. (mab, ) (Entered: 04/28/2003) |
| 04/25/2003 | | 20 | Statement of Financial Affairs (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | | 21 | Schedules *A, B, C, D, E, F, G, and H* filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | | 22 | Attorney Disclosure Statement (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | | 23 | Schedules *: List of Equity Security Holders* filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/25/2003 | | 24 | Exhibits *: Exhibit A to Voluntary Petition* (related document(s)1) filed by Sims W. Gordon Jr. on behalf of Group Management Corp.. (Gordon, Sims) |
| 04/29/2003 | | 26 | Order DENYING Application to Employ Thomas Ware as Attorney for Debtor. (Related Doc # 17) Service by BNC Entered on 4/29/2003. (mab, ) |
| 05/01/2003 | | 27 | BNC Certificate of Service of Order on Application to Employ Service Date 05/01/03. (Related Doc # 26) (Admin.) (Entered: 05/02/2003) |
| 05/09/2003 | | | Hearing on motion of Debtor to reject executory contract, Hearing on motion of the U.S. Trustee for the case to be dismissed with prejudice or for the case to be converted to Chapter 7 and Hearing on motion of Alph Capital and others for the case to be dismissed or for relief from stay. ALL Hearings reset from April 29, 2003. (related document(s)13, 15, 9, 5) |

| | | | |
|---|---|---|---|
| | | | Hearing to be held on 5/12/2003 at 02:30 PM at Courtroom 1204, Atlanta, (phd, ) |
| 05/21/2003 | | 28 | Order Dismissing Case with prejudice. Debtor ineligible to file under Title 11 for 180 days. Service by BNC Entered on 5/21/2003. (related document(s)13, 15) (mab, ) |
| 05/23/2003 | | 29 | BNC Certificate of Service of Order Dismissing Case with Prejudice Service Date 05/23/03. (Related Doc # 28) (Admin.) (Entered: 05/24/2003) |
| 06/03/2003 | | | Case Closed/Dismissed. (mab, ) Modified on 6/3/2003 (mab, ). |
| 03/22/2005 | | 30 | Transcript of Proceedings heard on 4/30/2003 at 10:00 am. (related document(s)13 Motion to Dismiss Case, , Motion to Convert/Reconvert Case to Ch. 7 (FEE), Motion to Convert/Reconvert Case to Ch. 7 (FEE) filed by Office of the US Trustee, 9 Motion to Reject Executory Contract or Lease filed by Group Management Corp., 15 Motion to Dismiss Case, filed by Alpha Capital Aktiengesellschaft, et al.) (mab, ) (Entered: 03/23/2005) |
| 06/23/2016 | | 31 | Notification of Appeal to 11th Circuit 16−13978 (yl) (Entered: 03/05/2018) |
| 03/17/2017 | | 32 | Copy of Order from 11th Circuit Court Denying Motion to WRIT of Mandamus Entered on 3/17/2017. (yl) (Entered: 03/05/2018) |
| 03/01/2018 | | 33 | Copy of Order from 11th Circuit Court Re: 16−13978. Entered on 3/1/2018. (yl) (Entered: 03/05/2018) |
| 03/08/2021 | | 34 | Letter dated March 4, 2021 from Ulysses T. Ware (scm) (Entered: 03/31/2021) |
| 04/05/2021 | | 35 | Letter dated April 5, 2021, with attachments, to Mr. Thomas Ware. (scm) |
| 04/21/2021 | | 36 | Letter dated April 16, 2021 from Mr. Ulysses T. Ware. (scm) |
| 04/21/2021 | | 37 | Letter dated April 21, 2021 to Mr. Ulysses T. Ware. (scm) |
| 05/24/2021 | | 38 | Ulysses T. Ware and group Management's Administrative Memorandum #4.01 and May 24, 2021 Memorandum #1.05 submitted to active United States Attorney (SDNY), Ms. Audrey Strauss, regarding In re Group Management corp., 03−93031−mhm (BC NDGA) Chapter 11, and United States v. Ware, 04cr1224 (SDNY) trial exhibits GX−250, GX−251, and GX−252; and FINRA's April 21, 2021, confirmation of KTS's client, unregistered broker−dealer status of Alpha Capital, AG. Filed by Group Management Corp. . (aam) Modified on 6/3/2021 (jlc). (Entered: 06/02/2021) |
| 05/29/2021 | | 39 | Exhibit #UTW−03: Ulysses T. Ware, May 29, 2021 UTW's Letter dated December 11, 2011 to Kilpatrick, Townsend & Stockton, LLP and Dennis S. Meir, Esq. Discussing KTS's fraud on the court, and conspiracy to commit bankruptcy fraud in In re Group Management Courtp., Case no. 03−93031−mhm (BC NDGA), Chapter 11 Filed by Group Management Corp. . (aam) (Entered: 06/02/2021) |
| 06/02/2021 | | 40 | |

| | | | |
|---|---|---|---|
| | | | 11 USC 1109(b) Statutory Parties in Interest Ulysses T. Ware and Group Management's Notice of Rule 33 and Rule 42(b) Criminal and Civil Contempt Proceedings filed in United States v. Ware, 04cr1224 and 05cr1115 (SDNY) and other Rule 5003 and 5006 Activities Filed by Group Management Corp. . (aam) |
| 06/09/2021 | | 41 | Transcript of Hearing on Emergency Motion of Debtor to Reject Executory Contract (originally docketed on 4/24/2003) (related document(s)25) (scm) Additional attachment(s) added on 6/9/2021 (scm). |
| 06/09/2021 | | 42 | Transcript of Proceedings heard on 4/30/2003 (originally docketed on 3/22/2005) (related document(s)30) (scm) Additional attachment(s) added on 6/9/2021 (scm). |
| 06/09/2021 | | 43 | Letter dated June 9, 2021 to Mr. Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/15/2021 | | 44 | Letter dated June 15, 2021 from Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/21/2021 | | 45 | Letter dated June 21, 2021 from Ulysses T. Ware. (scm) (Entered: 06/22/2021) |
| 06/22/2021 | | 46 | Letter dated April 22, 2021 from Ulysses T. Ware (Received on 4/22/21, docketed on 6/22/21). (scm) |
| 06/23/2021 | | 47 | Letter dated June 23, 2021 to Mr. Ulysses T. Ware. (scm) |
| 08/29/2021 | | 48 | Copy of Emergency Application for leave to file Rule 42(b) criminal and civil contempt motion in case no 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 09/08/2021) |
| 08/31/2021 | | 49 | Copy of Additional Criminal Contempt Claims filed in 08cr1115 and 04cr1224 (SDNY). (scm) (Entered: 09/08/2021) |
| 09/07/2021 | | 50 | Copy of letter to State Bar of Georgia by Ulysses T. Ware dated Sept 6, 2021. (scm) (Entered: 09/08/2021) |
| 09/13/2021 | | 51 | Letter to Judge Taylor−Swain in 04cr1224, 05cr1115 and 04cv2219. (scm) (Entered: 09/14/2021) |
| 09/13/2021 | | 52 | Petition re Brady Court Orders and Court Judgments filed in 02cv2219, 04cr1224 and 05cr1115 ( SDNY). (scm) (Entered: 09/14/2021) |
| 09/13/2021 | | 53 | Correspondence from Mr. Ware. (scm) (Entered: 09/14/2021) |
| 09/22/2021 | | 54 | Petition re Brady Court Orders and Court Judgments filed in 04cr1224 and 05cr1115 (SDNY). (scm) Additional attachment(s) added on 9/22/2021 (scm). |
| 09/24/2021 | | 57 | Documents submitted in 04CR1224 and 05CR1115 (SDNY). (scm) (Entered: 10/04/2021) |
| 09/25/2021 | | 55 | Documents filed on 05CR1115 and 04CR1224 (SDNY). (scm) (Entered: 10/04/2021) |
| 09/27/2021 | | 56 | |

| | | | |
|---|---|---|---|
| | | | Documents filed in 04CR1224 and 05CR1115(SDNY). (scm) (Entered: 10/04/2021) |
| 09/28/2021 | | 58 | Documents filed in 04CR1224 and 05CR1115 (SDNY). (scm) (Entered: 10/04/2021) |
| 11/01/2021 | | 59 | Communication from Mr. Ware to US Atty for SDNY re 04cr1224 and 05cr1115. (scm) |
| 11/08/2021 | | 60 | Copy of Pleading filed in 04CR1224 and 05CR1115. (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/09/2021 | | 62 | Materials Submitted in 04CR1224 and 05CR1115 (SDNY) In re Sealed Case (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/09/2021 | | 63 | Materials Filed in 04CR1224 and 05CR1115 (SDNY) USAO Manual/Motion to Compel. (ngs) Additional attachment(s) added on 11/10/2021 (ngs). |
| 11/09/2021 | | 61 | Materials Submitted in 04CR1224 and 05CR1115 (SDNY) (ngs) (Entered: 11/10/2021) |
| 11/10/2021 | | 64 | Brady Decisions re: Undisclosed Government Agreements in 04CR1224 and 05CR1115 (SDNY) (ngs) |
| 11/10/2021 | | 65 | Materials from Mr. Ware re: State Bar Grievance (ngs) |
| 11/12/2021 | | 66 | Mr. Ware submissions re Supervisory Writ in 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 11/19/2021) |
| 11/16/2021 | | 67 | Submission by Mr. Ware re rule 11 plea transcript in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/19/2021) |
| 11/19/2021 | | 68 | Materials submitted by Mr. Ware re Brady evidence in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/22/2021) |
| 11/22/2021 | | 69 | Materials from Mr. Ware related to 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |
| 11/26/2021 | | 70 | Part 1 of materials submitted by Mr. Ware related to Motion to Compel in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |
| 11/26/2021 | | 71 | Part 2 of materials submitted by Mr. Ware in cases 04cr1224 and 05cr 1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | | 72 | Part 3 of materials submitted by Mr. Ware related to 04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/26/2021 | | 73 | Part 4 of materials submitted by Mr. Ware in04cr1224 and 05cr1115 (SDNY). (related document(s)70) (scm) (Entered: 11/29/2021) |
| 11/28/2021 | | 74 | Materials submitted by Mr. Ware related to Motions filed in 04cr1224 and 05cr1115 (SDNY). (scm) (Entered: 11/29/2021) |
| 12/03/2021 | | 75 | Pleadings submitted by Mr. Ware re conspiracy in 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 12/06/2021) |

| | | | |
|---|---|---|---|
| 01/11/2022 | | 76 | Letter sent by Mr. Ware to Merrick Garland re 05cr1115 and 04cr1224 (SDNY). (scm) (Entered: 01/12/2022) |
| 01/17/2022 | | 77 | Official notice of material fact witness status (scm) (Entered: 01/18/2022) |
| 01/20/2022 | | 78 | Copy of Letter to Garland re Demand to Disclose Brady Exculpatory Evidence in cases 02cv2219 (SDNY), 03−0831 (D. NV), 03−93031 (BC NDGA), 04cr1224 (SDNY) and 05cr1115 (SDNY) (scm) (Entered: 01/21/2022) |
| 01/22/2022 | | 79 | NOTICE TO IMMEDIATELY CEASE AND DESIST FROM ALL CIVIL AND CRIMINAL CONTEMPTS OF THE BRADY COURT ORDERS, THE RULE 41(a)(2) FINAL JUDGMENT, AND THE AUGUST 18, 2009, FINAL JUDGMENT ENTERED IN UNITED STATES v. WARE, 07−5670 (XAP) (2d Cir.), Gov.−I,1 jointly, (the Final Judgments). (scm) (Entered: 01/24/2022) |
| 01/26/2022 | | 80 | Information delivered by Mr. Ware re investigation. (scm) (Entered: 02/01/2022) |
| 01/27/2022 | | 81 | Letter from Mr. Ware to DOJ re litigation position. (scm) (Entered: 02/01/2022) |
| 02/01/2022 | | 82 | Notice of Criminal Contempt by DOJ Prosecutors in case nos 04cr1224and 05cr1115 (SDNY). (scm) |
| 02/05/2022 | | 83 | Correspondence from Mr. Ware re Notice to Immediately Cease and Desist from all Civil and Criminal Contempts of the Brady Court Orders, et al. (scm) (Entered: 02/08/2022) |
| 03/17/2022 | | 84 | Notice of intent to move to vacate order filed by Ulysses T. Ware. (scm) (Entered: 03/18/2022) |
| 03/17/2022 | | 85 | Notice of Notice of intent to move to vacate order of dismissal filed by Ulysses T. Ware. (related document(s)84)(scm) (Entered: 03/18/2022) |
| 03/17/2022 | | 86 | First Fraud on the Court Exhibit: 1.0 filed by Ulysses T. Ware. (related document(s)84) (scm) (Entered: 03/18/2022) |
| 03/17/2022 | | 87 | Second Fraud on the Court Exhibit 2.0 filed by Ulysses T. Ware. (related document(s)84) (scm) (Entered: 03/18/2022) |
| 03/17/2022 | | 88 | Third Fraud on the Court Exhibit 3.0 filed by Ulysses T. Ware. (related document(s)84) (scm) (Entered: 03/18/2022) |
| 03/19/2022 | | 89 | Fourth Fraud on the Court Exhibit 4.0 filed by Ulysses T. Ware. (related document(s)84) (scm) (Entered: 03/22/2022) |
| 03/21/2022 | | 90 | Fifth Fraud on the Court Exhibit 5.0 filed by Ulysses T. Ware. (scm) (Entered: 03/22/2022) |
| 03/21/2022 | | 91 | Sixth Fraud on the Court Exhibit 6.0 filed by Ulysses T. Ware. (scm) (Entered: 03/22/2022) |
| 03/23/2022 | | 92 | Notice of case no 22−cv−01531 (EDNY). (scm) (Entered: 03/28/2022) |
| 03/24/2022 | | 93 | |

| | | | |
|---|---|---|---|
| | | | Letter to AUSA and Exhibit 46 in case no 22−cv−1531 (EDNY). (scm) (Entered: 03/28/2022) |
| 03/25/2022 | | 94 | Certificate of Service in 22CV1531 (EDNY). (scm) (Entered: 03/28/2022) |
| 03/28/2022 | | 95 | Service copy of Exhibit 49 in case 22 cv 1531 (EDNY). (scm) (Entered: 03/30/2022) |
| 03/29/2022 | | 96 | Service copy of Exhibit 50 in 22 cv 1531 (EDNY). (scm) (Entered: 03/30/2022) |
| 03/31/2022 | | 97 | Service copy of letter to J. Hall in 22 cv 1531 (EDNY) (scm) (Entered: 04/04/2022) |
| 04/03/2022 | | 98 | GPMT's Seventh Fraud on the Court Exhibit: 7.0 filed by Ulysses T. Ware. (scm) (Entered: 04/04/2022) |
| 04/03/2022 | | 99 | Exhibit 53 in 22 cv 1531 (scm) (Entered: 04/04/2022) |
| 04/03/2022 | | 100 | Email re Exhibit 54 in 22 vc 1531 (EDNY), no document attached (scm) (Entered: 04/04/2022) |
| 04/05/2022 | | 101 | Email re Exhibit 52 in 22 cv 1531 (EDNY). (scm) |
| 04/05/2022 | | 102 | Inquiry to counsel re legal opinion, Baker & McKenzie Opinion, and Exhibit 52 in 22 cv 1531 (EDNY) (scm) (Entered: 04/07/2022) |
| 04/05/2022 | | 103 | Exhibit 53 in 22 cv 1531 (EDNY) (scm) (Entered: 04/07/2022) |
| 04/05/2022 | | 104 | Email re Exhibit 54 in 22 cv 1531 (no document attached) (scm) (Entered: 04/07/2022) |
| 04/05/2022 | | 105 | Exhibit 55 in 22 cv 1531 (EDNY) (scm) (Entered: 04/07/2022) |
| 04/07/2022 | | 106 | Service copy of letter re alleged judicial misconduct in 22 cv 1531 (EDNY) (scm) |
| 04/10/2022 | | 107 | Actual Innocent Supplemental Claim No 15 and Notice thereof filed in 22 cv 1531 (EDNY) (scm) (Entered: 04/14/2022) |
| 04/12/2022 | | 109 | Fraud on the Court 8.0 filed by Ulysses T. Ware. (scm) (Entered: 04/14/2022) |
| 04/12/2022 | | 110 | Exhibit 56 in 22 cv 1531 (EDNY) (no document attached). (scm) (Entered: 04/14/2022) |
| 04/13/2022 | | 108 | Supplement to AIS claim in 22 cv 1531 (EDNY) (scm) (Entered: 04/14/2022) |
| 04/14/2022 | | 111 | AIS Claim 15 Supp. Ex. 8 (EDNY) (scm) (Entered: 04/27/2022) |
| 04/20/2022 | | 112 | Copy of Touhy Request in 22 cv 1531 (EDNY) (scm) (Entered: 04/27/2022) |
| 04/22/2022 | | 113 | Correspondence from Mr. Ware re 22 CV 1531 (EDNY), 04CR 1224 (SDNY), and 05cr1115(SDNY) (scm) (Entered: 04/27/2022) |

| | | | |
|---|---|---|---|
| 04/26/2022 | | 114 | Documents received from Mr. Ware re Baker & McKenzie in 02 cv 2219 (SDNY) (scm) (Entered: 04/28/2022) |
| 04/27/2022 | | 115 | Documents from Mr. Ware re transfer of case to SDNY (22 cv 03409) and letter re Baker & McKenzie (scm) (Entered: 04/28/2022) |
| 04/27/2022 | | 116 | Copy of Notice to Damian Williams and docket information re 22 cv 03409 (SDN) (scm) (Entered: 04/28/2022) |
| 04/28/2022 | | 117 | Copies of Mandala Affidavit and Demand on Damian Williams re 22 cv 03409 (SDNY) (scm) |
| 04/28/2022 | | 118 | Letter from Mr. Ware demanding reversal or vacation of all orders entered in this case. (scm) (Entered: 05/02/2022) |
| 04/29/2022 | | 119 | Motion to recuse Judge Ramos in 22 cv 3409 (SDNY) (scm) (Entered: 05/02/2022) |
| 04/29/2022 | | 120 | Notice of Material Witness Status in 22 cv 3409 (SDNY) (scm) (Entered: 05/02/2022) |
| 04/29/2022 | | 121 | Email from Mr. Ware re docketing of Notice of Material Witness Status in 22 cv 3409 (SDNY) (scm) (Entered: 05/02/2022) |
| 04/29/2022 | | 122 | Email from Mr. Ware re docketing of Brady Demand in 22 cv 3409 (SDNY) (scm) (Entered: 05/02/2022) |
| 05/02/2022 | | 123 | Service copies of Inquiry to Mr. Leghorn and exhibits filed in 22 cv 3409 (SDNY) (scm) |
| 05/02/2022 | | 124 | Brady Actual Innocent Claim and Motion to Dismiss Indictment in 04 cr 1224 and exhibits filed in 22 cv 3409 (SDNY) (scm) |
| 05/02/2022 | | 125 | Motion to dismiss indictment, memorandum of law and exhibits including memo to Dennis Meir filed in 04 cr 1224 (SDNY) (scm) |
| 05/02/2022 | | 126 | Copies of Suppressed Brady Evidence exhibits filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/04/2022) |
| 05/03/2022 | | 127 | Renewal of 28 USC 2243 Motion filed in 22 cv 3409 (scm) (Entered: 05/04/2022) |
| 05/03/2022 | | 128 | Copy of Ex 12 to Motion to Dismiss Indictment in 22 cv 3409 (SDNY) (scm) (Entered: 05/04/2022) |
| 05/04/2022 | | 129 | Copy of Ex 12 to Motion to Recuse J. Ramos in 22 cv 3409 (SDNY) (scm) (Entered: 05/09/2022) |
| 05/04/2022 | | 130 | Letter to AUSA re 22 cv 3409 (SDNY) (scm) (Entered: 05/09/2022) |
| 05/04/2022 | | 131 | Exhibits to Motion to Recuse J. Ramos in 22 cv 3409, 04 cr 1224 and 15 cr 1115 (SDNY0) (scm) (Entered: 05/09/2022) |
| 05/05/2022 | | 132 | Exhibit 13 to Motion to Dismiss Indictment filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/09/2022) |

| | | | |
|---|---|---|---|
| 05/05/2022 | | 133 | Exhibit 14 to Motion to Dismiss Indictment filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/09/2022) |
| 05/06/2022 | | 134 | Exhibit 19 to Motion to Recuse J. Ramos in 22 cv 3409 (SDNY) (scm) (Entered: 05/09/2022) |
| 05/06/2022 | | 135 | Motion to Dismiss 05 cr 1115 (SDNY) and related exhibits also filed in 22 cv 3409(SDNY) (scm) (Entered: 05/09/2022) |
| 05/06/2022 | | 136 | Exhibits to Motion to Dismiss 05 cr 1115(SDNY) filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/09/2022) |
| 05/10/2022 | | 137 | Exhibits to Motion to dismiss 05 cr 1115 filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/13/2022) |
| 05/15/2022 | | 138 | Exhibit 11 to Motion to dismiss 05 cr 1115 filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/17/2022) |
| 05/17/2022 | | 139 | Exhibit 20 to Motion to Recuse Judge Ramos filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/18/2022) |
| 05/17/2022 | | 140 | Exhibit 21−A to Motion to Recuse Judge Ramos, filed in 22 cv 3409 (SDNY) (scm) (Entered: 05/18/2022) |
| 06/01/2022 | | 141 | Copy of Request for status conference in 22 cv 2243 (SDNY) (scm) |
| 06/02/2022 | | 142 | Copy of letter to Damian Williams re Brady material in 22 cv 3409, 04 cr 1224, and 05 cr 1115 (SDNY) (scm) |
| 06/07/2022 | | 143 | Ex 51−1 filed in 22 cv 3409 (SDNY) (scm) (Entered: 06/13/2022) |
| 06/09/2022 | | 144 | Service copy of letter to Damian Williams dated June 9, 2022 re 22 cv 3409, 04 cr 1224 and 05 cr 1115 (SDNY) (scm) (Entered: 06/13/2022) |
| 06/13/2022 | | 145 | Copy of letter to Chief District Court Judge for SDNY re show cause order requested, filed in 22 cv 3409 (SDNY) (scm) |
| 06/14/2022 | | 146 | Service copy of Second Request for the USAOs litigation position filed in 22 cv 3409 (SDNY) (scm) (Entered: 06/16/2022) |
| 06/15/2022 | | 147 | Second Touhy Request re 22 cv 3409 (SDNY) (scm) (Entered: 06/16/2022) |
| 06/17/2022 | | 148 | Request for Clarification of Order filed in 22 cv 3409 (SDNY) (scm) (Entered: 06/23/2022) |
| 06/20/2022 | | 149 | Second request for clarification of Dkt. 60 in 22 cv 3409 (SDNY) (scm) (Entered: 06/23/2022) |
| 06/21/2022 | | 150 | Notice and Letter to USAO re 04 CR 1224 and 22 cv 3409 (SDNY) (scm) (Entered: 06/23/2022) |
| 06/22/2022 | | 151 | Debtor's Request for Clarification regarding the Bankruptcy Courts Article III Subject matter Jurisdiction given New Facts and Legal Precedents filed by Ulysses T. Ware. (scm) (Entered: 06/24/2022) |

| | | | |
|---|---|---|---|
| 06/22/2022 | | 152 | Email from Mr. Ware referencing Exhibit 3 (no documents attached to email) (scm) (Entered: 06/24/2022) |
| 06/23/2022 | | 153 | Exhibit 4.1 to Debtors Motion for Clarification filed by Ulysses T. Ware. (related document(s)151) (scm) (Entered: 06/24/2022) |
| 06/23/2022 | | 154 | Exhibits 4.2, 4.3 and 5 to Debtors Request for Clarification filed by Ulysses T. Ware. (related document(s)151) (scm) (Entered: 06/24/2022) |
| 06/23/2022 | | 155 | Certificate of Service of Exhibits 4.1, 4.2, 4.3, and 5 filed by Ulysses T. Ware. (related document(s)153, 154) (scm) (Entered: 06/24/2022) |
| 06/24/2022 | | 156 | Exhibits 6 and 7 to Debtors Request for Clarification filed by Ulysses T. Ware. (scm) (Entered: 06/27/2022) |
| 06/27/2022 | | 157 | Exhibits 8 (notice of change of address) and 9 (request to receive electronic notice) to Debtors Request for Clarification filed by Ulysses T. Ware. (scm) |
| 06/27/2022 | | 158 | Exhibit 10 to Debtors Request for Clarification filed by Ulysses T. Ware. (scm) |
| 06/30/2022 | | 159 | Letter dated June 30, 2022 to Mr. Ulysses T. Ware. (scm) (Entered: 07/05/2022) |
| 06/30/2022 | | 160 | Copies of Letter dated June 30, 2022 to US Attorney and exhibits thereto, filed in 22 cv 3409 (SDNY) (scm) (Entered: 07/05/2022) |
| 07/01/2022 | | 161 | Copy of Notice to USAO re Brady materials filed in 22 cv 3409 (SDNY) (scm) (Entered: 07/05/2022) |
| 07/01/2022 | | 162 | Copy of Notice to cease and desist filed in 22 cv 3409 (SDNY) (scm) (Entered: 07/05/2022) |
| 07/05/2022 | | 163 | Copy of Exhibit J to Dkt 69 filed in 22 cv 3409 (SDNY) (scm) |
| 07/05/2022 | | 164 | Copy of Exhibits J2 to Dkt 69 filed in 22 cv 3409 (SDNY) (scm) |
| 07/06/2022 | | 165 | Letter to Judge Hagenau and request for action. (scm) (Entered: 07/07/2022) |
| 07/07/2022 | | 166 | Copy of letter from Mr. Ware to CJ Roberts re 22 cv 3409 (SDNY) (scm) |
| 07/08/2022 | | 167 | Copy of Motion to Dismiss 04 cr 1224 Indictment filed in SDNY and accompanying exhibits 1−10 (scm) (Entered: 07/11/2022) |
| 07/10/2022 | | 168 | Copy of Motion to Compel the USAO to comply with Brady Court Orders and accompanying exhibits, filed in 22 cv 3409 (SDNY) (scm) (Entered: 07/11/2022) |
| 07/11/2022 | | 169 | Copy of Mr. Wares response to State Bar of Ga letter (scm) (Entered: 07/12/2022) |
| 07/12/2022 | | 170 | Copy of Mr. Wares Certified Question to State Bar (scm) |
| 07/13/2022 | | 171 | |

| | | | |
|---|---|---|---|
| | | | Copies of exhibits provided to State Bar of Georgia (scm) (Entered: 07/20/2022) |
| 07/13/2022 | | 172 | Copy of letter to State Bar of Georgia (scm) (Entered: 07/20/2022) |
| 07/16/2022 | | 173 | Copy of Inquiry to USAG re Document from Board of Prisons, and accompanying exhibit. (scm) (Entered: 07/20/2022) |
| 07/25/2022 | | 174 | Copy of Letter to J. Ramos in 04 CR 1224 (SDNY) (scm) (Entered: 07/27/2022) |
| 07/26/2022 | | 175 | Debtors Request for Jurisdictional Status Conference and Transfer to US Bankruptcy Court SDNY filed by Ulysses T. Ware. (scm) (Entered: 07/27/2022) |
| 07/27/2022 | | 176 | Exhibits 4 and 5 to Debtors Request for Status Conference filed by Ulysses T. Ware. (related document(s)175) (scm) |
| 07/29/2022 | | 177 | Debtor's Second Request for Status Conference filed by Ulysses T. Ware. (scm) |
| 08/02/2022 | | 178 | Exhibit 7 to Doc 175 filed by Ulysses T. Ware. (related document(s)175) (scm) |
| 08/03/2022 | | 179 | Correspondence from Mr. Ware re proposed form of order (scm) (Entered: 08/04/2022) |
| 08/04/2022 | | 180 | Matters submitted by Mr. Ware (scm) |
| 08/05/2022 | | 181 | Demand for hearing filed by Mr. Ware. (scm) |
| 08/06/2022 | | 182 | Correspondence from Mr. Ware re docket. (scm) (Entered: 08/08/2022) |
| 08/07/2022 | | 183 | Correspondence from Mr. Ware re docket (duplicate of #182). (scm) (Entered: 08/08/2022) |
| 08/08/2022 | | 184 | Correspondence from Mr. Ware and attachments (scm) Additional attachment(s) added on 8/8/2022 (scm). |
| 08/08/2022 | | 185 | Correspondence from Mr. Ware re SDNY case. (scm) |
| 08/08/2022 | | 186 | Copy of correspondence from Mr. Ware. (scm) |
| 08/09/2022 | | 187 | Inquiry to Bankruptcy Court re status conference. (scm) |
| 08/10/2022 | | 188 | Mr. Ware correspondence re Certified Copy of Docket, and certificate of service. (scm) |
| 08/10/2022 | | 189 | Request by Mr. Ware for Brady Order Status Conference filed in 22 cv 3409 (SDNY). (scm) (Entered: 08/15/2022) |
| 08/11/2022 | | 190 | Request for entry of supervisory relief filed in 22 cv 3409 (SDNY). (scm) (Entered: 08/15/2022) |
| 08/12/2022 | | 191 | Proposed Order for Brady Disclosure filed in 22 cv 3409 (SDNY). (scm) (Entered: 08/15/2022) |

| | | | |
|---|---|---|---|
| 08/12/2022 | | 192 | Email from Mr. Ware with copy of filing information in 02 cv 2219 (SDNY). (scm) (Entered: 08/15/2022) |
| 08/12/2022 | | 193 | Email from Mr. Ware with copy of filing information in 22 cv 3409. (scm) (Entered: 08/15/2022) |
| 08/15/2022 | | 194 | Proposed order filed in 22 cv 3409 (SDNY). (scm) |
| 08/16/2022 | | 195 | Debtors third request for certified docket. (scm) |
| 08/16/2022 | | 196 | Request filed in 22 cv 3409 (SDNY) re obtaining docket in Group Mgmt case. (scm) |
| 08/16/2022 | | 198 | Letter from Mr. Ware for certified copies of Dkt. 11, 15 and 16. (scm) (Entered: 08/17/2022) |
| 08/17/2022 | | 197 | Request for all Writs Act Relief filed in 22 cv 3409 (SDNY) re certified copies of bankruptcy court docket entries. (scm) |
| 08/17/2022 | | 199 | Letter from Clerk dated August 17, 2022, with attachments, to Mr. Ware. (scm) (Entered: 08/18/2022) |
| 08/17/2022 | | 200 | Email from Mr. Ware. (scm) (Entered: 08/18/2022) |
| 08/18/2022 | | 201 | Reply to Incomplete and Fraudulent Production by Bankr. Clerk filed in 22 cv 3409 (SDNY). (scm) |
| 08/18/2022 | | 202 | Copy of Renewed Request for entry of Proposed Order in 22 cv 3409 (SDNY). (scm) (Entered: 08/19/2022) |
| 08/19/2022 | | 203 | Inquiry re 2012 fraud on the court pleadings sent by Mr. Ware. (scm) |
| 08/19/2022 | | 204 | Exhibits of Binding Precedent re Brady violation submitted to court in 22 cv 3409 (SDNY). (scm) |
| 08/19/2022 | | 205 | Copies of letters sent by Mr. Ware re Brady violation in 22 cv 3409 (SDNY). (scm) |
| 08/19/2022 | | 206 | Request for entry of All Writs Act order with respect to NDGA filed in 22 cv 3409 (SDNY). (scm) |
| 08/19/2022 | | 207 | Copies of Application for immediate entry of show cause order filed in 22 cv 2243 (SDNY). (scm) |
| 08/19/2022 | | 208 | Letter from Mr. Ware to J. Ramos with Exhibit re Order to Show Cause in 22 cv 3409 (SDNY). (scm) |
| 08/21/2022 | | 209 | Mr. Ware's Petition to District Court in 22 cv 3409 (SDNY). (scm) (Entered: 08/22/2022) |
| 08/23/2022 | | 210 | Emergency Application for production of certain documents addressed to J. Ramos, in 22 cv 3409 (SDNY). (scm) |
| 08/24/2022 | | 211 | Mr. Ware's Petition to the SDNY to disclose information re documents filed in 22 cv 3409. (scm) |

| | | | |
|---|---|---|---|
| 08/25/2022 | | 212 | Supplement 1.0 to Petition to the SDNY re documents filed in 22 cv 3409. (scm) |
| 08/26/2022 | | 213 | Copy of Mr. Ware's Supplement 2.0 to Petition to the SDNY re documents, filed in 22 cv 3409. (scm) |
| 08/28/2022 | | 214 | Mr. Ware's Supplement 3.0 to Petition to SDNY re documents filed in 22 cv 3409. (scm) (Entered: 08/29/2022) |
| 08/29/2022 | | 215 | Copy Mr. Ware's refilling of Supplement 1.0 to Petition to SDNY re documents, filed in 22 cv 3409. (scm) |
| 08/29/2022 | | 216 | Copy of Mr. Ware's letter to the SDNY in 22 cv 3409 re docket entries. (scm) |
| 08/29/2022 | | 217 | Ex 1 to Mr. Ware's Inquiry to the SDNY re documents in 22 cv 3409. (scm) |
| 08/30/2022 | | 218 | Mr. Ware's Supplement 4.0 to Petition to the SDNY re documents, filed in 22 cv 3409. (scm) |
| 08/31/2022 | | 219 | Supp 5.0 to Mr. Ware's request for documents in the SDNY (22 cv 3409). (scm) |
| 09/01/2022 | | 220 | Supp 6.0 to Mr. Ware's Petition to the SDNY re documents filed in 22 cv 3409. (scm) (Entered: 09/02/2022) |
| 09/02/2022 | | 221 | Mr. Ware's Supplement 7.0 to Petition to SDNY re documents. (scm) |
| 09/06/2022 | | 222 | Copy of Actual Innocent Claim 17 filed in 22 cv 3409 (SDNY). (scm) |
| 09/07/2022 | | 223 | Copy of Supplement 8.0 to Request to the SDNY for documents in 22 cv 3409. (scm) |
| 09/08/2022 | | 224 | Request for Status Conference filed in 22 cv 3409 (SDNY). (scm) |
| 09/09/2022 | | 225 | Supplement 9.0 to request for documents in 22 cv 3409 (SDNY). (scm) (Entered: 09/12/2022) |
| 09/12/2022 | | 226 | Copy of Motion for Emergency All Writs Act Disclosures filed in 22 cv 3409 (SDNY). (scm) |
| 09/13/2022 | | 227 | Supp. 1.0 to Emergency Motion filed by Mr. Ware in 22 cv 3409 (SDNY), including Ex A thereto. (scm) |
| 09/14/2022 | | 228 | Mr. Ware's Actual Innocent Supplemental Claim no 18 with Ex 1 filed in 22 cv 3409 (SDNY). (scm) Additional attachment(s) added on 9/14/2022 (scm). |
| 09/15/2022 | | 229 | Inquiry regarding Emergency All Writs Act relief filed in 22 cv 3409 (SDNY). (scm) |
| 09/16/2022 | | 230 | Request for Status Conference and Notice of Conspiracy filed in 22 cv 3409 (SDNY). (scm) |
| 09/19/2022 | | 231 | |

| | | | |
|---|---|---|---|
| | | | Request for Status Conference filed in 22 cv 3409 and 02 cv 2219 (SDNY). (scm) |
| 09/20/2022 | | 232 | Request for Status Conference in 22 cv 3409 and 02 cv 2219 (SDNY). (scm) |
| 09/21/2022 | | 233 | Petition of Debtor and Mr. Ware for relief under the All Writs Act and for Order to Cease and Desist in 02cv2219 (SDNY). (scm) Additional attachment(s) added on 9/21/2022 (scm). |
| 09/22/2022 | | 234 | Filing by Mr. Ware in 02cv2219 (SDN) re cease and desist relief. (scm) |
| 09/22/2022 | | 235 | Email from Mr. Ware with docketing information in 02cv2219 (SDNY). (scm) |
| 09/23/2022 | | 236 | Mr. Ware's submission in 02cv2219 (SDNY) re contempt. (scm) |
| 09/26/2022 | | 237 | Mr. Ware's Declaration for Contempt filed in 02cv2219 (SDNY). (scm) |
| 09/27/2022 | | 238 | Mr. Ware's Emergency Show Cause Motion and Notice filed in 02cv2219(SDNY). (scm) |
| 09/28/2022 | | 239 | Request for the Bankr. Ct to certify that all contempt has ceased. (scm) |
| 09/28/2022 | | 240 | Actual Innocent Supp Claim 19 and notice thereof, filed by Mr. Ware in 22cv3409 (SDNY). (scm) (Entered: 09/29/2022) |
| 09/28/2022 | | 241 | Mr. Ware's letter re contempt of Rule 41 Final Judgment. (scm) (Entered: 09/29/2022) |
| 09/29/2022 | | 242 | Mr. Ware's declaration in support of civil and criminal contempt findings, filed in 02cv2219 (SDNY). (scm) |
| 09/30/2022 | | 243 | Mr. Ware's Verified Petition for Emergency Article III Supervisory Authority Relief and Notice of Verified Petition for Emergency Supervisory Relief, filed in 22cv3409 (SDNY). (scm) (Entered: 10/03/2022) |
| 10/04/2022 | | 244 | Mr. Ware's Memorandum of Law in Support of Verified Petition for Emergency Article III Supervisory Authority Relief (22cv3409). (scm) |
| 10/05/2022 | | 245 | Mr. Ware's Request to Unseal and His Eighth (8th) Request to the District Clerk (SDNY) for Immediate Access to Inspect, Review, and Copy All Judicial Public Records in U.S. v Ware, 05cr1115 (22cv3409). (ngs) (Entered: 10/06/2022) |
| 10/07/2022 | | 246 | Mr. Ware's (1) Emergency Motion for Article III Supervisory Relief; (2) Motion to Unseal all Judicial Public Records in U.S. v Ware, 05cr1115 (SDNY); (3) Memorandum of Law in Support of Emergency Relief; and (4) Form T−1080). (U.S. v Ware, 07−5222cr(L) and 07−5670cr(XAP), 2nd Circuit Court of Appeals) (scm) (Entered: 10/12/2022) |
| 10/11/2022 | | 247 | Mr. Ware's Certificate of Service and Appendix 1.0 to Emergency Application for Article III Supervisory Authority Relief and Motion to Unseal all Judicial Public Records in U.S. v. Ware, 05cr1115 (SDNY). (U.S. v Ware, 07−5222cr(L) and 07−5670cr(XAP), 2nd Circuit Court of Appeals) (scm) (Entered: 10/12/2022) |

| | | | |
|---|---|---|---|
| 10/12/2022 | | 248 | Request for Update and status of Emergency Motion filed in 2d Cir Ct of App, with Appendix. (scm) (Entered: 10/13/2022) |
| 10/13/2022 | | 249 | Mr. Ware's Request for Disclosure of certain records filed in 07−5222cr (2d Cir). (scm) |
| 10/14/2022 | | 250 | Mr. Ware's Emergency Motion to Compel the Government to certify No Perjury was used filed in 07−5222cr (2d Cir). (scm) |
| 10/17/2022 | | 251 | Mr. Ware's Request to SDNY for certified docket in 22cv3409 and 05cr1115. (scm) (Entered: 10/18/2022) |
| 10/18/2022 | | 252 | Documents submitted by Mr. Ware in 05cr1115 and 22 cv3409 (SDNY) re Jeremy Jones docket. (scm) |
| 10/18/2022 | | 253 | Mr. Ware's resubmission of documents in 05cr1115 and 22cv3409 (SDNY). (scm) |
| 10/20/2022 | | 254 | Copy of letter from Mr. Ware to US Atty Office SDNY. (scm) (Entered: 10/21/2022) |
| 10/24/2022 | | 255 | Notice of Case Reassignment to the Honorable Wendy L. Hagenau. Service by BNC. (scm) |
| 10/24/2022 | | 256 | ORDERED that all relief requested by Mr. Ware, whether in his individual capacity or as legal representative of the Debtor, is DENIED including without limitation. ORDERED FURTHER that Mr. Ware is directed to show cause within fourteen (14) days of the date hereof as to why he should not be deemed a vexatious litigant and be prohibited from making any further filings in this closed bankruptcy case. (Related Doc 175), (Related Doc 177), (Related Doc 181) Service by BNC. Entered on 10/24/2022. (cws). Modified on 10/24/2022 (cws). Related document(s) 89 Exhibits, 90 Exhibits, 91 Exhibits, 151 Notice (BK), 152 Letter, 153 Exhibits, 154 Exhibits, 155 0−Certificate of Service, 156 Exhibits, 157 Exhibits, 158 Exhibits, 165 Letter, 176 Exhibits, 178 Exhibits, 179 Letter, 180 Letter, 182 Letter, 183 Letter, 184 Letter, 187 Letter, 188 Letter, 197 Letter, 198 Letter, 199 Letter, 200 Letter, 201 Letter, 202 Letter, 203 Letter, 239 Letter, 241 Letter. Modified on 10/24/2022 (cws). |
| 10/26/2022 | | 257 | Certificate of Mailing by BNC of Case Reassignment Notice. Notice Date 10/26/2022. (Admin.) (Entered: 10/27/2022) |
| 10/26/2022 | | 258 | Certificate of Mailing by BNC of Order on Motion to Set Hearing Notice Date 10/26/2022. (Admin.) (Entered: 10/27/2022) |
| 10/31/2022 | | 259 | Request for Certifications and Clarifications of the Court's October 24, 2022, Order filed by Ulysses T. Ware. (related document(s)256) (scm) |
| 11/04/2022 | | 260 | Request for Immediate First Amendment Right of Access to Stolen Judicial Public Records filed by Ulysses T. Ware. (scm) (Entered: 11/07/2022) |
| 11/04/2022 | | 261 | Article III Jurisdictional Request #22.5 filed by Ulysses T. Ware. (scm) (Entered: 11/07/2022) |
| 11/09/2022 | | 262 | ORDER AND NOTICE of Hearing on Order Directing Mr. Ware to Show Cause as to Why He Should Not Be Deemed a Vexatious Litigant and Be |

| | | | |
|---|---|---|---|
| | | | Prohibited from Filing, Sending, or Otherwise Delivering Documents for Filing in this Closed Bankruptcy Case. Service by BNC. Hearing to be held on 12/8/2022 at 10:00 AM via Zoom. Entered on 11/9/2022. (related document(s)256, 260) (ngs) |
| 11/10/2022 | | 264 | Group Management and Ulysses T. Ware's Verified Response in Opposition; Demand for Leave to Filing Injunction Hearing; and Request for other Reliefs filed by Ulysses T. Ware. (related document(s)256) (scm) (Entered: 11/15/2022) |
| 11/11/2022 | | 263 | Certificate of Mailing by BNC of Order and Notice Notice Date 11/11/2022. (Admin.) (Entered: 11/12/2022) |
| 11/14/2022 | | 265 | Group Management and Ulysses T. Ware's Supplemental Memorandum of Law #1.0 and Appendix #2.0 filed by Ulysses T. Ware. (related document(s)264. 256) (scm) (Entered: 11/15/2022) |
| 11/17/2022 | | 266 | Group Management and Ulysses T. Ware's Request for a Stay of the Court's Orders filed by Ulysses T. Ware. (related document(s)256, 262) (scm) |
| 11/18/2022 | | 267 | Order DENYING Request for a Stay. IT IS FURTHER ORDERED that the Court will hold a hearing on December 8, 2022 at 10:00 a.m. as set forth in the Order and Notice (Doc. No. 262). (Related Doc # 266) Service by BNC. Entered on 11/18/2022. (cws) |
| 11/20/2022 | | 268 | Certificate of Mailing by BNC of Order on Motion to Stay Order Notice Date 11/20/2022. (Admin.) (Entered: 11/21/2022) |
| 11/25/2022 | | 269 | Notice of the Prevailing Parties and Beneficiaries filed by Ulysses T. Ware. (scm) (Entered: 11/30/2022) |
| 11/25/2022 | | 270 | Motion for Immediate First Amendment Access filed by Ulysses T. Ware. (scm) (Entered: 11/30/2022) |
| 11/25/2022 | | 271 | Notice of and Motion for Material Witness Order filed by Ulysses T. Ware. (scm) (Entered: 11/30/2022) |
| 12/09/2022 | | 272 | Notice of Filing Exhibit DX−1 re: Ulysses T. Ware's Verified Opening Statement, Findings of Fact, and Proposed Memorandum Opinion and Final Order filed by Ulysses T. Ware. (scm) (Entered: 12/11/2022) |
| 12/12/2022 | | 273 | Ulysses T. Ware's Inquiry re: Article III standing of the 02cv2219 (SDNY) plaintiffs vis−a−vis Opposition to Show Cause Order (related document(s)256) (scm) |
| 12/13/2022 | | 274 | Order Denying Request for Certifications and Clarifications of The Court's October 24, 2022 and other Requests for Relief. IT IS ORDERED that Mr. Wares requests for relief in Docs. Nos. 259, 260, 261, 264, 265, 269, 270, 271, and 273 are DENIED. Service by BNC. Entered on 12/13/2022. (related document(s)259, 260, 261, 264, 265, 269, 270, 271, 273) (cws) |
| 12/13/2022 | | 275 | Order Finding Ulysses T. Ware is a Vexatious Litigant and Limiting his future filing in this case. It is further Ordered that Mr. Ware is hereby barred from filing any pleadings in this case except a notice of appeal to the United States District Court for the Northern District of Georgia or the Eleventh Circuit Court of Appeals. Service by BNC. Entered on |

| | | | |
|---|---|---|---|
| | | | 12/13/2022. (cws) |
| 12/15/2022 | | 276 | Certificate of Mailing by BNC of Order Notice Date 12/15/2022. (Admin.) (Entered: 12/16/2022) |
| 12/15/2022 | | 277 | Certificate of Mailing by BNC of Order Notice Date 12/15/2022. (Admin.) (Entered: 12/16/2022) |
| 01/27/2025 | | 278 | Letter to Mr. Ulysses T. Ware dated January 27, 2025. (scm) |
| 02/03/2025 | | 279 | Notice of Appeal Bankr.Rule9014/12(h)(3) Article III "Threshold Matter" Jurisdictional Appeal , Fee $ 298 Receipt Number: None, Amount Paid $ 0.00, filed by Ulysses T. Ware . Appellant Designation due by 2/18/2025, submission by USBC to USDC due by 3/5/2025, (related document(s) 6, 11, 13, 14, 15, 16, 28, 256, 258, 263, 274, 275, 278) (klt) (Entered: 02/07/2025) |
| 02/07/2025 | | 280 | Notice of deficient filing re: Missing Fee, $298.00 Service by BNC. (related document(s) 279) (yl) |
| 02/07/2025 | | 281 | Notification of Appeal Requirements (related document(s) 279) (yl) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Ulysses T. Ware and Group Management,

Appellants,

Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG, et al.,

Appellees,

________________________________/

**ORDER**

Appellants Ulysses T. Ware and Group Management seek to appeal an order entered by the United States Bankruptcy Court for the Northern District of Georgia. After reviewing the bankruptcy record, the Court notes that Appellants paid the required filing fee on February 12, 2025. (*See* 02/12/2025 Docket Entry in Bankruptcy Case No. 03-93031.)

The Court also notes, however, that Appellant Group Management is not represented by counsel. The Court **NOTIFIES** Appellant Group Management that a corporation cannot appear pro se and must be represented by counsel. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385

(11th Cir. 1985). "This rule applies even when the person seeking to represent the corporation is its president . . . ." *CNH Capital Am., LLC v. Se. Aggregate, Inc.*, No. CV608-027, 2009 WL 1468999, at *1 (S.D. Ga. May 26, 2009) (quoting *F.T.C. v. Gem Merch. Corp.*, No. 95-8364, 1995 WL 623168, at *1 (11th Cir. 1995)); *see also* LR 83.1E(2)(b)(I), NDGa.

The Court **ORDERS** Appellant Group Management to have counsel file a notice of appearance with the Clerk no later than March 6, 2025. Failure to comply with this order may result in sanctions against Appellant Group Management, including dismissal.

The Court **DIRECTS** the Clerk to submit this matter after March 6, 2025, if an attorney does not file a notice of appearance on behalf of Appellant Group Management.

**SO ORDERED** this 13th day of February, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Ulysses T. Ware,

Appellant,

Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG, et al.,

Appellees.

________________________________/

**ORDER**

The Court **DENIES** Appellant's motions (Dkts. 12; 14; 19; 22) because Appellant has not shown the relief he seeks is warranted. The Court **ORDERS** Appellant to file a single, consolidated opening appellate brief no later than May 29, 2025. Appellant's brief must be titled "Appellant's Opening Appellate Brief," be double-spaced, not exceed 25 pages, contain everything required by Bankruptcy Rule 8014(a) in the proper format, and otherwise comply with the rules governing opening briefs in a bankruptcy appeal. If Appellant believes the Court lacks jurisdiction to consider his appeal—or that other jurisdictional problems exist—he may assert those arguments in his opening brief. The docket

in this case is already clogged with rambling, incoherent, voluminous, and unnecessary filings. Going forward, the Court urges Appellant to be more judicious and restrained about what he chooses to file. If Appellant does not comply with any of the instructions contained in this Order, the Court will likely dismiss his appeal, potentially with prejudice.

**SO ORDERED** this 29th day of April, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Ulysses T. Ware and Group Management,

Appellants,

v.

Case No. 1:25-cv-613-MLB

Alpha Capital, AG et al.,

Appellees.

________________________________/

**ORDER**

The Court **VACATES** its prior Order (Dkt. 6) dismissing Appellant Group Management for failure to retain counsel. The Court does so because Appellant Ware now claims Group Management is a sole proprietorship and—assuming that is true, which the Court is willing to do given the pending dismissal of this case on other grounds—"[a] sole proprietorship may litigate pro se." *United States v. Natalie Jewelry*, 2015 WL 150841, at *5 (S.D. Fla. Jan. 13, 2015).

The Court **DISMISSES** this bankruptcy appeal as untimely because Federal Rule of Bankruptcy Procedure 8002 requires appellants

to file a notice of appeal "within 14 days after the [challenged] judgment, order, or decree"; Appellants' notice of appeal challenges bankruptcy court orders entered in 2003 and 2022; and Appellants did not file their notice of appeal until 2025, more than 14 days later. (Dkts. 1; 1-1 at 6–7); *see In re Williams*, 216 F.3d 1295, 1298 (11th Cir. 2000) ("[T]he timely filing of a notice of appeal is mandatory and jurisdictional. If the notice is not timely filed, the appellate court is without jurisdiction to hear the appeal."). Appellants' filings are also meritless as other courts have repeatedly explained. (*See, e.g.*, Dkts. 1-5 at 6–16; 45 at 8–11 (discussing Appellant Ware's long history of frivolous filings in this bankruptcy case and related proceedings).)[1]

---

[1] Of the bankruptcy court orders challenged in Appellants' notice of appeal, the only one docketed within the 14-day appellate period is not really an order at all. It is a "letter" that simply notes the underlying bankruptcy case "has been closed since June 2003," Appellants sent the bankruptcy court more than 100 emails over an 8-month period in 2024–2025, "[e]mails do not constitute filing with the court," and thus "none of the emails have been or will be docketed." (Dkt. 5-9.) Nothing about this unremarkable document warrants any relief on appeal, much less the relief Appellants seek in their papers. The same goes for a February 2025 bankruptcy court order (Dkt. 5-10)—entered during the pendency of this appeal—that Appellants did not mention in their initial notice of appeal but which they have since attacked in other filings. (*See* Dkts. 5-15; 41 at 27). The February 2025 order, like the letter, discusses Appellants' 100+ emails, notes "letters are not proper pleadings," explains the bankruptcy

The Court **DENIES WITHOUT PREJUDICE** Appellees' 6-page motion for sanctions (Dkt. 46) as insufficiently developed. If Appellees wish to renew their motion, they must (1) explain in more detail why sanctions are warranted under Rule 8020; (2) address Appellants' counterarguments; (3) identify the specific sanctions they seek; and (4) describe each step required to process and effectuate their request from beginning to end (including whether the Court must hold a hearing and, if so, when and what should happen at the hearing). Appellees must be thorough and cite supporting authority throughout their analysis.

The Court **DENIES** Appellants' pending motions (Dkts. 42; 44; 49) as moot or otherwise meritless. The Court **DIRECTS** the Clerk to close this case.

**SO ORDERED** this 26th day of January, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

court cannot take "substantive action while the appeal is pending," and says the court "will henceforth return any email received from [Appellants] unopened." (Dkt. 5-10.) Again, nothing about this document—even assuming it were properly before the Court despite its omission from Appellants' initial notice of appeal—entitles Appellants to the relief they seek. That is so—and the Court's other conclusions in this Order remain true—regardless of which of Appellants' two opening briefs (Dkts. 26; 41) is deemed operative.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

GROUP MANAGEMENT CORP.,
Debtor,

ULYSSES T. WARE et al,
Appellants,

vs.

ALPHA CAPITAL, AG et al,
Appellees.

BANKRUPTCY CASE NO.
03-93031-WLH

CIVIL ACTION FILE NO.
1:25-cv-00613-MLB.

# J U D G M E N T

This action having come before the court, Honorable Michael L. Brown, United States District Judge, for consideration of the appeal of the bankruptcy order entered 2/3/2025, and the court having rendered its decision, it is

**Ordered and adjudged** that the order of the bankruptcy court is **affirmed** and the appeal is **dismissed**.

Dated at Atlanta, Georgia this 27th day of January, 2026.

KEVIN P. WEIMER
CLERK OF COURT

By: s/Parker Thompson
Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
January 27, 2026
Kevin P. Weimer
Clerk of Court

By: s/Parker Thompson
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Ulysses T. Ware and Group Management,

Appellants,

v.

Alpha Capital, AG, et al.,

Appellees.

Case No. 1:25-cv-613-MLB

______________________________/

**ORDER**

The Court **DENIES** Appellants' Rule 8022 Motion for Rehearing (Dkt. 59) because it contains more than "3,900 words," exceeds "15 pages," and does not "include a certificate under Rule 8015(h)," in violation of Federal Rule of Bankruptcy Procedure 8022(b). *See In re Ford*, 2024 WL 5084836, at *2 (M.D. Fla. Jan. 25, 2024) (denying appellant's rehearing motion because appellant "fail[ed] to comply with the procedural requirements of Rule 8022," including the requirement that his motion "not exceed 3,900 words or exceed 15 pages").

True, Appellants belatedly filed a Rule 8015(h) certificate outside the 14-day window in which it was due and without leave of court. (Dkt. 60 at 5); *see* Fed. R. Bankr. P. 8022(a)(1), (b)(1) ("any motion for rehearing . . . must be filed within 14 days after a judgment on appeal is entered" and "must include a certificate under Rule 8015(h)"). But, even considering the untimely certificate, it does not "state the number of words" in Appellants' motion as required by Rule 8015(h)(1). It states only that the number is "fewer than a combined 7,800 words," which is both impermissibly vague and almost double the word-limit set forth in Rule 8022(b)(1). (Dkt. 60 at 5.) Appellants' untimely certificate does not save their 107-page motion or otherwise require the Court to drag out this meritless appeal any further.[1]

**SO ORDERED** this 14th day of September, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[1] The Court recognizes that portions of Appellants' 107-page motion do not count towards the applicable word/page limit. *See* Fed. R. Bankr. P. 8015(g). The motion is far too long regardless.

# *UNITED STATES DISTRICT COURT*
# *NORTHERN DISTRICT OF GEORGIA*

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 29 2026

KEVIN P. WEIMER, Clerk
By: [signature] Deputy Clerk

**ATLANTA DIVISION**

**Civil Action No. 1:25-cv-00613-MLB (NDGA) appeal**

From Bankruptcy Case No. 03-93031-WLH, ***In re Group Management Corp***., Debtor

**Ulysses T. Ware, Esq. and Group Management**

**(a sole proprietorship),**

**Appellants,**

v.

Alpha Capital, AG; Stonestreet, L.P.; Markham Holdings, L.P.; Amro International, S.A.; Kilpatrick, Townsend, & Stockton, LLP; Dennis S. Meir; John W. Mills, III; J. Henry Walker, IV; Wab Kadaba; Kenneth A. Zitter; Arie Rabinowitz; LH Financial Services Corp.; Konrad Ackermann; Joseph Hammer; Trailblazer Merger Corp., I; Wendy L. Hagenau; James H. Morawetz; The Office of the U.S. Trustee, Region 21; Mary Ida Townsend; M. Regina Thomas; Patricia Sinback; Margaret H. Murphy; Joyce Bihary; Coleman Ray Mullins; Securities and Exchange Commission; Financial Industry Regulatory Agency (FINRA); Barbara Ellis-Monro; Marcia E. Asquith; Robert L. D.; Colby; Robert W. Cook; Emma Jones; Sarah Jeffries; The State Bar of Georgia; Office of the General Counsel; William D. NeSmith, III; Paula Fredrick; Leigh Burgess; William Alan Myers; Adrienne Nash; Jenny Mittlemen; Jonathan Hewett; Patrick N. Arndt; Michael D. Hostetter; Nall & Miller, LLP; Manibur S. Arora; Edward T. M. Garland; Michael F. Bachner; David B. Levitt; Donald F. Samuel; Janice Singer; Alexander H. Southwell; Thomas W. Thrash, Jr.; Michael P. Boggs; Thomas A. Leghorn; Lawrence B. Mandala; Baker & McKenzie, LLP; Robert H. Albaral; John F. King; Office of the Georgia Insurance Commissioner; John Does Insurance Companies Nos. 1–5; Jeneane Treace, Assistant U.S. Trustee, Region 21,

**Appellees.**

---

## JOINT NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

## I. APPELLANTS AND COURT OF APPEALS

Ulysses T. Ware, Esq. and Group Management (a sole proprietorship), (the "**Appellants**"), appeal to the United States Court of Appeals for the Eleventh Circuit from the judgment and orders entered in this district court bankruptcy appeal, Civil Action No. 1:25-cv-00613-MLB. Fed. R. App. P. 3, 6(b); 28 U.S.C. § 158(d)(1).

## II. JUDGMENT AND ORDERS DESIGNATED FOR REVIEW

1. **September 14, 2026 order, Dkt. 61** (docket entry entered September 15, 2026): denying Appellants' Dkt. 59 motion for rehearing and reconsideration under Federal Rule of Bankruptcy Procedure 8022. The complete two-page image of the filed and signed order is attached as Exhibit A.

2. **January 27, 2026 judgment, Dkt. 58**: entering judgment that the bankruptcy court's order is affirmed and the appeal dismissed. The judgment is designated for review in its entirety. Its complete one-page PDF image is attached as Exhibit B.

3. **January 26, 2026 order, Dkt. 57 (docket entry entered January 27, 2026):** vacating Dkt. 6, dismissing the bankruptcy appeal as untimely, denying Appellees' Dkt. 46 sanctions motion without prejudice, denying Appellants' Dkts. 42, 44, and 49 motions as moot or otherwise meritless, and directing the Clerk to close the case. Its complete three-page PDF image is attached as Exhibit C.

4. **April 29, 2025 order, Dkt. 38**: denying Appellants' Dkts. 12, 14, 19, and 22 motions and directing submission of a consolidated opening appellate brief by May 29, 2025. A scan of the order is attached as Exhibit D. Appellants also designate prior rulings merged into the final judgment to the extent reviewable, including the March 10, 2025 order, Dkt. 6, which Dkt. 57 vacated.

Dkt. 59 is Appellants' February 5, 2026 rehearing motion; Dkt. 60 is their supplemental filing docketed February 17, 2026. They establish the procedural sequence and are not judicial orders.

These designations encompass the final judgment and all orders merged into it. Fed. R. App. P. 3(c)(4), (6).

5. **Dkt. 4 (signed February 13; docketed February 14, 2025):** ordering counsel for Group Management to appear by March 6 and warning of sanctions, including dismissal. The complete two-page PDF scan is Exhibit F.

6. **Dkt. 6 (signed March 10; docketed March 11, 2025):** dismissing Group Management without prejudice for noncompliance with Dkt. 4; vacated by Dkt. 57 on January 26, 2026. The complete two-page PDF scan is Exhibit G.

## III. NOTICE OF INTENDED PRE-BRIEFING THRESHOLD MOTION

Before merits briefing, Appellants intend to move on the "threshold" issues of Article III subject-matter jurisdiction, standing, and redressability in the Northern District of Georgia 25cv00613 proceeding, the Northern District of Georgia 03-93031 bankruptcy proceeding, the Southern District of New York 02cv2219 action, and this appeal to the Eleventh Circuit. The motion will present the following issues:

**A. Subject-matter jurisdiction over the Predatory Loan Sharking Subject Matter.** Whether the 25cv00613 (NDGA) district court and 03-93031 (NDGA) bankruptcy court had subject-matter jurisdiction over the **null and void ab initio, predatory, criminal-usury, loan-sharking convertible promissory notes** identified as GX 1, GX 2, GX 3, and GX 4 (collectively, the "**Loan Sharking Notes**"), and the predatory, loan-sharking contract identified as GX 5, which together constitute the "**Predatory Loan Sharking Subject Matter**."

**B. Article III standing of the 02-cv-2219 plaintiffs.** Whether the plaintiffs in 02-cv-2219 (S.D.N.Y.)—**FINRA certified unregistered predatory broker-dealers**, unauthorized to lawfully enter into, facilitate, and/or engage in securities transactions in the United States in violation of 15 U.S.C. § 78o(a)(1)—had Article III standing to file that lawsuit.

**C. Creditor standing and representations in 03-93031. Whether those 02cv2219 (SDNY) predatory, loan sharking plaintiffs** had standing to fraudulently appear as alleged creditors in 03-93031 (Bankr. N.D. Ga.) by fraudulently stating, through their counsel, Kilpatrick, Townsend, & Stockton, LLP (**"KTS"**), and its partners Dennis S. Meir, Esq., John W. Mills, III, Esq., Wab Kadaba, Esq., and J. Henry Walker, IV, Esq. (collectively, the **"KTS Partners"** or **"KTS Appellees"**), that they held creditor status arising from the **void ab initio predatory, Loan Sharking Subject Matter (GX 1–4 and GX 5).**

**D. Redressability and lawful relief.** Whether Article III subject-matter jurisdiction and redressability existed in the Article III district courts and the Article I bankruptcy court to grant judicial relief to **predatory, loan-sharking, unregistered broker-dealers engaged in unlawful predatory loan sharking debt collection of the null and void ab initio Loan Sharking Notes, where the challenged debt-collection conduct falls within 18 U.S.C. § 1961(6)(B) and the notes arise from criminal usury under N.Y. Penal Law § 190.40, a Class E felony**.

**E. Jurisdiction following the 02-cv-2219 dismissal.** Whether the federal courts in 02-cv-2219 (S.D.N.Y.), 03-93031 (Bankr. N.D. Ga.), 1:25-cv-00613-MLB (N.D. Ga.), and this Eleventh Circuit appeal have subject-matter jurisdiction **in light of the 02-cv-2219 plaintiffs' December 20, 2007 voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2), after the limitations periods had run on all claims in the complaint,** as Appellants will establish. Dkt. 90, Ex. E, infra, states that the action was dismissed without prejudice. ***Appellants will argue that, given expiration of the limitations periods, the dismissal's legal effect is with prejudice and defeats the asserted jurisdictional basis for the later proceedings***.

Appellants will challenge the asserted ***creditor interests*** under notes GX 1–4 and agreement GX 5; raise N.Y. Penal Law predatory criminal usury law, § 190.40, a Class E felony, 18 U.S.C. § 1961(6)(A)–(B), and 15 U.S.C. § 78o(a)(1) in light of the FINRA materials and transactional record; and address the fraudulent and manifestly frivolous, bad faith bankruptcy court (03-93031) assertions advanced through appellees Kilpatrick, Townsend, & Stockton, LLP and Dennis S. Meir, John W. Mills, III, Wab Kadaba, and J. Henry Walker, IV. The motion will address Article III standing, statutory jurisdiction, enforceability, and redressability.

The Supreme Court directs courts to resolve jurisdiction "first" before merits adjudication. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("Without jurisdiction the court cannot proceed at all in any cause"); see also id. at 101 (rejecting "hypothetical jurisdiction"). *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006), states: "The objection that a federal court lacks subject-matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), ***may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment***." (emphasis added).

*Arbaugh* further instructs that when Congress does not clearly designate a statutory limitation as jurisdictional, courts should treat the restriction as nonjurisdictional. Id. at 515–16. Appellants

invoke the rule for their asserted subject-matter-jurisdiction objections and seek their consideration before merits briefing.

## ·IV. INDEX OF ATTACHED ORDERS AND JUDGMENT

Exhibits A–D: Dkts. 61 (two pages), 58 (one page), 57 (three pages), and 38 (two pages), respectively. Exhibits E–G: S.D.N.Y. Dkt. 90 (one page), N.D. Ga. Dkt. 4 (two pages), and N.D. Ga. Dkt. 6 (two pages), respectively.

Dated: September 26, 2026

Respectfully submitted,

Ulysses T. Ware, Esq.

**/s/ Ulysses T. Ware**

Ulysses T. Ware, Esq., Appellant; attorney in fact for Group Management

123 Linden Blvd., Ste. 9-L, Brooklyn, NY 11226 | (718) 844-1260 | utware007@gmail.com

EXHIBIT A — DISTRICT COURT ORDER, DKT. 61 — PAGE 1



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Ulysses T. Ware and Group
Management,

Appellants,

Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG, et al.,

Appellees.

______________________________/

**ORDER**

The Court **DENIES** Appellants' Rule 8022 Motion for Rehearing (Dkt. 59) because it contains more than "3,900 words," exceeds "15 pages," and does not "include a certificate under Rule 8015(h)," in violation of Federal Rule of Bankruptcy Procedure 8022(b). *See In re Ford*, 2024 WL 5084836, at *2 (M.D. Fla. Jan. 25, 2024) (denying appellant's rehearing motion because appellant "fail[ed] to comply with the procedural requirements of Rule 8022," including the requirement that his motion "not exceed 3,900 words or exceed 15 pages").

True, Appellants belatedly filed a Rule 8015(h) certificate outside the 14-day window in which it was due and without leave of court. (Dkt. 60 at 5); *see* Fed. R. Bankr. P. 8022(a)(1), (b)(1) ("any motion for rehearing . . . must be filed within 14 days after a judgment on appeal is entered" and "must include a certificate under Rule 8015(h)"). But, even considering the untimely certificate, it does not "state the number of words" in Appellants' motion as required by Rule 8015(h)(1). It states only that the number is "fewer than a combined 7,800 words," which is both impermissibly vague and almost double the word-limit set forth in Rule 8022(b)(1). (Dkt. 60 at 5.) Appellants' untimely certificate does not save their 107-page motion or otherwise require the Court to drag out this meritless appeal any further.[1]

**SO ORDERED** this 14th day of September, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

[1] The Court recognizes that portions of Appellants' 107-page motion do not count towards the applicable word/page limit. *See* Fed. R. Bankr. P. 8015(g). The motion is far too long regardless.

**EXHIBIT B — CLERK'S JUDGMENT, DKT. 58**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| GROUP MANAGEMENT CORP., Debtor, | BANKRUPTCY CASE NO. 03-93031-WLH |
| ULYSSES T. WARE et al, Appellants, | CIVIL ACTION FILE NO. 1:25-cv-00613-MLB. |
| vs. | |
| ALPHA CAPITAL, AG et al, Appellees. | |

**JUDGMENT**

This action having come before the court, Honorable Michael L. Brown, United States District Judge, for consideration of the appeal of the bankruptcy order entered 2/3/2025, and the court having rendered its decision, it is

**Ordered and adjudged** that the order of the bankruptcy court is **affirmed** and the appeal is **dismissed**.

Dated at Atlanta, Georgia this 27th day of January, 2026.

KEVIN P. WEIMER
CLERK OF COURT

By: s/Parker Thompson
Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
January 27, 2026
Kevin P. Weimer
Clerk of Court

By: s/Parker Thompson
Deputy Clerk

EXHIBIT C — DISTRICT COURT ORDER, DKT. 57 — PAGE 1



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Ulysses T. Ware and Group Management,

Appellants,

Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG et al.,

Appellees.

______________________________/

**ORDER**

The Court **VACATES** its prior Order (Dkt. 6) dismissing Appellant Group Management for failure to retain counsel. The Court does so because Appellant Ware now claims Group Management is a sole proprietorship and—assuming that is true, which the Court is willing to do given the pending dismissal of this case on other grounds—"[a] sole proprietorship may litigate pro se." *United States v. Natalie Jewelry*, 2015 WL 150841, at *5 (S.D. Fla. Jan. 13, 2015).

The Court **DISMISSES** this bankruptcy appeal as untimely because Federal Rule of Bankruptcy Procedure 8002 requires appellants

to file a notice of appeal "within 14 days after the [challenged] judgment, order, or decree"; Appellants' notice of appeal challenges bankruptcy court orders entered in 2003 and 2022; and Appellants did not file their notice of appeal until 2025, more than 14 days later. (Dkts. 1; 1-1 at 6–7); *see In re Williams*, 216 F.3d 1295, 1298 (11th Cir. 2000) ("[T]he timely filing of a notice of appeal is mandatory and jurisdictional. If the notice is not timely filed, the appellate court is without jurisdiction to hear the appeal."). Appellants' filings are also meritless as other courts have repeatedly explained. (*See, e.g.*, Dkts. 1-5 at 6–16; 45 at 8–11 (discussing Appellant Ware's long history of frivolous filings in this bankruptcy case and related proceedings).)[1]

---

[1] Of the bankruptcy court orders challenged in Appellants' notice of appeal, the only one docketed within the 14-day appellate period is not really an order at all. It is a "letter" that simply notes the underlying bankruptcy case "has been closed since June 2003," Appellants sent the bankruptcy court more than 100 emails over an 8-month period in 2024–2025, "[e]mails do not constitute filing with the court," and thus "none of the emails have been or will be docketed." (Dkt. 5-9.) Nothing about this unremarkable document warrants any relief on appeal, much less the relief Appellants seek in their papers. The same goes for a February 2025 bankruptcy court order (Dkt. 5-10)—entered during the pendency of this appeal—that Appellants did not mention in their initial notice of appeal but which they have since attacked in other filings. (*See* Dkts. 5-15; 41 at 27). The February 2025 order, like the letter, discusses Appellants' 100+ emails, notes "letters are not proper pleadings," explains the bankruptcy

The Court **DENIES WITHOUT PREJUDICE** Appellees' 6-page motion for sanctions (Dkt. 46) as insufficiently developed. If Appellees wish to renew their motion, they must (1) explain in more detail why sanctions are warranted under Rule 8020; (2) address Appellants' counterarguments; (3) identify the specific sanctions they seek; and (4) describe each step required to process and effectuate their request from beginning to end (including whether the Court must hold a hearing and, if so, when and what should happen at the hearing). Appellees must be thorough and cite supporting authority throughout their analysis.

The Court **DENIES** Appellants' pending motions (Dkts. 42; 44; 49) as moot or otherwise meritless. The Court **DIRECTS** the Clerk to close this case.

**SO ORDERED** this 26th day of January, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

court cannot take "substantive action while the appeal is pending," and says the court "will henceforth return any email received from [Appellants] unopened." (Dkt. 5-10.) Again, nothing about this document—even assuming it were properly before the Court despite its omission from Appellants' initial notice of appeal—entitles Appellants to the relief they seek. That is so—and the Court's other conclusions in this Order remain true—regardless of which of Appellants' two opening briefs (Dkts. 26; 41) is deemed operative.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Ulysses T. Ware,

Appellant,

v.

Case No. 1:25-cv-613-MLB

Alpha Capital, AG, et al.,

Appellees.

______________________________/

**ORDER**

The Court **DENIES** Appellant's motions (Dkts. 12; 14; 19; 22) because Appellant has not shown the relief he seeks is warranted. The Court **ORDERS** Appellant to file a single, consolidated opening appellate brief no later than May 29, 2025. Appellant's brief must be titled "Appellant's Opening Appellate Brief," be double-spaced, not exceed 25 pages, contain everything required by Bankruptcy Rule 8014(a) in the proper format, and otherwise comply with the rules governing opening briefs in a bankruptcy appeal. If Appellant believes the Court lacks jurisdiction to consider his appeal—or that other jurisdictional problems exist—he may assert those arguments in his opening brief. The docket

EXHIBIT D — DISTRICT COURT ORDER, DKT. 38 — PAGE 2



in this case is already clogged with rambling, incoherent, voluminous, and unnecessary filings. Going forward, the Court urges Appellant to be more judicious and restrained about what he chooses to file. If Appellant does not comply with any of the instructions contained in this Order, the Court will likely dismiss his appeal, potentially with prejudice.

**SO ORDERED** this 29th day of April, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

EXHIBIT E — 02cv2219 (SDNY) RULE 41(a)(2) DISMISSAL, DKT. 90

90

U.S. DISTRICT COURT FILED DEC 2 0 2007 S.D. OF N.Y.

United States District Court
Southern District of New York
---x

Alpha Capital Aktiengesellschaft, Amro International, S.A., Markham Holdings, Ltd., and Stonestreet Limited Partnership,

Plaintiffs,

-against-

Group Management Corp., formerly known as IVG Corp., formerly known as Internet Venture Group, Inc., Elorian Landers and Becky Landers,

Defendants.

---x

Order of Dismissal
Without Prejudice

02 Civ. 2219(LBS)

Pursuant to the provisions of Rule 41(a)(2) of the Federal Rules of Civil Procedure, upon request of Plaintiff Alpha Capital Aktiengesellschaft, this case is dismissed without prejudice.

DEC 2 0 2007 -12:00 PM

Dated: New York, New York
December , 2007

CERTIFIED AS A TRUE COPY ON
THIS DATE 6/13/19
BY [signature]
( ) Clerk
(X) Deputy

[signature]
U.S.D.J.
12/18/07

Law Offices of Kenneth A. Zitter

By: [signature]
Kenneth A. Zitter, Esq.
Attorneys for Plaintiff
Alpha Capital Aktiengesellschaft
260 Madison Avenue - 18th Floor
New York, New York 10016

COPIES MAILED TO ALL PARTIES
12-18-07

**EXHIBIT F — DISTRICT COURT ORDER, DKT. 4 — PAGE 1**



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Ulysses T. Ware and Group Management,

Appellants,

v.

Alpha Capital, AG, et al.,

Appellees,

Case No. 1:25-cv-613-MLB

**ORDER**

Appellants Ulysses T. Ware and Group Management seek to appeal an order entered by the United States Bankruptcy Court for the Northern District of Georgia. After reviewing the bankruptcy record, the Court notes that Appellants paid the required filing fee on February 12, 2025. (*See* 02/12/2025 Docket Entry in Bankruptcy Case No. 03-93031.)

The Court also notes, however, that Appellant Group Management is not represented by counsel. The Court **NOTIFIES** Appellant Group Management that a corporation cannot appear pro se and must be represented by counsel. *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385

## EXHIBIT F — DISTRICT COURT ORDER, DKT. 4 — PAGE 2



(11th Cir. 1985). "This rule applies even when the person seeking to represent the corporation is its president . . . ." *CNH Capital Am., LLC v. Se. Aggregate, Inc.*, No. CV608-027, 2009 WL 1468999, at *1 (S.D. Ga. May 26, 2009) (quoting *F.T.C. v. Gem Merch. Corp.*, No. 95-8364, 1995 WL 623168, at *1 (11th Cir. 1995)); *see also* LR 83.1E(2)(b)(I), NDGa.

The Court **ORDERS** Appellant Group Management to have counsel file a notice of appearance with the Clerk no later than March 6, 2025. Failure to comply with this order may result in sanctions against Appellant Group Management, including dismissal.

The Court **DIRECTS** the Clerk to submit this matter after March 6, 2025, if an attorney does not file a notice of appearance on behalf of Appellant Group Management.

**SO ORDERED** this 13th day of February, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

## EXHIBIT G — DISTRICT COURT ORDER, DKT. 6 — PAGE 1



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

Ulysses T. Ware and Group Management,

Appellants,

Case No. 1:25-cv-613-MLB

v.

Alpha Capital, AG, et al.,

Appellees,

______________________________/

**ORDER**

The Court ordered Appellant Group Management to have counsel file a notice of appearance with the Clerk no later than March 6, 2025. (Dkt. 4.) The Court warned Appellant that failure to comply may result in sanctions, including dismissal. (*Id.*) Appellant has failed to comply with the Court's order.

Accordingly, the Court **DISMISSES** Appellant Group Management without prejudice for failure to comply with a lawful order of the Court. *See* LR 41.3(A)(2), NDGa.

## EXHIBIT G — DISTRICT COURT ORDER, DKT. 6 — PAGE 2



**SO ORDERED** this 10th day of March, 2025.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

**EXHIBIT H—FINRA's MAY 17, 2021, UNREGISTERED BROKER-DEALER CERTIFICATION**

**CERTIFICATION OF NO FINRA BUSINESS RECORDS**

I, Marcia E. Asquith, being first duly sworn, depose and state as follows:

1. I am the Executive Vice President, Board and External Relations. In that capacity, I oversee the functions of the Office of the Corporate Secretary at the Financial Industry Regulatory Authority, Inc. ("FINRA"). I am familiar with and am a custodian of FINRA business records, including interpretations, policies and rules adopted by the FINRA Board of Governors.

2. No documents related to the firms listed below were prepared, kept and maintained in the ordinary course of FINRA's business:

a) Alpha Capital, AG
b) Stonestreet, L.P.
c) Markham Holdings, Ltd.
d) Amro International, S.A.
e) LH Financial Services

Marcia E. Asquith
Executive Vice President, Board and External Relations and Corporate Secretary

Subscribed and sworn to before me this 17th day of May, 2021.

Notary Public, District of Columbia

My commission expires: 5/31

PRESS FIRMLY TO SEAL

FSC MIX Board FSC® C118916

PAPER POUCH

PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
PM
BROOKLYN, NY 11226
SEP 26, 2026

30303

$12.90

RDC 03 0 Lb 0.10 Oz S2324M505671-10

UNITED STATES POSTAL SERVICE®

PRIORITY® MAIL

FROM:

The Law Office of Ulysses T. Ware, Esq.
123 Linden Blvd, Ste 9-L
Brooklyn, NY 11226
Filed on Sept. 26, 2026
RE: Notice of Appeal (25cv00613) (NDGA)

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitati

RECEIVED SEP 29 2026

To sche

EXPECTED DELIVERY DAY: 09/30/26

USPS TRACKING® #

9505 5141 9264 6269 2342 41

FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

RECEIVED SEP 29 2026

TRACKED ■ INSURED

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

TO:

TO
Office of the District Clerk
U.S. District Court (NDGA)
75 Ted Turner Dr., SW
Atlanta, GA 30303
Re: 25cv00613 (NDGA) Notice of Appeal

# THE LAW OFFICE OF ULYSSES T. WARE, ESQ.

***Attorneys at Law***
**123 Linden Blvd., Ste. 9-L • Brooklyn, NY 11226**
**(718) 844-1260 • utware007@gmail.com**
**Licensed in Georgia | Georgia Bar No. 737758**


FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 29 2026

KEVIN P. WEIMER, Clerk
By: [signature] Deputy Clerk

Saturday, September 26, 2026 (Filed via USPS Priority Mail)

**VIA USPS PRIORITY MAIL**

**TO:** Office of the District Clerk
United States District Court, Northern District of Georgia
75 Ted Turner Dr., SW
Atlanta, GA 30303

**FROM:** The Law Office of Ulysses T. Ware, Esq., for Appellants Ulysses T. Ware, Esq. and Group Management (a sole proprietorship)

**RE:** **FILING MEMORANDUM — Filing and Docketing of Joint Notice of Appeal to the Eleventh Circuit; Confirmation of Filing and Docketing; and Instructions for Electronic Payment of the $605.00 Appeal Fee**

*Ware, et al. v. Alpha Capital, AG*, et al., Civil Action No. 1:25-cv-00613-MLB (N.D. Ga.), on appeal from Bankruptcy Case No. 03-93031-WLH, *In re Group Management Corp.*

---

Dear District Clerk:

Appellants, through undersigned counsel, transmit the enclosed Joint Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit (Doc. 001A-2, with Exhibits A–G, 20 pages), dated and sent by USPS Priority Mail on September 26, 2026. This memorandum is a ministerial transmittal only. It makes three requests.

**1. Request to File and Docket the Enclosed Notice of Appeal**

Appellants request that the Clerk file and docket the enclosed Joint Notice of Appeal in Case No. 1:25-cv-00613-MLB upon receipt. An appeal as of right from a district court to a court of appeals is taken by filing a notice of appeal with the district clerk. Fed. R. App. P. 3(a)(1); *see also* Fed. R. App. P. 6(b)(1) (Federal Rules of Appellate Procedure govern an appeal under 28 U.S.C. § 158(d)(1) from a district court exercising appellate jurisdiction in a bankruptcy case, with stated qualifications). This Court's Local Rules likewise direct that "[a] notice of appeal shall be filed upon receipt." N.D. Ga. Civ. R. 3.2(A).

Appellants further request that the docket text identify the filing as "**Joint Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit,**" with Exhibits A–G, and that the date of receipt be reflected as the filing date.

**2. Request for Confirmation of Filing and Docketing**

Appellants request that the Clerk confirm, by electronic mail to utware007@gmail.com, (a) that the Joint Notice of Appeal has been filed; (b) the date of filing; (c) the docket entry number assigned; and (d) a file-stamped copy or Notice of Electronic Filing. If a paper mailing address is preferred, confirmation may be sent to the address in the letterhead above.

Appellants also request that the Clerk perform the duties Rule 3(d)(1) assigns to the district clerk: to send a copy of the notice of appeal and the docket entries to the parties as required, to send the same to the clerk of the court of appeals, and to note on each copy the date the notice of appeal was filed. Fed. R. App. P. 3(d)(1).

**3. Appeal Fee and Instructions for Electronic Payment**

The fee due on filing is $605.00. It consists of the $600.00 court-of-appeals docketing fee prescribed by the Judicial Conference under 28 U.S.C. § 1913, *see* Court of Appeals Miscellaneous Fee Schedule, item 1, and the $5.00 district-court fee for filing a notice of appeal under 28 U.S.C. § 1917. The appellant pays these fees to the district clerk upon filing, and the district clerk receives the appellate docket fee on behalf of the court of appeals. Fed. R. App. P. 3(e). This Court's published fee schedule lists the appeal fee at $605.00.

Because this notice is submitted by mail rather than through CM/ECF, Appellants request that the Clerk's Office provide, by electronic mail to utware007@gmail.com, written instructions for electronic payment of the $605.00 fee, including: (a) the pay.gov payment link or online payment form to be used for a paper-filed notice of appeal; (b) the case number, docket entry, or other reference the Clerk requires to be entered with the payment; (c) the payment methods accepted online (credit card or direct debit); and (d) the manner in which the Clerk will confirm receipt of payment. Appellants will remit payment promptly upon receipt of those instructions.

Appellants respectfully submit that the notice should be filed and docketed on receipt without awaiting payment. A failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal. Fed. R. App. P. 3(a)(2). If any deficiency in the enclosed filing is identified, Appellants request prompt notice by electronic mail so that it may be cured at once.

Respectfully submitted, Ulysses T. Ware, Esq.
/s/ The Law Office of Ulysses T. Ware, Esq., GA Bar No. 737758
123 Linden Blvd., Ste. 9-L
Brooklyn, NY 11226
(718) 844-1260
utware007@gmail.com
Sept. 26, 2026, filed via USPS Priority Mail

**Attachment:**

Sept. 26, 2026, Case No. 1:25-cv-00613-MLB (N.D. Ga.), Joint Notice of Appeal to the United States Court of Appeals for the Eleventh Circuit (Doc. 001A-2), with Exhibits A–G (20 pages)